# EXHIBIT A

# Lieff Cabraser Heimann & Bernstein

Attorneys at Law

275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

222 2nd Avenue South, Suite 1640
Nashville, TN 37201
Telephone: 615.313.9000
Facsimile: 615.313.9965

Email: mail@lchb.com
Website: www.lieffcabraser.com

**FIRM PROFILE:**

Lieff Cabraser Heimann & Bernstein, LLP, is a 90-plus attorney AV-rated law firm founded in 1972 with offices in San Francisco, New York, and Nashville. We have a diversified practice, successfully representing plaintiffs in the fields of personal injury and mass torts, securities and financial fraud, employment discrimination and unlawful employment practices, product defect, consumer protection, antitrust and intellectual property, environmental and toxic exposures, False Claims Act, digital privacy and data security, and human rights. Our clients include individuals, classes and groups of people, businesses, and public and private entities.

Lieff Cabraser has served as Court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States. With co-counsel, we have represented clients across the globe in cases filed in American courts. Lieff Cabraser is among the largest firms in the United States that only represent plaintiffs.

Described by *The American Lawyer* as "one of the nation's premier plaintiffs' firms," Lieff Cabraser enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims. We possess sophisticated legal skills and the financial resources necessary for the handling of large, complex cases, and for litigating against some of the nation's largest corporations. We take great pride in the leadership roles our firm plays in many of this country's major cases, including those resulting in landmark decisions and precedent-setting rulings.

Lieff Cabraser has litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the past four decades. We have assisted our clients in recovering over $118 billion in verdicts and settlements. Twenty-seven cases were resolved for over $1 billion; another 44 have resulted in verdicts or settlements at or in excess of $100 million.

*The National Law Journal* has recognized Lieff Cabraser as one of the nation's top plaintiffs' law firms for fourteen years, and we are a member of its Plaintiffs' Hot List Hall of Fame, "representing the best qualities of the plaintiffs' bar and demonstrating unusual dedication and creativity." *The National Law Journal* separately recognized Lieff Cabraser as one of the 50 Leading Plaintiffs Firms in America.

For 2019, Lieff Cabraser has 20 lawyers named to the "Best Lawyers in America" listing, and we were 2018 finalists for Benchmark Litigation's "Plaintiff Law Firm of the Year" and for the National Law Journal's "Elite Trial Lawyers" in the fields of Mass Tort/Personal Injury, Environmental Protection, and Cybersecurity/Data Breach. We were named the *Daily Journal's* "California Lawyers of the Year 2018" as well as having eight lawyers named to Benchmark Litigation's "40 and Under Hot List 2018," and 21 lawyers named to the 2018 Super Lawyers "Super Lawyer" and "Rising Star" lists.

*U.S. News* and *Best Lawyers* has selected Lieff Cabraser as a national "Law Firm of the Year" six times in the last eight years, in categories including Mass Torts Litigation/Class Actions – Plaintiffs and Employment Law – Individuals. In 2017, Lieff Cabraser's Digital Privacy and Data Security practice group was named "Privacy Group of the Year" by *Law360*, and the firm's Consumer Protection practice group was named "Consumer Protection Group of the Year" by the publication as well.

In 2017, *Law360* named Lieff Cabraser one of six "California Powerhouse" firms for litigation, the only plaintiffs' firm so honored. In 2016, *Benchmark Litigation* named Lieff Cabraser to its "Top 10 Plaintiff Firms in America" list, *The National Law Journal* chose our firm as one of nine "Elite Trial Lawyers" nationwide, and *Law360* selected Lieff Cabraser as one of the "Top 50 Law Firms Nationwide for Litigation." The publication separately noted that our firm "persists as a formidable agency of change, producing world class legal work against some of the most powerful corporate players in the world today."

**CASE PROFILES:**

**I.     Personal Injury and Products Liability Litigation**

    **A.     Current Cases**

        1.     ***Jane Doe et al. v. George Tyndall and the University of Southern California***, Case No. 2:18-cv-05010 (C.D. Cal.). In June of 2018, Lieff Cabraser and co-counsel filed a class action lawsuit on behalf of women who were sexually abused, harassed, and molested by gynecologist George Tyndall, M.D., while they were students at University of Southern California ("USC"). As alleged in the complaint, despite the fact that USC has publicly admitted that it received numerous complaints

of Tyndall's sexually abusive behavior, dating back to at least the year 2000, USC actively and deliberately concealed Tyndall's sexual abuse for years, continuing to grant Tyndall unfettered sexual access to the female USC students in his care. USC hid the complaints despite the fact that many of the complaints came directly from its own employees and staff, including nurses and medical assistants who were physically present during the examinations as "chaperones," and witnessed the sexual misconduct firsthand. Despite receiving years of serious complaints of significant misconduct about Tyndall, including sexual misconduct, USC failed to take any meaningful action to address the complaints until it was finally forced to do so in June 2016.

On February 12, 2019, University of Southern California (USC) students and alumni filed a class action settlement agreement resolving claims related to gynecologist George Tyndall, M.D. that will require USC to adopt and implement significant and permanent procedures for identification, prevention, and reporting of sexual and racial misconduct, as well as recognize all of Tyndall's patients through a $215 million fund that gives every survivor a choice in how to participate. The settlement proposes a tiered structure for recovery that allows victims to choose the level of engagement they wish to have with the claims process and how they wish to communicate their stories. All women who USC's records show saw Tyndall for a women's health visit will automatically get a $2,500 check, and the further tiers are structured to allow victims to choose their level of engagement with the process – if they only want to submit claims in writing, they can choose that, which allows them a certain range of potential claim payments above the 2,500 floor; if they are willing and able to provide an interview, they can be eligible for a range up to the highest $250,000 amount. But at all levels, the settlement is designed to provide victims with a safe process within which to come forward, where they have control over how much they want to engage at their chosen level of comfort.

2. ***In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation***, MDL No. 2151 (C.D. Cal.). Lieff Cabraser serves as Co-Lead Counsel for the plaintiffs in the Toyota injury cases in federal court representing individuals injured, and families of loved ones who died, in Toyota unintended acceleration accidents. The complaints charge that Toyota took no action despite years of complaints that its vehicles accelerated suddenly and could not be stopped by proper application of the brake pedal. The complaints further allege that Toyota breached its duty to manufacture and sell safe automobiles by failing to incorporate a brake override system and other readily available safeguards that could have prevented unintended acceleration.

In December 2013, Toyota announced its intention to begin to settle the cases. In 2014, Lieff Cabraser played a key role in turning Toyota's intention into a reality through assisting in the creation of an innovative resolution process that has settled scores of cases in streamlined, individual conferences. The settlements are confidential. Before Toyota agreed to settle the litigation, plaintiffs' counsel overcame significant hurdles in the challenging litigation. In addition to defeating Toyota's motion to dismiss the litigation, Lieff Cabraser and co-counsel demonstrated that the highly-publicized government studies that denied unintended acceleration, or attributed it to mechanical flaws and driver error, were flawed and erroneous.

3.   ***Individual General Motors Ignition Switch Defect Injury Lawsuits***, MDL No. 2543 (S.D. N.Y.).  Lieff Cabraser represents over 100 persons injured nationwide, and families of loved ones who died, in accidents involving GM vehicles sold with a defective ignition switch. Without warning, the defect can cause the car's engine and electrical system to shut off, disabling the air bags.  For over a decade GM was aware of this defect and failed to inform government safety regulators and public.  The defect has been has been implicated in the deaths of over 300 people in crashes where the front air bags did not deploy.  On August 15, 2014, U.S. District Court Judge Jesse M. Furman appointed Elizabeth J. Cabraser as Co-Lead Plaintiffs' Counsel in the GM ignition switch litigation in federal court.

4.   ***Retrievable Inferior Vena Cava Blood Filter Injuries, In re Bard IVC Filters Prods. Liab. Litig.***, MDL No. 2641 (D. Ariz.). Inferior Vena Cava blood filters or IVC filters are small, basket-like medical devices that are inserted into the inferior vena cava, the main blood vessel that returns blood from the lower half of the body to the heart.  Tens of thousands of patients in the U.S. are implanted with IVC filters in order to provide temporary protection from pulmonary embolisms.  However, these devices have resulted in multiple complications including device fracture, device migration, perforation of various organs, and an increased risk for venous thrombosis.  Due to these complications, patients may have to undergo invasive device removal surgery or suffer heart attacks, hemorrhages, or other major injuries.  We represent injured patients and their families in individual personal injury and wrongful death lawsuits against IVC filter manufacturers, and Lieff Cabraser attorney Wendy R. Fleishman serves on the Plaintiffs Executive Committee in the IVC Filter cases in the federal multidistrict litigation.

5.   ***Injury and Death Lawsuits Involving Wrongful Driver Conduct and Defective Tires, Transmissions, Cars and/or Vehicle Parts (Seat Belts, Roof Crush, Defective seats, and***

***Other Defects).*** Lieff Cabraser has an active practice prosecuting claims for clients injured, or the families of loved ones who have died, by wrongful driver conduct and by unsafe and defective vehicles, tires, restraint systems, seats, and other automotive equipment. The firm also represent clients in actions involving fatalities and serious injuries from tire and transmission failures as well as rollover accidents (and defective roofs, belts, seat back and other parts) as well as defective transmissions and/or shifter gates that cause vehicles to self-shift from park or false park into reverse. Our attorneys have received awards and recognition from *California Lawyer* magazine (Lawyer of the Year Award), the Consumer Attorneys of California, and the San Francisco Trial Lawyers Association for their dedication to their clients and outstanding success in vehicle injury cases.

6. ***In Re: Abilify (Aripiprazole) Products Liability Litigation***, MDL No. 2734 (N.D. Fla.). We represent clients who have incurred crippling financial losses and pain and suffering from compulsive gambling caused by the drug Abilify. In May 2016 the FDA warned that Abilify can lead to damaging compulsive behaviors, including uncontrollable gambling. The gambling additions can be so severe that patients lose their homes, livelihoods, and marriages. The $6+ billion a year-earning drug was prescribed for nearly 9 million patients in 2014 alone. In December 2016, Lieff Cabraser partner Lexi Hazam was appointed by the court overseeing the nationwide Abilify gambling injuries MDL litigation to the Plaintiffs Executive Committee and Co-Chairs the Science and Expert Sub-Committee for the nationwide Abilify MDL litigation. Discovery in the case is ongoing.

7. ***In re Engle Cases***, No. 3:09-cv-10000-J-32 JBT (M.D. Fl.). Lieff Cabraser represents Florida smokers, and the spouses and families of loved ones who died, in litigation against the tobacco companies for their 50-year conspiracy to conceal the hazards of smoking and the addictive nature of cigarettes.

On February 25th, 2015, a settlement was announced of more than 400 Florida smoker lawsuits against the major cigarette companies Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Lorillard Tobacco Company. As a part of the settlement, the companies will collectively pay $100 million to injured smokers or their families. This was the first settlement ever by the cigarette companies of smoker cases on a group basis.

Lieff Cabraser attorneys tried over 20 cases in Florida federal court against the tobacco industry on behalf of individual smokers or their estates, and with co-counsel obtained over $105 million in judgments for our clients. Two of the jury verdicts Lieff Cabraser attorneys obtained in

the litigation were ranked by *The National Law Journal* as among the Top 100 Verdicts of 2014.

8. **In re Takata Airbag Litigation**, MDL No. 2599 (S.D. Fl.). Lieff Cabraser serves on the Plaintiffs' Steering Committee in the national litigation against Takata Corporation. Nearly 34 million vehicles, mostly manufactured prior to 2009, have been recalled worldwide due to defective and dangerous airbags manufactured by Japanese-based Takata Corporation. This is the largest automotive recall in U.S. history. At least 20 deaths and more than 130 injuries have been linked to the airbag defect.

The recalled Takata airbags contain a propellant that may cause the airbag to explode upon impact in an accident, shooting metal casing debris towards drivers and passengers. The complaints charge that the company knew of defects in its airbags a decade ago, after conducting secret tests of the products that showed dangerous flaws. Rather than alert federal safety regulators to these risks, Takata allegedly ordered its engineers to delete the test data.

In November 2017, the U.S. District Court in Florida granted final approval to an aggregate settlement of $741 with Toyota, BMW, Subaru and Mazda over claims relating to vehicles containing dangerous and defective Takata airbags, linked to more than 100 injuries and 17 deaths worldwide.

9. **Stryker Metal Hip Implant Litigation**, MDL No. 2441 (D. Minn.). Lieff Cabraser represents over 60 hip replacement patients nationwide who received the recalled Stryker Rejuvenate and ABG II modular hip implant systems. Wendy Fleishman serves on the Plaintiffs' Lead Counsel Committee of the multidistrict litigation cases. These patients have suffered tissue damage and have high metal particle levels in their blood stream. For many patients, the Stryker hip implant failed necessitating painful revision surgery to extract and replace the artificial hip.

On November 3, 2014, a settlement was announced in the litigation against Stryker Corporation for the recall of its Rejuvenate and ABG II artificial hip implants. Under the settlement, Stryker will provide a base payment of $300,000 to patients that received the Rejuvenate or ABG II hip systems and underwent revision surgery by November 3, 2014, to remove and replace the devices. Stryker's liability is not capped. It is expected that the total amount of payments under the settlement will far exceed $1 billion dollars. Payments under the settlement program are projected for disbursement at the end of 2015.

10. **DePuy Metal Hip Implants Litigation**, MDL No. 2244 (N.D. Tex.). Lieff Cabraser represents nearly 200 patients nationwide who received

the ASR XL Acetabular and ASR Hip Resurfacing systems manufactured by DePuy Orthopedics, a unit of Johnson & Johnson. In 2010, DePuy Orthopedics announced the recall of its all-metal ASR hip implants, which were implanted in approximately 40,000 U.S. patients from 2006 through August 2010. The complaints allege that DePuy Orthopedics was aware its ASR hip implants were failing at a high rate, yet continued to manufacture and sell the device. In January 2011, in *In re DePuy Orthopaedics, Inc.* ASR Hip Implant Products, MDL No. 2197, the Court overseeing all DePuy recall lawsuits in federal court appointed Lieff Cabraser attorney Wendy R. Fleishman to the Plaintiffs' Steering Committee for the organization and coordination of the litigation. In July 2011, in the coordinated proceedings in California state court, the Court appointed Lieff Cabraser attorney Robert J. Nelson to serve on the Plaintiffs' Steering Committee.

In 2013, Johnson & Johnson announced its agreement to pay at least $2.5 billion to resolve thousands of defective DePuy ASR hip implant lawsuits. Under the settlement, J&J offers to pay a base award of $250,000 to U.S. citizens and residents who are more than 180 days from their hip replacement surgery, and prior to August 31, 2013, had to undergo revision surgery to remove and replace their faulty DePuy hip ASR XL or ASR resurfacing hip. The $250,000 base award payment will be adjusted upward or downward depending on medical factors specific to each patient. Lieff Cabraser also represents nearly 100 patients whose DePuy Pinnacle artificial hips containing a metal insert called the Ultamet metal liner have prematurely failed.

11.     ***Mirena Litigation***. A widely-used, plastic intrauterine device (IUD) that releases a hormone into the uterus to prevent pregnancy, Mirena is manufactured by Bayer Healthcare Pharmaceuticals. Lieff Cabraser represents patients who have suffered serious injuries linked to the IUD. These injuries include uterine perforation (the IUD tears through the cervix or the wall of the uterus), ectopic pregnancy (when the embryo implants outside the uterine cavity), pelvic infections and pelvic inflammatory disease, and thrombosis (blood clots).

12.     ***Birth Defects Litigation***. Lieff Cabraser represents children and their parents who have suffered birth defects as a result of problematic pregnancies and improper medical care, improper prenatal genetic screening, ingestion by the mother of prescription drugs during pregnancy which had devastating effects on their babies. These birth defects range from heart defects, physical malformations, and severe brain damage associated with complex emotional and developmental delays. Taking of antidepressants during pregnancy has been linked to multiple types of birth defects, neonatal abstinence syndrome from

experiencing withdrawal of the drug, and persistent pulmonary hypertension of the newborn (PPHN).

13.   ***Vaginal Surgical Mesh Litigation***.  Lieff Cabraser represents more than 300 women nationwide who have been seriously injured as a result of polypropylene vaginal surgical mesh implantation as a treatment for pelvic organ prolapse or stress urinary incontinence. Manufactured by Johnson & Johnson, Boston Scientific, AMS, Bard, Caldera, Coloplast, and others, these products have been linked to serious side effects including erosion into the vaginal wall or other organs, infection, internal organ damage, and urinary problems. As of early 2016, the firm is in all phases of litigation and settlement on these cases.

14.   ***Xarelto Litigation.***  Lieff Cabraser represents patients prescribed Xarelto sold in the U.S. by Janssen Pharmaceuticals, a subsidiary of Johnson & Johnson.  The complaints charge that Xarelto, approved to prevent blood clots, is a dangerous and defective drug because it triggers in certain patients uncontrolled bleeding and other life-threatening complications. Unlike Coumadin, an anti-clotting drug approved over 50 years ago, the concentration of Xarelto in a patient's blood cannot be reversed in the case of overdose or other serious complications.  If a Xarelto patient has an emergency bleeding event -- such as from a severe injury or major brain or GI tract bleeding -- the results can be fatal.

15.   ***Benicar Litigation***, MDL No. 2606 (D. N.J.).  Lieff Cabraser represents patients prescribed the high blood pressure medication Benicar who have experienced chronic diarrhea with substantial weight loss, severe gastrointestinal problems, and the life-threatening conditions of sprue-like enteropathy and villous atrophy in litigation against Japan-based Daiichi Sankyo, Benicar's manufacturer, and Forest Laboratories, which marketed Benicar in the U.S.

The complaints allege that Benicar was insufficiently tested and not accompanied by adequate instructions and warnings to apprise consumers of the full risks and side effects associated with its use.  Lieff Cabraser attorney Lexi J. Hazam serves on the Plaintiffs' Steering Committee for the nationwide Benicar MDL litigation and was appointed Co-Chair of the Benicar MDL Plaintiffs' Science and Experts Committee. Plaintiffs recently filed motions to compel defense to produce additional discovery. The judge ruled with plaintiffs in the fall of 2015. In August 2017, a settlement with Daiichi Sankyo Inc. and Forest Laboratories Inc. valued at $300 million covering approximately 2,300 Benicar injury cases in both state and federal courts was announced.

16.   ***Risperdal Litigation***.  In 2013, Johnson & Johnson and its subsidiary Janssen Pharmaceuticals, the manufacture of the antipsychotic prescription drugs Risperdal and Invega, entered into a $2.2 billion

settlement with the U.S. Department of Justice for over promoting the drugs. The government alleged that J&J and Janssen knew Risperdal triggered the production of prolactin, a hormone that stimulates breast development (gynecomastia) and milk production.

Lieff Cabraser represents parents whose sons developed abnormally large breasts while prescribed Risperdal and Invega in lawsuits charging that Risperdal is a defective and dangerous prescription drug and seeking monetary damages for the mental anguish and physical injuries the young men suffered. As of 2017, our firm is still filing new Risperdal cases in federal court in the Central District of California.

17.   ***Power Morcellators Litigation***, MDL No. 2652 (D. Kan.). Lieff Cabraser represents women who underwent a hysterectomy (the removal of the uterus) or myomectomy (the removal of uterine fibroids) in which a laparoscopic power morcellator was used. In November 2014, the FDA warned surgeons that they should avoid the use of laparoscopic power morcellators for removing uterine tissue in the vast majority of cases due to the risk of the devices spreading unsuspected cancer. Based on current data, the FDA estimates that 1 in 350 women undergoing hysterectomy or myomectomy for the treatment of fibroids have an unsuspected uterine sarcoma, a type of uterine cancer that includes leiomyosarcoma.

18.   ***In re New England Compounding Pharmacy Inc. Products Liability Litigation***, MDL No. 2419 (D. Mass.). Lieff Cabraser represents patients injured or killed by a nationwide fungal meningitis outbreak in 2012. More than 14,000 patients across the U.S. were injected with a contaminated medication that caused the outbreak. The New England Compounding Center ("NECC") in Framingham, Massachusetts, manufactured and sold the drug – an epidural steroid treatment designed to relieve back pain. The contaminated steroid was sold to patients at a number of pain clinics. Nearly 800 patients developed fungal meningitis, and more than 70 patients died.

Lieff Cabraser is a member of the Plaintiffs' Steering Committee in the multi-district litigation, and our attorneys act as federal-state liaison counsel. In May 2015, the U.S. Bankruptcy Court approved a $200 million partial settlement for victims of the outbreak. Bellwether trials against remaining defendants commenced in 2016. Lieff Cabraser is expected to play a lead role in the bellwether trials.

## B.   Successes

1.   ***Multi-State Tobacco Litigation***. Lieff Cabraser represented the Attorneys General of Massachusetts, Louisiana and Illinois, several additional states, and 21 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers.

The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general. The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking. In California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid through 2025.

2.    ***In re Vioxx Products Liability Litigation***, MDL No. 1657 (E.D. La.). Lieff Cabraser represented patients who suffered heart attacks or strokes, and the families of loved ones who died, after having been prescribed the arthritis and pain medication Vioxx. In individual personal injury lawsuits against Merck, the manufacturer of Vioxx, our clients allege that Merck falsely promoted the safety of Vioxx and failed to disclose the full range of the drug's dangerous side effects. In April 2005, in the federal multidistrict litigation, the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Steering Committee, which has the responsibility of conducting all pretrial discovery of Vioxx cases in federal court and pursuing all settlement options with Merck. In August 2006, Lieff Cabraser was co-counsel in *Barnett v. Merck*, which was tried in the federal court in New Orleans. Lieff Cabraser attorneys Don Arbitblit and Jennifer Gross participated in the trial, working closely with attorneys Mark Robinson and Andy Birchfield. The jury reached a verdict in favor of Mr. Barnett, finding that Vioxx caused his heart attack, and that Merck's conduct justified an award of punitive damages. In November 2007, Merck announced it had entered into an agreement with the executive committee of the Plaintiffs' Steering Committee as well as representatives of plaintiffs' counsel in state coordinated proceedings. Merck paid $4.85 billion into a settlement fund for qualifying claims.

3.    ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL No. 926 (N.D. Ala.). Lieff Cabraser served on the Plaintiffs' Steering Committee and was one of five members of the negotiating committee which achieved a $4.25 billion global settlement with certain defendants of the action. This was renegotiated in 1995, and is referred to as the Revised Settlement Program ("RSP"). Over 100,000 recipients have received initial payments, reimbursement for the explanation expenses and/or long term benefits.

4.    ***Fen-Phen ("Diet Drugs") Litigation***. Since the recall was announced in 1997, Lieff Cabraser has represented individuals who suffered injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux). The firm served as counsel for the plaintiff who filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to

adequately warn physicians and consumers of the risks associated with the drugs. In *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation in federal court. In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage. Lieff Cabraser represented over 2,000 persons that suffered valvular heart disease, pulmonary hypertension or other problems (such as needing echocardiogram screening for damage) due to and/or following exposure to Fen-Phen and obtained more than $350 million in total for clients in individual cases and/or claims. The firm continues to represent persons who suffered valvular heart disease due to Fen-Phen and received compensation under the Diet Drugs Settlement who now require heart value surgery. These persons may be eligible to submit a new claim and receive additional compensation under the settlement.

5. ***In re Actos (Pioglitazone) Products Liability Litigation***, MDL No. 2299 (W.D. La.). Lieff Cabraser represents 90 diabetes patients who developed bladder cancer after exposure to the prescription drug pioglitazone, sold as Actos by Japan-based Takeda Pharmaceutical Company and its American marketing partner, Eli Lilly.

Lieff Cabraser is a member of the Plaintiffs' Steering Committee in the Actos MDL. In 2014, Lieff Cabraser served on the trial team in the case of *Allen v. Takeda*, working closely with lead trial counsel in federal court in Louisiana. The jury awarded $9 billion in punitive damages, finding that Takeda and Lilly failed to adequately warn about the bladder cancer risks of Actos and had acted with wanton and reckless disregard for patient safety. The trial judge reduced the punitive damage award but upheld the jury's findings of misconduct, and ruled that a multiplier of 25 to 1 for punitive damages was justified.

In April 2015, Takeda agreed to settle all bladder cancer claims brought by Type 2 diabetes patients who took Actos prior to December 1, 2011 and who were diagnosed with bladder cancer on or before April 28, 2015 and were represented by counsel by May 1, 2015. The settlement amount is $2.4 billion. Average payments of about $250,000 per person will be increased for more severe injuries.

6. ***Yaz and Yasmin Litigation***. Lieff Cabraser represented women prescribed Yasmin and Yaz oral contraceptives who suffered blood clots, deep vein thrombosis, strokes, and heart attacks, as well as the families of loved ones who died suddenly while taking these medications. The

complaints alleged that Bayer, the manufacturer of Yaz and Yasmin, failed to adequately warn patients and physicians of the increased risk of serious adverse effects from Yasmin and Yaz.  The complaints also charged that these oral contraceptives posed a greater risk of serious side effects than other widely available birth control drugs. To date, Bayer has announced settlements of 7,660 claims – totaling $1.6 billion – in the Yaz birth control lawsuits.

7.     ***Sulzer Hip and Knee Prosthesis Liability Litigation***.  In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant.  In coordinated litigation in California state court, *In re Hip Replacement Cases*, JCCP 4165, Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel.  In the federal litigation, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL No. 1410, Lieff Cabraser played a significant role in negotiating a revised global settlement of the litigation valued at more than $1 billion.  The revised settlement, approved by the Court in May 2002, provided patients with defective implants almost twice the cash payment as under an initial settlement.  On behalf of our clients, Lieff Cabraser objected to the initial settlement.

8.     ***In re Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation***, MDL No. 1699 (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Liaison Counsel and Elizabeth J. Cabraser chaired the Plaintiffs' Steering Committee (PSC) charged with overseeing all personal injury and consumer litigation in federal courts nationwide arising out of the sale and marketing of the COX-2 inhibitors Bextra and Celebrex, manufactured by Pfizer, Inc. and its predecessor companies Pharmacia Corporation and G.D. Searle, Inc.

Under the global resolution of the multidistrict tort and consumer litigation announced in October 2008, Pfizer paid over $800 million to claimants, including over $750 million to resolve death and injury claims.

In a report adopted by the Court on common benefit work performed by the PSC, the Special Master stated:

> [L]eading counsel from both sides, and the attorneys from the PSC who actively participated in this litigation, demonstrated the utmost skill and professionalism in dealing with numerous complex legal and factual issues.  The briefing presented to the Special Master, and also to the Court, and the development of evidence by both sides was exemplary.  The Special Master particularly wishes to recognize that leading counsel for both sides

worked extremely hard to minimize disputes, and when they arose, to make sure that they were raised with a minimum of rancor and a maximum of candor before the Special Master and Court.

9.  ***In re Guidant Implantable Defibrillators Products Liability Litigation***, MDL No. 1708 (D. Minn.).  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in litigation in federal court arising out of the recall of Guidant cardiac defibrillators implanted in patients because of potential malfunctions in the devices.  At the time of the recall, Guidant admitted it was aware of 43 reports of device failures, and two patient deaths. Guidant subsequently acknowledged that the actual rate of failure may be higher than the reported rate and that the number of associated deaths may be underreported since implantable cardio-defibrillators are not routinely evaluated after death.  In January 2008, the parties reached a global settlement of the action.  Guidant's settlements of defibrillator-related claims will total $240 million.

10. ***In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability Litigation***, MDL No. 1013 (D. Wyo.).  Lieff Cabraser served on the Plaintiffs' Steering Committee in a class action lawsuit against Copley Pharmaceutical, which manufactured Albuterol, a bronchodilator prescription pharmaceutical.  Albuterol was the subject of a nationwide recall in January 1994 after a microorganism was found to have contaminated the solution, allegedly causing numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death.  In October 1994, the District Court certified a nationwide class on liability issues.  *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo. 1995).  In November 1995, the District Court approved a $150 million settlement of the litigation.

11. ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J" Leads Products Liability Litigation***, MDL No. 1057 (S.D. Ohio).  Lieff Cabraser served on the Court-appointed Plaintiffs' Steering Committee in a nationwide products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads.  In April 1997, the District Court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability.  A summary jury trial, utilizing jury instructions and interrogatories designed by Lieff Cabraser, occurred in February 1998.  A partial settlement was approved thereafter by the District Court but reversed by the Court of Appeals.  In March 2001, the District Court approved a renewed settlement that included a $58 million fund to satisfy all past, present and future claims by patients for their medical care, injuries, or damages arising from the lead.

12.     ***Mraz v. DaimlerChrysler***, No. BC 332487 (Cal. Supr. Ct.).  In March 2007, the jury returned a $54.4 million verdict, including $50 million in punitive damages, against DaimlerChrysler for intentionally failing to cure a known defect in millions of its vehicles that led to the death of Richard Mraz, a young father.  Mr. Mraz suffered fatal head injuries when the 1992 Dodge Dakota pickup truck he had been driving at his work site ran him over after he exited the vehicle believing it was in park.  The jury found that a defect in the Dodge Dakota's automatic transmission, called a park-to-reverse defect, played a substantial factor in Mr. Mraz's death and that DaimlerChrysler was negligent in the design of the vehicle for failing to warn of the defect and then for failing to adequately recall or retrofit the vehicle.

For their outstanding service to their clients in Mraz and advancing the rights of all persons injured by defective products, Lieff Cabraser partner Robert J. Nelson, the lead trial counsel, received the 2008 California Lawyer of the Year (CLAY) Award in the field of personal injury law, and was also selected as finalists for Attorney of the Year by the Consumer Attorneys of California and the San Francisco Trial Lawyers Association.

In March 2008, a Louisiana-state jury found DaimlerChrysler liable for the death of infant Collin Guillot and injuries to his parents Juli and August Guillot and their then 3-year-old daughter, Madison. The jury returned a unanimous verdict of $5,080,000 in compensatory damages. The jury found that a defect in the Jeep Grand Cherokee's transmission, called a park-to-reverse defect, played a substantial factor in Collin Guillot's death and the severe injuries suffered by Mr. and Mrs. Guillot and their daughter.  Lieff Cabraser served as co-counsel in the trial.

13.     ***Craft v. Vanderbilt University***, Civ. No. 3-94-0090 (M.D. Tenn.). Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron isotopes without consent while receiving prenatal care at the Vanderbilt University hospital as part of a study on iron absorption during pregnancy. The women were not informed of the nature and risks of the study. Instead, they were told that the solution they were fed was a "vitamin cocktail." In the 1960's, Vanderbilt conducted a follow-up study to determine the health effects of the plaintiffs' prior radiation exposure. Throughout the follow-up study, Vanderbilt concealed from plaintiffs the fact that they had been involuntarily exposed to radiation, and that the purpose of the follow-up study was to determine whether there had been an increased rate of childhood cancers among those exposed *in utero*. Vanderbilt also did not inform plaintiffs of the results of the follow-up study, which revealed a disproportionately high incidence of cancers among the children born to the women fed the radioactive iron.

The facts surrounding the administration of radioactive iron to the pregnant women and their children in utero only came to light as a result of U.S. Energy Secretary Hazel O'Leary's 1993 disclosures of government-sponsored human radiation experimentation during the Cold War. Defendants' attempts to dismiss the claims and decertify the class were unsuccessful. 18 F. Supp.2d 786 (M.D. Tenn. 1998). The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

14.     ***Simply Thick Litigation***.  Lieff Cabraser represented parents whose infants died or suffered gave injuries linked to Simply Thick, a thickening agent for adults that was promoted to parents, caregivers, and health professional for use by infants to assist with swallowing.  The individual lawsuits alleged that Simply Thick when fed to infants caused necrotizing enterocolitis (NEC), a life-threatening condition characterized by the inflammation and death of intestinal tissue.  In 2014, the litigation was resolved on confidential terms.

15.     ***Medtronic Infuse Litigation***.  Lieff Cabraser represented patients who suffered serious injuries from the off-label use of the Infuse bone graft, manufactured by Medtronic Inc.  The FDA approved Infuse for only one type of spine surgery, the anterior lumbar fusion.  Many patients, however, received an off-label use of Infuse and were never informed of the off-label nature of the surgery. Serious complications associated with Infuse included uncontrolled bone growth and chronic pain from nerve injuries.  In 2014, the litigation was settled on confidential terms.

16.     ***Wright Medical Hip Litigation***.  The Profemur-Z system manufactured by Wright Medical Technology consisted of three separate components:  a femoral head, a modular neck, and a femoral stem.  Prior to 2009, Profemur-Z hip system included a titanium modular neck adapter and stem which was implanted in 10,000 patients.  Lieff Cabraser represented patients whose Profemur-Z hip implant fractured, requiring a revision surgery.  In 2013 and 2014, the litigation was resolved on confidential terms.

17.     ***In re Zimmer Durom Cup Product Liability Litigation***, MDL No. 2158 (D. N.J.).  Lieff Cabraser served as Co-Liaison Counsel for patients nationwide injured by the defective Durom Cup manufactured by Zimmer Holdings.  First sold in the U.S. in 2006, Zimmer marketed its 'metal-on-metal' Durom Cup implant as providing a greater range of motion and less wear than traditional hip replacement components.  In July 2008, Zimmer announced the suspension of Durom sales.  The complaints charged that the Durom cup was defective and led to the premature failure of the implant.  In 2011 and 2012, the patients represented by Lieff Cabraser settled their cases with Zimmer on favorable, confidential terms.

18.     ***Luisi v. Medtronic***, No. 07 CV 4250 (D. Minn.).  Lieff Cabraser represented over seven hundred heart patients nationwide who were implanted with recalled Sprint Fidelis defibrillator leads manufactured by Medtronic Inc.  Plaintiffs charge that Medtronic has misrepresented the safety of the Sprint Fidelis leads and a defect in the device triggered their receiving massive, unnecessary electrical shocks.  A settlement of the litigation was announced in October 2010.

19.     ***Blood Factor VIII And Factor IX Litigation***, MDL No. 986 (D. Il.)  Working with counsel in Asia, Europe, Central and South America and the Middle East, Lieff Cabraser represented over 1,500 hemophiliacs worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies.  In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern District of Illinois.  The case was resolved through a global settlement signed in 2009.

20.     ***In Re Yamaha Motor Corp. Rhino ATV Products Liability Litigation***, MDL No. 2016 (W.D. Ky.)  Lieff Cabraser served as Plaintiffs' Lead Counsel in the litigation in federal court and Co-Lead Counsel in coordinated California state court litigation arising out of serious injuries and deaths in rollover accidents involving the Yamaha Rhino.  The complaints charged that the Yamaha Rhino contained numerous design flaws, including the failure to equip the vehicles with side doors, which resulted in repeated broken or crushed legs, ankles or feet for riders.  Plaintiffs alleged also that the Yamaha Rhino was unstable due to a narrow track width and high center of gravity leading to rollover accidents that killed and/or injured scores of persons across the nation.

        On behalf of victims and families of victims and along with the Center for Auto Safety, and the San Francisco Trauma Foundation, Lieff Cabraser advocated for numerous safety changes  to the Rhino in reports submitted to the U.S. Consumer Product Safety Commission (CPSC).  On March 31, 2009, the CPSC, in cooperation with Yamaha Motor Corp. U.S.A., announced a free repair program for all Rhino 450, 660, and 700 models to improve safety, including  the addition of spacers and removal of a rear only anti-sway bar.

21.     ***Advanced Medical Optics Complete MoisturePlus Litigation***.  Lieff Cabraser represented consumers nationwide in personal injury lawsuits filed against Advanced Medical Optics arising out of the May 2007 recall of AMO's Complete MoisturePlus Multi-Purpose Contact Lens Solution.  The product was recalled due to reports of a link between a

rare, but serious eye infection, *Acanthamoeba keratitis*, caused by a parasite and use of AMO's contact lens solution. Though AMO promoted Complete MoisturePlus Multi-Purpose as "effective against the introduction of common ocular microorganisms," the complaints charged that AMO's lens solution was ineffective and vastly inferior to other multipurpose solutions on the market. In many cases, patients were forced to undergo painful corneal transplant surgery to save their vision and some have lost all or part of their vision permanently. The patients represented by Lieff Cabraser resolved their cases with AMO on favorable, confidential terms.

22. ***Gol Airlines Flight 1907 Amazon Crash***. Lieff Cabraser served as Plaintiffs' Liaison Counsel and represents over twenty families whose loved ones died in the Gol Airlines Flight 1907 crash. On September 29, 2006, a brand-new Boeing 737-800 operated by Brazilian air carrier Gol plunged into the Amazon jungle after colliding with a smaller plane owned by the American company ExcelAire Service, Inc. None of the 149 passengers and six crew members on board the Gol flight survived the accident.

The complaint charged that the pilots of the ExcelAire jet were flying at an incorrect altitude at the time of the collision, failed to operate the jet's transponder and radio equipment properly, and failed to maintain communication with Brazilian air traffic control in violation of international civil aviation standards. If the pilots of the ExcelAire aircraft had followed these standards, the complaint charged that the collision would not have occurred.

At the time of the collision, the ExcelAire aircraft's transponder, manufactured by Honeywell, was not functioning. A transponder transmits a plane's altitude and operates its automatic anti-collision system. The complaint charged that Honeywell shares responsibility for the tragedy because it defectively designed the transponder on the ExcelAire jet, and failed to warn of dangers resulting from foreseeable uses of the transponder. The cases settled after they were sent to Brazil for prosecution.

23. ***Comair CRJ-100 Commuter Flight Crash in Lexington, Kentucky***. A Bombardier CRJ-100 commuter plane operated by Comair, Inc., a subsidiary of Delta Air Lines, crashed on August 27, 2006 shortly after takeoff at Blue Grass Airport in Lexington, Kentucky, killing 47 passengers and two crew members. The aircraft attempted to take off from the wrong runway. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

24. ***In re ReNu With MoistureLoc Contact Lens Solution Products Liability Litigation***, MDL No. 1785 (D. S.C.). Lieff Cabraser served on

the Plaintiffs' Executive Committee in federal court litigation arising out of Bausch & Lomb's 2006 recall of its ReNu with MoistureLoc contact lens solution. Consumers who developed *Fusarium keratitis*, a rare and dangerous fungal eye infection, as well as other serious eye infections, alleged the lens solution was defective. Some consumers were forced to undergo painful corneal transplant surgery to save their vision; others lost all or part of their vision permanently. The litigation was resolved under favorable, confidential settlements with Bausch & Lomb.

25. ***Helios Airways Flight 522 Athens, Greece Crash***. On August 14, 2005, a Boeing 737 operating as Helios Airways flight 522 crashed north of Athens, Greece, resulting in the deaths of all passengers and crew. The aircraft was heading from Larnaca, Cyprus to Athens International Airport when ground controllers lost contact with the pilots, who had radioed in to report problems with the air conditioning system. Press reports about the official investigation indicate that a single switch for the pressurization system on the plane was not properly set by the pilots, and eventually both were rendered unconscious, along with most of the passengers and cabin crew.

Lieff Cabraser represented the families of several victims, and filed complaints alleging that a series of design defects in the Boeing 737-300 contributed to the pilots' failure to understand the nature of the problems they were facing. Foremost among those defects was a confusing pressurization warning "horn" which uses the same sound that alerts pilots to improper takeoff and landing configurations. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

26. ***Legend Single Engine "Turbine Legend" Kit Plane Crash***. On November 19, 2005, a single engine "Turbine Legend" kit plane operated by its owner crashed shortly after takeoff from a private airstrip in Tucson, Arizona, killing both the owner/pilot and a passenger. Witnesses report that the aircraft left the narrow runway during the takeoff roll and although the pilot managed to get the plane airborne, it rolled to the left and crashed.

Lieff Cabraser investigated the liability of the pilot and others, including the manufacturer of the kit and the operator of the airport from which the plane took off. The runway was 16 feet narrower than the minimum width recommended by the Federal Aviation Administration. Lieff Cabraser represented the widow of the passenger, and the case was settled on favorable, confidential terms.

27. ***Manhattan Tourist Helicopter Crash***. On June 14, 2005, a Bell 206 helicopter operated by Helicopter Flight Services, Inc. fell into the East River shortly after taking off for a tourist flight over New York City. The

pilot and six passengers were immersed upside-down in the water as the helicopter overturned. Lieff Cabraser represented a passenger on the helicopter and the case was settled on favorable, confidential terms.

28.  ***U.S. Army Blackhawk Helicopter Tower Collision***. Lieff Cabraser represented the family of a pilot who died in the November 29, 2004 crash of a U.S. Army Black Hawk Helicopter.  The Black Hawk was flying during the early morning hours at an altitude of approximately 500 feet when it hit cables supporting a 1,700 foot-tall television tower, and subsequently crashed 30 miles south of Waco, Texas, killing both pilots and five passengers, all in active Army service.  The tower warning lights required by government regulations were inoperative.  The case was resolved through a successful, confidential settlement.

29.  ***Air Algerie Boeing 737 Crash***. Together with French co-counsel, Lieff Cabraser represented the families of several passengers who died in the March 6, 2003 crash of a Boeing 737 airplane operated by Air Algerie. The aircraft crashed soon after takeoff from the Algerian city of Tamanrasset, after one of the engines failed. All but one of the 97 passengers were killed, along with six crew members. The families represented by Lieff Cabraser obtained economic recoveries in a settlement of the case.

30.  ***In re Baycol Products Litigation***, MDL No. 1431 (D. Minn.).  Baycol was one of a group of drugs called statins, intended to reduce cholesterol. In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the deaths of over 100 patients worldwide.  In the federal multidistrict litigation, Lieff Cabraser served as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC.  In addition, Lieff Cabraser represented approximately 200 Baycol patients who suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol.  In these cases, our clients reached confidential favorable settlements with Bayer.

31.  ***United Airlines Boeing 747 Disaster***. Lieff Cabraser served as Plaintiffs' Liaison Counsel on behalf of the passengers and families of passengers injured and killed in the United Airlines Boeing 747 cargo door catastrophe near Honolulu, Hawaii on February 24, 1989. Lieff Cabraser organized the litigation of the case, which included claims brought against United Airlines and The Boeing Company.

Among other work, Lieff Cabraser developed a statistical system for settling the passengers' and families' damages claims with certain defendants, and coordinated the prosecution of successful individual damages trials for wrongful death against the non-settling defendants.

32. ***Aeroflot-Russian International Airlines Airbus Disaster***. Lieff Cabraser represented the families of passengers who were on Aeroflot-Russian International Airlines Flight SU593 that crashed in Siberia on March 23, 1994. The plane was en route from Moscow to Hong Kong. All passengers on board died.

According to a transcript of the cockpit voice recorder, the pilot's two children entered the cockpit during the flight and took turns flying the plane. The autopilot apparently was inadvertently turned off during this time, and the pilot was unable to remove his son from the captain's seat in time to avert the plane's fatal dive.

Lieff Cabraser, alongside French co-counsel, filed suit in France, where Airbus, the plane's manufacturer, was headquartered. The families Lieff Cabraser represented obtained substantial economic recoveries in settlement of the action.

33. ***Lockheed F-104 Fighter Crashes***. In the late 1960s and extending into the early 1970s, the United States sold F-104 Star Fighter jets to the German Air Force that were manufactured by Lockheed Aircraft Corporation in California. Although the F-104 Star Fighter was designed for high-altitude fighter combat, it was used in Germany and other European countries for low-level bombing and attack training missions.

Consequently, the aircraft had an extremely high crash rate, with over 300 pilots killed. Commencing in 1971, the law firm of Belli Ashe Ellison Choulos & Lieff filed hundreds of lawsuits for wrongful death and other claims on behalf of the widows and surviving children of the pilots.

Robert Lieff continued to prosecute the cases after the formation of our firm. In 1974, the lawsuits were settled with Lockheed on terms favorable to the plaintiffs. This litigation helped establish the principle that citizens of foreign countries could assert claims in United States courts and obtain substantial recoveries against an American manufacturer, based upon airplane accidents or crashes occurring outside the United States.

## II.   Securities and Financial Fraud

### A.   Current Cases

1. ***BlackRock Global Allocation Fund, Inc., et al. v. Valeant Pharmaceuticals International, Inc., et al.***, No. 3:18-cv-00343 (D.N.J.); ***Senzar Healthcare Master Fund, LP, et al. v. Valeant Pharmaceuticals International, Inc., et al.***, No. 3:18-cv-02286-MAS-LHG (D.N.J.) (collectively, "Valeant"). Lieff Cabraser represents certain funds and accounts of institutional investors BlackRock and Senzar in these recently-filed individual actions against Valeant

Pharmaceuticals International, Inc. and certain of Valeant's senior officers and directors for violations of the Securities Act of 1933 and/or the Securities Exchange Act of 1934 arising from Defendants' scheme to generate revenues through massive price increases for Valeant-branded drugs while concealing from investors the truth regarding the Company's business operations, financial results, and other material facts. In September 2018, the court denied defendants' partial motions to dismiss in both action, and BlackRock plaintiffs filed an amended complaint.

2. ***In re Wells Fargo & Company Shareholder Derivative Litigation***, No. 3:16-cv-05541 (N.D. Cal.). Lieff Cabraser was appointed as Co-Lead Counsel for Lead Plaintiffs FPPACO and The City of Birmingham Retirement and Relief System in this consolidated shareholder derivative action alleging that, since at least 2011, the Board and executive management of Wells Fargo knew or consciously disregarded that Wells Fargo employees were illicitly creating millions of deposit and credit card accounts for their customers, without those customers' consent, as part of Wells Fargo's intense effort to drive up its "cross-selling" statistics. Revelations regarding the scheme, and the defendants' knowledge or blatant disregard of it, have deeply damaged Wells Fargo's reputation and cost it millions of dollars in regulatory fines and lost business. In May and October 2017, the court largely denied Wells Fargo's and the Director and Officer Defendants' motions to dismiss Lead Plaintiffs' amended complaint. Discovery is ongoing.

3. ***Houston Municipal Employees Pension System v. BofI Holding, Inc., et al.,*** No. 3:15-cv-02324-GPC-KSC (S.D. Cal.). Lieff Cabraser serves as lead counsel for court-appointed lead plaintiff, Houston Municipal Employees Pension System ("HMEPS"), in this securities fraud class action against BofI Holding, Inc. and certain of its senior officers. The action charges defendants with issuing materially false and misleading statements and failing to disclose material adverse facts about BofI's business, operations, and performance The action charges defendants with issuing materially false and misleading statements and failing to disclose material adverse facts about BofI's business, operations, and performance. On March 21, 2018, the court issued an order and entered judgment dismissing the third amended complaint, which HMEPS appealed to the Ninth Circuit. Parties are currently briefing the appeal.

4. ***Lord Abbett Affiliated Fund, Inc., et al. v. Navient Corporation, et al.***, No. 1:16-cv-112-GMS (D. Del.). Lieff Cabraser serves as lead counsel for the court-appointed lead plaintiff, a group of Lord Abbett funds, in this securities fraud class action arising under the PSLRA against Navient, certain of Navient's senior officers and directors, and the underwriters of certain of Navient's public debt offerings. The

consolidated actions allege that defendants misrepresented or failed to disclose that (i) Navient's loan-servicing practices violated applicable federal regulations and jeopardized a contingency collection contract with the U.S. Department of Education; (ii) the Company had an increased number of higher-risk borrowers who were not repaying their loans and Navient failed to properly account for this increased risk of loss in its reported financial results; (iii) Navient's operating structure was inefficient as a result of its spin-off from Sallie Mae; and (iv) a significant portion of the Company's low-rate credit facilities were at risk of being reduced or eliminated. The parties are awaiting the court's ruling on defendants' motion to dismiss which is fully briefed.

5.     ***Normand, et al. v. Bank of New York Mellon Corp.***, No. 1:16-cv-00212-LAK-JLC (S.D.N.Y.). Lieff Cabraser, together with co-counsel, represents a proposed class of holders of American Depositary Receipts ("ADRs") (negotiable U.S. securities representing ownership of publicly traded shares in a non-U.S. corporation), for which BNY Mellon served as the depositary bank. Plaintiffs allege that under the contractual agreements underlying the ADRs, BNY Mellon was responsible for "promptly" converting cash distributions (such as dividends) received for ADRs into U.S. dollars for the benefit of ADR holders, and was required to act without bad faith. Plaintiffs allege that, instead, when doing the ADR cash conversions, BNY Mellon used the range of exchange rates available during the trading session in a manner that was unfavorable for ADR holders, and in doing so, improperly skimmed profits from distributions owed and payable to the class. In September 2016, the court denied, in substantial part, defendant's motion to dismiss, and plaintiffs have since filed a consolidated amended complaint. The case is currently in discovery.

6.     ***In re Facebook, Inc. IPO Securities And Derivative Litigation***, MDL No. 12-2389 (RWS) (S.D.N.Y.). Lieff Cabraser is counsel for two individual investor class representatives in the securities class litigation arising under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") concerning Facebook's initial public offering in May 2012. In February 2018, the court granted plaintiffs' motion for preliminary approval of a settlement of the litigation. A motion for final approval of the settlement is now pending before the court.

## B.     Successes

1.     ***Arkansas Teacher Retirement System v. State Street Corp.***, Case No. 11cv10230 (MLW) (D. Mass.). Lieff Cabraser served as co-counsel for a nationwide class of institutional custodial clients of State Street, including public pension funds and ERISA plans, who allege that defendants deceptively charged class members on FX trades done in

connection with the purchase and sale of foreign securities. The complaint charged that between 1999 and 2009, State Street consistently incorporated hidden and excessive mark-ups or mark-downs relative to the actual FX rates applicable at the times of the trades conducted for State Street's custodial FX clients.

State Street allegedly kept for itself, as an unlawful profit, the "spread" between the prices for foreign currency available to it in the FX marketplace and the rates it charged to its customers. Plaintiffs sought recovery under Massachusetts' Consumer Protection Law and common law tort and contract theories. On November 2, 2016, U.S. District Senior Judge Mark L. Wolf granted final approval to a $300 million settlement of the litigation.

2. ***Janus Overseas Fund, et al. v. Petróleo Brasileiro S.A. - Petrobras, et al.***, No. 1:15-cv-10086-JSR (S.D.N.Y.); ***Dodge & Cox Global Stock Fund, et al. v. Petróleo Brasileiro S.A. - Petrobras, et al.***, No. 1:15-cv-10111-JSR (S.D.N.Y.). Lieff Cabraser represented certain Janus and Dodge & Cox funds and investment managers in these individual actions against Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), related Petrobras entities, and certain of Petrobras's senior officers and directors for misrepresenting and failing to disclose a pervasive and long-running scheme of bribery and corruption at Petrobras. As a result of the misconduct, Petrobras overstated the value of its assets by billions of dollars and materially misstated its financial results during the relevant period. The actions charged defendants with violations of the Securities Act of 1933 (the "Securities Act") and/or the Securities Exchange Act of 1934 ("Exchange Act"). The action recently settled on confidential terms favorable to plaintiffs.

3. ***The Regents of the University of California v. American International Group***, No. 1:14-cv-01270-LTS-DCF (S.D.N.Y.). Lieff Cabraser represented The Regents of the University of California in this individual action against American International Group, Inc. ("AIG") and certain of its officers and directors for misrepresenting and omitting material information about AIG's financial condition and the extent of its exposure to the subprime mortgage market. The complaint charged defendants with violations of the Exchange Act, as well as common law fraud and unjust enrichment. The litigation settled in 2015.

4. ***Biotechnology Value Fund, L.P. v. Celera Corp.***, 3:13-cv-03248-WHA (N.D. Cal.). Lieff Cabraser represented a group of affiliated funds investing in biotechnology companies in this individual action arising from misconduct in connection with Quest Diagnostics Inc.'s 2011 acquisition of Celera Corporation. Celera, Celera's individual directors, and Credit Suisse were charged with violations of Sections 14(e) and 20(a)

of the Exchange Act and breach of fiduciary duty. In February 2014, the Court denied in large part defendants' motion to dismiss the second amended complaint. In September 2014, the plaintiffs settled with Credit Suisse for a confidential amount. After the completion of fact and expert discovery, and prior to a ruling on defendants' motion for summary judgment, the plaintiffs settled with the Celera defendants in January 2015 for a confidential amount.

5.    ***The Charles Schwab Corp. v. BNP Paribas Sec. Corp.***, No. CGC-10-501610 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503206 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503207 (Cal. Super. Ct.); and ***The Charles Schwab Corp. v. Banc of America Sec. LLC***, No. CGC-10-501151 (Cal. Super. Ct.). Lieff Cabraser, along with co-counsel, represents Charles Schwab in four separate individual securities actions against certain issuers and sellers of mortgage-backed securities ("MBS") for materially misrepresenting the quality of the loans underlying the securities in violation of California state law. Charles Schwab Bank, N.A., a subsidiary of Charles Schwab, suffered significant damages by purchasing the securities in reliance on defendants' misstatements. The court largely overruled defendants' demurrers in January 2012. Settlements have been reached with dozens of defendants for confidential amounts.

6.    ***Honeywell International Inc. Defined Contribution Plans Master Savings Trust. v. Merck & Co.***, No. 14-cv 2523-SRC-CLW (S.D.N.Y.); ***Janus Balanced Fund v. Merck & Co.***, No. 14-cv-3019-SRC-CLW (S.D.N.Y.); ***Lord Abbett Affiliated Fund v. Merck & Co.***, No. 14-cv-2027-SRC-CLW (S.D.N.Y.); ***Nuveen Dividend Value Fund (f/k/a Nuveen Equity Income Fund), on its own behalf and as successor in interest to Nuveen Large Cap Value Fund (f/k/a First American Large Cap Value Fund) v. Merck & Co.***, No. 14-cv-1709-SRC-CLW (S.D.N.Y.). Lieff Cabraser represented certain Nuveen, Lord Abbett, and Janus funds, and two Honeywell International trusts in these individual actions against Merck & Co., Inc. ("Merck") and certain of its senior officers and directors for misrepresenting the cardiovascular safety profile and commercial viability of Merck's purported "blockbuster" drug, VIOXX. The actions charged defendants with violations of the Exchange Act. The action settled on confidential terms.

7.    ***In re First Capital Holdings Corp. Financial Products Securities Litigation***, MDL No. 901 (C.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the

insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements. This policyholder settlement generated over $1 billion in restored life insurance policies. The settlement was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

8. ***In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litigation***, MDL 2335 (S.D. N.Y.). Lieff Cabraser served as co-lead class counsel for a proposed nationwide class of institutional custodial customers of The Bank of New York Mellon Corporation ("BNY Mellon"). the litigation stemmed from alleged deceptive overcharges imposed by BNY Mellon on foreign currency exchanges (FX) that were done in connection with custodial customers' purchases or sales of foreign securities. Plaintiffs alleged that for more than a decade, BNY Mellon consistently charged its custodial customers hidden and excessive mark-ups on exchange rates for FX trades done pursuant to "standing instructions," using "range of the day" pricing, rather than the rates readily available when the trades were actually executed.

In addition to serving as co-lead counsel for a nationwide class of affected custodial customers, which included public pension funds, ERISA funds, and other public and private institutions, Lieff Cabraser was one of three firms on Plaintiffs' Executive Committee tasked with managing all activities on the plaintiffs' side in the multidistrict consolidated litigation. Prior to the cases being transferred and consolidated in the Southern District of New York, Lieff Cabraser defeated, in its entirety, BNY Mellon's motion to dismiss claims brought on behalf of ERISA and other funds under California's and New York's consumer protection laws.

The firm's clients and class representatives in the consolidated litigation included the Ohio Police & Fire Pension Fund, the School Employees Retirement System of Ohio, and the International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund.

In March 2015, a global resolution of the private and governmental enforcement actions against BNY Mellon was announced, in which $504 million will be paid back to BNY Mellon customers ($335 million of which is directly attributable to the class litigation).

On September 24, 2015, U.S. District Court Judge Lewis A. Kaplan granted final approval to the settlement. Commenting on the work of plaintiffs' counsel, Judge Kaplan stated, "This really was an extraordinary case in which plaintiff's counsel performed, at no small risk, an extraordinary service. They did a wonderful job in this case, and I've seen a lot of wonderful lawyers over the years. This was a great performance.

They were fought tooth and nail at every step of the road. It undoubtedly vastly expanded the costs of the case, but it's an adversary system, and sometimes you meet adversaries who are heavily armed and well financed, and if you're going to win, you have to fight them and it costs money. This was an outrageous wrong committed by the Bank of New York Mellon, and plaintiffs' counsel deserve a world of credit for taking it on, for running the risk, for financing it and doing a great job."

9. ***In re Broadcom Corporation Derivative Litigation***, No. CV 06-3252-R (C.D. Cal.). Lieff Cabraser served as Court-appointed Lead Counsel in a shareholders derivative action arising out of stock options backdating in Broadcom securities. The complaint alleged that defendants intentionally manipulated their stock option grant dates between 1998 and 2003 at the expense of Broadcom and Broadcom shareholders. By making it seem as if stock option grants occurred on dates when Broadcom stock was trading at a comparatively low per share price, stock option grant recipients were able to exercise their stock option grants at exercise prices that were lower than the fair market value of Broadcom stock on the day the options were actually granted. In December 2009, U.S. District Judge Manuel L. Real granted final approval to a partial settlement in which Broadcom Corporation's insurance carriers paid $118 million to Broadcom. The settlement released certain individual director and officer defendants covered by Broadcom's directors' and officers' policy.

Plaintiffs' counsel continued to pursue claims against William J. Ruehle, Broadcom's former Chief Financial Officer, Henry T. Nicholas, III, Broadcom's co-founder and former Chief Executive Officer, and Henry Samueli, Broadcom's co-founder and former Chief Technology Officer. In May 2011, the Court approved a settlement with these defendants. The settlement provided substantial consideration to Broadcom, consisting of the receipt of cash and cancelled options from Dr. Nicholas and Dr. Samueli totaling $53 million in value, plus the release of a claim by Mr. Ruehle, which sought damages in excess of $26 million.

Coupled with the earlier $118 million partial settlement, the total recovery in the derivative action was $197 million, which constitutes the third-largest settlement ever in a derivative action involving stock options backdating.

10. ***In re Scorpion Technologies Securities Litigation I***, No. C-93-20333-EAI (N.D. Cal.); ***Dietrich v. Bauer***, No. C-95-7051-RWS (S.D.N.Y.); ***Claghorn v. Edsaco***, No. 98-3039-SI (N.D. Cal.). Lieff Cabraser served as Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the

company's earnings through reporting fictitious sales. In Scorpion I, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial. In re Scorpion Techs., 1996 U.S. Dist. LEXIS 22294 (N.D. Cal. Mar. 27, 1996). In 1988, the Court approved a $5.5 million settlement with Grant Thornton. In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation. In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd. The jury found that Edsaco aided Scorpion in setting up phony European companies as part of a scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings. Included in the jury verdict, one of the largest verdicts in the U.S. in 2002, was $165 million in punitive damages. Richard M. Heimann conducted the trial for plaintiffs.

On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation: "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here. You were opposed by extremely capable lawyers. It was an uphill battle. There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end. I think based on the efforts that were made here that it was an excellent result for the class. . . [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

11.    ***In re Diamond Foods, Inc., Securities Litigation***, No. 11-cv-05386-WHA (N.D. Cal.). Lieff Cabraser served as local counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi ("MissPERS") and the class of investors it represented in this securities class action lawsuit arising under the PSLRA. The complaint charged Diamond Foods and certain senior executives of the company with violations of the Exchange Act for knowingly understating the cost of walnuts Diamond Foods purchased in order to inflate the price of Diamond Foods' common stock. In January 2014, the Court granted final approval of a settlement of the action requiring Diamond Foods to pay $11 million in cash and issue 4.45 million common shares worth $116.3 million on the date of final approval based on the stock's closing price on that date.

12.    ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund v. McKesson HBOC***, No. 02-405792 (Cal. Supr. Ct.). Lieff Cabraser served as counsel for two Merrill Lynch sponsored mutual funds in a private lawsuit alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson"). The funds charged that defendants, including the former CFO of McKesson HBOC, the name

McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $135 million in losses for plaintiffs. In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S. Attorney and SEC. *McKesson HBOC, Inc. v. Supr. Court*, 115 Cal. App. 4th 1229 (2004). Lieff Cabraser's clients recovered approximately $145 million, representing nearly 104% of damages suffered by the funds. This amount was approximately $115-120 million more than the Merrill Lynch funds would have recovered had they participated in the federal class action settlement.

13. ***Informix/Illustra Securities Litigation***, No. C-97-1289-CRB (N.D. Cal.). Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra. Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company. The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition. In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud. Our clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

14. ***In re Qwest Communications International Securities and "ERISA" Litigation (No. II)***, No. 06-cv-17880-REB-PAC (MDL No. 1788) (D. Colo.). Lieff Cabraser represented the New York State Common Retirement Fund, Fire and Police Pension Association of Colorado, Denver Employees' Retirement Plan, San Francisco Employees' Retirement System, and over thirty BlackRock managed mutual funds in individual securities fraud actions ("opt out" cases) against Qwest Communications International, Inc., Philip F. Anschutz, former co-chairman of the Qwest board of directors, and other senior executives at Qwest. In each action, the plaintiffs charged defendants with massively overstating Qwest's publicly-reported growth, revenues, earnings, and earnings per share from 1999 through 2002. The cases were filed in the wake of a $400 million settlement of a securities fraud class action

against Qwest that was announced in early 2006. The cases brought by Lieff Cabraser's clients settled in October 2007 for recoveries totaling more than $85 million, or more than 13 times what the clients would have received had they remained in the class.

15.     ***In re AXA Rosenberg Investor Litigation***, No. CV 11-00536 JSW (N.D. Cal). Lieff Cabraser served as Co-Lead Counsel for a class of institutional investors, ERISA-covered plans, and other investors in quantitative funds managed by AXA Rosenberg Group, LLC and its affiliates ("AXA"). Plaintiffs alleged that AXA breached its fiduciary duties and violated ERISA by failing to discover a material computer error that existed in its system for years, and then failing to remedy it for months after its eventual discovery in 2009. By the time AXA disclosed the error in 2010, investors had suffered losses and paid substantial investment management fees to AXA. After briefing motions to dismiss and working with experts to analyze data obtained from AXA relating to the impact of the error, Lieff Cabraser reached a $65 million settlement with AXA that the Court approved in April 2012.

16.     ***In re National Century Financial Enterprises, Inc. Investment Litigation***, MDL No. 1565 (S.D. Ohio). Lieff Cabraser served as outside counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in this multidistrict litigation arising from fraud in connection with NCFE's issuance of notes backed by healthcare receivables. The New York City Pension Funds recovered more than 70% of their $89 million in losses, primarily through settlements achieved in the federal litigation and another NCFE-matter brought on their behalf by Lieff Cabraser.

17.     ***BlackRock Global Allocation Fund v. Tyco International Ltd., et al.***, No. 2:08-cv-519 (D. N.J.); ***Nuveen Balanced Municipal and Stock Fund v. Tyco International Ltd., et al.***, No. 2:08-cv-518 (D. N.J.). Lieff Cabraser represented multiple funds of the investment firms BlackRock Inc. and Nuveen Asset Management in separate, direct securities fraud actions against Tyco International Ltd., Tyco Electronics Ltd., Covidien Ltd, Covidien (U.S.), L. Dennis Kozlowski, Mark H. Swartz, and Frank E. Walsh, Jr. Plaintiffs alleged that defendants engaged in a massive criminal enterprise that combined the theft of corporate assets with fraudulent accounting entries that concealed Tyco's financial condition from investors. As a result, plaintiffs purchased Tyco common stock and other Tyco securities at artificially inflated prices and suffered losses upon disclosures revealing Tyco's true financial condition and defendants' misconduct. In 2009, the parties settled the claims against the corporate defendants (Tyco International Ltd., Tyco Electronics Ltd., Covidien Ltd., and Covidien (U.S.). The litigation concluded in 2010. The

total settlement proceeds paid by all defendants were in excess of $57 million.

18. ***Kofuku Bank and Namihaya Bank v. Republic New York Securities Corp.***, No. 00 CIV 3298 (S.D.N.Y.); and Kita Hyogo Shinyo-Kumiai v. Republic New York Securities Corp., No. 00 CIV 4114 (S.D.N.Y.). Lieff Cabraser represented Kofuku Bank, Namihaya Bank and Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against, among others, Martin A. Armstrong and HSBC, Inc., the successor-in-interest to Republic New York Corporation, Republic New York Bank and Republic New York Securities Corporation for alleged violations of federal securities and racketeering laws. Through a group of interconnected companies owned and controlled by Armstrong—the Princeton Companies—Armstrong and the Republic Companies promoted and sold promissory notes, known as the "Princeton Notes," to more than eighty of the largest companies and financial institutions in Japan. Lieff Cabraser's lawsuits, as well as the lawsuits of dozens of other Princeton Note investors, alleged that the Princeton and Republic Companies made fraudulent misrepresentations and non-disclosures in connection with the promotion and sale of Princeton Notes, and that investors' monies were commingled and misused to the benefit of Armstrong, the Princeton Companies and the Republic Companies. In December 2001, the claims of our clients and those of the other Princeton Note investors were settled. As part of the settlement, our clients recovered more than $50 million, which represented 100% of the value of their principal investments less money they received in interest or other payments.

19. ***Alaska State Department of Revenue v. America Online***, No. 1JU-04-503 (Alaska Supr. Ct.). In December 2006, a $50 million settlement was reached in a securities fraud action brought by the Alaska State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation against defendants America Online, Inc. ("AOL"), Time Warner Inc. (formerly known as AOL Time Warner ("AOLTW")), Historic TW Inc. When the action was filed, the Alaska Attorney General estimated total losses at $70 million. The recovery on behalf of Alaska was approximately 50 times what the state would have received as a member of the class in the federal securities class action settlement. The lawsuit, filed in 2004 in Alaska State Court, alleged that defendants misrepresented advertising revenues and growth of AOL and AOLTW along with the number of AOL subscribers, which artificially inflated the stock price of AOL and AOLTW to the detriment of Alaska State funds.

The Alaska Department of Law retained Lieff Cabraser to lead the litigation efforts under its direction. "We appreciate the diligence and expertise of our counsel in achieving an outstanding resolution of the

case," said Mark Morones, spokesperson for the Department of Law, following announcement of the settlement.

20.    ***Allocco v. Gardner***, No. GIC 806450 (Cal. Supr. Ct.).  Lieff Cabraser represented Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine. The lawsuit, filed in California state court, arose out of Peregrine's August 2001 acquisition of Remedy.  Plaintiffs charged that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and misleading representations made by defendants.  Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

After successfully defeating demurrers brought by defendants, including third parties who were customers of Peregrine who aided and abetted Peregrine's accounting fraud under California common law, plaintiffs reached a series of settlements.  The settling defendants included Arthur Andersen, all of the director defendants, three officer defendants and the third party customer defendants KPMG, British Telecom, Fujitsu, Software Spectrum and Bindview.  The total amount received in settlements was approximately $45 million.

21.    ***In re Cablevision Systems Corp. Shareholder Derivative Litigation***, No. 06-cv-4130-DGT-AKT (E.D.N.Y.).  Lieff Cabraser served as Co-Lead Counsel in a shareholders' derivative action against the board of directors and numerous officers of Cablevision.  The suit alleged that defendants intentionally manipulated stock option grant dates to Cablevision employees between 1997 and 2002 in order to enrich certain officer and director defendants at the expense of Cablevision and Cablevision shareholders.  According to the complaint, Defendants made it appear as if stock options were granted earlier than they actually were in order to maximize the value of the grants.  In September 2008, the Court granted final approval to a $34.4 million settlement of the action. Over $24 million of the settlement was contributed directly by individual defendants who either received backdated options or participated in the backdating activity.

22.    ***In re Media Vision Technology Securities Litigation***, No. CV-94-1015 (N.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel in a class

action lawsuit which alleged that certain Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings and issued false and misleading public statements about the company's finances, earnings and profits. By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totaled $31 million. The settlement proceeds have been distributed to eligible class members. The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer. The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings against them. In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial. In October 2003, the Court granted Plaintiffs' motions for summary judgment and entered a judgment in favor of the class against the two defendants in the amount of $188 million.

23. ***In re California Micro Devices Securities Litigation***, No. C-94-2817-VRW (N.D. Cal.). Lieff Cabraser served as Liaison Counsel for the Colorado Public Employees' Retirement Association and the California State Teachers' Retirement System, and the class they represented. Prior to 2001, the Court approved $19 million in settlements. In May 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses. The settlement with the company included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in Cal Micro Devices, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation." One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable. In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

24. ***In re Network Associates, Inc. Securities Litigation***, No. C-99-1729-WHA (N.D. Cal.). Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors. The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price. In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . . We have class counsel who's one of the foremost law firms in the country in both securities law and class actions. And they have a very excellent reputation for the conduct of these kinds of cases . . ."

25.     ***In re FPI/Agretech Securities Litigation***, MDL No. 763 (D. Haw., Real, J.). Lieff Cabraser served as Lead Class Counsel for investors defrauded in a "Ponzi-like" limited partnership investment scheme. The Court approved $15 million in partial, pretrial settlements. At trial, the jury returned a $24 million verdict, which included $10 million in punitive damages, against non-settling defendant Arthur Young & Co. for its knowing complicity and active and substantial assistance in the marketing and sale of the worthless limited partnership offerings. The Appellate Court affirmed the compensatory damages award and remanded the case for a retrial on punitive damages. In 1994, the Court approved a $17 million settlement with Ernst & Young, the successor to Arthur Young & Co.

26.     ***Nguyen v. FundAmerica***, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990). Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants. The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets. The Bankruptcy Court permitted class proof of claims. Lieff Cabraser obtained dual District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

27.     ***In re Brooks Automation, Inc. Securities Litigation***, No. 06 CA 11068 (D. Mass.). Lieff Cabraser served as Court-Appointed Lead Counsel for Lead Plaintiff the Los Angeles County Employees Retirement Association and co-plaintiff Sacramento County Employees' Retirement System in a class action lawsuit on behalf of purchasers of Brooks Automation securities. Plaintiffs charged that Brooks Automation, its senior corporate officers and directors violated federal securities laws by backdating company stock options over a six-year period, and failed to disclose the scheme in publicly filed financial statements. Subsequent to Lieff Cabraser's filing of a consolidated amended complaint in this action, both the Securities and Exchange Commission and the United States Department of Justice filed complaints against the Company's former C.E.O., Robert Therrien, related to the same alleged practices. In October 2008, the Court approved a $7.75 million settlement of the action.

28. ***In re A-Power Energy Generation Systems, Ltd. Securities Litigation***, No. 2:11-ml-2302-GW- (CWx) (C.D. Cal.). Lieff Cabraser served as Court-appointed Lead Counsel for Lead Plaintiff in this securities class action that charged defendants with materially misrepresenting A-Power Energy Generation Systems, Ltd.'s financial results and business prospects in violation of the antifraud provisions of the Securities Exchange Act of 1934. The Court approved a $3.675 million settlement in August 2013.

29. ***Bank of America-Merrill Lynch Merger Securities Cases***. In two cases—*DiNapoli, et al. v. Bank of America Corp.*, No. 10 CV 5563 (S.D. N.Y.) and *Schwab S&P 500 Index Fund, et al. v. Bank of America Corp., et al.*, No. 11-cv- 07779 PKC (S.D. N.Y.). Lieff Cabraser sought recovery on a direct, non-class basis for losses that a number of public pension funds and mutual funds incurred as a result of Bank of America's alleged misrepresentations and concealment of material facts in connection with its acquisition of Merrill Lynch & Co., Inc. Lieff Cabraser represented the New York State Common Retirement Fund, the New York State Teachers' Retirement System, the Public Employees' Retirement Association of Colorado, and fourteen mutual funds managed by Charles Schwab Investment Management. Both cases settled in 2013 on confidential terms favorable for our clients.

30. ***Albert v. Alex. Brown Management Services; Baker v. Alex. Brown Management Services*** (Del. Ch. Ct.). In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate loss of hundreds of millions of dollars. The suits named as defendants Deutsche Bank and its subsidiaries Alex. Brown Management Services and Deutsche Bank Securities, members of the funds' management committee, as well as DC Investments Partners and two of its principals. Among the plaintiff-investors were 70 high net worth individuals. In the fall of 2006, the cases settled by confidential agreement.

## III. <u>Employment Discrimination and Unfair Employment Practices</u>

### A. Current Cases

1. ***Kennicott v. Sandia National Laboratories***, No. 17-cv-188 (D.N.M.). Lieff Cabraser represents female employees in a gender a discrimination class action lawsuit against Sandia National Laboratories, a major defense contractor for the United States Department of Energy. Sandia's research focuses on nuclear weapons and other security technologies with major facilities in California and New Mexico. The lawsuit alleges that Sandia discriminates against female employees with respect to compensation, promotion, and performance evaluation.

Plaintiffs contend that Sandia has implemented its policies despite knowing of their discriminatory effect—and that when women complain of gender discrimination, Sandia retaliates against them. With its work shrouded in secrecy, the defense industry has not been held accountable for gender inequity and a hostile environment for women. This lawsuit seeks to change the policies and practices that perpetuate gender discrimination, as well as to compensate women whose careers have suffered because of this discrimination. The lawsuit alleges violations of Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act, and has received significant media coverage.

2.  ***Chen-Oster v. Goldman Sachs***, No. 10-6950 (S.D.N.Y.). Lieff Cabraser serves as Co-Lead Counsel for plaintiffs in a gender discrimination class action lawsuit against Goldman Sachs alleging Goldman Sachs has engaged in systemic and pervasive discrimination against its female professional employees in violation of Title VII of the Civil Rights Act of 1964 and New York City Human Rights Law. The complaint charges that, among other things, Goldman Sachs pays its female professionals less than similarly situated males, disproportionately promotes men over equally or more qualified women, and offers better business opportunities and professional support to its male professionals. In 2012, the Court denied defendant's motion to strike class allegations.

    On March 10, 2015, Magistrate Judge James C. Francis IV issued a recommendation against certifying the class. In April of 2017, District Court Judge Analisa Torres granted plaintiffs' motion to amend their complaint and add new representative plaintiffs, denied Goldman Sachs' motions to dismiss the new plaintiffs' claims, and ordered the parties to submit proposals by April 26, 2017, on a process for addressing Magistrate Judge Francis' March 2015 Report and Recommendation on class certification.

    On March 30, 2018, Judge Torres issued an order certifying the plaintiffs' damages class under Federal Rule of Civil Procedure Rule 23(b)(3). Judge Torres certified plaintiffs' claims for both disparate impact and disparate treatment discrimination, relying on statistical evidence of discrimination in pay, promotions, and performance evaluations, as well as anecdotal evidence of Goldman's hostile work environment. In so ruling, the court also granted plaintiffs' motion to exclude portions of Goldman's expert evidence as unreliable, and denied all of Goldman's motions to exclude plaintiffs' expert evidence.

3.  ***Moussouris v. Microsoft Corp.,*** No. 15-cv-01483 (W.D. Wash.). Lieff Cabraser and co-counsel represent a former female Microsoft technical professional in a gender discrimination class action lawsuit on behalf of herself and all current and former female technical professionals

employed by Microsoft in the U.S. since September 16, 2009. The complaint alleges that Microsoft has engaged in systemic and pervasive discrimination against female employees in technical and engineering roles with respect to performance evaluations, pay, promotions, and other terms and conditions of employment. The unchecked gender bias that pervades Microsoft's corporate culture has resulted in female technical professionals receiving less compensation than similar men, the promotion of men over equally or more qualified women, and less favorable performance evaluation of female technical professionals compared to male peers. Microsoft's continuing policy, pattern, and practice of sex discrimination against female technical employees, the complaint alleges, violates federal and state laws, including Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination.

Plaintiffs filed a motion for class certification on October 27, 2017, and subsequently filed a reply brief in support of the motion on February 9, 2018. The motion seeks certification of a class of female employees who worked in the Engineering or I/T Operations Professions and in stock levels 59-67 from September 16, 2012 to the present. In June 2018, the district court denied plaintiffs' motion for class certification. In July 2018, plaintiffs petitioned the court for permission to appeal that denial.

4.     ***Benedict v. Hewlett-Packard Company***, No. C13-0119 (N.D. Cal.). Lieff Cabraser represents former Hewlett-Packard ("HP") technical support employees who filed a nationwide class action lawsuit charging that HP failed to pay them and other former and current technical support employees for all overtime hours worked in violation of the federal Fair Labor Standards Act ("FLSA") and state law. The complaint charges that HP has a common practice of misclassifying its technical support workers as exempt and refusing to pay them overtime. On February 13, 2014, the Court granted plaintiffs' motion for conditional certification of a FSLA overtime action.

5.     ***Kassman v. KPMG, LLP***, Case No. 11-03743 (S.D.N.Y.). Lieff Cabraser serves as Co-Lead Counsel for plaintiffs in a gender discrimination class and collective action lawsuit alleging that KPMG has engaged in systemic and pervasive discrimination against its female Client Service and Support Professionals in pay and promotion, discrimination based on pregnancy, and chronic failure to properly investigate and resolve complaints of discrimination and harassment. The complaint alleges violations of the Equal Pay Act, Title VII of the Civil Rights Act of 1964, the New York Executive Law § 296, and the New York City Administrative Code § 8-107. For purposes of the Equal Pay Act claim, plaintiffs represent a conditionally-certified collective of 1,100 female Client Service and Support Professionals who have opted in to the lawsuit.

On November 27, 2018, Plaintiffs filed a motion in U.S. District Court for the Southern District of New York seeking class certification in the long-running lawsuit challenging gender disparities in pay and promotion on behalf of approximately 10,000 female Advisory and Tax professionals. Plaintiffs also sought final certification of the Equal Pay Act collective on behalf of the approximately 1,100 opt-in plaintiffs.

On November 30, 2018, the Court declined to certify the class and decertified the Equal Pay Act collective. While the Court acknowledged KPMG's common pay and promotion policies and its gender disparities in pay and promotion, the Court held that the women challenging KPMG's pay and promotion policies cannot pursue their claims together. On December 14, 2018, Plaintiffs filed a Petition to Appeal the Denial of Class Certification under Rule 23(f) with the United States Court of Appeals for the Second Circuit. Plaintiffs are awaiting a decision from the Court of Appeals about whether to hear the appeal.

6. ***Strauch v. Computer Sciences Corporation***, No. 2:14-cv-00956 (D. Conn.). In 2005, Computer Sciences Corporation ("CSC") settled for $24 million a nationwide class and collective action lawsuit alleging that CSC misclassified thousands of its information technology support workers as exempt from overtime pay in violation of in violation of the federal Fair Labor Standards Act ("FLSA") and state law. Notwithstanding that settlement, a complaint filed on behalf of current and former CSC IT workers in 2014 by Lieff Cabraser and co-counsel alleges that CSC misclassifies many information technology support workers as exempt even though they perform primarily nonexempt work. Plaintiffs are current and former CSC System Administrators assigned the primary duty of the installation, maintenance, and/or support of computer software and/or hardware for CSC clients. On June 9, 2015, the Court granted plaintiffs' motion for conditional certification of a FLSA collective action. Since then, more than 1,000 System Administrators have opted into the case. On June 30, 2017, the Court granted plaintiffs motion for certification of Rule 23 classes for System Administrators in California and Connecticut.

On December 20, 2017, a jury in federal court in Connecticut ruled that Computer Sciences Corporation (CSC), which recently merged with Hewlett Packard Enterprise Services to form DXC Technology (NYSE: DXC), wrongly and willfully denied overtime pay to approximately 1,000 current and former technology support workers around the country. After deliberating over two days, the Connecticut jury unanimously rejected CSC's claim that its System Administrators in the "Associate Professional" and "Professional" job titles are exempt under federal, Connecticut and California law, ruling instead that the workers should have been classified as nonexempt and paid overtime. The jury found CSC's violations to be

willful, triggering additional damages. The misclassifications were made despite the fact that, in 2005, CSC paid $24 million to settle similar claims from a previous group of technical support workers. The case will next proceed to a damages phase, where the court will determine how much CSC owes each class member.

7.  ***Senne v. Major League Baseball***, No. 14-cv-00608 (N.D. Cal.).  Lieff Cabraser represents current and former Minor League Baseball players employed under uniform player contracts in a class and collective action seeking unpaid overtime and minimum wages under the Fair Labor Standards Act and state laws.  The complaint alleges that Major League Baseball ("MLB"), the MLB franchises, and other defendants paid minor league players a uniform monthly fixed salary that, in light of the hours worked, amounts to less than the minimum wage and an unlawful denial of overtime pay.

8.  ***Jang v. E.I. Du Pont De Nemours & Co.,*** No. 15-03719-NC (N.D. Cal.).  Lieff Cabraser represents certain former DuPont employees in a breach of contract action alleging that DuPont unlawfully terminated employees' unvested stock options. DuPont's standard stock option award contract states that unvested options will continue to vest in accordance with their vesting schedule. In practice, however, DuPont unilaterally cancelled unvested stock options one year from employees' termination, regardless of whether the options had vested. The complaint was filed on August 15, 2015. DuPont filed a motion to dismiss the complaint, which was granted by United States Magistrate Judge Nathanael Cousins on November 19, 2015. Plaintiffs appealed the decision to the Ninth Circuit Court of Appeals, and oral argument was held on April 21, 2017.  The Ninth Circuit has not yet issued a decision.

## B.   Successes

1.  ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.).  Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment.  The class was certified in January 1995.  In January 1998, the Court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree.  Under the terms of the settlement, Home Depot modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class

members for which I think they should be grateful to their counsel. . . . Even more significant is the injunctive relief that's provided for . . ."  By 2003, the injunctive relief had created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female employees.

In 2002, Judge Illston stated that the injunctive relief has been a "win/win . . . for everyone, because . . . the way the Decree has been implemented has been very successful and it is good for the company as well as the company's employees."

2.    ***Rosenburg v. IBM***, No. C 06-0430 PJH (N.D. Cal.).  In July 2007, the Court granted final approval to a $65 million settlement of a class action suit by current and former technical support workers for IBM seeking unpaid overtime.  The settlement constitutes a record amount in litigation seeking overtime compensation for employees in the computer industry.  Plaintiffs alleged that IBM illegally misclassified its employees who install or maintain computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

3.    ***Satchell v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D. Cal.).  In 2007, the Court granted final approval to a $54.9 million settlement of the race discrimination class action lawsuit by African American and Latino employees of FedEx Express.  The settlement requires FedEx to reform its promotion, discipline, and pay practices.  Under the settlement, FedEx will implement multiple steps to promote equal employment opportunities, including making its performance evaluation process less discretionary, discarding use of the "Basic Skills Test" as a prerequisite to promotion into certain desirable positions, and changing employment policies to demonstrate that its revised practices do not continue to foster racial discrimination.  The settlement, covering 20,000 hourly employees and operations managers who have worked in the western region of FedEx Express since October 1999, was approved by the Court in August 2007.

4.    ***Gonzalez v. Abercrombie & Fitch Stores***, No. C03-2817 SI (N.D. Cal.).  In April 2005, the Court approved a settlement, valued at approximately $50 million, which requires the retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination.  The settlement included a six-year period of injunctive relief requiring the company to institute a wide range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender.  Lieff Cabraser served as Lead Class Counsel and prosecuted

the case with a number of co-counsel firms, including the Mexican American Legal Defense and Education Fund, the Asian Pacific American Legal Center and the NAACP Legal Defense and Educational Fund, Inc.

5.     ***Giles v. Allstate***, JCCP Nos. 2984 and 2985.  Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of out-of-pocket costs.  The action settled for approximately $40 million.

6.     ***Calibuso v. Bank of America Corporation, Merrill Lynch & Co.***, No. CV10-1413 (E.D. N.Y.).  Lieff Cabraser served as Co-Lead Counsel for female Financial Advisors who alleged that Bank of America and Merrill Lynch engaged in a pattern and practice of gender discrimination with respect to business opportunities and compensation.  The complaint charged that these violations were systemic, based upon company-wide policies and practices.  In December 2013, the Court approved a $39 million settlement.  The settlement included three years of programmatic relief, overseen by an independent monitor, regarding teaming and partnership agreements, business generation, account distributions, manager evaluations, promotions, training, and complaint processing and procedures, among other things.  An independent consultant also conducted an internal study of the bank's Financial Advisors' teaming practices.

7.     ***Frank v. United Airlines***, No. C-92-0692 MJJ (N.D. Cal.).  Lieff Cabraser and co-counsel obtained a $36.5 million settlement in February 2004 for a class of female flight attendants who were required to weigh less than comparable male flight attendants.  Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as a mediator in the case, stated, "As a participant in the settlement negotiations, I am familiar with and know the reputation, experience and skills of lawyers involved.  They are dedicated, hardworking and able counsel who have represented their clients very effectively."  U.S. District Judge Martin J. Jenkins, in granting final approval to the settlement, found "that the results achieved here could be nothing less than described as exceptional," and that the settlement "was obtained through the efforts of outstanding counsel."

8.     ***Barnett v. Wal-Mart***, No. 01-2-24553-SNKT (Wash.).  The Court approved in July 2009 a settlement valued at up to $35 million on behalf of workers in Washington State who alleged they were deprived of meal and rest breaks and forced to work off-the-clock at Wal-Mart stores and Sam's Clubs.  In addition to monetary relief, the settlement provided injunctive relief benefiting all employees.  Wal-Mart was required to undertake measures to prevent wage and hour violations at its 50 stores and clubs in Washington, measures that included the use of new technologies and compliance tools.

Plaintiffs filed their complaint in 2001. Three years later, the Court certified a class of approximately 40,000 current and former Wal-Mart employees. The eight years of litigation were intense and adversarial. Wal-Mart, currently the world's third largest corporation, vigorously denied liability and spared no expense in defending itself.

This lawsuit and similar actions filed against Wal-Mart across America served to reform the pay procedures and employment practices for Wal-Mart's 1.4 million employees nationwide. In a press release announcing the Court's approval of the settlement, Wal-Mart spokesperson Daphne Moore stated, "This lawsuit was filed years ago and the allegations are not representative of the company we are today." Lieff Cabraser served as Court-appointed Co-Lead Class Counsel.

9.   ***Amochaev. v. Citigroup Global Markets, d/b/a Smith Barney***, No. C 05-1298 PJH (N.D. Cal.). In August 2008, the Court approved a $33 million settlement for the 2,411 members of the Settlement Class in a gender discrimination case against Smith Barney. Lieff Cabraser represented Female Financial Advisors who charged that Smith Barney, the retail brokerage unit of Citigroup, discriminated against them in account distributions, business leads, referral business, partnership opportunities, and other terms of employment. In addition to the monetary compensation, the settlement included comprehensive injunctive relief for four years designed to increase business opportunities and promote equality in compensation for female brokers.

10.   ***Vedachalam v. Tata Consultancy Services***, C 06-0963 CW (N.D. Cal.). Lieff Cabraser served as Co-Lead Counsel for 12,700 foreign nationals sent by the Indian conglomerate Tata to work in the U.S. After 7 years of hard-fought litigation, the District Court in July 2013 granted final approval to a $29.75 million settlement. The complaint charged that Tata breached the contracts of its non-U.S.-citizen employees by requiring them to sign over their federal and state tax refund checks to Tata, and by failing to pay its non-U.S.-citizen employees the monies promised to those employees before they came to the United States. In 2007 and again in 2008, the District Court denied Tata's motions to compel arbitration of Plaintiffs' claims in India. The Court held that no arbitration agreement existed because the documents purportedly requiring arbitration in India applied one set of rules to the Plaintiffs and another set to Tata. In 2009, the Ninth Circuit Court of Appeals affirmed this decision. In July 2011, the District Court denied in part Tata's motion for summary judgment, allowing Plaintiffs' legal claims for breach of contract and certain violations of California wage laws to go forward. In 2012, the District Court found that the plaintiffs satisfied the legal requirements for a class action and certified two classes.

11.     ***Giannetto v. Computer Sciences Corporation***, No. 03-CV-8201 (C.D. Cal.).  In one of the largest overtime pay dispute settlements ever in the information technology industry, the Court approved a $24 million settlement with Computer Sciences Corporation in 2005.  Plaintiffs charged that the global conglomerate had a common practice of refusing to pay overtime compensation to its technical support workers involved in the installation and maintenance of computer hardware and software in violation of the Fair Labor Standards Act, California's Unfair Competition Law, and the wage and hour laws of 13 states.

12.     ***Curtis-Bauer v. Morgan Stanley & Co.***, Case No. C-06-3903 (TEH).  In October 2008, the Court approved a $16 million settlement in the class action against Morgan Stanley.  The complaint charged that Morgan Stanley discriminated against African-American and Latino Financial Advisors and Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan Stanley in compensation and business opportunities.  The settlement included comprehensive injunctive relief regarding account distributions, partnership arrangements, branch manager promotions, hiring, retention, diversity training, and complaint processing, among other things. The settlement also provided for the appointment of an independent Diversity Monitor and an independent Industrial Psychologist to effectuate the terms of the agreement.

13.     ***Church v. Consolidated Freightways***, No. C90-2290 DLJ (N.D. Cal.).  Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight forwarding company acquired by Consolidated Freightways in 1989.  On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act, the securities laws, and the Age Discrimination in Employment Act.  The case settled in 1993 for $13.5 million.

14.     ***Gerlach v. Wells Fargo & Co.***, No. C 05-0585 CW (N.D. Cal.).  In January 2007, the Court granted final approval to a $12.8 million settlement of a class action suit by current and former business systems employees of Wells Fargo seeking unpaid overtime.  Plaintiffs alleged that Wells Fargo illegally misclassified those employees, who maintained and updated Wells Fargo's business tools according to others' instructions, as "exempt" from the overtime pay requirements of federal and state labor laws.

15.     ***Buccellato v. AT&T Operations***, No. C10-00463-LHK (N.D. Cal.).  Lieff Cabraser represented a group of current and former AT&T technical support workers who alleged that AT&T misclassified them as exempt and failed to pay them for all overtime hours worked, in violation of federal

and state overtime pay laws.  In June 2011, the Court approved a $12.5 million collective and class action settlement.

16.   ***Buttram v. UPS***, No. C-97-01590 MJJ (N.D. Cal.).  Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement.  In 1999, the Court approved a $12.14 million settlement of the action.  Under the injunctive relief portion of the settlement, Class Counsel monitored the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car drivers.

17.   ***Goddard, et al. v. Longs Drug Stores Corporation, et al.***, No. RG04141291 (Cal. Supr. Ct.).  Store managers and assistant store managers of Longs Drugs charged that the company misclassified them as exempt from overtime wages.  Managers regularly worked in excess of 8 hours per day and 40 hours per week without compensation for their overtime hours.  Following mediation, in 2005, Longs Drugs agreed to settle the claims for a total of $11 million.  Over 1,000 current and former Longs Drugs managers and assistant managers were eligible for compensation under the settlement, over 98% of the class submitted claims.

18.   ***Trotter v. Perdue Farms***, No. C 99-893-RRM (JJF) (MPT) (D. Del.).  Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations.  The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act.  Under a settlement approved by the Court in 2002, Perdue paid $10 million for wages lost by its chicken processing employees and attorneys' fees and costs.  The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

19.   ***Gottlieb v. SBC Communications***, No. CV-00-04139 AHM (MANx) (C.D. Cal.).  With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans.  After acquiring  PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock Funds that were included in the PTG employees' savings plans to be liquidated.  Plaintiffs alleged that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan

participants under the Employee Retirement Income Security Act. In 2002, the Court granted final approval to a $10 million settlement.

20.    ***Ellis v. Costco Wholesale Corp.***, No. 04-03341-EMC (N.D. Cal.). Lieff Cabraser served as Co-Lead Counsel for current and former female employees who charged that Costco discriminated against women in promotion to management positions. In January 2007, the Court certified a class consisting of over 750 current and former female Costco employees nationwide who were denied promotion to General Manager or Assistant Manager since January 3, 2002. Costco appealed. In September 2011, the U.S. Court of Appeals for the Ninth Circuit remanded the case to the District Court to make class certification findings consistent with the U.S. Supreme Court's ruling in *Wal-Mart v. Dukes*, 131 S.Ct. 2541 (2011). In September 2012, U.S. District Court Judge Edward M. Chen granted plaintiffs' motion for class certification and certified two classes of over 1,250 current and former female Costco employees, one for injunctive relief and the other for monetary relief. On May 27, 2014, the Court approved an $8 million settlement.

21.    ***In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation***, MDL No. 1439 (D. Ore.). Lieff Cabraser and co-counsel represented claims representatives of Farmers' Insurance Exchange seeking unpaid overtime. Lieff Cabraser won a liability phase trial on a classwide basis, and then litigated damages on an individual basis before a special master. The judgment was partially upheld on appeal. In August 2010, the Court approved an $8 million settlement.

22.    ***Zuckman v. Allied Group***, No. 02-5800 SI (N.D. Cal.). In September 2004, the Court approved a settlement with Allied Group and Nationwide Mutual Insurance Company of $8 million plus Allied/Nationwide's share of payroll taxes on amounts treated as wages, providing plaintiffs a 100% recovery on their claims. Plaintiffs, claims representatives of Allied / Nationwide, alleged that the company misclassified them as exempt employees and failed to pay them and other claims representatives in California overtime wages for hours they worked in excess of eight hours or forty hours per week. In approving the settlement, U.S. District Court Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

23.    ***Thomas v. California State Automobile Association***, No. CH217752 (Cal. Supr. Ct.). With co-counsel, Lieff Cabraser represented 1,200 current and former field claims adjusters who worked for the California State Automobile Association ("CSAA"). Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked. In May 2002, the Court approved an $8 million settlement of the case.

24. ***Higazi v. Cadence Design Systems***, No. C 07-2813 JW (N.D. Cal.). In July 2008, the Court granted final approval to a $7.664 million settlement of a class action suit by current and former technical support workers for Cadence seeking unpaid overtime. Plaintiffs alleged that Cadence illegally misclassified its employees who install, maintain, or support computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

25. ***Zaborowski v. MHN Government Services***, No. 12-CV-05109-SI (N.D. Cal.) Lieff Cabraser represented current and former Military and Family Life Consultants ("MFLCs") in a class action lawsuit against MHN Government Services, Inc. ("MHN") and Managed Health Network, Inc., seeking overtime pay under the federal Fair Labor Standards Act and state laws. The complaint charged that MHN misclassified the MFLCs as independent contractors and as "exempt" from overtime and failed to pay them overtime pay for hours worked over 40 per week. In April 2013, the Court denied MHN's motion to compel arbitration and granted plaintiff's motion for conditional certification of a FLSA collective action. In December 2014, the U.S. Court of Appeals for the Ninth Circuit upheld the district court's determination that the arbitration clause in MHN's employee contract was procedurally and substantively unconscionable. MHN appealed to the United States Supreme Court.

    MHN did not contest that its agreement had several unconscionable components; instead, it asked the Supreme Court to sever the unconscionable terms of its arbitration agreement and nonetheless send the MFLCs' claims to arbitration. The Supreme Court granted MHN's petition for certiorari on October 1, 2015, and was scheduled to hear the case in the 2016 spring term in *MHN Gov't Servs., Inc. v. Zaborowski*, No. 14-1458. While the matter was pending before the Supreme Court, an arbitrator approved a class settlement in the matter, which resulted in payment of $7,433,109.19 to class members.

26. ***Sandoval v. Mountain Center, Inc., et al.***, No. 03CC00280 (Cal. Supr. Ct.). Cable installers in California charged that defendants owed them overtime wages, as well as damages for missed meal and rest breaks and reimbursement for expenses incurred on the job. In 2005, the Court approved a $7.2 million settlement of the litigation, which was distributed to the cable installers who submitted claims.

27. ***Martin v. Bohemian Club,*** No. SCV-258731(Cal. Supr. Ct.). Lieff Cabraser and co-counsel represented a class of approximately 659 individuals who worked seasonally as camp valets for the Bohemian Club. Plaintiffs alleged that they had been misclassified as independent contractors, and thus were not paid for overtime or meal-and-rest breaks

as required under California law.  The Court granted final approval of a $7 million settlement resolving all claims in September 2016.

28.   ***Lewis v. Wells Fargo***, No. 08-cv-2670 CW (N.D. Cal.).  Lieff Cabraser served as Lead Counsel on behalf of approximately 330 I/T workers who alleged that Wells Fargo had a common practice of misclassifying them as exempt and failing to pay them for all overtime hours worked in violation of federal and state overtime pay laws.  In April 2011, the Court granted collective action certification of the FLSA claims and approved a $6.72 million settlement of the action.

29.   ***Kahn v. Denny's***, No. BC177254 (Cal. Supr. Ct.).  Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California.  The Court approved a $4 million settlement of the case in 2000.

30.   ***Wynne v. McCormick & Schmick's Seafood Restaurants***, No. C 06-3153 CW (N.D. Cal.).  In August 2008, the Court granted final approval to a settlement valued at $2.1 million, including substantial injunctive relief, for a class of African American restaurant-level hourly employees.  The consent decree created hiring benchmarks to increase the number of African Americans employed in front of the house jobs (*e.g.*, server, bartender, host/hostess, waiter/waitress, and cocktail server), a registration of interest program to minimize discrimination in promotions, improved complaint procedures, and monitoring and enforcement mechanisms.

31.   ***Sherrill v. Premera Blue Cross***, No. 2:10-cv-00590-TSZ (W.D. Wash.). In April 2010, a technical worker at Premera Blue Cross filed a lawsuit against Premera seeking overtime pay from its misclassification of technical support workers as exempt.  In June 2011, the Court approved a collective and class action settlement of $1.45 million.

32.   ***Holloway v. Best Buy***, No. C05-5056 PJH (N.D. Cal.).  Lieff Cabraser, with co-counsel, represented a class of current employees of Best Buy that alleged Best Buy stores nationwide discriminated against women, African Americans, and Latinos.  The complaint charged that these employees were assigned to less desirable positions and denied promotions, and that class members who attained managerial positions were paid less than white males.  In November 2011, the Court approved a settlement of the class action in which Best Buy agreed to changes to its personnel policies and procedures that will enhance the equal employment opportunities of the tens of thousands of women, African Americans, and Latinos employed by Best Buy nationwide.

33. **Lyon v. TMP Worldwide**, No. 993096 (Cal. Supr. Ct.). Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm. The settlement, approved in 2000, provided almost a 100% recovery to class members. The suit alleged that TMP failed to pay overtime wages to these employees.

34. **Lusardi v. McHugh, Secretary of the Army**, No. 0120133395 (U.S. EEOC). Lieff Cabraser and the Transgender Law Center represent Tamara Lusardi, a transgender civilian software specialist employed by the U.S. Army. In a groundbreaking decision in April 2015, the Equal Employment Opportunity Commission reversed a lower agency decision and held that the employer subjected Lusardi to disparate treatment and harassment based on sex in violation of Title VII of the Civil Rights Act of 1964 when (1) the employer restricted her from using the common female restroom (consistent with her gender identity) and (2) a team leader intentionally and repeatedly referred to her by male pronouns and made hostile remarks about her transition and gender.

Lieff Cabraser attorneys have had experience representing employees in additional cases, including cases involving race, gender, sexual orientation, gender identity, and age discrimination; False Claims Act (whistleblower) claims; breach of contract claims; unpaid wages or exempt misclassification (wage/hour) claims; pension plan abuses under ERISA; and other violations of the law. For example, as described in the Antitrust section of this resume, Lieff Cabraser serves as plaintiffs' Co-Lead Counsel in a class action charging that Adobe Systems Inc., Apple Inc., Google Inc., and Intel Corporation violated antitrust laws by conspiring to suppress the wages of certain salaried employees.

Lieff Cabraser is currently investigating charges of discrimination, wage/hour violations, and wage suppression claims against several companies. In addition, our attorneys frequently write amicus briefs on cutting-edge legal issues involving employment law.

In 2015, *The Recorder* named Lieff Cabraser's employment group as a Litigation Department of the Year in the category of California Labor and Employment Law. The Litigation Department of the Year awards recognize "California litigation practices that deliver standout results on their clients' most critical matters." *The Recorder* editors consider the degree of difficulty, dollar value and importance of each matter to the client; the depth and breadth of the practice; and the use of innovative approaches.

*U.S. News* and Best Lawyers selected Lieff Cabraser as a 2013 national "Law Firm of the Year" in the category of Employment Law – Individuals. *U.S. News* and Best Lawyers ranked firms nationally in 80 different practice areas based on extensive client feedback and evaluations from 70,000 lawyers nationwide. Only one law firm in the U.S. in each practice area receives the "Law Firm of the Year" designation.

*Benchmark Plaintiff*, a guide to the nation's leading plaintiffs' firms, has given Lieff Cabraser's employment practice group a Tier 1 national ranking, its highest rating. *The Legal*

*500* guide to the U.S. legal profession has recognized Lieff Cabraser as having one of the leading plaintiffs' employment practices in the nation for the past four years.

Kelly M. Dermody chairs the firm's employment practice group and leads the firm's employment cases. She also serves as Managing Partner of Lieff Cabraser's San Francisco office.

In 2015, the College of Labor and Employment Lawyers named Ms. Dermody a Fellow. Nomination to the College is by ones colleagues only, and recognizes those lawyers who have demonstrated sustained and exceptional services to their clients, bar, bench, and public, and the highest level of character, integrity, professional expertise, and leadership.

*The Daily Journal* has selected Ms. Dermody as one of the top 100 attorneys in California (2012-2015), top 75 labor and employment lawyers in California (2011-2015), and top 100 women litigators in California (2007, 2010, 2012-2016). She has been named a Northern California "Super Lawyer" every year since 2004, including being named a "Top 10 Lawyer" in 2014.

Since 2010, Ms. Dermody has annually been recognized by her peers for inclusion in *The Best Lawyers in America* in the fields of Employment Law – Individuals and Litigation – Labor and Employment. In 2014, she was named "Lawyer of the Year" by Best Lawyers in the category of Employment Law – Individuals in San Francisco. In 2007, *California Lawyer* magazine awarded Ms. Dermody its prestigious California Lawyer Attorney of the Year (CLAY) Award.

## IV.  **Consumer Protection**

### A.  **Current Cases**

1.  ***In re Arizona Theranos, Inc. Litigation***, No. 2:16-cv-2138-HRH (D. Ariz.). This class action alleges that Walgreens and startup company Theranos Inc. (along with its two top executives) committed fraud and battery by prematurely marketing to consumers blood testing services that were still in-development, not ready-for-market, and dangerously unreliable. Hundreds of thousands of consumers in Arizona and California submitted to these "testing" services and blood draws under false pretenses. Consumers also made major health decisions (including taking actions and medication, and refraining from taking actions and medications) in reliance on these unreliable tests. Plaintiffs allege that Walgreens' and Theranos' conduct violates Arizona and California consumer protection statutes and common law.

2.  ***Fiat Chrysler Dodge Jeep Ecodiesel Litigation***, 17-MD-02777-EMC. Lieff Cabraser represents owners and lessors of affected Fiat Chrysler vehicles in litigation accusing Fiat Chrysler of using secret software to allow excess emissions in violation of the law for at least 104,000 2014-2016 model year diesel vehicles, including Jeep Grand Cherokees and Dodge Ram 1500 trucks with 3-liter diesel engines sold in the United States from late 2013 through 2016 (model years 2014, 2015,

and 2016). In June 2017, Judge Edward M. Chen of the Northern District of California named Elizabeth Cabraser sole Lead Counsel for Plaintiffs and Chair of the Plaintiffs' Steering Committee for consolidated litigation of the case.

3. ***In Re: General Motors Corp. Air Conditioning Marketing and Sales Practices Litigation***, MDL No. 2818 (E.D. Mich.). Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a consumer fraud class action MDL against General Motors Company consolidated in Michigan federal court on behalf of all persons who purchased or leased certain GM vehicles equipped with an allegedly defective air conditioning systems. The lawsuit claims the vehicles have a serious defect that causes the air conditioning systems to crack and leak refrigerant, lose pressure, and fail to function properly to provide cooled air into the vehicles. These failures lead owners and lessees to incur significant costs for repair, often successive repairs as the repaired parts prove defective as well. The complaint lists causes of action for violations of various states' Consumer Protection Acts, fraudulent concealment, breach of warranty, and unjust enrichment, and seeks declaratory and injunctive relief, including an order requiring GM to permanently repair the affected vehicles within a reasonable time period, as well as compensatory, exemplary, and statutory damages.

4. ***In re Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fl.). Lieff Cabraser serves on the Plaintiffs' Executive Committee ("PEC") in Multi-District Litigation against 35 banks, including Bank of America, Chase, Citizens, PNC, Union Bank, and U.S. Bank. The complaints alleged that the banks entered debit card transactions from the "largest to the smallest" to draw down available balances more rapidly and maximize overdraft fees. In March 2010, the Court denied defendants' motions to dismiss the complaints. The Court has approved nearly $1 billion in settlements with the banks.

In November 2011, the Court granted final approval to a $410 million settlement of the case against Bank of America. Lieff Cabraser was the lead plaintiffs' law firm on the PEC that prosecuted the case against Bank of America. In approving the settlement with Bank of America, U.S. District Court Judge James Lawrence King stated, "This is a marvelous result for the members of the class." Judge King added, "[B]ut for the high level of dedication, ability and massive and incredible hard work by the Class attorneys . . . I do not believe the Class would have ever seen . . . a penny."

In September 2012, the Court granted final approval to a $35 million of the case against Union Bank. In approving the settlement, Judge King again complimented plaintiffs' counsel for their outstanding work and

effort in resolving the case: "The description of plaintiffs' counsel, which is a necessary part of the settlement, is, if anything, understated. In my observation of the diligence and professional activity, it's superb. I know of no other class action case anywhere in the country in the last couple of decades that's been handled as efficiently as this one has, which is a tribute to the lawyers."

5. ***Hale, et al. v. State Farm Mut. Ins. Co., et al.***, Case No. 3:12-cv-00660-DRH-SCW.  In 1997, Lieff Cabraser and co-counsel filed a class action in Illinois state court, accusing State Farm of approving the use of lower-quality non-original equipment manufacturer (non-OEM) automotive parts for repairs to the vehicles of more than 4 million State Farm policyholders, contrary to the company's policy language.  Plaintiffs won a verdict of more than nearly $1.2 billion that included $600 million in punitive damages.  The state appeals court affirmed the judgment, but reduced it slightly to $1.05 billion.  State Farm appealed to the Illinois Supreme Court in May 2013.

A two-plus-year delay in that Court's decision led to a vacancy in the Illinois Supreme Court.  Plaintiffs alleged that State Farm recruited a little-known trial judge, Judge Lloyd A. Karmeier, to run for the vacant Supreme Court seat, and then managed his campaign behind the scenes, and secretly funded it to the tune of almost $4 million.  Then, after Justice Karmeier was elected, State Farm hid its involvement in his campaign to ensure that Justice Karmeier could participate in the pending appeal of the $1.05 billion judgment.  State Farm's scheme was successful: Justice Karmeier joined the otherwise "deadlocked" deliberations and voted to decertify the class and overturn the judgment.

In a 2012 lawsuit filed in federal court, Plaintiffs alleged that this secretive scheme to seat a sympathetic justice—and then to lie about it, so as secure that justice's participation in the pending appeal—violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), and deprived Plaintiffs of their interest in the billion-dollar judgment.  Judge David R. Herndon certified the class in October 2016, and the Seventh Circuit denied State Farm's petition to appeal the ruling in December 2016 and again in May 2017.  On August 21, 2018, Judge David R. Herndon issued two new Orders favorable to plaintiffs relating to evidence and testimony to be included in the trial. On September 4, 2018, the day the trial was to begin, Judge Herndon gave preliminary approval to a $250 million settlement of the case, and on December 13, 2018, Judge Herndon gave the settlement final approval.

6. ***Carrollton Family Clinic, LLC, et al. v. eClinicalWorks, LLC***, No. 17-cv-12530-RGS (E.D. Mass.).  Lieff Cabraser represents healthcare providers in a class action lawsuit against eClinicalWorks, LLC, a provider

of electronic health record ("EHR") software. According to the complaint, a critical component of eClinicalWorks' products and services relating to Electronic Health Records ("EHR") are its guarantees to client healthcare providers that its products meet certain federal standards by, for example, using a government-approved code set for electronically-transmitted prescriptions ("ePrescriptions") and ensuring that patient records can be transferred easily and accurately.

eClinicalWorks' customers claim the company's software failed to meet these and other requirements for years. In May 2017, eClinicalWorks paid $155 million and entered into a Corporate Integrity Agreement to settle a lawsuit by the United States and a qui tam relator based in part on these same false statements, but that settlement does not call for any compensatory payments to the customers harmed by eClinicalWorks' misconduct and its customers have not been made whole for their losses, including payments to eClinicalWorks that should be refunded, out-of-pocket costs, and, in some cases, lost or forfeited incentive payments made by government programs.

7.    ***Dover v. British Airways***, Case No. 1:12-cv-05567 (E.D.N.Y.). Lieff Cabraser represents participants in British Airways' ("BA") frequent flyer program, known as the Executive Club, in a breach of contract class action lawsuit. BA imposes a very high "fuel surcharge," often in excess of $500, on Executive Club reward tickets. Plaintiffs alleged that the "fuel surcharge" was not based upon the price of fuel, and that it therefore violated the terms of the contract. The case was heavily litigated for five years, and settled on the verge of trial for a $42.5 million common fund. Class members have the choice of a cash refund or additional flyer miles based on the number of tickets redeemed during the class period. If all class members claim the miles instead of the cash, the total settlement value will be up to $63 million. U.S. Magistrate Judge Cheryl Pollak signed off on the settlement on May 30, 2018: "In light of the court's experience throughout the course of this litigation — and particularly in light of the contentiousness of earlier proceedings, the inability of the parties to settle during previous mediation attempts and the parties' initial positions when they appeared for the settlement conferences with the court — the significant benefit that the settlement will provide to class members is remarkable."

8.    ***Telephone Consumer Protection Act Litigation***. Lieff Cabraser serves as a leader in nationwide Telephone Consumer Protection Act ("TCPA") class actions challenging abusing and harassing automated calls. Based on Lieff Cabraser's experience and expertise in these cases, Judge Amy J. St. Eve appointed Lieff Cabraser as lead counsel in consolidated TCPA class actions against State Farm. ***Smith v. State Farm Mut. Auto. Ins. Co.***, 301 F.R.D. 284 (N.D. Ill. 2014). Lieff

Cabraser also maintains leadership roles in ongoing nationwide class actions against American Express (***Ossola v. American Express Co., et al.***, Case No. 1:13-CV-4836 (N.D. Ill)), DirecTV (***Brown v. DirecTV LLC***, Case No. 2:13-cv-01170-DMG-E (C.D. Cal.)), National Grid (***Jenkins v. National Grid USA, et al.***, Case No. 2:15-cv-01219-JS-GRB (E.D.N.Y.), and several other companies that make automated debt-collection or telemarketing calls.

9.     ***Rushing v. The Walt Disney Company, et al.***, Case No. 3:17-cv-4419 (N.D. Cal.); ***Rushing v. Viacom, Inc., et al.***, Case No. 3:17-cv-4492 (N.D. Cal.); ***McDonald, et al. v. Kiloo Aps, et al.***, Case No. Case No. 3:17-cv-4344 (N.D. Cal.). Lieff Cabraser represents parents, on behalf of their children, in federal class action litigation against numerous online game and app producers including Disney, Viacom, and the makers of the vastly popular Subway Surfers game (Kiloo), over allegations the companies unlawfully collected, used, and disseminated the personal information of children who played the gaming apps on smart phones, tablets, and other mobile device. The actions are proceeding under time-honored laws protecting privacy: a California common law invasion of privacy claim, a California Constitution right of privacy claim, a California unfair competition claim, a New York General Business Law claim, a Massachusetts Unfair and Deceptive Trade Practices claim, and a Massachusetts statutory right to privacy claim.

10.     ***The People of the State of California v. J.C. Penny Corporation, Inc.***, Case No. BC643036 (Los Angeles County Sup. Ct); ***The People of the State of California v. Kohl's Department Stores, Inc.***, Case No. BC643037 (Los Angeles County Sup. Ct); ***The People of the State of California v. Macy's, Inc.***, Case No. BC643040 (Los Angeles County Sup. Ct); ***The People of the State of California v. Sears, Roebuck and Co., et al.***, Case No. BC643039 (Los Angeles County Sup. Ct). Working with the office of the Los Angeles City Attorney, Lieff Cabraser and co-counsel represent the People of California in consumer fraud and false advertising civil enforcement actions against national retailers J.C. Penney, Kohl's, Macy's, and Sears alleging that each of these companies has pervasively used "false reference pricing" schemes — whereby the companies advertise products at a purported "discount" from false "original" or "regular" prices — to mislead customers into believing they are receiving bargains. Because such practices are misleading — and effective — California law prohibits them. The suits seek civil penalties and injunctive relief. The cases are ongoing.

11.     ***Cody v. SoulCycle, Inc.***, Case No. 2:15-cv-06457 (C.D. Cal.). Lieff Cabraser represents consumers in a class action lawsuit alleging that indoor cycling fitness company SoulCycle sells illegally expiring gift certificates. The suit alleges that SoulCycle defrauded customers by

forcing them to buy gift certificates with short enrollment windows and keeping the expired certificates' unused balances in violation of the U.S. Electronic Funds Transfer Act and California's Unfair Competition Law, and seeks reinstatement of expired classes or customer reimbursements as well as policy changes. In October of 2017, U.S. District Judge Michael W. Fitzgerald granted final approval to a settlement of the litigation valued between $6.9 million and $9.2 million that provides significant economic consideration to settlement class members as well as meaningful changes to SoulCycle's business practices.

12. ***Moore v. Verizon Communications***, No. 09-cv-01823-SBA (N.D. Cal.); ***Nwabueze v. AT&T***, No. 09-cv-1529 SI (N.D. Cal.); ***Terry v. Pacific Bell Telephone Co.***, No. RG 09 488326 (Alameda County Sup. Ct.). Lieff Cabraser, with co-counsel, represents nationwide classes of landline telephone customers subjected to the deceptive business practice known as "cramming." In this practice, a telephone company bills customers for unauthorized third-party charges assessed by billing aggregators on behalf of third-party providers. A U.S. Senate committee has estimated that Verizon, AT&T, and Qwest place 300 million such charges on customer bills each year (amounting to $2 billion in charges), many of which are unauthorized. Various sources estimate that 90-99% of third-party charges are unauthorized. Both Courts have granted preliminary approval of settlements that allow customers to receive 100% refunds for all unauthorized charges from 2005 to the present, plus extensive injunctive relief to prevent cramming in the future. The Nwabueze and Terry cases are ongoing.

13. ***James v. UMG Recordings, Inc.***, No. CV-11-1613 (N.D. Cal); ***Zombie v. UMG Recordings, Inc.***, No. CV-11-2431 (N.D. Cal). Lieff Cabraser and its co-counsel represent music recording artists in a proposed class action against Universal Music Group. Plaintiffs allege that Universal failed to pay the recording artists full royalty income earned from customers' purchases of digitally downloaded music from vendors such as Apple iTunes. The complaint alleges that Universal licenses plaintiffs' music to digital download providers, but in its accounting of the royalties plaintiffs have earned, treats such licenses as "records sold" because royalty rate for "records sold" is lower than the royalty rate for licenses. Plaintiffs legal claims include breach of contract and violation of California unfair competition laws. In November 2011 the Court denied defendant's motion to dismiss plaintiffs' unfair competition law claims.

14. ***White v. Experian Information Solutions***, No. 05-CV-1070 DOC (C.D. Cal.). In 2005, plaintiffs filed nationwide class action lawsuits on behalf of 750,000 claimants against the nation's three largest repositories of consumer credit information, Experian Information Solutions, Inc.,

Trans Union, LLC, and Equifax Information Services, LLC. The complaints charged that defendants violated the Fair Credit Reporting Act ("FCRA") by recklessly failing to follow reasonable procedures to ensure the accurate reporting of debts discharged in bankruptcy and by refusing to adequately investigate consumer disputes regarding the status of discharged accounts. In April 2008, the District Court approved a partial settlement of the action that established an historic injunction. This settlement required defendants comply with detailed procedures for the retroactive correction and updating of consumers' credit file information concerning discharged debt (affecting one million consumers who had filed for bankruptcy dating back to 2003), as well as new procedures to ensure that debts subject to future discharge orders will be similarly treated. As noted by the District Court, "Prior to the injunctive relief order entered in the instant case, however, no verdict or reported decision had ever required Defendants to implement procedures to cross-check data between their furnishers and their public record providers." In 2011, the District Court approved a $45 million settlement of the class claims for monetary relief. In April 2013, the Court of Appeals for the Ninth Circuit reversed the order approving the monetary settlement and remanded the case for further proceedings.

15.   ***Healy v. Chesapeake Appalachia***, No. 1:10cv00023 (W.D. Va.); ***Hale v. CNX Gas***, No. 1:10cv00059 (W.D. Va.); ***Estate of Holman v. Noble Energy***, No. 03 CV 9 (Dist. Ct., Co.); ***Droegemueller v. Petroleum Development Corporation***, No. 07 CV 2508 JLK (D. Co.); ***Anderson v. Merit Energy Co.***, No. 07 CV 00916 LTB (D. Co.); ***Holman v. Petro-Canada Resources (USA)***, No. 07 CV 416 (Dist. Ct., Co.). Lieff Cabraser serves as Co-Lead Counsel in several cases pending in federal court in Virginia, in which plaintiffs allege that certain natural gas companies improperly underpaid gas royalties to the owners of the gas. In one case that recently settled, the plaintiffs recovered approximately 95% of the damages they suffered. Lieff Cabraser also achieved settlements on behalf of natural gas royalty owners in five other class actions outside Virginia. Those settlements -- in which class members recovered between 70% and 100% of their damages, excluding interest -- were valued at more than $160 million.

16.   ***Adkins v. Morgan Stanley***, No. 12 CV 7667 (S.D.N.Y.). Five African-American residents from Detroit, Michigan, joined by Michigan Legal Services, have brought a class action lawsuit against Morgan Stanley for discrimination in violation of the Fair Housing Act and other civil rights laws. The plaintiffs charge that Morgan Stanley actively ensured the proliferation of high-cost mortgage loans with specific risk factors in order to bundle and sell mortgage-backed securities to investors. The lawsuit is the first to seek to hold a bank in the secondary market accountable for the adverse racial impact of such policies and conduct.

Plaintiffs seek certification of the case as a class action for as many as 6,000 African-Americans homeowners in the Detroit area who may have suffered similar discrimination. Lieff Cabraser serves as plaintiffs' counsel with the American Civil Liberties Union, the ACLU of Michigan, and the National Consumer Law Center.

17. ***Marcus A. Roberts et al. v. AT&T Mobility LLC***, No. 3:15-cv-3418 (N.D. Cal.). Lieff Cabraser represents consumers in a proposed class action lawsuit against AT&T claiming that AT&T falsely advertised that its "unlimited" mobile phone plans provide "unlimited" data, while purposefully failing to disclose that it regularly "throttles" (*i.e.*, intentionally slows) customers' data speed once they reach certain data usage thresholds. The lawsuit also challenges AT&T's attempts to force consumers into non-class arbitration, claiming that AT&T's arbitration clause in its Wireless Customer Agreement violates consumers' fundamental constitutional First Amendment right to petition courts for a redress of grievances.

## B. Successes

1. ***In re Volkswagen 'Clean Diesel' Marketing, Sales Practices, and Products Liability Litigation***, MDL No. 2672 (N.D. Cal.). In September of 2015, the U.S. Environmental Protection Agency issued a Notice of Violation to Volkswagen relating to 475,000 diesel-powered cars in the United States sold since 2008 under the VW and Audi brands on which VW installed "cheat device" software that intentionally changed the vehicles' emissions production during official testing. Only when the programming detected that the vehicles were undergoing official emissions testing did the cars turn on their full emission control systems. The controls were turned off during actual road use, producing up to 40x more pollutants than the testing amounts in an extraordinary violation of U.S. clean air laws.

Private vehicle owners, state governments, agencies, and attorneys general, as well as federal agencies, all sought compensation and relief from VW through litigation in U.S. courts. More than 1,000 individual civil cases and numerous accompanying government claims were consolidated in federal court in Northern California, and U.S. District Judge Charles R. Breyer appointed Lieff Cabraser founding partner Elizabeth Cabraser as Lead Counsel and Chair of the 22-member Plaintiffs Steering Committee in February of 2016.

After nine months of intensive negotiation and extraordinary coordination led on the class plaintiffs' side by Elizabeth Cabraser, a set of interrelated settlements totaling $14.7 billion were given final approval by Judge Breyer on October 25, 2016. The settlements offer owners and lessees of Volkswagen and Audi 2.0-liter diesel vehicles substantial

compensation through buybacks and lease terminations, government-approved emissions modifications, and cash payments, while fixing or removing these polluting vehicles from the road. On May 11, 2017, a further settlement with a value of at least $1.2 billion relating to VW's 3.0-liter engine vehicles received final approval. This deal offers a combination of a projected emissions modification or buybacks for older 3.0-liter models. If a government-approved modification can't be found, VW will have to buy back all the vehicles, which could increase its costs for the 3.0-liter model settlement to as much as $4 billion.

The consumer class settlements have garnered overwhelming approval and response. Over 380,000 diesel owners have already signed up for the settlement, most doing so even before final approval was granted by Judge Breyer, who is overseeing all federal "clean diesel" litigation.

The Volkswagen emissions settlement is one of the largest payments in American history and the largest known consumer class settlement. It exemplifies the best of the American judicial system, illustrating the resolution of a significant portion of one of the most massive multidistrict class actions at what *Law360* referred to as "lightning speed." The settlements are unprecedented also for their scope and complexity, involving the Department of Justice, Environmental Protection Agency (EPA), California Air Resources Board (CARB) and California Attorney General, the Federal Trade Commission (FTC) and private plaintiffs.

2.   ***Williamson v. McAfee, Inc.***, No. 14-cv-00158-EJD (N.D. Cal.).  This nationwide class action alleged that McAfee falsely represented the prices of its computer anti-virus software to customers enrolled in its "auto-renewal" program.  Plaintiffs alleged that McAfee: (a) offers *non*-auto-renewal subscriptions at stated "discounts" from a "regular" sales price; however, the stated discounts are false because McAfee does not ever sell subscriptions at the stated "regular" price to *non*-auto-renewal customers; and (b) charges the auto-renewal customers the amount of the false "regular" sales price, claiming it to be the "current" regular price even though it does not sell subscriptions at that price to any other customer.  Plaintiffs alleged that McAfee's false reference price scheme violated California's and New York's unfair competition and false advertising laws.  In 2017, a class settlement was approved that included monetary payments to claimants and practice changes.

3.   ***Hansell v. TracFone Wireless***, No. 13-cv-3440-EMC (N.D. Cal.); ***Blaqmoor v. TracFone Wireless***, No. 13-cv-05295-EMC (N.D. Cal.); ***Gandhi v. TracFone Wireless***, No. 13-cv-05296-EMC (N.D. Cal.).  In January 2015, Michael W. Sobol, the chair of Lieff Cabraser's consumer protection practice group, announced that consumers nationwide who purchased service plans with "unlimited data" from TracFone Wireless,

Inc., were eligible to receive payments under a $40 million settlement of a series of class action lawsuits. One of the nation's largest wireless carriers, TracFone uses the brands Straight Talk, Net10, Telcel America, and Simple Mobile to sell mobile phones with prepaid wireless plans at Walmart and other retail stores nationwide. The class action alleged that TracFone falsely advertised its wireless mobile phone plans as providing "unlimited data," while actually maintaining monthly data usage limits that were not disclosed to customers. It further alleged that TracFone regularly throttled (*i.e.* significantly reduces the speed of) or terminated customers' data plans pursuant to the secret limits. Approved by the Court in July 2015, the settlement permanently enjoins TracFone from making any advertisement or other representation about amount of data its cell phone plans offer without disclosing clearly and conspicuously all material restrictions on the amount and speed of the data plan. Further, TracFone and its brands may not state in their advertisements and marketing materials that any plan provides "unlimited data" unless there is also clear, prominent, and adjoining disclosure of any applicable throttling caps or limits. The litigation is notable in part because, following two years of litigation by class counsel, the Federal Trade Commission joined the litigation and filed a Consent Order with TracFone in the same federal court where the class action litigation is pending. All compensation to consumers will be provided through the class action settlement.

4.    ***Gutierrez v. Wells Fargo Bank***, No. C 07-05923 WHA (N.D. Cal.). Following a two week bench class action trial, U.S. District Court Judge William Alsup in August 2010 issued a 90-page opinion holding that Wells Fargo violated California law by improperly and illegally assessing overdraft fees on its California customers and ordered $203 million in restitution to the certified class. Instead of posting each transaction chronologically, the evidence presented at trial showed that Wells Fargo deducted the largest charges first, drawing down available balances more rapidly and triggering a higher volume of overdraft fees.

Wells Fargo appealed. In December 2012, the Appellate Court issued an opinion upholding and reversing portions of Judge Alsup's order, and remanded the case to the District Court for further proceedings. In May 2013, Judge Alsup reinstated the $203 million judgment against Wells Fargo and imposed post-judgment interest bringing the total award to nearly $250 million. On October 29, 2014, the Appellate Court affirmed the Judge Alsup's order reinstating the judgment.

For his outstanding work as Lead Trial Counsel and the significance of the case, *California Lawyer* magazine recognized Richard M. Heimann with a California Lawyer Attorney of the Year (CLAY) Award. In addition, the Consumer Attorneys of California selected Mr. Heimann and Michael W.

Sobol as Finalists for the Consumer Attorney of the Year Award for their success in the case.

In reviewing counsel's request for attorneys' fees, Judge Alsup stated on May 21, 2015: "Lieff, Cabraser, on the other hand, entered as class counsel and pulled victory from the jaws of defeat. They bravely confronted several obstacles including the possibility of claim preclusion based on a class release entered in state court (by other counsel), federal preemption, hard-fought dispositive motions, and voluminous discovery. They rescued the case [counsel that originally filed] had botched and secured a full recovery of $203 million in restitution plus injunctive relief. Notably, Attorney Richard Heimann's trial performance ranks as one of the best this judge has seen in sixteen years on the bench. Lieff, Cabraser then twice defended the class on appeal. At oral argument on the present motion, in addition to the cash restitution, Wells Fargo acknowledged that since 2010, its posting practices changed nationwide, in part, because of the injunction. Accordingly, this order allows a multiplier of 5.5 mainly on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment."

5. ***Kline v. The Progressive Corporation***, Circuit No. 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois). Lieff Cabraser served as settlement class counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices. Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified. In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief. The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

6. ***Catholic Healthcare West Cases***, JCCP No. 4453 (Cal. Supr. Ct.). Plaintiff alleged that Catholic Healthcare West ("CHW") charged uninsured patients excessive fees for treatment and services, at rates far higher than the rates charged to patients with private insurance or on Medicare. In January 2007, the Court approved a settlement that provides discounts, refunds and other benefits for CHW patients valued at $423 million. The settlement requires that CHW lower its charges and end price discrimination against all uninsured patients, maintain generous charity case policies allowing low-income and uninsured patients to receive free or heavily discounted care, and protect uninsured patients from unfair collections practices. Lieff Cabraser served as Lead Counsel in the coordinated action.

7.    ***In re Neurontin Marketing and Sales Practices Litigation***, MDL
      No. 1629 (D. Mass.).  Lieff Cabraser served on the Plaintiffs' Steering
      Committee in multidistrict litigation arising out of the sale and marketing
      of the prescription drug Neurontin, manufactured by Parke-Davis, a
      division of Warner-Lambert Company, which was later acquired by Pfizer,
      Inc.  Lieff Cabraser served as co-counsel to Kaiser Foundation Health
      Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser") in Kaiser's trial
      against Pfizer in the litigation.  On March 25, 2010, a federal court jury
      determined that Pfizer violated a federal antiracketeering law by
      promoting its drug Neurontin for unapproved uses and found Pfizer must
      pay Kaiser damages up to $142 million.  At trial, Kaiser presented
      evidence that Pfizer knowingly marketed Neurontin for unapproved uses
      without proof that it was effective.  Kaiser said it was misled into believing
      neuropathic pain, migraines, and bipolar disorder were among the
      conditions that could be treated effectively with Neurontin, which was
      approved by the FDA as an adjunctive therapy to treat epilepsy and later
      for post-herpetic neuralgia, a specific type of neuropathic pain.  In
      November 2010, the Court issued Findings of Fact and Conclusions of
      Law on Kaiser's claims arising under the California Unfair Competition
      Law, finding Pfizer liable and ordering that it pay restitution to Kaiser of
      approximately $95 million.  In April 2013, the First Circuit Court of
      Appeals affirmed both the jury's and the District Court's verdicts.  In
      November 2014, the Court approved a $325 million settlement on behalf
      of a nationwide class of third party payors.

8.    ***Sutter Health Uninsured Pricing Cases***, JCCP No. 4388 (Cal. Supr.
      Ct.).  Plaintiffs alleged that they and a Class of uninsured patients treated
      at Sutter hospitals were charged substantially more than patients with
      private or public insurance, and many times above the cost of providing
      their treatment.  In December 2006, the Court granted final approval to a
      comprehensive and groundbreaking settlement of the action.  As part of
      the settlement, Class members were entitled to make a claim for refunds
      or deductions of between 25% to 45% from their prior hospital bills, at an
      estimated total value of $276 million.  For a three year period, Sutter
      agreed to provide discounted pricing policies for uninsureds.  In addition,
      Sutter agreed to maintain more compassionate collections policies that
      will protect uninsureds who fall behind in their payments.  Lieff Cabraser
      served as Lead Counsel in the coordinated action.

9.    ***Citigroup Loan Cases***, JCCP No. 4197 (San Francisco Supr. Ct., Cal.).
      In 2003, the Court approved a settlement that provided approximately
      $240 million in relief to former Associates' customers across America.
      Prior to its acquisition in November 2000, Associates First Financial,
      referred to as The Associates, was one of the nation's largest "subprime"
      lenders.  Lieff Cabraser represented former customers of The Associates
      charging that the company added unwanted and unnecessary insurance

products onto mortgage loans and engaged in improper loan refinancing practices. Lieff Cabraser served as nationwide Plaintiffs' Co-Liaison Counsel.

10. ***Telephone Consumer Protection Act Litigation***. Lieff Cabraser has spearheaded a series of groundbreaking class actions under the Telephone Consumer Protection Act ("TCPA"), which prohibits abusive telephone practices by lenders and marketers, and places strict limits on the use of autodialers to call or send texts to cell phones. The settlements in these cases have collectively put a stop to millions of harassing calls by debt collectors and others and resulted in the recovery by consumers across America of over $300 million.

In 2012, Lieff Cabraser achieved a $24.15 million class settlement with Sallie Mae – the then-largest settlement in the history of the TCPA. See ***Arthur v. Sallie Mae, Inc.***, No. C10-0198 JLR, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012). In subsequent cases, Lieff Cabraser and co-counsel eclipsed this record, including a $32,083,905 settlement with Bank of America (***Duke v. Bank of America***, No. 5:12-cv-04009-EJD (N.D. Cal.)), a $39,975,000 settlement with HSBC (***Wilkins v. HSBC Bank Nev., N.A.***, Case No. 14-cv-190 (N.D. Ill.)), and a $75,455,098.74 settlement with Capital One (***In re Capital One Telephone Consumer Protection Act Litigation***, Master Docket No. 1:12-cv-10064 (N.D. Ill.)). In the ***HSBC*** matter, Judge James F. Holderman commented on "the excellent work" and "professionalism" of Lieff Cabraser and its co-counsel. As noted above, Lieff Cabraser's class settlements in TCPA cases have collectively resulted in the recovery by consumers of over $300 million.

11. ***Thompson v. WFS Financial***, No. 3-02-0570 (M.D. Tenn.); ***Pakeman v. American Honda Finance Corporation***, No. 3-02-0490 (M.D. Tenn.); ***Herra v. Toyota Motor Credit Corporation***, No. CGC 03-419 230 (San Francisco Supr. Ct.). Lieff Cabraser with co-counsel litigated against several of the largest automobile finance companies in the country to compensate victims of—and stop future instances of—racial discrimination in the setting of interest rates in automobile finance contracts. The litigation led to substantial changes in the way Toyota Motor Credit Corporation ("TMCC"), American Honda Finance Corporation ("American Honda") and WFS Financial, Inc. sell automobile finance contracts, limiting the discrimination that can occur. In approving the settlement in *Thompson v. WFS Financial*, the Court recognized the "innovative" and "remarkable settlement" achieved on behalf of the nationwide class. In 2006 in *Herra v. Toyota Motor Credit Corporation*, the Court granted final approval to a nationwide class action settlement on behalf of all African-American and Hispanic customers of TMCC who entered into retail installment contracts that were assigned to

TMCC from 1999 to 2006.  The monetary benefit to the class was estimated to be between $159-$174 million.

12.   ***In re John Muir Uninsured Healthcare Cases***, JCCP No. 4494 (Cal. Supr. Ct.).  Lieff Cabraser represented nearly 53,000 uninsured patients who received care at John Muir hospitals and outpatient centers and were charged inflated prices and then subject to overly aggressive collection practices when they failed to pay.  In November 2008, the Court approved a final settlement of the *John Muir* litigation.  John Muir agreed to provide refunds or bill adjustments of 40-50% to uninsured patients who received medical care at John Muir over a six year period, bringing their charges to the level of patients with private insurance, at a value of $115 million.  No claims were required.  Every class member received a refund or bill adjustment.  Furthermore, John Muir was required to (1) maintain charity care policies to give substantial discounts—up to 100%—to low income, uninsured patients who meet certain income requirements; (2) maintain an Uninsured Patient Discount Policy to give discounts to all uninsured patients, regardless of income, so that they pay rates no greater than those paid by patients with private insurance; (3) enhance communications to uninsured patients so they are better advised about John Muir's pricing discounts, financial assistance, and financial counseling services; and (4) limit the practices for collecting payments from uninsured patients.

13.   ***Providian Credit Card Cases***, JCCP No. 4085 (San Francisco Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services.  In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices.  The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.

14.   ***In re Chase Bank USA, N.A. "Check Loan" Contract Litigation***, MDL No. 2032 (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in Multi-District Litigation ("MDL") charging that Chase Bank violated the implied covenant of good faith and fair dealing by unilaterally modifying the terms of fixed rate loans.  The MDL was established in 2009 to coordinate more than two dozen cases that were filed in the wake of the conduct at issue.  The nationwide, certified class consisted of more than 1 million

Chase cardholders who, in 2008 and 2009, had their monthly minimum payment requirements unilaterally increased by Chase by more than 150%. Plaintiffs alleged that Chase made this change, in part, to induce cardholders to give up their promised fixed APRs in order to avoid the unprecedented minimum payment hike. In November 2012, the Court approved a $100 million settlement of the case.

15. ***In re Synthroid Marketing Litigation***, MDL No. 1182 (N.D. Ill.). Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid. The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available. In 2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings. 264 F.3d 712 (7th Cir. 2001). The settlement proceeds were distributed in 2003.

16. ***R.M. Galicia v. Franklin; Franklin v. Scripps Health***, No. IC 859468 (San Diego Supr. Ct., Cal.). Lieff Cabraser served as Lead Class Counsel in a certified class action lawsuit on behalf of 60,750 uninsured patients who alleged that the Scripps Health hospital system imposed excessive fees and charges for medical treatment. The class action originated in July 2006, when uninsured patient Phillip Franklin filed a class action cross-complaint against Scripps Health after Scripps sued Mr. Franklin through a collection agency. Mr. Franklin alleged that he, like all other uninsured patients of Scripps Health, was charged unreasonable and unconscionable rates for his medical treatment. In June 2008, the Court granted final approval to a settlement of the action which includes refunds or discounts of 35% off of medical bills, collectively worth $73 million. The settlement also required Scripps Health to modify its pricing and collections practices by (1) following an Uninsured Patient Discount Policy, which includes automatic discounts from billed charges for Hospital Services; (2) following a Charity Care Policy, which provides uninsured patients who meet certain income tests with discounts on Health Services up to 100% free care, and provides for charity discounts under other special circumstances; (3) informing uninsured patients about the availability and terms of the above financial assistance policies; and (4) restricting certain collections practices and actively monitoring outside collection agents.

17. ***In re Lawn Mower Engine Horsepower Marketing and Sales Practices Litigation***, MDL No. 1999 (E.D. Wi.). Lieff Cabraser served as co-counsel for consumers who alleged manufacturers of certain

gasoline-powered lawn mowers misrepresented, and significantly overstated, the horsepower of the product. As the price for lawn mowers is linked to the horsepower of the engine -- the higher the horsepower, the more expensive the lawn mower -- defendants' alleged misconduct caused consumers to purchase expensive lawn mowers that provided lower horsepower than advertised. In August 2010, the Court approved a $65 million settlement of the action.

18. ***Strugano v. Nextel Communications***, No. BC 288359 (Los Angeles Supr. Ct).  In May 2006, the Los Angeles Superior Court granted final approval to a class action settlement on behalf of all California customers of Nextel from January 1, 1999 through December 31, 2002, for compensation for the harm caused by Nextel's alleged unilateral (1) addition of a $1.15 monthly service fee and/or (2) change from second-by-second billing to minute-by-minute billing, which caused "overage" charges (i.e., for exceeding their allotted cellular plan minutes).  The total benefit conferred by the Settlement directly to Class Members was between approximately $13.5 million and $55.5 million, depending on which benefit Class Members selected.

19. ***Curry v. Fairbanks Capital Corporation***, No. 03-10895-DPW (D. Mass.).  In 2004, the Court approved a $55 million settlement of a class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans.  The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers.  Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

20. ***Payment Protection Credit Card Litigation***.  Lieff Cabraser represented consumers in litigation in federal court against some of the nation's largest credit card issuers, challenging the imposition of charges for so-called "payment protection" or "credit protection" programs.  The complaints charged that the credit card companies imposed payment protection without the consent of the consumer and/or deceptively marketed the service, and further that the credit card companies unfairly administered their payment protection programs to the detriment of consumers.  In 2012 and 2013, the Courts approved monetary settlements with HSBC ($23.5 million), Bank of America ($20 million), and Discover ($10 million) that also required changes in the marketing and sale of payment protection to consumers.

21. ***California Title Insurance Industry Litigation***.  Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance

companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings. The settlements brought a total of $50 million in restitution to California consumers, including cash payments. In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers. The defendant companies include Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.

22. ***Vytorin/Zetia Marketing, Sales Practices & Products Liability Litigation***, MDL No. 1938 (D. N.J.). Lieff Cabraser served on the Executive Committee of the Plaintiffs' Steering Committee representing plaintiffs alleging that Merck/Schering-Plough Pharmaceuticals falsely marketed anti-cholesterol drugs Vytorin and Zetia as being more effective than other anti-cholesterol drugs. Plaintiffs further alleged that Merck/Schering-Plough Pharmaceuticals sold Vytorin and Zetia at higher prices than other anti-cholesterol medication when they were no more effective than other drugs. In 2010, the Court approved a $41.5 million settlement for consumers who bought Vytorin or Zetia between November 2002 and February 2010.

23. ***Morris v. AT&T Wireless Services***, No. C-04-1997-MJP (W.D. Wash.). Lieff Cabraser served as class counsel for a nationwide settlement class of cell phone customers subjected to an end-of-billing cycle cancellation policy implemented by AT&T Wireless in 2003 and alleged to have breached customers' service agreements. In May 2006, the New Jersey Superior Court granted final approval to a class settlement that guarantees delivery to the class of $40 million in benefits. Class members received cash-equivalent calling cards automatically, and had the option of redeeming them for cash. Lieff Cabraser had been prosecuting the class claims in the Western District of Washington when a settlement in New Jersey state court was announced. Lieff Cabraser objected to that settlement as inadequate because it would have only provided $1.5 million in benefits without a cash option, and the Court agreed, declining to approve it. Thereafter, Lieff Cabraser negotiated the new settlement providing $40 million to the class, and the settlement was approved.

24. ***Berger v. Property I.D. Corporation***, No. CV 05-5373-GHK (C.D. Cal.). In January 2009, the Court granted final approval to a $39.4 million settlement with several of the nation's largest real estate brokerages, including companies doing business as Coldwell Banker, Century 21, and ERA Real Estate, and California franchisors for RE/MAX and Prudential California Realty, in an action under the Real Estate Settlement Procedures Act on behalf of California home sellers. Plaintiffs charged that the brokers and Property I.D.

Corporation set up straw companies as a way to disguise kickbacks for referring their California clients' natural hazard disclosure report business to Property I.D. (the report is required to sell a home in California). Under the settlement, hundreds of thousands of California home sellers were eligible to receive a full refund of the cost of their report, typically about $100.

25. ***In re Tri-State Crematory Litigation***, MDL No. 1467 (N.D. Ga.). In March 2004, Lieff Cabraser delivered opening statements and began testimony in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia. The families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by human decency. One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million. Trial on the class members' claims against the operators of crematory began in August 2004. Soon thereafter, these defendants entered into a $80 million settlement with plaintiffs. As part of the settlement, all buildings on the Tri-State property were razed. The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there. Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order. 215 F.R.D. 660 (2003).

26. ***In re American Family Enterprises***, MDL No. 1235 (D. N.J.). Lieff Cabraser served as Co-Lead Counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers." The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize. In September 2000, the Court granted final approval of a $33 million settlement of the class action. In April 2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases. In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

27. ***Walsh v. Kindred Healthcare Inc.***, No. 3:11-cv-00050 (N.D. Cal.). Lieff Cabraser and co-counsel represented a class of 54,000 current and former residents, and families of residents, of skilled nursing care facilities in a class action against Kindred Healthcare for failing to adequately staff its nursing facilities in California. Since January 1, 2000,

skilled nursing facilities in California have been required to provide at least 3.2 hours of direct nursing hours per patient day (NHPPD), which represented the minimum staffing required for patients at skilled nursing facilities.

The complaint alleged a pervasive and intentional failure by Kindred Healthcare to comply with California's required minimum standard for qualified nurse staffing at its facilities. Understaffing is uniformly viewed as one of the primary causes of the inadequate care and often unsafe conditions in skilled nursing facilities. Studies have repeatedly shown a direct correlation between inadequate skilled nursing care and serious health problems, including a greater likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death. The complaint further charged that Kindred Healthcare collected millions of dollars in payments from residents and their family members, under the false pretense that it was in compliance with California staffing laws and would continue to do so.

In December 2013, the Court approved a $8.25 million settlement which included cash payments to class members and an injunction requiring Kindred Healthcare to consistently utilize staffing practices which would ensure they complied with applicable California law. The injunction, subject to a third party monitor, was valued at between $6 to $20 million.

28. ***Cincotta v. California Emergency Physicians Medical Group***, No. 07359096 (Cal. Supr. Ct.). Lieff Cabraser served as class counsel for nearly 100,000 uninsured patients that alleged they were charged excessive and unfair rates for emergency room service across 55 hospitals throughout California. The settlement, approved on October 31, 2008, provided complete debt elimination, 100% cancellation of the bill, to uninsured patients treated by California Emergency Physicians Medical Group during the 4-year class period. These benefits were valued at $27 million. No claims were required, so all of these bills were cancelled. In addition, the settlement required California Emergency Physicians Medical Group prospectively to (1) maintain certain discount policies for all charity care patients; (2) inform patients of the available discounts by enhanced communications; and (3) limit significantly the type of collections practices available for collecting from charity care patients.

29. ***In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation***, MDL No. 1715. Lieff Cabraser served as Co-Lead Counsel for borrowers who alleged that Ameriquest engaged in a predatory lending scheme based on the sale of loans with illegal and undisclosed fees and terms. In August 2010, the Court approved a $22 million settlement.

30. ***ING Bank Rate Renew Cases***, Case No. 11-154-LPS (D. Del.). Lieff Cabraser represented borrowers in class action lawsuits charging that

ING Direct breached its promise to allow them to refinance their mortgages for a flat fee. From October 2005 through April 2009, ING promoted a $500 or $750 flat-rate refinancing fee called "Rate Renew" as a benefit of choosing ING for mortgages over competitors. Beginning in May 2009, however, ING began charging a higher fee of a full monthly mortgage payment for refinancing using "Rate Renew," despite ING's earlier and lower advertised price. As a result, the complaint alleged that many borrowers paid more to refinance their loans using "Rate Renew" than they should have, or were denied the opportunity to refinance their loan even though the borrowers met the terms and conditions of ING's original "Rate Renew" offer. In August 2012, the Court certified a class of consumers in ten states who purchased or retained an ING mortgage from October 2005 through April 2009. A second case on behalf of California consumers was filed in December 2012. In October 2014, the Court approved a $20.35 million nationwide settlement of the litigation. The settlement provided an average payment of $175 to the nearly 100,000 class members, transmitted to their accounts automatically and without any need to file a claim form.

31. ***Yarrington v. Solvay Pharmaceuticals***, No. 09-CV-2261 (D. Minn.). In March 2010, the Court granted final approval to a $16.5 million settlement with Solvay Pharmaceuticals, one of the country's leading pharmaceutical companies. Lieff Cabraser served as Co-Lead Counsel, representing a class of persons who purchased Estratest—a hormone replacement drug. The class action lawsuit alleged that Solvay deceptively marketed and advertised Estratest as an FDA-approved drug when in fact Estratest was not FDA-approved for any use. Under the settlement, consumers obtained partial refunds for up to 30% of the purchase price paid of Estratest. In addition, $8.9 million of the settlement was allocated to fund programs and activities devoted to promoting women's health and well-being at health organizations, medical schools, and charities throughout the nation.

32. ***Reverse Mortgage Cases***, JCCP No. 4061 (San Mateo County Supr. Ct., Cal.). Transamerica Corporation, through its subsidiary Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime." The Lifetime reverse mortgages were sold exclusively to seniors, *i.e.*, persons 65 years or older. Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees. In 2003, the Court granted final approval to an $8 million settlement of the action.

33. ***Brazil v. Dell***, No. C-07-01700 RMW (N.D. Cal.). Lieff Cabraser served as Class Counsel representing a certified class of online consumers in

California who purchased certain Dell computers based on the advertisement of an instant-off (or "slash-through") discount. The complaint challenged Dell's pervasive use of "slash-through" reference prices in its online marketing. Plaintiffs alleged that these "slash-through" reference prices were interpreted by consumers as representing Dell's former or regular sales prices, and that such reference prices (and corresponding representations of "savings") were false because Dell rarely, if ever, sold its products at such prices. In October 2011, the Court approved a settlement that provided a $50 payment to each class member who submitted a timely and valid claim. In addition, in response to the lawsuit, Dell changed its methodology for consumer online advertising, eliminating the use of "slash-through" references prices.

34.     ***Hepting v. AT&T Corp.***, Case No. C-06-0672-VRW (N.D. Cal.). Plaintiffs alleged that AT&T collaborated with the National Security Agency in a massive warrantless surveillance program that illegally tracked the domestic and foreign communications and communications records of millions of Americans in violation of the U.S. Constitution, Electronic Communications Privacy Act, and other statutes. The case was filed on January 2006. The U.S. government quickly intervened and sought dismissal of the case. By the Spring of 2006, over 50 other lawsuits were filed against various telecommunications companies, in response to a *USA Today* article confirming the surveillance of communications and communications records. The cases were combined into a multi-district litigation proceeding entitled *In re National Security Agency Telecommunications Record Litigation*, MDL No. 06-1791. In June of 2006, the District Court rejected both the government's attempt to dismiss the case on the grounds of the state secret privilege and AT&T's arguments in favor of dismissal. The government and AT&T appealed the decision and the U.S. Court of Appeals for the Ninth Circuit heard argument one year later. No decision was issued. In July 2008, Congress granted the government and AT&T "retroactive immunity" for liability for their wiretapping program under amendments to the Foreign Intelligence Surveillance Act that were drafted in response to this litigation. Signed into law by President Bush in 2008, the amendments effectively terminated the litigation. Lieff Cabraser played a leading role in the litigation working closely with co-counsel from the Electronic Frontier Foundation.

35.     ***In Re Apple and AT&T iPad Unlimited Data Plan Litigation***, No. 5:10-cv-02553 RMW (N.D. Ca.). Lieff Cabraser served as class counsel in an action against Apple and AT&T charging that Apple and AT&T misrepresented that consumers purchasing an iPad with 3G capability could choose an unlimited data plan for a fixed monthly rate and switch in and out of the unlimited plan on a monthly basis as they wished. Less than six weeks after its introduction to the U.S. market, AT&T and Apple

discontinued their unlimited data plan for any iPad 3G customers not currently enrolled and prohibited current unlimited data plan customers from switching back and forth from a less expensive, limited data plan. In March 2014, Apple agreed to compensate all class members $40 and approximately 60,000 claims were paid. In addition, sub-class members who had not yet entered into an agreement with AT&T were offered a data plan.

## V.   Economic Injury Product Defects

### A.   Current Cases

1.   ***McClellan, et al. v. Fitbit, Inc.***, Case Nos. 16-cv-00036-JD; 16-cv-00777-JD (N.D. Cal.). Lieff Cabraser represents consumers nationwide in litigation against Fitbit that alleges the Fitbit Blaze, Charge HR and Fitbit Surge heart monitors do not and cannot consistently record accurate heart rates during the intense physical activity for which Fitbit expressly markets the devices in widespread advertising. The lawsuit contends — and expert testing confirms — that the Fitbit heart rate monitors consistently mis-record heart rates by a significant margin, particularly during intense exercise. Not only are accurate heart readings important for those engaging in fitness, they can be critical to the health and well-being of people whose medical conditions require them to maintain (or not exceed) a certain heart rate. In May 2016, plaintiffs filed an amended complaint including comprehensive new studies conducted by researchers at California State Polytechnic University, Pomona confirming that Fitbit's monitors are "highly inaccurate during elevated physical activity." The litigation is ongoing.

2.   ***Front-Loading Washer Products Liability Litigation***. Lieff Cabraser represents consumers in multiple states who have filed separate class action lawsuits against Whirlpool, Sears and LG Corporations. The complaints charge that certain front-loading automatic washers manufactured by these companies are defectively designed and that the design defects create foul odors from mold and mildew that permeate washing machines and customers' homes. Many class members have spent money for repairs and on other purported remedies. As the complaints allege, none of these remedies eliminates the problem.

3.   ***In Re General Motors LLC Ignition Switch Litigation***, MDL No. 2543 (S.D. N.Y.). Lieff Cabraser represents proposed nationwide classes of GM vehicle owners and lessees whose cars include defective ignition switches in litigation focusing on economic loss claims. On August 15, 2014, U.S. District Court Judge Jesse M. Furman appointed Elizabeth J. Cabraser as Co-Lead Plaintiffs' Counsel in the litigation, which seeks compensation on behalf of consumers who purchased or leased GM vehicles containing a defective ignition switch, over 500,000 of which

have now been recalled. The consumer complaints allege that the ignition switches in these vehicles share a common, uniform, and defective design. As a result, these cars are of a lesser quality than GM represented, and class members overpaid for the cars. Further, GM's public disclosure of the ignition switch defect has caused the value of these cars to materially diminish. The complaints seek monetary relief for the diminished value of the class members' cars.

4.    ***Honda Window Defective Window Litigation***. Case No. 2:21-cv-01142-SVW-PLA (C.D. CA). Lieff Cabraser represents consumers in a class action lawsuit filed against Honda Motor Company, Inc. for manufacturing and selling vehicles with allegedly defective window regulator mechanisms. Windows in these vehicles allegedly can, without warning, drop into the door frame and break or become permanently stuck in the fully-open position.

The experience of one Honda Element owner, as set forth in the complaint, exemplifies the problem: The driver's side window in his vehicle slid down suddenly while he was driving on a smooth road. A few months later, the window on the passenger side of the vehicle also slid down into the door and would not move back up. The owner incurred more than $300 in repair costs, which Honda refused to pay for. Discovery in the action is ongoing.

5.    ***Moore, et al. v. Samsung Electronics America and Samsung Electronics Co., Ltd.***, Case No. 2:16-cv-4966 (D.N.J.). Lieff Cabraser represents consumers in federal court in New Jersey in cases focusing on complaints about Samsung top-loading washing machines that explode in the home, causing damage to walls, doors, and other equipment and presenting significant injury risks. Owners report Samsung top-load washers exploding as early as the day of installation, while others have seen their machines explode months or even more than a year after purchase. The lawsuit seeks injunctive relief as well as remedial and restitutionary actions and damages.

6.    ***In re Chinese-Manufactured Drywall Products Liability Litigation***, No. 10-30568 (E.D. La.). Lieff Cabraser with co-counsel represents a proposed class of builders who suffered economic losses as a result of the presence of Chinese-manufactured drywall in homes and other buildings they constructed. From 2005 to 2008, hundreds-of-millions of square feet of gypsum wallboard manufactured in China were exported to the U.S., primarily to the Gulf Coast states, and installed in newly-constructed and reconstructed properties. After installation of this drywall, owners and occupants of the properties began noticing unusual odors, blackening of silver and copper items and components, and the failure of appliances, including microwaves, refrigerators, and air-

conditioning units. Some residents of the affected homes also experienced health problems, such as skin and eye irritation, respiratory issues, and headaches.

Lieff Cabraser's client, Mitchell Company, Inc., was the first to perfect service on Chinese defendant Taishan Gypsum Co. Ltd. ("TG"), and thereafter secured a default judgment against TG. Lieff Cabraser participated in briefing that led to the District Court's denial of TG's motion to dismiss the class action complaint for lack of personal jurisdiction. On May 21, 2014, the U.S. Court of Appeals for the Fifth Court affirmed the District Court's default judgment against TG, finding jurisdiction based on ties of the company and its agent with state distributors. 753 F.3d 521 (5th Cir. 2014).

## B. Successes

1. ***Allagas v. BP Solar***, No. 3:14-cv-00560-SI (N.D. Cal.). Lieff Cabraser and co-counsel represented California consumers in a class action lawsuit against BP Solar and Home Depot charging the companies sold solar panels with defective junction boxes that caused premature failures and fire risks. In January 2017, Judge Susan Illston granted final approval to a consumer settlement valued at more than $67 million that extends relief to a nationwide class as well as eliminating the serious fire risks.

2. ***In re Mercedes-Benz Tele-Aid Contract Litigation***, MDL No. 1914 (D. N.J.). Lieff Cabraser represented owners and lessees of Mercedes-Benz cars and SUVs equipped with the Tele-Aid system, an emergency response system which links subscribers to road-side assistance operators by using a combination of global positioning and cellular technology. In 2002, the Federal Communications Commission issued a rule, effective 2008, eliminating the requirement that wireless phone carriers provide analog-based networks. The Tele-Aid system offered by Mercedes-Benz relied on analog signals. Plaintiffs charged that Mercedes-Benz committed fraud in promoting and selling the Tele-Aid system without disclosing to buyers of certain model years that the Tele-Aid system as installed would become obsolete in 2008.

In an April 2009 published order, the Court certified a nationwide class of all persons or entities in the U.S. who purchased or leased a Mercedes-Benz vehicle equipped with an analog-only Tele Aid system after August 8, 2002, and (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or (2) purchased an upgrade to digital equipment. In September 2011, the Court approved a settlement that provided class members between a $650 check or a $750 to $1,300 certificate toward the purchase or lease of new Mercedes-Benz vehicle, depending upon whether or not they paid for an upgrade of the analog Tele Aid system and whether they still owned their

vehicle. In approving the settlement, U.S. District Court Judge Dickinson R. Debevoise stated, "I want to thank counsel for the . . . very effective and good work . . . . It was carried out with vigor, integrity and aggressiveness with never going beyond the maxims of the Court."

3.    ***McLennan v. LG Electronics USA***, No. 2:10-cv-03604 (D. N.J.). Lieff Cabraser represented consumers who alleged several LG refrigerator models had a faulty design that caused the interior lights to remain on even when the refrigerator doors were closed (identified as the "light issue"), resulting in overheating and food spoilage. In March 2012, the Court granted final approval to a settlement of the nationwide class action lawsuit. The settlement provides that LG reimburse class members for all out-of-pocket costs (parts and labor) to repair the light issue prior to the mailing of the class notice and extends the warranty with respect to the light issue for 10 years from the date of the original retail purchase of the refrigerator. The extended warranty covers in-home refrigerator repair performed by LG and, in some cases, the cost of a replacement refrigerator. In approving the settlement, U.S. District Court Judge William J. Martini stated, "The Settlement in this case provides for both the complete reimbursement of out-of-pocket expenses for repairs fixing the Light Issue, as well as a warranty for ten years from the date of refrigerator purchase. It would be hard to imagine a better recovery for the Class had the litigation gone to trial. Because Class members will essentially receive all of the relief to which they would have been entitled after a successful trial, this factor weighs heavily in favor of settlement."

4.    ***Grays Harbor Adventist Christian School v. Carrier Corporation***, No. 05-05437 (W.D. Wash.). In April 2008, the Court approved a nationwide settlement for current and past owners of high-efficiency furnaces manufactured and sold by Carrier Corporation and equipped with polypropylene-laminated condensing heat exchangers ("CHXs"). Carrier sold the furnaces under the Carrier, Bryant, Day & Night and Payne brand-names. Plaintiffs alleged that starting in 1989 Carrier began manufacturing and selling high efficiency condensing furnaces manufactured with a secondary CHX made of inferior materials. Plaintiffs alleged that as a result, the CHXs, which Carrier warranted and consumers expected to last for 20 years, failed prematurely. The settlement provides an enhanced 20-year warranty of free service and free parts for consumers whose furnaces have not yet failed. The settlement also offers a cash reimbursement for consumers who already paid to repair or replace the CHX in their high-efficiency Carrier furnaces.

An estimated three million or more consumers in the U.S. and Canada purchased the furnaces covered under the settlement. Plaintiffs valued the settlement to consumers at over $300 million based upon the

combined value of the cash reimbursement and the estimated cost of an enhanced warranty of this nature.

5.   ***Carideo v. Dell***, No. C06-1772 JLR (W.D. Wash.).  Lieff Cabraser represented consumers who owned Dell Inspiron notebook computer model numbers 1150, 5100, or 5160.  The class action lawsuit complaint charged that the notebooks suffered premature failure of their cooling system, power supply system, and/or motherboards.  In December 2010, the Court approved a settlement which provided class members that paid Dell for certain repairs to their Inspiron notebook computer a reimbursement of all or a portion of the cost of the repairs.

6.   ***Cartwright v. Viking Industries***, No. 2:07-cv-2159 FCD (E.D. Cal.)  Lieff Cabraser represented California homeowners in a class action lawsuit which alleged that over one million Series 3000 windows produced and distributed by Viking between 1989 and 1999 were defective.  The plaintiffs charged that the windows were not watertight and allowed for water to penetrate the surrounding sheetrock, drywall, paint or wallpaper.  Under the terms of a settlement approved by the Court in August 2010, all class members who submitted valid claims were entitled to receive as much as $500 per affected property.

7.   ***Pelletz v. Advanced Environmental Recycling Technologies*** (W.D. Wash.).  Lieff Cabraser served as Co-Lead Counsel in a case alleging that ChoiceDek decking materials, manufactured by AERT, developed persistent and untreatable mold spotting throughout their surface.  In a published opinion in January 2009, the Court approved a settlement that provided affected consumers with free and discounted deck treatments, mold inhibitor applications, and product replacement and reimbursement.

8.   ***Create-A-Card v. Intuit***, No. C07-6452 WHA (N.D. Cal.).  Lieff Cabraser, with co-counsel, represented business users of QuickBooks Pro for accounting that lost their QuickBooks data and other files due to faulty software code sent by Intuit, the producer of QuickBooks.  In September 2009, the Court granted final approval to a settlement that provided all class members who filed a valid claim with a free software upgrade and compensation for certain data-recovery costs.  Commenting on the settlement and the work of Lieff Cabraser on September 17, 2009, U.S. District Court Judge William H. Alsup stated, "I want to come back to something that I observed in this case firsthand for a long time now.  I think you've done an excellent job in the case as class counsel and the class has been well represented having you and your firm in the case."

9.   ***Weekend Warrior Trailer Cases***, JCCP No. 4455 (Cal. Supr. Ct.).  Lieff Cabraser, with co-counsel, represented owners of Weekend Warrior trailers manufactured between 1998 and 2006 that were equipped with

frames manufactured, assembled, or supplied by Zieman Manufacturing Company. The trailers, commonly referred to as "toy haulers," were used to transport outdoor recreational equipment such as motorcycles and all-terrain vehicles. Plaintiffs charged that Weekend Warrior and Zieman knew of design and performance problems, including bent frames, detached siding, and warped forward cargo areas, with the trailers, and concealed the defects from consumers. In February 2008, the Court approved a $5.5 million settlement of the action that provided for the repair and/or reimbursement of the trailers. In approving the settlement, California Superior Court Judge Thierry P. Colaw stated that class counsel were "some of the best" and "there was an overwhelming positive reaction to the settlement" among class members.

10. **Lundell v. Dell**, No. C05-03970 (N.D. Cal.). Lieff Cabraser served as Lead Class Counsel for consumers who experienced power problems with the Dell Inspiron 5150 notebook. In December 2006, the Court granted final approval to a settlement of the class action which extended the one-year limited warranty on the notebook for a set of repairs related to the power system. In addition, class members that paid Dell or a third party for repair of the power system of their notebook were entitled to a 100% cash refund from Dell.

11. **Kan v. Toshiba American Information Systems**, No. BC327273 (Los Angeles Super. Ct.). Lieff Cabraser served as Co-Lead Counsel for a class of all end-user persons or entities who purchased or otherwise acquired in the United States, for their own use and not for resale, a new Toshiba Satellite Pro 6100 Series notebook. Consumers alleged a series of defects were present in the notebook. In 2006, the Court approved a settlement that extended the warranty for all Satellite Pro 6100 notebooks, provided cash compensation for certain repairs, and reimbursed class members for certain out-of-warranty repair expenses.

12. **Foothill/DeAnza Community College District v. Northwest Pipe Company**, No. C-00-20749 (N.D. Cal.). In June 2004, the Court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails. Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S. as part of fire suppression systems for use in residential and commercial buildings. After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok. The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product. Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

13. ***Toshiba Laptop Screen Flicker Settlement***.  Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component.  In 2004 under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers.  TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months.

14. ***McManus v. Fleetwood Enterprises, Inc.***, No. SA-99-CA-464-FB (W.D. Tex.).  Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes.  In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes.  The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer.  The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new.   Earlier, the appellate court found that common questions predominated under purchasers' breach of implied warranty of merchantability claim.  320 F.3d 545 (5th Cir. 2003).

15. ***Richison v. American Cemwood Corp.***, No. 005532 (San Joaquin Supr. Ct., Cal.).  Lieff Cabraser served as Co-Lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed.  In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation.  This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.

16. ***ABS Pipe Litigation***, JCCP No. 3126 (Contra Costa County Supr. Ct., Cal.).  Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking.  Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product.  Between 1998 and 2001, Lieff Cabraser achieved 12 separate settlements

in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."

17. ***Williams v. Weyerhaeuser***, No. 995787 (San Francisco Supr. Ct.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding. A California-wide class was certified for all purposes in February 1999, and withstood writ review by both the California Court of Appeals and Supreme Court of California. In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing, damaged siding. The settlement has no cap, and requires Weyerhaeuser to pay all timely, qualified claims over a nine year period.

18. ***Naef v. Masonite***, No. CV-94-4033 (Mobile County Circuit Ct., Ala.). Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide Class of an estimated 4 million homeowners with allegedly defective hardboard siding manufactured and sold by Masonite Corporation, a subsidiary of International Paper, installed on their homes. The Court certified the class in November 1995, and the Alabama Supreme Court twice denied extraordinary writs seeking to decertify the Class, including in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996). A month-long jury trial in 1996 established the factual predicate that Masonite hardboard siding was defective under the laws of most states. The case settled on the eve of a second class-wide trial, and in 1998, the Court approved a settlement. Under a claims program established by the settlement that ran through 2008, class members with failing Masonite hardboard siding installed and incorporated in their property between January 1, 1980 and January 15, 1998 were entitled to make claims, have their homes evaluated by independent inspectors, and receive cash payments for damaged siding. Combined with settlements involving other alleged defective home building products sold by Masonite, the total cash paid to homeowners exceeded $1 billion.

19. ***In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation***, MDL No. 961 (E.D. Pa.). Lieff Cabraser served as

Court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks. The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss Act, state consumer protection statutes, and common law. In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings. In July 1996, a new nationwide class action was certified for purposes of an enhanced settlement program valued at a minimum of $600 million, plus funding for independent fuel system safety research projects. The Court granted final approval of the settlement in November 1996.

20.     *In re Louisiana-Pacific Inner-Seal Siding Litigation*, No. C-95-879-JO (D. Ore.). Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide class of homeowners with defective exterior siding on their homes. Plaintiffs asserted claims for breach of warranty, fraud, negligence, and violation of consumer protection statutes. In 1996, U.S. District Judge Robert E. Jones entered an Order, Final Judgment and Decree granting final approval to a nationwide settlement requiring Louisiana-Pacific to provide funding up to $475 million to pay for inspection of homes and repair and replacement of failing siding over the next seven years.

21.     *In re Intel Pentium Processor Litigation*, No. CV 745729 (Santa Clara Supr. Ct., Cal.). Lieff Cabraser served as one of two Court-appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion.

22.     *Cox v. Shell*, No. 18,844 (Obion County Chancery Ct., Tenn.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines. In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants. The deadline for filing claims expired in 2009.

23.     *Hanlon v. Chrysler Corp.*, No. C-95-2010-CAL (N.D. Cal.). In 1995, the District Court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs. As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches. The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

24. ***Gross v. Mobil***, No. C 95-1237-SI (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated 2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil. Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief. Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil. In addition, Plaintiffs negotiated a proposed Settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

## VI.   Antitrust/Trade Regulation/Intellectual Property

### A.   Current Cases

1. ***In Re: Railway Industry Employee No-Poach Antitrust Litigation***, MDL No. 2850 (W.D. Pa.). Lieff Cabraser partner Dean M. Harvey serves as Co-Lead Counsel for plaintiffs in the aggregate "no-poach" employee antitrust litigation against rail equipment companies Knorr-Bremse and Wabtac Railway Electronics. Four groups competed for selection as lead counsel for the plaintiffs, with Lieff Cabraser standing out because of our prior experience and success in no-poach cases, including our firm's proven ability to combine employment and antitrust lawyers to bring a unique concentration of legal acumen and multidimensional approaches to the case. Twenty-one separate antitrust actions were filed alleging these companies illegally agreed not to hire each other's employees. Such improper "no-poach" agreements, intended to restrict employee mobility and artificially depress employee salaries for the benefit of the companies, are facing increasing scrutiny from the U.S. Department of Justice as well as private plaintiffs.

2. ***Charles Schwab Bank, N.A. v. Bank of America Corp.***, MDL No. 2262 (N.D. Cal.). Lieff Cabraser serves as counsel for The Charles Schwab Corporation and several of The Charles Schwab Family of Funds and the Bay Area Toll Authority ("BATA") in individual lawsuits against Bank of America Corporation, Credit Suisse Group AG, J.P. Morgan Chase & Co., Citibank, Inc., and additional banks for allegedly manipulating the London Interbank Offered Rate ("LIBOR").

The complaints allege that beginning in 2007, the defendants conspired to understate their true costs of borrowing, causing the calculation of LIBOR to be set artificially low. As a result, Schwab, the Schwab Fund Series, and BATA received less than their rightful rates of return on their

LIBOR-based investments. The complaints assert claims under federal and state law, including the Sherman Act and the statutory and common law of California. The cases are pending.

3. ***In Re: Generic Pharmaceuticals Pricing Antitrust Litigation***, MDL No. 2724 (E.D. Pa.). Beginning in February 2015, Lieff Cabraser conducted an extensive investigation into dramatic price increases of certain generic prescription drugs. Lieff Cabraser worked alongside economists and industry experts and interviewed industry participants to evaluate possible misconduct.

   In December of 2016, Lieff Cabraser, with co-counsel, filed the first case alleging price-fixing of Levothyroxine, the primary treatment for hypothyroidism, among the most widely prescribed drugs in the world. Lieff Cabraser also played a significant role in similar litigation over the drug Propranolol, and the drug Clomipramine. These cases, and other similar cases, were consolidated and transferred to the Eastern District of Pennsylvania as *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724. Lieff Cabraser is a member of the End-Payer Plaintiffs' Steering Committee.

4. ***In re Lithium-Ion Batteries Antitrust Litigation***, MDL No. 2420 (N.D. Cal.). Lieff Cabraser serves as Interim Co-Lead Indirect Purchaser Counsel representing consumers in a class action filed against LG, GS Yuasa, NEC, Sony, Sanyo, Panasonic, Hitachi, LG Chem, Samsung, Toshiba, and Sanyo for allegedly conspiring from 2002 to 2011 to fix and raise the prices of lithium-ion rechargeable batteries. The defendants are the world's leading manufacturers of lithium-ion rechargeable batteries, which provide power for a wide variety of consumer electronic products. As a result of the defendants' alleged anticompetitive and unlawful conduct, consumers across the U.S. paid artificially inflated prices for lithium-ion rechargeable batteries. In late 2014, the Court denied in large part defendants' motion to dismiss. Indirect Purchasers have settled with Hitachi, LG Chem, NEC Corp., and Sony for a combined total of $64.45 million. Indirect Purchasers have moved for class certification, which is currently pending before the court.

5. ***In re Restasis Antitrust Litigation***, MDL No. 2819 (pending). Lieff Cabraser serves as interim co-lead counsel for indirect purchasers (i.e., consumers) of Restasis, a blockbuster drug used to treat dry-eye disease, in a case alleging a broad-based and ongoing anticompetitive scheme by pharmaceutical giant Allergan, Inc. ("Allergan"). The alleged scheme's goal was and is to maintain Allergan's monopoly. Lieff Cabraser, together with co-counsel, filed the first two class actions on behalf of indirect purchasers.

The complaints allege that Allergan (1) fraudulently procured patents it knew were invalid, (2) caused those invalid patents to be listed in the FDA's "Orange Book" as being applicable to Restasis, (3) used the improper Orange Book listings as grounds for filing baseless patent-infringement litigation, (4) abused the FDA's "citizen petition" process, and (5) used a "sham" transfer of the invalid patents to the Saint Regis Mohawk Tribe to obtain tribal sovereign immunity and protect the patents from challenge. This alleged scheme of government petitioning delayed competition from generic equivalents to Restasis that would have been just as safe and cheaper for consumers.

The complaints assert claims under federal and state law, including the Sherman Act and the statutory and common law of numerous states. Several similar lawsuits have since been filed, and the Judicial Panel on Multidistrict Litigation has granted Lieff Cabraser's motion to centralize all cases for pretrial proceedings in the Eastern District of New York before the Hon. Nina Gershon.

6.   ***Nashville General v. Momenta Pharmaceuticals, et al.***, No. 3:15-cv-01100 (M.D. Tenn.). Lieff Cabraser represents Nashville General Hospital (the Hospital Authority of Metropolitan Government of Nashville) and American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan in a proposed class-action antitrust case against defendants Momenta Pharmaceuticals and Sandoz, Inc., for their alleged price-fixing of enoxaparin, the generic version of the anti-coagulant blood clotting drug Lovenox.

Lovenox, developed by Sanofi-Aventis, is a highly profitable drug with annual sales of more than $1 billion. The drug entered the market in 1995 and its patent was invalidated by the federal government in 2008, making generic production possible. The complaint alleges Momenta and Sandoz colluded to manipulate the process by which the federal government allows drugs to become generic in order to ensure that defendants were the only producers of generic enoxaparin, thereby restraining trade and disrupting the market at consumers' expense.

Plaintiffs filed an amended complaint in December 2017. Discovery is ongoing.

7.   ***In re Capacitors Antitrust Litigation,*** No. 3:14-cv-03264 (N.D. Cal.). Lieff Cabraser is a member of the Plaintiffs' Steering Committee representing indirect purchasers in an electrolytic and film price-fixing class action lawsuit filed against the world's largest manufacturers of capacitors, used to store and regulate current in electronic circuits and computers, phones, appliances, and cameras worldwide. The defendants include Panasonic Corp., Elna Co. Ltd., Hitachi Chemical Co., Ltd., Nitsuko Electronics Corp., NEC Tokin Corp., SANYO Electric Co., Ltd.,

Matsuo Electric Co., Okaya Electric Industries Co., Nippon Chemi-con Corp., Nichicon Corp., Rubycon Corp., Taitsu Corp., and Toshin Kogyo Co., Ltd. Lieff Cabraser has played a central role in discovery efforts, and assisted in opposing Defendants' motions to dismiss and in opposing Defendants' motions for summary judgment.

Settlements with defendants NEC Tokin Corp., Nitsuko Electronics Corp., and Okaya Electric Industries Co., Ltd. have received final approval, and a settlement with Hitachi Chemical and Soshin Electric Co., Ltd. has received preliminary approval. Discovery continues with respect to the remaining defendants.

8. ***In re Disposable Contact Lens Antitrust Litigation,*** MDL No. 2626 (M.D. Fla.). Lieff Cabraser represents consumers who purchased disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch + Lomb, and Cooper Vision, Inc. The complaint challenges the use by contact lens manufacturers of minimum resale price maintenance agreements with independent eye care professionals (including optometrists and ophthalmologists) and wholesalers. These agreements, the complaint alleges, operate to raise retail prices and eliminate price competition and discounts on contact lenses, including from "big box" retail stores, discount buying clubs, and online retailers. As a result, the consumers across the United States have paid artificially inflated prices.

9. ***In re Domestic Airline Travel Antitrust Litigation***, 1:15-mc-01404 (District of Columbia). Lieff Cabraser represents consumers in a class action lawsuit against the four largest U.S. airline carriers: American Airlines, Delta Air, Southwest, and United. These airlines collectively account for over 80 percent of all domestic airline travel. The complaint alleges that for years the airlines colluded to restrain capacity, eliminate competition in the market, and increase the price of domestic airline airfares in violation of U.S. antitrust law. The proposed class consists of all persons and entities who purchased domestic airline tickets directly from one or more defendants from July 2, 2011 to the present. In February 2016, Judge Kollar-Kotelly appointed Lieff Cabraser to the three-member Plaintiffs' Executive Committee overseeing this multidistrict airline price-fixing litigation. Defendants filed a motion to dismiss, which was denied in October 2016. Subsequently, a settlement with Southwest Airlines was granted preliminary approval. Discovery as to the remaining defendants is underway.

10. ***Seaman v. Duke University***, No. 1:15-cv-00462 (M.D. N.C.). Lieff Cabraser represents Dr. Danielle M. Seaman in a class action lawsuit against Duke University; Duke University Health System; and Dr. William L. Roper in his official capacity as Dean and Vice-Chancellor of Medical

Affairs for University of North Carolina at Chapel Hill School of Medicine. The complaint charges that Duke and UNC entered into an express, secret agreement not to hire or attempt to hire certain medical faculty and staff that they each employed. The lawsuit seeks to recover damages and obtain injunctive relief, including treble damages, for defendants' alleged violations of federal and North Carolina antitrust law.

In February 2016, Judge Eagles denied defendants' motions to dismiss the case on a variety of grounds, including a denial of state action immunity to antitrust liability. The Court rejected Defendants' argument that they should be exempt from the nation's antitrust laws because Dr. Roper, an alleged co-conspirator, is an administrator of a state university and health system. Defendants sought permission to appeal from the Fourth Circuit Court of Appeals. In June 2016, a unanimous three-judge panel denied the request.

On January 5, 2018, Judge Eagles granted final approval to a partial settlement of antitrust class action claims against Duke University, UNC, and other related parties. The partial settlement implements a variety of measures by the UNC Defendants to ensure that they will not enter into or enforce any unlawful no-hire agreements or similar restraints on competition. The settlement also requires the UNC Defendants to cooperate in providing documents, data and testimony to Dr. Seaman as she continues to pursue her case against the Duke Defendants.

On February 1, 2018, Judge Eagles issued an order certifying a faculty class in the antitrust class action lawsuit against Duke University, UNC, and other related parties over their alleged agreement not to compete for certain of each other's employees. The case is ongoing.

## B.    Successes

1. ***In re High-Tech Employee Antitrust Litigation***, No. 11 CV 2509 (N.D. Cal.). Lieff Cabraser served as Co-Lead Class Counsel in a consolidated class action charging that Adobe Systems Inc., Apple Inc., Google Inc., Intel Corporation, Intuit Inc., Lucasfilm Ltd., and Pixar violated antitrust laws by conspiring to suppress the pay of technical, creative, and other salaried employees. The complaint alleged that the conspiracy among defendants restricted recruiting of each other's employees. On October 24, 2013, U.S. District Court Judge Lucy H. Koh certified a class of approximately 64,000 persons who worked in Defendants' technical, creative, and/or research and development jobs from 2005-2009. On September 2, 2015, the Court approved a $415 million settlement with Apple, Google, Intel, and Adobe. Earlier, on May 15, 2014, the Court approved partial settlements totaling $20 million resolving claims against Intuit, Lucasfilm, and Pixar. The *Daily Journal* described the case as the "most significant antitrust employment case in

recent history," adding that it "has been widely recognized as a legal and public policy breakthrough."

2. ***Cipro Cases I and II***, JCCP Nos. 4154 and 4220 (Cal. Supr. Ct.).  Lieff Cabraser represented California consumers and third party payors in a class action lawsuit filed in California state court charging that Bayer Corporation, Barr Laboratories, and other generic prescription drug manufacturers conspired to restrain competition in the sale of Bayer's blockbuster antibiotic drug Ciprofloxacin, sold as Cipro.  Between 1997 and 2003, Bayer paid its would-be generic drug competitors nearly $400 million to refrain from selling more affordable versions of Cipro.  As a result, consumers were forced to pay inflated prices for the drug -- frequently prescribed to treat urinary tract, prostate, abdominal, and other infections.

The Trial Court granted defendants' motion for summary judgment, which the Appellate Court affirmed in October 2011.  Plaintiffs sought review before the California Supreme Court and were  successful. Following briefing, the case was stayed pending the U.S. Supreme Court's decision in *FTC v. Actavis*.  After the U.S. Supreme Court in *Actavis* overturned the Appellate Court's ruling that pay-for-delay deals in the pharmaceutical industry are generally legal, plaintiffs and Bayer entered into settlement negotiations.  In November 2013, the Trial Court approved a $74 million settlement with Bayer.

On May 7, 2015, the California Supreme Court reversed the grant of summary judgment to Defendants and resoundingly endorsed the rights of consumers to challenge pharmaceutical pay-for-delay settlements under California competition law.  The Court held that "[p]arties illegally restrain trade when they privately agree to substitute consensual monopoly in place of potential competition."

Additional settlements were reached with the remaining defendants, bringing total settlements to $399 million (exceeding plaintiffs' damages estimate by approximately $68 million), a result the Trial Court described as "extraordinary."  The Trial Court granted final approval on April 21, 2017, adding that it was "not aware of any case" that "has taken roughly 17 years," where, net of fees, end-payor "claimants will get basically 100 cents on the dollar[.]"

Some objectors are appealing the settlements. Objectors and their counsel objected to part of the settlement notice and to the attorneys' fees. As of early 2018, the appeals are slowly progressing.

In 2017, the American Antitrust Institute honored Lieff Cabraser's *Cipro* team with its Outstanding Private Practice Antitrust Achievement Award for their extraordinary work on the *Cipro* price-fixing and exclusionary

drug-pricing agreements case. In addition, their work on the *Cipro* case led Lieff Cabraser attorneys Eric B. Fastiff, Brendan P. Glackin, and Dean M. Harvey to recognition by *California Lawyer* and the *Daily Journal* with the 2016 California Lawyer of the Year Award.

3. ***In re Municipal Derivatives Litigation***, MDL No. 1950 (S.D.N.Y.). Lieff Cabraser represented the City of Oakland, the County of Alameda, City of Fresno, Fresno County Financing Authority, and East Bay Delta Housing and Finance Agency in a class action lawsuit brought on behalf of themselves and other California entities that purchased guaranteed investment contracts, swaps, and other municipal derivatives products from Bank of America, N.A., JP Morgan Chase & Co., Piper Jaffray & Co., Societe Generale SA, UBS AG, and other banks, brokers and financial institutions. The complaint charged that Defendants conspired to give cities, counties, school districts, and other governmental agencies artificially low bids for guaranteed investment contracts, swaps, and other municipal derivatives products, which are used by public entities to earn interest on bond proceeds.

The complaint further charged that Defendants met secretly to discuss prices, customers, and markets of municipal derivatives sold in the U.S. and elsewhere; intentionally created the false appearance of competition by engaging in sham auctions in which the results were pre-determined or agreed not to bid on contracts; and covertly shared their unjust profits with losing bidders to maintain the conspiracy.

4. ***Natural Gas Antitrust Cases***, JCCP Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.). In 2003, the Court approved a landmark of $1.1 billion settlement in class action litigation against El Paso Natural Gas Co. for manipulating the market for natural gas pipeline transmission capacity into California. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel and Co-Liaison Counsel in the *Natural Gas Antitrust Cases I-IV*.

In June 2007, the Court granted final approval to a $67.39 million settlement of a series of class action lawsuits brought by California business and residential consumers of natural gas against a group of natural gas suppliers, Reliant Energy Services, Inc., Duke Energy Trading and Marketing LLC, CMS Energy Resources Management Company, and Aquila Merchant Services, Inc.

Plaintiffs charged defendants with manipulating the price of natural gas in California during the California energy crisis of 2000-2001 by a variety of means, including falsely reporting the prices and quantities of natural gas transactions to trade publications, which compiled daily and monthly natural gas price indices; prearranged wash trading; and, in the case of Reliant, "churning" on the Enron Online electronic trading platform,

which was facilitated by a secret netting agreement between Reliant and Enron.

The 2007 settlement followed a settlement reached in 2006 for $92 million partial settlement with Coral Energy Resources, L.P.; Dynegy Inc. and affiliates; EnCana Corporation; WD Energy Services, Inc.; and The Williams Companies, Inc. and affiliates.

5.  ***In the Matter of the Arbitration between CopyTele and AU Optronics***, Case No. 50 117 T 009883 13 (Internat'l Centre for Dispute Resolution).  Lieff Cabraser successfully represented CopyTele, Inc. in a commercial dispute involving intellectual property.  In 2011, CopyTele entered into an agreement with AU Optronics ("AUO") under which both companies would jointly develop two groups of products incorporating CopyTele's patented display technologies.  CopyTele charged that AUO never had any intention of jointly developing the CopyTele technologies, and instead used the agreements to fraudulently obtain and transfer licenses of CopyTele's patented technologies.  The case required the review of thousands of pages of documents in Chinese and in English culminating in a two week arbitration hearing.  In December 2014, after the hearing, the parties resolved the matter, with CopyTele receiving $9 million.

6.  ***Wholesale Electricity Antitrust Cases I & II***, JCCP Nos. 4204 & 4205 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel in the private class action litigation against Duke Energy Trading & Marketing, Reliant Energy, and The Williams Companies for claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-2001.  Extending the landmark victories for California residential and business consumers of electricity, in September 2004, plaintiffs reached a $206 million settlement with Duke Energy Trading & Marketing, and in August 2005, plaintiffs reached a $460 million settlement with Reliant Energy, settling claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-01.  Lieff Cabraser earlier entered into a settlement for over $400 million with The Williams Companies.

7.  ***In re TFT-LCD (Flat Panel) Antitrust Litigation***, MDL No. 1827 (N.D. Cal.).  Lieff Cabraser served as Court-appointed Co-Lead Counsel for direct purchasers in litigation against the world's leading manufacturers of Thin Film Transistor Liquid Crystal Displays.  TFT-LCDs are used in flat-panel televisions as well as computer monitors, laptop computers, mobile phones, personal digital assistants, and other devices.  Plaintiffs charged that defendants conspired to raise and fix the prices of TFT-LCD panels and certain products containing those panels for over a decade, resulting in overcharges to purchasers of those panels

and products.  In March 2010, the Court certified two nationwide classes of persons and entities that directly purchased TFT-LCDs from January 1, 1999 through December 31, 2006, one class of panel purchasers, and one class of buyers of laptop computers, computer monitors, and televisions that contained TFT-LCDs.  Over the course of the litigation, the classes reached settlements with all defendants except Toshiba.  The case against Toshiba proceeded to trial.  In July 2012, the jury found that Toshiba participated in the price-fixing conspiracy.  The case was subsequently settled, bringing the total settlements in the litigation to over $470 million.  For his outstanding work in the precedent-setting litigation, California Lawyer recognized Richard M. Heimann with a 2013 California Lawyer of the Year award.

8.     ***Sullivan v. DB Investments***, No. 04-02819 (D. N.J.).  Lieff Cabraser served as Class Counsel for consumers who purchased diamonds from 1994 through March 31, 2006, in a class action lawsuit against the De Beers group of companies.  Plaintiffs charged that De Beers conspired to monopolize the sale of rough diamonds in the U.S.  In May 2008, the District Court approved a $295 million settlement for purchasers of diamonds and diamond jewelry, including $130 million to consumers.  The settlement also barred De Beers from continuing its illegal business practices and required De Beers to submit to the jurisdiction of the Court to enforce the settlement.  In December 2011, the Third Circuit Court of Appeals affirmed the District Court's order approving the settlement.  667 F.3d 273 (3rd Cir. 2011).

For sixty years, De Beers has flouted U.S. antitrust laws.  In 1999, De Beers' Chairman Nicholas Oppenheimer stated that De Beers "likes to think of itself as the world's . . . longest-running monopoly.  [We seek] to manage the diamond market, to control supply, to manage prices and to act collusively with our partners in the business."  The hard-fought litigation spanned several years and nations.  Despite the tremendous resources available to the U.S. Department of Justice and state attorney generals, it was only through the determination of plaintiffs' counsel that De Beers was finally brought to justice and the rights of consumers were vindicated.  Lieff Cabraser attorneys played key roles in negotiating the settlement and defending it on appeal.  Discussing the DeBeers case, The National Law Journal noted that Lieff Cabraser was "among the plaintiffs' firms that weren't afraid to take on one of the business world's great white whales."

9.     ***Haley Paint Co. v. E.I. Dupont De Nemours and Co. et al.***, No. 10-cv-00318-RDB (D. Md.).  Lieff Cabraser served as Co-Lead Counsel for direct purchasers of titanium dioxide in a nationwide class action lawsuit against Defendants E.I. Dupont De Nemours and Co., Huntsman International LLC, Kronos Worldwide Inc., and Cristal Global (fka

Millennium Inorganic Chemicals, Inc.), alleging these corporations participated in a global cartel to fix the price of titanium dioxide. Titanium dioxide, a dry chemical powder, is the world's most widely used pigment for providing whiteness and brightness in paints, paper, plastics, and other products. Plaintiffs charged that defendants coordinated increases in the prices for titanium dioxide despite declining demand, decreasing raw material costs, and industry overcapacity.

Unlike some antitrust class actions, Plaintiffs proceeded without the benefit of any government investigation or proceeding. Plaintiffs overcame attacks on the pleadings, discovery obstacles, a rigorous class certification process that required two full rounds of briefing and expert analysis, and multiple summary judgment motions. In August 2012, the Court certified the class. Plaintiffs prepared fully for trial and achieved a settlement with the final defendant on the last business day before trial. In December 2013, the Court approved a series of settlements with defendants totaling $163 million.

10. ***In re Lupron Marketing and Sales Practices Litigation***, MDL No. 1430 (D. Mass.). In May 2005, the Court granted final approval to a settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty. The settlement requires the defendants, Abbott Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005. Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid. Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.

11. ***Marchbanks Truck Service v. Comdata Network***, No. 07-cv-01078 (E.D. Pa.). In July 2014, the Court approved a $130 million settlement of a class action brought by truck stops and other retail fueling facilities that paid percentage-based transaction fees to Comdata on proprietary card transactions using Comdata's over-the-road fleet card. The complaint challenged arrangements among Comdata, its parent company Ceridian LLC, and three national truck stop chains: defendants TravelCenters of America LLC and its wholly owned subsidiaries, Pilot Travel Centers LLC and its predecessor Pilot Corporation, and Love's Travel Stops & Country Stores, Inc. The alleged anticompetitive conduct insulated Comdata from competition, enhanced its market power, and led to independent truck stops' paying artificially inflated transaction fees. In addition to the $130 million payment, the settlement required Comdata to change certain business practices that will promote

competition among payment cards used by over-the-road fleets and truckers and lead to lower merchant fees for the independent truck stops. Lieff Cabraser served as Co-Lead Class Counsel in the litigation.

12.  ***California Vitamins Cases***, JCCP No. 4076 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution.  In January 2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins.  In December 2006, the Court granted final approval to over $8.8 million in additional settlements.

13.  ***In re Buspirone Antitrust Litigation***, MDL No. 1413 (S.D. N.Y.).  In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payers that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety.  Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

14.  ***Meijer v. Abbott Laboratories***, Case No. C 07-5985 CW (N.D. Cal.).  Lieff Cabraser served as co-counsel for the group of retailers charging that Abbott Laboratories monopolized the market for AIDS medicines used in conjunction with Abbott's prescription drug Norvir.  These drugs, known as Protease Inhibitors, have enabled patients with HIV to fight off the disease and live longer.  In January 2011, the Court denied Abbott's motion for summary judgment on plaintiffs' monopolization claim. Trial commenced in February 2011.  After opening statements and the presentation of four witnesses and evidence to the jury, plaintiffs and Abbott Laboratories entered into a $52 million settlement.  The Court granted final approval to the settlement in August 2011.

15.  ***In re Carpet Antitrust Litigation***, MDL No. 1075 (N.D. Ga.).  Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet.  Plaintiffs, distributors of polypropylene carpet, alleged that Defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet.  In 2001, the Court approved a $50 million settlement of the case.

16.    ***In re Lasik/PRK Antitrust Litigation***, No. CV 772894 (Cal. Supr. Ct.).  Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of persons who underwent Lasik/PRK eye surgery.  Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction surgery, manipulated fees charged to ophthalmologists and others who performed the surgery, and that the overcharges were passed onto consumers who paid for laser vision correction surgery.  In December 2001, the Court approved a $12.5 million settlement of the litigation.

17.    ***Methionine Cases I and II***, JCCP Nos. 4090 & 4096 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production.  Plaintiffs alleged that the companies illegally conspired to raise methionine prices to super-competitive levels.  The case settled.

18.    ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514 (D.N.J.).  Lieff Cabraser represented the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act.

## VII.  Environmental and Toxic Exposures

### A.    Current Cases

1.    ***In Re Oil Spill  by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico***, MDL No. 2179 (E.D. La.).  Lieff Cabraser serves on the Court-appointed Plaintiffs' Steering Committee ("PSC") and with co-counsel represents fishermen, property owners, business owners, wage earners, and other harmed parties in class action litigation against BP, Transocean, Halliburton, and other defendants involved in the Deepwater Horizon oil rig blowout and resulting oil spill in the Gulf of Mexico on April 20, 2010.  The Master Complaints allege that the defendants were insouciant in addressing the operations of the well and the oil rig, ignored warning signs of the impending disaster, and failed to employ and/or follow proper safety measures, worker safety laws, and environmental protection laws in favor of cost-cutting measures.

In 2012, the Court approved two class action settlements that will fully compensate hundreds of thousands of victims of the tragedy. The settlements resolve the majority of private economic loss, property damage, and medical injury claims stemming from the Deepwater Horizon Oil Spill, and hold BP fully accountable to individuals and businesses harmed by the spill.  Under the settlements, there is no dollar limit on the amount BP will pay.  In 2014, the U.S. Supreme Court denied

review of BP's challenge to its own class action settlement.  Approval of that settlement is now final, and has so far delivered $11.2 billion to compensate claimants' losses.  The medical settlement is also final, and an additional $1 billion settlement has been reached with defendant Halliburton.

2.   ***Andrews, et al. v. Plains All American Pipeline, et al.***, No. 2:15-cv-04113-PSG-JEM (C.D. Cal.).  Lieff Cabraser is Court-appointed Class Counsel in this action arising from an oil spill in Santa Barbara County in May 2015.  A pipeline owned by Plains ruptured, and oil from the pipeline flowed into the Pacific Ocean, soiling beaches and impacting local fisheries.  Lieff Cabraser represents homeowners who lost the use of the beachfront amenity for which they pay a premium, local oil platform workers who were laid off as a result of the spill and subsequent closure of the pipeline, as well as fishers whose catch was impacted by the oil spill.  Plaintiffs allege that defendants did not follow basic safety protocols when they installed the pipeline, failed to properly monitor and maintain the pipeline, ignored clear signs that the pipeline was corroded and in danger of bursting, and failed to promptly respond to the oil spill when the inevitable rupture occurred.

The Federal District Court recently certified a plaintiff class composed of fishers whose catch diminished as a result of the spill and fish industry businesses that were affected as a result of the decimated fish population.  Lieff Cabraser has recently filed a motion to certify additional classes of groups harmed by the spill, including private property owners and lessees near the soiled shoreline,  and oil industry workers and businesses that suffered economic injuries associated with the closure of the pipeline.

3.   ***Southern California Gas Leak Cases***, JCCP No. 4861. Lieff Cabraser has been selected by the Los Angeles County Superior Court to help lead two important class action cases on behalf of homeowners and businesses that suffered economic injuries in the wake of the massive Porter Ranch gas leak, which began in October of 2015 and lasted into February of 2016.  During this time, huge quantities of natural gas spewed out of an old well at Southern California Gas's Aliso Canyon Facility and into the air of Porter Ranch, a neighborhood located adjacent to the Facility and 25 miles northwest of Los Angeles.

This large-scale environmental disaster forced thousands of residents to leave their homes for months on end while the leak continued and for several months thereafter.  It also caused local business to dry up during the busy holiday season, as many residents had evacuated the neighborhood and visitors avoided the area.  Evidence suggests the leak was caused by at least one old and malfunctioning well used to inject and retrieve gas.  Southern California Gas Company allegedly removed the

safety valve on the well that could have prevented the leak.  As a result, the gas leak has left a carbon footprint larger than the *Deepwater Horizon* oil spill.

Together with other firms chosen to pursue class relief for these victims, Lieff Cabraser filed two class action complaints – one on behalf of Porter Ranch homeowners, and another on behalf of Porter Ranch businesses. Southern California Gas argued in response that the injuries suffered by homeowners and businesses cannot proceed as class actions. In May 2017, the Superior Court rejected these arguments. The class action cases are proceeding with discovery into Southern California Gas Company's role in this disaster.

## B.    Successes

1.    ***In re Exxon Valdez Oil Spill Litigation***, No. 3:89-cv-0095 HRH (D. Al.).  The *Exxon Valdez* ran aground on March 24, 1989, spilling 11 million gallons of oil into Prince William Sound.  Lieff Cabraser served as one of the Court-appointed Plaintiffs' Class Counsel.  The class consisted of fisherman and others whose livelihoods were gravely affected by the disaster.  In addition, Lieff Cabraser served on the Class Trial Team that tried the case before a jury in federal court in 1994.  The jury returned an award of $5 billion in punitive damages.

In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive.  In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion.  Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the *Exxon Valdez* through Prince William Sound."  In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines. In January 2004, Judge Holland issued his order finding that Supreme Court authority did not change the Court's earlier analysis.

In December 2006, the Ninth Circuit Court of Appeals issued its ruling, setting the punitive damages award at $2.5 billion.  Subsequently, the U.S. Supreme Court further reduced the punitive damages award to $507.5 million, an amount equal to the compensatory damages.  With interest, the total award to the plaintiff class was $977 million.

2.    ***In re Imprelis Herbicide Marketing, Sales Practices and Products Liability Litigation***, MDL No. 2284 (E.D. Pa.).  Lieff Cabraser served as Co-Lead Counsel for homeowners, golf course companies and other property owners in a nationwide class action lawsuit against E.I. du Pont de Nemours & Company ("DuPont"), charging that its

herbicide Imprelis caused widespread death among trees and other non-targeted vegetation across the country. DuPont marketed Imprelis as an environmentally friendly alternative to the commonly used 2,4-D herbicide. Just weeks after Imprelis' introduction to the market in late 2010, however, complaints of tree damage began to surface. Property owners reported curling needles, severe browning, and dieback in trees near turf that had been treated with Imprelis. In August 2011, the U.S. Environmental Protection Agency banned the sale of Imprelis.

The complaint charged that DuPont failed to disclose the risks Imprelis posed to trees, even when applied as directed, and failed to provide instructions for the safe application of Imprelis. In response to the litigation, DuPont created a process for property owners to submit claims for damages. Approximately $400 million was paid to approximately 25,000 claimants. In October 2013, the Court approved a settlement of the class action that substantially enhanced the DuPont claims process, including by adding an extended warranty, a more limited release of claims, the right to appeal the denial of claim by DuPont to an independent arborist, and publication of DuPont's tree payment schedule.

3. ***In re GCC Richmond Works Cases***, JCCP No. 2906 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the release on July 26, 1993, of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California. The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

4. ***In re Unocal Refinery Litigation***, No. C 94-04141 (Cal. Supr. Ct.). Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California. The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

5. ***West v. G&H Seed Co., et al.***, No. 99-C-4984-A (La. State Ct.). With co-counsel, Lieff Cabraser represented a certified class of 1,500 Louisiana crawfish farmers who charged in a lawsuit that Fipronil, an insecticide sold under the trade name ICON, damaged their pond-grown crawfish crops. In Louisiana, rice and crawfish are often farmed together, either in the same pond or in close proximity to one another.

After its introduction to the market in 1999, ICON was used extensively in Louisiana to kill water weevils that attacked rice plants. The lawsuit alleged that ICON also had a devastating effect on crawfish harvests with some farmers losing their entire crawfish crop. In 2004, the Court approved a $45 million settlement with Bayer CropScience, which during

the litigation purchased Aventis CropScience, the original manufacturer of ICON. The settlement was reached after the parties had presented nearly a month's worth of evidence at trial and were on the verge of making closing arguments to the jury.

6.   ***Kingston, Tennessee TVA Coal Ash Spill Litigation***, No. 3:09-cv-09 (E.D. Tenn.). Lieff Cabraser represented hundreds of property owners and businesses harmed by the largest coal ash spill in U.S. history. On December 22, 2008, more than a billion gallons of coal ash slurry spilled when a dike burst on a retention pond at the Kingston Fossil Plant operated by the Tennessee Valley Authority (TVA) in Roane County, Tennessee. A wall of coal ash slurry traveled across the Emory River, polluting the river and nearby waterways, and covering nearly 300 acres with toxic sludge, including 12 homes and damaging hundreds of properties. In March 2010, the Court denied in large part TVA's motion to dismiss the litigation. In the Fall of 2011, the Court conducted a four week bench trial on the question of whether TVA was liable for releasing the coal ash into the river system. The issue of damages was reserved for later proceedings. In August 2012, the Court found in favor of plaintiffs on their claims of negligence, trespass, and private nuisance. In August 2014, the case came to a conclusion with TVA's payment of $27.8 million to settle the litigation.

7.   ***In re Sacramento River Spill Cases I and II***, JCCP Nos. 2617 & 2620 (Cal. Supr. Ct.). On July 14, 1991, a Southern Pacific train tanker car derailed in northern California, spilling 19,000 gallons of a toxic pesticide, metam sodium, into the Sacramento River near the town of Dunsmir at a site along the rail lines known as the Cantara Loop. The metam sodium mixed thoroughly with the river water and had a devastating effect on the river and surrounding ecosystem. Within a week, every fish, 1.1 million in total, and all other aquatic life in a 45-mile stretch of the Sacramento River was killed. In addition, many residents living along the river became ill with symptoms that included headaches, shortness of breath, and vomiting. The spill considered the worst inland ecological disaster in California history.

Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in coordinated proceedings that included all of the lawsuits arising out of this toxic spill. Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

8.   ***Kentucky Coal Sludge Litigation***, No. 00-CI-00245 (Cmmw. Ky.). On October 11, 2000, near Inez, Kentucky, a coal waste storage facility

ruptured, spilling 1.25 million tons of coal sludge (a wet mixture produced by the treatment and cleaning of coal) into waterways in the region and contaminating hundreds of properties. This was one of the worst environmental disasters in the Southeastern United States. With co-counsel, Lieff Cabraser represented over 400 clients in property damage claims, including claims for diminution in the value of their homes and properties. In April 2003, the parties reached a confidential settlement agreement on favorable terms to the plaintiffs.

9. ***Toms River Childhood Cancer Incidents***, No. L-10445-01 MT (Sup. Ct. NJ). With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each with a child having cancer, that claimed the cancers were caused by environmental contamination in the Toms River area. Commencing in 1998, the parties—the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area—participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the factual and scientific issues in the matter. In December 2001, under the supervision of a mediator, a confidential settlement favorable to the families was reached.

## VIII. <u>False Claims Act</u>

### A. **Current Cases**

Lieff Cabraser represents whistleblowers in a wide range of False Claims Act cases, including Medicare kickback and healthcare fraud, defense contractor fraud, and securities and financial fraud. We have more than a dozen whistleblower cases currently under seal and investigation in federal and state jurisdictions across the U.S. For that reason, we do not list all of our current False Claims Act and qui tam cases in our resume.

1. ***United States ex rel. Matthew Cestra v. Cephalon***, No. 14-01842 (E.D. Pa.); ***United States ex rel. Bruce Boise et al. v. Cephalon***, No. 08-287 (E.D. Pa.) Lieff Cabraser, with co-counsel, represents four whistleblowers bringing claims on behalf of the U.S. Government and various states under the federal and state False Claims Acts against Cephalon, Inc., a pharmaceutical company. The complaints allege that Cephalon has engaged in unlawful off-label marketing of certain of its drugs, largely through misrepresentations, kickbacks, and other unlawful or fraudulent means, causing the submission of hundreds of thousands of false claims for reimbursement to federal and state health care programs. The Boise case involves Provigil and its successor drug Nuvigil, limited-indication wakefulness drugs that are unsafe and/or not efficacious for the wide array of off-label psychiatric and neurological conditions for which Cephalon has marketed them, according to the allegations. The Cestra case involves an expensive oncological drug called Treanda, which

is approved only for second-line treatment of indolent non-Hodgkin's Lymphoma despite what the relators allege to be the company's off-label marketing of the drug for first-line treatment. Various motions are pending.

## B. Successes

1. ***United States ex rel. Mary Hendow and Julie Albertson v. University of Phoenix***, No. 2:03-cv-00457-GEB-DAD (E.D. Cal.). Lieff Cabraser obtained a record whistleblower settlement against the University of Phoenix that charged the university had violated the incentive compensation ban of the Higher Education Act (HEA) by providing improper incentive pay to its recruiters. The HEA prohibits colleges and universities whose students receive federal financial aid from paying their recruiters based on the number of students enrolled, which creates a risk of encouraging recruitment of unqualified students who, Congress has determined, are more likely to default on their loans. High student loan default rates not only result in wasted federal funds, but the students who receive these loans and default are burdened for years with tremendous debt without the benefit of a college degree.

The complaint alleged that the University of Phoenix defrauded the U.S. Department of Education by obtaining federal student loan and Pell Grant monies from the federal government based on false statements of compliance with HEA. In December 2009, the parties announced a $78.5 million settlement. The settlement constitutes the second-largest settlement ever in a False Claims Act case in which the federal government declined to intervene in the action and largest settlement ever involving the Department of Education. The University of Phoenix case led to the Obama Administration passing new regulations that took away the so-called "safe harbor" provisions that for-profit universities relied on to justify their alleged recruitment misconduct. For his outstanding work as Lead Counsel and the significance of the case, *California Lawyer* magazine recognized Lieff Cabraser attorney Robert J. Nelson with a California Lawyer of the Year (CLAY) Award.

2. ***State of California ex rel. Sherwin v. Office Depot***, No. BC410135 (Cal. Supr. Ct.). In February 2015, the Court approved a $77.5 million settlement with Office Depot to settle a whistleblower lawsuit brought under the California False Claims Act. The whistleblower was a former Office Depot account manager. The City of Los Angeles, County of Santa Clara, Stockton Unified School District, and 16 additional California cities, counties, and school districts intervened in the action to assert their claims (including common-law fraud and breach of contract) against Office Depot directly. The governmental entities purchased office supplies from Office Depot under a nationwide supply contract known as

the U.S. Communities contract. Office Depot promised in the U.S. Communities contract to sell office supplies at its best governmental pricing nationwide. The complaint alleged that Office Depot repeatedly failed to give most of its California governmental customers the lowest price it was offering other governmental customers. Other pricing misconduct was also alleged.

3.  ***State of California ex rel. Rockville Recovery Associates v. Multiplan***, No. 34-2010-00079432 (Sacramento Supr. Ct., Cal.). In a case that received widespread media coverage, Lieff Cabraser represented whistleblower Rockville Recovery Associates in a qui tam suit for civil penalties under the California Insurance Frauds Prevention Act ("IFPA"), Cal. Insurance Code § 1871.7, against Sutter Health, one of California's largest healthcare providers, and obtained the largest penalty ever imposed under the statute. The parties reached a $46 million settlement that was announced in November 2013, shortly before trial was scheduled to commence.

    The complaint alleged that the 26 Sutter hospitals throughout California submitted false, fraudulent, or misleading charges for anesthesia services (separate from the anesthesiologist's fees) during operating room procedures that were already covered in the operating room bill.

    After Lieff Cabraser defeated Sutter Health's demurrer and motion to compel arbitration, California Insurance Commissioner Dave Jones intervened in the litigation in May 2011. Lieff Cabraser attorneys continued to serve as lead counsel, and litigated the case for over two more years. In all, plaintiffs defeated no less than 10 dispositive motions, as well as three writ petitions to the Court of Appeals.

    In addition to the monetary recovery, Sutter Health agreed to a comprehensive series of billing and transparency reforms, which California Insurance Commissioner Dave Jones called "a groundbreaking step in opening up hospital billing to public scrutiny." On the date the settlement was announced, the California Hospital Association recognized its significance by issuing a press release stating that the settlement "compels industry-wide review of anesthesia billing." Defendant Multiplan, Inc., a large leased network Preferred Provider Organization, separately paid a $925,000 civil penalty for its role in enabling Sutter's alleged false billing scheme.

4.  ***United States ex rel. Dye v. ATK Launch Systems***, No. 1:06-CV-39-TS (D. Utah). Lieff Cabraser served as co-counsel for a whistleblower who alleged that ATK Launch Systems knowingly sold defective and potentially dangerous illumination flares to the United States military in violation of the federal False Claims Act. The specialized flares were used in nighttime combat, covert missions, and search and rescue operations.

A key design specification set by the Defense Department was that these highly flammable and dangerous items ignite only under certain conditions. The complaint alleged that the ATK flares at issue could ignite when dropped from a height of less than 10 feet – and, according to ATK's own analysis, from as little as 11.6 inches – notwithstanding contractual specifications that they be capable of withstanding such a drop. In April 2012, the parties reached a settlement valued at $37 million.

5. ***United States ex rel. Mauro Vosilla and Steven Rossow v. Avaya, Inc.***, No. CV04-8763 PA JTLx (C.D. Cal.). Lieff Cabraser represented a whistleblower in litigation alleging that defendants Avaya, Lucent Technologies, and AT&T violated the Federal False Claims Act and state false claims statutes. The complaint alleged that defendants charged governmental agencies for the lease, rental, and post-warranty maintenance of telephone communications systems and services that the governmental agencies no longer possessed and/or were no longer maintained by defendants. In November 2010, the parties entered into a $21.75 million settlement of the litigation.

6. ***State of California ex rel. Associates Against FX Insider State Street Corp.***, No. 34-2008-00008457 (Sacramento Supr. Ct., Cal.) ("***State Street I***"). Lieff Cabraser served as co-counsel for the whistleblowers in this action against State Street Corporation. The Complaint alleged that State Street violated the California False Claims Act with respect to certain foreign exchange transactions it executed with two California public pension fund custodial clients. The California Attorney General intervened in the case in October 2009.

## IX. Digital Privacy and Data Security

### A. Current Cases

1. ***Balderas v. Tiny Lab Productions, et al.***, Case 6:18-cv-00854 (D. New Mexico). Lieff Cabraser, with co-counsel, is working with the Attorney General of the State of New Mexico to represent parents, on behalf of their children, in a federal lawsuit seeking to protect children in the state from a foreign developer of child-directed apps and its marketing partners. The lawsuit alleges that the child-app developer Tiny Lab Productions and its co-defendants (including Google, Twitter, and AdMob) surreptitiously harvest children's personal information for the purpose of profiling and targeting children for commercial exploitation, without adequate disclosures and verified parental consent. When children play Tiny Lab's gaming apps on their mobile devices, their geolocation, demographic characteristics, online activity, and other personal data, are exfiltrated to third-parties and their marketing networks in order to target the children with advertisements. The apps at issue, clearly and indisputably designed for children, include Fun Kid

Racing, Candy Land Racing, and GummyBear and Friends Speed Racing. The action brings claims under the federal Children's Online Privacy Protection Act, as well as New Mexico state laws.

2.  ***In re Google Inc. Street View Electronic Communications Litigation***, No. 3:10-md-021784-CRB (N.D. Cal.).  Lieff Cabraser represents individuals whose right to privacy was violated when Google intentionally equipped its Google Maps "Street View" vehicles with Wi-Fi antennas and software that collected data transmitted by those persons' Wi-Fi networks located in their nearby homes.  Google collected not only basic identifying information about individuals' Wi-Fi networks, but also personal, private data being transmitted over their Wi-Fi networks such as emails, usernames, passwords, videos, and documents.  Plaintiffs allege that Google's actions violated the federal Wiretap Act, as amended by the Electronic Communications Privacy Act.  On September 10, 2013, the Ninth Circuit Court of Appeals held that Google's actions are not exempt from the Act.

3.  ***Campbell v. Facebook***, No. 4:13-cv-05996 (N.D. Cal.). Lieff Cabraser serves as Co-Lead Counsel in a nationwide class action lawsuit alleging that Facebook intercepts certain private data in users' personal and private messages on the social network and profits by sharing that information with third parties. When a user composes a private Facebook message and includes a link (a "URL") to a third party website, Facebook allegedly scans the content of the message, follows the URL, and searches for information to profile the message-sender's web activity. This enables Facebook to data mine aspects of user data and profit from that data by sharing it with advertisers, marketers, and other data aggregators. In December 2014, the Court in large part denied Facebook's motion to dismiss. In rejecting one of Facebook's core arguments, U.S. District Court Judge Phyllis Hamilton stated: "An electronic communications service provider cannot simply adopt any revenue-generating practice and deem it 'ordinary' by its own subjective standard." In August of 2017, Judge Hamilton granted final approval to an injunctive relief settlement of the action. As part of the settlement, Facebook has ceased the offending practices and has made changes to its operative relevant user disclosures.

4.  ***In re Carrier IQ Privacy Litigation***, MDL No. 2330 (N.D. Cal.). Lieff Cabraser represents a plaintiff in Multi-District Litigation against Samsung, LG, Motorola, HTC, and Carrier IQ alleging that smartphone manufacturers violated privacy laws by installing tracking software, called IQ Agent, on millions of cell phones and other mobile devices that use the Android operating system. Without notifying users or obtaining consent, IQ Agent tracks users' keystrokes, passwords, apps, text messages, photos, videos, and other personal information and transmits this data to cellular carriers.  In a 96-page order issued in January 2015, U.S. District

Court Judge Edward Chen granted in part, and denied in part, defendants' motion to dismiss.  Importantly, the Court permitted the core Wiretap Act claim to proceed as well as the claims for violations of the Magnuson-Moss Warranty Act and the California Unfair Competition Law and breach of the common law duty of implied warranty.

5.     ***Diaz v. Intuit***, No. 5:15-CV-01778-PSG (N.D. Cal.).  Lieff Cabraser represents identity theft victims in a nationwide class action lawsuit against Intuit for allegedly failing to protect consumers' data from foreseeable and preventable breaches, and by facilitating the filing of fraudulent tax returns through its TurboTax software program.  The complaint alleges that Intuit failed to protect data provided by consumers who purchased TurboTax, used to file an estimated 30 million tax returns for American taxpayers every year, from easy access by hackers and other cybercriminals.  The complaint further alleges that Intuit was aware of the widespread use of TurboTax exclusively for the filing of fraudulent tax returns.  Yet, Intuit failed to adopt basic cyber security policies to prevent this misuse of TurboTax.  As a result, fraudulent tax returns were filed in the names of the plaintiffs and thousands of other individuals across America, including persons who never purchased TurboTax.

6.     ***Henson v. Turn***, No. 3:15-CV-01497 (N.D. Cal.).  Lieff Cabraser represents plaintiffs in class action litigation alleging that internet marketing company Turn, Inc. violates users' digital privacy by installing software tracking beacons on smartphones, tablets, and other mobile computing devices. The complaint alleges that in an effort to thwart standard privacy settings and features, Turn deploys so-called "zombie cookies" that cannot be detected or deleted, and that track smartphone activity across various browsers and applications. Turn uses the data harvested by these cookies to build robust user profiles and sell targeted and profitable advertising, all without the user's knowledge or consent. The complaint alleges that Turn's conduct violates consumer protection laws and amounts to trespass.

7.     ***McDowell v. CGI Group***, No. 1:15-cv-01157-GK (D.D.C.).  Lieff Cabraser represents individuals in class action litigation against CGI Group, Inc. and CGI Federal, Inc. (collectively "CGI") for allegedly facilitating a data breach affecting more than 1,000 U.S. citizens.  The U.S. government contracts with CGI to manage all U.S. passport application activities.  Passport applicants must provide their name, date of birth, city of birth, state of birth, country of birth, social security number, sex, height, hair color, eye color, occupation, and evidence of U.S. citizenship, such as a previously issued U.S. passport, or U.S. birth certificate.  Between 2010 and May 2, 2015, CGI employees allegedly stole and sold personal information of passport applicants to cybercriminals.  The mass identity theft allowed cybercriminals to use stolen information

to buy cell phones and computers, and to obtain lines of credit. The complaint alleges that CGI failed to fulfill its legal duty to protect customers' sensitive personal and financial information.

## B.    Successes

1.    ***Fowles v. Anthem***, No. 3:15-cv-2249 (N.D. Cal.).  Lieff Cabraser represents individuals in a class action lawsuit against Anthem for its alleged failure to safeguard and secure the medical records and other personally identifiable information of its members. The second largest health insurer in the U.S., Anthem provides coverage for 37.5 million Americans. Anthem's customer database was allegedly attacked by international hackers on December 10, 2014. Anthem says it discovered the breach on January 27, 2015, and reported it about a week later on February 4, 2015.  California customers were informed around March 18, 2015.  The theft included names, birth dates, social security numbers, billing information, and highly confidential health information. The complaint charged that Anthem violated its duty to safeguard and protect consumers' personal information, and violated its duty to disclose the breach to consumers in a timely manner. In addition, the complaint charged that Anthem was on notice about the weaknesses in its computer security defenses for at least a year before the breach occurred.

In August 2018, Judge Lucy H. Koh of the U. S. District Court for the Northern District of California granted final approval to a class action settlement which required Anthem to undertake significant additional cybersecurity measures to better safeguard information going forward, and to pay $115 million into a settlement fund from which benefits to settlement class members will be paid.

2.    ***Matera v. Google Inc.***, No. 5:15-cv-04062 (N.D. Cal.). Lieff Cabraser represented consumers in a digital privacy class action against Google Inc. over claims the popular Gmail service conducted unauthorized scanning of email messages to build marketing profiles and serve targeted ads. The complaint alleged that Google routinely scanned email messages that were sent by non-Gmail users to Gmail subscribers, analyzed the content of those messages, and then shared that data with third parties in order to target ads to Gmail users, an invasion of privacy that violated the California Invasion of Privacy Act and the federal Electronic Communications Privacy Act. In February 2018, the Court granted final approval to a $2.2 million settlement of the action. Under the settlement, Google made business-related changes to its Gmail service, as part of which, Google will no longer scan the contents of emails sent to Gmail accounts for advertising purposes, whether during the transmission process or after the emails have been delivered to the Gmail user's inbox.

The proposed changes, which will not apply to scanning performed to prevent the spread of spam or malware, will run for at least three years.

3.  ***Ebarle et al. v. LifeLock Inc.***, No. 3:15-cv-00258 (N.D. Cal.). Lieff Cabraser represented consumers who subscribed to LifeLock's identity theft protection services in a nationwide class action fraud lawsuit. The complaint alleged LifeLock did not protect the personal information of its subscribers from hackers and criminals, and specifically that, contrary to its advertisements and statements, LifeLock lacked a comprehensive monitoring network, failed to provide "up-to-the-minute" alerts of suspicious activity, and did an inferior job of providing the same theft protection services that banks and credit card companies provide, often for free. On September 21, 2016, U.S. District Judge Haywood Gilliam, Jr. granted final approval to a $68 million settlement of the case.

4.  ***Perkins v. LinkedIn***, No. 13-CV-04303-LHK (N.D. Cal.).  Lieff Cabraser represented individuals who joined LinkedIn's network and, without their consent or authorization, had their names and likenesses used by LinkedIn to endorse LinkedIn's services and send repeated emails to their contacts asking that they join LinkedIn.  On February 16, 2016, the Court granted final approval to a $13 million settlement, one of the largest per-class member settlements ever in a digital privacy class action. In addition to the monetary relief, LinkedIn agreed to make significant changes to Add Connections disclosures and functionality.  Specifically, LinkedIn revised disclosures to real-time permission screens presented to members using Add Connections, agreed to implement new functionality allowing LinkedIn members to manage their contacts, including viewing and deleting contacts and sending invitations, and to stop reminder emails from being sent if users have sent connection invitations inadvertently.

5.  ***Corona v. Sony Pictures Entertainment***, No.  2:14-CV-09660-RGK (C.D. Cal.).  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in class action litigation against Sony for failing to take reasonable measures to secure the data of its employees from hacking and other attacks.  As a result, personally identifiable information of thousands of current and former Sony employees and their families was obtained and published on websites across the Internet.  Among the staggering array of personally identifiable information compromised were  medical records, Social Security Numbers, birth dates, personal emails, home addresses, salaries, tax information, employee evaluations, disciplinary actions, criminal background checks, severance packages, and family medical histories. The complaint charged that Sony owed a duty to take reasonable steps to secure the data of its employees from hacking.  Sony allegedly breached this duty by failing to properly invest in adequate IT security, despite having already succumbed to one of the largest data breaches in history

only three years ago. In October 2015, an $8 million settlement was reached under which Sony agreed to reimburse employees for losses and harm.

## X.   International and Human Rights Litigation

### A.   Successes

1.   ***Holocaust Cases***.  Lieff Cabraser was one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era.  The firm served as Settlement Class Counsel in the case against the Swiss banks for which the Court approved a U.S. $1.25 billion settlement in July 2000.  Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School.  The firm was also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks.  In connection therewith, Lieff Cabraser participated in multi-national negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled *In re Holocaust Era German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

> Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears.  You can say what you want to say about class actions and about attorneys, but the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . .  What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . .  I want to thank counsel for the assistance in bringing us to where we are today.  Cases don't get settled just by litigants.  It can only be settled by competent, patient attorneys.

2.   ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No. 01-0892-CRB (N.D. Cal.).  Working with co-counsel, Lieff Cabraser succeeded in correcting an injustice that dated back 60 years.  The case was brought on behalf of Mexican workers and laborers, known

as Braceros ("strong arms"), who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1946 to aid American farms and industries hurt by employee shortages during World War II in the agricultural, railroad, and other industries. As part of the Braceros program, employers held back 10% of the workers' wages, which were to be transferred via United States and Mexican banks to savings accounts for each Bracero. The Braceros were never reimbursed for the portion of their wages placed in the forced savings accounts.

Despite significant obstacles including the aging and passing away of many Braceros, statutes of limitation hurdles, and strong defenses to claims under contract and international law, plaintiffs prevailed in a settlement in February 2009. Under the settlement, the Mexican government provided a payment to Braceros, or their surviving spouses or children, in the amount of approximately $3,500 (USD). In approving the settlement on February 23, 2009, U.S. District Court Judge Charles Breyer stated:

> I've never seen such litigation in eleven years on the bench that was more difficult than this one. It was enormously challenging. . . . It had all sorts of issues . . . that complicated it: foreign law, constitutional law, contract law, [and] statute of limitations. . . . Notwithstanding all of these issues that kept surfacing . . . over the years, the plaintiffs persisted. I actually expected, to tell you the truth, at some point that the plaintiffs would just give up because it was so hard, but they never did. They never did. And, in fact, they achieved a settlement of the case, which I find remarkable under all of these circumstances.

## *FIRM BIOGRAPHY:*

### PARTNERS

**ELIZABETH J. CABRASER**, Admitted to practice in California, 1978; U.S. Supreme Court, 1996; U.S. Tax Court, 1979; California Supreme Court, 1978; U.S. District Court, Northern District of California, 1978; U.S. District Court, Eastern District of California, 1979; U.S. District Court, Central District of California and Southern District of California, 1992; U.S. District Court, Eastern District of Michigan, 2005; U.S. Court of Appeals, First Circuit, 2011; U.S. Court of Appeals, Second Circuit, 2009; U.S. Court of Appeals, Third Circuit, 1994; U.S. Court of Appeals, Fifth Circuit, 1992; U.S. Court of Appeals, Sixth Circuit, 1992; U.S. Court of Appeals, Seventh Circuit, 2001; U.S. Court of Appeals, Ninth Circuit, 1979; U.S. Court of Appeals, Tenth Circuit, 1992; U.S. Court of Appeals, Eleventh Circuit, 1992; U.S. District Court, District of Hawaii, 1986; Fourth Circuit Court of Appeals, 2013. *Education*: University of California, Berkeley, School of Law (Berkeley Law), Berkeley, California (J.D., 1978); University

of California at Berkeley (A.B., 1975). *Awards and Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; ; selected for inclusion by peers in The Best Lawyers in America in the fields of "Mass Tort Litigation/Class Actions – Plaintiffs" and "Personal Injury Litigation – Plaintiffs, Product Liability Litigation – Plaintiffs," 2005-2019; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Mass Tort Litigation/Class Actions - Plaintiffs and Product Liability Litigation - Plaintiffs for San Francisco, 2014, 2016, 2018; "Elite Women of the Plaintiffs Bar," National Law Journal, 2018; "Champion of Justice," Public Justice, 2018; "Titan of the Plaintiffs' Bar," *Law360*, 2018; "Top California Women Lawyers," *Daily Journal*, 2007-2018; "National Trial Lawyers Hall of Fame," National Trial Lawyers Association, 2018; "Lifetime Achievement Award," *National Law Journal*, 2017; "Plaintiff Lawyer of the Year," *Benchmark Litigation*, 2017; "Top 250 Women in Litigation," *Benchmark Litigation*, 2016-2018; "Top Plaintiff Lawyers," *Daily Journal*, 2016-2017; "Leader in the Field" for General Commercial Litigation (California); Product Liability – Plaintiffs (Nationwide), *Chambers USA*, 2017; "Energy and Environmental Law Trailblazer," *National Law Journal*, 2017; "Top 10 Northern California Super Lawyers," *Super Lawyers*, 2018; "Top 50 Women Northern California Super Lawyers," *Super Lawyers*, 2005-2018; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2005-2018; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "California Litigation Star," *Benchmark Litigation*, 2012-2017; "Litigator of the Week," *American Lawyer Litigation Daily*, October 28, 2016; "25 Most Influential Women in Securities Law," *Law360*, 2016 ; "MVP for Class Action Law," *Law360*, 2016; "Judge Learned Hand Award," American Jewish Committee, 2016; "Top 10 Female Litigators," *Benchmark Litigation*, 2016; "Women Trailblazers in the Law," Senior Lawyers Division, American Bar Association, 2015 "Top 100 Trial Lawyers in America," *Benchmark Litigation*, 2015; "Top Trial Lawyer," *Benchmark Litigation*, 2016; "Top 100 Attorneys in California," *Daily Journal*, 2002-2007, 2010-2015; "Lawdragon 500 Leading Lawyers in America," *Lawdragon*, 2005-2015; "Outstanding Women Lawyer," *National Law Journal*, 2015; "Top 10 Northern California Super Lawyer," *Super Lawyers*, 2011-2016); "Recommended Lawyer," *The Legal 500* (U.S. edition, 2000-2014); "100 Most Influential Lawyers in America," *The National Law Journal*, 1997, 2000, 2006, & 2013; "Lifetime Achievement Award," American Association for Justice, 2012; "Outstanding Achievement Award," Chambers USA, 2012; "Margaret Brent Women Lawyers of Achievement Award," American Bar Association Commission on Women in the Profession, 2010; "Edward Pollock Award," Consumer Attorneys of California, 2008; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, Winter 2007; "50 Most Influential Women Lawyers in America," *The National Law Journal*, 1998 & 2007; "Award For Public Interest Excellence," University of San Francisco School of Law Public Interest Law Foundation, 2007; "Top 75 Women Litigators," *Daily Journal*, 2005-2006; "Lawdragon 500 Leading Litigators in America," *Lawdragon*, 2006; "Distinguished Leadership Award," Legal Community Against Violence, 2006; "Women of Achievement Award," Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2006; "Top 30 Securities Litigator," *Daily Journal*, 2005; "Top 50 Women Litigators," *Daily Journal*, 2004; "Citation Award," University of California, Berkeley, School of Law (Berkeley Law), 2003; "Distinguished Jurisprudence Award," Anti-Defamation League, 2002; "Top 30 Women Litigators," *California Daily Journal*, 2002; "Top Ten Women Litigators," *The National Law Journal*, 2001; "Matthew O. Tobriner Public Service Award," Legal Aid Society, 2000; "California Law Business Top 100 Lawyers," *California Daily Journal*, 2000; "California Lawyer of the Year (CLAY)," *California Lawyer*, 1998; "Presidential Award of

Merit," Consumer Attorneys of California, 1998; "Public Justice Achievement Award," Public Justice, 1997. *Publications & Presentations*: Editor-in-Chief, *California Class Actions Practice and Procedure*, LexisNexis (updated annually); "Punitive Damages," Proving and Defending Damage Claims, Chapter 8, Aspen Publishers (updated annually); "Symposium: Enforcing the Social Contract through Representative Litigation," 33 Connecticut Law Review 1239 (Summer 2011); "Apportioning Due Process: Preserving The Right to Affordable Justice," 87 Denver U. L.Rev. 437 (2010); "Due Process Pre-Empted: Stealth Preemption As a Consequence of Agency Capture" (2010); "When Worlds Collide: The Supreme Court Confronts Federal Agencies with Federalism in *Wyeth v. Levine*," 84 Tulane L. Rev. 1275 (2010); "Just Choose: The Jurisprudential Necessity to Select a Single Governing Law for Mass Claims Arising from Nationally Marketed Consumer Goods and Services," *Roger Williams University Law Review* (Winter 2009); "California Class Action Classics," Consumer Attorneys of California (January/February Forum 2009); Executive Editor, ABA Section of Litigation, *Survey of State Class Action Law*, 2008-2010; Coordinating Editor, ABA Section of Litigation, *Survey of State Class Action Law*, 2006-2007; "The Manageable Nationwide Class: A Choice-of-Law Legacy of *Phillips Petroleum Co. v. Shutts*," *University of Missouri- Kansas City Law Review*, Volume 74, Number 3, Spring 2006; Co-Author with Fabrice N. Vincent, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Co-Author with Joy A. Kruse, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May & June 2005); Editor-in-Chief, *California Class Actions Practice and Procedures* (2003); "A Plaintiffs' Perspective On The Effect of State Farm v. Campbell On Punitive Damages in Mass Torts" (May 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law*, updated and re-published in *5 Newberg on Class Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging Aggregation Alternatives Under the Federal Rules," *ABA 8th Annual National Institute on Class Actions*, New York (Oct. 15, 2004), New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA Toxicology Monograph-California State Law," (January 2004); "Mass Tort Class Actions," ATLA's Litigating Tort Cases, Vol. 1, Chapter 9 (June 2003); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Co-Author with Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-Author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2001-2002); "Unfinished Business: Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," *36 Wake Forest Law Review 979* (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," *33 Connecticut Law Review 1239* (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," *74 Tulane Law Review 2005* (June 2000); "Class Action Trends and Developments After Amchem and Ortiz," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions," (December 1999); "Life After Amchem: The Class Struggle Continues," *31 Loyola Law Review 373* (1998); "Recent Developments in

Nationwide Products Liability Litigation: The Phenomenon of Non-Injury Products Cases, the Impact of Amchem and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation: Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken: Thoughts on the Fifth Circuit's Decertification of the Castano Class," *SB24 ALI-ABA 433* (1996); "Getting the Word Out: Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements*," 24 CTLA Forum 11* (January-February 1994); "Do You Know the Way from San Jose? The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An Oracle of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation: Tailor a Case Management Order to Your Controversy," *21 The Brief 12* (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to Undeveloped Markets: When Fraud Creates the Market," *12 Class Action Reports 402* (1989); "Mandatory Certification of Settlement Classes," *10 Class Action Reports 151* (1987). *Member:* American Academy of Arts and Sciences (Fellow); American Association for Justice (Fight for Justice Campaign; Women Trial Lawyers Caucus; California State Liaison); American Bar Association (Committee on Mass Torts, Past Co-Chair; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section; Rules & Procedures Committee, Past Vice-Chair; Civil Procedure & Evidence News Letter, Contributor; Business Law Section); American Constitution Society, Board of Advisors; American Law Institute (1993 - present; Council, 1999 - present; Adviser, the Restatement Third, Consumer Contracts project and the Restatement Third, Torts: Liability for Economic Harm; Members Consultative Group, the Restatement Third, Torts: Liability for Physical Harm; past Adviser, the Recognition & Enforcement of Foreign Judgments project and the Principles of the Law of Aggregate Litigation project); Association of Business Trial Lawyers; Bar Association of the Fifth Federal Circuit; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997 - 1998; Judiciary Committee); Bay Area Lawyers for Individual Freedom; California Constitution Revision Commission (1993 -1996); California Women Lawyers; Consumer Attorneys of California; Federal Bar Association; Federal Bar Association (Northern District of California Chapter); Federal Civil Rules Advisory Committee (Appointed by Supreme Court, 2011); Lawyers Club of San Francisco; National Center for State Courts (Board Member; Mass Tort Conference Planning Committee); National Judicial College (Board of Trustees); Ninth Circuit Judicial Conference (Lawyer Delegate, 1992 - 1995); Northern District of California Civil Justice Reform Act (Advisory Committee; Advisory Committee on Professional Conduct); Northern District of California Civil Justice Reform Act (CJRA) Advisory Committee; Public Justice Foundation; Queen's Bench; State Bar of California.

**RICHARD M. HEIMANN**, Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, 1975; New York, 2000; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 2013; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. Court of Appeals, Eleventh Circuit, 2015; U.S. Court of Appeals, D.C. Circuit, 1973; U.S. District Court, Central District of California, 2001; U.S. District Court, Northern District of California, 1975; U.S. District Court, Southern District of California, 2005; U.S. District Court, District of Hawaii, 1985;U.S. District Court, District of Colorado, 2006. *Education*: Georgetown University (J.D.,

1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969). *Prior Employment*: Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, 1974-75, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74. As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials. In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in The Best Lawyers in America in fields of "Bet the Company Litigation," "Litigation – Antitrust," "Litigation – Securities," and "Mass Tort Litigation/Class Actions – Plaintiffs," 2007-2019; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "Lawyer of the Year," *Best Lawyers*, Litigation-Securities for San Francisco, 2017; "Top 100 Trial Lawyers in America," *Benchmark Litigation*, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017; "Lawyer of the Year," *Best Lawyers*, Litigation-Securities for San Francisco, 2016; "California Litigation Star," *Benchmark Litigation*, 2013-2016; "Trial Ace," *Law360* (one of 50 attorneys in the U.S. recognized by *Law360* in 2015 as the foremost trial lawyers in America); Legal 500 recommended lawyer, *LegalEase*, 2013; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2013; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2011; California Lawyer of the Year (CLAY) Award, *California Lawyer*, 2011, 2013; "Lawdragon Finalist," Lawdragon, 2009-2011; "Top 100 Attorneys in California," *Daily Journal*, 2010-2011; "Top Attorneys In Securities Law," Super Lawyers Corporate Counsel Edition, 2010, 2012. *Publications & Presentations:* Securities Law Roundtable, *California Lawyer* (March 2013); Securities Law Roundtable, *California Lawyer* (September 2010); Securities Law Roundtable, *California Lawyer* (March 2009); Securities Law Roundtable, *California Lawyer* (April 2008); Securities Law Roundtable, *California Lawyer* (April 2007); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions" (December 1999). *Member*: State Bar of California; Bar Association of San Francisco.

   **WILLIAM BERNSTEIN**, Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1987; U.S. District Court, Northern District of California, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992; U.S. Court of Appeals, Third Circuit, 2008. *Education*: University of San Francisco (J.D., 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972). *Community Service*: Adjunct Professor of Law, University of San Francisco, Settlement Law, 2006-present; Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; "California Litigation Star," *Benchmark Plaintiff* (ranked as one of California's leading litigators in antitrust law); Selected for inclusion by peers in *The Best Lawyers in America* in field of "Litigation - Antitrust," 2013-2019; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2014; "Lawdragon Finalist," *Lawdragon*, 2009-2011; "Top Attorneys In Antitrust Law," *Super Lawyers Corporate Counsel Edition*, 2010, 2012; Princeton Premier Registry, Business Leaders and Professionals, 2008-2009; "Top 100 Trial Lawyers in California," American Trial Lawyers

Association, 2008; *Who's Who Legal*, 2007; Unsung Hero Award, Appleseed, 2006. *Publications & Presentations*: "The Rise and Fall of Enron's One-To-Many Trading Platform," American Bar Association Antitrust Law Section, Annual Spring Meeting (2005); Co-Author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *Hastings West-Northwest Journal of Environmental and Toxic Torts Law and Policy*, No. 3 (Spring 1996). *Member*: Board of Governors, Association of Business Trial Lawyers; Bar Association of San Francisco; Marin County Bar Association (Admin. of Justice Committee, 1988); State Bar of California.

**DONALD C. ARBITBLIT**, Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974). *Awards and Honors:* AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions - Plaintiffs" and "Personal Injury Litigation – Plaintiffs," 2012-2019; Northern California Super Lawyers," *Super Lawyers*, 2004, 2006-2008, 2014-2019; Legal 500 recommended lawyer, *LegalEase*, 2013; "*Lawdragon* Finalist," *Lawdragon*, 2009-2011. *Publications & Presentations*: Co-Author with Wendy Fleishman, "The Risky Business of Off-Label Use," *Trial* (March 2005); "Comment on Joiner: Decision on the Daubert Test of Admissibility of Expert Testimony," *6 Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *3 Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," *8 Ecology Law Quarterly*, No. 2 (1979). *Appointments*: Co-Chair, California JCCP Yaz Science Committee, 2010-Present; Member of the Federal Court-appointed Science Executive Committee, and Chair of the Epidemiology/Clinical Trials Subcommittee, *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.); Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine /Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation*, MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.). *Member*: State Bar of California; Bar Association of San Francisco.

**STEVEN E. FINEMAN,** Managing Partner. Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; U.S. District Court for the District of Columbia, 1997. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English Literature and Political Science, 1983-84). *Awards & Honors*: Selected for inclusion by peers in The Best Lawyers in America in the fields of "Mass Tort Litigation/Class Actions – Plaintiffs," 2006-2019; "Super Lawyer for New York Metro," *Super Lawyers*, 2006-2017; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Mass Tort Litigation/Class Actions – Plaintiffs for New York City, 2016; "New York Litigation Star," *Benchmark Litigation*, 2013-2016; Member, *Best Lawyers* Advisory Board, a select group of U.S. and international law firm leaders and general counsel, 2011-2012; "Lawdragon Finalist," *Lawdragon*, 2009-present;

"Top Attorneys In Securities Law," *Super Lawyers Business Edition*, 2008-present; Consultant to the Office of Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services, April 2008-February 2009; "100 Managing Partners You Need to Know," *Lawdragon*, 2008; "40 Under 40," selected as one of the country's most successful litigators under the age of 40, *The National Law Journal*, 2002. *Publications & Presentations*: American Association for Justice, The Future of Class Actions: Teamwork, Savvy Defense, and Smart Offense, Panel Member, "Going on Offense: Developing a Proactive Plan" (May 11, 2017, Nashville, Tennessee); University of Haifa Faculty of Law, Dispute Resolution of Consumer Mass Disputes, Panelist, "The Role of the Lead Lawyer in Consumer Class Actions" (March 17, 2017, Haifa, Israel); Global Justice Forum, Presented by Robert L. Lieff – Moderator of Financial Fraud Litigation Panel and Participant on Financing of Litigation Panel (October 4, 2011, Columbia Law School, New York, New York); The Canadian Institute, The 12th Annual Forum on Class Actions – Panel Member, *Key U.S. and Cross-Border Trends: Northbound Impacts and Must-Have Requirements* (September 21, 2011, Toronto, Ontario, Canada); Co-Author with Michael J. Miarmi, "The *Basic*s of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Representing Plaintiffs in Large-Scale Litigation (March 2, 2011, Stanford, California); Stanford University Law School — Panel Member, Symposium on the Future of the Legal Profession, (March 1, 2011, Stanford, California); Stanford University Law School, Member, Advisory Forum, Center of the Legal Profession (2011-Present); 4th Annual International Conference on the Globalization of Collective Litigation — Panel Member, Funding Issues: Public versus Private Financing (December 10, 2010, Florida International University College of Law, Miami, Florida); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *The Supreme Court's Decisions in Iqbol and Twombly Threaten Access to Federal Courts* (Winter 2010); American Constitution Society for Law and Policy, Access to Justice in Federal Courts — Panel Member, The Iqbal and Twombly Cases (January 21, 2010, New York, New York); American Bar Association, Section of Litigation, The 13th Annual National Institute on Class Actions — Panel Member, Hydrogen Peroxide Will Clear It Up Right Away: Developments in the Law of Class Certification (November 20, 2009, Washington, D.C.); Global Justice Forum, Presented by Robert L. Lieff and Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Co-Host and Moderator of Mediation/Arbitration Panel (October 16, 2009, Columbia Law School, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts (April 6, 2009, Stanford, California); Consultant to the Office of Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services, April 2008-February 2009; Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts (April 16, 2008, Stanford, California); Benjamin N. Cardozo Law School, The American Constitution Society for Law & Policy, and Public Justice, Co-Organizer of conference and Master of Ceremonies for conference, Justice and the Role of Class Actions (March 28, 2008, New York, New York); Stanford University Law School and The Centre for Socio-Legal Studies, Oxford University, Conference

on The Globalization of Class Actions, Panel Member, Resolution of Class and Mass Actions (December 13 and 14, 2007, Oxford, England); Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," New York State Trial Lawyers Association's "Bill of Particulars," (2005-present); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Federal Multidistrict Litigation Practice* (Fall 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Pleading a Federal Court Complaint* (Summer 2007); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts (April 17, 2007, Palo Alto, California); "Bill of Particulars, A Review of Developments in New York State Law," *Initiating Litigation and Electronic Filing in Federal Court* (Spring 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *Federal Court Jurisdiction: Getting to Federal Court By Choice or Removal* (Winter 2007); American Constitution Society for Law and Policy, 2006 National Convention, Panel Member, Finding the Balance: Federal Preemption of State Law (June 16, 2006, Washington, D.C.); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Panel Member on Securities Litigation (May 19, 2006, Paris, France); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Court (April 25, 2006, Stanford, California); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Speaker and Papers, The Basics of Federal Multidistrict Litigation: How Disbursed Claims are Centralized in U.S. Practice and Basic Principles of Securities Actions for Institutional Investors (May 20, 2005, London, England); New York State Trial Lawyers Institute, Federal Practice for State Practitioners, Speaker and Paper, *Federal Multidistrict Litigation Practice*, (March 30, 2005, New York, New York), published in "Bill of Particulars, A Review of Developments in New York State Trial Law" (Spring 2005); Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall Street Forum: Mass Tort Litigation, Co-Chair of Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, Practical Considerations for Investors' Counsel - Getting the Case (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H. Beisner, Magnet Courts: If You Build Them, Claims Will Come (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation, Selecting The Forum For a Complex Case — Strategic Choices Between Federal And State Jurisdictions, and Alternative Dispute Resolution ADR In Mass Tort Litigation, (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School and University of Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva, "Debates Over Group Litigation in Comparative Perspective," Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); *New York Law Journal*, Article, Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme (November 23, 1998); Leader Publications, Litigation Strategist, "Fen-Phen," Articles, *The Admissibility of Scientific Evidence in Fen-Phen Litigation and Daubert Developments:*

*Something For Plaintiffs*, Defense Counsel (June 1998, New York, New York); "Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme," New York Law Journal (November 23, 1998); The Defense Research Institute and Trial Lawyer Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, A Plaintiffs' Counsels' Perspective: What's the Next Horizon? (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, The Expanding Litigation (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles (May 23, 1997, New York, New York); Plaintiff Toxic Tort Advisory Council, Lexis/Nexis, Mealey's Publications and Conferences Group (January 2002-2005). *Member*: American Association for Justice; American Bar Association; American Constitution Society (Board of Directors, 2016-present); Association of the Bar of the City of New York; Bar Association of the District of Columbia; Civil Justice Foundation (Board of Trustees, 2004-present); Fight for Justice Campaign; Human Rights First; National Association of Shareholder and Consumer Attorneys (Executive Committee, 2009-present); New York State Bar Association; New York State Trial Lawyers Association (Board of Directors, 2001-2004); New York State Trial Lawyers Association's "Bill of Particulars" (Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," 2005-present); Plaintiff Toxic Tort Advisory Council (Lexis/Nexis, Mealey's Publications and Conferences Group, 2002-2005); Public Justice Foundation (President, 2011-2012; Executive Committee, July 2006-present; Board of Directors, July 2002-present); Co-Chair, Major Donors/Special Gifts Committee, July 2009-present; Class Action Preservation Project Committee, July 2005-present); State Bar of California; Supreme Court Historical Society.

**ROBERT J. NELSON**, Admitted to practice in California, 1987; California Supreme Court; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; U.S. Court of Appeals, Seventh Circuit, 2016; District of Columbia, 1998; U.S. District Court, Eastern District of California, 2006; U.S. District Court, Northern District of Ohio; U.S. District Court, Southern District of Ohio; U.S. District Court, Middle District of Tennessee. *Education*: New York University School of Law (J.D., 1987): Order of the Coif, Articles Editor, *New York University Law Review*; Root-Tilden-Kern Scholarship Program. Cornell University (A.B., *cum laude* 1982): Member, Phi Beta Kappa; College Scholar Honors Program. London School of Economics (General Course, 1980-81): Graded First. *Prior Employment:* Judicial Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91 (Part-time position). *Awards & Honors*: Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Personal Injury Litigation – Plaintiffs" and "Product Liability Litigation – Plaintiffs," 2012-2019; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "California Litigation Star," *Benchmark Litigation*, 2013-2016; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2007, 2010, 2014-2015; Legal 500 recommended lawyer, *LegalEase*, 2013-Present; "Lawdragon Finalist," *Lawdragon*, 2009-2011; "California Lawyer Attorney of the Year (CLAY)" Award, *California Lawyer*, 2008, 2010; "San Francisco Trial Lawyer of the Year Finalist," San Francisco Trial Lawyers' Association, 2007.

*Publications:* False Claims Roundtable, California Lawyer (January 2013); False Claims Roundtable, California Lawyer (April 2012); False Claims Roundtable, California Lawyer (June 2011); False Claims Roundtable, *California Lawyer* (June 2010); Product Liability Roundtable, *California Lawyer* (March 2010); Product Liability Roundtable, *California Lawyer* (July 2009); "Class Action Treatment of Punitive Damages Issues after *Philip Morris v. Williams*: We Can Get There from Here," 2 Charleston Law Review 2 (Spring 2008) (with Elizabeth J. Cabraser); Product Liability Roundtable, California Lawyer (December 2007); Contributing Author, California Class Actions Practice and Procedures (Elizabeth J. Cabraser editor in chief, 2003); "The Importance of Privilege Logs," The Practical Litigator, Vol. II, No. 2 (March 2000) (ALI-ABA Publication); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 New York University Law Review 334 (1986). *Member*: American Association for Justice, Fight for Justice Campaign; American Bar Association; American Civil Liberties Union of Northern California; Bar Association of San Francisco; Bar of the District of Columbia; Consumer Attorneys of California; Human Rights Watch California Committee North; RE-volv, Board Member; San Francisco Trial Lawyers Association; State Bar of California.

**KELLY M. DERMODY**, Admitted to practice in California (1994); U.S. Supreme Court (2013); U.S. Court of Appeals for the First Circuit (2012); U.S. Court of Appeals for the Second Circuit (2010); U.S. Court of Appeals for the Third Circuit (2001); U.S. Court of Appeals for the Fourth Circuit (2008); U.S. Court of Appeals for the Sixth Circuit (2008); U.S. Court of Appeals for the Seventh Circuit (2006); U.S. Court of Appeals for the Ninth Circuit (2007); U.S. District Court, Northern District of California (1995); U.S. District Court, Central District of California (2005); U.S. District Court, Eastern District of California (2012); U.S. District Court of Colorado (2007). *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University (A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award. *Prior Employment*: Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001). *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; "Top California Women Lawyers," *Daily Journal*, 2007, 2010, 2012-2018; Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Employment Law – Individuals" and "Litigation – Labor and Employment," 2010-2019; "Northern California Super Lawyer," *Super Lawyers*, 2004-2019; "Lawyer of the Year," *Best Lawyers*, Employment Law-Individuals for San Francisco, 2014, 2018; "Top Labor & Employment Lawyers," Daily Journal, 2018; "Top 250 Women in Litigation," *Benchmark Litigation*, 2016-2018; "Gender Justice Honoree," Equal Rights Advocates, 2017; "California Litigation Star," *Benchmark Litigation*, 2013-2016; Fellow, The College of Labor and Employment Lawyers, 2015; "Top 100 Attorneys in California, *Daily Journal,* 2012-2015; "Top 75 Labor and Employment Attorneys in California," *Daily Journal*, 2011-2015; "500 Leading Lawyers in America," *Lawdragon*, 2010-2015; "Top 50 Women Northern California Super Lawyers," *Super Lawyers*, 2007-2015, 2018; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2007, 2009-2015, 2018; Distinguished Jurisprudence Award, Anti-Defamation League, 2014; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Employment Law – Individuals for San Francisco, 2014; "Top 10 Northern California Super Lawyers, *Super Lawyers*, 2014; "Dolores Huerta Adelita Award,"

California Rural Assistance, 2013; "Recommended Lawyer," *The Legal 500* (U.S. edition, 2013); "Women of Achievement Award," Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2011; "Irish Legal 100" Finalist, *The Irish Voice*, 2010; "Florence K. Murray Award," National Association of Women Judges, 2010 (for influencing women to pursue legal careers, opening doors for women attorneys, and advancing opportunities for women within the legal profession); "Lawdragon Finalist," *Lawdragon*, 2007-2009; "Community Service Award," Bay Area Lawyers for Individual Freedom, 2008; "Community Justice Award," Centro Legal de la Raza, 2008; "Award of Merit," Bar Association of San Francisco, 2007; "California Lawyer Attorney of the Year (CLAY) Award," *California Lawyer*, 2007; "500 Leading Plaintiffs' Lawyers in America," *Lawdragon*, Winter 2007; "Trial Lawyer of the Year Finalist," Public Justice Foundation, 2007; "Consumer Attorney of the Year" Finalist, Consumer Attorneys of California, 2006; "California's Top 20 Lawyers Under 40," *Daily Journal*, 2006; "Living the Dream Partner," Lawyers' Committee for Civil Rights of the San Francisco Bay Area, 2005; "Top Bay Area Employment Attorney*," The Recorder*, 2004. *Member*: American Law Institute, Elected Member, 2019; American Bar Association, Labor and Employment Law Section (Governing Council, 2009-present; Co-Chair, Section Conference, 2008-2009; Vice-Chair, Section Conference, 2007-2008; Co-Chair, Committee on Equal Opportunity in the Legal Profession, 2006-2007); American Bar Association, Section of Litigation (Attorney Client Privilege Task Force, 2017-2018); Bar Association of San Francisco (Board of Directors, 2005-2012; President, 2011-2012; President-Elect, 2010-2011; Treasurer, 2009-2010; Secretary, 2008-2009; Litigation Section; Executive Committee, 2002-2005); Bay Area Lawyers for Individual Freedom; Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005; Member, 1997-Present); Carver Healthy Environments and Response to Trauma in Schools (Steering Committee, 2007); College of Labor and Employment Lawyers (Fellow, 2015); Consumer Attorneys of California; Equal Rights Advocates (Litigation Committee, 2000-2002); National Association of Women Judges (Independence of the Judiciary Co-Chair, 2011-2014; Resource Board, Co-Chair, 2009-2011, Member, 2005-2014); National Center for Lesbian Rights (Board of Directors, 2002-2008; Co-Chair, 2005-2006); National Employment Lawyers' Association; Northern District of California Historical Society (Board of Directors, 2015- Present); Northern District of California Lawyer Representative to the Ninth Circuit Judicial Conference (2007-2010); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); Public Justice Foundation; State Bar of California.

**JONATHAN D. SELBIN**, Admitted to practice in California, 1994; District of Columbia, 2000; New York, 2001; U.S. Supreme Court, 2012; U.S. Court of Appeals, Second Circuit, 2016; U.S. Court of Appeals, Third Circuit, 2009; U.S. Court of Appeals, Fifth Circuit, 2002; U.S. Court of Appeals, Sixth Circuit, 2012; U.S. Court of Appeals, Ninth Circuit, 2007; U.S. Court of Appeals, Tenth Circuit, 2014; U.S. District Court, Northern District of California, 1997; U.S. District Court, Central District of California, 1995; U.S. District Court, Northern District of Florida, 2009; U.S. District Court Northern District of Illinois, 2010; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2008; U.S. District Court, Eastern District of Michigan, 2007; U.S. District Court, Eastern District of Wisconsin, 2013. *Education*: Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989). *Prior Employment*: Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95.

*Awards & Honors*: Selected for inclusion by peers in *The Best Lawyers in America* in field of " Product Liability Litigation – Plaintiffs," 2013-2019; "New York Super Lawyers," Super Lawyers, 2006-2018; Distinguished Service Award, American Association for Justice, 2016; "New York Litigation Star," *Benchmark Litigation*, 2013-2016; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: On Class Actions (2009); Contributing Author, "Ninth Circuit Reshapes California Consumer-Protection Law," American Bar Association (July 2012); Contributing Author, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser editor-in-chief, 2003); "Bashers Beware:  The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993). *Member*: American Association for Justice; American Bar Association; District of Columbia Bar Association; Equal Justice Works, Board of Counselors; New York Advisory Board, Alliance for Justice; New York State Bar Association; New York State Trial Lawyers Association; State Bar of California.

**MICHAEL W. SOBOL**, Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001; U.S. District Court, Central District of California, 2005; U.S. District Court, Eastern District of California, 2011; U.S. District Court, Southern District of California, 2010; U.S. Court of Appeals for the Ninth Circuit (2009); U.S. Court of Appeals for the Eleventh Circuit (2012). *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983). *Prior Employment*: Lecturer in Law, Boston University School of Law, 1995-1997. *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions – Plaintiffs" and "Product Liability Litigation – Plaintiffs," 2013-2019; "Super Lawyer for Northern California," *Super Lawyers*, 2012 – 2019; "Top Cyber/Artificial Intelligence Lawyer," Daily Journal, 2018; "MVP for Cybersecurity and Privacy," Law360, 2017; "Cybersecurity & Data Privacy Trailblazer," The National Law Journal, 2017; California Litigation Star," *Benchmark Litigation*, 2013-2015; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2013; "Top 100 Attorneys in California," *Daily Journal*, 2012-2013; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2011; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: Panelist, National Consumer Law Center's 15th Annual Consumer Rights Litigation Conference, Class Action Symposium; Panelist, Continuing Education of the Bar (C.E.B.) Seminar on Unfair Business Practices—California's Business and Professions Code Section 17200 and Beyond; Columnist, *On Class Actions*, Association of Business Trial Lawyers, 2005 to present; *The Fall of Class Action Waivers* (2005); *The Rise of Issue Class Certification* (2006); *Proposition 64's Unintended Consequences* (2007); *The Reach of Statutory Damages* (2008). *Member*:  State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California, Board of Governors, (2007-2008, 2009-2010); National Association of Consumer Advocates.

**FABRICE N.  VINCENT**, Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989). *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions – Plaintiffs," "Product Liability Litigation – Plaintiffs," and "Personal Injury Litigation –

Plaintiffs," 2012-2019; "Super Lawyer for Northern California," *Super Lawyers*, 2006–2019; "Outstanding Subcommittee Chair for the Class Actions & Derivative Suits," *ABA Section of Litigation*, 2013. *Publications & Presentations*: Lead Author, *Citizen Report on Utility Terrain Vehicle (UTV) Hazards and Urgent Need to Improve Safety and Performance Standards; and Request for Urgent Efforts To Increase Yamaha Rhino Safety and Avoid Needless New Catastrophic Injuries, Amputations and Deaths*, Lieff Cabraser Heimann & Bernstein, LLP (2009); Co-Author with Elizabeth J. Cabraser, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Co-Editor, *California Class Actions Practice and Procedures* (2003-06); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000-09), updated and re-published in 5 *Newberg on Class Actions* (2001-09); Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-06); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000); Author of "Off-Label Drug Promotion Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Author, "AHP Loses Key California Motion In Limine," (February 2000); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000); Author, "Special Master Rules Against SmithKline Beecham Privilege Log," (November 1999). *Member*: American Association for Justice; Association of Business Trial Lawyers; State Bar of California; Bar Association of San Francisco; American Bar Association; Fight for Justice Campaign; Association of Business Trial Lawyers; Society of Automotive Engineers.

**DAVID S. STELLINGS**, Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990). *Awards & Honors*: "Super Lawyer for New York Metro," *Super Lawyers*, 2012-2017; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "*Lawdragon* Finalist, *Lawdragon*, 2009. *Member*: New York State Bar Association; New Jersey State Association; Bar Association of the City of New York; American Bar Association.

**ERIC B. FASTIFF,** Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Courts of Appeals for the Third, Ninth and Federal Circuit; U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, District of Columbia; U.S. District Court, Eastern District of Wisconsin; U.S. Court of Federal Claims. *Education*: Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of

Economics (M.Sc.(Econ.), 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi*, 1990). *Prior Employment*: Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996; International Trade Specialist, Eastern Europe Business Information Center, U.S. Department of Commerce, 1992. *Awards & Honors*: Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Litigation - Antitrust," 2013-2019; "Northern California Super Lawyer," *Super Lawyers*, 2010-2019; "Top Plaintiff Lawyers," *Daily Journal*, 2016-2017; "Plaintiffs' Law Trailblazer," *National Law Journal*, 2018; "Leader in the Field" for Antitrust (California), Antitrust (National), *Chambers USA*, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017; "California Litigation Star," *Benchmark Litigation*, 2013-2015; Legal 500 recommended lawyer, *LegalEase*, 2013; "Top 100 Lawyers in California," *Daily Journal*, 2013; "Top Attorneys in Business Law," *Super Lawyers* Corporate Counsel Edition, 2012; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: General Editor, *California Class Actions Practice and Procedures*, (2003-2009); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2003-2008); Author, "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004); Author, "The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member*: American Antitrust Institute (Advisory Board, 2012-Present); Committee to Support the Antitrust Laws, President, 2017; Bar Association of San Francisco; Children's Day School (Board of Trustees); District of Columbia Bar Association; *Journal of Generic Medicines* (Editorial Board Member, 2003-Present); State Bar of California; U.S. Court of Federal Claims Bar Association.

**WENDY R. FLEISHMAN**, Admitted to practice in New York, 1992; Pennsylvania, 1977; U.S. Supreme Court, 2000; U.S. Court of Appeals 2nd Circuit, 1998; U.S. Court of Appeals 3rd Circuit, 2010; U.S. Court of Appeals 8th Circuit, 2009; U.S. Court of Appeals 9th Circuit, 2010; U.S. District Court, District of Arizona, 2013; U.S. District Court, Western District of New York, 2012; U.S. District Court Eastern District of New York, 1999; U.S. District Court Northern District of New York, 1999; U.S. District Court Southern District of New York, 1995; U.S. District Court, Eastern District of Wisconsin, 2013; U.S. District Court, Eastern District of Pennsylvania, 1984; U.S. District Court, Western District of Pennsylvania, 2001; U.S. Court of Appeals 5th Circuit, March 5, 2014. *Education*: University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974). *Prior Employment*: Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment—and construction—related matters); Assistant District Attorney in Philadelphia, PA, 1977-84 (in charge of and tried major homicide and sex crime cases). *Awards and Honors*: Fellow, American Bar Foundation; AV Preeminent Peer Review Rated, Martindale-Hubbell; "Top 100 Trial Lawyers," The National Trial Lawyers; Selected for inclusion by peers in The Best Lawyers in America in the field of "Mass Tort Litigation/Class Actions – Plaintiffs," 2019; "New York Super Lawyers," Super Lawyers, 2006-2018; "New York Litigation Star," *Benchmark*

*Litigation*, 2013-2016; Legal 500 recommended lawyer, *LegalEase*, 2013; Officer of New York State Trial Lawyers Association, 2010-present; New York State Academy of Trial Lawyers, 2011; "*Lawdragon* Finalist," *Lawdragon*, 2009. **Publications & Presentations**: Moderator, "Jurisdiction: Defining State Courts' Authority," Pound Civil Justice Institute Judges Forum; Boston, MA, July 2017; Speaker, "Diversity in Mass Torts," AAJ Education Programs, Boston, MA, July 2017; Speaker, "Mass Torts & Criminality," JAMS Mass Torts Judicial Forum, New York, NY, April 2017; Speaker, "Settling Strategies for MDLs," JAMS Mass Torts Judicial Forum, New York, NY, April 2016; Moderator & Chair, "Toxic, Environmental & Pharmaceutical Torts," American Association for Justice Annual Convention, Baltimore, MD, July 2014; "Where Do You Want To Be? Don't Get Left Behind, Creating a Vision for Your Practice," Minority Caucus and Women Trial Lawyers Caucus (July 22, 2013); Editor, Brown & Fleishman, "Proving and Defending Damage Claims: A Fifty-State Guide" (2007-2010); Co-Author with Donald Arbitblit, "The Risky Business of Off-Label Use," *Trial* (March 2005); Co-Author, "From the Defense Perspective," *Scientific Evidence, Chapter 6, Aspen Law Pub* (1999); Editor, *Trial Techniques Newsletter,* Tort and Insurance Practices Section, American Bar Association (1995-1996; 1993-1994); "How to Find, Understand, and Litigate Mass Torts," NYSTLA Mass Torts Seminar (April 2009); "Ethics of Fee Agreements in Mass Torts," AAJ Education Programs (July 2009). *Appointments:* Plaintiffs' Executive Committee, *IVC Filters Litigation*; Lead Counsel, Joint Coordinated California Litigation, *Amo Lens Solution Litigation*; Co-Liaison, *In re Zimmer Durom Cup Hip Implant Litigation*; Plaintiffs' Steering Committee, DePuy ASR Hip Implant Litigation; Liaison, NJ Ortho Evra Patch Product Liability Litigation; Co-Liaison, NJ Reglan Mass Tort Litigation; Co-Chair, Mealey's Drug & Medical Device Litigation Conference (2007); Executive Committee, *In re ReNu MoistureLoc Product Liability Litigation*, MDL; Discovery Chair, *In re Guidant Products Liability Litigation*; Co-Chair Science Committee, *In re Baycol MDL Litigation*; Pricing Committee, *In re Vioxx MDL Litigation*. **Member**: New York State Trial Lawyers Association (Treasurer, 2010-present; Board of Directors, 2004-Present); Association of the Bar of the City of New York (Product Liability Committee, 2007-present; Judiciary Committee, 2004-Present); American Bar Association (Annual Meeting, Torts & Insurance Practices Section, NYC, Affair Chair, 1997; Trial Techniques Committee, Torts and Insurance Practices, Chair-Elect, 1996); American Association for Justice (Board of Governors); American Association for Justice (Board of Governors, Women Trial Lawyers' Caucus); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York; Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York Women's Bar Association; New York County Lawyers; Fight for Justice Campaign; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

**RACHEL GEMAN**, Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999; U.S. District Court, Eastern District of Michigan, 2005; U.S. District Court of Colorado, 2007; U.S. Supreme Court, 2013. *Education*: Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Prior Employment*: Adjunct Professor, New York Law School; Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S.

District Court, Southern District of New York, 1997-98. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in field of "Employment Law – Individuals," 2012-2019; "Lawyer of the Year," *Best Lawyers*, recognized in the category of Employment Law – Individuals for San Francisco, 2014, 2019; "Super Lawyer for New York Metro," *Super Lawyers*, 2013-2017; Legal 500 recommended lawyer, *LegalEase*, 2013; "Rising Star for New York Metro," *Super Lawyers*, 2011; Distinguished Honor Award, United States Department of State, 2001. *Publications & Presentations*: Speaker and Moderator, "Statistics for Lawyers - Even Those Who Hate Math," National Employment Lawyers Association Annual Convention (2015); Speaker, "Gender Pay Disparities:  Enforcement, Litigation, and Remedies," New York City Conference on Representing Employees (2015); Speaker, "Protecting Pay: Representing Workers With Wage and Hour Claims," National Employment Lawyers Association (2015); Speaker and Author, "What Employment Lawyers Need to Know About Non-Employment Class Actions," ABA Section of Labor and Employment Law Conference (2014); Moderator, "Dodd-Frank and Sarbanes-Oxley Whistleblower Issues," National Employment Lawyers Association/New York (2014); Author, "Whistleblower Under Pressure," *Trial Magazine* (April 2013); Panelist, "Class Certification Strategies: Dukes in the Rear View Mirror," Impact Fund Class Action Conference (2013); Author & Panelist, "Who is an Employer Under the FLSA?" National Employment Lawyers Association Conference (2013); Panelist, "Fraud and Consumer Protection: Plaintiff and Defense Strategies," Current Issues in Pharmaceutical and Medical Device Litigation, ABA Section of Litigation (2012); Participant and Moderator, "Ask the EEOC:  Current Insights on Enforcement and Litigation," ABA Section of Labor and Employment Law (2011); Panelist, "Drafting Class Action Complaints," New York State Bar Association (2011); Participant and Moderator, "Ask the EEOC: Current Insights on Enforcement and Litigation," ABA Section of Labor and Employment Law (2011); *The New York Employee Advocate*, Co-Editor (2005-2009), Regular Contributor (2008-present); Moderator, "Hot Topics in Wage and Hour Class and Collective Actions," American Association for Justice Tele-Seminar (2010); Author & Panelist, "Class Action Considerations: Certification, Settlement, and More," American Conference Institute Advanced Forum (2009); Panelist, "Rights Without Remedies," American Constitutional Society National Convention, Revitalizing Our Democracy: Progress and Possibilities (2008); Panelist, Fair Measure: Toward Effective Attorney Evaluations, American Bar Association Annual Meeting (2008); Panelist, "Getting to Know You: Use and Misuse of Selection Devices for Hiring and Promotion," ABA Labor & Employment Section Annual Meeting (2008); Author, "'Don't I Think I Know You Already?': Excessive Subjective Decision-Making as an Improper Tool for Hiring and Promotion," ABA Labor & Employment Section Annual Meeting (2008); Author & Panelist, "Ethical Issues in Representing Workers in Wage & Hour Actions," Representing Workers in Individuals & Collective Actions under the FLSA (2007); Author & Panelist, "Evidence and Jury Instructions in FLSA Actions," Georgetown Law Center/ACL-ABA (2007); Author & Panelist, "Crucial Events in the 'Life' of an FLSA Collective Action: Filing Considerations and the Two-step 'Similarly-Situated' Analysis," National Employment Lawyers Association, Annual Convention (2006); Author & Panelist, "Time is Money, Except When It's Not: Compensable Time and the FLSA,"  National Employment Lawyers Association, Impact Litigation Conference (2005); Panelist, "Electronic Discovery," Federal Judicial Center & Institute of Judicial Administration, Workshop on Employment Law for Federal Judges (2005); "Image-Based Discrimination and the BFOQ Defense," *EEO Today: The Newsletter of the EEO Committee of the ABA's Section of Labor and Employment Law*,

Vol. 9, Issue 1 (2004); "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and Employment Newsletter* (2004); Chair & Panelist, "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003); Moderator, "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC Midwinter Meeting (2003). *Member*: American Bar Association [Labor and Employment Law Section, Standing Committee on Equal Employment Opportunity (Member, Past Employee Co-Chair, 2009-2011)]; Association of the Bar of the City of New York; Certified Fraud Examiners, New York Chapter, Member; National Employment Lawyers' Association - New York Chapter (Chair of Amicus Committee, 2017; Board Member, 2005-2011); National Employment Lawyers' Association – National; Public Justice Foundation; Rutter Federal Employment Guide, Contributing Editor (2017-present); Taxpayers Against Fraud Education Fund.

**BRENDAN P. GLACKIN**, Admitted to practice in California, 1998; New York, 2000; U.S. District Court, Northern, Central, Eastern and Southern Districts of California, 2001; U.S. Court of Appeals for the Ninth Circuit, 2004; U.S. District Court, Southern District of New York, 2001; U.S. Court of Appeals for the Second Circuit, 2013; U.S. Court of Appeals for the Fourth Circuit, 2016; U.S. Court of Appeals for the Ninth Circuit. *Education*: Harvard Law School (J.D., *cum laude*, 1998); University of Chicago (A.B., Phi Beta Kappa, 1995). *Prior Employment*: Contra Costa Public Defender, 2005-2007; Boies, Schiller & Flexner, 2000-2005; Willkie Farr & Gallagher, 1999-2000; Law Clerk to Honorable William B. Shubb, U.S. District Court, Eastern District of California, 1998-1999. *Awards & Honors:* "Northern California Super Lawyer," *Super Lawyers,* 2013-2019; "California Lawyer Attorney of the Year," *California Lawyer*, 2016. *Member*: State Bar of California; BASF Antitrust Section, Executive Committee. *Seminars:* Ramifications of *American Needle, Inc. v. National Football League,* 2010; Antitrust Institute 2011: Developments & Hot Topics, 2011; Antitrust Trials: The View From the Trenches, 2013; Applying Settlement Offsets to Antitrust Judgments, ABA Spring Meetings, 2013; California Trial Advocacy, PLI, 2013; Building Trial Skills, NITA, 2013.

**MARK P. CHALOS**, Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 1998; U.S. Court of Appeals, Seventh Circuit, 2012; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Western District of Tennessee, 2002; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Northern District of Florida, 2006; U.S. District Court, Northern District of California, 2007; U.S. Supreme Court, 2012. *Education*:  Emory University School of Law (J.D., 1998); Dean's List; Award for Highest Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal Fraternity; Vanderbilt University (B.A., 1995). *Honors & Awards*: AV Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Mass Tort Litigation/Class Actions – Plaintiffs," 2012-2019; American Bar Foundation Fellow, 2016; "Tennessee Litigation Star," *Benchmark Litigation,* 2013-2015; "Best of the Bar," Nashville Business Journal, 2008-2010, 2015-2016; "Super Lawyer for Mid-South," *Super Lawyers*, 2011 - 2017; "Tennessee Top 100," *Super Lawyers*, 2015; "Rising Star for Mid-South," *Super Lawyers*, 2008 - 2010; "Top 40 Under 40," The Tennessean, 2004. *Publications & Presentations*: "Supreme Court Limits The Reach Of Alien Tort Statute In *Kiobel*," Legal Solutions Blog, April 2013; "The Rise of Bellwether Trials," Legal Solutions Blog, March 2013; "*Amgen*: The Supreme Court Refuses to Erect New Class Action Bar," Legal Solutions Blog,

March 2013; "Are International Wrongdoers Above the Law?," *The Trial Lawyer Magazine*, January 2013; "*Kiobel v. Royal Dutch Petroleum*: Supreme Court to Decide Role of US Courts Abroad," *ABA Journal*, January 2013. "Legislation Protects the Guilty [in Deadly Meningitis Outbreak]," *The Tennessean*, December 2012; Litigating International Torts in United States Courts, 2012 ed., Thomson Reuters/West (2012); "Successfully Suing Foreign Manufacturers," *TRIAL Magazine*, November 2008; "Washington Regulators Versus American Juries: The United States Supreme Court Shifts the Balance in *Riegel v. Medtronic*," *Nashville Bar Journal*, 2008; "Washington Bureaucrats Taking Over American Justice System," *The Tennessean* (December 2007); "The End of Meaningful Punitive Damages," *Nashville Bar Journal*, November 2001; "Is Civility Dead?" *Nashville Bar Journal*, October 2003; "The FCC: The Constitution, Censorship, and a Celebrity Breast," *Nashville Bar Journal*, April 2005. *Member*: American Bar Foundation (Fellow, 2016); American Association for Justice (Chair, Public Education Committee, 2015); American Bar Association (Past-Chair, YLD Criminal & Juvenile Justice Committee; Tort Trial and Insurance Practice Section Professionalism Committee); First Center for the Visual Arts (Founding Member, Young Professionals Program); Harry Phillips American Inn of Court; Kappa Chapter of Kappa Sigma Fraternity Alumni Association (President); Metropolitan Nashville Arts Commission (Grant Review Panelist); Nashville Bar Association (YLD Board of Directors; Nashville Bar Association YLD Continuing Legal Education and Professional Development Director); Nashville Bar Journal (Editorial Board); Tennessee Association for Justice (Board of Directors, 2008-2011; Legislative Committee); Tennessee Bar Association (Continuing Legal Education Committee); Tennessee Trial Lawyers Association (Board of Directors); Historic Belcourt Theatre (Past Board Chair; Board of Directors); Nashville Cares (Board of Directors).

**PAULINA do AMARAL**, Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004; U.S. District Court, Western District of Michigan, 2004; U.S. District Court, Eastern District of Michigan, 2007. *Education*: University of California Hastings College of Law (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Publications & Presentations:* Co-Chair, HarrisMartin Opioid Litigation Conference, San Francisco, 2018; "Rapid Response: Opioid Litigation," American Association for Justice Seminar, September 2017; Co-Author, "Class Action Fairness Act of 2005," California Litigation, Vol. 18, No. 3, 2005. *Awards & Honors:* Selected for inclusion by peers in The Best Lawyers in America in the field of "Mass Tort Litigation/Class Actions – Plaintiffs," 2017-2019; Legal 500 recommended lawyer, *LegalEase*, 2013. *Member*: Association of the Bar of the City of New York, (2007-2010, Committee on the Judiciary); American Bar Association; State Bar of New York; State Bar of California; Bar Association of San Francisco; American Trial Lawyers Association; New York State Trial Lawyers Association.

**KENNETH S. BYRD**, Admitted to practice in Tennessee, 2004; U.S. District Court of Appeals, 6th Circuit, 2009; U.S. District Court, Western District of Tennessee, 2007; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Middle District of Tennessee, 2005. *Education:* Boston College Law School (J.D., *cum laude*, 2004), Law Student Association (President, 2003-2004), National Moot Court Team (Regional Champion, 2003-

2004), American Constitution Society (Secretary, 2002-2003), Judicial Process Clinic (2003), Criminal Justice Clinic (2003-2004); Samford University (B.S., *cum laude*, in Mathematics with Honors, minor in Journalism, 1995). *Prior Employment:* Harwell Howard Hyne Gabbert & Manner, P.C., 2004-2010; Summer Associate, Harwell Howard Hyne Gabbert & Manner, P.C., 2003; Summer Associate, Edward, Angell, Palmer, Dodger, LLP, 2003. *Awards:* Selected for inclusion by peers in The Best Lawyers in America in fields of Consumer Protection Law, Personal Injury Litigation-Plaintiffs, and Product Liability Litigation-Plaintiffs, 2018-2019; "Paladin Award," Tennessee Association for Justice, 2015; "Rising Star for Mid-South," Super Lawyers, 2014. *Member:* American Bar Association; American Constitution Society, Nashville Chapter (Member & Chair of 2008 Supreme Court Preview Event); Camp Ridgecrest Alumni & Friends (Board Member); Harry Phillips American Inn of Court, Nashville Chapter (Associate Member, 2008-2010; Barrister, 2010-2014); Historic Edgefield, Inc. (President, 2009-2011); Nashville Bar Association; Tennessee Bar Association.

**LIN Y. CHAN**, Admitted to practice in California, 2008; U.S. District Court, Northern District of California, 2008; U.S. District Court, Central District of California, 2010; U.S. Court of Appeals for the Fifth Circuit, 2011; U.S. Court of Appeals for the Ninth Circuit, 2011; U.S. Court of Appeals for the Tenth Circuit, 2010. Education: Wellesley College (B.A. *summa cum laude* 2001); Stanford Law School (J.D. 2007); Editor-in-Chief, *Stanford Journal of Civil Rights and Civil Liberties*; Fundraising Chair, Shaking the Foundations Progressive Lawyering Conference. *Prior Employment:* Associate, Goldstein, Borgen, Dardarian & Ho (formerly Goldstein, Demchak Baller Borgen & Dardarian), 2008-2013; Law Clerk to Judge Damon J. Keith, Sixth Circuit Court of Appeals, 2007-2008; Clinic Student, Stanford Immigrants' Rights Clinic, 2006-2007; Union Organizer, SEIU and SEIU Local 250, 2002-2004; Wellesley-Yenching Teaching Fellow, Chinese University of Hong Kong, 2001-2002. *Awards & Honors:* "*Super Lawyer for Northern California," Super Lawyers, 2019;* "Rising Star for Northern California," *Super Lawyers,* 2015-2018; "Outstanding Antitrust Litigation Achievement by a Young Lawyer," American Antitrust Institute, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017. *Presentations & Publications:* Moderator, "Antitrust for HR: No-Poach and Wage Fixing Agreements," Bar Association of San Francisco (January 2018); Author, "Do Federal Associated General Contractors Standing Requirements Apply to State Illinois Brick Repealer Statutes?," *Business Torts & Rico News*, Winter 2015; Panelist, "Federal and State Whistleblower Laws: What You Need to Know," Asian American Bar Association (November 2014); Author, "California Supreme Court Clarifies State Class Certification Standards in Brinker," *American Bar Association Labor & Employment Law Newsletter* (April 2013); Presenter, "Rule 23 Basics in Employment Cases," Impact Fund's 11th Annual Employment Discrimination Class Action Conference (February 2013); Chapter Author, The Class Action Fairness Act: Law and Strategies; Co-Author, "Clash of the Titans: Iqbal and Wage and Hour Class/Collective Actions," BNA, *Daily Labor Report*, 80 DLR L-1 (April 2010); Chapter Co-Chair, Lindemann & Grossman, *Employment Discrimination Law Treatise*, Fifth Edition; Chapter Monitor, Lindemann & Grossman, *Employment Discrimination Law Treatise* 2010 Cumulative Supplement. *Member:* American Antitrust Institute, Advisory Board, 2018; Asian Americans Advancing Justice - Asian Law Caucus, Board Member, 2013 – Present, Annual Dinner Committee Co-Chair, 2015; Asian American Bar Association, Civil Rights Committee Co-Chair, 2011 - Present; American Bar Association, Fair and Impartial Courts

Committee Vice-Chair, 2014 – Present; Bar Association of San Francisco; Public Justice; State Bar of California.

**DANIEL P. CHIPLOCK**, Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001; U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals for the Second Circuit, 2009; U.S. Court of Appeals for the Third Circuit, 2016; U.S. Court of Appeals for the Sixth Circuit, 2011; U.S. Supreme Court, 2011. *Education*: Stanford Law School (J.D., 2000); Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service; Columbia University (B.A., *summa cum laude*, 1994); Phi Beta Kappa. *Awards & Honors:* "Super Lawyer for New York Metro," *Super Lawyers*, 2016-2017. *Member*: State Bar of New York; American Association for Justice; Fight for Justice Campaign; Public Justice; National Association of Shareholder and Consumer Attorneys (Executive Committee/Secretary); American Constitution Society for Law and Policy (Advocate's Circle). *Classes/Seminars:* "Fraud on the Market," Federal Bar Council, Feb. 25, 2014 (CLE panel participant).

**DOUGLAS CUTHBERTSON**, Admitted to practice in New York, 2008; U.S. Court of Appeals for the Eleventh Circuit, 2017; U.S. Court of Appeals for the Second Circuit, 2016; U.S. Court of Appeals for the Seventh Circuit, 2015; U.S. District Court, District of Connecticut, 2017; U.S. District Court, Northern District of New York, 2018; U.S. District Court, Eastern District of New York, 2008; U.S. District Court, Southern District of New York, 2008; U.S. District Court, District of Colorado, 2013; U.S. District Court, Eastern District of Wisconsin, 2013; U.S. District Court, Western District of Wisconsin, 2014; U.S. District Court, Northern District of Illinois, 2014. *Education*: Fordham University School of Law (J.D. *cum laude* 2007); President, Fordham Law School Chapter of Just Democracy; Senior Articles Editor, Fordham Urban Law Journal; Fordham University School of Law Legal Writing Award, 2004-2005; Legal Writing Teaching Assistant, 2005-2006; Dean's List, 2004-2007; Alpha Sigma Nu Jesuit Honor Society. Bowdoin College (B.A. *summa cum laude*, 1999), Sarah and James Bowdoin Scholar for Academic Excellence (1995-1999). *Prior Employment*: Associate, Debevoise & Plimpton, LLP, 2009-2012; Law Clerk to Honorable Magistrate Judge Andrew J. Peck, U.S. District Court, Southern District of New York, 2007-2009. *Awards & Honors*: "Rising Star for New York Metro," *Super Lawyers*, 2013-2017. *Member*: Federal Bar Council; New York Civil Liberties Union, Board of Directors; New York State Bar Association.

**NIMISH R. DESAI**, Admitted to practice in California, 2006; US District Court, Northern District of California, 2007; Texas, 2017; US District Court, Central District of California, 2008; US District Court, Northern District of Florida, 2009; US District Court, Eastern District of Texas, 2017; U.S. Court of Appeals, Ninth Circuit, 2009. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2006), Finalist and Best Brief, McBaine Moot Court Competition (2006), Moot Court Best Brief Award (2004); University of Texas, Austin, (B.S. & B.A., High Honors, 2002). *Prior Employment*: Extern, Sierra Club Environmental Law Program, 2004; Researcher, Public Citizen, 2003; Center for Energy and Environmental Resources, 2001-2002. *Awards & Honors:* Selected for inclusion by peers in *The Best Lawyers in America* in field of "Qui Tam Law," 2016-2019; "Northern California Super Lawyer," *Super Lawyers,* 2013-2019; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2014; "Rising Star for Northern California," *Super*

*Lawyers*, 2012. *Publications & Presentations*: "BP, Exxon Valdez, and Class-Wide Punitive Damages," 21 Class Action and Derivative Suit Committee Newsletter (Fall 2010); "American Chemistry Council v. Johnson: Community Right to Know, But About What? D.C. Circuit Takes Restrictive View of EPCRA," 33 *Ecology L.Q.* 583 (Winter 2006); "Lessons Learned and Unlearned: A Case Study of Medical Malpractice Award Caps in Texas," *The Subcontinental*, (Winter 2004, Vol. 1, Issue 4, pp. 81-87); "Separation of Fine Particulate Matter Emitted from Gasoline and Diesel Vehicles Using Chemical Mass Balancing Techniques," *Environmental Science Technology*, (2003; 37(17) pp. 3904-3909); "Analysis of Motor Vehicle Emissions in a Houston Tunnel during Texas Air Quality Study 2000," *Atmospheric Environment*, 38, 3363-3372 (2004). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California; American Bar Association; American Constitution Society; East Bay Community Law Center (Board Member, 2010-present); South Asian Bar Association (Board Member, 2010-present). *Languages*: Gujarati (conversational).

**NICHOLAS DIAMAND**, Admitted to practice in England & Wales, 1999; New York, 2003; U.S. District Court for the District of Colorado, 2007; U.S. District Court, Southern, Eastern, and Western Districts of New York; US. Court of Appeals, Seventh Circuit, Ninth Circuit; U.S. Supreme Court, 2013; U.S. Court of Appeals, Second Circuit, 2016. *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude,* 1992). *Awards & Honors:* "Super Lawyer for New York Metro," *Super Lawyers*, 2013-2017; "Rising Star for New York Metro," *Super Lawyers*, 2012. *Prior Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District Court, Eastern District of New York (2002-03). *Publications & Presentations*: Panelist, Federal Bar Council: Webinar on Amendment to Fed R. Civ. P. 23: Impact on Securities, Antitrust, Consumer & Date Breach Class Action Practice, December 2018; "Spokeo Still Standing: No Sign of a Circuit Split" (with Andrew Kaufman), *Law360*, 2016; "Spotlight on Spokeo: A Win for Consumers" (with Andrew Kaufman), *Law360*, 2016; "U.S. Securities Litigation & Enforcement Action," *Corporate Disputes* magazine, April-June 2015; Speaker, Strafford CLE webinar "Ethical Risks in Class Litigation," 2015; Speaker, International Corporate Governance Network Conference, 2014; "Fraud on the Market in a Post-*Amgen* World" (with M. Miarmi), *Trial Magazine,* November 2013; Contributing Author, *California Class Actions Practice and Procedure* (Elizabeth J. Cabraser, Editor-in-Chief), 2006; Panelist, "Obstacles to Access to Justice in Pharmaceutical Cases," *Pharmaceutical Regulation and Product Liability*, British Institute of International and Comparative Law, April 21, 2006; Panelist, "Pre-Trial Discovery in the United States," Union Internationale des Avocats, Winter Seminar, February 2006. *Member*: American Association for Justice (Chair, Consumer Privacy/Data Breach Litigation Group, 2016); New York City Bar Association; New York State Bar Association; Public Justice Foundation; International Corporate Governance Network; Peer Articles Reviewer; *Trial* magazine.

**DEAN M. HARVEY**, Admitted to practice in California, 2007; U.S. District Court, Northern District of California, 2007; U.S. District Court, Central District of California, 2007; U.S. District Court, Eastern District of California, 2008; U.S. District Court, Southern District of California, 2008; U.S. Court of Appeals for the Ninth Circuit, 2008; U.S. District Court, Eastern District of Wisconsin, 2013; U.S. Court of Appeals for the Fourth Circuit, 2016; U.S. Supreme

Court, 2018. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2006); Articles Editor, *California Law Review* (2005-2006); Assistant Editor, *Berkeley Journal of International Law* (2004); University of Minnesota, Twin Cities (B.A. *summa cum laude*, 2002). *Prior Employment*: Partner, Lieff Cabraser Heimann & Bernstein, LLP (2013-Present); Associate, Lieff Cabraser Heimann & Bernstein, LLP (2009-2013); Associate, Boies, Schiller & Flexner LLP (2007-2008); Law Clerk, The Honorable James V. Selna, U.S. District Court for the Central District of California (2006-2007); Law Clerk, U.S. Department of Justice, Antitrust Division, San Francisco Field Office (2006); Summer Law Intern, U.S. Department of Justice (2005); Summer Associate, Boies, Schiller & Flexner LLP (2005). *Awards & Honors*: "Super Lawyer for Northern California," *Super Lawyers*, 2013-2019; "On the Rise – Top 40 Young Lawyers," American Bar Association, 2017; "Top 40 Under 40" Lawyer in California, *Daily Journal*, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017; "California Lawyer Attorney of the Year (CLAY) Award," *California Lawyer*, 2016; "Lawyers on the Fast Track," *The Recorder*, 2013; "Rising Star for Northern California," *Super Lawyers*, 2010-2012; "William E. Swope Antitrust Writing Prize," 2006. *Publications & Presentations*: Speaker, "Antitrust Analysis in Two-Sided Markets," California Lawyers Association, February 2019; Speaker, "Latest Developments in No-Poach Agreements," California Lawyers Association (January 2019); Panelist, "Antitrust and Workers — Agreements, Mergers, and Monopsony," American Antitrust Institute Conference (June 2018); Speaker, "Anticompetitive Practices in the Labor Market," Unrigging the Market Program, Harvard Law School (June 2018); Speaker, "Tech-Savvy and Talented: Competition in Employment Practices," American Bar Association (May 2018); Speaker, "Antitrust for HR: No-Poach and Wage Fixing Agreements," Bar Association of San Francisco (January 2018); Moderator, "Competition Torts in the Trenches: Lessons From Recent High-Profile Cases," American Bar Association (November 2016); Speaker, "Are Computers About to Eat Your Lunch (Or At Least Change the Way You Practice)?", Association of Business Trial Lawyers Panel (August 2016); Moderator, "The Law and Economics of Employee Non-Compete Agreements," American Bar Association Panel (June 2016); Speaker, "Lessons from the Headlines: In re: High-Tech Employee Antitrust Litigation," The Recorder and Corporate Counsel's 13th Annual General Counsel Conference West Coast (November 2015); Speaker, "The Future of Private Antitrust Enforcement," American Antitrust Institute Panel (November 2015); Moderator, "From High-Tech Labor to Sandwich Artists: The Law and Economics of Employee Solicitation and Hiring," American Bar Association Panel (March 2015); Panelist, "Tech Sector 'No Poaching' Case Update - What Antitrust Counselors and HR Departments Need to Know," American Bar Association (2015); Speaker, "Cases at the Intersection of Class Actions and Employee Protection Regulations," Law Seminars International (2015); Speaker, Town Hall Meeting, American Bar Association Section of Antitrust Law Business Torts & Civil RICO Committee (December 2014); Panelist, "If You Don't Steal My Employees, I Won't Steal Yours: The Antitrust Treatment of Non-Poaching and Non-Solicitation Agreements," American Bar Association (2013); Panelist, "In the Wake of AT&T Mobility v. Concepcion: Perspectives on the Future of Class Litigation," American Bar Association (2011);Co-Author, "Play Ball: Potential Private Rights of Action Emerging From the FIFA Corruption Scandal," 11 Business Torts & RICO News 1 (Summer 2015); Contributing Author, *The Class Action Fairness Act: Law and Strategy*, American Bar Association, 2013; Contributing Author, *Concurrent Antitrust Criminal and Civil Proceedings: Identifying Problems and Planning for Success*, American Bar Association (2013); Co-Editor, *California Class Actions Practice and Procedures* (2010-2013);

Articles Editor, *Competition* (the Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California) (2012); Contributing Author, *ABA Annual Review of Antitrust Law Developments* (2011); *New Guidance for Standard Setting Organizations: Broadcom Corp. v. Qualcomm Inc. and In the Matter of Rambus, Inc., 5 ABA Sherman Act Section 1 Newsl. 35* (2008); *Anticompetitive Social Norms as Antitrust Violations,* 94 Calif. L. Rev. 769 (2006). *Member*: American Antitrust Institute, Advisory Board, 2018; American Bar Association (Antitrust Section), and Co-Chair, Competition Torts Committee; Bar Association of San Francisco; San Francisco Trial Lawyers Association.

     **LEXI J. HAZAM**, Admitted to practice in California, 2003; U.S. Court of Appeals for the Second Circuit, 2008; U.S. Court of Appeals for the Seventh Circuit, 2006; U.S. Court of Appeals for the Eighth Circuit, 2008; U.S. District Court, Northern District of California, 2003; U.S. District Court, Southern District of CA, 2013; U.S. District Court, Western District of Michigan, 2017. *Education*: Stanford University (B.A., 1995, M.A., 1996), Phi Beta Kappa. University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2001); *California Law Review* and *La Raza Law Journal* (Articles Editor); Berkeley Law Foundation Summer Grant for Public Service; Federal Practice Clinic; Hopi Appellate Clinic). *Prior Employment*: Law Clerk, Mexican American Legal Defense and Education Fund, 1999; Law Clerk, Judge Henry H. Kennedy, Jr., U.S. District Court for the District of Columbia, 2001-2002; Associate, Lieff Cabraser Heimann & Bernstein, LLP, 2002-2006; Partner, Lieff Global LLP, 2006-2008. *Honors & Awards*: Selected for inclusion by peers in *The Best Lawyers in America* in the field of "Mass Tort Litigation/Class Actions – Plaintiffs" and "Qui Tam Law," 2015-2019; "Northern California Super Lawyer," *Super Lawyers*, 2015-2019; "Lawyer of the Year," *The Best Lawyers in America*, Mass Tort Litigation/Class Actions-Plaintiffs for San Francisco, 2017; "California Litigation Star," *Benchmark Litigation*, 2016; "California Future Star," *Benchmark Litigation*, 2015; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2015; Legal 500 recommended lawyer, *LegalEase*, 2013; "Northern California Rising Stars," *Super Lawyers*, 2009-2011, 2013. *Publications & Presentations:* "Supreme Court Review of Escobar," Qui Tam Litigation Group and "Opioid Litigation: the Next Tobacco?" Litigation at Sunrise, American Association for Justice Annual Convention, Boston, 2017; "Discovery Following the 2015 Federal Rules Amendments: What Does Proportionality Mean in the Class Action and Mass Tort Contexts?" ABA 4th Annual Western Regional CLE on Class Actions & Mass Torts, San Francisco, 2017; "Increasing the Number of Women & Minority Lawyers Appointed to Leadership Positions in Class Actions & MDLs," Duke Law Center for Judicial Studies Conference, Atlanta, 2017; "2015 Rules Amendments," "Search Methodology and Technology," "New Forms of Communications and Data Protection," Innovation in eDiscovery Conference, San Francisco, 2016; "Technology-Assisted Review: Advice for Requesting Parties," Practical Law, October/November 2016; "Technology-Assisted Review," Sedona Conference Working Group 1 Drafting Team, 2015; "The Benicar Litigation," Mass Torts Made Perfect, Las Vegas, 2015; "The Benicar Litigation," HarrisMartin's MDL Conference, San Diego, 2015; "Now You See Them, Now You Don't: The Skill of Finding, Retaining, and Preparing Expert Witnesses For Trial," Women En Mass, Aspen; 2014. *Member*: American Association for Justice (Chair, Section on Toxic, Environmental, and Pharmaceutical Torts, 2017); American Association for Justice (Co-Secretary, Section on Qui Tam Litigation, 2016); Consumer Attorneys of California; Board of Governors, Consumer Attorneys of California (2015); Bar Association of San Francisco; San Francisco Trial Lawyers Association; State Bar of California.

**ROGER N. HELLER**, Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. District Court, Eastern District of California, 2017; U.S. District Court, District of Colorado, 2015; U.S. Court of Appeals for the Second Circuit, 2017; U.S. Court of Appeals for the Ninth Circuit, 2001. *Education*: Columbia University School of Law (J.D., 2001); Columbia Law Review, Senior Editor. Emory University (B.A., 1997). *Prior Employment*: Extern, Honorable Michael Dolinger, U.S. District Court, Southern District of New York, 1999; Associate, O'Melveny & Myers LLP, 2001-2005; Senior Staff Attorney, Disability Rights Advocates, 2005-2008. *Honors & Awards*: "Northern California Super Lawyer," *Super Lawyers*, 2013-2019; "Partners Council Rising Star," National Consumer Law Center, 2015; "Rising Star," *Law 360*, 2014-2015; "Finalist for Consumer Attorney of the Year," Consumer Attorneys of California, 2012-2013; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "Northern California Rising Star," *Super Lawyers*, 2011-2012; Harlan Fiske Stone Scholar, 1998-2001. *Publications & Presentations*: Co-author, <u>Fighting For Troops on the Homefront</u>, Trial Magazine (September 2006). *Member*: American Bar Association; Bar Association of San Francisco; Consumer Attorneys of California; State Bar of California; Advisory Committee Member, Santa Venetia Community Plan.

**DANIEL M. HUTCHINSON**, Admitted to practice in California, 2005; U.S. District Court, Central District of California, 2012; U.S. District Court, Southern District of California, 2012; U.S. Court of Appeals for the Eleventh Circuit, 2018; U.S. Court of Appeals for the First Circuit, 2012; U.S. Court of Appeals for the Ninth Circuit, 2006; U.S. District Court, Northern District of California, 2006; U.S. Court of Appeals for the Fourth Circuit, 2008; U.S. District Court Eastern District of Wisconsin, 2013; U.S. District, Northern District of Illinois, 2014. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2005), Senior Articles Editor, *African-American Law & Policy Report*, Prosser Prizes in Constitutional Law and Employment Law; University of California, Berkeley, School of Law (Berkeley Law) Teaching & Curriculum Committee (2003-2004); University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999), Mellon Mays Fellowship (1997-1999). *Prior Employment*: Judicial Extern to the Hon. Martin J. Jenkins, U.S. District Court, Northern District of California, 2004; Law Clerk, Lewis & Feinberg, P.C., 2003-2004; Teacher, Oakland Unified School District, 1999-2002. *Honors & Awards*: "Northern California Super Lawyer," *Super Lawyers*, 2013-2019; "Rising Star," *Law360*, 2014; Legal 500 recommended lawyer, *LegalEase*, 2013; "50 Lawyers on the Fast Track," *The Recorder*, 2012; "Northern California Rising Stars," *Super Lawyers*, 2009-2012. *Publications & Presentations:* Panelist, "Employment Discrimination Class Actions Post-*Dukes*," Consumer Attorneys of California 50th Annual Convention (2011); "Ten Points from *Dukes v. Wal-Mart Stores, Inc.*," 20(3) *CADS Report 1* (Spring 2010); Panelist, "Rethinking Pro Bono: Private Lawyers and Public Service in the 21st Century," UCLA School of Law (2008); Author and Panelist, "Pleading an Employment Discrimination Class Action" and "EEO Litigation: From Complaint to the Courthouse Steps," ABA Section of Labor and Employment Law Second Annual CLE Conference (2008); Co-Presenter, "Rule 23 Basics in Employment Cases," Strategic Conference on Employment Discrimination Class Actions (2008). *Member*: American Bar Association (Section of Labor & Employment Law Leadership Development Program, 2009 - 2010); Association of Business Trial Lawyers (Leadership Development Committee, 2008 - 2010); Bar Association of San Francisco (Vice Chair, Cybersecurity and Privacy Law Section); Consumer Attorneys of

California; Lawyer's Committee for Civil Rights of the San Francisco Bay Area (Board Chair, 2015; Chair-Elect, 2014; Board Secretary, 2011 - 2013; Board of Directors, 2009 - Present); National Bar Association; National Employment Lawyers Association; State Bar of California.

**SHARON M. LEE**, Admitted to practice in New York, 2002; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2003; Washington State, 2005; U.S. District Court, Western District of Washington, 2015. *Education*: St. John's University School of Law (J.D. 2001); *New York International Law Review*, Notes & Comments Editor, 2000-2001; St. John's University (M.A. 1998); St. John's University (B.A. 1997). *Prior Employment*: Milberg Weiss & Bershad, LLP, 2003-2007. *Publications & Presentations*: Author, *The Development of China's Securities Regulatory Framework and the Insider Trading Provisions of the New Securities Law*, 14 N.Y. Int'l L.Rev. 1 (2001); Co-author, *Post-Tellabs Treatment of Confidential Witnesses in Federal Securities Litigation*, 2 J. Sec. Law, Reg. and Compliance 205 (3d ed. 2009). *Member*: American Bar Association; Asian Bar Association of Washington; Washington State Bar Association; Washington State Joint Asian Judicial Evaluation Committee.

**BRUCE W. LEPPLA**, Admitted to practice in California, 1976; New York, 1978; Colorado, 2006; U.S. Court of Appeals Ninth Circuit, 1976; U.S. District Court Central District of California, 1976; U.S. District Court Eastern District of California, 1976; U.S. District Court Northern District of California, 1976; U.S. District Court Southern District of New York, 2015. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., M.G. Reade Scholarship Award); University of California at Berkeley (M.S., Law and Economics, Quantitative Economics); Yale University (B.A., *magna cum laude*, Highest Honors in Economics). *Prior Employment*: California-licensed Real Estate Broker (2009-present); FINRA and California-licensed Registered Investment Adviser (2008-present); Chairman, Leppla Capital Management LLC (2008-present); Chairman, Susquehanna Corporation (2006-present); Partner, Lieff Cabraser Heimann & Bernstein, LLP (2004-2008), Counsel (2002-2003); CEO and President, California Bankers Insurance Services Inc., 1999-2001; CEO and President, Redwood Bank (1985-1998), CFO and General Counsel (1981-1984); Brobeck, Phleger & Harrison (1980); Davis Polk & Wardwell (1976-80). *Publications*: Author or co-author of 11 different U.S. and international patents in electronic commerce and commercial product design, including "A Method for Storing and Retrieving Digital Data Transmissions," United States Patent No. 5,659,746, issued August 19, 1997; "*Stay in the Class or Opt-Out? Institutional Investors Are Increasingly Opting-Out of Securities Class Litigation*," Securities Litigation Report, Vol. 3, No. 8, September 2006, West LegalWorks; reprinted by permission of the author in Wall Street Lawyer, October 2006, Vol. 10, No. 10, West LegalWorks; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part 1*;" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, May 2005, Vol. I, No. 9, pp. 1, 3-7; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part 2*;" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, June 2005, Vol. I, No. 10, pp. 1, 3-9; Author, "*Securities Powers for Community Banks,*" California Bankers Association Legislative Journal (Nov. 1987). *Teaching Positions*: Lecturer, University of California at Berkeley, Haas School of Business, Real Estate Law and Finance (1993-96); Lecturer, California Bankers Association General Counsel Seminars, Lending Documentation, Financial Institutions Litigation and similar topics (1993-96). *Panel*

*Presentations*: Union Internationale des Avocats, Spring Meeting 2010, Frankfurt, Germany, *"Recent Developments in Cross-Border Litigation;"* Union Internationale des Avocats, Winter Meeting 2010, Park City, Utah, *"Legal and Economic Aspects of Securities Class and Opt-out Litigation;"* EPI European Pension Fund Summit, Montreux, Switzerland, "*Legal and Global Economic Implications of the U.S. Subprime Lending Crisis*," May 2, 2008; Bar Association of San Francisco, "*Impact of Spitzer's Litigation and Attempted Reforms on the Investment Banking and Insurance Industries*," May 19, 2005; Opal Financial Conference, National Public Fund System Legal Conference, Phoenix, AZ, "*Basic Principles of Securities Litigation*," January 14, 2005; American Enterprise Institute, "*Betting on the Horse After the Race is Over— In Defense of Mutual Fund Litigation Related to Undisclosed After Hours Order Submission*," September 30, 2004. *Member*: American Association for Justice; Bar Association of San Francisco, Barrister's Club, California Bankers Association, Director, 1993 – 1999, California State Small Business Development Board, 1989 – 1997, Community Reinvestment Institute, Founding Director, 1989 – 1990, National Association of Public Pension Attorneys, New York State Bar Association, San Francisco Chamber of Commerce, Leadership Council, 1990 – 1992, State Bar of California, Union Internationale des Avocats, Winter Corporate Governance Seminar, Seminar Chairman, 2012; University of California at Berkeley, University of California, Berkeley, School of Law (Berkeley Law) Alumni, Board of Directors, 1993 – 1996, *Wall Street Lawyer*, Member, Editorial Board, Yale University Alumni Board of Directors, Director, 2001 - 2005.

**JASON L. LICHTMAN**, Admitted to practice in Illinois, 2006; New Jersey, 2011; New York, 2011; U.S. Supreme Court, 2012; District of Columbia, 2007; U.S. Court of Appeals, Second Circuit, 2016; U.S. Court of Appeals, Third Circuit, 2012; U.S. Court of Appeals, Fifth Circuit, 2016; U.S. Court of Appeals, Sixth Circuit, 2010; U.S. Court of Appeals, Seventh Circuit, 2011; U.S. Court of Appeals, Ninth Circuit, 2012; U.S. Court of Appeals, Tenth Circuit, 2014; U.S. Court of Appeals, Eleventh Circuit, 2013; U.S. District Court, Northern District of Illinois, 2006; U.S. District Court, New Jersey, 2011; U.S. District Court, Northern District of Ohio, 2010; U.S. District Court, Eastern District of New York, 2012, U.S. District Court, Southern District of New York, 2012; U.S. Court of Appeals Federal Circuit, 2015; U.S. District Court, Eastern District of Wisconsin, 2014; U.S. District Court, Eastern District of Texas, 2016. *Education*: University of Michigan Law School (J.D., *cum laude*, 2006), Campbell Moot Court Executive Board; Clarence T. Darrow Scholar; Northwestern University (B.A. in Economics, 2000). *Prior Employment*: Judicial Law Clerk to Honorable Kathleen M. O'Malley, United States District Court, Northern District of Ohio, 2008-2010; Litigation Associate, Howrey LLP, 2006-2008; Summer Associate, Howrey LLP, 2005; Summer Associate, Reed Smith LLP, 2004. *Awards & Honors*: "Rising Star," Consumer Protection, *Law360*, 2017; "Super Lawyer for New York Metro," *Super Lawyers*, 2017; "Rising Star for New York Metro," *Super Lawyers*, 2013-2016. *Member*: American Association for Justice; Public Justice; Chair, Class Action Committee, Public Justice; Sedona Conference. *Publications and Presentations:* Contributing Author, "Ninth Circuit Reshapes California Consumer-Protection Law," American Bar Association (July 2012).

**SARAH R. LONDON**, Admitted to practice in California, 2009; U.S. District Court, Northern District of California, 2009; U.S. Court of Appeals for the Ninth Circuit, 2009; U.S. District Court, Central District of California, 2010; U.S. Court of Appeals for the Eleventh

Circuit, 2012. *Education*: National Institute for Trial Advocacy, Building Trial Skills: Boston (Winter 2013); University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2009), Order of the Coif, National Runner-Up Constance Baker Motley Moot Court Competition; Northwestern University (B.A., *cum laude*, 2002). *Prior Employment*: Public Policy Manager, Planned Parenthood of Kansas and Mid-Missouri (2004-2006). *Publications & Presentations*: "Reproductive Justice: Developing a Lawyering Model," *Berkeley Journal of African-American Law & Policy* (Volume 13, Numbers 1 & 2, 2011); "Building the Case for Closing Argument: Mass Torts," Presentation at Consumer Attorneys of California Annual Conference (Fall 2014). *Awards & Honors*: Selected for inclusion by peers in The Best Lawyers in America in the fields of "Mass Tort Litigation/Class Actions - Plaintiffs," 2017-2019; "Rising Star for Northern California," *Super Lawyers*, 2012-2019; "Street Fighter of the Year Award Finalist," Consumer Attorneys of California,"2015; Coro Fellow in Public Affairs (St. Louis, 2002-2003). *Member*: American Association for Justice (Executive Committee Member, Section on Toxic, Environmental, and Pharmaceutical Torts, 2016); The Bar Association of San Francisco; Consumer Attorneys of California (Board of Governors 2012-2013); San Francisco Trial Lawyers Association; State Bar of California; Bar Association San Francisco; American Association for Justice; YWCA San Francisco and Marin County (Board of Directors 2014-2016).

**ANNIKA K. MARTIN**, Admitted to practice in New York, 2005; U.S. District Court, Southern District of New York, 2005; U.S. District Court Eastern District of New York, 2005. *Education:* Law Center, University of Southern California (J.D., 2004); Review of Law & Women's Studies; Jessup Moot Court; Medill School of Journalism, Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999). *Publications & Presentations*: Speaker, "Lawyers as Managers," Emory Law's Institute for Complex Litigation & Mass Claims Leadership Conference - Atlanta, GA, January 19, 2018; Speaker, "From Terabytes to Binders: Fusing Discovery and Advocacy Strategies," Georgetown Law's 14th Annual Advanced eDiscovery Institute - Washington DC, November 17, 2017; Co-Editor-in-Chief & Steering Committee Liaison, "The Sedona Conference Federal Rule of Civil Procedure 34 Primer," The Sedona Conference Working Group Series, September 2017; Drafting Team Member, "The Sedona Conference Commentary on Proportionality in Electronic Discovery," The Sedona Conference Journal, Volume 18, May 2017; Producer & Moderator, "The Future of Class Actions," AAJ Class Action Litigation Group seminar – Nashville, TN, May 11, 2017; Producer & Speaker, "Examining Amended Rule 34," The Sedona Conference Working Group 1 Mid-Year Meeting – Minneapolis, MN, May 4-5, 2017; Speaker, "The Economic Influence and Role of the Class Representative – Ethical and Policy Issues," Class Action Money & Ethics Conference – New York, NY, May 1, 2017; Producer & Speaker, "Diversity in Law: The Challenges and How to Overcome Them," AAJ Education webinar, March 27, 2017; Co-chair, "Staying Ahead of the eDiscovery Curve: Retooling Your Practice Under the New Federal Rules," 10th Annual Sedona Conference Institute Program on eDiscovery, March 2-3, 2017; Faculty Member, "The Sedona Conference eDiscovery Negotiation Training: Practical Cooperative Strategies," Miami, FL, February 8-9, 2017; Speaker, "Proportionality: What's Happened since the Amendments," Western Trial Lawyers Association CLE, Steamboat Springs, CO, February 2017; "Quality In, Quality Out," Trial Magazine, January 2017; Testified before the Federal Rules Advisory Committee concerning proposed amendments to Federal Rule 23, Phoenix, AZ, January 4, 2017; Profiled in "Women of Legal Tech: From Journalism to Law", LegalTech News – December 8, 2016; Speaker, "Closure Mechanisms," Federal Judicial Center / Judicial Panel on Multidistrict

Litigation Conference, Atlanta, GA, December 15, 2016; Speaker, "Getting Selected for Leadership – What Decisionmakers Look For and How to Overcome Common Barriers," Emory Law Insitue for Complex Litigation & Mass Claims, Atlanta, GA, December 14, 2016; Producer & Speaker, "Mitigating Explicit and Implicit Bias in Associate Recruitment and Retention," AAJ Hot Topics: Diversity in the Law, Charlotte, NC, November 30, 2016; Speaker, "The New Rules x 1 Year: Sanctions," Georgetown Law Advanced E-Discovery Institute, Washington DC, November 10-11, 2016; Faculty Member, AAJ Effective Legal Writing Workshop, Washington DC, November 3-4, 2016; Speaker, "Proportionality under the Amended FRCP 26", Complex Litigation E-Discovery Forum, Minneapolis, MN, September 25, 2016; Speaker, "Proportionality: What's Happened since the Amendments," Complex Litigation E-Discovery Forum, Minneapolis, MN, September 23, 2016; Moderator, "Who Will Write Your Rules—Your State Court or the Federal Judiciary?," Pound Civil Justice Institute Forum for State Appellate Court Judges, Los Angeles, CA, July 23, 2016; Producer, Moderator & Speaker, "Dissecting the U.S. Supreme Court Decision in Spokeo, Inc. v. Robins," American Association for Justice webinar, May 26, 2016; Moderator & Speaker, "Consumer Class Actions," HB Litigation Conference, San Juan, PR, May 4, 2016; Faculty Member, The Sedona Conference eDiscovery Negotiation Training: Practical Cooperative Strategies, Washington, DC, March 1-2, 2016; Producer & Speaker, "The 2015 Amendments to the Federal Rules of Civil Procedure," New York, NY, February 9, 2016; "How to Stop Worrying and Love Predictive Coding," Trial Magazine, January 2016; Speaker, "How Will New Rule 26(b)(1) on Proportionality Impact Search and the Use of Search Technology?," Innovation in E-Discovery Conference, New York, NY, December 9, 2015; Speaker, "New Forms of Communication," Innovation in E-Discovery Conference, New York, NY, December 9, 2015; Speaker, "2015 Amendments to Federal Civil Rules," Tennessee Bar Association CLE, Nashville, TN, December 2, 2015; "Discovery Proportionality Guidelines and Practices," 99 Judicature, no. 3, Winter 2015, at 47–60 (Complex Litigation Drafting Team Leader); Speaker, "Check Your Sources: Understanding the Technical Aspects of Data Collection", Georgetown Advanced E-Discovery Institute, Washington, DC, November 19, 2015; Speaker, "The Contentious Battle over Search Protocols in e-Discovery", Association of Certified E-Discovery Specialists webinar, October 8, 2015; Speaker, "Proportionality in Preservation and Discovery," The Sedona Conference Working Group 1 Mid-Year Meeting, Dallas, TX, April 30, 2015; Speaker, "Ethical Challenges in eDiscovery: Representing Clients Responsibly," The Sedona Conference Institute, Nashville, TN, March 20, 2015; Speaker, "Issue Classes under Rule 23," Western Trial Lawyers Association CLE, Squaw Valley, NV, February 2015; Speaker, "Issue Classes under Rule 23," American Association for Justice Winter Convention, Palm Desert, CA, February 24, 2015; "An Introduction to Issue Classes under Rule 23(c)(4)," American Association for Justice Winter Convention published materials, February 2015; Speaker, "Shifting and Sharing the Costs of Preservation and Discovery: How, When, and Why," Bloomberg BNA webinar, November 18, 2014; Speaker, "Application of Proportionality in Preservation and Discovery," The Sedona Conference All Voices Meeting, New Orleans, LA, November 5, 2014; Speaker, "A Tour of TAR (Technology-Assisted Review)," The Sedona Conference All Voices Meeting, New Orleans, LA, November 7, 2014; Speaker, "Data Privacy and Security Are Front and Center in Litigation News – Substantive Claims and eDiscovery Abound," Georgetown Advanced E-Discovery Institute, Tysons Corner, VA, November 21, 2014; Interviewed re class action litigation regarding defective products on China Central Television for China's national "Consumer Protection Week" feature programming – CCTV, March 15, 2014; Organizer & Speaker,

"Introduction to TAR," Lieff Cabraser Heimann & Bernstein CLE, New York, NY, August 18, 2014; Speaker, "Motions to Strike Class Allegations Using 'Predominance'," Strafford webinar, August 6, 2014; "Wit and Wisdom," Trial Magazine, Volume 49, No. 12, December 2013;Speaker, "Status of Subsistence Claims in BP Oil Spill Settlement," American Association for Justice Annual Convention, San Francisco, CA, July 2013; "Stick a Toothbrush Down Your Throat: An Analysis of the Potential Liability of Pro-Eating Disorder Websites," Texas Journal of Women & the Law, Volume 14 Issue 2, Spring 2005; "The Gift of Legal Vision," USC Law, Spring 2003; "Welcome to Law School," monthly column on www.vault.com, 2001 - 2004. *Awards and Honors*: "Leaders in the Field - Litigation: E-Discovery," *Chambers USA*, 2017; "Rising Star for New York Metro," *Super Lawyers*, 2013-2015; Wiley W. Manuel Award for Pro Bono Legal Services awarded by the State Bar of California for voluntary provision of legal services to the poor, 2005. *Member*: American Association for Justice (Co-Chair, Class Action Litigation Group, 2016); American Association for Justice (Steering Committee of the Public Education Committee); Barrister of the New York American Inn of Court; Emory University Law School Institute for Complex Litigation & Mass Claims (Next Generation Advisory Board Member); Georgetown Law Advanced E-Discovery Institute (Advisory Board and Planning Committee); New York City Bar Association; New York County Lawyer's Association; New York State Bar Association; Swedish American Bar Association; The Sedona Conference Working Group 1 (Steering Committee Member). *Languages*: Swedish (fluent); French (DFA1-certified in Business French); Spanish (conversational).

**MICHAEL J. MIARMI**, Admitted to practice New York, 2006; U.S. District Court, Eastern District of New York, 2012; U.S. District Court, Southern District of New York, 2012; U.S. Court of Appeals for the Second Circuit, 2011; U.S. Court of Appeals for the Third Circuit, 2007; U.S. Court of Appeals for the Sixth Circuit; U.S. Court of Appeals for the Eighth Circuit, 2007; U.S. Supreme Court, 2011. *Education*: Fordham Law School (J.D., 2005); Yale University (B.A., *cum laude*, 2000). *Prior Employment*: Milberg Weiss LLP, Associate, 2005-2007. *Awards & Honors:* "Rising Star for New York Metro," *Super Lawyers*, 2013-2017. *Publications & Presentations*: Co-Author with Steven E. Fineman, "The *Basic*s of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011). *Member:* State Bar of New York; New York State Trial Lawyers Association; Public Justice Foundation; American Bar Association; New York State Bar Association.

**DAVID RUDOLPH**, Admitted to practice in California, 2004; U.S. District Court, Northern District of California, 2008; U.S. District Court, Southern District of California, 2008; U.S. Court of Appeals for the Ninth Circuit, 2009; U.S. Court of Appeals for the Federal Circuit, 2012. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2004); Moot Court Board; Appellate Advocacy Student Advisor; Berkeley Technology Law Journal; Berkeley Journal of International Law; Rutgers University (Ph.D. Program, 1999-2001); University of California, Berkeley (B.A. 1998). *Awards & Honors:* "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017. *Prior Employment:* Associate, Quinn Emanuel Urquhart & Sullivan, LLP, 2008-2012; Law Clerk to the Honorable Saundra Brown Armstrong, U.S. District Court for the Northern District of California, 2007-2008.

**DANIEL E. SELTZ**, Admitted to practice in New York, 2004; U.S. District Court, Southern District of New York, 2005; U.S. District Court, Eastern District of New York, 2011; U.S. Court of Appeals for the First Circuit, 2011; U.S. Court of Appeals for the Fourth Circuit, 2013; U.S. Court of Appeals for the Ninth Circuit, 2011. *Education*: New York University School of Law (J.D., 2003); *Review of Law and Social* Change, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Awards & Honors:* Super Lawyers, 2016-2017. *Prior Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications & Presentations*: Co-Author with Jordan Elias, "The Limited Scope of the Ascertainability Requirement," American Bar Association, Section of Litigation, March 2013; Panelist, "Taking and Defending Depositions," New York City Bar, May 20, 2009; Contributing Author, *California Class Actions Practice & Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2008); "Remembering the War and the Atomic Bombs: New Museums, New Approaches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004), originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000); "Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S. Krasno and Lee Bradford (Prentice-Hall, 2000). *Member*: American Association for Justice; State Bar of New York.

**ANNE B. SHAVER**, Admitted to practice in California, 2008; Colorado, 2008; U.S. District Court, Northern District of California, 2009; U.S. Court of Appeals for the Second Circuit, 2012; U.S. Supreme Court, 2013; U.S. Court of Appeals of the Ninth Circuit, 2009. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2007), Order of the Coif; University of California, Santa Cruz (B.A. *cum laude*, 2003), Phi Beta Kappa. *Awards & Honors:* "Rising Star for Northern California," *Super Lawyers,* 2012-2019; "40 & Under Hot List," Benchmark Litigation, 2018, "Top Labor & Employment Lawyers," Daily Journal, 2018; "Plaintiff Employment Lawyers," Lawdragon 500, 2018. *Prior Employment:* Law Clerk to Honorable Betty Fletcher, U.S. Court of Appeals for the Ninth Circuit, 2008-2009; Davis, Graham & Stubbs, LLP, Litigation Associate, 2008; Public Defender's Office of Contra Costa County, 2007; Davis, Cowell & Bowe, LLP, Summer Law Clerk, 2006; Centro Legal de la Raza, Student Director, Workers' Rights Clinic, 2005-2006; Human Rights Watch, Legal Intern, 2005. *Publications*: "Winning Your Class Certification Motion Post-Brinker," Consumer Attorneys of California, November 2013 (panelist); "Counseling HR on National Origin & Language Issues in the Workplace," ABA Labor & Employment Section, November 2012 (moderator); "*U.S. v. Fort* and the Future of Work-Product in Criminal Discovery," 44 Cal. W. L. Rev. 127, 12293 (Fall 2007); "Rule 23 Basics," Impact Fund Class Action Training Institute, May 2011; "A Place At The Table? Recent Developments in LBGT Rights," ABA Labor & Employment Section Conference, April 2012 (moderator); "Transgender Workplace Issues After the EEOC's Landmark Macy Ruling," Bar Association of San Francisco, September 2012 (moderator); CAOC, "Latest Developments in Employment and Wage and Hour Law," February 25, 2014 (speaker). *Member*: Bar Association of San Francisco; Consumer Attorneys of California; National Employment Lawyers Association; American Bar Association Equal Employment Opportunity Committee (Co-Chair); Programs Committee.

**KATHERINE LUBIN BENSON,** Admitted to practice in California, 2008; Ninth Circuit Court of Appeals; U.S. District Court, Northern District of California; U.S. District Court, Southern District of California; U.S. District Court, Central District of California. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2008); University of California, Berkeley, School of Law (Berkeley Law) Mock Trial Team, 2006-2008; *First Place*, San Francisco Lawyer's Mock Trial Competition. University of California Los Angeles (B.A., Political Science, minor in Spanish, *cum laude*); Phi Beta Kappa; UCLA Honors Program; Political Science Departmental Honors; GPA 3.8. Universidad de Sevilla (2003). *Awards & Honors:* "Rising Star for Northern California," Super Lawyers, 2016-2019. *Prior Employment:* Associate, Orrick, Herrington & Sutcliff, LLP, 2008-2013; Summer Associate, Orrick, Herrington & Sutcliff, LLP, 2007; Judicial Extern to Honorable Dean D. Pregerson, 2006. *Member:* American Bar Association; State Bar of California; Board of Directors, Northern District Court Practice Program; Board of Directors, East Bay Community Law Center.

**KEVIN R. BUDNER,** Admitted to practice in California; U.S. Court of Appeals, Seventh Circuit, 2016; U.S. Court of Appeals, Ninth Circuit, 2016; U.S. District Court, Northern District of California, 2014; U.S. District Court, Central District of California, 2014; U.S. District Court of Colorado, February 25, 2014. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2012); American Jurisprudence Award in Advanced Legal Research (first in class); Prosser Prize in Negotiation (second in class); Edwin A. Heafey, Jr. Trial Fellowship Recipient; Board of Advocates Trial Team Member; American Association of Justice Trial Competition, 2012 National Semi-finalist, 2011 Regional Finalist; *Berkeley Journal of International Law,* Senior Editor. University of California Hastings College of the Law (2009-2010); CALI and Witkins Awards (first in class); Wesleyan University (B.A., Political Science, 2005). *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2019; "California Lawyer of the Year," California Daily Journal, 2018; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017. *Prior Employment:* Judicial Clerk to U.S. District Judge Barbara M.G. Lynn, 2012-2013; Certified Student Counsel, East Bay Community Law Center, 2011-2012; Research Assistant, Duckworth Peters Lebowitz Olivier, LLP, 2011-2012; Summer Associate, Lieff Cabraser Heimann & Bernstein, LLP , 2011-2012; Judicial Extern to U.S. District Judge Phyllis J. Hamilton, 2010; Homeless Policy Assistant, Office of Mayor Gavin Newsom, 2009; Project Manager, Augustyn & Co. 2007-2009; Visiting Professor, University of Liberal Arts Bangladesh, 2006-2007; Researcher, Rockridge Institute, 2005, 2006. *Languages:* Spanish (proficient), Portuguese (proficient), Bengali (basic). *Publications:* Co-Author, "Play Ball: Potential Private Rights of Action Emerging From the FIFA Corruption Scandal," 11 Business Torts & RICO News 1 (Summer 2015). *Member:* American Association for Justice, Bar Association of San Francisco, Consumer Attorneys of California, State Bar of California, San Francisco Trial Lawyers Association.

**PHONG-CHAU G. NGUYEN**, Admitted to practice in California, 2012; U.S. District Court, Northern District of California, 2013; U.S. District Court, Central District of California, 2013; U.S. Court of Appeals for the Ninth Circuit, 2013. *Education:* University of San Francisco School of Law (J.D. 2012); Development Director, USF Moot Court Board; Merit Scholar; Zief Scholarship Recipient; University of California, Berkeley (B.A., Highest Honors; Distinction in General Scholarship, 2008). *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2018-2019; "California Lawyer of the Year," California Daily Journal, 2018; "Consumer

Attorney of the Year Finalist," Consumer Attorneys of California, 2017. *Prior Employment:* Attorney, Minami Tamaki, 2013; Post-Bar Law Clerk, Velton Zegelman PC, 2012; Law Clerk, Minami Tamaki, 2011-2012; Housing and Economic Rights Advocates, 2011; Greenlining Institute, 2008-2009, 2012. *Member:* State Bar of California; Asian American Bar Association for the Greater Bay Area; Barristers Club of the San Francisco Bar Association, Board of Directors; San Francisco Trial Lawyers Association.

**MELISSA GARDNER**, Admitted to practice in California, 2013; New York, 2013; U.S. District Court, Northern District of California, 2013; Central District of California, 2019. *Education*: Harvard Law School (J.D. 2011); Student Attorney, Harvard Prison Legal Assistance Project and South Brooklyn Legal Services; Semi-Finalist, Harvard Ames Moot Court Competition; *Harvard International Law Journal*. Western Washington University (B.A. *magna cum laude,* 2005). *Awards & Honors:* "Rising Star for Northern California," *Super Lawyers,* 2017-2019. *Prior Employment*: Associate, Emery Celli Brinckherhoff & Abady (2012); Law Clerk, South Brooklyn Legal Services (2011-2012); Peace Corps Volunteer, China (2005-2008). *Publications*: Co-Author, "Play Ball: Potential Private Rights of Action Emerging From the FIFA Corruption Scandal," 11 Business Torts & RICO News 1 (Summer 2015). *Member*: American Association for Justice; American Bar Association; Bar Association of San Francisco; California Women Lawyers; Consumer Attorneys of California; Ms. JD; State Bar of New York; State Bar of California.

### OF COUNSEL

**ROBERT L. LIEFF**, Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. *Education*: Columbia University (M.B.A., 1962; J.D., 1962); Cornell University; University of Bridgeport (B.A., 1958). Member, Columbia Law School Dean's Council; Member, Columbia Law School Board of Visitors (1992-2006); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004). *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; Selected for inclusion by peers in *The Best Lawyers in America* in fields of "Mass Tort Litigation/Class Actions – Plaintiffs," 2015-2019; "Super Lawyer for Northern California," Super Lawyers, 2005-2009, "*Lawdragon* Finalist," *Lawdragon*, 2005. *Member*: Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Fight for Justice Campaign.

**LYDIA LEE**, Admitted to practice in Oklahoma 1983; U.S. District Court, Western and Eastern Districts of Oklahoma; U.S. Court of Appeals, 10th Circuit. *Education*: Oklahoma City University, School of Law (J.D., 1983); University of Central Oklahoma (B.A., 1980). *Prior Employment*: Partner, Law Office of Lydia Lee (2005-2008); Partner, Oklahoma Public Employees Retirement System (1985-2005); Associate, law firm of Howell & Webber (1983-1985). *Publications & Presentations*: "QDROs for Oklahoma's Public Pension Plans," *Oklahoma*

*Family Law Journal*, Vol. 13, September, 1998; Co-Author, "Special Problems in Dividing Retirement for Employees of the State of Oklahoma," *OBA/FLS Practice Manual*, Chapter 27.3, 2002; Featured Guest Speaker, *Saturday Night Law*, KTOK Radio; Contributor and Editor, INFRE Course Books for CRA program. *Member*: Ruth Bader Ginsberg Inn of Court (2015-present), Outstanding Master of the Bench (2016-2017); Edmond Neighborhood Alliance Board of Directors (2005-Present), President (2012-2013, 2006-2007); Oklahoma Bar Association, Member (1983-present); OBA Women in Law Committee (2007-2013); Bench and Bar Committee (2013-present); National Association of Public Pension Attorneys (1988-Present), President (2002-2004), Vice-President (2001-2002), Executive Board member (1998-2004), Chair of Benefits Section, Emeritus Board member (2004); Edmond Planning Commission (2008-2010); Central Edmond Urban Development Board (2006-2008); Midwest City Regional Hospital, Board of Governors, Served on Physician/Hospital Organization Board, Pension and Insurance Trust Committees, and Chairman of Woman's Health Committee (1992-1996); City of Midwest City, Planning Commission (1984-1998), Chairman (1990-1995), Vice-Chairman (1987-1990), Served on Capital Improvement Committee, Airport Zoning Commission (Tinker AFB), and Parkland Review Board, served on Midwest City Legislative Reapportionment Committee (1991).

## ASSOCIATES

**EVAN J. BALLAN**, Admitted to practice in California, 2017; U.S. Court of Appeals, Fourth Circuit, 2018; U.S. District Court, Northern District of California, 2018. *Education:* University of Michigan Law School (J.D. Magna cum laude, Order of the Coif, 2017); Articles Editor, Michigan Law Review; McGill University (B.A., 2010). *Publications:* Protecting Whistleblowing (and Not Just Whistleblowers), Note, 116 Mich. L. Rev. 475 (2017). *Prior Employment:* Clerk to the Honorable Albert Diaz of the U.S. Court of Appeals for the Fourth Circuit. *Member:* State Bar of California.

**FACUNDO BOUZAT**, Admitted to practice in California, 2017; U.S. District Court, Northern District of California, 2017; U.S. District Court, Central District of California, 2019. *Education:* University of Michigan Law School (J.D. 2017); Michigan Law Review, Associate Editor; Judge Avern Cohn Summer Fellowship; Vice-President, ACLU Michigan Law Chapter; Bowling Green State University(B.A., summa cum laude, 2013). *Publications:* American Medical Tourism: Regulating a Cure that Can Damage Consumer Health, 25 L. Consumer L. Rev. 319 (2013); The Contingent Ethics of Market Transactions: Linking the Regulation of Business to Specific Forms of Markets, 6 Charleston L. Rev. 163 (2012); Changing Demographics and Language: A New Challenge to Legal Services Programs, 26 J. Mgmt. Info. Exchange (Winter Issue) 9 (2011). *Member:* State Bar of California.

**WILSON M. DUNLAVEY**, Admitted to practice in California, 2015; U.S. Court of Appeals, Ninth Circuit, 2016; U.S. District Court, Central District of California, 2016; U.S. District Court, Northern District of California, 2016; U.S. District Court, Middle District of North Carolina, 2016. *Education:* University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2015); Berkeley Technology Law Journal, Associate Editor; University of California, Berkeley, School of Law (Berkeley Law) Queer Caucus, Co-Chair; Board of Advocates Moot Court Team. Humboldt University in Berlin (Ph.D., *cum laude*, Modern History, 2015; Dual

M.A., *Magister Artium*, History and Philosophy, 2015); Friedrich-Naumann Foundation; Master's and Ph.D. Fellow; Queer Initiative, Director; Student Government, Executive Counsel. St. John's College (B.A., History of Math and Science, Philosophy, 2003); Faculty Toast Prize; Delegate Council. *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2019; "California Lawyer of the Year," California Daily Journal, 2018; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2017; "Outstanding Private Practice Antitrust Achievement," American Antitrust Institute, 2017. *Prior Employment:* Summer Associate, McDermott Will & Emery (2014); Law Clerk, Transgender Law Center (2014); Legal Research and Writing Teaching Assistant, First Year Skills Program, UC Berkeley School of Law (2013-2014); Judicial Extern to the Honorable William A. Alsup, U.S. District Court for the Northern District of California (2013); Legal Counselor, Berkeley Workers' Rights Clinic (2012-2013). *Member:* State Bar of California.

**ADAM GITLIN**, Admitted to practice in California, 2017; New York, 2009; U.S. District Court, Central District of California, 2018; U.S. District Court, Southern District of California, 2018. *Education:* University of Michigan Law School (J.D., 2007), Executive Editor and Editorial Board Member, University of Michigan Law Review. Princeton University (A.B., 2003). *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2019. *Publications & Presentations:* The Justice Department's Voter Fraud Scandal: Lessons (with Wendy Weiser), New York: Brennan Center for Justice (January 2017); Lecturer, "Voter Intimidation and Discrimination in the 2016 Election: Rhetoric and Reality," U.S. Presidential Election of 2016 Conference on Domestic & International Aspects, Inter-Disciplinary Center, Herzliya, Israel (January 2017); Lecturer, "Modernizing Elections," Washington House of Representatives State Government Committee (January 2017); Dangers of "Ballot Security" Operations: Preventing Intimidation, Discrimination, and Disruption (with Wendy Weiser), New York: Brennan Center for Justice (August 2016); Automatic Motor-Voter Registration Now Law in Four States, BillMoyers.com (May 2016); Lecturer, "Nonpartisan Voter Education Workshop," Nassau County, NY (October 2016); Lecturer, "Voting in 2016: The Good, the Bad, and the Potentially Very Ugly," Westchester Women's Bar Association, White Plains, NY (September 2016); Witness, Voting Rights Town Hall Meeting: "Setting the Democracy Agenda," Hon. John Conyers & Hon. Brenda Lawrence, U.S. House of Representatives, Detroit, MI (June 2016); Witness, Congressional Forum: "Fragile at fifty: The urgent need to strengthen and restore the Voting Rights Act," Hon. Nydia Velazquez, Hon. Hakeem Jeffries, and Hon. Grace Meng, U.S. House of Representatives Democratic Outreach and Engagement Task Force, New York, NY (May 2016); Witness, Hearing on SB 350 [automatic voter registration bill], Senate Education, Health, and Environmental Affairs Committee, Maryland Senate (February 2016); Christie Misses a Golden Opportunity for the Garden State, The Huffington Post (November 2015); Panelist, "Voting Rights Panel," SiX National Legislator Conference, Washington, DC (October 2015). *Prior Employment:* Counsel, Brennan Center for Justice at NYU School of Law (2015-2017); Trial Attorney, U.S. Department of Justice Antitrust Division, Litigation I Section (2008-2015); Law Clerk to Judge Noël A. Kramer, District of Columbia Court of Appeals (2007-2008).

**AVERY S. HALFON**, Admitted to practice in New York, 2016; District of Columbia, 2017; U.S. Court of Appeals for the Sixth Circuit, 2017. *Education:* Harvard Law School (J.D. cum laude 2015) (Editor-in-Chief, Harvard Law & Policy Review). Stanford University (B.A.

2010). *Prior employment:* Judicial Clerk to Judge Jane B. Stranch of the U.S. Court of Appeals for the Sixth Circuit; Fellow,  Cohen Milstein Sellers & Toll, PLLC. *Member:* State Bar of New York, Bar Association of the District of Columbia.

**ANDREW KAUFMAN**, Admitted to practice in New York, 2013; Tennessee, 2015; U.S. District Court, Middle District of Tennessee, 2015. *Education:* Harvard Law School (J.D. *cum laude,* 2012); Executive Editor, *Harvard Law and Policy Review*; Dean's Scholar Prizes in Federal Courts, Civil Procedure, and Legislation & Regulation. Carleton College (B.A. *magna cum laude*, Political Science, 2007). *Professional Associations & Memberships:* Member, Nashville Bar Foundation Leadership Forum, 2017 – 2018, *Publications:* "Spokeo Still Standing: No Sign of a Circuit Split" (with Nicholas Diamand), *Law360*, 2016; "Spotlight on Spokeo: A Win for Consumers" (with Nicholas Diamand), *Law360*, 2016; "Lochner for the Executive Branch: The Torture Memo as Anticanon," 7 *Harv. L. & Pol'y Rev*. 199 (2013); "American Foreign Policy Opinion in 2004: Exploring Underlying Beliefs," *27 Am. Rev. of Pol.* 295 (2007). *Prior Employment:* Law clerk to the Honorable Martha Craig Daughtrey, U.S. Court of Appeals, Sixth Circuit (2014-15); Law Clerk to the Honorable Stephen Glickman, D.C. Court of Appeals (2013-14); Fellow, Public Citizen Litigation Group (2012-13).

**ABBYE R. KLAMANN**, Admitted to practice in California, 2016; District of Columbia, 2018; New York, 2018. *Education:* University of Michigan Law School (J.D. 2016); Excellence in Pro Bono Service Award: Outstanding 2L Student of the Year (2015); American Association for Justice Mike Eidson Scholarship (2015); Campbell Moot Court, Semi-Finalist (2014-2015); Williams Moot Court (2015-2016); Michigan Law School Associate International Law Dean Selection Advisory Board (2015); Jessup International Moot Court, President (2014-2016), 7th Place Individual Oralist (Regionals 2015); National Lawyer's Guild Chapter, Board Member and Legal Observer Coordinator (2014-2016); Outlaws LGBT Student Group, Co-President (2014-2015) and 1L Representative (2013-2014); Syrian Accountability Project (2015-2016); American Civil Liberties Union Chapter, Social Chair (2013-2014). University of Missouri-Columbia (Bachelor of Journalism, Multicultural Certificate 2009-2011); Mock Trial, All-Region Attorney Award, Regional Champion (2010). Northwestern University (2008-2009).

**MICHELLE LAMY**, Admitted to practice in California, 2015; U.S. Court of Appeals for the Ninth Circuit, 2017; U.S. District Court, Northern District of California, 2017; U.S. District Court, Western District of Wisconsin, 2016. *Education:* Stanford Law School (J.D. 2015); Gerald Gunther Prize for Outstanding Performance in Research and Legal Writing; Gerald Gunther Prize for Outstanding Performance in Statutory Interpretation; Executive Board, Stanford Journal of Civil Rights & Civil Liberties. College of Arts & Sciences, Boston College (B.A. *summa cum laude*, 2009); Phi Beta Kappa; Dean's List First Honors, Dean's Scholar - Economics; Rev. Robert Cheney Economics Scholar. *Prior Employment:* Law Clerk to the Honorable Thelton E. Henderson, U.S. District Court for the Northern District of California. *Member:* American Bar Association; State Bar of California. *Honors & Awards:* "Rising Star for Northern California," Super Lawyers, 2019.

**DANIEL R. LEATHERS**, Admitted to practice in New Jersey, 2010; New York, 2010; Pennsylvania, 2009; U.S. Court of Appeals, 3rd Circuit, 2012; U.S. District Court, District of New Jersey, 2010; U.S. District Court, Eastern District of New York, 2012; U.S. District Court,

Southern District of New York, 2012; U.S. District Court, Eastern District of Wisconsin, 2013. *Education:* Case Western Reserve University Law School, Cleveland, Ohio (J.D. cum laude, 2009), Case Western Reserve Journal of International Law, Executive Articles Editor; Pennsylvania State University (B.A., History & Journalism, 2005). *Professional Associations:* American Association of Justice; American Bar Association; New Jersey Association of Justice. *Honors & Awards:* "Rising Star for New York Metro Area in Class Action/Mass Torts," Super Lawyers, 2013, 2014, 2015, 2016, 2017; "Rising Star for New Jersey in Class Action/Mass Torts," Super Lawyers, 2019; Federal Bar Association Award for Excellence in Constitutional Law, 2009; International Academy of Trial Lawyers Award for Overall Trial Advocacy Excellence, 2009; CALI Excellence for the Future Awards: Trial Tactics, 2009; Constitutional Law II, 2007. *Prior Employment:* Clerk to the Honorable Carol Higbee, New Jersey Superior Court Civil Division Presiding Judge (deceased). *Member:* New Jersey State Bar Association; New York State Bar Association; Pennsylvania State Bar Association.

**MICHAEL LEVIN-GESUNDHEIT,** Admitted to practice in California, 2013; U.S. District Court, District of New Mexico, 2017; U.S. District Court, Northern District of California, 2015; U.S. Court of Appeals for the Second Circuit, 2019; U.S. Court of Appeals for the Ninth Circuit, 2018. *Education:* Stanford Law School (J.D. 2013), Managing Editor, *Stanford Law & Policy Review*; Gerald Gunther Prize for Outstanding Performance in Intellectual Property. Harvard University (A.B. *magna cum laude,* 2008). *Professional Associations:* American Bar Association, Equal Employment Opportunity Committee; Bar Association of San Francisco; Consumer Attorneys of California. *Prior Employment:* Law Clerk to the Honorable Jacqueline Nguyen, Ninth Circuit Court of Appeals (2014-2015); Law Clerk to the Honorable Garland Burrell, Jr., U.S. District Court, Sacramento, California (2013-2014).

**KATHERINE MCBRIDE**, Admitted to practice in New York, 2016. *Education:* Stanford Law School (J.D. pro bono distinction 2015) (Levin Center Public Interest Fellow; Stanford Law Association; Stanford Journal of International Law; Iraqi Legal Education Initiative Rule of Law Project; Policy Director, Iraqi Refugee Assistance Project; Student Leader, DACA Pro Bono Project). Boston College (B.A. summa cum laude, 2011) (Phi Beta Kappa, Alpha Sigma Nu). *Prior employment:* Judicial Clerk to Judge I. Leo Glasser of the U.S. District Court for the Eastern District of New York; Ford Foundation Public Interest Fellow, Human Rights First. *Member:* State Bar of New York.

**KELLY MCNABB,** Admitted to practice in Minnesota, 2012; New York, 2015; U.S. District Court, District of Minnesota, 2012. *Education:* University of Minnesota Law School (J.D. *cum laude* 2012); Managing/Research Editor, *Minnesota Law Review*, 2010-2012; University of Minnesota Twin Cities College of Liberal Arts (B.A. 2008). *Honors & Awards:* "Rising Star for NY Metro," Super Lawyers, 2016-2017; Attorney of the Year – Pritzker Trial Team, *Minnesota Lawyer*, 2014. *Publications*: "The Relevant Scope of General Causation: Internal Company Documents and Communications," *American Association for Justice Newsletter*, 2018 ; "What 'Being a Watchdog' Really Means: Removing the Attorney General from the Supervision of Charitable Trusts," *Minnesota Law Review*, 2012. *Prior Employment*: Pritzker Olsen, P.A., Attorney, 2012-2014. *Member:* American Association for Justice, Minnesota Association for Justice, Minnesota Women Lawyers.

**VALERIE COMENCIA ORTIZ**, Admitted to practice in California, 2018. *Education*: Yale Law School (J.D. 2018), Articles Editor, *Yale Journal of International Law*; Community Service Chair, Black Law Students Association & Latino Law Students Association; Vice President for Membership and Community Engagement, American Constitution Society. Columbia University, School of International and Public Affairs (M.A. 2015). Columbia University (B.A. 2014). *Prior Employment*: Jerome N. Frank Legal Services Organization; Asylum Seeker Advocacy Project. *Member*: State Bar of California.

**SEAN A. PETTERSON**, Admitted to practice in New York, 2016; U.S. District Court, Eastern District of New York, 2017; U.S. District Court, Southern District of New York, 2017. *Education:* New York University School of Law (J.D., 2015); Senior Quorum Editor, Journal of Legislation and Public Policy; Robert McKay Scholar; Brandeis University (B.A., Summa Cum Laude 2011). *Prior Employment:* Civil Litigation Extern, U.S. District Court for the Southern District of New York; Boies Schiller Flexner, LLP. *Member:* State Bar of New York.

**YAMAN SALAHI,** Admitted to practice in California, 2013; U.S. District Court, Central District of California, 2013; U.S. District Court, Northern District of California, 2014; U.S. Court of Appeals, Ninth Circuit, 2013. *Education:* Yale Law School (J.D. 2012); University of California, Berkeley (B.A. 2009). *Prior Employment:* Judicial Clerk to Judge Edward M. Chen in the U.S. District Court for the Northern District of California; Arthur Liman Fellow, American Civil Liberties Union of Southern California; National Security and Civil Rights program, Advancing Justice-Asian Law Caucus. *Awards & Honors:* Kathi Pugh Award for Exceptional Mentorship, U.C. Berkeley School of Law; American Antitrust Institute's 2017 Antitrust Enforcement Award for Outstanding Antitrust Litigation Achievement in Private Law Practice in *In re Cipro Cases I & II. Member:* State Bar of California.

**MIKE SHEEN,** Admitted to practice in California, 2012; U.S. District Court, Northern District of California, 2013; U.S. District Court, Southern District of California, 2013; U.S. Court of Appeals, Ninth Circuit, 2018; U.S. Court of Appeals, Federal Circuit, 2015. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2012); Articles Editor (2010-2012), Executive Editor (2011-2012), *Berkeley Technology Law Journal*; Senior Articles Editor, *Asian American Law Journal*; Student Member, Berkeley Law Admissions Committee; Funding Officer, U.C. Berkeley Graduate Assembly. University of California, Berkeley (B.A. 2004). *Prior Employment*: Judicial Clerk to Judge Dale A. Drozd of the U.S. District Court for the Eastern District of California; Milbank, Tweed, Hadley & McCloy LLP. *Member*: State Bar of California.

**JOHN T. SPRAGENS,** Admitted to practice in Tennessee, 2012; U.S. District Court, Middle District of Tennessee, 2014, U.S. District Court, Northern District of Ohio, 2015,  U.S. District Court, Northern District of Illinois, 2015, U.S. District Court, Eastern District of Texas, 2016. *Education:* Vanderbilt University Law School, Nashville, Tennessee (J.D. 2012); Executive Editor, Environmental Law and Policy Annual Review.  Kenyon College (B.A., *magna cum laude*, International Studies, 2004); Phi Beta Kappa. *Honors & Awards:* "Rising Star for Mid-South," Super Lawyers, 2016-2018; "Top 40 Young Lawyer," American Bar Association, 2018; "Top 100 Trial Lawyers in Tennessee," National Trial Lawyers.  *Prior Employment:* Associate, Bass, Berry & Sims, 2013-14; Law Clerk, United States District Judge Kevin H. Sharp,

2012-13; Legal Intern, Metropolitan Nashville Public Defender's Office, 2011; Summer Associate, Lieff Cabraser Heimann & Bernstein, 2011; Legal Clerk, New Orleans Workers' Center for Racial Justice, 2010; Strategic Advisor, Center for Charter School Excellence, 2010; Communications Director and Legislative Assistant to U.S. Congressman Jim Cooper, 2006-09; Staff Writer, *Nashville Scene*, 2004-06.  *Member:* Tennessee Bar Association; Tennessee Association for Justice.

**ABBY R.  WOLF**, Admitted to practice in California, 2016; U.S. Court of Appeals, 4th Circuit, 2017. *Education:* University of California, Davis School of Law (J.D. 2016) (Senior Articles Editor, Business Law Journal; Co-Chair, King Hall Women's Law; Member of Civil Rights Clinic; Four Witkin Awards for Excellence). University of California, Berkeley (B.A. 2011) (Phi Alpha Theta). *Prior employment:* Judicial Clerk to Judge Joseph R. Goodwin of the U.S. District Court for the Southern District of West Virginia. *Member:* State Bar of California.

**TISEME ZEGEYE**, Admitted to practice in California, 2018; New York, 2013; U.S. Court of Appeals for the 2nd Circuit, 2014; U.S. Court of Appeals for the Ninth Circuit, 2014; U.S. Supreme Court, 2016. *Education:* New York University School of Law (J.D. 2011), BLAPA Kim Barry '98 Memorial Graduation Prize for Academic Excellence and Commitment to International and Human Rights Work; Dean's Scholarship. The College of William and Mary (B.A. *cum laude*, 2008). *Prior Employment:* Staff Attorney, Center for Reproductive Rights, New York; Legal Fellow, American Civil Liberties Union Women's Rights Project. *Member:* American Bar Association, Labor & Employment Law Section (Employee-side Vice-Chair of the Member Services Committee); American Constitution Society Bay Area Lawyer Chapter (Board Member); Equal Rights Advocates (Litigation Committee Member).

<u>Notice on the Firm's AV Rating</u>:  AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.  Martindale-Hubbell is the facilitator of a peer review process that rates lawyers.  Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories—legal ability and general ethical standards.