1 Dean M. Harvey (SBN 250298)
Katherine Lubin (SBN 259826)
2 Adam Gitlin (SBN 317047)
Yaman Salahi (SBN 288752)
3 LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
4 San Francisco, CA 94111
Telephone: (415) 956-1000
5 dharvey@lchb.com
kbenson@lchb.com
6 agitlin@lchb.com
ysalahi@lchb.com
7
8 *Interim Class Counsel*
9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14  IN RE CALIFORNIA BAIL BOND          Master Case No. 3:19-CV-00717-JST
    ANTITRUST LITIGATION
15                                      **PLAINTIFFS' [PROPOSED] NOTICE OF
                                        MOTION AND MOTION FOR
16                                      RECONSIDERATION REGARDING
                                        BILLING RATES FOR CONTRACT
17  THIS DOCUMENT RELATES TO:           ATTORNEYS, AND MEMORANDUM OF
                                        POINTS AND AUTHORITIES IN
18  All Actions                         SUPPORT**

19                                      ORAL ARGUMENT REQUESTED

20

21

22

23

24

25

26

27

28

**[PROPOSED] NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:  Please take notice that Plaintiffs Shonetta Crain and Kira Serna hereby move for reconsideration regarding one aspect of the Court's June 6, 2019 order: the requirement that "contract attorneys will be billed only at the rates actually paid to and received by such attorneys, without mark-up." Dkt. 44 at 4.  Plaintiffs make this motion on the grounds that the directive is erroneous, and was adopted without notice to Plaintiffs or an opportunity to present the Court with relevant law or facts.

This motion is based on this [Proposed] Notice of Motion and Motion, the accompanying Memorandum of Law and Points and Authorities, arguments of counsel, and the papers, records, and pleadings on file in this matter.

Dated:  June 18, 2019

Respectfully submitted,

By: */s/ Dean M. Harvey*

Dean M. Harvey (SBN 250298)
Katherine Lubin Benson (SBN 259826)
Adam Gitlin (SBN 317047)
Yaman Salahi (SBN 288752)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
dharvey@lchb.com
kbenson@lchb.com
agitlin@lchb.com
ysalahi@lchb.com

*Interim Class Counsel*

# TABLE OF CONTENTS

**Page**

[PROPOSED] NOTICE OF MOTION AND MOTION .................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.     INTRODUCTION ......................................................................................................... 1

II.    BACKGROUND ........................................................................................................... 2

    A.    Attorneys' Fees In Class Action Litigation.......................................... 2

    B.    Staffing in Modern Plaintiff-Side Firms and at Lieff Cabraser ............................ 3

III.   LEGAL STANDARD .................................................................................................. 5

IV.   ARGUMENT ................................................................................................................ 5

    A.    Legal Authorities Universally Require Billing Contract Attorneys At Market Rates ................................................................................................... 5

    B.    Numerous Professional Associations, Including The California State Bar, Recognize That Contract Attorneys Should Be Billed At Market Rates .............. 14

    C.    Billing Contract Attorneys Below Cost Would Only Penalize Efficient Case Management and Cost-Saving Measures ..................................................... 15

V.    CONCLUSION .......................................................................................................... 16

3

**Cases**

*Accordia Life & Annuity Co. v. White*,
No. 18-cv-0020-EMC, 2018 WL 5304828 (N.D. Cal. Oct. 24, 2018) ....................................... 9

*Andrews v. Lawrence Livermore Nat'l Sec., LLC*,
No. C 11-3930 CW, 2012 WL 160117 (N.D. Cal. Jan. 18, 2012)........................................... 12

*Barjon v. Dalton*,
132 F.3d 496 (9th Cir. 1997)............................................................................................ 6

*Bell v. Clackamas Cty.*,
341 F.3d 858 (9th Cir. 2003)............................................................................................ 6

*Blum v. Stenson*,
465 U.S. 886 (1984)........................................................................................................ 6

*Bohannon v. Facebook, Inc.*,
No. 12-cv-01894-BLF, 2016 WL 3092090 (N.D. Cal. June 2, 2016) ....................................... 10

*Case v. Unified School Dist. No. 233, Johnson Cty., Kan.*,
157 F.3d 1243 (10th Cir. 1998)........................................................................................ 7

*Citizens for Better Forestry v. U.S. Dept. of Agriculture*,
No. C 05-1144 PJH & C 04-4512 PJH, 2008 WL 5210945 (N.D. Cal. Dec. 11, 2008)........... 10

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*
954 F. Supp. 2d 276 (S.D.N.Y. 2013)............................................................................... 13

*Copeland v. Marshall*,
641 F.2d 880 (D.C. Cir. 1980) ......................................................................................... 7

*Cotton v. City of Eureka, Cal.*,
889 F.Supp.2d 1154 (N.D. Cal. 2012) ............................................................................... 8

*Curran v. Dep't of Treasury*,
805 F.2d 1406 (9th Cir. 1986).......................................................................................... 6

*De Amaral v. Goldsmith & Hull*,
No. 12-cv-03570-WHO, 2014 WL 1309954 (N.D. Cal. Apr. 1, 2014) ................................... 11

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
No. C 06-03359 JP (RS), 2009 WL 3617786 (N.D. Cal. Oct. 29, 2009) ................................. 11

*Dreith v. Nu Image, Inc.*,
648 F.3d 779 (9th Cir. 2011)............................................................................................ 5

*Farbotko v. Clinton Cty. of New York*,
433 F.3d 204 (2d Cir. 2005)............................................................................................. 6

*Fleming v. Kemper Nat'l Servs., Inc.*,
373 F.Supp.2d 1000 (N.D. Cal. 2005) ............................................................................... 9

*Gutowski v. McKesson Corp.*,
No. C 12-6056 CW, 2013 WL 3242265  (N.D. Cal. June 25, 2013)....................................... 12

*Hollis v. Roberts*,
984 F.2d 1159 (11th Cir. 1993)......................................................................................... 7

*In re Animation Workers Antitrust Litig.*,
No. 14-cv-4062-LHK, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016)................................... 11

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-md-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................................ 11

*In re Bluetooth Headset Prods. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011).................................................................................................. 2, 6

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
  Case No. 3:17-md-02777-EMC (N.D. Cal. May 3, 2019)..................................................... 8, 9

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)....................................................................................... 13

*In re Enron Corp. Securities, Derivative & ERISA Litig.*,
  586 F.Supp.2d 732 (S.D. Tex. 2008) ........................................................................................ 15

*In re Lioderm Antitrust Litig.*,
  No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)................................ 11

*In re Magsafe Power Adapter Litig.*,
  No. 5:09-cv-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ..................................... 9

*In re Optical Disk Drive Prods. Antitrust Litig.*,
  No. 3:10-md-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) .............................. 11, 15

*In re Volkswagen 'Clean Diesel' Mktg., Sales Practices, And Prods. Liability Litig.*,
  MDL No. 2672 CRB (JSC), Dkt. No. 3053 (N.D. Cal. Mar. 17, 2017) .................................... 8

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
  MDL No. 1917, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) (Tigar, J.)................................ 12

*Jackson v. City of Pittsburg*,
  No. C 09-01016 WHA, 2013 WL 3187326, (N.D. Cal. June 21, 2013)..................................... 7

*Johnson v. City of Clarksville*,
  256 Fed.Appx. 782 (6th Cir. 2007)............................................................................................. 6

*Kean v. Stone*,
  966 F.2d 119 (3d Cir. 1992)........................................................................................................ 6

*League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. School Dist.*,
  119 F.3d 1228 (5th Cir. 1997)..................................................................................................... 6

*Levine v. City of Alameda*,
  No. C 04-01780 CRB, 2006 WL 1867532 (N.D. Cal. July 5, 2006)......................................... 8

*Lipsett v. Blanco*,
  975 F.2d 934 (1st Cir. 1992) ...................................................................................................... 6

*Little Rock School Dist. v. Arkansas*,
  674 F.3d 990 (8th Cir. 2012)....................................................................................................... 7

*McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc.*,
  No. 14-cv-03127-JD, 2015 WL 4380965 (N.D. Cal. July 16, 2015)....................................... 10

*Missouri v. Jenkins*,
  491 U.S. 274 (1989).................................................................................................................. 15

*Moore v. Verizon Commc'ns, Inc.*,
  No. C 09-1823 SBA, 2014 WL 588035 (N.D. Cal. Feb. 14, 2014).......................................... 8

*Nat'l Collegiate Athletic Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*,
No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ..................................... 12

*Nwabueze v. AT&T, Inc.*,
No. C 09-01529 SI, 2014 WL 324262 (N.D. Cal. Jan. 29, 2014)............................................. 10

*Pham v. Watts*,
No. 14-cv-02247-VC, 2014 WL 4748274 (N.D. Cal. Sep. 24, 2014) ...................................... 9

*Pickett v. Sheridan Health Care Ctr.*,
664 F.3d 632 (7th Cir. 2011).................................................................................................... 7

*Plyler v. Evatt*,
902 F.2d 273 (4th Cir. 1990).................................................................................................... 6

*Raney v. Fed. Bureau of Prisons*,
222 F.3d 927 (Fed. Cir. 2000).................................................................................................. 7

*Reyes v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*,
281 F.Supp.3d 833 (N.D. Cal. 2017) (Tigar, J.) ..................................................................... 3

*Rose v. Bank of Am. Corp.*,
No. 5:11-cv-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)................................. 9

*School Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993)...................................................................................................... 5

*Shaffer v. Sup. Ct.*,
33 Cal.App.4th 993 (1995) ....................................................................................................... 14

*Smith v. Massachusetts*,
543 U.S. 462 (2005)................................................................................................................... 5

*Tamalpais Union High School Dist. v. D.W.*,
No. 16-cv-04350-HSG, 2019 WL 1332396 (N.D. Cal. Mar. 25, 2019) ................................... 10

*Young v. Law Offices of Herbert Davis*,
No. C 13-01108 JSW, 2014 WL 3418209 (N.D. Cal. July 11, 2014) ...................................... 12

*Younger v. Michael & Assocs., P.C.*,
Nos. 13-cv-1679 YGR & 13-cv-1680 YGR, 2014 WL 1760827 (N.D. Cal. Apr. 30, 2014).... 10

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................................................. 2

**Other Authorities**

5 Newberg on Class Actions § 15:41 (5th ed.) ........................................................................ 7

American Bar Association Standing Committee on Ethics and Professional Responsibility,
*Surcharge to Client for Use of a Contract Lawyer*, Formal Opinion 00-420 (Nov. 29, 2000) . 14

Colorado Bar Association Ethics Committee Formal Opinion 105 (May 22, 1999).................... 15

District of Columbia Bar Legal Ethics Committee Opinion 284 (Sept. 15, 1990) ....................... 15

Virginia Legal Ethics Opinion 1712 (July 22, 1998)..................................................................... 15

Virginia Legal Ethics Opinion 1735 (October 20, 1999)................................................................ 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Shonetta Crain and Kira Serna respectfully request that the Court reconsider its requirement that contract attorneys "be billed only at the rates actually paid to and received by such attorneys, without mark-up." Dkt. 44 at 4. The uniform rule across all courts to have examined the issue is that the appropriate billing rates for attorneys, including contract attorneys, are the prevailing market rates. These courts include the United States Supreme Court, all United States Courts of Appeal, and all Judges in the Northern District of California. This widespread consensus is also endorsed by numerous bar organizations, including the American Bar Association and the State Bar of California.

Contract attorneys play an important role in the efficient and effective prosecution of complex cases. In the event that Plaintiffs succeed in creating a common fund for the benefit of the proposed Class, Plaintiffs will seek attorney's fees based upon a percentage of the fund. This is the preferred method in the Ninth Circuit, and may be supported by a lodestar cross-check. Plaintiffs will calculate that lodestar based upon prevailing market rates, consistent with universal authority on the subject. Rates for contract attorneys should be determined in the same way as other attorneys who contribute to the creation of a common fund.

The Court's requirement is also impractical and would only undermine its purpose. Contract attorneys require many of the same overhead costs as other attorneys: physical office space; a variety of staff support, including information technology and human resources; and training and supervision. In addition, contract attorneys are often provided through agencies, who charge an amount above the rates received by those contract attorneys. A requirement that contract attorneys be billed only at the same rates received by those attorneys thus requires that they be billed *below cost*. Such a rule would strongly discourage the use of contract attorneys, which would prejudice the efficient prosecution of class cases. Tasks that could be ably handled by talented, well-educated, and licensed contract attorneys would instead be done by other, potentially more senior attorneys, who command higher market rates. This would be inefficient and would likely only increase total attorney billing.

The Court should follow the mountain of legal authority on the subject and permit contract attorneys to be billed like all other attorneys: at market rates. The appropriate market rates for contract attorneys should then be determined at the time of a fee request, with the benefit of a full record. In the meantime, Plaintiffs have submitted proposed attorney's fee guidelines that provide numerous protections to ensure efficient and effective prosecution of this action.

## II.   BACKGROUND

### A.   Attorney's Fees In Class Action Litigation

Law firms that represent plaintiffs in class action litigation generally do so on contingency. Unlike defense-side firms who are generally paid by clients on an hourly basis, plaintiff-side firms in the class action context recover no fee for their work, nor reimbursement of costs incurred, unless they secure a benefit to the class through a settlement or judgment. If and when a benefit is secured, the attorneys representing the Class may petition the Court for a reasonable attorneys' fee. Fed. R. Civ. P. 23(h). There is more than one method to calculate a reasonable fee, but in the Ninth Circuit, the "percentage of the common fund" method is preferred "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Under the percentage method, the Court "typically calculate[s] 25% of the fund as the 'benchmark' for a reasonable award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* To verify the reasonableness of a percentage-based fee, the Court may, but is not required, to "cross-check" by comparing the fee yielded by the percentage method to the fee yielded under the lodestar method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended in the litigation . . . by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. Under the "cross-check," "the primary basis of the fee award remains the percentage method [but] the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050. The Court then determines whether the ratio between the percentage-based award and the lodestar-based award (*i.e.*, the "multiplier") is reasonable. "Percentage awards in the range of one to four times the

lodestar are common." *Reyes v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 281 F.Supp.3d 833, 860 (N.D. Cal. 2017) (Tigar, J.); *see also Vizcaino*, 290 F.3d at 1051 n.6.

**B.    Staffing in Modern Plaintiff-Side Firms and at Lieff Cabraser**

Staffing in plaintiff-side class action firms that handle large, complex cases differs from that in a traditional defense-side law firm. Lieff Cabraser employs attorneys on a full-time, long-term basis in four categories: Partners, Of Counsel, Associates, and Staff Attorneys. Harvey Decl. ¶ 2. The firm's Staff Attorneys support the firm's organization, reading, coding, and analysis of the vast number of documents produced in civil litigation. *Id.* They have degrees from reputable law schools, generally have years of experience in civil litigation and document review and analysis in complex cases, and, like Partners, Of Counsel, and Associates, have biographies posted on the firm's website. *Id.* They are included in the firm's continuing legal education programs. *Id.* They are paid directly by the firm and may receive benefits provided by the firm. *Id.* The chief difference between Associates and Staff Attorneys is that the latter have made the lifestyle and career choice to work a more limited number of hours than traditional law firm Partners, Of Counsel, and Associates. *Id.*

Given the large number of complex cases the firm handles at a time, Lieff Cabraser sometimes has the need for attorney document review and analysis support beyond the firm's regular, long-term staffing. Harvey Decl. ¶ 3. When such needs arise, the firm retains the service of "agency" or "contract" attorneys for discrete, shorter term projects. *Id.* Often, attorneys who start working for the firm while paid by an agency transition to direct employment by the firm. *Id.* Whether they are on payroll or paid through an agency, both staff and contract attorneys perform substantially the same document review, analysis, and litigation support functions. *Id.* The primary difference between staff and contract attorneys is that they are compensated differently. *Id.* All utilize, to varying degrees, the firm's infrastructure and resources, including, but not limited to: the use of physical office space; the use of information technology support; the use of firm administrative support (e.g., human resources, accounting services, and word processing); assistance from the firm's litigation support department for training on document review platforms; and supervision by firm partners, senior associates, and senior staff. Lieff Cabraser

sets both staff and contract attorney rates based on market rates for lawyer services, primarily in the San Francisco and New York marketplaces (where Lieff Cabraser's primary offices are located). *Id.*

Staff and contract attorney responsibilities are not mechanical, nor low-value. Harvey Decl. ¶ 4. Documents produced by defendants have already been reviewed for responsiveness and relevance, so first-level review work is complete before Plaintiffs even receive the documents. *Id.* Attorneys working on behalf of Plaintiffs then review and analyze these relevant documents, applying their experience and knowledge of the legal issues in the case to make judgments about the relative importance of documents to proving the elements of Plaintiffs' claims. *Id.* They work in concert with other members of the litigation team to develop case-specific expertise. *Id.* For instance, documents that evince an anticompetitive conspiracy are often cryptic, because sophisticated conspirators take steps to avoid creating "smoking guns." *Id.* These conspirators will sometimes use code words, or take subtle actions inconsistent with economic self-interest absent an understanding with their competitors. *Id.* Identifying and analyzing these documents is a difficult and critical task. *Id.*

Accordingly, all members of the litigation team, from contract and agency attorneys to senior partners, work collaboratively to develop the factual expertise necessary to assemble and understand the factual record that will prove Plaintiffs' case. *Id.* ¶ 5. This work goes well beyond simply reviewing and coding documents. *Id.* Staff and contract attorneys draft memos organizing and summarizing vast amounts of evidence; they assemble witness kits that are used to prepare for depositions and to select deposition exhibits; they create and update casts of characters, including work histories and biographies of key witnesses; they create and update dictionaries of industry jargon and conspiracy code words; and so on. *Id.* These tasks are not "menial or mindless work," but rather "a critically important and challenging task." *Chambers v. Whirlpool Corp.*, 214 F.Supp.3d 877, 898 (C.D. Cal. 2016) (agreeing contract attorneys should be billed at market rate in class action case). Staff and contract attorneys also apply their case-specific expertise of the law and the facts to identify highly relevant and hot documents for the "Seed Set" in Technology-Assisted Review (TAR) in cases where that technique is employed. *Id.*

¶ 6. The quality of the "Seed Set" improves the reliability of the TAR process, which, in turn, increases efficiency and reduces the number of hours necessary for manual review of documents. *Id.*

Although the market rate for particular contract attorneys or assignments may be different from the market rate for a senior partner's briefing and argument of a dispositive motion, contract attorneys nevertheless perform real, substantive professional and legal services. Their contribution to a case is rightfully billed to clients at market rate for those services. The implication that law firms employ contract attorneys as a means to generate an unfair or illegitimate windfall profit is deeply flawed, as explained below. Rather, law firms rely on contract attorneys because the ebb and flow of litigation-related workloads means that regular staffing is not always available. Flexibility is therefore necessary for a law firm that operates on contingency, assumes significant financial risk to prosecute class cases, and aims to act as efficiently as possible. Without the option of relying on contract attorneys to perform professional legal services, Lieff Cabraser would have to re-assign those tasks to more senior staff attorneys, associates, or partners, a practice that would not only cause delay in the litigation process, but also result in higher legal costs to clients. Harvey Decl. ¶ 7.

## III.  LEGAL STANDARD

A district court has "the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment . . . ." *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005). *See also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787-88 (9th Cir. 2011) ("a district court has the inherent power to reconsider" its non-final orders). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted).

## IV.  ARGUMENT

### A.  Legal Authorities Universally Require Billing Contract Attorneys At Market Rates

The Supreme Court has long held that, when applying the lodestar method to determine a

reasonable attorney's fee, the fee should be calculated at the prevailing market rate, not the rates at which those attorneys were paid. *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 897 (1984) ("reasonable fees" under § 1988 "are to be calculated according to the prevailing market rates in the relevant community . . . regardless of whether [plaintiff] is represented by private profit-making attorneys or nonprofit [counsel]"). The Ninth Circuit has reached the same conclusion in numerous contexts. *See Bluetooth*, 654 F.3d at 941 (in class action common fund, the lodestar is calculated based on "a reasonable hourly rate for the region and for the experience of the lawyer"); *Bell v. Clackamas Cty.*, 341 F.3d 858, 868 (9th Cir. 2003) ("A court awarding attorney fees must look to the prevailing market rates in the relevant community."); *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (fees should be calculated based on market rate "despite the actual fee charged by the attorney"); *Curran v. Dep't of Treasury*, 805 F.2d 1406 (9th Cir. 1986) (under Back Pay Act, attorney's fees should be calculated based on prevailing market rate, not attorneys' hourly salaries).

Every other Circuit also calculates a "reasonable attorney's fee" in a variety of contexts by looking to prevailing market rates. *See Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992) (reasonable rate determined by looking to "prevailing rates in the community for comparably qualified attorneys") (quotation omitted); *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) ("[U]nder established caselaw, a reasonable hourly rate is the 'prevailing market rate,' i.e., the rate 'prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (quoting *Blum*, 465 U.S. at 896 & n.11); *Kean v. Stone*, 966 F.2d 119, 125 (3d Cir. 1992) (attorneys' fee should be based on prevailing market rate, not attorney's actual salary); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (observing that Supreme Court has "emphasized that market rate should guide the [attorneys'] fee inquiry"); *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. School Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997) (reasonable hourly rate to be calculated based on prevailing market rate); *Johnson v. City of Clarksville*, 256 Fed.Appx. 782, 784 (6th Cir. 2007) ("An award of attorneys fees is calculated according to the 'prevailing market rates in the relevant community,' not by the actual salary paid to the prevailing party's attorney."); *Pickett v. Sheridan*

*Health Care Ctr.*, 664 F.3d 632, 641 (7th Cir. 2011) (holding district court "went beyond the bounds of the lodestar method when it reduced [attorney's] hourly rate by a factor that has no bearing on the prevailing market rate"); *Little Rock School Dist. v. Arkansas*, 674 F.3d 990, 995 (8th Cir. 2012) ("A reasonable hourly rate generally means 'the ordinary fee 'for similar work in the community.'''"); *Case v. Unified School Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1255 (10th Cir. 1998) (district court abused discretion "when it ignore[d] the parties' market evidence" regarding attorney hourly rates); *Hollis v. Roberts*, 984 F.2d 1159, 1161 (11th Cir. 1993) (holding district court properly awarded fees based on prevailing market rates rather than actual costs); *Copeland v. Marshall*, 641 F.2d 880, 899-900 (D.C. Cir. 1980) (agreeing that "attorney's fees should not be based on the costs of the successful party" but rather "the market value of the legal services rendered"); *Raney v. Fed. Bureau of Prisons*, 222 F.3d 927, 932-33 (Fed. Cir. 2000) (holding that statutory guarantee of "reasonable attorneys fees" means "prevailing market-rate attorney fees" not actual cost of legal services). *See also* 5 Newberg on Class Actions § 15:41 (5th ed.) (under lodestar method, "[a] reasonable hourly rate is the prevailing rate in the community for similar services provided by attorneys of comparable skill, experience, and reputation"); 10 Fed. Prac. & Proc. Civ. § 2675.2 (4th ed.) (under lodestar method, "[t]he court will look to the amount of time spent and multiply that by the fee generally assessed for comparable work in the area").

Consistent with that universal rule, *every* District Court Judge in this District relies on a market-rate analysis for determining reasonable hourly rates for attorneys. Those who have been presented with this specific question have declined to treat contract attorneys differently, and/or have granted requests for attorneys' fees that included contract attorney time in the lodestar at a market rate.

- **Judge Alsup:**

  - ***Reasonable Hourly Rate.*** *See Jackson v. City of Pittsburg*, No. C 09-01016 WHA, 2013 WL 3187326, at *4 (N.D. Cal. June 21, 2013) ("In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and

reputation[.]").

- **Judge Armstrong:**

  o ***Contract Attorneys.*** *See Moore v. Verizon Commc'ns, Inc.*, No. C 09-1823 SBA, 2014 WL 588035, at *13-14 (N.D. Cal. Feb. 14, 2014) (declining to cut the hourly rate for work performed by contract attorneys to respond to and answer class-member inquiries and instead applying market rate).

  o ***Reasonable Hourly Rate.*** *See Cotton v. City of Eureka, Cal.*, 889 F.Supp.2d 1154, 1166 (N.D. Cal. 2012) (the lodestar analysis "requires the district court to determine a reasonable hourly rate," which is done "by examining the prevailing market rates").

- **Judge Breyer:**

  o ***Contract Attorneys.*** *See In re Volkswagen 'Clean Diesel' Mktg., Sales Practices, And Prods. Liability Litig.*, MDL No. 2672 CRB (JSC), Dkt. No. 3053 (N.D. Cal. Mar. 17, 2017) (granting attorney's fee award based in part on lodestar of contract attorneys at market rate); *id.*, Dkt. 3231 (N.D. Cal. May 17, 2017) (same).

  o ***Reasonable Hourly Rate.*** *See Levine v. City of Alameda*, No. C 04-01780 CRB, 2006 WL 1867532, at *6 (N.D. Cal. July 5, 2006) (determining a reasonable hourly rate based on "the experience, skill, and reputation of the attorney requesting fees" and "according to the prevailing market rates in the relevant community") (quotations and citations omitted).

- **Judge Chen:**

  o ***Contract Attorneys.*** *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, Case No. 3:17-md-02777-EMC ("*Ecodiesel*"), Dkt. 181 at 9 (in billing and expense protocol for class action, permitting the use of "junior associates, contract, and staff attorneys" for document review-related tasks, and provided that "[l]awyers who perform initial document analysis and coding will be billed at an hourly rate consistent with the market rate for junior associates"). Indeed, this Court requested that Interim Class Counsel propose guidelines based on Judge Chen's costs and expenses protocol in *Ecodiesel*, but the Court's directive that "contract attorneys

will be billed only at the rates actually paid to and received by such attorneys, without mark-up," Dkt. 44 at 4, is inconsistent with *Ecodiesel*. Later, Judge Chen granted an attorneys' fee award including contract attorney time in the lodestar at a market rate. *See Ecodiesel*, Dkt. 561 (N.D. Cal. May 3, 2019).

- o ***Reasonable Hourly Rate.*** *See Accordia Life & Annuity Co. v. White*, No. 18-cv-0020-EMC, 2018 WL 5304828, at *2 (N.D. Cal. Oct. 24, 2018) (attorney's requested rates should be "in line with those prevailing in the community for similar services of attorneys of reasonably comparable skill, experience, and reputation).

- **Judge Chesney:**

  - o ***Reasonable Hourly Rate.*** *See Fleming v. Kemper Nat'l Servs., Inc.*, 373 F.Supp.2d 1000, 1007 (N.D. Cal. 2005) ("The determination of the reasonable fee is not made by reference to rates actually charged, but by reference to the prevailing market rate in the community for similar services of lawyers of reasonably comparable skill, experience and reputation.") (quotations and citations omitted).

- **Judge Chhabria:**

  - o ***Reasonable Hourly Rate.*** *See Pham v. Watts*, No. 14-cv-02247-VC, 2014 WL 4748274, at *1 (N.D. Cal. Sep. 24, 2014) (calculating reasonably hourly rate based on "prevailing market rate").

- **Judge Davila:**

  - o ***Contract Attorneys.*** *See Rose v. Bank of Am. Corp.*, No. 5:11-cv-02390-EJD, 2014 WL 4273358, at *7 (N.D. Cal. Aug. 29, 2014) (approving fee award, including for contract attorneys, at market rates).

  - o ***Reasonable Hourly Rate.*** *See In re Magsafe Power Adapter Litig.*, No. 5:09-cv-01911-EJD, 2015 WL 428105, at *11 (N.D. Cal. Jan. 30, 2015) ("The reasonable hourly rate for computing the lodestar amount is based on the prevailing market rates in the relevant community.") (quotation and citation omitted).

- **Judge Donato:**

  - o ***Reasonable Hourly Rate***. *See McMillan Data Commc'ns, Inc. v. AmeriCom*

*Automation Servs., Inc.*, No. 14-cv-03127-JD, 2015 WL 4380965, at *12 (N.D. Cal. July 16, 2015) (agreeing with and adopting magistrate's opinion that "[t]he Court, in considering what constitutes a reasonable hourly rate, looks to the prevailing market rate in the relevant community").

- **Judge Freeman:**
  - ○ ***Reasonable Hourly Rate.*** *See Bohannon v. Facebook, Inc.*, No. 12-cv-01894-BLF, 2016 WL 3092090, at *5 (N.D. Cal. June 2, 2016) ("When determining the reasonable hourly rate, the court must weigh the experience, skill, and reputation of the attorney requesting fees, and compare the requested rates to prevailing market rates.") (citation and quotation omitted).

- **Judge Gilliam:**
  - ○ ***Reasonable Hourly Rate.*** *See Tamalpais Union High School Dist. v. D.W.*, No. 16-cv-04350-HSG, 2019 WL 1332396, at *4 (N.D. Cal. Mar. 25, 2019) ("Reasonable attorneys fees are to be calculated according to the prevailing market rates in the relevant community.") (quotation and citation omitted).

- **Judge Gonzales Rogers:**
  - ○ ***Reasonable Hourly Rate.*** *See Younger v. Michael & Assocs., P.C.*, Nos. 13-cv-1679 YGR & 13-cv-1680 YGR, 2014 WL 1760827, at *4 (N.D. Cal. Apr. 30, 2014) ("In assessing applications for attorney's fees, the reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community.").

- **Judge Hamilton:**
  - ○ ***Reasonable Hourly Rate.*** *See Citizens for Better Forestry v. U.S. Dept. of Agriculture*, No. C 05-1144 PJH & C 04-4512 PJH, 2008 WL 5210945, at *4 (N.D. Cal. Dec. 11, 2008) (relying on prevailing market rates to calculate reasonable attorneys' fees).

- **Judge Ilston:**
  - ○ ***Reasonable Hourly Rate:*** *See Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *2 (N.D. Cal. Jan. 29, 2014) ("With respect to hourly rates, the relevant question is whether the rates are reasonable and within the prevailing market

rates.").

- **Judge Koh:**
  - *Contract Attorneys.* *See In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK, 2018 WL 3960068, at *18-20 (N.D. Cal. Aug. 17, 2018) ("commend[ing]" the practice of billing contract attorneys at cost, but recognizing that there was no legal authority "adopting this hardline position" and so holding that "counsel may be entitled to a reasonable markup [on contract attorney hours] to cover costs such as supervision and overhead," and applying a market-rate analysis to contract attorney hours).
  - *Reasonable Hourly Rate.* *See In re Animation Workers Antitrust Litig.*, No. 14-cv-4062-LHK, 2016 WL 6663005, at *6 & n.8 (N.D. Cal. Nov. 11, 2016) (applying market-rate method, including to contract attorney hours).

- **Judge Orrick:**
  - *Contract Attorneys.* *See In re Lioderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (approving attorney's fees request including contract attorney time at market rate).
  - *Reasonable Hourly Rate.* *See De Amaral v. Goldsmith & Hull*, No. 12-cv-03570-WHO, 2014 WL 1309954, at *3 (N.D. Cal. Apr. 1, 2014) (determining reasonable hourly rates based on that paid to "attorneys of comparable skill, experience, and reputation litigating similar cases in this jurisdiction").

- **Judge Seeborg:**
  - *Contract Attorneys.* *See In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 7364803, at *13 (N.D. Cal. Dec. 19, 2016) (overruling objection to contract attorney hourly rates and observing that "[c]ourts throughout the country have accepted the use of contract attorneys in this type of complex litigation.").
  - *Reasonable Hourly Rate.* *See Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06-03359 JP (RS), 2009 WL 3617786, at *1 (N.D. Cal. Oct. 29, 2009) ("The

lodestar approach requires that the court determine first the number of hours reasonably expended and a reasonable hourly rate, considering each attorney's experience, reputation, and skill.").

- **Judge White:**

  o ***Reasonable Hourly Rate.*** *See Young v. Law Offices of Herbert Davis*, No. C 13-01108 JSW, 2014 WL 3418209, at *6 (N.D. Cal. July 11, 2014) (adopting magistrate's recommendation which "look[ed] to the prevailing market rate in the relevant community" to determine a reasonable hourly rate).

- **Judge Wilken:**

  o ***Contract Attorneys.*** *See Andrews v. Lawrence Livermore Nat'l Sec., LLC*, No. C 11-3930 CW, 2012 WL 160117, at *2 (N.D. Cal. Jan. 18, 2012) ("Defendants provide no authority for the proposition that, for purposes of determining reasonable hourly rates, an attorney's status as a contract attorney, as opposed to his or her employment as an associate, is a proper substitute for evaluating an attorney's actual experience or skills."); *see also In re Nat'l Collegiate Athletic Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *8 (N.D. Cal. Dec. 6, 2017) (approving contract attorney rates between $300 and $350, noting such rates were "in line with market rates in this District").

  o ***Reasonable Hourly Rate.*** *See Gutowski v. McKesson Corp.*, No. C 12-6056 CW, 2013 WL 3242265, at *1 (N.D. Cal. June 25, 2013) ("Reasonable fees are generally calculated according to the prevailing market rates in the forum district.").

The Court's order here is also inconsistent with this Court's own prior approach to the subject. In the matter of *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, an objector criticized Class Counsel's use of contract attorneys based on the difference between how much those attorneys were in fact paid and the hourly rates that were used in Class Counsel's petition for fees. *See* MDL No. 1917, 2016 WL 4126533, at *8-9 (N.D. Cal. Aug. 3, 2016) (Tigar, J.). The Court noted that the Special Master reviewed the evidence and found that there is "***not the slightest justification to downgrade their billing rates*** or not apply a multiplier to them." *Id.* at *8

(emphasis added).  The Court also acknowledged that "[m]any courts hold that contract attorneys' hours should be billed at market rates and included in the lodestar without regard to the wage actually paid to the contract attorney." *Id.* (citing cases).  The Court then contended that there was a "conflict" of authority on this issue by citing two orders from the Southern District of New York.  *Id.*  But even these two out-of-circuit cases rejected requiring contract attorneys to be billed at the rates at which they are paid, and instead applied market rates.

First, in *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, Judge Rakoff found that "the use of 'contract' attorneys is not suspect *per se*" and "it is beyond cavil that law firms may charge more for contract attorneys' services than these services directly cost the law firm[.]"  954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013).  Judge Rakoff determined the market rate by surmising that a "sophisticated client" could have negotiated an hourly rate for contract lawyers that would have still been approximately 2.6 times the total cost of the contract attorneys to the law firm.  Judge Rakoff balanced this information with other factors and awarded the benchmark fee of 25% of the common fund.  *Id.* at 281.

Second, in the matter of *In re Citigroup Inc. Sec. Litig.*, Judge Stein assessed a fee request in the context of substantial evidence of unreasonable billing practices.  965 F. Supp. 2d 369 (S.D.N.Y. 2013).  For example, Plaintiffs' counsel hired 20 contract attorneys on the same day that Plaintiffs notified the Court that they had reached a settlement resolving the case, and those contract attorneys spent "vast numbers of hours" on discovery after settlement was reached.  *Id.* at 389.  Nonetheless, Judge Stein calculated the appropriate rates for those contract attorneys by "determin[ing] the market rate for the[ir] services".  *Id.* at 394.  After considering the substantial evidence in the record, Judge Stein concluded that the market rate for the contract attorney time at issue was a blended average of $200 an hour, and applied that rate to calculate the lodestar.  *Id.* at 399.

Plaintiffs could not find a single example of a court disregarding market rates for contract attorneys in favor of requiring them to be billed only at the rates at which they are paid, even in cases where there was a record of substantial billing abuse.  To apply that rule here at the outset of the case, despite providing substantial limitations in fee guidelines designed to maximize

efficiency, is contrary to the unanimous rule and practice of every court to have examined this issue.

**B.**  **Numerous Professional Associations, Including The California State Bar, Recognize That Contract Attorneys Should Be Billed At Market Rates**

There is nothing unseemly about billing professional services above cost. That is the only way law firms generate a profit. Professional associations have consistently concluded that law firms may bill a contract attorney's professional work as a legal service with a reasonable mark-up aimed at generating a profit. *See* American Bar Association Standing Committee on Ethics and Professional Responsibility, *Surcharge to Client for Use of a Contract Lawyer*, Formal Opinion 00-420, at 6 (Nov. 29, 2000) (concluding that "a lawyer may, under the Model Rules, add a surcharge on amounts paid to a contract lawyer when services provided by the contract lawyer are billed as legal services"); American Bar Association Standing Committee on Ethics and Professional Responsibility, *Temporary Lawyers*, Formal Opinion 88-356, at 7 (Dec. 16, 1988) (acknowledging that when a firm hires temporary lawyers, "[t]he fee paid by the client to the firm ordinarily would include the total paid the [temporary] lawyer and the [placement] agency, and also may include charges for overhead and profit"); State Bar of California Standing Committee on Professional Responsibility and Conduct, Formal Opinion No. 1994-138 (permitting firm to bill client for temporary attorney's legal services at rate higher than that paid to attorney); *cf. Shaffer v. Sup. Ct.*, 33 Cal.App.4th 993, 1001-02 (1995) (trial court's order that contract attorney reveal her hourly rate was improper because a law firm's "profit margin is [not] in any way relevant" to whether the fee charged to the client is "unconscionable"; the relevant question is whether the client received "services . . . which were worth, *as measured in the market place*, the [rate] charged him or her for [the attorney's] work") (emphasis in original); *PCLM Grp. v. Drexler*, 22 Cal.4th 1084, 1096-97 (2000) (holding in-house counsel could recovery reasonable attorney's fees based on prevailing market rate, rather than based on actual salary).

Other state professional associations are in accord. *See* Virginia Legal Ethics Opinion 1735 (October 20, 1999) (concluding that a firm may "bill the client for services rendered [by contract attorneys] in an amount reflecting its charge for the Attorney's services, based upon the

Attorney's experience and background, in the same manner as it would bill the client for an associate's work on the client's case"); Colorado Bar Association Ethics Committee Formal Opinion 105 (May 22, 1999); Virginia Legal Ethics Opinion 1712 (July 22, 1998) (concluding that law firms may bill services of temporary attorneys as legal services rendered, and that the amount billed "is a function of the cost of doing business including fixed and variable overheard expenses, as well as a component for profit"); District of Columbia Bar Legal Ethics Committee Opinion 284 (Sept. 15, 1990) (finding "that fees generated by a temporary lawyer are, for purposes of the disciplinary rules, equivalent to fees generated by any other lawyer in a law firm working on the client's matter" and the only requirement is that the fee billed to the client for such services be "reasonable").

Thus, the practice of charging a client for the services of a contract attorney at market rates, rather than at actual pay or cost, has been approved by the bodies tasked with formulating ethical rules governing the legal profession.

**C.** **Billing Contract Attorneys Below Cost Would Only Penalize Efficient Case Management and Cost-Saving Measures**

Courts recognize that contract and temporary attorneys are now frequently employed in litigation to help reduce overall costs to clients. *See*, *e.g.*, *In re Optical Disk Drive Prods.*, 2016 WL 7364803, at *13 (Seeborg, J.) ("Courts throughout the country have accepted the use of contract attorneys in this type of complex litigation."). Permitting contract attorneys' labor to be billed at market-rate encourages cost-effective delivery of legal services. *See*, *e.g.*, *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 784-85 (S.D. Tex. 2008) (observing that the Supreme Court's reasoning in *Missouri v. Jenkins*, 491 U.S. 274 (1989), permitting paralegals to be billed at market rate in the lodestar "applies to contract attorneys"). In contrast, as explained above, if the legal work performed by contract attorneys and supervised by full-time law firm associates and partners can be billed only below market rate, law firms will have a disincentive to rely on contract attorneys, and will instead assign the same work to higher-paid associates and partners, which ultimately results in higher costs. The Court should not adopt a rule that creates these perverse incentives.

The proposed attorney's fee guidelines contain numerous safeguards against overbilling:

- Only work authorized by Interim Class Counsel or the Court is eligible for compensation. Proposed Guidelines at 1-3.

- Limits on the number of attorneys who may participate in depositions or status conferences and other hearings. *Id.* at 3.

- Attendance at continuing education seminars may not be billed. *Id.* at 4.

- Time records regarding document review or analysis must "contain sufficient detail to allow those reviewing the time entry to generally ascertain what was reviewed" by including, e.g., "the custodian of the document, search query, and/or number of document folders reviewed." *Id.*

- Limits on which attorneys may bill time for "reviewing" Court orders and filings. *Id.*

- Exclusion of time spent reviewing e-mails and other correspondence "unless germane to a specific task being performed by the receiving or sending attorney that is directly related to that email or other correspondence and that is for the common benefit of plaintiffs." *Id.*

- Time must be recorded daily and contemporaneously, *id.* at 6, descriptions must be sufficiently detailed, *id.* at 7, block-billing is prohibited, *id.*, and all entries must be categorized according to a detailed protocol, *id.* at 7-9.

- Time records must be submitted to Interim Class Counsel on a monthly basis, and Interim Class Counsel must designate a senior attorney to collect and review those records for reasonableness each month. *Id.* at 12-13.

In addition to these protections, no fee will be provided to Plaintiffs' counsel without the Court's review and approval. Plaintiffs will provide support for the reasonableness of any fee request, and the Court will determine whether the attorney time spent on the case is justified, and whether the billing rates reflect prevailing market rates. These are decisions that should be made with the benefit of a full record.

## V.  <u>CONCLUSION</u>

For the aforementioned reasons, the Court should reconsider its order and instead require

that contract attorneys be billed at market rates.

Dated:  June 18, 2019                                 Respectfully submitted,

                                                      By: */s/ Dean M. Harvey*

                                                      Dean M. Harvey (SBN 250298)
                                                      Katherine Lubin (SBN 259826)
                                                      Adam Gitlin (SBN 317047)
                                                      Yaman Salahi (SBN 288752)
                                                      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                                      275 Battery Street, 29th Floor
                                                      San Francisco, CA 94111
                                                      Telephone: (415) 956-1000
                                                      dharvey@lchb.com
                                                      kbenson@lchb.com
                                                      agitlin@lchb.com
                                                      ysalahi@lchb.com

                                                      *Interim Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2019, I caused the foregoing to be electronically filed and served with the Clerk of the Court using the CM/ECF system to all parties of record.


DATED: June 18, 2019            */s/ Dean M. Harvey*
                                DEAN M. HARVEY
                                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP