COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
JON F. CIESLAK (268951)
(jcieslak@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:    (858) 550-6000
Facsimile:    (858) 550-6420

BEATRIZ MEJIA (190948)
(mejiab@cooley.com)
MAX SLADEK DE LA CAL (324961)
(msladekdelacal@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendants
SEAVIEW INSURANCE COMPANY
and TWO JINN, INC.

[*Additional Moving Defendants and Counsel Listed on Signature Pages*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION | Master Docket No. 19-cv-00717-JST |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: | **DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| ALL ACTIONS | |
| | Judge:              Hon. Jon S. Tigar |
| | Hearing Date:       September 18, 2019 |
| | Courtroom:          2, 4th Floor |
| | Time:               2:00 p.m. |
| | Trial Date:         Not Set |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... X

STATEMENT OF RELIEF SOUGHT ................................................................................... X

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... X

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 2

    A.      The California Bail System ............................................................................. 2

    B.      The Statutory Rate-Setting Process for Bail Bond Premiums .................... 3

    C.      Rebating of Bail Agent Commissions ............................................................ 5

    D.      The CAC's Conspiracy Allegations ............................................................... 6

    E.      Plaintiffs' Bail Transactions ........................................................................... 8

    F.      Alleged Causes of Action ................................................................................ 8

III.    ARGUMENT ............................................................................................................. 8

    A.      The Insurance Code's Comprehensive Regulatory Framework Bars the CAC as a Matter of Law ................................................................................. 9

        1.      The McCarran-Ferguson Act Bars the Sherman Act Claim .......................... 9

        2.      The State Action Doctrine Bars the Sherman Act Claim ............................. 10

        3.      The Filed Rate Doctrine Bars the Antitrust Claims ..................................... 11

        4.      The Department's Exclusive Jurisdiction Bars the California Claims ......... 13

        5.      The Noerr-Pennington Doctrine Bars the Claims ........................................ 14

    B.      The CAC Fails to State an Antitrust Conspiracy Claim ............................ 15

        1.      The CAC Fails to Allege Facts about Each Defendant ................................ 16

        2.      The CAC Lacks Sufficient Evidentiary Facts to Plead a Conspiracy .......... 17

            a.      The CAC Does Not Plead Direct Evidence of a Conspiracy ............. 18

            b.      The CAC Does Not Plead Circumstantial Evidence of a Conspiracy ........................................................................................... 19

                (1)      The CAC Fails to Plead Facts Establishing Parallel Conduct ................................................................................... 19

                (2)      The CAC Fails to Plead "Plus Factors" .............................. 20

    C.      The UCL Claim Fails as a Matter of Law ................................................... 25

    D.      The Claims Are Wholly or Partly Barred by the Statutes of Limitations ................. 27

        1.      The Statutes of Limitations Bar Claims Arising before January 29, 2015 .......................................................................................................... 27

        2.      The Barred Claims Are Not Saved by Fraudulent Concealment, the Discovery Rule, or Equitable Estoppel ................................................... 28

IV.     CONCLUSION ....................................................................................................... 30

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A White & Yellow Cab, Inc. v. Uber Techs., Inc.*,
No. 15-cv-5163, 2017 WL 1208384 (N.D. Cal. Mar. 31, 2017) ................................................26

*In re Airport Car Rental Antitrust Litig.*,
693 F.2d 84 (9th Cir. 1982) ...........................................................................................15

*In re Animation Workers Antitrust Litigation*,
87 F. Supp. 3d 1195 (N.D. Cal. 2015) .......................................................................28, 29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................9, 18, 19, 21

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007).................................................................................................. *passim*

*Blank v. Kirwan*,
39 Cal. 3d 311, 323 (1985) ...........................................................................................15

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
No. 14-cv-0751, 2015 WL 618665 (S.D. Cal. Jan. 6, 2015) .......................................22

*Brazil v. Dole Food Co.*,
935 F. Supp. 2d 947 (N.D. Cal. 2013) .........................................................................25

*Buckman v. Am. Bankers Ins. Co. of Fla.*,
924 F. Supp. 1156 (S.D. Fla. 1996) ............................................................................10

*In re Cal. Title Ins. Antitrust Litig.*,
No. 08-cv-1341, 2009 WL 1458025 (N.D. Cal. May 21, 2009)................................16, 21, 22, 25

*Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
445 U.S. 97 (1980).......................................................................................................10

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972).....................................................................................................15

*In re Capital Options, LLC*,
719 F. App'x 609 (9th Cir. 2018) ................................................................................28

*Cellular Plus, Inc. v. Super. Ct.*,
14 Cal. App. 4th 1224 (1993) ......................................................................................12

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) .................................................................................21, 24

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

**TABLE OF AUTHORITIES**
(continued)

Page

*Coppinger-Martin v. Solis.*,
  627 F.3d 745 (9th Cir. 2010) ........................................................29

*Corazon v. Aurora Loan Servs.*,
  No. 11-00542 SC, 2011 WL 1740099 (N.D. Cal. May 5, 2011)..................17

*Cty. of Tuolumne v. Sonora Cmty. Hosp.*,
  236 F.3d 1148 (9th Cir. 2001) ..................................................15, 18

*Cty. of Stanislaus v. Pac. Gas & Elec. Co.*,
  114 F.3d 858 (9th Cir. 1997) .......................................................13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  767 F.Supp.2d 880 (N.D. Ill. 2011) ...............................................12

*Dobard v. S.F. Bay Area Rapid Transit Dist.*,
  No. 92-cv-3563, 1993 WL 372256 (N.D. Cal. Sept. 7, 1993)....................29

*Donabedian v. Mercury Ins. Co.*,
  116 Cal. App. 4th 968 (2004) ......................................................14

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) ......................................................25

*Dutra v. BFI Waste Mgmt. Sys. of N. Am.*,
  No. 14-cv-4623, 2015 WL 2251203 (N.D. Cal. May 13, 2015)...................15

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961).............................................................14, 15

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ....................................................24, 25

*Ellsworth v. U.S. Bank, N.A.*,
  908 F. Supp. 2d 1063 (N.D. Cal. 2012) ...........................................13

*Feinstein v. Nettleship Co. of Los Angeles*,
  714 F.2d 928 (9th Cir. 1983) ........................................................9

*Fogel v. Farmers Grp., Inc.*,
  160 Cal. App. 4th 1403 (2008) ....................................................12

*Ford v. Hotwire, Inc.*,
  No. 07-cv-1312, 2007 WL 6235779 (S.D. Cal. Nov. 19, 2007)...................26

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

**TABLE OF AUTHORITIES**
(continued)

Page

*FTC v. Ticor Title Ins. Co.,*
   504 U.S. 621 (1992) ................................................................................................................ 11

*Garrison v. Oracle Corp.,*
   159 F. Supp. 3d 1044 (N.D. Cal. 2016) ................................................................................. 29

*In re Graphics Processing Units Antitrust Litig.,*
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................................................. 24

*Guerrero v. Gates,*
   442 F.3d 697 (9th Cir. 2006) ................................................................................................. 28

*Hexcel Corp. v. Ineos Polymers, Inc.,*
   681 F.3d 1055 (9th Cir.2012) ................................................................................................ 29

*Jablon v. Dean Witter & Co.,*
   614 F.2d 677 (9th Cir. 1980) ................................................................................................. 27

*Katt v. Ins. Bureau,*
   505 N.W.2d 37 (Mich. Ct. App. 1993) ................................................................................. 23

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ............................................................................................... 25

*Kelsey K. v. NFL Enters., LLC,*
   254 F. Supp. 3d 1140 (N.D. Cal. 2017) ................................................................................. 20

*Kendall v. Visa U.S.A., Inc.,*
   518 F.3d 1042 (9th Cir. 2008) .............................................................................. 9, 17, 18, 22

*Kent v. Lyon,*
   555 N.W.2d 106 (S.D. 1996) ................................................................................................. 23

*King v. Nat'l Gen. Ins. Co.,*
   129 F. Supp. 3d 925 (N.D. Cal. 2015) ................................................................................... 14

*Klehr v. A.O. Smith Corp.,*
   521 U.S. 179 (1997) .......................................................................................................... 27, 29

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
   232 F.3d 979 (9th Cir. 2000) ................................................................................................. 12

*Kottle v. Nw. Kidney Ctrs.,*
   146 F.3d 1056 (9th Cir. 1998) ............................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iv.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

**TABLE OF AUTHORITIES**
(continued)

Page

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ....................................................................................26

*In re Late Fee & Over-Limit Fee Litig.*,
  528 F. Supp. 2d 953 (N.D. Cal. 2007) ...................................................17, 18

*Lukovsky v. San Francisco*,
  535 F.3d 1044 (9th Cir. 2008) .........................................................................29

*MacKay v. Super. Ct.*,
  188 Cal. App. 4th 1427 (2010) ................................................................ *passim*

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998)...............................................................................12

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..........................................................................................19

*Moore v. Navarro*,
  2004 WL 783104 (N.D. Cal. Mar. 31, 2004)..................................................15

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) ................................................................. *passim*

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
  795 F.3d 1124 (9th Cir. 2015) .........................................................................18

*Norcen Energy Res. Ltd. v. Pac. Gas & Elec. Co.*,
  No. 94-cv-0911, 1994 WL 519461 (N.D. Cal. Sept. 19, 1994)...............10, 11

*O'Gorman & Young, Inc. v. Hartford Fire Ins. Co.*,
  282 U.S. 251 (1931)..........................................................................................23

*Oliver v. SD-3C LLC*,
  751 F.3d 1081 (9th Cir. 2014) .........................................................................27

*In re Optical Disk Drive Antitrust Litig.*,
  No. 10-md-2143, 2017 WL 6503743 (N.D. Cal. Dec. 18, 2017) ...................27

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
  967 F. Supp. 2d 1347 (N.D. Cal. 2013) ..........................................................15

*Pace Indus., Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) ...........................................................................29

**TABLE OF AUTHORITIES**
(continued)

Page

*Pacific Bonding Corp. v. Garamendi*,
No. GIC815786 (Cal. Super. Ct. Feb. 24, 2004) ...................................................3, 5, 6

*Parker v. Brown*,
317 U.S. 341 (1943)..........................................................................................................10

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
No. 15-cv-1749, 2016 WL 4574357 (S.D. Cal. July 14, 2016)......................................20

*Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*,
No. 11-cv-2652, 2013 WL 3873074 (S.D. Cal. July 25, 2013)......................................17

*Quality Auto Body, Inc. v. Allstate Ins. Co.*,
660 F.2d 1195 (7th Cir. 1981) .......................................................................................20

*Rheumatology Diagnostics Lab., Inc. v. Aetna*,
No. 12-cv-5847, 2013 WL 3242245 (N.D. Cal. June 25, 2013)......................................9

*Rothstein v. Balboa Ins. Co.*,
794 F.3d 256 (2d Cir. 2015)............................................................................................12

*Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868 (N.D. Cal. 2015) ..........................................................................29

*In re Sagent Tech., Inc., Derivative Litig.*,
278 F. Supp. 2d 1079 (N.D. Cal. 2003) .........................................................................17

*SC Manufactured Homes, Inc. v. Liebert*,
162 Cal. App. 4th 68 (2008) ..........................................................................................25

*Sedoy v. Provine*,
No 15-cv-2168, 2017 WL 744024 (D. Colo. Feb. 27, 2017).........................................26

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................................................................................18, 19

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
No. 09-cv-0560, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) .....................................17

*State Oil Co. v. Kahn*,
522 U.S. 3 (1997)............................................................................................................12

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622, 628 (7th Cir. 2010) .................................................................................18

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

vi.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

**TABLE OF AUTHORITIES**
(continued)

Page

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) .........................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2012 WL 4466576 (N.D. Cal. Sept. 26, 2012) ...................................28

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
   552 F.3d 430 (6th Cir. 2008) .........................................................16

*Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*,
   295 F.3d 918 (9th Cir. 2002) .........................................................12

*In re Transpac. Passenger Air Transp.Antitrust Litig.*,
   69 F. Supp. 3d 940 (N.D. Cal. 2014) .........................................................13

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657 (1965).........................................................15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .........................................................25

*Wah Chang v. Duke Energy Trading & Mktg., LLC*,
   507 F.3d 1222 (9th Cir. 2007) .....................................................11, 12

*Wahl v. Am. Sec. Ins. Co.*,
   No. 08-cv-0555, 2010 WL 4509814 (N.D. Cal. Nov. 1, 2010) ...................................14

*Walker v. Allstate Indem. Co.*,
   77 Cal. App. 4th 750 (2000) .........................................................14

*Wegoland Ltd. v. NYNEX Corp.*,
   27 F.3d 17 (2d Cir. 1994) .........................................................12

**Statutes**

15 U.S.C.
   § 1.........................................................8
   § 1011.........................................................9
   § 1012.........................................................9
   § 1013.........................................................1, 9, 10
   § 1014.........................................................9
   § 1015.........................................................9

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

vii.

**DEFENDANTS' JOINT MOTION TO DISMISS**
**MASTER DOCKET NO. 19-CV-00717 (JST)**

**TABLE OF AUTHORITIES**
(continued)

Page

Cal. Ins. Code
§ 105................................................................................................................9, 10
§ 1858.......................................................................................................................5
§ 1858.3....................................................................................................................5
§ 1858.6....................................................................................................................5
§ 1860.................................................................................................................13, 14
§ 1861.01.................................................................................................................5
§ 1861.05....................................................................................................3, 4, 5, 14
§ 1861.03................................................................................................................13
§ 12122...................................................................................................................23
§ 12404...................................................................................................................23
§ 12405...................................................................................................................23
§ 12640.13..............................................................................................................23

Cal. Penal Code § 1269b(c) ...................................................................................2

Cal. Bus. & Prof. Code
§ 16720....................................................................................................................8
§ 17200....................................................................................................................8

Cal. Pub. Util. Code § 739.6 .................................................................................11

**Other Authorities**

Federal Rule of Civil Procedure
8.............................................................................................................................16
9........................................................................................................................2, 25
12................................................................................................................8, 9, 27

10 C.C.R.
§ 2054.4.................................................................................................................26
§ 2642.3...............................................................................................................4, 5

Alaska Admin. Code tit. 3, § 23.790......................................................................23

Ariz. Admin Code § R20-6-601.............................................................................23

Ark. Code Ann. § 17-19-105 .................................................................................23

Commissioner Dave Jones, *An Exploration of California's Bail System*, Cal. Dep't of
Ins. (Jan. 31, 2017)...........................................................................................3, 6

Tracy A. Bateman, Annotation, *Insurance Anti-Rebate Statutes: Validity &
Construction*, 90 A.L.R. 4th 213 (1991) ...........................................................23

Cooley LLP
Attorneys At Law
San Diego

viii.

Defendants' Joint Motion to Dismiss
Master Docket No. 19-cv-00717 (JST)

1

## TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3

Fed. Trade Comm'n & U.S. Dep't of Justice, *Antitrust Guidelines for Collaborations Among Competitors* (Apr. 2000).................................................................................................21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ix.

**DEFENDANTS' JOINT MOTION TO DISMISS**
**MASTER DOCKET NO. 19-CV-00717 (JST)**

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3    **PLEASE TAKE NOTICE** that on September 18, 2019 at 2:00 p.m., or as soon thereafter as

4    the matter may be heard, in the courtroom of Honorable Jon S. Tigar, United States District Judge,

5    Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 2, 4th

6    floor, the undersigned Defendants will, and hereby do, move the Court for an order dismissing

7    Plaintiffs' Consolidated Amended Class Action Complaint (ECF No. 46) (the "CAC") with prejudice.

8    This motion is made pursuant to Federal Rule of Civil Procedure 12(b) and is based on this

9    Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the

10   pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and

11   argument as may be presented in connection with the hearing of the motion.

12

## STATEMENT OF RELIEF SOUGHT

13   Defendants seek an order dismissing with prejudice the CAC in its entirety.

14

## STATEMENT OF ISSUES TO BE DECIDED

15   1.      Whether the CAC should be dismissed under the McCarran-Ferguson Act, the State

16   Action doctrine, the filed rate doctrine, and the provisions of the California Insurance Code because it

17   attacks the "business of insurance," challenges rates approved by the California Department of

18   Insurance, and falls within the Department's exclusive jurisdiction under the Code's regulatory

19   framework.

20   2.      Whether the CAC's federal and state antitrust claims should be dismissed for failing to

21   plausibly allege an illegal agreement between and/or among Defendants.

22   3.      Whether the Unfair Competition Law ("UCL") claim should be dismissed for failure to

23   state a claim upon which relief can be granted.

24   4.      Whether the claims in the CAC are barred by the statute of limitations in whole or in

25   part.

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The CAC tries to state a claim that Defendants engaged in some ill-defined antitrust conspiracy to fix bail bond premium rates in California.  Plaintiffs are two purchasers of bail bonds, while Defendants are bail agents that sell bonds, sureties that issue bonds, associations of bail agents, or individuals.  Not only is the purported "conspiracy" vague and inconsistent, the alleged conduct also falls squarely outside the Court's jurisdiction under multiple doctrines.  None of the claims succeeds, and no amount of re-pleading can cure their inherent defects.

The CAC seeks extraordinary relief that would make this Court California's bail bond insurance regulator.  Bail bond premium rates are part of the business of insurance regulated by the California Department of Insurance ("Department" or "CDI"), which approves bail bond premium rates through an exclusive, rigorous, and transparent process governed by the California Insurance Code.  Sureties cannot—ever—charge a rate that deviates above or below the CDI-approved rate.  The CAC, however, seeks to substitute the Court's judgment to determine what rate CDI should have approved.  There is no relief that this Court can order to re-set bail bond premium rates without transgressing upon CDI's jurisdiction.  Given this context, the CAC cannot proceed because:

(a)    the McCarran-Ferguson Act bars the Sherman Act claim;

(b)    the "State Action" doctrine bars the Sherman Act claim;

(c)    the "filed rate" doctrine bars the Sherman Act and Cartwright Act claims;

(d)    CDI has exclusive jurisdiction over the California claims; and

(e)    the *Noerr-Pennington* doctrine bars any claim that Defendants have conspired in approaching CDI to set uniform rates.

The CAC also fails to plead evidentiary facts sufficient to support a plausible conspiracy claim. The CAC alleges no acts by any Defendant in support of the conspiracy claims—whatever the CAC means to claim was the actual "conspiracy."  There are no *factual* allegations of an agreement among Defendants that are sureties, among sureties and Defendants that are bail agents, or among Defendants that are bail agents and other bail agents (or anything else).  The allegations merely lump Defendants together in a conclusory fashion without attributing any actionable facts to any particular Defendant.

The CAC's core allegation that Defendants have somehow conspired to prevent "rebates" or "discounts" off the net price of a bond is equally unavailing.  Not only does it lack factual support, it is inherently implausible because the vast majority of the Defendants are sureties and none of them would benefit economically by preventing rebating, as the premiums they receive are fixed by the CDI.  Further, the statements that the CAC characterizes as acts of "concealment" are nothing of the sort and, in any event, are not attributable to any Defendant or any "agreement" among anyone identified in the CAC.  In short, there are *no* factual allegations of a "conspiracy" to bar discounting.

The UCL claim—which is predicated on the same insufficiently pled antitrust conspiracy—should be dismissed for the same reasons.  To the extent the UCL claim is based on false advertising, it fails to satisfy Rule 9(b) and the CAC fails to plead Plaintiffs' reliance on any of the allegedly false statements.

Finally, the claims are barred in part for all Defendants, and in whole for some Defendants, by the applicable four-year statute of limitations.  No tolling or other savings doctrine applies.

Defendants respectfully request that the Court dismiss the CAC with prejudice.

## II.     FACTUAL BACKGROUND

### A.     The California Bail System

Bail in California is set through uniform schedules by state criminal courts on a county-by-county basis.  As the Penal Code provides:  "It is the duty of the superior court judges in each county to prepare, adopt, and annually revise a uniform countywide schedule of bail for all bailable felony offenses and for all misdemeanor and infraction offenses . . . ."  Cal. Penal Code § 1269b(c).  Where the accused cannot personally post the collateral necessary to secure bail, the accused can post bail by purchasing a bail bond from a licensed bail bond agent.  As the Department's website explains:

> A bail bond is a surety bond, which is posted by a bail bond company to the court as a guarantee for an arrestee's appearance at all court dates. The court will release an arrestee from detention upon posting of the bail bond. Bail bonds are underwritten and issued by licensed bail agents[,] which act as the appointed representatives of licensed surety insurance companies.

Cal. Dep't of Ins., Bail Bonds, http://www.insurance.ca.gov/01-consumers/170-bail-bonds/ (last visited Jul. 12, 2019).

Defendants All-Pro Bail Bonds Inc. and Two Jinn, Inc. are two of over 3,000 bail agents in California.  (¶¶ 37, 38, 112.)[1]  The fee paid by bail bond purchasers is a "premium," and is established by the statutory process described in the subsection below.  (¶ 2.)  Bail agents and bail bond purchasers negotiate certain terms, such as the amount of the down payment, the schedule for installment payments, and whether any collateral is required.  (*See* ¶¶ 57, 95.)   After a bail bond purchase, the bail agent posts the bond in court and the defendant is released from custody.  (¶ 57.)  If the defendant fails to appear in court, the bail agent forfeits the bail bond to the court.  *See* Commissioner Dave Jones, *An Exploration of California's Bail System*, Cal. Dep't of Ins., at 1 (Jan. 31, 2017), *available at*   http://www.insurance.ca.gov/0400-news/0100-pressreleases/archives/upload/California-Department-of-Insurance-An-Exploration-of-California-s-Bail-System-Overview-1-13-17.pdf.

Twenty-three named Defendants are sureties.  (¶¶ 13-35.)  Sureties are insurance companies, and some Defendants sell other types of insurance in addition to bail bonds.  (¶ 62.)  Sureties provide financial backing ensuring that, if a defendant fails to appear or violates the terms of release, the full bail amount is forfeited to the court even if the bail agent is insolvent or cannot otherwise forfeit the full amount of the bail bond.  (*See* ¶ 63.)  The sureties receive the premium paid by the purchaser, less a commission to the bail agents as compensation for their services. *See Pacific Bonding Corp. v. Garamendi*, No. GIC815786, at *2-3 (Cal. Super. Ct. Feb. 24, 2004).[2]

Three Defendants are non-profit trade associations that lobby on behalf of companies involved in bail systems.  (¶¶ 40-42.)  The two individual Defendants are each allegedly connected to bail agent associations and some of the surety Defendants.

**B.**     **The Statutory Rate-Setting Process for Bail Bond Premiums**

As with all insurance products, California bail bonds are regulated by the Department.  (¶¶ 58-59.)  The bail bond premium rates that sureties charge are set through a mandatory process established by the Insurance Code and overseen by the Department and its Commissioner.  *See* Cal. Ins. Code § 1861.05.  The Department's website generally describes how the bail process works, beginning with the setting of the premium rates:

---

[1] All paragraph citations are to the CAC at ECF No. 46.  All emphasis is added unless otherwise noted.
[2] See Defendants' Request for Judicial Notice (ECF No. 57) filed concurrently herewith.

*Bail Bond Surety Companies*
CDI's Rate Regulation Branch determines whether bail premium rates charged to consumers in California are fair. Each surety company must file rates with CDI and bail agents representing a surety must charge the same filed rates. The court determines the amount of the bond, and the cost to the consumer is most commonly ten percent of the total amount of the bond, plus actual, necessary, and reasonable expenses incurred in connection with the transaction.

Cal. Dep't of Ins., Bail Bonds, http://www.insurance.ca.gov/01-consumers/170-bail-bonds/ (last visited Jul. 12, 2019).

The Insurance Code and accompanying regulations specify the process by which the Department approves bail bond premium rates: "(1) an insurer who desires to change [or set] a rate files a rate plan application with the [C]ommissioner (Cal. Ins. Code § 1861.05(b)); (2) the [C]ommissioner gives notice to the public of the application (Cal. Ins. Code § 1861.05(c)); (3) a consumer may request a public hearing, or the [C]ommissioner may decide on this or her own motion to hold one [*id.*]; and (4) the rate is deemed approved unless the [C]ommissioner disapproves it [*id.*]." *MacKay v. Super. Ct.,* 188 Cal. App. 4th 1427, 1440 (2010).

The surety must file comprehensive and detailed information with the Department when submitting a rate application. The process for approving the rate requires the Commissioner to consider not only whether the rate is *excessive*, but also whether it is *inadequate* (it is inherent in insurance regulation that insurers must have resources to pay claims). The Insurance Code states:

> No rate shall be approved or remain in effect which is *excessive*, *inadequate*, unfairly discriminatory or otherwise in violation of this chapter. In considering whether a rate is excessive, inadequate or unfairly discriminatory, no consideration shall be given to the degree of competition and the commissioner shall consider whether the rate mathematically reflects the insurance company's investment income.

Cal. Ins. Code § 1861.05(a) (emphasis added).

An "adequate" rate thus is neither too high nor too low. By contrast, an "inadequate" rate is one "under which a reasonably efficient insurer is not expected to have the opportunity to earn a fair return on the investment that is used to provide the insurance." 10 C.C.R. § 2642.3. To determine whether a rate is inadequate, "the Commissioner shall consider the competing interests of consumers in lower prices and of investors in prices that yield high returns, and the Commissioner shall consider

that insurance is imbued with the public interest and sometimes legally required." *Id.*  The Insurance Code thus requires consideration that the rate be sufficiently *high* just as it requires consideration that it be sufficiently *low*—and the resulting rate is binding.  *Id.*[3]

Once the Department approves a rate, a surety *must* charge that rate.  *MacKay*, 188 Cal. App. 4th at 1449 n.18 ("once a rating plan has been approved, the insurer may charge no other rate").  If a surety were to charge any other rate, even a lower rate, it would violate the Insurance Code's edict that "[i]nsurance rates subject to this chapter [including bail bond premiums] must be approved by the commissioner prior to their use."  Cal. Ins. Code § 1861.01(c).  To charge a different rate, a surety would need to undertake the same approval process with CDI.  Cal. Ins. Code § 1861.05(b).

"After a rate has been approved by the commissioner, it is still possible for an insured to challenge it."  *MacKay*, 188 Cal. App. 4th at 1440.  The Insurance Code provides an adversarial process for an "aggrieved person" to file a written complaint requesting that the Commissioner "review the manner in which the rate, plan, system, or rule has been applied with respect to the insurance often afforded to that person.  The aggrieved person may also file a written request for a public hearing before the commissioner."  Cal. Ins. Code § 1858(a).  "If, after a hearing, the commissioner finds a violation, the commissioner shall order that the insurer discontinue the violating practice, and may also order necessary and proper corrective action."  *MacKay*, 188 Cal. App. 4th at 1441 (citing Cal. Ins. Code § 1858.3(a)).  Courts may review "[a]ny finding, determination, rule, ruling or order made by the commissioner."  Cal. Ins. Code § 1858.6.

## C.    Rebating of Bail Agent Commissions

While *sureties* must charge the approved premiums, *bail agents* do have the right to "rebate" a portion of their commission (not the premium itself) to bail bond purchasers.  (¶ 67 (citing *Pacific Bonding Corp. v. Garamendi*, No. GIC815786 ( Cal. Super. Ct. Feb. 24, 2004).)  This results in a bail

---

[3] The Department's website provides a sense of the breadth of its regulatory purview, including its nearly 1,400 employees, the number of companies it oversees, the number of brokers and other entities it licenses, the number of rate applications it oversees, and the incredible number of complaints, examinations, and investigations it handles.  *See* Cal. Dep't of Ins., About the Dep't, http://www.insurance.ca.gov/0500-about-us/02-department/ (last visited Jul. 12, 2019).  CDI is the expert agency that has been assigned to perform the task that the CAC effectively asks this Court to undertake.

bond purchaser effectively paying less for a bond, but it is not a reduction of the approved premium. It is a decision by the agent to share its *commission* with the purchaser.  *See Pacific Bonding*, No. GIC815786, at *2-3.  The lawfulness of rebating by bail agents in California since *Garamendi* is no secret.  It is expressly announced on the Department's website:

> *Is bail "rebating" legal?*
> Yes.  A bail agent may choose to negotiate a lower fee by rebating, as allowed by Proposition 103.  Please see the 2004 Superior Court Case *Pacific Bonding Corporation vs. John Garamendi*.

Cal. Dep't of Ins., Bail Bonds, http://www.insurance.ca.gov/01-consumers/170-bail-bonds/ (last visited Jul. 12, 2019).  The Insurance Commissioner has publicly commented on rebating.  *See* Commissioner Dave Jones, *An Exploration of California's Bail System*, Cal. Dep't of Ins., at 1 (Jan. 31, 2017) ("to become more competitive, a bail agent may choose to negotiate a lower fee by rebating . . . by calculating a lower fee percentage as a 'rebate' back to the bailee").  Rebating also has been covered by major news outlets.  *See* Peter Kerr, *Insurers Cited on Barring Rebates*, N.Y. Times, Mar. 26, 1993, at D1 (discussing CDI action against insurers for ceasing business with life agent for offering rebates).

### D.   The CAC's Conspiracy Allegations

The CAC references "a long-running conspiracy to inflate the prices of bail bonds" in California.  (¶ 1.)  It does not describe the alleged conspiracy in consistent terms, but it suggests the conspiracy may have had one or more of the following three aims:  (i)  "to fix default premiums at 10%" (¶ 122), or perhaps just to fix "*advertised* premiums for commercial bail bonds at 10% of the bond" (¶ 139); (ii) to restrain competition "in the offering of rebates or discounts from the maximum filed rate," (¶ 127); and (iii) to falsely advertise approved premium rates "as the minimum price of bail bonds" and "that rebates or discounts were unlawful."  (¶ 140.)

But the CAC contains few factual allegations pertaining to conduct by any Defendant.  It includes no facts about any meeting or communications among the Defendants regarding premiums, rebates, or advertising.  It states only that the "Surety Defendants . . . have nearly uniformly filed for a default premium rate of 10 percent of the posted bond, with an 8 percent maximum for consumers who meet enumerated and nearly identical criteria . . . ." (¶ 61.)  It does not state facts specifying any

particular Defendant's approved rates, or identify what rates fell outside of the "*nearly* uniform[]" ones. The CAC also includes a conclusory statement that "Defendants have agreed . . . generally to refrain from offering competitive rebates." (¶ 68.) But again, it includes nothing about any particular Defendant's rebating practices or what exceptions there were to the alleged "general[]" agreement.

As for advertising, the CAC states "Defendants have agreed to advertise only the default Maximum Rate [and] to conceal their ability to charge a lower effective rate through rebating." (¶ 68.) It includes a few supposed examples of bail agents advertising a 10% premium rate or of bail agents stating that lower rates are illegal, but it attributes these statements to bail agents who are not defendants. (¶¶ 93 (Quick Bail Bonds Covina), 94 (Padilla Bail Bonds), 95 (888 Bail Bonds), 96 (Bad Boys Bail Bonds), 97 (All American Bail Bonds), 98 (Almighty Bail Bonds), 99 (Family Bail Bonds), 100 (WAVE Bail Bonds).) The only potential connection these paragraphs have to any Defendants is the unsupported allegation that these statements were made "on behalf of [the bail agent's] surety."

The CAC includes a few other conclusory allegations about some "conspiracy," but fails to tie them to any Defendant. It has a section entitled "Defendants Have Enlisted or Created Industry Associations to Enforce Their Conspiracy." (CAC at 16.) This section includes true statements by the CBAA about maximum premium rates (¶ 83), references information on premiums maintained by CBAA (¶ 84), and vaguely alludes to "cooperation" and a "common interest" among bail agency associations" (¶¶ 85, 87). The CAC also pronounces that "Defendants Have Used Bail Agent Training Courses to Enforce Cartel Pricing." (CAC at 17.) But it only identifies two examples where training courses criticized rebating, which it does not attribute to any Defendant. (¶¶ 88, 90.) Next, the CAC claims "Defendants Have Maintained Their Conspiracy by Punishing Undercutting." (CAC at 20.) But two examples are merely generalized criticisms of "premium discounting" without context (¶¶ 104, 106), and another is simply a vague statement attributed to an unrelated third-party, "Chad the Bail Guy," about "pressure from a 'good ol boys club,' which 'came after [his] license for trying to save clients' money" (¶ 105).

The CAC also references supposed economic information for the bail industry. The CAC alleges that "[n]ear-universal adherence to the 10% rule by thousands of California bail agents would be surprising without a conspiracy among the sureties that are licensed to sell commercial bail bonds

1   in the state." (¶ 116.)  In addition, the CAC states that "[t]he California bail bonds market as a whole

2   exhibits an extremely low loss ratio" and "[t]he lower the loss ratio, the higher the profit margins, and

3   the less competitive the market is likely to be."  (¶¶ 62, 63.)

4     Despite the CAC's extensive focus on bail bond premiums, it barely addresses the Department

5   and its role.  The CAC simply acknowledges "sureties must file a rate application with the California

6   Department of Insurance" and that the "Surety Defendants have made the requisite filing [and]

7   received approval . . . ."  (¶ 58.)  Notwithstanding CDI's regulation, the CAC posits that "market

8   pressures" and "economic theory" would result in lower bail bond premiums but for the alleged

9   conspiracy.  (¶¶ 115, 116.)  It says little about the complex regulatory framework for bail bond

10  premium rate setting, and it fails to address the impact of one on the other in any way.

11    **E.** **Plaintiffs' Bail Transactions**

12    Plaintiffs allege little about their own experiences with the California bail system.  Plaintiff

13  Shonetta Crain allegedly purchased a bail bond from Defendant All-Pro Bail Bonds Inc. in 2016 on

14  behalf of a relative.  (¶ 11.)  Plaintiff Kira Serna allegedly purchased a bail bond from Defendant Two

15  Jinn, Inc. in 2016 on behalf of herself.  (¶ 12.)  Neither Plaintiff alleges what premium rate she paid

16  for her bail bond, whether she requested (or received) a rebate of her premium, or whether she saw or

17  relied on any of the allegedly false advertisements.  (*See* ¶¶ 11, 12.)

18    **F.** **Alleged Causes of Action**

19    Count I alleges Defendants conspired in violation of the Sherman Act, 15 U.S.C. § 1; Count II

20  that they conspired in violation of the California Business & Professions Code § 16720 (the

21  "Cartwright Act"); and Count III that they conspired in violation of the California Business &

22  Professions Code § 17200 (the "UCL").  The CAC seeks money damages for "hundreds of thousands

23  of Californians" who have allegedly overpaid for bail bond premiums and injunctive relief to prevent

24  future overpricing of bail bond premiums.  (¶ 6.)  Implicit in the CAC is that it seeks this Court to

25  review each bail bond price for each criminal defendant in California since 2004.

26  **III. ARGUMENT**

27    Dismissal of a complaint is appropriate under Rule 12(b)(1) when the court lacks subject matter

28  jurisdiction over the claims.  Rule 12(b)(6) requires dismissal of complaints that "fail to state a claim

upon which relief may be granted."[4]   To survive a Rule 12(b)(6) motion, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation and citation omitted); *see also Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-5847, 2013 WL 3242245, at *6 (N.D. Cal. June 25, 2013) (Tigar, J.) ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Such specificity is particularly important in antitrust cases, where discovery "frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

## A.   The Insurance Code's Comprehensive Regulatory Framework Bars the CAC as a Matter of Law

### 1.   The McCarran-Ferguson Act Bars the Sherman Act Claim

The McCarran-Ferguson Act exempts from federal antitrust laws all conduct that (i) is part of the "business of insurance," (ii) is regulated by state law, and (iii) is not a "boycott, coercion, or intimidation." *See* 15 U.S.C. §§ 1011-1015; *Feinstein v. Nettleship Co. of Los Angeles*, 714 F.2d 928, 931 (9th Cir. 1983).  On the third factor, antitrust plaintiffs must show not only that they have suffered the effects of a boycott, coercion, or intimidation, but also that the complained-of activity constitutes a violation of the antitrust laws in the first place. *See Feinstein*, 714 F.2d at 931. The CAC's allegations fall squarely within each of these factors, confirming that the McCarran-Ferguson Act bars this suit.

First, the alleged conduct is within the "business of insurance."   The CAC centers on the activity of the bail bond surety marketplace and asserts that the approved rates are too high for criminal defendants to pay.  Critically, however, the Insurance Code covers "surety" insurance, which it defines as "[t]he guaranteeing of behavior of persons and the guaranteeing of performance of contracts (including executing or guaranteeing bonds and undertakings required or permitted in all actions or

---

[4] The McCarran-Ferguson Act and the "filed rate" doctrine involve subject matter jurisdiction, although some courts have dismissed claims based on these arguments applying Rule 12(b)(6).

proceedings or by law allowed), other than insurance policies and other than for payments secured by a mortgage, deed of trust, or other instrument constituting a lien or charge on real estate." Cal. Ins. Code § 105(a). Transactions whereby parties arrange for bail agents to post criminal bonds insured or underwritten by the sureties thus constitute the "business of insurance." *See Buckman v. Am. Bankers Ins. Co. of Fla.*, 924 F. Supp. 1156, 1157-58 (S.D. Fla. 1996) ("Defendants argue that the transaction at issue—whereby Plaintiff arranged for Defendant Ace to post a criminal bail bond insured by Defendant American Bankers for her daughter—is 'the business of insurance.' This Court agrees.").

Second, as discussed, the bail bond industry is subject to an extensive regulatory scheme. (*See supra* Section II.B.) The Department has comprehensive jurisdiction over all rating practices of insurers, which grants it broad rate-setting, investigatory, and enforcement powers. (*Id.*) Thus, there is no base of "market" forces that could have operated here absent the supposed conspiracy. (¶¶ 115, 116.) The business of insurance in California is heavily regulated by California state law.

Third, no exception to the McCarran-Ferguson Act exemption applies. The CAC does not allege any "boycott, coercion, or intimidation" in the California bail industry within Section 1013(b) of the McCarran-Ferguson Act, or anything else of the kind that would violate the antitrust laws.

## 2. The State Action Doctrine Bars the Sherman Act Claim

The Sherman Act claim fails for largely the same reasons under the "State Action" doctrine originating in *Parker v. Brown*, 317 U.S. 341 (1943). Private parties are immune from Sherman Act claims where (i) "the challenged restraint [is] one clearly articulated and affirmatively expressed as state policy," and (ii) "the policy [is] actively supervised by the State itself." *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980) (internal quotation and citations omitted); *Norcen Energy Res. Ltd. v. Pac. Gas & Elec. Co.*, No. 94-cv-0911, 1994 WL 519461, at *8 (N.D. Cal. Sept. 19, 1994). Both prongs of the test are satisfied here. The uniformity in bail bond pricing that Plaintiffs challenge flows directly from the Department's statutorily-mandated rate-setting process detailed above that results in premium rates that sureties cannot alter.

The Insurance Code entrusts the Department with regulating bail bond premium rates and approving those rates through a rigorous, transparent, and sometimes adversarial process. There is no "free market" in bail bond premium rate approvals. The premium is always established through a

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

regulatory process and may not deviate from the result of that process.  Premium rates thus are the result of a "clearly articulated and affirmatively expressed" state policy that displaces competition over premium rates with CDI-approved rates.  This is precisely what the court recognized in *Norcen Energy*, where the California Public Utilities Code displaced competition with regulation by leaving rate determination to the California Public Utilities Commission's ("CPUC") discretion.  1994 WL 519461, at *9 (quoting Cal. Pub. Util. Code § 739.6 ("[t]he [CPUC] shall establish rates using cost allocation principles that fairly and reasonably assign to different customer classes the costs of providing service to those customer classes, consistent with the policies of affordability and conservation")).  These parallels to the Insurance Code and the Department's approval process for bail bond premium rates demonstrate that Plaintiffs' claims should be dismissed.

The "active supervision" aspect of the doctrine aims "to determine whether the State has exercised sufficient independent judgment and control so that the details of the rates or prices have been established as a product of deliberate state intervention." *Id.* (quoting *FTC v. Ticor Title Insurance Co.*, 504 U.S. 621, 634-35 (1992)).  The Department's active role in approving premium rates amply satisfies this requirement, as it is considerably more thorough than the CPUC's rate approval process deemed sufficient in *Norcen Energy*.  *Id.* (finding "CPUC's thorough consideration and reconsideration of the . . . postage stamp rates amply demonstrates the state's active role" and citing cases holding that "approval" and "reaffirmation" of rates meets the test).  The Department considers bail bond premium rate applications, approves rates it deems adequate and reasonable, and then requires adherence to those rates.  (*See supra* Section II.B.)  The Sherman Act claim thus challenges conduct squarely within the province of the California Department of Insurance and cannot proceed.

### 3.     The Filed Rate Doctrine Bars the Antitrust Claims

The "filed rate" doctrine is a judge-made prudential doctrine pursuant to which "rates duly adopted by a regulatory agency are not subject to collateral attack in court."  *MacKay*, 188 Cal. App. 4th at 1448.  The doctrine "provides that state law, and some federal law (e.g. antitrust law), may not be used to invalidate a filed rate nor to assume a rate would be charged other than the rate adopted" by the agency in question.  *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

(9th Cir. 2007) (quoting *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 929-30 (9th Cir. 2002)).  "Simply stated, [the filed rate] doctrine holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers."  *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994).  "[B]y deciding what rates are reasonable, or determining a hypothetically reasonable rate for the purposes of calculating damages, courts would interfere with the regulatory agency's ratemaking authority."  *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 893 (N.D. Ill. 2011) (citation omitted).  The filed rate doctrine

> 'prevents more than judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority.'  Thus, a claim may be barred even if it can be characterized as challenging something other than the rate itself. . . . The filed rate doctrine is not limited to transactions in which the ratepayer deals directly with the rate filer.  The doctrine operates notwithstanding an intermediary that passes along the rate.

*Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 262, 264 (2d Cir. 2015) (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 61 (2d Cir. 1998)).

In the context of rates approved under the Insurance Code, the California Court of Appeals has unequivocally held that the filed rate doctrine bars suits like this one.[5]  *See MacKay*, 188 Cal. App. 4th at 1448.  The court recognized in *MacKay* that the comprehensive nature of the Department's regulatory processes concerning rates under the Insurance Code confirmed that the filed rate doctrine would bar claims under California law seeking to challenge insurance rates under other theories.  *Id.*

The CAC provides a hornbook case for the doctrine's application.  It is premised on an alleged conspiracy to keep default premiums fixed at the very rate the regulator approved and to prevent discounting or rebating as much as possible that would effectively reduce that rate to a supposedly more appropriate "free market" level (i.e., something other than the regulatory-approved rate).  Antitrust claims challenge supposed restraints of trade as "unreasonable"—that is the very nature of the cause of action.  *State Oil Co. v. Kahn*, 522 U.S. 3, 10 (1997) (citations omitted).  The CAC thus

---

[5] Prior decisions from California state courts and federal courts had found reasons not to apply the doctrine to other California statutes, especially where there were no policy grounds to invoke it.  *See, e.g., Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 993 (9th Cir. 2000); *Fogel v. Farmers Grp., Inc.*, 160 Cal. App. 4th 1403, 1418 (2008); *Cellular Plus, Inc. v. Super. Ct.*, 14 Cal. App. 4th 1224, 1241-42 (1993).  *MacKay* came later and more plainly applies to claims related to the Insurance Code.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

asks this Court to find that Defendants are charging rates that are "unreasonable"—yet the Department already determined that the premium rates were neither "excessive" nor "inadequate" through the comprehensive approval process under the Insurance Code.  Accordingly, the CAC asks the Court to make a determination separate from the expert regulator as to what constitutes the appropriate rate, which is precisely what courts refuse to do.  *See In re Transpac. Passenger Air Transp. Antitrust Litig.*, 69 F. Supp. 3d 940, 964 (N.D. Cal. 2014), *aff'd and remanded sub nom. Wortman v. All Nippon Airways*, 854 F.3d 606 (9th Cir. 2017); *Cty. of Stanislaus v. Pac. Gas & Elec. Co.,* 114 F.3d 858, 863 (9th Cir. 1997) (courts may not entertain damage claims that assume a hypothetical rate different from the filed rate).  The claims therefore may not proceed.

### 4.     The Department's Exclusive Jurisdiction Bars the California Claims

The Insurance Code vests exclusive jurisdiction over the setting of bail bond premium rates with CDI.  *See* Cal. Ins. Code § 1860, *et seq.*  The nature of this exclusive jurisdiction stems from two provisions of the Insurance Code.  Section 1860.1 of the Insurance Code states that "[n]o act done . . . pursuant to the authority conferred *by this chapter* [the Insurance Code] shall constitute a violation of or grounds for prosecution of civil proceedings under any law of this State heretofore or hereafter enacted *which does not specifically refer to insurance*."  Cal. Ins. Code § 1860.1.  Section 1861.03(a) of the Insurance Code then provides that "[t]he business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to . . . the antitrust and unfair business practices laws." Cal. Ins. Code § 1861.03(a).  While these provisions might seem in tension, courts have reconciled them in a way that confirms this Court has no jurisdiction over the Cartwright Act and UCL claims.

Taking the two provisions together, courts in this District and the California Court of Appeal have found that "challenges to *the reasonableness of an approved rate* fall within the exclusive ambit of the chapter and are exempt from the requirements of other laws."  *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1082 (N.D. Cal. 2012) (internal quotation and citation omitted) (emphasis added); *accord MacKay*, 188 Cal. App. 4th at 1448 ("Insurance Code section 1860.1 precludes a challenge to an approved rate brought under laws outside the Insurance Code"); *Walker v. Allstate Indem. Co.*, 77 Cal. App. 4th 750, 755 (2000) (Section 1860.1 has "been interpreted to provide exclusive original

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

**DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)**

jurisdiction over issues related to rate-making to the commissioner") (citations omitted); *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968, 977-78 (2004) (acknowledging actions challenging the Department's ratemaking authority fall within the Commissioner's exclusive jurisdiction because of Section 1860.1); *Wahl v. Am. Sec. Ins. Co.*, No. 08-cv-0555, 2010 WL 4509814, at *2 (N.D. Cal. Nov. 1, 2010) (same).  Other laws—like "unfair business practices laws"—thus apply only to the extent they have no bearing on the reasonableness of an approved rate.

The key question, then, is whether the CAC challenges the reasonableness of Defendants' approved rates.  It does.  The premise of the CAC is that Plaintiffs allegedly paid rates that were too high and would have been lower if based on appropriate free market conditions.  (*See* ¶ 6 ("[t]his class action seeks damages for the hundreds of thousands of Californians who have overpaid for unlawfully inflated bail bond premiums").)  Plaintiffs' position is thus necessarily that the Department erred in its assessment that the approved premium rates are neither "excessive" nor "inadequate."  *See* Cal. Ins. Code § 1861.05(a).  For the Court to adjudicate what rate should have applied in any given instance, it would need to determine (for each bond) what would be the proper "free market" rate.  Conducting that inquiry would amount to a frontal attack on the previously approved rate and would turn this Court into the regulator.   Accordingly, Section 1860.1 bars these types of challenges.  *See, e.g.*, *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 935 (N.D. Cal. 2015) (dismissing putative action challenging allegedly excess premiums that were authorized by CDI) (citing *Walker*, 77 Cal. App. 4th at 760).  As Plaintiffs similarly attempt to "recoup premiums charged pursuant to approved rates," *Walker*, 77 Cal. App. 4th at 760, their claims should be dismissed.

### 5.      The Noerr-Pennington Doctrine Bars the Claims

As noted, the CAC is unclear on the parameters of the supposed conspiracy, but it asserts that Defendants fixed premium rates.  To do so, Defendants would need to agree on premium rates before seeking regulatory approval, then approach the Department together or in parallel. In other words, the CAC asserts that Defendants conspired to secure the Department's approval of a uniform rate.  To the extent that is the claim, it cannot go forward under the antitrust laws.

Concerted efforts to influence government action are not within the scope of the antitrust laws, regardless of anticompetitive purpose or effect.  *See E. R.R. Presidents Conference v. Noerr Motor*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET No. 19-CV-00717 (JST)

*Freight, Inc.*, 365 U.S. 127, 135-44 (1961) (legislative and executive branches); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669-72 (1965) (executive branch); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 509-11 (1972) (judicial branch and administrative agencies); *accord In re Airport Car Rental Antitrust Litig.*, 693 F.2d 84, 86 (9th Cir. 1982).  This "*Noerr-Pennington*" doctrine applies to claims under the Cartwright Act just as it does to the Sherman Act. *See Blank v. Kirwan*, 39 Cal. 3d 311, 323 (1985); *see also Moore v. Navarro*, No. 00-cv-3213, 2004 WL 783104, at *6 (N.D. Cal. Mar. 31, 2004).

At bottom, "citizens must be immune from some forms of liability for their efforts to persuade government officials to adopt policy or perform their functions in a certain way." *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th Cir. 1998).  Therefore, when a party seeks to influence government decision-making, it cannot be liable under the antitrust laws.  *See id.* at 1059-60 (lobbying effort designed to influence a state administrative agency's decision was within the ambit of the doctrine). Plaintiffs claim a "conspiracy to fix default premiums at 10%."  (¶ 122.)  If such concerted action existed (and were sufficiently alleged), it would necessarily be a conspiracy to petition the Department to approve the allegedly fixed rate.  As such, it would fall squarely within the *Noerr-Pennington* doctrine.

## B.     The CAC Fails to State an Antitrust Conspiracy Claim

Apart from the foregoing regulatory-related defenses—which are dispositive—the CAC fails to state a claim for multiple separate and independent reasons.  The Court should treat the Sherman Act and Cartwright Act claims consistently for these points.  "The analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act . . . was modeled after the Sherman Act."  *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (citations omitted); *see Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1364 (N.D. Cal. 2013) (Tigar, J.) (dismissing Cartwright Act claims for failure to state sufficient facts under *Twombly*); *Dutra v. BFI Waste Mgmt. Sys. of N. Am.*, No. 14-cv-4623, 2015 WL 2251203, at *3 (N.D. Cal. May 13, 2015) (same).

While the gravamen of the CAC is a frontal attack on bail bond premiums and the business of insurance, the CAC is not clear about the nature of the alleged conspiracy.  Is it a horizontal conspiracy

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

among sureties to set premium rates?  A vertical conspiracy between sureties and bail agents to prevent rebates?  A horizontal conspiracy among bail agents to prevent rebates?  Some combination of the above?  The CAC's failure to clearly answer these questions conflicts with Federal Rule of Civil Procedure 8(a)'s requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Further, the CAC impermissibly relies on group pleading, is based on conclusory allegations, and the alleged conspiracy is inherently implausible, each of which compels dismissal.

### 1.     The CAC Fails to Allege Facts about Each Defendant

In an antitrust action alleging an anticompetitive agreement, a complaint cannot merely lump defendants together.  It "must allege that *each individual defendant* joined the conspiracy and played some role in it . . . ."  *TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (internal quotation and citations omitted) (emphasis added); *see In re Cal. Title Ins. Antitrust Litig.*, No. 08-cv-1341, 2009 WL 1458025, at *5-6 (N.D. Cal. May 21, 2009) (same).  "Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*."  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) (citation omitted).

The CAC violates this fundamental principle.  It fails to allege how each of the thirty Defendants[6] joined or participated in the massive, 15-year conspiracy that it claims (let alone what that conspiracy actually encompassed).  The CAC attributes most conduct to "Defendants" generally.  (*See, e.g.*, ¶ 68 ("*Defendants* have agreed to advertise only the default Maximum Rate, to conceal their ability to charge a lower effective rate through rebating, and generally to refrain from offering competitive rebates.").)  In some cases, the CAC attributes conduct to similarly generic subgroups, such as the "Surety Defendants" or "bail agents" that may or may not even be Defendants.  (*See, e.g.*, ¶ 71 ("Surety Defendants and their co-conspirators, since at least February 2004, have conspired to fix bail premiums and avoid price competition."); ¶ 93 ("Bail agents then advertise these dictated rates, misleading Class members into thinking they are mandated by law rather than by the sureties.").)  This

---

[6] Note that since filing the CAC, Plaintiffs have stipulated to voluntary dismissal of named Defendant Crum & Forster Indemnity Company.  (ECF No. 55.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

16.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

improper group pleading obfuscates the "answer[s to] the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048. This deficiency in the CAC is particularly acute for the eighteen Defendants that *never appear* in the CAC's "Factual Allegations."[7]

Courts routinely dismiss complaints—like this one—that rely on group pleading and fail to allege each defendant's role in an alleged conspiracy. *See, e.g.*, *Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, No. 11-cv-2652, 2013 WL 3873074, at *9 (S.D. Cal. July 25, 2013) (dismissing complaint "plagued by vagueness and ambiguity" as to specific acts by defendants); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. 09-cv-0560, 2010 WL 3521979, at *18 (E.D. Cal. Sept. 3, 2010) ("Plaintiff has not set out which defendant is alleged to have done what wrongful conduct . . . . Regardless of the length, the allegations are insufficient because they do not give defendants fair notice of their specific wrongful conduct."); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 956 (N.D. Cal. 2007) (dismissing claims where "the complaint's substantive allegations refer to the defendants in collective terms and do not advance individualized allegations about particular defendants"); *see also Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) (dismissing complaint because Defendant "should not be required to guess which allegations pertain to it"); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) (dismissing complaint as it failed to state a claim because plaintiffs did not indicate which individual defendant or defendants were responsible for which alleged wrongful act). This Court should do the same.

## 2. The CAC Lacks Sufficient Evidentiary Facts to Plead a Conspiracy

"Because § 1 of the Sherman Act does not prohibit all unreasonable restraints of trade but only restraints effected by a contract, combination or conspiracy, the crucial question is whether the challenged anticompetitive conduct stems from an independent decision or from an agreement, tacit

---

[7] Accredited Surety and Casualty Company, Inc., American Contractors Indemnity Company, Associated Bond and Insurance Agency, Inc., Bankers Insurance Company, Continental Heritage Insurance Company, Danielson National Insurance Company, Financial Casualty & Surety, Inc., Harco National Insurance Company, Indiana Lumbermens Mutual Insurance Company, Lexon Insurance Company, The North River Insurance Company, Philadelphia Reinsurance Corporation, Seneca Insurance Company, Sun Surety Insurance Company, United States Fire Insurance Company, Universal Fire & Insurance Company, Williamsburg National Insurance Company, and All-Pro Bail Bonds Inc. (¶¶ 56-120.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

or express." *Twombly*, 550 U.S. at 553 (internal quotation, alterations, and citations omitted); *see also Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129-30 (9th Cir. 2015). Accordingly, a plaintiff must assert either factual allegations of "direct evidence" of an agreement, or else "circumstantial evidence" that would plausibly permit inference of a conspiracy. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193, 1194 n.6 (9th Cir. 2015) ("Conspiracy is a legal conclusion. . . . [P]laintiffs must plead evidentiary facts."); *Cty. of Tuolumne*, 236 F.3d at 1155-56 (in absence of direct evidence of conspiracy, court must determine whether circumstantial evidence establishes a conspiracy). A plaintiff must allege "evidentiary facts which, if true, will prove the elements" of the claim. *Kendall*, 518 F.3d at 1047. While direct or circumstantial evidence may be used to allege an antitrust agreement, the CAC pleads neither.

### a.    The CAC Does Not Plead Direct Evidence of a Conspiracy

"Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Cty. of Tuolumne*, 236 F.3d at 1148 (9th Cir. 2001) (internal quotation and citations omitted). It is sometimes called "the smoking gun in a price-fixing case"—for example, "an admission by an employee of one of the conspirators, that officials of the defendants had met and agreed explicitly on the terms of a conspiracy to raise price." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010).

The CAC contains no allegations that directly answer basic questions about the claimed conspiracy, i.e., "who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048; *see also Twombly*, 550 U.S at 565 n.10. While the CAC pronounces that Defendants "agreed" or "conspired" (*see, e.g.*, ¶¶ 68, 71, 105, 140), these conclusory statements are not entitled to any presumption of truth and should be disregarded. *See Iqbal*, 556 U.S. at 664; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[t]he court need not . . . accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Indeed, "[i]n *Twombly*, the Supreme Court dismissed as insufficient similar 'stray statements' about agreements, when unsupported by concrete allegations about the content and circumstances of any actual agreement." *In re Late Fee*, 528 F. Supp. 2d at 962. Accordingly, the sufficiency of the CAC rises or falls on the adequacy of the alleged circumstantial evidence.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

**b.      The CAC Does Not Plead Circumstantial Evidence of a Conspiracy**

"[C]onduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 597 n.21 (1986); *see also In re Musical Instruments*, 798 F.3d at 1193 ("*Twombly* takes into account the economic reality that mere parallel conduct is as consistent with agreement among competitors as it is with independent conduct in an interdependent market.") (citation omitted). Accordingly, "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a § 1 violation." *In re Musical Instruments*, 798 F.3d at 1193 (internal quotation marks omitted). Circumstantial evidence sufficient to state a claim generally takes the form of allegations of parallel conduct and additional facts and circumstances—"plus factors"—that "raise[] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.  Parallel conduct alone is insufficient because such conduct is common throughout many industries and often is the expected result of competition. *See id.* at 556-57.  The CAC here establishes neither parallel conduct nor plus factors.

**(1)      The CAC Fails to Plead Facts Establishing Parallel Conduct**

The CAC apparently attempts to plead parallel conduct in three regards.  First, it states that "Surety Defendants . . . have nearly uniformly filed for a default premium rate of 10 percent of the posted bond, with an 8 percent maximum for consumers who meet enumerated and nearly identical criteria." (¶ 61.)  Second, the CAC alleges "Defendants have agreed . . . generally to refrain from offering competitive rebates."  (¶ 68.)  Third, the CAC alleges "Defendants have agreed to advertise only the default Maximum Rate [and] to conceal their ability to charge a lower effective rate through rebating."  (*Id.*)

These allegations are too conclusory to plead a claim, however, and the CAC lacks facts supporting these conclusions. *See Iqbal*, 556 U.S. at 681; *Sprewell*, 266 F.3d at 988.  The CAC does not allege even a single Defendant's approved premium or the premiums Plaintiffs themselves paid.  Nor does the CAC allege **when** CDI approved any Defendant's premium, which is critical to understanding whether equal rates reflect parallel conduct or sequential conduct.  Similarly, there are

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

19.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

no facts about rebating, such as statistics on the frequency of rebating or even whether Plaintiffs themselves sought or received rebates.  Without pleading facts about each Defendant's premiums and rebating practices, the CAC cannot demonstrate parallel conduct.  While the CAC has some examples of advertisements referencing premium rates, those statements were made by bail agents who are not Defendants.  (*See supra* Section II.D.)  Accordingly, they are irrelevant to whether Defendants engaged in parallel advertising conduct.

The CAC's failure to plead parallel conduct is fatal.  *See, e.g.*, *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, No. 15-cv-1749, 2016 WL 4574357, at *4 (S.D. Cal. July 14, 2016) (dismissing price-fixing complaint where plaintiff "failed to allege any form of parallel conduct" between defendants during two-year period covered by putative class allegations); *see also Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1147 (N.D. Cal. 2017) (dismissing Sherman Act and Cartwright Act claims where allegations "barely show[ed] parallel conduct and fail[ed] to show plus factors that would support an inference of conspiracy").

### (2)     The CAC Fails to Plead "Plus Factors"

Even if the CAC included facts of parallel conduct, it would still need to plead sufficient "plus factors" to "'nudge[]' [its] allegations of horizontal agreements 'across the line from conceivable to plausible.'"  *In re Musical Instruments*, 798 F.3d at 1193; *see Quality Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195, 1201 (7th Cir. 1981) ("[p]arallel behavior without more (a 'plus factor') is not enough to establish a Sherman Act violation").  "Plus factors" are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action," such as "extreme action against self-interest [that] would be so perilous in the absence of advance agreement that no reasonable firm would make the challenged move without such an agreement."  *In re Musical Instruments*, 798 F.3d at 1195-95.  The CAC tries to identify several alleged "plus factors," but none—either individually or in combination—satisfies the pleading burden.

Trade associations.  The CAC alleges that "[i]Industry associations, including, for example, Defendant California Bail Agents Association ("CBAA"), Defendant Golden State Bail Agents Association, and Bail Agents Association of San Diego County, host meetings that have provided opportunities for Defendants to maintain and enforce the conspiracy."  (¶ 80.)  But it is settled law that

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

20.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

"mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement." *In re Musical Instruments*, 798 F.3d at 1196; *see In re Cal. Title*, 2009 WL 1458025, at *5-6 ("[O]pportunity, without more, is not a plausible basis to suggest a conspiracy."). This is because such organizations provide significant procompetitive benefits. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) (trade associations "provid[e] information to industry members, conduct[] research to further the goals of the industry, and promot[e] demand for products and services"); Fed. Trade Comm'n & U.S. Dep't of Justice, *Antitrust Guidelines for Collaborations Among Competitors*, 6 (Apr. 2000) ("[C]onsumers may benefit from competitor collaborations" such as "joint ventures, trade or professional associations.").

The CAC provides no evidentiary facts about any role trade associations play in the claimed conspiracy. The CAC instead alleges true statements by the CBAA about maximum premium rates, (¶ 83), references information on premiums maintained by CBAA (¶ 84), and cherry-picks statements—presented without context—about the bail agent associations' "common interest" and "cooperation" (¶¶ 85, 87). None of these allegations suggests a conspiracy because they are all consistent with the normal operations of trade associations. *See In re Citric Acid*, 191 F.3d at 1098 ("Gathering information about pricing and competition in the industry is standard fare for trade associations. If we allowed conspiracy to be inferred from such activities alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action.").

The CAC also claims some unspecified group of Defendants "agre[ed] at meetings—at industry conferences and elsewhere—to fix the advertised premiums for commercial bail bonds[.]" (¶ 140.) Which Defendants? What meetings and conferences? When? Where is "elsewhere"? Even if framed as a factual allegation itself, this conclusory statement about agreements at "meetings" is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680-81. Moreover, with a couple of exceptions, the CAC does not even allege what Defendants are members of the associations. *Cf. In re Citric Acid*, 191 F.3d at 1098. (refusing to infer conspiracy where defendant did not attend meeting). This purported "plus factor" is nothing of the sort and should be disregarded. Indeed, this case bears a strong resemblance to *In re California Title Ins. Antitrust Litigation*, 2009 WL 1458025, at *5-7, where the court dismissed a Sherman Act claim because, among other reasons, the plaintiffs did not

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

21.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

"set forth factual allegations about whether the rate setting organizations merely gave the Defendants the opportunity to obtain information about each other's rates . . . [,] [did] not set forth facts about where or when those meetings took place, or whether the Defendants communicated with one another in advance of or after the meetings[,] . . . [and] [did] not allege facts setting forth, at a basic level, which Defendants may have attended meetings of the rate setting organizations, the types of employees that may have attended such meetings, or whether those employees reported back to their parent organizations."

Training courses.  The CAC alleges that "[t]he cartel has also been reinforced by industry-sponsored, privately-run bail agent training courses where industry participants train other participants in implementing the conspiracy." (¶ 88.)  It then cites the writings of "Sean Cook," a non-Defendant who allegedly works for non-Defendant "Bail Bonds Universal California" and serves as a "Board Member At-Large of the CBAA."   (¶ 89.)  But there is no ground to impute Mr. Cook's alleged writings to Defendants generally.   Rather, Mr. Cook's writings should be understood to be the unilateral conduct that it is and, as such, it cannot be a "plus factor."  *In re Musical Instruments*, 798 F.3d at 1194 ("[p]lus factors" are "economic actions and outcomes that are largely inconsistent with unilateral conduct").

Retaliatory acts.   The CAC alleges "mavericks who have opted to openly compete on price, either through lower filed rates or by advertising their lawful rebating authority, have faced retaliation from participants in the price-fixing conspiracy." (¶ 104.)  This allegation raises more questions than it answers.  Who are these "mavericks"?  What rates did they file?  How much did they rebate?  Who retaliated against them?  How?  Plaintiffs are required to plead answers to such basic questions.  *See Kendall*, 518 F.3d at 1048.

The CAC identifies just a single "maverick"—"Chad the Bail Guy"—who allegedly commented in a 2014 blog post that some unspecified "good ol boys club" apparently "came after [his] license" when he tried to lower prices.  (¶ 105.)  But this allegation falls far short of answering *Kendall's* five questions, and in no way implicates any Defendant.  *See Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 14-cv-0751, 2015 WL 618665, at *11 (S.D. Cal. Jan. 6, 2015), *aff'd* 691 Fed. App'x 389 (9th Cir. 2017) (dismissing antitrust claims where complaint relied on conclusory

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

22.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

assertions about defendants' "club" and "old boy network").  It fails to make the claimed conspiracy any more plausible.

The CAC's two other examples of "punishing undercutting" fare no better.  First, Plaintiffs take a quote about "rising bail amounts" completely out of context.  (¶ 104.)  While Plaintiffs imply that this quote refers to rising premiums, the context is clear that the speaker is criticizing high bail amount set *by the courts*, not by any conspiracy among the defendants.  Second, the CAC quotes Defendant Carmichael criticizing "[premium discounting]."  (¶ 106 (emphasis omitted; brackets in original).)  Given the lack of context, there is no reason to think Mr. Carmichael was criticizing "premium discounting" because of competitive concerns; indeed, rebating is highly controversial as a matter of public policy.[8]  In any case, Mr. Carmichael's personal opinion is—once again—unilateral conduct that does not suggest a conspiracy.  *In re Musical Instruments*, 798 F.3d at 1193-95.

Economic principles.  Finally, the CAC suggests the market for bail bonds has economic characteristics consistent with a conspiracy.  It states that "[n]ear-universal adherence to the 10% rule by thousands of California bail agents would be surprising without a conspiracy among the sureties that are licensed to sell commercial bail bonds in the state."  (¶ 116.)  Even if these conclusory allegations could be credited—which they cannot—this is no more than a restatement of the allegation that Defendants have engaged in parallel conduct in a regulated environment.  But parallel conduct in any context, and especially where rates are regulated, is not enough because "'conscious parallelism,' a common reaction of 'firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions' is 'not in itself

---

[8] California explicitly prohibits rebating in other insurance contexts.  *See* Cal. Ins. Code § 12122 (financial guaranty insurance); Cal. Ins. Code §§ 12404, 12405 (title insurance); Cal. Ins. Code § 12640.13 (mortgage guaranty insurance).  Many states likewise either generally prohibit rebating or specifically prohibit it for bail bond commissions.  *See, e.g.*, Alaska Admin. Code tit. 3, § 23.790(a)(3); Ariz. Admin Code § R20-6-601(E)(6); Ark. Code Ann. § 17-19-105(1)(7).  One reason rebating is controversial is because it can result in unfair discrimination.  *See Kent v. Lyon*, 555 N.W.2d 106, 116 (S.D. 1996) (noting that anti-rebate statutes prevent discrimination, promote insurance solvency, protect service quality, avoid market concentration, and prevent unethical sales practices) (citing *Katt v. Ins. Bureau*, 505 N.W.2d 37, 40 (Mich. Ct. App. 1993) and Tracy A. Bateman, Annotation, *Insurance Anti-Rebate Statutes: Validity & Construction*, 90 A.L.R. 4th 213, 220 (1991)); *O'Gorman & Young, Inc. v. Hartford Fire Ins. Co.*, 282 U.S. 251, 257 (1931) (non-uniform commissions "may encourage unfair discrimination among policyholders by facilitating the forbidden practice of rebating").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

23.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

unlawful.'"  *Twombly*, 550 U.S. at 553-54 (citations omitted); *see In re Musical Instruments*, 798 F.3d at 1195.  This "common reaction" is even less surprising here, where CDI's oversight role and procedures encourage uniformity.

The CAC also alleges "[t]he California bail bonds market as a whole exhibits an extremely low loss ratio" and that "[t]he lower the loss ratio, the higher the profit margins, and the less competitive the market is likely to be."  (¶¶ 62, 63.)  While Plaintiffs argue that these low loss ratios "can be explained only by a market failure" caused by Defendants' conspiracy (¶ 65), this argument proceeds from faulty assumptions.  For insurance products, loss ratio is a comparison of the premiums collected and losses paid.  *See* Investopedia.com, Loss Ratio Definition, https://www.investopedia.com/terms/l/loss-ratio.asp (last visited Jul. 12, 2019).  For example, "if a company pays $80 in claims for every $160 in collected premiums, the loss ratio would be 50%."  *Id.* Loss ratios, however, do not correlate directly with profit margins because companies must also account for benefit-expense ratios.  *Id.*  Benefit-expense ratios compare premiums collected and other expenses, such as "employee wages, agent and broker commissions, dividends, advertising, legal fees, and other general and administrative expenses."  *Id.*  Only the combination of loss ratios with benefit-expense ratios—which the CAC says nothing about—directly correlate with profit margins.  *See id.* Plaintiffs' faulty economic analysis does not support the claimed conspiracy, and justifies dismissing the CAC.  *See In re Musical Instruments*, 798 F.3d at 1197.

Indeed, the regulatory and economic factors affecting bail bonds make clear that Defendants each have a "rational and competitive business strategy unilaterally prompted by common perceptions of the market."  *Twombly*, 550 U.S. at 554; *see also In re Citric Acid Litig.*, 191 F.3d at 1102; *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1021-23 (N.D. Cal. 2007).  It is entirely rational that in an industry where rates are approved through a regulatory process—particularly one that seeks to insure that rates are neither too high nor too low—the default premiums rates would be the same.  It is equally plausible that bail agencies might independently determine that it is not in their economic interest to offer rebates and, having made that determination, advertise accordingly.  Where, as here, "an obvious alternative explanation for defendant's behavior" exists, allegations fall short of pleading circumstantial evidence of an agreement or conspiracy.  *Eclectic*

Cooley LLP
Attorneys At Law
San Diego

24.

Defendants' Joint Motion to Dismiss
Master Docket No. 19-cv-00717 (JST)

*Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (internal quotation and citations omitted); *see also In re Cal. Title*, 2009 WL 1458025, at *1, *6 (dismissing antitrust claims where an "equally plausible inference is that the Defendants engaged in conscious parallelism").

Unilateral conduct makes far more economic sense than any of the CAC's theories.  Why would twenty-three sureties enter into a conspiracy with two bail agents to prevent rebates on the approved rates?  None of the sureties would receive an economic benefit for entering into such a conspiracy because sureties must charge the approved rate regardless of whether the agent rebates a portion of its commission.  Because the CAC offers no plausible net benefit to the sureties for entering into an agreement not to rebate, its conspiracy allegations are implausible and should be dismissed under *Twombly*.

### C.    The UCL Claim Fails as a Matter of Law

The CAC asserts a claim under the UCL's unlawful, unfair, and fraudulent prongs, expressly based on the same conduct underlying the alleged antitrust claims.  (¶¶ 148-49.)  The failure of the antitrust claims, however, likewise compels the failure of the UCL claim.  As California courts have ruled:

> If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.

*SC Manufactured Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 93 (2008), *as modified on denial of reh'g* (May 19, 2008) (internal quotation and citation omitted); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254 (2010).

To the extent Plaintiffs claim a violation of the UCL's fraudulent prong based on the allegedly false statements in the CAC, they fare no better.  Claims under the UCL's fraudulent prong are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 963 (N.D. Cal. 2013) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).  Rule 9(b) requires plaintiffs to plead "'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

25.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

1    (citation omitted).  Plaintiffs fail to plead with particularity because, among other reasons, they do not

2    explain how false statements made by non-defendants should be imputed to Defendants.

3        Plaintiffs also lack UCL standing to challenge the allegedly false statements.  "[A] plaintiff

4    'proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate

5    actual reliance on the allegedly deceptive or misleading statements." *A White & Yellow Cab, Inc. v.*

6    *Uber Techs., Inc.*, No. 15-cv-5163, 2017 WL 1208384, at *7 (N.D. Cal. Mar. 31, 2017) (quoting

7    *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326-27 (2011)) (other citation omitted).  But Plaintiffs

8    do not allege that they even encountered the allegedly false statements before making their purchasing

9    decisions, much less that they relied on them.

10       In any event, Plaintiffs could not have reasonably relied on any allegedly false advertisements

11   because it is a matter of public record that bail bond agents can reduce their own commissions.  It is

12   no secret.  It is on CDI's website, has been discussed in various public domains, and has been the law

13   in California since the court struck down 10 C.C.R. § 2054.4 in 2004.  Plaintiffs cannot claim that they

14   were deceived by Defendants' statements where access to the relevant information is equally available

15   to both parties and in the public domain.  *See Ford v. Hotwire, Inc.*, No. 07-cv-1312, 2007 WL

16   6235779, *3-4 (S.D. Cal. Nov. 19, 2007) (dismissing UCL claims because no reasonable consumer

17   could be deceived where "both the amount and mandatory nature of the" fee "is readily available

18   public information disclosed on the hotel's own website"); *see also Sedoy v. Provine*, No. 15-cv-2168,

19   2017 WL 744024, at *8 (D. Colo. Feb. 27, 2017).

20       Moreover, the statements that the CAC labels "deceptive" are true.  For example, the CAC

21   allegedly quotes Defendant Two Jinn's website stating that "[a]ll insurers who work with bail service

22   providers are required to file their premium rates with the Department of Insurance" and "Aladdin

23   Bail Bonds is authorized to offer an 8% rate in addition to the standard 10%."  (¶ 76.)  Those

24   statements—as confirmed by CDI and the Insurance Code (*see supra* Section II.B)—are true.  The

25   CAC nonetheless states that these statements misleadingly omit "the ability of Aladdin—and its

26   competitors—to offer lower prices with rebates."  The CAC confounds a statement about filed rates,

27   which *cannot* be changed, with rebates, about which the alleged statement says nothing.  In any case,

28   businesses have no obligation to advertise their willingness to negotiate below their standard prices.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

26.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

In a similar example, the CAC contends that the following quote from CBAA's website is misleading: "Are there any restrictions on how high my bail can be?  Each surety company must file rates with the Department of Insurance.  Bail agents representing a company must charge the same, filed rates." (¶ 87.)  Not only is this true, it is virtually identical to the CDI's own language.  *See* Cal. Dep't of Ins., Bail Bonds, http://www.insurance.ca.gov/01-consumers/170-bail-bonds/ (last visited Jul. 12, 2019) ("[e]ach surety company must file rates with CDI and bail agents representing a surety must charge the same filed rates").  In claiming that this language fails to disclose the ability to rebate, the CAC ignores crucial context.  The quoted language comes from an FAQ about how *high* bail can be, and correctly states that the filed rate is the upper limit.

**D.    The Claims Are Wholly or Partly Barred by the Statutes of Limitations**

The CAC is barred on its face by the statute of limitations to the extent it seeks to plead any claim against any Defendant from before January 29, 2015.  No tolling or other doctrine applies to prevent the application of the limitations period.  There are also specific judicially-noticeable facts that reinforce and confirm that the statute of limitations requires dismissal of the action against certain Defendants, which are expanded upon in Certain Defendants' Consolidated Motion to Dismiss (ECF No. 58).

**1.    The Statutes of Limitations Bar Claims Arising before January 29, 2015**

The statute of limitations bars claims at the pleading stage under Rule 12(b)(6) where the running of the statute is apparent from the face of the pleadings.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  The statute of limitations on Sherman Act, Cartwright Act, and UCL claims is four years.  *See In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143, 2017 WL 6503743, at *8 n.10 (N.D. Cal. Dec. 18, 2017).  In an alleged price-fixing conspiracy, a cause of action accrues at the time of purchase.  *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997)).

The original complaint was filed on January 29, 2019 (*see* ECF No. 1), meaning that the statutes of limitations extend to January 29, 2015.  While the named Plaintiffs' 2016 purchases fall within the statute of limitations (¶¶ 11-12), any prior claims by purported class members are barred.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

27.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

While some claims (i.e., those before January 29, 2015) are barred against all Defendants, that effectively bars all claims against at least one Defendant.  As explained in the  Consolidated Motion to Dismiss, at least one Defendant exited the bail bond industry before January 29, 2015 and therefore cannot be liable for these conspiracy claims.

### 2.  The Barred Claims Are Not Saved by Fraudulent Concealment, the Discovery Rule, or Equitable Estoppel

To save their time-barred claims, the CAC includes just two paragraphs in an attempt to plead tolling based on fraudulent concealment, the discovery rule, and equitable estoppel.  (¶¶ 124-25.)  But "plaintiffs may not rely on generalized allegations that they are entitled to tolling . . . they must specifically identify every basis they intend to rely on to establish tolling of the statutes of limitations, whether they are class action lawsuits, enforcement actions brought by state Attorney Generals, or other matters . . . Plaintiffs . . . must plead with specificity the bases for their entitlement to tolling.") *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 WL 4466576, at *2 (N.D. Cal. Sept. 26, 2012) (internal quotation and citations omitted).  The CAC fails to meet this standard.

First, the CAC fails to meet the heightened pleading standard applicable to fraudulent concealment.  A complaint alleging fraudulent concealment must state facts that: (i) the defendant took affirmative acts to mislead the plaintiff; (ii) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim as a result of defendant's affirmative acts; and (iii) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim.  *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1214-15 (N.D. Cal. 2015); *In re Capital Options, LLC*, 719 F. App'x 609, 612 (9th Cir. 2018) ("[A] plaintiff must allege the supporting facts—i.e., the date of discovery, the manner of discovery, and the justification for the failure to discover the fraud earlier— with the same particularity as with a cause of action for fraud.") (internal quotation and citation omitted).  In addition, facts to support fraudulent concealment must be "above and beyond" facts establishing the alleged conspiracy itself; it is insufficient to allege that defendants' acts are self-concealing by nature.  *In re Animation Workers*, 87 F. Supp. 3d at 1215 (citing *Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2006)).  The CAC here alleges *no facts* to support fraudulent concealment.  Quite the contrary, it alleges that several public statements made long before the 4-year limitations

1   period support the existence of the alleged conspiracy.  (*See* ¶¶ 76 (2002 essay), 78 (2005 article), 99

2   (2010 blog post), 105 (2014 blog post).)

3       Second, the discovery rule does not apply to Sherman Act or Cartwright Act claims.  *Hexcel*

4   *Corp. v. Ineos Polymers, Inc.,* 681 F.3d 1055, 1060 (9th Cir.2012); *Ryan v. Microsoft Corp.*, 147 F.

5   Supp. 3d 868, 894 (N.D. Cal. 2015).  The discovery rule likewise "does not apply to UCL claims that

6   arise purely out of anticompetitive conduct."  *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1081

7   (N.D. Cal. 2016).  In any case, if the discovery rule were applied, the alleged public statements put the

8   purported class on notice long ago.

9       Third, no principle of "equitable estoppel" applies here to extend the statute.  Equitable

10   estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing

11   suit . . . ."  *Coppinger-Martin v. Solis*, 627 F.3d 745, 751 (9th Cir. 2010) (internal quotation and citation

12   omitted).  For equitable estoppel to apply, "the plaintiff must point to some fraudulent concealment,

13   some active conduct by the defendant 'above and beyond the wrongdoing upon which the plaintiff's

14   claim is filed, to prevent the plaintiff from suing in time.'"  *Lukovsky v. San Francisco,* 535 F.3d 1044,

15   1052 (9th Cir. 2008) (emphasis and citations omitted).  As already described, the CAC contains no

16   such allegations.

17       Finally, Plaintiffs may try to argue that the existence of a supposedly lengthy conspiracy

18   extends the period to earlier than January 2015.  But an antitrust complaint cannot avoid the statute of

19   limitations by characterizing claims as part of a broad conspiracy that began before the limitations

20   period and continues forward.  *See, e.g.*, *Dobard v. S.F. Bay Area Rapid Transit Dist.*, No. 92-cv-

21   3563, 1993 WL 372256, at *6-7 (N.D. Cal. Sept. 7, 1993).  Rather, to state a continuing violation as

22   an exception to the statute of limitations against a particular defendant, a complaint must allege facts

23   that plausibly show that each such defendant completed an overt act in furtherance of the allegedly

24   continuing conspiracy *during* the limitations period.  *In re Animation Workers*, 87 F. Supp. 3d at 1211-

25   12 (citing *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987)).  Even the

26   commission of a new act, as part of an alleged continuing violation, does not permit a plaintiff to

27   recover for an injury caused by old overt acts outside the limitations period.  *Klehr*, 521 U.S. at 181.

28   The CAC's generalized and vague allegations against "Defendants" as a group fail to carry this burden.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

29.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

1   **IV.    CONCLUSION**

2          For the foregoing reasons, the Court should dismiss with prejudice the CAC in its entirety.

3

4   Dated:  July 15, 2019                          COOLEY LLP
                                                    MICHAEL A. ATTANASIO (151529)
5                                                   JON F. CIESLAK (268951)
                                                    BEATRIZ MEJIA (190948)
6                                                   MAX SLADEK DE LA CAL (324961)

7                                                   *s/ Beatriz Mejia*
                                                    Beatriz Mejia (190948)
8

9                                                   *Attorneys for Defendants Seaview*
                                                    *Insurance Company and Two Jinn, Inc.*
10  Dated:  July 15, 2019                          By: */s/ Julie A. Gryce*

11

12                                                  Julie A. Gryce (319530)
                                                    DLA Piper LLP (US)
13                                                  401 B Street, Suite 1700
                                                    San Diego, CA 92101-4297
14                                                  Telephone:  (619) 699-2700
                                                    Facsimile:  (619) 699-2701
15                                                  julie.gryce@dlapiper.com

16                                                  Michael P. Murphy (*pro hac vice*)
                                                    DLA PIPER LLP (US)
17                                                  1251 Avenue of the Americas
                                                    New York, NY 10020-1104
18                                                  Telephone:  (212) 335-4500
                                                    Facsimile:  (212) 335-4501
19                                                  michael.murphy@dlapiper.com

20                                                  John Hamill
                                                    DLA Piper LLP (US)
21                                                  444 West Lake Street, Suite 900
                                                    Chicago, IL 60606-0089
22                                                  Telephone: 312.368.7036
                                                    Facsimile: 312.251.5809
23                                                  John.hamill@us.dlapiper.com

24                                                  *Attorneys for Defendants Danielson*
                                                    *National Insurance Company*
25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

30.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

| | |
|---|---|
| 1 | Dated:  July 15, 2019 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |

Dated:  July 15, 2019

By: */s/ Blake Zollar* _____

Drew Koning (263082)
Blake Zollar (268913)
Shaun Paisley (244377)
KONING ZOLLAR LLP
2210 Encinitas Blvd., Suite S
Encinitas, CA 92024
Telephone:  (858) 252-3234
Facsimile:  (858) 252-3238
drew@kzllp.com
blake@kzllp.com
shaun@kzllp.com

*Attorneys for Defendant All-Pro Bail Bonds, Inc.*

Dated:  July 15, 2019

By: */s/ Gerard G. Pecht* _____

Gerard G. Pecht (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246
gerard.pecht@nortonrosefulbright.com

Joshua D. Lichtman (SBN 176143)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494
joshua.lichtman@nortonrosefulbright.com

*Attorneys for Defendant American Contractors Indemnity Company*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

31.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO.  19-CV-00717 (JST)

1    Dated:  July 15, 2019                    By: /s/ Anne K. Edwards

2
                                             Anne K. Edwards (110424)
3                                            SMITH, GAMBRELL & RUSSELL, LLP
                                             444 South Flower Street, Suite 1700
4                                            Los Angeles, CA 90071
                                             Telephone:  (213) 358-7210
5                                            Facsimile:  (213) 358-7310
                                             aedwards@sgrlaw.com
6
7                                            Attorneys for Defendant Williamsburg
                                             National Insurance Company
8
     Dated:  July 15, 2019                    By: /s/ Nicole S. Healy
9
10                                           Todd A. Roberts
                                             Nicole S. Healy
11                                           Edwin B. Barnes
                                             ROPERS, MAJESKI, KOHN & BENTLEY
12
                                             Attorneys for Defendants American Bail
13                                           Coalition, Inc. and William B. Carmichael

14    Dated:  July 15, 2019                    By: /s/ David F. Hauge

15
16                                           David F. Hauge (128294)
                                             Todd H. Stitt (179694)
17                                           Vincent S. Loh (238410)
                                             MICHELMAN & ROBINSON, LLP
18
19                                           Attorneys for Defendants United States
                                             Fire Insurance Company, The North River
20                                           Insurance Company, and Seneca
                                             Insurance Company
21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

32.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

1    Dated:  July 15, 2019                    By: */s/ Christie A. Moore*

2                                             Christie A. Moore (*pro hac*)
3                                             W. Scott Croft (*pro hac*)
                                              BINGHAM GREENEBAUM DOLL LLP
4                                             101 S. Fifth Street
                                              3500 PNC Tower
5                                             Louisville, KY 40202
                                              Telephone:  502.587.3758
6                                             Facsimile:  502.540.2276
                                              cmoore@bgdlegal.com
7                                             wcroft@bgdlegal.com

8
                                              *Attorneys for Lexon Insurance Company*
9
    Dated:  July 15, 2019                    By: */s/ Travis Wall*
10
11                                            Travis Wall (191662)
                                              Spencer Kook (205304)
12                                            HINSHAW & CULBERTSON LLP
                                              One California Street, 18th Floor
13                                            San Francisco, CA 94111
                                              Tel: (415) 362-6000
14                                            twall@hinshawlaw.com

15                                            *Attorneys for Defendant Philadelphia
16                                            Reinsurance Corporation*

17   Dated:  July 15, 2019                    By: */s/ Gregory S. Day*

18                                            Gregory S. Day
                                              LAW OFFICES OF GREGORY S. DAY
19                                            120 Birmingham Drive, Suite 200
                                              Cardiff, CA  92007
20                                            Telephone:  (760) 436-2827
                                              attygsd@gmail.com
21
22                                            *Attorneys for Defendants California Bail
                                              Agents Association, Universal Fire &
23                                            Insurance Company, Sun Surety Insurance
                                              Company*
24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

33.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

1   Dated:  July 15, 2019             By: */s/ Howard Holderness*

2

3                                  John A. Sebastinelli (127859)
                                  Howard Holderness (169814)
                                  GREENBERG TRAURIG, LLP

4

5                                  *Attorneys for Defendants American Surety
                                  Company and Indiana Lumbermens
                                  Mutual Insurance Company*

6

7   Dated:  July 15, 2019             By: */s/ Gary A. Nye*

8                                    Gary A. Nye (126104)
                                  ROXBOROUGH, POMERANCE, NYE &

9                                  ADREANI, LLP

10                                  *Attorneys for Defendants Allegheny
                                  Casualty Company, Associated Bond and

11                                  Insurance Agency, Inc., Bankers Insurance

12                                  Company, Harco National Insurance
                                  Company, International Fidelity Insurance

13                                  Company, Lexington National Insurance

14                                  Corporation, and Jerry Watson*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

34.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

1   Dated:  July 15, 2019                    By: /s/ Shannon W. Bangle

2                                            Michael D. Singletary (*pro hac vice*)
3                                            Shannon W. Bangle (*pro hac vice*)
                                             Brian C. Potter (*pro hac vice*)
4                                            BANGLE & POTTER, PLLC
                                             604 W. 13th Street
5                                            Austin, TX 78701
                                             Telephone:  (512) 270-4844
6                                            Facsimile:  (512) 270-4845
                                             Michael@banglepotter.com
7                                            Shannon@banglepotter.com
                                             Brian@banglepotter.com
8
9                                            James Mills (203783)
                                             LAW OFFICE OF JAMES MILLS
10                                           1300 Clay Street, Suite 600
                                             Oakland, CA 94612-1427
11                                           Telephone:  (510) 521-8748
                                             Facsimile:  (510) 277-1413
12                                           james@jamesmillslaw.com
13
                                             *Attorneys for Defendant Financial*
14                                           *Casualty & Surety, Inc.*
15  Dated:  July 15, 2019                    By: /s/ Erik K. Swanholt
16
                                             Erik K. Swanholt
17                                           FOLEY & LARDNER
                                             555 South Flower St., 33rd Floor
18                                           Los Angeles, CA 90071
                                             Telephone:  (213) 972-4500
19                                           Facsimile:  (213) 486-0065
20
                                             *Attorneys for Defendants Continental*
21                                           *Heritage Insurance Company*
22  Dated:  July 15, 2019                    By: /s/ John M. Rorabaugh
23
                                             John M. Rorabaugh (178366)
24
                                             *Attorney for Defendant Golden State Bail*
25                                           *Association*
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

35.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717 (JST)

1

Dated:  July 15, 2019

By: */s/ Paul J. Riehle*

2

3    Paul J. Riehle (115199)
     DRINKER BIDDLE & REATH LLP
     4 Embarcadero Center, 27th Floor
4    San  Francisco, California 94111
     Telephone:  (415) 551-7521
5    Facsimile:  (415) 551- 7510
     paul.riehle@dbr.com

6

7    *Attorneys for Defendant Accredited Surety
     and Casualty Company, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

36.

DEFENDANTS' JOINT MOTION TO DISMISS
MASTER DOCKET NO.  19-CV-00717 (JST)

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Beatriz Mejia, attest that concurrence in the filing of this document has been obtained from the other signatories.  Executed on July 15, 2019, in San Francisco, California.


*/s/ Beatriz Mejia*_____

Beatriz Mejia

Cooley LLP
Attorneys At Law
San Diego

37.

Defendants' Joint Motion to Dismiss
Master Docket No. 19-cv-00717 (JST)