TODD A. ROBERTS (SBN 129722)
NICOLE S. HEALY (SBN 157417)
EDWIN B. BARNES (SBN 295454)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone:    (650) 364-8200
Facsimile:    (650) 780-1701
Email:        todd.roberts@rmkb.com
              nicole.healy@rmkb.com
              edwin.barnes@rmkb.com

Attorneys for Defendants
AMERICAN BAIL COALITION, INC. and
WILLIAM B. CARMICHAEL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 19-cv-00717-JST<br><br>CLASS ACTION<br><br>**CERTAIN DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:          Hon. Jon S. Tigar<br>Hearing Date:   September 18, 2019<br>Courtroom:      2, 4th Floor<br>Time:           2:00 p.m.<br>Trial Date:     Not Set |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 3

I.     INTRODUCTION ................................................................................................... 3

II.    FACTUAL BACKGROUND .................................................................................. 5

    A.    The Individual Defendants Are Not Sureties or Bail Agents ................................ 5

    B.    The Association Defendants Are Not Sureties or Bail Agents ............................. 6

        1.    American Bail Coalition ....................................................................... 6

        2.    California Bail Agents Association ........................................................ 7

        3.    Golden State Bail Agents Association ................................................... 7

    C.    Bail Agents ........................................................................................... 8

    D.    Sureties ............................................................................................... 8

III.   ARGUMENT ....................................................................................................... 8

    A.    The CAC Fails to Allege Any Facts as to Eighteen Defendants, and Plaintiffs' Claims as to These Defendants Should Be Dismissed ......................... 9

    B.    The CAC Fails to Plead Facts Concerning the Alleged Roles of the Individual Defendants in the Purported Antitrust Conspiracy ............................ 10

    C.    Plaintiffs Have Not Pled Facts Even Suggesting that the Associations Were Involved in or Used to Facilitate an Antitrust Conspiracy .................................. 13

    D.    The CAC Fails to Allege Any Facts of Wrongdoing against Lexington, and Plaintiffs' Claims as to this Defendant Should Be Dismissed ............................. 17

    E.    The Claims against Danielson National Insurance Company Are Barred by the Statute of Limitations ......................................................................... 18

IV.   CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Animation Workers Antitrust Litig.*,
  87 F. Supp. 3d 1195 (N.D. Cal. 2015) ...................................................................12

*Ass'n v. United States*,
  268 U.S. 563 (1925)..................................................................................................15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... *passim*

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  Case No. C-07-5944 JST, 2016 WL 8669891 (N.D. Cal. Aug. 22, 2016) ...............18

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
  No. 07-5944 SC, 2010 WL 9543295 (N.D Cal. Feb. 5, 2010) ................................10

*In re Citric Acid Litig.*,
  191 F.3d 1090 (9th Cir. 1999).............................................................................14, 15

*eMag Solutions, LLC, v. Toda Kogyo Corp.*,
  426 F. Supp. 2d. 1050 (N.D. Cal. 2006) ..................................................................17

*Faragi v. Provident Life & Acc. Inc. Co.*,
  161 Fed. Appx. 649 (9th Cir. 2005).........................................................................19

*In re German Automotive Manufacturers Antitrust Litig.*,
  MDL No. 2796 CRB (JSC), 2019 WL 2509771 (N.D. Cal. June 17, 2019) ...........15

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) .............................................................13, 14

*Groves v. City of Los Angeles*,
  40 Cal. 2d 751 (1953) ................................................................................................5

*Int'l Healthcare Mgmt. v. Hawaii Coalition for Health*,
  332 F.3d 600 (9th Cir. 2003).....................................................................................16

*Jung v. Ass'n of American Medical Colleges*,
  300 F. Supp. 2d 119 (D.D.C. 2004) ..........................................................................10

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008).................................................................................11

*Les Shockley Racing, Inc. v. National Hot Rod Ass'n*,
  884 F.2d 504 (9th Cir. 1989).....................................................................................16

*Mack v. South Bay Beer Distrib.*,
    789 F.2d 1279 (9th Cir. 1986)..............................................................................7

*Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co.,
Inc.*,
    Case No. 16-cv-01864-EMC, 2016 WL 5407898 (N.D. Cal. Sept. 28, 2016) ........................19

*Moore v. Navarro*,
    Case No. C 00-03213 MMC, 2004 WL 783104 (N.D. Cal. Mar. 31, 2004) ............................18

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015)................................................................11, 12, 16

*In re Optical Disk Drive Antitrust Litig.*,
    Case No. 10-md-02143-RS, 2017 WL 6503743 (N.D. Cal. Dec. 18, 2017),
    *appeal dismissed sub nom. In re Optical Disk Drive Prod. Antitrust Litig.*, No.
    18-15093, 2018 WL 7076882 (9th Cir. Nov. 26, 2018), *and appeal dismissed
    sub nom. In re Optical Disk Drive Prod. Antitrust Litig.*, No. 18-15090, 2018
    WL 7107547 (9th Cir. Nov. 26, 2018)......................................................................18

*In re Rubber Chemicals Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ......................................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    MDL No. 1827-SI, 2010 WL 2629728 (N.D. Cal. June 29, 2010) ....................................9, 10

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008)..................................................................................9

**Statutes**

Cal. Bus. & Prof. Code § 16720 ..................................................................................2

Cal. Bus. & Prof. Code § 17200 ..................................................................................2

Cal. Ins. Code § 1809 ............................................................................................5

Cal. Ins. Code § 1823 ...........................................................................................12

15 U.S.C. § 1 .............................................................................................2, 15, 17

California Constitution Article 1, Section 12....................................................................3

**Other Authorities**

Federal Rule of Civil Procedure 8 ................................................................................9

Federal Rule of Civil Procedure 8(a) ...........................................................................17

Federal Rule of Civil Procedure 12(b)(1) ........................................................................3

Federal Rule of Civil Procedure 12(b)(6) ....................................................................3

Federal Rule of Civil Procedure 56 ...........................................................................7

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

MEMO. PTS & AUTHS ISO CERTAIN DEFTS.' CONSOL.
MOT. TO DISMISS CAC- 19-CV-00717-JST

The Individual Defendants, the Association Defendants, the Eighteen Defendants, and Surety Defendant Lexington National Insurance Corporation respectfully submit this Consolidated Motion and Memorandum of Points and Authorities in addition and as a supplement to the Joint Motion to Dismiss filed on behalf of all the Defendants in this Action (ECF No. 56).

## NOTICE OF MOTION AND MOTION TO DISMISS

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 18, 2019 at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Jon S. Tigar, United States District Judge for the Northern District of California, located at Courtroom 2, Fourth Floor, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, California, Defendants American Bail Coalition, Inc., California Bail Agents Association, and Golden State Bail Agents Association ("Association Defendants"), William B. Carmichael and Jerry Watson ("Individual Defendants"), the Eighteen Defendants, namely Accredited Surety and Casualty Company, Inc., American Contractors Indemnity Company, Associated Bond and Insurance Agency, Inc., Bankers Insurance Company, Continental Heritage Insurance Company, Danielson National Insurance Company, Financial Casualty & Surety, Inc., Harco National Insurance Company, Indiana Lumbermens Mutual Insurance Company, Lexon Insurance Company, North River Insurance Company, Philadelphia Reinsurance Corporation, Seneca Insurance Company, Sun Surety Insurance Company, United States Fire Insurance Company, Universal Fire & Insurance Company, Williamsburg National Insurance Company, and All-Pro Bail Bonds Inc. ("Eighteen Defendants"), and Surety Defendant Lexington National Insurance Corporation, will and hereby do respectfully move this Court for an Order dismissing Plaintiffs' Consolidated Amended Class Action Complaint (ECF No. 46), as to these Defendants. This Motion to Dismiss is made on the grounds that Plaintiffs have failed to state a claim against each of these Defendants, and on the ground that the statute of limitations has run as to any claims against Defendant Danielson National Insurance Company.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and other documents on file in this action, and such other and further evidence and arguments as may hereafter be adduced.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether this Court must dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") as to the Eighteen Defendants[1] on the grounds that Plaintiffs have failed to state a claim against these Defendants where the CAC lists the Defendant's name, place of incorporation, principal place of business, and the location of its agent for service of process, and except for identifying one bail agent that sold a bond to the named plaintiff which was underwritten by one surety Defendant, the Eighteen Defendants are not otherwise referred to in the CAC.

2.      Whether this Court must dismiss the CAC as to the Individual Defendants on the grounds that Plaintiffs have failed to state a claim where they have not pled evidentiary facts demonstrating that these Defendants participated in a conspiracy to fix bail bond premiums in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; California's Cartwright Act, Cal. Bus. & Prof. Code § 16720; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

3.      Whether this Court must dismiss the CAC as to the Association Defendants on the grounds that Plaintiffs have failed to state a claim where they have not pled evidentiary facts demonstrating that these Defendants participated in a conspiracy to fix bail bond premiums in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; California's Cartwright Act, Cal. Bus. & Prof. Code § 16720; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

---

[1] The Eighteen Defendants are: Accredited Surety and Casualty Company, Inc., American Contractors Indemnity Company, Associated Bond and Insurance Agency, Inc., Bankers Insurance Company, Continental Heritage Insurance Company, Danielson National Insurance Company, Financial Casualty & Surety, Inc., Harco National Insurance Company, Indiana Lumbermens Mutual Insurance Company, Lexon Insurance Company, North River Insurance Company, Philadelphia Reinsurance Corporation, Seneca Insurance Company, Sun Surety Insurance Company, United States Fire Insurance Company, Universal Fire & Insurance Company, Williamsburg National Insurance Company, and All-Pro Bail Bonds, Inc.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4.	Whether this Court must dismiss the CAC as to Defendant Lexington National Insurance Company ("Lexington") on the grounds that Plaintiffs have failed to state a claim against Defendant Lexington as the allegations in the CAC against this Defendant are so minimal as be almost non-existent.

5.	Whether Danielson National Insurance Company can be liable where it was placed in run-off and ceased writing bail bonds over four years before the initial complaints in this matter were filed.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to the Court's Orders of April 25, 2019 and May 1, 2019 (*Crain*, ECF Nos. 165 and 174), the undersigned Defendants file this separate consolidated motion and accompanying memorandum of points and authorities to address certain issues that pertain to them and that supplement the arguments made in Defendants' Joint Motion to Dismiss ("Joint Motion"). To be clear, all the undersigned Defendants join in and agree with the arguments in the Joint Motion which conclusively demonstrates why the CAC should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.	INTRODUCTION

Article 1, Section 12 of the California Constitution provides that, with certain exceptions for certain serious offenses, "[a] person shall be released on bail by sufficient sureties." Those individuals who cannot "make bail" on their own may be freed pretrial by obtaining a bail bond from a surety, which is brokered through a licensed bail agent. Regardless of whether charges are brought or later dropped, or the individual pleads guilty, or is later convicted or acquitted, with only one exception, the premium is not refunded because it secures the arrestee's freedom pending disposition of the criminal charges.[2]

Plaintiffs claim that the Defendants — sureties, bail agents, trade associations, and

---

[2] The California Department of Insurance ("CDI"), which regulates the bail bond industry, makes this clear in its FAQs: "Are premiums refundable? No, unless the bailee is surrendered, then the bail fee is refundable minus administrative costs per CCR Title 10 § 2090. ***Premiums are nonrefundable even if charges are dropped***." CDI FAQs (emphasis added), *available at* https://www.insurance.ca.gov/01-consumers/170-bail-bonds/ (last accessed July 12, 2019).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

individuals — have conspired to maintain a "no rebate" policy. Yet, to the extent that Plaintiffs pleads any facts, the CAC actually undercuts that contention where it alleges that the Individual Defendants criticized the concept of rebating that was allegedly rampant among the approximately 3,200 bail agents in California. That is, the CAC itself alleges that the bail bond industry is a robust market in terms of the number and vigor of players with no barriers to entry (provided that, as demonstrated in the main brief, the industry itself and the rate approval process is heavily regulated and overseen by the California Department of Insurance). The fact that there are 3,200 bail licenses, up from 1,200 in the 1980s, all competing for a "slice of the pie," while the number of arrests and bonds have declined, negates any plausible inference that two bail agents, twenty-three sureties, three associations, and two individuals maintain a market-wide price fixing scheme (especially where premiums must be approved through a regulated process).

Tellingly, the CAC does not plead any facts, much less the requisite evidentiary facts, demonstrating that the Defendants joined or participated in any such conspiracy. The CAC fails to allege how the sureties, associations, or individuals have a stake in or control over whether the bail agents (who sell the bail bonds to the arrestees or their family members) share any portion of their commission with the bond purchaser, nor how the sureties, associations or individuals are involved in such a conspiracy, nor how they would enforce it. Rather, all of them seem to have been named as Defendants merely because they are associated in some way with the bail bond industry, and because some have made public speeches criticizing rebating as a matter of public policy. And the CAC fails to plead any facts demonstrating how one surety, Danielson National Insurance Company ("DNIC"), which placed its entire business into "run-off" in 2012 and ceased accepting new policy applications at that time, can possibly have any liability where the initial Complaint in this action was filed in January 2019.

Significantly, the CAC does not shed any light on exactly what the Individuals, Associations, the Eighteen Defendants, or any other defendants, are accused of doing in furtherance of the purported, but otherwise un-explained price-fixing conspiracy. Allegedly, the Association Defendants held industry meetings and supplied information to the public regarding bail bonds. The Individual Defendants are alleged to have made a handful of public statements

over a more than twenty-year period generally supporting the bail bond industry and criticizing the rebating of commissions. The Bail Agent sold a bond, and the Surety Defendants write bonds, and they and the premiums charged, are regulated by the CDI. None of the allegations in the CAC demonstrates that any of these Defendants were involved in creating, participating in, supporting, or furthering any alleged price fixing conspiracy. Accordingly, the CAC must be dismissed as to each of them.

## II.  FACTUAL BACKGROUND

The CAC identifies four categories of defendant: sureties, bail agents, industry associations, and individuals. CAC ¶¶ 13-35, 37-38, 40-42, & 44-45. Sureties and bail agents are regulated by the California Department of Insurance, which also regulates the "premium" that may be charged by bail agents. *See* Joint Motion at 3-4. Bail agents and their agents are licensees of the surety insurer, who is the principal of the transaction. Cal. Ins. Code § 1809; *id.* at § 1800(a) (sureties may not issue a bond to a guarantor except through a licensed bail entity); *see also Groves v. City of Los Angeles*, 40 Cal. 2d 751, 758-759 (1953).[3]

### A.  The Individual Defendants Are Not Sureties or Bail Agents

The Individual Defendants allegedly have served as industry executives in various positions; however, they are not themselves sureties or bail agents. *See id.* ¶¶ 44-45. Jerry Watson ("Watson") is identified as "Vice President of the AIA and Senior Counsel and Board Member" of Defendant American Bail Coalition ("ABC"). CAC ¶ 44. He is alleged to have made various public statements about AIA and the bail industry. Allegedly, he claimed that the insurance companies he worked for have never taken a loss on a bail bond. *Id.* ¶ 63. He is further alleged to have written an article in 2009, "The New Age of Bail," in which he explained that competition in the bail bond industry was intensifying due to the increasing number of bail agents

---

[3] Despite its age, the California Supreme Court's opinion in *Groves* does a good job of explaining the economics of the bail bond business. If the plaintiff bail agent in *Groves* sold a $100,000 bail bond, regardless of the fee charged to the guarantor who purchased the bond, the plaintiff paid $2,000 (2% of the face value) to the intermediary, which paid $1,000 (1% of the face value) to the surety. Under this arrangement, if the bail agent charged no less than $2,000, it would have $8,000 to negotiate with the guarantor (the bail bond purchaser) through rebating. Significantly, *regardless of the fee to the purchaser*, the surety is paid the same amount determined by the face-value of the bond set by the court.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

entering the field and the simultaneous reduction of demand for bail bonds as arrests were shrinking by 2% annually nationwide. *Id.* ¶ 111.

William Carmichael ("Carmichael") is allegedly Chairman of the ABC, as well as "President and CEO of Defendant American Surety Company (ASC) and the former President and Executive Director" of ABC. CAC ¶¶ 45, 77. Like Watson, Carmichael is alleged to have publicly expressed his frustration with the growing competition and rebating in the bail bond industry, which emphasized short-term gains above the long-term financial integrity of the industry through under-capitalization. *See* CAC ¶¶ 77-79, 106; *see also id.* ¶ 78 (". . . if left unchecked, rampant premium discounting will result in the end of the bail bond business as we know it . . ."); *id.* ¶ 106 ("I don't know who the math wiz was who thought that [premium discounting] was a good idea but they get my vote for a lifetime vacation in Guantanamo."). Carmichael also allegedly made statements expressing his generalized support for the bail bond industry and the role of the agents and sureties. *See, e.g.*, *id.* ¶ 77 (in 1986 he, "wished for a cohesive band of agents and companies whose power, when combined, far exceeded the power of an unorganized group of single businesses.").

## B.    The Association Defendants Are Not Sureties or Bail Agents

The CAC asserts claims against three non-profit associations – two in California, the Golden State Bail Agents Association ("GSBAA") and California Bail Agents Association ("CBAA"), and one in Pennsylvania, ABC. All three associations are alleged to be non-profit organizations; ABC and CBAA are also alleged to be trade associations. CAC ¶¶ 40-42.

### 1.    American Bail Coalition

ABC is a Pennsylvania 501(c)(6) non-profit organized as a trade association for the national bail underwriting industry. CAC ¶ 40. Unsurprisingly, it organizes meetings with bail industry representatives – for example, ABC organized a November 2, 2011 bail industry meeting in Los Angeles, which included representatives from CBAA, GSBAA, and Aladdin Bail Bonds. *Id.* ¶¶ 86, 87. This "cooperative" was named the California Bail Coalition ("CBC"). *Ibid.* The CAC does not allege what information was presented or discussed at the meeting, nor any other facts about what happened at or after that meeting. The CAC makes no other allegation about

ABC, including regarding its activities, other meetings, or services to its members.

### 2. California Bail Agents Association

CBAA is California 501(c)(6) non-profit organized as a trade association for bail agents in California. CAC ¶ 41. It allegedly hosts annual conventions, including its 39th Annual Convention in Reno, Nevada on October 1, 2018. *Id.* ¶ 81. The CAC alleges that CBAA's web page includes a discussion of "How Bail Bonds Work" which reportedly states in response to the question, "Are there any restriction on how high my bail can be?" that "Each surety company must file rates with the Department of Insurance. Bail agents representing a company must charge the same, filed rates." CAC ¶ 83.[4] The CAC further alleges that the "CBAA does not disclose that agents are allowed to rebate freely based on market competition" but itself fails to note that this information is publicly available on the CDI's website. *See* Ex. 2 to the Declaration of Jon Cieslak[5] (CDI, FAQs: "Is bail "rebating" legal? Yes. A bail agent may choose to negotiate a lower fee by rebating, as allowed by Proposition 103"); and Ex. 1 (*Pacific Bonding Corporation vs. John Garamendi*, Civil Case No. GIC 815786 (San Diego County Superior Court), *available at* https://www.insurance.ca.gov/01-consumers/170-bail-bonds/ (last accessed July 12, 2019)); Request for Judicial Notice ("RJN") at 1 and Sections I.B and I.C. (ECF No. 57).[6]

CBAA also allegedly maintains information "regarding premiums charged," but offers no facts regarding what information is collected, why it is collected, who has access to it, or how it is actually used, if at all. *Id.* ¶ 84.

### 3. Golden State Bail Agents Association

GSBAA is a California 501(c)(6) non-profit, and unlike ABC and CSBAA is not alleged to be a trade association for the bail bond industry. CAC ¶ 42. GSBAA was founded in 2004 and vaguely is alleged to "function[] similarly" to CBAA. *Id.* ¶ 85. The CAC makes no other

---

[4] The CAC does not supply a citation to this web page or an indication of when it was last accessed.

[5] All exhibits referenced herein are attached to the Declaration of Jon Cieslak, filed in support of the Defendants' Joint Motion and this Consolidated Motion.

[6] A court may take judicial notice of "matters of public record" to determine whether a complaint states a claim under Rule 12(b)(6) without transforming a 12(b)(6) motion into a Rule 56 motion. *Mack v. South Bay Beer Distrib.*, 789 F.2d 1279, 1282 (9th Cir. 1986).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

allegations concerning GSBAA, including concerning its members, its meetings, the locations of its meetings, or its functions.

### C. Bail Agents

The CAC asserts claims against two bail agencies doing business in California. CAC ¶¶ 37-38. According to the CAC, "in the mid-80's, there were 1,200 agents in the state. Now there are 3,400, one on top of the other, and everyone is fighting for that slice of the pie." *Id.* ¶ 112 (quoting CBAA president). CDI is required to publish and maintain a list of licensees on its public website. As of this writing, there are approximately 3,200 bail agents in California licensed by the CDI. *See* Ex. 2 (CDI, Bail Bonds, *available at* http://www.insurance.ca.gov/01-consumers/170-bail-bonds/ (last accessed July 12, 2019)); RJN at 1, and Section I.C. One of the bail agencies, All-Pro Bail Bonds, Inc., one of the Eighteen Defendants, is not alleged to have done anything except sell a bail bond to one of the named Plaintiffs. CAC ¶ 11.

### D. Sureties

The CAC identifies twenty-three surety company Defendants. CAC ¶¶ 13-35. The only allegations as to seventeen of the Surety Defendants are at the outset of the CAC, where they are included in the list of Surety Defendants with their names, places of incorporation, principal places of business, and agents for service of process. *See id.* ¶¶ 13, 15, 17-19, 21-24, 27-29, 31-35, 37; and Section III.A, below. One other surety, Lexington National Insurance Corporation, is barely mentioned in the CAC, and factual allegations of wrongdoing against it are non-existent. *See* Section III.D, below. And one of the Eighteen Defendants, Danielson National Insurance Company, placed its entire business into "run-off" in 2012 and ceased accepting new policy applications. *See* Section III.E, below.

## III. ARGUMENT

Defendants adopt and incorporate by reference, the discussion of the standard of review for a motion to dismiss a complaint asserting antitrust claims, as set forth in the Defendants' Joint Brief. *See* Joint Brief at 9-10.

**A.** **The CAC Fails to Allege Any Facts as to Eighteen Defendants, and Plaintiffs' Claims as to These Defendants Should Be Dismissed**

As stated in the Joint Motion at page 17, in an antitrust action alleging an anticompetitive agreement, a complaint cannot merely lump the defendants together. It "must allege that each individual defendant joined the conspiracy and played some role in it." *TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008). "Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Besides the fact that the allegations in the CAC do not plausibly allege that any of the thirty named Defendants joined or participated in a conspiracy, the inadequacy of Plaintiffs' pleading is even more apparent as to the Eighteen Defendants that never appear in the CAC's "Factual Allegations." Plaintiffs name these Eighteen Defendants only in the caption, and in the list of parties, merely allege their state of incorporation and principal place of business in the introductory sections of the CAC, and contend that All-Pro Bail Bonds sold a bond to Ms. Crain, which was underwritten by Bankers Insurance. But when it comes time to allege facts in support of the supposed conspiracy, none of these Eighteen Defendants is ever mentioned again. CAC ¶¶ 56-120. Federal Rule of Civil Procedure 8 requires Plaintiffs to give Defendants fair notice of their claims.

Without a single specific allegation tying these Eighteen Defendants to the sprawling conspiracy Plaintiffs are attempting to allege, these Defendants have been left in the dark as to what they are alleged to have done, much less when or with whom. *See Twombly*, 550 U.S. at 565 n.10 (noting that an antitrust complaint that does not allege which defendants entered into an illicit agreement, or when or where the agreement took place, does not provide the notice required by Rule 8, because a defendant would have "little idea where to begin" in preparing a response). Without such level of detail (or, in fact, *any* level of detail), which is required by the Rules, these Eighteen Defendants cannot adequately defend themselves against Plaintiffs' claims.

Further, as pointed out by the Supreme Court in *Twombly*, the "costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Twombly*, 550 U.S. at 558 (*citing Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). As to the Eighteen Defendants for which no facts have been alleged, there is no likelihood at all that Plaintiffs can construct a claim against them, because they plead zero facts about them. These Eighteen Defendants should not be required to engage in what is sure to be expensive, voluminous, and lengthy litigation and discovery when they are not alleged to have done anything except sell or underwrite bail bonds.

Accordingly, given the complete absence of factual allegations against these Eighteen Defendants, dismissal is required. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827-SI, 2010 WL 2629728, at *7 (N.D. Cal. June 29, 2010) (dismissing complaint as to defendant PENAC where, other than allegations about "defendants" collectively, the only allegations specific to PENAC were that it manufactured, sold, and distributed LCD panels, and a conclusory statement that it had "participated in the conspiracy"); *see also Jung v. Ass'n of American Medical Colleges*, 300 F. Supp. 2d 119, 163-164 (D.D.C. 2004) (dismissing complaint as to defendant where complaint did not contain "any specific allegations" against it).

**B.** **The CAC Fails to Plead Facts Concerning the Alleged Roles of the Individual Defendants in the Purported Antitrust Conspiracy**

To state a claim for antitrust conspiracy, plaintiffs must plead individualized factual allegations supporting the antitrust conspiracy claims against *each defendant*. *See In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-5944 SC, 2010 WL 9543295, at *6 (N.D Cal. Feb. 5, 2010). That is, plaintiffs must plead "allegations specific to each defendant alleging that defendant's role in the alleged conspiracy." *TFT-LCD*, 586 F. Supp. 2d at 1117. It is not enough to merely name a person or an entity as a defendant. Rather, "the complaint 'must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'"

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

*Ibid.* (*citing In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 311-12 (D.N.J. 2004) (further citations omitted).

The CAC has not even come close to doing so. Instead, it is devoid of factual allegations outlining the scope of the alleged price-fixing conspiracy (*see* Defendants' Joint Brief at Section B.1) or the role played by any of the Defendants, including the Individual Defendants. Plaintiffs must plead "evidentiary facts" (*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)), *i.e.*, facts that "can answer the questions "who, did what, to whom (or with whom), where, and when" (*In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194, n.6 (9th Cir. 2015) (*quoting Kendall*, 518 F.3d at 1047)). Here, Plaintiffs identify Watson and Carmichael by their affiliations, and then string together disparate public statements and contend that this somehow demonstrates that they conspired to fix bail bond prices.

Neither Carmichael nor Watson is alleged to have entered into an agreement to fix prices, nor are they alleged to have any power to enforce a "no rebating" agreement. Instead, Plaintiffs allege that Carmichael and Watson made a handful of public statements often on unspecified dates, over a more than twenty-year period, including relating to the expansion in the number of participants in the bail bond industry who enter the market by aggressive price-cutting, which threatened the financial integrity of the system. *See* CAC ¶¶ 75, 78, 106, 111. None of these statements indicates "an agreement to not compete." CAC ¶ 71(a). Rather, they establish that no such clandestine agreement existed; otherwise, Carmichael and Watson would not have publicly commented on a business practice they perceived threatened the financial stability of the industry through under-capitalization. *See, e.g.*, *id.* ¶ 106 (Carmichael allegedly stated that, "I don't know who the math wiz was who thought that [premium discounting] was a good idea but they get my vote for a lifetime vacation in Guantanamo."). In fact, the CAC makes plain that the industry is highly competitive. *See, e.g.*, *id.* ¶ 111 (Watson allegedly stated in a 2009 article that "[f]or a number of years, there has been concern that too many new agents are entering an already crowded industry. . . . Whatever the cause may be, the effect is clear: There are increasingly fewer bonds in the marketplace.").

Carmichael's anodyne support for the efforts of trade associations to promote the bail bond industry is routine business executive speech. For example, Carmichael, as President and CEO of Defendant ASC (*see* CAC ¶¶ 13, 45), reportedly stated that ASC participates in agents' associations "in recognition of the 'important role a surety must play in protecting our markets.'" *Id.* ¶ 80. That is nothing more than a recognition of the obvious role that sureties (that is, a guarantor of a third party's performance) intrinsically play in protecting the bail business (or any business) from over-leveraging and financial ruin. Rather than being anti-competitive, Carmichael's statement reflects the significance of the sureties' role, consistent with the Legislature's requirement that sureties contribute to a reserve fund and maintain fees in segregated trust accounts. *See* Cal. Ins. Code § 1823. Other statements attributed to Carmichael are equally innocuous support for the industry. *See* CAC ¶ 77 (In 1986, he "wished for a cohesive band of agents and companies whose power, when combined, far exceeded the power of an unorganized group of single businesses"). Nowhere do Plaintiffs allege that Watson or Carmichael directed any of the other Defendants to fix prices, nor are their public statements alleged to function as messages to third parties to toe the line on maintaining prices. To the contrary, neither Watson nor Carmichael is alleged to have had any authority whatsoever to direct or control any third party.

Merely alleging that the Individual Defendants made fewer than a half-dozen public statements altogether over a more than twenty-year period supporting the industry generally and speaking against discounting does not tie them to any alleged price-fixing conspiracy.[7] Much more is needed to state a claim. *See Brennan vs. Concord EFS Inc.*, 369 F. Supp. 2d 1127, 1135 (N.D. Cal. 2005) (granting motion to dismiss complaint against two defendants because the

---

[7] To the extent that it pleads dates, the CAC alleges that Carmichael made public statements as far back as 2005 (CAC ¶¶ 78, 80), and Watson in 2009 (*id.* ¶ 111). Accordingly, if there had ever been a violation (which there was not), the four year limitations period accrued and ran many years ago. *See e.g., In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1209 (N.D. Cal. 2015) (the "U.S. Supreme Court and Ninth Circuit have clearly held that claims under the Sherman Act are subject to an injury rule, rather than a discovery rule."); and *id.* at 1210 (holding that the same is true for UCL claims).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

complaint did not contain allegations specifically connecting them to the alleged conspiracy involving purported price-fixing in connection with ATM network interchange fees).

Unlike cases in which courts have found that the complaint stated a claim for price fixing, Plaintiffs have not alleged that the Individual Defendants (or anyone else) discussed fixing prices at industry association meetings or otherwise, nor that they engaged in enforcement activity. *Compare In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1020-23 (N.D. Cal. 2007) (allegations of price fixing based on parallel action were consistent with both conspiracy and lawful conduct, so complaint did not satisfy the *Twombly* standard); *with In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 790 (N.D. Cal. 2007) (complaint stated a claim by pleading "specific and substantial" allegations of individual's involvement in price-fixing meetings and details of defendants' price-fixing activity and enforcement). The opposite is true here. The CAC concedes that (1) competition is growing as evidenced by the explosion from 1,200 to 3,400 bail agents in California in the last thirty years; (2) the bail bond market is shrinking as arrest rates drop; (3) and long-time industry players Carmichael and Watson saw the combination of these factors as leading to financially dangerous rampant price-discounting. The CAC's quoted materials demonstrate that the Individual Defendants' statements were public responses to price-cutting due to increased competition in the marketplace, not steps in furtherance of restraint of trade. Altogether, Plaintiffs have failed to allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, the claims against the Individual Defendants must be dismissed.

### C. Plaintiffs Have Not Pled Facts Even Suggesting that the Associations Were Involved in or Used to Facilitate an Antitrust Conspiracy

Plaintiffs likewise do not state a claim for antitrust conspiracy against ABC, CBAA, and GSBAA, the three non-profit associations. Plaintiffs conclude that the Surety Defendants "[u]sed industry associations, including the Surety Association of America (SAA), the California Bail Bond Association, the American Bail Coalition, and Golden State Bail Agents Association, and bail education courses organized by industry leaders, as tools for enforcing their price-fixing cartel" (CAC ¶ 71(c)), yet offer no facts to support that allegation or that there is even a price-

fixing cartel.[8]  Instead, the facts alleged plead nothing more than that the trade associations worked to promote the bail bond industry and educate consumers — wholly legitimate objectives.

Plaintiffs do not plead any facts which, if true, would establish a plausible basis for finding that the associations were used in a price fixing conspiracy.  For example, the November 2, 2011 CBC meeting in Los Angeles is alleged to have included representatives from ABC, CBAA, GSBAA (who have no market activities) and *one* bail agent, Aladdin Bail Bonds.  CAC ¶¶ 86, 87.  Allegedly, the coalition members were still working together in 2017.  *Id*. ¶ 87.  Nowhere do Plaintiffs explain what this coalition has done; instead, according to a 2017 blog post by a Vice President of Surety Defendant ASC, "cooperation among industry competitors at both the agency and surety level has been nothing short of inspiring."  *Id*.  This allegation does not plausibly support a market-wide price-fixing scheme.  In fact, the CAC does not explain the quote at all.  It is more plausible that, rather than claiming that the industry had done a good job of engaging in illegal price-fixing, he was lauding its efforts at wholly legitimate activities such as proposing legislation, or meeting with the CDI or state legislators.

The CAC merely concludes that the Association Defendants' meetings "provide[] opportunities for Defendants to maintain and enforce the conspiracy."  *Id*. ¶ 80.  Plaintiffs do not plead any facts regarding what conspiratorial communications or acts allegedly occurred at these meetings.  To the contrary, Plaintiffs' allegations suggest nothing more than the normal function of an industry association to promote the industry.  "Gathering information about pricing and competition in the industry is standard fare for trade associations.  If we allowed conspiracy to be inferred from such activities alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action."  *In re Citric Acid Litig*., 191 F.3d 1090, 1098 (9th Cir. 1999); *see also Graphics Processing Units*, 527 F. Supp. 2d at 1023 ("Attendance at industry trade shows and events is presumed legitimate and is not a basis from which to infer a conspiracy, without more.").  In *Citric Acid*, the association engaged in the legitimate function of collecting

---

[8] The CDI lists approximately 3,200 bail license in California.  It is not plausible, much less conceivable, that a price-fixing cartel can exist based on a conspiracy involving only *two* of the 3,200 retail players.

and distributing aggregate industry information on pricing and sales to its members, not firm specific information which could have been used as an enforcement mechanism to police competitors' pricing. *See Citric Acid*, 191 F.3d at 1099. The same is true here. *See* CAC ¶ 84. Plaintiffs' speculation that the information CBAA collects regarding premiums charged could be used by "Defendants and their agents [ ] to detect and prevent premium discounting" cannot support an antitrust claim because it alleges no facts concerning who, how, or when this information was purportedly used as an enforcement mechanism.

Cooperation among competitors is not illegal where the objective is to promote the industry. Here Plaintiffs do not allege facts even suggesting that the trade associations were used to facilitate or police price fixing. *See* CAC ¶ 85 (alleging that GSBAA was founded in 2004 by "competitors, [who] discovered that they had a lot in common and formed GSBAA to pursue their common interest in promoting and propagating the California bail industry."); *id.* ¶¶ 86-87 (in November 2011, ABC organized an industry meeting in which GSBAA and CBAA participated along with Aladdin); *id.* ¶ 88 (the three associations worked together in a coalition). Contrary to the inference that the Plaintiffs would have the Court draw, the CAC's allegations are supportive of legitimate cooperation or lobbying to promote the industry's interests, rather than illicit price fixing. *See Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S. 563, 586 (1925) (where trade associations "openly and fairly gather and disseminate information as to the cost of their product, the volume of production, the actual price which the product has brought in past transactions, stocks of merchandise on hand, approximate cost of transportation from the principal point of shipment to the points of consumption" without "reaching or attempting to reach any agreement or any concerted action with respect to prices or production or restraining competition" they are not in violation of Section 1 of the Sherman Act). Here, Plaintiffs have not alleged that any price-fixing agreements were ever proposed, discussed, or reached at industry meetings or in connection with the associations in any way. *See* CAC ¶¶ 80, 81, 86, 87.

Plaintiffs fail to state a claim where they do not plead any facts regarding what the Defendants allegedly did at meetings hosted by the Association Defendants. *See In re German Automotive Manufacturers Antitrust Litig.*, MDL No. 2796 CRB (JSC), 2019 WL 2509771, at *9

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  (N.D. Cal. June 17, 2019) (plaintiffs' allegations regarding working groups and trade associations

2  lacked detail where, despite a dozen pages of pleading, plaintiffs "almost never identify what was

3  agreed to in these meetings and instead only vaguely refer to 'clandestine agreements to limit

4  technological innovation.'"); *Musical Instruments*, 798 F.3d at 1196 ("mere participation in trade-

5  organization meetings where information is exchanged and strategies are advocated does not

6  suggest an illegal agreement"). Rather, from the sparse facts alleged, CBAA appears to have

7  been involved in publicizing information about the industry and educating bail agents. *See* CAC

8  ¶¶ 83, 89-90. Rather than being an antitrust violation, "[d]isseminating information that fosters

9  rational business decisions is pro-competitive." *Int'l Healthcare Mgmt. v. Hawaii Coalition for*

10  *Health*, 332 F.3d 600, 608 (9th Cir. 2003).

11      The contention that the "CBAA also maintains information regarding premiums charged

12  that Defendants and their agents can use to detect and prevent premium discounting" (CAC ¶ 84),

13  is incomplete. What information? Who uses it? How is it used to "detect" or "prevent"

14  "premium discounting"? Was it used? Plaintiffs never say. Such vague allegations come

15  nowhere near satisfying the requirement that to "allege injury to competition, a section one

16  claimant may not merely recite the bare legal conclusion that competition has been restrained

17  unreasonably. Rather, a claimant must, at a minimum, sketch the outline of the antitrust violation

18  with allegations of supporting factual detail." *Les Shockley Racing, Inc. v. National Hot Rod*

19  *Ass'n*, 884 F.2d 504, 507-08 (9th Cir. 1989).

20      Other alleged statements are simply unclear. *See, e.g.*, CAC ¶ 104 (alleging that Dennis

21  Bartlett, former Executive Director of ABC, stated on an unspecified date that "higher bail

22  amounts have 'disadvantaged not only defendants but bail agents, some of whom have cut

23  premium rates in order to write any bonds at all,' and explained that in response, '[t]he bonding

24  industry has worked hard to rectify this abuse.'"). Not only does this statement undercut

25  Plaintiffs' price-fixing theory by making it clear that there is active rebating competition among

26  bail agents in the market, the statement is vague and uncertain. What abuse has the association

27  worked to rectify? Reducing bail amounts set by the Superior Courts?

28

Although the "notice-pleading standard of Federal Rule of Civil Procedure 8(a) applies in antitrust cases [citations], plaintiffs must nonetheless allege sufficient facts to support the elements of a § 1 violation in order to survive a motion to dismiss." *eMag Solutions, LLC, v. Toda Kogyo Corp.*, 426 F. Supp. 2d. 1050, 1054-55 (N.D. Cal. 2006). Plaintiffs have not met that threshold requirement for pleading a "plausible" claim as to the Association Defendants. *See Twombly*, 550 U.S. at 570. Accordingly, the claims must be dismissed as to CBAA, ABC, and GSBAA.

     **D.**     **The CAC Fails to Allege Any Facts of Wrongdoing against Lexington, and Plaintiffs' Claims as to this Defendant Should Be Dismissed**

Defendant Lexington is similarly, but not precisely, situated to the Eighteen Defendants discussed above. As to the Eighteen Defendants, Plaintiffs have only alleged their states of incorporation, principal place of business, and agents for service of process in the introductory sections of the CAC. As to Lexington, Plaintiffs have similarly alleged its state of incorporation, its principal place of business, and its agent for service of process in the introductory sections of the CAC, but have included one other incidental allegation.

Specifically, Plaintiffs make the following single allegation: "As of January 2019, the website for Padilla Bail Bonds (License No. 1639213) states, on behalf of its surety, Lexington National Insurance: "The California Law mandated bail fee (also called premium) is 10% of the bail. This is non-refundable, but can be lowered to 8% if you qualify for the discount—if you're a veteran, union member or have a lawyer retained." CAC ¶ 94. There is no allegation that the statement on non-defendant Padilla's Bail Bonds' website is false (because it is not false), no allegation that Lexington reviewed and/or authorized the statement, and the statement of a single Lexington agent (out of hundreds in California alone) does not support any claim that Lexington conspired with other sureties to fix prices. As to Defendant Lexington, there have been no substantive facts alleged, and there is no likelihood at all that Plaintiffs can construct a claim against Lexington based on the single fact pleaded as described above.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

The facts alleged against Lexington are so minimal and non-substantive as to be virtually non-existent. Based on the law set forth in the preceding section, which will not be repeated to avoid redundancy, and given the complete absence of factual allegations of wrongdoing against Lexington, dismissal of Defendant Lexington is appropriate.

### E. The Claims against Danielson National Insurance Company Are Barred by the Statute of Limitations

The claims against Danielson National Insurance Company ("DNIC") are barred by the statute of limitations to the extent the CAC seeks to plead any claim against DNIC from before January 29, 2015. As set forth in the Joint Motion to Dismiss applicable to all Defendants, no tolling or other doctrine applies to prevent the application of the limitations period. There are also specific judicially-noticeable facts that reinforce and confirm that the statute of limitations requires dismissal of the action against DNIC.

For all the reasons stated in the Joint Motion (*see* Joint Motion at Section III.B), the conspiracy claims are utterly without merit and cannot and do not state a claim upon which relief can be granted. DNIC supplements those arguments in this brief to point out that, even if the CAC somehow did state a conspiracy claim (and it most certainly does not), a "full exit from an industry suffices to establish a *prima facie* case of withdrawal" from a supposed antitrust conspiracy. *In re Optical Disk Drive Antitrust Litig.*, Case No. 10-md-02143-RS, 2017 WL 6503743, at *7 (N.D. Cal. Dec. 18, 2017), *appeal dismissed sub nom. In re Optical Disk Drive Prod. Antitrust Litig.*, No. 18-15093, 2018 WL 7076882 (9th Cir. Nov. 26, 2018), *and appeal dismissed sub nom. In re Optical Disk Drive Prod. Antitrust Litig.*, No. 18-15090, 2018 WL 7107547 (9th Cir. Nov. 26, 2018). Claims of an alleged conspiracy cannot proceed where defendants "exited the [relevant] industry and cut all ties" before the limitations period. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. C-07-5944 JST, 2016 WL 8669891, at *8 (N.D. Cal. Aug. 22, 2016) (Tigar, J.) (citations omitted).

The Court may take judicial notice of matters of public record, including materials filed before the CDI. *Moore v. Navarro*, Case No. C 00-03213 MMC, 2004 WL 783104, at *2 (N.D. Cal. Mar. 31, 2004) (citing *Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir.

1986)); *see also Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, Case No. 16-cv-01864-EMC, 2016 WL 5407898, *2 (N.D. Cal. Sept. 28, 2016) (taking judicial notice of decision by the California Insurance Commissioner because their existence is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned); *see also Faragi v. Provident Life & Acc. Inc. Co.*, 161 Fed. Appx. 649, 650 (9th Cir. 2005) (taking judicial notice of records from the California Insurance Commissioner).

Here, judicially noticeable facts make clear that DNIC exited the bail bond industry prior to the limitations period. As found by Sayaka T. Dillon, CFE, Examiner-In-Charge, Senior Insurance Examiner, and Edward D. Aros, CFE, Senior Insurance Examiner, Supervisor, for the Department of Insurance for the State of California, DNIC placed its entire business into "run-off" in 2012 and ceased accepting new policy applications. *See* Ex. 6 to RJN (Report of Examination of the Danielson National Insurance Company as of December 31, 2014, CDI (May 16, 2016) *available at* http://www.insurance.ca.gov/0250-insurers/0300-insurers/0400-reports-examination/upload/2014-Report-of-Exam-Danielson-National-Ins-Co-Revised-5-23.pdf). Thus, because DNIC ceased issuing bail bonds years prior to January 29, 2015, the four-year statute of limitations requires dismissal of all claims against DNIC.[9]

## IV.    CONCLUSION

For the foregoing reasons, and in addition to those set forth in the Defendants' Joint Motion to Dismiss the CAC, the Individual Defendants, the Association Defendants, the Eighteen Defendants, and Lexington National Insurance Corporation ask this Court to dismiss the CAC with prejudice as to each of them.

---

[9] In industry terminology, bonds may still have "issued" until some point in 2013, but DNIC exited the business, as noted by the Report of Examination, well before the statutory period when it went into run-off and ceased accepting new policy applications in 2012.

Dated: July 15, 2019                    ROPERS, MAJESKI, KOHN & BENTLEY

                                        By: */s/ Nicole S. Healy*_____

                                            TODD A. ROBERTS
                                            NICOLE S. HEALY
                                            EDWIN B. BARNES

                                        Attorneys for Defendants
                                        AMERICAN BAIL COALITION, INC. and WILLIAM B.
                                        CARMICHAEL


Dated: July 15, 2019                    By: */s/ Paul J. Riehle*_____

                                            Paul J. Riehle (115199)
                                            DRINKER BIDDLE & REATH LLP
                                            4 Embarcadero Center, 27th Floor
                                            San Francisco, California 94111
                                            Telephone: (415) 551-7521
                                            Facsimile: (415) 551- 7510
                                            paul.riehle@dbr.com

                                        Attorneys for Defendant
                                        ACCREDITED SURETY AND CASUALTY COMPANY,
                                        INC.


Dated: July 15, 2019                    By: */s/ Blake Zollar*_____

                                            Drew Koning (263082)
                                            Blake Zollar (268913)
                                            Shaun Paisley (244377)
                                            KONING ZOLLAR LLP
                                            2210 Encinitas Blvd., Suite S
                                            Encinitas, CA 92024
                                            Telephone: (858) 252-3234
                                            Facsimile: (858) 252-3238
                                            drew@kzllp.com
                                            blake@kzllp.com
                                            shaun@kzllp.com

                                        Attorneys for Defendant
                                        ALL-PRO BAIL BONDS, INC.

Dated: July 15, 2019                    By:    /s/  Gerard G. Pecht

                                            Gerard G. Pecht (pro hac vice admission)
                                            NORTON ROSE FULBRIGHT US LLP
                                            1301 McKinney, Suite 5100
                                            Houston, Texas  77010
                                            Telephone:  (713) 651-5151
                                            Facsimile:  (713) 651-5246
                                            gerard.pecht@nortonrosefulbright.com

                                            Joshua D. Lichtman (SBN 176143)
                                            NORTON ROSE FULBRIGHT US LLP
                                            555 South Flower Street, Forty-First Floor
                                            Los Angeles, California  90071
                                            Telephone:  (213) 892-9200
                                            Facsimile:  (213) 892-9494
                                            joshua.lichtman@nortonrosefulbright.com

                                        Attorneys for Defendant
                                        AMERICAN CONTRACTORS INDEMNITY COMPANY

Dated: July 15, 2019                    By:    /s/  Gregory S. Day

                                            Gregory S. Day
                                            LAW OFFICES OF GREGORY S. DAY
                                            120 Birmingham Drive, Suite 200
                                            Cardiff, CA  92007
                                            Telephone:  (760) 436-2827
                                            attygsd@gmail.com

                                        Attorneys for Defendants
                                        CALIFORNIA BAIL AGENTS ASSOCIATION,
                                        UNIVERSAL FIRE & INSURANCE COMPANY, and SUN
                                        SURETY INSURANCE COMPANY

Dated: July 15, 2019                    By:    /s/  Erik K. Swanholt

                                            Erik K. Swanholt
                                            FOLEY & LARDNER
                                            555 South Flower St., 33rd Floor
                                            Los Angeles, CA 90071
                                            Telephone:  (213) 972-4500
                                            Facsimile:  (213) 486-0065

                                        Attorneys for Defendants
                                        CONTINENTAL HERITAGE INSURANCE COMPANY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4838-1322-2556.1

- 21 -

MEMO. PTS & AUTHS ISO CERTAIN DEFTS.' CONSOL.
MOT. TO DISMISS CAC- 19-CV-00717-JST

Dated: July 15, 2019          By: _/s/ John Hamill_____

                                        Julie A. Gryce (319530)
                                        DLA Piper LLP (US)
                                        401 B Street, Suite 1700
                                        San Diego, CA 92101-4297
                                        Telephone: (619) 699-2700
                                        Facsimile: (619) 699-2701
                                        julie.gryce@dlapiper.com

                                        Michael P. Murphy (pro hac vice)
                                        DLA PIPER LLP (US)
                                        1251 Avenue of the Americas
                                        New York, NY 10020-1104
                                        Telephone: (212) 335-4500
                                        Facsimile: (212) 335-4501
                                        michael.murphy@dlapiper.com

                                        John Hamill (pro hac vice)
                                        DLA Piper LLP (US)
                                        444 West Lake Street, Suite 900
                                        Chicago, IL 60606-0089
                                        Telephone: 312.368.7036
                                        Facsimile: 312.251.5809
                                        John.hamill@us.dlapiper.com

                                        Attorneys for Defendant
                                        DANIELSON NATIONAL INSURANCE COMPANY

Dated: July 15, 2019          By: _/s/ Michael D. Singletary_____

                                        James Mills (203783)
                                        LAW OFFICE OF JAMES MILLS
                                        1300 Clay Street, Suite 600
                                        Oakland, CA 94612-1427
                                        Telephone: (510) 521-8748
                                        Facsimile: (510) 277-1413
                                        james@jamesmillslaw.com

                                        Michael D. Singletary (pro hac vice)
                                        Shannon W. Bangle (pro hac vice)
                                        Brian C. Potter (pro hac vice)
                                        BANGLE & POTTER, PLLC
                                        604 W. 13th Street
                                        Austin, TX 78701
                                        Telephone: (512) 270-4844
                                        Facsimile: (512) 270-4845
                                        Michael@banglepotter.com
                                        Shannon@banglepotter.com
                                        Brian@banglepotter.com

                                        Attorneys for Defendant
                                        FINANCIAL CASUALTY & SURETY, INC.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  Dated: July 15, 2019                By:    /s/  John M. Rorabaugh

2                                             John M. Rorabaugh (178366)

3                                      Attorney for Defendant
                                       GOLDEN STATE BAIL ASSOCIATION
4

5  Dated: July 15, 2019                By:    /s/  Gary A. Nye
                                       ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP
6                                      Gary A. Nye (126104)

7                                      Attorneys for Defendants
                                       HARCO NATIONAL INSURANCE COMPANY,
8                                      BANKERS INSURANCE COMPANY, LEXINGTON
                                       NATIONAL INSURANCE CORPORATION, and JERRY
9                                      WATSON

10

11 Dated: July 15, 2019                John A. Sebastinelli (127859)
                                       Howard Holderness (169814)
12                                     Greenberg Traurig, LLP

13                                       By:   /s/  Howard Holderness
                                               John A. Sebastinelli (127859)
14                                             Howard Holderness (169814)

15                                     Attorneys for Defendant
                                       INDIANA LUMBERMENS MUTUAL INSURANCE
16                                     COMPANY

17

18 Dated: July 15, 2019                By:    /s/  Renee Choy Ohlendorf

19                                     Renee Choy Ohlendorf
                                       Hinshaw & Culbertson LLP
20                                     One California Street, 18th Floor
                                       San Francisco, CA 94111
21                                     Main: (415) 362-6000
                                       Direct: (415) 393-0122
22                                     RChoy@hinshawlaw.com

23                                     Christie A. Moore
                                       Bingham Greenebaum Doll LLP
24                                     3500 PNC Tower
                                       101 South Fifth Street
25                                     Louisville, KY 40202
                                       Direct: (502) 587-3758
26                                     CMoore@bgdlegal.com

27                                     Attorneys for
                                       LEXON INSURANCE COMPANY

28

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*Redwood City*

Dated: July 15, 2019                    By:   /s/ Travis Wall

                                        Travis Wall (191662)
                                        Spencer Kook (205304)
                                        HINSHAW & CULBERTSON LLP
                                        One California Street, 18th Floor
                                        San Francisco, CA 94111
                                        Tel: (415) 362-6000
                                        twall@hinshawlaw.com

                                        *Attorneys for Defendant*
                                        PHILADELPHIA REINSURANCE CORPORATION


Dated: July 15, 2019                    By:   /s/ David F. Hauge

                                        David F. Hauge (128294)
                                        Todd H. Stitt (179694)
                                        Vincent S. Loh (238410)
                                        MICHELMAN & ROBINSON, LLP

                                        *Attorneys for Defendants*
                                        UNITED STATES FIRE INSURANCE COMPANY, THE
                                        NORTH RIVER INSURANCE COMPANY, and SENECA
                                        INSURANCE COMPANY


Dated: July 15, 2019                    SMITH, GAMBRELL & RUSSELL, LLP

                                        By:   /s/ Anne K. Edwards
                                           Anne K. Edwards (110424)
                                           aedwards@sgrlaw.com
                                           444 South Flower Street, Suite 1700
                                           Los Angeles, CA 90071
                                           Tel: (213) 358-7210
                                           Fax: (213) 358-7310

                                        Attorneys for Defendant
                                        WILLIAMSBURG NATIONAL INSURANCE COMPANY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Nicole S. Healy, attest that concurrence in the filing of this document has been obtained from the other signatories.   Executed on July 15, 2019, in Redwood City, California.

/s/ Nicole S. Healy
Nicole S. Healy

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City