Dean M. Harvey (SBN 250298)
Katherine Lubin (SBN 259826)
Adam Gitlin (SBN 317047)
Yaman Salahi (SBN 288752)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
dharvey@lchb.com
kbenson@lchb.com
agitlin@lchb.com
ysalahi@lchb.com

*Interim Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Master File No. 3:19-CV-000717-JST<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TEMPORARILY STAYING DISCOVERY PENDING RESOLUTION OF MOTIONS TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:     The Honorable Jon S. Tigar |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.     Blanket Stays of Discovery Pending Motions to Dismiss Are Disfavored,
Including in Antitrust Cases ................................................................................ 2

II.    Defendants' Legal Arguments Will Fail, and in Any Event Fact Discovery Would
Assist the Court in Addressing Them ............................................................... 5

III.   Discovery Should Proceed to Safeguard Against Spoliation of Evidence ....................... 6

CONCLUSION ..................................................................................................................... 8

# TABLE OF AUTHORITIES

Page

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988) ................................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................... 1, 3, 4

*Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*,
445 U.S. 97 (1980) .................................................................................................... 5

*Cellular Plus, Inc., v. Super. Ct.*,
14 Cal. App. 4th 1224 (1993) ................................................................................... 5

*Gray v. First Winthrop Corp.*,
133 F.R.D. 39 (N.D. Cal. 1990) ................................................................................ 3

*Group Life & Health Ins. Co. v. Royal Drug Co.*,
440 U.S. 205 (1979) .................................................................................................. 5

*Harman v. Valley Nat'l Bank of Ariz.*,
339 F.2d 564 (9th Cir. 1964)..................................................................................... 6

*Hoover v. Ronwin*,
466 U.S. 558 (1984) .................................................................................................. 5

*In re Broiler Chicken Antitrust Litig.*,
No. 1:16-CV-08637, 2017 WL 4417447 (N.D. Ill. Sept. 28, 2017) ......................... 7

*In re Flash Memory Antitrust Litig.*,
2008 WL 62278 ......................................................................................................... 3

*In re Graphics Processing Units Antitrust Litig.*,
No. C 06-07417 WHA, 2007 WL 2127577 (N.D. Cal. July 24, 2007) ..................... 3

*In re Lithium Ion Batteries Antitrust Litigation*,
2013 WL 2237887 (N.D. Cal. May 21, 2013) .......................................................... 4

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
232 F.3d 979 (9th Cir. 2000)..................................................................................... 5

*Kor Media Grp., LLC v. Green*,
294 F.R.D. 579 (D. Nev. 2013)............................................................................. 3, 7

*MacKay v. Superior Court*,
188 Cal. App. 4th 1427 (2008) ................................................................................. 6

*N.C. Bd. of Dental Examiners v. FTC*,
135 S. Ct. 1101 (2015) .............................................................................................. 5

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
2018 WL 1569811 (N.D. Cal. Feb. 16, 2018) ................................................... 3, 4, 5

*Perez v. State Farm Auto Ins. Co.*,
391 Fed. Appx. 653 (9th Cir. 2010)........................................................................... 6

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987)..................................................................................... 4

*San Francisco Tech. v. Kraco Enters.*,
No. 11-355, 2011 U.S. Dist. LEXIS 59933 (N.D. Cal. June 6, 2011) ...................... 3

**TABLE OF AUTHORITIES**
(continued)

Page

*Singh v. Google, Inc.*,
   No. 16-CV-03734-BLF, 2016 WL 10807598 (N.D. Cal. Nov. 4, 2016) ................................. 3, 4

*Skellerup Indus. Ltd. v. City of L.A.*,
   163 F.R.D. 598 (C.D. Cal. 1995) .................................................................................. 3, 6

*Tr. of Springs Transit Co. Employee's Ret. & Disability Plan v. City of Colorado Springs*,
   No. 09-cv-02842-WYD-CBS, 2010 WL 1904509 (D. Colo. May 11, 2010) ............................ 2

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ...................................................................................................... 4

*Wood v. McEwen*,
   644 F.2d 797 (9th Cir. 1981) .......................................................................................... 3

*Yiren Huang v. Futurewei Tech., Inc.*,
   2018 WL 1993503 (N.D. Cal. Apr. 27, 2018) .................................................................. 7

**Statutes**

15 U.S.C. § 77z-1(b)(1) ....................................................................................................... 3

15 U.S.C. § 78u-4(b)(3)(B) .................................................................................................. 3

Cal. Ins. Code Section 1861.05(a) ....................................................................................... 6

**Rules**

Fed. R. Civ. P. 26(c) ........................................................................................................... 2

Fed. R. Civ. P. 26(f) .................................................................................................... 1, 2, 8

**Treatises**

Antitrust Guidelines for International Enforcement and Cooperation, United States Department of
   Justice and Federal Trade Commission (Jan. 13, 2017),
   https://www.justice.gov/atr/internationalguidelines/download ................................... 8

California Department of Insurance, Recommendations for California's Bail System (Feb. 2018),
   http://www.insurance.ca.gov/01-consumers/170-bail-bonds/upload/CDI-Bail-Report-Draft-2-8-
   18.pdf ......................................................................................................................... 2

Northern District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored
   Information ............................................................................................................ 1, 2, 7

## INTRODUCTION

Defendants' motion to stay should be denied. This is not a case, like *Twombly*, that relies upon parallel behavior alone to infer a conspiracy. Here, Defendants' own high-ranking officers boasted publicly about how they "addressed" the "cancer" of price competition, through "a cohesive band of agents and companies whose power, when combined, far exceeded the power of an unorganized group of single businesses." CAC ¶¶ 75-77. Defendant William B. Carmichael, President and CEO of Defendant American Surety Company and current Chairman of Defendant American Bail Coalition, could not have been clearer. At the start of the class period, Carmichael warned the bail industry that they could not allow "competitive forces to continue to encroach upon our markets." *Id.* ¶ 78. He knew then that unless the industry "worked collectively to repel" "premium discounting," "simple economics dictate[d]" that their supracompetitive pricing would be "replaced by a new model that properly reflects the balance of risk and reward." *Id.* Though a variety of means, the California bail industry accomplished Carmichael's goal of preventing the effects of "simple economics." *Id.* ¶¶ 66-120. As Michael J. Whitlock, Vice President of Defendant American Surety Company, bragged in 2017, the "cooperation among industry competitors at both the agency and surety level has been nothing short of inspiring." *Id.* ¶ 87.

For decades, Defendants have colluded to deprive California consumers of competitively priced bail bonds, preying on the most vulnerable among us at their moment of greatest duress. It is time for this conspiracy to end, and Defendants offer no legitimate reason to delay this reckoning. Since this action was filed nearly seven months ago on January 29, 2019, Defendants have failed to engage in discovery of any kind, including refusing to provide information required under Federal Rule of Civil Procedure 26(f) and the Northern District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information ("26(f) Checklist"). *See* Gitlin Dec. Exs. A, B, & C.

In particular, Plaintiffs are concerned that Defendants may have failed to take adequate measures to preserve evidence of their conspiracy. As the California Department of Insurance found, the bail industry is rife with misconduct:

1

2

3

4

5

6

7

> Subjects of recent bail complaints and enforcement actions include: receiving stolen property/contraband in lieu of premium collected; bribery and money laundering; gang conspiracy and/or criminal enterprise; kidnapping and false imprisonment for purposes of extortion; perjury and filing false documents; unlicensed activity/illegal solicitation; using jail inmates and jail staff as recruiters for bail transactions; theft or embezzlement of collateral or premium; creating of fake or false bail bonds; website misrepresentation and/or misdirection; dishonest advertising; and abuse of unmonitored attorney-client jail visiting rooms. The manner and volume of these complaints suggest that not only is the industry in need of reform but the general population is also at some risk of being victimized by unscrupulous bail agents.

8

9

10

California Department of Insurance, Recommendations for California's Bail System (Feb. 2018), http://www.insurance.ca.gov/01-consumers/170-bail-bonds/upload/CDI-Bail-Report-Draft-2-8-18.pdf.  This industry should not be trusted to preserve evidence of its own unlawful behavior.

11

12

13

14

15

Indeed, Defendants have only confirmed Plaintiffs' concerns.  In their motion to stay discovery, Defendants appear to admit that they have not searched, collected, processed, or even stored potentially responsive documents.  Dkt. 59 at 7.  If all Defendants have done is issue preservation letters to certain employees, these often "unscrupulous" individuals have had nearly seven months to destroy potentially incriminating documents.

16

17

18

19

20

21

If Defendants have their way, they will have at least another three months (the hearing on their motions to dismiss is scheduled for October 16; Dkt. 60) before they disclose any information about their preservation efforts.  Even if the Court otherwise stays discovery, Defendants should provide the information required under Rule 26(f) and the Northern District Checklist so Plaintiffs can evaluate the steps Defendants have taken to preserve evidence, and bring any issues to the Court's attention.

22

23

24

## ARGUMENT

**I.**     **Blanket Stays of Discovery Pending Motions to Dismiss Are Disfavored, Including in Antitrust Cases**

25

26

27

28

As Defendants note, Rule 26(c) requires that the party moving for a protective order must offer good cause, Dkt. 59 at 4, and "cannot sustain that burden simply by offering conclusory statements." *Tr. of Springs Transit Co. Employee's Ret. & Disability Plan v. City of Colorado Springs*, No. 09-cv-02842-WYD-CBS, 2010 WL 1904509, at *4 (D. Colo. May 11, 2010). "A

1807034.3

1    party seeking to stay discovery carries the heavy burden of making a strong showing why

2    discovery should be denied. . . ."  *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev.

3    2013).  In the Rule 12 context, discovery should be stayed only when the court "is convinced that

4    the plaintiff will be unable to state a claim for relief."  *Wood v. McEwen*, 644 F.2d 797, 801 (9th

5    Cir. 1981).

6         Courts in the Northern District frown upon blanket stays of discovery based on Rule 12

7    motions.  *See, e.g.*, *San Francisco Tech. v. Kraco Enters.*, No. 11-355, 2011 U.S. Dist. LEXIS

8    59933, at * 5 (N.D. Cal. June 6, 2011) (citing *Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D.

9    598, 600-601 (C.D. Cal. 1995)) ("Had the Federal Rules contemplated that a motion to dismiss

10   under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that

11   effect."); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).  Thus, "blanket stays

12   of all discovery matters are an exception to the rules rather than enunciated in the rules."

13   *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 2018 WL 1569811, at *1 (N.D. Cal. Feb.

14   16, 2018) (denying motion to stay discovery); *Singh v. Google, Inc.*, No. 16-CV-03734-BLF,

15   2016 WL 10807598, at *1 (N.D. Cal. Nov. 4, 2016) (same).  The absence of a stay provision in

16   Rule 12 or Rule 26 is particularly significant because Congress has specifically provided for such

17   a stay in cases arising under the federal securities laws, but not in other civil cases.  *See* 15 U.S.C.

18   §§ 77z-1(b)(1), 78u-4(b)(3)(B).

19        The broad judicial preference against blanket stays extends to antitrust cases.  Defendants

20   cite *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) to argue that in complex antitrust cases

21   there should be no discovery while motions to dismiss are pending.  *See* Dkt. 59. at 6-7.

22   Defendants are wrong.  *Twombly* "does not compel a blanket stay of all discovery in antitrust

23   cases pending resolution of motions to dismiss."  *In re Graphics Processing Units Antitrust Litig.*,

24   No. C 06-07417 WHA, 2007 WL 2127577, at *1 (N.D. Cal. July 24, 2007); *In re Flash Memory

25   Antitrust Litig.*, 2008 WL 62278, at *3 ("The Court did not hold [in *Twombly*], implicitly or

26   otherwise, that discovery in antitrust actions is stayed or abated until after a complaint survives a

27   Rule 12(b)(6) challenge.  Such a reading of that opinion is overbroad and unpersuasive.").

28        In *Optronic Technologies*, for example, the defendants moved to stay discovery in a case

1807034.3

1   alleging, inter alia, a horizontal price-fixing conspiracy. 2018 WL 1569811, at *1.  The

2   defendants presented essentially the same arguments Defendants make here (that the motion

3   could be dispositive, that fact discovery wasn't strictly necessary to deciding the motion, and that

4   "antitrust discovery can be costly").  The court rejected the defendants' arguments because they

5   had "not offered a particularized showing describing why discovery in this case is any more

6   burdensome than it is on parties to other civil litigations." *Id.* at *2; *see also Singh*, 2016 WL

7   10807598, at *2 ("Google fails to identify any discovery burdens, and offers no particular or

8   specific facts to support its assertion that a stay would be necessary to spare the parties or the

9   Court from the 'burden' of discovery.").  In support of its decision the court noted that "the

10  allegations and theories presented here are not novel or particularly complex." *Optronic Techs.*,

11  2018 WL 1569811, at *2.  So too here: Defendants have offered one conclusory sentence on

12  burden (Dkt. 59 at 7-8) that raises more questions than it answers, and as this Court observed at

13  the first case management conference, this case's theory is not "novel"—rather, "this is a

14  horizontal price fixing case." 4/24/2019 Hr'g Tr. 6:16.  Price-fixing is subject to per se

15  condemnation, not a complex rule of reason inquiry.  It is the "supreme evil of antitrust." *Verizon*

16  *Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004).

17         Defendants rely on *In re Lithium Ion Batteries Antitrust Litigation*, 2013 WL 2237887

18  (N.D. Cal. May 21, 2013).  Not only did the court there echo the cases cited above on the

19  impropriety of automatic blanket stays post-*Twombly*, but the stay it granted was limited; the

20  defendants were required to produce numerous documents even though they had not yet moved to

21  dismiss. *Id.* at *1.  Defendants' invocation of *Rutman Wine Co. v. E. & J. Gallo Winery*, 829

22  F.2d 729 (9th Cir. 1987), is similarly inapt.  *Rutman* did not review the propriety of a discovery

23  stay pending a motion to dismiss.  Rather, the district court *had already granted* the motion to

24  dismiss, and the plaintiff sought "permission to conduct discovery prior to the filing of any

25  amendment." *Id.* at 738.  *Rutman* did not create an automatic discovery stay in antitrust cases

26  pending resolution of a motion to dismiss.

27

28

1

2

**II.     Defendants' Legal Arguments Will Fail, and in Any Event Fact Discovery Would Assist the Court in Addressing Them**

3

4

5

6

7

8

While Defendants assert that a stay is appropriate because their motions do not require the resolution of fact issues (Dkt. 59 at 6), this is true of all Rule 12(b)(6) motions to dismiss, by definition.  As another court in this district explained:  "Defendants are . . . correct to state that a motion to dismiss under Rule 12(b)(6) is generally decided with reference only to the complaint. The accuracy of that statement is of no moment, though, because granting a stay on such a basic notion is unwarranted."  *Optronic Techs.*, 2018 WL 1569811, at *2.

9

10

11

12

13

14

Regardless, a brief overview of Defendants' legal arguments establishes their lack of merit.  First, Defendants' McCarran-Ferguson Act argument fails as a matter of law, primarily because the Act does not protect horizontal agreements between insurers in restraint of trade.  *See generally Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979).  The alleged anticompetitive agreement between sureties is not the "business of insurance," *id.* at 217, and is therefore subject to the antitrust laws.

15

16

17

18

19

20

21

22

23

24

Second, under the state action doctrine, Defendants, as non-state actors, would have to establish both a clearly articulated state policy displacing competition, and active supervision by the state.  *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 104 (1980). The suggestion of such a policy is, as Plaintiffs' opposition will explain, baseless, especially given how narrowly the exemption is construed.  *N.C. Bd. of Dental Examiners v. FTC*, 135 S. Ct. 1101, 1110 (2015).  But even if Defendants could establish that such a policy existed, active supervision, or lack thereof, cannot be demonstrated without a factual record.  *See, e.g.*, *Hoover v. Ronwin*, 466 U.S. 558, 568 (1984) ("Closer analysis is required when the activity at issue is not directly that of" the State itself, but rather "is carried out by others pursuant to state authorization.").

25

26

27

28

Third, Defendants' filed-rate doctrine challenge fails.  As applied to Plaintiffs' Cartwright Act claim, it fails because California does not recognize the doctrine.  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 993 (9th Cir. 2000); *Cellular Plus, Inc., v. Super. Ct.*, 14 Cal. App. 4th 1224 (1993).  As Plaintiffs will explain in their opposition to the motion to dismiss, the

1  law did not change with *MacKay v. Superior Court*, 188 Cal. App. 4th 1427, 1449 (2008), which

2  did not concern an antitrust violation.  The filed-rate doctrine also does not bar Plaintiffs'

3  Sherman Act claim, because Defendants' filed rates and the post-filing rebates (or lack thereof)

4  challenged by this case are distinct issues and practices.  CDI does not approve or disapprove

5  rebates.  The Court's review of an anti-rebating conspiracy does not require the Court to step in

6  the shoes of CDI to determine what rate it would have approved.

7         Fourth, Defendants claim CDI has exclusive jurisdiction to consider the Cartwright Act

8  claims but ignored Plaintiffs' observation in the Joint Case Management statement that CDI "by

9  statute cannot consider 'the degree of competition' in its review of the submitted rate."  Dkt. 18 at

10  3 (quoting Cal. Ins. Code Section 1861.05(a)).  Nor does the Insurance Code protect Defendants

11  from antitrust claims.  *See, e.g.*, *Perez v. State Farm Auto Ins. Co.*, 391 Fed. Appx. 653 (9th Cir.

12  2010).  This argument, even if accepted, would not dispose of Plaintiffs' Sherman Act claim.

13         Finally, Defendants' *Noerr-Pennington* argument relies upon a misreading of the CAC.

14  Defendants' conspiracy to minimize premium discounting has nothing to do with submissions to

15  the CDI, since the CDI does not approve rebates.  Further, Plaintiffs do not allege that

16  Defendants' jointly lobbied CDI to approve a uniform rate; rather, they agreed in secret (CAC

17  ¶ 124), and then separately filed rates to effectuate aims of a conspiracy that preceded the

18  "petitioning" and was part of a broader scheme.  That is not protected conduct.  *See Harman v.*

19  *Valley Nat'l Bank of Ariz.*, 339 F.2d 564, 566 (9th Cir. 1964); *see also Allied Tube & Conduit*

20  *Corp. v. Indian Head, Inc.*, 486 U.S. 492, 503 (1988) ("We cannot agree with petitioner's

21  absolutist position that the *Noerr* doctrine immunizes every concerted effort that is genuinely

22  intended to influence governmental action. If all such conduct were immunized then, for example,

23  competitors would be free to enter into horizontal price agreements as long as they wished to

24  propose that price as an appropriate level for governmental ratemaking or price supports.").

25  **III.**    **Discovery Should Proceed to Safeguard Against Spoliation of Evidence**

26         Defendants' motion lacks not only legal support, but also the proper factual predicate; as

27  discussed above, they have supplied only "stereotyped or conclusory statements" about burden,

28  namely a single sentence.  *See Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600 (C.D.

1807034.3

PTFS' OPP TO DFDTS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER 3:19-CV-000717-JST

1   Cal. 1995); *cf. Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 583 (D. Nev. 2013) ("The fact

2   that discovery may involve inconvenience and expense is not sufficient, standing alone, to

3   support a stay of discovery.").  In cases with more substantiated arguments, courts have

4   nevertheless denied motions to stay discovery pending adjudication of a motion to dismiss,

5   "balancing the benefit and burden of certain steps or tasks preparatory to full discovery."  *In re*

6   *Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2017 WL 4417447, at *4 (N.D. Ill. Sept.

7   28, 2017) ("Even the cases cited by . . . Defendants recognize that courts need not stay discovery

8   in antitrust cases solely because a motion to dismiss has been filed.").

9           While Defendants have offered no particularized basis or burden in support of staying

10   discovery, their motion to stay leads Plaintiffs to question whether they are properly preserving

11   evidence.  *Cf. Yiren Huang v. Futurewei Tech., Inc.*, 2018 WL 1993503, at *4 (N.D. Cal. Apr. 27,

12   2018) (no prejudice from "limited stay" where "minimal concern on evidence preservation").

13   Defendants, in their one sentence attempting to describe the burden of proceeding with discovery,

14   say that "[t]he burden on 30 Defendants of searching for, collecting, processing, storing on

15   servers or in physical locations, among other work associated with collecting 15 years' worth of

16   potentially responsive discovery will be enormous." Dkt. 59 at 7-8.  Defendants thus

17   acknowledge that despite Plaintiffs' detailed preservation letters, *see, e.g.*, Gitlin Decl. Ex. D, and

18   despite being ordered to "take reasonable steps to preserve all documents, data, and tangible

19   things containing information potentially relevant to the subject matter of this litigation," Dkt. 29

20   at 4, they appear to have done nothing of the sort.  Defendants' statement suggests they have not

21   even sequestered relevant documents and ESI from individual custodians' control.

22           At the very least, Defendants should provide the information required in the

23   26(f) Checklist, such as the "ranges of creation or receipt dates for any ESI to be preserved"; the

24   "number of custodians for whom ESI will be preserved"; the "list of systems, if any, that contain

25   ESI not associated with individual custodians and that will be preserved, such as enterprise

26   databases"; "[d]escription of systems in which potentially discoverable information is stored";

27   "[h]ow potentially discoverable information is stored"; and "[h]ow discoverable information can

28   be collected from systems and media in which it is stored."  A complete 26(f) conference should

1   occur as soon as possible so that Plaintiffs may learn of any preservation issues and bring them to

2   the Court's attention if necessary.  *See* Northern District of California Guidelines for the

3   Discovery of Electronically Stored Information ("At the outset of a case, or sooner if feasible,

4   counsel for the parties should discuss preservation.").  There is no legitimate reason for

5   Defendants' refusal to provide this information.

6        When government enforcers investigate price-fixing, defendants' first notice is commonly

7   upon a "dawn raid" when FBI agents enter their offices and seize potentially relevant material,

8   sometimes timed to occur simultaneously in multiple jurisdictions to "minimize the risk of

9   document destruction[.]"  Antitrust Guidelines for International Enforcement and Cooperation,

10  United States Department of Justice and Federal Trade Commission (Jan. 13, 2017) at 49,

11  https://www.justice.gov/atr/internationalguidelines/download.  Plaintiffs, of course, have no such

12  power.  Instead, Plaintiffs rely upon the protections of the Federal Rules of Civil Procedure and

13  the Northern District's Local Rules and guidance.  Those protections are premised upon an

14  informed and thorough 26(f) conference that Defendants have refused to conduct.  This status quo

15  should not continue.

16                              **CONCLUSION**

17       For the foregoing reasons, Defendants' motion should be denied.

18  Dated:  July 22, 2019              Respectfully submitted,

19

20                              */s/ Dean M. Harvey*
                                Dean M. Harvey (SBN 250298)
21                              Katherine Lubin (SBN 259826)
                                Adam Gitlin (SBN 317047)
22                              Yaman Salahi (SBN 288752)
                                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
23                              275 Battery Street, 29th Floor
                                San Francisco, CA 94111
24                              Telephone: (415) 956-1000
                                dharvey@lchb.com
25                              kbenson@lchb.com
                                agitlin@lchb.com
26                              ysalahi@lchb.com

27                              *Interim Class Counsel*

28

1807034.3                           - 8 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2019, I caused the foregoing to be electronically filed and
served with the Clerk of the Court using the CM/ECF system to all parties of record.


DATED:  July 22, 2019          */s/ Dean M. Harvey*
                               DEAN M. HARVEY
                               LIEFF CABRASER HEIMANN & BERNSTEIN, LLP