# EXHIBIT 1

# The coming year….what does it bring?

William B. Carmichael, President and CEO
American Surety Company
March 2005

  2005. Just writing it makes me feel old. Hopefully, the coming year will bring continued health and profit to our readers.

  The year certainly appears to be starting off on an accelerated basis. Legislatures for many states have convened and commenced activities. Numerous drafts of bills are crossing my desk, many seeking to create or expand pretrial release or various cash deposit options. 2005 will not be a year when we, as an industry, can sit passively by while competitive forces continue to encroach upon our markets.

  The coming year also yields a continuing trend by our agent partners in many parts of the U.S. to provide premium credit or rate discounting in order to be perceived as competitive.

  I certainly don't know which is more damaging or troublesome for our industry. Both seem to strike at the core foundational principals of our business. If past history is our guide, legislative efforts to contract or restrict our business invariably are met by a groundswell of resistance, both at local, state and national levels. Agents and companies stand side by side with both the people and the financial resources necessary to contain or overcome the ever-expanding government funded encroachment into our industry.

  Why the expansion efforts in pre-trial and cash deposit programs? Probably a combination of our industry's failure to communicate our message clearly at the local level with respect to our ability to perform an integral service to the criminal justice system coupled with the misconception that jail-overcrowding can be alleviated and/or eliminated by quick release methods like OR and cash bonding. Not to be overlooked is the widespread fiscal weakness being experience by many, if not all, local economies. Such efforts are undertaken while paying little to no heed to corresponding crippling fiscal impact that an expansion of the government in this area brings to the local taxpayer. Nor is attention called to the most salient fact of all, that these methods of release are simply far inferior in their ability to perform the precise purpose of their creation, the appearance of the criminal defendant, in court, at the proper time(s).

  Statistics prove consistently that compensated surety appearance bonds provide the best appearance rates of criminal defendants. Such appearance rates result in less cost to the taxpayer and less crime in the community. We all need to grasp this concept and recite it as our mantra in resisting such encroachments. Unfortunately, much of the progress to be gained in this battle is to be done at the local government level. Agents must be our industry's eyes, ears and mouths in recognizing and alerting all to the impending attack. When you become aware of a situation, please contact us so that we may assess the depth of the threat and work alongside of you to craft an appropriate response.

  2005 also will see a regrettable upswing in the trend of rate discounting, both legal and illegal. Advocates argue that the market dictates that they charge and collect less than the filed rate. Regrettably, this naïve assertion fails to fully grasp all of the variables that have been used to determine the original rate filing. Surety companies have continued to accept less and less as their share of the premium in the form of higher and higher commission rates to the agents. Agents continue to be expected to be responsible for 100% of their own losses. Any extension of credit by the agent to the consumer is naturally out of the agent's commission. The financial

strength of the bail agent continues to weaken over time, only to be masked in the short-term by being able to increase writings.

Eventually, the surety market is going to realize that the party who is expected to provide first dollar loss payment (the agent) has been so financially weakened as to be incapable of doing so, regardless of the extremely high commission rate. Something will have to give. Sureties will not stand still for incurring losses directly while being compensated as a secondary guarantor. Decisions will be made by carriers to either leave the market entirely (as evidenced by our loss of a significant number of bail writers recently) or to consider alternative methods of distribution or compensation.

I can safely predict that if left unchecked, rampant premium discounting will result in the end of the bail bond business as we know it, to be replaced by a new model that properly reflects the proper balance of risk and reward. Simple economics dictates it.

I urge all of us to recognize the serious nature of the threats to our industry and work collectively to repel them. Leaving profit on the table, in the form of discounts or uncollected accounts receivable, is a fool's game. It reminds me of stripping the wood off the walls for a fire to stay warm. It works briefly but eventually you have no fire and no building.