1  COOLEY LLP
   MICHAEL A. ATTANASIO (151529)
2  (mattanasio@cooley.com)
   JON F. CIESLAK (268951)
3  (jcieslak@cooley.com)
   4401 Eastgate Mall
4  San Diego, CA  92121
   Telephone:   (858) 550-6000
5  Facsimile:    (858) 550-6420

6  BEATRIZ MEJIA (190948)
   (mejiab@cooley.com)
7  MAX SLADEK DE LA CAL (324961)
   (msladekdelacal@cooley.com)
8  101 California Street, 5th Floor
   San Francisco, CA 94111
9  Telephone:   (415) 693-2000
   Facsimile:    (415) 693-2222

10
   Attorneys for Defendants
11 SEAVIEW INSURANCE COMPANY
   and TWO JINN, INC.

12
   [Additional Moving Defendants and Counsel Listed on
13 Signature Pages]

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                   OAKLAND DIVISION

17

18 IN RE CALIFORNIA BAIL BOND            Master Docket No. 19-cv-00717-JST

19 ANTITRUST LITIGATION
                                         CLASS ACTION
20
                                         DEFENDANTS' REPLY MEMORANDUM OF
21 THIS DOCUMENT RELATES TO:             POINTS AND AUTHORITIES IN SUPPORT OF
                                         DEFENDANTS' JOINT MOTION TO DISMISS
22 ALL ACTIONS
                                         Judge:          Hon. Jon S. Tigar
23                                       Hearing Date:   October 16, 2019
                                         Courtroom:      6, 2nd Floor
24                                       Time:           2:00 p.m.
                                         Trial Date:     Not Set
25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT .................................................................................................... 1

    A.    The Insurance Code's Comprehensive Regulatory Framework Bars the Claims in the CAC as a Matter of Law ...................................................................... 1

        1.    The McCarran-Ferguson Act Bars the Sherman Act Claim .......................... 1

        2.    The State Action Doctrine Bars the Sherman Act Claim .............................. 3

        3.    The Filed Rate Doctrine Bars the Sherman Act and Cartwright Act Claims ........................................................................................................ 4

        4.    CDI's Exclusive Jurisdiction Bars the California Claims............................ 5

        5.    The Noerr-Pennington Doctrine Bars the Claims......................................... 6

    B.    The Antitrust Claims Should Be Dismissed for Failure to State a Claim.................. 7

        1.    The Opposition Ignores the CAC's Obligation to Plead Facts...................... 7

        2.    Plaintiffs Offer No Response to Other Key Pleading Deficiencies ................ 8

        3.    The CAC's Supposed "Plus Factors" Are Insufficient................................ 10

            a.    Market Factors Do Not Support the Purported Conspiracy.............. 10

            b.    The Allegations about Trade Associations Are Inadequate.............. 12

        4.    Dated Advocacy Articles Do Not Suggest a Conspiracy............................. 12

    C.    The UCL Claim Fails Along With Plaintiffs' Antitrust Claims ................................ 13

    D.    Plaintiffs' Claims Are Barred by the Statute of Limitations in Whole or in Part...... 13

        1.    Plaintiffs Failed to Plead Fraudulent Concealment ..................................... 13

        2.    The Discovery Accrual Rule Does Not Apply ............................................ 14

        3.    The CAC Fails to Allege Continuing Violation .......................................... 15

III.   CONCLUSION................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988) .......................................................................................................6

*In re Animation Workers Antitrust Litig.*,
87 F. Supp. 3d 1195 (N.D. Cal. 2015) .........................................................................15

*Bailey v. Memphis Bonding Co., Inc.*,
2019 WL 1300092 (W.D. Tenn. Mar. 21, 2019) ......................................................2, 3

*Barlow v. Safety Nat'l Cas. Corp.*,
856 F. Supp. 2d. 828 (M.D. La. 2012) ......................................................................2, 3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................7

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) .......................................................................................8

*Buckman v. Am. Bankers Ins. Co. of Fla.*,
924 F. Supp. 1156 (S.D. Fla. 1996) ...............................................................................2

*Callahan v. A.E.V., Inc.*,
947 F. Supp. 175 (W.D. Pa. 1996) .................................................................................7

*Carlin v. DairyAmerica, Inc.*,
705 F.3d 856 (9th Cir. 2013) .........................................................................................4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2016 WL 8669891 (N.D. Cal. Aug. 22, 2016) ...................................................9, 14, 15

*Cellular Plus, Inc. v. Super. Ct.*,
14 Cal. App. 4th 1224 (1993) ........................................................................................4

*Coll v. First Am. Title Ins. Co.*,
642 F.3d 876 (10th Cir. 2011) ...................................................................................6, 8

*Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*,
111 F.3d 1427 (9th Cir. 1996) .......................................................................................6

*E.W. French & Sons, Inc. v. General Portland Inc.*,
885 F.2d 1392 (9th Cir. 1989) .....................................................................................14

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......................................................................................11

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717-JST

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*F.T.C. v. Phoebe Putney Health Sys., Inc.,*
  568 U.S. 216 (2013) ................................................................................................................3

4

5

*In re Graphics Processing Unit Antitrust Litigation,*
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) .............................................................................12

6

7

*Group Life & Health Ins. Co. v. Royal Drug Co.,*
  440 U.S. 205 (1979) ................................................................................................................2

8

*Groves v. City of L.A.,*
  40 Cal. 2d 751 (1953) ............................................................................................................2

9

10

*Harman v. Valley Nat. Bank of Ariz.,*
  339 F.2d 564 (9th Cir. 1964) ..............................................................................................6

11

*Hexcel Corp. v. Ineos Polymers, Inc.,*
  681 F.3d 1055 (9th Cir. 2012) ...........................................................................................14

12

13

*Kelsey K. v. NFL Enters., LLC,*
  254 F. Supp. 3d 1140 (N.D. Cal. 2017) ...............................................................................8

14

15

*Kendall v. Visa U.S.A., Inc.,*
  518 F.3d 1042 (9th Cir. 2008) ........................................................................................7, 9

16

17

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
  232 F.3d 979 (9th Cir. 2000) ..............................................................................................4

18

*In re Late Fee & Over-Limit Fee Litig.,*
  528 F. Supp. 2d 953 (N.D. Cal. 2007) .................................................................................9

19

20

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.,*
  2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) ...................................................................14

21

22

*Lukovsky v. City & Cty. of San Francisco,*
  535 F.3d 1044 (9th Cir. 2008) ...........................................................................................13

23

*MacKay v. Super. Ct.,*
  188 Cal. App. 4th 1427 (2010) ......................................................................................4, 11

24

25

*Mercury Ins. Co. v. Lara,*
  35 Cal. App. 5th 82, 97 (2019) .............................................................................................2

26

27

*In re Musical Instruments and Equipment Antitrust Litig.,*
  798 F.3d 1186 (9th Cir. 2015) ...........................................................................................12

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717-JST

**TABLE OF AUTHORITIES**
(continued)

Page

*Norcen Energy Res. Ltd. v. Pac. Gas & Electric Co*,
1994 WL 519461(N.D. Cal. Sept. 19, 1994) ............................................................4, 6

*In re Omnicare, Inc. Secs. Litig.*,
769 F.3d 455 (6th Cir. 2014) ........................................................................................8

*In re Packaged Ice Antitrust Litigation*,
723 F. Sup. 2d 987, 1003 (E.D. Mich. 2010) ............................................................10

*In re Packaged Seafood Prods. Antitrust Litig.*,
2017 WL 35571 (S.D. Cal. Jan. 3, 2017)...................................................................10

*Parker v. Brown*,
317 U.S. 341 (1943)......................................................................................................3

*Perez v. State Farm Auto Insurance, Co.*,
391 Fed. App'x. 653 (9th Cir. 2010) ............................................................................5

*Powell v. GMAC Mortg. LLC*,
2010 WL 4502705 (N.D. Cal. Nov. 1, 2010) .............................................................15

*Prime Healthcare Services, Inc. v. Emps. Int'l Union*,
2013 WL 3873074 (S.D. Cal. July 25, 2013) ..............................................................9

*In re Rubber Chemicals Antitrust Litig.*,
504 F. Supp. 2d 777 (N.D. Cal. 2007) .......................................................................14

*Ryan v. Microsoft Corp.*,
2015 WL 1738352 (N.D. Cal. Apr. 10, 2015) ............................................................15

*Sebring v. C.I.R.*,
93 T.C. 220 (1989)......................................................................................................11

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
580 F. Supp. 2d 896 (N.D. Cal. 2008) .......................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008).................................................................13, 14

*United States v. Title Insurance Rating Bureau of Arizona, Inc.*,
700 F.2d 1247 (9th Cir. 1983) ......................................................................................2

*Walker v. Allstate Indem. Co.*,
77 Cal. App. 4th 750 (2000) .........................................................................................5

# TABLE OF AUTHORITIES
### (continued)

Page

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
   588 F.3d 659 (9th Cir. 2009) ........................................................................................11

**Statutes**

15 U.S.C. 1692(a)(5) ........................................................................................................3

Bail Bond Regulatory Act................................................................................................1

Cal. Ins. Code
   § 105(a) ........................................................................................................................1
   § 1861.05(a) ..................................................................................................................3

Cartwright Act ...................................................................................................4, 5, 13, 14

Insurance Code
   §§ 1800-23 ....................................................................................................................2
   § 1860..........................................................................................................................5
   § 1860.1.......................................................................................................................5
   § 1860.2.......................................................................................................................5

McCarran-Ferguson Act ..............................................................................................1, 2

Sherman Act...........................................................................................................3, 4, 13

**Other Authorities**

10 C.C.R.
   § 2094.1 ........................................................................................................................3
   § 2642.3........................................................................................................................3

Fed. R. Civ. P. 9(b) .........................................................................................................13

Fed. R. Evid. 201(b).........................................................................................................8

1

## I.   INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF 68, "Opposition" or "Opp.") misconstrues the law governing jurisdictional issues, relies on outdated case law to undercut their pleading burden, impermissibly reaches outside the bounds of the CAC's allegations, and attempts to reframe the fundamental nature of the alleged conspiracy.[1]  Even so, Plaintiffs cannot save the CAC from dismissal—the conspiracy remains ill-defined and inherently implausible, and this Court does not have jurisdictional authority to become California's bail bond insurance regulator.[2]  Defendants request that the Court grant their Joint Motion to Dismiss (ECF 56, "Motion" or "Mot.") with prejudice.

## II.   ARGUMENT

### A.   The Insurance Code's Comprehensive Regulatory Framework Bars the Claims in the CAC as a Matter of Law

#### 1.   The McCarran-Ferguson Act Bars the Sherman Act Claim

As the Court aptly described it, the CAC tries to allege a "sprawling conspiracy to fix bail premiums and avoid price competition 'since at least February 2004.'" (ECF 64 at 2.)  The CAC thus challenges bail bond premiums as being overpriced, which inherently involves the heavily regulated "business of insurance" that the McCarran-Ferguson Act exempts from federal antitrust laws.  (Mot. at 9-10.)  In arguing otherwise (Opp. at 20-21), Plaintiffs side-step the regulatory framework.

A bail bond is a surety bond posted as a guarantee for an arrestee's appearance.  Bail bonds are issued by licensed agents, who are appointed representatives of licensed surety insurance companies. (ECF 57-3.)  California's Insurance Code covers "surety" insurance, including "executing or guaranteeing bonds." Cal. Ins. Code § 105(a).  CDI has regulated the bail bond business since the passage of the Bail Bond Regulatory Act in 1937.  The laws regulating bail in California are found in

---

[1] All abbreviations have the same meaning as in the opening brief.  Emphasis is added and internal quotation marks and citations are omitted unless otherwise noted.

[2] Plaintiffs occasionally imply (without facts) they are only alleging that Defendants agreed that agents would not turn over some portion of their commissions (the money they earn from sureties when a bond is purchased) to the purchasers of bail bonds in a way that would reduce the effective purchase price on a bond-by-bond basis.  If that narrow and conclusory "discounting" claim is the only thing they are pursuing, it is nowhere near properly pleaded and fails for many of the same reasons as described in the opening Motion and below.

Insurance Code §§ 1800-23, which fall under "Part 2 – *the Business of Insurance*." Cal. Ins. Code §§ 1800-23. Because courts give heavy weight to a state's determination that an activity constitutes the "business of insurance," *Buckman v. Am. Bankers Ins. Co. of Fla.*, 924 F. Supp. 1156, 1157 (S.D. Fla. 1996), the Insurance Code's regulation and CDI's oversight of bail bonds compels a finding that this case involves the "business of insurance." *See also Groves v. City of L.A.*, 40 Cal. 2d 751, 753 (1953) (holding the amount collected by bail agent is insurance premium and noting with approval the trial court's characterization that the surety is "engaged in the insurance business (including bail bonds) in California"); *Mercury Ins. Co. v. Lara*, 35 Cal. App. 5th 82, 97 (2019) (premium includes all sums paid to an insurance agent).

Plaintiffs try to evade the McCarran-Ferguson Act by arguing that the agent's ability to "discount" from their commissions is not barred by regulation. Just because something is permitted by regulation, however, does not mean that it is not the "business of insurance." Moreover, prior to Proposition 103, insurance regulations precluded discounting, which proves that agent discounting is part of the business of insurance.

Plaintiffs' reliance on *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979), is misplaced. That case concerned vertical commercial arrangements between a *single* health insurance company and its payments to three pharmacies for covered drugs, with no spreading of risk or underwriting. *Id.* at 213-14. That contrasts starkly with this case, where the alleged conspiracy is between insurance companies and relates to the underwritten rates being charged to insureds.

Plaintiffs cite *United States v. Title Insurance Rating Bureau of Arizona, Inc.*, 700 F.2d 1247, 1252 (9th Cir. 1983), for the proposition that the "home buying escrow process" is not the business of insurance, and contend whether something is the "business of insurance" is a "question of fact." (Opp. at 20.) But the "home buying escrow process" has nothing to do with this case, which relates to risk evaluation and premium rate setting under the oversight of CDI. There is no "question of fact" to be resolved, as even the purchase of bail bonds from agents is the "business of insurance." *Buckman*, 924 F. Supp. at 1157-58.

Plaintiffs further contend that *Barlow v. Safety Nat'l Cas. Corp.* and *Bailey v. Memphis Bonding Co., Inc.*, stand for the proposition that bail bonding is a form of debt. But those cases merely

1   address whether bond purchases involve credit rights when credit is extended to front the purchase

2   price, not whether the bond itself is a form of insurance. *Barlow*, 856 F. Supp. 2d. 828, 833-35 (M.D.

3   La. 2012); *Bailey*, 2019 WL 1300092, at *11(W.D. Tenn. Mar. 21, 2019).[3]

4                      **2.      The State Action Doctrine Bars the Sherman Act Claim**

5              Plaintiffs misconstrue the "State Action" doctrine from *Parker v. Brown*, 317 U.S. 341 (1943),

6   arguing that it cannot apply because California has not made a verbatim declaration that it is "against

7   competition" in the insurance industry.  (Opp. at 21-22.)  But the doctrine does not require that the

8   "clearly articulated" policy to displace competition with regulation be set forth in a pronouncement,

9   as Plaintiffs' own authority holds.  *See F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226-

10  27 (2013) ("anticompetitive effect" need only be "foreseeable result" not "expressly state[d]").

11  California "clearly articulated" its policy when it prioritized the goal of ensuring solvent insurance

12  companies over pure competition.  The Insurance Code states that "no consideration shall be given to

13  the degree of competition and the commissioner shall consider whether the rate mathematically

14  reflects the insurance company's investment income."  Cal. Ins. Code § 1861.05(a).

15             This case is otherwise distinct from *Phoebe Putney*, where the doctrine did not apply because

16  the State merely granted standard corporate powers to local hospital authorities and remained neutral

17  about the use of those powers. 568 U.S. at 228.  The insurance laws at issue here, and CDI enforcement

18  of them, are not neutral.  They prescribe a rate-setting framework that eschews consideration of

19  competition, and seek to balance the competing goals of a solvent and dependable insurance market

20  that can pay claims and earn a fair return with consumers' interests in low prices.  (Mot. at 3-5 (citing

21  10 C.C.R. § 2642.3).)

22             California actively regulates bail bond premium rates, which cannot be charged or changed

23  absent CDI approval.  (Mot. at 3-5.)  These rates set both a ceiling and a floor, meaning that premiums

24  cannot be charged at lower amounts just as they cannot be charged at higher amounts.  (*Id.*); *see* 10

25  C.C.R. § 2094.1.  Plaintiffs obfuscate premiums (what the CAC fundamentally claims were fixed

26  through the supposed conspiracy) with the agents' right to rebate purchasers some portion of their

27

28  _____

[3] *Barlow* involved an FDCPA issue.  The FDCPA's definition of a "debt" makes clear that a debt can arise out of an obligation to pay for "insurance."  15 U.S.C. 1692(a)(5).

1    commission.  While agent rebating is allowed, sureties or agents charging different premium rates than

2    what CDI approved are subject to enforcement actions by CDI.  (Mot. at 5.)[4]

3         *Norcen Energy Res. Ltd. v. Pac. Gas & Electric Co,* 1994 WL 519461 (N.D. Cal. Sept. 19,

4    1994), is on point.  The clear articulation prong in a rate application and approval process was

5    "demonstrated by showing the state's intent to displace competition with a regulatory structure," and

6    "the state's intention [was] made clear by the California Public Utilities Code, which leaves rate

7    determination to CPUC discretion."  *Id.* at *9.  The regulator's pursuit of goals other than unrestrained

8    competition in *Norcen* is just what CDI does with bail bond premiums.

9         Plaintiffs also incorrectly contend that the "active supervision" requirement "cannot be

10   demonstrated without a factual record."  (Opp. at 22-23.)  There need be no fact-finding mission to

11   read the Insurance Code and its implementing regulations.

12         **3.    The Filed Rate Doctrine Bars the Sherman Act and Cartwright Act Claims**

13         Plaintiffs again ignore the regulatory regime and misconstrue California law.  (Opp. at 23-26.)

14   There is no question that Plaintiffs seek a different rate for every bond issued since 2004.  It is equally

15   clear that the filed rate doctrine bars claims that seek to impose a different rate than one set and

16   approved through the type of regulatory process CDI implements.  (Mot. at 11-13.)

17         Plaintiffs incorrectly contend that the filed rate doctrine is not recognized under California

18   law.  While there once was a question in California on the doctrine's applicability (Mot. at 12, n.5),

19   the California Court of Appeal resolved the issue as to the Insurance Code in *MacKay v. Super. Ct.* by

20   ruling that the doctrine bars challenges to rates that CDI approves.  188 Cal. App. 4th 1427, 1448

21   (2010).  That decision was neither dicta nor ambiguous.  Plaintiffs' reliance on a declarative footnote

22   in a case that does not mention *MacKay* is unavailing.[5]  So too are the pre-*MacKay* cases, none of

23   which involved claims under the Insurance Code.  Notably, in Plaintiffs' leading case, *Cellular Plus,*

24   *Inc. v. Super. Ct.*, the court specifically noted the absence of any statutory provision exempting the

25
26   [4] Contrary to Plaintiffs' contention (Opp. at 22), Proposition 103 did not displace the Insurance Code's robust process for approving bail bond premium rates or CDI's role in implementing and enforcing those parts of the Insurance Code.

27   [5] The footnote in *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856, 858 n.9 (9th Cir. 2013), does not mention
28   *MacKay* and relies on *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 993 (9th Cir. 2000), which pre-dates *McKay*.  The critical point is that *MacKay* dealt with the Insurance Code.

1   conduct of cellular telephone companies from the application of the Cartwright Act.  14 Cal. App. 4th
2   1224, 1244 (1993).  That is not so here, as Insurance Code § 1860.1 provides an exemption from any
3   statute that does "not specifically refer to insurance."

4       Plaintiffs contend that there is no rate-filing requirement for the commission rebates that agents
5   may offer to individual bail bond purchasers.  That is both true and unremarkable.  To the extent the
6   CAC seeks to allege some kind of narrow claim that the Defendants agreed to prohibit 3200+ agents
7   from offering purchasers some cash back, then that "claim" would not be barred by the filed rate
8   doctrine.  But as explained, the CAC does not plausibly allege such a theory with factual allegations.

9       Plaintiffs also argue the filed rate doctrine would not bar an injunction.  But premiums are
10  approved by CDI, so an injunction would improperly usurp CDI's authority.

11          **4.      CDI's Exclusive Jurisdiction Bars the California Claims**

12      Plaintiffs rely on *Perez v. State Farm Auto Insurance, Co.*, 391 Fed. App'x. 653 (9th Cir.
13  2010), to dispute that Insurance Code section 1860, *et seq*. bars their claims.  In *Perez*, the plaintiff
14  alleged that insurers conspired to provide inferior post-crash replacement auto parts—not to fix
15  premium rates—and the insurers argued the claim was a type of a rate challenge.  The Ninth Circuit
16  concluded that such an "overcharge" on the services provided was not within CDI's exclusive
17  jurisdiction.  *Id.* at 655.  *Perez* is inapposite.  This case is not about an "overcharge" stemming from
18  the services a surety provides after issuing a bond; it is a direct challenge to CDI-approved premiums
19  via a complaint rife with statements that those premiums are unlawfully higher than they would have
20  been absent the "conspiracy."  (*See, e.g.*, CAC ¶¶ 5, 6, 110, 115, 117, 122, 129.)  It is for CDI to
21  determine whether rates are excessive or inadequate, not the courts, which the Ninth Circuit actually
22  *confirmed* in *Perez*.  391 Fed. App'x. at 655 (Insurance Code §§ 1860.1 and 1860.2 "bar claims that
23  challenge an approved rate by the Insurance Commissioner") (citing *Walker v. Allstate Indem. Co.*, 77
24  Cal. App. 4th 750 (2000)).

25      Plaintiffs' reliance on *Cellular Plus* is again misplaced:  *Cellular Plus* is not an Insurance Code
26  case, predates *MacKay* by 17 years, and concerned provisions under the Public Utilities Code with far
27  less comprehensive regulatory reach than the Insurance Code.  Plaintiffs' authorities supporting the
28  argument that bail bond premium rates are outside the CDI's jurisdiction (Opp. at 28) are also

1    unavailing, as the "maximum premium rates" (*id.* at 28:3) are set by the CDI.

2         Plaintiffs' last point is that the Insurance Code supposedly takes "competitive" considerations

3    out of the rate-approval inquiry.  But insurance is *regulated*.  The CAC asks the Court to supplant

4    regulation and use the antitrust laws to second-guess what rate should have applied.

5              **5.    The Noerr-Pennington Doctrine Bars the Claims**

6         Plaintiffs incorrectly contend that Defendants' purported agreement to apply for CDI's

7    approval of a specific premium rate is not protected under *Noerr-Pennington*.  (Opp. at 29-30.)  As

8    the Opposition acknowledges, the CAC attempts to allege a conspiracy to "coordinate on the rate

9    submissions" and thereby secure CDI approval of a uniform premium rate.  (Opp. at 8-9.)  *Noerr-*

10   *Pennington* applies to this claim.

11        The decision in *Norcen*, 1994 WL 519461, at *7, again is on point.  The court held that "[a]

12   utility that asks a regulatory body for favorable rates . . . is engaging in First Amendment conduct"

13   and refused "to find that defendants' alleged manipulation of the . . . regulatory scheme falls outside

14   the scope of First Amendment [*Noerr-Pennington*] conduct."  *Id.; see also Coll v. First Am. Title Ins.*

15   *Co.*, 642 F.3d 876, 898 (10th Cir. 2011) (*Noerr* barred claim that insurer defendants conspired with

16   each other and with Superintendent of Insurance to set excessive premium rates).

17        None of Plaintiffs' authorities applies.  *Harman v. Valley Nat. Bank of Ariz.*, 339 F.2d 564,

18   566 (9th Cir. 1964), is an old case concerning allegations of a "long-continued scheme to restrain and

19   monopolize" banking where efforts to obtain government action were just one part of a broader

20   conspiracy that even included the attorney general.  The CAC's theory here is that Defendants worked

21   to obtain uniform rates from CDI, not that doing so was part of a broader scheme to monopolize, and

22   there is no allegation that CDI was a co-conspirator.  *Allied Tube & Conduit Corp. v. Indian Head,*

23   *Inc.*, 486 U.S. 492 (1988), held only that *Noerr-Pennington* did not immunize efforts to jointly

24   influence a private standard-setting organization, not a governmental body like CDI.  *Columbia Steel*

25   *Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427 (9th Cir. 1996), held that *Noerr-Pennington*

26   was inapplicable where the defendants carried out anticompetitive conduct outside of the regulatory

27   framework and against regulatory guidance.  None of these circumstances exists here.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717-JST

**B.     The Antitrust Claims Should Be Dismissed for Failure to State a Claim**

**1.     The Opposition Ignores the CAC's Obligation to Plead Facts**

Defendants established that the CAC falls short of pleading an antitrust conspiracy under *Bell Atlantic Corp. v. Twombly* (Mot. at 17-25), which requires **factual** allegations rather than mere "labels and conclusions."  550 U.S. 544, 555 (2007).  *Kendall v. Visa U.S.A., Inc.*, which is not mentioned even once in the Opposition, requires Plaintiffs to plead evidentiary facts to "answer the basic questions" about their conspiracy claims: "who, did what, to whom (or with whom), where, and when?"  518 F.3d 1042, 1048 (9th Cir. 2008).  Rather than respond to this argument by pointing to well-pleaded facts in the CAC, the Opposition tries to avoid its burden under *Twombly*.

Plaintiffs attempt to turn the *Twombly* standard on its head by implying it is Defendants' burden to provide factual evidence disproving the CAC's conclusory claims.  (*See, e.g.*, Opp. at 2 (complaining that Defendants have not provided examples of advertised premium discounting); at 13 ("Defendants offer no explanation for why one or more sureties have not sought to expand market share by encouraging discounts").)  The burden is on Plaintiffs, not Defendants.

Plaintiffs further diminish their burden by relying on pre-*Twombly* case law to argue that their conclusory allegations are enough to survive a motion to dismiss.  (Opp. at 8 (citing 1962, 1973, and 1976 cases).)  The Opposition also relies on a pre-*Twombly* and out-of-circuit district court case to argue that the court should consider the possibility of "covert . . . records" supporting their conclusory allegations.  (*Id.* (citing *Callahan v. A.E.V., Inc.*, 947 F. Supp. 175 (W.D. Pa. 1996).)  The Opposition even argues "[t]his is particularly true in assessing allegations drafted without the benefit of discovery," with no supporting citation.  (*Id.*.)  This is not, however, the standard articulated by the Supreme Court.  *Twombly*, 550 U.S. at 558-59 (noting the "unusually high cost" of antitrust actions and cautioning against "proceeding to antitrust discovery" where the complaint asserts "unspecified (if any) instances of antitrust violations").  Plaintiffs must plead "evidentiary facts," not point to the mere possibility of covert records or business relationships.  *Kendall*, 518 F.3d at 1047-48.

The Opposition also adds new conclusory allegations, sometimes with citations to the CAC that do not support them.  (*See, e.g.*, Opp. at 8 (uncited allegations about Defendants' "respond[ing] swiftly, led by Carmichael, Watson, and other senior executives"), at 9-10 (misleadingly claiming that

"Defendants' senior executives . . . admitted how they enforced the conspiracy"), at 11 (misrepresenting that CAC ¶ 64 "details" revenue and profit figures for bail industry, where in fact CAC makes unfounded assumption from one statement by CDI).)  At this stage, however, the Court cannot consider allegations that were not contained in the CAC.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).  Nor can the Opposition cure pleading defects by relying on requests for judicial notice.[6]  *See In re Omnicare, Inc. Secs. Litig.*, 769 F.3d 455, 466-67 (6th Cir. 2014).

### 2.  Plaintiffs Offer No Response to Other Key Pleading Deficiencies

The Opposition ignores other key pleading deficiencies that Defendants raised in their Joint Motion.  Each of these deficiencies alone justifies dismissal.  (*See* Mot. at  8, 15-25, 26-27.)

*First*, the CAC does not allege *facts* establishing parallel conduct, not even a single Defendant's approved premium or rebating practices.  (*Id.* at 19-20.)  Likewise, it fails to allege the premium rate paid by either Plaintiff, or whether either requested (or received) a rebate.  (*Id.* at 8.)  The Opposition remains silent on these defects, but attempts to cloak them by adding new allegations of so-called "parallel behavior"—such as how the Surety Defendants "assured each other that they would not allow discounting to occur"—which do not appear in, and carry no citation to, the CAC.  (*See* Opp. at 8-9.)  Even if properly considered (which they are not), these are not well-pleaded factual allegations entitled to the presumption of truth.  *See Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017) ("mere allegations of parallel conduct" and "bare assertions of conspiracy do not suffice").

*Second*, Defendants' Motion established that allegedly deceptive statements identified in the CAC cannot be considered factual evidence of any conspiracy.  Almost all the statements Plaintiffs rely on are attributed to bail agents *who are not defendants*.  (Mot. at 7.)  The only exceptions are true statements by Two Jinn, Inc. and the California Bail Agents Association asserting that, regardless of a rebate, bail agents must charge the premium rates that sureties file with CDI.  (*Id.* at 26-27.)  Again, the Opposition is silent: it offers no explanation for why statements by unnamed bail agents or true

[6] In any case, Exhibits 1-7 to Plaintiffs' Request for Judicial Notice (ECF 66-67) are not subject to judicial notice because they cannot "be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  (*See* ECF 73 (citing Fed. R. Evid. 201(b)).)

statements should be treated as evidence of a conspiracy among Defendants.

*Third*, the Opposition fails to rebut Defendants' argument that the CAC relies on improper group pleading. (Mot. at 16-17.) Plaintiffs' attempts to distinguish cases dismissing complaints with similar group allegations are unavailing. For example, *In re Late Fee & Over-Limit Fee Litigation* dismissed antitrust claims for alleging "merely parallel conduct," noting at the very outset of the opinion that "the complaint's substantive allegations refer to defendants in collective terms," and elaborating that the complaint "provides no details as to when, where, or by whom this alleged agreement was reached." 528 F. Supp. 2d 953, 956, 962 (N.D. Cal. 2007). The CAC fails to adequately plead the antitrust claims in almost identical fashion.

*Prime Healthcare Services, Inc. v. Emps. Int'l Union*, 2013 WL 3873074 (S.D. Cal. July 25, 2013), is likewise on point. The court found plaintiff had "failed to plead sufficient facts demonstrating a verbal conspiracy, the persons involved in the illegal agreement, and the *roles that each person undertook*." *Id.* at *7. The parallels to the CAC are manifest. Plaintiffs consistently fail to specify what particular Defendants did and what role that they took to further the conspiracy. (*See* Mot. at 16-17.) The CAC is therefore plagued by the same "vagueness and ambiguity" as the complaint dismissed in *Prime Healthcare*. 2013 WL 3873074, at *9. The CAC simply states that "Defendants" or sub-groups of defendants agreed to fix prices, and the Court is asked to fill in "answer[s to] the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048.

The Opposition relies primarily on *In re Cathode Ray Tube (CRT) Antitrust Litigation*, claiming it shows that Plaintiffs can proceed with general contentions that each Defendant participated in the alleged conspiracy. (Opp. at 15.) In fact, *CRT* supports **Defendants**. *CRT* allowed complaints to proceed where Plaintiffs alleged (1) there had been a federal grand jury indictment of top executives on price-fixing conspiracy charges, (2) the conspiracy was effectuated through agreements reached at numerous meetings attended by specifically named defendants, and (3) "the structure and typical pattern of the meetings" that laid the groundwork for the price-fixing scheme. *CRT*, 738 F. Supp. 2d 1011, 1017-18 (N.D. Cal. 2010). The court also noted the complaints' detailed descriptions of the business relationships between particular named defendants and that "both complaints contain

1   allegations concerning specific Defendants' participation in the unlawful meetings and agreements."

2   *Id.* at 1017-19.  The CAC contains no similar allegations.

3              **3.      The CAC's Supposed "Plus Factors" Are Insufficient**

4          Even if the CAC included facts concerning Defendants' parallel conduct and acts in

5   furtherance of the conspiracy—and it does not—it would still need to plead "plus factors" establishing

6   the plausibility of the anticompetitive conspiracy.  (Mot. at 20.)  The Opposition tries to make the case

7   that the CAC's allegations concerning "market factors" and industry trade associations are adequate

8   in this regard.  (Opp. at 10-15.)  They are not.

9              **a.      Market Factors Do Not Support the Purported Conspiracy**

10         Economic factors allegedly showing industry was "vulnerable to collusion" are not sufficient

11  to establish a plausible conspiracy claim.  *See In re Packaged Seafood Prods. Antitrust Litig.*, 2017

12  WL 35571, at *5-6 (S.D. Cal. Jan. 3, 2017).

13         Plaintiffs rely on *In re Packaged Ice Antitrust Litigation*, which is easily distinguishable.

14  Unlike the CAC, that complaint alleged guilty pleas by some of the defendants, allegations of collusion

15  based upon insider admissions, and price increases not explained by increased costs.  723 F. Sup. 2d

16  987, 1003 (E.D. Mich. 2010).   Plaintiffs' only in-circuit case on economic factors is likewise

17  distinguishable; in that case plaintiffs' allegations were supported by factual allegations and direct

18  evidence absent in the CAC.  *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F.

19  Supp. 2d 896, 901 (N.D. Cal. 2008) (complaints included "a number of specific allegations of

20  communications" between alleged co-conspirators, such as quoted emails).

21         The CAC's allegations about general market conditions carry even less weight in the highly

22  regulated bail bond market.  Defendants established why the regulatory process is likely to yield

23  similar premiums rates, and why Surety Defendants have little incentive to influence rebating practices

24  when sureties must charge the approved rate regardless of whether the bail agent rebates a portion of

25  its commission.  (Mot. at 4-5, 24-25.)  The Opposition responds that CDI "sets no floor on price," and

26  that "encouraging its agents to discount would, at a minimum, allow that surety to take market share

27  from other sureties."  (Opp. at 12-13.)  But on the first point, the Opposition again conflates two

28  separate processes: premium discounting and rebating.  While bail agents may rebate a portion of their

commission, there is a "floor on price" for **premiums** because sureties must charge their CDI-approved premiums.  *MacKay*, 188 Cal. at 1449 n.18 ("once a rating plan has been approved, the insurer may charge no other rate").  Second, while it might be true that rebating could allow some agents to gain market share in the short-term, there are at least equally strong market forces against rebates because bail agents are liable for defaulted bail bonds in the first instance, creating strong incentives for both bail agents and sureties to ensure financial solvency.  The CAC's failure to exclude these plausible and innocuous alternative explanations requires dismissal.  *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014); *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 669 (9th Cir. 2009) (affirming dismissal of antitrust conspiracy claim where evidentiary facts were consistent with unilateral and independent business decisions).

Plaintiffs also appear to claim the sureties were motivated to conspire because they would be forced to pay higher commissions if agents rebated.  (Opp. at 1:17-19.)  But the CAC contains no suggestion of this claim much less facts supporting it, not even the statement attributed to Carmichael upon which it is based.  Moreover, rather than enter an antitrust conspiracy, the sureties can protect against agent insolvency by requiring the bail agents to agree to a "Build Up Fund."  *See Sebring v. C.I.R.*, 93 T.C. 220, 221-22 (1989) (explaining the mechanics of a '"Build Up Fund' or 'BUF Account'" and noting "BUF accounts are required as a necessary condition of his doing business as a bail bondsman").  Accordingly, the speculation that sureties entered into a price fixing conspiracy out of fear of increased agent commissions is implausible.

Plaintiffs' arguments about market factors also rest on faulty economic analysis.  The Opposition argues that low loss ratios indicate high profits, which is simply not true.  (Mot. at 24.) Profits are a function of loss ratio **and** benefit-expense ratio.  (*Id.* at 24.)  Plaintiffs argue that benefit-expense ratios are irrelevant "unless Defendants mean to imply that their advertising costs, legal fees, and so forth are orders of magnitude higher than, say, United Healthcare's or GEICO's."  (Opp. at 11.) Not only is this burden shifting improper—Plaintiffs must show how loss ratios are relevant, which they cannot do—the Opposition's argument ignores the central "expense" on each premium: the bail agents' commission.  (*See* Mot. at 5-6, 24.)  Because commissions are so high to reflect bail agents' status as the primary loss payor, Defendants' benefit-expense ratios **are** "orders of magnitude higher

Cooley LLP
Attorneys At Law
San Diego

11.

Defendants' Reply ISO Joint Motion to Dismiss
Master Docket No.  19-cv-00717-JST

than" insurers in other lines of business.  (*Cf.* CAC ¶ 64 (referencing CDI quote and indicating "bail agent kept the majority of the premium"); ECF 67-1 (noting "extremely high commission rate")).)

### b.   The Allegations about Trade Associations Are Inadequate

The Opposition attempts to bolster its claims by noting that (1) the Individual Defendants who "extolled the virtues of price-fixing" were "leaders" of the trade associations, and (2) the associations have offered training sessions to teach the alleged conspiracy to agents. (Opp. at 14.)  The premise of the first argument is unsupported.  The statements Plaintiffs cite may criticize rebating, but that is not "extolling the virtues of price-fixing." (Mot. at 7.)  As to the second argument, the CAC does not even allege that the "courses" it cherry-picked quotes from were put on, sponsored, or approved by the defendant trade associations.  (Mot. at 7; CAC ¶¶ 88-89.)  Faced with this deficiency, the Opposition blithely ignores the absence of non-conclusory allegations about Defendants' involvement in the courses. (*See* Opp. at 14.)

Although cited by Plaintiffs, *In re Graphics Processing Unit Antitrust Litigation* supports Defendants.  The court **dismissed** the plaintiffs' claims, stating the complaint was "[m]issing . . . any specific allegation that defendants' representatives actually met to fix prices." 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007).  Alleging that defendants attended a certain meeting which "gave them an '*opportunity*' to meet secretly" and fix prices was insufficient. *Id.*  The CAC does no better, simply alleging that trade associations "host meetings that have provided opportunities for Defendants" to conspire, (CAC ¶ 80), without even alleging which, if any, Defendants attended the meetings.

The allegation that the associations "maintain[] information" regarding premium rates is insufficient (*id.* ¶ 84), particularly because Defendants rate filings are a matter of public record. (*See* ECF 57-3); *see also In re Musical Instruments and Equipment Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015) (participation in trade association meetings "where information is exchanged and strategies are advocated does not suggest an illegal agreement").

### 4.   Dated Advocacy Articles Do Not Suggest a Conspiracy

The CAC's implausible conspiracy allegations force Plaintiffs to make three advocacy articles published 14-17 years ago the centerpiece of their Opposition.  (*See* ECF 67-1, 67-4, 67-5.)  Although none of the articles are even specific to California, the Opposition claims they include statements from

Cooley LLP
Attorneys At Law
San Diego

12.

Defendants' Reply ISO Joint Motion to Dismiss
Master Docket No. 19-cv-00717-JST

1    "Defendants' own senior executives" that "describe the conspiracy and its illicit purpose," and were a

2    form of "signaling to potential competitors" that "urg[ed] others to follow" in the conspiracy.  (Opp.

3    at 6, 9.)  But these are unwarranted inferences.  The statements do not "describe" any industry-wide

4    conspiracy and they do not "signal" or "urge" to competitors to collude on pricing.  Rather, they

5    evidence why rebating in the bail industry, as elsewhere, is controversial.  (Mot. at 23.)  In any case,

6    no facts have been pled indicating the advocated-for scenarios ever existed in the real world.

7            Furthermore, in claiming the statements were made by "Defendants' own senior executives,"

8    the Opposition incorrectly asserts that the statements may be imputed to each Defendant.  They cannot.

9    *Cf. In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008)

10   (complaint "must allege that *each individual defendant* joined the conspiracy and played some role in

11   it").

12           **C.       The UCL Claim Fails Along With Plaintiffs' Antitrust Claims**

13           Although the CAC attempted to assert claims under the UCL's unlawful, unfair, and fraudulent

14   prongs (*see* CAC ¶¶ 148-49), the Opposition concedes that Plaintiffs only assert an unlawful prong

15   claim subsidiary to the Sherman Act and Cartwright Act claims.  (Opp. at 20:2-4.)  Because those

16   claims fail, the UCL claim should be dismissed as well.  (Mot. at 25.)

17           **D.       Plaintiffs' Claims Are Barred by the Statute of Limitations in Whole or in Part**

18                   **1.       Plaintiffs Failed to Plead Fraudulent Concealment**

19           Plaintiffs identify nothing about who, what, when, where, or how Defendants allegedly

20   concealed the "conspiracy."  Fed. R. Civ. P. 9(b).  The only allegations of purported deception relate

21   to the inducement of sales of bail bonds, not concealment of a supposed conspiracy to fix premiums

22   or prevent discounting.  Plaintiffs cite a series of (accurate) statements that involve advertisements and

23   the filing of premiums.  (Opp. at 30-31 (citing CAC ¶¶ 73, 83, 95, 99, 100).)  They cite nothing that

24   concerns post-injury misrepresentations intended to prevent someone from filing suit.  They fail to

25   "point to some fraudulent concealment, some active conduct by the defendant *above and beyond* the

26   wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time."

27   *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (emphasis in original).

28   Plaintiffs' attempt to apply equitable estoppel here fails for the same reason.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717-JST

The authorities Plaintiffs cite include the kind of detailed allegations of affirmative concealment that the CAC lacks—such as secret meetings, concealment of anticompetitive communications, and destruction of documents.  (Opp. at 30 (citing *E.W. French & Sons, Inc. v. General Portland Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d at 1119; *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007).)  Rather than conduct designed to conceal the purported conspiracy, the Opposition focuses on the CAC's allegations that Defendants *publicly* "described" the alleged conspiracy in a "call to action" by the industry's "foremost experts and leaders" who were "ma[king] public assurances to their competitors that they would not compete on price."  (Opp. at 1-2, 6-7.)  These are allegations of *publicity*, not concealment.

Plaintiffs cannot escape their pleadings by arguing that they had no knowledge of Defendants' alleged misconduct or inquiry notice triggering a duty to diligently investigate.  (Opp. at 31-32.)  Plaintiffs contend the CAC's allegations of public statements by industry representatives show efforts to prevent price competition.  (*Id.* at 1-2, 6-7, 9-10.)  But those public comments gave Plaintiffs constructive knowledge and inquiry notice of the alleged conspiracy.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 8669891, at *5 n.4 (N.D. Cal. Aug. 22, 2016) (constructive knowledge based on coverage in newspapers and industry-wide publicity); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, 2015 WL 4755335, at *32 (N.D. Cal. Aug. 11, 2015) ("Plaintiffs' own allegations discuss public statements . . . sufficient to put them on inquiry notice").

Plaintiffs argue that fraudulent concealment raises factual questions, (Opp. at 32), but they cannot circumvent their pleading obligations so easily.  A complaint must first plead "legally sufficient allegations of a conspiracy and have pled affirmative acts of concealment with particularity."  *In re Rubber Chemicals*, 504 F. Supp. 2d at 789.  The CAC does neither.  (Mot. at 15-25, 28-29.)

## 2. The Discovery Accrual Rule Does Not Apply

Plaintiffs incorrectly argue that the discovery accrual rule (not the injury accrual rule) applies to their claims.  (Opp.at 32-34.)  The Ninth Circuit "do[es] not require a plaintiff to actually discover its antitrust claims before the statute of limitations begins to run."  *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).  Plaintiffs' Cartwright Act claim is also subject to the injury

1  accrual rule. *Ryan v. Microsoft Corp.*, 2015 WL 1738352, at *16 (N.D. Cal. Apr. 10, 2015). And the

2  injury accrual rule applies to the UCL claims based on alleged anticompetitive conduct. *In re*

3  *Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1211 (N.D. Cal. 2015).

### 3. The CAC Fails to Allege Continuing Violation

5  Plaintiffs argue that new overt acts cause the statute of limitations to run anew in support of

6  their continuing violation argument. (Opp. at 35.) Even if the CAC had sufficiently alleged overt acts

7  within the four-year statute of limitations (it has not), it would not save claims that accrued prior to

8  January 29, 2015. *CRT*, 2016 WL 8669891, at *4.

## III.   CONCLUSION

10  For the foregoing reasons, the Court should dismiss the CAC in its entirety, with prejudice.

11  *See Powell v. GMAC Mortg. LLC*, 2010 WL 4502705, at *2 (N.D. Cal. Nov. 1, 2010) (if "it is clear

12  that the complaint's deficiencies cannot be cured by amendment," leave to amend should not be

13  granted.)

Dated: September 4, 2019

COOLEY LLP
MICHAEL A. ATTANASIO (151529)
JON F. CIESLAK (268951)
BEATRIZ MEJIA (190948)
MAX SLADEK DE LA CAL (324961)

*s/ Beatriz Mejia*
Beatriz Mejia (190948)

*Attorneys for Defendants Seaview
Insurance Company and Two Jinn, Inc.*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

**DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717-JST**

| | |
|---|---|
| 1 | Dated:  September 4, 2019 |

By: */s/ Julie A. Gryce*

Julie A. Gryce (319530)
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone:  (619) 699-2700
Facsimile:  (619) 699-2701
julie.gryce@dlapiper.com

Michael P. Murphy (*pro hac vice*)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
michael.murphy@dlapiper.com

John Hamill
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: 312.368.7036
Facsimile: 312.251.5809
John.hamill@us.dlapiper.com

*Attorneys for Defendants Danielson*
*National Insurance Company*

Dated:  September 4, 2019

By: */s/ Blake Zollar*

Drew Koning (263082)
Blake Zollar (268913)
Shaun Paisley (244377)
KONING ZOLLAR LLP
2210 Encinitas Blvd., Suite S
Encinitas, CA 92024
Telephone:  (858) 252-3234
Facsimile:  (858) 252-3238
drew@kzllp.com
blake@kzllp.com
shaun@kzllp.com

*Attorneys for Defendant All-Pro Bail*
*Bonds, Inc.*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

16.

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS
MASTER DOCKET NO. 19-CV-00717-JST

1    Dated:  September 4, 2019                    By: /s/ Gerard G. Pecht

2                                                 Gerard G. Pecht (pro hac vice)
3                                                 NORTON ROSE FULBRIGHT US LLP
                                                  1301 McKinney, Suite 5100
4                                                 Houston, Texas  77010
                                                  Telephone:  (713) 651-5151
5                                                 Facsimile:  (713) 651-5246
                                                  gerard.pecht@nortonrosefulbright.com
6
7                                                 Joshua D. Lichtman (SBN 176143)
                                                  NORTON ROSE FULBRIGHT US LLP
8                                                 555 South Flower Street, Forty-First Floor
                                                  Los Angeles, California  90071
9                                                 Telephone:  (213) 892-9200
                                                  Facsimile:  (213) 892-9494
10                                                joshua.lichtman@nortonrosefulbright.com

11                                                *Attorneys for Defendant American*
12                                                *Contractors Indemnity Company*

13   Dated:  September 4, 2019                    By: /s/ Anne K. Edwards

14                                                Anne K. Edwards (110424)
15                                                SMITH, GAMBRELL & RUSSELL, LLP
                                                  444 South Flower Street, Suite 1700
16                                                Los Angeles, CA 90071
                                                  Telephone:  (213) 358-7210
17                                                Facsimile:  (213) 358-7310
                                                  aedwards@sgrlaw.com
18
19                                                *Attorneys for Defendant Williamsburg*
                                                  *National Insurance Company*
20
     Dated:  September 4, 2019                    By: /s/ Nicole S. Healy
21
22                                                Todd A. Roberts
                                                  Nicole S. Healy
23                                                Edwin B. Barnes
                                                  ROPERS, MAJESKI, KOHN & BENTLEY
24
25                                                *Attorneys for Defendants American Bail*
                                                  *Coalition, Inc. and William B. Carmichael*
26

27

28

1    Dated:  September 4, 2019          By: */s/ David F. Hauge*                    

2                                        David F. Hauge (128294)
3                                        Todd H. Stitt (179694)
                                         Vincent S. Loh (238410)
4                                        MICHELMAN & ROBINSON, LLP

5                                        *Attorneys for Defendants United States*
                                         *Fire Insurance Company, The North River*
6                                        *Insurance Company, and Seneca*
7                                        *Insurance Company*

8    Dated:  September 4, 2019          By: */s/ Renee Choy Ohlendorf*              

9                                        Renee Choy Ohlendorf
                                         Hinshaw & Culbertson LLP
10                                       One California Street, 18th Floor
                                         San Francisco, CA 94111
11                                       Main: (415) 362-6000
                                         Direct: (415) 393-0122
12                                       RChoy@hinshawlaw.com
13
                                         Christie A. Moore (*pro hac vice*)
14                                       W. Scott Croft (*pro hac vice*)
                                         BINGHAM GREENEBAUM DOLL LLP
15                                       101 S. Fifth Street
                                         3500 PNC Tower
16                                       Louisville, KY 40202
                                         Telephone:  502.587.3758
17                                       Facsimile:  502.540.2276
18                                       cmoore@bgdlegal.com
19                                       wcroft@bgdlegal.com

20                                       *Attorneys for Lexon Insurance Company*

21   Dated:  September 4, 2019          By: */s/ Travis Wall*                    

22                                       Travis Wall (191662)
23                                       Spencer Kook (205304)
                                         HINSHAW & CULBERTSON LLP
24                                       One California Street, 18th Floor
                                         San Francisco, CA 94111
25                                       Tel: (415) 362-6000
                                         twall@hinshawlaw.com
26
                                         *Attorneys for Defendant Philadelphia*
27                                       *Reinsurance Corporation*

28

1    Dated:  September 4, 2019          By: */s/ Gregory S. Day*

2                                       Gregory S. Day
3                                       LAW OFFICES OF GREGORY S. DAY
                                        120 Birmingham Drive, Suite 200
4                                       Cardiff, CA  92007
                                        Telephone:  (760) 436-2827
5                                       attygsd@gmail.com

6                                       *Attorneys for Defendants California Bail*
7                                       *Agents Association, Universal Fire &*
                                        *Insurance Company, Sun Surety Insurance*
8                                       *Company*

9    Dated:  September 4, 2019          By: */s/ Howard Holderness*

10                                      John A. Sebastinelli (127859)
11                                      Howard Holderness (169814)
                                        GREENBERG TRAURIG, LLP
12                                      4 Embarcadero Ctr, Ste. 3000
                                        San Francisco, CA 94111-5983
13                                      Telephone: (415) 655-1289
                                        Facsimile: (415) 358-4796
14                                      sebastinellij@gtlaw.com
                                        holdernessh@gtlaw.com
15

16                                      *Attorneys for Defendants American Surety*
                                        *Company and Indiana Lumbermens*
17                                      *Mutual Insurance Company*

18   Dated:  September 4, 2019          By: */s/ Gary A. Nye*

19
                                        Gary A. Nye (126104)
20                                      ROXBOROUGH, POMERANCE, NYE &
                                        ADREANI, LLP
21

22                                      *Attorneys for Defendants Allegheny*
                                        *Casualty Company, Associated Bond and*
23                                      *Insurance Agency, Inc., Bankers Insurance*
                                        *Company, Harco National Insurance*
24                                      *Company, International Fidelity Insurance*
                                        *Company, Lexington National Insurance*
25                                      *Corporation, and Jerry Watson*

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS**
                                        **MASTER DOCKET NO. 19-CV-00717-JST**

1    Dated:  September 4, 2019              By: /s/ Brendan Pegg

2                                          Brendan Pegg (174159)
3                                          LAW OFFICES OF BRENDAN PEGG
                                           201 E. Ojai Avenue #1505
4                                          Ojai, CA93024
                                           Telephone:  (805) 3024151
5                                          Facsimile:  (877) 719-7298
                                           brendan@bpegglaw.com
6
7                                          *Attorneys for Defendant Financial*
                                           *Casualty & Surety, Inc.*
8
     Dated:  September 4, 2019              By: /s/ Erik K. Swanholt
9
10                                         Erik K. Swanholt
                                           FOLEY & LARDNER
11                                         555 South Flower St., 33rd Floor
                                           Los Angeles, CA 90071
12                                         Telephone:  (213) 972-4500
                                           Facsimile:  (213) 486-0065
13
14                                         *Attorneys for Defendants Continental*
                                           *Heritage Insurance Company*
15
     Dated:  September 4, 2019              By: /s/ John M. Rorabaugh
16
17                                         John M. Rorabaugh (178366)

18                                         *Attorney for Defendant Golden State Bail*
                                           *Association*
19
     Dated:  September 4, 2019              By: /s/ Paul J. Riehle
20
21                                         Paul J. Riehle (115199)
                                           DRINKER BIDDLE & REATH LLP
22                                         4 Embarcadero Center, 27th Floor
                                           San  Francisco, California 94111
23                                         Telephone:  (415) 551-7521
                                           Facsimile:  (415) 551- 7510
24                                         paul.riehle@dbr.com

25                                         *Attorneys for Defendant Accredited Surety*
                                           *and Casualty Company, Inc.*
26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS**
                                           **MASTER DOCKET NO.  19-CV-00717-JST**

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Beatriz Mejia, attest that concurrence in the filing of this document has been obtained from the other signatories.  Executed on September 4, 2019, in San Francisco, California.


*/s/ Beatriz Mejia*

Beatriz Mejia

210145503

Cooley LLP
Attorneys At Law
San Diego

21.