UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE JON S. TIGAR, JUDGE**

IN RE CALIFORNIA BAIL           )
BOND ANTITRUST LITIGATION,      )     NO. C-19-0717 JST
_____ )

                                      WEDNESDAY, OCTOBER 16, 2019

                                      OAKLAND, CALIFORNIA

                                      MOTION TO DISMISS

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

**FOR PLAINTIFF**S:              LIEFF CABRASER HEIMANN & BERNSTEIN
                                 275 BATTERY STREET, 29TH FLOOR
                                 SAN FRANCISCO, CALIFORNIA 94111
                            BY:  DEAN M. HARVEY, ESQUIRE
                                 KATHERINE C. LUBIN, ESQUIRE
                                 ADAM GITLIN, ESQUIRE
                                 YAMAN SALAHI, ESQUIRE

**FOR DEFENDANT SEAVIEW**        COOLEY, LLP
**INSURANCE/TWO JINN:**          101 CALIFORNIA STREET
                                 SAN FRANCISCO, CALIFORNIA 94111
                            BY:  BEATRIZ MEJIA, ESQUIRE
                                 MAXIMILIAN SLADEK DE LA CAL, ESQ.


                                 COOLEY, LLP
                                 4401 EASTGATE MALL
                                 SAN DIEGO, CALIFORNIA 92121
                            BY:  JON F. CIESLAK, ESQUIRE


                    (APPEARANCES CONTINUED)

**REPORTED BY:**                 DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                                 OFFICIAL COURT REPORTER


        TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
 1    FOR DEFENDANT          DLA PIPER
      DANIELSON NATIONAL     444 WEST LAKE STREET, SUITE 900
 2    INSURANCE:             CHICAGO, ILLINOIS 60606
                       BY:  JOHN HAMILL, ESQUIRE
 3                           MICHAEL MURPHY, ESQUIRE

 4

 5    FOR DEFENDANT          ROPERS MAJESKI KOHN BENTLEY
      WILLIAM CARMICHAEL/    1001 MARSHALL STREET, STE. 500
 6    AMERICAN BAIL          REDWOOD CITY, CALIFORNIA
      COALITION:        BY:  NICOLE S. HEALY, ESQUIRE
 7                           EDWIN BARNES, ESQUIRE

 8    FOR DEFENDANT          NORTON ROSE FULBRIGHT US LLP
      AMERICAN CONTRACTORS   1301 MCKINNEY, SUITE 5100
 9    INDEMNITY:             HOUSTON, TEXAS 77010
                       BY:  GERARD G. PECHT, ESQUIRE
10

11    FOR DEFENDANT          MICHELMAN & ROBINSON, LLP
      US FIRE/NORTH          17901 VON KARMAN AVENUE, 1OTH FLOOR
12    RIVER INSURANCE/       IRVINE, CALIFORNIA 92614
      SENECA:           BY:  VINCENT LOH, ESQUIRE
13

14    FOR DEFENDANT          FOLEY & LARDNER
      CONTINENTAL HERITAGE:  555 SOUTH FLOWER STREET, SUITE 300
15                           LOS ANGELES, CALIFORNIA 90071
                       BY:  ERIK SWANHOLT, ESQUIRE
16

17    FOR DEFENDANT          LAW OFFICE OF BRENDAN PEGG
      FINANCIAL CASUALTY     201 E. OJAI AVENUE, #1505
18    & SURETY:              OJAI, CALIFORNIA 93024
                       BY:  BRANDAN PEGG, ESQUIRE
19

20    FOR DEFENDANT          GREENBERG TRAURIG, LLP
      AMERICAN SURETY/       FOUR EMBARCADERO CENTER, SUITE 3000
21    INDIANA LUMBERMENT:    SAN FRANCISCO, CALIFORNIA 94111
                       BY:  HOWARD HOLDERNESS, ESQUIRE
22

23    FOR DEFENDANT          DRINKER BIDDLE & REATH
      ACCREDITED CASUALTY    FOUR EMBARCADERO CENTER, 27TH FLOOR
24    & SURETY:              SAN FRANCISCO, CALIFORNIA 94111
                       BY:  PAUL J. RIEHLE, ESQUIRE
25
```

```
 1   FOR DEFENDANT            SMITH, GAMBRELL & RUSSELL, LLP
     WILLIAMSBURG:            444 SOUTH FLOWER STREET, SUITE 1700
 2                            LOS ANGELES, CALIFORNIA 90071
                        BY:  ANNE K. EDWARDS, ESQUIRE
 3

 4   FOR DEFENDANT            LAW OFFICES OF GREGORY S. DAY
     CALIFORNIA BAIL          120 BIRMINGHAM DRIVE, SUITE 200
 5   AGENTS ASSN./            CARDIFF, CALIFORNIA 92007
     UNIVERSAL FIRE &    BY:  GREGORY S. DAY, ESQUIRE
 6   LIFE/ SUN SURETY:

 7

 8   FOR DEFENDANT            LAW OFFICE OF JOHN M. RORABAUGH
     GOLDEN STATE BAIL        801 PARKCENTER DRIVE, SUITE 205
 9   ASSN.:                   SANTA ANA, CALIFORNIA 92705
                        BY:  CRYSTAL L. RORABAUGH, ESQUIRE
10

11   FOR DEFENDANT            BINGHAM GREENEBAUM DOLL
     LEXON INSURANCE:         101 SOUTH FIFTH STREET
12                            LOUISVILLE, KENTUCKY 40202
                        BY:  W. SCOTT CROFT, ESQUIRE
13

14   FOR DEFENDANT            KONING ZOLLAR, LLP
     ALL PRO BAIL             2210 ENCINITAS BLVD., SUITE S
15   BONDS:                   ENCINITAS, CALIFORNIA 92024
                        BY:  DREW KONING, ESQUIRE
16

17   FOR DEFENDANT JERRY      ROXBOROUGH POMERANCE NYE & ADREANI
     WATSON/ALLEGEHENY        5820 CANOGA AVENUE
18   CASUALTY/INTERNATIONAL   WOODLAND HILLS, CALIFORNIA 91367
     FIDELITY/LEXINGTON  BY:  GARY A. NYE, ESQUIRE
19   INTERNATIONAL/BANKERS
     INSURANCE CO.:
20

21   FOR DEFENDANT            HINSHAW LAW
     PHILADELPHIA             ONE CALIFORNIA STREET, 18TH FLOOR
22   REINSURANCE CO.:         SAN FRANCISCO, CALIFORNIA 94111
                        BY:  TRAVIS R. WALL, ESQUIRE
23

24

25
```

| | |
|---|---|
| 1 | <u>WEDNESDAY, OCTOBER 16, 2019</u>                          2:05 P.M. |

1   WEDNESDAY, OCTOBER 16, 2019           2:05 P.M.

2           P R O C E E D I N G S

3       **THE CLERK:**  REMAIN SEATED AND COME TO ORDER.  COURT

4   IS IN SESSION.  THE HONORABLE JOHN S. TIGAR PRESIDING.

5       YOUR HONOR, NOW CALLING CIVIL MATTER 19-0717 IN RE

6   CALIFORNIA BAIL BOND ANTI LITIGATION -- ANTITRUST LITIGATION.

7       IF COUNSEL COULD PLEASE GIVE THEIR APPEARANCES FOR THE

8   RECORD.

9       **MR. HARVEY:**  GOOD AFTERNOON, YOUR HONOR.  DEAN HARVEY

10   OF LIEFF, CABRASER, HEIMANN & BERNSTEIN ON BEHALF OF THE

11   CLASS.

12       **MS. LUBIN:**  GOOD AFTERNOON.  KATHERINE LUBIN ALSO

13   WITH LIEFF, CABRASER ALSO FOR THE PLAINTIFFS.

14       **MR. SALAHI:**  GOOD AFTERNOON.  YAMAN SALAHI WITH

15   LIEFF, CABRASER FOR PLAINTIFFS.

16       **MR. GITLIN:**  GOOD AFTERNOON, YOUR HONOR.  ADAM

17   GITLIN, LIEFF, CABRASER FOR PLAINTIFFS.

18       **MS. MEJIA:**  GOOD AFTERNOON, YOUR HONOR.  BEATRIZ

19   MEJIA OF COOLEY FOR TWO JINN DEFENDANTS AND SEAVIEW INSURANCE

20   COMPANY.

21       **MR. HAMILL:**  GOOD AFTERNOON, YOUR HONOR.  JOHN HAMILL

22   OF DLA PIPER ON BEHALF OF DANIELSON NATIONAL INSURANCE

23   COMPANY.

24       **MR. NYE:**  GOOD AFTERNOON, YOUR HONOR.  GARY NYE ON

25   BEHALF OF JERRY WATSON, INTERNATIONAL FIDELITY INSURANCE

1    COMPANY, ALLEGEHENY CASUALTY COMPANY, HARCO NATIONAL INSURANCE

2    COMPANY, LEXINGTON NATIONAL INSURANCE COMPANY, AND BANKERS

3    INSURANCE COMPANY.

4            **MR. RIEHLE:**  GOOD AFTERNOON, YOUR HONOR.  PAUL

5    RIEHLE, DRINKER, BIDDLE & REATH FOR ACCREDITED SURETY

6    CASUALTY.

7            **MR. KONING:**  GOOD AFTERNOON, YOUR HONOR.  DREW KONING

8    OF KONING --

9            **THE REPORTER:**  I'M SORRY, SAY YOUR NAME AGAIN?

10           **THE COURT:**  SAY YOUR NAME AGAIN.

11           **MR. KONING:**  DREW KONING.

12           **THE COURT:**  MADAME REPORTER, D-R-E-W K-O-N-I-N-G.

13           **THE REPORTER:**  THANK YOU.

14           **MR. CIESLAK:**  GOOD AFTERNOON, YOUR HONOR.  JON

15   CIESLAK OF COOLEY, LLP ON BEHALF OF SEAVIEW INSURANCE COMPANY

16   AND TWO JINN, INC.

17           **MS. HEALY:**  GOOD AFTERNOON, YOUR HONOR.  NICOLE HEALY

18   FROM ROPERS, MAJESKI, KOHN & BENTLEY ON BEHALF OF WILLIAM

19   CARMICHAEL AND AMERICAN BAIL COALITION.

20           **MR. WALL:**  GOOD AFTERNOON, YOUR HONOR.  TRAVIS WALL,

21   HINSHAW & CULBERTSON ON BEHALF OF PHILADELPHIA REINSURANCE

22   CORPORATION.

23           **MR. SLADEK DE LA CAL:**  GOOD AFTERNOON, YOUR HONOR.

24   MAX SLADEK DE LA CAL OF COOLEY, LLP ON BEHALF OF SEAVIEW

25   INSURANCE COMPANY AND TWO JINN, INC.

1      **MR. DAY:**  GOOD AFTERNOON, YOUR HONOR.  GREG DAY HERE

2  ON BEHALF OF SUN SURETY INSURANCE COMPANY, UNIVERSAL FIRE AND

3  LIFE, AS WELL AS THE CALIFORNIA BAIL ASSOCIATION.

4      **MS. EDWARDS:**  GOOD AFTERNOON, YOUR HONOR.  ANN

5  EDWARDS ON BEHALF OF WILLIAMSBURG NATIONAL INSURANCE COMPANY.

6      **MR. CROFT:**  GOOD AFTERNOON, YOUR HONOR.  SCOTT CROFT

7  OF BINGHAM GREENEBAUM DOLL ON BEHALF OF LEXON INSURANCE

8  COMPANY.

9      **MS. RORABAUGH:**  GOOD AFTERNOON, YOUR HONOR.  CRYSTAL

10  RORABAUGH FROM THE OFFICE OF JOHN RORABAUGH ON BEHALF OF

11  GOLDEN STATE BAIL ASSOCIATION.

12      **MR. LOH:**  GOOD AFTERNOON, YOUR HONOR.  VINCENT LOH OF

13  MICHELMAN & ROBINSON ON BEHALF OF U.S. FIRE INSURANCE, NORTH

14  RIVER FIRE INSURANCE COMPANY, AS WELL AS SENECA INSURANCE

15  COMPANY.

16      **MR. HOLDERNESS:**  GOOD AFTERNOON, YOUR HONOR.  HOWARD

17  HOLDERNESS FROM GREENBERG TRAURIG ON BEHALF OF AMERICAN SURETY

18  AND INDIANA LUMBERMENT.

19      **MR. PECHT:**  YOUR HONOR, GERRY PECHT OF NORTON ROSE

20  FULBRIGHT ON BEHALF OF AMERICAN CONTRACTORS INDEMNITY.

21      **MR. MURPHY:**  YOUR HONOR, MICHAEL MURPHY, DLA PIPER ON

22  BEHALF OF DANIELSON INSURANCE.

23      **MR. PEGG:**  GOOD AFTERNOON, YOUR HONOR.  BRENDAN PEGG

24  ON BEHALF OF FINANCIAL CASUALTY & SURETY COMPANY.

25      **MR. BARNES:**  GOOD AFTERNOON, YOUR HONOR.  EDWIN

1  BARNES OF ROPERS, MAJESKI, KOHN, BENTLEY ON BEHALF OF WILLIAM

2  CARMICHAEL AND AMERICAN BAIL COALITION.

3          **MR. SWANHOLT:**  GOOD AFTERNOON, YOUR HONOR.  ERIK

4  SWANHOLT OF FOLEY & LARDNER ON BEHALF OF CONTINENTAL HERITAGE.

5          **THE COURT:**  EVERYBODY, WELCOME.  IT'S POSSIBLE THAT

6  ONE OF YOU HADN'T CHECKED IN YET.  I THINK I HAVE ONE MORE

7  NAME -- I HEARD ONE MORE NAME A MOMENT AGO THAN I HAVE ON MY

8  DANCE CARD IN FRONT OF ME.  SO YOU GOT A LIST OF ALL THE

9  NAMES, MS. LEE?

10          **THE CLERK:**  I'M SORRY, YOUR HONOR, NO.

11          **THE COURT:**  OKAY.  WELL, I COULD GO BACK THROUGH THE

12  WHOLE EXERCISE AND WE COULD FIGURE OUT WHERE THE OVERAGE IS

13  BUT WE WON'T DO THAT.

14          **MR. MURPHY:**  IT MIGHT BE ME, YOUR HONOR.

15          **THE COURT:**  I DON'T THINK IT IS.  I WILL ENCOURAGE

16  YOU ALL TO CHECK IN WITH THE COURTROOM DEPUTY BEFORE YOU LEAVE

17  IF YOU DIDN'T DO THAT.  IF YOU DID DO THAT, THEN I AM CERTAIN

18  SHE GOT YOUR NAME.

19      SO LET'S GET UNDERWAY WITH THE HEARING.  THE MATTER IS ON

20  CALENDAR TODAY FOR MOTIONS TO DISMISS THE CONSOLIDATED AMENDED

21  COMPLAINT IN THIS CASE.  I DON'T OFTEN BEGIN A HEARING BY

22  ANNOUNCING A TENTATIVE, BUT I WANTED TO DO IT TODAY BECAUSE I

23  WAS WORRIED THAT OTHERWISE OUR TIME WOULD NOT BE USED

24  PRODUCTIVELY.  THERE ARE JUST TOO MANY ISSUES.  SO, LET ME DO

25  THAT NOW.

1      I THINK PLAINTIFF -- THERE REALLY ARE TWO CATEGORIES OF

2   CLAIMS HERE.  ONE IS A CONSPIRACY TO SUBMIT UNIFORM MAXIMUM

3   RATES AND THE OTHER IS A REFUSAL OR DECLINATION TO PROVIDE

4   REBATES.  THOSE ARE THE TWO CATEGORIES OF CLAIMS.

5      I THINK THE FIRST SET OF CLAIMS ON A CONSPIRACY TO SUBMIT

6   UNIFORM MAXIMUM RATES TO THE CALIFORNIA DEPARTMENT OF

7   INSURANCE IS BARRED BY THE MCCARRAN-FERGUSON ACT.  IF I STICK

8   WITH THAT CONCLUSION, THEN I WON'T REACH THE OTHER ARGUED

9   IMMUNITIES.  BECAUSE THAT'S AN ISSUE OF LAW, IF THE PLAINTIFFS

10   WANT TO CHALLENGE THAT RULING OR EVEN IF THEY JUST WANT A

11   CHANCE TO AMEND, I THINK THEY SHOULD EXPLAIN HOW THEY THINK

12   THEY CAN AMEND.  I'M NOT SEEING IT.  SO, UNLESS I HEAR A GOOD

13   ARGUMENT TODAY, THEN THOSE CLAIMS WOULD BE DISMISSED WITH

14   PREJUDICE.

15      TURNING TO THE CLAIMS NOT TO DISCOUNT A REBATE, AND I'LL

16   GET TO THE 12(B)(6) POINTS IN A SECOND BECAUSE I THINK THERE

17   ARE SOME ISSUES THERE, TOO, BUT TURNING TO THE ALLEGED

18   AGREEMENTS NOT TO DISCOUNT OR REBATE, THOSE CLAIMS ARE NOT

19   BARRED BY THE MCCARRAN-FERGUSON ACT BECAUSE THAT PRACTICE, IF

20   IT'S OCCURRING, HAS NOTHING TO DO WITH SPREADING THE RISK THAT

21   A DEFENDANT WILL JUMP BAIL.

22      ALSO THOSE CLAIMS ARE NOT BARRED BY THE STATE ACTION

23   DOCTRINE.  THE TEST FOR STATE ACTION IMMUNITY IS THAT THE

24   CHALLENGE RESTRAINT MUST REFLECT A CLEARLY ARTICULATED STATE

25   POLICY THAT PERMITS THE ANTICOMPETITIVE CONDUCT AND THAT THE

1    PERMITTED ANTICOMPETITIVE ACTIVITIES ARE ACTIVELY SUPERVISED

2    BY THE STATE.

3        THOSE CLAIMS PROBABLY FAIL THE FIRST TEST.  THEY

4    DEFINITELY FAIL THE SECOND TEST.  SO I DON'T SEE THOSE CLAIMS

5    AS BEING BARRED BY THE STATE ACTION DOCTRINE.  AND THE

6    DEFENDANTS HAVE CONCEDED THAT THOSE CLAIMS ARE NOT BARRED BY

7    THE FILED RATE DOCTRINE, SO THAT DISPOSES OF THE IMMUNITY

8    CLAIMS.

9        I DON'T THINK SECTION 1860.1 BARS THE REBATING CLAIMS

10   BECAUSE THAT -- THOSE CLAIMS ARE NOT A CHALLENGE TO THE

11   REASONABLENESS OF AN APPROVED RATE, WHICH IS WHAT'S REQUIRED

12   FOR 1860.1.

13       TURNING TO THE 12(B)(6) ARGUMENTS.  THE COURT WOULD

14   TENTATIVELY GRANT THE MOTION FOR CERTAIN DEFENDANTS ON THE

15   GROUND THAT AS TO THOSE DEFENDANTS, PLAINTIFFS FAILED TO

16   ALLEGE SUFFICIENT FACTS ABOUT HOW EACH DEFENDANT JOINED OR

17   PARTICIPATED IN THE ALLEGED CONSPIRACY.  I FIND JUDGE CONTI'S

18   ORDER IN *CRT* TO BE DISTINGUISHABLE.

19       ON THAT GROUND, I WOULD DISMISS THE SURETY DEFENDANTS, THE

20   BAIL AGENCY ALL-PRO, AND THE TRADE ASSOCIATION GSBAA.  I'M

21   SORT OF ON THE FENCE ABOUT THE TWO INDIVIDUAL DEFENDANTS FOR

22   REASONS I WON'T GET INTO AT THE MOMENT.

23       WITH REGARD TO THE ALLEGATIONS OF A CONSPIRACY, I THINK

24   THERE ARE PLENTY OF PLUS FACTORS IN THE COMPLAINT, IDENTIFIED

25   IN THE COMPLAINT.  WHAT THERE ISN'T IS A PLAUSIBLE CASE OF

1  PARALLEL CONDUCT.  THAT'S WEIRD BECAUSE NORMALLY ON THIS KIND

2  OF MOTION YOU SEE PLENTY OF THE SECOND THING BUT NOT ENOUGH OF

3  THE FIRST THING, AND HERE IT'S THE OPPOSITE.

4  SO FOCUSING ONLY ON REBATING, AGAIN, CORRECT ME IF I'M

5  WRONG, I THINK PLAINTIFFS' ONLY ALLEGATION IS THAT THE

6  DEFENDANTS -- THE ONLY ALLEGATION THAT THE DEFENDANTS DON'T,

7  IN FACT, OFFER REBATES IS THE STATEMENT IN THE COMPLAINT THAT

8  DEFENDANTS QUOTE "GENERALLY REFRAIN FROM OFFERING COMPETITIVE

9  REBATES."  MAYBE THERE'S MORE PARALLEL CONDUCT THERE THAT I

10  DIDN'T SEE WHEN I WAS READING THE COMPLAINT.

11  THOSE ARE ALL TENTATIVE RULINGS.  I THINK WHAT WE WILL DO

12  IS, I WILL HEAR FROM THE DEFENDANTS.  SOME OF THIS IS

13  TENTATIVELY GOING THEIR WAY, BUT STILL IT'S THEIR MOTION.

14  THEN THE PLAINTIFFS, THEN THE DEFENDANTS, BUT THEN I WILL HEAR

15  FROM THE PLAINTIFFS LAST IN LIGHT OF THE TENTATIVES.

16  I DON'T -- I'M NOT GOING TO SET TIME LIMITS.  AFTER ABOUT

17  AN HOUR I'M GOING TO STOP PAYING AS CLOSE ATTENTION TO YOU, SO

18  USE YOUR TIME PRODUCTIVELY.

19  WHO WANTS TO GO FIRST?

20  MS. MEJIA?

21  **MS. MEJIA:**  GOOD AFTERNOON, YOUR HONOR.

22  SO, YOUR HONOR'S ABSOLUTELY CORRECT THAT THE ONLY

23  ALLEGATION WITH RESPECT TO PARALLEL CONDUCT IS THAT -- IT'S AT

24  PARAGRAPH 68 -- THAT DEFENDANTS HAVE QUOTE, "HAVE AGREED

25  GENERALLY TO REFRAIN FROM OFFERING COMPETITIVE REBATES."

THERE'S ABSOLUTELY NOTHING ELSE WITH RESPECT TO PARALLEL

CONDUCT BETWEEN -- AMONG THE DEFENDANTS.

THE COMPLAINT DOESN'T ALLEGE ANY INDIVIDUAL SPECIFIC

REBATING PRACTICE, DOESN'T PROVIDE ANY STATISTICS ABOUT THE

FREQUENCY OF REBATING IN THE INDUSTRY, DOESN'T ALLEGE ANY

AGREEMENT BETWEEN AGENTS TO REBATE ANY AGREEMENTS BETWEEN

SURETY AND AGENTS.  IT'S ENTIRELY UNCLEAR EXACTLY THE SCOPE OF

THE CONSPIRACY.  AND OTHER THAN THAT ALLEGATION THERE'S

NOTHING ELSE TO BE SAID ABOUT PARALLEL CONDUCT AMONG THE

DEFENDANTS.

AND, IN FACT, THE STATEMENTS THAT ARE HIGHLIGHTED BY THE

DEFENDANTS IN THEIR COMPLAINT IN OPPOSITION ACTUALLY ARE

INTENTIONED WITH THAT.  THE STATEMENTS MAKE CLEAR THAT THERE

IS, IN FACT, REBATING.  AND, IN FACT, THERE IS A LOT OF

REBATING.  AND THE COMPLAINT ALSO MAKES CLEAR, AS DO THE

MOTION PAPERS, THAT THERE ARE OVER 3,000 AGENTS IN THE STATE

OF CALIFORNIA.

SO COORDINATING A CONSPIRACY OVER THE DECLINATION OF

REBATING AMONG THAT NUMBER OF DEFENDANTS SEEMS IMPLAUSIBLE AND

CERTAINLY DIFFICULT TO MONITOR, AND THERE'S NOTHING IN THE

ALLEGATION THAT ATTEMPTS TO DEAL WITH THE REALITIES OF HOW THE

REBATING -- ABOUT THOSE FACTS.  AND THE COMPLAINT ALSO IGNORES

THE REALITIES OF HOW REBATING WORKS.

REBATING COMES FROM THE COMMISSION THAT THE AGENTS

RECEIVE --

1    **THE COURT:** I THINK THAT'S -- I THINK THE PLAINTIFFS

2  GET THAT. THE LANGUAGE IS A LITTLE CLUMSY, BUT I THINK THEY

3  UNDERSTAND THAT DISTINCTION.

4    **MS. MEJIA:** OKAY, YOUR HONOR.

5  BUT I WANT TO GO BACK TO THE POINT THAT THE STATEMENTS

6  THAT THEY RELY ON IN THEIR -- THE COMPLAINT MAKE CLEAR THAT

7  THERE IS COMPETITION AMONG AGENTS OVER REBATING. THERE HAS

8  BEEN AN INCREASE IN THE NUMBER OF AGENTS OVER THE COURSE OF

9  THE CONSPIRACY PERIOD WHICH SUGGESTS A VERY COMPETITIVE

10 MARKET. I THINK THERE'S -- AT ONE POINT THE NUMBER OF AGENTS

11 WENT FROM 1200 --

12   **THE COURT:** ACTUALLY, MY -- I DON'T KNOW HOW GERMANE

13 THIS IS GOING TO BE TO MY RULING, BUT MY ECONOMICS 101 WOULD

14 TELL ME THAT IF THERE'S AN INCREASE IN THE NUMBER OF AGENTS,

15 IT'S BECAUSE THERE'S HIGH PROFITS IN THE MARKET. THAT'S WHY

16 OTHER PEOPLE SEEK TO ENTER.

17   **MS. MEJIA:** BUT IT MEANS THAT IT'S A FLUID MARKET AND

18 FOLKS ARE ABLE TO ENTER QUITE EASILY. SO THAT'S A -- THAT'S

19 A --

20   **THE COURT:** THERE AREN'T BARRIERS TO ENTER.

21   **MS. MEJIA:** YES, LOW BARRIERS TO ENTRY. IF YOU HAVE

22 A LOT OF PEOPLE ENTERING AS PARTICIPANTS, THAT THAT MEANS

23 THERE'S LOW BARRIERS TO ENTRY.

24   **THE COURT:** SURE.

25   **MS. MEJIA:** SO, AGAIN, YOUR HONOR, I THINK YOU ARE

1  ABSOLUTELY RIGHT THAT THERE IS NOTHING IN THE COMPLAINT THAT

2  COMES CLOSE TO MEETING PLAINTIFFS' BURDEN ON THAT PARTICULAR

3  ALLEGATION WITH RESPECT TO THE DECLINATION OF REBATES.

4      ON A FINAL NOTE, YOUR HONOR, WE THINK IT WOULD ALSO BE

5  FUTILE ACTUALLY TO ALLOW THEM TO AMEND GIVEN THAT REBATING

6  OCCURS AND IT'S CONSISTENT -- AND THE AGENTS --

7      **THE COURT:**  YOU'RE TELLING ME -- OKAY.  NEVER MIND.

8      **MS. MEJIA:**  GO AHEAD.

9      **THE COURT:**  YOU HAVE QUITE AN UPHILL BATTLE TO TELL

10  ME THAT ON A 12(B)(6) TYPE ARGUMENT WHERE SOMEBODY HASN'T

11  ALLEGED ENOUGH OF SOMETHING THAT I SHOULD DISMISS THEIR

12  COMPLAINT OUT OF BOX WITHOUT LEAVE TO AMEND.

13      I SUPPOSE IT HAPPENS, BUT I CAN'T SAY THAT I HAVE EVER

14  DONE IT.

15      **MS. MEJIA:**  IT'S CERTAINLY YOUR DISCRETION, YOUR

16  HONOR, AND I APPRECIATE THAT.

17      **THE COURT:**  YEAH.

18      **MS. MEJIA:**  AND IT'S TYPICALLY THE CASE THAT

19  PLAINTIFFS GET A LEAVE TO AMEND, BUT WE'RE JUST LOOKING DOWN

20  THE ROAD, PLAINTIFFS HAVE AN UPHILL BATTLE TO ALLEGE A CLAIM

21  THAT'S GOING TO SURVIVE, YOU KNOW, A CHALLENGE, ANOTHER

22  CHALLENGE TO A MOTION TO DISMISS.

23      THEY ARE SIMPLY NOT AN ALLEGATION THAT THEY CAN MAKE THAT

24  THERE WAS NO REBATING THAT TOOK PLACE.  BECAUSE, IN FACT,

25  THERE WAS REBATING.  THEY CANNOT MAKE THAT ALLEGATION

1 TRUTHFULLY.  THEY DON'T DO IT IN THIS COMPLAINT AND THEY

2 CERTAINLY CAN'T DO IT IN ANY FUTURE COMPLAINT.  THAT'S THE

3 POINT I WAS TRYING TO MAKE.

4     **THE COURT:**  GOT IT.

5     **MS. MEJIA:**  THAT'S IT.

6     **THE COURT:**  YOU DON'T WANT TO TALK ME OUT OF SOME OF

7 THOSE OTHER ANTITRUST IMMUNITY TENTATIVES --

8     **MS. MEJIA:**  THAT'S MY COLLEAGUE, MR. HAMILL.  WE

9 SPLIT UP THE ARGUMENT.

10     **THE COURT:**  ALL RIGHT, MR. HAMILL.

11     **MR. HAMILL:**  YOUR HONOR, IS IT EASIER IF WE DO THIS

12 ALL AT ONCE AND THEN YIELD THE PODIUM?  MAYBE THAT'S EASIER.

13     **THE COURT:**  YES, I THINK SO.  PROBABLY.  BECAUSE WHO

14 KNOWS, UNLESS YOU COORDINATED WITH THE OTHER SIDE HOW THEY

15 WERE GOING TO DIVIDE UP THE ARGUMENT, WHICH YOU PROBABLY

16 HAVEN'T, IT'S PROBABLY BEST TO GET THE DEFENDANTS WHOLE BALL

17 OF WAX, AND THEN THE PLAINTIFFS, AND BACK AND FORTH LIKE THAT.

18     **MR. HAMILL:**  OKAY.

19   I DIDN'T KNOW IF YOU WANTED A TENNIS MATCH OR JUST KIND OF

20 ALL AT ONCE.  I DON'T WANT TO TALK YOU OUT OF MUCH OF WHAT YOU

21 SAID, I'LL DESCRIBE THEM AS THE REGULATORY DEFENSES.  MOSTLY

22 WANT TO TALK YOU INTO WHY I THINK YOU WERE RIGHT, AND THEN

23 MAYBE ADD A COUPLE OF THINGS TO HOPEFULLY --

24     **THE COURT:**  KEEP YOUR POWDER DRY, HONESTLY.

25     **MR. HAMILL:**  OKAY.

1      **THE COURT:**  IF I FEEL WEAKLY ABOUT SOMETHING, I

2   GENERALLY SAY IT.  ACTUALLY I DON'T GENERALLY GIVE A TENTATIVE

3   IN THAT INSTANCE, BUT IF I DO -- IF I AM GIVING A TENTATIVE,

4   AND I'M NOT CONVINCED THOROUGHLY -- ALREADY RELATIVELY

5   THOROUGHLY CONVINCED OF MY POSITION, I'LL SAY THAT.

6      **MR. HAMILL:**  RIGHT.

7      **THE COURT:**  IT DOESN'T MEAN MY MIND CAN'T BE CHANGED,

8   IT JUST MEANS AS I SIT HERE NOW, I DON'T THINK I NEED

9   BOLSTERING AND IF THEY DON'T SAY ANYTHING ON THE SUBJECT YOU

10   ARE GOING TO WIN.

11      **MR. HAMILL:**  I THINK THAT I NEED TO OFFER A FRIENDLY

12   AMENDMENT TO MAKE YOUR ANALYSIS COMPLETE BECAUSE I THINK YOU

13   LEFT OUT ONE THING.

14      **THE COURT:**  OKAY.

15      **MR. HAMILL:**  IF I MAY?

16      **THE COURT:**  SURE.

17      **MR. HAMILL:**  ON WHAT YOU DESCRIBED AS THE CONSPIRACY

18   TO SUBMIT MAXIMUM PREMIUMS OR MAXIMUM RATES TO THE DEPARTMENT

19   OF INSURANCE, YOU SAID THAT YOUR TENTATIVE WAS THAT IT WOULD

20   BE BARRED BY THE MCCARRAN-FERGUSON ACT.  OBVIOUSLY WE AGREE

21   WITH THAT, BUT THAT'S FOR THE SHERMAN ACT CLAIM.  THEY ALSO

22   HAVE A CARTWRIGHT ACT CLAIM.

23      **THE COURT:**  OH, YES, THAT'S TRUE.

24      **MR. HAMILL:**  SO I THINK ON THAT POINT THE OTHER

25   DEFENSES WHICH ALL DO TRULY DOVETAIL, WE HAVE TO TAKE THOSE

1    INTO ACCOUNT TO DEAL WITH THE CARTWRIGHT ACT.

2        AND ALL THESE DEFENSES FLOW FROM THE SAME SOURCES, RIGHT?

3    WHETHER WE SPEAK ABOUT THEM IN TERMS OF SECTION 1860.1 OR

4    STATE ACTION, I REALLY THINK WHEN IT COMES TO THE CARTWRIGHT

5    ACT CLAIMS AND THE UCL CLAIMS, WE ARE BEST FOCUSED ON 1860.1.

6    THAT'S THE CALIFORNIA ANALOG.  AND UNDER THE *MACKAY* CASE,

7    THAT'S WHERE WE WANT TO LOOK.  BUT THAT IS THE SOURCE THAT

8    BARS THOSE CLAIMS UNDER A PARALLEL SET OF REASONING TO THE

9    MCCARRAN-FERGUSON ACT.

10            **THE COURT:**  YEAH, THAT MAKES SENSE.

11            **MR. HAMILL:**  THAT WOULD COMPLETE THE PICTURE OF YOUR

12   DECISION.

13        NOW, ON WHAT YOU SAY ON THE REFUSAL TO PERMIT THE REBATING

14   AS IT'S CALLED, CANDIDLY WE WERE CURIOUS IF YOU WERE GOING TO

15   GO THERE, AND I THINK THAT THERE'S -- IT WOULD BE VERY

16   DIFFICULT FOR US TO SIT UP HERE AND TRY TO TALK TO YOU OUT OF

17   THE ANALYSIS AS TO WHERE THOSE REGULATORY DEFENSES GO.

18        BUT I WILL SAY THAT I DON'T THINK THAT THAT COMPLAINT, THE

19   ONE YOU ARE SAYING WOULD NOT BE BARRED BY THE REGULATORY

20   DEFENSES --

21            **THE COURT:**  YES.

22            **MR. HAMILL:**  -- THAT'S NOT THE COMPLAINT THAT'S

23   BEFORE YOU.  I DID A LITTLE CRIBBING HERE TO GO THROUGH

24   ANTICIPATING THAT YOU MIGHT END UP IN YOUR ANALYSIS --

25            **THE COURT:**  TELL ME WHAT YOU MEAN BY THAT.

1          **MR. HAMILL:** HERE IS WHAT I MEAN.

2      I'M LOOKING AT A COUPLE OF PARAGRAPHS AT THE BEGINNING

3  THAT SET UP THE PLAINTIFFS' COMPLAINT.

4          **THE COURT:** I HAVE A COPY OF THE COMPLAINT AT MY

5  BENCH.

6          **MR. HAMILL:** ALL RIGHT.

7          **THE COURT:** SO TELL ME WHAT YOU ARE LOOKING AT.

8          **MR. HAMILL:** LET'S HIGHLIGHT STARTING WITH

9  PARAGRAPH 6. I'M GOING TO JUMP AROUND FOR A FEW THAT START

10  BACK AND FORTH, BUT PARAGRAPH 6 IS, I THINK, THE MOST

11  ILLUSTRATIVE.

12          **THE COURT:** ALL RIGHT.

13          **MR. HAMILL:** THIS CLASS ACTION SEEKS DAMAGES FOR THE

14  HUNDREDS OF THOUSANDS OF CALIFORNIANS WHO HAVE OVERPAID FOR

15  UNLAWFULLY INFLATED BAIL BOND PREMIUMS AND INJUNCTIVE RELIEF

16  TO BRING COMPETITION INTO THIS COLLUSIVE MARKET.

17          **THE COURT:** I DIDN'T DO A GOOD JOB OF ARTICULATING

18  THIS BEFORE, BUT WHEN MS. MEJIA WAS TALKING TO ME I SAID,

19  WELL, THE LANGUAGE OF THE COMPLAINT IS A LITTLE CLUMSY. ONE

20  OF THE THINGS I MEANT IS THAT THE COMPLAINT DOESN'T DO A GOOD

21  JOB, IT DOESN'T DO A GOOD ENOUGH JOB OF MAKING IT CLEAR THE

22  DISTINCTION BETWEEN PREMIUMS AND COMMISSIONS. AND SO THAT

23  GETS THE COMPLAINT INTO TROUBLE ON REBATES.

24      I'M GOING TO SAY THAT IN A MORE EXPLICIT WAY IN WHATEVER

25  ORDER I ISSUE, AND THEN THE PLAINTIFFS ARE GOING TO FIX IT.

1    THAT'S WHAT I THINK IS GOING TO HAPPEN.

2         **MR. HAMILL:**  AND MY -- THE SUBTLE POINT OF MY

3    ADVOCACY WAS TO SUGGEST TO YOU THAT IF YOU WERE GOING TO GIVE

4    LEAVE TO AMEND, THAT PERHAPS, IF I MAY BE SO BOLD, IT WOULD BE

5    A GOOD IDEA TO SUGGEST THAT THAT CLARITY WOULD NEED TO BE IN

6    AN AMENDED COMPLAINT.  BECAUSE THE COMPLAINT IS TARGETED TO

7    PREMIUMS, AND I COULD GIVE YOU, AS I WAS GOING TO, ABOUT A

8    HALF A DOZEN SIMILAR CITES THAT FOCUS ON THE WORD "PREMIUMS",

9    THAT THAT WON'T WORK BECAUSE OF THE RULING THAT YOU ARE

10   ISSUING ON THOSE REGULATORY DEFENSES.

11        **THE COURT:**  YEAH.  I THINK, I MEAN, THERE'S LIKELY TO

12   BE A LITTLE BIT OF SQUINTING AS I'M ISSUING THAT RULING.  SO I

13   CAN SEE WHAT IT IS THE COMPLAINT MEANS, IF THAT MAKES SENSE.

14        **MR. HAMILL:**  FAIR ENOUGH.

15     ON THAT, YOUR HONOR, I DON'T HAVE MUCH MORE TO SAY.  I

16   THINK YOU HAVE IT RIGHT ON THESE REGULATORY DEFENSES.  I DO

17   THINK, THOUGH, THAT THAT AMENDED PORTION THAT WOULD BRING IN

18   THE STATE LAW ANALOGS, THE MCCARRAN-FERGUSON ACT, IS GOING TO

19   BE NECESSARY TO COMPLETE THE PICTURE.  BECAUSE WITHOUT THAT,

20   YOUR DECISION WOULD ONLY GET RID OF THEM -- THE FEDERAL LAW

21   CLAIMS --

22        **THE COURT:**  THAT WAS HELPFUL.  GOOD.

23        **MR. HAMILL:**  VERY GOOD.

24        **THE COURT:**  THANKS.

25        **MR. HAMILL:**  THANK YOU.

1     **MS. HEALY:** GOOD AFTERNOON, YOUR HONOR. THIS IS THE

2 THIRD AT BAT HERE FOR DEFENDANTS.

3    I WANT TO ADDRESS WHAT THE COURT CALLED THE 12(B)(6)

4 ISSUES. WE APPRECIATE AND AGREE WITH THE COURT THAT THE

5 CLAIMS SHOULD BE DISMISSED AS TO THE SURETIES FOR WHOM THERE

6 IS ABSOLUTELY NO ALLEGATION OF ANY ACTIVITY ON.

7    THE COURT ALSO MENTIONED THE --

8     **THE COURT:** WOULD YOU STATE YOUR APPEARANCE AGAIN?

9     **MS. HEALY:** I'M SORRY. NICOLE HEALY.

10     **THE COURT:** THANK YOU. I HAVE IT NOW.

11     **MS. HEALY:** THANK YOU, YOUR HONOR.

12 ALL-PRO AS WELL. WE HAVE PUT IN THE SAME CATEGORY

13 LEXINGTON, WHICH IS THE 18TH OF THE SURETIES. THE COURT

14 MENTIONED GSBAA, BUT NOT THE TWO OTHER ENTITIES. IT'S THE

15 CBAA, CALIFORNIA BAIL AGENTS ASSOCIATION AND AMERICAN BAIL

16 COALITION. AND THEY REALLY ARE ALSO IN THE SAME CATEGORY WITH

17 GSBAA, WHICH IS THERE ARE EFFECTIVELY NO ALLEGATIONS OF ANY

18 ACTIVITY EXCEPT HOLDING MEETINGS.

19    CBAA IS ALLEGED TO HAVE PUT SOME INFORMATION ON ITS

20 WEBSITE, BUT NOT TO HAVE DISCLOSED THAT REBATING WAS POSSIBLE

21 BY BAIL AGENTS. THERE'S NO AFFIRMATIVE OBLIGATION THAT THEY

22 DO SO. THE INFORMATION THEY PUT ON THEIR WEBSITE APPEARS TO

23 BE ACCURATE, OR ALLEGEDLY PUT ON THEIR WEBSITE.

24    AND AS FAR AS ABC, OR AMERICAN BAIL COALITION IS

25 CONCERNED, THEY PUT ON A MEETING AND IT WAS ATTENDED BY

1    PEOPLE.  AND WE DON'T HAVE ANY OTHER ALLEGATIONS ABOUT ANY

2    ACTIVITY AT THE MEETING.  THERE'S NO ALLEGED AGREEMENTS MADE

3    THERE, AGREEMENTS CARRIED OUT, ALLEGED ENFORCEMENT ACTIVITY,

4    SHARING OF ILLICIT INFORMATION.  NONE OF THAT, WHICH IS WHAT

5    ONE WOULD EXPECT TO SEE IN A CASE ALLEGING THAT AN

6    ORGANIZATION, AN INDUSTRY TRADE ORGANIZATION THAT WAS BEING

7    USED FOR THE ILLICIT ACTIVITY.  SO I WOULD ASK THE COURT TO

8    PUT ALL THREE OF THE ASSOCIATIONS IN THE SAME CATEGORY OF

9    PARTIES TO BE DISMISSED.

10        AND WITH RESPECT TO THE TWO INDIVIDUALS, I THINK THE COURT

11   SAID THAT YOU WERE ON THE FENCE ABOUT HOW TO TREAT THE

12   INDIVIDUALS.  I WOULD NOTE, THESE TWO PEOPLE AS INDIVIDUALS

13   ARE NOT IN THE -- THEY HAVE NO ABILITY TO ENFORCE ANY ILLICIT

14   ACTIVITY.  THEY DON'T PERSONALLY FILE FOR ANY PREMIUMS.  THEY

15   DON'T PERSONALLY ISSUE REBATES.  THEY DON'T WRITE BAIL BONDS

16   PERSONALLY.  THEY ARE EXECUTIVES IN THE INDUSTRY, BUT THAT'S

17   TRUE OF A LOT OF PEOPLE, AND YET THESE TWO GUYS,

18   MR. CARMICHAEL AND MR. WATSON HAVE BEEN CALLED OUT REALLY FOR

19   MAKING STATEMENTS ON THEIR COMPANY WEBSITES OR IN OTHER FORA

20   WHICH ARE NOT ABOUT ANY ILLICIT ACTIVITY.

21        MR. CARMICHAEL IS ALLEGED TO HAVE MADE STATEMENTS ON TWO

22   OCCASIONS, MARCH 2005, AUGUST 2005.  AND WHAT HE'S TALKING

23   ABOUT, IF YOU READ THOSE, AND THOSE ARE EXHIBITS 3 AND

24   EXHIBIT 5 IN THE PLAINTIFFS' MATERIALS THAT THEY HAVE ATTACHED

25   IN THEIR REQUEST FOR JUDICIAL NOTICE.

1    MR. CARMICHAEL IS TALKING ABOUT LEGISLATION.  AND IT'S

2   LEGISLATION THAT COULD AFFECT THE BAIL INDUSTRY.  AND HE IS A

3   PERSON VERY INTERESTED IN THE BAIL INDUSTRY, AN EXECUTIVE IN

4   THE BAIL INDUSTRY -- I'M SORRY, IT'S EXHIBIT 1, THE MARCH 2005

5   ARTICLE.

6    AND HE SAYS, EFFECTIVELY, IF YOU HEAR ABOUT LEGISLATION,

7   TELL US.  YOU KNOW, LET'S TALK ABOUT IT.  LET'S SEE WHAT WE

8   CAN DO FOR THE INDUSTRY.

9    HE'S NOT SAYING, I WANT YOU, BAIL AGENTS OUT THERE, TO

10  REFUSE TO REBATE, TO TELL PEOPLE YOU CAN'T REBATE, TO CONSPIRE

11  NOT TO REBATE.  HE'S NOT DOING ANY OF THAT.

12   HE'S ALSO TALKING ABOUT THE FINANCIAL IMPACT ON THE

13  INDUSTRY OF REBATING.  THIS IS SOMETHING OF GREAT CONCERN TO

14  THE SURETIES.  BECAUSE, AS THE COURT UNDERSTANDS, IT'S THE

15  BAIL AGENT WHO IS THE FRONT LINE WHO ISSUES THE BOND.  AND IF

16  THE ARRESTEE SKIPS BAIL, THE BAIL AGENT IS GOING TO PAY.  SO

17  THE BAIL AGENT'S FINANCIAL SOLVENCY IS EXTREMELY IMPORTANT.

18   THE SURETY STANDS BEHIND THE BAIL AGENT.  THE SURETY GETS

19  ITS 1 PERCENT OF THE FACE VALUE OF THE BOND, AND IF THE BAIL

20  AGENT IS INCAPABLE OF SATISFYING THE BOND, IT'S THE SURETY WHO

21  STEPS IN.

22   AND SO TO THAT DEGREE, BECAUSE THE SURETY IS ADVANCING

23  CREDIT TO THE BAIL AGENT, THE SURETY'S CONCERNED ABOUT THE

24  FINANCIAL WHEREWITHAL OF BAIL AGENTS.  THAT'S WHAT HE'S

25  TALKING ABOUT.

1          **THE COURT:** OKAY. I DO HAVE TO CONSTRUE THESE

2     ALLEGATIONS FAVORABLY TO THE PLAINTIFF. THAT WASN'T BAD AS A

3     DEFENSIVE PROFIT, THE THING THAT YOU JUST SAID, BUT... YEAH.

4          **MS. HEALY:** YOUR HONOR, I WOULD SUGGEST THAT YOU

5     RE-READ EXHIBIT 1 AND EXHIBIT 5 IN PLAINTIFFS' MATERIALS.

6          **THE COURT:** I ACCEPT THAT INVITATION. I ACTUALLY

7     WILL READ THE EXHIBITS THEMSELVES. YOU DID A GOOD JOB OF, I

8     THINK, DIRECTING MY ATTENTION TO THOSE.

9          **MS. HEALY:** WITH RESPECT TO MR. WATSON, WHO IS

10    ALLEGED TO HAVE MADE STATEMENTS AS WELL, WHAT HE SAYS IS, YOU

11    KNOW, IF WE ARE GOING TO BE COMPETING WITH PEOPLE WHO ARE

12    REBATING, HERE'S HOW WE COMPETE: WE OFFER BETTER SERVICE,

13    WHICH IS EXACTLY WHAT YOU WANT PEOPLE TO DO, COMPETE ON

14    QUALITY.

15       OTHER PEOPLE CAN DISCOUNT ON PRICE. YOU ARE GOING TO

16    COMPETE ON QUALITY. IF YOU ARE THE BETTER QUALITY BAIL AGENT,

17    THE ONE WITH BETTER SERVICE, PEOPLE WANT TO GO WORK WITH, YOU

18    ARE GOING TO GET CUSTOMERS. SO THAT'S WHAT HE'S TALKING

19    ABOUT, WHICH IS NOT ANTICOMPETITIVE IN THE LEAST. IN FACT, IT

20    IS PROCOMPETITIVE.

21       SO I WOULD SUGGEST THE COURT CONSIDER THIS IN THINKING

22    ABOUT THE INDIVIDUALS WITH RESPECT TO ANY DISMISSAL AND THE

23    FUTURE COMPLAINT.

24          **THE COURT:** VERY GOOD.

25          **MS. HEALY:** THANK YOU, YOUR HONOR.

1          **THE COURT:**  THANK YOU.

2          **MS. HEALY:**  FINALLY, JUST TO POINT OUT FOR DANIELSON,

3    DANIELSON EXITED THE BUSINESS YEARS AGO.  THEY AREN'T WRITING

4    BAIL.  THEY ARE NO LONGER IN THIS BUSINESS.  THE CLAIMS SHOULD

5    BE DISMISSED AS TO THEM.

6       THANK YOU, YOUR HONOR.

7          **THE COURT:**  THANKS.

8          **MR. CIESLAK:**  GOOD AFTERNOON, YOUR HONOR.  JON

9    CIESLAK FROM COOLEY ON BEHALF SEAVIEW AND TWO JINN.

10      I AM GOING TO ADDRESS SOMETHING THAT ACTUALLY LEADS FROM

11   MS. HEALY'S LAST POINT ABOUT DANIELSON, AND THAT'S THE STATUTE

12   OF LIMITATIONS.  THE COURT HASN'T GIVEN US ANY GUIDANCE, BUT I

13   WANTED TO BEGIN BY DIRECTING THE COURT TO THE VERY FIRST

14   SENTENCE OF THE PLAINTIFFS' OPPOSITION BRIEF ON THIS MOTION.

15      AND THAT IS POINTING TO A STATEMENT FROM WILLIAM

16   CARMICHAEL IN 2005 WHICH, AS PLAINTIFFS SAY, HE DESCRIBES THE

17   ALLEGED CONSPIRACY.  PLAINTIFFS THEN GO ON TO ALLEGE OR TRY TO

18   ALLEGE THAT THE PLAINTIFFS THEN FRAUDULENTLY CONCEALED THE

19   CONSPIRACY, SOME -- STARTING SOMETIME AFTER 2005 UNTIL THE

20   PRESENT.

21         **THE COURT:**  RIGHT.

22         **MR. CIESLAK:**  I THINK THOSE ALLEGATIONS ARE JUST

23   INHERENTLY IN CONFLICT, AND PLAINTIFFS CAN'T HAVE IT BOTH

24   WAYS.

25      WHEN THEY TRY TO -- I'M SORRY, WERE YOU GOING --

1    **THE COURT:** OH, NO. IT'S FUNNY. YOU KNOW, EVEN

2    AFTER 18 YEARS I HAVEN'T GOTTEN USED TO THE WEIGHT THAT PEOPLE

3    PUT ON EACH MOVEMENT OF ANY OF MY FACIAL MUSCLES.

4                    (LAUGHTER)

5    SO I DON'T EVEN KNOW HOW TO ANSWER THE QUESTION THAT YOU

6    ARE BINDING UP TO ASK. I JUST WENT LIKE THIS (INDICATING) --

7    **MR. CIESLAK:** I THOUGHT YOU WERE ABOUT TO SAY

8    SOMETHING, AND I WAS GOING TO ALLOW YOU TO DO THAT.

9    **THE COURT:** NO, I APPRECIATE THAT. AND I'M HONESTLY

10   NOT, I'M NOT MAKING FUN OF YOU. I'M MAKING FUN OF MYSELF AND

11   THE ROLE THAT I HAVE TO PLAY, AND I THOUGHT I MIGHT GET A

12   LAUGH FROM THE AUDIENCE, AND I DID.

13   ANYWAY, GO AHEAD.

14   **MR. CIESLAK:** THANK YOU.

15   SO HAVING ALLEGED THAT, YOU KNOW, A DEFENDANT PUBLICLY

16   DESCRIBED THEIR ALLEGED CONSPIRACY IN 2005, IN, YOU KNOW,

17   PLAINTIFFS THEN GO ON TO ALLEGE THAT, YOU KNOW, DEFENDANTS

18   SOMEHOW CONCEALED THAT CONSPIRACY, THEIR CORE THEORY HERE IS

19   THAT THERE WERE A NUMBER OF MISREPRESENTATIONS THAT PREMIUM

20   PRICES WERE REQUIRED BY LAW AND THAT DISCOUNTING WAS ILLEGAL.

21   AND THEY CITE EITHER A NUMBER OF STATEMENTS IN THE COMPLAINT.

22   **THE COURT:** WE DON'T NORMALLY DUMP, I DON'T SAY "WE".

23   IT ISN'T COMMONLY DONE TO DISMISS THESE KIND OF CLAIMS AT THE

24   12(B)(6) STAGE BECAUSE QUESTIONS OF FRAUDULENT CONCEALMENT ARE

25   INHERENTLY FACTUAL. I DON'T DENY THAT THERE COULD POTENTIALLY

1    BE SUCH A PLAUSIBILITY PROBLEM THAT THE COURT WOULD GRANT A

2    MOTION TO DISMISS ON THOSE GROUNDS, BUT I DON'T KNOW THAT

3    YOU'RE QUITE -- THAT THIS CASE IS THAT CASE.

4         MR. CIESLAK:  I HEAR THAT.  AND WE DO HAVE A CITATION

5    HERE.  IT'S THE *JABLON VERSUS DEAN WITTER* CASE THAT SAYS THAT

6    THIS IS, WHEN IT'S APPARENT FROM THE FACE OF THE COMPLAINT

7    THAT THESE CLAIMS ARE TIME BARRED, THEN YOU CAN GRANT THE

8    MOTION TO DISMISS.

9      BUT I THINK THIS IS THAT CASE BECAUSE OF THE EMPHASIS THAT

10   PLAINTIFFS THEMSELVES PUT ON THIS STATEMENT FROM 2005.  YOU

11   CAN'T BE BOTH DEFENDANTS WERE PUBLICLY DESCRIBING A CONSPIRACY

12   AND AT THE SAME TIME CONCEALING IT.

13     SO I GUESS THE ASK IS CERTAINLY THAT, YOU KNOW, ANOTHER

14   GROUND TO DISMISS THIS COMPLAINT WOULD BE THE STATUTE OF

15   LIMITATIONS, BUT I THINK BOTH PARTIES WOULD CERTAINLY BENEFIT

16   FROM GUIDANCE THE COURT COULD GIVE ON THIS ISSUE.

17        THE COURT:  SO YOU'VE READ THE GITLIN DECLARATION,

18   EXHIBIT 1, FROM WHICH THIS QUOTE IS TAKEN?

19        MR. CIESLAK:  YES.

20        THE COURT:  WHICH IS THE EXHIBIT THAT I ACCEPTED THE

21   INVITATION TO READ A MOMENT AGO.  WHERE WAS THE STATEMENT

22   MADE?  WHERE WAS WILLIAM B. CARMICHAEL STANDING OR SITTING

23   WHEN HE MADE THIS STATEMENT?

24        MR. CIESLAK:  IT WAS A WRITTEN STATEMENT THAT WAS

25   PUBLISHED ON A WEBSITE.  AND I AM NOT RECALLING EXACTLY WHICH

1    SURETY DEFENDANT'S WEBSITE IT WAS.  IT WAS PUBLICLY AVAILABLE

2    ON THAT WEBSITE.

3            **THE COURT:**  I SEE.

4            **MR. CIESLAK:**  HIS BLOG THAT WAS ON THE WEBSITE.

5            **THE COURT:**  I MEAN THE ARGUMENT REQUIRES THE COURT TO

6    CONSIDER WHAT IT MEANS TO SAY SOMETHING PUBLICLY.  AND SO WE

7    MIGHT SAY, YOU KNOW, THERE ARE DIFFERENT LEVELS.  IF HE SAID

8    IT TO HIS COLLEAGUE IN HIS OFFICE, THAT WOULD BE AT A VERY LOW

9    LEVEL.  IF HE SAID IT ON THE CNN WEBSITE, THAT WOULD BE VERY

10   PUBLIC.

11       IS THE BLOG MAINTAINED BY A SURETY COMPANY?  WHERE DOES

12   THAT FIT IN?  THAT IS SOMETHING I'LL HAVE TO CONSIDER.

13           **MR. CIESLAK:**  YOUR HONOR, I THINK THAT'S NOT EXACTLY

14   THE RIGHT QUESTION ACTUALLY.  IT IS ON PLAINTIFFS.  IT IS

15   THEIR BURDEN TO PLEAD FACTS SHOWING FRAUDULENT CONCEALMENT.

16           **THE COURT:**  YES.

17           **MR. CIESLAK:**  AND WHETHER OR NOT THIS IS A COMMONLY

18   REVIEWED WEBSITE DOESN'T REALLY GO TO THAT.  AND --

19           **THE COURT:**  BUT HOW CAN I -- I CAN'T ACCEPT YOUR

20   ARGUMENT WITHOUT ANY CONTEXT, CAN I?  I CAN'T SAY, WELL, HE

21   SAID IT PUBLICLY, BUT DON'T CONSIDER WHAT KIND OF WEBSITE IT

22   WAS.

23           **MR. CIESLAK:**  RIGHT, BUT THE POINT BEING, YOUR HONOR,

24   THAT IT IS NOT CONCEALMENT FOR HIM TO GO ON TO A WEBSITE NO

25   MATTER THE POINT IS.

1    **THE COURT:** YES. THAT WAS NOT AN ACT OF CONCEALMENT.

2    **MR. CIESLAK:** RIGHT.

3    **THE COURT:** YES.

4    **MR. CIESLAK:** SO IN LIGHT OF THAT, I MEAN WHAT ACTS

5    OF CONCEALMENT ARE THERE IN THE COMPLAINT? AND I WOULD REPORT

6    TO YOU THAT THEIR THEORY HERE IS THAT IT IS MISREPRESENTATIONS

7    ABOUT WHETHER REBATING IS ILLEGAL AND -- OR AS THEY SAY,

8    DISCOUNTING IS ILLEGAL.

9    NOW, THERE ARE A NUMBER OF STATEMENTS FROM VARIOUS BAIL

10   AGENTS WHERE THEY SAY THAT THAT'S WHAT THOSE BAIL AGENTS ARE

11   SAYING. I WANT TO NOTE THAT ALL BUT ONE OF THOSE ARE FROM A

12   BAIL AGENT THAT IS NOT A DEFENDANT IN THIS CASE.

13   **THE COURT:** YES.

14   **MR. CIESLAK:** THERE'S REALLY NO BASIS IN THE

15   COMPLAINT OR OTHERWISE TO ATTRIBUTE THOSE STATEMENTS TO ANY OF

16   THOSE DEFENDANTS.

17   THE ONE EXCEPTION IS AT PARAGRAPH 73. AND THAT'S A

18   STATEMENT BY MY CLIENT, TWO JINN, WHICH DOES BUSINESS AS

19   ALADDIN BAIL BONDS.

20   AND THEN THE STATEMENT THAT THEY HAVE HERE, IF I COULD,

21   I'LL READ IT. IT'S, "ALL INSURERS WHO WORK WITH BAIL SERVICE

22   PROVIDERS ARE REQUIRED TO FILE THEIR PREMIUM RATES WITH THE

23   DEPARTMENT OF INSURANCE. IN CALIFORNIA, ALADDIN BAIL BONDS IS

24   AUTHORIZED TO OFFER AN 8 PERCENT RATE IN ADDITION TO THE

25   STANDARD 10 PERCENT RATE. NOBODY HAS LOWER PRICES THAN

1    ALADDIN."

2         THAT'S THE ONLY STATEMENT THAT HAS BEEN ATTRIBUTED TO A

3    DEFENDANT THAT WOULD IN ANY WAY FRAUDULENTLY CONCEAL THIS.

4    AND I WOULD PUT TO YOU, THE COURT, IN FACT, IT DOES NOT

5    FRAUDULENTLY CONCEAL ANYTHING.  PLAINTIFFS' THEORY IS THAT

6    THIS STATEMENT -- THEY DON'T SAY IT'S FALSE AND, IN FACT, IT

7    IS NOT FALSE.  THEY SAY IT IS MISLEADING BECAUSE IT DOESN'T

8    ALSO SAY, BUT WE CAN ALSO GIVE YOU A REBATE ON THAT.  AND --

9         **THE COURT:**  YOU THINK THE USE OF THE WORD

10   "AUTHORIZED" WAS NOT -- THAT SOMEONE DID NOT SELECT THAT WORD

11   ADVISEDLY TO CONVEY A CERTAIN MEANING WHICH MIGHT NOT ACTUALLY

12   CAPTURE THE TRUTH IN ITS ENTIRETY?

13        **MR. CIESLAK:**  WELL... BUT, NO, I DON'T THINK THAT'S

14   THE CASE.  AND THE REASON IS THAT WE NEED TO UNDERSTAND THE

15   STRUCTURE OF THE BAIL INDUSTRY HERE WHERE THERE'S TWO PLAYERS.

16   THERE'S THE SURETY AND THEN THERE'S THE BAIL AGENT.

17        SO THE BAIL AGENT DOESN'T FILE RATES.  AND IT CAN ONLY

18   CHARGE THE RATES THAT A SURETY HAS FILED AND HAS BEEN APPROVED

19   BY THE CALIFORNIA DEPARTMENT OF INSURANCE.

20        SO WHEN ALADDIN IS SAYING WE WERE AUTHORIZED TO OFFER

21   THESE RATES, THEY WERE AUTHORIZED TO OFFER THOSE RATES BY THE

22   SURETY THAT IS STANDING BEHIND THEM.

23        **THE COURT:**  YES.  ALL RIGHT.

24        **MR. CIESLAK:**  BUT THE CENTRAL POINT HERE --

25        **THE COURT:**  HAVE YOU EVER BEEN TO A BAIL BONDSMAN?

1          **MR. CIESLAK:**  I HAVE TALKED WITH A NUMBER OF BAIL

2     BONDSMEN.  I HAVE ONLY DONE CRIMINAL MATTERS IN FEDERAL COURT

3     WHERE WE DON'T HAVE TO USE BAIL BONDSMEN.

4          **THE COURT:**  HAVE YOU GONE DOWN TO THE COURTROOM ON

5     WASHINGTON STREET AND WALKED ACROSS THE STREET AND WALKED IN

6     AND OUT OF THE OFFICES AND LOOKED AT THE KINDS OF PEOPLE WHO

7     COME INTO THE OFFICE TO PURCHASE BAIL BONDS?

8          **MR. CIESLAK:**  I HAVE NOT DONE THAT, YOUR HONOR.

9          **THE COURT:**  WHAT WE MIGHT DESCRIBE IN THIS INDUSTRY

10     AS THE REASONABLE CONSUMER, THAT PERSON.

11          **MR. CIESLAK:**  I'VE REPRESENTED SEVERAL OF THEM IN

12     FEDERAL COURT.

13          **THE COURT:**  THE ORDER ISN'T PROBABLY GOING TO TOUCH

14     ON THE DISCUSSION THAT WE ARE HAVING RIGHT NOW ABOUT PARAGRAPH

15     73, BUT I SPENT A YEAR AT THE WILEY MANUEL COURTHOUSE.  IT WAS

16     MY VERY FIRST JOB ON THE STATE COURT.  AND OF COURSE I HAD

17     SPENT A YEAR AND A HALF AS A PUBLIC DEFENDER SEVERAL YEARS

18     BEFORE THAT.

19          **MR. CIESLAK:**  YES.

20          **THE COURT:**  AND SO WHEN I THINK ABOUT THE SENTENCE

21     "ALADDIN BAIL BONDS IS AUTHORIZED TO OFFER AN 8 PERCENT RATE

22     IN ADDITION TO THE STANDARD 10 PERCENT, NOBODY HAS LOWER

23     PRICES THAN ALADDIN," CAN I EXCLUDE THE POSSIBILITY THAT A

24     REASONABLE CONSUMER OF BAIL BOND SERVICES WOULD READ THAT

25     PHRASE AND THINK TO THEMSELVES, WELL, 8 PERCENT, THAT MUST BE

1    THE ABSOLUTE ROCK BOTTOM.  IF I'M GETTING 8 PERCENT, I AM

2    GETTING AS GOOD AS ANYBODY COULD POSSIBLY GET.  IT WOULD BE

3    TOUGH FOR ME TO EXCLUDE THAT POSSIBILITY.

4         THAT'S THE ONLY POINT I'M MAKING.

5              **MR. CIESLAK:**  I UNDERSTAND THAT POINT.

6    I DON'T THINK THAT'S WHAT'S REQUIRED TO FIND THAT

7    PLAINTIFF -- THAT DEFENDANTS HAVE NOT FRAUDULENTLY CONCEALED.

8              **THE COURT:**  I AGREE WITH YOU.  THE CASE IS NOT GOING

9    TO RISE AND FALL ON THIS PARAGRAPH.  IT'S JUST THE THING YOU

10   ARE SERVING UP TO ME.

11             **MR. CIESLAK:**  I UNDERSTAND.  AND MY POINT IS THAT

12   THIS IS THE ONLY THING PLAINTIFFS CAN SERVE UP TO YOU, AND

13   IT'S NOT ENOUGH TO ACHIEVE FRAUDULENT CONCEALMENT.

14             **THE COURT:**  THANKS.

15             **MR. CIESLAK:**  THANK YOU, YOUR HONOR.

16             **MR. HAMILL:**  YOUR HONOR, BEFORE WE YIELD THE FLOOR?

17             **THE COURT:**  YES.

18             **MR. HAMILL:**  WE MAY HAVE MISHEARD ONE ASPECT OF YOUR

19   TENTATIVE.  CAN I JUST CLARIFY ONE QUESTION?  ASK YOU ONE

20   QUESTION?

21             **THE COURT:**  SURE.

22             **MR. HAMILL:**  ON THE MCCARRAN-FERGUSON ACT, WAS YOUR

23   TENTATIVE THAT THE REFUSAL TO PERMIT REBATES WOULD NOT BE

24   BARRED BY THE MCCARRAN-FERGUSON ACT?

25             **THE COURT:**  YES.

1    **MR. HAMILL:**  OKAY.  MAY I ASK YOU FOR TWO MINUTES TO

2    TRY AND TALK YOU OUT OF THAT?

3    **THE COURT:**  SURE.

4    **MR. HAMILL:**  BECAUSE I THINK THAT'S INCORRECT.

5    **THE COURT:**  AFTER THAT IS IT THE PLAINTIFFS' TURN?

6    **MS. MEJIA:**  YES, YOUR HONOR.

7    **MR. HAMILL:**  YES, SIR.

8    **THE COURT:**  GO AHEAD.

9    **MR. HAMILL:**  SO AS WE LAID OUT IN THE BRIEFS, IF I

10   CAN EXPAND ON THAT A BIT MORE, THE BUSINESS OF INSURANCE

11   INCLUDES THAT RELATIONSHIP BETWEEN THE AGENT AND THE PURCHASER

12   OF A BOND.  AND IF I CAN DIRECT YOUR ATTENTION, THE ONLY

13   AUTHORITIES THAT HAVE BEEN CITED TO YOU THAT I AM AWARE OF ALL

14   SUPPORT WHAT I JUST SAID.

15   THE THINGS WE WOULD ASK YOU TO CONSIDER ARE, FIRST OF ALL,

16   THE *GROVES* CASE FROM THE SUPREME COURT OF CALIFORNIA, WHICH

17   ESSENTIALLY HOLDS THAT A CITY CAN'T COLLECT A LICENSE TAX ON

18   BAIL AGENTS BECAUSE THAT RELATIONSHIP THAT THE BAIL AGENT'S

19   BUSINESS IS, IN FACT, THE BUSINESS OF INSURANCE.  THAT'S THE

20   FIRST THING I WOULD ASK YOU TO LOOK AT.

21   **THE COURT:**  OKAY.  THERE ARE THREE FACTORS IN

22   DETERMINING WHETHER SOMETHING IS THE BUSINESS OF INSURANCE,

23   RIGHT?

24   **MR. HAMILL:**  YES.

25   **THE COURT:**  THE FIRST IS WHETHER THE PRACTICE HAS THE

1    EFFECT OF TRANSFERRING OR SPREADING THE POLICYHOLDER'S RISKS.

2        HOW DOES THE REBATING FIT IN THERE?

3            **MR. HAMILL:**  I AM NOT SURE WHERE YOU ARE GETTING THAT

4    FROM, YOUR HONOR, THAT THAT'S WHAT CONSTITUTES THE BUSINESS OF

5    INSURANCE.

6            **THE COURT:**  THE CASE FROM THE NINTH CIRCUIT CALLED

7    *FEINSTEIN*.

8            **MR. HAMILL:**  THE QUESTION OF WHAT GOES -- COVERS THE

9    BUSINESS OF INSURANCE IS A QUESTION OF WHAT THE SCOPE OF THE

10   STATE REGULATION IS.  THE STATE REGULATION IS GOVERNED BY

11   STATE LAW.  STATE LAW COVERED THIS RELATIONSHIP BETWEEN THE

12   BAIL AGENT AND THE PURCHASER.

13       SO THE BAIL AGENT HERE IS THE PERSON THAT IS ULTIMATELY

14   PROVIDING BAIL TO THE PURCHASER, THE BOND TO THE PURCHASER.

15   THAT RELATIONSHIP IS GOVERNED BY STATE LAW.  THE CALIFORNIA

16   SUPREME COURT HAS SPOKEN AND SAID THAT RELATIONSHIP IS

17   GOVERNED BY THE CALIFORNIA INSURANCE CODE.

18       SO FOR THE FEDERAL ANTITRUST LAW TO COME IN AND INVADE

19   THAT RELATIONSHIP AND IMPOSE THE SHERMAN ACT'S RESTRICTIONS ON

20   IT WOULD BE A CHANGE IN THAT RELATIONSHIP PUTTING IT SUBJECT

21   TO FEDERAL ANTITRUST RESTRICTIONS, WHICH WOULD BE A FIRST.

22   THE FEDERAL COURTS HAVE CONSIDERED THIS QUESTION AND LOOKED AT

23   THAT VERY RELATIONSHIP --

24           **THE COURT:**  IF YOU ARE CORRECT, YOU'RE RIGHT, YOU ARE

25   DOING ME A HUGE FAVOR.  THIS CASE MIGHT GO ON FOR A LONG TIME.

1    I DON'T KNOW.

2              **MR. HAMILL:**  IT COULD.

3              **THE COURT:**  THEN YOU AND I WILL HAVE LOTS OF

4    OPPORTUNITY TO INTERACT.  SO I'M GOING TO ASK YOU A QUESTION.

5              **MR. HAMILL:**  YES.

6              **THE COURT:**  IF I READ -- IF I AM THIS WRONG, IT MUST

7    BE THAT I CAN READ ONE CASE AND SEE HOW WRONG I AM.

8         WHAT'S THE CASE?

9              **MR. HAMILL:**  SOUTHERN DISTRICT OF FLORIDA, *BUCKMAN V.*

10   *AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA* 924 F.SUPP.

11   1156.  THAT'S WHAT I WOULD ASK YOU TO READ.

12             **THE COURT:**  NOW, OF COURSE I HAVE NOTHING BUT RESPECT

13   FOR ALL OF THE FEDERAL DISTRICTS AROUND THE COUNTRY.  I DO

14   WONDER IF I'M SO WRONG AND IF THE POINT IS SO

15   WELL-ESTABLISHED, WHY DO I HAVE TO GO TO THE SOUTHERN DISTRICT

16   OF FLORIDA?  IS THERE SOMETHING CLOSER TO HOME?

17             **MR. HAMILL:**  IT HAS BETTER WEATHER THAN YOU DO.

18             **THE COURT:**  YOU'RE ON THIN ICE.

19             **MR. HAMILL:**  SUPREME COURT OF CALIFORNIA.  THAT'S THE

20   BEST I CAN DO, IN *GROVES*.

21             **THE COURT:**  *GROVES*, 1953.  I'LL READ IT.

22             **MR. HAMILL:**  THAT'S IT.

23             **THE COURT:**  OKAY.

24             **MR. HAMILL:**  THANKS, JUDGE.

25             **THE COURT:**  THANKS.

1          **MR. HARVEY:**  GOOD AFTERNOON, YOUR HONOR.  I THINK IT

2     MAY MAKE SENSE TO GIVE A BIT OF BACKGROUND ON THE PERHAPS

3     UNIQUE WAY THAT CALIFORNIA APPLIES COMPETITION TO THE

4     INSURANCE INDUSTRY.

5          AND I WANT TO DESCRIBE PROPOSITION 103 AND THE SEA CHANGE

6     THAT IT WORKED ON THE APPLICATION OF ANTITRUST LAWS TO

7     INSURANCE.  WHICH I'LL JUST SAY TO BEGIN WITH, FOR YOUR

8     HONOR'S REFERENCE, ATTACHED AS EXHIBIT 7 TO THE GITLIN

9     DECLARATION, IS THE CALIFORNIA ATTORNEY GENERAL GUIDELINES

10    TO -- OF HOW TO APPLY THE ANTITRUST LAWS IN THE INSURANCE

11    CONTEXT.

12         AND THOSE GUIDELINES RESPOND ALMOST POINT BY POINT TO

13    EVERY ARGUMENT WE JUST HEARD BY DEFENDANTS.  AND THERE IS A

14    SEPARATE SECTION FOR MCCARRAN-FERGUSON, FOR EXAMPLE, SEPARATE

15    SECTION FOR THE FILED RATE DOCTRINE, SO ON AND SO FORTH.  I

16    WILL WALK THROUGH THE COURT -- I WILL WALK THE COURT THROUGH

17    SOME OF THESE ISSUES.

18         I'LL ALSO ADD THAT THESE GUIDELINES ARE ENTITLED TO GREAT

19    WEIGHT UNDER CALIFORNIA COURT OF APPEAL AUTHORITY, INCLUDING

20    THE *CRAMER* CASE AND THE CALIFORNIA SUPREME COURT WHICH IS

21    *CALIFORNIA ASSOCIATION OF PSYCHOLOGY PROVIDERS*, 51 CAL.3D 1,

22    AT PAGE 11, 1990.  AND ONE -- IF I CAN --

23              **THE COURT:**  THIS IS *CALIFORNIA ASSOCIATION* OF WHAT?

24              **MR. HARVEY:**  *OF PSYCHOLOGY PROVIDERS*.

25              **THE COURT:**  SO THIS IS A NEW CASE, CORRECT?

1          **MR. HARVEY:**  THIS IS A NEW CASE.

2          **THE COURT:**  IT'S NOT IN THE BRIEF.

3          **MR. HARVEY:**  IT'S NOT.

4          **THE COURT:**  YOU'RE CITING IT FOR THE PROPOSITION THAT

5     I SHOULD GIVE A LOT OF WEIGHT TO THESE GUIDELINES THAT ARE IN

6     EXHIBIT 7?

7          **MR. HARVEY:**  CORRECT.

8          **THE COURT:**  GIVE ME THE CITATION AGAIN?

9          **MR. HARVEY:**  51 CAL.3D 1 AT PAGE 11.

10         **THE COURT:**  ALL RIGHT.

11         **MR. HARVEY:**  AND ONE LAST POINT ON THIS.  BECAUSE THE

12    DEFENDANTS IN THEIR OPPOSITION TO OUR MOTION FOR JUDICIAL

13    NOTICE I THINK CASTS SOME DOUBT ON WHETHER THE GUIDELINES

14    WE'VE PROVIDED TO THE COURT ARE AUTHENTIC, WITH YOUR HONOR'S

15    PERMISSION --

16         **THE COURT:**  THERE'S ALSO A FIGHT THAT I DIDN'T FINISH

17    RESOLVING IN MY OWN MIND BECAUSE I DIDN'T DO THE HOMEWORK YET

18    ABOUT WHETHER I SHOULD GIVE JUDICIAL NOTICE TO SOME CALIFORNIA

19    DEPARTMENT OF INSURANCE MATERIALS BECAUSE THEY MIGHT BE OUT OF

20    DATE.  ISN'T THAT A FIGHT YOU'RE HAVING ON JUDICIAL NOTICE?

21         **MR. HARVEY:**  THAT IS NOT AN ARGUMENT THAT THE

22    DEFENDANTS MADE, BUT I WOULD BE HAPPY TO ADDRESS THAT CONCERN.

23         **THE COURT:**  NO, NO, NO.  GO AHEAD.

24         **MR. HARVEY:**  WITH YOUR HONOR'S PERMISSION, I WOULD

25    LIKE TO PASS OUT A DOCUMENT THAT SIMPLY SUMMARIZES THE CALL

1    NUMBERS OF THE GUIDELINES IN EVERY LOCAL LAW LIBRARY AS WELL

2    AS PROVIDING A CITATION TO A CASE THAT IS NOT IN THE BRIEFS

3    BUT I PROVIDED TO THE DEFENDANTS BEFORE THIS ARGUMENT.

4               **THE COURT:**  OKAY.

5               **MR. HARVEY:**  HERE IS THE HANDOUT.

6                    (DOCUMENT HANDED TO COUNSEL AND COURT.)

7               **MR. HARVEY:**  THE CASE THAT I'VE JUST HAD PASSED TO

8    YOUR HONOR IS A 2016 CALIFORNIA COURT OF APPEALS CASE THAT

9    RELIES ON THE GUIDELINES TO RESOLVE ISSUES OF HOW TO APPLY THE

10   ANTITRUST LAWS IN THE INSURANCE CONTEXT.

11              **THE COURT:**  OKAY.

12              **MR. HARVEY:**  OKAY.

13      I AGREE WITH ONE OF THE COMMENTS MADE BY THE DEFENDANTS TO

14   YOUR HONOR TODAY THAT ALL OF THE IMMUNITY ARGUMENTS, IF YOU

15   WILL, REST ON ONE COMMON ISSUE.  AND THAT IS, DOES THIS

16   REGULATOR, DOES THE CALIFORNIA DEPARTMENT OF INSURANCE HAVE

17   AUTHORITY TO REGULATE THE COMPETITIVENESS OF RATES OR THE

18   COMPETITIVENESS OF REBATES OR DISCOUNTS OFF OF THOSE RATES.

19   AND THE ANSWER IS UNEQUIVOCALLY NO.

20      THE CALIFORNIA ATTORNEY GENERAL GUIDELINES GO INTO THIS IN

21   GREAT DEPTH, AND ASIDE FROM THAT, THE LANGUAGE OF THE

22   PROPOSITION ITSELF MAKES IT VERY CLEAR THAT THE ANTITRUST LAWS

23   DO APPLY IN THIS CONTEXT.

24      NOW I THINK IT MAY BE USEFUL TO NOTE THAT PRIOR TO PROP

25   103, CDI DID HAVE AUTHORITY OVER COMPETITION.  CALIFORNIA

1    VIEWED THAT TO BE INSUFFICIENT BECAUSE IT RESULTED IN PRICES

2    THAT WERE EXCESSIVE AND NONCOMPETITIVE.

3        SO THE STATED -- LET ME QUOTE THE CONCERNS FROM THE

4    LANGUAGE OF PROP 103 ITSELF, WHICH IS AN APPENDIX TO THE

5    CALIFORNIA GUIDELINES THAT I PROVIDED TO THE COURT.

6        QUOTE, "THE PURPOSE OF PROP 103 IS TO PROTECT CONSUMERS

7    AND ALLOW INSURANCE COMPANIES" -- I'M SORRY.

8        PROP 103 DECLARED THAT THE THEN EXISTING SYSTEM PRIOR TO

9    PROP 103 FAILED TO, QUOTE, "PROTECT CONSUMERS AND ALLOWED

10   INSURANCE COMPANIES TO CHARGE EXCESSIVE, UNJUSTIFIED, AND

11   ARBITRARY RATES," UNQUOTE.

12       THE PURPOSE OF PROP 103 IS TO QUOTE "PROTECT CONSUMERS,

13   ENCOURAGE A COMPETITIVE MARKETPLACE, AND ENSURE THAT INSURANCE

14   IS AFFORDABLE FOR ALL CALIFORNIANS."  TO DO THAT IT CREATED A

15   NEW SECTION 1861.03(A) OF THE INSURANCE CODE THAT STATES

16   QUOTE, "THE BUSINESS OF INSURANCE SHALL BE SUBJECT TO THE LAWS

17   OF CALIFORNIA APPLICABLE TO ANY OTHER BUSINESS INCLUDING THE

18   ANTITRUST LAWS."

19       THE CALIFORNIA ATTORNEY GENERAL GUIDELINES -- THE

20   DEFENDANTS MOCK THEM IN THEIR RESPONSE AS BEING OLD, BUT THEY

21   WERE CREATED AND DISSEMINATED SHORTLY AFTER PROP 103.  SO IN

22   THAT SENSE I THINK THEY ARE VERY VALUABLE BECAUSE THEY ARE

23   MUCH CLOSER TO PROP 103 THAN WE ARE.

24       AND THEY UNDERSTOOD EXACTLY WHAT THEY WERE DOING; THAT

25   PROP 103 WORKED A SEA CHANGE AND THEY WANTED TO CREATE A GUIDE

1    FOR COURTS AND THE INDUSTRY ON HOW THIS REGULATORY STRUCTURE

2    IS GOING TO WORK GOING FORWARD.

3        THOSE GUIDELINES EXPLAIN THAT -- THAT NEW SPECIFIC

4    PROVISION PREVAILS OVER ANY INTERPRETATION OF THE PRIOR

5    SECTION 1860.1 ON WHICH DEFENDANTS RELY, QUOTE, "THE CONTINUED

6    EXISTENCE OF WHICH IS NO IMPEDIMENT TO THE APPLICATION OF THE

7    CARTWRIGHT ACT."  THAT'S IN THE GUIDELINES AT PAGE 23,

8    FOOTNOTE 107.

9        IMPORTANTLY, PROP 103 ALSO DIVESTED CDI OF ANY AUTHORITY

10   WHATSOEVER OVER COMPETITION ISSUES.  IT DID SO IN THE NEW

11   SECTION 1861.05 WHICH STATES, QUOTE, "NO CONSIDERATION SHALL

12   BE GIVEN TO THE DEGREE OF COMPETITION."

13       AND THE GUIDELINES EXPLAIN THE SIGNIFICANCE OF THIS

14   ADDITION AT PAGE 26.  QUOTE, "THIS TAKES AWAY FROM THE

15   COMMISSIONER THE AUTHORITY TO FIND THAT THERE'S ADEQUATE

16   COMPETITION IN REVIEWING RATES, BUT IT DOES NOT RELIEVE THE

17   MARKET ITSELF OF THE REQUIREMENTS OF RATE COMPETITION UNDER

18   THE ANTITRUST LAWS."

19       IT STATES THE CONSEQUENCE OF THIS VERY CLEARLY AT PAGE 29.

20   PROP 103 ILLUMINATES THE PROHIBITION OF REBATING THROUGH THE

21   REPEAL OF INSURANCE CODE 750 AND THEREAFTER.  REBATING OF

22   COMMISSIONS IS NOW SUBJECT TO THE ANTITRUST LAWS.

23       AND FURTHER ON PAGE 18, QUOTE, "THE FACT THAT RATES ARE

24   APPROVED BY THE STATE DOES NOT IMMUNIZE INSURANCE COMPANIES

25   FROM PRICE-FIXING CHARGES."

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**

1    AND THE NINTH CIRCUIT IN A CASE THAT IS IN THE BRIEFS --

2              **THE COURT:**  YOU CITE THESE GUIDELINES ON PAGE 28, I

3    WANT TO SAY, OF YOUR BRIEF?

4              **MR. HARVEY:**  THAT'S RIGHT.

5              **THE COURT:**  IN RESPONSE -- THAT IS ACTUALLY NOT

6    CORRECT.  PAGE 26 OF YOUR BRIEF IN SUPPORT OF THE POINT THAT

7    THE FILED RATE DOCTRINE DOES NOT APPLY TO PLAINTIFFS'

8    CALIFORNIA CARTWRIGHT ACT CLAIM, RIGHT?

9              **MR. HARVEY:**  CORRECT.

10             **THE COURT:**  DO YOU CITE THOSE GUIDELINES ANYWHERE

11   ELSE IN YOUR BRIEF?

12             **MR. HARVEY:**  WE DO NOT.

13             **THE COURT:**  OKAY.

14             **MR. HARVEY:**  IF YOUR HONOR BELIEVES IT WOULD BE FAIR

15   TO GIVE THE DEFENDANTS A SUPPLEMENTAL BRIEF TO RESPOND, I

16   WOULD HAVE NO OBJECTION.

17             **THE COURT:**  IT'S REALLY THE COURT'S PREPARATION FOR

18   THE HEARING THAT I'M GETTING AT, NOT SO MUCH THE FAIRNESS TO

19   THE DEFENDANTS.  IT'S JUST I'M NOT DOING MY BEST WORK

20   PROCESSING THIS FOR THE FIRST TIME.  AND IT SEEMS TO BE

21   COMPOSING THE MAJORITY OF YOUR ARGUMENT THIS AFTERNOON.

22      I DON'T HAVE ANYTHING MORE TO SAY ABOUT THAT AND I'M NOT

23   GOING TO STOP YOU, I JUST WANTED TO MAKE THAT POINT.

24             **MR. HARVEY:**  I DO APOLOGIZE FOR THAT, YOUR HONOR.  I

25   THINK IN PREPARING FOR THIS ARGUMENT AND IN RE-READING THE

1    DOCUMENT THAT WE PREVIOUSLY FILED WITH THE COURT, WE

2    APPRECIATED, I THINK, MORE THAN WE DID AT THE TIME OF WRITING

3    THE BRIEF HOW IMPORTANT AND HOW RELEVANT THAT DOCUMENT IS TO

4    MORE THAN JUST THE PURPOSE FOR WHICH WE CITED IT IN OUR

5    OPPOSITION BRIEF.

6         **THE COURT:**  OKAY.

7         **MR. HARVEY:**  I WAS JUST ABOUT TO REFER TO A 2010

8    NINTH CIRCUIT CASE THAT REVERSED A RETIRED JUDGE WARE'S

9    DECISION DISMISSING A CASE SIMILAR TO THIS BECAUSE HE

10   CONCLUDED ERRONEOUSLY THAT THE COURT LACKED JURISDICTION OVER

11   THE ANTITRUST COMPLAINT BECAUSE IT WAS... BECAUSE THE

12   COMMISSIONER HAD EXCLUSIVE RATE-MAKING AUTHORITY.

13   I WILL QUOTE FROM THE *PEREZ* CASE.  QUOTE -- THIS IS THE

14   NINTH CIRCUIT IN REVERSING JUDGE WARE, QUOTE, "WE HOLD THAT

15   ANTITRUST CLAIMS THAT PRODUCE OVERCHARGES DO NOT FALL UNDER

16   THE INSURANCE COMMISSIONER'S EXCLUSIVE RATE-MAKING AUTHORITY."

17   AND FURTHER QUOTE, "BECAUSE COURTS HAVE THE PRIMARY, IF

18   NOT EXCLUSIVE JURISDICTION OVER ANTITRUST CAUSES OF ACTION,

19   THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFFS' CLAIMS ON

20   THE GROUNDS THAT THEY IMPERMISSIBLY CHALLENGE STATE APPROVED

21   INSURANCE RATES."

22   NOW I WOULD LIKE TO MOVE SPECIFICALLY TO

23   MCCARRAN-FERGUSON.  I WOULD LIKE TO TRY TO CONVINCE YOUR HONOR

24   TO CHANGE THE COURT'S VIEW IN THE TENTATIVE WITH RESPECT TO

25   THE SHERMAN ACT.  AND, AGAIN, I'LL NOTE THIS DOES NOT APPLY TO

THE CARTWRIGHT ACT, IT ONLY APPLIES TO THE SHERMAN ACT AS THE
DEFENDANTS STATED.

THE MCCARRAN-FERGUSON CONCERNS ONLY APPLY TO THE EXTENT
THAT THERE'S A STATE REGULATOR THAT IN SOME WAY IS MEANT TO
DISPLACE THE ANTITRUST LAWS.  IT'S A DOCTRINE OF COMITY AND
DEFERENCE TO A STATE REGULATORY SYSTEM THAT WHERE THE STATE
BASICALLY SAYS, FOR THIS REGULATED INDUSTRY, WE'RE GOING TO
TAKE THE ANTITRUST LAWS OUT AND WE ARE GOING TO REPLACE IT
WITH SOME REGULATORY SYSTEM.

PROP 103 DOES THE OPPOSITE OF THAT.  THE ABSOLUTE
OPPOSITE.  IT DIVESTS THE REGULATOR OF ANY AUTHORITY OVER
COMPETITION, AND INCLUDES A STATUTORY PROHIBITION ON THE
REGULATOR EVEN CONSIDERING COMPETITION ISSUES.  AND IT
EXPRESSLY SAYS, CONTRARY TO WHAT THE DEFENDANTS ARGUE, THAT
DOESN'T MEAN THAT COMPETITION IS NOT IMPORTANT TO CALIFORNIA.
IT SAID WE ACHIEVE THE GOALS OF COMPETITION THROUGH THE
APPLICATION OF THE ANTITRUST LAWS.

SO THE MCCARRAN-FERGUSON IMMUNITY HAS NO PLACE IN THIS
CASE.  IT FAILS FOR A COMPLETELY SEPARATE REASON; THAT THE
CHALLENGED CONDUCT HERE IS NOT THE BUSINESS OF INSURANCE.

NOW, IT IS CERTAINLY TRUE THAT SUBMITTING A RATE TO THE
CDI IS PART OF THE LEGITIMATE BUSINESS OF INSURANCE, BUT
THAT'S NOT THE QUESTION.  THE QUESTION IS, IS THE CHALLENGED
CONDUCT, THE PRICE-FIXING CONSPIRACY, THE LEGITIMATE BUSINESS
OF INSURANCE.

1   SURETIES DECIDING AMONG THEMSELVES TO ALL SUBMIT THE SAME

2   RATES AND THEN ONE BY ONE SUBMITTING RATES IN COMPLIANCE WITH

3   THAT CONSPIRACY IS NOT THE LEGITIMATE BUSINESS OF INSURANCE.

4   NOW, SUPPOSE HYPOTHETICALLY THAT INSTEAD OF THAT THE

5   SURETIES DECIDED TO CREATE ONE JOINT VENTURE THAT WOULD SPREAD

6   RISK ACROSS ALL THE SURETIES, AND THEN GO TO THE CDI AND SAY,

7   LOOK, WE HAVE THIS IDEA.  WE WANT TO SPREAD RISK IN A

8   DIFFERENT WAY, AND WE'RE GOING TO SUBMIT THAT TO YOU FOR

9   APPROVAL.  NOTHING LIKE THAT IS AT ISSUE IN THIS CASE.

10   AND THE *BUCKMAN* CASE, WHICH DEFENSE COUNSEL POINTED TO THE

11   COURT AS THE BEST CASE FOR THIS PROPOSITION, ONLY ILLUSTRATES

12   THE POINT.  AT ISSUE IN *BUCKMAN* WAS WHETHER THE

13   RELATIONSHIP -- I THINK THE ISSUING OF THE BAIL BOND FROM THE

14   AGENT TO A CUSTOMER, WHETHER THAT WAS THE BUSINESS OF

15   INSURANCE.

16   OF COURSE IT IS.  AND WE DON'T DISAGREE WITH THAT.  WE

17   DON'T DEPEND ON IT.  YES, BAIL BOND IS REGULATED BY THE

18   INSURANCE CODE --

19   **THE COURT:**  LET'S GO UP A LEVEL.  YOUR DISTINGUISHING

20   OF *BUCKMAN* IS IN YOUR BRIEF.

21   TODAY ARE YOU ARGUING THAT IF THERE'S AN AGREEMENT BETWEEN

22   SURETIES ON WHAT RATE THEY ARE ALL GOING TO SUBMIT TO THE

23   DEPARTMENT OF INSURANCE THAT SOMEHOW THAT TAKES WHAT THEY ARE

24   DOING OUT OF MCCARRAN-FERGUSON?

25   **MR. HARVEY:**  YES.

1       **THE COURT:**  OKAY.

2       **MR. HARVEY:**  BECAUSE THERE WAS NO REGULATOR WITH

3    AUTHORITY TO ASSESS THAT CONDUCT.  THAT CONDUCT IS, IS INSTEAD

4    UNDER THE SCRUTINY OF THE ANTITRUST LAWS.  AND WHILE THERE ARE

5    FEDERAL DOCTRINES LIKE MCCARRAN-FERGUSON THAT SAY THAT IF

6    THERE'S A TENSION BETWEEN FEDERAL ANTITRUST LAW AND THE STATE

7    REGULATORY STRUCTURE, SOMETIMES YOU DEFER TO THE STATE

8    REGULATORY STRUCTURE.  THERE IS NO SUCH DEFERENCE WITH RESPECT

9    TO FEDERAL ANTITRUST LAW AND STATE ANTITRUST LAW.  THEY BOTH

10   APPLY AT THE SAME TIME.

11      **THE COURT:**  WHAT ARE THE FACTS OF *GROUP LIFE AND*

12   *HEALTH INSURANCE COMPANY*?  WHAT YOU SAID ON PAGE 20.  ALL THIS

13   BUSINESS ABOUT THE STATE ATTORNEY GENERAL GUIDELINES AND ALL

14   THAT ARE NOT CITED ON THIS POINT, AND THE POINT THAT YOU ARE

15   MAKING NOW AT THE HEARING ALSO I THINK IS NOT CONTAINED AT

16   PAGE 20 TO 21 OF YOUR BRIEF.

17      BUT YOU DO CITE A CASE CALLED *GROUP LIFE AND HEALTH*

18   *INSURANCE COMPANY VERSUS ROYAL DRUG* TO ARGUE THAT

19   MCCARRAN-FERGUSON DOESN'T APPLY HERE.

20      WHAT ARE THE FACTS OF THAT CASE?

21      **MR. HARVEY:**  I DO NOT HAVE THAT AT MY -- ACCESSIBLE

22   AT THE MOMENT.

23      **THE COURT:**  ALL RIGHT.

24      **MR. HARVEY:**  PERHAPS ONE OF MY COLLEAGUES WILL

25   SUPPLEMENT IT AFTER THIS ARGUMENT.

1          THE UNDERLYING ARGUMENT THAT I'M MAKING HERE I BELIEVE IS

2     IN THE BRIEF, WHICH IS MCCARRAN-FERGUSON DOES NOT APPLY FOR

3     TWO REASONS.  ONE, THE CHALLENGED CONDUCT IS NOT THE BUSINESS

4     OF INSURANCE.  AND THE CASE THAT WE CITE FOR THIS PROPOSITION

5     IS *PERRY VERSUS FIDELITY* FIFTH CIRCUIT 1979.  CITE IS 606 F.2D

6     468, 470.

7          AND WITH THAT CASE -- THE PROPOSITION THAT CASE STANDS FOR

8     IS THAT THE QUESTION IS NOT IS THE BAIL BOND INDUSTRY THE

9     BUSINESS OF INSURANCE.  IT'S YOU LOOK ONLY AT THE ALLEGED

10    MISCONDUCT, AND ASK IF THAT CONDUCT SERVES TO SPREAD RISK IN A

11    WAY THAT LOOKS LIKE INSURANCE.  AND THE ALLEGED CONSPIRACY

12    HERE IS NOT THAT.

13         THERE ARE OTHER ISSUES HERE THAT I DON'T BELIEVE WE ARE IN

14    DISAGREEMENT WITH YOUR HONOR IN TERMS OF THE TENTATIVE WHEN IT

15    COMES TO STATE ACTION, FILED RATE DOCTRINE, OR WHAT THE

16    DEFENDANTS CLAIM IS THE EXCLUSIVE JURISDICTION OF CDI OR

17    NOERR-PENNINGTON.

18         SO UNLESS THE COURT HAS ANY QUESTIONS ABOUT ANY OF THOSE

19    DEFENSES, I WOULD BE INCLINED TO MOVE ON TO THE 12(B)(6)

20    ISSUES.

21              **THE COURT:**  ALL RIGHT.

22              **MR. HARVEY:**  THANK YOU.

23         THE COURT ABSOLUTELY GOT IT RIGHT IN TERMS OF WHAT THE

24    ALLEGED CONSPIRACY IS.  IT HAS TWO PARTS.  ONE IS TO AGREE ON

25    THE RATES TO SUBMIT TO CDI, THE 10 PERCENT/8 PERCENT AND, TWO,

1    TO ELIMINATE DISCOUNTING AS MUCH AS POSSIBLE OFF OF THOSE

2    RATES PRIMARILY BY PROHIBITING ADVERTISED DISCOUNTS.

3         AND I CERTAINLY APPRECIATE THAT THE COMPLAINT COULD BE

4    CLEARER ON THIS.  AND IF THE COURT GIVES PLAINTIFFS AN

5    OPPORTUNITY TO AMEND, WE WILL MAKE THAT CRYSTAL CLEAR.

6         WHILE I'M HERE, I CAN'T HELP BUT TRY TO CONVINCE THE COURT

7    THAT IT IS ALREADY GOOD ENOUGH.  AND TO THAT POINT, I WOULD

8    DIRECT THE COURT TO THE COMPLAINT STARTING AT PARAGRAPH 65,

9    PAGE 13, THE LAST SENTENCE.  QUOTE, "THE MARKET FAILURE HERE

10   IS DEFENDANTS' CONSPIRACY TO KEEP DEFAULT PREMIUM RATES FIXED

11   AT 10 PERCENT, ADVERTISE THEM AS LEGAL MINIMUMS, AND PREVENT

12   DISCOUNTING OR REBATING AS MUCH AS POSSIBLE."

13        THAT CONSPIRACY IS ALSO DESCRIBED IN -- AND I WILL LIST

14   THE PARAGRAPHS FOR THE RECORD.  I DON'T THINK IT'S USEFUL FOR

15   ME TO READ THROUGH THEM ALL NOW.  PARAGRAPHS 68, 69, 70, 71,

16   73, 78, 83, 84, 88, 90, 93 THROUGH 99, AND 105.

17        I THINK PERHAPS THE AMBIGUITY THE COURT WAS WORRIED ABOUT

18   IS WHEN THE COMPLAINT REFERS TO PREMIUM DISCOUNTING, INSTEAD

19   OF BEING CLEAR ABOUT REBATING THE COMMISSION -- IS THAT THE

20   WORRY?  AND THE --

21        **THE COURT:**  THIS IS AN ARGUMENT YOUR OPPONENT MAKES.

22   I THINK I -- I UNDERSTAND THE DIFFERENCE.

23        **MR. HARVEY:**  OKAY.  I WOULD JUST URGE THE COURT TO

24   FIND THAT THE COMPLAINT AS ALLEGED SUFFICIENTLY ALLEGES A

25   CONSPIRACY TO ELIMINATE ADVERTISED DISCOUNTING OFF OF THE

1    APPROVED RATES.

2        NOW LET ME TAKE A STEP BACK IN THE SORT OF WHAT IS THE

3    CONSPIRACY AND WHY IS IT PLAUSIBLE TO INFER THAT THESE

4    DEFENDANTS COLLUDED TO INFLATE THE PRICE OF BAIL BONDS IN

5    CALIFORNIA.

6        AS CARMICHAEL STATES IN HIS 2005 STATEMENT THAT WE

7    HIGHLIGHT IN OUR BRIEF, "THE WAY THE MARKET WORKS IS THAT IF

8    COMPETITIVE FORCES ARE ALLOWED TO OPERATE, THERE'S NO WAY THAT

9    THE SUPERCOMPETITIVE PROFIT MARGINS THAT THEY ARE ENJOYING

10   WILL BE ABLE TO CONTINUE.  UNILATERAL ACTION," IN

11   MR. CARMICHAEL'S WORDS, "THROUGH SIMPLE ECONOMICS WILL RESULT

12   IN DISCOUNTING OFF OF THOSE RATES, PRICES WILL COME DOWN, AND

13   THE SPLIT BETWEEN THE AGENT AND THE SURETY ABOUT WHO GETS WHAT

14   FROM THE PREMIUM IS GOING TO HAVE TO CHANGE, WITH THE END

15   RESULT BEING THAT SURETIES AND AGENTS MAKE LESS MONEY AND

16   PRICES TO CONSUMERS IS LOWER."

17       **THE COURT:**  IS AN ALLEGATION OF SUSTAINED ABOVE

18   MARKET RETURN ON INVESTMENT BY ITSELF ENOUGH TO ALLEGE AN

19   ANTITRUST CONSPIRACY?

20       **MR. HARVEY:**  NO.  NO, I THINK YOU NEED MORE.  AND

21   THERE'S SUBSTANTIALLY MORE IN THIS CASE.

22       BECAUSE HERE, WHAT CARMICHAEL IS SAYING, IN ALL THE

23   *TWOMBLY* CASES THAT THE PARTIES CITE, I DID NOT SEE ANY

24   ADMISSION, ANY STATEMENT FROM ONE OF THE DEFENDANTS THEMSELF

25   THAT'S ANYTHING LIKE THIS, WHERE HE SAYS, THIS IS HOW THE

1    MARKET WORKS.  IF WE DON'T COLLUDE -- I THINK CERTAINLY A FAIR

2    INFERENCE FOR THE PLAINTIFFS ON THIS IS THAT WHAT HE'S SAYING

3    IN THAT EXHIBIT, THAT IF WE DON'T COORDINATE OUR ACTIVITY, OUR

4    UNILATERAL INCENTIVES BY OPERATION OF SIMPLE ECONOMICS WILL

5    BRING PRICES DOWN, AND HE REFERS TO DISCOUNTING BOTH LEGAL AND

6    ILLEGAL.

7        HE'S SAYING THIS ON THE WEBSITE OF THE SURETY COMPANY.

8    NOT ON HIS PRIVATE BLOG, ON THE OFFICIAL WEBSITE OF THE

9    SURETY.  AND HE'S SAYING THIS TO A SURETY THAT OPERATES IN

10   MORE THAN ONE STATE, CALIFORNIA.  THINK ABOUT CALIFORNIA.  IF

11   YOU WOULD EXPECT TO SEE WHAT CARMICHAEL PREDICTED OCCUR

12   ANYWHERE IN THE COUNTRY, IT WOULD BE CALIFORNIA BECAUSE OF

13   PROP 103.

14       ACCORDING TO CARMICHAEL'S OWN DESCRIPTION OF THE MARKET,

15   IT CAN ONLY LOOK LIKE HOW IT LOOKS THROUGH COORDINATED ACTION.

16           **THE COURT:**  DO YOU -- THAT REMINDS ME.  DO YOU WANT

17   TO RESPOND TO YOUR OPPONENT'S ARGUMENTS ABOUT FRAUDULENT

18   CONCEALMENT?

19           **MR. HARVEY:**  MY COLLEAGUE, MS. LUBIN, IS GOING TO

20   ADDRESS FRAUDULENT CONCEALMENT, WHICH WE CAN DO NOW IF YOU

21   LIKE.

22           **THE COURT:**  WELL, IT'S 3:05 P.M.  I THINK IF

23   MS. LUBIN WANTS TO ADDRESS THE COURT, WE PROBABLY OUGHT TO LET

24   HER.

25           **MR. HARVEY:**  ABSOLUTELY.

1           **THE COURT:**  GOOD.  MS. LUBIN.

2           **MS. LUBIN:**  THANK YOU, YOUR HONOR.  KATHERINE LUBIN

3     FOR THE PLAINTIFFS.

4           COUPLE OF THINGS I WAS GOING TO ADDRESS.  WE'LL START WITH

5     THE STATUTE OF LIMITATIONS AND FRAUDULENT CONCEALMENT BRIEFLY,

6     AS WELL AS THE MOTION TO DISMISS WITH RESPECT TO THE CERTAIN

7     18 INDIVIDUAL DEFENDANTS AND EACH OF THOSE CATEGORIES.  I

8     HEARD YOUR HONOR'S TENTATIVE WITH RESPECT TO THOSE, SO I'M

9     HAPPY TO TALK THROUGH THOSE AS WELL.

10          **THE COURT:**  OKAY.

11          **MS. LUBIN:**  SO BEGINNING WITH THE STATUTE OF

12    LIMITATIONS ARGUMENT AND FRAUDULENT CONCEALMENT, I HEARD WHEN

13    YOU WERE SPEAKING WITH MR. CIESLAK, YOU SAY THAT PERHAPS

14    THE -- OR I UNDERSTOOD THE COURT'S TENTATIVE TO BE THAT EITHER

15    PLAINTIFFS HAD ADEQUATELY ALLEGED FRAUDULENT CONCEALMENT OR IN

16    THE EVENT WE WERE GIVEN THE OPPORTUNITY TO AMEND, THERE MAY BE

17    SOME FURTHER GUIDANCE ON THAT.

18          I'M HERE TO EXPLAIN WHY WE HAVE ADEQUATELY ALLEGED IT AT

19    THIS STAGE.  AS YOU NOTED, IT'S A HIGHLY FACT INTENSIVE

20    INQUIRY, IN PARTICULAR THE SECOND PRONG, WHICH IS CONSTRUCTIVE

21    NOTICE.

22          THE FIRST PRONG IS AFFIRMATIVE ACTS OF MISREPRESENTATION.

23    ONE OF THE THINGS THAT WE HAVE SEEN FROM --

24          **THE COURT:**  I THINK I KNOW WHAT THE STANDARD IS.

25    WHAT WOULD BE HELPFUL TO ME IS YOUR SHOWING ME -- IS YOUR

RESPONDING DIRECTLY TO YOUR OPPONENT'S CHALLENGE TO SHOW ME
THE PARAGRAPHS IN THE COMPLAINT THAT MAKE THESE FRAUDULENT
CONCEALMENT ALLEGATIONS.

**MS. LUBIN:** ABSOLUTELY.

SO WITH RESPECT TO THE AFFIRMATIVE ACTS TO MISLEAD, THE
KEY POINT THERE IS THAT THE STATEMENTS MUST BE MISLEADING BUT
NOT NECESSARILY FALSE. THERE'S A DISTINCTION THERE.

SO I HEARD DEFENDANTS SAY THAT CERTAIN OF THE STATEMENTS
ABOUT WHETHER THE BAIL AGENTS WERE AUTHORIZED, AS YOUR HONOR
NOTED, NEEDED TO BE FALSE IN ORDER TO BE AFFIRMATIVE ACTS OF
CONCEALMENT. WHAT THEY NEED TO BE IS MISLEADING, AND ONCE
THEY ARE MAKING AFFIRMATIVE STATEMENTS ABOUT WHAT THE
PARTICULAR PREMIUM RATES ARE AND THAT THEY ARE AUTHORIZED TO
OFFER THOSE RATES.

BY WAY OF EXAMPLE, THAT IS THE STATEMENT IN PARAGRAPH 73
BY ALADDIN ON THEIR WEBSITE AND THAT NO ONE ELSE HAS PRICES
LOWER THAN ALADDIN.

THERE'S A NUMBER OF OTHER PLACES WHERE CERTAIN OTHER BAIL
AGENTS MAKE SIMILAR STATEMENTS. PARAGRAPHS 83, 95, 97, 98,
99, 100. AND THEN SOME OTHER STATEMENTS BETWEEN 89 AND 90 AS
WELL.

WHAT THESE STATEMENTS SAY IS THAT THE RATE THAT ARE
OFFERED ARE EITHER THE 10 PERCENT OR THE PREFERRED RATE OF
8 PERCENT. WHAT THEY DON'T SAY IS THAT IN SOME INSTANCES
THERE'S A SUGGESTION THAT DISCOUNTING OR REBATES, AS WE

1   OCCASIONALLY REFER TO IT IN THE COMPLAINT, IS ILLEGAL.  BUT IN

2   MANY INSTANCES THEY DON'T SAY ANYTHING ABOUT DISCOUNTING.

3       AND WHAT DEFENDANTS HAVE ARGUED IS, WELL, YOU SHOULD LOOK

4   TO THE CDI WEBSITE WHICH DOES SAY PURSUANT TO PROP 103, THAT

5   DISCOUNTING IS LEGAL AND ALLOWABLE OFF OF THE FILED RATES.

6       THAT'S WHERE IT'S MISLEADING.  ONCE THESE BAIL AGENTS

7   BEGIN MAKING REPRESENTATIONS ABOUT THE RATES THAT WERE

8   OFFERED, THAT THEY ARE AUTHORIZED TO OFFER, YET NOT GIVING THE

9   ADDITIONAL INFORMATION WITH RESPECT TO DISCOUNTS BEING

10  AVAILABLE IN CERTAIN CIRCUMSTANCES, OR THE FACT THAT

11  NEGOTIATION CAN OCCUR, THE STATEMENT BECOME MISLEADING.  IT IS

12  AN AFFIRMATIVE ACT.

13      ONE THING DEFENDANTS NOTED IN THEIR BRIEFING IS THAT THE

14  AFFIRMATIVE ACTS OF MISLEADING THE CONSUMER NEED TO BE, THEY

15  USE THE TERMINOLOGY "ABOVE AND BEYOND", WHICH IS SOME LANGUAGE

16  FROM THE NINTH CIRCUIT IN *GUERRERO*.  WHAT THAT MEANS IS NOT

17  SEPARATE AND APART.  AND JUDGE KOH, IN FACT, DESCRIBES THIS IN

18  A SUBSEQUENT *ANIMATION* ORDER.  YOUR HONOR CITED IT IN YOUR *CRT*

19  SUMMARY JUDGMENT DECISION FROM 2016.

20      SO, TO THE EXTENT THAT CERTAIN OF THESE AFFIRMATIVE ACTS

21  TO MISLEAD ARE THEMSELVES EVIDENCE OF A CONSPIRACY THAT WE

22  HAVE PUT FORTH, EVIDENCE OF A PLAUSIBLE CONSPIRACY, THAT'S

23  ACCEPTABLE UNDER THE FRAUDULENT CONCEALMENT DOCTRINE.

24      THE SECOND ELEMENT IS EITHER ACTUAL OR CONSTRUCTIVE

25  NOTICE.  AND YOUR HONOR NOTED THAT CONSTRUCTIVE NOTICE IS

1    PARTICULARLY A FACT INTENSIVE INQUIRY.  AND YOU'RE RIGHT, THAT

2    THE CONTEXT OF HOW YOU DETERMINE WHETHER A PLAINTIFF, A

3    PARTICULAR PLAINTIFF IS ON CONSTRUCTIVE NOTICE, THE CONTEXT

4    MATTERS IN THIS INSTANCE.

5        AND WHAT WE SEE IS THE MAJORITY OF THE CLASS KIND OF FALL

6    INTO ONE OR TWO GROUPS.  THE FIRST IS THEY ARE ACTUALLY

7    INCARCERATED AT THE TIME.  SO THEY HAVE ACCESS TO PERHAPS A

8    PHONE BOOK OR A FLIER FOR A BAIL BOND AGENCY, OR THEY ARE

9    OTHERWISE A FAMILY MEMBER WALKING INTO ONE OF THE SHOPS

10   OUTSIDE OF 850 BRYANT, FOR EXAMPLE, IN SAN FRANCISCO, AND

11   URGENTLY WANTING TO OBTAIN A BOND SO THAT A LOVED ONE OR

12   FAMILY MEMBER OR FRIEND CAN GET OUT OF JAIL.

13       SO GIVEN THAT CONTEXT, GIVEN THE STATEMENTS THAT THEY SEE

14   FROM THE BAIL AGENTS ABOUT WHAT THE RATES ARE, WHAT RATES THEY

15   ARE AUTHORIZED TO OFFER, AND THE FACT THAT NO ONE ELSE HAS

16   LOWER PRICES, THE CONTEXT, WHAT THAT TELLS THESE DEFENDANTS

17   IS, YOU KNOW, THAT THEY UNDERSTAND THAT DISCOUNTS ARE NOT

18   AVAILABLE.

19       FURTHER TO THAT POINT, A NUMBER OF THE PUBLICLY-AVAILABLE

20   STATEMENTS, INCLUDING THE 2002 QUOTE THAT BEGINS OUR

21   OPPOSITION BRIEFING, THOSE DON'T PUT DEFENDANTS ON

22   CONSTRUCTIVE NOTICE.

23       YOUR HONOR'S *CRT* DECISION, I THINK IT'S FOOTNOTE 4 OF THAT

24   DECISION, SETS FORTH A NUMBER OF RED FLAGS THAT COULD, IN

25   FACT, PUT A PLAINTIFF ON NOTICE.  IT'S THINGS LIKE AN FTC

INVESTIGATION, AN FTC LAWSUIT, REPORTS IN THE *L.A. TIMES* ABOUT

PARTICULAR CONDUCT, SENATE TESTIMONY, CONGRESSIONAL

INVESTIGATIONS, SO ON AND SO FORTH.

THE STATEMENTS ON EITHER INDUSTRY WEBSITES OR BLOGS ARE

SIMPLY NOT GOING TO PUT YOUR AVERAGE REASONABLE CONSUMER WHO

IS PURCHASING A BAIL BOND ON CONSTRUCTIVE NOTICE.

SO THOSE ALLEGATIONS ARE SET FORTH IN THE COMPLAINT.  WE

ARE HAPPY TO SUPPLEMENT THEM IN THE EVENT NECESSARY IF GIVEN

LEAVE TO AMEND.

THE -- IF YOUR HONOR HAS NO FURTHER QUESTIONS ON THE

STATUTE OF LIMITATIONS PIECE.

**THE COURT:**  I DON'T.

**MS. LUBIN:**  OKAY.  I WOULD LIKE TO BRIEFLY ADDRESS

THE INDIVIDUAL DEFENDANTS 12(B)(6) ARGUMENT, IF I MAY.

**THE COURT:**  OKAY.

**MS. LUBIN:**  I HEARD YOUR HONOR FIRST SAY YOU WERE ON

THE FENCE WITH RESPECT TO THE INDIVIDUAL DEFENDANTS, SO

MR. CARMICHAEL AND MR. WATSON.

THOSE INDIVIDUALS ARE HIGH LEVEL EXECUTIVES.  THEY SERVE

NOT ONLY IN THE BUSINESS CAPACITY LEADING CERTAIN OF THE

SURETY DEFENDANTS, BUT ALSO AS CHAIRMAN AND IN ONE INSTANCE

BOARD MEMBER OF THE INDUSTRY ORGANIZATIONS.  SO WHEN THEY ARE

MAKING THESE STATEMENTS ABOUT THE PURPOSE OF THE CONSPIRACY,

THE GOAL OF THE CONSPIRACY, HOW WE GO ABOUT ENFORCING IT, HOW

WE -- INSTRUCTING THE AGENCIES AND THE AGENTS TO BE THE EYES

1    AND EARS OF THE SURETIES IN ORDER TO ENSURE COMPLIANCE WITH

2    THE CONSPIRACY, THESE ARE ALL ALLEGATIONS THAT APPEAR IN THE

3    COMPLAINT, SPECIFIC WITH RESPECT TO MR. CARMICHAEL AND

4    MR. WATSON.

5        WHAT I HEARD FROM MS. HEALY WAS, WELL, HERE'S SOME OTHER

6    EXPLANATIONS FOR WHAT THESE PARTICULAR STATEMENTS MIGHT MEAN.

7    AND THAT'S ALL WELL AND GOOD, BUT AS YOUR HONOR NOTED, AT THIS

8    STAGE THE APPROPRIATE INFERENCE IS AND REASONABLE INFERENCES

9    ARE DRAWN IN PLAINTIFFS' FAVOR.  AND MR. HARVEY HAS EXPLAINED

10   WHAT WE UNDERSTAND AND WHAT THE REASONABLE INFERENCE IS FROM

11   THOSE STATEMENTS ARE WITH RESPECT TO THE CONSPIRACY.

12       COUPLE OF THE OTHER GROUPS, IF I MAY -- IF YOUR HONOR HAS

13   ANY QUESTIONS, I'M HAPPY TO ANSWER THEM.

14             **THE COURT:**  I DON'T.

15             **MS. LUBIN:**  OKAY.

16       FINALLY, THERE WERE -- I UNDERSTOOD YOUR HONOR'S TENTATIVE

17   TO BE SPECKING TO THE INDIVIDUAL -- THE DEFENDANTS -- SEPARATE

18   DEFENDANTS' MOTION TO DISMISS.  THERE WERE 18 DEFENDANTS THAT

19   MOVED.  WITH RESPECT TO THE GROUP OF SURETIES, THERE WERE A

20   NUMBER OF SURETIES THAT MOVED AND SAID, ESSENTIALLY, THERE'S

21   INSUFFICIENT ALLEGATIONS WITH RESPECT TO OUR INDIVIDUAL

22   CONDUCT.  THE IDEA BEING OUR NAMES APPEAR AS WHEN WE ARE

23   DESCRIBED AS ONE OF THE DEFENDANTS, BUT THEREAFTER IF YOU

24   CONTROL THAT THROUGH THE COMPLAINT, WE DON'T SHOW UP AGAIN.

25             **THE COURT:**  RIGHT.

1          **MS. LUBIN:** AND YOUR HONOR MENTIONED THE *CRT*'S ORDER,

2   WHICH WE CITE, IN FACT, A NUMBER OF THE *CRT*'S ORDERS FROM YOUR

3   PREDECESSOR ON THAT CASE, JUDGE CONTI, AS WELL AS YOUR

4   HONOR'S; WHAT THOSE EARLIER MOTION TO DISMISS *CRT* ORDERS SAY,

5   AS WE ARGUE IN OUR BRIEFING, IS THAT IT'S UNNECESSARY AND

6   PARTICULARLY AT THIS STAGE WITHOUT THE BENEFIT OF PARTICULAR

7   DISCOVERY TO SPECIFICALLY ALLEGE EACH AND EVERY DEFENDANT'S

8   STATEMENTS OR PARTICULAR INVOLVEMENT IN THE CONSPIRACY.  THAT

9   WOULD BE A PARTICULARITY STANDARD UNDER 9(B).

10      WHAT WE DO HAVE TO SAY IS -- WHAT WE DO HAVE TO DO IS PUT

11  THE SURETY DEFENDANTS ON NOTICE OF WHAT THE CLAIM IS AGAINST

12  THEM.  THERE'S A NUMBER OF ALLEGATIONS IN THE COMPLAINT.

13  MR. HARVEY READ THEM OUT.

14      IN PARTICULAR, I WOULD DIRECT YOUR HONOR'S ATTENTION TO

15  PARAGRAPHS 68, 69, AND 71 OF THE COMPLAINT WHICH DESCRIBE THE

16  SURETY DEFENDANTS' INVOLVEMENT IN, A, REGISTERING THE RATES OF

17  10 AND -- OR FILING THE RATES OF 10 AND 8 PERCENT, BUT THEN

18  ALSO DIRECTING THE BAIL AGENTS NOT TO ADVERTISE DISCOUNTS OFF

19  THOSE PARTICULAR RATES.

20      AND THOSE ALLEGATIONS ARE WITH RESPECT TO EACH AND EVERY

21  ONE OF THE SURETY DEFENDANTS, NOTWITHSTANDING THAT THEY ARE

22  NOT EACH LISTED IN THE PARTICULAR COMPLAINT.  BUT IF -- TO

23  THAT END, IF THERE'S GUIDANCE YOUR HONOR HAS WITH RESPECT TO

24  THOSE *CRT* ORDERS OR ADDITIONAL ALLEGATIONS THAT MIGHT BE

25  HELPFUL OR THAT YOU ARE LOOKING FOR, WE'RE HAPPY TO TAKE THAT

1    GUIDANCE BACK.

2              **THE COURT:**  OKAY.

3              **MS. LUBIN:**  THE FINAL SET OF DEFENDANTS ARE THE TRADE

4    ASSOCIATIONS.  SEVERAL PARAGRAPHS OF THE COMPLAINT SPEAK TO,

5    IN PARTICULAR, ONE OF THE TRADE ASSOCIATIONS MAKES AN

6    AFFIRMATIVE STATEMENT ON ITS WEBSITE THAT RATES -- THE RATES

7    TO BE CHARGED ARE THE 10 PERCENT AND 8 PERCENT, AND THEN, OF

8    COURSE, DOES NOT EXPLAIN THAT ADDITIONAL DISCOUNTING IS

9    AVAILABLE.

10         THE OTHER INDUSTRY DEFENDANTS, THERE'S ADDITIONAL

11   ALLEGATIONS WITH RESPECT TO THOSE AS WELL.  I'LL DIRECT YOUR

12   HONOR'S ATTENTION, JUST FOR PURPOSES TO MOVE THIS FORWARD, TO

13   PARAGRAPHS 83 AND 87 OF THE COMPLAINT WHICH SPEAK TO THEIR

14   INVOLVEMENT.

15         THE TRADE ASSOCIATIONS OFFER AN OPPORTUNITY FOR THE

16   SURETIES AND THE BAIL AGENTS TO MEET.  THEY OFFER AN

17   OPPORTUNITY FOR THE SURETIES TO EDUCATE BAIL AGENTS ABOUT THE

18   CONSPIRACY AND DISCOURAGE THEM FROM ADVERTISING DISCOUNTS OFF

19   THE FILED RATES.  THEY OFFER AN OPPORTUNITY TO GATHER

20   INFORMATION, SHARE INFORMATION ABOUT THE RATES THAT ARE

21   ACTUALLY BEING OFFERED, AND TO CONFIRM, IN FACT, THAT

22   DISCOUNTS ARE NOT BEING ADVERTISED OR NOT BEING OFFERED

23   ACROSS -- THE DISCOUNTS ARE NOT BEING ADVERTISED BY THE BAIL

24   AGENTS.  SO THEY DO OFFER THOSE OPPORTUNITIES THROUGH

25   MEETINGS, THROUGH BLOG POSTS, THROUGH THEIR OWN WEBSITES TO

1    AFFIRMATIVELY ADVANCE THE CONSPIRACY.

2        IF YOUR HONOR HAS NO FURTHER QUESTIONS, I AM HAPPY TO CEDE

3    THE FLOOR EITHER BACK TO MR. HARVEY OR THE DEFENDANTS.

4            **THE COURT:**  I DON'T HAVE ANY MORE QUESTIONS.  THANKS.

5            **MS. LUBIN:**  THANK YOU.

6            **MR. HARVEY:**  YOUR HONOR, IF I MAY JUST A MINUTE?

7            **THE COURT:**  LET ME SAY THIS:  PERIODICALLY I LEARN

8    ANEW THAT IF I WANT THERE TO BE TIME LIMITS AT A HEARING, I

9    NEED TO SET THEM.

10        YOU HAVE COLLECTIVELY AT YOUR TABLE FIVE MINUTES TO USE

11   HOWEVER YOU LIKE.  YOU NEED TO UNDERSTAND THAT IF YOU START

12   USING THEM NOW, YOU ARE PEELING THEM OFF AND THERE WILL BE

13   FEWER MINUTES LEFT AFTER YOUR OPPONENTS HAVE USED THEIR FIVE

14   MINUTES.

15        GO AHEAD.

16           **MR. HARVEY:**  UNDERSTOOD, YOUR HONOR.  THANK YOU.

17        TO ANSWER YOUR QUESTION ABOUT THE *GROUP LIFE* CASE.  THAT

18   IS A SUPREME COURT CASE ADDRESSING WHETHER MEDICAL INSURANCE

19   COMPANIES IN SETTING THE PRICES OF PHARMACEUTICALS IS SUBJECT

20   TO MCCARRAN-FERGUSON AS PART OF THE BUSINESS OF INSURANCE.

21        THE SUPREME COURT HELD THAT IT WAS NOT BECAUSE THE ALLEGED

22   CONDUCT DID NOT SPREAD RISK, WHICH IS EXACTLY WHY WE SAY HERE

23   THAT THE ALLEGED -- BOTH PARTS OF THE ALLEGED CONSPIRACY DO

24   NOT SPREAD RISK.

25           **THE COURT:**  THE BUSINESS ITSELF -- I DON'T MEAN TO

1    SPLIT HAIRS, BUT IT'S ACTUALLY THE LINE OF WORK WE ARE BOTH IN

2    IS WE SPLIT HAIRS SOMETIMES.

3        I THINK MY GUESS IS THAT THE COURT WAS ANSWERING IN THAT

4    CASE THE QUESTION, IS THIS THE BUSINESS OF INSURANCE.  AND I'M

5    NOT SURE THEY WERE LOOKING JUST AT THE COLLUSIVE CONDUCT.

6    OTHERWISE THERE WOULD BE NO MCCARRAN-FERGUSON ACT IN THE

7    ANTITRUST CONTEXT BECAUSE EVERYONE ALWAYS ALLEGES COLLUSIVE

8    CONDUCT.

9        I WILL READ THE CASE.  I'M JUST SAYING I'M NOT SURE IT

10   GOES AS FAR AS YOU ARE SUGGESTING.

11       **MR. HARVEY:**  ON THIS EXACT SPLITTING OF HAIRS

12   QUESTION, THE FIFTH CIRCUIT CASE IS CRITICAL.  WHAT I WILL SAY

13   IS THAT THERE ARE PLENTY OF EXAMPLES THAT DO FIT.

14       FOR EXAMPLE, IF A RIVAL BAIL AGENT IS CHALLENGING SOME

15   ARRANGEMENT BETWEEN AN AGENT AND A SURETY TO CREATE AN

16   EXCLUSIVE TERRITORY, THAT YOU CAN SELL BAIL BONDS IN THIS

17   TERRITORY, BUT NOT THIS TERRITORY, THINGS LIKE THAT IN THE

18   KINDS OF CASES THAT DEFENDANTS CITE WHERE THE MISCONDUCT

19   ITSELF INVOLVES THE SPREADING OF RISK AMONG DIFFERENT

20   ENTITIES, THAT'S THE BUSINESS OF INSURANCE, NOT A PRICE-FIXING

21   CONSPIRACY.

22       ONE OTHER VERY QUICK COMMENT.  I THINK YOUR HONOR SAID

23   THERE'S AMBIGUITY AS TO WHAT THE PARALLEL CONDUCT IS IN THIS

24   CASE.  PARALLEL CONDUCT IS SUBMITTING 10/8 PERCENT RATES --

25       **THE COURT:**  I KNOW WHAT THE PARALLEL -- I KNOW WHAT

1  YOU THINK THE PARALLEL CONDUCT IS.  I'M JUST SAYING YOU DON'T

2  SAY VERY MUCH ABOUT IT IN THE COMPLAINT.  THAT'S MY ONLY

3  POINT.

4  **MR. HARVEY:**  THANK YOU.

5  **MS. MEJIA:**  YOUR HONOR, WE WANT TO USE OUR FIVE

6  MINUTES WISELY.  ARE THERE PARTICULAR QUESTIONS THAT YOU WOULD

7  LIKE US TO ADDRESS ISSUES?  IF NOT, MR. HAMILL WILL TAKE THE

8  REGULATORY DEFENSES FIRST.

9  **THE COURT:**  VERY GOOD.  MR. HAMILL.

10  **MR. HAMILL:**  YOUR HONOR, ON THE ANTITRUST GUIDELINES,

11  *MACKAY* AND THE *WALKER* CASES, WHICH CAME OUT IN 2010, I

12  BELIEVE, AND 2000 RESPECTIVELY, WENT THROUGH THESE ISSUES IN

13  THE SENSE, NOT THE GUIDELINES GOING THROUGH THIS ISSUE, THAT

14  THE KEY QUESTION UNDER THE INSURANCE CODE IS, IS THE LAWSUIT

15  ATTACKING THE RATE-MAKING FUNCTION, RATE MAKING.

16  THAT'S WHY YOUR TENTATIVE IS CORRECT BECAUSE THE CLAIMS

17  HERE INSOFAR AS THEY RELATE TO PREMIUMS GO TO RATE MAKING.  IN

18  THAT RESPECT, WHEN IT COMES TO THE CLAIMS REGARDING PREMIUMS,

19  YOUR TENTATIVE IS CORRECT BECAUSE THE RELIEF THAT THEY ARE

20  SEEKING WOULD HAVE YOU RESET THE PREMIUMS AND PLACE YOURSELF

21  IN THE ROLE OF THE REGULATOR.  THAT'S WHAT 1860.1 GOES

22  DIRECTLY TOWARDS.

23  1860.1(C), IN FACT, DOES, DOES ASK THAT THE COMMISSION --

24  THAT THE COMMISSIONER CONSIDER THE IMPACT ON -- PARDON ME.  I

25  GOT MY STATUTORY QUOTES WRONG.

1    1860.1(C) AND 10 CCR 2094.1 STAND FOR THE PROPOSITION THAT

2    ONCE THAT PREMIUM RATE IS SET, THAT IS WHAT THE PREMIUM HAS TO

3    BE.  IT CAN'T BE DEVIATED.  SO IF YOU WERE TO SET A DIFFERENT

4    PREMIUM RATE IN THE RELIEF THAT THESE TWO PLAINTIFFS ARE

5    ASKING FOR, THAT WOULD PRESENT A CONFLICT FOR THE BOND.

6    RIGHT?

7            **THE COURT:**  OH, NO, I GET THAT.  THE ONLY QUESTION IS

8    WHETHER THE LAW -- LET'S SAY THAT THERE WERE, FOR SAKE OF

9    ARGUMENT, A CONSPIRACY AMONG THE SURETIES TO AGREE ON THE

10   RATES THAT THEY WOULD SUBMIT TO THE CALIFORNIA DEPARTMENT OF

11   INSURANCE.  THE QUESTION IS, IS THAT CONDUCT UNLAWFUL?  OR IF

12   IT HAPPENED, IS IT NONETHELESS ABSOLVED BY ONE OF THESE

13   IMMUNITIES THAT ARE BEING OFFERED UP?

14       I AM NOT GOING TO TELL THE DEPARTMENT OF INSURANCE WHAT

15   RATES THEY CAN POST.

16           **MR. HAMILL:**  THAT WE'VE COVERED IN THE BRIEFS.  THAT

17   WOULD BE COVERED BY NOERR-PENNINGTON.

18           **THE COURT:**  YOUR OPPONENT -- I DID THINK OF ONE

19   QUESTION, TO ANSWER WHAT MS. MEJIA SAID.

20       YOUR OPPONENTS REALLY LIKE A CASE CALLED *PERRY*.  I WAS

21   JUST SKIMMING THESE BRIEFS VERY QUICKLY.  I DIDN'T SEE THAT

22   THERE WAS ANYTHING ABOUT THAT CASE IN THESE REPLY BRIEFS.  I

23   COULD HAVE MISSED IT, THOUGH.  I'M JUST DOING THIS AT THE

24   BENCH.

25           **MR. HAMILL:**  YOU'RE TALKING ABOUT THE *PEREZ* CASE

1    OR --

2              **THE COURT:** THIS FIFTH CIRCUIT CASE, *PERRY -- PEREZ*.

3    OKAY.

4              **MR. HARVEY:** THAT'S THE NINTH CIRCUIT CASE.

5              **MR. HAMILL:** *PEREZ* IS THE NINTH CIRCUIT CASE.

6              **THE COURT:** WELL, THIS IS WHAT HAPPENS WHEN I DON'T

7    WRITE THINGS DOWN AND I'M JUST LISTENING TO PEOPLE AND I'M ON

8    THE BENCH.  NEVER MIND THAT.  USE THE MINUTES THE WAY YOU WANT

9    TO.

10             **MR. HAMILL:** I'LL YIELD THE FLOOR TO MY COLLEAGUES.

11        IF THEY'RE TALKING ABOUT THE *PEREZ* CASE, THE *PEREZ* CASE IS

12   A NINTH CIRCUIT CASE, WHICH WAS AN UNPUBLISHED CASE, BUT IT'S

13   UNREMARKABLE.  ALL IT STANDS FOR IS THE PROPOSITION THAT IF

14   THERE'S AN OVERCHARGE, SOMETHING THAT'S NOT THE RATE THAT WAS

15   AUTHORIZED BY THE REGULATOR, THAT WAS DIRECTED BY THE

16   REGULATOR, THEN THERE COULD BE AN ANTITRUST CLAIM, THAT'S --

17             **THE COURT:** NO, IT'S *PERRY*.  THE FIFTH CIRCUIT CASE.

18   FIFTH CIRCUIT 1979.  IT'S CITED ON PAGE 21 OF THEIR BRIEF.

19        THIS IS A CASE THAT ONE OF YOUR -- THAT YOUR OPPONENTS

20   WERE TALKING ABOUT ON MCCARRAN-FERGUSON.

21             **MR. HAMILL:** OH.  THIS WAS GOING TO WHAT THE SCOPE OF

22   THE BUSINESS OF INSURANCE IS.

23             **THE COURT:** RIGHT.

24             **MR. HAMILL:** THE ANSWER TO YOUR QUESTIONS ON THAT IS

25   WE HAVE TO LOOK AT THE *MACKAY* CASE.  *MACKAY* IS THE CALIFORNIA

1    CASE.  YOU ASKED ME BEFORE ABOUT WHAT THE BEST AUTHORITY WAS

2    AND I TOLD YOU TO GO TO THE GOOD WEATHER IN FLORIDA.

3        THE REAL BEST SOURCE FOR THIS IS *MACKAY*.  *MACKAY* SAYS, AND

4    I THINK IT'S A DIRECT QUOTE, "THE BUSINESS OF INSURANCE IS

5    VERY BROAD."

6        SO THE BEST TWO PLACES FOR YOU TO LOOK ARE THE CALIFORNIA

7    COURTS, NOT THE FIFTH CIRCUIT, NOT MY LOVE OF THE SOUTHERN

8    DISTRICT OF FLORIDA, LOOK HERE IN CALIFORNIA.

9        **THE COURT:**  VERY GOOD.  I WILL READ *GROVES* AND

10   *MACKAY*.  THANKS.

11       **MS. MEJIA:**  YOUR HONOR, I'LL ADDRESS THE 12(B)(6)

12   ISSUE BRIEFLY BEFORE YIELDING THE FLOOR TO MS. HEALY.

13       AGAIN, YOU ARE ABSOLUTELY RIGHT, YOUR HONOR, THERE IS VERY

14   LITTLE SAID ABOUT THE PARALLEL CONDUCT.  AND MY OPPONENTS HAVE

15   CITED SEVERAL PARAGRAPHS IN THE COMPLAINT, BUT, AGAIN, NONE OF

16   THOSE ALLEGATIONS SATISFY *KENDALL*, WHICH IS THE STANDARD HERE

17   IN THE NINTH CIRCUIT.

18       WHO DID WHAT TO WHOM, WHEN, AND WHERE; THERE'S NOTHING

19   ABOUT MEETINGS OR COMMUNICATIONS.  THERE'S NOT AN ALLEGATION

20   ABOUT WHEN A PARTICULAR SURETY FILED ITS RATE APPLICATION.  IT

21   COULD HAVE BEEN DONE OVER A PERIOD OF 15 YEARS AT DIFFERENT

22   TIMES.  THEY SAY NOTHING ABOUT THAT.

23       AND THE SAME THING WITH THE DECLINATION TO PROVIDE

24   REBATES.  THERE'S, AGAIN, NO FACTUAL ALLEGATIONS AS TO EACH

25   DEFENDANT AS IS REQUIRED IN THE CIRCUIT.

1    AND I WILL YIELD THE FLOOR TO MS. HEALY.

2         **THE COURT:**  ALL RIGHT.

3         **MS. HEALY:**  YOUR HONOR, MY POOR CLIENT,

4    MR. CARMICHAEL, HAS BEEN COMING IN FOR A LOT OF ABUSE FROM THE

5    PLAINTIFFS.  I JUST WANT TO POINT THE COURT TO THE LAST TWO

6    PARAGRAPHS OF EXHIBIT 1.

7         I WOULD NOTE THAT PARAGRAPH 78 IN THE COMPLAINT, WHICH WAS

8    CITED BY MR. HARVEY AS ONE OF THOSE THAT HE CLAIMS KIND OF

9    SETS OUT THIS ALLEGED CONSPIRACY.  THAT PARAGRAPH ONLY TAKES

10   SNIPPETS OF THE WORDS OF MR. CARMICHAEL.  WHAT HE IS TALKING

11   ABOUT IS BAIL AGENTS ARE REBATING THEIR COMMISSIONS --

12   DISCOUNTING THEIR COMMISSIONS, AND CREATING A FINANCIALLY

13   UNTENABLE SITUATION IN WHICH SURETIES ARE GOING TO HAVE TO

14   STEP FORWARD AT SOME POINT.  AND THAT'S WHAT HE'S TALKING

15   ABOUT.

16        HE'S NOT SECRETLY SIGNALING TO PEOPLE THAT AS AN EXECUTIVE

17   IN THE INDUSTRY HE IS GOING TO ENFORCE SOME ANTITRUST

18   CONSPIRACY.  YOU CANNOT TAKE THESE WORDS WRITTEN IN 2005 AS

19   THE SIGNAL FOR AN ONGOING CONSPIRACY THAT LASTED ALLEGEDLY

20   UNTIL, YOU KNOW, JUST WHEN THE COMPLAINT WAS FILED.

21        **THE COURT:**  THE ASTONISHING THING IN A LOT OF

22   ANTITRUST CONSPIRACIES IS NOT THAT WHEN PEOPLE ARE URGING

23   THEIR COLLEAGUES TO DO THE PROHIBITED CONDUCT, THAT THEY

24   DON'T -- THAT THEY AREN'T REALLY EXPLICIT ABOUT THE REAL

25   UNDERLYING MOTIVE.

1    THE ASTONISHING THING IS THAT OCCASIONALLY THEY ARE

2    EXPLICIT ABOUT THE UNDERLYING MOTIVE.  THOSE ARE GREAT CASES.

3    THIS DOESN'T APPEAR TO BE ONE OF THEM, BUT ANYWAY.

4         **MS. HEALY:**  AND I DO UNDERSTAND THAT.  HOWEVER, I

5    WOULD POINT OUT TO THE COURT THAT JUST AS MS. MEJIA SAID,

6    THERE HAS TO BE MORE IN THIS COMPLAINT ABOUT EACH INDIVIDUAL.

7    IT IS NOT ENOUGH JUST TO SAY MR. CARMICHAEL OR MR. WATSON MADE

8    PUBLIC STATEMENTS OR THAT THE TRADE ASSOCIATIONS HELD MEETINGS

9    AT WHICH PEOPLE HAD OPPORTUNITIES TO CONSPIRE, AND YET THERE

10   ARE NO ALLEGATIONS THAT THEY ACTUALLY CONSPIRED.  AND

11   OPPORTUNITY IS NOT A PLAUSIBLE ALLEGATION.

12   SO WITH THAT, I WOULD REST.  THANK YOU, YOUR HONOR.

13        **THE COURT:**  THANKS.

14   MR. HARVEY.

15        **MR. HARVEY:**  VERY BRIEFLY, YOUR HONOR.

16   I'M GLAD THAT DEFENDANTS REFERRED TO THE *MACKAY* CASE

17   BECAUSE IT EXPLAINS, I THINK, EXACTLY THE RIGHT WAY TO LOOK AT

18   THIS.

19   *MACKAY* IS TRYING TO FIGURE OUT WHAT DO WE DO WITH THE

20   SECTION OF THE INSURANCE CODE BEFORE PROP 103 THAT USED TO BE

21   INTERPRETED TO REPEAL ANTITRUST LAWS GIVEN PROP 103 THAT WE

22   NOW HAVE.

23   AND *MACKAY* SAYS THAT WE KNOW THAT WE CAN'T INTERPRET THAT

24   SECTION IN THE WAY THAT GRANTS IMMUNITY FOR ANTITRUST

25   VIOLATIONS BECAUSE THAT'S WHAT PROP 103 IS ALL ABOUT.  SO HOW

1    DO WE THREAD THIS NEEDLE?

2        THERE ARE A COUPLE OF KEY PASSAGES THAT I WILL DIRECT THE

3    COURT'S ATTENTION TO.

4        ONE IS AT PAGE 1443 OF *MACKAY* WHERE THE COURT SAYS THAT

5    SECTION 1860.1 QUOTE, "DOES NOT EXEMPT ALL ACTS PURSUANT TO

6    THE CHAPTER, WHICH IS TO SAY ALL RATE-MAKING ACTS, BUT INSTEAD

7    EXEMPTS ACTS DONE PURSUANT TO THE AUTHORITY CONFERRED BY THIS

8    CHAPTER."

9        THE CALIFORNIA DEPARTMENT OF INSURANCE DOES NOT HAVE

10   AUTHORITY TO IMMUNIZE ANTICOMPETITIVE CONDUCT.  IT WAS

11   STRIPPED OF THAT JURISDICTION AND THAT AUTHORITY BY PROP 103.

12       AND TO MAKE IT CRYSTAL CLEAR, ON PAGE 1449, THE COURT

13   SAYS, QUOTE:  "WE NOTE THE LIMITED NATURE OF OUR HOLDING.

14   INSURANCE CODE SECTION 1860.1 PROTECTS FROM PROSECUTION UNDER

15   LAWS OUTSIDE THE INSURANCE CODE ONLY ACTS DONE, ACTIONS TAKEN,

16   AND AGREEMENTS MADE PURSUANT TO THE AUTHORITY CONFERRED BY THE

17   RATE-MAKING CHAPTER."

18       THAT'S THE AUTHORITY THAT PROP 103 STRIPS -- OR THAT PROP

19   103 STRIPPED OF AUTHORITY OVER COMPETITION ISSUES.  QUOTE, "IT

20   DOES NOT EXTEND TO INSURE CONDUCT NOT TAKEN PURSUANT TO THAT

21   AUTHORITY."

22       AND THAT'S EXACTLY WHAT IS AT ISSUE IN THIS CASE.

23           **THE COURT:**  THANKS.  THESE MOTIONS ARE UNDER

24   SUBMISSION.

25           **MS. MEJIA:**  THANK YOU, YOUR HONOR.

1          **THE CLERK:**  COURT IS IN RECESS.

2              (PROCEEDINGS CONCLUDED AT 3:28 P.M.)

3

4

5                    **CERTIFICATE OF REPORTER**

6          I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

7     UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

8     CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

9     RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

10

11          _Diane E. Skillman_____

12          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

13             WEDNESDAY, OCTOBER 23, 2019

14

15

16

17

18

19

20

21

22

23

24

25