Dean M. Harvey (SBN 250298)
Katherine Lubin (SBN 259826)
Yaman Salahi (SBN 288752)
Adam Gitlin (SBN 317047)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
dharvey@lchb.com
kbenson@lchb.com
ysalahi@lchb.com
agitlin@lchb.com

*Interim Class Counsel*

*(Additional counsel listed on signature page)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION | Master Case No. 4:19-CV-00717-JST<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO LIFT STAY OF DISCOVERY** |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

## I. INTRODUCTION

Defendants' motions to dismiss are due in nine days, yet they still have not provided Plaintiffs or the Court with the slightest inkling of the merits of their forthcoming arguments. They do not identify an issue they will raise that is either case-dispositive, or dispositive as to an issue for which discovery is sought. The closest Defendants come is to assert that the additional allegations in the Second Consolidated Amended Complaint ("SCAC") somehow make the alleged conspiracy *less* plausible. Opp'n, ECF No. 106 at 3. But Defendants must provide the Court with at least a "'preliminary peek' at the merits of the pending dispositive motion" that Defendants concede is necessary before a stay of discovery is justified. *Id.* (quoting *Huang v. Futurewei Techs., Inc.*, No. 18-cv-00534-BLF, 2018 WL 1993503, at *2 (N.D. Cal. Apr. 27, 2018)). It is Defendants' burden, and they have failed to satisfy it.

Instead, Defendants say they will unveil their secret arguments on June 12. But keeping the discovery stay in place until then, or until Plaintiffs' opposition is due on July 13, or until Defendants' replies are due on August 3, or until the Court rules on those motions, would set a dangerous precedent that a defendant can force the gears of civil litigation to a halt with nothing more than a mere promise that it will, later, identify a dispositive issue. The result would be an automatic stay of discovery in every case until the pleadings are settled. But as this Court acknowledged: "The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." Stay Order, ECF No. 64 at 2 (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011)).

The stay should be lifted and discovery should proceed. If Defendants later present "well-stated" dispositive arguments that "deserve careful consideration," ECF No. 64 at 3, Defendants may *then* ask to stay discovery. In the meantime, Plaintiffs would like to get to work.

## II. ARGUMENT

### A. Defendants' Own Cases Demonstrate Why The Stay Should Be Lifted

Defendants' authorities are inapposite because, unlike here, stays were imposed when there was no order issued recognizing that plaintiffs would be able to proceed on at least some claims against at least some defendants. *See*, *e.g.*, *In re Wyse Tech. Sec. Litig.*, 744 F. Supp. 207,

1    210 (N.D. Cal. 1990) (maintaining stay upon dismissal of two claims because plaintiffs had not

2    pleaded fraud with sufficient particularity as to *any* defendant; dismissing third claim with

3    prejudice); *Song Fi, Inc. v. Google, Inc.*, No. C 14-5080 CW, 2016 WL 9185325, at *1 (N.D. Cal.

4    Apr. 27, 2016) (staying discovery until plaintiffs filed "a complaint that can at least *partially*

5    withstand a motion to dismiss" (quoting *Hall v. Apollo Grp., Inc.*, No.: 14–CV–01404–LHK,

6    2014 WL 4354420, at *7 (N.D. Cal. Sept. 2, 2014)(emphasis added))). Defendants ignore the

7    fact that the Court has held: (1) both components of the alleged conspiracy are plausible; (2)

8    Defendants are not immune from liability for either component; and (3) Plaintiffs adequately pled

9    the role of three Defendants in that conspiracy. MTD Order, ECF No. 91 at 8-33. Nothing in the

10    SCAC undermines those conclusions. The only remaining pleading issue is whether the SCAC

11    alleges sufficient facts regarding the remaining Defendants' role in the alleged conspiracy.

12         Plaintiffs are confident the Court will find that the SCAC sufficiently explains the role of

13    the remaining Defendants. But even assuming for the sake of argument that the Court disagrees,

14    that result would not warrant continuing the stay. Any dismissed Defendants would continue as

15    important third parties with highly relevant information. *See*, *e.g.*, *Hachette Distribution, Inc. v.

16    Hudson Cty. News Co.*, 136 F.R.D. 356, 359 (E.D.N.Y. 1991). Defendants say Plaintiffs'

17    authorities are inapposite because they denied stays while the defendant appealed on qualified

18    immunity grounds, but Defendants do not say why that is a distinction that makes a difference. If

19    anything, the government-official-defendant context is one in which arguments for stays pending

20    dispositive motions are *more* justifiable than in antitrust. *See*, *e.g.*, *Digital Ally, Inc. v. Taser Int'l,

21    Inc.*, No. 16-CV-2032-CM-TJJ, 2016 WL 5944497, at *4 (D. Kan. Oct. 13, 2016) (denying stay

22    pending adjudication of motion to dismiss and finding "no basis to extend the rationale for

23    staying discovery in the governmental-official-defendant cases to the specific antitrust immunities

24    asserted by Defendant in this case"). With respect to *Skellerup Indus. Ltd. v. City of Los Angeles*,

25    163 F.R.D. 598 (C.D. Cal. 1995)—the case outside the qualified-immunity context cited by

26    Plaintiffs—Defendants argue this case has more defendants and that the city defendant in

27    *Skellerup* was already participating in discovery, *see id.* at 601, whereas Defendants here have

28    refused even to meet pursuant to this District's ESI Discovery Guidelines. Defendants should not

be rewarded for stonewalling. *See* ESI Discovery Guideline 2.01 ("At the outset of a case, *or sooner if feasible*, counsel for the parties should discuss Preservation." (Emphasis added.)).

### B. <u>Discovery's Cost and Breadth Are Insufficient to Support a Stay</u>

Defendants contend the stay should continue because discovery requires resources, and because Plaintiffs' discovery requests reflect the breadth of Defendants' alleged misconduct. Opp'n, ECF No. 106 at 7-9. But "the costs and burdens of antitrust discovery do not erect an automatic barrier to discovery in every case in which an antitrust defendant challenges the sufficiency of a complaint." Stay Order, ECF No. 64 at 2 (quoting *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR, 2013 WL 2237887, at *2 (N.D. Cal. May 21, 2013)). Following the Court's MTD Order, the SCAC, and Defendants' inability to articulate a single dispositive dismissal argument, Defendants should, at the very least, participate in laying the groundwork for discovery to take place. *See* ECF 95 at 9. If Defendants have objections to the document requests Plaintiffs served on *February 20, 2019*, Plaintiffs would like to meet and confer with Defendants regarding them.

### C. <u>Continuing to Delay Discovery Would Further Prejudice Plaintiffs</u>

Defendants assert there would be no prejudice to Plaintiffs if the stay continues. Opp'n, ECF No. 106 at 7. Defendants are wrong. First, Plaintiffs have yet to receive any information regarding Defendants' preservation efforts beyond Defendants' conclusory assurance that they have taken "reasonable steps." But this District's ESI Discovery Guideline 2.01 provides detailed instructions, including that the parties "should strive to define a scope of preservation," disclose the scope of their preservation efforts, and "promptly" raise any dispute concerning the scope of preservation with the Court. Defendants complain that Plaintiffs have not provided the Court with specific examples of spoiled evidence. Opp'n, ECF 106 at 6. But it is impossible for Plaintiffs to know whether evidence has been spoiled without disclosures and discovery. That is the point of the ESI Discovery Guidelines and Federal Rule of Civil Procedure 26(f).

Second, witness memories in this case have been fading for well over a year, and will continue to do so. This is an important form of prejudice. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002); *Edward/Ellis v. New United Motors Mfg.*, No. C 07-05452 WHA, 2008

WL 4712602, at *1 (N.D. Cal. Oct. 22, 2008). Defendants simply ignore it.

Finally, Defendants contend that the burdens of the COVID-19 epidemic fall only on their shoulders, and should result in the case being delayed until their forthcoming motions to dismiss are resolved. Opp'n, ECF 106 at 8-9. But this ignores the costs of delay to the class. The purpose of this action is to put an end to a conspiracy whereby California consumers are forced to overpay for bail bonds, and to put money into the hands of the hundreds of thousands of Californians who have overpaid to get themselves or their loved ones out of jail. There has perhaps never been a time when class members have needed this relief more than they do now.

The exorbitant prices of bail bonds, due in large part to the conspiracy Plaintiffs challenge, are often out of reach of incarcerated Californians, resulting in more time spent in jail. "People incarcerated before trial often lose their housing and employment, and pretrial detention damages family relationships." Criminal Justice Reform Clinic, UCLA Sch. of Law, *The Devil in the Details: Bail Bond Contracts in California* 2 (May 2017), available at https://static.prisonpolicy.org/scans/UCLA_Devil%20_in_the_Details.pdf. "[T]he inability to raise money for bail and lengthy pretrial detention separates caregivers from dependent family members, including children, the elderly, and disabled people, leaving them to suffer." *Id.* "While in jail, individuals are exposed to diseases and infections that can cause both short and long-term medical conditions and that can be transmitted from the jail setting to families and communities." *Id.* at 3. As of this morning, there have been 1,216 confirmed cases of COVID-19 among prisoners in California and 9 confirmed deaths. *See* The Marshall Project, *A State-by-State Look at Coronavirus in Prisons* (June 3, 2020), available at https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons.

The epidemic also profoundly impacts prisoners after they leave custody. "Those leaving custody enter a vastly different world in which a collapsed economy, scant job opportunities and the closure of many government offices have compounded the challenges of getting lives back on track." Matt Hamilton et al., *California's Prisons and Jails Have Emptied Thousands into a World Changed by Coronavirus*, LA Times (May 17, 2020), available at https://www.latimes.com/california/story/2020-05-17/coronavirus-prison-jail-releases.

Members of the proposed class are disproportionately low-income and people of color. For instance, black class members were assigned higher bail amounts, and thus paid higher bail bond prices. "Bail amounts assigned to black men average 35% higher than those for White men, even when controlling for the seriousness of the offense." *Devil in the Details*, *supra* at 3. These individuals have suffered the most under the COVID-19 epidemic. *See*, *e.g.*, Emma Gray Ellis, *COVID-19 is Killing Black People Unequally—Don't be Surprised*, WIRED (May 2, 2020), available at https://www.wired.com/story/covid-19-coronavirus-racial-disparities/; Jason DeParle, *The Coronavirus Class Divide: Space and Privacy*, NY Times (Apr. 12, 2020), available at https://www.nytimes.com/2020/04/12/us/politics/coronavirus-poverty-privacy.html. The pandemic has brought the public health dangers associated with unaffordable bail bonds into sharp focus. Further, supra-competitive bail bond prices not only keep people in detention longer than necessary, but have also contributed to community grievances with our criminal justice system, as highlighted by state- and nationwide protests in recent days. *See*, *e.g.*, Jill Cowan, *From Sacramento to San Diego, Californians Join Protests*, NY Times (June 1, 2020), available at https://www.nytimes.com/2020/06/01/us/california-george-floyd-protests.html.

Plaintiffs acknowledge the many challenges facing the parties and the Courts, and are tremendously grateful that the Northern District of California has risen to the task. As Judge Gonzalez Rogers recently put it: "we're trying to keep things moving in this district. . . . We're not going to shut the courts down. We're not going to shut down access. So we'll keep moving as best we can." Tr. of Zoom Webinar Proceedings, *In re Lithium Ion Batteries Antitrust Litig.*, No. C 13-MD-2420 YGR (May 20, 2020), at 50-51 (attached hereto as Harvey Decl. Ex. A). Plaintiffs, too, are ready to proceed as best they can.[1]

---

[1] Defendants contend that Plaintiffs' motion is procedurally improper, ECF No. 106 at 2, despite the fact that they agreed to these briefs, ECF No. 101 at 4, and the Court then issued an order directing that they be filed, ECF No. 104 at 1. Further, Defendants took the same approach as Plaintiffs when they filed their motion to stay discovery. ECF No. 59. The same Paragraph J to which Defendants cite was then Paragraph H. It was irrelevant then for the same reason it is now: this is not a "discovery dispute"—discovery has not yet begun. To be sure, Plaintiffs preferred an expedited procedure to the three weeks required to file these briefs. When Plaintiffs asked Defendants to file a brief joint statement on this issue, they refused, requiring separate briefs on even the schedule and page limits for these briefs. ECF No. 100-1 at 2-4.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO LIFT STAY OF DISCOVERY
CASE NO. 4:19-CV-00717-JST

| | | |
|---|---|---|
| Dated: June 3, 2020 | | Respectfully submitted, |

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Dean M. Harvey*

    Dean M. Harvey (SBN 250298)
    Katherine C. Lubin (SBN 259826)
    Yaman Salahi (SBN 288752)
    Adam Gitlin (SBN 317047)
    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
    San Francisco, CA 94111
    Telephone: (415) 956-1000
    dharvey@lchb.com
    kbenson@lchb.com
    ysalahi@lchb.com
    agitlin@lchb.com

    *Interim Class Counsel*

    Benjamin David Elga (pro hac vice)
    Brian James Shearer (pro hac vice)
    JUSTICE CATALYST LAW
    25 Broadway, 9th Floor
    New York, NY
    Telephone: (518) 732-6703
    belga@justicecatalyst.org
    brianshearer@justicecatalyst.org

    David Seligman (pro hac vice)
    TOWARDS JUSTICE
    1410 High Street, Suite 300
    Denver, CO 80218
    Telephone: (720) 441-2236
    Facsimile: (303) 957-2289
    david@towardsjustice.org

    Stuart T. Rossman (pro hac vice)
    Brian Highsmith (pro hac vice)
    NATIONAL CONSUMER LAW CENTER
    7 Winthrop Square, Fourth Floor
    Boston, MA 02110-1245
    Telephone: (617) 542-8010
    Facsimile: (617) 542-8028
    srossman@nclc.org
    bhighsmith@nclc.org

| | |
|---|---|
| 1 | |
| 2 | Cindy Pánuco (SBN 266921) |
| | Stephanie Carroll (SBN 263698) |
| 3 | Nisha Kashyap (SBN 301934) |
| | PUBLIC COUNSEL |
| 4 | 610 South Ardmore Avenue |
| | Los Angeles, California, 90005 |
| 5 | Telephone: (213) 385-2977 |
| | Facsimile: (213) 201-4722 |
| 6 | cpanuco@publiccounsel.org |
| | scarroll@publiccounsel.org |
| 7 | nkashyap@publiccounsel.org |

*Counsel for Plaintiffs and the Proposed Class*

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2020, I caused the foregoing to be electronically filed and served with the Clerk of the Court using the CM/ECF system to all parties of record.

DATED: June 3, 2020

/s/ *Dean M. Harvey*
DEAN M. HARVEY
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP