KONING ZOLLAR LLP
Drew Koning (263082)
(drew@kzllp.com)
Blake Zollar (268913)
(blake@kzllp.com)
Shaun Paisley (244377)
(shaun@kzllp.com)
169 Saxony Road, Suite 115
Encinitas, CA 92024
Telephone: (858) 252-3234
Facsimile: (858) 252-3238

*Attorneys for Defendant*
*All-Pro Bail Bonds, Inc.*

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 19-CV-00717-JST<br><br>**DEFENDANT ALL-PRO BAIL BONDS, INC.'S MOTION FOR RULE 11 SANCTIONS**<br><br>Date: August 12, 2020<br>Time: 2:00 p.m.<br>Location: Courtroom 6, 2nd Floor<br>Judge: The Honorable Jon S. Tigar |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .................................................................................... 1

STATEMENT OF RELIEF SOUGHT ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

    I.     INTRODUCTION ...................................................................................... 1

    II.    BACKGROUND ........................................................................................ 3

    III.   ARGUMENT ............................................................................................. 7

        A.  The Conspiracy Allegations Against All-Pro in the SCAC are Factually Baseless and Cannot be Reconciled With the Known Facts. ............................................................... 7

        B.  Plaintiffs' Counsel, by Refusing to Consider Critical Information, Did Not Conduct an "Inquiry Reasonable Under the Circumstances." ........................................................ 9

        C.  The Allegations Against All-Pro Should be Stricken, and All-Pro Should be Awarded Its Reasonable Attorneys' Fees and Costs. ............................................................... 13

    IV.   CONCLUSION ........................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bovinett v. HomeAdvisor, Inc.*,
  No. 17 C 06229, 2020 WL 1330407 (N.D. Ill. Mar. 23, 2020) ............................................... 10

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ................................................................................................ 7

*Hall v. Hamilton Family Ctr.*,
  No. 13-CV-03646-WHO, 2014 WL 1410555 (N.D. Cal. Apr. 11, 2014) ................................ 7

*Hunt v. Sunny Delight Beverages Co.*,
  No. 818CV00557JLSDFM, 2018 WL 6786265 (C.D. Cal. Dec. 18, 2018) ....................... 9, 13

*JAT Wheels Inc. v. JNC Wheel Collection*,
  No. CV 14-04898 JVS MRWX, 2014 WL 4568323 (C.D. Cal. Sept. 8, 2014) ................ 12, 13

*Merna v. Cottman Transmission Sys., LLC*,
  No. C05-5446 RJB, 2005 WL 8173859 (W.D. Wash. Dec. 16, 2005) ..................................... 7

*In re Ronco, Inc.*,
  838 F.2d 212 (7th Cir. 1988) ................................................................................................... 8

*Sconiers v. Fresno Cty. Superior Court*,
  No. 1:11-CV-00113-LJO, 2011 WL 5884263 (E.D. Cal. Nov. 23, 2011) ............................... 9

*Sneller v. City of Bainbridge Island*,
  606 F.3d 636 (9th Cir. 2010) ................................................................................................. 12

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,
  786 F. App'x 648 (9th Cir. 2019) .......................................................................................... 10

*Truesdell v. S. Cal. Permanente Med. Grp.*,
  293 F.3d 1146 (9th Cir. 2002) ............................................................................................ 7, 9

*United Nat. Ins. Co. v. R&D Latex Corp.*,
  242 F.3d 1102 (9th Cir. 2001) ................................................................................................. 8

*Wold v. Minerals Eng'g Co.*,
  575 F. Supp. 166 (D. Colo. 1983) ......................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................................................................ 6, 9, 13

Fed. R. Civ. P., advisory committee notes (1993 amendment) .......................................... 2, 6, 12

Fed. R. Civ. P., advisory committee notes (1983 amendment) ........................................................11

Edward D. Cavanagh, *Developing Standards Under Amended Rule 11 of the Federal Rules of Civil Procedure*, 14 Hofstra L. Rev. 499, 521 (1986).........................................10

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on Wednesday, August 12, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Jon S. Tigar, United States District Judge, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 2, 4th floor, Defendant All-Pro Bail Bonds, Inc. ("All-Pro") will, and hereby does, move the Court for an order striking the allegations against All-Pro in Plaintiffs' Second Consolidated Amended Class Action Complaint (Dkt. No. 94) (the "SCAC") and awarding All-Pro its reasonable attorneys' fees and costs associated with bringing this motion.

This motion is made pursuant to Federal Rule of Civil Procedure 11 and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the motion.

## STATEMENT OF RELIEF SOUGHT

All-Pro seeks an order striking the allegations against it in Plaintiffs' SCAC and awarding All-Pro its reasonable attorneys' fees and costs associated with bringing this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Federal Rule of Civil Procedure 11(b)(3) requires counsel to certify, after an "inquiry reasonable under the circumstances," that any factual contentions made in a pleading "have evidentiary support." Here, by disregarding or refusing to consider evidence that All-Pro Bail Bonds, Inc. ("All-Pro") regularly provides rebates to its clients, and then filing a complaint accusing All-Pro of participating in a conspiracy to *prevent* rebating, Plaintiffs' counsel have violated that obligation.

In their Consolidated Amended Complaint ("CAC"), Plaintiffs alleged that All-Pro, a California bail bond agent, conspired with another bail agent, nearly two dozen sureties, three bail associations, and two individuals to fix bail bond rates, and prevent bail agents from rebating their commissions to bail bond purchasers. On April 13, 2020, this Court granted in part and denied in

part the Defendants' joint motion to dismiss, dismissing the CAC against twenty-five defendants, including All-Pro, and granting Plaintiffs leave to amend within 30 days.

Following that order, All-Pro's counsel wrote to Plaintiffs' counsel with evidence that, contrary to Plaintiffs' arguments in their Rule 12(b)(6) opposition that All-Pro "refuses to [rebate]" and is part of a conspiracy to suppress rebates (Dkt. No. 68 at 6), All-Pro has in fact consistently provided rebates to bail bond purchasers in order to compete with other agents in the bail bond market. All-Pro produced to Plaintiffs' counsel business records covering every bail bond All-Pro issued on the same day Plaintiff Shonetta Crain obtained her bail bond, which showed that Plaintiff Crain's experience of paying a 10% premium was the exception, not the rule, and that the majority of bail bond purchasers that day received a rebate. And in the event Plaintiffs believed that this day was an anomaly, All-Pro offered to provide a random sample of rebating information from dates of Plaintiffs' choosing, confident that such records would show significant rebating on any day Plaintiffs selected.

Given that Plaintiffs' theory was that All-Pro "refuses to [rebate]," that offer ought to have caused Plaintiffs to do what Rule 11 demands: to "stop-and-think." Fed. R. Civ. P., advisory committee notes (1993 amendment). How, for example, could All-Pro have been a participant in a conspiracy not to rebate, while at the same time regularly providing rebates? And if there were really a cartel stamping down on bail agents who regularly rebate, how did All-Pro's rebating go on for years without consequence? Instead of accepting All-Pro's offer, reviewing the additional information about rebating, and considering, in light of that evidence, whether they had a continued basis for asserting claims against All-Pro (or against anyone for that matter), Plaintiffs flatly dismissed any evidence of regular rebating by All-Pro as "irrelevant." Declining to even *look* at evidence that cast serious doubt on the viability of their claims, Plaintiffs plowed ahead with a Second Consolidated Amended Complaint ("SCAC"), again naming All-Pro as a defendant, and alleging that it had participated in a conspiracy to suppress rebating. Plaintiffs allege in the SCAC:

- that All-Pro "rarely offer[s] rebates to consumers, or at least do[es] so less frequently and in smaller amounts than they otherwise would have absent the anti-rebating conspiracy" (Dkt. No. 94 ¶ 196)—even though Plaintiffs' counsel had information showing that All-

      Pro's rebating was far from "rare[]," and had declined to consider additional evidence about the frequency of All-Pro's rebating;

- that the supposed anti-rebating conspiracy "worked exactly as intended" when All-Pro did not give Plaintiff Crain a rebate on December 25, 2016 (Dkt. No. 94 ¶ 379)—neglecting to mention that All-Pro provided rebates to a majority of bail purchasers that same day; and

- that if the alleged cartel hears of "any rebating," it takes action to reduce rebating "as much as possible" (Dkt. No. 94 ¶ 196)—neglecting to mention that All-Pro, which Plaintiffs contend is part of the alleged cartel, routinely rebates.

      Knowing that All-Pro rebates frequently, Plaintiffs' counsel had the obligation to either (1) withdraw their claims against All-Pro, or (2) be candid with this Court about All-Pro's frequent rebating, and try to advance a theory that reconciled All-Pro's rebating with its participation in an anti-rebating conspiracy. But unwilling to do the former, and unable to do the latter, Plaintiffs' counsel took a different path: they dismissed this critical information about rebating as "irrelevant," omitted it from the SCAC entirely, and proceeded with their original theory regardless of the facts. That path violates Rule 11.

      The Court should strike the allegations in the SCAC against All-Pro, and award All-Pro the attorneys' fees and costs incurred in bringing this Motion.

## II. BACKGROUND

      On January 29, 2019, Plaintiffs Shonetta Crain and Kira Monterrey initiated this putative class action lawsuit in Alameda County Superior Court. After that lawsuit was removed to this Court, it was consolidated with another proceeding that had been filed in this Court, and on June 13, 2019, Plaintiffs filed a Consolidated Amended Complaint. (Dkt. No. 46 ("CAC").) The CAC asserted claims against two bail agents, including All-Pro, as well as twenty-three sureties, three bail bond associations, and two individuals, claiming that they had violated the Cartwright Act, the Sherman Act, and California's Unfair Competition Law by conspiring to restrain competition, including "in the offering of rebates or discounts from the maximum filed rate." (CAC ¶ 127.)

      On July 15, 2019, Defendants collectively brought Rule 12(b)(6) motions to dismiss on various grounds, including that immunity doctrines barred the complaint, and that the allegations against each defendant were insufficient to state a claim that any of them had joined and participated in the alleged conspiracy. (Dkt. Nos. 56, 58.) Arguing in opposition to the Rule 12(b)(6) motions

that their allegations against All-Pro were sufficient, Plaintiffs asserted that All-Pro "refuses to [rebate]," an assertion that was not included in the CAC. (Dkt. No. 68 at 6.)

On April 13, 2020, following briefing and a hearing, the Court granted Defendants' motions in part and denied them in part, dismissing the CAC as to all but three defendants on the basis that the allegations were insufficient to state a claim. (Dkt. No. 91.) All-Pro was among the dismissed defendants, with the Court noting that the allegations against All-Pro were particularly "thin[]." (*Id.* at 26.) The Court refused to consider the statement made in Plaintiffs' Opposition that All-Pro refuses to rebate, because no such allegation was contained in the CAC. (*Id.*) The Court granted Plaintiffs leave to amend within 30 days.

With Plaintiffs needing to decide whether they had sufficient facts to assert claims against each Defendant, All-Pro decided to approach Plaintiffs' counsel with information showing that their assertions that All-Pro was involved in an anti-rebating conspiracy were untrue. All-Pro does rebate, and has rebated, consistently, and it has never engaged in a conspiracy to prevent rebating. In order to prove as much, All-Pro sent Plaintiffs' counsel a letter on April 30, 2020, attaching business records showing that a majority of people who purchased bail bonds on the same day as Plaintiff Crain received a rebate from All-Pro, and that some paid premiums of as little as 5% or 6%. (Paisley Decl., Ex. 1 (Apr. 30 Ltr. from S. Paisley to D. Harvey).) All-Pro noted that this snapshot from December 25, 2016 was consistent with All-Pro's general practice on commission rebating and provided its annual average premium rates for the previous four years (from 2016 to 2019) as an illustration. Those rates ranged from approximately 7.6% to 8.3% when calculating the average premium according to the amount purchasers agreed to pay after discounts and rebates. When calculated according to what purchasers actually paid, *i.e.*, taking account of amounts that All-Pro was unable to collect, the average annual premium rate from 2016 to 2019 ranged from approximately 5.1% to 5.9%.[1] However calculated, the bottom line is that All-Pro provided bail

---

[1] Because of a calculation error, the average premium figures initially provided in the April 30, 2020 were misstated. These figures were corrected in the May 11, 2020 letter. (Paisley Decl., Ex. 3 (May 11, 2020 Ltr. from S. Paisley to D. Harvey).)

4

bond purchasers with significant rebates on a consistent basis. In light of this information, All-Pro requested that Plaintiffs not include All-Pro in any amended complaint. (Paisley Decl., Ex 1.)

On May 5, 2020, Plaintiffs' counsel responded by arguing that evidence of All-Pro's rebating did not matter because All-Pro could not "evade liability for participating in an antitrust conspiracy by, sometimes, competing in certain respects with one's co-conspirators." (Paisley Decl., Ex. 2 (May 5, 2020 Ltr. from D. Harvey to S. Paisley).) That assertion missed the point. As All-Pro explained in its letter, it had never participated in any conspiracy, and to back up that representation, it provided evidence—not of "sometimes" competing "in certain respects," but of consistently doing the very thing that the alleged conspiracy was designed to prevent: rebating. Perhaps realizing the implausibility of the argument that All-Pro's rebating was irrelevant in assessing its involvement in an anti-rebating conspiracy, Plaintiffs' counsel ended the letter by indicating that they needed additional information to "further evaluate [All-Pro's] arguments." (*Id.*) In doing so, however, Plaintiffs asked for wide-ranging discovery that went far beyond confirming All-Pro's rebating. (*Id.*)

Because such discovery would have imposed a significant burden on All-Pro and defeated the purpose of All-Pro's approach to Plaintiffs in the first place—to avoid any further expense from meritless litigation—All-Pro did not agree to provide Plaintiffs with broad discovery. All-Pro did, however, offer Plaintiffs information that would assure them that it had been providing rebates on an ongoing basis, contrary to Plaintiffs' assertions in the CAC. (Paisley Decl., Ex. 3.) Knowing that it had provided purchasers significant rebates every day for the entire period that it was required by law to keep complete records, All-Pro offered that, if Plaintiffs chose five dates at random for the five years preceding the filing of Plaintiff Crain's original complaint, All-Pro would provide Plaintiffs with business records showing the number and amount of rebates offered to purchasers on those dates. (*Id.*) Because All-Pro wanted to give Plaintiffs the time they needed to consider this information, All-Pro also offered Plaintiffs an extension of time to include All-Pro in any amended complaint, and agreed that, if the information provided did not change its position, All-Pro would stipulate to a new amended complaint that included All-Pro as a defendant. (*Id.*)

On May 12, 2020, Plaintiffs' counsel responded with a terse letter, stating that evidence of All-Pro's rebating was somehow "irrelevant for purposes of determining liability." (Paisley Decl., Ex. 4 (May 12, 2020 Ltr. from D. Harvey to S. Paisley).) Plaintiffs thus declined All-Pro's offer, refusing to even look at the broader evidence of rebating All-Pro was willing to share. (*Id.*)

The following day, Plaintiffs filed the SCAC, which included All-Pro as a defendant. (Dkt. No. 94.) The SCAC contains no mention of the fact that All-Pro has consistently provided rebates. Instead, just as in the CAC, Plaintiffs allege that All-Pro is a participant in a conspiracy to "suppress[] rebates." (*Id.* ¶ 9.) And contrary to the assertion in Plaintiffs' May 12, 2020 letter that the fact and frequency of rebating is "irrelevant" to their claims, Plaintiffs allege that rebating in the industry is "unusual" (*id.* ¶ 4), and that Bankers Insurance Company's bail agents, which included All-Pro, "rarely offer rebates to consumers, or at least do so less frequently and in smaller amounts than they otherwise would have absent the anti-rebating conspiracy." (*Id.* ¶ 196.) Indeed, Plaintiffs allege that "any rebating" would result in enforcement measures by the alleged cartel, which tries to stamp out rebating "as much as possible." (*Id.*) Plaintiffs further allege that when All-Pro did not provide Plaintiff Crain with a rebate on December 25, 2016, the conspiracy "worked exactly as intended," even though the majority of people who purchased bail bonds from All-Pro that same day received rebates (which runs counter to the purpose of the conspiracy). (*Id.* ¶ 379.)

All-Pro served the Rule 11 motion and supporting papers on Plaintiffs' counsel on June 8, 2020. Paisley Decl. ¶ 6.[2] Plaintiffs responded the next day, dismissing the motion as "without merit." *Id.*, Ex. 5. After All-Pro responded on June 17, 2020 (*id.*, Ex. 6), the parties had further discussions, during which All-Pro confirmed that the December 25, 2016 data it had provided to Plaintiffs reflected that a majority of consumers received rebates (rather than rate discounts) and provided additional data from two randomly selected dates to show how rebates and discounts are reflected in All-Pro's records. *Id.*, Ex. 7. This additional data also showed significant rebating, with

---

[2] The motion papers All-Pro served are identical to the papers All-Pro is now filing, with the exception of this paragraph (and the evidence cited therein), which has been added to update the Court on what occurred during the safe harbor period.

6

one day showing rebates in 16 out of 42 transactions, and another showing rebates in 34 out of 40 transactions. *Id.*; Gibbs Decl. ¶ 4. Throughout these discussions, All-Pro repeatedly offered to provide a random sample of rebating data from dates of Plaintiffs' choosing, and Plaintiffs' counsel repeatedly declined that offer, insisting that the frequency of All-Pro's rebating was irrelevant to whether All-Pro participated in an anti-rebating conspiracy. *See* Paisley Decl., Ex. 8. Because the 21-day safe harbor under Rule 11(c)(2) has now expired, and Plaintiffs have refused to withdraw their allegations against All-Pro, All-Pro now seeks sanctions.

### III.  ARGUMENT

Whenever an attorney presents a pleading to the court, he or she "certifies that to the best of the [attorney]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). This rule "require[s] litigants to 'stop-and-think' before initially making legal or factual contentions. It also … emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable …." Fed. R. Civ. P. 11, advisory committee notes (1993 amendment).

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted).

Here, Plaintiffs' counsel have violated Rule 11 by filing a complaint against All-Pro that is objectively baseless, even though they were in possession of information (or refused to consider information) proving as much.

#### A.  The Conspiracy Allegations Against All-Pro in the SCAC are Factually Baseless and Cannot be Reconciled With the Known Facts.

When Plaintiffs opposed Defendants' joint Rule 12(b)(6) motion to dismiss the CAC, the story they told this Court to try to salvage their claims against All-Pro was that All-Pro "refuses to

[rebate]." (Dkt. No. 68 at 6.) The Court refused to consider that assertion because it was not alleged in the CAC. Having been given leave to amend, Plaintiffs do not allege in the SCAC what they claimed was true in their Rule 12(b)(6) Opposition—that All-Pro refuses to rebate—because they know that to be false. But while Plaintiffs stop short of making such outright false statements in the SCAC, they do something that is functionally the same: they omit any mention of the critical fact that All-Pro rebates frequently, and then make misleading allegations that might cause the Court to infer that All-Pro is conspiring to suppress rebating.

That, as courts have consistently held, is inconsistent with Rule 11. A litigant violates Rule 11 not only where it makes affirmative misrepresentations, but also where it omits known, relevant facts and thereby renders its pleading, motion, or other paper misleading. *See Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1154 (9th Cir. 2002) (holding that sanctions under Rule 11(b)(3) are appropriate when counsel has "personal knowledge of [facts] that disprove[] his . . . argument"); *Hall v. Hamilton Family Ctr.*, No. 13-CV-03646-WHO, 2014 WL 1410555, at *10 (N.D. Cal. Apr. 11, 2014) (imposing Rule 11 sanctions where plaintiff "omitted critical information" from her motions); *Merna v. Cottman Transmission Sys., LLC*, No. C05-5446 RJB, 2005 WL 8173859, at *6 (W.D. Wash. Dec. 16, 2005) ("If a pleading is rendered misleading by virtue of the omission of relevant facts, the presenter may be subject to sanctions."); *see also United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001) (suggesting that sanctions may properly be imposed on attorneys when "critical information is … absent altogether"); *In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) (noting that while "the appellant did not misstate an empirical fact, it did omit facts that were highly relevant to an accurate characterization of the facts that were stated," and that such conduct was sanctionable under Rule 11).

Plaintiffs, for example, allege that Defendant Bankers Insurance Company's bail agents (of which All-Pro was one (SCAC ¶ 47)) "rarely offer rebates to consumers, or at least do so less frequently and in smaller amounts than they otherwise would have absent the anti-rebating conspiracy." (*Id.* ¶ 196.) But the assertion that All-Pro "rarely offer[s] rebates" is false, and Plaintiffs know it. (*See* Paisley Decl., Exs. 1, 3; Gibbs Decl. ¶¶ 2-3.) And even if the "rarely" language is not directed at All-Pro (which the SCAC does not say), the assertion that All-Pro rebates

"less frequently and in smaller amounts than they otherwise would have absent the anti-rebating conspiracy" is misleading given the omission of critical information about the extent of All-Pro's rebating. If Plaintiffs had been candid with the Court and disclosed that All-Pro has rebated consistently for years, the theory that All-Pro participated in Plaintiffs' alleged conspiracy to suppress rebating would be completely implausible. Indeed, under Plaintiffs' theory, rebates in the bail industry are "unusual." (SCAC ¶ 4.) Sureties and bail agents are, according to Plaintiffs' account, working together to monitor rebating, and "if any rebating occurred," it would be reported to sureties through trade associations, so that the alleged cartel could "craft an appropriate response to reduce competitive rebating as much as possible." (SCAC ¶ 196.) All-Pro cannot plausibly have been rebating regularly and, at the same time, been part of an alleged cartel stamping down on rebating whenever it occurred.

In addition, Plaintiffs allege that when Plaintiff Crain paid a 10% premium in obtaining her bond on December 25, 2016, "the Conspiracy worked exactly as intended." (SCAC ¶ 379.) But failing to mention that All-Pro provided rebates to the majority of bail bond purchasers that same day, negotiating premiums with some of them as low as 5% or 6%, makes this allegation grossly misleading. If the purpose of the conspiracy was to suppress rebates "as much as possible," then the conspiracy was not working as intended if All-Pro gave more than half of bail bond purchasers rebates.

Even though Plaintiffs' counsel had "personal knowledge of [facts] that disprove[] [their] argument" (*Truesdell*, 293 F.3d at 1154), they omitted those facts from the SCAC so that they could continue to advance baseless claims against All-Pro. That conduct violates Rule 11.

**B.    Plaintiffs' Counsel, by Refusing to Consider Critical Information, Did Not Conduct an "Inquiry Reasonable Under the Circumstances."**

Plaintiffs also did not conduct a "inquiry reasonable under the circumstances" before filing the SCAC. Fed. R. Civ. P. 11(b). When an attorney has information available to him or her that "reveals inaccuracies in the complaint's factual assertions or that would … provoke[] suspicions sufficient to merit further research," a failure to review that information warrants sanctions. *Sconiers v. Fresno Cty. Superior Court*, No. 1:11-CV-00113-LJO, 2011 WL 5884263, at *12 (E.D.

Cal. Nov. 23, 2011), *report and recommendation adopted*, 2012 WL 174945 (E.D. Cal. Jan. 20, 2012), *aff'd sub nom. Sconiers v. Judicial Council of California*, 623 F. App'x 896 (9th Cir. 2015).

In *Hunt v. Sunny Delight Beverages Co.*, No. 818CV00557JLSDFM, 2018 WL 6786265, (C.D. Cal. Dec. 18, 2018), for example, the plaintiff asserted that the labels on defendant's products were false and misleading, and alleged that images reproduced in the complaint were true and accurate representations of the labels she had relied upon in making an in-store purchase of the products. *Id.* at *4. The defendant's counsel provided plaintiff's counsel with information showing that was untrue—the images were taken from the company's website and did not accurately reflect any product that had ever been sold on store shelves. *Id.* Disregarding that information, plaintiff's counsel filed an amended complaint with the same images anyway, persisting with the allegation that the images accurately depicted the products plaintiff purchased. *Id.* The Court imposed Rule 11 sanctions, noting that "after Defendant informed Plaintiffs that the website did not accurately depict the actual Product labels, Plaintiffs' counsel had the opportunity to acknowledge the inaccuracy in the First Amended Complaint, inform the Court, and remedy the misrepresentation." *Id.* Having chosen not to do so, and having instead "compounded the problem" by arguing that their allegations must be accepted as true at the pleading stage, plaintiff's counsel's conduct violated Rule 11. *Id.*

Numerous other courts in this Circuit and around the country have similarly imposed sanctions where litigants disregarded information provided by their adversaries that cast serious doubt on the viability of their claims. *See Superior Consulting Servs., Inc. v. Steeves-Kiss*, 786 F. App'x 648, 651 (9th Cir. 2019) (affirming Rule 11 sanctions for making misleading statements in pleading and noting that the violation was "especially egregious because [the defendant] had alerted [the plaintiff] to the language of the Agreement after the initial Complaint was filed, but [the plaintiff] continued to describe it in a misleading manner in the First Amended Complaint"); *Wold v. Minerals Eng'g Co.*, 575 F. Supp. 166, 167 (D. Colo. 1983) (imposing Rule 11 sanctions where "attorney received information which contradicted the assertions of their motion and which, at the very least, should have put them on notice and given them reason to suspect the accuracy of their own factual assertions and cause them to be investigated further"); *Bovinett v. HomeAdvisor, Inc.*, No. 17 C 06229, 2020 WL 1330407, at *6 (N.D. Ill. Mar. 23, 2020) (imposing sanctions on plaintiff

where he persisted with his claims even after defendants' counsel had put plaintiff on notice of the claims' deficiencies, and noting that "[b]urying one's head in the sand is not an acceptable litigation tactic"); *see also* Edward D. Cavanagh, *Developing Standards Under Amended Rule 11 of the Federal Rules of Civil Procedure*, 14 Hofstra L. Rev. 499, 521 (1986) ("The cases make clear that an attorney is not free to ignore information furnished by his adversary which contradicts his client's contentions; such information at the very least puts counsel on notice that further inquiry is needed. Consequently, failure to make further inquiry may subject the attorney to [Rule 11] sanctions.").

In sum, plowing ahead with a factually baseless theory without considering contrary evidence does not satisfy an attorney's obligations to conduct a reasonable inquiry under Rule 11. Yet that is exactly what Plaintiffs' counsel did here. Faced with evidence of rebating, Plaintiffs' counsel at first expressed interest in further information—but seemingly only in an attempt to obtain wide-ranging discovery. (Paisley Decl., Ex. 2.) But when All-Pro offered further information—and the time to consider it—Plaintiffs' counsel flatly refused the offer, sending a terse response that simply declared any evidence of rebating that All-Pro might present as "irrelevant." (Paisley Decl., Exs. 3, 4.)

Plaintiffs' counsel's attempt to justify their refusal to consider critical information about rebating by characterizing it as "irrelevant" does not withstand scrutiny. The premise of the claims against All-Pro is that it conspired with others to suppress rebating in the bail industry, and so the fact that All-Pro itself provide rebates, and has done so on a consistent basis, is directly relevant to Plaintiffs' claims. Indeed, this Court has viewed the existence of rebating as relevant to Plaintiffs' theory, having repeatedly characterized the conspiracy alleged in the CAC as "an agreement not to rebate" or "not to offer rebates." (Dkt. No. 91 at 12, 16, 19.)

Moreover, contrary to Plaintiffs' assertion that it does not matter whether or how often All-Pro rebates, the SCAC expressly relies on the infrequency of rebating in trying to convince the Court that there is an anti-rebating conspiracy, alleging that rebating is "unusual," that bail agents "rarely offer rebates," and that whenever "any rebating" occurs, the alleged cartel works together to stamp it out. (*See* SCAC ¶¶ 4, 196.) It is impossible to reconcile these allegations with the notion that

evidence of extensive rebating by All-Pro is "irrelevant" to whether All-Pro participated in a conspiracy.

The information All-Pro offered Plaintiffs' counsel raises fundamental questions going to the heart of Plaintiffs' lawsuit. A curious attorney—and one who took seriously his or her responsibility to conduct a reasonable inquiry prior to making factual assertions—would therefore have accepted All-Pro's offer of further information about rebating. But unwilling to contemplate any set of facts that would have required them to reconsider the premise of their lawsuit or the inclusion of All-Pro as a defendant, Plaintiffs' counsel opted for a different course—they buried their heads in the sand.

Plaintiffs' refusal to consider this evidence is all the more egregious because All-Pro was willing to give Plaintiffs the time they needed to consider it. Fed. R. Civ. P. 11, advisory committee notes (1983 amendment) (noting that one of the considerations in determining whether the attorney's inquiry was reasonable was "[h]ow much time for investigation was available to the signer"). All-Pro approached Plaintiffs' counsel with evidence of rebating on April 30, 2020, about two weeks before the deadline to file the SCAC. (Paisley Decl., Ex. 1.) On May 11, 2020, after further correspondence between the parties, All-Pro offered Plaintiffs' counsel a random sample of rebating information in order to assure Plaintiffs' counsel that its representations about rebating were true. (Paisley Decl., Ex. 3.) By that time, however, Plaintiffs only had two days remaining to amend the complaint. Accordingly, wishing to provide Plaintiffs with the time they needed to make a considered decision about the impact of the evidence of All-Pro's rebating on their claims, All-Pro offered to extend the deadline to amend, and further agreed that, if Plaintiffs' counsel reviewed the evidence and determined that they still had a basis to include All-Pro as a defendant, All-Pro would stipulate to the amendment. (*Id.*) Plaintiffs would therefore have suffered no prejudice whatsoever if their counsel had just done what Rule 11 requires: taken the time to "stop-and-think." Fed. R. Civ. P. 11, advisory committee notes (1993 amendment). Instead, less than 24 hours after All-Pro's May 11, 2020 letter, Plaintiffs' counsel rejected All-Pro's offer outright, refusing to even look at the proffered information. (Paisley Decl., Ex. 4.) The following day, Plaintiffs filed the SCAC, omitting any mention of All-Pro's rebating.

By blinding themselves to information that did not comport with their original theory of the case, and filing a complaint that contradicts the known facts, Plaintiffs' counsel have violated Rule 11.

### C. The Allegations Against All-Pro Should be Stricken, and All-Pro Should be Awarded Its Reasonable Attorneys' Fees and Costs.

"Rule 11 authorizes a court to impose a sanction on any attorney, law firm, or party that brings a claim for an improper purpose or without support in law or evidence." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 638-39 (9th Cir. 2010). This Court has a variety of monetary and nonmonetary sanctions at its disposal. Fed. R. Civ. P. 11(c).

All-Pro requests that the Court strike the allegations against it from the SCAC entirely. *See* Fed. R. Civ. P., advisory committee notes (1993 amendment) (court is authorized to strike the offending pleading). Because the "sanctionable misrepresentations taint the entire pleading," no lesser measure will adequately deter the sanctionable conduct. *Hunt*, 2018 WL 6786265, at *4; *see also JAT Wheels Inc. v. JNC Wheel Collection*, No. CV 14-04898 JVS MRWX, 2014 WL 4568323, at *3 (C.D. Cal. Sept. 8, 2014) (striking counts from complaint in response to Rule 11 violations). All-Pro should also be awarded the reasonable attorneys' fees and expenses it has been forced to expend as a result of Plaintiffs' counsel's Rule 11 violation. Fed R. Civ. P. 11(c)(4); *Hunt*, 2018 WL 6786265, at *5 (awarding fees); *JAT Wheels Inc.*, 2014 WL 4568323, at *3 (same).

## IV. CONCLUSION

For all the foregoing reasons, All-Pro's motion for sanctions should be granted. The allegations in the SCAC against All-Pro should be stricken, and All-Pro should be awarded its reasonable attorneys' fees and costs. Upon entry of an order granting this motion, All-Pro will submit its application for fees and costs.

Dated: July 7, 2020　　　　　　　　　　　KONING ZOLLAR LLP

　　　　　　　　　　　　　　　　　　　　/s/ Shaun Paisley

　　　　　　　　　　　　　　　　　　　　Drew Koning (263082)
　　　　　　　　　　　　　　　　　　　　Blake Zollar (268913)

Shaun Paisley (244377)

*Attorneys for Defendant All-Pro Bail Bonds, Inc.*