# EXHIBIT 9

REPORT ON EXAMINATION

AS TO THE CONDITION OF THE

ALLEGHENY CASUALTY COMPANY

NEWARK, NEW JERSEY 07102-5207

AS OF DECEMBER 31, 2015

N.A.I.C. GROUP CODE 4705

N.A.I.C. COMPANY CODE 13285

Filed

April 17, 2017

Commissioner
Department of Banking &
Insurance

TABLE OF CONTENTS

Page

Salutation ..................................................................................................................-1-
Scope of Examination................................................................................................-1-
Compliance With Prior Report Recommendations....................................................-2-
History of the Company ............................................................................................-4-
Territory and Plan of Operation.................................................................................-4-
Reinsurance and Retention........................................................................................-5-
Insurance Holding Company System .........................................................................-5-
Corporate Records ....................................................................................................-7-
Management and Control..........................................................................................-7-
Policy on Conflict of Interest......................................................................................-7-
Fidelity Bond and Other Insurance Coverages...........................................................-8-
Accounts and Records................................................................................................-8-
Financial Statements and Other Exhibits...................................................................-9-


Exhibit A-        Balance Sheet at December 31, 2015............................................................-10-

Exhibit B-        Summary of Operations for the Three Year Period from
                  January 1, 2013 to the Period Ending December 31, 2015 ...........................-11-

Exhibit C-        Capital and Surplus Account for the Three Year Period Ending
                  December 31, 2015........................................................................................-12-

Notes to Financial Statements ..................................................................................-13-
Loss and Loss Adjustment Expense Reserves-Statement by NJDOBI Actuary..........-13-
Report Recommendations .........................................................................................-14-
Conclusion..................................................................................................................-14-

CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lt. Governor*



**State of New Jersey**
DEPARTMENT OF BANKING AND INSURANCE
OFFICE OF SOLVENCY REGULATION
PO BOX 325
TRENTON, NJ 08625-0325

TEL (609) 292-5350
FAX (609) 292-6765

RICHARD J.
BADOLATO
*Commissioner*

PETER HARTT
*Director*

March 10, 2017

Honorable Richard J. Badolato
Commissioner of Banking and Insurance
State of New Jersey
20 West State Street
Trenton, New Jersey 08625

Commissioner:

In accordance with the authority vested in you by the Revised Statutes of New Jersey (N.J.S.A.) an examination has been made of assets, liabilities, methods of conducting business and other affairs of the

Allegheny Casualty Company
One Newark Center
Newark, New Jersey 07102-5207
N.A.I.C. Group Code 4705
N.A.I.C. Company Code 13285

hereinafter referred to as the "Company" or "ACC".

### SCOPE OF EXAMINATION

The New Jersey Commissioner of Banking and Insurance called this Examination in compliance with the requirements of N.J.S.A. 17:23-22. The examination was a full scope comprehensive examination and was conducted at the Company's home office located at One Newark Center, Newark, New Jersey.

1

The examination was conducted using the risk-focused examination approach and addressed the four-year period from December 31, 2011, the date of the last Financial Condition Examination. During this four-year period under examination, the Company's net admitted assets increased from $33,462,944 to $39,501,332. Liabilities increased from $14,957,191 to $16,899,599 and its surplus to policyholders increased from $18,505,753 to $22,601,733.

The conduct of the examination was governed in accordance with the procedures of the National Association of Insurance Commissioners (NAIC) and followed regulatory procedures prescribed or permitted by the New Jersey Department of Banking and Insurance (NJDOBI). The scope of this examination was based upon the focus of certain specific key risk areas as determined by a risk assessment analysis through the use of control testing. Risks were assessed based upon its impact to the Company's financial condition and its future results. An assessment of the Company's management, corporate governance and information systems was utilized to identify, control, assess and manage its business and financial reporting risks. The overall objectives of this examination are indicated below:

- Analyze business risk activities focusing on examination procedures in those areas deemed to have greater risk to the Company's overall operations identifying significant operating issues and/or deviations from statutory accounting practices that affect solvency assessment.
- Identify significant deviations from New Jersey insurance laws, regulations and department directives.
- To comply with the standards prescribed in the revised NAIC Financial Condition Examiners Handbook, NAIC accreditation/codification standards and procedures and NJDOBI Departmental policies and procedures.
- To identify and report significant operational and internal control deficiencies and assess the Company's risk management processes.
- Assess the quality and reliability of corporate governance to identify, assess and manage the risk environment facing the insurer in order to identify current or prospective risk areas.
- To assess the risks that the Company's surplus is not materially misstated.
- To provide a foundation for a profile of the Company's operations, risks and results to be utilized by regulatory authorities.

Substantive procedures were completed on certain risks based upon the adequacy of controls, risk mitigation strategies and materiality of the risks. Additional substantive procedures were performed as required by the NJDOBI.

In addition to the items hereinafter incorporated as part of the written report, the following item were reviewed and made part of the examination workpapers:

Commitments and Contingencies
Fraud
Treatment of Policyholders
Advertising
Policy Forms and Underwriting Practices

***Compliance with Prior Report Recommendations***

The 2011 Report Recommendations were reviewed for compliance. Some of these recommendations are relevant to Pennsylvania Law and therefore may not be subject to New Jersey laws and regulations due to the re-domestication of ACC to New Jersey.

*Recommendation*: "It is recommended that the Company's Shareholders, Board of Directors and its committees meet in accordance with the Company's By-Laws and that a complete and accurate record of all meetings be kept in accordance with 15 Pennsylvania C.S. 1508(a)"

*Compliance:* This recommendation is commented on under the section titled "Corporate Records".

*Recommendation:* "It is recommended that the Company's Board of Directors appoint the appropriate committees in accordance with the Company's By-Laws".

*Compliance*: This recommendation is commented on under the section titled "Corporate Records".

*Recommendation:* "It is recommended that the Company's By-Laws should accurately reflect specific designated authorities and responsibilities of the committee or committees (Audit committee) that are established by the Board in compliance with this recommendation".

*Compliance:* The Company has complied with this recommendation.

*Recommendation:* "It is recommended the Company's Board appoint an Investment Committee in accordance with the Company's written Investment Policy".

*Compliance*: This recommendation is complied with as investments are reviewed by the Finance and Enterprise Risk Management Committee.

*Recommendation:* "It is recommended the Company's Board annually appoint the Company's officers in accordance with the Company's By-laws"

*Compliance:* The Company has complied with this recommendation.

*Recommendation:* "It is recommended that the Company perform a review and amend the Expense Sharing Agreement to include the settlement requirements as set forth in (the NAIC's) Statement of Statutory Accounting Principles #25 Accounting for and Disclosures about Transactions with Affiliates and Other Related Parties".

*Compliance*: Although the Company has not amended its Expense Sharing Agreement with IFIC a review of settlements noted expenses were settled on a quarterly basis.

The following recommendations were noted during the prior examination when the Company was domiciled in Pennsylvania. Since the re-domestication of the Company these recommendations are no longer applicable:

*Recommendation:* It is recommended the Company perform a review of the Management Agreement and Bail Bond Program and all other applicable agreements and update them as necessary to comply with the provisions of Pennsylvania Insurance Company Law.

*Recommendation:* It is recommended the Company review its Management Agreement and Bail Bond Program including an assessment of the need for AIA to be licensed as a Manager pursuant to Pennsylvania Insurance Company Law and provide the Pennsylvania Insurance Department with a written assessment of the Company's findings.

*Recommendation:* It is recommended that the Company amend its custodial agreement to comply with certain provisions as required under the Pennsylvania regulation code.

*Recommendation:* It is recommended that the Company comply with the provisions of Pennsylvania Insurance Company Law regarding its formal investment plan be approved on an annual basis by its Board of Directors

## *HISTORY OF THE COMPANY*

ACC is the successor to the Allegheny Mutual Casualty Company which was incorporated under the mutual insurance laws of the State of Pennsylvania on April 15, 1936. On January 1, 1998 the Company was demutualized and all eligible policyholders received stock in the newly formed Allegheny Casualty Company. Immediately these shares were exchanged for shares of The Chestnut Group, Inc. which resulted in The Chestnut Group, Inc. owning 100% of Allegheny Casualty Company stock. In August 2007 AIA Holdings, Inc., a managing general agent for the Company's bail business purchased all of the outstanding stock of The Chestnut Group, Inc. except for the 20.3% ownership collectively held by the executive management of ACC. On July 27, 2009 International Fidelity Insurance Company (IFIC) filed a Form D filing with the NJDOBI to purchase all of the shares of the Chestnut Group, Inc. which was non-disapproved by the NJDOBI on September 25, 2009.

On October 13, 2015 management requested a re-domestication of ACC from Pennsylvania to New Jersey. The re-domestication was approved by the Deputy Attorney General on October 30, 2015 and filed with the NJDOBI on November 30, 2015.

Capitalization of the Company is provided through the issuance of 1,500,000 shares of outstanding common stock with a par value of $1.00 per share. Additional funding of $3,200,000 was procured through the issuance of two series of preferred stock which is described as follows:

- 12,000 authorized and outstanding Series A non-voting cumulative 10% preferred stock with a par value of $100 per share.
- 35,000 authorized and 20,000 outstanding Series B non-voting cumulative 8% preferred stock with a par value of $100 per share

Treasury stock reduced the amount of capital by $2,260,000. A total of 12,000 Series A and 10,000 Series B of preferred stock was purchased for $105 and $100 per share respectively.

**TERRITORY AND PLAN OF OPERATION**

The Company is authorized to write business in all 50 states including the District of Columbia and Puerto Rico. The Company is a provider of specialty (non-standard civil surety) and bail bonds.

Specialty surety allows contractors with unsecured surety business to meet qualified levels through increased levels of collateral. All of ACC's specialty business is assumed by IFIC through an internal reinsurance agreement.

Bail bonds are completely underwritten and marketed by AIA Holdings, Inc. (AIA) under a Managing General Agent (MGA) Agreement. Under the Agreement AIA will act as bond manager and will perform the following:

- Appoint Producers
- Underwrite and issue bonds
- Bill premiums
- Collect premium from agents
- Perform claim handling services.

In return AIA is entitled to a commission rate which varies based upon the state or territory the bail is written.

The Company is an authorized surety in all federal courts and is treasury listed by the United States Treasury Department.

The Company generates business through the use of over 1800 independent agents stationed nationwide. Agents are granted powers of attorney with business written subject to underwriting approval. It's marketing and underwriting is overseen by 8 regional profit centers located throughout the country. A list of those regional profit centers follows:

| | |
|---|---|
| Chicago Specialty | Newark Specialty |
| Connecticut Specialty | Orlando Specialty |
| Dallas Specialty | Philadelphia Specialty |
| Southern California Specialty | Denver Specialty |

ACC's home specialty office is located in Newark, New Jersey and provides underwriting support to the regional profit centers. This office will also handle complex specialty surety business and underwrite specialty surety exceeding the authority limits of the regional profit centers.

In addition to the profit centers listed above, the Company maintains claims and legal field offices throughout the country which provide Company representations in specific areas. A list of these offices follows:

Claims Office-Rockford, Illinois
Claims Office-Northeast Division-Norristown, Pennsylvania
Claims Office-Southern Division-Plano, Texas
Claims Office-Complex Claims-Hunt Valley, Maryland
Claims Office-Western Division-Issaquah, Washington

**REINSURANCE AND RETENTION**

The Company entered into a continuous quota share reinsurance agreement effective January 1, 2010 with its parent, International Fidelity Insurance Company. Under the Agreement ACC will cede and IFIC will accept 100% of the specialty insurance underwritten by ACC.

**HOLDING COMPANY SYSTEM**

The Company is a member of a holding company system as defined within N.J.S.A. 17:27A-1. IFIC has several owners and it maintains 100% ownership in the Chestnut Group (sole owner of Allegheny Casualty Company) as illustrated below:



The Company has entered into a number of affiliated agreements as described below:

- On January 1, 2010 ACC entered into an expense sharing agreement with IFIC for the payment of underwriting and operating expenses incurred by IFIC on behalf of Allegheny Casualty Company.
- On October 1, 2009 IFIC and ACC entered into a tax consolidated agreement whereby IFIC acts as the agent for filing the return. Under the Agreement ACC and IFIC shall share tax liabilities in an amount equal to the tax liability as if each had filed a separate return.
- The Company entered into a continuous quota share reinsurance agreement effective January 1, 2010 with IFIC. Under the Agreement ACC will cede and IFIC will accept 100% of the non-bail insurance underwritten by ACC.
- On April 7, 2009 IFIC and ACC entered into a reciprocal hold harmless agreement on any non-bail bonds written on a co-surety basis. These bonds require IFIC's participation and shall be written in the name of ACC. IFIC's co-surety liability shall be determined prior to the issuance of the bond.

**CORPORATE RECORDS**

Although the Company's Board Minutes provided Board resolutions, the minutes lacked detail of Board discussions on Company strategies, decisions and considerations including approval of the prior examination report, investment transactions and annual officer elections (as required by the Bylaws). Furthermore there were no minutes of any shareholder meetings. Subsequently in 2016 the Company began to record comprehensive minutes of the meetings of the Board and established an audit committee at a Parent (IFIC) level.

It is recommended the Company continue to maintain comprehensive minutes of its board, comply with its Bylaws and maintain minutes of all shareholder meetings.

**MANAGEMENT AND CONTROL**

| | |
|---|---|
| Francis Louis Mitterhoff | President, Chairman of the Board-International Fidelity Insurance Company |
| Ellen Sue Kagan | Executive Vice President and Treasurer-International Fidelity Insurance Company |
| Normal Roger Konvitz | Executive Vice President and Secretary-International Fidelity Insurance Company |
| Robert William Minster | Chief Executive Officer-International Fidelity Insurance Company |
| Martin P. Sheffield | Management Consultant –Sheffield Consulting, Inc. |
| Jeffrey D. Butler | Private Real Estate Investor-Greencastle Capital Management |
| Harvey C. Sigelbaum | Retired Executive Attorney |

The Corporate By-laws give the Board the authority to manage the business affairs of the Company. The Board shall elect a President, a Secretary/Treasurer and other officers deemed necessary. Officers serving the Company as of December 31, 2015:

Robert Minster-President
Fred Mitterhoff-Vice President and Secretary
Maria Costa-Treasurer
Brian Nairin-Vice President

**POLICY ON CONFLICT OF INTEREST**

The Company in conjunction with IFIC has adopted a policy statement on conflicts of interest. Each year all officers and directors of the Company are required to complete a formal conflict of interest questionnaire which requires the individual to disclose any act or affiliation that is likely to conflict with the individual's official duties. All of the required signatories to the conflict of interest questionnaire of officers, directors and key employees are then reviewed by IFIC's Legal Council and the President of the Company.

**FIDELITY BOND AND OTHER INSURANCE COVERAGES**

ACC together with IFIC is covered by a fidelity bond insuring forgery or alteration, securities and computer system for a single loss limit of $1,000,000 subject to a $5,000 deductible. This fidelity coverage is deemed adequate to satisfy the minimum amounts of fidelity insurance coverage as suggested by the National Association of Insurance Commissioners (NAIC) exposure index. The Company also maintains on a consolidated basis additional insurance coverages for the protection of its assets on the various policies in effect at December 31, 2015 including Directors and Officers Liability and Cyber and Technology Liability policies.

**ACCOUNTS AND RECORDS**

The Company's general and subsidiary ledgers are maintained at the main administrative office at One Newark Center, Newark, New Jersey. The Company utilizes the A/S 400 (IBM iSeries) as its book of record for new business, accounts payable, accounts receivable and its general ledger. All server hardware for computer processing is located and performed at the Company's home office data center in Newark, New Jersey.

Claims and premiums processed through the A/S 400 are manually integrated into the general ledger on a monthly basis.

Investments are managed by Prime Advisors, Inc. under investment guidelines established by the Company. Clearwater Analytics, Inc. produces accounting reports for investment transactions which are reconciled to the general ledger. Clearwater Analytics, Inc. also ensures the investment manager complies with investment guidelines.

Additionally other IT applications have been developed to assist in its monitoring and tracking certain transactions. ACC does not use multiple platforms to process premium, claim or reinsurance

transactions.  Each function has processing platform only.  The following is a listing of these key applications:

*Data Warehouse*
A Data Warehouse has been internally developed which supplements reporting for the accounting department.

*Underwriting Database (UWDB)*
ACC uses an internally developed application to monitor performance (both financially and job specific) of its principals\contractors.

*Line of Credit (LOC)*
Line of Credit (LOC) is an internally developed application that trusts SharePoint to track bond dollar amounts (single and aggregate) that are granted to its principals\contractors.

*Bond Approval System*
The Company uses an internally developed application using SharePoint to track approved bonds greater than $1,000,000.

*Claims Workflow*
The Company's Claim department utilizes this automated paperless system to manage paperwork and claim files.

*Profit Sharing Application*
An application which is utilized by senior underwriting management to review and monitor levels of achievement of profit sharing plans by Company agents.

*AX Imaging System*
An application imaging bond and claim files as well as accounting information (checks).

**FINANCIAL STATEMENTS AND OTHER EXHIBITS**

Exhibit A-          Balance Sheet at December 31, 2015………………………………….…………………10

Exhibit B-          Summary of Operations for the Three Year Period from January 1, 2013
                    To the Period Ending December 31, 2015……………………………………………….11

Exhibit C-          Capital and Surplus Account for the Three Year Period Ending
                    December 31, 2015………………………………………………………………………..12

# ALLEGHENY CASUALTY COMPANY
## EXHIBIT A-STATEMENT OF ASSETS, LIABILITIES AND UNASSIGNED FUNDS AT DECEMBER 31, 2015

|  | Current Examination at 12/31/15 | Balance per Company at 12/31/15 | Examination Change | Note Number |
|---|---|---|---|---|
| **Assets** | | | | |
| Bonds | $13,588,707 | $13,588,707 | $0 | 1 |
| Cash and Short Term Investments | 22,958,511 | 22,958,511 | 0 | 1 |
| Investment Income Due and Accrued | 73,021 | 73,021 | 0 | |
| Premiums In the Course of Collection | 1,133,764 | 1,133,764 | 0 | |
| Amounts Recoverable from Reinsurers | 1,280,157 | 1,280,157 | 0 | |
| Net Deferred Tax Asset | 374,951 | 374,951 | 0 | |
| Receivables Due from Parent, Subsidiaries and Affiliates | 92,221 | 92,221 | 0 | |
| Total Admitted Assets | $39,501,332 | $39,501,332 | $0 | |
| | | | | |
| **Liabilities** | | | | |
| Losses | $237 | $237 | $0 | 2 |
| Loss Adjustment Expenses | $652 | $652 | 0 | 2 |
| Commissions Payable, Contingent Commissions and Other Similar Charges | 227,937 | 227,937 | 0 | |
| Other Expenses | 49,795 | 49,795 | 0 | |
| Taxes, Licenses and Fees | 131,822 | 131,822 | 0 | |
| Current Federal and Foreign Income Taxes | 191,849 | 191,849 | 0 | |
| Unearned Premiums | 238,649 | 238,649 | 0 | |
| Ceded Reinsurance Premiums Payable | 2,360,070 | 2,360,070 | 0 | |
| Amounts Withheld or Retained by Company for Account of Others | 13,568,604 | 13,568,604 | 0 | |
| Payable to Parent, Subsidiaries and Affiliates | 129,984 | 129,984 | 0 | |
| Total Liabilities | $16,899,599 | $16,899,599 | $0 | |
| | | | | |
| **Surplus and Other Funds** | | | | |
| Common Capital Stock | $1,500,000 | $1,500,000 | $0 | |
| Preferred Capital Stock | 3,200,000 | 3,200,000 | 0 | |
| Gross Paid In and Contributed Surplus | 1,669,529 | 1,669,529 | 0 | |
| Unassigned Funds (Surplus) | 18,492,204 | 18,492,204 | 0 | |
| Less: Treasury Stock at Cost | (2,260,000) | (2,260,000) | 0 | |
| Surplus as Regards Policyholders | $22,601,733 | $22,601,733 | $0 | |
| Total Liabilities, Surplus and Other Funds | $39,501,332 | $39,501,332 | $0 | |

# EXHIBIT B-SUMMARY OF OPERATIONS FOR THE FOUR YEAR PERIOD ENDING DECEMBER 31, 2015

| UNDERWRITING INCOME | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|
| Premiums Earned | $ 19,366,356 | $ 24,016,011 | $ 29,558,663 | $ 30,197,938 |
| Deductions: | | | | |
|   Losses Incurred | $ (99,045) | $ (123,651) | $ (10,237) | $ (44,334) |
|   Loss Expenses Incurred | 103,453 | 86,639 | 126,481 | (9,059) |
|   Other Underwriting Expenses Incurred | 18,983,156 | 20,938,633 | 29,021,180 | 29,699,911 |
|   Total Underwriting Deductions | $ 18,987,564 | $ 20,901,621 | $ 29,137,424 | $ 29,646,518 |
|   Net Underwriting Gain or (Loss) | $ 378,792 | $ 3,114,390 | $ 421,239 | $ 551,420 |
| INVESTMENT INCOME | | | | |
| Net Investment Income Earned | $ 362,992 | $ 132,993 | $ 179,391 | $ 155,270 |
| Net Realized Capital Gains or (Losses) | 1,438 | 254,396 | 107,970 | 0 |
|   Net Investment Gain or (Loss) | $ 364,430 | $ 387,389 | $ 287,361 | $ 155,270 |
| OTHER INCOME | | | | |
| Net Gain or (Loss) from Agents' Balances Charged Off | $ (1,870) | $ (13,343) | $ - | $ (229) |
| Miscellaneous Income | 30,003 | 0 | 3,875 | 6,004 |
|   Total Other Income | $ 28,133 | $ (13,343) | $ 3,875 | $ 5,775 |
| Net Income Before Dividends to Policyholders and before Federal & Foreign Income Tax | $ 771,355 | $ 3,488,436 | $ 712,475 | $ 712,465 |
| Federal Income Taxes Incurred | (13,327) | 88,519 | 263,013 | 190,933 |
|   Net Income | $ 784,682 | $ 3,399,917 | $ 449,462 | $ 521,532 |

## EXHIBIT C-SURPLUS ACCOUNT FOR THE FOUR YEAR PERIOD ENDING DECEMBER 31, 2015

|  | 2012 | 2013 | 2014 | 2015 |
|---|---:|---:|---:|---:|
| NET INCOME | $ 784,682 | $ 3,399,917 | $ 449,462 | $ 521,532 |
| **OTHER SURPLUS GAINS OR (-) LOSSES** | | | | |
| Change in Net Deferred Income Tax | $ 196,058 | $ (1,120,970) | $ 75,210 | $ (81,758) |
| Change in Nonadmitted Assets | (172,296) | 429,741 | (185,319) | 126,409 |
| Change in Provision for Reinsurance | 2,805 | 977 | (934) | 934 |
| Surplus Adjustments-Paid In | | 669,529 | - | - |
| Dividends to Stockholders | | - | - | - |
| Change in Treasury Stock | | - | - | (1,000,000) |
| Total Other Surplus Gains or (-) Losses | $ 26,567 | $ (20,723) | $ (111,043) | $ (954,415) |
| Change in Surplus as Regards Policyholders for the Year | $ 811,249 | $ 3,379,194 | $ 338,419 | $ (432,883) |
| Surplus as Regards Policyholders December 31, Previous Year | 18,505,753 | 19,317,002 | 22,696,196 | 23,034,615 |
| Surplus as Regards Policyholders December 31, Current Year | $ 19,317,002 | $ 22,696,196 | $ 23,034,615 | $ 22,601,732 |

NOTES TO FINANCIAL STATEMENTS

Note 1-Special Deposits

The following securities were held on deposit by states and territories on behalf of the Company as of December 31, 2015:

| State | Book Value | Fair Value |
|---|---|---|
| Arkansas | $ 110,506 | $ 110,464 |
| California | 100,000 | 100,000 |
| Delaware | 221,113 | 222,370 |
| Florida | 560,620 | 561,582 |
| Georgia | 35,313 | 36,445 |
| Indiana | 76,390 | 76,390 |
| Massachusetts | 114,180 | 117,422 |
| Nevada | 200,000 | 200,000 |
| New Hampshire | 511,878 | 518,425 |
| New Jersey | 101,149 | 101,031 |
| New Mexico | 219,278 | 221,386 |
| North Carolina | 1,224,872 | 1,222,415 |
| Oklahoma | 2,173,648 | 2,179,740 |
| Oregon | 258,061 | 258,726 |
| Pennsylvania | 1,697,469 | 1,706,491 |
| Rhode island | 100,610 | 100,039 |
| Tennessee | 75,000 | 75,000 |
| Texas | 5,380,000 | 5,380,000 |
| Virginia | 224,909 | 225,401 |
| Wyoming | 175,521 | 174,679 |

United State Treasury Notes with a book value of $101,149 were held for the benefit of policyholders as statutory deposits on behalf of the State of New Jersey in accordance with N.J.S.A. 17:20-1.

NOTE 2-Loss and Loss Adjustment Expense Reserves

The Company reported net loss and loss adjustment expense reserves of $889 at December 31, 2015. A review of both the gross and net loss and loss adjustment expense reserves was performed by the New Jersey Department of Banking and Insurance, Office of Solvency Regulation, Actuarial Unit. On the basis of this review the Company's loss and loss adjustment expense reserves were found to be reasonably stated and were accepted without adjustment.

Actuarial findings as stated above and in this examination report are the sole responsibility of the New Jersey Department of Banking and Insurance's Property and Casualty Unit.

**REPORT RECOMMENDATIONS**

Corporate Records-Page 7

Although the Company's Board Minutes provided Board resolutions, the minutes lacked detail of Board discussions on Company strategies, decisions and considerations including approval of the prior examination report, investment transactions and annual officer elections (as required by the Bylaws). Furthermore there were no minutes of any shareholder meetings. Subsequently in 2016 the Company began to record comprehensive minutes of Board meetings.

It is recommended the Company continue to maintain comprehensive minutes of its Board meetings and maintain minutes of all shareholder meetings.

*CONCLUSION*

The examination of the Allegheny Casualty Company was conducted by the undersigned at the Company's main administrative office located at One Newark Center, Newark, New Jersey.

The courteous cooperation extended to the examination staff by the officers and employees of the Company is acknowledged.

Respectfully submitted,

/S/

Robert A. Pietras
Certified Financial Reviewer

Allegheny Casualty Company

I, Robert A. Pietras, do solemnly swear that the foregoing report on examination is hereby represented to be a full and true statement of the condition and affairs of the subject insurer as of December 31, 2015 to the best of my information, knowledge and belief.

    Respectfully submitted,

        /S/

    Robert A. Pietras, Examiner-In-Charge
    Certified Financial Reviewer
    New Jersey Department of Banking and Insurance

State of New Jersey
County of Mercer

Subscribed and sworn to before me, Linda L. Boone on this 15th day of March, 2017.

        /S/
    _____
    Linda L. Boone
    Notary Public of New Jersey

    My commission expires