1  Dean M. Harvey (SBN 250298)
   Katherine Lubin (SBN 259826)
2  Yaman Salahi (SBN 288752)
   Adam Gitlin (SBN 317047)
3  Jallé Dafa (SBN 290637)
   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
4  275 Battery Street, 29th Floor
   San Francisco, CA 94111
5  Telephone: (415) 956-1000
   dharvey@lchb.com
6  kbenson@lchb.com
   ysalahi@lchb.com
7  agitlin@lchb.com
   jdafa@lchb.com
8
   *Interim Class Counsel*
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION | Master Case No. 4:19-CV-00717-JST |
| | **DECLARATION OF DEAN M. HARVEY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ALL-PRO'S MOTION FOR SANCTIONS** |
| THIS DOCUMENT RELATES TO: | |
| All Actions | |

I, Dean M. Harvey, declare as follows:

1. I am a partner at the law firm of Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser"), which has been appointed Interim Class Counsel. I have personal knowledge of the facts herein and, if called upon to testify to those facts, I could and would do so competently.

## I. Counsel's Investigation Prior to Filing the Original Complaint

2. Interim Class Counsel Lieff Cabraser, along with its non-profit co-counsel Public Counsel, Towards Justice, Justice Catalyst Law, and the National Consumer Law Center (together, "Plaintiffs' Counsel"), began their investigation of the California bail industry in June 2017.

3. Plaintiffs' Counsel investigated the Defendant Sureties' filings with the California Department of Insurance ("CDI"), and statements Defendants Sureties made on their websites about premium rates and the availability of advertised discounts or rebates. That investigation revealed that Defendant Sureties' near-uniform filing of a 10% "standard" premium rate with the CDI. It also uncovered that Defendant Sureties and Bail Agents did not advertise the availability of rebates on their websites, or make public statements with respect to the availability of such rebates.

4. Plaintiffs' Counsel also investigated and analyzed elements of the bail bond market that make it susceptible to collusion, including high barriers to entry, and other aspects of the market that suggested collusion, such as low loss rations and high profit margins. As part of this analysis, Plaintiffs' Counsel consulted with several outside consultants, including economists with expertise in the bail and insurance industries. These consultants provided their insights, which lent further support for Plaintiffs' antitrust claims.

5. Plaintiffs' Counsel also investigated statements made by market leaders, including Defendants William B. Carmichael and Jerry Watson, about competition in the bail industry generally, and efforts to collude to avoid price competition. These statements were identified on current and archived versions of publicly-available websites.

6. Plaintiffs' Counsel also analyzed legal precedent, including the impact of Proposition 103 and the *Pacific Bonding* decision from 2004 holding that decision applied to the bail industry.

7. Plaintiffs' Counsel also interviewed industry participants, including the named Plaintiffs.

8. Altogether, Plaintiffs' Counsel devoted approximately 668 hours investigating the antitrust claims prior to filing the initial complaint.

## II. Additional Investigation Prior to Filing the SCAC

9. Following the Court's April 2020 order granting in part and denying in part Defendants' joint motion to dismiss, Lieff Cabraser conducted additional investigation in connection with preparing the Second Consolidated Amended Complaint ("SCAC"; ECF No. 94).

10. In particular, the SCAC contains a detailed description of the aspects of the bail bonds market that make it particularly susceptible to price fixing. *See* SCAC ¶¶ 67-112. These "plus factor" allegations result from Plaintiffs' Counsel's factual investigation of the bail market and evaluation of academic research of the bail bonds market in California.

11. Plaintiffs' Counsel carefully reviewed all of the Surety Defendants' filings with the CDI between 2004 and the present. Plaintiffs' Counsel identified the standard premium rates filed by each of the Surety Defendants for every year of the proposed class period, as well as any statements the Surety Defendants made in their filings with the CDI regarding the standard premium rates. That investigation further confirmed that the Surety Defendants filed nearly uniform 10% standard premium rates from 2004 on. *See* SCAC ¶ 7. Plaintiffs' Counsel also reviewed the Surety Defendants' financial disclosures filed with the CDI to identify the sureties' loss ratios and profit margins. That investigation further confirmed that the Surety Defendants had zero or extremely low loss ratios. *See* SCAC ¶¶ 105-07.

12. Plaintiffs' Counsel also reviewed the current and archived versions of the Surety Defendants' websites and identified any statements made relating to premium rates or the availability of discounts or rebates. That investigation further confirmed that the Surety

Defendants made nearly uniform misrepresentations and omissions that mislead consumers into believing that rebates are unavailable. *See*, *e.g.,* SCAC ¶¶ 8-9.

13. Plaintiffs' Counsel also searched for evidence that the bail agents, including but not limited to the two Bail Agency Defendants named in the SCAC, advertised rebates. Plaintiffs' Counsel's investigation further confirmed that bail agents did not advertise rebates to consumers, and in fact to the contrary made misrepresentations or omissions that mislead consumers into believing that rebates were unavailable. In fact, as set forth in the SCAC, Plaintiffs' Counsel's search only uncovered two instances of a bail agent publicly acknowledging rebating authority pursuant to Proposition 103. *See* SCAC ¶ 92. One of those two instances was a blog posting by "Chad the Bail Guy," a bail agent, stating that his effort to provide lower prices for consumers had resulted in pressure from a "good ol boys club," which "came after [his] license for trying to save clients money." *Id*.

14. Defendant All-Pro is one of the bail agents for Defendant Bankers Insurance Company ("Bankers"). With respect to Bankers in particular, Plaintiffs' Counsel's investigation confirmed that Bankers filed the 10% standard premium between 2004 and 2019. SCAC ¶¶ 7; 192. Plaintiffs' Counsel reviewed Bankers' annual financial disclosures filed with the CDI, which showed Bankers has consistently experienced zero losses. SCAC ¶ 193. Further, Bankers' standard rate sheet, which it provided to all of its agents (including Defendant All-Pro), states that state bonds over $500.00 "will be charged 10% of the penal amount," and that "[t]hese rates must be charged by all Agents of Bankers Insurance Company," without disclosing that bail agents have the authority to offer rebates. *See* SCAC ¶ 198. Plaintiffs' Counsel also investigated Bankers' involvement in trade associations, and uncovered that Bankers is a member of the American Bail Coalition ("ABC"), and contributed $246,563 to the trade association in 2017 alone. SCAC ¶ 195. As alleged in the SCAC, trade associations like ABC provided opportunities to conspire and allowed the Surety Defendants, including Bankers, to teach and enforce the conspiracy to Bail Agents and other sureties. SCAC ¶¶ 127-35.

15. With respect to the two Bail Agent Defendants, Plaintiffs' Counsel conducted an investigation into their statements regarding premium rates and the availability of discounts or

rebates that appeared on the current and archived versions of the Bail Agent Defendants' websites. For Defendant All-Pro, Plaintiffs' Counsel identified several misleading statements on All-Pro's website regarding the standard rates and availability of discounts. Plaintiffs' Counsel's search revealed that in an archived version of the "Rates" page of All-Pro's website from 2008, All-Pro made the following statement:

> The Department of Insurance regulates the rates all bail agents must charge. Essentially, all bail agents charge the same rates. The only difference is that some bail agents allow the client to pay the balance due over time-regardless of the rate. Failure to charge the proper rate for a bail bond is a crime. That's why ALLPRO BAIL BONDS always charges the rates shown below to ALL clients. (SCAC ¶ 381)

16. On All-Pro's current website, All-Pro states: "In general, the standard industry rate for bail bonds is 10% of the face amount of bail. For example, if the face amount of bail is $10,000, the fee is $1,000." SCAC ¶ 380.

17. Plaintiffs' Counsel consulted further with economic consultants and economists in preparing the SCAC.

18. In total, Plaintiffs' Counsel spent approximately 228 hours investigating Defendants' participation in the bail industry, refining their claims, and preparing the SCAC, between April 13, 2020 and when the SCAC was filed on May 13, 2020.

### III. Correspondence with All-Pro Regarding Its Motion

19. All-Pro does not include all of the relevant correspondence regarding its Rule 11 motion. I have attached the remaining correspondence here.

20. On July 2, 2020, I sent an email to all defense counsel in this action proposing a protective order based on the model protective order for the Northern District. A true and correct copy of that email and proposed protective order is attached hereto as Exhibit 1.

21. On July 9, 2020, All-Pro's counsel responded to my email proposing a protective order. A true and correct copy of that email is attached hereto as Exhibit 2.

22. On July 2, 2020, I sent an email to Mr. Paisley, All-Pro's counsel. A true and correct copy of that email is attached hereto as Exhibit 3.

1 | I declare under penalty of perjury under the laws of the United States that the foregoing is
2 | true and correct.
3 | Executed on July 21, 2020 in Kentfield, California.

*/s/ Dean M. Harvey*
Dean M. Harvey