KONING ZOLLAR LLP
Drew Koning (263082)
(drew@kzllp.com)
Blake Zollar (268913)
(blake@kzllp.com)
Shaun Paisley (244377)
(shaun@kzllp.com)
169 Saxony Road, Suite 115
Encinitas, CA 92024
Telephone: (858) 252-3234
Facsimile: (858) 252-3238

*Attorneys for Defendant*
*All-Pro Bail Bonds, Inc.*

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 19-CV-00717-JST<br><br>**DEFENDANT ALL-PRO BAIL BONDS, INC.'S REPLY IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS**<br><br>Date: Hearing vacated<br>Location: Courtroom 6, 2nd Floor<br>Judge: The Honorable Jon S. Tigar |

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ............................................................................................................. 2

    A.    Plaintiffs Do Not Even Argue That The Allegations All-Pro Identified As False Or Misleading Have The "Evidentiary Support" Required By Rule 11 ...... 2

    B.    Plaintiffs' Counsel Did Not Conduct A Reasonable Inquiry By Flatly Refusing To Consider Evidence Casting Doubt On The Truth Of Their Allegations. ......... 8

III. CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ............................................................................................................. 10

*Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*,
　203 F.3d 1028 (8th Cir. 2000) ................................................................................................ 5

*Frost v. LG Elecs. Inc.*,
　2017 WL 2775041 (N.D. Cal. June 27, 2017) ........................................................................ 8

*Hall v. Hamilton Family Ctr.*,
　2014 WL 1410555 (N.D. Cal. Apr. 11, 2014) ........................................................................ 7

*Hunt v. Sunny Delight Beverages Co.*,
　2018 WL 6786265 (C.D. Cal. Dec. 18, 2018) ..................................................................... 5, 9

*Ingram v. Phillips Petroleum Co.*,
　252 F. Supp. 674 (D.N.M. 1966) ............................................................................................ 4

*Levine v. Blue Shield of Cal.*,
　189 Cal. App. 4th 1117 (2010) ................................................................................................ 6

*Merna v. Cottman Transmission Sys., LLC*,
　2005 WL 8173859 (W.D. Wash. Dec. 16, 2005) .................................................................... 7

*Nat'l Marine Elec. Distribs., Inc. v. Raytheon Co.*,
　778 F.2d 190 (4th Cir. 1985) ................................................................................................... 4

*Orson, Inc. v. Miramax Film Corp.*,
　79 F.3d 1358 (3d Cir. 1996) ..................................................................................................... 4

*Plymouth Dealers' Ass'n of N. Cal. v. United States*,
　279 F.2d 128 (9th Cir. 1960) ................................................................................................... 3

*In re Ronco, Inc.*,
　838 F.2d 212 (7th Cir. 1988) ................................................................................................... 7

*Truesdell v. S. Cal. Permanente Med. Grp.*,
　293 F.3d 1146 (9th Cir. 2002) ................................................................................................. 7

*United States v. Beaver*, 515 F.3d 730 (7th Cir. 2008) .................................................................. 4

*United States v. Misle Bus. & Equip. Co.*,
　967 F.2d 1227 (8th Cir. 1992) ................................................................................................. 4

*United States v. Socony-Vacuum Oil Co.*,
　310 U.S. 150 (1940) ................................................................................................................ 3

## I. INTRODUCTION

In their Opposition to All-Pro's Rule 11 motion, Plaintiffs are unable to muster any argument that the factual allegations in the Second Consolidated Amended Complaint (Dkt. No. 94, "SCAC") that All-Pro identified as false or misleading have the "evidentiary support" required by Federal Rule of Civil Procedure 11(b)(3). Plaintiffs cannot defend the allegation that rebates are "unusual" or "rarely offer[ed]" (SCAC ¶¶ 4, 196) because it is false. They cannot defend the allegation that All-Pro is part of a cartel monitoring and stamping out rebating, because it is groundless. (SCAC ¶ 196.) And they cannot defend the allegation that the conspiracy "worked exactly as intended" on December 25, 2016 when All-Pro did not give Plaintiff Crain a rebate (SCAC ¶ 379) because, given that a majority of bail purchasers that same day received rebates from All-Pro, it is grossly misleading.

Instead, Plaintiffs insist that, notwithstanding the total lack of evidentiary support for these allegations, they have not violated Rule 11 because the SCAC adequately alleges All-Pro's participation in a price-fixing conspiracy. But making false allegations without a reasonable inquiry violates Rule 11(b)(3) regardless of whether the surrounding allegations add up to a viable claim. And in any event, while Plaintiffs claim to have "abundant circumstantial evidence" supporting the claim that All-Pro joined in an anti-rebating conspiracy, the only evidence specific to All-Pro amounts to (a) All-Pro not providing Plaintiff Crain with a rebate (while providing most other purchasers with one that same day), and (b) statements on All-Pro's website that it is required by law to charge approved rates. This Court has already held that such allegations do not add up to a plausible conspiracy claim.

Plaintiffs' argument that they conducted the "reasonable inquiry" required by Rule 11(b)(3) before filing the SCAC fares no better. Plaintiffs try to justify their refusal to even look at a random sample of rebating information that would show the extent of All-Pro's rebating by arguing that the frequency of rebating is "irrelevant." But the counterintuitive assertion that All-Pro's rebating, no matter how frequent, has no relevance to whether it entered into an agreement not to rebate is, unsurprisingly, not an accurate statement of the law. Further, Plaintiffs' attempt to portray themselves as diligently reviewing all information All-Pro presented to them rewrites history. If

Plaintiffs had actually conducted a serious assessment of whether their allegations had evidentiary support, they would have reviewed and considered the random sample of rebating information All-Pro repeatedly offered, a step that would not have prejudiced Plaintiffs one bit. Instead, Plaintiffs' counsel—knowing that the information would only have made their claim that All-Pro conspired to prevent rebating all the more implausible—repeatedly refused the offer, taking the all-or-nothing position that if it could not see years' worth of rebating data, it would not look at any rebating data at all.

All-Pro's motion should be granted.

## II. ARGUMENT

### A. Plaintiffs Do Not Even Argue That The Allegations All-Pro Identified As False Or Misleading Have The "Evidentiary Support" Required By Rule 11.

Unable to defend their allegations against All-Pro, Plaintiffs' Opposition ignores them entirely. As All-Pro explained in its Motion, Plaintiffs' allegations that rebating is "unusual" or "rare[]" (SCAC ¶¶ 4, 196) have no evidentiary support. Over half of bail bond purchasers on December 25, 2016—the same day that Plaintiff Crain purchased her bond—received a rebate from All-Pro. (Dkt. No. 113-1, Ex. 1.) On two other randomly selected days, fifty out of eighty-two total bail bond purchasers (about 60%) received rebates. (*Id.*, Ex. 7.) And when given the opportunity to review a random sample of rebating data from additional dates of their choice, Plaintiffs refused, likely realizing that doing so would only have provided further confirmation of the falsity of the SCAC's allegations. (*Id.*, Exs. 3-4.) In their Opposition, Plaintiffs do not even acknowledge All-Pro's argument that these allegations are false or misleading, much less argue that they have the "evidentiary support" required to comply with Rule 11(b)(3).

Similarly, Plaintiffs have alleged that All-Pro, together with other defendants, carefully monitored the rebating practices of other bail agents, and on the "rare[]" occasion that "any rebating" occurred, reported that practice to the cartel so that steps could be taken to "reduce competitive rebating as much as possible." (SCAC ¶ 196.) Given that the evidence shows that All-Pro itself rebates, the allegation that it reports "any rebating" in the industry to a cartel in order to eliminate rebates is nonsensical. Again, Plaintiffs' response is silence, neither defending the allegation as true,

nor arguing that it has a shred of evidentiary support.

In addition, as All-Pro explained in the Motion, Plaintiffs' allegation that the conspiracy "worked exactly as intended" on December 25, 2016 when Plaintiff Crain did not receive a rebate is grossly misleading because Plaintiff Crain's experience was the exception, not the rule, as a majority of other purchasers that same day received rebates. (Dkt. No. 113 ("Mot.") at 8.) Again, Plaintiffs ignore this argument, making no effort to argue that this allegation has evidentiary support.

With no evidence to point to that would satisfy Rule 11(b)(3), Plaintiffs nonetheless make various arguments in an effort to avoid sanctions. All of them are unavailing. First, Plaintiffs cite to two lines of cases for the proposition that the frequency with which All-Pro rebates is "irrelevant" to whether it participated in a price-fixing conspiracy as a matter of "black letter law." (Dkt. No. 119 ("Opp.") at 1, 13-14.) The first line of cases holds that a failure to "eliminate all competition" does not preclude liability for conspiracy, and so evidence that parties competed in "some respects" or engaged in "competition of other kinds" does not defeat a conspiracy claim. *See* Opp. at 13-14; *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 220-21 (1940) (fact that there was some competition in spot markets did not defeat conspiracy claim where the conspiracy curtailed competition in other ways); *Plymouth Dealers' Ass'n of N. Cal. v. United States*, 279 F.2d 128, 132 (9th Cir. 1960) (where conspiracy was simply to use fixed uniform pricing list as an agreed starting point, fact of price cutting or other kinds of competition did not defeat conspiracy claims).[1] But the evidence All-Pro has presented does not show it competing only in "some respects" or engaging in "competition of other kinds." Instead, All-Pro was providing significant rebates to bail bond

---

[1] Plaintiffs argue that by not citing this case law in its Rule 11 brief, All-Pro ignored "controlling authority" and itself violated Rule 11. (Opp. at 1-2.) That assertion is baseless. As explained above, cases holding that "some competition" does not defeat a conspiracy has no bearing on whether Plaintiffs have violated Rule 11(b)(3) by making false and misleading statements about All-Pro's rebating practices. In addition, All-Pro can hardly be accused of failing to "disclose" this irrelevant case law, having attached the party correspondence where Plaintiffs cited it in support of this same argument. (Dkt. No. 113-1, Exs. 2 & 4.) Similarly, the fact that All-Pro did not cite a case arising in the antitrust context in its Rule 11 motion does not render its motion not "warranted by existing law," as Plaintiffs argue. (Opp. at 1-2.) Because it is a Rule 11 motion based on false and misleading allegations, All-Pro cited numerous analogous Rule 11 cases to support its argument.

purchasers—the *very competition* Plaintiffs are alleging the conspiracy was designed to prevent. Plaintiffs have so convinced themselves that All-Pro conspired to fix prices that they have blinded themselves to the obvious: that where a party does precisely what the alleged conspiracy was designed to prevent, that is evidence that the party is not a member of the conspiracy. *See Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1368 (3d Cir. 1996) (antitrust claim based on alleged refusal to grant first-run licenses to plaintiff failed where "the evidence is to the contrary; [plaintiff] received a first-run license from Miramax"); *Nat'l Marine Elec. Distribs., Inc. v. Raytheon Co.*, 778 F.2d 190, 193 (4th Cir. 1985) (holding that evidence that Raytheon's dealers competed with each other and with dealers who sold competing brands of similar products "refute[d] the charge that Raytheon conspired with one or more dealers to terminate National for the purpose of restraining price competition"); *Ingram v. Phillips Petroleum Co.*, 252 F. Supp. 674, 679 (D.N.M. 1966) (dismissing antitrust claims against Shell where its pricing policies were "inconsistent with plaintiffs' conspiracy count").

The other line of cases Plaintiffs cite provides that evidence of "occasional cheating" does not preclude the possibility of participation in a conspiracy. (Opp. at 13-14, citing *United States v. Beaver*, 515 F.3d 730, 739 (7th Cir. 2008) and *United States v. Misle Bus. & Equip. Co.*, 967 F.2d 1227, 1231 (8th Cir. 1992).) Plaintiffs rely on this case law to argue that even if All-Pro rebated frequently, that would simply be All-Pro cheating on the conspiracy, and so the evidence would be "irrelevant" to All-Pro's liability for price-fixing. (*Id.*)[2] To cheat on a conspiracy, however, one must first join it. And frequent rebating by All-Pro is evidence that it never joined an anti-rebating conspiracy in the first place, especially given the complete absence of evidence that All-Pro attended any meetings where it would have had the opportunity to conspire or that it was a member of the trade associations through which the conspiracy allegedly operated. (*See* Dkt. No. 112 at 38.) Indeed, this Court has already dismissed the conspiracy claims against All-Pro once, noting that

---

[2] The fact that these cases hold that "occasional" cheating does not preclude participation in a conspiracy only serves to bolster All-Pro's position—rejected by Plaintiffs—that the frequency of rebating is in fact a relevant consideration. Plaintiffs, however, refused to review rebating data that would have shown whether All-Pro's rebating was occasional or more frequent.

4

Plaintiffs' "thin[]" allegations in the Consolidated Amended Complaint ("CAC"), even when accepted as true, did not state a claim that All-Pro joined or participated in a price-fixing conspiracy. (Dkt. No. 91 at 26.)

"[A] litigant may not proceed by first assuming a conspiracy and then explaining the evidence accordingly." *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1033 (8th Cir. 2000). Yet that is exactly what Plaintiffs have done here. Plaintiffs have made their minds up that All-Pro is liable for conspiring to suppress rebates, and no amount of evidence of rebating will change that predetermined conclusion.

Second, Plaintiffs fault All-Pro for "ignoring every allegation in the SCAC apart from those regarding the extent to which All-Pro provided rebates to Class Members," insisting that the Court must view the complaint as a whole to determine whether there is a "plausible basis" to infer participation in a conspiracy. (Opp. at 12.) Plaintiffs' position appears to be that they are free to include false, unsupported allegations about rebating in their complaint without violating Rule 11, so long as it is conceivable that they could piece together a viable complaint without having made those misrepresentations to the Court. But that is not how Rule 11 works. If Plaintiffs have made allegations with no evidentiary support (and without having made a reasonable inquiry), they have violated Rule 11(b)(3). *See Hunt v. Sunny Delight Beverages Co.*, 2018 WL 6786265, at *5 (C.D. Cal. Dec. 18, 2018) (holding that plaintiff's misrepresentation of the contents of a product label was sanctionable under Rule 11, but striking the complaint without prejudice because "just as the Court does not sift through the First Amended Complaint to determine if any allegations are divorced from Plaintiffs' misconduct and retain merit, neither does [it] wade into the merits to find that each and every claim is forever prejudiced by the newly-revealed facts"). While All-Pro believes that the allegations as a whole do not in fact provide a "plausible basis" to infer All-Pro's participation in an anti-rebating conspiracy, that question will be addressed when the Court decides Defendants' pending Rule 12(b)(6) motion.

In any event, Plaintiffs' assertion that, setting aside the false rebating allegations, there is "circumstantial evidence" supporting a claim that All-Pro "joined the alleged conspiracy" (Opp. at 12) requires rewriting the SCAC. Besides allegations about other bail industry members or the bail

industry writ large, this circumstantial evidence consists of statements on All-Pro's website about how it is legally required to charge the approved rate, which, while accurate, Plaintiffs contend are misleading. (*Id.* at 3-5.) Plaintiffs claim that these website statements evidence All-Pro's participation in the conspiracy, repeatedly describing the conspiracy as an "agree[ment] not to advertise prices below approved rates" or to "refrain[] from advertising rebates." (*Id.* at 12, 13.) Reframing the conspiracy as an agreement to suppress the communication of information to consumers about the availability of rebates to consumers, and nothing more, allows Plaintiffs to assert that evidence of All-Pro's rebating is consistent with All-Pro's participation in a conspiracy. But the conspiracy Plaintiffs actually allege in the SCAC is a conspiracy to *prevent rebating*. (*See* SCAC ¶ 150 (alleging that the "Conspiracy line" is "no rebates"); SCAC ¶ 393 (describing the conspiracy as an agreement to "artificially increase the prices of bail bonds in California by . . . suppressing rebating").) As the SCAC makes clear, suppressing advertising was just one means by which the alleged conspiracy achieved its overall goal of suppressing rebating. (*See* SCAC ¶ 6 (alleged agreement was "to discourage and suppress rebating, *including* suppressing the advertisement of rebates") (emphasis added).) Indeed, this Court understood the alleged conspiracy to be an "agreement not to rebate" or "not to offer rebates." (Dkt. No. 91 at 12, 16, 19.) Accordingly, even if the overall plausibility of the Complaint were a relevant consideration on a Rule 11 motion, the fact that All-Pro, contrary to Plaintiffs' allegations, rebated regularly in defiance of the conspiracy's purposes, renders the assertion that All-Pro joined or participated in the alleged agreement not to rebate implausible.[3]

Third, Plaintiffs claim that, even though the SCAC creates the impression that All-Pro rarely, if ever, rebates, Plaintiffs were not required to disclose to the Court the extent of All-Pro's rebating

---

[3] In addition, while Plaintiffs can conceive of no reason why bail agents might independently decide not to advertise the availability of rebates, it is rational for a seller not to advertise the lowest price at which it is willing to offer a product or service. *See Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1132 (2010) (rejecting claim that insurer had a "duty to disclose to a purchaser of its goods or services the lowest price that [it] is willing to accept for those goods or services," and noting that the plaintiffs "have not cited a single case in which a court has concluded that an insurer, or any other entity, has" such a duty).

because All-Pro's rebating is "contested." (Opp. at 15.) But the fact that All-Pro has provided rebates to its customers is not "contested"; it has presented business records showing significant rebating on both the day that Plaintiff Crain obtained her bond, and on two other randomly selected dates. (Dkt. No. 113-1, Exs. 1 & 7.) And Plaintiffs, who previously told the Court that All-Pro "refuses to [rebate]" (Dkt. No. 68 at 6), now concede that this statement to the Court was false. (Opp. at 12 (disavowing claim that "All-Pro *never* offered rebates").)

Instead, Plaintiffs seem to be "contesting" that All-Pro rebated consistently or frequently. But Plaintiffs' argument that three days' worth of data is not enough to assess the frequency of All-Pro's rebating (Opp. at 16) rings hollow given that All-Pro offered Plaintiffs a random sample of rebating data from dates of their choice, and Plaintiffs flatly refused to look at it. And in any event, Plaintiffs had enough information to know that their allegations in the SCAC were misleading—for example, when they alleged that All-Pro "rarely" rebated and that the conspiracy "worked exactly as intended" when Plaintiff Crain purchased a bond (SCAC ¶¶ 196, 379), they knew that more than half of bail bond purchasers that same day received rebates.

While Plaintiffs state that compliance with Rule 11 does not require them to include unhelpful information in the complaint (Opp. at 16), the law is clear that a litigant violates Rule 11 where it omits known, relevant facts and thereby renders its pleading, motion, or other paper misleading. (*See* Mot. at 8 (citing cases).) Plaintiffs' efforts to distinguish the cases requiring such candor are unavailing. While Plaintiffs say that this case is unlike *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1154 (9th Cir. 2002) and *Hall v. Hamilton Family Ctr.*, 2014 WL 1410555, at *10 (N.D. Cal. Apr. 11, 2014) because in those cases, the plaintiffs were in possession of facts that affirmatively disproved their claims (Opp. at 16-17), Plaintiffs here *are* in possession of (or were offered and refused to look at) information showing that the allegations in the SCAC are false or misleading. And while Plaintiffs suggest that *Merna v. Cottman Transmission Sys., LLC*, 2005 WL 8173859, at *6 (W.D. Wash. Dec. 16, 2005) and *In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) are distinguishable on the basis that the concealed facts in those cases were "procedural" (Opp. at 16-17), there is no rule that a plaintiff must disclose procedural facts, but is free to conceal substantive facts from the Court.

7

Finally, the fact that Plaintiffs do not even argue that any of the challenged factual allegations in the SCAC have the requisite evidentiary support under Rule 11(b)(3) distinguishes this case from *Frost v. LG Elecs. Inc.*, 2017 WL 2775041 (N.D. Cal. June 27, 2017), which Plaintiffs rely upon in their Opposition. (Opp. at 14.) There, the plaintiffs alleged that electronics manufacturers entered into an agreement not to poach each other's employees in violation of antitrust laws. *Frost v. LG Elecs. Inc.*, 2017 WL 2775041, at *1. Defendant LG brought a Rule 11 motion based in part on LinkedIn pages showing that there were employees who worked for both LG and Samsung. *Id.* Plaintiffs, however, had countervailing evidence in support of their claims, including an email from a recruiter stating that "I'm not supposed to poach LG for Samsung!!! Sorry! The two companies have an agreement that they won't steal each other's employees." *Id.* Accordingly, the court rejected the Rule 11 motion, noting that the evidence, while perhaps anecdotal, "still provides some factual support for Plaintiffs' claims," and that plaintiffs were therefore entitled to make the decision to proceed with their claims. *Id.* at *3. Here, by contrast, Plaintiffs have identified no evidentiary support for their allegations about All-Pro's rebating.

The bottom line is that Plaintiffs have made false or misleading allegations about All-Pro's rebating and, given the opportunity, they have been unable to provide any evidentiary support for those claims. All-Pro has thus satisfied the first element of a Rule 11(b)(3) violation: that the challenged allegations are factually baseless.

**B. Plaintiffs' Counsel Did Not Conduct A Reasonable Inquiry By Flatly Refusing To Consider Evidence Casting Doubt On The Truth Of Their Allegations.**

In contending they conducted the requisite reasonable inquiry before filing the SCAC, Plaintiffs seek to shift the focus away from their refusal to consider the rebating information All-Pro offered them before they filed the operative complaint. Instead, Plaintiffs ask the Court to look at the work they did before filing the original complaint and the CAC, which they assert spanned two years. (Opp. at 17-18.) But that Plaintiffs may have spent hundreds of hours researching the bail industry and preparing to assert claims against more than two dozen defendants in pleadings that have now been superseded has little to do with the challenged allegations they have asserted against All-Pro in the SCAC.

The relevant question here is whether Plaintiffs conducted a "reasonable inquiry" when they refused to consider information proffered by All-Pro before making the allegations against All-Pro in the operative complaint. *See, e.g.*, *Hunt*, 2018 WL 6786265, at *4 (analyzing whether plaintiff violated Rule 11(b)(3) by refusing to consider information provided by the defendant before plaintiff filed her amended complaint). As All-Pro explained in its Motion, refusing to even look at, much less consider, relevant information offered by an adversary fails to satisfy the reasonable inquiry requirement under Rule 11(b)(3). (*See* Mot. at 9-11 (discussing cases).) Here, when All-Pro approached Plaintiffs with information about its rebating, Plaintiffs were under the mistaken impression (notwithstanding two years of research) that All-Pro "refuses to [rebate]." (Dkt. No. 68 at 6.) Getting the facts wrong once, which resulted in Plaintiffs making a false statement to the Court, should have given Plaintiffs pause. It did not. Plaintiffs refused All-Pro's offer of more information and proceeded to file the SCAC, which contained false or grossly misleading allegations about the extent of All-Pro's rebating. Rather than take the time to determine whether they actually had evidentiary support for their claims, Plaintiffs refused to consider any possibility other than that All-Pro participated in an anti-rebating conspiracy. Indeed, even now, in their Rule 11 Opposition, Plaintiffs assert that even if All-Pro's assertions regarding rebates are accurate, *i.e.*, that All-Pro has rebated consistently and frequently, these rebates amount to "nothing more than under-the-table competition while All-Pro otherwise complied with the conspiracy out in the open." (Opp. at 13.) The basis for Plaintiffs' confident pronouncement that frequent rebating would be evidence of secret competition, rather than evidence that All-Pro is not a co-conspirator, is unexplained. Plaintiffs' certainty that All-Pro participated in an anti-rebating conspiracy is unshakable, regardless of the facts.

Plaintiffs also defend their refusal to consider the random sample repeatedly offered by All-Pro as reasonable because, according to Plaintiffs, the frequency of All-Pro's rebating is irrelevant to whether it participated in a conspiracy not to rebate. As explained above, in Section II.A, far from being "black letter law" as Plaintiffs claim, it is not the law at all. Moreover, Plaintiffs can hardly take the position that the frequency of All-Pro's rebating is irrelevant, given that they have repeatedly relied upon the supposed *infrequency* of All-Pro's rebating in trying to convince the Court

that All-Pro joined the conspiracy. (*See* Dkt. No. 68 at 6 (stating falsely that All-Pro "refuses to [rebate]" in an effort to salvage the CAC); SCAC ¶ 4 (alleging that rebating is "unusual"); *id.* ¶ 196 (alleging that All-Pro "rarely offer[s] rebates to consumers, or at least do[es] so less frequently and in smaller amounts than they otherwise would have absent the anti-rebating conspiracy" and that when rebates are offered, it is reported to the cartel, which seeks to eliminate them).)

Finally, Plaintiffs assert that they conducted a reasonable inquiry before filing the SCAC because they "considered every assertion and piece of evidence All-Pro provided" and "sought more information" at every turn. (Opp. at 2, 19.) Those assertions are wrong. Plaintiffs repeatedly refused to even look at a random sample of rebating information, dismissing it as "irrelevant." (Dkt. No. 113-1, Exs. 2, 4.) And only after All-Pro actually followed through on serving a Rule 11 motion did Plaintiffs scramble to try to create a record that they "carefully considered" information. (Opp. at 18.)

The whole point of All-Pro approaching Plaintiffs at the pleading stage before the commencement of discovery was to try to avoid the burdens of proceeding with antitrust discovery on meritless claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (discussing the significant expense associated with antitrust discovery). Plaintiffs, however, responded to the offer of a random sample of rebating data first by rejecting it outright, and then, after the Rule 11 motion was served, by saying that they would need to see years' worth of rebating data. (Dkt. No. 113-1, Exs. 4 & 8.) Given that Plaintiffs had already dismissed the frequency of All-Pro's rebating as irrelevant, All-Pro sought assurances that Plaintiffs, in making this burdensome, all-or-nothing demand, now considered this information relevant to All-Pro's liability, and that it was not just an effort to try to create a better record for them in opposing this Rule 11 motion. (Dkt. No. 113-1, Exs. 7 & 8.) Plaintiffs refused to provide that assurance, stating instead that they were seeking the information to assess "impact and damages," *i.e.*, for discovery purposes, not to assess whether there was a sufficient evidentiary basis to name All-Pro as a defendant. (*Id.*) Indeed, to confirm whether Plaintiffs had really changed their minds and were now genuinely open to considering any evidence All-Pro offered, All-Pro reiterated its offer to provide Plaintiffs with a random sample of rebating

information from dates of Plaintiffs' choice.  (Dkt. No. 113-1 ¶ 10 & Ex. 8.)  Plaintiffs again declined.  (*Id.*)

Because Plaintiffs refused to consider relevant information that casts significant doubt on the viability of their claims, they did not conduct the "reasonable inquiry" required by Rule 11.

## III. CONCLUSION

For all the foregoing reasons, All-Pro's motion for sanctions should be granted.  The allegations in the SCAC against All-Pro should be stricken, and All-Pro should be awarded its reasonable attorneys' fees and costs.

Dated: July 28, 2020

KONING ZOLLAR LLP

/s/ Shaun Paisley

Drew Koning (263082)
Blake Zollar (268913)
Shaun Paisley (244377)

*Attorneys for Defendant All-Pro Bail Bonds, Inc.*