1  COOLEY LLP
   MICHAEL A. ATTANASIO (151529)
2  (mattanasio@cooley.com)
   4401 Eastgate Mall
3  San Diego, CA 92121-1909
   Telephone: (858) 550-6000
4  Facsimile: (858) 550-6420

5  BEATRIZ MEJIA (190948)
   (mejiab@cooley.com)
6  TIMOTHY W. COOK (Mass. Bar No. 688688)
   (*Admitted Pro Hac Vice*)
7  (tcook@cooley.com)
   MAX SLADEK DE LA CAL (324961)
8  (msladekdelacal@cooley.com)
   3 Embarcadero Center, 20th Floor
9  San Francisco, CA 94111-4004
   Telephone: (415) 693-2000
10 Facsimile: (415) 693-2222

11 *Attorneys for Defendant Seaview Insurance Company*

12

13

14                UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                     OAKLAND DIVISION

17

18 IN RE CALIFORNIA BAIL BOND          Master Docket No. 19-cv-00717-JST

19 ANTITRUST LITIGATION
                                       CLASS ACTION
20
                                       DEFENDANT SEAVIEW INSURANCE
21 THIS DOCUMENT RELATES TO:           COMPANY'S MEMORANDUM OF POINTS
                                       AND AUTHORITIES IN SUPPORT OF
22 ALL ACTIONS                         DEFENDANTS' JOINT MOTION TO
                                       DISMISS
23
                                       Judge:         Hon. Jon S. Tigar
24                                     Hearing Date:  September 1, 2022
                                       Courtroom:     2, 4th Floor
25                                     Time:          2:00 p.m.
                                       Trial Date:    Not Set
26

27

28

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................ 1

I.      PLAINTIFFS STILL ALLEGE NO SPECIFIC FACTS REGARDING SEAVIEW'S
        PARTICIPATION IN THE CONSPIRACY ............................................................................ 1

II.     PLAINTIFFS SEEK TO IMPROPERLY IMPUTE TWO JINN'S CONDUCT TO
        SEAVIEW ................................................................................................................................ 3

III.    CONCLUSION ........................................................................................................................ 4

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AmeriCare MedServices, Inc. v. City of Anaheim,*
No. 8:16-cv-1703, 2017 WL 5592892 (C.D. Cal. Apr. 21, 2017)...........................................4

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................................2

*In re Cal. Title Ins. Antitrust Litig.,*
No. C 08-01341, 2009 WL 1458025 (N.D. Cal. May 21, 2009) ...........................................4

*In re Citric Acid Litig.,*
191 F.3d 1090 (9th Cir. 1999) ..........................................................................................3

*In re German Auto. Mfrs. Antitrust Litig.,*
392 F. Supp. 3d 1059 (N.D. Cal. 2019) .............................................................................3

*In re Graphics Processing Units Antitrust Litig.,*
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .............................................................................3

*Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.,*
No. 12-cv-3012, 2014 WL 560462 (D. Colo. Feb. 13, 2014)................................................4

*United Mine Workers of Am. v. Pennington,*
381 U.S. 657 (1965)...........................................................................................................4

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| **CDI** | California Department of Insurance |
| **SCAC** | Second Consolidated Amended Complaint (ECF 94) |
| **Seaview** | Seaview Insurance Company |
| **SFAA** | Surety and Fidelity Association of America |
| **TCAC** | Corrected Third Consolidated Amended Class Action Complaint (ECF 281-01) [*All references herein to the TCAC noted as* ¶] |
| **Two Jinn** | Two Jinn, Inc. (d.b.a. Aladdin) |

Cooley LLP
Attorneys At Law
San Diego

-iii-

Def. Seaview's Mem. iso Mot. to Dismiss
Master Docket No. 19-cv-00717-JST

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court should dismiss the TCAC against Seaview because it fails to allege a single fact regarding Seaview's agreement to join, participate, or play a role in a conspiracy to fix bail bond premiums and suppress bail agents from offering rebates that allegedly has spanned the past 18 years. This dearth of factual allegations is not surprising given that Seaview only entered the California bail bond market in 2012,[1] well after the alleged conspiracy was hatched in 2004. Despite Defendants' vast document production since the last complaint was filed, Plaintiffs have not alleged any specific acts or communications by Seaview and instead rely on (1) unsupported conclusions concerning industry-wide events that largely predate Seaview's market entry, and (2) alleged actions by Two Jinn, an entity that Plaintiffs now concede is ***not*** a member of the alleged conspiracy.  Plaintiffs' claims against Seaview should be dismissed a third—and final—time.[2]

### I. PLAINTIFFS STILL ALLEGE NO SPECIFIC FACTS REGARDING SEAVIEW'S PARTICIPATION IN THE CONSPIRACY

The Court dismissed the SCAC because Plaintiffs failed to allege facts sufficient "to demonstrate each surety Defendant's role in the alleged conspiracy." ECF 159 at 20 (citations omitted). Cataloguing the deficiencies in the prior complaint, the Court noted that Plaintiffs failed to allege "how most surety Defendants joined the conspiracy" or "how or when the surety Defendants agreed to seek approval for a uniform premium rate." *Id*. at 19-20. Nor did Plaintiffs allege any "communications between and among defendants" or "specific information about the group and bilateral meetings by which the alleged price-fixing conspiracy was effectuated." *Id*. at 20.

The TCAC fails this same test. None of Plaintiffs' "new" allegations concerning alleged participation in the conspiracy pertain to Seaview. In fact, other than alleging that Seaview was a member of the SFAA (as it did in the previously dismissed complaints), the TCAC pleads nothing relevant to Seaview. Critically, the TCAC ***does not***:

- Allege any facts as to how Seaview ***joined*** the conspiracy;

---

[1] Seaview filed its "New Program Filing" with the CDI on July 29, 2011.  *See* ECF 111, Ex. 39; ECF 111-1 at 219; ECF 159 at 6-6 (Court previously taking judicial notice of New Program Filing).
[2] Seaview joins Defendants' Joint Motion to Dismiss (ECF 284) and submits this memorandum in support of Defendants' motion, along with Two Jinn's Administrative Motion to Seal and the accompanying Declaration of LaCoby Phillips ("Phillips Decl.").

- Allege how or when Seaview purportedly **agreed** to a uniform premium rate;
- Identify **any Seaview employee**;
- Identify **Seaview's role** in the conspiracy;
- Reference a single **Seaview communication, much less a communication with other Defendants**;
- Contend that **Seaview ever communicated** with the conspiracy's "ringleader," Bill Carmichael;
- Allege that **Seaview attended any trade association meetings or bilateral meetings**;
- Allege that Seaview played any role in the alleged "Common Understanding to Suppress Rebates," *see* ¶¶ 130-64;
- Assert that Seaview paid any dues to SFAA (*compare, e.g.,* ¶ 183 (alleging AIA entities paid dues to SFAA), ¶ 203 (alleging ACIC paid dues to SFAA), *with* ¶ 281 (no allegation that Seaview paid dues to SFAA).[3]

Plaintiffs generally allege that the Surety Defendants agreed to conspire at various trade association meetings attended by some but not all Surety Defendants. Even if the Court were to credit those conclusory allegations, however, they still fail as to Seaview because the TCAC does not allege that Seaview attended *any* of these trade association meetings.

**SFAA**: The TCAC alleges that the conspiracy to fix premium rates was hatched at some unspecified SFAA meetings between 2003 and February 2011. ¶¶ 117-120. But these alleged meetings **all** predate Seaview's market entry in January 2012, as well as Seaview's CDI New Program Filing in July 2011. Unsurprisingly, Plaintiffs do not allege that Seaview attended *any* of these meetings. *See* ¶¶ 116-119. Instead, the TCAC concludes that Seaview was "kept abreast of [the SFAA's] activities and discussions" at these meetings. ¶ 119. This is implausible as Seaview did not even operate in California at the time of the last alleged SFAA meeting in February 2011. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, (2009) (holding that "whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense"). The TCAC also

---

[3] Defendants' Joint Motion to Dismiss addresses Plaintiffs' repackaged "data sharing" allegations (ECF 284 at 13) and Seaview does not repeat those arguments here. But even if the Court were to credit those allegations, they would still fail as to Seaview because Plaintiffs allege that the SFAA pricing reports were sent to "dues-paying Defendants," ¶ 122, and the TCAC does not allege that Seaview paid any dues to SFAA.

never alleges **how** Seaview was "kept abreast" of these meetings (particularly since it had not yet entered the California market). Nor does it allege how or when Seaview reached a "common understanding" with the other Defendants. *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) (dismissing claims in part based on industry conferences that made "no allegations that representatives from [defendants] actually met or spoke with one another"); *In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1071-72 (N.D. Cal. 2019) (dismissing claims because plaintiffs "almost never identif[ied] what was agreed to in these meetings and instead only vaguely refer[red] to 'clandestine agreements'").

**_Other Trade Associations_**: Plaintiffs' allegations about other trade association meetings say even less. The TCAC broadly alleges that a multi-pronged, industry-wide conspiracy was formed through various other trade groups. *See* ¶¶ 125-28, 134-151. But Plaintiffs do not allege that Seaview was a member of these groups, attended any of their meetings, or communicated with any of their constituents.

Absent specific facts regarding Seaview's role in the conspiracy, the TCAC simply recycles its previous allegations regarding Seaview's rate filings and baldly concludes that Seaview used its SFAA membership "to coordinate its participation in the conspiracy." ¶ 281. But this Court already found such allegations insufficient because trade association membership alone is insufficient to allege participation in a conspiracy. *See* ECF 91 at 25. A viable price-fixing claim requires specific allegations of an agreement reached by each defendant and their participation in the agreement. *See* ECF 159 at 20-21. The TCAC plainly does not meet this standard. For this reason, the claims against Seaview should again be dismissed and this time with prejudice.

## II. PLAINTIFFS SEEK TO IMPROPERLY IMPUTE TWO JINN'S CONDUCT TO SEAVIEW

Given Plaintiffs' lack of allegations as to **_Seaview_**, the TCAC tries to tie Seaview to the conspiracy by pointing to **_Two Jinn_**—a separate entity and dismissed defendant.

Plaintiffs allege that Two Jinn's CEO, Rob Hayes, made a "failed attempt on April 13, 2010 to persuade CDI to require a 'fixed 10% bond rate.'" ¶¶ 129, 282; *see also* Declaration of Darryl Anderson at ¶ 11, Ex. 10. This allegation fails to save the claims against Seaview for at least three reasons. **_First_**, as a matter of law, Plaintiffs cannot bootstrap allegations against Two Jinn to impute

antitrust liability to Seaview. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) (participation in antitrust conspiracy could not be imputed to defendants who did not in fact engage in alleged conduct of others); *In re Cal. Title Ins. Antitrust Litig.*, No. C 08-01341, 2009 WL 1458025, at *7 (N.D. Cal. May 21, 2009) (dismissing parent company from price-fixing conspiracy based on allegations attributed to its subsidiary). ***Second***, this purported April 2010 attempt to lobby the CDI ***predates*** Seaview's existence in the California bail market, rendering Seaview's involvement particularly implausible. ¶ 278. ***Third***, and most fundamentally, even if Hayes' conduct could be imputed to Seaview (which it cannot), an "attempt[] . . . to persuade CDI," ¶ 282, is a quintessential "effort to influence public officials" from which antitrust liability cannot arise as a matter of law "regardless of intent or purpose." *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965); *see AmeriCare MedServices, Inc. v. City of Anaheim*, No. 8:16-cv-1703, 2017 WL 5592892, at *4 (C.D. Cal. Apr. 21, 2017) (dismissing antitrust claim based on defendant's "direct[] petition[ing]" of city government); *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-cv-3012, 2014 WL 560462, at *6 (D. Colo. Feb. 13, 2014) (dismissing antitrust claims against multiple defendants and holding that petitioning state regulatory agency could not form the basis of liability).

Plaintiffs also improperly conflate Seaview and Two Jinn concerning the rebating aspect of the alleged conspiracy. The TCAC cites and incorporates by reference an Aladdin sales manual to claim that "Aladdin instructed its agents that '[a]ll negotiations should begin' with the applicable approved rate, and to never raise the concept of a rebate with a customer." ¶ 286. This allegation fails because it again cannot be imputed to Seaview and also because the manual clearly demonstrates that Aladdin ***does compete*** on premium price by offering customers rebates below 8% and expressly allowing agents to inform customers of its rebating practices. *See* Phillips Decl., Ex. A at TWOJINN-00001562 (agents can offer rebates down to 7% "if rebate qualifiers are present" and the agent "secure[s] rebate authorization"). In short, Plaintiffs' cannot save their claims against Seaview by relying on equally thin and legally flawed allegations against non-defendant Two Jinn.

## III. CONCLUSION

For the foregoing reasons, and those explained in Defendants' Joint Motion to Dismiss, the Court should dismiss all claims against Seaview with prejudice.

1    Dated: May 26, 2022                    Respectfully submitted,

2
                                            By: /s/ *Beatriz Mejia*
3                                           Beatriz Mejia (190948)

4                                           COOLEY LLP
                                            MICHAEL A. ATTANASIO (151529)
5                                           BEATRIZ MEJIA (190948)
                                            TIMOTHY W. COOK (Mass. Bar No.
6                                           688688) (*Admitted Pro Hac Vice*)
                                            MAX SLADEK DE LA CAL (324961)
7
                                            *Attorneys for Defendant Seaview Insurance*
8                                           *Company*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28