# EXHIBIT B



# CBAA
### California Bail Agents Association

PO Box 1491
Antioch, CA 94509
877-314-1979
Fax 888-308-4797

**OFFICERS**

President
Vern Robles Dewitt
Carson

Vice President
Gloria Mitchell
Pomona

Secretary
Maggie Kreies
Long Beach

Treasurer
Anthony Armstrong, MA
Riverside

Parliamentarian
Marco LiMandri
San Diego

Chair of the Board
Topo Wallace
Los Gatos

**DIRECTORS**

Area One

Frank Simokaitis
Fullerton

Rob Brown
Lakeport

Area Two

Bill Armstrong
Los Angeles

Area Three

Holly Hoekstra
Redding

Cathy Lopez
Sacramento

Area Four

Joe Lombardo
Orange

Bonnie Merrick
Huntington Beach

Area Five

Glen Pierce
Bakersfield

Area Six

Topo Wallace
Los Gatos

Geri Campana
San Francisco

At Large

Fred Anselmitz
Dale Miller
Tem King

**EXECUTIVE DIRECTOR**
Rainy Robinson, MBA

# 2013 STANDARDIZE FORMS

## Thank You

## BAIL BOND PROJECT MEMBERS

- ACCREDITED
- AIA
- AMERICAN SURETY
- BANKERS INSURANCE
- BAIL USA
- FINANCIAL CASUALTY & SURETY
- HCC

- LEXINGTON NATIONAL
- LEXON
- PALMETTO
- ROCHE
- SUN
- UNIVERSAL FIRE/WILLIAMSBURG

**Highly Confidential**

CBAA000008537

# BAIL BOND APPLICATION AND AGREEMENT

You, the undersigned Defendant ("Defendant" or "you"), hereby represent and warrant that the following declarations made and answers given are true, complete and correct and are made for the purpose of inducing _____ ("Surety") to issue, or cause to be issued, bail bond(s) or undertaking(s) for you (singularly or collectively the "Bond"), using power of attorney number(s) (if known) _____, in the total amount of _____
Dollars ($_____) in the _____ Court of _____.

## 1. DEFENDANT'S NAME AND ADDRESS

Name _____   Nickname/Alias _____
     First       Middle        Last

Home Phone # _____ Cell Phone # _____ Work Phone # _____

Email _____

Current Home Address _____

How Long? _____  ☐ Rent or ☐ Own?  Landlord _____

Former Home Address _____

How Long? _____  ☐ Rent or ☐ Own?  Landlord _____

How long resided in current city? _____  How long in current state? _____

## 2. PERSONAL DESCRIPTION

Date of Birth _____  Where Born _____  Sex _____ Race _____
                                 (City & State)

Social Security # _____  Driver's License # _____  Issuing State _____

Height _____  Weight _____  Eye Color _____  Hair Color _____

Scars, Marks, Tattoos _____  Complexion _____  How Long in U.S.? _____

U.S. Citizen? ☐ Yes ☐ No  Nationality _____  Alien # _____

Any Medical Conditions/Disabilities _____

Union? _____  Local # _____  Military Service: Branch _____  Active? _____ Discharge Date _____

## 3. EMPLOYMENT

All Occupations for the past 5 years: _____

**Current Employer**
Name _____ How Long? _____ Position _____ Phone # _____
Supervisor's Name _____

**Most Recent Former Employer**
Name _____ How Long? _____ Position _____
Supervisor's Name _____ Phone # _____

**Next Most Recent Former Employer**
Name _____ How Long? _____ Position _____
Supervisor's Name _____ Phone # _____

## 4. MARITAL STATUS/CHILDREN: ☐ Married ☐ Divorced ☐ Separated ☐ Widowed ☐ Single ☐ Cohab

Spouse/girl/boyfriend's Name _____  How Long Married/together? _____
                First        Middle        Last

Address (if different) _____  Email _____

Home Phone # (if different) _____  Cell Phone # _____  Social Security # _____

Occupation _____  Employer _____  How Long? _____

Supervisor's Name _____  Work Phone # _____

| Child's Name | Date of Birth | School/Employer | Other Parent's Name |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

DRAFT

Highly Confidential                                                                              CBAA000008538

## 5. VEHICLE

Describe Auto: Year _____ Make _____ Model _____ Color _____ Plate # _____ State _____
Where Financed? _____ Amount Owed? _____
Insurance Agent's Name: _____ Insurance Agent's Phone # _____

## 6. ARREST INFORMATION

Date of Arrest _____ Booking Name (if different) _____ Arresting Agency _____
Jail Location _____ Booking # _____
Charges _____

Previous Arrests:     Charges                                    Date                    Where
_____
_____
_____

Pending Charges in
Other Counties    _____

Are you on parole/probation? ☐ Yes ☐ No    Parole/probation officer name and phone # _____
Are you now under any bond? ☐ Yes ☐ No    Have you ever failed to appear in court ☐ Yes ☐ No
Bonded before by _____ When? _____

## 7. ATTORNEY

Name and Firm _____ Phone # _____
Email _____ Amount of retainer _____

## 8. RELATIVES AND FRIENDS

Father's Name _____ Address _____ Home Phone # _____
Cell Phone # _____ Work Phone # _____ Employer _____
Email _____

Mother's Name _____ Address _____ Home Phone # _____
Cell Phone # _____ Work Phone # _____ Employer _____
Email _____

Other Relative/Friend's Name _____ Relation _____
Address _____ Home Phone # _____
Cell Phone # _____ Work Phone # _____ Employer _____

Other Relative/Friend's Name _____ Relation _____
Address _____ Home Phone # _____
Cell Phone # _____ Work Phone # _____ Employer _____

Other Relative/Friend's N_____ Relation _____
Address _____ Home Phone # _____
Cell Phone # _____ Work Phone # _____ Employer _____

## 9. MISCELLANEOUS

DRAFT

Highly Confidential                                                                                         CBAA000008539

## TERMS AND CONDITIONS

In consideration of Surety, through its producers, representatives or designees, issuing or causing to be issued the Bond, you agree to the following terms and conditions:

1. The premium is fully earned upon your release from custody. The premium is not refundable except as stated below.

2. Surety, as bail, shall have control and jurisdiction over you during the term for which the Bond is in effect and shall have the right to apprehend, arrest and surrender you to the proper officials at any time as provided by law. In the event your surrender is made prior to your failure to appear in court, and for reason other than as stated in paragraph 3, then you may be entitled to a refund of the bond premium if required by applicable law (if any) as stated in an attached addendum.

3. Unless otherwise provided by applicable law (if any) as stated in an attached addendum, the following events shall constitute a breach of your obligations to the Surety, and the Surety shall have the right to immediately apprehend, arrest and surrender you, and you shall have no right to any refund of premium whatsoever: (a) you depart the jurisdiction of the court without the prior written consent of the court and the Surety; (b) you move from your current address without prior written consent of the Surety or you fail to notify Surety of any material information; (c) you commit any act that constitutes reasonable evidence of your intention to cause a forfeiture of the Bond; (d) you are arrested and incarcerated for any other offense (other than a minor traffic violation); (e) you make any materially false statement in this application; (f) any indemnitor for you makes any materially false statement in the Indemnitor Application and Agreement; (g) your bail is increased; (h) any indemnitor requests that you be surrendered; (i) there is a material increase in the risk assumed by the Surety (as determined by the Surety in its sole and absolute discretion) including, by way of example but not limitation, any collateral or security given for the Bond depreciates in value or becomes impaired; (j) Other Conditions: _____.

4. You shall indemnify the Surety and keep the Surety indemnified and hold it harmless from and against any and all losses, demands, liabilities, fees and expenses relating to, or arising out of Surety's issuance or procurement of the Bond, including, but not limited to, the following: (a) the principal amount of any forfeiture or judgment on the Bond, plus any related court costs, interest and legal fees incurred, (b) a fugitive recovery fee if there is a forfeiture of the Bond (which fee is typically ten percent of the amount of the Bond for an in-state recovery), plus any out of pocket expenses, (c) any and all extradition costs that may be incurred to apprehend and return you, and (d) if a collection action is required, reasonable and actual attorneys' fees plus any other costs, expenses and/or assessments that may be incurred as a result of any forfeiture of the Bond subject to applicable law (if any) as stated in an attached addendum. The voucher, receipt or other evidence of any payment made by Surety or its producer, by reason of such suretyship, shall be conclusive evidence of such payment in any lawsuit against you both as to the propriety of such payment and as to the extent of your liability to Surety for such payment. Further, you will, upon demand, place with Surety the requisite funds to meet any such claim, demand, liability, attorneys' fees, expense or judgment, whether that demand is made before or after Surety has paid or advanced such funds.

5. To the maximum extent permitted by applicable law, you hereby waive any and all rights you may have under federal law (including, but not limited to, Title 2, Act-Freedom of Information Act, Title, Fair Credit Reporting Act) and any local or state law relating to Surety's obtaining and you consent to and authorize Surety to obtain, any and all private or public information and/or records concerning you from any party or agency, private or governmental (local, state, federal), including, but not limited to, credit reports, Social Security Records, criminal records, civil records, driving records, tax records, telephone records, medical records, school records, worker compensation records and employment records. You further authorize, without reservation, any party or agency, private or governmental (local, state, federal) in contact with you to furnish in accordance with applicable law any and all private and public information and records in their possession concerning you to Surety and direct that a copy of this document shall serve as evidence of said authorization. You hereby grant to Surety and its designees the right to enter your residence, or any other property that you own or occupy, without notice, at any time, for the purpose of locating, arresting, and returning you to custody, and subject to applicable law, you waive any and all causes of action connected therewith including, without limitation, torts of trespass and false imprisonment.

6. You agree that Surety may place a location tracking device on any vehicle owned or driven by you, at any time, without notice, and monitor the location of the vehicle through any available technology. You further agree that Surety may use location technologies to locate your whereabouts, device at any time during the period of your bail and any applicable remission period, and the Bond is conditioned upon your full compliance with the following terms and conditions: (a) Surety, at its discretion, will use network-based location technologies to find you; (b) this is the only notice you will receive for the collection of your location information; (c) Surety will retain location data only while the Bond is in force and during any applicable remission period; (d) Surety will disclose location information only to the courts as required by court order; (e) Surety and its licensed producers, designees and representatives will be the only persons with access to your location information; (f) YOU WILL NOT HAVE THE OPTION TO OPT-OUT OF LOCATION USE OR TRACKING DURING THE BAIL PERIOD; (g) all questions relating to location capability should be directed to Surety.

7. If you leave the State, subject to applicable law, you waive any right to extradition proceedings and consent to the application of such force as may be necessary to return you to Surety and the court where the Bond was posted.

8. You hereby acknowledge and agree that neither the Surety nor any of its agents, producers, designees or representatives has recommended or suggested any specific attorney or firm of attorneys to represent you in any capacity.

9. In the event any provision herein shall be deemed to exceed any applicable state or federal law, then such provision shall automatically be deemed to have been revised to comply with such law so as to provide Surety with the maximum protection from any loss or liability. The invalidity or unenforceability of any provision herein (or portion thereof) shall in no way effect the validity or enforceability of any other provision (or portion thereof). Surety may assign any of its rights herein or arising out of any of the transactions contemplated hereby to any party including, without limitation, any of the Surety's agents, producers, designees or representatives ("Assignee") without notice to or consent from you. Subject to any limitations imposed upon Assignee by Surety,

Highly Confidential                                                                                                                                    CBAA000008540

Assignee shall have the right to enforce in any action or proceeding any of Surety's rights herein or arising out of any of the transactions contemplated hereby, and you shall not, and expressly waives any right to, assert the claim or defense that Assignee does not have the right to enforce such rights in any such action or proceeding.

### ALABAMA RESIDENTS
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ARKANSAS RESIDENTS
Any person who knowingly presents a false or fraudulent claim for payment for a loss or bene??? ???nowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines ??? confinement in prison.

### FLORIDA RESIDENTS
Any person who knowingly and with intent to injure, defraud, or deceive any insurer ??? ???ement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of t?? third de???

### LOUISIANA, RHODE ISLAND & WEST VIRGINIA RESIDENTS
It is a crime to knowingly provide false, incomplete or misleading information ??? an in??rance com??? for the purpose of defrauding the company. Penalties may include imprisonment, fines or a d??? ??al o? ?nsurance benefits.

### MAINE, TENNESSEE, VIRGINIA & WASHINGTON RESIDENTS
It is a crime to knowingly provide false, incomplete or misleading info??? ??ation to an insurance company fo??? ??urpose of - defrauding the company. Penalties may include imprisonment, fin??? ??? ??enial of ins??rance benefits.

### MARYLAND RESIDENTS
Any person who knowingly or willfully presents a false or fraudulent cla??? ??? pa??? ??ent o??a loss or benefit ??r who knowingly or willfully presents false information in an application for insurance is guilty o??? ???e and may be subject to fines and confinement in prison.

### NEW JERSEY RESIDENTS
Any person who includes any false or misleading inform??? ??? an application for a??? ??rance policy is subject to criminal and civil penalties.

### NEW MEXICO RESIDENTS
ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRA??? ???NT CLAIM ?OR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORM???TION ??? AN ??? ???CA?ION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND ???RI??? ?AL PEN??? ???S.

### NEW YORK RESIDENTS
Any person who knowingly an??? ??th inten??? ??? fraud any insura??e company or other person files an application for insurance or statement of claim containing ??? materially ??? information, or ???nceals for the purpose of misleading, information concerning any fact material thereto, ???u??? ??? fraudulen??? ?surance act, which ??? a c?ime, and shall also be subject to a civil penalty not to exceed five thousand dollars and ??? ???ated va??? ?of the claim for eac??? ???h violation.

### OHIO RESIDENTS
Any person who, w??h ???ent to defrau??? ??? ??owing ??? ??? ???ating a fraud against an insurer, submits an application or files a claim contain??? ??? ??eptive sta??? ??t is guilty of ???s???ance fraud.

### OKLAHOM??? ?ESIDENT???
WARNIN??? Any person who k??? ???ly, and ??? ??tent ?o injure, defraud or deceive any insurer, makes any claim for the procee??? ??? insurance policy co??? ??g any f???  ??mplete or misleading information is guilty of a felony.

### PENNSYL??? ?A RESIDENTS
Any person w??? ??owingly and with i??? ??t to def???ud any insurance company or other person files an application for insurance or statement of cla??? ??taining any mate??? ?ly false information or conceals for the purpose of misleading, information concerning any fact material t??? ??? commits a fra??? ?lent insurance act, which is a crime and subjects such person criminal and civil penalties.

Signed, sealed and delivered _____ day of _____, 20_____

Signature of Defendant _____

| SURETY: | BAIL PRODUCER: [stamp must include name, address, phone no. and license no.] |
|---|---|
|  |  |

Highly Confidential        CBAA000008541

# INDEMNITOR APPLICATION AND AGREEMENT

You, the undersigned indemnitor ("Indemnitor" or "you"), hereby represent and warrant that the following declarations made and answers given are true, complete and correct and are made for the purpose of inducing _____ ("Surety") to issue, or cause to be issued, bail bond(s) or undertaking(s) (singularly or collectively the "Bond") for

_____ ("Defendant"), using power of attorney number(s) (if known)
First    Middle    Last

_____, in the total amount of _____ Dollars
($_____) in the _____ Court of _____.

## 1. INDEMNITOR NAME AND ADDRESS    RELATIONSHIP TO DEFENDANT _____

Name _____    Nickname/Alias _____
First    Middle    Last

Home Phone # _____ Cell Phone # _____ Work Phone # _____

Email _____

Current Home Address _____ How Long? _____
☐ Rent or ☐ Own?    Landlord _____

Former Home Address _____ How Long _____
☐ Rent or ☐ Own?    Landlord _____

## 2. PERSONAL DESCRIPTION

Date of Birth _____   Where Born _____ (City and State)   Sex _____ Race _____

Social Security # _____   Driver's Lic. # _____   Issuing State _____

How Long in U.S.? _____ U.S. Citizen? Yes ☐ No ☐  Nationality _____   Alien # _____

Union? _____   Local # _____

Military Service: Branch _____ Active? _____ Discharge Date _____

Additional Notes: _____

## 3. EMPLOYMENT

Occupation _____   Employer _____   Work Phone: _____

How Long? _____ Employer Address _____   Supervisor's Name: _____

## 4. MARITAL STATUS

☐ Married  ☐ Divorced  ☐ Separated  ☐ Widowed  ☐ Single  ☐ Cohab
Spouse/girl/boyfriend's Name _____    How Long Married/Together? ____
First    Middle    Last
Address (if different) _____

Email _____    Social Security # _____

Home Phone # (if different) _____    Cell Phone # _____

Occupation _____ Employer _____ How Long? _____ Employer Phone # _____

## 5. AUTOMOBILE

Year _____ Make _____ Model _____ Color _____ Plate # _____ State _____

Where Financed? _____    Amount Owed? $_____

Bail Standard Form No. 2    Page 1 of 4

Highly Confidential    CBAA000008542

*(DRAFT watermark overlays the form)*

## 6. REFERENCES

Name _____ Relation _____
Address _____ Employer _____
Home Phone # _____ Work Phone # _____ Cell Phone # _____

**REFERENCES (Continued)**

Name _____ Relation _____
Address _____ Employer _____
Home Phone # _____ Work Phone # _____ Cell Phone # _____

Name _____ Relation _____
Address _____ Employer _____
Home Phone # _____ Work Phone # _____ Cell Phone # _____

## 7. FINANCIAL STATEMENT/CREDIT INFORMATION

Cash on hand $_____  Cash in bank $_____
Real Estate Value $_____  Real Estate Mortgage _____
In whose name is title? _____ Monthly salary/wages $ _____

## 8. NOTES

THIS INDEMNITY AGREEMENT ("Agreement") is entered into by and between you, the undersigned Indemnitor and Surety through Surety's duly appointed independent bail producer referenced below ("Producer").

1. You will have Defendant appear in any court required in connection with the Bond(s) at the times stated in the bond(s) and all other times as may be ordered by the court.

2. You, jointly and severally (together and separately) with any other indemnitor, shall indemnify the Surety and keep the Surety indemnified and hold it harmless from and against any and all losses, demands, liabilities, fees and expenses relating to, or arising out of, Surety's issuance or payment of the Bond, including but not limited to the following: (a) the principal amount of any forfeiture of, or judgment on the Bond, plus any related court costs, interest and legal fees incurred, (b) a fugitive recovery fee if there is a forfeiture on the Bond (which fee is typically ten percent of the amount of the Bond for an in-state recovery, plus any out of pocket costs), (c) any and all extradition costs that may be incurred to apprehend and return the Defendant, and (d) if a collection action is required, reasonable and actual attorneys' fees plus any and all other costs, expenses and/or assessments that may be incurred as a result of any forfeiture of the Bond subject to applicable law (if any) as stated in an attached addendum. The voucher, check or other evidence of any payment made by Surety or Producer, by reason of such suretyship, shall be conclusive evidence of such payment in any lawsuit against you by us as to the propriety of such payment and as to the extent of your liability to Surety for such payment. Further, you will, upon demand, place with Surety the requisite funds to meet any such claim, demand, liability, attorneys' fees, expenses or judgment, whether that demand is made before or after Surety has paid or advanced such sums.

3. Subject to applicable law (if any) as stated in an attached addendum: (a) any property or collateral you deposit is deposited as security for the payment of any and all monies and sums due to Surety or Producer, including all liability, demands, debts, damages, judgments, interest, services charges, attorneys' fees and costs suffered, sustained, made or incurred by Surety or Producer on account of, arising out of or relating to the Bond and transactions contemplated thereby (including, without limitation the items referenced in paragraph 2 above), your failure to comply with the terms and conditions of this Agreement, and any and all debt or other obligations arising out of or evidenced by any agreement executed by Defendant, you or any other indemnitor for the benefit of Surety or Producer ("Liabilities"); and (b) if you grant the Surety a lien or a security interest in any property or collateral to enforce the obligations contained in this Agreement, and if you do not perform all of your obligations in this Agreement, you authorize the Surety to (i) apply or sell any collateral security you deposited to reimburse the Surety for any and all Liabilities of any kind or nature, (ii) hold, apply or sell the collateral, or any part thereof, to protect or reimburse the Surety by reason of the execution at any time of any other bond for or on behalf of you or Defendant, and (iii) apply and sell the collateral for the purpose of placing the Surety in cash funds or protecting the Surety against any claim, demand or loss under the Bond or any other bond executed on your or Defendant's behalf. Subject to applicable law (if any) as stated in an attached addendum, the Surety may make any such sale, at its discretion, at public or private sales, and without demand, notice or advertisement of the time and place of said sale, and also with the right to purchase said collateral at such sale or sales, freed and discharged from any equity or redemption.

4. The Surety shall not be liable for the depreciation of any collateral or for any interest thereon. In the event of depreciation of the collateral, or any part thereof, or of any collateral which may be hereafter deposited with the Surety for its protection, upon request of the Surety, you shall provide the Surety with additional and satisfactory collateral so that the total market value of the collateral shall, at all times, be equal to the market value of the collateral at the time of its initial deposit. Subject to applicable law (if any) as stated in an attached addendum, if you fail to deposit such additional collateral, the Surety shall have the full right, power and authority, without further demand or notice, to sell, assign and deliver the whole or any part of such collateral, substituted collateral, or additional collateral, at public or private sale, at its option, and without demand, notice or

Highly Confidential                                                                                                               CBAA000008543

advertisement, and also with the right to purchase said collateral at any such sale, freed and discharged from any equity or redemption.

5. If a confession of judgment is taken in connection with the Bond, the Surety shall have the right to enter and file the same at any time, and such judgment shall be a lien and entitled to a preference against any of your property, whether or not the Surety is indemnified at the time of the filing or entry of such judgment. In case a confession of judgment is filed by the Surety against you, the judgment entered shall be effective and available to the Surety against you not only in connection with the Bond but also in connection with any other bond that may have been written by the Surety in which you are either the indemnitor or defendant.

6. You acknowledge and agree that the Surety may foreclose any or all of the liens and security interests arising out of the transactions relating to the Bond or this Agreement, or exercise any of its rights or remedies under this Agreement, or take any combination of such actions, without waiving any other right or remedy. Failure to exercise any rights or remedies of the Surety at any one time shall not constitute a waiver of the right to exercise them at any other time. Any security or collateral you give may be substituted, subordinated, or released by the Surety without affecting any ____ rights. The Surety shall not be obligated to enforce its rights against any security or collateral prior to enforcing its rights against you or any other indemnitor.

7. Subject to applicable law (if any) as stated in an attached addendum, the Surety will ____ the collateral to you when all of the following are satisfied: (i) the Surety receives competent written legal evidence s____ to the Surety (for example, written notice from the court) of the Surety's discharge or release from all liability ____der t____nd; (ii) there are no outstanding Liabilities of any kind arising out of or relating to the Bond; (iii) there are no ____her outsta____ bonds or obligations executed by, for or on behalf of you or Defendant in connection with which the Su____ may deem it adv____ to retain such collateral for its protection; and (iv) upon the Surety's request, you shall have execu____ and ____livered to the Su____ general release upon the Surety's return of the collateral to you. If the Surety deems it nece____ry to make any outlay to prot____ collateral or security in its possession, whether the same be real or personal property ____ u authorize the Surety to do so, and ____ agree to indemnify and reimburse the Surety for any such outlay as in the judg____ ____ the Surety ____ay be necessary to p____ its collateral or security, including payment of taxes or liens or mortgages and any ____neys' fe____ service fees for time ____ent and/or special services rendered.

8. The Surety shall have the right to transfer and/or assign, in whole or in p____ rights and obligations in this Agreement, and/or in the Bond to the Producer or any other person or entity ("Assignee") wit____ ____otice to or consent from you. Subject to any limitations imposed upon Assignee by the Sur____ Assignee shall have the ____ to enforce in any action, proceeding or otherwise any of the Surety's rights herein or arisi____ ____any of the transaction____ ____emplated hereby, and you shall not, and expressly waive any right to, assert the claim or defe____ ____ ____nee does not have ____ to enforce such rights in any such action, proceeding or otherwise. If more than one bo____ is ma____ ____been made for ____ Defendant, then this Agreement shall extend to and cover all those bonds and the terms of this Agreemen____ ____ly to ea____ bond individually or as a group.

9. This Agreement and all documents that are executed in c____nect____ with t____ ____ent set forth all the terms of the agreement between the Surety and you. A____ ____ents, representatio____ ____omises, agree____ts, and affirmations made by the Surety and its producers and employees____ ____ ____ntemporaneously ____ith the execution of this Agreement are contained within this document, and unless th____ are specific____ ____et forth in this A____eement are of no force or effect whatsoever in determining the rights and liabilities o____ ____rety and yo____ You further agree t____ execute and be bound by any other future documents necessary to carry out and effectuate ____ ____greemen____

10. You hereby acknowledge a____ ____ree t____ ____ther the Surety n____ its Producer has recommended or suggested any specific attorney or firm of attorneys to ____ ____ t____ ____ ____apacity.

11. This Agre____ ____ be termi____ or modified o____ All modifications and terminations of this Agreement, including any rel____ of your ____ ____ereunder, ____ be in writing and signed by the Surety and you.

12. To t____ maximum extent ____ ____tted by a____ble law, you hereby waive any and all rights you may have under federal law (i____ ____ing, but not limited t____ ____le 28 Priv____ ____Freedom of Information Act, Title 6, Fair Credit Reporting Act) and any loca____ ____ate law relating to S____'s obtaini____ ____nd you consent to and authorize Surety to obtain, any and all private or public informa____ ____nd/or records conc____ ____g you f____m any party or agency, private or governmental (local, state, federal), including, but not li____ ____o, credit reports, ____ ____al Security Records, criminal records, civil records, driving records, tax records, telephone records, me____ ____ecords, school ____cords, worker compensation records, and employment records. You further authorize, without reserva____ ____any party o____ ____gency, private or governmental (local, state, federal), contacted by Surety to furnish in accordance with ap____ ____ble law ____y and all private and public information and records in their possession concerning you to the Surety and direct tha____ ____ ____ this document shall serve as evidence of said authorization. You irrevocably grant to surety and its producers, agen____ ____ representatives the right to enter your residence or other property owned or occupied by you or Defendant without noti____, at any time, for the purpose of locating, arresting, and returning to custody the Defendant, and subject to applicable law, you waive any and all causes of action in connection therewith including, without limitation, torts of trespass and false imprisonment.

13. You agree that Surety may attach a location tracking device on any vehicle owned or driven by you, at any time, without notice, and monitor the location of the vehicle through any available technology. You further agree that Surety may use location technologies to locate your wireless device at any time during the period of Defendant's bail and any applicable remission period, and the Bond is conditioned upon your full compliance with the following terms and conditions: (a) Surety, at its discretion, will use network-based location technologies to find you; (b) this is the only notice you will receive for the collection of your location information; (c) Surety will retain location data only while the Bond is in force and during any applicable remission period; (d) Surety will disclose location information only to the courts as required by court order; (e) Surety and its licensed producers, designees and representatives will be the only persons with access to your location

Highly Confidential                                                                                                                         CBAA000008544

information; (f) YOU WILL NOT HAVE THE OPTION TO OPT-OUT OF LOCATION USE OR TRACKING DURING THE BAIL PERIOD; and (g) all questions relating to location capability should be directed to Surety.

14. In the event any provision herein shall be deemed to exceed any applicable state or federal law, then such provision shall automatically be deemed to have been revised to comply with such law so as to provide the Surety with the maximum protection from any loss or liability. The invalidity or unenforceability of any provision herein (or portion thereof) shall in no way effect the validity or enforceability of any other provision (or portion thereof).
15. You have not been paid to sign this Agreement. You have read the above contract, understand it and agree to fulfill ALL of the provisions therein.

## IMPORTANT FRAUD WARNINGS

**ALABAMA RESIDENTS** - Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**ARKANSAS RESIDENTS** - Any person who knowingly presents a false or fraudulent claim for payment for a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**FLORIDA RESIDENTS** - Any person who knowingly or with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**LOUISIANA, RHODE ISLAND & WEST VIRGINIA RESIDENTS** - Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**MAINE, TENNESSEE, VIRGINIA & WASHINGTON RESIDENTS** - It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**MARYLAND RESIDENTS** - Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NEW JERSEY RESIDENTS** - Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**NEW MEXICO RESIDENTS** - ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

**NEW YORK RESIDENTS** - Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**OHIO RESIDENTS** - Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**OKLAHOMA RESIDENTS** - WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**PENNSYLVANIA RESIDENTS** - Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

SIGNED, SEALED & DELIVERED at _____, this _____ day of _____, 20 _____.

| WITNESS | INDEMNITOR |
|---|---|
| Sign: _____ | Sign: _____ |
| Print: _____ | Print: _____ |

| SURETY: | BAIL PRODUCER: [stamp must include name, address, phone no. and license no.] |
|---|---|
| | |

Bail Standard Form No. 2

Page 4 of 4

Highly Confidential

CBAA000008545

**BAIL BOND PREMIUM RECEIPT
AND STATEMENT OF CHARGES**

RECEIPT NO.:_____

I understand that the premium owing or paid is fully earned upon the defendant's release from custody, and the fact that the defendant may have been improperly arrested, re-arrested, the case dismissed, or the bail reduced shall not obligate the return or forgiveness of any portion of the premium except as otherwise provided by applicable law (if any) as stated in an addendum attached to the Bail Bond Application and Agreement.

1. Date _____  Date of Defendant's Arrest _____
2. Amount Received _____ Dollars ($_____)
3. In the form of ☐ cash ☐ check ☐ money order ☐ credit card ☐ other _____
4. Payer's Name: _____ _____ _____
       First                Middle                Last
5. Payer's Address: _____ _____ _____ _____
       Street                City                State    Zip
6. In connection with a Bail Bond(s) for Defendant: _____ _____ _____
       First              Middle            Last
7. Bail Bond Amount(s): _____  Nos. (if known): _____
8. Date of Defendant's Release on Bail _____
9. Court Name & Address _____
10. Date & Time of Next Required Court Appearance _____
11. Charged with: _____
12. Bail Bond Premium                                          $_____
13. Itemized Expenses (if and as permitted by applicable law):
    _____           $_____
    _____           $_____
14. Total Charges (premium plus any itemized expenses):   $_____
15. Amount Paid:                                          $_____
16. Balance Due:                                          $_____
17. Was collateral taken? ☐ Yes ☐ No   If yes, collateral receipt# _____

All other documents executed by defendant, indemnitor(s), me, or other party related to the Bail Bond(s) are incorporated into and made part hereof by reference.

PAID BY:                                RECEIVED BY:

_____         _____
Payer Signature                         Producer/Representative Signature

_____         _____
PAYER NAME (PRINTED)                    PRODUCER NAME (PRINTED)

| Surety: | Bail Producer Stamp: [must include name, address, phone no., and license no. |
|---|---|
|  |  |

White – Producer Copy   Yellow – Payer Copy

Bail Standard Form No. 3

© 2012 Lexington National Insurance Corporation, et al.

DRAFT

Highly Confidential                                                              CBAA000008546

**COLLATERAL RECEIPT**
DO NOT LOSE THIS RECEIPT

RECEIPT NO.: _____

_____ [Surety Name]
_____ [Surety Address]
_____ [Surety Address]
_____ [Surety Phone]

Bail Producer Stamp: [must include name, address, phone no. and license no.]

1. DATE: _____
2. DEPOSITOR'S NAME: _____
   First            Middle            Last
3. ADDRESS: _____
   Street           City       State       Zip
4. PHONE NUMBERS: HOME _____ WORK _____ MOBILE _____
5. The person named on line two (2) above ("Depositor" or "you") has deposited the following collateral:
   ☐ In the amount of _____ Dollars ($ _____) paid by way of (i.e., cash, check no., money order no.) _____
   ☐ Other (Itemize and describe if collateral is other than money and specify condition) _____

The above collateral is placed as security for the bail bond(s), premium owed, if any, and all lawful costs incurred due to underwriting the bail bond(s) for the following:
6. DEFENDANT: _____ ("Defendant") ID NO.: _____
   First       Middle       Last
7. BOND AMOUNT: $ _____ POWER NOS: _____ BOND NO.: _____
   (if required by law)
8. COURT: _____ CHARGES _____
9. RECEIVED BY: _____
   Signature of Bail Producer          Printed Name of Bail Producer
10. COLLATERAL HELD BY (check one): ☐ Bail Producer  ☐ Surety  ☐ Managing General Agent

Except as otherwise provided by applicable law (if any) as stated in an addendum attached to the Indemnitor Application and Agreement ("Agreement"), you are depositing the collateral as security for the payment of any and all monies and sums due to surety or its producers, including all liability, claims, demands, damages, judgments, losses, interest, expenses, attorneys' fees and costs suffered, sustained, made or incurred by surety or its producers on account of, arising out of or relating to the above bail bond and transactions contemplated thereby, your failure to comply with the terms and conditions of the Agreement and any and all debt or other obligations arising out of or evidenced by any agreement executed by the defendant or any other indemnitor(s) for the benefit of surety or its producer, all of the terms of which are made a part of this receipt by reference ("Liability").

NOTE: Unless a properly drawn, executed and notarized legal assignment is accepted and acknowledged by the surety or its designee, the collateral listed above will be returned only to you. Except as otherwise provided by applicable law (if any) as stated in an addendum attached to the Indemnitor Application and Agreement, the collateral shall be returned to you, your heir, legal representative or successor in interest (less any Liabilities) within 30 days after all of the following are satisfied: (i) surety receives competent written legal evidence satisfactory to surety (such as, for example, written notice from the court) of surety's discharge or release from liability under the above bail bond; (ii) there are no outstanding Liabilities; (iii) there are no other outstanding bonds or obligations executed by, for or on behalf of you or Defendant in connection with which the surety may deem it advisable to retain such collateral for indemnification; and (iv) upon surety's request, you shall have executed and delivered to surety a general release upon surety's return of the collateral to you.

In Florida, if you are using a credit card to provide collateral, you are required to pay an additional credit card fee in the following amount: $ _____.

You hereby acknowledge receipt of a copy of this document and of all documents referenced above, and the above conditions are understood and agreed to.

_____
DEPOSITOR'S SIGNATURE

**RECEIPT FOR RETURN OF COLLATERAL**

You hereby surrender the original of this collateral receipt and acknowledge the return and receipt of collateral listed above. The collateral has been returned in good and sufficient condition and you hereby relieve the surety and its producer from any further liability or responsibility in relation to the collateral.

DATE: _____ You have received the items listed below:

TOTAL AMOUNT RETURNED   $ _____

Other collateral returned _____

Received by: _____     Returned by: _____
            Print Name                            Print Name of Bail Producer

            _____                   _____
            Signature                             Signature of Bail Producer

NOTICE FOR FLORIDA RESIDENTS: For any complaints or inquiries, you may contact the Department of Financial Services, Bail Bond Section, 200 E. Gaines Street, Tallahassee, FL 32399-0320, (850) 413-5660.

Bail Standard Form No. 4

White – Producer Copy  Yellow – Depositor Copy
© 2012 _____, et al

DRAFT

Highly Confidential

CBAA000008547



Bail Producer Stamp:

*[Handwritten annotation: "Truth Lending Act. A form should be given of Interest Pymts"]*

## PROMISSORY NOTE & INSTALLMENT PAYMENT PLAN FOR UNPAID PREMIUM

$ _____           Date: _____

Power No. _____           City: _____ State: _____

1. FOR VALUE RECEIVED, I (we), the undersigned Debtor(s), jointly and severally (together and separately), promise to pay to the order of _____ ("Bail Producer") the principal sum of _____ ($_____) owed for the bail bond ("Bond") on behalf of _____ ("Defendant") at the address shown above in the Bail Producer Stamp box or at such other place Bail Producer may from time to time designate in writing according to the following payment plan:

   Payment #1: Amount of payment $_____ Date payment due: _____
   Payment #2: Amount of payment $_____ Date payment due: _____
   Payment #3: Amount of payment $_____ Date payment due: _____
   Payment #4: Amount of payment $_____ Date payment due: _____

2. The entire amount of the then outstanding balance under this note shall become due and payable immediately under any one or more of the following events: (i) upon Defendant's failure to appear in the court for which the Bond was posted at any time required by such court; (ii) upon forfeiture of the Bond; or (iii) if payment is not received by Bail Producer within ten days following its due date or is returned for insufficient funds, stopped or refused for any reason upon presentment to a financial institution.

3. I (we), jointly and severally (together and separately), hereby waive presentment, protest and demand, notice of protest, dishonor and nonpayment of this note, and expressly agree that, without in any way affecting my (our) liability under this note, Bail Producer may (i) extend the due date or the time of payment of any payment due under this note, (ii) accept security or partial payments, (iii) release any party liable under this note or any guarantee of this note and (iv) release any security now or later securing this note. The failure of the Bail Producer to enforce any provision of this note or to declare a default under this note, shall not be construed as a waiver of the Bail Producer's entitlement to payment, shall not be construed as a waiver or modification of the terms of this note, and shall not impair the right of the Bail Producer to declare a default or to strictly enforce the terms of this note.

4. All obligations under this note remain in full force and are not terminated, modified or otherwise affected: (i) by revocation of the Bond; (ii) by any change in the terms of the Bond or the surety's liability under the Bond; (iii) by any change in the status of court proceedings for which the Bond was posted, or any change in whereabouts or status of the Defendant. This note shall become null and void only when the premium amount and obligations under the Bond have been paid or satisfied, and otherwise, this note shall remain in full force and effect.

5. If any portion of this note or the application of such provision shall be declared by a court of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other applications of such provision or the remaining provisions, which shall, to the fullest extent, remain in full force and effect. Any amendment or modification of this note must be in writing and signed by both Bail Producer and me (us).

6. I (we) agree to the terms and conditions of this note and acknowledge receipt of a copy of this note. I (we) also agree to pay all collection costs including, without limitation, court costs, reasonable and actual attorneys' fees and expenses, and any other fees permitted by applicable law.

Witness(es):                                    Debtor(s):

_____                 _____
Print Name                                      Print Name

                                                _____(Seal) _____
_____ _____              _____        Date
Signature               Date                    Signature

_____                 _____
Print Name                                      Print Name

                                                _____(Seal) _____
_____ _____              _____        Date
Signature               Date                    Signature

Bail Standard Form No. 5              White – Producer Copy • Yellow – Debtor Copy
                       © 2012                              _____, et al.

Highly Confidential                                            CBAA000008548

Bail Producer Stamp:

## PROMISSORY NOTE FOR
## ADDITIONAL FUTURE PAYMENTS OF COLLATERAL

$ _____                                Date: _____

Power No. _____                        City: _____ State: _____

1. FOR VALUE RECEIVED, I (we), the undersigned Debtor(s), jointly and severally (together and separately), promise to pay to the order of _____ ("Collateral Holder") the principal sum of _____ ($_____) as collateral for the bail bond ("Bond") of _____ ("Defendant"). Payments shall be made at _____ or at such place as Collateral Holder may from time to time designate in writing according to the following payment plan:

   Payment #1: Amount of payment $_____  Date payment due: _____
   Payment #2: Amount of payment $_____  Date payment due: _____
   Payment #3: Amount of payment $_____  Date payment due: _____
   Payment #4: Amount of payment $_____  Date payment due: _____
   For any additional payments, please see attached schedule.

2. The entire amount of the then outstanding balance under this note shall become due and payable immediately under any one or more of the following events: (i) upon Defendant's failure to appear in the court for which the Bond was posted at any time required by such court; (ii) upon forfeiture of the Bond; or (iii) if any payment is not received by Collateral Holder within ten days following the date or is returned for insufficient funds, stopped or refused for any reason upon presentment to a financial institution.

3. I (we), jointly and severally (together and separately), hereby waive presentment, protest and demand, notice of protest, dishonor and nonpayment of this note, and expressly agree that, without in any way affecting my (our) liability under this note, Collateral Holder may (i) extend the due date or time of payment of any payment due under this note, (ii) accept security or other payments, (iii) release any party liable under this note or any guarantee of this note and (iv) release any security now or later securing this note. The failure of the Collateral Holder to enforce any provision of this note or to declare a default under this note, shall not be construed as a waiver of the Collateral Holder's entitlement to payment, shall not be construed as a waiver or modification of the terms of this note, and shall not impair the right of the Collateral Holder to declare a default or to strictly enforce the terms of this note.

4. This note shall become null and void if all of the following are satisfied: (i) Defendant appears in the court for which the Bond is posted at all times required by such court; (ii) Defendant fulfills all conditions of the Bond; (iii) Surety is discharged and exonerated from all liability under the Bond; and (iv) all premium amounts and obligations under the Bond have been paid or satisfied. Otherwise, this note shall remain in full force and effect.

5. If any portion of this note or any application of such provision shall be declared by a court of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other applications of such provision or the remaining provisions which shall, to the fullest extent, remain in full force and effect. Any amendment or modification of this note must be in writing and signed by both Collateral Holder and me (us).

6. I (we) agree to the terms and conditions of this note and acknowledge receipt of a copy of this note. I (we) also agree to pay all collection costs including, without limitation, court costs, reasonable and actual attorneys' fees and expenses, and any other costs permitted by applicable law.

Witness(es):                                              Debtor(s):

_____                           _____
Print Name                                                Print Name

                                                                                    (Seal)_____
_____  _____               _____  _____
Signature                       Date                     Signature                       Date


_____                           _____
Print Name                                                Print Name

                                                                                    (Seal)_____
_____  _____               _____  _____
Signature                       Date                     Signature                       Date


Bail Standard Form No. 6         White – Producer Copy • Yellow – Debtor Copy
                          © 2012 _____, et al.

Highly Confidential                                                      CBAA000008549

Flesch Score 50

# [_____] INSURANCE COMPANY

# PRIVACY NOTICE

As required by law, we keep the financial information of our current and former customers private. This notice explains your rights. It also explains our legal duties and privacy practices. We are required by state laws to give you this notice.

## THE INFORMATION WE COLLECT AND DISCLOSE

We collect personal information about you from the following sources:
- From you through applications and other forms (e.g. your name, address, social security number, family member information, assets, income, and property locations and values) and electronically if you use our website (e.g. name of the internet domain, the IP address from which you accessed the site, and the time and date) (our website uses cookies to collect individual information about you and your website usage);
- From your transactions and experiences with us and others, (e.g. your account balance, insurance coverage, payment history, the premium you pay, and claims information); and
- From consumer reporting agencies, medical providers and others (e.g. your credit score and medical and employment information).

We may disclose all of the above information we collect as described in this notice.

## PARTIES TO WHOM WE MAY DISCLOSE INFORMATION

We keep your information in our files. *Your information will only be disclosed as authorized by you or as required or allowed by law. We do not disclose your information to any affiliates or unrelated third parties for marketing purposes.* We use your information to process your application, post your bond, and resolve claims or breaches of contract. We may give your information to our producers, agents, investigators, attorneys and others for these purposes. We may also disclose it to persons to perform transactions you request or authorize. When we use service providers to help us service your account, your personal information stays confidential. Our service providers agree to keep your personal information private and not use it for any other purpose.

We may also share information for other reasons such as:

- with state insurance departments or other governmental or law enforcement authorities in the event of a bond forfeiture or breach of contract;
- with state insurance departments or other governmental or law enforcement authorities if required by law or to protect our legal interests or in cases of suspected fraud or illegal activities; or
- if ordered by a subpoena, search warrant or other court order.

We may also share your information with insurance support organizations that maintain information to, among other things, detect or prevent fraud or criminal activity in connection with insurance underwriting or claims. Information disclosed to or obtained from such entities may be kept by them and given to other persons.

## CONFIDENTIALITY AND SECURITY

We maintain physical, electronic and procedural safeguards to protect your information. We ensure that your information is treated responsibly and in line with our privacy policy. We also restrict access to your information within our organization to those persons who must have the information to provide services to you, or to conduct our business. Persons who have access to your information may use it only for our business purposes. We safeguard information in accordance with applicable laws.

Bail Standard Form 7b  
© 2012 _____, et al.

Page 1 of 2

Highly Confidential                                                                                                      CBAA000008550

Flesch Score 50

## YOUR RIGHT TO ACCESS AND AMEND YOUR INFORMATION

If you believe any of your personal information that we have is inaccurate, you can send us a written request to review certain recorded information that we can reasonably locate and provide to you. You can request that we amend, correct or delete anything that you believe to be wrong. If we agree with you, we will amend, correct or delete the information in question, unless otherwise required by law. We are not required to agree to your request. If we do not agree with your request, we will notify you of our reasons. We may charge a small fee to collect and send the information to you. Please send your request to the address provided below and include your name, address, phone number and bond number.

## INVESTIGATIVE CONSUMER REPORT

We may prepare or request an investigative consumer report about you (the "Report") in connection with your application or agreement with us. You can request to be interviewed in connection with the preparation of the Report. You are entitled to receive a copy of the Report if you submit a written request to us. Please send your request to the address provided below and include your name, address, telephone number and bond number.

## FURTHER INFORMATION

If you have any questions about how we use the information we collect, please write to us at:

_____ Insurance Company
STREET ADDRESS
CITY, STATE, ZIP
Attention: _____

## CHANGES TO THIS PRIVACY NOTICE

We reserve the right to change this Privacy Notice. We will send you a copy of a revised Privacy Notice if we make any changes as required by law.

Thank you.

Bail Standard Form 7b
© 2012 _____, et al.

Page 2 of 2

Highly Confidential                                   CBAA000008551

## ELECTRONIC MONITORING ADDENDUM
## TO
## BAIL BOND APPLICATION AND AGREEMENT

This Electronic Monitoring Addendum ("Addendum") is attached to and forms part of the Bail Bond Application and Agreement signed, sealed and delivered by you as Defendant ("Agreement") and is incorporated into the Agreement by this reference. Any terms used in this Addendum without definition and defined in the Agreement shall have the meanings assigned to these terms by the Agreement.

In consideration of Surety's issuing or causing to be issued the Bond, you agree t rety and its producers, agents, designees or representatives (collectively, "Representatives"), in their sole and absolute dis ion, may require you, for any reason or no reason, to wear an electronic monitoring device ("EM Device") in accordance wi plicable law (if any). If Surety or its Representatives require you to wear an EM Device, you understand that you shall b o d continuously by a tamper-proof, non-removable transmitter that is to be worn without interruption during the entire d of e ic monitoring.

Upon notice by Surety and/or its Representatives that you must n EM Device, y all follow all instructions provided by Surety and/or its Representatives in order to establish the eleonic mnitoring and ins EM Device including, without limitation, your immediately making your person and premises ysically available to any third p lectronic monitoring vendor ("EM Vendor") designated by Surety and/or its Representati

You shall not remove, disconnect, destroy or tamper with the E vice i y ay, and you agree at the EM Device may be inspected at any time and at any place by the EM Vendor, Surety a Representatives. You shall be responsible for the cost of any damaged equipment and shall indemnify and hold Surety and presentatives harmless for any and all damages as a result of wearing or tampering with the EM Devic

You shall comply with all terms and conditions on you by the EM an/or any other party relating to the electronic monitoring. You acknowledge and agree that yu ar sponsible for al , costs and expenses relating to the electronic monitoring including, without limitation, any insllation, ce and motoring fees charged by the EM Vendor and/or any other party relating to the electronic monitoring ("Fees") B chdule of Fees, and you shall pay Fees to
_____:

Your failure to com ith the pro ns of this Addenm shall constitute a breach of your obligations to Surety, and Surety shall have the right to diately aphend, arrest and s nder you, and you shall not be entitled to any refund of premium unless required by applic aw.

This Adde pplements ms and c e Agreement, all of which terms and conditions remain in full force and effec a conflic en the terms ad conditions of the Agreement and this Addendum, this Addendum shall contro

Signed d and delivered th _____ day of _____, 20____

Signature o ndant _____

| SURETY: | BAIL PRODUCER: [stamp must include name, address, phone no. and license no.] |
|---|---|
|  |  |

White – Producer Copy• Yellow – Defendant Copy

Bail Standard Form No. 8

© 2012 _____, et al.

Highly Confidential

# CALIFORNIA ADDENDUM TO
# BAIL BOND APPLICATION AND AGREEMENT

This California Addendum ("Addendum") is attached to and forms part of the Bail Bond Application and Agreement signed, sealed and delivered by you as Defendant ("Agreement") and is incorporated into the Agreement by this reference. Any capitalized terms used in this Addendum without definition shall have the meanings assigned to these terms by the Agreement.

1. **IMPORTANT NOTICE! IF THE BOND WILL BE SECURED BY REAL PROPERTY YOU OWN OR IN WHICH YOU HAVE AN INTEREST, PLEASE SEE ATTACHED DISCLOSURE.**

2. You understand and acknowledge that if you are surrendered prior to the time specified in the Bond, you have the right under California Penal Code section 1300(b) to petition the court for a ruling as to return of premium. If the court determines that good cause does not exist for your surrender and you have neither failed to appear nor violated any court order, the court may, in its discretion, order the return of all or a portion of the premium.

3. The specific expenses for which you are required to indemnify Surety and its bail producer in accordance with the Agreement are as follows:
    (a) actual, necessary and reasonable expenses incurred in connection with the bail transaction including, but not limited to: (1) guard fees after the first 12 hours following your release on bail; (2) notary fees, recording fees, necessary long distance telephone expenses (i.e., telephone calls billed by the telephone company as "long distance," but not those for which "message unit" charges only are made); telegram charges, travel expenses and verification of collateral outside of the county where the bail was arranged; a reasonable posting fee charged by a bail producer operating in a county other than that where the bail was arranged (provided that no charge shall be made for travel from the bail producer's office to post bail in an area where the bail producer advertises in the yellow pages of the telephone directory unless the advertisement specifically provides for this charge). Such travel charges, when permitted, may not exceed the amount allowed to be taken as a travel expense for income tax purposes under the federal Internal Revenue Code and related regulations or the amount allowed by the State of California to be claimed for mileage by its employees, whichever the bail producer chooses;
    (b) actual, reasonable and necessary expenses incurred and caused by your breach of any of the terms of the Bail Bond Application and Agreement or any other written agreement under which the Bond was written. This reimbursement shall not exceed the penal amount of the Bond and may include a reasonable charge for the services of the bail producer and its employees, partners or other persons associated with the bail producer in the transaction of the Bond on your behalf; and
    (c) on forfeiture of bail which is not set aside, any expenses under sections 3(a) and 3(b) above that are incurred within 180 days following the forfeiture (in addition to the amount of the forfeiture) or such additional period as ordered by the court.

4. Except as expressly provided in this Addendum, all terms and conditions of the Agreement remain in full force and effect. In the event of a conflict between the terms and conditions of the Agreement and this Addendum, this Addendum shall control.

5. This Addendum shall be attached to every Bail Bond Application and Agreement entered into in the State of California.

Signed, sealed and delivered this _____ day of _____, 20_____

Signature of Defendant _____

Printed Name of Defendant _____

White – Producer Copy • Yellow – Defendant Copy

CA-Bail Form No. 1                © 2012 _____, et al.

Highly Confidential                                                                CBAA000008553

CALIFORNIA ADDENDUM
TO
INDEMNITOR APPLICATION AND AGREEMENT

This California Addendum ("Addendum") is attached to and forms part of the Indemnitor Application and Agreement signed, sealed and delivered by you as the Indemnitor ("Agreement") and is incorporated into the Agreement by this reference. Any capitalized terms used in this Addendum without definition shall have the meanings assigned to these terms by the Agreement.

1. **IMPORTANT NOTICE! IF THE BOND WILL BE SECURED BY REAL PROPERTY YOU OWN OR IN WHICH YOU HAVE AN INTEREST, PLEASE SEE ATTACHED DISCLOSURE.**

2. The specific expenses for which you are required to indemnify Surety and the bail producer in accordance with the Agreement are as follows:

(a) actual, necessary and reasonable expenses incurred in connection with the bail transaction including, but not limited to: (1) guard fees after the first 12 hours following Defendant's release on bail; (2) notary fees, recording fees, necessary long distance telephone expenses (*i.e.*, telephone calls billed by the telephone company as "long distance," but not those for which "message unit" charges only are made); telegram charges, travel expenses and verification of collateral outside of the county where the bail was arranged; a reasonable posting fee charged by a bail producer operating in a county other than that where the bail was arranged (provided that no charge shall be made for travel from the bail producer's office to post bail in an area where the bail producer advertises in the yellow pages of the telephone directory unless the advertisement specifically provides for this charge). Such travel charges, when permitted, may not exceed the amount allowed to be taken as a travel expense for income tax purposes under the federal Internal Revenue Code and related regulations or the amount allowed by the State of California to be claimed for mileage by its employees, whichever the bail producer chooses;

(b) actual, reasonable and necessary expenses incurred and caused by Defendant's breach of any of the terms of the Bail Bond Application and Agreement and any other agreement under which the Bond was written. This reimbursement may not exceed the penal amount of the Bond and may include reasonable charges for the services of the bail producer and its employees, partners or other persons associated with the producer in the transaction of the Bond on behalf of Defendant; and

(c) if a forfeiture of bail occurs and is not set aside, any expenses under sections 2(a) and 2(b) above that are incurred within 180 days following the forfeiture (in addition to the amount of the forfeiture) or such additional period as ordered by the court.

3. Any collateral received shall be returned to the person whose name appears as Depositor on the Collateral Receipt or that person's assignee (which assignee may be the bail producer or its representative) as soon as you are advised that the obligation, the satisfaction of which was secured by the collateral, is discharged. Surety or bail producer shall determine promptly whether the obligation has been discharged upon request for return of the collateral by the Depositor of the collateral or the Depositor's assignee. If the collateral was deposited to secure the obligation of a Bond, the collateral shall be returned immediately upon the entry of any order by an authorized official stating that liability under the Bond is terminated. If Surety or any bail producer having custody of the collateral fails to take promptly any action necessary to secure the termination of such liability, the collateral shall be returned immediately upon the accrual of any right to secure an order of termination of liability. If the collateral was deposited as security for unpaid premium or charges, and if such premium or charges remained unpaid at the time of exoneration and after demand for payment has been made by Surety or its bail producer, the collateral (other than cash) may be levied upon in the manner provided by law, and the proceeds of the collateral may be applied to the amount of the unpaid premium or charges.

4. If collateral received is in excess of the bail forfeited, such excess shall be returned to the person whose name appears as Depositor on the Collateral Receipt after the application of the collateral to the forfeiture and all amounts owed to Surety.

5. Except as expressly provided in this Addendum, all terms and conditions of the Agreement remain in full force and effect. In the event of a conflict between the terms and conditions of the Agreement and this Addendum, this Addendum shall control.

6. This Addendum shall be attached to every Indemnitor Application and Agreement entered into in the State of California.

Signed, sealed and delivered this _____ day of _____, 20_____

Signature of Indemnitor _____

Printed Name of Indemnitor _____

White – Producer Copy• Yellow – Indemnitor Copy

CA-Bail Form No. 2                          © _____, et al., 2012

**Highly Confidential**                                                                                    CBAA000008554