# EXHIBIT C

Orgovan, Joseph

| | |
|---|---|
| From: | Girardi, Devin |
| Sent: | Monday, June 17, 2019 9:58 AM |
| To: | Committee-BBAC-Open |
| Cc: | O'Donnell, Edward |
| Subject: | 2018 Bail Bond Report |
| Attachments: | Bail Bond Report (2018, June 4, 2019).pdf |

Committee Members,

Attached is a draft of the 2018 Bail Bond Supplement. Please let us know of any errors or revisions that need to be made.

Thank you,

-Devin



**Devin Girardi**
**The Surety & Fidelity Association of America**
*Surety Analyst*
Office: 202-778-3624 | dgirardi@surety.org

*Surety and fidelity bonds: Protecting consumers, taxpayers and businesses.*

 www.surety.org

# The Surety and Fidelity Association of America
## 2018 BAIL BOND SUPPLEMENT EXHIBIT #1A: TOP BAIL BOND WRITERS
### (Draft)

| Company Name | 9. Face Amount of Bail Bonds Written | 10. Direct Premiums Written (Gross) | 11. Comm and Broker Expenses | 12. Prem Writ Net of Agent Comm & Broker Expenses (Line 10 - Line 11 = Line 12) | 13. Direct Premium Earned (Gross) | 14. Prem Earned Net of Agent Comm & Broker Expenses | 15. Direct Unearned Premium Reserves | 16. Direct Losses Paid (deducting salvage) | 17. Direct Losses Incurred | 18. Direct Losses Unpaid |
|---|---|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 2,083,815,935 | 202,014,865 | 182,052,259 | 19,962,606 | 203,604,082 | 21,551,823 | 9,351,213 | 0 | 0 | 0 |
| Financial Cas & Surety Inc. | 1,930,336,268 | 14,627,389 | 14,627,389 | 14,627,389 | 14,627,389 | 14,627,389 | 0 | 2,386,207 | 3,057,957 | 3,353,279 |
| Lexington National Ins Corp. | 1,701,792,293 | 152,794,024 | 140,730,536 | 12,063,488 | 152,652,724 | 12,165,420 | 2,941,513 | 614,649 | 2,064,155 | 243,818 |
| Seaview Insurance Co. | 1,431,138,486 | 132,763,205 | 125,661,194 | 7,102,011 | 133,169,676 | 7,128,143 | 580,819 | 0 | (63,767) | 281,737 |
| Palmetto Surety Corp. | 1,336,513,017 | 121,619,421 | 108,017,729 | 13,601,692 | 13,601,692 | 0 | 0 | 1,732,775 | 2,005,775 | 2,267,488 |
| American Surety Co. | 949,558,178 | 97,693,277 | 88,954,779 | 8,738,498 | 105,952,468 | 9,477,269 | 1,117,173 | 109,701 | (45,735) | 859,450 |
| International Fidelity Ins Co. | 894,074,875 | 15,040,861 | 12,318,851 | 2,722,010 | 15,040,861 | 2,722,010 | 0 | 0 | 0 | 0 |
| Accredited Surety & Cas Co. | 888,103,597 | 83,041,356 | 76,814,953 | 6,226,403 | 83,041,356 | 6,226,403 | 0 | 0 | 0 | 0 |
| Allegheny Casualty Co. | 825,225,175 | 29,811,260 | 27,111,803 | 2,699,457 | 29,811,250 | 2,699,457 | 0 | 0 | 0 | 0 |
| U.S. Specialty Insurance Co. | 690,125,326 | 67,445,466 | 64,125,959 | 3,319,507 | 70,855,172 | 3,159,269 | 458,519 | (3,550) | 481,554 | 659,097 |
| American Contractors Indem Co. | 651,852,937 | 61,416,467 | 56,831,693 | 4,584,774 | 62,620,299 | 4,569,040 | 362,843 | 48,630 | 1,447,489 | 1,954,155 |
| Univ Fire & Casualty Ins Co. | 439,083,972 | 40,647,472 | 37,343,034 | 3,304,438 | 40,666,050 | 3,323,016 | 18,034 | 0 | 0 | 0 |
| Philadelphia Reinsurance Corp. | 355,467,357 | 33,760,192 | 31,620,928 | 2,139,264 | 34,534,346 | 2,121,254 | 258,506 | 0 | 7,971 | 36,708 |
| Roche Surety & Casualty Co. | 348,554,840 | 35,826,218 | 33,275,128 | 2,551,090 | 37,195,300 | 2,603,671 | 346,622 | 0 | 0 | 0 |
| Sun Surety Insurance Co. | 317,049,935 | 30,661,852 | 26,786,965 | 3,874,887 | 30,713,891 | 3,880,026 | 29,760 | 44,208 | 44,208 | 0 |
| North River Insurance Co. | 291,444,513 | 41,459,560 | 38,469,434 | 2,990,126 | 41,332,649 | 2,990,126 | 919,299 | (67,060) | 0 | 0 |
| Continental Heritage Ins Co. | 254,744,710 | 25,474,471 | 24,021,399 | 1,453,072 | 25,595,372 | 1,457,592 | 2,226,464 | 0 | 0 | 0 |
| First Community Insurance Co. | 198,576,519 | 20,067,399 | 17,480,327 | 2,587,072 | 20,106,747 | 2,626,420 | 1,052,368 | 0 | 0 | 0 |
| 1st Atlantic Surety Co. | 148,273,804 | 6,420,256 | 6,024,409 | 395,847 | 6,420,256 | 395,846 | 0 | 70,962 | 32,763 | 142,418 |
| U.S. Fire Insurance Co. | 145,397,415 | 22,552,133 | 20,387,319 | 2,164,814 | 22,516,361 | 2,164,814 | 641,138 | 127,341 | 0 | 0 |
| Whitecap Surety Co. | 27,532,488 | 2,753,249 | 2,532,663 | 220,586 | 2,753,249 | 220,586 | 0 | 0 | 0 | 0 |
| Integra Insurance Inc. | 23,971,546 | 2,433,229 | 2,073,655 | 359,574 | 2,433,229 | 359,574 | 0 | 0 | 0 | 0 |
| Crum & Forster Indemnity Co. | 21,987,951 | 13,812,739 | 13,064,524 | 748,215 | 14,206,379 | 748,215 | 204,210 | 753,483 | 0 | 0 |
| Evergreen National Indem Co. | 7,201,530 | 720,153 | 612,130 | 108,023 | 213,633 | 32,045 | 75,978 | 0 | 0 | 0 |
| Williamsburg National Ins Co. | 4,380,078 | 540,535 | 508,132 | 32,403 | 812,165 | 53,860 | 2,340 | 0 | 0 | 0 |
| Seneca Insurance Co. | 3,988,897 | 438,037 | 412,139 | 25,898 | 1,587,948 | 93,884 | 2,526 | 0 | 0 | 0 |
| Star Insurance Co. | 1,550,248 | 173,296 | 160,900 | 12,396 | 458,595 | 31,057 | 26,247 | 0 | 0 | 0 |
| U.S. Surety Co. | 750,000 | 56,500 | 48,100 | 8,400 | 56,500 | 8,400 | 0 | 344,978 | 208,095 | (62,827) |
| First Indemnity of Am Ins Co. | 607,511 | 60,751 | 55,891 | 4,860 | 344,062 | 16,526 | 61 | (10,477) | 0 | (517,422) |
| Totals | 15,973,098,801 | 1,256,125,633 | 1,137,496,833 | 118,628,800 | 1,166,875,701 | 107,453,135 | 20,615,633 | 6,151,847 | 9,240,475 | 9,217,901 |

CONFIDENTIAL

SFAA 000388

©The Surety Fidelity Association of America

CONFIDENTIAL

## The Surety and Fidelity Association of America
## 2017 BAIL BOND SUPPLEMENT EXHIBIT #1B: TOP BAIL BOND WRITERS
(Draft)

| Company | 19. Direct Defense Cost Containment Expenses Paid | 20. Direct Defense Cost Containment Expenses Incurred | 21. Direct Defense Cost Containment Expenses Unpaid | 22. Taxes, Licenses and Fees | 23. Build-Up Fund Account Balances as of Beginning of Period | 24. Gross deposits to BUF Accounts (including interest earned) | 25. Gross Withdrawals from Build-Up Fund Accounts | 26. Build-Up Fund Account Balances as of End of Period (Line 23 + Line 24 - Line 25) |
|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 0 | 0 | 0 | 0 | 49,873,941 | 11,869,001 | 25,243,508 | 36,499,434 |
| Financial Cas & Surety Inc. | 0 | 0 | 0 | 3,694,319 | 12,386,357 | 2,570,295 | 2,478,853 | 12,477,799 |
| Lexington National Ins Corp. | 0 | 0 | 0 | 0 | 26,477,553 | 9,371,954 | 7,712,801 | 28,136,706 |
| Seaview Insurance Co. | 0 | (15,940) | 70,434 | 3,289,439 | 10,354,316 | 530,153 | 0 | 10,884,469 |
| Palmetto Surety Corp. | 0 | 0 | 0 | 0 | 7,385,750 | 5,615,752 | 3,963,103 | 9,038,399 |
| American Surety Co. | 88,211 | 83,946 | 49,062 | 1,800,059 | 24,677,420 | 2,189,026 | 3,534,501 | 23,331,945 |
| International Fidelity Ins Co. | 0 | 0 | 0 | 1,599,086 | 25,025,632 | 25,434,745 | 26,969,163 | 23,491,214 |
| Accredited Surety & Cas Co. | 0 | 0 | 0 | 1,418,450 | 23,562,199 | 2,353,645 | 1,934,786 | 23,981,058 |
| Allegheny Casualty Co. | 0 | 0 | 0 | 1,481,238 | 16,940,042 | 18,666,839 | 18,333,369 | 17,273,512 |
| U.S. Specialty Insurance Co. | 48,552 | 201,175 | 273,942 | 434,192 | 4,689,605 | 6,790,921 | 1,403,174 | 10,077,352 |
| American Contractors Indem Co. | 0 | 1,441,462 | 2,025,193 | 1,304,283 | 10,187,024 | 4,368,052 | 2,409,675 | 12,145,401 |
| Univ Fire & Casualty Ins Co. | 0 | 0 | 0 | 191,695 | 9,068,893 | 1,738,786 | 1,426,826 | 9,380,853 |
| Philadelphia Reinsurance Corp. | 0 | 0 | 0 | 793,365 | 62,921 | 88,833 | 0 | 151,754 |
| Roche Surety & Casualty Co. | 0 | 0 | 0 | 436,297 | 13,698,752 | 3,901,911 | 3,729,853 | 13,870,810 |
| Sun Surety Insurance Co. | 35,500 | 35,500 | 0 | 669,006 | 11,073,211 | 3,097,286 | 2,187,483 | 11,983,014 |
| North River Insurance Co. | 0 | 0 | 0 | 492,773 | 6,975,648 | 1,432,274 | 2,680,787 | 5,727,135 |
| Continental Heritage Ins Co. | 0 | 0 | 0 | 408,165 | 5,966,517 | 1,368,196 | 1,459,718 | 5,874,995 |
| First Community Insurance Co. | 0 | 0 | 0 | 0 | 1,026,072 | 491,126 | 161,622 | 1,355,576 |
| 1st Atlantic Surety Co. | 0 | 0 | 0 | 10,471 | 1,527,474 | 941,273 | 587,827 | 1,880,920 |
| U.S. Fire Insurance Co. | 0 | 0 | 0 | 174,975 | 7,577,726 | 1,182,686 | 1,989,921 | 6,770,491 |
| Whitecap Surety Co. | 0 | 0 | 0 | 0 | 194,103 | 20,290 | 2,500 | 211,893 |
| Integra Insurance Inc. | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 200,000 |
| Crum & Forster Indemnity Co. | 0 | 0 | 0 | 106,921 | 3,810,381 | 32,796 | 405,561 | 3,437,616 |
| Evergreen National Indem Co. | 0 | 0 | 0 | 16,924 | 0 | 108,023 | 0 | 108,023 |
| Williamsburg National Ins Co. | 0 | 0 | 0 | 10,973 | 1,189,425 | 7,399 | 68,950 | 1,127,874 |
| Seneca Insurance Co. | 0 | 0 | 0 | 492 | 30,489,329 | 1,158,616 | 9,052,163 | 22,595,782 |
| Star Insurance Co. | 0 | 0 | 0 | 3,584 | 917,852 | 21,430 | 229,966 | 709,316 |
| U.S. Surety Co. | 97,874 | 47,448 | 53,234 | 0 | 49,359 | 100 | 1 | 49,458 |
| First Indemnity of Am Ins Co. | 0 | 0 | 0 | 347 | 321,859 | 12,637 | 117,859 | 216,637 |
| Totals | 270,137 | 1,793,591 | 2,471,865 | 18,337,054 | 305,709,361 | 105,364,045 | 118,083,970 | 292,989,436 |

©The Surety Fidelity Association of America

**CONFIDENTIAL**

# The Surety and Fidelity Association of America
## 2018 BAIL BOND SUPPLEMENT EXHIBIT #2: AGGREGATE REPORT
### (Draft)

| | # of Responses | # Responding YES | # Responding NO |
|---|---|---|---|
| 1. Is the bail bond premium reported on a gross basis? | 29 | 4 | 25 |
| 2. If the answer to #1 was no, was a permitted practice granted to the reporting entity? | 25 | 20 | 5 |
| 3. If the answer to #2 was no, please explain: **Various responses** | | | |
| 4. What bond life is used to calculate unearned premium in days? | | | |
| Average: | 222 | | |
| Median: | 150 | | |
| Mode: | 90/365 | | |
| * Of the 11 responses, two listing "1 day" were not included in the average, median and mode calculations. | 11* | n/a | n/a |
| 5. Are any amounts charged to the consumer excluded from Gross Premiums? | 29 | 10 | 19 |
| 6. If the answer to #5 was Yes, please explain: **Various responses** | | | |
| 7. Do the agents have ongoing performance obligations on the bond after execution? | 29 | 23 | 6 |
| 8. If the answer to #7 is Yes, please describe the nature of the agents' continuing obligations: **Various responses** | | | |

| | Current Year | % of GPE | % of NPE | % of GPW | Prior Year | % of GPE | % of GPW |
|---|---|---|---|---|---|---|---|
| 9. Face amount of ball bonds written | 1,166,875,701 | XXX | XXX | XXX | 1,212,887,926 | XXX | XXX |
| 10. Direct Premiums Written (Gross) | 107,453,135 | XXX | XXX | XXX | 104,676,724 | XXX | XXX |
| 11. Commissions and Brokerage Expenses | 20,615,633 | 1.8% | 19.2% | 90.6% | 24,062,618 | 2.0% | 90.8% |
| 12. Prem Written Net of Agent Comm and Broker Expenses | 118,628,800 | | | 9.4% | | | 9.2% |

| | Current Year | % of GPE | % of NPE | % of GPW | Prior Year | % of GPE | % of NPE |
|---|---|---|---|---|---|---|---|
| 13. Direct Premium Earned (Gross) | | XXX | XXX | XXX | | XXX | XXX |
| 14. Prem Earned Net of Agent Comm and Broker Exp | | XXX | XXX | XXX | | XXX | XXX |
| 15. Direct Unearned Premium Reserves | 1,137,496,833 | 1.8% | 5.7% | 2.0% | 1,185,559,802 | 0.6% | 23.0% |
| 16. Direct Losses Paid (deducting salvage) | 6,151,847 | 0.5% | 8.6% | 0.6% | 7,282,236 | 0.9% | 7.0% |
| 17. Direct Losses Incurred | 9,240,475 | 0.8% | 8.6% | 0.6% | 11,182,685 | 0.6% | 10.7% |
| 18. Direct Losses Unpaid | 9,217,901 | 0.8% | 0.3% | 0.1% | 6,856,631 | 0.1% | 6.6% |
| 19. Direct Defense Cost Containment Expenses Paid | 270,137 | 0.0% | 1.7% | 0.1% | 871,575 | 0.1% | 0.8% |
| 20. Direct Defense Cost Containment Expenses Incurred | 1,793,591 | 0.2% | 2.3% | 0.1% | 1,243,517 | 1.4% | 1.2% |
| 21. Direct Defense Cost Containment Expenses Unpaid | 2,471,865 | 0.2% | 17.1% | | 1,217,986 | | 1.2% |
| 22. Taxes, Licenses and Fees | 18,337,054 | 1.6% | | | 17,505,056 | | 16.7% |

| | Current Year | Prior Year |
|---|---|---|
| 23. Build-Up Fund account balances as of beginning of period | 305,709,361 | 313,609,976 |
| 24. Gross deposits to BUF Accounts (including interest earned) | 105,364,045 | 108,341,978 |
| 25. Gross withdrawals from Build-Up Fund accounts | 118,083,970 | 111,585,078 |
| 26. Build-Up Fund account balances as of end of period (Line 23 plus Line 24 minus Line 25) | 292,989,436 | 310,366,877 |

©The Surety Fidelity Association of America

SFAA-000390

Orgovan, Joseph

From:           Duke, Robert
Sent:           Thursday, September 6, 2018 4:52 PM
To:             Committee-BBAC-Open
Cc:             Marema, Lenore
Subject:        Meeting with Senate Staff
Attachments:    scanner@surety.local_20180816_161041.pdf



In SFAA's letter to Senators Booker and Brown in response to their letter to sureties, we offered to meet with them to discuss our comments further. Surprisingly, Senate staff took us up on our offer. Today, Lenore Marema and I met with Amanda Fischer and Corey Frayer, Democratic Professional Staff for the Senate Committee on Banking, Housing and Urban Affairs.

We introduced what SFAA was. We noted that bail companies are insurance companies that are highly regulated by state insurance departments. We tried to place bail in the proper context. That is, bail is a means to balance the interests between pre-trial liberty and security for appearance. I noted the Maryland example, in which pre-trial detentions have increased following so called bail reform. I also noted the concern that pre-trial detentions will increase in California after bail bonds are eliminated. I noted that bail bonds privatize the cost of monitoring and recovery.

I stated that an isolated focus on bail companies and agents is misguided. If meaningful prudent policy choices are to be made, states should conduct a holistic study examining data such as failure to appear rates corresponding to the different pre-trial techniques and the reasons that persons are in jail pre-trial (e.g. holds due to parole violations and repeat offences).

Ms. Fischer referenced the Senators' letter that noted the New York Times coverage of agent abuses. I stated that agents are highly regulated as well (including background checks and fingerprinting). They inquired what due diligence sureties conduct in determining with what agents they will do business. They asked if sureties follow best practices or a checklist. I stated that I did not have specifics, but that companies do not have a uniform approach. I stated that it is in the surety's best interest to partner with responsible and capable agents that comply with the law. Staff seemed unfamiliar with the company/agent relationship. I explained how the agent retains 80-90% of the premium, but also takes most of the risk. I noted that a surety underwrites the agent from an operational and financial perspective.

I stressed that a surety bond is a form of insurance and that insurance regulation is a state matter under McCarran Ferguson. It was clear that staff was looking for some angle to introduce federal regulation. Staff inquired whether the bail transaction had consumer finance features. They suggested that the bail bond was like a loan which guaranteed the defendant's payment to the court. I disagreed and I stated that the bail bond itself is an insurance transaction and the security runs to the court. They inquired about documents required by the agent that might be tangential. I stated that other documents that the agent requires are the collateral agreement and indemnity agreement. I advised that that I did not know the details of these documents. I noted that state department of insurance have regulated these documents in the past.

Staff inquired about rates. I noted that rates are regulated. I noted that rates are typically 10% of the bond amount. Staff inquired about "loss rates". I noted that a loss ratio does not convey a full

picture of the exposure, as a forfeiture may be paid out from the build-up fund and losses could be mitigated through recoveries.

Staff advised that responses to the letters are "trickling in" and if they have any questions, they will contact us.

Robert J. Duke
General Counsel
The Surety & Fidelity Association of America
202-778-3630
rduke@surety.org

---

From: Duke, Robert
Sent: Tuesday, August 21, 2018 5:09 PM
To: Committee-BBAC-Open <Committee-BBAC-Open@surety.org>
Subject: FW: Letter to Senator Booker and Senator Brown

Thank you to the Bail Bond Advisory Committee for your feedback regarding SFAA's letter to Senators Booker and Brown. I attach a copy of the letter that we sent late last week.

Rob

Robert J. Duke
General Counsel
The Surety & Fidelity Association of America
202-778-3630
rduke@surety.org

---

From: Duke, Robert
Sent: Tuesday, August 14, 2018 4:46 PM
To: Committee-BBAC-Official <Committee-BBAC-Official@surety.org>
Subject: Letter to Senator Booker and Senator Brown

Following our call yesterday, I provide a draft letter to Senators Booker and Brown in response to their information request. Please provide your comments as soon as possible. We hope to submit the letter at the end of this week.

Rob

Robert J. Duke
General Counsel
The Surety & Fidelity Association of America
202-778-3630
rduke@surety.org

 CONFIDENTIAL

# THE SURETY & FIDELITY ASSOCIATION OF AMERICA
### SERVING THE INDUSTRY SINCE 1908

August 16, 2018

The Honorable Cory A. Booker
United States Senate
359 Dirksen Senate Office Building
Washington, DC 20510

The Honorable Sherrod Brown
United States Senate
713 Hart Senate Office Bldg.
Washington, DC 20510

Re:    Letter to Bail Surety Companies

Dear Senator Booker and Senator Brown:

The Surety & Fidelity Association of America ("SFAA") is a non-profit corporation whose member insurance companies collectively write the majority of surety and fidelity bonds in the United States. SFAA is a licensed rating or advisory organization in all states and is designated by state insurance departments as a statistical agent for the reporting of premium and loss statistics for fidelity and surety bonds. SFAA's members are sureties on the vast majority of bonds in the United States and include a number of companies active in providing surety bail bonds. Our members have provided SFAA a copy of your letter dated August 3, 2018, seeking certain financial data and information regarding underwriting practices and the supervision of bail agents. The letter expresses concern that the insurance industry "is not doing all it can to ensure that the bond agents with whom they contract are complying with the law." The information requested appears intended to address this concern. While our members will decide how they will respond individually to the specific questions, the general nature of the questions warrant an industry response.

Many of the questions focus on the surety's practices to ensure that its bail agents do not engage in illegal or abusive practices. We appreciate your concerns but submit that oversight of bail companies and bail agents already is addressed through robust state insurance regulation, and federal oversight is not necessary. We note that bail bonds largely are provided to local and state (i.e. non-federal) courts. A bail bond is a form of insurance and bail companies are insurance companies regulated by state insurance departments.

As insurance companies, bail companies are subject to substantial state regulation. To write bail bonds in a particular state, the bail company must be licensed in the state and comply with certain requirements, such as minimum capital and surplus requirements, financial reporting and periodic on-site financial exams, among many other types of regulation. For example, in New Jersey, an insurance company must be authorized by the Department of Banking and Insurance in order to engage in the surety business. N.J. Stat. § 17:17-10. The insurance



The Honorable Cory A. Booker
The Honorable Sherrod Brown
August 16, 2018
Page 2

company must have a certain level of capital and surplus pursuant to N.J. Stat. § 17:17-6. Rates charged by insurance companies may not be "unreasonably high or inadequate for the safety and soundness of the insurer." N.J. Stat. § 17:29A-4. Insurance companies, including bail companies, are subject to fair claims settlement practices under N.J. Stat. 17:29B-4.

In addition to regulatory requirements generally applicable to New Jersey insurance companies, the Department of Banking and Insurance has established requirements specific to bail companies and their agents. For example, under N.J. Stat. § 17:31-13, a bail company is required to register with the Clerk of the Superior Court the names and addresses of each bail agent authorized by the surety company. The bail company also is required to disclose the name of any bail agent that has provided the surety a guarantee to cover any bail forfeitures.

A bail agent must obtain a "limited line insurance producer license" for bail bond authority before doing business in the state of New Jersey. As a condition of such licensure, the bail agent must meet certain education requirements. N.J.A.C. 11:17-3.4. New Jersey regulation prohibits agents from charging fugitive fees, banking fees and other service fees. N.J.A.C. 11:17B-3.2. New Jersey regulation also establishes conditions by which a bail surety may charge a fugitive fee to an indemnitor. N.J.A.C. 11:1-40.3. In addition, bail agents have been fully vetted by the state department of insurance. Bail agents must undergo screening and background checks before acting as a bail agent. For example, New Jersey law (PL2003, Chapter 199) requires that every person applying for a resident insurance producer license must submit fingerprints and written consent for a criminal history record check. Under N.J.A.C. 11:17E-1.3, a person "convicted of a felony involving breach of trust or dishonesty" is prohibited from engaging in the business of insurance.

Ohio insurance regulators have established similar requirements for bail companies and their agents. Generally, bail companies must have a certificate of authority to conduct business in the state. The maintenance of minimum levels of surplus and capital is a condition for the issuance of the certificate of authority. ORC § 3929.11. As insurance companies, they are subject to the prohibition of unfair and deceptive acts. ORC 3901.20. Rates must be filed with the Ohio Department of Insurance and may not be "excessive, inadequate, or unfairly discriminatory". ORC §§ 3937.01 *et seq.* Sections 3905.83 through 3905.99 establish an extensive framework for the regulation of bail agents, covering areas such as licensure, acceptance of collateral security from the customer, the charging of fees and the use of build-up funds.

Your letter also requests financial information from the bail company. As part of the existing regulatory scheme, insurance companies already are required to submit financial reports to the state insurance department. See, *e.g.* N.J. Stat. § 17:23-1 and ORC § 3923.30. Thus, financial information of insurance companies writing bail is publicly available.

The existing regulatory framework at the state level overseeing bail companies and their agents is robust and thorough. Further, in light of the extensive regulation, the activities of the

CONFIDENTIAL

The Honorable Cory A. Booker
The Honorable Sherrod Brown
August 16, 2018
Page 3

bail company and bail agent are more transparent than many other businesses. We respectfully submit that federal oversight would be duplicative and cumbersome. Further, a second layer of regulation might inhibit a company's ability to provide a service that is of value to the administration of justice.

In that regard, any regulatory action must balance the competing interests addressed by bail bonds and take into consideration the societal benefits of bail bonds. As the United States Court of Appeals for the Fifth Circuit recently stated, the use of a bail bond balances the interest of providing the accused his or her liberty before guilt is adjudged and the interest of ensuring that the person appear for trial. *ODonnell v. Harris County*, 2018 U.S. App. LEXIS 14578 (5th Cir. June 1, 2018) ("courts have repeatedly emphasized the importance of bail as a means of protecting an accused detainee's constitutional right 'in remaining free before trial,' which allows for the 'unhampered preparation of a defense, and . . . prevent[s] the infliction of punishment prior to conviction.'" (quoting *Ex parte Anderer*, 61 S.W.3d 398, 404-05 (Tex. Crim. App. 2001)(en banc))).

Therefore, regulatory action must consider that bail is a means to provide pre-trial liberty. Creating additional layers of regulations may impede the availability of secured bail, potentially leading to increased pretrial detentions. Bail also secures the critical public policy interest of having the defendant appear in court when required. A bail insurer provides the security of appearance. Under the terms of the bail bond, a bail insurer is held financially liable to the court when a defendant fails to appear. If a bail insurer fails to uphold its obligation to a court, it may be subject to state regulatory sanctions.

Specifically with respect to bail bonds, measures are taken, as part of the bond obligation, to assure that the defendant appears in court. The agent often obtains collateral or indemnity from friends and family to guarantee that if the arrested person fails to appear and the bond is forfeited, the agent and surety will have indemnity for the cost incurred in paying the bond amount to the court. This gives those who provided the collateral or indemnity a powerful financial incentive to ensure that the person appears in court or is recovered promptly in the event of a default. The agent also monitors the arrested person to avoid a default and will attempt to recover such person in the event he or she fails to appear. An agent, who is exposed to financial loss in the event of a forfeiture, might be more effective in ensuring that the arrested person appears compared to a disinterested civil servant. These systemic incentives are lacking in the case of alternative measures, such as pre-trial services, a personal recognizance or an unsecured bond.

Moreover, the cost of ensuring appearance is not borne by taxpayers. Under a bail bond framework, the cost of monitoring and recovery of the defendant is privatized and borne by the criminal defendant. Under alternative approaches, such as pre-trial services, the public agency, and therefore taxpayers, incur the cost of monitoring and recovery. These costs can be significant. In the District of Columbia, which has largely abandoned the use of private bail bonds for publicly funded pre-trial services, the Pre-Trial Services Agency has an annual budget

CONFIDENTIAL

The Honorable Cory A. Booker
The Honorable Sherrod Brown
August 16, 2018
Page 4

of over $60 million.  Under a bail bond framework, these costs largely are transferred to private entities, relieving taxpayers of this burden.

We thank you for the opportunity to provide comments.  We would be happy to meet with you and your staffs to discuss our comments further.

Sincerely,

Robert J. Duke
General Counsel

Orgovan, Joseph

| | |
|---|---|
| From: | Duke, Robert |
| Sent: | Tuesday, August 21, 2018 5:09 PM |
| To: | Committee-BBAC-Open |
| Subject: | FW: Letter to Senator Booker and Senator Brown |
| Attachments: | scanner@surety.local_20180816_161041.pdf |

**CONFIDENTIAL**

Thank you to the Bail Bond Advisory Committee for your feedback regarding SFAA's letter to Senators Booker and Brown. I attach a copy of the letter that we sent late last week.

Rob

Robert J. Duke
General Counsel
The Surety & Fidelity Association of America
202-778-3630
rduke@surety.org

From: Duke, Robert
Sent: Tuesday, August 14, 2018 4:46 PM
To: Committee-BBAC-Official <Committee-BBAC-Official@surety.org>
Subject: Letter to Senator Booker and Senator Brown

Following our call yesterday, I provide a draft letter to Senators Booker and Brown in response to their information request. Please provide your comments as soon as possible. We hope to submit the letter at the end of this week.

Rob

Robert J. Duke
General Counsel
The Surety & Fidelity Association of America
202-778-3630
rduke@surety.org

**CONFIDENTIAL**

# THE SURETY & FIDELITY ASSOCIATION OF AMERICA
### SERVING THE INDUSTRY SINCE 1908

August 16, 2018

The Honorable Cory A. Booker
United States Senate
359 Dirksen Senate Office Building
Washington, DC 20510

The Honorable Sherrod Brown
United States Senate
713 Hart Senate Office Bldg.
Washington, DC 20510

     Re:    Letter to Bail Surety Companies

Dear Senator Booker and Senator Brown:

    The Surety & Fidelity Association of America ("SFAA") is a non-profit corporation whose member insurance companies collectively write the majority of surety and fidelity bonds in the United States. SFAA is a licensed rating or advisory organization in all states and is designated by state insurance departments as a statistical agent for the reporting of premium and loss statistics for fidelity and surety bonds. SFAA's members are sureties on the vast majority of bonds in the United States and include a number of companies active in providing surety bail bonds. Our members have provided SFAA a copy of your letter dated August 3, 2018, seeking certain financial data and information regarding underwriting practices and the supervision of bail agents. The letter expresses concern that the insurance industry "is not doing all it can to ensure that the bond agents with whom they contract are complying with the law." The information requested appears intended to address this concern. While our members will decide how they will respond individually to the specific questions, the general nature of the questions warrant an industry response.

    Many of the questions focus on the surety's practices to ensure that its bail agents do not engage in illegal or abusive practices. We appreciate your concerns but submit that oversight of bail companies and bail agents already is addressed through robust state insurance regulation, and federal oversight is not necessary. We note that bail bonds largely are provided to local and state (i.e. non-federal) courts. A bail bond is a form of insurance and bail companies are insurance companies regulated by state insurance departments.

    As insurance companies, bail companies are subject to substantial state regulation. To write bail bonds in a particular state, the bail company must be licensed in the state and comply with certain requirements, such as minimum capital and surplus requirements, financial reporting and periodic on-site financial exams, among many other types of regulation. For example, in New Jersey, an insurance company must be authorized by the Department of Banking and Insurance in order to engage in the surety business. N.J. Stat. § 17:17-10. The insurance



The Honorable Cory A. Booker
The Honorable Sherrod Brown
August 16, 2018
Page 2

company must have a certain level of capital and surplus pursuant to N.J. Stat. § 17:17-6. Rates charged by insurance companies may not be "unreasonably high or inadequate for the safety and soundness of the insurer." N.J. Stat. § 17:29A-4. Insurance companies, including bail companies, are subject to fair claims settlement practices under N.J. Stat. 17:29B-4.

In addition to regulatory requirements generally applicable to New Jersey insurance companies, the Department of Banking and Insurance has established requirements specific to bail companies and their agents. For example, under N.J. Stat. § 17:31-13, a bail company is required to register with the Clerk of the Superior Court the names and addresses of each bail agent authorized by the surety company. The bail company also is required to disclose the name of any bail agent that has provided the surety a guarantee to cover any bail forfeitures.

A bail agent must obtain a "limited line insurance producer license" for bail bond authority before doing business in the state of New Jersey. As a condition of such licensure, the bail agent must meet certain education requirements. N.J.A.C. 11:17-3.4. New Jersey regulation prohibits agents from charging fugitive fees, banking fees and other service fees. N.J.A.C. 11:17B-3.2. New Jersey regulation also establishes conditions by which a bail surety may charge a fugitive fee to an indemnitor. N.J.A.C. 11:1-40.3. In addition, bail agents have been fully vetted by the state department of insurance. Bail agents must undergo screening and background checks before acting as a bail agent. For example, New Jersey law (PL2003, Chapter 199) requires that every person applying for a resident insurance producer license must submit fingerprints and written consent for a criminal history record check. Under N.J.A.C. 11:17E-1.3, a person "convicted of a felony involving breach of trust or dishonesty" is prohibited from engaging in the business of insurance.

Ohio insurance regulators have established similar requirements for bail companies and their agents. Generally, bail companies must have a certificate of authority to conduct business in the state. The maintenance of minimum levels of surplus and capital is a condition for the issuance of the certificate of authority. ORC § 3929.11. As insurance companies, they are subject to the prohibition of unfair and deceptive acts. ORC 3901.20. Rates must be filed with the Ohio Department of Insurance and may not be "excessive, inadequate, or unfairly discriminatory". ORC §§ 3937.01 *et seq.* Sections 3905.83 through 3905.99 establish an extensive framework for the regulation of bail agents, covering areas such as licensure, acceptance of collateral security from the customer, the charging of fees and the use of build-up funds.

Your letter also requests financial information from the bail company. As part of the existing regulatory scheme, insurance companies already are required to submit financial reports to the state insurance department. See, *e.g.* N.J. Stat. § 17:23-1 and ORC § 3923.30. Thus, financial information of insurance companies writing bail is publicly available.

The existing regulatory framework at the state level overseeing bail companies and their agents is robust and thorough. Further, in light of the extensive regulation, the activities of the



The Honorable Cory A. Booker
The Honorable Sherrod Brown
August 16, 2018
Page 3

bail company and bail agent are more transparent than many other businesses. We respectfully submit that federal oversight would be duplicative and cumbersome. Further, a second layer of regulation might inhibit a company's ability to provide a service that is of value to the administration of justice.

In that regard, any regulatory action must balance the competing interests addressed by bail bonds and take into consideration the societal benefits of bail bonds. As the United States Court of Appeals for the Fifth Circuit recently stated, the use of a bail bond balances the interest of providing the accused his or her liberty before guilt is adjudged and the interest of ensuring that the person appear for trial. *ODonnell v. Harris County*, 2018 U.S. App. LEXIS 14578 (5th Cir. June 1, 2018) ("courts have repeatedly emphasized the importance of bail as a means of protecting an accused detainee's constitutional right 'in remaining free before trial,' which allows for the 'unhampered preparation of a defense, and . . . prevent[s] the infliction of punishment prior to conviction.'" (quoting *Ex parte Anderer*, 61 S.W.3d 398, 404-05 (Tex. Crim. App. 2001)(en banc))).

Therefore, regulatory action must consider that bail is a means to provide pre-trial liberty. Creating additional layers of regulations may impede the availability of secured bail, potentially leading to increased pretrial detentions. Bail also secures the critical public policy interest of having the defendant appear in court when required. A bail insurer provides the security of appearance. Under the terms of the bail bond, a bail insurer is held financially liable to the court when a defendant fails to appear. If a bail insurer fails to uphold its obligation to a court, it may be subject to state regulatory sanctions.

Specifically with respect to bail bonds, measures are taken, as part of the bond obligation, to assure that the defendant appears in court. The agent often obtains collateral or indemnity from friends and family to guarantee that if the arrested person fails to appear and the bond is forfeited, the agent and surety will have indemnity for the cost incurred in paying the bond amount to the court. This gives those who provided the collateral or indemnity a powerful financial incentive to ensure that the person appears in court or is recovered promptly in the event of a default. The agent also monitors the arrested person to avoid a default and will attempt to recover such person in the event he or she fails to appear. An agent, who is exposed to financial loss in the event of a forfeiture, might be more effective in ensuring that the arrested person appears compared to a disinterested civil servant. These systemic incentives are lacking in the case of alternative measures, such as pre-trial services, a personal recognizance or an unsecured bond.

Moreover, the cost of ensuring appearance is not borne by taxpayers. Under a bail bond framework, the cost of monitoring and recovery of the defendant is privatized and borne by the criminal defendant. Under alternative approaches, such as pre-trial services, the public agency, and therefore taxpayers, incur the cost of monitoring and recovery. These costs can be significant. In the District of Columbia, which has largely abandoned the use of private bail bonds for publicly funded pre-trial services, the Pre-Trial Services Agency has an annual budget



The Honorable Cory A. Booker
The Honorable Sherrod Brown
August 16, 2018
Page 4

of over $60 million.  Under a bail bond framework, these costs largely are transferred to private entities, relieving taxpayers of this burden.

We thank you for the opportunity to provide comments.  We would be happy to meet with you and your staffs to discuss our comments further.

Sincerely,

Robert J. Duke
General Counsel

Orgovan, Joseph

Subject:            Letter from Senators Booker and Brown



Start:              Mon 8/13/2018 4:00 PM
End:                Mon 8/13/2018 5:00 PM
Show Time As:       Tentative

Recurrence:         (none)

Meeting Status:     Not yet responded

Organizer:          Duke, Robert
Required AttendeesCommittee-BBAC-Open


Many, if not all, of you likely have received a letter similar to the attached from Senators Cory Booker and Sherrod Brown, The letter requests extensive information regarding the company's policies, procedures and activities with respect to bail agent compliance. The request is based on misperceptions regarding the bail industry and inaccurate reports.

Although each company will need to decide how to respond individually, we would like to schedule a call to discuss the nature of an industry response. For example, should SFAA and other industry trade associations schedule a meeting with the staffs of Senators Booker and Brown to address the misperceptions? Should we submit an industry letter?

The phone number for the call is: 1-800-220-9875
Access Code: 24384269

Rob

Robert J. Duke
General Counsel
The Surety & Fidelity Association of America

**CONFIDENTIAL**

# United States Senate
WASHINGTON, DC 20510

August 3, 2018



Dear ███████

We are writing to request detailed information about ███████████ policies and practices with respect to your underwriting of bail bond contracts.

Every year, bail bond agents across the country are estimated to bring in more than $2 billion dollars from bond premiums and fees. While people of means receive the full amount of their posted bail back when their cases conclude, payments made by consumers in the commercial bail market are kept by the industry—even when charges are dropped or they are determined to be innocent. As a result of these costs, consumers in the bail industry frequently find themselves trapped in a cycle of debt and fees related to their payments, often for long after the original charges with the courts have been resolved.

Further, recent studies and investigative reporting, including by the *New York Times*, suggest that the American bail industry is rife with unfair and abusive practices that harm low-income consumers and undermine the goals of our criminal legal system.[5] Those practices—documented in public reports and litigation around the country—include charging undisclosed or illegal fees; misleading consumers about the terms of their bail agreements or about their legal options; engaging in harassing and abusive collection practices, including by making threats to send arrestees back to jail without a legal basis to do so; forcing bail bond cosigners to turn over property that was used as collateral in cases where the arrestee complied with the terms of the bail; and threatening or apprehending individuals in order to coerce them to make premium payments. Many of these practices violate federal and state legislation designed to protect consumers. But with patchwork oversight and data collection in the states and courts, we are concerned that these harmful practices may escape scrutiny and accountability.

In most states, bail bonds are underwritten by large corporate insurers who contract with bail agents to receive a share of consumers' payments. Even though their risk in the transactions is limited

---

[1] *See* Jessica Silver-Greenberg & Shaila Dewan, *When Bail Feels Less Like Freedom, More Like Extortion*, N.Y. TIMES (Mar. 31, 2018), *available at* https://www.nytimes.com/2018/03/31/us/bail-bonds-extortion.html.

CONFIDENTIAL

and their role largely hidden from public view, these corporations play an active role in our commercial bail system.[2] The practices, policies, and actions of bail surety companies have wide impact on agents, consumers, and the justice system—but are largely unseen.

In light of these disclosures, we are concerned that many of our nation's insurance companies may be pursuing profits at the expense of economic security for vulnerable families and the goals of public safety. We are particularly concerned that the insurance industry—which has received hundreds of millions of dollars in revenues related to bail bond underwriting—is not doing all it can to ensure that the bond agents with whom they contract are complying with the law.

According to recent public reports, your firm currently is receiving significant revenues from the underwriting of bail bonds issued in the United States.[3] To better understand the steps your institution is taking to ensure that the bond agents with whom you contract are not engaging in these abuses, we kindly ask that you respond by September 3 to the following questions:

**Information about your firm's underwriting of bail bonds**

- How much revenue did your institution generate from bail bond premiums in each of the past five years?
- What percentage of bail premiums do you charge bail agents for underwriting? How is this rate set, and does it vary by jurisdiction?
- Do you require bond agents to pay into any bail-up funds or similar reserve schemes?
- Are underwriting fees based on the collected amount or the total owed amount for financed premiums? Do you collect your underwriting fees at the commencement of the transaction, upon final payment, or in some combination?
- What guarantees are made in your contracts to be responsible for any forfeitures? How many times in the past five years have you paid out on forfeited bail bonds?

**Information about steps your firm is taking to monitor for abuses and legal violations**

- What efforts has your company made to ensure fair and legal practices by bail agents with whom you contract and work?
- What mechanisms do you use to train, direct, or monitor the practices of bail agents that you insure?

---

[2] Bail bonds are rarely declared forfeited; when they are, the bond agent retains the primary obligation for paying the forfeiture. Even when this happens, sureties can typically collect from funds previously paid by the agents and held in reserve.

[3] *See* COLOR OF CHANGE & AM. CIVIL LIBERTIES UNION, SELLING OFF OUR FREEDOM: HOW INSURANCE CORPORATIONS HAVE TAKEN OVER OUR BAIL SYSTEM (May 2017), *available at* https://www.aclu.org/report/selling-our-freedom-how-insurance-corporations-have-taken-over-our-bail-system; BEST'S MARKET SEGMENT REPORT, WAS 2017 THE TIPPING POINT FOR THE BAIL INDUSTRY? (June 2018).

**CONFIDENTIAL**

- Do you have any policies requiring bond agents to affirm that their financing, collection, surrender, and other practices are in full compliance with applicable laws?
- What actions do you require the bond agents with whom you contract affirmatively take to ensure that consumers of bail bonds contracts understand the terms to which they are agreeing?
- As far as you are aware, have any bond agents with whom you have contracted been sued for any misconduct, business practices, or execution of contracts? How many have been subject to administrative or enforcement action? What were the outcomes? What action, if any, did you take in relation to the named agents?
- How many times, and in what jurisdictions, have you been named as a defendant in litigation, or a party in an administrative or enforcement action, pertaining to your role as bail surety? What were the outcomes?
- How many times in the past five years have you cut relations with an agent because of reported abusive practices, and why?

### Information about alleged abusive practices

- What fees do you allow the agents with whom you contract to include beyond the bond premium (e.g., for installments, additional "services," or otherwise)?
- What steps are you taking to monitor how often and on what terms agents use installment contracts?
- Do your policies allow bail agents with whom you contract to surrender defendants for falling behind on financed bail payments? Under what circumstances, if any, do you require or encourage agents to surrender arrestees? What steps are you taking to monitor whether agents with whom you contract have ever surrendered individuals for this offense?
- Do any of your contracts—or addendums, contracts used by bail agents, and similar documents—allow supervision requirements (like electronic monitoring or drug testing), beyond what is required by the court? Where your agents require such terms, do they report it to you? Do you ever require, through your contracts and interactions with bail agents, that those terms be imposed on consumers? Where they collect for "supervision services," is any portion of these funds shared with you?
- Do you have any policies with respect to requiring family members or friends to co-sign contracts with the bail bond agent establishing that they will be responsible for paying the full bail amount if the person does not appear in court or violates the terms of the contract?
- Do you have any policies or guidance regarding retaining collateral? Do you have any policies with respect to requiring the bail agents with whom you contract to require people and their families to put up property and other assets as collateral? Do you track any information regarding the retention or seizing of collateral by your company or any licensed agents?
- Do you have any policies requiring mandatory arbitration?

**CONFIDENTIAL**

- How many times over the past five years has your company been a party to administrative action or litigation to contest, or object to the forfeiture of a bond or demand for payment on a bond?

**Information about your firm's willingness to consider affirmative steps to ensure compliance and educate consumers**

- Do you have provisions in your contracts with agents that prohibit certain practices—for example, the use of financed premiums or incarceration for failure to pay on installment contracts? Would you consider including these or similar terms going forward?
- Will you commit to ending relations with agents who are credibly accused of abusive practices?
- Will you consider taking specific actions to ensure that consumers understand their legal rights in the commercial bail transactions that your firm underwrites, in addition to what you currently are doing? What actions will you take?

Sincerely,

Cory A. Booker
United States Senator

Sherrod Brown
United States Senator

Orgovan, Joseph

From:            Duke, Robert
Sent:            Wednesday, June 27, 2018 1:05 PM
To:              Committee-BBAC-Open
Subject:         FW: 2017 Bail Bond Report
Attachments:     Bail Bond Report (Draft, June 26, 2018).pdf

Attached is a draft of the 2017 Bail Supplement. Please let us know of any errors or revisions that need to be made.

Thank you

Rob

Robert J. Duke
General Counsel
The Surety & Fidelity Association of America
202-778-3630
rduke@surety.org

From: O'Donnell, Edward
Sent: Wednesday, June 27, 2018 1:00 PM
To: Duke, Robert <RDuke@surety.org>
Subject: 2017 Bail Bond Report



Rob,

Here is the first draft of the 2017 Bail Bond report.

Broadway Insurance and Surety Company (NAIC Comp. #15213) was on the 2017 list, but was not included in the dataset this year. They did not report any surety at all, which confirms that they had no bail.

The only new company to appear on the list is Philadelphia Reinsurance Company.

Let me know if you have any questions.

Thank you.

Ed

Edward M. O'Donnell CPCU, CIDM
Statistical Manager
The Surety & Fidelity Association of America
202-778-3632
www.surety.org

 

Surety and fidelity bonds: Protecting consumers, taxpayers and businesses.

SFAA 000407

## The Surety and Fidelity Association of America
### 2017 BAIL BOND SUPPLEMENT EXHIBIT #1A: TOP BAIL BOND WRITERS
(Draft, June 26, 2018)

| Company Name | 9. Face Amount of Bail Bonds Written | 10. Direct Premiums Written (Gross) | 11. Comm and Broker Expenses | 12. Prem Writ Net of Agent Comm & Broker Expenses 10 - Line 11 = Line 12 | 13. Direct Premium Earned (Gross) | 14. Prem Earned Net of Agent Comm & Broker Expenses | 15. Direct Unearned Premium Reserves | 16. Direct Losses Paid (deducting salvage) | 17. Direct Losses Incurred | 18. Direct Losses Unpaid |
|---|---|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 2,148,363,265 | 206,854,102 | 188,624,046 | 18,230,056 | 206,787,684 | 18,254,638 | 10,940,430 | 0 | 0 | 0 |
| American Surety Co. | 1,482,363,391 | 133,575,279 | 122,209,293 | 11,365,986 | 129,576,097 | 11,025,693 | 1,588,944 | 833,012 | 635,871 | 1,014,887 |
| Seaview Insurance Co. | 1,460,933,997 | 133,643,557 | 126,496,183 | 7,147,375 | 133,040,811 | 7,118,643 | 606,951 | 0 | (100,122) | 345,494 |
| Lexington National Ins Corp. | 1,383,360,537 | 129,179,709 | 117,961,703 | 11,218,006 | 122,612,798 | 11,218,006 | 3,043,504 | 87,390 | 3,119,023 | 243,818 |
| Financial Cas & Surety Inc. | 1,377,760,068 | 12,644,550 | 0 | 12,644,550 | 12,644,550 | 12,644,550 | 0 | 4,100,474 | 3,742,288 | 2,681,531 |
| Palmetto Surety Corp. | 1,034,320,335 | 97,332,667 | 84,113,045 | 13,219,622 | 13,219,622 | 6,973,193 | 0 | 1,503,864 | 2,262,864 | 1,994,488 |
| Accredited Surety & Cas Co. | 970,787,235 | 90,301,251 | 83,328,058 | 6,973,193 | 90,301,251 | 6,973,193 | 0 | 0 | 0 | 0 |
| International Fidelity Ins Co. | 876,947,990 | 14,958,401 | 12,138,465 | 2,819,936 | 14,958,401 | 2,819,936 | 0 | 0 | 0 | 0 |
| Allegheny Casualty Co. | 780,247,157 | 28,938,036 | 26,949,997 | 2,588,039 | 28,938,036 | 2,588,039 | 0 | 0 | 0 | 0 |
| American Contractors Indem Co. | 585,131,532 | 55,252,487 | 51,251,553 | 4,000,934 | 58,428,701 | 4,307,156 | 347,110 | (372,911) | 163,576 | 555,297 |
| U.S. Specialty Insurance Co. | 580,548,850 | 54,794,306 | 52,778,030 | 2,016,276 | 47,994,661 | 1,808,121 | 298,280 | 0 | (59,601) | 173,993 |
| Roche Surety & Casualty Co. | 414,741,447 | 42,023,629 | 39,039,462 | 2,984,167 | 42,875,643 | 3,001,295 | 399,203 | 0 | 0 | 0 |
| Univ Fire & Casualty Ins Co. | 404,080,977 | 37,186,314 | 34,046,798 | 3,139,516 | 34,046,798 | 3,139,516 | 36,612 | 0 | 0 | 0 |
| Seneca Insurance Co. | 390,848,268 | 37,797,214 | 35,624,238 | 2,172,976 | 51,276,990 | 2,947,932 | 70,513 | 0 | 0 | 0 |
| Sun Surety Insurance Co. | 305,848,942 | 29,477,434 | 25,674,178 | 3,803,256 | 29,258,027 | 3,782,626 | 34,900 | (45,144) | (45,144) | 0 |
| North River Insurance Co. | 283,476,049 | 39,911,449 | 37,024,678 | 2,886,771 | 39,911,939 | 2,886,771 | 792,388 | (33,337) | 0 | 0 |
| Continental Heritage Ins Co. | 281,096,790 | 28,109,679 | 26,531,101 | 1,578,578 | 28,375,231 | 1,594,648 | 2,347,365 | 0 | 0 | 0 |
| Philadelphia Reinsurance Corp. | 251,685,904 | 23,562,803 | 22,052,977 | 1,509,826 | 15,273,087 | 1,269,330 | 240,496 | 0 | 28,737 | 28,737 |
| First Community Insurance Co. | 239,548,493 | 24,202,000 | 21,999,397 | 2,202,604 | 24,200,290 | 2,200,894 | 1,091,716 | 0 | 0 | 0 |
| U.S. Fire Insurance Co. | 143,047,596 | 22,272,214 | 20,181,736 | 2,090,478 | 22,294,935 | 2,090,478 | 605,367 | 58,929 | 0 | 0 |
| 1st Atlantic Surety Co. | 141,700,408 | 11,151,822 | 10,348,694 | 803,128 | 11,151,822 | 1,137,511 | 0 | 64,385 | 95,641 | 180,616 |
| Crum & Forster Indemnity Co. | 128,263,276 | 32,694,969 | 31,011,246 | 1,683,723 | 32,584,272 | 1,683,723 | 597,849 | 0 | 0 | 0 |
| Empire Bonding & Insurance Co. | 79,833,770 | 969,745 | | 969,745 | 905,210 | 0 | 421,776 | 0 | 19,311 | 91,614 |
| Star Insurance Co. | 40,224,090 | 4,419,637 | 4,128,277 | 291,360 | 6,158,576 | 413,862 | 311,545 | 0 | 0 | 0 |
| Whitecap Surety Co. | 32,977,336 | 3,297,734 | 3,031,127 | 266,607 | 3,297,734 | 266,607 | 0 | 0 | 0 | 0 |
| Williamsburg National Ins Co. | 31,305,382 | 3,491,526 | 3,216,294 | 275,232 | 5,626,103 | 436,675 | 273,970 | 0 | 0 | 0 |
| Integra Insurance Inc. | 27,855,880 | 2,780,325 | 2,362,486 | 417,839 | 2,780,325 | 417,839 | 0 | 0 | 0 | 0 |
| Indiana Lumbermens Mutl Ins Co | 11,694,780 | 2,424,112 | 2,367,206 | 56,906 | 715,696 | (1,651,510) | 0 | 0 | 0 | 0 |
| First Indemnity of Am Ins Co. | 9,921,515 | 992,152 | 912,779 | 79,373 | 2,067,354 | 170,316 | 13,699 | (178,778) | | (527,899) |
| U.S. Surety Co. | 8,995,434 | 824,240 | 756,755 | 67,485 | 1,585,282 | 130,236 | 0 | 1,264,352 | 1,320,241 | 74,055 |
| **Totals** | 15,907,910,694 | 1,305,063,343 | 1,185,559,802 | 119,503,543 | 1,212,887,926 | 104,676,724 | 24,062,618 | 7,282,236 | 11,182,685 | 6,856,631 |

CONFIDENTIAL

© The Surety Fidelity Association of America

SFAA 000408

**CONFIDENTIAL**

©The Surety Fidelity Association of America

## The Surety and Fidelity Association of America
## 2017 BAIL BOND SUPPLEMENT EXHIBIT #1B: TOP BAIL BOND WRITERS
(Draft, June 26, 2018)

| Company | 19. Direct Defense Cost Containment Expenses Paid | 20. Direct Defense Cost Containment Expenses Incurred | 21. Direct Defense Cost Containment Expenses Unpaid | 22. Taxes, Licenses and Fees | 23. Build-Up Fund Account Balances as of Beginning of Period | 24. Gross deposits to BUF Accounts (including interest earned) | 25. Gross Withdrawals from Build-Up Fund Accounts | 26. Build-Up Fund Account Balances as of End of Period (Line 23 + Line 24 - Line 25) |
|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 0 | | 0 | 0 | 51,543,582 | 16,870,812 | 18,540,453 | 49,873,941 |
| American Surety Co. | 110,016 | 99,309 | 53,326 | 2,699,509 | 23,670,081 | 3,888,235 | 2,880,896 | 24,677,420 |
| Seaview Insurance Co. | 0 | (25,031) | 86,374 | 3,308,524 | 9,956,997 | 397,319 | 0 | 10,354,316 |
| Lexington National Ins Corp. | 0 | 0 | 0 | 0 | 26,348,044 | 8,823,354 | 8,693,845 | 26,477,553 |
| Financial Cas & Surety Inc. | 0 | 0 | 0 | 2,192,995 | 12,328,503 | 2,472,453 | 2,414,599 | 12,386,357 |
| Palmetto Surety Corp. | 0 | 0 | 0 | 0 | 5,940,466 | 4,700,454 | 3,255,171 | 7,385,750 |
| Accredited Surety & Cas Co. | 0 | 0 | 0 | 995,885 | 23,872,197 | 2,027,871 | 2,337,869 | 23,562,199 |
| International Fidelity Ins Co. | 0 | 0 | 0 | 1,756,638 | 24,285,678 | 26,307,078 | 25,567,124 | 25,025,632 |
| Allegheny Casualty Co. | 0 | 0 | 0 | 1,311,338 | 16,599,286 | 18,947,143 | 18,606,387 | 16,940,042 |
| American Contractors Indem Co. | 136,203 | 342,495 | 695,297 | 1,231,301 | 10,720,867 | 3,963,111 | 4,496,953 | 10,187,024 |
| U.S. Specialty Insurance Co. | 0 | (21,028) | 72,767 | 263,729 | 4,630,118 | 1,232,058 | 1,172,571 | 4,689,605 |
| Roche Surety & Casualty Co. | 0 | 0 | 0 | 595,540 | 13,576,305 | 4,655,379 | 4,532,932 | 13,698,752 |
| Univ Fire & Casualty Ins Co. | 0 | 0 | 0 | 157,998 | 7,813,351 | 2,306,810 | 1,051,268 | 9,068,893 |
| Seneca Insurance Co. | 0 | 0 | 0 | 213,602 | 36,322,729 | 1,105,311 | 6,938,711 | 30,489,329 |
| Sun Surety Insurance Co. | 21,937 | 21,937 | 0 | 537,038 | 10,035,111 | 2,577,776 | 1,539,676 | 11,073,211 |
| North River Insurance Co. | 0 | 0 | 0 | 433,184 | 6,779,846 | 1,810,478 | 1,614,676 | 6,975,648 |
| Continental Heritage Ins Co. | 0 | 0 | 0 | 500,358 | 6,153,786 | 836,047 | 1,023,316 | 5,966,517 |
| Philadelphia Reinsurance Corp. | 0 | 114,948 | 114,948 | 553,726 | 0 | 62,921 | 0 | 62,921 |
| First Community Insurance Co. | 0 | 0 | 0 | 0 | 830,260 | 493,852 | 298,040 | 1,026,072 |
| U.S. Fire Insurance Co. | 0 | 0 | 0 | 160,412 | 7,916,666 | 1,431,056 | 1,769,996 | 7,577,726 |
| 1st Atlantic Surety Co. | 0 | 0 | 0 | 19,248 | 1,224,615 | 968,125 | 665,266 | 1,527,474 |
| Crum & Forster Indemnity Co. | 0 | 0 | 0 | 375,593 | 3,806,631 | 1,363,864 | 1,360,114 | 3,810,381 |
| Empire Bonding & Insurance Co. | 1,588 | 20,899 | 91,614 | 29,406 | 646,529 | 0 | 0 | 646,529 |
| Star Insurance Co. | 0 | 0 | 0 | 89,022 | 1,070,692 | 211,300 | 364,140 | 917,852 |
| Whitecap Surety Co. | 0 | 0 | 0 | 0 | 192,849 | 1,254 | 0 | 194,103 |
| Williamsburg National Ins Co. | 0 | 0 | 0 | 63,523 | 1,243,082 | 160,225 | 213,882 | 1,189,425 |
| Integra Insurance Inc. | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 200,000 |
| Indiana Lumbermens Mutl Ins Co | 0 | 0 | 0 | 0 | 5,024,790 | 18,592 | 1,032,395 | 4,010,987 |
| First Indemnity of Am Ins Co. | 0 | 0 | 0 | 0 | 768,484 | 706,984 | 1,153,609 | 321,859 |
| U.S. Surety Co. | 601,831 | 689,988 | 103,660 | 16,487 | 108,431 | 2,116 | 61,189 | 49,359 |
| **Totals** | 871,575 | 1,243,517 | 1,217,986 | 17,505,056 | 313,609,976 | 108,341,978 | 111,585,078 | 310,366,877 |

SFAA 000409

**CONFIDENTIAL**

# The Surety and Fidelity Association of America
## 2017 BAIL BOND SUPPLEMENT EXHIBIT #2: AGGREGATE REPORT
### (Draft, June 26, 2018)

| | # of Responses | # Responding YES | # Responding NO |
|---|---|---|---|
| 1. Is the bail bond premium reported on a gross basis? | 30 | 5 | 25 |
| 2. If the answer to #1 was no, was a permitted practice granted to the reporting entity? | 27 | 20 | 5 |
| 3. If the answer to #2 was no, please explain: **Various responses** | | | |
| 4. What bond life is used to calculate unearned premium in days? | | | |
|    Average: 198 | 12* | n/a | n/a |
|    Median: 120 | | | |
|    Mode: 120/365 | | | |
| * Of the 12 responses, two listing "1 day" were not included in the average, median and mode calculations. | | | |
| 5. Are any amounts charged to the consumer excluded from Gross Premiums? | 30 | 10 | 20 |
| 6. If the answer to #5 was Yes, please explain: **Various responses** | | | |
| 7. Do the agents have ongoing performance obligations on the bond after execution? | 30 | 23 | 7 |
| 8. If the answer to #7 is Yes, please describe the nature of the agents' continuing obligations: **Various responses** | | | |

| | Current Year | % of GPW | Prior Year | % of GPW |
|---|---|---|---|---|
| 9. Face amount of bail bonds written | 15,907,910,694 | XXX | 16,647,876,003 | XXX |
| 10. Direct Premiums Written (Gross) | 1,305,063,343 | XXX | 1,349,074,567 | XXX |
| 11. Commissions and Brokerage Expenses | 1,185,559,802 | 90.8% | 1,224,880,350 | 90.8% |
| 12. Prem Written Net of Agent Comm and Broker Expenses | 119,503,543 | 9.2% | 124,194,218 | 9.2% |

| | Current Year | % of GPE | % of NPE | Prior Year | % of GPE | % of NPE |
|---|---|---|---|---|---|---|
| 13. Direct Premium Earned (Gross) | 1,212,887,926 | XXX | XXX | 1,298,069,281 | XXX | XXX |
| 14. Prem Earned Net of Agent Comm and Broker Exp | 104,676,724 | XXX | XXX | 112,181,845 | XXX | XXX |
| 15. Direct Unearned Premium Reserves | 24,062,618 | 2.0% | 23.0% | 30,072,129 | 2.3% | 26.8% |
| 16. Direct Losses Paid (deducting salvage) | 7,282,236 | 0.6% | 7.0% | 5,724,209 | 0.4% | 5.1% |
| 17. Direct Losses Incurred | 11,182,685 | 0.9% | 10.7% | 7,036,857 | 0.5% | 6.3% |
| 18. Direct Losses Unpaid | 6,856,631 | 0.6% | 6.6% | 6,818,371 | 0.5% | 6.1% |
| 19. Direct Defense Cost Containment Expenses Paid | 871,575 | 0.1% | 0.8% | 325,098 | 0.0% | 0.3% |
| 20. Direct Defense Cost Containment Expenses Incurred | 1,243,517 | 0.1% | 1.2% | 268,397 | 0.0% | 0.2% |
| 21. Direct Defense Cost Containment Expenses Unpaid | 1,217,986 | 0.1% | 1.2% | 158,829 | 0.0% | 0.1% |
| 22. Taxes, Licenses and Fees | 17,505,056 | 1.4% | 16.7% | 19,642,664 | 1.5% | 17.5% |

| | Current Year | Prior Year |
|---|---|---|
| 23. Build-Up Fund account balances as of beginning of period | 313,609,976 | 310,544,650 |
| 24. Gross deposits to BUF Accounts (including interest earned) | 108,341,978 | 107,024,516 |
| 25. Gross withdrawals from Build-Up Fund accounts | 111,585,078 | 103,892,894 |
| 26. Build-Up Fund account balances as of end of period (Line 23 plus Line 24 minus Line 25) | 310,366,877 | 313,676,271 |

©The Surety Fidelity Association of America

Orgovan, Joseph

| | |
|---|---|
| From: | Girardi, Devin |
| Sent: | Thursday, March 1, 2018 4:20 PM |
| To: | Committee-BBAC-Open |
| Subject: | Bail Case - Buffin Class Certification |
| Attachments: | Buffin v. City _ County of San Francisco_ 2018 U.S. Dist. LEXIS 31875.PDF |

Members,

Attached, please find a copy of *Buffin v. City & County of San Francisco*, 2018 U.S. Dist. LEXIS 31875 (N.D. Cal. Feb. 26, 2018), the ongoing matter challenging the constitutionality of bail schedules for arrestees eligible to be released on bail. In the attached trial order, the court granted the plaintiffs' motion for class certification. Specifically, the court certified a class consisting of: all pre-arraignment arrestees (i) who are, or will be, in the custody of the San Francisco Sheriff; (ii) whose bail amount is determined by the Felony and Misdemeanor Bail Schedule as established by the Superior Court of California, County of San Francisco; (iii) whose terms of pretrial release have not received an individualized determination by a judicial officer; and (iv) who remain in custody for any amount of time because they cannot afford to pay their set bail amount. Accordingly, the matter will proceed as a certified class action.

Devin S. Girardi,
Surety Analyst

The Surety & Fidelity Association of America
1140 19th Street, NW
Suite 500
Washington, DC 20036

T: 202-778-3624
F: 202-463-0606

www.surety.org



Surety and Fidelity Bonds: Protecting Consumers, Taxpayers and Businesses

From: Girardi, Devin
Sent: Friday, February 16, 2018 10:36 AM
To: Committee-BBAC-Open <Committee-BBAC-Open@surety.org>
Subject: Bail Case - Constitutional Challenge

Members,

Attached, please find a copy of *Odonnell v. Harris County*, 2018 U.S. App. LEXIS 3473 (5th Cir. Feb. 14, 2018), in which the appellate court was asked to review a preliminary injunction against Harris County's bail setting methods for misdemeanor arrestees. As you are aware, constitutional challenges to bail schedules have become an increasingly important topic, and this opinion is worth review. At issue in *Odonnell* is whether the Harris County bail system violates state statutory and constitutional law, as well as the Fourteenth Amendment. Ultimately, the appellate court affirmed the trial court's ruling that the County's bail system violates both due process and equal protection; however, the injunction was found to be overbroad so that the matter was remanded to the lower court on procedural grounds to craft injunctive relief more narrowly tailored to remedy the harm at issue.

SFAA 000411

Devin S. Girardi,
Surety Analyst

The Surety & Fidelity Association of America
1140 19th Street, NW
Suite 500
Washington, DC 20036

T: 202-778-3624
F: 202-463-0606

www.surety.org




Surety and Fidelity Bonds: Protecting Consumers, Taxpayers and Businesses

---

From: Girardi, Devin
Sent: Friday, February 2, 2018 11:26 AM
To: Committee-BBAC-Open <Committee-BBAC-Open@surety.org>
Cc: Lanak, Frank <flanak@hccsurety.com>; mwhitlock@ASC-USI.com; sharon.michaud@aiasurety.com
Subject: RE: Bail Cases


In *Jones v. Davis*, 2018 U.S. Dist. LEXIS 16148 (E.D. Mo. Jan. 31, 2018), the plaintiff, a current prisoner, attempted to file a *pro se*, 42 U.S.C. § 1983 complaint *in forma pauperis*, pursuant to 28 U.S.C. § 1915, which requires the court to first review the complaint and dismiss it if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. In his complaint, the plaintiff alleged that he was pursued by two bail bondsmen by car and, as the pursuit continued, the plaintiff saw police officers and approached them for protection. At that point, the complaint stated that the bail bondsmen identified themselves to the officers and said they were pursuing the plaintiff because he was wanted for violating bail. The police officers took the plaintiff into custody. While handcuffed, the complaint further alleged that one of the bondsmen, in the presence of the officers, assaulted him after one officer allegedly told the bondsman to "[g]o ahead I ain't seen nothing." In its review of the plaintiff's complaint, the court noted that a claim under § 1983 must allege that: (1) the defendant acted under color of state law; and (2) the defendant's alleged conduct deprived the plaintiff of a federally-protected right. Nowhere in the complaint did the plaintiff allege that the bail bondsmen acted under color of state law for purposes of § 1983. Accordingly, the court dismissed the complaint, without prejudice, as to the bondsmen. In dismissing the case, the court specifically noted that bail bonding is recognized as a private function, exercised on behalf of a private bonding company, based on private contract and that private conduct is beyond the reach of § 1983 "no matter how discriminatory or wrongful" that conduct may be.


Devin S. Girardi,
Surety Analyst

The Surety & Fidelity Association of America
1140 19th Street, NW
Suite 500
Washington, DC 20036

T: 202-778-3624

F: 202-463-0606

[www.surety.org](www.surety.org)



Surety and Fidelity Bonds: Protecting Consumers, Taxpayers and Businesses

No *Shepard's* Signal™
As of: March 1, 2018 8:14 PM Z

## *Buffin v. City & County of San Francisco*

United States District Court for the Northern District of California

February 26, 2018, Decided; February 26, 2018, Filed

CASE NO. 15-cv-04959-YGR

**Reporter**

2018 U.S. Dist. LEXIS 31875 *

RIANA BUFFIN, ET AL., Plaintiffs, vs. CITY AND
COUNTY OF SAN FRANCISCO, ET AL., Defendants.

## Core Terms

plaintiffs', proposed class, class member, bail schedule,
requirements, custody, class certification, injunctive,
typicality, parties, ascertainability, certification,
arrestees, adequacy, cannot afford, individualized,
judicial officers, setting bail, bail amount, commonality,
bail, internal quotation marks, oral argument,
declaratory, numerosity, Modified, terms

**Counsel:** [*1] For Riana Buffin, Crystal Patterson,
Plaintiffs: Phil Telfeyan, LEAD ATTORNEY, Equal
Justice Under Law, Washington, DC; Alec George
Karakatsanis, Civil Rights Corps, Washington, DC;
Catherine Bentley Sevcenko, PRO HAC VICE, Equal
Justice Under Law, Washington, DC; Robert E. Sims,
Steven Mark Bauer, Tyler Paul Young, Latham &
Watkins LLP, San Francisco, CA.

For City and County of San Francisco, Defendant:
Jeremy Michael Goldman, LEAD ATTORNEY, San
Francisco City Attorney's Office, San Francisco, CA;
Harmeet K. Dhillon, Dhillon Law Group Inc., San
Francisco, CA.

For Sheriff Vicki Hennessy, Defendant: Jeremy Michael
Goldman, LEAD ATTORNEY, San Francisco City
Attorney's Office, San Francisco, CA.

For Attorney General Kamala Harris, Defendant: Jose A
Zelidon-Zepeda, California State Attorney General's
Office, Department of Justice, San Francisco, CA.

For California Bail Agents Association, Intervenor Dft:
Harmeet K. Dhillon, LEAD ATTORNEY, Gregory
Richard Michael, Krista Lee Baughman, Dhillon Law
Group Inc., San Francisco, CA; Brandon D. Baum,
Dhillon Law Group LLC, San Francisco, CA.

For San Francisco Public Defender's Office, Amicus:
Mary Beth McCord, LEAD ATTORNEY, Institute for

Constitutional [*2] Advocacy and Protection,
Washington, DC.

**Judges:** YVONNE GONZALEZ ROGERS, UNITED
STATES DISTRICT JUDGE.

**Opinion by:** YVONNE GONZALEZ ROGERS

## Opinion

ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION AS MODIFIED BY THE COURT

Re: Dkt. No. 140

Now before the Court is plaintiffs' motion for class
certification. (Dkt. No. 140 ("Motion").) Having carefully
considered the papers submitted, the pleadings in this
action, the oral arguments held on December 12, 2017,
and the parties' comments to the Court's proposed class
definition, and for the reasons set forth below, the Court
GRANTS AS MODIFIED BY THE COURT plaintiffs' Motion.[1]

### I. RELEVANT BACKGROUND

The facts at issue in this case are well known to the
parties and the Court. The Court adopts in full the
background section of its order denying plaintiffs' and
CBAA's motions for summary judgment. (*See* Dkt. No.
191.) The Court summarizes the procedural background
pertinent to the instant motion below.

_____

[1] With respect to the various *Daubert* motions filed by plaintiffs
and California Bail Agents Association ("CBAA") (Dkt. Nos.
134, 137, 138, & 139), the Court DENIES these motions
WITHOUT PREJUDICE to resubmitting them after a revised trial
order has been issued. In so doing, the Court reiterates its
concerns as to the evidentiary foundation for the experts'
opinions.

SFAA 000414,
Devin Girardi

2018 U.S. Dist. LEXIS 31875, *2

In response to CBAA's opposition to the motion for class certification,[2] plaintiffs Riana Buffin and Crystal Patterson redefined the proposed class as follows:

> [A]ll pre-arraignment arrestees who are or who will be in the custody of the City and **[*3]** County of San Francisco who have the option of monetary release under current state law but remain in custody for any amount of time because they cannot afford their bail amount.

(Plaintiffs' Reply Brief in Support of Motion for Class Certification, Dkt. No. 168 at 1 ("Plaintiffs' Reply").) In light of the oral arguments on the motion, the Court proposed for comment the following modified class definition:

> All pre-arraignment arrestees (i) who are, or will be, in the custody of the City and County of San Francisco; (ii) whose bail amount is determined by the Felony and Misdemeanor Bail Schedule as established by the Superior Court of California, County of San Francisco; (iii) whose arrest has not been reviewed by a judicial officer; and (iv) who remain in custody for any amount of time because they cannot afford their set bail amount.

(Order re: Class Certification and Plaintiffs' Requested Relief, Dkt. No. 178 at 2 ("Court's Inquiry").) The Court also asked plaintiffs' counsel, Mr. Phil Telfeyan of Equal Justice Under Law, to supplement the record with information regarding his adequacy to represent the proposed class and to clarify the relief sought by plaintiffs.[3]

Plaintiffs, **[*4]** CBAA, and Sheriff Vicki Hennessy (the "Sheriff") (collectively, the "parties") responded timely to the Court's inquiry. Plaintiffs principally approved of the Court's proposed definition but questioned whether the limitation in subsection (iii) was necessary. (Plaintiffs' Response to Inquiry at 2.) The Sheriff proposed two revisions. First, she suggested that "the City and County of San Francisco" in subsection (i) be changed to "the

San Francisco Sheriff" to reflect that the Sheriff is the proper defendant, and that she acts in her capacity as a state official when enforcing the Bail Schedule. (Dkt. No. 182.) Second, the Sheriff proposed that subsection (iii) be revised to delete the reference to those "whose arrest" has not been reviewed by a judicial officer and to substitute instead "whose terms of pretrial release" have not been reviewed by a judicial officer in light of the fact that judicial officers' review of arrests for probable cause occurs independently of any individualized judicial determination of the terms of pretrial release. (*Id.*) Next, CBAA suggested that subsection (iii) be modified in order to exclude from the class "those arrestees who are *eligible* to make a [§1269c](#) application, but who either have chosen not to . . . or who have **[*5]** done so and are still awaiting review by a judicial officer." (Dkt. No. 185 (emphasis in original).) Moreover, CBAA expressed concerns that the Court's proposed definition would not satisfy ascertainability by virtue of its inclusion of the terms "cannot afford" and "because." (*Id.*)

In its January 16, 2018 scheduling order, after denying plaintiffs' and CBAA's motions for summary judgment, the Court expressed lingering concerns over the adequacy of counsel and gave Mr. Telfeyan until February 8, 2018 to identify additional counsel to represent the proposed class jointly. (Dkt. No. 192.) Mr. Telfeyan notified the Court on February 2, 2018 that Equal Justice Under Law is now joined by Robert E. Sims and Steven M. Bauer from Latham & Watkins LLP as co-counsel. (Dkt. No. 203.)

In light of the parties' submissions, and for the reasons discussed below, the Court **CERTIFIES** the following class:

> All pre-arraignment arrestees (i) who are, or will be, in the custody of the San Francisco Sheriff; (ii) whose bail amount is determined by the Felony and Misdemeanor Bail Schedule as established by the Superior Court of California, County of San Francisco; (iii) whose terms of pretrial release have not **[*6]** received an individualized determination by a judicial officer; and (iv) who remain in custody for any amount of time because they cannot afford to pay their set bail amount.

## II. LEGAL FRAMEWORK

Under *Federal Rule of Civil Procedure 23(a)*, the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable;

---

[2] The Court granted CBAA leave to file an opposition to plaintiffs' motion. (*See* Dkt. No. 142.)

[3] In this regard, Mr. Telfeyan indicated that plaintiffs seek "an order declaring unconstitutional and enjoining the use of the bail schedule for the class . . . . In addition, Plaintiffs believe that an injunction that outlines the framework for a replacement, non-monetary process for the class would be helpful." (Plaintiffs' Response to Court's Inquiry, Dkt. No. 181 at 2 ("Plaintiffs' Response to Inquiry").) The response contributed further to the Court's continuing concern regarding Mr. Telfeyan's adequacy.

SFAA 000415

(2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)*. Courts refer to these four requirements as "numerosity, commonality, typicality[,] and adequacy of representation." *Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012)*.

Once the threshold requirements of *Rule 23(a)* are met, plaintiffs must then show "through evidentiary proof" that a class is appropriate for certification under one of the provisions of *Rule 23(b)*. *Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013)*. Here, plaintiffs seek certification under *Rule 23(b)(2)*, which requires plaintiffs to establish that the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Fed. R. Civ. P. 23(b)(2)*; see **[*7]** also *Ellis v. Costco Wholesale Corp., 657 F.3d 970, 986 (9th Cir. 2011)* ("Class certification under *Rule 23(b)(2)* is appropriate only where the primary relief sought is declaratory or injunctive.") (internal quotation marks omitted).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]'" *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1194 (2013)* (quoting *Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)*); see also *Mazza, 666 F.3d at 588*. The court considers the merits to the extent they overlap with the *Rule 23* requirements. *Ellis, 657 F.3d at 983*. Nevertheless, "*Rule 23* grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, 133 S. Ct. at 1194-95*. If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser v. Accufix Research Inst., 253 F.3d 1180, 1186 (9th Cir. 2001)*.

## III. DISCUSSION

Plaintiffs contend that they have established all requirements for certification of an injunctive relief class under *Rule 23(b)(2)*. CBAA challenges the typicality and adequacy of representation elements of *Rule 23(a)*.[4]

Moreover, CBAA argues that the proposed class is not ascertainable.[5] The Court will first address the *Rule 23(a)* and *23(b)(2)* requirements followed by ascertainability.[6]

## A. Numerosity

*Rule 23(a)* requires that the proposed class be "so numerous that joinder of all members is impracticable." *Fed. R. Civ. P. 23(a)(1)*. As indicated at oral argument, neither CBAA **[*8]** nor the Sheriff contests that the numerosity requirement is met in the instant case. The Court concurs that the numerosity requirement is satisfied.

## B. Commonality

Commonality requires that the class members' claims "depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013)* (internal quotation marks omitted). "*Rule*

---

that "if the class is clearly defined, there is likely not to be a dispute over that particular aspect of class cert." (*See* Transcript of Proceedings Held on December 12, 2017, Dkt. No. 186 at 52:14-16 ("Transcript").) Moreover, it indicated that it opposed commonality only to the extent that the definition "would include arrestees who already received an individualized determination and weren't subject to the bail schedule . . . ." (*Id.* at 53.) The Court's certified class definition assuages both of these concerns.

[5] In its opposition to plaintiffs' motion, CBAA objects to plaintiffs' citation to, and reliance on, certain articles by *Newsweek* and the *United Way Bay Area*. (CBAA's Opposition to Plaintiffs' Motion for Class Certification, Dkt. No. 158 at 13 ("CBAA's Opposition").) CBAA does so on three grounds: (1) neither article is properly authenticated pursuant to *Federal Rule of Evidence 901*; (2) neither article is supported by the declaration testimony of a witness with knowledge that the articles are what they claim to be; and (3) the content of the articles is inadmissible hearsay. (*Id.*) The Court agrees with the substance of CBAA's objections, sustains the objections, and has not incorporated the contents of the articles into its analysis.

[6] To the extent plaintiffs' and CBAA's initial arguments still apply to the Court's certified class definition, the Court addresses them herein. The Court does not address arguments that have been mooted by changes made to plaintiffs' proposed class definition or by concessions made by the parties at oral argument or in subsequent filings.

---

[4] With respect to numerosity, CBAA stated at oral argument

SFAA 000416
Devin Girardi

*23(a)(2)* has been construed permissively." *Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)*. "[T]he key inquiry is not whether the plaintiffs have raised common questions . . . but rather, whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah, 731 F.3d at 957* (quoting *Dukes, 564 U.S. at 350*) (emphasis in original). "This does not, however, mean that *every* question of law or fact must be common to the class; all that *Rule 23(a)(2)* requires is 'a single *significant* question of law or fact.'" *Id.* (quoting *Mazza, 666 F.3d 581 at 589*) (emphasis in original). "[F]or purposes of *Rule 23(a)(2)*, even a single common question will do." *Dukes, 564 U.S. at 359* (alteration and quotation marks omitted).

The Court finds that plaintiffs have demonstrated sufficient commonality to satisfy *Rule 23(a)(2)* because the resolution of one question, that is, whether the Sheriff's use of the Bail Schedule prior to arraignment violates **[*9]** the Equal Protection or *Due Process clauses of the Fourteenth Amendment*, will resolve "in one stroke" all class members' claims. *Abdullah, 731 F.3d at 957*; *see also Rodriguez v. Hayes, 591 F.3d 1105, 1122-24 (9th Cir. 2010)* (finding commonality even though class members were detained pursuant to different statutes and under different factual circumstances because a single question, namely, whether a bond hearing was required for individuals detained longer than six months, was "posed by the detention of every member of the class and their [individual claims would] largely be determined by its answer"). Further, in keeping with the purpose of class action litigation, settling this common question would "render management of [proposed members'] claims more efficient for the court" and "would also benefit many of the putative class members by obviating the severe practical concerns that would likely attend them were they forced to proceed alone." *Rodriguez, 591 F.3d at 1123.*[7]

---

[7] CBAA's primary concern with respect to commonality—that plaintiffs' proposed class is over-inclusive to the extent it would include (i) arrestees who received an individualized determination pursuant to *California Penal Code section 1269c* and whose bail amount, as a result, was set at an amount different from the scheduled amount; and/or (ii) arrestees detained after arraignment—is moot in light of the Court's certified class definition. The Sheriff "agrees that this case presents questions of law that are common to members of the class . . . ." (Sheriff Vicki Hennessy's Response to Plaintiffs' Motion for Class Certification, Dkt. No. 157 at 3 ("Sheriff's Response to Motion").)

## C. Typicality

"The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez, 591 F.3d at 1124* (internal quotation marks omitted). "The purpose of the typicality **[*10]** requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)*. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,150 F.3d at 1020*. The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon, 976 F.2d at 508* (internal quotation marks omitted). "Where the challenged conduct is a policy or practice that affects all class members, . . . the cause of the injury is the same"; thus, the analysis requires "comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." *Armstrong v. Davis, 275 F.3d 849, 868-69 (9th Cir. 2001)*, abrogated on other grounds by *Johnson v. California, 543 U.S. 499 (2005)*.

The Court finds the typicality requirement satisfied. All class members had their bail amounts set by the Bail Schedule and were unable to afford their set bail amounts. CBAA's argument that plaintiffs are not typical of the class because neither of them remained in custody due to her inability to afford **[*11]** bail is unavailing. CBAA points to the fact that plaintiff Patterson was ultimately, after having spent approximately 29 hours in jail, able to pay the surety bail agent a deposit amount of $1,500 with the help of family members. As to plaintiff Buffin, CBAA argues that she made a "personal choice" to not attempt to obtain financial help from family members or friends so that she could post a bail bond. (CBAA's Opposition at 11.) Given these circumstances, CBAA avers that plaintiffs lack a common interest in representing the class and do not even appear to be members of the proposed class. However, CBAA's focus on plaintiffs' potential ability to obtain money from third parties does not persuade: plaintiffs were *personally* unable to pay their set bail amounts, and as a result spent longer periods in jail

than they otherwise would have.[8] The Court is not willing to exclude individuals from the class based on whether or not they could ask friends and family members for bail money.

CBAA's additional argument that plaintiffs' claims are not typical because plaintiffs' detentions predated the implementation of the Public Safety Assessment ("PSA") Tool is also unavailing. As the Sheriff noted and plaintiffs confirmed, **[*12]** "Plaintiffs claim that California's statutory scheme is unconstitutional notwithstanding the current or past operation of the OR Project, and . . . [CBAA's] arguments for the scheme's constitutionality likewise do not depend on the OR Project's existence or manner of operation . . . ." (Plaintiffs' Reply at 13; *see also* Sheriff's Response to Motion at 4.) Thus, the typicality of plaintiffs' claims is unaffected by the implementation of the PSA Tool on April 30, 2016.[9]

The Court finds that plaintiffs' claims are typical of those of the certified class members, as both plaintiffs' claims and those of the class members arise from the Sheriff's use of the Bail Schedule. The injury alleged is the same injury suffered by all of the certified class members, that is, the violation of the class members' Due Process and Equal Protection rights through the Sheriff's use of the Bail Schedule. Similarly, all class members share the remedy sought, namely, an order declaring unconstitutional and enjoining the Sheriff's use of the Bail Schedule.

### D. Adequacy of Representation

*Rule 23(a)(4)* permits the certification of a class **[*13]** only if "the representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)(4)*. In this regard, the Court must consider: "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if] the representative plaintiffs and their counsel [will] prosecute the action vigorously on

behalf of the class." *Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003)*.

Here, CBAA has not raised any potential conflicts of interest, and the Court cannot discern any in this case.[10] While the Court previously harbored concerns regarding plaintiffs' counsel's adequacy to represent the proposed class, the Court is now satisfied in light of his recent filing that plaintiffs' counsel, now joined by and Robert E. Sims and Steven M. Bauer of Latham & Watkins LLP as co-counsel, will prosecute this action vigorously moving forward and adequately represent the interests of the class members.

### E. *Rule 23(b)(2)*—Injunctive Relief Class

CBAA does not dispute the propriety of an injunctive relief class under *Rule 23(b)(2)*. Accordingly, and because a "single injunction or declaratory judgment would provide relief to each member of the class," the Court finds that the certified class meets the requirements of *Rule 23(b)(2)*. *Dukes, 564 U.S. at 360*.

### F. **[*14]** Ascertainability

CBAA argues that the proposed class is not ascertainable because the phrase "cannot afford" is ambiguous. (CBAA's Opposition at 6.) According to CBAA, "the class must be sufficiently definite so that it is feasible for the court to determine the membership by reference to objective criteria." (*Id.* at 5 (internal quotation marks omitted).) CBAA does not persuade. The Ninth Circuit has not adopted an ascertainability requirement. *See Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1124 n.4 (9th Cir. 2017)*.[11] Moreover, it has

---

[8] Plaintiffs have both stated that if they had personally been able to pay their set bail amounts they "would immediately pay for [their] freedom." (Dkt. No. 136-7 ¶ 6; Dkt. No. 136-12 ¶ 6.)

[9] CBAA would appear to agree in light of this clarification by plaintiffs on reply. Specifically, CBAA noted in its opposition that "[t]o the extent that Plaintiffs' . . . claims *will depend upon the role and/or use of the Public Safety Assessment Tool in San Francisco*, the Plaintiffs' claims are not typical of the class claims." (CBAA's Opposition at 11) (emphasis supplied).

---

[10] Rather, CBAA's argument against adequacy mirrors its argument against typicality—that plaintiffs are not members of the proposed class because neither of them remained in custody due to her inability to afford bail. Because the Court addressed this argument previously, it need not do so again here.

[11] With respect to 23(b)(2) classes specifically, the logic of *Briseno* is particularly apt given that the focus of such classes is on the indivisible nature of the remedy sought. *See Cole v. City of Memphis, 839 F.3d 530, 542 (6th Cir. 2016)* ("The decisions of other federal courts and the purpose of *Rule 23(b)(2)* persuade us that ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief."); *Shelton v. Bledsoe, 775 F.3d 554, 563 (3d Cir. 2015)* ("The nature of *Rule 23(b)(2)*

2018 U.S. Dist. LEXIS 31875, *14

specifically held that "*Rule 23* does not impose a freestanding administrative feasibility prerequisite to class certification." *Id. at 1126*. Accordingly, the Court finds that plaintiffs' inclusion of the phrase "cannot afford" in its proposed class definition does not preclude certification.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiffs' Motion is GRANTED AS MODIFIED BY THE COURT. The Court CERTIFIES the following class:

> All pre-arraignment arrestees (i) who are, or will be, in the custody of the San Francisco Sheriff; (ii) whose bail amount is determined by the Felony and Misdemeanor Bail Schedule as established by the Superior Court of California, County of San Francisco; (iii) whose terms of pretrial release have not received [*15] an individualized determination by a judicial officer; and (iv) who remain in custody for any amount of time because they cannot afford to pay their set bail amount.

2. The Court APPOINTS lead plaintiffs Riana Buffin and Crystal Patterson as class representatives of the certified class.

3. The Court APPOINTS Phil Telfeyan, Catherine Sevcenko, Rebecca Ramaswamy, and Marissa Hatton of Equal Justice Under Law, and Robert E. Sims and Steven M. Bauer of Latham & Watkins LLP as class counsel.

This Order terminates Docket Numbers 134, 137, 138, 139, and 140.

IT IS SO ORDERED.

Dated: February 26, 2018

/s/ Yvonne Gonzalez Rogers

YVONNE GONZALEZ ROGERS

UNITED STATES DISTRICT COURT JUDGE

---

actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of [sic] other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief . . . .").

**End of Document**

SFAA 000419
Devin Girardi

Orgovan, Joseph

| | |
|---|---|
| From: | Duke, Robert |
| Sent: | Wednesday, July 12, 2017 9:16 AM |
| To: | Committee-BBAC-Open |
| Cc: | O'Donnell, Edward |
| Subject: | 2016 Bail Supplement (Preliminary) |
| Attachments: | Bail Bond Report (Draft).pdf |

Attached is a draft of the 2016 Bail Supplement. Please let us know of any errors or revisions that need to be made.

Thank you

Rob

Robert J. Duke
Corporate Counsel
The Surety & Fidelity Association of America
202-778-3630
www.surety.org



**CONFIDENTIAL**

## The Surety and Fidelity Association of America
### 2016 BAIL BOND SUPPLEMENT EXHIBIT #1A: TOP BAIL BOND WRITERS
(Draft, June 6, 2017)

©The Surety Fidelity Association of America

| Company Name | 9. Face Amount of Bail Bonds Written | 10. Direct Premiums Written (Gross) | 11. Comm and Broker Expenses | 12. Prem Writ Net of Agent Comm & Broker Expenses (Line 10 - Line 11 = Line 12) | 13. Direct Premium Earned (Gross) | 14. Prem Earned Net of Agent Comm & Broker Expenses | 15. Direct Unearned Premium Reserves | 16. Direct Losses Paid (deducting salvage) | 17. Direct Losses Incurred | 18. Direct Losses Unpaid |
|---|---|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 2,177,547,276 | 215,816,228 | 196,857,204 | 18,959,024 | 214,765,386 | 17,908,182 | 10,498,542 | 0 | 0 | 0 |
| Financial Cas & Surety Inc. | 1,770,742,593 | 14,846,602 | 0 | 14,846,602 | 14,846,602 | 14,846,602 | 0 | 2,890,294 | 3,455,034 | 3,039,715 |
| Seaview Insurance Co. | 1,730,154,812 | 159,517,901 | 150,983,674 | 8,534,228 | 163,142,209 | 8,728,853 | 578,218 | 0 | (17,921) | 445,616 |
| Lexington National Ins Corp. | 1,422,248,522 | 138,265,172 | 125,626,709 | 12,638,463 | 135,928,902 | 11,486,821 | 2,741,694 | 1,405,491 | 2,166,897 | 243,818 |
| American Surety Co. | 1,360,508,895 | 122,519,098 | 111,733,870 | 10,785,228 | 124,122,525 | 10,926,376 | 1,515,651 | 519,026 | 153,236 | 1,212,028 |
| Accredited Surety & Cas Co. | 1,179,439,599 | 111,387,701 | 102,995,042 | 8,392,659 | 111,387,701 | 8,392,659 | 0 | 0 | 0 | 0 |
| International Fidelity Ins Co. | 932,329,487 | 16,733,464 | 13,719,267 | 3,014,197 | 16,733,464 | 3,014,197 | 0 | 0 | 0 | 0 |
| Seneca Insurance Co. | 907,172,683 | 87,637,904 | 82,599,568 | 5,038,336 | 93,438,962 | 5,371,841 | 845,469 | 0 | 0 | 0 |
| Allegheny Casualty Co. | 822,790,477 | 31,408,388 | 28,742,154 | 2,666,234 | 31,408,388 | 2,666,234 | 0 | 0 | 0 | 0 |
| Palmetto Surety Corp. | 764,570,943 | 70,743,239 | 61,328,480 | 9,414,759 | 9,414,759 | 0 | 0 | 1,048,522 | 1,478,662 | 1,235,488 |
| American Contractors Indem Co. | 552,383,613 | 50,829,036 | 46,640,246 | 4,188,790 | 50,927,604 | 4,284,146 | 653,332 | (363,098) | (283,493) | 764,632 |
| Roche Surety & Casualty Co. | 428,700,686 | 43,965,153 | 40,864,577 | 3,100,576 | 45,419,457 | 3,179,362 | 385,655 | 0 | 0 | 0 |
| Univ Fire & Casualty Ins Co. | 405,892,378 | 36,993,156 | 33,935,072 | 3,058,084 | 36,993,156 | 3,058,084 | 0 | 0 | 0 | 0 |
| Continental Heritage Ins Co. | 304,827,190 | 30,482,719 | 28,800,758 | 1,681,961 | 31,040,073 | 1,707,204 | 2,612,917 | 0 | 0 | 0 |
| Sun Surety Insurance Co. | 279,534,325 | 27,034,327 | 23,363,894 | 3,670,433 | 27,034,327 | 3,675,422 | 14,270 | 65,345 | 65,345 | 0 |
| North River Insurance Co. | 279,098,591 | 38,212,971 | 35,473,021 | 2,739,950 | 37,420,093 | 2,739,950 | 792,878 | 58,995 | 0 | 0 |
| Indiana Lumbermens Mutl Ins Co | 179,543,461 | 18,890,067 | 18,442,538 | 447,929 | 18,760,593 | 318,055 | 1,708,415 | 0 | 0 | 0 |
| U.S. Specialty Insurance Co. | 176,094,547 | 18,339,214 | 17,381,238 | 957,976 | 18,323,452 | 959,736 | 88,886 | 0 | (46,625) | 233,594 |
| U.S. Fire Insurance Co. | 136,855,073 | 22,479,236 | 20,440,264 | 2,038,972 | 24,776,148 | 2,038,972 | 628,087 | 85,184 | 0 | 0 |
| Broadway Ins & Surety Co. | 128,089,348 | 12,113,430 | 11,339,057 | 774,373 | 11,856,613 | 774,373 | 391,611 | 0 | (9,349) | 110,327 |
| First Community Insurance Co. | 127,522,335 | 12,999,336 | 11,880,423 | 1,118,913 | 12,963,816 | 809,436 | 813,699 | 0 | 0 | 0 |
| 1st Atlantic Surety Co. | 126,894,590 | 9,986,604 | 8,758,939 | 1,227,665 | 9,976,767 | 1,217,828 | 334,383 | 54,717 | 62,086 | 149,360 |
| Williamsburg National Ins Co. | 83,211,049 | 8,351,597 | 7,716,911 | 634,686 | 8,775,447 | 655,108 | 2,408,547 | 0 | 0 | 0 |
| Empire Bonding & Insurance Co. | 71,445,403 | 866,155 | 0 | 866,155 | 885,586 | 0 | 357,241 | 0 | 30,096 | 72,303 |
| Star Insurance Co. | 68,574,310 | 7,344,372 | 6,832,034 | 512,338 | 6,659,097 | 470,129 | 2,050,484 | 0 | 0 | 0 |
| Crum & Forster Indemnity Co. | 66,015,732 | 25,285,067 | 23,889,989 | 1,395,078 | 24,797,915 | 1,395,078 | 487,151 | 0 | 0 | 0 |
| U.S. Surety Co. | 55,972,120 | 5,062,163 | 4,641,916 | 420,247 | 5,331,833 | 442,121 | 62,751 | 0 | (17,111) | 18,167 |
| First Indemnity of Am Ins Co. | 49,007,315 | 4,900,732 | 4,508,673 | 392,059 | 4,875,271 | 436,773 | 102,248 | (40,267) | 0 | (706,677) |
| Whitecap Surety Co. | 33,773,824 | 3,377,382 | 3,103,100 | 274,282 | 3,377,382 | 274,282 | 0 | 0 | 0 | 0 |
| Integra Insurance Inc. | 26,934,826 | 2,685,753 | 2,281,732 | 404,021 | 2,685,753 | 404,021 | 0 | 0 | 0 | 0 |
| Totals | 16,647,876,003 | 1,349,074,567 | 1,224,880,350 | 124,194,218 | 1,298,069,281 | 112,181,845 | 30,072,129 | 5,724,209 | 7,036,857 | 6,818,371 |

SFAA 000421

**CONFIDENTIAL**

**The Surety and Fidelity Association of America**
**2016 BAIL BOND SUPPLEMENT EXHIBIT #1A: TOP BAIL BOND WRITERS**
(Draft, June 6, 2017)

© The Surety Fidelity Association of America

| Company | 19. Direct Defense Cost Containment Expenses Paid | 20. Direct Defense Cost Containment Expenses Incurred | 21. Direct Defense Cost Containment Expenses Unpaid | 22. Taxes, Licenses and Fees | 23. Build-Up Fund Account Balances as of Beginning of Period | 24. Gross deposits to BUF Accounts (including interest earned) | 25. Gross Withdrawals from Build-Up Fund Accounts | 26. Build-Up Fund Account Balances as of End of Period (Line 23 + Line 24 - Line 25) |
|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 0 | 0 | 0 | 0 | 54,059,475 | 12,815,267 | 15,331,160 | 51,543,582 |
| Financial Cas & Surety Inc. | 0 | 0 | 0 | 2,759,029 | 11,952,605 | 2,395,857 | 2,019,959 | 12,328,503 |
| Seaview Insurance Co. | 0 | (4,479) | 111,405 | 4,152,509 | 8,869,717 | 1,087,280 | 0 | 9,956,997 |
| Lexington National Ins Corp. | 0 | 0 | 0 | 0 | 25,409,171 | 7,928,337 | 6,989,464 | 26,348,044 |
| American Surety Co. | 87,554 | 68,797 | 64,034 | 2,449,960 | 21,726,612 | 5,802,362 | 3,858,893 | 23,670,081 |
| Accredited Surety & Cas Co. | 0 | 0 | 0 | 1,403,242 | 24,632,960 | 2,052,299 | 2,813,062 | 23,872,197 |
| International Fidelity Ins Co. | 0 | 0 | 0 | 1,993,645 | 23,508,905 | 25,772,012 | 24,995,239 | 24,285,678 |
| Seneca Insurance Co. | 0 | 0 | 0 | 778,962 | 36,575,445 | 5,619,615 | 5,872,331 | 36,322,729 |
| Allegheny Casualty Co. | 0 | 0 | 0 | 1,416,486 | 16,935,343 | 17,606,705 | 17,942,762 | 16,599,286 |
| Palmetto Surety Corp. | 0 | 0 | 0 | 0 | 5,331,688 | 3,697,074 | 3,088,296 | 5,940,466 |
| American Contractors Indem Co. | 230,156 | 180,007 | (216,599) | 1,178,904 | 11,861,965 | 2,850,690 | 3,991,788 | 10,720,867 |
| Roche Surety & Casualty Co. | 0 | 0 | 0 | 538,001 | 13,514,947 | 4,362,471 | 4,301,113 | 13,576,305 |
| Univ Fire & Casualty Ins Co. | 0 | 0 | 0 | 123,533 | 7,519,989 | 1,631,480 | 1,338,118 | 7,813,351 |
| Continental Heritage Ins Co. | 0 | 0 | 0 | 545,174 | 6,043,363 | 1,347,651 | 1,237,228 | 6,153,786 |
| Sun Surety Insurance Co. | 0 | 0 | 0 | 476,516 | 9,460,321 | 2,718,523 | 2,143,733 | 10,035,111 |
| North River Insurance Co. | 0 | 0 | 0 | 515,023 | 6,977,365 | 1,575,240 | 1,772,759 | 6,779,846 |
| Indiana Lumbermens Mutl Ins Co | 0 | 0 | 0 | 0 | 4,641,070 | 969,189 | 585,469 | 5,024,790 |
| U.S. Specialty Insurance Co. | 0 | (19,719) | 93,795 | 342,475 | 4,649,383 | 1,035,178 | 1,054,443 | 4,630,118 |
| U.S. Fire Insurance Co. | 0 | 0 | 0 | 164,568 | 8,184,261 | 1,612,958 | 1,880,553 | 7,916,666 |
| Broadway Ins & Surety Co. | 0 | (1,558) | 18,388 | 66,717 | 0 | 66,295 | 0 | 66,295 |
| First Community Insurance Co. | 0 | 0 | 0 | 0 | 656,020 | 556,453 | 382,213 | 830,260 |
| 1st Atlantic Surety Co. | 0 | 0 | 0 | 30,493 | 827,125 | 502,675 | 105,185 | 1,224,615 |
| Williamsburg National Ins Co. | 0 | 0 | 0 | 141,117 | 1,016,501 | 549,015 | 322,434 | 1,243,082 |
| Empire Bonding & Insurance Co. | 7,388 | 37,485 | 72,303 | 33,223 | 574,189 | 72,340 | 0 | 646,529 |
| Star Insurance Co. | 0 | 0 | 0 | 137,143 | 690,809 | 636,881 | 256,998 | 1,070,692 |
| Crum & Forster Indemnity Co. | 0 | 0 | 0 | 304,116 | 3,638,593 | 1,210,699 | 1,042,661 | 3,806,631 |
| U.S. Surety Co. | 0 | 7,864 | 15,503 | 101,000 | 120,471 | 52,754 | 64,793 | 108,431 |
| First Indemnity of Am Ins Co. | 0 | 0 | 0 | (9,172) | 777,648 | 493,076 | 502,240 | 768,484 |
| Whitecap Surety Co. | 0 | 0 | 0 | 0 | 188,709 | 4,140 | 0 | 192,849 |
| Integra Insurance Inc. | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 200,000 |
| Totals | 325,098 | 268,397 | 158,829 | 19,642,664 | 310,544,650 | 107,024,516 | 103,892,894 | 313,676,271 |

SFAA 000422

**CONFIDENTIAL**

# The Surety and Fidelity Association of America
## 2016 BAIL BOND SUPPLEMENT EXHIBIT #2: AGGREGATE REPORT
(Draft, June 6, 2017)

|  | # of Responses | # Responding YES | # Responding NO |
|---|---|---|---|
| 1. Is the bail bond premium reported on a gross basis? | 30 | 4 | 26 |
| 2. If the answer to #1 was no, was a permitted practice granted to the reporting entity? | 26 | 21 | 5 |
| 3. If the answer to #2 was no, please explain: **Various responses** | | | |
| 4. What bond life is used to calculate unearned premium in days? | | | |
|     Average: | 171 | | |
|     Median: | 120 | | |
|     Mode: | 365 | | |
|     *Of the 13 responses, two listing "1 day" were not included in the average, median and mode calculations.* | 13* | n/a | n/a |
| 5. Are any amounts charged to the consumer excluded from Gross Premiums? | 30 | 11 | 19 |
| 6. If the answer to #5 was Yes, please explain: **Various responses** | | | |
| 7. Do the agents have ongoing performance obligations on the bond after execution? | 30 | 24 | 6 |
| 8. If the answer to #7 is Yes, please describe the nature of the agents' continuing obligations: **Various responses** | | | |

|  | Current Year | % of GPW | Prior Year | % of GPW |
|---|---|---|---|---|
| 9. Face amount of bail bonds written | 16,647,876,003 | XXX | 15,861,781,399 | XXX |
| 10. Direct Premiums Written (Gross) | 1,349,074,567 | XXX | 1,303,657,280 | XXX |
| 11. Commissions and Brokerage Expenses | 1,224,880,350 | 90.8% | 1,190,078,883 | 91.3% |
| 12. Prem Written Net of Agent Comm and Broker Expenses | 124,194,218 | 9.2% | 113,578,398 | 8.7% |

|  | Current Year | % of GPE | % of NPE | Prior Year | % of GPE | % of NPE |
|---|---|---|---|---|---|---|
| 13. Direct Premium Earned (Gross) | 1,298,069,281 | XXX | XXX | 1,243,599,850 | XXX | XXX |
| 14. Prem Earned Net of Agent Comm and Broker Exp | 112,181,845 | XXX | XXX | 103,861,681 | XXX | XXX |
| 15. Direct Unearned Premium Reserves | 30,072,129 | 2.3% | 26.8% | 30,352,329 | 2.4% | 29.2% |
| 16. Direct Losses Paid (deducting salvage) | 5,724,209 | 0.4% | 5.1% | 8,396,492 | 0.7% | 8.1% |
| 17. Direct Losses Incurred | 7,036,857 | 0.5% | 6.3% | 6,890,935 | 0.6% | 6.6% |
| 18. Direct Losses Unpaid | 6,818,371 | 0.5% | 6.1% | 7,575,408 | 0.6% | 7.3% |
| 19. Direct Defense Cost Containment Expenses Paid | 325,098 | 0.0% | 0.3% | 183,751 | 0.0% | 0.2% |
| 20. Direct Defense Cost Containment Expenses Incurred | 268,397 | 0.0% | 0.2% | 120,593 | 0.0% | 0.1% |
| 21. Direct Defense Cost Containment Expenses Unpaid | 158,829 | 0.0% | 0.1% | 648,728 | 0.1% | 0.6% |
| 22. Taxes, Licenses and Fees | 19,642,664 | 1.5% | 17.5% | 25,376,325 | 2.0% | 24.4% |

|  | Current Year | Prior Year |
|---|---|---|
| 23. Build-Up Fund account balances as of beginning of period | 310,544,650 | 294,180,847 |
| 24. Gross deposits to BUF Accounts (including interest earned) | 107,024,516 | 124,870,960 |
| 25. Gross withdrawals from Build-Up Fund accounts | 103,892,894 | 105,523,550 |
| 26. Build-Up Fund account balances as of end of period (Line 23 plus Line 24 minus Line 25) | 313,676,271 | 313,528,257 |

SFAA 000423

©The Surety Fidelity Association of America

**CONFIDENTIAL**

Orgovan, Joseph

| | |
|---|---|
| From: | O'Donnell, Edward |
| Sent: | Thursday, June 30, 2016 9:42 AM |
| To: | Carmichael, William B.; Duke, Rob |
| Cc: | Committee-BBAC-Open |
| Subject: | RE: 2015 Bail Supplement (Preliminary) |
| Attachments: | Bail Bond Report (Draft, June 28, 2016) (REVISED).pdf |

Good morning. The second page, Exhibit 1B, of the June 28 Bail Bond report was incorrect. I have attached a revised version of the June 28 Bail Bond Report with the corrected numbers. I would ask all companies to please review this revised report and let me know if there are any other issues.

Please note that Exhibits #1A and #2 are unchanged.

My apologies for any confusion this may have caused.

Thank you.

Ed

Edward M. O'Donnell, AIDM
Statistical Manager
The Surety & Fidelity Association of America
202-778-3632
www.surety.org



From: Carmichael, William [mailto:wcarmichael@asc-usi.com]
Sent: Thursday, June 30, 2016 8:57 AM
To: Duke, Rob <RDuke@surety.org>
Cc: Committee-BBAC-Open <Committee-BBAC-Open@surety.org>; O'Donnell, Edward <EODonnell@surety.org>
Subject: Re: 2015 Bail Supplement (Preliminary)

Rob, we have discovered some errors in the data for our company on pg. 2. We will communicate the corrections under separate cover.

I wanted the other members to be aware of the need to review their data.

Bill

Bill Carmichael
317-860-1890 (work)
317-496-5902 (cell)

On Jun 29, 2016, at 4:14 PM, Duke, Rob <RDuke@surety.org> wrote:

Attached is a draft of the 2015 Bail Supplement. Please let us know of any errors or revisions that need to be made.

Thank you

Rob


Robert J. Duke
Corporate Counsel
The Surety & Fidelity Association of America
202-778-3630
www.surety.org
<image001.jpg><image002.jpg>

<Bail Bond Report (Draft, June 28, 2016).pdf>

**CONFIDENTIAL**

## The Surety and Fidelity Association of America
## 2015 BAIL BOND SUPPLEMENT EXHIBIT #1A: TOP BAIL BOND WRITERS
**(Draft: June 28, 2016)**

| Company Name | 9. Face Amount of Bail Bonds Written | 10. Direct Premiums Written (Gross) | 11. Comm and Broker Expenses | 12. Prem Writ Net of Agent Comm & Broker Expenses (Line 10 - Line 11 = Line 12) | 13. Direct Premium Earned (Gross) | 14. Prem Earned Net of Agent Comm & Broker Expenses | 15. Direct Unearned Premium Reserves | 16. Direct Losses Paid (deducting salvage) | 17. Direct Losses Incurred | 18. Direct Losses Unpaid |
|---|---|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 2,031,667,084 | 204,142,569 | 189,421,649 | 14,720,920 | 201,813,894 | 12,392,245 | 9,447,700 | 0 | 0 | 0 |
| Seaview Insurance Co. | 1,963,028,502 | 181,701,093 | 171,983,915 | 9,717,178 | 179,913,857 | 9,620,304 | 772,844 | 0 | 37,699 | 463,537 |
| Financial Cas & Surety Inc. | 1,660,167,057 | 13,889,416 | 0 | 13,889,416 | 13,889,416 | 13,889,416 | 0 | 2,160,668 | 2,323,300 | 2,474,977 |
| Accredited Surety & Cas Co. | 1,279,251,934 | 122,364,624 | 113,128,190 | 9,236,434 | 122,364,624 | 9,236,434 | 0 | 0 | 0 | 0 |
| Lexington National Ins Corp. | 1,208,450,019 | 121,082,465 | 110,946,701 | 10,135,764 | 125,112,297 | 9,880,155 | 2,590,520 | 394,967 | 1,448,541 | 243,818 |
| American Surety Co. | 1,123,627,092 | 113,762,684 | 103,557,916 | 10,204,768 | 109,216,928 | 9,797,003 | 1,656,799 | 190,310 | 553,199 | 1,577,818 |
| International Fidelity Ins Co. | 976,426,844 | 18,040,641 | 14,881,977 | 3,158,664 | 18,040,641 | 3,158,664 | 0 | 0 | 0 | 0 |
| Seneca Insurance Co. | 961,973,126 | 92,599,876 | 87,275,179 | 5,324,697 | 91,315,890 | 5,250,865 | 1,178,974 | 0 | 0 | 0 |
| Allegheny Casualty Co. | 822,671,519 | 29,894,993 | 27,165,386 | 2,729,607 | 29,894,993 | 2,729,606 | 0 | 0 | 0 | 0 |
| American Contractors Indem Co. | 545,223,477 | 49,762,421 | 45,434,424 | 4,327,998 | 49,023,130 | 4,314,671 | 748,688 | 1,424,698 | 1,298,580 | 685,028 |
| Palmetto Surety Corp. | 537,015,207 | 47,668,770 | 41,464,573 | 6,204,197 | 6,204,197 | 0 | 0 | 627,826 | 827,826 | 805,348 |
| Roche Surety & Casualty Co. | 389,853,177 | 40,103,966 | 37,228,274 | 2,875,692 | 40,149,825 | 2,883,406 | 484,440 | 0 | 0 | 0 |
| Continental Heritage Ins Co. | 323,531,630 | 32,353,163 | 30,250,208 | 2,102,955 | 32,056,964 | 2,087,171 | 3,152,691 | 0 | 0 | 0 |
| Univ Fire & Casualty Ins Co. | 316,416,434 | 29,447,764 | 26,884,658 | 2,563,106 | 29,447,764 | 2,563,106 | 0 | 0 | 0 | 0 |
| North River Insurance Co. | 235,183,648 | 34,961,295 | 32,459,554 | 2,501,741 | 34,961,295 | 2,501,741 | 0 | 0 | 0 | 0 |
| Sun Surety Insurance Co. | 227,284,149 | 23,605,142 | 20,522,137 | 3,083,005 | 23,605,076 | 3,083,561 | 19,279 | 245,329 | 245,329 | 0 |
| U.S. Specialty Insurance Co. | 207,327,053 | 21,656,327 | 20,516,016 | 1,140,311 | 10,821,580 | 1,175,026 | 90,646 | 0 | (139,223) | 280,219 |
| Indiana Lumbermens Mutl Ins Co | 194,351,533 | 20,445,142 | 19,956,761 | 488,381 | 20,672,397 | 715,636 | 1,838,289 | 0 | 0 | 0 |
| U.S. Fire Insurance Co. | 151,673,105 | 24,423,497 | 22,211,352 | 2,212,145 | 22,625,497 | 2,212,145 | 2,925,000 | 770,318 | 0 | 0 |
| Crum & Forster Indemnity Co. | 120,301,348 | 31,642,308 | 29,900,586 | 1,741,722 | 31,642,308 | 1,741,722 | 0 | 0 | 0 | 0 |
| Broadway Ins & Surety Co. | 120,001,603 | 11,990,484 | 11,210,748 | 779,736 | 13,536,760 | 1,087,743 | 362,250 | 0 | (79,420) | 119,676 |
| 1st Atlantic Surety Co. | 99,372,525 | 7,820,618 | 6,730,802 | 1,089,816 | 7,731,432 | 1,000,630 | 324,525 | 198,932 | 329,954 | 141,990 |
| Williamsburg National Ins Co. | 92,370,403 | 9,286,844 | 8,619,735 | 667,109 | 9,306,159 | 668,294 | 2,832,397 | 0 | 0 | 0 |
| Empire Bonding & Insurance Co. | 62,559,133 | 781,765 | 0 | 781,765 | 702,443 | 0 | 376,672 | 0 | 14,886 | 42,207 |
| U.S. Surety Co. | 50,708,794 | 5,123,661 | 4,743,890 | 379,771 | 4,724,524 | 325,942 | 85,272 | (116,556) | 26,792 | 35,278 |
| First Indemnity of Am Ins Co. | 45,908,145 | 4,590,815 | 4,223,549 | 367,266 | 5,003,278 | 429,859 | 99,967 | 0 | 0 | (746,944) |
| Star Insurance Co. | 44,120,363 | 4,099,362 | 3,796,591 | 302,771 | 3,406,273 | 284,040 | 1,365,209 | 0 | 0 | 0 |
| Integra Insurance Inc. | 34,926,000 | 2,760,819 | 2,236,341 | 524,478 | 2,760,819 | 524,478 | 0 | 0 | 0 | 0 |
| Whitecap Surety Co. | 34,696,993 | 3,469,699 | 3,179,142 | 290,557 | 3,469,699 | 290,557 | 0 | 0 | 0 | 0 |
| Safety National Casualty Corp. | 1,592,002 | 158,550 | 148,629 | 9,921 | 158,550 | 9,921 | 0 | 2,500,000 | 3,472 | 1,402,456 |
| National Bail & Surety Co. | 61,500 | 26,507 | 0 | 26,507 | 27,340 | 27,340 | 167 | 0 | 0 | 50,000 |
| **Totals** | 15,861,781,399 | 1,303,657,280 | 1,190,078,883 | 113,578,398 | 1,243,599,850 | 103,861,681 | 30,352,329 | 8,396,492 | 6,890,935 | 7,575,408 |

© The Surety Fidelity Association of America

**CONFIDENTIAL**

© The Surety Fidelity Association of America

## The Surety and Fidelity Association of America
## 2015 BAIL BOND SUPPLEMENT EXHIBIT #1B: TOP BAIL BOND WRITERS
### (Draft: June 28, 2016)(REVISED)

| Company | 19. Direct Defense Cost Containment Expenses Paid | 20. Direct Defense Cost Containment Expenses Incurred | 21. Direct Defense Cost Containment Expenses Unpaid | 22. Taxes, Licenses and Fees | 23. Build-Up Fund Account Balances as of Beginning of Period | 24. Gross deposits to BUF Accounts (including interest earned) | 25. Gross Withdrawals from Build-Up Fund Accounts | 26. Build-Up Fund Account Balances as of End of Period (Line 23 + Line 24 - Line 25) |
|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 0 | 0 | 0 | 2,982,596 | 30,354,842 | 33,853,662 | 10,149,029 | 54,059,475 |
| Seaview Insurance Co. | 0 | 9,424 | 115,884 | 4,444,513 | 8,612,158 | 257,559 | 0 | 8,869,717 |
| Financial Cas & Surety Inc. | 0 | 0 | 0 | 2,618,362 | 12,189,648 | 3,052,273 | 3,289,316 | 11,952,605 |
| Accredited Surety & Cas Co. | 0 | 0 | 0 | 2,074,492 | 24,310,697 | 2,412,225 | 2,089,962 | 24,632,959 |
| Lexington National Ins Corp. | 0 | 0 | 0 | 2,144,433 | 26,466,832 | 8,278,166 | 9,335,827 | 25,409,171 |
| American Surety Co. | 46,885 | 66,550 | 82,790 | 2,359,511 | 20,366,937 | 4,745,251 | 3,385,576 | 21,726,612 |
| International Fidelity Ins Co. | 0 | 0 | 0 | 1,453,150 | 24,813,297 | 24,772,383 | 26,076,775 | 23,508,905 |
| Seneca Insurance Co. | 0 | 0 | 0 | 857,285 | 38,572,509 | 5,969,642 | 7,966,706 | 36,575,445 |
| Allegheny Casualty Co. | 0 | 0 | 0 | 1,588,848 | 16,433,514 | 17,952,860 | 17,451,031 | 16,935,343 |
| American Contractors Indem Co. | 94,177 | 11,453 | 266,749 | 1,167,024 | 12,492,319 | 2,412,896 | 3,043,249 | 11,861,965 |
| Palmetto Surety Corp. | 0 | 0 | 0 | 0 | 4,929,077 | 2,377,106 | 1,974,495 | 5,331,688 |
| Roche Surety & Casualty Co. | 0 | 0 | 0 | 447,127 | 12,878,514 | 3,811,497 | 3,175,064 | 13,514,947 |
| Continental Heritage Ins Co. | 0 | 0 | 0 | 563,226 | 5,414,166 | 759,167 | 129,970 | 6,043,363 |
| Univ Fire & Casualty Ins Co. | 0 | 0 | 0 | 234,288 | 7,347,353 | 2,565,836 | 2,393,200 | 7,519,989 |
| North River Insurance Co. | 0 | 0 | 0 | 622,160 | 11,005,889 | 1,337,851 | 5,366,376 | 6,977,365 |
| Sun Surety Insurance Co. | 42,689 | 42,689 | 0 | 578,197 | 9,119,380 | 1,906,161 | 1,565,220 | 9,460,321 |
| U.S. Specialty Insurance Co. | 0 | (18,274) | 113,514 | 149,153 | 4,166,695 | 1,782,208 | 1,299,520 | 4,649,383 |
| Indiana Lumbermens Mutl Ins Co | 0 | 0 | 0 | 0 | 4,229,615 | 655,883 | 244,428 | 4,641,070 |
| U.S. Fire Insurance Co. | 0 | 0 | 0 | 182,656 | 9,037,867 | 1,627,388 | 2,480,994 | 8,184,261 |
| Crum & Forster Indemnity Co. | 0 | 0 | 0 | 403,730 | 2,980,568 | 2,004,666 | 1,346,641 | 3,638,593 |
| Broadway Ins & Surety Co. | 0 | (13,237) | 19,946 | 8,529 | 0 | 0 | 0 | 0 |
| 1st Atlantic Surety Co. | 0 | 0 | 0 | 160,540 | 465,585 | 587,818 | 226,278 | 827,125 |
| Williamsburg National Ins Co. | 0 | 0 | 0 | 167,851 | 777,524 | 409,724 | 170,747 | 1,016,501 |
| Empire Bonding & Insurance Co. | 0 | 16,186 | 42,206 | 18,293 | 421,594 | 152,595 | 0 | 574,189 |
| U.S. Surety Co. | 0 | 5,802 | 7,639 | 102,208 | 51,636 | 80,195 | 11,360 | 120,471 |
| First Indemnity of Am Ins Co. | 0 | 0 | 0 | 9,027 | 1,062,090 | 561,323 | 845,765 | 777,649 |
| Star Insurance Co. | 0 | 0 | 0 | 72,652 | 285,848 | 540,094 | 135,133 | 690,809 |
| Integra Insurance Inc. | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 200,000 |
| Whitecap Surety Co. | 0 | 0 | 0 | 100,019 | 186,782 | 4,511 | 2,584 | 188,709 |
| Safety National Casualty Corp. | 0 | 0 | 0 | 0 | 4,765,613 | 0 | 1,223,525 | 3,542,088 |
| National Bail & Surety Co. | 0 | 0 | 0 | 1,334 | 242,298 | 20 | 144,779 | 97,539 |
| **Totals** | 183,751 | 120,593 | 648,728 | 25,511,204 | 294,180,847 | 124,870,960 | 105,523,550 | 313,528,257 |

SFAA 000427

**CONFIDENTIAL**

# The Surety and Fidelity Association of America
## 2015 BAIL BOND SUPPLEMENT EXHIBIT #2: AGGREGATE REPORT
(Draft: June 28, 2016)

| | # of Responses | # Responding YES | # Responding NO |
|---|---|---|---|
| 1. Is the bail bond premium reported on a gross basis? | 31 | 6 | 25 |
| 2. If the answer to #1 was no, was a permitted practice granted to the reporting entity? | 25 | 19 | 6 |
| 3. If the answer to #2 was no, please explain: **Various responses** | | | |
| 4. What bond life is used to calculate unearned premium in days?  Average: 171  Median: 120  Mode: 365 | 17* | n/a | n/a |
| *Of the 17 responses, two listing "1 day" were not included in the average, median and mode calculations.* | | | |
| 5. Are any amounts charged to the consumer excluded from Gross Premiums? | 31 | 11 | 20 |
| 6. If the answer to #5 was Yes, please explain: **Various responses** | | | |
| 7. Do the agents have ongoing performance obligations on the bond after execution? | 31 | 23 | 8 |
| 8. If the answer to #7 is Yes, please describe the nature of the agents' continuing obligations: **Various responses** | | | |

| | Current Year | % of GPE | % of NPE | % of GPW | Prior Year | % of GPE | % of NPE | % of GPW |
|---|---|---|---|---|---|---|---|---|
| 9. Face amount of bail bonds written | 15,861,781,399 | XXX | XXX | XXX | 16,182,033,783 | XXX | XXX | XXX |
| 10. Direct Premiums Written (Gross) | 1,303,657,280 | XXX | XXX | XXX | 1,248,032,157 | XXX | XXX | XXX |
| 11. Commissions and Brokerage Expenses | 1,190,078,883 | XXX | XXX | 91.3% | 1,135,125,859 | XXX | XXX | 91.0% |
| 12. Prem Written Net of Agent Comm and Broker Expenses | 113,578,398 | XXX | XXX | 8.7% | 112,906,300 | XXX | XXX | 9.0% |

| | Current Year | % of GPE | % of NPE | Prior Year | % of GPE | % of NPE |
|---|---|---|---|---|---|---|
| 13. Direct Premium Earned (Gross) | 1,243,599,850 | XXX | XXX | 1,129,175,193 | XXX | XXX |
| 14. Prem Earned Net of Agent Comm and Broker Exp | 103,861,681 | XXX | XXX | 124,871,113 | XXX | XXX |
| 15. Direct Unearned Premium Reserves | 30,352,329 | 2.4% | 29.2% | 22,861,026 | 2.0% | 18.3% |
| 16. Direct Losses Paid (deducting salvage) | 8,396,492 | 0.7% | 8.1% | 3,609,174 | 0.3% | 2.9% |
| 17. Direct Losses Incurred | 6,890,935 | 0.6% | 6.6% | 4,177,684 | 0.4% | 3.3% |
| 18. Direct Losses Unpaid | 7,575,408 | 0.6% | 7.3% | 12,732,853 | 1.1% | 10.2% |
| 19. Direct Defense Cost Containment Expenses Paid | 183,751 | 0.0% | 0.2% | 538,466 | 0.0% | 0.4% |
| 20. Direct Defense Cost Containment Expenses Incurred | 120,593 | 0.0% | 0.1% | 799,548 | 0.1% | 0.6% |
| 21. Direct Defense Cost Containment Expenses Unpaid | 648,728 | 0.1% | 0.6% | 415,341 | 0.0% | 0.3% |
| 22. Taxes, Licenses and Fees | 25,511,204 | 2.1% | 24.6% | 28,272,403 | 2.5% | 22.6% |

| | Current Year | Prior Year |
|---|---|---|
| 23. Build-Up Fund account balances as of beginning of period | 294,180,847 | 279,056,904 |
| 24. Gross deposits to BUF Accounts (including interest earned) | 124,870,960 | 109,819,829 |
| 25. Gross withdrawals from Build-Up Fund accounts | 105,523,550 | 101,637,178 |
| 26. Build-Up Fund account balances as of end of period (Line 23 plus Line 24 minus Line 25) | 313,528,257 | 287,239,554 |

SFAA 000428

©The Surety Fidelity Association of America

Orgovan, Joseph

| | |
|---|---|
| From: | Duke, Rob |
| Sent: | Wednesday, June 29, 2016 4:14 PM |
| To: | Committee-BBAC-Open |
| Cc: | O'Donnell, Edward |
| Subject: | 2015 Bail Supplement (Preliminary) |
| Attachments: | Bail Bond Report (Draft, June 28, 2016).pdf |

Attached is a draft of the 2015 Bail Supplement. Please let us know of any errors or revisions that need to be made.

Thank you

Rob


Robert J. Duke
Corporate Counsel
The Surety & Fidelity Association of America
202-778-3630
www.surety.org


**The Surety and Fidelity Association of America**
**2015 BAIL BOND SUPPLEMENT EXHIBIT #1A: TOP BAIL BOND WRITERS**
(Draft: June 28, 2016)

| Company Name | 9. Face Amount of Bail Bonds Written | 10. Direct Premiums Written (Gross) | 11. Comm and Broker Expenses | 12. Prem Writ Net of Agent Comm & Broker Expenses (Line 10 - Line 11 = Line 12) | 13. Direct Premium Earned (Gross) | 14. Prem Earned Net of Agent Comm & Broker Expenses | 15. Direct Unearned Premium Reserves | 16. Direct Losses Paid (deducting salvage) | 17. Direct Losses Incurred | 18. Direct Losses Unpaid |
|---|---|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 2,031,667,084 | 204,142,569 | 189,421,649 | 14,720,920 | 201,813,894 | 12,392,245 | 9,447,700 | 0 | 0 | 0 |
| Seaview Insurance Co. | 1,963,028,502 | 181,701,093 | 171,983,915 | 9,717,178 | 179,913,857 | 9,620,304 | 772,844 | 0 | 37,699 | 463,537 |
| Financial Cas & Surety Inc. | 1,660,167,057 | 13,889,416 | 0 | 13,889,416 | 13,889,416 | 13,889,416 | 0 | 2,160,668 | 2,323,300 | 2,474,977 |
| Accredited Surety & Cas Co. | 1,279,251,934 | 122,364,624 | 113,128,190 | 9,236,434 | 122,364,624 | 9,236,434 | 0 | 0 | 0 | 0 |
| Lexington National Ins Corp. | 1,208,450,019 | 121,082,465 | 110,946,701 | 10,135,764 | 125,112,297 | 9,880,155 | 2,590,520 | 394,967 | 1,448,541 | 243,818 |
| American Surety Co. | 1,123,627,092 | 113,762,684 | 103,557,916 | 10,204,768 | 109,216,928 | 9,797,003 | 1,656,799 | 190,310 | 553,199 | 1,577,818 |
| International Fidelity Ins Co. | 976,426,844 | 18,040,641 | 14,881,977 | 3,158,664 | 18,040,641 | 3,158,664 | 0 | 0 | 0 | 0 |
| Seneca Insurance Co. | 961,973,126 | 92,599,876 | 87,275,179 | 5,324,697 | 91,315,890 | 5,250,865 | 1,178,974 | 0 | 0 | 0 |
| Allegheny Casualty Co. | 822,671,519 | 29,894,993 | 27,165,386 | 2,729,607 | 29,894,993 | 2,729,606 | 0 | 0 | 0 | 0 |
| American Contractors Indem Co. | 545,223,477 | 49,762,421 | 45,434,424 | 4,327,998 | 49,023,130 | 4,314,671 | 748,688 | 1,424,698 | 1,298,580 | 685,028 |
| Palmetto Surety Corp. | 537,015,207 | 47,668,770 | 41,464,573 | 6,204,197 | 6,204,197 | 0 | 0 | 627,826 | 827,826 | 805,348 |
| Roche Surety & Casualty Co. | 389,853,177 | 40,103,966 | 37,228,274 | 2,875,692 | 40,149,825 | 2,883,406 | 484,440 | 0 | 0 | 0 |
| Continental Heritage Ins Co. | 323,531,630 | 32,353,163 | 30,250,208 | 2,102,955 | 32,056,964 | 2,087,171 | 3,152,691 | 0 | 0 | 0 |
| Univ Fire & Casualty Ins Co. | 316,416,434 | 29,447,764 | 26,884,658 | 2,563,106 | 29,447,764 | 2,563,106 | 0 | 0 | 0 | 0 |
| North River Insurance Co. | 235,183,648 | 34,961,295 | 32,459,554 | 2,501,741 | 34,961,295 | 2,501,741 | 0 | 0 | 0 | 0 |
| Sun Surety Insurance Co. | 227,284,149 | 23,605,142 | 20,522,137 | 3,083,005 | 23,605,076 | 3,083,561 | 19,279 | 245,329 | 245,329 | 0 |
| U.S. Specialty Insurance Co. | 207,327,053 | 21,656,327 | 20,516,016 | 1,140,311 | 10,821,580 | 1,175,026 | 90,646 | 0 | (139,223) | 280,219 |
| Indiana Lumbermens Mutl Ins Co | 194,351,533 | 20,445,142 | 19,956,761 | 488,381 | 20,672,397 | 715,636 | 1,838,289 | 0 | 0 | 0 |
| U.S. Fire Insurance Co. | 151,673,105 | 24,423,497 | 22,211,352 | 2,212,145 | 22,625,497 | 2,212,145 | 2,925,000 | 770,318 | 0 | 0 |
| Crum & Forster Indemnity Co. | 120,301,348 | 31,642,308 | 29,900,586 | 1,741,722 | 31,642,308 | 1,741,722 | 0 | 0 | 0 | 0 |
| Broadway Ins & Surety Co. | 120,001,603 | 11,990,484 | 11,210,748 | 779,736 | 13,536,760 | 1,087,743 | 362,250 | 0 | (79,420) | 119,676 |
| 1st Atlantic Surety Co. | 99,372,525 | 7,820,618 | 6,730,802 | 1,089,816 | 7,731,432 | 1,000,630 | 324,525 | 198,932 | 329,954 | 141,990 |
| Williamsburg National Ins Co. | 92,370,403 | 9,286,844 | 8,619,735 | 667,109 | 9,306,159 | 668,294 | 2,832,397 | 0 | 0 | 0 |
| Empire Bonding & Insurance Co. | 62,559,133 | 781,765 | 0 | 781,765 | 702,443 | 0 | 376,672 | 0 | 0 | 42,207 |
| U.S. Surety Co. | 50,708,794 | 5,123,661 | 4,743,890 | 379,771 | 4,724,524 | 325,942 | 85,272 | 0 | 14,886 | 35,278 |
| First Indemnity of Am Ins Co. | 45,908,145 | 4,590,815 | 4,223,549 | 367,266 | 5,003,278 | 429,859 | 99,967 | (116,556) | 26,792 | (746,944) |
| Star Insurance Co. | 44,120,363 | 4,099,362 | 3,796,591 | 302,771 | 3,406,273 | 284,040 | 1,365,209 | 0 | 0 | 0 |
| Integra Insurance Inc. | 34,926,000 | 2,760,819 | 2,236,341 | 524,478 | 2,760,819 | 524,478 | 0 | 0 | 0 | 0 |
| Whitecap Surety Co. | 34,696,993 | 3,469,699 | 3,179,142 | 290,557 | 3,469,699 | 290,557 | 0 | 0 | 0 | 0 |
| Safety National Casualty Corp. | 1,592,002 | 158,550 | 148,629 | 9,921 | 158,550 | 9,921 | 0 | 2,500,000 | 3,472 | 1,402,456 |
| National Bail & Surety Co. | 61,500 | 26,507 | 0 | 26,507 | 27,340 | 27,340 | 167 | 0 | 0 | 50,000 |
| Totals | 15,861,781,399 | 1,303,657,280 | 1,190,078,883 | 113,578,398 | 1,243,599,850 | 103,861,681 | 30,352,329 | 8,396,492 | 6,890,935 | 7,575,408 |

CONFIDENTIAL

©The Surety Fidelity Association of America

SFAA 000430

CONFIDENTIAL

©The Surety Fidelity Association of America

# The Surety and Fidelity Association of America
## 2015 BAIL BOND SUPPLEMENT EXHIBIT #1B: TOP BAIL BOND WRITERS
(Draft: June 28, 2016)

| Company | 19. Direct Defense Cost Containment Expenses Paid | 20. Direct Defense Cost Containment Expenses Incurred | 21. Direct Defense Cost Containment Expenses Unpaid | 22. Taxes, Licenses and Fees | 23. Build-Up Fund Account Balances as of Beginning of Period | 24. Gross deposits to BUF Accounts (including interest earned) | 25. Gross Withdrawals from Build-Up Fund Accounts | 26. Build-Up Fund Account Balances as of End of Period (Line 23 + Line 24 - Line 25) |
|---|---|---|---|---|---|---|---|---|
| Bankers Insurance Co. | 0 | 0 | | 3,468,965 | 13,589,531 | 2,946,915 | 3,122,239 | 13,414,207 |
| Seaview Insurance Co. | 0 | 73,464 | 73,464 | 3,799,976 | 3,463,039 | 2,893,991 | 1,962,023 | 6,357,030 |
| Financial Cas & Surety Inc. | 0 | 0 | 0 | 2,718,896 | 24,714,345 | 2,463,768 | 15,052,700 | 25,216,090 |
| Accredited Surety & Cas Co. | 0 | 0 | 0 | 2,618,047 | 26,325,838 | 14,243,974 | 15,052,700 | 25,517,112 |
| Lexington National Ins Corp. | 0 | 0 | 0 | 2,817,068 | 26,281,583 | 28,730,251 | 29,793,580 | 25,218,254 |
| American Surety Co. | 0 | 0 | 0 | 1,001,771 | 34,688,840 | 6,185,360 | 4,533,721 | 36,340,479 |
| International Fidelity Ins Co. | 82,504 | 0 | 0 | 1,571,612 | 14,778,009 | 14,871,754 | 14,080,448 | 15,569,315 |
| Seneca Insurance Co. | 43,447 | 10,700 | (21,113) | 1,641,170 | 19,840,541 | 4,681,889 | 3,845,500 | 20,676,930 |
| Allegheny Casualty Co. | 0 | 179,213 | 254,142 | 912,869 | 13,332,890 | 2,009,700 | 2,814,704 | 12,527,886 |
| American Contractors Indem Co. | 0 | 0 | 0 | 842,898 | 11,384,534 | 3,749,179 | 2,943,541 | 12,190,172 |
| Palmetto Surety Corp. | 0 | 0 | 0 | 729,327 | 8,745,449 | 1,517,153 | 1,464,501 | 8,798,101 |
| Roche Surety & Casualty Co. | 0 | 0 | 0 | 835,465 | 4,588,242 | 1,829,585 | 1,641,315 | 4,776,512 |
| Continental Heritage Ins Co. | 0 | 0 | 0 | 301,126 | 5,954,405 | 2,386,292 | 1,659,662 | 6,681,035 |
| Univ Fire & Casualty Ins Co. | 0 | 0 | 0 | 0 | 4,102,235 | 1,765,978 | 1,402,806 | 4,465,407 |
| North River Insurance Co. | 0 | 61,275 | 86,101 | 0 | 2,617,161 | 1,410,964 | 521,053 | 3,507,072 |
| Sun Surety Insurance Co. | 0 | 0 | 0 | 293,386 | 8,699,782 | 1,907,456 | 996,546 | 9,610,691 |
| U.S. Specialty Insurance Co. | 0 | 0 | 0 | 141,995 | 1,092,482 | 1,688,958 | 431,007 | 2,350,433 |
| Indiana Lumbermens Mutl Ins Co | 817 | 817 | 0 | 586,890 | 7,820,747 | 1,784,860 | 1,430,672 | 8,174,935 |
| U.S. Fire Insurance Co. | 9,711 | 0 | 0 | 321,245 | 212,022 | 60,370 | 0 | 272,392 |
| Crum & Forster Indemnity Co. | 0 | 0 | 0 | 113,022 | 299,187 | 301,354 | 47,623 | 552,918 |
| Broadway Ins & Surety Co. | 0 | 2,635 | 2,635 | 55,869 | 0 | 0 | 0 | 0 |
| 1st Atlantic Surety Co. | 401,671 | 401,671 | 0 | 9,623 | 1,739,711 | 349,922 | 646,640 | 1,442,993 |
| Williamsburg National Ins Co. | 0 | 18,484 | 20,106 | 17,428 | 148,349 | 124,406 | 0 | 272,755 |
| Empire Bonding & Insurance Co. | 0 | 0 | 0 | 67,850 | 208,670 | 12,220 | 0 | 220,890 |
| U.S. Surety Co. | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 200,000 |
| First Indemnity of Am Ins Co. | 0 | 0 | 0 | 28,752 | 550,789 | 0 | 103,632 | 447,157 |
| Star Insurance Co. | 0 | 0 | 0 | 10,733 | 9,190,804 | 939,127 | 3,018,278 | 7,111,653 |
| Integra Insurance Inc. | 0 | 0 | 0 | 0 | 9,168,152 | 984,824 | 4,839,849 | 5,313,127 |
| Whitecap Surety Co. | 0 | 0 | 0 | 0 | 268,136 | 273,568 | 250,065 | 291,639 |
| Safety National Casualty Corp. | 0 | 0 | 0 | 3,887 | 0 | 23,156 | 0 | 23,156 |
| National Bail & Surety Co. | 0 | 0 | 0 | 3,708 | 0 | 117,010 | 0 | 117,010 |
| Totals | 538,150 | 748,259 | 415,335 | 24,913,578 | 254,005,473 | 100,253,984 | 96,602,105 | 257,657,351 |

SFAA 000431

**CONFIDENTIAL**

# The Surety and Fidelity Association of America
## 2015 BAIL BOND SUPPLEMENT EXHIBIT #2: AGGREGATE REPORT
(Draft: June 28, 2016)

| | # of Responses | # Responding YES | # Responding NO |
|---|---|---|---|
| 1. Is the bail bond premium reported on a gross basis? | 31 | 6 | 25 |
| 2. If the answer to #1 was no, was a permitted practice granted to the reporting entity? | 25 | 19 | 6 |
| 3. If the answer to #2 was no, please explain: **Various responses** | | | |
| 4. What bond life is used to calculate unearned premium in days?  Average: 171  Median: 120  Mode: 365 | 17* | n/a | n/a |
| * Of the 17 responses, two "1 day" were not included in the average, median and mode calculations. | | | |
| 5. Are any amounts charged to the consumer excluded from Gross Premiums? | 31 | 11 | 20 |
| 6. If the answer to #5 was Yes, please explain: **Various responses** | | | |
| 7. Do the agents have ongoing performance obligations on the bond after execution? | 31 | 23 | 8 |
| 8. If the answer to #7 is Yes, please describe the nature of the agents' continuing obligations: **Various responses** | | | |

| | Current Year | % of GPW | Prior Year | % of GPW |
|---|---|---|---|---|
| 9. Face amount of bail bonds written | 15,861,781,399 | XXX | 16,182,033,783 | XXX |
| 10. Direct Premiums Written (Gross) | 1,303,657,280 | XXX | 1,248,032,157 | XXX |
| 11. Commissions and Brokerage Expenses | 1,190,078,883 | 91.3% | 1,135,125,859 | 91.0% |
| 12. Prem Written Net of Agent Comm and Broker Expenses | 113,578,398 | 8.7% | 112,906,300 | 9.0% |

| | Current Year | % of GPE | % of NPE | Prior Year | % of GPE | % of NPE |
|---|---|---|---|---|---|---|
| 13. Direct Premium Earned (Gross) | 1,243,599,850 | XXX | XXX | 1,129,175,193 | XXX | XXX |
| 14. Prem Earned Net of Agent Comm and Broker Exp | 103,861,681 | XXX | XXX | 124,871,113 | XXX | XXX |
| 15. Direct Unearned Premium Reserves | 30,352,329 | 2.4% | 29.2% | 22,861,026 | 2.0% | 18.3% |
| 16. Direct Losses Paid (deducting salvage) | 8,396,492 | 0.7% | 8.1% | 3,609,174 | 0.3% | 2.9% |
| 17. Direct Losses Incurred | 6,890,935 | 0.6% | 6.6% | 4,177,684 | 0.4% | 3.3% |
| 18. Direct Losses Unpaid | 7,575,408 | 0.6% | 7.3% | 12,732,853 | 1.1% | 10.2% |
| 19. Direct Defense Cost Containment Expenses Paid | 183,751 | 0.0% | 0.2% | 538,466 | 0.0% | 0.4% |
| 20. Direct Defense Cost Containment Expenses Incurred | 120,593 | 0.0% | 0.1% | 799,548 | 0.1% | 0.6% |
| 21. Direct Defense Cost Containment Expenses Unpaid | 648,728 | 0.1% | 0.6% | 415,341 | 0.0% | 0.3% |
| 22. Taxes, Licenses and Fees | 25,511,204 | 2.1% | 24.6% | 28,272,403 | 2.5% | 22.6% |

| | Current Year | Prior Year |
|---|---|---|
| 23. Build-Up Fund account balances as of beginning of period | 294,180,847 | 279,056,904 |
| 24. Gross deposits to BUF Accounts (including interest earned) | 124,870,960 | 109,819,829 |
| 25. Gross withdrawals from Build-Up Fund accounts | 105,523,550 | 101,637,178 |
| 26. Build-Up Fund account balances as of end of period (Line 23 plus Line 24 minus Line 25) | 313,528,257 | 287,239,554 |

©The Surety Fidelity Association of America

SFAA 000432

**CONFIDENTIAL**

Orgovan, Joseph

| | |
|---|---|
| From: | Duke, Rob |
| Sent: | Wednesday, March 9, 2016 3:08 PM |
| To: | Committee-BBAC-Open |
| Subject: | Letter to the Editor - ABA Journal |
| Attachments: | scanner@surety.local_20160309_143614.pdf; bail.aba.letter.editor.doc |

In the March 2016 edition of the ABA Journal, there was a troubling discussion regarding bail as part of the "criminalization of poverty." (attached) SFAA staff determined that a response was needed. Attached is a draft letter to the editor. Please review and feel free to offer any suggested revisions.

Rob

Robert J. Duke
Corporate Counsel
The Surety & Fidelity Association of America
202-778-3630
rduke@surety.org

# President's Message || By Paulette Brown

# Justice for All … Who Can Afford It

## Use of excessive fees, fines and bail results in unequal access to justice for the poor

**What is the price of justice?**

America is supposed to adhere to the principle of "equal justice under law," a concept dating back to ancient Greece and embedded in our society through the 14th Amendment. The phrase is so important to our legal system it is engraved on the U.S. Supreme Court building.

But today, in far too many instances, an individual's access to equal justice is based less on principle and more on ability to pay. Financial penalties—fees, fines and bail—have rendered justice unjust.

Fees and fines that ignore a defendant's ability to pay place an unfair burden on people of lesser means. Minor infractions can result in fees that spiral into thousands of dollars, and contribute to the United States incarcerating



more individuals than any developed country. Bail set without consideration of financial circumstances results in the detention of the poorest, rather than most dangerous or highest flight risks as intended.

**In December, I attended a White House meeting** titled "A Cycle of Incarceration: Prison, Debt and Bail Practices." A bipartisan, eclectic group of academics and stakeholders were gathered to discuss the issue and develop an agenda for change. U.S. Attorney General Loretta Lynch spoke at the meeting about "the criminalization of poverty" where a person's financial standing, not actions or deeds, determines justice. She explained how this situation breeds mistrust and erodes faith in our government and law enforcement.

Former Attorney General Robert F. Kennedy said in 1962, "If justice is priced in the marketplace, individual liberty will be curtailed and respect for law diminished." We are seeing this respect diminished throughout our country. One such place, Ferguson, Mo., was the subject of a U.S. Department of Justice investigation.

In March 2015 the Justice Department's Civil Rights Division released its report on the Ferguson Police Department and found that the city focused its municipal court operations on revenue generation, not public safety. It routinely imposed excessive fines,

arrested low-income residents for failure to appear or make payments, and used unlawful bail practices, resulting in unnecessary incarceration.

The report referenced the case of a 67-year-old woman who received two traffic tickets in 2007 totaling $152. After more than eight years of fines and penalties—including two arrests and six days in jail—she had paid the city $550 and owed $541 more.

**Ferguson is not an anomaly.** Across the country, nearly two thirds of all inmates in county jails are awaiting trial at a taxpayer cost of $9 billion. After release on bail or probation, many must pay private companies to monitor them. In South Carolina, a defendant has to pay almost $300 a month for an ankle-monitoring bracelet or return to jail.

The office of the public defender was formed to assist individuals unable to afford a private lawyer. Yet in too many instances, indigent defendants are required to pay a fee to utilize a public defender, placing the promises of *Gideon v. Wainwright* in a precarious position.

But there are alternatives. In Newark, New Jersey, Judge Victoria F. Pratt presides over Municipal Court Part Two and uses procedural justice rather than incarceration. She routinely orders individuals to write essays to examine why they committed an infraction and how they can change their lives.

Judge Alex Calabrese at the Red Hook Community Justice Center in Brooklyn, New York, concentrates on the underlying problem of a defendant's behavior and crafts solutions such as service to repay the community. These courts focus on fairness. Defendants respond when treated with dignity. These courts save money, reduce pretrial incarcerations—which can average $19,000 per case—and improve recidivism rates.

John Jay, the first Chief Justice of the United States, said, "Justice is indiscriminately due to all, without regard to numbers, wealth or rank." To live up to these words, courts need to save money through innovation rather than extracting it from poor defendants. Only then can justice truly be equal for all. ∎

PHOTOGRAPH BY MARC HAUSER

**Follow President Brown on Twitter @Brown4Lawyers.**

SFAA 000434

CONFIDENTIAL

# The Surety & Fidelity Association of America

1140 19th STREET, NW, SUITE 500, WASHINGTON, DC 20036  TEL: (202) 463-0600 – FAX: (202) 463-0606
website: http://www.surety.org
E-mail: information@surety.org

March 9, 2016

Re:    "Justice for All . . . Who Can Afford It", March 2016, p. 8

Dear Editors:

The Surety & Fidelity Association of America ("SFAA") is a non-profit corporation whose member companies collectively write the majority of surety and fidelity bonds in the United States.  SFAA's members are sureties on the vast majority of bonds in the United States, and include a number of companies active in providing surety bail bonds.

Much of the law involves balancing the interests of the parties and stakeholders.  In her President's Message, Paulette Brown identifies key issues with respect to the use of bail.  However, the balancing as presented in her Message is incomplete.  Her Message fails to acknowledge the societal benefit of bail and the societal harm and cost caused by a defendant's failure to appear.

The use of bail has been contemplated and accepted since the Nation's founding.  Notably, because the Eighth Amendment of the U.S. Constitution prohibits the use of <u>excessive</u> bail, the implication is that the use of bail is an accepted practice.  Bail secures the critical public policy interest of having the defendant appear.  A defendant's appearance advances the interests of justice and is a critical condition of due process (*See e.g. People v. Isby.* 30 Cal.2d 879, 894 (1947)).  The Maryland Court of Special Appeals described the public policy objective of bail succinctly:

> The purpose of the bond or security is to secure a trial, its object being to combine the administration of justice with the convenience of a person accused, but not proved, to be guilty. If the accused does not appear the bail may be forfeited, not as a punishment to the surety or to enrich the Treasury of the State, but as an incentive to have the accused return or be returned to the jurisdiction of the court.

*Irwin v. State,* 17 Md.App. 518, 524 (1973).  Unfortunately, the President's Message failed to acknowledge the key role of bail in the administration of justice.

Surety bail is the most efficient and effective means of furthering this public policy interest.  Experience in other jurisdictions has shown that cash bail for only a portion of the bond or other measures are not an effective means to secure a defendant's appearance.  For example,

SFAA 000435

**CONFIDENTIAL**

Letter to the Editor
March 9, 2016
Page 2

according to a June 26, 2010, article from the Philadelphia Inquirer[1], over $1 Billion was owed to the City by defendants who were released after depositing 10% cash bail and then failed to appear.  That is, under a partial cash bail system, the defendant pays 10% of the bond and promises that if he or she fails to appear, the balance will be paid.  With only 10% at stake, a high number of defendants failed to appear and, not surprisingly, failed to pay the balance of the bond.  A surety bail bond takes measures to assure that the defendant appears and will pay 100% of the bond if there is a failure to appear.

A failure to appear thwarts the administration of justice.  It is important to remember that the defendant is in jail primarily because there was probable cause that he or she committed a crime.  Bail secures the objective of the defendant's appearance so that proceedings can ensue to determine his or her guilt.

The bail bond agent, and ultimately the surety, do much more than collect the bond premium.  The agent often obtains collateral or indemnity to guarantee that if the defendant fails to appear and the bond is forfeited, the agent and surety will have indemnity for the loss.  This gives the defendant's friends or family members who provided the collateral or indemnity, as well as the defendant, a powerful financial incentive to see that the defendant appears in court or is recovered promptly in the event of a default.  The agent also monitors the defendant to avoid a default and attempts to recover a defendant who failed to appear.  Finally, the agent or surety pays any forfeiture.

The President's Message did not acknowledge that the source of funds to pay for bail or monitoring devices typically is not the defendant but the defendant's family and friends.  Courts examine these other sources to determine if the defendant is truly indigent.  In the vast majority of cases, such sources are available to pay bail.

We hope that when the ABA Journal addresses the public policy surrounding bail in the future, it will balance and account for all interests.  Thank you for your consideration.

Sincerely,


Robert J. Duke
Corporate Counsel

---

[1] See http://articles.philly.com/2010-06-26/news/24966289_1_court-leaders-debt-court-officials

## Orgovan, Joseph

| | |
|---|---|
| From: | Wanke, Daniel |
| Sent: | Tuesday, June 24, 2014 3:51 PM |
| To: | Committee-BBAC-Open |
| Cc: | DNABIC@aol.com |
| Subject: | Bail Bond Legislation |
| Attachments: | Bail Bond Legislation - June 2014.pdf |

Please find attached our latest report on legislation for 2014. If you have any questions, please do not hesitate to contact us. Thank you.

Daniel Wanke

Daniel Wanke
Manager - Regulatory and Government Affairs
The Surety & Fidelity Association of America
(202) 778-3631 - Direct
(202) 463-0606 - Fax
www.surety.org



# THE SURETY & FIDELITY ASSOCIATION OF AMERICA

## MEMORANDUM

TO:      **Bail Bond Advisory Committee**

FROM:    **Daniel Wanke**

RE:      **Bail Bond Legislation**

DATE:    **June 23, 2014**

**There are eight states and the District of Columbia in session. In all states except New Jersey and Virginia, this is the second year of a two-year session. The following report compiles and summarizes bail bond legislation that SFAA is tracking for 2014.**

| Jurisdiction | Bill | Recent History | SFAA Summary |
|---|---|---|---|
| AL | HB 134 | Failed | HB 134 would have eliminated the requirement that a professional bail company furnish a $25,000 surety bond. The bill would have required an escrow agreement with a minimum amount of $100,000 instead. The bill established a maximum amount of an appearance bond that a company could post per defendant. The bill would have required the company to obtain from the circuit clerk a certified list of its outstanding appearance bonds and their amounts and a copy of the original escrow agreement for recertification. The bill would have required an affidavit certifying proof of all the documents required for recertification. The bill also would have required employees of the company to be fingerprinted to check their criminal record. The bill prohibited any person charged with certain crimes from having a financial interest in the company. The bill also would have established minimum education and exam requirements for employees. |
| AL | SB 155 | Failed | SB 155 would have established education and continuing education requirements for professional bail bondsmen. The bill provided that failure to comply with the proposed education requirements would have resulted in a suspension of the authority to act as a bondsman. |

| | | | |
|---|---|---|---|
| AL | SB 236 | Failed | SB 236 would have established continuing education and examination requirements for professional bail bondsmen. The bill would have required bondsmen to file certificates of examination or continuing education issued by the Department of Insurance with the presiding circuit judge. |
| AL | SB 249 | Failed | SB 249 would have established continuing education and examination requirements for professional bail bondsmen. The bill would have established requirements for certifying organizations to conduct courses to meet these education requirements. |
| AL | SB 413/ HB 477 | Failed | SB 413/HB 477 would have revised the existing law concerning premium reserves for surety insurers. Current law requires sureties to post an unearned premium reserve in accordance with the requirements for property and general casualty insurers based on gross premiums. The bill would have established an unearned premium reserve for bail bond surety insurers based on net premiums. |
| CA | AB 723 | 08/30/2013 AB 723 has been held in the Senate Appropriations Committee. | AB 723 would permit a person on post-release supervision that has a revocation petition filed against him or her to file an application for bail or release on his or her own recognizance with the superior court. Current law requires that persons released from prison after serving a prison term for a felony, with exceptions, be released into post-release community supervision for a period not exceeding three years. |
| CA | AB 773 | Failed | AB 773 would have revised the bail agent licensing law to permit a limited liability company (LLC) to be licensed as a bail agency. The bill would have exempted a corporation or LLC that is an admitted surety insurer or is a subsidiary of an admitted surety insurer from a requirement that 100% of the shares of the corporation or membership interest in the LLC be held by licensed bail agents and from a requirement that members of the LLC and all shareholders, officers, and directors of the corporation be licensed as bail agents. |
| CA | AB 1118 | 06/19/2014 AB 1118 has been amended and re-referred to the Senate Committee on Public Safety. | AB 1118 would revise the existing law on the countywide bail schedules that courts currently are required to establish by law. The bill would direct the Judicial Council to prepare, adopt and maintain a statewide bail schedule for all bailable felony offenses and for all misdemeanor and infraction offenses, except for Vehicle Code infractions. The bill would outline the procedures for how to set forth the schedule, which would be based on the seriousness of the offense, and additional factors set forth in the law pertaining to certain crimes. The bill would have provided requirements for courts using the statewide schedule in lieu of the county schedule under existing law. These provisions were removed in recent amendments. |

SFAA 000439

| CO | SB 212 | 06/06/2014 SB 212 has been enacted. | SB 212 clarifies the existing law concerning bail bonds. The new law provides that the defendant could select how to secure a bail bond unless the court mandates a particular method. The new law revises the procedures for motions during hearings for the review of a bond. The new law makes technical corrections concerning monetary condition bonds. The new law specifies that a court could designate a person to set bond amounts. |
| --- | --- | --- | --- |
| CO | HB 1261 | Failed | HB 1261 would have revised the existing law concerning pretrial release programs and bail bonds. The bill would have limited a court's authority to determining the amount of the bond and gives the defendant the ability to choose how to satisfy the bond. The bill also would have outlined limits on how the court may release a defendant on his or her personal recognizance. The bill would have revised the law on the exoneration of the bond to require compensated sureties to provide information on the costs of the bond. The bill also would have revised the law concerning how security deposits are used upon forfeiture or termination of a bond by requiring the consent of the defendant for how the proceeds are used. The bill would have established notification requirements for pretrial supervision programs for when a defendant commits a potential bail or program violations. |
| CT | SB 107 | Failed | SB 107 would have revise the existing law concerning the advertising that bail bond agents may conduct in a correctional institution, community correctional center or other detention facility, police station or courthouse. The law permits telephone listings as a form of advertising. The bill would have clarified that this includes advertisements in a yellow pages phone book. |
| CT | SB 389 | 06/13/2014 SB 389 has been enacted. | SB 389 revises the conditions under which a bail bond is automatically terminated and released. |
| CT | HB 5246 | Failed | HB 5246 would have revised the existing law concerning licensing for bail bond agents. The bill provided for the cancellation of the license for a failure to pay the required license fee. The bill also would have authorized the Insurance Department to adopt regulations establishing continuing education requirements for bail bond agents in connection with licensure. |
| CT | HB 5586 | 06/13/2014 HB 5586 has been enacted. | HB 5586 permits probation officers to conduct interviews and set the amount of bail in the course of serving arrest warrants for violation of probation under the same terms that a police officer can when making an arrest. |

SFAA 000440

| | | |
|---|---|---|
| CT | HB 5588<br><br>06/12/2014<br>HB 5588 has been enacted. | HB 5588 permits a surety from a bail bond in a criminal case to apply for release from a bond if the defendant absconds. The new law authorizes the court to extend the stay of execution of a bond forfeiture if a defendant failed to appear. Among the conditions by which a court would vacate a bond forfeiture, the new law adds when the defendant is taken into custody by a federal agency, or if he or she has been removed by U.S. Immigration and Customs Enforcement. The bill would have revised certain provisions with regard to promissory notes given in connection with premium financing agreements for the bail bond. The bill provided that if a defendant whose bond has been forfeited returns to court voluntarily more than five business days after and less than six months after the bond was ordered forfeited, the bond would have been automatically terminated, and the surety would be released. The bill provided for a task force to study the law on the extradition of fugitives. |
| DE | SB 36<br><br>01/29/2014<br>SB 36 has been reported out of the House Administration Committee. | SB 36 would amend Delaware's constitution regarding the right to bail. Currently, the law provides that all prisoners are bailable by sufficient sureties, except for capital offenses "when the proof is positive or the presumption great." The bill provides that bail would not be granted to prisoners charged with certain felony offenses or in circumstances when "no condition or combination of conditions other than detention will reasonably assure the safety of any person or the community." The bill would require persons held pretrial for such felonies to be offered bail if their trial has not commenced 90 days from the date of their arrest. |
| FL | HB 365<br><br>Failed | HB 365 provided that an order of no contact for a defendant would be effective immediately upon the order of the court and enforceable prior to and through the time of release. Existing law prohibits defendants from contacting victims in a criminal case except in accordance with certain procedures in the case as a condition of pretrial release. |
| FL | HB 427<br><br>06/20/2014<br>HB 427 has been enacted. | HB 427 prohibits a person who resides in Florida from crossing a county boundary with the intent to commit burglary in a county other than that of his or her residence. The bill had provided that defendants charged with such crimes would not be eligible for release on a bail or a surety bond. As amended and enacted, the new law provides that persons committing burglary in a county other than their residence, the degree of the burglary will be reclassified to the next higher degree if the purpose of the person's travel is to thwart law enforcement attempts to track the stolen items. The reclassification of the degree of the burglary must be taken into consideration when the court is determining bail. |

SFAA 000441

| | | | |
|---|---|---|---|
| FL | SB 854/ HB 1395 | Failed | SB 854/HB 1395 would have provided for the use of electronic surety bonds for bail bonds. The bill would have outlined the qualifications required of bail agents to use such bonds. Further, the bill also would have added specifications to the law concerning surety qualifications for issuing bail bonds, including licensure and the attachment of a power of attorney. |
| FL | HB 5601 | 05/14/2014 HB 5601 has been enacted. | HB 5601 revises the existing law concerning the premium and excise taxes for bail bonds and permits the computation based on net premiums. |
| GA | HB 96 | Failed | HB 96 would have abolished the death penalty. The bill would have deleted references throughout the law referencing the death penalty with respect to criminal charges. The bill would have repealed an extension of the 90-day period for defendants subject to the death penalty to have the charges heard by a grand jury. The law provides that if the charges are not heard, then the defendant may be granted bail. |
| GA | HB 145 | Failed | HB 145 would have revised the existing law for hearings in which persons who may pose a danger are required to appear. Existing law provides that a bond may be required of the person who the court orders to appear to secure their good behavior. The bill would have revised the bond term, which currently is from the time of the order until the next term of the superior court of the county or for six months, whichever is greater. The bill would have required the bond to be in place for six months. The bill also would have repealed a provision permitting a person to require their spouse to post a bond for good behavior in these cases. The bill also would have repealed a provision permitting direct actions on the bond. The law permits the bond period to be extended from term to term by the superior or state court, or for additional 60-day periods, whichever is greater. Instead, the bill would have provided for the extension of the bond for a period of six months. |
| GA | HB 271 | 04/22/2014 HB 271 has been enacted. | HB 271 revises the requirements for escrow accounts for professional bail bond companies. The new law revises the premium requirements for bail bond companies with regard to the permissible amount the company may charge for a bond. Prior law capped the charge at not more than 12% of the face amount of the bond set in the amount of $10,000 or less, and not more than 15% of the face amount of the bond set in an amount in excess of $10,000. The new law caps the maximum premium at 15% of the bond amount, regardless of the amount of the bond, provided however that a surety may charge and receive a minimum of $50 per bonded charge or offense as compensation, regardless of whether it exceeds 15% of the face amount of the bond. |

SFAA 000442

| | | | |
|---|---|---|---|
| | | | Prior law provided that the establishment of a cash escrow account or other form of collateral had to be in a sum and upon terms and conditions approved by the sheriff. The new law provides that the escrow or collateral amount for professional bonding companies that are new to the county or that has operated continuously in the county for less than 18 months would be determined and approved by the sheriff. Following this period, the cash escrow account or other form of collateral shall not exceed 10% of the company's current outstanding bail bond liability. The new law prohibits the company from purchasing an insurance policy in lieu of establishing a cash escrow account or posting other collateral. The new law provides that companies that were using an insurance policy as collateral as of December 31, 2013, will be permitted to continue to do so at the sheriff's discretion. As introduced, the bill did not impact bonding. It was amended and quickly passed in this form. |
| GA | HB 392 | Failed | HB 392 would have revised the law for unclaimed cash bail. Under current law, if the surety does not claim the cash bail seven years from the later of either the date on which the defendant was required to appear in court or the date of disposition of the case by the prosecutor or the court, then the bond is remitted to the county general fund where the trial took place. The bill would have reduced this to a period of one year from the date of the surety being released from liability or the date of disposition of the case by the prosecutor or the court. |
| GA | HB 510 | Failed | HB 510 would have reduced from 15 days to seven days the period given to place a detainer or hold on a defendant to prevent forfeiture on the bond in certain cases where a defendant is prevented from appearing in court. Following this period, the surety is relieved of the liability for the bond. The bill also would clarify that the period begins from the date of the surety's request. The bill provided that the bond could not be forfeited due to the defendant undergoing treatment. The bill would have stricken provisions pertaining to the return of the defendant in cases where the surety locates the defendant. Returning the defendant grants the surety a refund. The bill would have granted this refund if the defendant is "produced or otherwise appears before the court that has jurisdiction of the bond." The bill provided that in cases where the defendant is outside of the State and the court does not seek extradition, the bill provides that 5% of the bond could be remitted to satisfy the judgment. |

SFAA 000443

| GA | 805 | Failed | HB 805 would have revised existing law to permit bail bondsmen to be elected to certain local offices. |
|----|-----|--------|------|
| HI | SB 873/ SB 415/ HB 234 | Failed | SB 415/HB 234 provided that all money deposited in any criminal proceeding before any court for bail or a bail bond that has not been declared forfeited would have to be applied toward payment of any restitution, fines, or fees ordered by the court in the case for the restitution of the victim or victims of the crime. |
| IA | HB 112 | 04/24/2013 HB 112 has been enacted. | HB 112 extends the time period that the court may set aside a judgment of forfeited bail against a surety when a defendant fails to appear in court from 60 days to 90 days.  Under existing law, if defendants fail to appear in court, such judgments may be set aside for a period of up to 60 days from the date of the judgment to permit the defendant to voluntarily surrender to the sheriff or for the surety to deliver the defendant to the court.  Further, the new law increases the time the district court clerk is required to hold forfeited bail from 60 days to 90 days from the date of the judgment against the surety. |
| IA | HSB 636 | Failed | HSB 636 outlined who an arrested person may call, which would include insurance companies writing bail bonds. |
| ID | HB 461 | 03/26/2014 HB 461 has been enacted. | HB 461 establishes sobriety requirements as a part of a monitoring program for defendants in criminal cases.  The new law provides that the court may require abstaining from drugs and alcohol participation in a sobriety monitoring program as a condition of the defendant's bond. |
| IL | HB 1243 | 04/11/2014 HB 1243 has been sent to the House Rules Committee. | HB 1243 would enact the Illinois Parentage Act of 2013.  The bill provides that when the obligor of a temporary order for child support in a parentage determination case or an obligor of a support order in a paternity case is arrested for failing to report new employment as outlined in the bill, the bond would have to be in the amount of the unpaid support that should have been paid during the period of unreported employment. |
| IL | SB 2280 | 08/09/2013 SB 2280 has been sent to the Senate Assignments Committee. | SB 2280 would delete a provision under current law requiring a defendant to surrender his or her Firearm Owner's Identification Card as a condition of bail. |

SFAA 000444

| IL | HB 3744 | 04/07/2014 HB 3744 has been sent to the Governor. | HB 3744 would expand the types of crimes that are considered in a bail hearing for determining whether a defendant should be placed under electronic surveillance. The bill also would add procedures for the court to record the basis of its decision for placing the defendant under such surveillance. The bill provided that the cost of the electronic surveillance shall be paid from the bail that the defendant has deposited. As amended, the bill provides that the defendant shall pay for the surveillance costs, or someone could pay the costs on his or her behalf. |
| IL | HB 3772 | 01/13/2014 HB 3772 has been introduced. | HB 3772 would authorize a court to order a defendant to be placed under the supervision of the Pretrial Services Agency, Probation Department, County Department of Corrections, or Court Services Department in a pretrial bond home supervision capacity with the use of an approved electronic monitoring device as a condition of being released by personal recognizance. The bill would authorize the court to require the defendant to remain or be placed in the custody of such designated person or organization agreeing to supervise his or her release, with or without the use of an approved electronic monitoring device administered by these agencies as a condition of bail. The bill would allow applications for electronic home detention to include "as a condition of bail, as a condition of release on own recognizances, or in lieu of bail." |
| IL | HB 3773 | 01/13/2014 HB 3773 has been introduced. | HB 3773 would outline the conditions on which a defendant may be released on his or her own recognizance when charged with certain drug-related crimes. |
| IL | 4245 | 04/04/2014 HB 4245 is pending the third reading in the House. | HB 4245 would establish bail procedures for first time, non-violent offenders. The bill provides that such defendants would be released on their own recognizance unless the court determined a cash bond is necessary. |
| IN | SB 373 | Failed | SB 373 would have revised and reorganized the existing law pertaining to bail bonds in Indiana for cash, personal, and commercial bail bonds. |
| IN | HB 395 | Failed | SB 395 would have revised the bail bond requirements in existing law. Of note, the bill provided for an increase in the required amount of the cash deposit from 10% to 15% of the amount of the bail that the court sets. The bill also would have revised the types of security that may be provided as bail. The bill also would have prohibited the court from declaring a bond forfeited for any reason other than the defendant's failure to appear in court. |

SFAA 000445

| KS | SB 26 | Failed | SB 26 would have added bail bond insurance to the types of insurance for which an insurance agent may receive a license. The bill listed bail bond insurance as a "limited line insurance that provides surety for a monetary guarantee that an individual released from jail will be present in court at an appointed time." The bill would have exempted licensed insurance agents who only have a bail bond qualification from the existing law's requirement to obtain continuing education credits. |
| --- | --- | --- | --- |
| KS | SB 140 | Failed | SB 140 would have revised the current law pertaining to appearance bonds with respect to the defendant's immigration status. The bill provided that persons charged with a crime that are not a citizen or national of the United States would have to have their immigration status verified with the federal government. For determining whether to grant or issue appearance bonds, if the person was verified by the federal government as an alien unlawfully present in the United States, there would have been a rebuttable presumption that the person is at risk of flight. |
| KS | SB 256 | 04/18/2014<br>SB 256 has been enacted. | SB 256 revises the existing law concerning bail to prohibit persons charged with certain crimes from being released on their own recognizance. The new law addresses the qualifications of a surety for a bail bond. The new law requires out-of-state sureties to contract with a surety authorized in the State for the apprehension of persons in Kansas. Further, the new law revises the law concerning unlawful sexual relations between a person acting as a bail surety and a defendant and/or minors. |
| KS | HB 2070 | Failed | HB 2070 would have restricted the release of defendants on their own recognizance, provides that an out-of-state surety or bounty hunter intending to apprehend any person in Kansas must enter into a contract with an individual authorized by a Kansas court to act as a surety or bounty hunter before attempting the apprehension. The surety or agent from out-of-state would have had to be accompanied by the Kansas-authorized surety or bounty hunter during such apprehension. Any prior felony conviction would have disqualified a person from being a surety or bounty hunter in Kansas. Current law terminates the disqualification after ten years. |
| KS | HB 2256 | Failed | HB 2256 would have revised the requirements for appearance bonds for municipal courts. The bill provided the amount of the appearance bond shall be set by the court and the amount shall be the same, regardless of the method securing the bond. A deposit of cash in less than the full amount of the bond shall not be permitted. The bill would have deleted language permitting a responsible individual residing within the State to provide a bond. Instead, the bill would have required an appearance bond to be provided by a |

SFAA 000446

| | | |
|---|---|---|
| | | "sufficient, solvent surety." The bill would have revised the law concerning forfeitures. Current law provides that if the forfeiture of a bond has become final, the court shall direct the application of the funds or that an action to be instituted for the collection from the sureties on the bond or from the accused person. Instead, the bill provided that where the bond forfeiture has not been set aside, the court shall direct an action to be instituted for collection of the funds from the obligors on the bond as outlined in K.S.A. 22-2807. |
| KS | HB 2493 | Failed | HB 2493 would revise the existing law concerning bail with respect to releasing defendants on their own recognizance. The bill also would address the qualifications of a surety for a bail bond. Further, the bill would revise the law concerning unlawful sexual relations between a person acting as a bail surety and a defendant and/or minors. |
| KY | HB 359 | 04/25/2014 HB 359 has been enacted. | HB 359 authorizes the court to require defendants in a criminal case to wear a continuous monitoring device for alcohol as a condition of pretrial release if the defendant poses a risk for substance abuse. |
| LA | HB 362 | Failed | HB 362 would have revised the existing law concerning the release of a surety on a defendant's bond to provide that the surety is released from its obligations on account of the clerk of court's failure to mail the notice of a judgment within 60 days after the defendant's "initial" failure to appear. Current law does not specify that it must be the defendant's initial failure to appear. |
| LA | HB 363 | Failed | HB 363 would have revised the existing law on the surety's surrender of a defendant to modify procedures concerning the extradition of a defendant and for seeking to obtain an extension of the time to surrender a defendant. |
| LA | HB 418 | Failed | HB 418 would have established time limits for satisfying a judgment for the forfeiture of a bail bond based on the amount of the bond. In addition, the bill would have allowed a judgment to be satisfied by paying the full amount of the judgments into the registry of the court and the simultaneous institution of proceedings to determine the validity of the judgment. |

SFAA 000447

| LA | SB 439 | Failed | SB 439 would have rewritten the law concerning bail bonds. The bill would have revised certain terminology and procedures with regard to the notices required under existing law in connection with the defendant's appearance in court. The bill also would have revised certain procedures concerning the certificates a surety must receive following the surety's surrender of a defendant or if the defendant surrenders himself or herself. The bill would have revised the procedures concerning the provision of a certificate of death. (i.e. establish a timeframe of when the certificate may be furnished to the court.) The bill would have added new procedures concerning the forfeiture of the bond and the arrest of the defendant following his or her failure to appear in court, including notice requirements and the liability of a bail agent in this case. The bill would have required a contradictory hearing to order a judgment of bond forfeiture. The bill would have revised the current procedures for bond forfeiture appeals. |
| LA | HB 540 | Failed | HB 540 would have revised the existing law on bail bonds to authorize the use of e-mail to provide a notice of judgment of bond forfeiture. The bill would have outlined the procedures under which e-mail could be used. |
| LA | HB 790 | Failed | HB 790 would have revised the existing law for bail bonds, which allows a defendant to furnish a personal undertaking as a bail bond. The bill would have authorized the courts in any parish, other than St. John the Baptist and St. Charles, to alter the percentage amount of the bail to be deposited with the officer, and it would authorize the officer to charge an administrative fee, not to exceed $25 for processing the bond. |
| LA | HB 1142 | 05/29/2014 HB 1142 has been enacted. | HB 1142 provides for bail restrictions concerning protection orders and the possession of firearms. The new law establishes procedures for a bail hearing for felony offenses against a family or household member or dating partner. The new law provides procedures for the issuance of a Uniform Abuse Prevention Order as a condition of bail for offenses against a family or household member or dating partner. The new law prohibits the possession of firearms by persons subject to these orders. |
| LA | HB 1176 | 06/04/2014 HB 1176 has been sent to the Governor. | HB 1176 would restrict use of Family Independence Temporary Assistance Program benefits and electronic benefits cards for bail bonds, among other items. |
| LA | HB 1206 | 04/01/2014 HB 1206 has been sent to the | HB 1206 would consolidate the New Orleans Traffic and Municipal Courts. |

SFAA 000448

| | | Governor. | |
|---|---|---|---|
| MA | SB 666 | 04/17/2014 SB 666 has not moved since it was scheduled for a hearing on 04/24/2014. | SB 666 provides that a probationer that has been charged with violating the terms of his or her probation would be admitted to bail pending a final surrender hearing. |
| MA | SB 678 | 04/14/2014 SB 678 has not moved since it was scheduled for a hearing on 04/16/2014. | SB 678 would amend the existing law pertaining to warrants to provide that a warrant could be designated as a default warrant if it is issued because a person has forfeited or made default on his or her bail bond or recognizance or if the person has been surrendered by a probation officer. |
| MA | SB 825/ HB 1239 | 04/14/2014 SB 825/HB 1239 has not moved since it was scheduled for a hearing on 04/16/2014. | SB 825/HB 1239 would revise certain procedural matters pertaining to unsecured appearance bonds, and also would revise certain procedures with regard to the review of excessive bail. |
| MD | SB 29 | Failed | HB 29 would have outlined certain procedures with regard to local law enforcement participation in federal immigration enforcement. The bill provided that a detainee may not be denied bail solely because of an immigration detainer. Further, the bill provided that nothing in these procedures may be construed to undermine the authority of a court to make a bail or bond determination according to its usual procedures. |
| MD | HB 631 | Failed | HB 631 would have revised the existing law pertaining to the forfeiture of a bail bond. The bill would have eliminated certain provisions concerning refunds to the surety. The bill also would have eliminated provisions concerning the handling of forfeited funds following the arrest, apprehension, or surrender of a defendant who was arrested, apprehended, or surrendered. |

SFAA 000449

| | | |
|---|---|---|
| MD | SB 973/ HB 1232 | Failed | SB 973/HB 1232 would have established a pretrial release services program for criminal defendants. The bill would have directed the Department of Public Safety and Public Services to create the program according to the requirements outlined in the proposed law. The program would have provided alternatives to the pre-trial incarceration of defendants. The bill would have repealed the authority of the District Court commissioners to carry out certain functions in connection with criminal proceedings, including the authority to set bail, and transfer that authority to a judge. |
| MD | SB 1030 | Failed | SB 1030 would have revised the existing law concerning bail bond forfeitures. The bill would have repealed the existing law prohibiting courts exercising criminal jurisdiction from refunding a forfeiture of bail or collateral unless a private surety pays a forfeiture of bail or collateral within the law's time constraints. The bill also would have repealed certain conditions that have to be met under current law before the court may refund a forfeited bail bond or collateral that was not paid within a certain time. |
| MI | SB 521 | 02/20/2014 SB 521 passed the Senate. | SB 521 would revise the existing law concerning bench warrants issued in family court cases where a person has violated a support order. Existing law allows such persons to post a cash performance bond following the issuance of a bench warrant and their arrest in order to be released from custody. The bill would add procedures for furnishing the bond to permit a payer for whom a bench warrant has been issued to voluntarily appear at the office of the friend of the court to answer the bench warrant. The payer must post the bond set forth in the bench warrant or be taken promptly before the court for further proceedings. If the bond is posted, the court or its clerk must give a receipt to the payer, which must direct the payer to appear before the court at a specific time and date. Upon posting the bond, the bench warrant would be removed. |
| MI | HB 4083 | 06/04/2014 HB 4083 is to the second reading in the House. | HB 4083 would create the Michigan crime stoppers act and provide for the designation of crime stoppers organizations by county. Defendants charged with a felony or a misdemeanor, including an ordinance violation, that is resolved by conviction, assignment of the defendant to youthful trainee status, a delayed sentence, or a deferred entry of judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall charge the defendant an assessment that would be used to fund the designated crime stoppers organization in the county. If the defendant posted a cash bond or bail deposit in connection with the case, the court shall order the assessment to be collected out of that bond or deposit. |

SFAA 000450

| | | | |
|---|---|---|---|
| MN | HB 744 | 02/20/2013 HB 744 has been introduced. | HB 744 would impose a fee for the reinstatement of a bail bond in an amount prescribed by court rule in an amount based on a percentage of the bond fee, but not less than $100. The bill also would direct the court to impose a minimum penalty as provided in Rule 702 of Minnesota General Rules of Practice for reinstating the bond. |
| MO | HB 1325 | Failed | HB 1325 would have revised the existing law regarding the possession of less than 35 grams of marijuana and the possession of marijuana drug paraphernalia. The bill would have outlined the fines and penalties for persons charged with this offense. If the person did not have any prior drug offenses on their record, the bill would have exempted him or her from posting a bond. |
| MS | HB 38 | Failed | HB 38 would have established a list of crimes with bail restrictions. Defendants charged with such crimes only could post the required amount of bail in the form of cash, a surety bond, or a bond secured by real property situated in the State with an unencumbered equity equal to the amount of the bail undertaking plus $20,000. The bill would have created a presumption in favor of the court requiring cash bail when a defendant is charged with one of the listed crimes and also has certain offenses or convictions on his or her record or was on parole when arrested, unless the court finds on the record that another form of bail will ensure the defendant's presence in court when required. For bonds secured by real property, an affidavit from the owner must be filed with certain information about the property. |
| MS | HB 122 | Failed | HB 122 would have revised the existing law's bail procedures to establish procedures and conditions under which the court could determine whether to release a defendant prior to the trial. The procedures specify that a bail bond may be required as a condition of release. The bill would have revised the existing law concerning bail bonds to require bail to comply with the bill's procedures. The bill also would have created exceptions in existing law concerning bail to address the bill's procedures. The bill also would have authorized a surety to arrest a defendant released on an appearance bond. The surety would have to deliver the defendant to a law enforcement officer and brought before a judicial officer. The judicial officer would have had to determine whether to revoke the release of the person, and it may absolve the surety of responsibility to pay all or part of the bond. |
| MS | HB 519 | Failed | HB 519 would have rewritten the current penal code in Mississippi. The bill provided that the court could require a defendant to post a bond in connection with the defendant's release for a suspended sentence. |

SFAA 000451

| | | |
|---|---|---|
| MS | HB 886/ SB 2828 | Failed | HB 886/SB 2828 would have eliminated the use of personal sureties for bail bonds. The bill would have required bail to be issued by a "fidelity of surety insurance company" authorized to act as surety within the State. Any such company may execute the undertaking as surety by an officer or attorney authorized by resolution of its board of directors. A certified copy of the authorization, under its corporate seal, would have had to be on file with the clerk of the circuit court and the county sheriff. Existing law already permits insurance companies to write bail bonds in the State. |
| MS | HB 901 | Failed | HB 901/SB 2677 would have revised the existing licensing requirements for bail bond agents. The bill would have revised the definition of bail agents to add assisting in the monitoring or the supervision of pretrial defendants to the types of activities outlined in the term. The bill would have made revisions to the existing continuing education requirements. The bill also would have revised the law concerning the suspension or revocation of a bail agent's license, including penalties for providing false information to the court concerning the proper service of notices. |
| MS | HB 903/ SB 2509 | Failed | HB 903/SB 2509 would have outlined the conditions under which a bail bond would have been considered discharged. |
| MS | SB 2677 | 04/10/2014 SB 2677 has been enacted. | SB 2677 revises the existing licensing requirements for bail bond agents. The new law makes revisions to the existing continuing education and examination requirements. The new law revises the law concerning the suspension or revocation of a bail agent's license, including penalties for providing false information to the court concerning the proper service of notices. The new law prohibits bail agents from making or offering payments to officials in connection with bail transactions in return for business referrals. The new law provides fines and penalties for violations of this new provision. |
| NC | SB 493 | 06/18/2014 SB 493 is pending in the House Committee on Regulatory Reform. | SB 493 would revise the requirements for the format and appearance of the shield that bail bond agents are permitted to carry under current law. |
| NC | SB 574 | 06/20/2014 SB 574 has been sent to the Governor. | SB 574 would have revised the existing law's procedures regarding the termination of the obligation under a bail bond for certain misdemeanors. The bill was gutted and as sent to the Governor, it no longer pertains to bail bonds. |

SFAA 000452

| NC | HB 768 | 04/30/2013 HB 768 is in the House Judiciary Committee. | HB 768 would eliminate unsecured appearance bonds for use in the pretrial release of a defendant. Current law permits the court to require such a bond in an amount specified by the judicial official. |
| NH | HB 353 | 06/20/2013 A conference committee report is pending for HB 353. | HB 353 would clarify existing law to provide that bail recovery agencies are subject to a $150 licensing fee if the agency has only one person employed. The fee is $500 if there is more than one employee. Existing law already requires licensure for such businesses. |
| NH | HB 1358 | 1/8/2014 HB 1358 has been introduced. | HB 1358 would increase the amount of liability insurance that bail agencies and bail recovery agents must obtain from $300,000 to $500,000 and it would subject bail enforcement agents to an existing license fee. The bill also would require bail enforcement agents to take rifle familiarization courses. |
| NH | HB 1482 | 02/12/2014 The House Executive Departments and Administration Committee voted the bill as inexpedient to legislate. | HB 1482 would clarify the licensure of individuals as a bail enforcement agent. Current law provides for the licensure of agency businesses. The bill also would subject bail enforcement agents to an existing license fee of $150. |
| NJ | SCR 36/ ACR 139 | 01/14/2014 SCR 36/ACR 139 has been introduced. | SCR 36/ACR 139 would revise the constitution in New Jersey with regard to bail. The constitution currently provides that "[all] persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great." The resolution provides that all persons would be bailable by sufficient sureties prior to conviction, except that pretrial release could be denied to a defendant charged with a first-degree crime under certain circumstances. The resolution provides that defendants who are denied bail would have the right to appeal this determination and the right to an expedited trial. The resolution would authorize the legislature to establish procedures, terms, and conditions for pretrial release and the denial of it under the proposed change to the constitution. |

SFAA 000453

| NJ | SCR 113/ ACR 163/ ACR 167 | 06/09/2014 SCR 113 has been placed on the desk in the Assembly.<br><br>06/16/2013 ACR 163/ACR 167 have been introduced. | SCR 113/ACR 163/ACR 167 would revise the constitution in New Jersey with regard to bail. The constitution currently provides that "[all] persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great." The resolution provides that all persons would be eligible for pretrial release. The resolution provides that pretrial release may be denied to a person if the court finds that no amount of monetary bail, non-monetary conditions of pretrial release, or combination of monetary bail and non-monetary conditions would reasonably assure the person's appearance in court when required, or protect the safety of any other person or the community, or prevent the person from obstructing or attempting to obstruct the criminal justice process. The resolution would authorize the legislature to establish procedures, terms, and conditions a for pretrial release and the denial of it. |
| NJ | AB 452 | 01/16/2014 AB 452 has been introduced. | AB 452 would restore the options for posting bail in certain cases. The bill would create a presumption in favor of the court designating the posting of cash bail when a defendant is charged for a second or subsequent time with certain crimes. The bill provides that the amounts would be 50% cash option for a second offense and 100% cash option for a third or subsequent offense. |
| NJ | SB 561 | 01/14/2014 SB 561 has been introduced. | SB 561 adds certain weapons offenses to the list of crimes with bail restrictions. The bill also would expand the cases in which a presumption of full cash bail would apply for the defendant. |
| NJ | SB 744 | 01/14/2014 SB 744 has been introduced. | SB 744 would add certain crimes to the list of crimes that have bail restrictions. |
| NJ | SB 847/ AB 3116 | 01/14/2014 SB 847 has been introduced.<br><br>05/08/2014 AB 3116 has been introduced. | SB 847/AB 3116 would authorize a court to order the detention of a defendant charged with a first-degree crime before trial and deny the defendant bail if the court determines that no amount of bail, non-monetary conditions of pretrial release or combination of bail and conditions would assure that the defendant would appear for trial. The bill would authorize the court to deny pretrial release to protect the safety of any person or the community, or to prevent the defendant from obstructing or attempting to obstruct the criminal justice process. The bill would establish the requirements for hearings on the denial of bail and for appealing such denial. Further, the bill would permit the court to use alternatives to setting bail for defendants charged with non-violent offenses. The bill provides that the defendant would be released upon meeting these alternative requirements. |

SFAA 000454

| NJ | SB 946/ AB 1910 | 06/12/2014 SB 946 has been amended in the Senate. 06/12/2014 AB 1910 was substituted in the Assembly Judiciary Committee and has been sent to the Assembly Appropriations Committee. | SB 946/AB 1910 would authorize a court to order the detention of a defendant charged with a first-degree crime before trial and deny the defendant bail if the court determines that no amount of monetary bail, non-monetary conditions of pretrial release or combination of bail and conditions would reasonably assure that the defendant would appear for trial. The bill was amended to provide that the bail would be monetary bail and to provide that the conditions would not "reasonably assure" the defendant's appearance. The bill would authorize the court to deny pretrial release to protect the safety of any person or the community, or to prevent the defendant from obstructing or attempting to obstruct the criminal justice process. The bill would establish the requirements for a defendant to appeal the denial of pretrial release. The bill has been amended to provide that the court could order the pretrial detention of a defendant when a he or she fails to rebut a presumption of pretrial detention that the bill would authorize to be established for certain crimes. The bill also has been amended to require that defendants charged with a crime and ordered to be detained before a trial under the bill's provisions would be prohibited from being detained in jail for more than 90 days on that charge prior to the return of an indictment. The amended bill also provides that a defendant who has been indicted and for whom pretrial detention is ordered would be prohibited from being detained in jail for more than 180 days on that charge following the return or unsealing of the indictment, whichever is later, before commencement of the trial. |

| | | | |
|---|---|---|---|
| | | | detained. As amended, the bill provides that the court would have to determine a pretrial release decision for a defendant committed to jail no later than 48 hours after the defendant's commitment to jail. The bill provides that after considering the defendant's circumstances and the Pretrial Services Program's risk assessment and recommendation on conditions of release, the court would have to order the defendant would be released on the defendant's own recognizance or on execution of an unsecured appearance bond, released on a non-monetary conditions, released on monetary bail, or upon motion of the prosecutor, detained in jail pending a pretrial detention hearing. |
| NJ | SB 1430/ AB 2357 | 02/27/2014 SB 1430/AB 2357 have been introduced. | SB 1430/AB 2357 would establish a judicial presumption in favor of the option for 10% bail to be posted in lieu of a bail bond issued by licensed surety for repeat criminal offenders. |
| NJ | AB 2291 | 02/06/2014 AB 2291 has been introduced. | AB 2291 would add death by auto or vessel and certain assaults as crimes with bail restrictions to the existing list of such crimes in the current law. |
| NJ | AB 3005 | 03/24/2014 AB 3005 has been introduced. | AB 3005 would prohibit surety companies, bail agents, and agencies from knowingly executing a bail bond for the release of a defendant charged with a crime of the first through fourth degree from custody or incarceration without collecting a fee for at least 10% of the face amount of the bail bond prior to or at the time the bond is filed. The bail agent or agency would have to give a written statement that it collected the fee. The bill provides penalties for violating this requirement. |
| NM | HB 50 | 02/08/2014 HB 50 has been enacted. | HB 50 replaces the current rating plan requirements for property bondsman with a process in which the Superintendent of Insurance conducts public hearings for promulgating the premium rates, schedule of charges, and rating plans. The new law prohibits a bondsman from offering a reduction in rates, charges or premium.

The new law requires a bail bondsman to register a solicitor with the superintendent within seven days of employment. The existing professional pre-licensing education requirements have been revised. Bail bondsmen must graduate from high school or pass an equivalency exam under the new law. The new law revises the existing penalties and fines in the current law. The new law requires the bond or deposit that a property bondsman must post under existing law to be maintained until all bonds that have been posted with all courts become exonerated. |

SFAA 000456

| NY | SB 506 | 01/08/2014 SB 506 has been introduced. | SB 506 would require the Commissioner of Financial Services to conduct a study to identify problems and concerns regarding the bail bond business in order to improve and clarify the existing law and regulations. The findings of the study would have to be presented to the legislature in a public hearing. |
| NY | SB 6970 | 04/09/2014 SB 6970 has been introduced. | SB 6790 would revise the existing law concerning bail bonds and bail agents. The bill would revise the existing definition on bail bond business and provide new definitions for insurer, bail agent, and bail bond, among other related terms that pertain to bail bonds. The bill would add conditions under which a bail bond agent license could be suspended or revoked. The bill would add procedures concerning bail agents that have had their licenses revoked. The bill would establish new collateral requirements for bail agents. The bill would add procedures for premium refunds on bail bonds for insurers. The bill would establish notice requirements for bail agents to issue concerning the obligations under the bail bond. |
| NY | AB 7057 | 01/08/2014 AB 7047 has been introduced. | AB 7057 would direct the Commissioner of Financial Services (Commissioner) to conduct a study to identify problems and concerns regarding the bail bond business. The bill provides that the study would serve to identify necessary improvements and clarifications to current regulations and statutes related to the rights of defendants who use the bail bond business. Upon completion of the study, the Commissioner shall prepare a report with suggestions for regulatory and/or statutory changes necessary to improve and clarify current regulations and statutes for the rights of defendants. The bill would direct the Commissioner to hold a public hearing in that area in order to afford an opportunity for any person to propose additions or deletions from the report recommendations. |
| OK | HB 1941 | 04/15/2013 HB 1941 has been enacted. | HB 1941 eliminates the ability of a bondsman to register in a county where he or she maintains an office but does not reside, and eliminates the per county limit of bonds a surety may write in each county. |
| OK | SB 329/ SB 1037 | Failed | SB 329/SB 1037 provided that a bondsman would be authorized to write bonds on up to ten defendants per calendar year in each county outside his or her resident county. Each date on the bonds written for an individual would have been used for counting the bonds subject to the limit, notwithstanding any previous bonds written on that same individual. This limit would not have applied in counties without a registered bondsman. |
| OK | SB 1291 | Failed | SB 1291 would have revised the existing bail laws in Oklahoma by eliminating a provision that the law only applies to counties with a population of 400,000 or more |

SFAA 000457

| | | | |
|---|---|---|---|
| | | | people. |
| OK | SB 1406/ HB 2404 | Failed | SB 1406/HB 2404 would have revised the registration process for a bondsman. Current law permits the bondsman to register in a county where he or she resides or where he or she maintains an office but does not reside. Instead, the bondsman would have had to file a certified copy of his or her license with the district court clerk in each county where he or she will write bonds that is not his or her county of residence. The bill would allow a bondsman to write surety bonds statewide without the current ten defendants per county limit. |
| OK | HB 1606 | Failed | HB 1606 would have increased the licensing fee for a bail bondsman from $250 to $350. The bill also would add a penalty for failing to provide notice of a change in legal name, address, or e-mail address within five days of the change. The bill would have added penalties for an untimely submission of the monthly reports bail bondsmen must submit on the bonds they have written and their liabilities in the amount of $50 for each late report. Bondsmen who have submitted untimely reports three times within a twelve-month period would have been subject to additional civil penalties in an amount ranging from $250 to $2,500. |
| OK | SB 2003 | 05/28/2014 SB 2003 has been enacted. | SB 2003 exempts persons from a prohibition from acting as a bail bondsman if their license is suspended or revoked. The exemption is granted to those persons who within 90 days of the date their bail bondsman license is suspended or revoked in Oklahoma contract with a licensed bail enforcer to cause the apprehension and surrender of his or her defendant clients to the appropriate authority. The new law revises an exemption for bail bondsmen from using bail enforcers if they have been licensed to do business in Oklahoma for five years. The new law prohibits persons not licensed as bail enforcers from using any markings indicating that they are a bail enforcer. |
| OK | HB 2928 | 06/03/2014 HB 2928 has been enacted. | HB 2928 revises the requirements for the receipt that bail bondsmen must provide under existing law. The new law revises the current law concerning the maintenance of the list of currently approved bail bondsmen that is posted at the county jail. The new law revises the due date of the annual financial statement that bail bondsmen must provide. The new law revises the definition of "return to custody." |
| OK | HB 2407 | 04/16/2014 HB 2407 has been enacted. | HB 2407 allows bail bond agents to be multicounty agent bondsmen. The new law establishes licensing requirements and outlines the qualifications for becoming a multicounty agent bondsman. |
| PA | SB 149 | 03/12/2014 | SB 149 would establish licensing requirements for bail bond recovery agents. |

SFAA 000458

SFAA 000459

| | | SB 149 has been sent to the Senate Appropriations Committee. | |
|---|---|---|---|
| PA | HB 601 | 02/08/2013 HB 601 has been introduced. | HB 601 would add a crime restriction to the bail bond laws to provide that prisoners charged with the sexual abuse of a child are not eligible for bail. |
| PA | SB 1215 | Failed | SB 1215 would have specified that certain documents for bail bonds could be filed in the appropriate judicial records office as an alternative to filing such documents with the office of the clerk. |
| SC | SB 19 | 04/14/2014 SB 19 has been enacted. | SB 19 revises the existing law concerning bail bonds. The new law outlines the factors that a court could consider in determining whether to release a defendant that would reasonably assure the defendant's appearance in court. The new law authorizes the revocation of a defendant's bond if he or she is charged with a violent crime and he or she commits a subsequent violent crime while released on bond. |
| SC | SB 45 | Failed | SB 45 provided that a person convicted of committing or attempting to commit a general sessions offense while released on a bail bond or personal recognizance bond would have had to be imprisoned for five years in addition to the punishment provided for the principal offense. The five-year sentence would not have applied in cases where the death penalty or a life sentence without parole is imposed. |
| SC | SB 463 | 06/13/2013 SB 463 has been enacted. | SB 463 requires individuals applying to for a professional bondsman, surety bondsman or a runner's license to undergo a state criminal records check, supported by his fingerprints, by the South Carolina Law Enforcement Division and a national criminal records check, supported by his fingerprints, by the Federal Bureau of Investigation. |
| SC | SB 827 | Failed | SB 827 would have authorized a court to require a defendant to wear an approved electronic monitoring device, or be subject to monitoring by a global positioning system tracking device or other similar device. The bill provided that the defendant may be charged for the cost of the electronic monitoring device and its operation for the duration of the time he or she is required to be electronically monitored. |
| SC | SB 831 | Failed | SB 831 would have provided for electronic monitoring vendor licensing. The bill provided that nothing in the bill's provision's "shall be construed to abrogate or impair the powers of any bond court or grant the department authority over a bail bonding company and their power to set conditions of pretrial release." |

| | | |
|---|---|---|
| SC | HB 3135 | Failed | HB 3135 would have established a new licensing law for professional bondsmen. Current law regulates professional bondsmen and surety bondsmen under South Carolina's Insurance Code. The bill would have regulated professional bondsmen under the Department of Labor. |
| SC | HB 3137 | Failed | HB 3137 would have permitted a bail bondsman or runner to assist another bail bondsman in the apprehension, arrest, and surrender of the defendant even if the person is not employed or appointed by the bail bondsman who is the defendant's surety. |
| SC | HB 3138 | Failed | HB 3138 would have changed the amount of continuing education required for a professional bondsman from not less than six hours to not less than three hours. |
| SC | HB 3342 | 06/17/2013 Vetoed | HB 3342 would have added notice requirements in connection with the issuance of a bench warrant for a defendant that failed to appear in court. |
| SC | HB 3503 | Failed | HB 3503 would have eliminated a law concerning jury areas for certain magistrate courts including a bail provision. With the elimination of the current system, bail provisions would be eliminated. The bill provided that jury areas would be determined by county for magistrate courts. |
| SC | HB 4368 | Failed | HB 4368 provided that a criminal gang member charged with a felony offense would be required to post a minimum $50,000 bond if the court finds that the defendant may be released pending trial, unless the court determines the defendant is not likely to reoffend, an appropriate intensive pretrial supervision is available, and the defendant agrees to comply with the mandate of intensive pretrial supervision. |
| SC | HB 4790 | Failed | HB 4790 would have amended the existing law on courts that have jurisdiction in certain criminal matters. The bill would have extended the authority granted to the family court in domestic violence cases to magistrates or municipal courts during non-business hours or when the family court is not in session, or the court conducting the bond hearing of a violent offender. The bill also would have prohibited persons charged with criminal domestic violence from depositing cash in lieu of recognizance. |
| SC | HB 5083 | Failed | HB 5083 would have required first year bail bondsman to be under the supervision of a bail bondsman who has been licensed for at least three years. The bill would have required a first year surety bondsman to provide the department the name and license number of his supervising surety bondsman. The bill would have revised the qualifications for bondsman with regard to residency and competency requirements. The bill would have provided additional requirements for maintaining an office. |

SFAA 000460

| SC | HB 5116 | Failed | HB 5116 would have increased the minimum fee that a bail bondsman must charge for a bond from $25 to $100. The bill also would have established procedures for the use of a payment plan for paying the fee. The bill would have revised the existing law on providing collateral for a bail bond. The bill would have revised the release procedures for the collateral. The bill also would have added a notice requirement for converting the collateral into cash in connection with bond forfeitures. |
| TN | HJR 98 | Failed | HJR 98 was a resolution that would direct the Administrative Office of the Courts to study the issues regarding the use of unsecured bail bonds and the fees charged for them. The report would have had to be submitted to the Judiciary Committee of the Senate and the Criminal Justice Committee of the House of Representatives on or before January 15, 2014. The report would have had to include information on the problems that the fees for unsecured bonds raise and recommendations for legislative solutions. |
| TN | SB 248/ HB 410 | Failed | SB 248/HB 410 would have authorized the court to consider a defendant's unlawful presence in the United States and the likelihood of his or her flight to avoid removal, deportation, exclusion or any other immigration proceeding when determining the amount of bail required. Current law already provides several factors for the basis of determining the bond amount. |
| TN | HB 309/ SB 695 | Failed | HB 309/SB 695 would have revised the existing law concerning the pre-trial release of a defendant in certain cases involving firearms. The bill would have authorized county and municipal magistrates to require a defendant to comply with certain requirements in connection with release. Among the conditions, the magistrate could have required the defendant to appear before a judge or magistrate, with no pre-trial release or prohibit a defendant from being released until the firearm, if any, used in the commission of the offense for which the defendant is charged, is found. The magistrate also could have required monitoring devices be used to track the defendant while on release. |
| TN | SB 1952 | 05/29/2014 SB 1952 has been enacted. | SB 1952 provides that a bail bond remains in effect until the court renders the defendant's sentence, if the disposition of the case is a conviction or a plea of guilty. The new law provides that following conviction or a plea of guilty and prior to sentencing, the bond shall not be forfeited against a surety, shall not be included in the calculation of a bondsman's capacity or solvency, or negatively impact the surety. |

SFAA 000461

| TN | HB 2131/ SB 2321 and SB 2330/ HB 2360 | Failed | HB 2131/SB 2321 would have authorized counties with a population of not less than 75,100, nor more than 75,200, according to the 2010 federal census or any subsequent federal census, to impose a tax on bail bonds in the amount of $8. The bill would have outlined the procedures for the county to adopt the tax and for administering the tax if adopted.<br><br>**SB 2330/HB 2360** were similar except that it would have authorized the tax in all counties. |
| TN | SB 2167/ HB 2286 | Failed | SB 2167/HB 2286 would have prohibited an alleged victim of domestic violence from posting bail or signing any bond as surety for the appearance of the person who is charged with an act of domestic violence against the victim. |
| UT | SJR 20 | 03/21/2014 SJR 20 has been sent to the Governor. | SJR 20 directs the legislature to study bail bond agents and whether to they should be under the authority of the Department of Insurance or the Bureau of Criminal Identification. The study also would have to include a review of licensing surety collateralization when a bond is processed, when and how a penalty is paid, and other issues related to the industry. |
| UT | SB 159 | 03/31/2014 SB 159 has been enacted. | SB 159 allows the court to order that a judgment creditor be paid from funds posted as bail by a judgment debtor. |
| UT | HB 191 | Failed | HB 191 would revise the existing law concerning bail bond and bail bond agents. The bill would revise the law on qualifications as a bail agent, and makes changes regarding reporting requirements for agents and makes revisions to certain requirements concerning the operation of the bail agent's business. The bill would delete references to bail recovery agents. The bill would modify the liability of the surety for the undertaking if the bond is issued after sentencing. The bill would revise provisions addressing the exoneration of the bond. The bill also would make related changes to the court's processing of the bond. |
| UT | HB 203 | 03/29/2014 HB 203 has been enacted. | HB 203 revises the existing law on the membership of the Bail Bond Recovery Licensure Board. The new law allows the member who is required to be an owner of a bail bond surety company to be a bail enforcement agent or a bail recovery agent. Such agents may not serve on the Board under current law. |

SFAA 000462

| State | Bill | Status | Description |
|---|---|---|---|
| UT | HB 334 | 03/29/2014 HB 334 has been enacted. | HB 334 authorizes a bail bond apprentice to wear clothing that identifies the apprentice as a bail bond agent. |
| VA | HB 163/ HB 984/ SB 235 | Carryover to 2015 | HB 163/HB 984/SB 235 would revise the current law concerning appeal procedures for bail bonds. The bill provides that any court from which an appeal of a bail, bond, or recognizance decision is taken would be prohibited from modifying the appellate court's decision regarding the terms or amount of the bail, bond, or recognizance, except in certain circumstances. To modify the decision, the appellate court would have to remand the matter to the court from which the appeal was taken for further action or the court from which the appeal was taken would have to find, for good cause shown, that a change in circumstances has occurred warranting a modification of the terms or amount of the bail, bond, or recognizance since the time of the appellate court's decision. |
| VA | SB 501 | 03/31/2014 SB 501 has been enacted. | SB 501 revises the current law that allows a judicial officer to impose as a condition of release on bond for any felony or misdemeanor that the defendant may not have contact with a household member for 72 hours. The new law deletes the time limitation and allows the judicial officer to determine the amount of time. |
| VA | HB 1007 | 03/03/2014 HB 1007 has been enacted. | HB 1007 revises the education requirements for bail bond agents with regard to alternatives to obtaining a high school diploma. |
| VT | HB 660 | 01/22/2014 HB 660 has been introduced. | HB 660 would establish a procedure which permits the civil commitment of sexually violent predators after their release from prison. Persons subject to a civil commitment petition who are in the secure confinement of the State would not be eligible for bail, bond, house arrest, or other measures releasing the person from the physical protective custody of the State. |
| WA | HB 1098 | Failed | HB 1098 would have revised the existing law concerning bail to implement the recommendations of the bail practices work group. The bill would have made several revisions to the requirements for bail bonds and bail agents. |
| WA | HB 2164 | 03/28/2014 HB 2164 has been enacted. | HB 2164 provides that a juvenile defendant must participate in a rehabilitation program to obtain a deferred disposition if he or she had been charged with unlawful possession of a firearm. The court may require a probation bond in connection with the release of the juvenile defendant in a deferred disposition. |

SFAA 000463

| | | | |
|---|---|---|---|
| WA | HB 2265 | Failed | HB 2265 would have prohibited bail bond agents from entering into a contract, including a general power of attorney, with a person that gives the agent full authority over the person's finances, assets, real property, or personal property. |
| WI | AB 383 | Failed | AB 383 would have revised the existing law concerning cash and property bail bonds. |
| WV | SB 200/ HB 3070 | Failed | SB 200/HB 3070 would have revised the existing law's fees for bail bonds to a surcharge on bail bonds in Magistrate and Circuit Court. The funds would have been deposited into the County General Revenue Fund to offset regional jail expense. |
| WV | SB 307 | 04/14/2014 SB 307 has been enacted. | SB 307 provides for pretrial release programs. The new law outlines the requirements for the program. The new law provides that nothing in the law should be construed to prohibit a court from requiring a defendant to post a bond as a condition of pretrial release.<br><br>The new law establishes premium and collateral requirements for bail bondsmen, outlining the standards for charging premium on the bond and for recording and maintaining collateral provided by defendants. |
| WV | SB 462 | Failed | SB 462 would have revised the existing law concerning "bailpieces," which is a certificate establishing the obligation in connection with the accused in a particular case and the amount of it. The bill provided that when a bail bondsman secures a bailpiece, the surety shall be relieved of acting collateral on the case(s) for which the bailpiece was applied. |
| WV | SB 464 | Failed | SB 464 would have prohibited law-enforcement officers and members of their immediate family from serving as a bail bondsman of a person in custody because of the conflict of interest it presents. The bill provided that if such persons take this action, it would be void. |

SFAA 000464

**CONFIDENTIAL**

Orgovan, Joseph

| | |
|---|---|
| From: | Duke, Rob |
| Sent: | Tuesday, May 13, 2014 11:51 AM |
| To: | Committee-BBAC-Open |
| Subject: | FW: AM Best Rating Metholdology Regarding Bail |
| Attachments: | OpenPDF.aspx.pdf |

FYI -- Comments are requested by June 2, 2014. They can be submitted by email to rating.methodology@ambest.com. Alternatively, you may submit feedback to SFAA staff and we will compile it in our comment letter.

Robert J. Duke
Corporate Counsel
The Surety & Fidelity Association of America
202-778-3630
www.surety.org



From: Duke, Rob
Sent: Tuesday, May 06, 2014 10:48 AM
To: Committee-BBAC-Open
Subject: AM Best Metholdology Regarding Bail

You may recall that in January 2013, AM Best released a rating methodology for surety bonds (focusing on contract surety and bail bonds). The methodology proposed a revised Bail Capital Factor Adjustment formula that was drastically different from the previous formula. The basis was changed from net premium to gross premium and the capital factor was increased, resulting in higher capitalization requirements.

On August 19, 2013, staff and members of the Bail Bond Advisory Committee met with representatives of A.M. Best to discuss Best's revised methodology. SFAA members stressed that a formula should not be "one size fits all" and that risk mitigation and avoidance procedures (including the role of the agent) should be considered in an analytical methodology assessing exposure and capital requirements.

Attached is a revised document. It appears that our meetings and discussions with AM Best have paid huge dividends. They now seem to understand the special role of the agent in risk mitigation ("the bail agent is the insurer's first line of defense against a potential loss").

The capital factors result in a lower required capital compared to the January 2013 document. For example, for a "highly profitable company" that has net premiums of $5 million, the required capital is $1.6 million. Compare this to a required capital of $5 million under the prior document (assuming $50 million of gross premium). Further, the document picks up on our members' guidance that not all companies should be treated the same. They are establishing different ranges of capital factors based on the quality of the company (unprofitable vs. highly profitable). Finally, assessment of exposure will be in the context of the insurer's largest bail agents. It is not looking at exposures in a vacuum but rather relative to the agent.

Robert J. Duke
Corporate Counsel
The Surety & Fidelity Association of America

202-778-3630
www.surety.org

CONFIDENTIAL

# A.M. BEST METHODOLOGY

May 1, 2014

# Draft: Rating Surety Companies

Although surety insurance companies are analyzed with other property/casualty (P/C) insurers, their unique characteristics require additional analysis during the rating evaluation. This criteria report highlights some of the major categories of surety insurance written by insurers rated by A.M. Best, and describes some of the additional analysis performed beyond that of a typical P/C writer.

One of the distinguishing characteristics of surety insurance is that it involves a three-party contract, rather than a traditional insurance agreement between an insurer and an insured. A surety bond is a three-party agreement among the surety company, a principal and the obligee. The surety guarantees the performance and payment obligations of the principal to the obligee as contracted, which includes the suppliers and subcontractors of the principal. The principal pays a premium to the surety for this guarantee.

**Commercial surety bonds** include license and permit bonds (including motor vehicle dealer bonds and contractor license bonds); brokers' bonds (including insurance, mortgage and title agency bonds); public official bonds; and miscellaneous bonds that often support private relationships and unique business needs (e.g., income tax bonds, customs bonds and workers' compensation self insurance bonds).

The obligations of commercial surety risks can be many different types, including: reclamation/abandonment, financial guarantee and compliance. Some commercial surety bonds have cancellation provisions, while others have a limited ability to cancel the bond.

**Contract surety bonds** include bid and performance bonds (the latter can include maintenance and subdivision bonds) and payment bonds. Since many construction projects involve federal funding, companies that have complied with the laws and regulations of the U.S. Department of the Treasury are listed as acceptable sureties on federal bonds under Title 31 U.S.C. 9304-9308 of the United States Code. This Treasury listing is commonly referred to as the "T-listing." This allows the surety to insure contractors involved with federal projects. A T-listing generally allows a surety to provide a contract limit of up to 10% of the surety's capital and surplus per bond issued. Higher limits can be offered, but the excess would have to be reinsured, co-insured or otherwise protected so that the net limit is within the 10% underwriting limitation.

Under contract surety, a surety evaluates a principal based on the "three C's": capacity, capital and character.

• Surety makes sure the principal has the capacity (i.e. the skills, systems and management abilities) to perform its obligations under the contract.

• Surety checks the principal's finances to be sure it has the financial strength (capital) to fulfill the contract.

• Surety researches the principal's character, experience and reputation through interviews and public records to gain an understanding of its ability to meet the contractual obligations to the obligee.

**Additional Information**

Criteria:
Understanding BCAR for U.S. Property/Casualty Insurers

Risk Management and the Rating Process for Insurance Companies

**Analytical Contact**
Gerard Altonji, Oldwick
+1 (908) 439-2200 Ext. 5626
Gerard.Altonji@ambest.com

Robert Valenta, Oldwick
+1 (908) 439-2200 Ext. 5291
Robert.Valenta@ambest.com


**Copyright © 2014 by A.M. Best Company, Inc.** ALL RIGHTS RESERVED. No part of this report or document may be distributed in any electronic form or by any means, or stored in a database or retrieval system, without the prior written permission of the A.M. Best Company. For additional details, refer to our *Terms of Use* available at the A.M. Best Company website: www.ambest.com/terms.

CONFIDENTIAL

The A.M. Best analyst needs to understand how the surety insurer implements the three Cs in the underwriting process, as well as gain a level of understanding of the insurer's systems, controls and risk management practices.

In cases where a principal may not have adequate capital to qualify for a bond, the surety may accept collateral from the principal. Collateral, as utilized in surety, is an asset pledged to and held by the surety as a means of securing the performance of the principal. Some contract surety writers also utilize funds control. Under this practice, the surety controls the disbursement and administration of funds for the principal on a construction project. In this way, the surety can be certain there is no commingling of funds between projects and is also in a better position to assist the contractor in meeting its obligations to the suppliers, subcontractors and obligee.

A.M. Best reviews both quantitative and qualitative factors when assigning a rating to an insurer. When reviewing a contract surety insurer, the following qualitative factors will require additional focus in the rating process:

(1) Portfolio Management:
    a. Credit Quality:
        i. How the surety determines the credit quality of its principals.
        ii. Tools or models used in credit quality analysis.
        iii. How often the credit quality of each principal is reviewed.
        iv. How many different individuals and which departments review a principal.
        v. Distribution of risks by credit quality and any changes.
        vi. Procedures when a principal has a drop in credit quality.
        vii. For lower quality risks, how the increased risk is mitigated.
    b. Geographic spread of risk
        i. The geographic spread or concentration of the portfolio of risks.
        ii. Understanding of the legislative, regulatory, judicial, and economic risks in the locations where they currently operate or plan to operate.
        iii. Reasons for any changes in geographic spread – well researched and planned growth vs. following growth of principals.
    c. Account size distribution:
        i. Typical size of an account written by the surety.
        ii. Diversification or concentration by size of account.
        iii. Exposure concentrations in a small number of large accounts, or spread over many accounts.
        iv. Changes in account size distribution.
    d. Bond size:
        i. Typical size of bonds written by the surety.
        ii. Concentration of bonds within an individual account.
        iii. Changes in typical size of bonds written.
    e. Tenor/tail risk:
        i. Duration of typical bonds written by the surety.
        ii. Distribution of bonds by duration.
        iii. Changes in duration.
        iv. Existence of any nontypical, long-term exposures.
        v. Insurer's ability to cancel bonds.
    f. Account composition or business risk:
        i. Types of surety written.
        ii. Existence of any potentially hazardous exposures, such as financial guarantee or more risky commercial surety.

    iii. Distribution by type of surety.

    iv. Changes in distribution by type of surety.

(2) Claims:

    a. Claims department operations conducted in house or through an outside vendor.

    b. Claims-handling philosophy, including case load per adjuster, settlement authority, attorney relationships, expertise, etc.

    c. Reserving practices:

       i. Procedures for setting initial case reserve, changes to case reserve.

       ii. Procedures for setting incurred but not reported (IBNR) reserves

       iii. Treatment of anticipated salvage and subrogation.

       iv. Frequency and quality of reserve reviews.

(3) Audits:

    a. Accountability of management through self-audits or third-party reviews of underwriting and claims processes and practices.

    b. Who performs the audits.

    c. How frequently are the audits performed.

    d. Who reviews the audits.

    e. Outcome of recent audits.

(4) Collateral and Funds Control:

    a. Types of collateral, typically including real estate, letters of credit, credit cards and personal guarantees (including spousal indemnification).

    b. Liquidity of collateral.

    c. Procedure for estimating value of collateral and frequency of valuation.

    d. Process for accepting collateral.

    e. Process when value of collateral declines.

    f. Control and release of collateral.

    g. Utilization of funds control.

    h. Funds control performed in-house or third party.

(5) Other Risk Mitigation Strategies:

    a. Reinsurance:

       i. Reinsurer credit quality and capacity.

       ii. Reinsurer expertise in surety.

       iii. Frequency and quality of claim and underwriting audits performed by reinsurers.

       iv. Length of the relationship with current reinsurers.

       v. Type of reinsurance provided.

       vi. Recent changes in reinsurers or type of reinsurance provided.

       vii. Dependence on reinsurance for capacity.

    b. Cosurety:

       i. Procedure for using and selecting another insurer as a cosurety.

       ii. Expertise, credit quality and capacity of the cosurety.

       iii. Surety insurer's liability in event of cosurety default.

    c. Joint venture:

       i. Policies and procedures for instances when multiple contractors are completing a project together.

       ii. Surety insurer's liability if one of the contractors fails to perform its obligations.

**Court bonds** are prescribed by statute and can be further broken down into two broad categories. *Fiduciary bonds* are required by the court to ensure that individuals in a position of trust will safeguard assets belonging to others placed under their control. *Judicial bonds* are required in judicial proceedings and include appeal bonds, guardianship bonds and bail bonds. A bail bond is a type of judicial bond that guarantees the appearance of a criminal defendant in court. When evaluating a bail bond writer, additional information is requested regarding the ways in which agents are appointed, managed and monitored, especially regarding powers of attorney.

**Bail bonds** are unique in that bail agents are contractually obligated to make sure the criminal defendant appears in court at the proper time. Generally, the gross premium paid by the defendant for a bail bond is 10% of the bond limit. Since the bail agent is the insurer's first line of defense against potential loss, the agent typically receives a commission of approximately 90% of the gross premium so that the agent has the financial resources to assure compliance with the court. Since the insurer keeps approximately 10% of the premium charged by the agent, and the premium charged by the agent is 10% of the bond limit, the net premium retained by the insurer is approximately 1% of the bond limit.

Depending on the state, some bail insurers are required to report their premiums net of commissions, while others are required to report it gross of commissions. This has implications for how A.M. Best treats premium in its Best's Capital Adequacy Ratio (BCAR) model. In an effort to ensure consistent treatment of bail bond insurers, A.M. Best will use the bail bond premium written net of commission as the basis for determining required capital for pricing risk on the premium risk page in BCAR. For U.S. insurers, this can be obtained from the Bail Bond Supplement in the statutory statement, provided it is completed accurately. The capital factors applied to the net premium will vary according to the size of net premium and profitability of the bail bond business. A sample calculation is shown in **Exhibit 1**. The benefit to using the net premium is that it reflects the relative net exposure of insurers using a managing general agency (MGA) structure versus those that do not. Bail bond insurers using an MGA structure retain a lower net premium because of the extra layer of commissions paid, but some of the losses are absorbed at the MGA level, resulting in lower net exposure to the bail bond insurer. Premiums net of commission can be reduced for premium ceded to reinsurers after capital factors have been determined using premium net of commission only.

Bail agents set aside a portion of their commission income in build-up funds (BUF) that the insurer has access to in the event an agent is unable to meet its obligations. For some insurers, the aggregate amount of BUF accounts can be sizable. It also can distort the balance sheet, as many bail companies record the BUF accounts as both a noninvested asset and a liability. As a result, current liquidity ratios (roughly defined as cash and invested assets divided by liabilities) may be low for bail bond writers because of the BUF fund liability. Since this liability is supported by noninvested assets, it is important to remove the impact from

## Exhibit 1
## Sample Capital Factor Calculations for Bail
Based on underwriting profit (excludes investment income).

**Sample Highly Profitable Company**

| | Bail Bond Written Premium Capital Factors | | |
|---|---|---|---|
| | (1) | (2) | (3) = (1) * (2) |
| Written Premium Net of Commission ($) | Industry Baseline NWP Capital Factor | Underwriting Profitability Factor* | Final NWP Capital Factor |
| NWP < 1 million | 0.80 | 0.80 | 0.64 |
| 1m <= NWP < 2m | 0.70 | 0.80 | 0.56 |
| 2m <= NWP < 3m | 0.60 | 0.80 | 0.48 |
| 3m <= NWP < 4m | 0.50 | 0.80 | 0.40 |
| NWP >= 5m | 0.40 | 0.80 | 0.32 |

**Sample Unprofitable Company**

| | Bail Bond Written Premium Capital Factors | | |
|---|---|---|---|
| | (1) | (2) | (3) = (1) * (2) |
| Written Premium Net of Commission ($) | Industry Baseline NWP Capital Factor | Underwriting Profitability Factor* | Final NWP Capital Factor |
| NWP < 1 million | 0.80 | 1.20 | 0.96 |
| 1m <= NWP < 2m | 0.70 | 1.20 | 0.84 |
| 2m <= NWP < 3m | 0.60 | 1.20 | 0.72 |
| 3m <= NWP < 4m | 0.50 | 1.20 | 0.60 |
| NWP >= 5m | 0.40 | 1.20 | 0.48 |

* Profitability Factor varies from 0.80 (highest profitability levels) to 1.20 (unprofitable).

**CONFIDENTIAL**

this ratio to get a better view of the insurer's balance sheet liquidity. It should be noted that BUF accounts are not commingled and as a result, an insurer cannot reduce losses from one agency by using BUF accumulated by another agency.

Another divergence from traditional P/C ratios is in the loss, expense and combined ratios. Bail insurers typically have very low losses, as they are absorbed by the agents (through the BUF). As a result, loss ratios for the insurer tend to be less than 10 on average for bail writers rated by A.M. Best. However, with 90% or more of premiums retained by agents as commissions, this leaves a very low premium base with the insurer; expense ratios therefore tend to be very high, typically exceeding 80. When a bail writer has an affiliated general agent that is responsible for bail production, A.M. Best also will look at that agency's expense structure and operating results to determine whether potential losses at that entity might spill over to the insurer in the form of demand for capital (through common ownership).

### Premium Taxes
The issue of using premiums gross or net of commissions has evidently spilled over into the payment of premium taxes. Bail insurers face potential liabilities for premium tax payments. In the few states where insurers are required to report premiums gross of commission, some have reported premiums on a net basis, resulting in an accumulated liability for insufficient premium tax payments. South Carolina, Texas, Connecticut and Nevada are auditing bail insurers and have been fining those that are out of compliance. The analyst needs to find out whether the insurer has taken steps to mitigate this exposure to prevent being fined. A reduction to surplus may be necessary in the insurer's BCAR for this potential liability if the insurer has not accrued an estimated liability on its own.

### Capitalization
As part of evaluating capitalization of contract surety writers and bail bond insurers, A.M. Best will include a reduction to reported surplus in the published BCAR due to a potential large loss.

For contract surety writers, the potential large loss will be the largest net after-tax loss, selected from the surety's five largest principals, such that the net loss for each principal is based on the 95% probable maximum loss (PML) net of collateral and reinsurance. The 95%

### Exhibit 2
## Sample Calculation of Potential Losses for Contract Surety
Amounts shown in whole dollars. Loss Severity Model Factors are based on the type of business, region of operation, size of total limits and concentration of bond limits for that principal.

| | | Largest Principal | 2nd-Largest Principal | 3rd-Largest Principal | 4th-Largest Principal | 5th-Largest Principal |
|---|---|---|---|---|---|---|
| 1 | Gross Exposure for Principal | $ 10,000,000 | $ 7,000,000 | $ 5,000,000 | $ 3,000,000 | $2,000,000 |
| 2 | Loss Severity Model 95% PML Factor | 0.15 | 0.30 | 0.16 | 0.25 | 0.40 |
| 3 | Loss Severity Model 95% PML Amount = (1) * (2) | 1,500,000 | 2,100,000 | 800,000 | 750,000 | 800,000 |
| 4 | Co-surety's Share % | 40.0 | 20.0 | 0.0 | 0.0 | 0.0 |
| 5 | Co-surety's Share Amount = (3) * (4) | 600,000 | 420,000 | - | - | - |
| 6 | Net PML Amount after Co-surety = (3) - (5) | 900,000 | 1,680,000 | 800,000 | 750,000 | 800,000 |
| 7 | Acceptable* Collateral Amount | 300,000 | 180,000 | 100,000 | 150,000 | 50,000 |
| 8 | Net PML Amount after Co-surety & Collateral = (6) - (7) | 600,000 | 1,500,000 | 700,000 | 600,000 | 750,000 |
| 9 | XOL Reinsurance Amount | - | 500,000 | - | - | - |
| 10 | Quota Share Reinsurance Amount | 120,000 | 200,000 | 140,000 | 120,000 | 150,000 |
| 11 | Pretax Net Potential Loss Amount = (8) - (9) - (10) | 480,000 | 800,000 | 560,000 | 480,000 | 600,000 |
| 12 | Federal Tax Rate | 35.0 | 35.0 | 35.0 | 35.0 | 35.0 |
| 13 | After-Tax Net Potential Loss Amount = ( 100% - (12) ) * (11) | $  312,000 | $  520,000 | $  364,000 | $  312,000 | $  390,000 |
| | | | Largest After-Tax Net Loss | | | 2nd-Largest After-Tax Net Loss |

*Collateral must be easily and quickly convertible into cash.

**CONFIDENTIAL**

Methodology

Criteria – Specialty

PML for each principal can be calculated using the most current construction loss severity model developed by the Surety & Fidelity Association of America (SFAA). The five largest principals examined will be based on the total bond limits for each principal, where total bond limits equals the sum of in-force bond limits plus the sum of all bond limits expired in the past 12 months. A sample calculation of the net after-tax loss is shown in **Exhibit 2**.

In addition, A.M. Best will perform a stress test on the contract surety's BCAR. A stressed BCAR will be calculated by assuming the largest net loss occurred and then estimating what the insurer's BCAR would look like shortly after that first event occurred. This results in a reduction to reported surplus in the amount of the largest net loss (after tax), followed by an increase in recoverables (40% of the ceded loss), an increase in the net loss reserves (40% of the net pretax loss) and a reduction to surplus for the second-largest potential net loss (after tax) calculated from the five largest principals. The stressed BCAR will be examined and discussed with the company but will not be published.

In a similar fashion for bail insurers, A.M. Best will gather information on the five largest bail agents producing business for the insurer. The open liability amount will be used to determine which agents are the five largest producing agents. For each of the top five bail agents, the open liability will be adjusted down to approximate the true current open liability, as the open liability reported by the insurer typically is overstated because of lags in the reporting of bond closures. A bond forfeiture rate of 3% is applied to the adjusted open liability for each bail agent, and the BUF held for that agent are used to reduce the agent's loss exposure. The result will be tax effected. The largest net after-tax amount from those five agents will be used as a potential loss in the published BCAR, resulting in a reduction to reported surplus. A sample calculation of the net after-tax loss is shown in **Exhibit 3**. A.M. Best also will review the insurer's current and historical total forfeitures to determine whether the amounts calculated for the top five agents need to be adjusted.

In addition, A.M. Best will perform a stress test on the bail insurer's BCAR. A stressed BCAR will be calculated by assuming the largest net loss occurred and then estimating what the insurer's BCAR would look like shortly after that first event occurred. This results in a reduction to reported surplus in the amount of the largest net loss (after tax), followed by an increase in recoverables (40% of the ceded loss), an increase in the net loss reserves (40% of the net pretax loss) and a reduction to surplus for the second-largest potential net loss (after tax) calculated from the five largest agents. The stressed BCAR will be examined and discussed with the company but will not be published.

While these stress tests will represent A.M. Best's typical stress testing for contract surety and bail insurers, the analyst may determine that additional testing and/or adjustments to the above tests are appropriate. If an insurer writes both contract surety and bail, the potential losses used in BCAR will be from the calculations generating the higher potential losses. As long as the stressed BCAR does not fall more than 30 points below the BCAR guidelines for the rating, there likely will be no rating pressure from the stress test.

## Exhibit 3
## Sample Calculation of Potential Losses for Bail
($ Thousands)

| Top Bail Agents | Reported Open Liability | Adjustment (%) | Estimated Current Open Liability | 3% Bond Forfeiture Rate | BUF Balance | Gross Exposure | Reinsurance Amount | Pre-Tax Net Exposure | FIT Rate (%) | After-Tax Net Exposure | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Agent 1 | $1,000,000 | 50 | $500,000 | $15,000 | $10,000 | $5,000 | $2,000 | $3,000 | 35 | $1,950 | = 2nd-Largest Net Loss |
| Agent 2 | 500,000 | 50 | 250,000 | 7,500 | 2,000 | 5,500 | 2,200 | 3,300 | 35 | 2,145 | = Largest Net Loss |
| Agent 3 | 300,000 | 50 | 150,000 | 4,500 | 1,000 | 3,500 | 1,400 | 2,100 | 35 | 1,365 | |
| Agent 4 | 200,000 | 50 | 100,000 | 3,000 | 500 | 2,500 | 1,000 | 1,500 | 35 | 975 | |
| Agent 5 | 100,000 | 50 | 50,000 | 1,500 | 200 | 1,300 | 520 | 780 | 35 | 507 | |

Published by A.M. Best Company

# Methodology

CHAIRMAN & PRESIDENT **Arthur Snyder III**

EXECUTIVE VICE PRESIDENT **Larry G. Mayewski**

EXECUTIVE VICE PRESIDENT **Paul C. Tinnirello**

SENIOR VICE PRESIDENTS **Douglas A. Collett, Matthew C. Mosher,
Rita L. Tedesco, Karen B. Heine**

**A.M. BEST COMPANY
WORLD HEADQUARTERS**
Ambest Road, Oldwick, NJ 08858
Phone: +1 (908) 439-2200

**WASHINGTON OFFICE**
830 National Press Building
529 14th Street N.W., Washington, DC 20045
Phone: +1 (202) 347-3090

**A.M. BEST AMÉRICA LATINA, S.A. de C.V.**
Paseo de la Reforma 412
Piso 23
Col. Juárez, México, DF

**A.M. BEST EUROPE RATING SERVICES LTD.
A.M. BEST EUROPE INFORMATION SERVICES LTD.**
12 Arthur Street, 6th Floor, London, UK EC4R 9AB
Phone: +44 (0)20 7626-6264

**A.M. BEST ASIA-PACIFIC LTD.**
Unit 4004 Central Plaza, 18 Harbour Road, Wanchai, Hong Kong
Phone: +852 2827-3400

**DUBAI OFFICE (MENA, SOUTH & CENTRAL ASIA)**
Office 102, Tower 2
Currency House, DIFC
PO Box 506617,  Dubai, UAE
Phone: +971 43 752 780



**A Best's Financial Strength Rating** is an independent opinion of an insurer's financial strength and ability to meet its ongoing insurance policy and contract obligations. It is based on a comprehensive quantitative and qualitative evaluation of a company's balance sheet strength, operating performance and business profile. The Financial Strength Rating opinion addresses the relative ability of an insurer to meet its ongoing insurance policy and contract obligations. These ratings are not a warranty of an insurer's current or future ability to meet contractual obligations. The rating is not assigned to specific insurance policies or contracts and does not address any other risk, including, but not limited to, an insurer's claims-payment policies or procedures; the ability of the insurer to dispute or deny claims payment on grounds of misrepresentation or fraud; or any specific liability contractually borne by the policy or contract holder. A Financial Strength Rating is not a recommendation to purchase, hold or terminate any insurance policy, contract or any other financial obligation issued by an insurer, nor does it address the suitability of any particular policy or contract for a specific purpose or purchaser.

**A Best's Debt/Issuer Credit Rating** is an opinion regarding the relative future credit risk of an entity, a credit commitment or a debt or debt-like security. It is based on a comprehensive quantitative and qualitative evaluation of a company's balance sheet strength, operating performance and business profile and, where appropriate, the specific nature and details of a rated debt security. Credit risk is the risk that an entity may not meet its contractual, financial obligations as they come due. These credit ratings do not address any other risk, including but not limited to liquidity risk, market value risk or price volatility of rated securities. The rating is not a recommendation to buy, sell or hold any securities, insurance policies, contracts or any other financial obligations, nor does it address the suitability of any particular financial obligation for a specific purpose or purchaser.

Any and all ratings, opinions and information contained herein are provided "as is," without any expressed or implied warranty. A rating may be changed, suspended or withdrawn at any time for any reason at the sole discretion of A.M. Best.

In arriving at a rating decision, A.M. Best relies on third-party audited financial data and/or other information provided to it. While this information is believed to be reliable, A.M. Best does not independently verify the accuracy or reliability of the information.

A.M. Best does not offer consulting or advisory services. A.M. Best is not an Investment Adviser and does not offer investment advice of any kind, nor does the company or its Rating Analysts offer any form of structuring or financial advice. A.M. Best does not sell securities. A.M. Best is compensated for its interactive rating services. These rating fees can vary from US$ 5,000 to US$ 500,000. In addition, A.M. Best may receive compensation from rated entities for non-rating related services or products offered.

For press inquiries or to contact the authors, please contact James Peavy at (908) 439-2200, ext. 5644.

**SR-2014-423**

CONFIDENTIAL

Orgovan, Joseph

From:           Duke, Rob
Sent:           Tuesday, May 6, 2014 10:48 AM
To:             Committee-BBAC-Open
Subject:        AM Best Rating Metholdology Regarding Bail
Attachments:    OpenPDF.aspx.pdf

You may recall that in January 2013, AM Best released a rating methodology for surety bonds (focusing on contract surety and bail bonds). The methodology proposed a revised Bail Capital Factor Adjustment formula that was drastically different from the previous formula. The basis was changed from net premium to gross premium and the capital factor was increased, resulting in higher capitalization requirements.

On August 19, 2013, staff and members of the Bail Bond Advisory Committee met with representatives of A.M. Best to discuss Best's revised methodology. SFAA members stressed that a formula should not be "one size fits all" and that risk mitigation and avoidance procedures (including the role of the agent) should be considered in an analytical methodology assessing exposure and capital requirements.

Attached is a revised document. It appears that our meetings and discussions with AM Best have paid huge dividends. They now seem to understand the special role of the agent in risk mitigation ("the bail agent is the insurer's first line of defense against a potential loss").

The capital factors result in a lower required capital compared to the January 2013 document. For example, for a "highly profitable company" that has net premiums of $5 million, the required capital is $1.6 million. Compare this to a required capital of $5 million under the prior document (assuming $50 million of gross premium). Further, the document picks up on our members' guidance that not all companies should be treated the same. They are establishing different ranges of capital factors based on the quality of the company (unprofitable vs. highly profitable). Finally, assessment of exposure will be in the context of the insurer's largest bail agents. It is not looking at exposures in a vacuum but rather relative to the agent.

Robert J. Duke
Corporate Counsel
The Surety & Fidelity Association of America
202-778-3630
www.surety.org



**CONFIDENTIAL**

## A.M. BEST METHODOLOGY

Criteria – Specialty

May 1, 2014

# Draft: Rating Surety Companies

Although surety insurance companies are analyzed with other property/casualty (P/C) insurers, their unique characteristics require additional analysis during the rating evaluation. This criteria report highlights some of the major categories of surety insurance written by insurers rated by A.M. Best, and describes some of the additional analysis performed beyond that of a typical P/C writer.

One of the distinguishing characteristics of surety insurance is that it involves a three-party contract, rather than a traditional insurance agreement between an insurer and an insured. A surety bond is a three-party agreement among the surety company, a principal and the obligee. The surety guarantees the performance and payment obligations of the principal to the obligee as contracted, which includes the suppliers and subcontractors of the principal. The principal pays a premium to the surety for this guarantee.

**Commercial surety bonds** include license and permit bonds (including motor vehicle dealer bonds and contractor license bonds); brokers' bonds (including insurance, mortgage and title agency bonds); public official bonds; and miscellaneous bonds that often support private relationships and unique business needs (e.g., income tax bonds, customs bonds and workers' compensation self insurance bonds).

The obligations of commercial surety risks can be many different types, including: reclamation/abandonment, financial guarantee and compliance. Some commercial surety bonds have cancellation provisions, while others have a limited ability to cancel the bond.

**Contract surety bonds** include bid and performance bonds (the latter can include maintenance and subdivision bonds) and payment bonds. Since many construction projects involve federal funding, companies that have complied with the laws and regulations of the U.S. Department of the Treasury are listed as acceptable sureties on federal bonds under Title 31 U.S.C. 9304-9308 of the United States Code. This Treasury listing is commonly referred to as the "T-listing." This allows the surety to insure contractors involved with federal projects. A T-listing generally allows a surety to provide a contract limit of up to 10% of the surety's capital and surplus per bond issued. Higher limits can be offered, but the excess would have to be reinsured, co-insured or otherwise protected so that the net limit is within the 10% underwriting limitation.

Under contract surety, a surety evaluates a principal based on the "three C's": capacity, capital and character.

• Surety makes sure the principal has the capacity (i.e. the skills, systems and management abilities) to perform its obligations under the contract.

• Surety checks the principal's finances to be sure it has the financial strength (capital) to fulfill the contract.

• Surety researches the principal's character, experience and reputation through interviews and public records to gain an understanding of its ability to meet the contractual obligations to the obligee.

**Additional Information**

**Criteria:**
Understanding BCAR for U.S. Property/Casualty Insurers

Risk Management and the Rating Process for Insurance Companies

**Analytical Contact**
Gerard Altonji, Oldwick
+1 (908) 439-2200 Ext. 5626
Gerard.Altonji@ambest.com

Robert Valenta, Oldwick
+1 (908) 439-2200 Ext. 5291
Robert.Valenta@ambest.com


**Copyright © 2014 by A.M. Best Company, Inc.** ALL RIGHTS RESERVED. No part of this report or document may be distributed in any electronic form or by any means, or stored in a database or retrieval system, without the prior written permission of the A.M. Best Company. For additional details, refer to our *Terms of Use* available at the A.M. Best Company website: www.ambest.com/terms.

CONFIDENTIAL

The A.M. Best analyst needs to understand how the surety insurer implements the three Cs in the underwriting process, as well as gain a level of understanding of the insurer's systems, controls and risk management practices.

In cases where a principal may not have adequate capital to qualify for a bond, the surety may accept collateral from the principal. Collateral, as utilized in surety, is an asset pledged to and held by the surety as a means of securing the performance of the principal. Some contract surety writers also utilize funds control. Under this practice, the surety controls the disbursement and administration of funds for the principal on a construction project. In this way, the surety can be certain there is no commingling of funds between projects and is also in a better position to assist the contractor in meeting its obligations to the suppliers, subcontractors and obligee.

A.M. Best reviews both quantitative and qualitative factors when assigning a rating to an insurer. When reviewing a contract surety insurer, the following qualitative factors will require additional focus in the rating process:

(1) Portfolio Management:
    a. Credit Quality:
       i. How the surety determines the credit quality of its principals.
       ii. Tools or models used in credit quality analysis.
       iii. How often the credit quality of each principal is reviewed.
       iv. How many different individuals and which departments review a principal.
       v. Distribution of risks by credit quality and any changes.
       vi. Procedures when a principal has a drop in credit quality.
       vii. For lower quality risks, how the increased risk is mitigated.
    b. Geographic spread of risk
       i. The geographic spread or concentration of the portfolio of risks.
       ii. Understanding of the legislative, regulatory, judicial, and economic risks in the locations where they currently operate or plan to operate.
       iii. Reasons for any changes in geographic spread – well researched and planned growth vs. following growth of principals.
    c. Account size distribution:
       i. Typical size of an account written by the surety.
       ii. Diversification or concentration by size of account.
       iii. Exposure concentrations in a small number of large accounts, or spread over many accounts.
       iv. Changes in account size distribution.
    d. Bond size:
       i. Typical size of bonds written by the surety.
       ii. Concentration of bonds within an individual account.
       iii. Changes in typical size of bonds written.
    e. Tenor/tail risk:
       i. Duration of typical bonds written by the surety.
       ii. Distribution of bonds by duration.
       iii. Changes in duration.
       iv. Existence of any nontypical, long-term exposures.
       v. Insurer's ability to cancel bonds.
    f. Account composition or business risk:
       i. Types of surety written.
       ii. Existence of any potentially hazardous exposures, such as financial guarantee or more risky commercial surety.

    iii.  Distribution by type of surety.
    iv.  Changes in distribution by type of surety.

(2) Claims:
    a.  Claims department operations conducted in house or through an outside vendor.
    b.  Claims-handling philosophy, including case load per adjuster, settlement authority,
        attorney relationships, expertise, etc.
    c.  Reserving practices:
        i.  Procedures for setting initial case reserve, changes to case reserve.
        ii.  Procedures for setting incurred but not reported (IBNR) reserves
        iii.  Treatment of anticipated salvage and subrogation.
        iv.  Frequency and quality of reserve reviews.

(3) Audits:
    a.  Accountability of management through self-audits or third-party reviews of underwriting
        and claims processes and practices.
    b.  Who performs the audits.
    c.  How frequently are the audits performed.
    d.  Who reviews the audits.
    e.  Outcome of recent audits.

(4) Collateral and Funds Control:
    a.  Types of collateral, typically including real estate, letters of credit, credit cards and
        personal guarantees (including spousal indemnification).
    b.  Liquidity of collateral.
    c.  Procedure for estimating value of collateral and frequency of valuation.
    d.  Process for accepting collateral.
    e.  Process when value of collateral declines.
    f.  Control and release of collateral.
    g.  Utilization of funds control.
    h.  Funds control performed in-house or third party.

(5) Other Risk Mitigation Strategies:
    a.  Reinsurance:
        i.  Reinsurer credit quality and capacity.
        ii.  Reinsurer expertise in surety.
        iii.  Frequency and quality of claim and underwriting audits performed by
           reinsurers.
        iv.  Length of the relationship with current reinsurers.
        v.  Type of reinsurance provided.
        vi.  Recent changes in reinsurers or type of reinsurance provided.
        vii. Dependence on reinsurance for capacity.
    b.  Cosurety:
        i.  Procedure for using and selecting another insurer as a cosurety.
        ii.  Expertise, credit quality and capacity of the cosurety.
        iii.  Surety insurer's liability in event of cosurety default.
    c.  Joint venture:
        i.  Policies and procedures for instances when multiple contractors are completing a
           project together.
        ii.  Surety insurer's liability if one of the contractors fails to perform its obligations.

CONFIDENTIAL

Methodology                                                                                      Criteria – Specialty

**Court bonds** are prescribed by statute and can be further broken down into two broad categories. *Fiduciary bonds* are required by the court to ensure that individuals in a position of trust will safeguard assets belonging to others placed under their control. *Judicial bonds* are required in judicial proceedings and include appeal bonds, guardianship bonds and bail bonds. A bail bond is a type of judicial bond that guarantees the appearance of a criminal defendant in court. When evaluating a bail bond writer, additional information is requested regarding the ways in which agents are appointed, managed and monitored, especially regarding powers of attorney.

**Bail bonds** are unique in that bail agents are contractually obligated to make sure the criminal defendant appears in court at the proper time. Generally, the gross premium paid by the defendant for a bail bond is 10% of the bond limit. Since the bail agent is the insurer's first line of defense against potential loss, the agent typically receives a commission of approximately 90% of the gross premium so that the agent has the financial resources to assure compliance with the court. Since the insurer keeps approximately 10% of the premium charged by the agent, and the premium charged by the agent is 10% of the bond limit, the net premium retained by the insurer is approximately 1% of the bond limit.

Depending on the state, some bail insurers are required to report their premiums net of commissions, while others are required to report it gross of commissions. This has implications for how A.M. Best treats premium in its Best's Capital Adequacy Ratio (BCAR) model. In an effort to ensure consistent treatment of bail bond insurers, A.M. Best will use the bail bond premium written net of commission as the basis for determining required capital for pricing risk on the premium risk page in BCAR. For U.S. insurers, this can be obtained from the Bail Bond Supplement in the statutory statement, provided it is completed accurately. The capital factors applied to the net premium will vary according to the size of net premium and profitability of the bail bond business. A sample calculation is shown in **Exhibit 1**. The benefit to using the net premium is that it reflects the relative net exposure of insurers using a managing general agency (MGA) structure versus those that do not. Bail bond insurers using an MGA structure retain a lower net premium because of the extra layer of commissions paid, but some of the losses are absorbed at the MGA level, resulting in lower net exposure to the bail bond insurer. Premiums net of commission can be reduced for premium ceded to reinsurers after capital factors have been determined using premium net of commission only.

## Exhibit 1
## Sample Capital Factor Calculations for Bail
Based on underwriting profit (excludes investment income).

### Sample Highly Profitable Company

| | Bail Bond Written Premium Capital Factors | | |
|---|---|---|---|
| | (1) | (2) | (3) = (1) * (2) |
| Written Premium Net of Commission ($) | Industry Baseline NWP Capital Factor | Underwriting Profitability Factor* | Final NWP Capital Factor |
| NWP < 1 million | 0.80 | 0.80 | 0.64 |
| 1m <= NWP < 2m | 0.70 | 0.80 | 0.56 |
| 2m <= NWP < 3m | 0.60 | 0.80 | 0.48 |
| 3m <= NWP < 4m | 0.50 | 0.80 | 0.40 |
| NWP >= 5m | 0.40 | 0.80 | 0.32 |

### Sample Unprofitable Company

| | Bail Bond Written Premium Capital Factors | | |
|---|---|---|---|
| | (1) | (2) | (3) = (1) * (2) |
| Written Premium Net of Commission ($) | Industry Baseline NWP Capital Factor | Underwriting Profitability Factor* | Final NWP Capital Factor |
| NWP < 1 million | 0.80 | 1.20 | 0.96 |
| 1m <= NWP < 2m | 0.70 | 1.20 | 0.84 |
| 2m <= NWP < 3m | 0.60 | 1.20 | 0.72 |
| 3m <= NWP < 4m | 0.50 | 1.20 | 0.60 |
| NWP >= 5m | 0.40 | 1.20 | 0.48 |

* Profitability Factor varies from 0.80 (highest profitability levels) to 1.20 (unprofitable).

Bail agents set aside a portion of their commission income in build-up funds (BUF) that the insurer has access to in the event an agent is unable to meet its obligations. For some insurers, the aggregate amount of BUF accounts can be sizable. It also can distort the balance sheet, as many bail companies record the BUF accounts as both a noninvested asset and a liability. As a result, current liquidity ratios (roughly defined as cash and invested assets divided by liabilities) may be low for bail bond writers because of the BUF fund liability. Since this liability is supported by noninvested assets, it is important to remove the impact from

this ratio to get a better view of the insurer's balance sheet liquidity. It should be noted that BUF accounts are not commingled and as a result, an insurer cannot reduce losses from one agency by using BUF accumulated by another agency.

Another divergence from traditional P/C ratios is in the loss, expense and combined ratios. Bail insurers typically have very low losses, as they are absorbed by the agents (through the BUF). As a result, loss ratios for the insurer tend to be less than 10 on average for bail writers rated by A.M. Best. However, with 90% or more of premiums retained by agents as commissions, this leaves a very low premium base with the insurer; expense ratios therefore tend to be very high, typically exceeding 80. When a bail writer has an affiliated general agent that is responsible for bail production, A.M. Best also will look at that agency's expense structure and operating results to determine whether potential losses at that entity might spill over to the insurer in the form of demand for capital (through common ownership).

### Premium Taxes

The issue of using premiums gross or net of commissions has evidently spilled over into the payment of premium taxes. Bail insurers face potential liabilities for premium tax payments. In the few states where insurers are required to report premiums gross of commission, some have reported premiums on a net basis, resulting in an accumulated liability for insufficient premium tax payments. South Carolina, Texas, Connecticut and Nevada are auditing bail insurers and have been fining those that are out of compliance. The analyst needs to find out whether the insurer has taken steps to mitigate this exposure to prevent being fined. A reduction to surplus may be necessary in the insurer's BCAR for this potential liability if the insurer has not accrued an estimated liability on its own.

### Capitalization

As part of evaluating capitalization of contract surety writers and bail bond insurers, A.M. Best will include a reduction to reported surplus in the published BCAR due to a potential large loss.

For contract surety writers, the potential large loss will be the largest net after-tax loss, selected from the surety's five largest principals, such that the net loss for each principal is based on the 95% probable maximum loss (PML) net of collateral and reinsurance. The 95%

## Exhibit 2
## Sample Calculation of Potential Losses for Contract Surety
Amounts shown in whole dollars. Loss Severity Model Factors are based on the type of business, region of operation, size of total limits and concentration of bond limits for that principal.

|   |   | Largest Principal | 2nd-Largest Principal | 3rd-Largest Principal | 4th-Largest Principal | 5th-Largest Principal |
|---|---|---|---|---|---|---|
| 1 | Gross Exposure for Principal | $ 10,000,000 | $ 7,000,000 | $ 5,000,000 | $ 3,000,000 | $2,000,000 |
| 2 | Loss Severity Model 95% PML Factor | 0.15 | 0.30 | 0.16 | 0.25 | 0.40 |
| 3 | Loss Severity Model 95% PML Amount = (1) * (2) | 1,500,000 | 2,100,000 | 800,000 | 750,000 | 800,000 |
| 4 | Co-surety's Share % | 40.0 | 20.0 | 0.0 | 0.0 | 0.0 |
| 5 | Co-surety's Share Amount = (3) * (4) | 600,000 | 420,000 | - | - | - |
| 6 | Net PML Amount after Co-surety = (3) - (5) | 900,000 | 1,680,000 | 800,000 | 750,000 | 800,000 |
| 7 | Acceptable* Collateral Amount | 300,000 | 180,000 | 100,000 | 150,000 | 50,000 |
| 8 | Net PML Amount after Co-surety & Collateral = (6) - (7) | 600,000 | 1,500,000 | 700,000 | 600,000 | 750,000 |
| 9 | XOL Reinsurance Amount | - | 500,000 | - | - | - |
| 10 | Quota Share Reinsurance Amount | 120,000 | 200,000 | 140,000 | 120,000 | 150,000 |
| 11 | Pretax Net Potential Loss Amount = (8) - (9) - (10) | 480,000 | 800,000 | 560,000 | 480,000 | 600,000 |
| 12 | Federal Tax Rate | 35.0 | 35.0 | 35.0 | 35.0 | 35.0 |
| 13 | After-Tax Net Potential Loss Amount = ( 100% - (12) ) * (11) | $ 312,000 | $ 520,000 | $ 364,000 | $ 312,000 | $ 390,000 |
|   |   |   | Largest After-Tax Net Loss |   |   | 2nd-Largest After-Tax Net Loss |

*Collateral must be easily and quickly convertible into cash.

PML for each principal can be calculated using the most current construction loss severity model developed by the Surety & Fidelity Association of America (SFAA). The five largest principals examined will be based on the total bond limits for each principal, where total bond limits equals the sum of in-force bond limits plus the sum of all bond limits expired in the past 12 months. A sample calculation of the net after-tax loss is shown in **Exhibit 2**.

In addition, A.M. Best will perform a stress test on the contract surety's BCAR. A stressed BCAR will be calculated by assuming the largest net loss occurred and then estimating what the insurer's BCAR would look like shortly after that first event occurred. This results in a reduction to reported surplus in the amount of the largest net loss (after tax), followed by an increase in recoverables (40% of the ceded loss), an increase in the net loss reserves (40% of the net pretax loss) and a reduction to surplus for the second-largest potential net loss (after tax) calculated from the five largest principals. The stressed BCAR will be examined and discussed with the company but will not be published.

In a similar fashion for bail insurers, A.M. Best will gather information on the five largest bail agents producing business for the insurer. The open liability amount will be used to determine which agents are the five largest producing agents. For each of the top five bail agents, the open liability will be adjusted down to approximate the true current open liability, as the open liability reported by the insurer typically is overstated because of lags in the reporting of bond closures. A bond forfeiture rate of 3% is applied to the adjusted open liability for each bail agent, and the BUF held for that agent are used to reduce the agent's loss exposure. The result will be tax effected. The largest net after-tax amount from those five agents will be used as a potential loss in the published BCAR, resulting in a reduction to reported surplus. A sample calculation of the net after-tax loss is shown in **Exhibit 3**. A.M. Best also will review the insurer's current and historical total forfeitures to determine whether the amounts calculated for the top five agents need to be adjusted.

In addition, A.M. Best will perform a stress test on the bail insurer's BCAR. A stressed BCAR will be calculated by assuming the largest net loss occurred and then estimating what the insurer's BCAR would look like shortly after that first event occurred. This results in a reduction to reported surplus in the amount of the largest net loss (after tax), followed by an increase in recoverables (40% of the ceded loss), an increase in the net loss reserves (40% of the net pretax loss) and a reduction to surplus for the second-largest potential net loss (after tax) calculated from the five largest agents. The stressed BCAR will be examined and discussed with the company but will not be published.

While these stress tests will represent A.M. Best's typical stress testing for contract surety and bail insurers, the analyst may determine that additional testing and/or adjustments to the above tests are appropriate. If an insurer writes both contract surety and bail, the potential losses used in BCAR will be from the calculations generating the higher potential losses. As long as the stressed BCAR does not fall more than 30 points below the BCAR guidelines for the rating, there likely will be no rating pressure from the stress test.

## Exhibit 3
## Sample Calculation of Potential Losses for Bail
($ Thousands)

| Top Bail Agents | Reported Open Liability | Adjustment (%) | Estimated Current Open Liability | 3% Bond Forfeiture Rate | BUF Balance | Gross Exposure | Reinsurance Amount | Pre-Tax Net Exposure | FIT Rate (%) | After-Tax Net Exposure | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Agent 1 | $1,000,000 | 50 | $500,000 | $15,000 | $10,000 | $5,000 | $2,000 | $3,000 | 35 | $1,950 | = 2nd-Largest Net Loss |
| Agent 2 | 500,000 | 50 | 250,000 | 7,500 | 2,000 | 5,500 | 2,200 | 3,300 | 35 | 2,145 | = Largest Net Loss |
| Agent 3 | 300,000 | 50 | 150,000 | 4,500 | 1,000 | 3,500 | 1,400 | 2,100 | 35 | 1,365 | |
| Agent 4 | 200,000 | 50 | 100,000 | 3,000 | 500 | 2,500 | 1,000 | 1,500 | 35 | 975 | |
| Agent 5 | 100,000 | 50 | 50,000 | 1,500 | 200 | 1,300 | 520 | 780 | 35 | 507 | |

Published by A.M. Best Company

# Methodology

CHAIRMAN & PRESIDENT **Arthur Snyder III**

EXECUTIVE VICE PRESIDENT **Larry G. Mayewski**

EXECUTIVE VICE PRESIDENT **Paul C. Tinnirello**

SENIOR VICE PRESIDENTS **Douglas A. Collett, Matthew C. Mosher,
Rita L. Tedesco, Karen B. Heine**

**A.M. BEST COMPANY
WORLD HEADQUARTERS**
Ambest Road, Oldwick, NJ 08858
Phone: +1 (908) 439-2200

**WASHINGTON OFFICE**
830 National Press Building
529 14th Street N.W., Washington, DC 20045
Phone: +1 (202) 347-3090

**A.M. BEST AMÉRICA LATINA, S.A. de C.V.**
Paseo de la Reforma 412
Piso 23
Col. Juárez, México, DF

**A.M. BEST EUROPE RATING SERVICES LTD.
A.M. BEST EUROPE INFORMATION SERVICES LTD.**
12 Arthur Street, 6th Floor, London, UK EC4R 9AB
Phone: +44 (0)20 7626-6264

**A.M. BEST ASIA-PACIFIC LTD.**
Unit 4004 Central Plaza, 18 Harbour Road, Wanchai, Hong Kong
Phone: +852 2827-3400

**DUBAI OFFICE (MENA, SOUTH & CENTRAL ASIA)**
Office 102, Tower 2
Currency House, DIFC
PO Box 506617, Dubai, UAE
Phone: +971 43 752 780



**A Best's Financial Strength Rating** is an independent opinion of an insurer's financial strength and ability to meet its ongoing insurance policy and contract obligations. It is based on a comprehensive quantitative and qualitative evaluation of a company's balance sheet strength, operating performance and business profile. The Financial Strength Rating opinion addresses the relative ability of an insurer to meet its ongoing insurance policy and contract obligations. These ratings are not a warranty of an insurer's current or future ability to meet contractual obligations. The rating is not assigned to specific insurance policies or contracts and does not address any other risk, including, but not limited to, an insurer's claims-payment policies or procedures; the ability of the insurer to dispute or deny claims payment on grounds of misrepresentation or fraud; or any specific liability contractually borne by the policy or contract holder. A Financial Strength Rating is not a recommendation to purchase, hold or terminate any insurance policy, contract or any other financial obligation issued by an insurer, nor does it address the suitability of any particular policy or contract for a specific purpose or purchaser.

**A Best's Debt/Issuer Credit Rating** is an opinion regarding the relative future credit risk of an entity, a credit commitment or a debt or debt-like security. It is based on a comprehensive quantitative and qualitative evaluation of a company's balance sheet strength, operating performance and business profile and, where appropriate, the specific nature and details of a rated debt security. Credit risk is the risk that an entity may not meet its contractual, financial obligations as they come due. These credit ratings do not address any other risk, including but not limited to liquidity risk, market value risk or price volatility of rated securities. The rating is not a recommendation to buy, sell or hold any securities, insurance policies, contracts or any other financial obligations, nor does it address the suitability of any particular financial obligation for a specific purpose or purchaser.

Any and all ratings, opinions and information contained herein are provided "as is," without any expressed or implied warranty. A rating may be changed, suspended or withdrawn at any time for any reason at the sole discretion of A.M. Best.

In arriving at a rating decision, A.M. Best relies on third-party audited financial data and/or other information provided to it. While this information is believed to be reliable, A.M. Best does not independently verify the accuracy or reliability of the information.

A.M. Best does not offer consulting or advisory services. A.M. Best is not an Investment Adviser and does not offer investment advice of any kind, nor does the company or its Rating Analysts offer any form of structuring or financial advice. A.M. Best does not sell securities. A.M. Best is compensated for its interactive rating services. These rating fees can vary from US$ 5,000 to US$ 500,000. In addition, A.M. Best may receive compensation from rated entities for non-rating related services or products offered.

For press inquiries or to contact the authors, please contact James Peavy at (908) 439-2200, ext. 5644.

**SR-2014-423**

Orgovan, Joseph

From:             Wanke, Daniel
Sent:             Thursday, May 1, 2014 7:14 PM
To:               Committee-BBAC-Open
Cc:               DNABIC@aol.com
Subject:          Bail Bond Legislation
Attachments:      Bail Bond Legislation - April.pdf


Attached is our latest report on legislation for 2014. If you have any questions, please do not hesitate to contact us. Thank you.

Daniel Wanke


Daniel Wanke
Manager - Regulatory and Government Affairs
The Surety & Fidelity Association of America
(202) 778-3631 - Direct
(202) 463-0606 - Fax
www.surety.org



# THE SURETY & FIDELITY ASSOCIATION OF AMERICA

## MEMORANDUM

TO:        **Bail Bond Advisory Committee**

FROM:     **Daniel Wanke**

RE:        **Bail Bond Legislation**

DATE:     **April 29, 2013**

**There are 21 states and the District of Columbia in session. In all states except New Jersey and Virginia, this is the second year of a two-year session. The following report compiles and summarizes bail bond legislation that SFAA is tracking for 2014.**

| Jurisdiction | Bill | Recent History | SFAA Summary |
|---|---|---|---|
| AL | HB 134 | Failed | HB 134 would have eliminated the requirement that a professional bail company furnish a $25,000 surety bond. The bill would have required an escrow agreement with a minimum amount of $100,000 instead. The bill established a maximum amount of an appearance bond that a company could post per defendant. The bill would have required the company to obtain from the circuit clerk a certified list of its outstanding appearance bonds and their amounts and a copy of the original escrow agreement for recertification. The bill would have required an affidavit certifying proof of all the documents required for recertification. The bill also would have required employees of the company to be fingerprinted to check their criminal record. The bill prohibited any person charged with certain crimes from having a financial interest in the company. The bill also would have established minimum education and exam requirements for employees. |
| AL | SB 155 | Failed | SB 155 would have established education and continuing education requirements for professional bail bondsmen. The bill provided that failure to comply with the proposed education requirements would have resulted in a suspension of the authority to act as a bondsman. |

SFAA 000485

| | | |
|---|---|---|
| AL | SB 236 | Failed | SB 236 would have established continuing education and examination requirements for professional bail bondsmen. The bill would have required bondsmen to file certificates of examination or continuing education issued by the Department of Insurance with the presiding circuit judge. |
| AL | SB 249 | Failed | SB 249 would have established continuing education and examination requirements for professional bail bondsmen. The bill would have established requirements for certifying organizations to conduct courses to meet these education requirements. |
| AL | SB 413/ HB 477 | Failed | SB 413/HB 477 would have revised the existing law concerning premium reserves for surety insurers. Current law requires sureties to post an unearned premium reserve in accordance with the requirements for property and general casualty insurers based on gross premiums. The bill would have established an unearned premium reserve for bail bond surety insurers based on net premiums. |
| CA | AB 723 | 08/30/2013 AB 723 has been held in the Senate Appropriations Committee. | AB 723 would permit a person on post-release supervision that has a revocation petition filed against him or her to file an application for bail or release on his or her own recognizance with the superior court. Current law requires that persons released from prison after serving a prison term for a felony, with exceptions, be released into post-release community supervision for a period not exceeding three years. |
| CA | AB 773 | Failed | AB 773 would have revised the bail agent licensing law to permit a limited liability company (LLC) to be licensed as a bail agency. The bill would have exempted a corporation or LLC that is an admitted surety insurer or is a subsidiary of an admitted surety insurer from a requirement that 100% of the shares of the corporation or membership interest in the LLC be held by licensed bail agents and from a requirement that members of the LLC and all shareholders, officers, and directors of the corporation be licensed as bail agents. |
| CA | AB 1118 | 07/02/2013. AB 1118 is in the Senate Committee on Public Safety. | AB 1118 would revise the existing law on the countywide bail schedules that courts currently are required to establish by law. The bill provides that a court that adopts the countywide bail and penalty schedule shall consider the statewide bail schedule prepared according to the proposed procedures. The bill would direct the Judicial Council to prepare, adopt and maintain a statewide bail schedule for all bailable felony offenses and for all misdemeanor and infraction offenses, except for Vehicle Code infractions. The bill would outline the procedures for how to set forth the schedule, which would be based on the seriousness of the offense, and additional factors set forth in the law pertaining to certain crimes. The bill would require a court to submit a report on how its bail schedule |

SFAA 000486

| | | | |
|---|---|---|---|
| | | | differs from the statewide bail schedule if it adopts a countywide schedule. |
| CO | SB 212 | 04/22/2014 SB 212 has been introduced. | SB 212 would clarify the existing law concerning bail bonds. The bill provides that the defendant could select how to secure a bail bond unless the court mandates a particular method. The bill would revise the procedures for motions during hearings for the review of a bond. The bill would make technical corrections concerning monetary condition bonds. The bill would specify that a court could designate a person to set bond amounts. |
| CO | HB 1261 | 02/27/2014 HB 1261 passed the House Judiciary Committee. | HB 1261 would revise the existing law concerning pretrial release programs and bail bonds. The bill limits a court's authority to determining the amount of the bond and gives the defendant the ability to choose how to satisfy the bond. The bill also would outline limits on how the court may release a defendant on his or her personal recognizance. The bill would revise the law on the exoneration of the bond to require compensated sureties to provide information on the costs of the bond. The bill also would revise the law concerning how security deposits are used upon forfeiture or termination of a bond by requiring the consent of the defendant for how the proceeds are used. The bill would establish notification requirements for pretrial supervision programs for when a defendant commits a potential bail or program violations. |
| CT | SB 107 | 04/17/2014 SB 107 is pending on the Senate floor calendar. | SB 107 would revise the existing law concerning the advertising that bail bond agents may conduct in a correctional institution, community correctional center or other detention facility, police station or courthouse. The law permits telephone listings as a form of advertising. The bill would clarify that this includes advertisements in a yellow pages phone book. |
| CT | 389 | 04/25/2014 SB 389 passed the Senate Education Committee. | SB 389 would revise the conditions under which a bail bond is automatically terminated and released. |
| CT | HB 5246 | 02/21/2014 HB 5346 has not moved since it was scheduled for a hearing on 02/25/2014. | HB 5246 would revise the existing law concerning licensing for bail bond agents. The bill provides for the cancellation of the license for a failure to pay the required license fee. The bill also would authorize the Insurance Department to adopt regulations establishing continuing education requirements for bail bond agents in connection with licensure. |

SFAA 000487

| | | | |
|---|---|---|---|
| CT | HB 5586 | 04/25/2014<br>HB 5586 has been reported favorably from the Legislative Commissioner's Office and has been tabled on the calendar in the House. | HB 5586 would permit probation officers to conduct interviews and set the amount of bail in the course of serving arrest warrants for violation of probation under the same terms that a police officer can when making an arrest. |
| CT | HB 5588 | 04/16/2014<br>HB 5588 has been reported favorable from the Legislative Commissioner's Office. | HB 5588 would permit a surety on a bail bond in a criminal case to apply for release from a bond if the defendant absconds. The bill would authorize the court to extend the stay of execution of a bond forfeiture if a defendant failed to appear. The bill provides that if a defendant whose bond has been forfeited returns to court voluntarily more than five business days after and less than six months after the bond was ordered forfeited, the bond would be automatically terminated, and the surety would be released. Among the conditions by which a court would vacate a bond forfeiture, the bill would add when the defendant is taken into custody by a federal agency, or if he or she has been removed by U.S. Immigration and Customs Enforcement. |
| CT | HB 5593 | 04/24/2014<br>HB 5593 has been reported out of the Legislative Commissioner's Office. | HB 5593 would establish procedures for a professional bondsman to enter into premium financing agreements with a defendant. The bill would require the principal on the bail bond or any indemnitor to make a minimum down payment of 35% of the premium due. |
| DE | SB 36 | 01/29/2014<br>SB 36 has been reported out of the House Administration Committee. | SB 36 would amend Delaware's constitution regarding the right to bail. Currently, the law provides that all prisoners are bailable by sufficient sureties, except for capital offenses "when the proof is positive or the presumption great." The bill provides that bail would not be granted to prisoners charged with certain felony offenses or in circumstances when "no condition or combination of conditions other than detention will reasonably assure the safety of any person or the community." The bill would require persons held pretrial for such felonies to be offered bail if their trial has not commenced 90 days from the date of their arrest. |

SFAA 000488

| FL | 03/04/2014<br>HB 365 has been introduced. | HB 365 provides that an order of no contact for a defendant would be effective immediately upon the order of the court and enforceable prior to and through the time of release. Existing law prohibits defendants from contacting victims in a criminal case except in accordance with certain procedures in the case as a condition of pretrial release. |
|---|---|---|
| FL | 04/01/2014<br>HB 427 has passed the House.<br><br>04/28/2014<br>SB 550 is to the second reading in the Senate. | HB 427/SB 550 would prohibit a person who resides in Florida from crossing a county boundary with the intent to commit certain felony offenses in a county other than that of his or her residence. The bill provides that defendants charged with such crimes would not be eligible for release on a bail or a surety bond. |
| FL | 03/20/2014<br>SB 854 remains in the Senate Banking and Insurance Committee where a hearing for the bill was postponed.<br><br>03/26/2014<br>HB 1395 was referred to the House Regulatory Affairs Committee. | SB 854/HB 1395 would provide for the use of electronic surety bonds for bail bonds. The bill would outline the qualifications required of bail agents to use such bonds. Further, the bill also would add specifications to the law concerning surety qualifications for issuing bail bonds, including licensure and the attachment of a power of attorney. |
| FL | 04/22/2014<br>HB 939 passed the House.<br><br>04/11/2014 | HB 939/SB 1390 would revise the existing law concerning the premium and excise taxes for bail bonds and permit the computation based on net premiums. |

SFAA 000489

| | | | |
|---|---|---|---|
| | | HB 1390 is in the Senate Appropriations Committee. | |
| GA | HB 96 | Failed | HB 96 would have abolished the death penalty. The bill would have deleted references throughout the law referencing the death penalty with respect to criminal charges. The bill would have repealed an extension of the 90-day period for defendants subject to the death penalty to have the charges heard by a grand jury. The law provides that if the charges are not heard, then the defendant may be granted bail. |
| GA | HB 145 | Failed | HB 145 would have revised the existing law for hearings in which persons who may pose a danger are required to appear. Existing law provides that a bond may be required of the person who the court orders to appear to secure their good behavior. The bill would have revised the bond term, which currently is from the time of the order until the next term of the superior court of the county or for six months, whichever is greater. The bill would have required the bond to be in place for six months. The bill also would have repealed a provision permitting a person to require their spouse to post a bond for good behavior in these cases. The bill also would have repealed a provision permitting direct actions on the bond. The law permits the bond period to be extended from term to term by the superior or state court, or for additional 60-day periods, whichever is greater. Instead, the bill would have provided for the extension of the bond for a period of six months. |
| GA | HB 271 | 04/22/2014 HB 271 has been enacted. | HB 271 revises the requirements for escrow accounts for professional bail bond companies. The new law revises the premium requirements for bail bond companies with regard to the permissible amount the company may charge for a bond. Prior law capped the charge at not more than 12% of the face amount of the bond set in the amount of $10,000 or less, and not more than 15% of the face amount of the bond set in an amount in excess of $10,000. The new law caps the maximum premium at 15% of the bond amount, regardless of the amount of the bond, provided however that a surety may charge and receive a minimum of $50 per bonded charge or offense as compensation, regardless of whether it exceeds 15% of the face amount of the bond.<br><br>Prior law provided that the establishment of a cash escrow account or other form of collateral had to be in a sum and upon terms and conditions approved by the sheriff. The new law provides that the escrow or collateral amount for professional bonding |

SFAA 000490

SFAA 000491

| | | | |
|---|---|---|---|
| | | | companies that are new to the county or that has operated continuously in the county for less than 18 months would be determined and approved by the sheriff. Following this period, the cash escrow account or other form of collateral shall not exceed 10% of the company's current outstanding bail bond liability. The new law prohibits the company from purchasing an insurance policy in lieu of establishing a cash escrow account or posting other collateral. The new law provides that companies that were using an insurance policy as collateral as of December 31, 2013, will be permitted to continue to do so at the sheriff's discretion. As introduced, the bill did not impact bonding. It was amended and quickly passed in this form. |
| GA | HB 392 | Failed | HB 392 would have revised the law for unclaimed cash bail. Under current law, if the surety does not claim the cash bail seven years from the later of either the date on which the defendant was required to appear in court or the date of disposition of the case by the prosecutor or the court, then the bond is remitted to the county general fund where the trial took place. The bill would have reduced this to a period of one year from the date of the surety being released from liability or the date of disposition of the case by the prosecutor or the court. |
| GA | HB 510 | Failed | HB 510 would have reduced from 15 days to seven days the period given to place a detainer or hold on a defendant to prevent forfeiture on the bond in certain cases where a defendant is prevented from appearing in court. Following this period, the surety is relieved of the liability for the bond. The bill also would clarify that the period begins from the date of the surety's request. The bill provided that the bond could not be forfeited due to the defendant undergoing treatment. The bill would have stricken provisions pertaining to the return of the defendant in cases where the surety locates the defendant. Returning the defendant grants the surety a refund. The bill would have granted this refund if the defendant is "produced or otherwise appears before the court that has jurisdiction of the bond." The bill provided that in cases where the defendant is outside of the State and the court does not seek extradition, the bill provides that 5% of the bond could be remitted to satisfy the judgment. |
| GA | 805 | Failed | HB 805 would have revised existing law to permit bail bondsmen to be elected to certain local offices. |

| HI | SB 873/ SB 415/ HB 234 | Failed | SB 415/HB 234 provided that all money deposited in any criminal proceeding before any court for bail or a bail bond that has not been declared forfeited would have to be applied toward payment of any restitution, fines, or fees ordered by the court in the case for the restitution of the victim or victims of the crime. |
|---|---|---|---|
| IA | HSB 25 | 01/18/2013 HSB 25 is in the House Judiciary Committee. | HSB 25 would extend the time period that the court may set aside a judgment of forfeited bail against a surety when a defendant fails to appear in court from 60 days to 90 days. Under existing law, if defendants fail to appear in court, such judgments may be set aside for a period of up to 60 days from the date of the judgment to permit the defendant to voluntarily surrender to the sheriff or for the surety to deliver the defendant to the court. Further, the bill would increase the time the district court clerk is required to hold forfeited bail from 60 days to 90 days from the date of the judgment against the surety. |
| IA | HSB 636 | 02/11/2014 HSB 636 is in the House Public Safety Committee. | HSB 636 outlines who an arrested person may call, which would include insurance companies writing bail bonds. |
| ID | 461 | 03/26/2014 HB 461 has been enacted. | HB 461 establishes sobriety requirements as a part of a monitoring program for defendants in criminal cases. The new law provides that the court may require abstaining from drugs and alcohol participation in a sobriety monitoring program as a condition of the defendant's bond. |
| IL | HB 1243 | 04/11/2014 HB 1243 has been sent to the House Rules Committee. | HB 1243 would enact the Illinois Parentage Act of 2013. The bill provides that when the obligor of a temporary order for child support in a parentage determination case or an obligor of a support order in a paternity case is arrested for failing to report new employment as outlined in the bill, the bond would have to be in the amount of the unpaid support that should have been paid during the period of unreported employment. |
| IL | SB 2280 | 08/09/2013 SB 2280 has been sent to the Senate Assignments Committee. | SB 2280 would delete a provision under current law requiring a defendant to surrender his or her Firearm Owner's Identification Card as a condition of bail. |

SFAA 000492

| IL | HB 3744 | 04/07/2014 HB 3744 has passed the House. The bill has been sent to the Senate Criminal Law Committee. | HB 3744 would expand the types of crimes that are considered in a bail hearing for determining whether a defendant should be placed under electronic surveillance. The bill also would add procedures for the court to record the basis of its decision for placing the defendant under such surveillance. The bill also provides that the cost of the electronic surveillance shall be paid from the bail that the defendant has deposited. |
| IL | HB 3772 | 01/13/2014 HB 3772 has been introduced. | HB 3772 would authorize a court to order a defendant to be placed under the supervision of the Pretrial Services Agency, Probation Department, County Department of Corrections, or Court Services Department in a pretrial bond home supervision capacity with the use of an approved electronic monitoring device as a condition of being released by personal recognizance. The bill would authorize the court to require the defendant to remain or be placed in the custody of such designated person or organization agreeing to supervise his or her release, with or without the use of an approved electronic monitoring device administered by these agencies as a condition of bail. The bill would allow applications for electronic home detention to include "as a condition of bail, as a condition of release on own recognizances, or in lieu of bail." |
| IL | HB 3773 | 01/13/2014 HB 3773 has been introduced. | HB 3773 would outline the conditions on which a defendant may be released on his or her own recognizance when charged with certain drug-related crimes. |
| IL | 4245 | 04/04/2014 HB 4245 is pending the third reading in the House. | HB 4245 would establish bail procedures for first time, non-violent offenders. The bill provides that such defendants would be released on their own recognizance unless the court determined a cash bond is necessary. |
| IN | SB 373 | Failed | SB 373 would have revised and reorganized the existing law pertaining to bail bonds in Indiana for cash, personal, and commercial bail bonds. |
| IN | HB 395 | Failed | SB 395 would have revised the bail bond requirements in existing law. Of note, the bill provided for an increase in the required amount of the cash deposit from 10% to 15% of the amount of the bail that the court sets. The bill also would have revised the types of security that may be provided as bail. The bill also would have prohibited the court from declaring a bond forfeited for any reason other than the defendant's failure to appear in court. |

SFAA 000493

| KS | SB 26 | Failed | SB 26 would have added bail bond insurance to the types of insurance for which an insurance agent may receive a license. The bill listed bail bond insurance as a "limited line insurance that provides surety for a monetary guarantee that an individual released from jail will be present in court at an appointed time." The bill would have exempted licensed insurance agents who only have a bail bond qualification from the existing law's requirement to obtain continuing education credits. |
| KS | SB 140 | Failed | SB 140 would have revised the current law pertaining to appearance bonds with respect to the defendant's immigration status. The bill provided that persons charged with a crime that are not a citizen or national of the United States would have to have their immigration status verified with the federal government. For determining whether to grant or issue appearance bonds, if the person was verified by the federal government as an alien unlawfully present in the United States, there would have been a rebuttable presumption that the person is at risk of flight. |
| KS | SB 256 | 04/18/2014 SB 256 has been enacted. | SB 256 revises the existing law concerning bail to prohibit persons charged with certain crimes from being released on their own recognizance. The new law addresses the qualifications of a surety for a bail bond. The new law requires out-of-state sureties to contract with a surety authorized in the State for the apprehension of persons in Kansas. Further, the new law revises the law concerning unlawful sexual relations between a person acting as a bail surety and a defendant and/or minors. |
| KS | HB 2070 | 02/26/2014 HB 2070 passed the Senate. | HB 2070 restricts release of defendants on their own recognizance, provides that an out-of-state surety or bounty hunter intending to apprehend any person in Kansas must enter into a contract with an individual authorized by a Kansas court to act as a surety or bounty hunter before attempting the apprehension. The surety or agent from out-of-state would have to be accompanied by the Kansas-authorized surety or bounty hunter during such apprehension. Any prior felony conviction would disqualify a person from being a surety or bounty hunter in Kansas. (Current law terminates the disqualification after ten years.) |
| KS | HB 2256 | Failed | HB 2256 would have revised the requirements for appearance bonds for municipal courts. The bill provided the amount of the appearance bond shall be set by the court and the amount shall be the same, regardless of the method securing the bond. A deposit of cash in less than the full amount of the bond shall not be permitted. The bill would have deleted language permitting a responsible individual residing within the State to provide a bond. Instead, the bill would have required an appearance bond to be provided by a |

SFAA 000494

| | | | |
|---|---|---|---|
| KS | HB 2493 | Failed | "sufficient, solvent surety." The bill would have revised the law concerning forfeitures. Current law provides that if the forfeiture of a bond has become final, the court shall direct the application of the funds or that an action to be instituted for the collection from the sureties on the bond or from the accused person. Instead, the bill provided that where the bond forfeiture has not been set aside, the court shall direct an action to be instituted for collection of the funds from the obligors on the bond as outlined in K.S.A. 22-2807. |
| | | | HB 2493 would revise the existing law concerning bail with respect to releasing defendants on their own recognizance. The bill also would address the qualifications of a surety for a bail bond. Further, the bill would revise the law concerning unlawful sexual relations between a person acting as a bail surety and a defendant and/or minors. |
| KY | HB 359 | 04/25/2014 HB 359 has been enacted. | HB 359 authorizes the court to require defendants in a criminal case to wear a continuous monitoring device for alcohol as a condition of pretrial release if the defendant poses a risk for substance abuse. |
| LA | HB 362 | 03/10/2014 HB 362 has been introduced. | HB 362 would revise the existing law concerning the release of a surety on a defendant's bond to provide that the surety is released from its obligations on account of the clerk of court's failure to mail the notice of a judgment within 60 days after the defendant's "initial" failure to appear. Current law does not specify that it must be the defendant's initial failure to appear. |
| LA | HB 363 | 03/10/2014 HB 363 has been introduced. | HB 363 would revise the existing law on the surety's surrender of a defendant to modify procedures concerning the extradition of a defendant and for seeking to obtain an extension of the time to surrender of a defendant. |
| LA | HB 367 | 04/08/2013 HB 367 has been introduced. | HB 367 would establish a pretrial release services program, which could be used to assist in determining the amount of bail required. |
| LA | HB 418 | 03/10/2014 HB 418 | HB 418 would establish time limits for satisfying a judgment for the forfeiture of a bail bond based on the amount of the bond. In addition, the bill would allow a judgment to be satisfied by paying the full amount of the judgments into the registry of the court and the simultaneous institution of proceedings to determine the validity of the judgment. |

SFAA 000495

| | | | |
|---|---|---|---|
| LA | SB 439 | 03/10/2014 SB 439 has been introduced. | SB 439 would rewrite the law concerning bail bonds. The bill would revise certain terminology and procedures with regard to the notices required under existing law in connection with the defendant's appearance in court. The bill also would revise certain procedures concerning the certificates a surety must receive following the surety's surrender of a defendant or if the defendant surrenders himself or herself. The bill would revise the procedures concerning the provision of a certificate of death. (i.e. establish a timeframe of when the certificate may be furnished to the court.) The bill would add new procedures concerning the forfeiture of the bond and the arrest of the defendant following his or her failure to appear in court, including notice requirements and the liability of a bail agent in this case. The bill would require a contradictory hearing to order a judgment of bond forfeiture. The bill would revise the current procedures for bond forfeiture appeals. |
| LA | HB 540 | 03/10/2014 HB 540 has been introduced. | HB 540 would revise the existing law on bail bonds to authorize the use of e-mail to provide a notice of judgment of bond forfeiture. The bill would outline the procedures under which e-mail could be used. |
| LA | SB 790 | 03/10/2014 SB 790 has been introduced. | SB 790 would revise the existing law for bail bonds, which allows a defendant to furnish a personal undertaking as a bail bond. The bill would authorize the courts in any parish, other than St. John the Baptist and St. Charles, to alter the percentage amount of the bail to be deposited with the officer, and it would authorize the officer to charge an administrative fee, not to exceed $25 for processing the bond. |
| LA | HB 1142 | 04/24/2014 HB 1142 is to the third reading in the House and is scheduled for floor debate. | HB 1146 would provide for bail restrictions concerning protection orders, the possession of firearms. The bill provides procedures for the issuance of a Uniform Abuse Prevention Order as a condition of bail for offenses against a family or household member or dating partner. The bill would prohibit the possession of firearms by persons subject to these orders. |
| LA | HB 1176 | 04/24/2014 HB 1176 is to the third reading in the House and is scheduled for floor debate. | HB 1176 would restrict use of Temporary Needy Assistance for Families cash transfer and electronic benefits cards for bail bonds, among other items. |

SFAA 000496

| | | | |
|---|---|---|---|
| LA | HB 1206 | 04/01/2014 HB 1206 has been introduced. | HB 1206 would consolidate the New Orleans Traffic and Municipal Courts. |
| MA | SB 666 | 04/17/2014 SB 666 has not moved since it was scheduled for a hearing on 04/24/2014. | SB 666 provides that a probationer that has been charged with violating the terms of his or her probation would be admitted to bail pending a final surrender hearing. |
| MA | SB 678 | 04/14/2014 SB 678 has not moved since it was scheduled for a hearing on 04/16/2014. | SB 678 would amend the existing law pertaining to warrants to provide that a warrant could be designated as a default warrant if it is issued because a person has forfeited or made default on his or her bail bond or recognizance or if the person has been surrendered by a probation officer. |
| MA | SB 825/ HB 1239 | 04/14/2014 SB 825/HB 1239 has not moved since it was scheduled for a hearing on 04/16/2014. | SB 825/HB 1239 would revise certain procedural matters pertaining to unsecured appearance bonds, and also would revise certain procedures with regard to the review of excessive bail. |
| MD | SB 29 | Failed | HB 29 would have outlined certain procedures with regard to local law enforcement participation in federal immigration enforcement. The bill provided that a detainee may not be denied bail solely because of an immigration detainer. Further, the bill provided that nothing in these procedures may be construed to undermine the authority of a court to make a bail or bond determination according to its usual procedures. |
| MD | HB 631 | Failed | HB 631 would have revised the existing law pertaining to the forfeiture of a bail bond. The bill would have eliminated certain provisions concerning refunds to the surety. The bill also would have eliminated provisions concerning the handling of forfeited funds following the arrest, apprehension, or surrender of a defendant who was arrested, apprehended, or surrendered. |

SFAA 000497

| | | |
|---|---|---|
| MD | SB 973/ HB 1232 | Failed | SB 973/HB 1232 would have established a pretrial release services program for criminal defendants. The bill would have directed the Department of Public Safety and Public Services to create the program according to the requirements outlined in the proposed law. The program would have provided alternatives to the pre-trial incarceration of defendants. The bill would have repealed the authority of the District Court commissioners to carry out certain functions in connection with criminal proceedings, including the authority to set bail, and transfer that authority to a judge. |
| MD | SB 1030 | Failed | SB 1030 would have revised the existing law concerning bail bond forfeitures. The bill would have repealed the existing law prohibiting courts exercising criminal jurisdiction from refunding a forfeiture of bail or collateral unless a private surety pays a forfeiture of bail or collateral within the law's time constraints. The bill also would have repealed certain conditions that have to be met under current law before the court may refund a forfeited bail bond or collateral that was not paid within a certain time. |
| MI | SB 521 | 02/20/2014 SB 521 passed the Senate. | SB 521 would revise the existing law concerning bench warrants issued in family court cases where a person has violated a support order. Existing law allows such persons to post a cash performance bond following the issuance of a bench warrant and their arrest in order to be released from custody. The bill would add procedures for furnishing the bond to permit a payer for whom a bench warrant has been issued to voluntarily appear at the office of the friend of the court to answer the bench warrant. The payer must post the bond set forth in the bench warrant or be taken promptly before the court for further proceedings. If the bond is posted, the court or its clerk must give a receipt to the payer, which must direct the payer to appear before the court at a specific time and date. Upon posting the bond, the bench warrant would be removed. |
| MI | HB 4083 | 05/08/2013 HB 4083 is to the second reading in the House. | HB 4083 would create the Michigan crime stoppers act and provide for the designation of crime stoppers organizations by county. Defendants charged with a felony or a misdemeanor, including an ordinance violation, that is resolved by conviction, assignment of the defendant to youthful trainee status, a delayed sentence, or a deferred entry of judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall charge the defendant an assessment that would be used to fund the designated crime stoppers organization in the county. If the defendant posted a cash bond or bail deposit in connection with the case, the court shall order the assessment to be collected out of that bond or deposit. |

SFAA 000498

| MN | HB 744 | 02/20/2013 HB 744 has been introduced. | HB 744 would impose a fee for the reinstatement of a bail bond in an amount prescribed by court rule in an amount based on a percentage of the bond fee, but not less than $100. The bill also would direct the court to impose a minimum penalty as provided in Rule 702 of Minnesota General Rules of Practice for reinstating the bond. |
|---|---|---|---|
| MO | HB 1325 | 01/13/2014 HB 1325 has been introduced. | HB 1325 would revise the existing law regarding the possession of less than 35 grams of marijuana and the possession of marijuana drug paraphernalia. The bill would outline the fines and penalties for persons charged with this offense. If the person does not have any prior drug offenses on their record, the bill would exempt him or her from posting a bond. |
| MS | HB 38 | Failed | HB 38 would have established a list of crimes with bail restrictions. Defendants charged with such crimes only could post the required amount of bail in the form of cash, a surety bond, or a bond secured by real property situated in the State with an unencumbered equity equal to the amount of the bail undertaking plus $20,000. The bill would have created a presumption in favor of the court requiring cash bail when a defendant is charged with one of the listed crimes and also has certain offenses or convictions on his or her record or was on parole when arrested, unless the court finds on the record that another form of bail will ensure the defendant's presence in court when required. For bonds secured by real property, an affidavit from the owner must be filed with certain information about the property. |
| MS | HB 122 | Failed | HB 122 would have revised the existing law's bail procedures to establish procedures and conditions under which the court could determine whether to release a defendant prior to the trial. The procedures specify that a bail bond may be required as a condition of release. The bill would have revised the existing law concerning bail bonds to require bail to comply with the bill's procedures. The bill also would have created exceptions in existing law concerning bail to address the bill's procedures. The bill also would have authorized a surety to arrest a defendant released on an appearance bond. The surety would have to deliver the defendant to a law enforcement officer and brought before a judicial officer. The judicial officer would have had to determine whether to revoke the release of the person, and it may absolve the surety of responsibility to pay all or part of the bond. |
| MS | HB 519 | Failed | HB 519 would have rewritten the current penal code in Mississippi. The bill provided that the court could require a defendant to post a bond in connection with the defendant's release for a suspended sentence. |

SFAA 000499

| State | Bill | Status | Description |
|---|---|---|---|
| MS | HB 886/ SB 2828 | Failed | HB 886/SB 2828 would have eliminated the use of personal sureties for bail bonds. The bill would have required bail to be issued by a "fidelity of surety insurance company" authorized to act as surety within the State. Any such company may execute the undertaking as surety by an officer or attorney authorized by resolution of its board of directors. A certified copy of the authorization, under its corporate seal, would have had to be on file with the clerk of the circuit court and the county sheriff. Existing law already permits insurance companies to write bail bonds in the State. |
| MS | HB 901 | Failed | HB 901/SB 2677 would have revised the existing licensing requirements for bail bond agents. The bill would have revised the definition of bail agents to add assisting in the monitoring or the supervision of pretrial defendants to the types of activities outlined in the term. The bill would have made revisions to the existing continuing education requirements. The bill also would have revised the law concerning the suspension or revocation of a bail agent's license, including penalties for providing false information to the court concerning the proper service of notices. |
| MS | HB 903/ SB 2509 | Failed | HB 903/SB 2509 would have outlined the conditions under which a bail bond would have been considered discharged. |
| MS | SB 2677 | 04/10/2014 SB 2677 has been enacted. | SB 2677 revises the existing licensing requirements for bail bond agents. The new law makes revisions to the existing continuing education and examination requirements. The new law revises the law concerning the suspension or revocation of a bail agent's license, including penalties for providing false information to the court concerning the proper service of notices. The new law prohibits bail agents from making or offering payments to officials in connection with bail transactions in return for business referrals. The new law provides fines and penalties for violations of this new provision. |
| NC | SB 574 | 05/22/2013 SB 574 is in the House Judiciary Committee. | SB 574 would revise the existing law's procedures regarding the termination of the obligation under a bail bond for certain misdemeanors. Under current law, the obligation is terminated if a judge authorized to do so releases the obligor from his bond, the principal is surrendered by a surety, the proceeding is terminated by voluntary dismissal by the State before forfeiture is ordered, or prayer for judgment has been continued indefinitely in the district court. The bill provides that termination of the obligation would terminate if 36 months have passed from the date of release on a bail bond where the defendant is charged with a misdemeanor, except for impaired driving offenses. |

SFAA 000500

| | | |
|---|---|---|
| NC | HB 768 | 04/30/2013 HB 768 is in the House Judiciary Committee. | HB 768 would eliminate unsecured appearance bonds for use in the pretrial release of a defendant. Current law permits the court to require such a bond in an amount specified by the judicial official. |
| NH | HB 353 | 06/20/2013 A conference committee report is pending for HB 353. | HB 353 would clarify existing law to provide that bail recovery agencies are subject to a $150 licensing fee if the agency has only one person employed. The fee is $500 if there is more than one employee. Existing law already requires licensure for such businesses. |
| NH | HB 1358 | 1/8/2014 HB 1358 has been introduced. | HB 1358 would increase the amount of liability insurance that bail agencies and bail recovery agents must obtain from $300,000 to $500,000 and it would subject bail enforcement agents to an existing license fee. The bill also would require bail enforcement agents to take rifle familiarization courses. |
| NH | HB 1482 | 02/12/2014 The House Executive Departments and Administration Committee voted the bill as inexpedient to legislate. | HB 1482 would clarify the licensure of individuals as a bail enforcement agent. Current law provides for the licensure of agency businesses. The bill also would subject bail enforcement agents to an existing license fee of $150. |
| NJ | SCR 36/ ACR 139 | 01/14/2014 SCR 36/ACR 139 has been introduced. | SCR 36/ACR 139 would revise the constitution in New Jersey with regard to bail. The constitution currently provides that "[all] persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great." The resolution provides that all persons would be bailable by sufficient sureties prior to conviction, except that pretrial release could be denied to a defendant charged with a first-degree crime under certain circumstances. The resolution provides that defendants who are denied bail would have the right to appeal this determination and the right to an expedited trial. The resolution would authorize the legislature to establish procedures, terms, and conditions for pretrial release and the denial of it under the proposed change to the constitution. |

SFAA 000501

| | | |
|---|---|---|
| NJ | AB 452 | 01/16/2014 AB 452 has been introduced. | AB 452 would restore the options for posting bail in certain cases. The bill would create a presumption in favor of the court designating the posting of cash bail when a defendant is charged for a second or subsequent time with certain crimes. The bill provides that the amounts would be 50% cash option for a second offense and 100% cash option for a third or subsequent offense. |
| NJ | SB 561 | 01/14/2014 SB 561 has been introduced. | SB 561 adds certain weapons offenses to the list of crimes with bail restrictions. The bill also would expand the cases in which a presumption of full cash bail would apply for the defendant. |
| NJ | SB 744 | 01/14/2014 SB 744 has been introduced. | SB 744 would add certain crimes to the list of crimes that have bail restrictions. |
| NJ | SB 847/SB 946 | 01/14/2014 SB 847/SB 946 have been introduced. | SB 847/SB 946 would authorize a court to order the detention of a defendant charged with a first-degree crime before trial and deny the defendant bail if the court determines that no amount of bail, non-monetary conditions of pretrial release or combination of bail and conditions would assure that the defendant would appear for trial. The bill would authorize the court to deny pretrial release to protect the safety of any person or the community, or to prevent the defendant from obstructing or attempting to obstruct the criminal justice process. The bill would establish the requirements for hearings on the denial of bail and for appealing such denial. Further, the bill would permit the court to use alternatives to setting bail for defendants charged with non-violent offenses. The bill provides that the defendant would be released upon meeting these alternative requirements. |
| NJ | SB 1430/ AB 2357 | 02/27/2014 SB 1430/AB 2357 have been introduced. | SB 1430/AB 2357 would establish a judicial presumption in favor of the option for 10% bail to be posted in lieu of a bail bond issued by licensed surety for repeat criminal offenders. |
| NJ | AB 2291 | 02/06/2014 AB 2291 has been introduced. | AB 2291 would add death by auto or vessel and certain assaults as crimes with bail restrictions to the existing list of such crimes in the current law. |

SFAA 000502

| NJ | AB 3005 | 03/24/2014 AB 3005 has been introduced. | AB 3005 would prohibit surety companies, bail agents, and agencies from knowingly executing a bail bond for the release of a defendant charged with a crime of the first through fourth degree from custody or incarceration without collecting a fee for at least 10% of the face amount of the bail bond prior to or at the time the bond is filed. The bail agent or agency would have to give a written statement that it collected the fee. The bill provides penalties for violating this requirement. |
| NM | HB 50 | 02/08/2014 HB 50 has been enacted. | HB 50 replaces the current rating plan requirements for property bondsman with a process in which the Superintendent of Insurance conducts public hearings for promulgating the premium rates, schedule of charges, and rating plans. The new law prohibits a bondsman from offering a reduction in rates, charges or premium.<br><br>The new law requires a bail bondsman to register a solicitor with the superintendent within seven days of employment. The existing professional pre-licensing education requirements have been revised. Bail bondsmen must graduate from high school or pass an equivalency exam under the new law. The new law revises the existing penalties and fines in the current law. The new law requires the bond or deposit that a property bondsman must post under existing law to be maintained until all bonds that have been posted with all courts become exonerated. |
| NY | SB 506 | 01/08/2014 SB 506 has been introduced. | SB 506 would require the Commissioner of Financial Services to conduct a study to identify problems and concerns regarding the bail bond business in order to improve and clarify the existing law and regulations. The findings of the study would have to be presented to the legislature in a public hearing. |
| NY | SB 6970 | 04/09/2014 SB 6970 has been introduced. | SB 6790 would revise the existing law concerning bail bonds and bail agents. The bill would revise the existing definition on bail bond business and provide new definitions for insurer, bail agent, and bail bond, among other related terms that pertain to bail bonds. The bill would add conditions under which a bail bond agent license could be suspended or revoked. The bill would add procedures concerning bail agents that have had their licenses revoked. The bill would establish new collateral requirements for bail agents. The bill would add procedures for premium refunds on bail bonds for insurers. The bill would establish notice requirements for bail agents to issue concerning the obligations under the bail bond. |

SFAA 000503

| NY | AB 7057 | 01/08/2014 AB 7047 has been introduced. | AB 7057 would direct the Commissioner of Financial Services (Commissioner) to conduct a study to identify problems and concerns regarding the bail bond business. The bill provides that the study would serve to identify necessary improvements and clarifications to current regulations and statutes related to the rights of defendants who use the bail bond business. Upon completion of the study, the Commissioner shall prepare a report with suggestions for regulatory and/or statutory changes necessary to improve and clarify current regulations and statutes for the rights of defendants. The bill would direct the Commissioner to hold a public hearing in that area in order to afford an opportunity for any person to propose additions or deletions from the report recommendations. |
| OK | SB 9 | 02/06/2013 SB 9 has been introduced. | SB 9 would eliminate the ability of a bondsman to register in a county where he or she maintains an office but does not reside, and eliminates the per county limit of bonds a surety may write in each county. |
| OK | SB 329/ SB 1037 | 02/04/2013 SB 329 has been introduced. 03/18/2013 SB 1037 is to the second reading in the House. | SB 329 provides that a bondsman would be authorized to write bonds on up to ten defendants per calendar year in each county outside his or her resident county. Each date on the bonds written for an individual would be used for counting the bonds subject to the limit, notwithstanding any previous bonds written on that same individual. This limit would not apply in counties without a registered bondsman. |
| OK | SB 1291 | 02/04/2014 SB 1291 has been introduced. | SB 1291 would revise the existing bail laws in Oklahoma by eliminating a provision that the law only applies to counties with a population of 400,000 or more people. |
| OK | SB 1406/ HB 2404 | 02/03/2014 SB 1406/HB 2404 has been introduced. | SB 1406/HB 2404 would revise the registration process for a bondsman. Current law permits the bondsman to register in a county where he or she resides or where he or she maintains an office but does not reside. Instead, the bondsman would have to file a certified copy of his or her license with the district court clerk in each county where he or she will write bonds that is not his or her county of residence. The bill would allow a bondsman to write surety bonds statewide without the current ten defendants per county limit. |

SFAA 000504

| OK | HB 1606 | 02/04/2013 HB 1606 has been introduced. | HB 1606 would increase the licensing fee for a bail bondsman from $250 to $350. The bill also would add a penalty for failing to provide notice of a change in legal name, address, or e-mail address within five days of the change. The bill would add penalties for an untimely submission of the monthly reports bail bondsmen must submit on the bonds they have written and their liabilities in the amount of $50 for each late report. Bondsmen who have submitted untimely reports three times within a twelve-month period would be subject to additional civil penalties in an amount ranging from $250 to $2,500. |
| --- | --- | --- | --- |
| OK | SB 1675/ SB 1886/ HB 2928 | 04/28/2014 SB 1675 has been returned to the Senate for approval of the House-passed amendments.<br><br>04/23/2014 HB 2928 has been returned to the House for approval of the Senate-passed amendments.<br><br>02/03/2014 SB 1886 has been introduced. | SB 1675/SB 1886/HB 2928 would revise the requirements for the receipt that bail bondsmen must provide under existing law. The bill also would revise the current law concerning the maintenance of the list of currently approved bail bondsmen that is posted at the county jail. The bill would revise the due date of the annual financial statement that bail bondsmen must provide. The bill also would revise the definition of "return to custody."<br><br>The House amendments do not appear to impact these provisions in **SB 1675**. The Senate amendments do not appear to impact these provisions in **HB 2928.** |
| OK | HB 2407 | 04/16/2014 HB 2407 has been enacted. | HB 2407 allows bail bond agents to be multicounty agent bondsmen. The new law establishes licensing requirements and outlines the qualifications for becoming a multicounty agent bondsman. |
| PA | SB 149 | 03/12/2014 SB 149 has been sent to the Senate | SB 149 would establish licensing requirements for bail bond recovery agents. |

SFAA 000505

| | | Appropriations Committee. | |
|---|---|---|---|
| PA | HB 601 | 02/08/2013 HB 601 has been introduced. | HB 601 would add a crime restriction to the bail bond laws to provide that prisoners charged with the sexual abuse of a child are not eligible for bail. |
| PA | SB 1215 | 01/17/2014 SB 1215 has been introduced. | SB 1215 would specify that certain documents for bail bonds could be filed in the appropriate judicial records office as an alternative to filing such documents with the office of the clerk. |
| SC | SB 19 | 04/14/2014 SB 19 has been enacted. | SB 19 revises the existing law concerning bail bonds.  The new law outlines the factors that a court could consider in determining whether to release a defendant that would reasonably assure the defendant's appearance in court.  The new law authorizes the revocation of a defendant's bond if he or she is charged with a violent crime and he or she commits a subsequent violent crime while released on bond. |
| SC | SB 45 | 01/08/2013 SB 45 has been introduced. | SB 45 provides that a person convicted of committing or attempting to commit a general sessions offense while released on a bail bond or personal recognizance bond would have to be imprisoned for five years in addition to the punishment provided for the principal offense.  The five-year sentence would not apply in cases where the death penalty or a life sentence without parole is imposed. |
| SC | SB 827 | 01/14/2014 SB 827 has been introduced. | SB 827 would authorize a court to require a defendant to wear an approved electronic monitoring device, or be subject to monitoring by a global positioning system tracking device or other similar device.  The bill provides that the defendant may be charged for the cost of the electronic monitoring device and its operation for the duration of the time he or she is required to be electronically monitored. |
| SC | SB 831 | 01/14/2014 SB 831 has been introduced. | SB 831 would provide for electronic monitoring vendor licensing.  The bill provides that nothing in the bill's provision's "shall be construed to abrogate or impair the powers of any bond court or grant the department authority over a bail bonding company and their power to set conditions of pretrial release." |
| SC | HB 3135 | 01/08/2013 HB 3135 has been introduced. | HB 3135 would establish a new licensing law for professional bondsmen.  Current law regulates professional bondsmen and surety bondsmen under South Carolina's Insurance Code.  The bill would regulate professional bondsmen under the Department of Labor. |

SFAA 000506

| SC | HB 3137 | 01/08/2013<br>HB 3137 has been introduced. | HB 3137 would permit a bail bondsman or runner to assist another bail bondsman in the apprehension, arrest, and surrender of the defendant even if the person is not employed or appointed by the bail bondsman who is the defendant's surety. |
|----|---------|------|------|
| SC | HB 3138 | 01/08/2013<br>HB 3138 has been introduced. | HB 3138 would change the amount of continuing education required for a professional bondsman from not less than six hours to not less than three hours. |
| SC | HB 3342 | 01/23/2014<br>Vetoed | HB 3342 would have added notice requirements in connection with the issuance of a bench warrant for a defendant that failed to appear in court. |
| SC | HB 3503 | 02/06/2013<br>HB 3503 has been introduced. | HB 3503 would eliminate a law concerning jury areas for certain magistrate courts including a bail provision. With the elimination of the current system, bail provisions would be eliminated. The bill provides that jury areas would be determined by county for magistrate courts. |
| SC | HB 3619 | 02/26/2013<br>HB 3619 has been introduced. | HB 3619 would require individuals applying to for a professional bondsman, surety bondsman or a runner's license to provide the Department with his or her business, email, mailing, and residential street addresses. The bondsman or runner also would have to notify the Department within 30 days of any change in legal name or in any of these addresses. Failure to provide such notice within the required timeframe would be considered a violation subject to the penalties in existing law. |
| SC | HB 4368 | 01/14/2014<br>HB 4368 has been introduced. | HB 4368 provides that a criminal gang member charged with a felony offense would be required to post a minimum $50,000 bond if the court finds that the defendant may be released pending trial, unless the court determines the defendant is not likely to reoffend, an appropriate intensive pretrial supervision is available, and the defendant agrees to comply with the mandate of intensive pretrial supervision. |
| SC | HB 4790 | 02/26/2014<br>HB 4790 has been introduced. | HB 4790 would amend the existing law on courts that have jurisdiction in certain criminal matters. The bill would extend the authority granted to the family court in domestic violence cases to magistrates or municipal courts during non-business hours or when the family court is not in session, or the court conducting the bond hearing of a violent offender. The bill also would prohibit persons charged with criminal domestic violence from depositing cash in lieu of recognizance. |

SFAA 000507

| SC | HB 5083 | 04/09/2014 HB 5083 has been introduced. | HB 5083 would require first year bail bondsmen to be under the supervision of a bail bondsman who has been licensed for at least three years. The bill would require a first year surety bondsman to provide the department the name and license number of his supervising surety bondsman. The bill would revise the qualifications for bondsman with regard to residency and competency requirements. The bill would provide additional requirements for maintaining an office. |
|----|---------|------------------------------------------|-----|
| SC | HB 5116 | 04/10/2014 HB 5116 has been introduced. | HB 5116 would increase the minimum fee that a bail bondsman must charge for a bond from $25 to $100. The bill also would establish procedures for the use of a payment plan for paying the fee. The bill would revise the existing law on providing collateral for a bail bond. The bill would revise the release procedures for the collateral. The bill also would add a notice requirement for converting the collateral into cash in connection with bond forfeitures. |
| TN | HJR 98 | Failed | HJR 98 was a resolution that would direct the Administrative Office of the Courts to study the issues regarding the use of unsecured bail bonds and the fees charged for them. The report would have had to be submitted to the Judiciary Committee of the Senate and the Criminal Justice Committee of the House of Representatives on or before January 15, 2014. The report would have had to include information on the problems that the fees for unsecured bonds raise and recommendations for legislative solutions. |
| TN | SB 248/ HB 410 | Failed | SB 248/HB 410 would have authorized the court to consider a defendant's unlawful presence in the United States and the likelihood of his or her flight to avoid removal, deportation, exclusion or any other immigration proceeding when determining the amount of bail required. Current law already provides several factors for the basis of determining the bond amount. |
| TN | HB 309/ SB 695 | Failed | HB 309/SB 695 would have revised the existing law concerning the pre-trial release of a defendant in certain cases involving firearms. The bill would have authorized county and municipal magistrates to require a defendant to comply with certain requirements in connection with release. Among the conditions, the magistrate could have required the defendant to appear before a judge or magistrate, with no pre-trial release or prohibit a defendant from being released until the firearm, if any, used in the commission of the offense for which the defendant is charged, is found. The magistrate also could have required monitoring devices be used to track the defendant while on release. |

SFAA 000508

| | | |
|---|---|---|
| TN | SB 1952 | 04/21/2014 SB 1952 has been sent to the Governor. | SB 1952 provides that a bail bond remains in effect until the court renders the defendant's sentence, if the disposition of the case is a conviction or a plea of guilty. The new law provides that following conviction or a plea of guilty and prior to sentencing, the bond shall not be forfeited against a surety, shall not be included in the calculation of a bondsman's capacity or solvency, or negatively impact the surety. |
| TN | HB 2131/ SB 2321 and SB 2330/ HB 2360 | Failed | HB 2131/SB 2321 would have authorized counties with a population of not less than 75,100, nor more than 75,200, according to the 2010 federal census or any subsequent federal census, to impose a tax on bail bonds in the amount of $8. The bill would have outlined the procedures for the county to adopt the tax and for administering the tax if adopted.<br><br>**SB 2330/HB 2360** were similar except that it would have authorized the tax in all counties. |
| TN | SB 2167/ HB 2286 | Failed | SB 2167/HB 2286 would have prohibited an alleged victim of domestic violence from posting bail or signing any bond as surety for the appearance of the person who is charged with an act of domestic violence against the victim. |
| UT | SJR 20 | 03/21/2014 SJR 20 has been sent to the Governor. | SJR 20 directs the legislature to study bail bond agents and whether or they should be under the authority of the Department of Insurance or the Bureau of Criminal Identification. The study also would have to include a review of licensing surety collateralization when a bond is processed, when and how a penalty is paid, and other issues related to the industry. |
| UT | SB 159 | 03/31/2014 SB 159 has been enacted. | SB 159 allows the court to order that a judgment creditor be paid from funds posted as bail by a judgment debtor. |
| UT | HB 191 | Failed | HB 191 would revise the existing law concerning bail bond and bail bond agents. The bill would revise the law on qualifications as a bail agent, and makes changes regarding reporting requirements for agents and makes revisions to certain requirements concerning the operation of the bail agent's business. The bill would delete references to bail recovery agents. The bill would modify the liability of the surety for the undertaking if the bond is issued after sentencing. The bill would revise provisions addressing the exoneration of the bond. The bill also would make related changes to the court's processing of the bond. |

SFAA 000509

| UT | HB 203 | 03/29/2014 HB 203 has been enacted. | HB 203 revises the existing law on the membership of the Bail Bond Recovery Licensure Board. The new law allows the member who is required to be an owner of a bail bond surety company to be a bail enforcement agent or a bail recovery agent. Such agents may not serve on the Board under current law. |
|---|---|---|---|
| UT | HB 334 | 03/29/2014 HB 334 has been enacted. | HB 334 authorizes a bail bond apprentice to wear clothing that identifies the apprentice as a bail bond agent. |
| VA | HB 163/ HB 984/ SB 235 | Carryover to 2015 | HB 163/HB 984/SB 235 would revise the current law concerning appeal procedures for bail bonds. The bill provides that any court from which an appeal of a bail, bond, or recognizance decision is taken would be prohibited from modifying the appellate court's decision regarding the terms or amount of the bail, bond, or recognizance, except in certain circumstances. To modify the decision, the appellate court would have to remand the matter to the court from which the appeal was taken for further action or the court from which the appeal was taken would have to find, for good cause shown, that a change in circumstances has occurred warranting a modification of the terms or amount of the bail, bond, or recognizance since the time of the appellate court's decision. |
| VA | SB 501 | 03/31/2014 SB 501 has been enacted. | SB 501 revises the current law that allows a judicial officer to impose as a condition of release on bond for any felony or misdemeanor that the defendant may not have contact with a household member for 72 hours. The new law deletes the time limitation and allows the judicial officer to determine the amount of time. |
| VA | HB 1007 | 03/03/2014 HB 1007 has been enacted. | HB 1007 revises the education requirements for bail bond agents with regard to alternatives to obtaining a high school diploma. |
| VT | HB 660 | 01/22/2014 HB 660 has been introduced. | HB 660 would establish a procedure which permits the civil commitment of sexually violent predators after their release from prison. Persons subject to a civil commitment petition who are in the secure confinement of the State would not be eligible for bail, bond, house arrest, or other measures releasing the person from the physical protective custody of the State. |
| WA | HB 1098 | Failed | HB 1098 would have revised the existing law concerning bail to implement the recommendations of the bail practices work group. The bill would have made several revisions to the requirements for bail bonds and bail agents. |

SFAA 000510

| | | |
|---|---|---|
| WA | HB 2164 | 03/28/2014 HB 2164 has been enacted. | HB 2164 provides that a juvenile defendant must participate in a rehabilitation program to obtain a deferred disposition if he or she had been charged with unlawful possession of a firearm. The court may require a probation bond in connection with the release of a juvenile defendant in a deferred disposition. |
| WA | HB 2265 | Failed | HB 2265 would have prohibited bail bond agents from entering into a contract, including a general power of attorney, with a person that gives the agent full authority over the person's finances, assets, real property, or personal property. |
| WI | AB 383 | Failed | AB 383 would revise the existing law concerning cash and property bail bonds. |
| WV | SB 200/ HB 3070 | Failed | SB 200/HB 3070 would have revised the existing law's fees for bail bonds to a surcharge on bail bonds in Magistrate and Circuit Court. The funds would have been deposited into the County General Revenue Fund to offset regional jail expense. |
| WV | SB 307 | 04/14/2014 SB 307 has been enacted. | SB 307 provides for pretrial release programs. The new law outlines the requirements for the program. The new law provides that nothing in the law should be construed to prohibit a court from requiring a defendant to post a bond as a condition of pretrial release.  The new law establishes premium and collateral requirements for bail bondsmen, outlining the standards for charging premium on the bond and for recording and maintaining collateral provided by defendants. |
| WV | SB 462 | Failed | SB 462 would have revised the existing law concerning "bailpieces," which is a certificate establishing the obligation in connection with the accused in a particular case and the amount of it. The bill provided that when a bail bondsman secures a bailpiece, the surety shall be relieved of acting collateral on the case(s) for which the bailpiece was applied. |
| WV | SB 464 | Failed | SB 464 would have prohibited law-enforcement officers and members of their immediate family from serving as a bail bondsman of a person in custody because of the conflict of interest it presents. The bill provided that if such persons take this action, it would be void. |

SFAA 000511

**CONFIDENTIAL**

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Tuesday, September 3, 2013 11:26 AM |
| To: | Committee-BBAC-Open |
| Cc: | Dnabic |
| Subject: | Recent California Decision |
| Attachments: | CountyofLosAngeles.v.IFIC.08.28.2013.pdf |

Attached is a copy of the August 28 unpublished decision of the Second District Court of Appeals in *County of Los Angeles v. International Fidelity Insurance Co.* Although not really before the Court, it seems to me that the judges misunderstood the recent addition of subdivision (h) to Penal Code section 1305. Specifically, as part of the discussion of new subdivision (h) at pages 5-7 of the Opinion, they said:

Subdivision (h) is applicable "[i]n cases arising under subdivision (g)," and subdivision (g) applies to cases where "the prosecuting agency elects not to seek extradition after being informed of the location of the defendant[.]" In this case, the prosecuting agency is pursuing extradition.

I would understand the point of adding subdivision (h) to be to let the court toll the appearance period when the prosecuting agency does seek extradition but more time is needed to return the defendant. There would be no purpose to adding the new subdivision (h) if it was only going to apply if the prosecuting agency decides not to extradite.

Filed 8/28/13  County of Los Angeles v. International Fidelity Ins. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COUNTY OF LOS ANGELES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>INTERNATIONAL FIDELITY INSURANCE COMPANY,<br><br>    Defendant and Appellant. | B243060<br><br>(Los Angeles Country Super. Ct. No. OSJ001432) |

APPEAL from a judgment of the Superior Court of Los Angeles Country, Lia Martin, Judge.  Affirmed.

John M. Rorabaugh for Defendant and Appellant.

Office of the County Counsel, Ruben Baeza, Jr., and Joanne Nielsen, for Plaintiff and Respondent.

_____

In this bail bond forfeiture case, International Fidelity Insurance Company appeals from a summary judgment and an order denying its motion to set aside the judgment, discharge the forfeiture and exonerate the bond. We find proper notice of forfeiture was sent by the clerk of the court. We also conclude that, even if the recent amendment of Penal Code section 1305, subdivision (h)[1] can be applied retroactively, appellant has not shown that the prosecuting agency agreed to additional tolling of the 180-day period within which to vacate the forfeiture, as required by that provision. We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

On June 3, 2008, appellant posted a $150,000 bond for the release of criminal defendant Javier Abdin. On Friday, June 6, 2008, Abdin failed to return to the afternoon session of his preliminary hearing. The court adjourned the proceedings and ordered the bond forfeited. The minute order for the hearing states: "Bond is ordered forfeited, when received."

The minute order for June 9, 2008 shows the case was called for further proceedings on that day, but the only individuals present were the judge and the court clerk. The minute order states: "The defendant fails to appear. . . . [¶] Bail ordered forfeited." It then clarifies: "As the bail bond was received by the court this date, the court now orders the bond forfeiture of 6/6/08 into full force and effect. . . . [¶] Bail bond received and filed after appearance date of 06/06/08." Notice of the forfeiture was printed and mailed on June 9, 2008, and June 9 was listed as the date of forfeiture.

The forfeiture period was to end on December 12, 2008. The court granted the bail agent's motion to extend that period to June 8, 2009. On June 4, 2009, the bail agent filed a motion to vacate the forfeiture and reinstate and exonerate the bond on the ground that Abdin had been found in Mexico, and the district attorney did not intend to extradite

---

[1] All statutory references are to the Penal Code.

SFAA 000514

him.  Based on the People's in-court representation that they did in fact intend to seek Abdin's extradition, the court denied the motion.

On July 2, 2009, the court denied the bail agent's request to reopen her motion. The court gave the district attorney's office until September 30, 2009 to "'show progress'" on the extradition and stated it would exonerate the bond if Abdin had been extradited by then.  Nevertheless, summary judgment on the bond was entered immediately.  Appellant moved to set it aside because it was entered before the September 30 deadline the court had set for the progress report on the extradition.  A different judge heard the motion and decided to set aside the summary judgment to allow appellant to seek clarification of the court's July 2 ruling.

Appellant moved for clarification and to exonerate the bond.  At the December 2009 hearing, the People represented the extradition would take about six months.  The parties agreed to continue the matter and toll the forfeiture period until June 7, 2010.  At the June 2010 hearing, the People advised that Abdin had been detained by the bail agent in Mexico.  The procedure to extradite him was governed by international law.  It required obtaining various affidavits and sending an application to the Department of Justice and the Department of State for submission to the Mexican Embassy.  The People had only managed to obtain an affidavit from the prosecutor.  Appellant's attorney urged the court to conclude the delay indicated the district attorney had no intent to extradite Abdin and to either exonerate the bond or toll the forfeiture period for another six months. Troubled by the delay, the court said, "'Enough is enough,'" and proceeded to set aside the forfeiture, reinstate the bond, and exonerate it.

The People appealed.  In *People v. International Fidelity Insurance Company*, (Nov. 16, 2011, No. B225994 [nonpub. opn.]) we held the exoneration was inconsistent with section 1305, subdivision (g), under which the bond could be exonerated only if "Abdin was returned to the court or the prosecutor elected not to extradite. Neither of those conditions was met."  (See *People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, 1082.)  We reversed the order setting aside the forfeiture, reinstating the bond, and exonerating it.  A remittitur issued in February 2012.

3

Summary judgment was entered against appellant in April 2012.  Appellant moved to set it aside on the ground that the court had lost jurisdiction over the bond when it failed to mail notice of the June 6, 2008 forfeiture.  On July 19, 2012, appellant filed a request for judicial notice of Senate Bill 989, which had just been signed into law.  The bill added section 1305, subdivision (h), which allowed the court to toll the forfeiture period based on an agreement between the bond agent and the prosecuting agency.

At the hearing the following day, the court denied appellant's motion.  It found that res judicata principles probably applied.  In the alternative, it found the court had not lost jurisdiction over the bond and the new section 1305, subdivision (h) did not change the result.  This timely appeal followed.

## DISCUSSION

### I

Appellant first argues the court lost jurisdiction over the bond because the clerk failed to mail notice of the June 6, 2008 forfeiture.[2]  As we explain, we find the notice fully satisfied the strict requirements of section 1305, subdivision (b).

Defendant failed to appear for the afternoon session of his arraignment on Friday, June 6, 2008.  The court noted his absence and stated:  "[T]hese proceedings are adjourned.  The bail is forfeited.  Bench warrant is issued.  No bail on the bench warrant."  Apparently the bond had not yet been received by the court, because the minute order reflects a forfeiture order conditioned on receipt of the bond:  "The bond is ordered forfeited, *when received.*"  (Italics added.)  The minutes from the next court day, Monday, June 9 state:  "Bail ordered forfeited.  As the bail bond was received by the court this date, the court *now* orders the bond forfeiture of 6/6/08 into full force and effect.  The bench warrant is recalled and reissued after entry of bail bond into the system."  (Italics added.)

---

[2] Although we believe this issue could be resolved by application of res judicata, we find it more expedient to resolve it on the merits.

4

Reading these court minutes together, it is evident that the court-ordered forfeiture became effective upon receipt of the bail bond on June 9, 2008. The clerk mailed notice of forfeiture that same day. The notice accurately specifies June 9, 2008 as the date of forfeiture. This notice complies with the requirements of section 1305, subdivision (b).

*County of Los Angeles v. Granite State Ins. Co.* (2004) 121 Cal.App.4th 1, on which appellant relies, is distinguishable. In that case, on February 13, 2001, when the defendant failed to appear, the court ordered bail forfeited. Despite that order, the clerk prepared a minute order declaring that the court had found "good cause not to forfeit bail" and had ordered the warrant held to March 6, 2001. When the defendant failed to appear on March 6, the court noted it had held the bench warrant until that date, again issued a bench warrant, and "forfeited" bail. The clerk sent notice of bail forfeiture giving the forfeiture date as March 6, and making no reference to the February 13 declaration of forfeiture. On appeal, the court concluded that the trial court "unequivocally forfeited bail on February 13 (in spite of the contradictory minute order). We also conclude that the March 9 notice, which specifically limited itself to the March 6 'forfeiture,' failed to adequately advise the surety of the February 13 forfeiture." (121 Cal.App.4th at p. 3.)

In contrast, the June 9 minute order in our case specifically references the June 6 order of forfeiture and notes that the sole condition precluding completion of the forfeiture, receipt of the bond, had been met. There was only one forfeiture, which was "in full force and effect" as of June 9, 2001, when the bond was received. The notice properly reflects that.

## II

Appellant also asks that we apply the new subdivision (h) of section 1305, added in 2012 (Stats. 2012, ch. 129, § 1 (SB 989).)

Section 1305 generally provides that after bond is forfeited, if a defendant appears within 180 days of the date of the forfeiture, the court shall order the forfeiture vacated and the bond exonerated. Subdivision (g) addresses the situation where a defendant is beyond the jurisdiction of the state: "In all cases of forfeiture where a defendant is not in

SFAA 000517

custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."  In simple terms, this subdivision requires the court to vacate the forfeiture and exonerate the bond where the prosecuting agency decides not to seek extradition of a defendant who is beyond the jurisdiction of the state.

New subdivision (h) provides:  "In cases arising under subdivision (g), if the bail agent and the prosecuting agency agree that additional time is needed to return the defendant to the jurisdiction of the court, and the prosecuting agency agrees to the tolling of the 180-day period, the court may, on the basis of the agreement, toll the 180-day period within which to vacate the forfeiture.  The court may order tolling for up to the length of time agreed upon by the parties."

Appellant argues that the amendment should apply to this case under *People v. Durbin* (1966) 64 Cal.2d 474, which holds that a statute involving the "elimination of the power of forfeiture" or the "repeal of a civil penalty or forforfeiture" applies retroactively if the judgment is not final.  (*Id*. at p. 478.)  We need not decide that question in this case because there is no factual basis for applying the amended statute.

Subdivision (h) is applicable "[i]n cases arising under subdivision (g)," and subdivision (g) applies to cases where "the prosecuting agency elects not to seek extradition after being informed of the location of the defendant[.]"  In this case, the prosecuting agency is pursuing extradition.

In addition, subdivision (h) authorizes the court to toll the 180-day period if the bail agent and the prosecuting agency agree to the tolling.  Appellant presented no evidence of such agreement to the trial court, nor does it do so on appeal.  As the trial

SFAA 000518

court observed, "I don't find for our purposes of today that Penal Code section 1305, subdivision (h), would change anything."

## DISPOSITION

The judgment is affirmed.  Respondent to have its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.

7

Orgovan, Joseph

| | |
|---|---|
| From: | Wanke, Daniel |
| Sent: | Monday, April 22, 2013 4:36 PM |
| To: | Committee-BBAC-Open |
| Cc: | DNABIC@aol.com |
| Subject: | Bail Bond Legislation |
| Attachments: | Bail Bond Legislative Report--April.pdf |

Attached is our latest report on legislation for 2013. If you have any questions, please do not hesitate to contact us. Thank you.

Daniel Wanke

Daniel Wanke
Analyst - Government Affairs and Regulatory Affairs
The Surety & Fidelity Association of America
(202) 778-3631 - Direct
(202) 463-0606 - Fax
www.surety.org



# THE SURETY & FIDELITY ASSOCIATION OF AMERICA

## MEMORANDUM

**TO:**    **Bail Bond Advisory Committee**

**FROM:**    **Daniel Wanke**

**RE:**    **Bail Bond Legislation**

**DATE:**    **April 15, 2013**

**There are 38 states and the District of Columbia in session. In all states except New Jersey and Virginia, this is the first year of a two-year session. The following report compiles and summarizes bail bond legislation that SFAA is tracking for 2013.**

| State | Bill(s) | Recent History | SFAA Summary |
|-------|---------|----------------|--------------|
| AL | HB 143 | 03/20/2013 HB 143 is pending the third reading in the House.<br><br>04/10/2013 SB 361 has passed the Senate. | HB 143/SB 361 would revise the existing law pertaining to court fees for bail bonds. The bill provides that the fee must be collected in 30 days from the execution of the bail bond. Current law allows for two business days. The bill would authorize a $500 maximum contempt of court fine for failing to pay the fee. The bill would revise the law determining the fee based on multiple charges arising out of one incident to define one incident as acts that took place on the same date and at the same location and time. The bill provides for the suspension of the license until the fee is paid. The bill would repeal the existing sunset date for the bail bond fee. |
| AL | HB 319 | 03/12/2013 SB 319 has been introduced. | SB 319 would establish education and continuing education requirements for professional bail bondsmen. The bill provides that failure to comply with the proposed education requirements would result in a suspension of the authority to act as a bondsman. |

SFAA 000521

| AL | HB 346 | 02/26/2013 HB 346 has been introduced. | HB 346 would require a professional bail bond company to obtain recertification biannually instead of annually as provided under current law.  The bill also would eliminate a $25,000 surety bond that may be posted in connection with its authorization to provide bonds.  Instead, the bill would require an escrow agreement with a minimum amount of $1 million.  The bill establishes a maximum amount of an appearance bond that a company could post per defendant at the amount of the escrow agreement filed with the court and maximum aggregate liability at three times the escrow agreement. The bill would require the company to obtain from the circuit clerk a certified list of its outstanding appearance bonds and their amounts and a copy of the original escrow agreement in connection with recertification.  The bill would require an affidavit certifying proof of all the documents required for recertification.  The bill also would require employees of the company to be fingerprinted to check their criminal record. The bill prohibits any person charged with certain crimes from having a financial interest in the company.  The bill also would establish minimum education and exam requirements for the company's employees, and would require such information to be included in the biannual report.  The bill would require a $500 fee for each recertification.  The bill provides for civil penalties in connection with providing false information for recertification. |
| AL | HB 347 | 02/26/2013 HB 347 has been introduced. | HB 347 would authorize a circuit court to revoke or suspend the authority of a professional surety company or professional bail company if it is determined to the reasonable satisfaction of the judge that any person, including an employee, agent, or other person with a financial interest in a professional surety company or a professional bail company in any jurisdiction in the State, committed certain offenses outlined in the bill.  The bill also would require a professional bail company to provide written notification to the presiding judge and the district attorney's office in the counties where the company is certified, in writing, if any person, including an employee, agent, or other person with a financial interest in the company is arrested for a felony or a crime involving moral turpitude in any state within 72 hours of the arrest.  Failure to provide such notification would result in an automatic suspension of the bail company's certification. |

SFAA 000522

| State | Bill | Status | Description |
|---|---|---|---|
| AL | HB 356 | 02/28/2013 HB 356 has been introduced. | HB 356 would establish education and continuing education requirements for professional bail bondsmen. The bill provides that failure to comply with the proposed education requirements would result in a suspension of the authority to act as a bondsman. HB 356 is identical to HB 319. |
| AR | HB 1829 | 04/15/2013 HB 1829 has been sent to the Governor. | HB 1829 would revise certain existing bail bond fee collection procedures to provide that the sheriff, keeper of a jail, or other persons permitted by law to take bonds to collect such fees in addition to professional agents. The fees are payable to and deposited with the Bail Bondsman Board Fund rather than the State Insurance Department. |
| AR | HB 1841 | 04/15/2013 HB 1841 has been sent to the Governor. | HB 1841 would address the fees charged in connection with bail bonds. The bill would require each professional bail bond company, sheriff, keeper of the jail, or person authorized to take bail to charge and collect an additional $4 fee per bail bond. The fees would be for the Bail Bond Recovery Fund, which the bill would create for use for professional bail bond forfeitures. The bill also would require each professional bail bond company, sheriff, keeper of the jail, or person authorized to take bail to charge a $6 fee per bail bond for the Arkansas Counties Alcohol and Drug Abuse and Crime Prevention Program Fund. The bill also would revise certain existing bail bond fees to provide that the sheriff or keeper of a jail shall collect them in addition to professional agents. |
| AZ | SCR 1001 | 01/17/2013 SCR 1001 is to the second reading in the Senate. | Senate Concurrent Resolution 1001 would eliminate the death penalty in Arizona. The resolution also would delete capital offenses from the types of crimes ineligible for bail. |
| AZ | HB 2459 | 04/09/2013 HB 2459 is pending review in the majority and minority caucuses of the Senate following passage from committee. The bill passed | HB 2459 would revise the current law concerning justices of the peace. The bill would eliminate a provision granting the justice of the peace the authority to designate a deputy to set the amount of bail under the bail schedule and collect it or accept bail bonds for and on behalf of the court when the court is not open. The bill would outline the requirements for the justice of the peace regarding the setting of a bail schedule and the collection of bail. The law addresses situations when a justice of the peace may perform duties for another precinct other than his or her own precinct. The law permits the justice of the peace to perform certain duties for that other precinct without being present, with certain exceptions. One of those exceptions was presiding over pretrial |

SFAA 000523

| | | | |
|---|---|---|---|
| AZ | HB 2462 | the House on 03/04/2013. 03/28/2013 HB 2462 has been enacted. | proceedings. The bill would eliminate this exception. HB 2462 adds "[soliciting] bail bond business inside a court building or immediately around or near the entrance of a county or city jail" to list of what is considered loitering under the law. For the purposes of loitering, the bill would define "solicit" as "handing out business cards or any printed material or displaying any electronic devices related to bail bonds, verbally asking a person if the person needs a bail bond and recruiting another person to solicit bail bond business." The offense does not extend to the distribution of the list of persons authorized to provide bail bonds by the sheriff to persons charged with a bailable offense. Further, the new law requires the list of approved bail agents to be updated monthly. Prior law required annual updates. Further, the list must be circulated monthly instead of quarterly as provided under existing law. The new law authorizes the sheriff or jail keeper to accept secured appearance bonds from an employee of a bail bond agent if the employee has proper identification. The new law provides that if bail is authorized by the court, the sheriff or jail keeper must accept secured appearance bonds, money orders, cashier's checks or cash directly for releasing person in his or her custody. The sheriff or jail keeper must be open 24 hours a day, every day, including holidays to accept a secured appearance bond. |
| AZ | HB 2553 | 04/02/2013 HB 2553 is pending review by the majority and minority caucus of the Senate. The bill passed the House on 03/04/2013. | HB 2553 would require a signed contract and fee agreement before the agent posts the bond. The bill would add fees for recovering the defendant and renewal fees to the categories for which the bail agent can charge. The bill also provides that bail bond agent would not be required to refund premiums or fees associated with the bail transaction if the surety places the defendant back in custody for violations of the terms and conditions of release set by the court. The bill would change the time period a bail agent is required to maintain records of transactions from three years from the completion of the transaction to one year from exoneration of the bond. The bill would strike a provision requiring the bail bond agent to pay the costs incurred for an examination of his or her records by the State. The bill also strikes a provision pertaining to the residency of the bail bond agent. |

SFAA 000524

| CA | AB 773 | 03/04/2013 AB 773 has been introduced. | AB 773 would revise the bail agent licensing law to permit a limited liability company (LLC) to be licensed as a bail agency. The bill would exempt a corporation or LLC that is an admitted surety insurer or is a subsidiary of an admitted surety insurer from a requirement that 100% of the shares of the corporation or membership interest in the LLC be held by licensed bail agents and from a requirement that members of the LLC and all shareholders, officers, and directors of the corporation be licensed as bail agents. Sale of membership or other interest in an LLC licensed as a bail agency would require approval from the Department of Insurance as provided under existing law for corporations selling or transferring stock or other interests. |
| --- | --- | --- | --- |
| CA | AB 1118 | 04/11/2013 AB 1118 is pending in the Assembly Committee on Public Safety. | AB 1118 would revise the existing law on the countywide bail schedules that courts currently are required to establish by law.  The bill provides that a court that adopts the countywide bail and penalty schedule shall consider the statewide bail schedule prepared according to the proposed procedures.  The bill would direct the Judicial Council to prepare, adopt and maintain a statewide bail schedule for all bailable felony offenses and for all misdemeanor and infraction offenses, except for Vehicle Code infractions.  The bill would outline the procedures for how to develop the schedule, which would be based on the seriousness of the offense, and additional factors set forth in the law pertaining to certain crimes.  The bill would require a court to submit a report on how its bail schedule differs from the statewide bail schedule if it adopts a countywide schedule. |
| CA | AB 1293 | 04/02/2013 AB 1293 is pending in the Assembly Judiciary Committee. | AB 1293 would authorize the court to require payment of a $65 administrative fee for the reinstatement of a bail bond to cover the costs of the process.  As introduced, the bill did not impact bail bonds, but was substituted to include this provision. |
| CO | HB 1156 | 04/05/2013 HB 1156 passed the House. | HB 1156 would establish a pre-trial diversion program in which the prosecution of a defendant would be suspended for a period of up to two years for the purposes of rehabilitating the defendant.  Existing law already provides for the exoneration of a bail bond for a deferred prosecution and a deferred judgment.  The bill would provide for the exoneration of the bond for a defendant participating in a diversion program.  The bill has been amended to exclude persons charged with domestic violence from eligibility for the program. |

SFAA 000525

| CO | HB 1236 | 03/21/2013 HB 1236 passed the House. | HB 1236 would rewrite the current law for bail bonds to provide for the use of evidence-based decisions when setting bail, as well as to provide for decisions based on factors pertaining to individual defendants. The bill would direct the court to use such practices through the use of an empirically developed risk assessment instrument that classifies a defendant based on the predicted level of risk of pretrial failure. Of note, the bill also rewrites the definition of bail. Current law defines bail as the "amount of money set by the court which is required to be obligated by a bond for the release of a person in custody to assure that he will appear before the court in which his appearance is required or that he will comply with other conditions set forth in a bond."

As amended, the bill would define bail as a "security, which may include a bond with or without monetary conditions, required by a court for the release of a person in custody set to provide reasonable assurance of public safety and court appearance." The amended bill also would define bond as a "bail bond which is an undertaking, with or without sureties or security, entered into by a person in custody by which he binds himself to comply with the conditions of the undertaking and in default of such compliance to pay the amount of bail or other sum fixed, if any, in the bond." The amendment removed a definition for evidence-based decision-making. The amended bill also provides for further considerations in setting the amount of a bail bond with regard to the factors that must be considered, as well as the use of any bail schedules. |
| CO | HB 1242 | 03/26/201 HB 1242 is to the second reading in the House following passage from committee. | HB 1242 would repeal the current law, which states that a person who commits the offense of violation of bail bond conditions is not eligible for probation or suspended sentence and is subject to mandatory imprisonment for a prescribed term. |
| CO | HB 1264/ HB 1270 | 03/26/2013 HB 1264 and HB 1270 have been been held in committee. | HB 1264/HB 1270 would repeal the death penalty. With regard to capital offenses, the bill would revise them to become a class 1 felony. The bill would make conforming amendments to the existing law concerning bailable offenses and bail after a conviction. |

SFAA 000526

| CT | SB 825 | 03/18/2013 SB 825 has been reported from the Legislative Commissioner's Office. | SB 825 would require that a professional bondsman be at least 21 years old and has obtained a high school diploma (or equivalent). The bill adds an additional basis on which a license can be suspended – violation of a restraining or protective order. The bill also would require the Commissioner of Emergency Services and Public Protection to approve any badge that a bail enforcement agent could wear, carry, or display. The bill also would revise the firearms safety requirements for bail bondsmen, bail agents, and bail enforcement agents to require an annual safety refresher course. The bill also would establish procedures for becoming a firearms safety instructor and for starting a school for such courses in the criminal justice system. |
| CT | SB 871 | 04/17/2013 SB 871 has been filed with the Legislative Commissioner's Office. | SB 871 would permit probation officers to conduct interviews and set the amount of bail in the course of serving arrest warrants for violation of probation under the same terms that a police officer can when making an arrest. |
| CT | SB 825 | 04/19/2013 SB 825 is on the House calendar. | SB 825 would establish age and education requirements for licensure as a professional bondsmen or a bail enforcement agent. The bill also would require the Commissioner of Emergency Services and Public Protection to approve any badge that a bail enforcement agent could wear, carry, or display. The bill also would revise the firearms safety requirements for bail bondsmen, bail agents, and bail enforcement agents to require an annual safety refresher course. The bill also would establish procedures for becoming a firearms safety instructor and for starting a school for such courses in the criminal justice system. |
| CT | SB 746 | 02/04/2013 SB 746 is pending in committee in the House. | SB 746 would require the court to vacate an order to forfeit a bail bond and to release a professional bondsman, surety bail bond agent and insurer from the bail bond, if the principal on the bail bond is detained or incarcerated in another state, territory or country; the State's attorney seeks extradition of the principal; and the bondsman, and the agent or insurer agrees to reimburse the extradition costs. |

SFAA 000527

| | | | |
|---|---|---|---|
| CT | SB 1122 | 04/12/2013 SB 1122 passed the Joint Committee on Judiciary. | The law provides three conditions under which a court shall vacate an order forfeiting a bail bond and release a professional bondsman, a surety bail bond agent, and the insurer. The bill amends the third condition to include cases when the state's attorney prosecuting the case seeks extradition of the principal, and the professional bondsman, surety bail bond agent or insurer provides proof to the court that they have paid the costs that would be incurred in extraditing the principal to the State. |
| CT | HB 5633 | 02/08/2013 HB 5633 is pending in committee in the House. | HB 5633 would allow a surety bail bond agent to request the Insurance Commissioner to maintain the agent's license in an inactive status for up to two years after its expiration date and establish procedures for the reinstatement of the license. The bill would exempt surety bail bond agents from the examination and examination fee requirement if the agent demonstrates to the Insurance Commissioner that he or she has not executed any bail bonds in a given year. |
| CT | HB 5116 | 01/09/2013 HB 5116 has been introduced. | HB 5116 is a placeholder and does not provide the actual provisions of the amendments at this time. The bill provides a general description of the intent of the bill to amend the existing law to increase the oversight authority of the Insurance Department and the Department of Emergency Services and Public Protection to regulate surety bail bond agents and professional bondsmen. The bill's description also notes that any bond set by a court as a condition of release for a person charged with a family violence offense would be paid in full. Promissory notes would not be accepted as an assurance in this instance. |
| CT | HB 6689 | 03/28/2013 HB 6689 has been introduced. | HB 6689 would release a surety from a bail bond in a criminal case if the defendant absconds, and when the bond was executed, the State's attorney prosecuting the case was in possession of information about known aliases used by the defendant or information that demonstrated an increased risk that the defendant will abscond or if there was any administrative error in processing the defendant's arrest that materially affected his or her release or the bond amount.<br><br>The bill would authorize the court to extend the stay of execution of a bond forfeiture if a defendant failed to appear.<br><br>The bill provides that if a defendant whose bond has been forfeited returns to court voluntarily more than five business days after the bond was ordered forfeited, the court would have to vacate any re-arrest warrant or capias issued for the defendant. The |

SFAA 000528

| State | Bill | Status | Description |
|---|---|---|---|
| | | | bond would be automatically terminated, and the surety would be released. Among the conditions by which a court would vacate a bond forfeiture, the bill would add when the defendant is taken into custody by a federal agency, or if he or she has been removed by U.S. Immigration and Customs Enforcement. The bill would strike a provision conditioning this order on the state's attorney prosecuting the case declining to seek extradition of the defendant. The bill would repeal certain provisions with regard to promissory notes given in connection with premium financing agreements for the bail bond. |
| DE | SB 36 | 03/28/2013 SB 36 has been introduced. | SB 36 would amend Delaware's constitution regarding the right to bail. Currently, the law provides that all prisoners are bailable by sufficient sureties, except for capital offenses "when the proof is positive or the presumption great." The bill provides that bail would not be granted to prisoners charged with certain felony offenses or in circumstances when "no condition or combination of conditions other than detention will reasonably assure the safety of any person or the community." |
| DE | HB 39 | 03/28/2013 HB 39 passed the House. | HB 39 would revise certain provisions pertaining to bail bonds. The bill would establish provisions for providing cash bail and would set forth procedures for determining the sufficiency of the source of the cash bail. Further, the bill would require the court to set conditions on the bail that the defendant will return to the court at any time upon notice and submit to the orders and processes of the court and prohibit the defendant from committing additional criminal offenses. The court also would have to consider the safety of the victim and the community, as well as the defendant's criminal history in addition to other existing required factors when setting the amount and the type of bail. The bill also would create a presumption in favor of cash bail whenever a person on probation or pre-trial release is alleged to have committed a violent felony. The bill also would revise procedures on the revocation of bail. Under current law, if a defendant's bail is revoked, he or she is held without bail until the charges are dismissed or withdrawn, the defendant is found not guilty, or a convicted person is sentenced. The bill provides instead that the bail for the original charges could be doubled. |

SFAA 000529

| | | |
|---|---|---|
| FL | 04/12/2013 HB 311 passed the House. <br><br> 04/11/2013 SB 288 is pending in the Senate Appropriations Committee. | HB 311/SB 288 would require the withholding of costs for prosecution and for representation from a cash bond not posted by a bail bond agent. |
| FL | 04/15/2013 SB 1114 passed the Senate Judiciary Committee. <br><br> 04/12/2013 HB 7031 has been placed on the House calendar. | SB 1114/HB 7031 would add a new restriction to the current law for determining whether a defendant may be granted bail. The bill provides that the court, in determining whether the release a defendant and under what conditions of bail, must consider whether the defendant is required to register as a sexual offender or predator. Further such defendants would be ineligible for bail or a surety bond until the first appearance on the case to ensure the participation of the prosecutor and the protection of the public. |
| FL | 04/04/2013 HB 7017 has been sent to the Governor. | HB 7017 strikes a provision that if no date or an impossible date is provided in the bond for the defendant's appearance, the defendant must appear on the first day of the next term of court that will commence more than three days after the undertaking is given. <br><br> HB 7017 was substituted for an identical Senate bill, SB 746. |
| GA | 04/01/2013 HB 146 has been sent to the Governor. | HB 146 would revise the existing procedures concerning "good behavior bonds" required of certain persons who are deemed to be dangerous and the current procedures for arrest warrants for such persons. The bill also would revise the term of the bond. Current law requires the bond to secure a person's behavior until the next term of the superior court of the county or for six months, whichever is greater. The bill would provide that the bond must be in place for six months. The law permits the bond to be extended for a period of 60 days. Instead, the bill would permit the bond term to be extended for six months. |

SFAA 000530

| | | | |
|---|---|---|---|
| GA | SB 225 | 04/08/2013 SB 225 has been sent to the Governor. | SB 225 would reduce from 15 days to ten days the period given to place a detainer or hold on a defendant to prevent forfeiture on the bond in certain cases where a defendant is prevented from appearing in court. Following this period, the surety is relieved of the liability for the bond. The bill also would clarify that the period begins from the date of the surety's request. The bill provides that the bond could not be forfeited due to the defendant undergoing treatment. The bill would strike provisions pertaining to the remission of the bond in cases where the surety locates the defendant. Remission is available if the defendant is "produced or otherwise appears before the court that has jurisdiction of the bond." The bill provides that in cases where the defendant is outside of the State and the court does not seek extradition, 5% of the bond could be remitted to satisfy the judgment. |
| HI | SB 873/ SB 415/ HB 234 | 04/15/2013 SB 873 has been sent to a conference committee following passage from the House. 02/08/2013 HB 234 passed the second reading in the House. | SB 873 provides that all money deposited in any criminal proceeding before any court for bail or a bail bond that has not been declared forfeited would have to be applied toward payment of any restitution, fines, or fees ordered by the court in the case for the restitution of the victim or victims of the crime. SB 415 has not moved since it was introduced. |
| IA | HB 112 | 04/08/2013 HB 112 passed the Senate. | HB 112 would extend the time period for the surety to recover the defendant and be relieved of the forfeiture from 60 to 90 days. |
| ID | SB 1016 | 03/07/2013 SB 1016 has been enacted. | SB 1016 strikes a provision from the bail agent licensing laws that provides that filing a bail agent's license with the clerk of the district court is deemed proof that the agent is licensed under the law. The new law becomes effective July 1, 2013. |

SFAA 000531

| State | Bill | Status | Description |
|---|---|---|---|
| ID | SB 1017 | 03/07/2013 SB 1017 has been enacted. | SB 1017 repeals the existing law pertaining to proceedings in the magistrate's division of the district court for bail and criminal appeals, including provisions concerning bail during the time of the appeal, undertakings for the appearance of witnesses, and judgments against the surety for court costs in a case where a defendant is convicted. The new law becomes effective on July 1, 2013. |
| IL | HB 130 | 04/19/2013 HB 130 is to the third reading in the House. | HB 130 provides that when a first-time offender is charged with a non-violent offense, the court shall order him or her released on his or her own recognizance. A cash bond could be required if the court determines it is necessary for securing the defendant's appearance. The release could be conditioned on requiring monitoring through electronic surveillance as provided under current law. |
| IL | HB 1243 | 03/20/2013 HB 1243 is to the second reading in the House. | HB 1243 would enact the Illinois Parentage Act of 2013. The bill provides that when the obligor of a temporary order for child support in a parentage determination case or an obligor of a support order in a paternity case is arrested for failing to report new employment as outlined in the bill, the bond would have to be in the amount of the unpaid support that should have been paid during the period of unreported employment. |
| IN | SB 6 | 03/28/2013 SB 6 has been sent to a conference committee following passage from the House. | SB 6 would repeal the law concerning the enforcement of a support order following the determination of paternity. Current law authorizes the Commissioner of Insurance to suspend, refuse to renew, or not issue a new license for a bail agent, recovery agent, insurance producer, and surplus lines producers if a person subject to a support order commits an intentional violation of the order's requirements. |
| IN | HB 1484 | 01/28/2013 HB 1484 has not moved since it was introduced. | HB 1484 would permit a defendant to combine a deposit of cash or securities with a secured bond so long as the combined amount equals 100% of the total amount of the bail. |
| IN | SB 55 | 01/07/2013 SB 55 has not moved since it was introduced. | SB 55 would eliminate the use of grand juries in Indiana. The bill would delete all references indictments by a grand jury in existing law, including the provisions pertaining to bail bond requirements as outlined at Indiana Code §35-33-8-3.2. |

SFAA 000532

| IN | 01/10/2013 SB 425 has been introduced. | SB 425 would revise the term of bail bonds as outlined in current law, which provides that an undertaking written after August 31, 1985, shall expire 36 months after it is posted for the release of a defendant from custody. This does not apply to cases in which a bond has been declared to be forfeited and the surety and bail agent have been notified according to the law's requirements. The bill would provide that the bond would not expire if the defendant remained a fugitive after the 36-month period and it would delete the 1985 date so that the law applies to any bond. The bill also would revise the current recognizance form to reduce from 365 days to 180 days the period in which the surety has to produce the defendant and pay all required costs and late surrender fees following notice being sent to the surety. Under current law, after the period expires, the court shall declare the bond forfeited. The bill would re-write the incremental schedule under which the late fees are assessed over the course of 365 days. Instead, the bill provides that if the surety does not comply within 180 days, the late fee would be assessed against the bail agent or the surety in an amount equal to 80% of the face value of the bond. In this case, the bond would be declared forfeited and judgment entered in an amount equal to 20% of the face value of the bond without pleadings and without change of judge or change of venue. The bill also provides for the use of electronic mail for sending notices. Of note, a portion of the fees collected from forfeited bonds would be placed in a fund for an electronic monitoring program that the bill would create. |
| IN | 01/15/2013 SB 581 has not moved since it was introduced. | SB 581 would repeal the existing laws in Indiana concerning penalties on unauthorized aliens and E-Verify, including the bail requirements applicable to unauthorized foreign nationals. Current law requires a cash bond, surety bond, or real estate as a form of bail. The law also prohibits the forfeiture of the bond when such a defendant is taken into custody or deported by a federal agency, or if the defendant is arrested for a different crime. If the bill is enacted, these provisions would be eliminated entirely. |
| KS | 04/08/2013 SB 16 has been sent to the Governor. | SB 16 would establish a law addressing the crimes of racketeering and corrupt organizations in Kansas. The bill provides that for persons arrested and charged with such crimes, bail would have to be for at least $50,000. If the court determined that the defendant was not likely to re-offend, the bill would permit the court to direct the defendant to participate in an intensive pretrial supervision program, if one is available, and if the defendant agrees to comply with its requirements. |

SFAA 000533

| | | |
|---|---|---|
| KS | SB 26 | 04/01/2013 SB 26 passed the House Insurance Committee, but has been stricken from the House Calendar. | SB 26 would add bail bond insurance to the types of insurance for which an insurance agent may receive a license. The bill lists bail bond insurance as a "limited line insurance that provides surety for a monetary guarantee that an individual released from jail will be present in court at an appointed time." Of note, the bill would exempt licensed insurance agents who only have a bail bond qualification from the existing law's requirement to obtain continuing education credits. |
| KS | SB 140 | 02/07/2013 SB 140 has been introduced. | SB 140 would revise the current law pertaining to appearance bonds with respect to the defendant's immigration status. The bill provides that persons charged with a crime that are not a citizen or national of the United States must have their immigration status shall be verified with the federal government. For determining whether to grant or issue appearance bonds, if the person is verified by the federal government as an alien unlawfully present in the United States, there would be a rebuttable presumption that the person is at risk of flight. |
| KS | HB 2256 | 02/08/2013 HB 2256 was introduced. | HB 2256 provides that regardless of the method securing the bond, it would have to be the same amount, and a deposit of cash in less than the full amount of the bond shall not be permitted. The bill would delete language permitting a responsible individual residing within the State to provide a bond. Instead, the bill would require an appearance bond to be provided by a "sufficient, solvent surety." Current law provides that if the forfeiture of a bond has become final, the court shall direct the application of the funds or that an action to be instituted for the collection from the sureties on the bond or from the accused person. Instead, the bill provides that where the bond forfeiture has not been set aside, the court shall direct an action to be instituted for collection of the funds from the obligors on the bond. |
| KS | HB 2070 | 03/01/2013 HB 2070 passed the House. | HB 2070 amends the conditions on which defendants may be released on their own recognizance. The bill also provides that an out-of-state surety or bounty hunter intending to apprehend any person in Kansas must enter into a contract with an individual authorized by a Kansas court to act as a surety or surety agent before attempting the apprehension. Any prior felony conviction would disqualify a person from being a surety or agent of the surety in Kansas. (Current law terminates the disqualification after ten years.) |

SFAA 000534

| | | |
|---|---|---|
| KY | 03/07/2013<br>HB 362 is to the second reading in the Senate. The bill passed the House on 02/26/2013. | HB 362 would rewrite the current military justice laws in Kentucky. The bill would eliminate certain procedures pertaining to the arrest of persons charged with crimes under this law, including provisions allowing the defendant to be admitted to bail. |
| KY | 01/10/2013<br>SB 35 has not moved since it was introduced. | SB 35 would require defendants who are eligible but do not execute a bond under the existing law's uniform schedule to appear before a judge within 12 hours in order to be considered for release on personal recognizance. |
| KY<br>SB 45/<br>HB 48 | 02/05/2013<br>SB 45 is pending in the Senate Judiciary Committee.<br><br>01/08/2013<br>HB 48 has not moved since it was introduced. | SB 45/HB 48 would abolish the death penalty in Kentucky. The bill would instead provide for life imprisonment without parole for those inmates currently sentenced to death. The bill also would eliminate the term "capital offense." Instead, the bill would provide for a Class A felony. The bill would amend the current criminal code to reflect these changes with respect to sentencing requirements. |
| LA | 04/08/2013<br>SB 179 has been introduced. | SB 179 would rewrite the law concerning bail bonds under Louisiana's criminal procedure law in its entirety. The bill would revise certain definitions, including the definition of bail which currently is defined as the security given by a person to assure his appearance before the proper court whenever required. The bill provides that bail would be defined as an order of the court establishing the amount, type, and conditions of bond for the release of the defendant from jail. The bill also removes the current definition of surety under the criminal procedure law. The bill would define bail bond as a contract under private signature between the defendant and his sureties as solidary obligors and the State as obligee.<br><br>Under the bill, a defendant is no longer automatically entitled to furnish an unsecured personal surety bond or recognizance bond, among the different types of bail (cash, |

SFAA 000535

commercial surety bond, secured personal bond, unsecured personal bond). An unsecured personal surety bond or recognizance bond may not be furnished in connection with certain types of offenses, and may be furnished at the discretion of the court for other offenses. The bill provides that the security for a secured personal bond must be a promissory note.

The bill would prohibit certain court officials from acting as a personal surety. The bill provides that defects in the sufficiency or qualifications of the surety would not be a defense to an action to forfeit or revoke a bail bond or actions to enforce a judgment. The bill would repeal a provision that provides that when bail has been given in compliance with the law, the money, check, bond, or money order is not subject to garnishment, attachment, or seizure under any legal process. Further, the defendant could specify a combination of the types of bonds permitted for a single charge. The bill would provide for the use of bail schedules as to the type and form of bail, which current law prohibits. The bill would revise the procedures for bail forfeitures and the required notices and hearing procedures, and the bill would permit the substitution of alternative forms of security if a bail bond is forfeited. The bill would revise the procedures for a surety to surrender a defendant.

The bill provides that the obligation of the bond would run from the execution of the bond contract. The obligation would terminate by written order of conviction, acquittal, modification of bail, or revocation of the bond. The bill also provides that the obligation terminates upon either dismissal of the charge by the prosecution, unless the defendant is charged with the same crime or a similar crime within three days of the dismissal, or surrender of the defendant. The bill would eliminate procedures for bail hearings for certain sex offenders. The bill also would repeal a provision that defendant is remanded to jail to await sentence unless he or she is allowed to remain free on a bail bond posted prior to or after conviction that meets the law's requirements.

The bill deletes the provision that permitted the substitution of security at any time before the breach of bail. The bill deletes the provision by which a convicted defendant could remain free and await sentencing based on the bond furnished pre-

SFAA 000536

| | | | trial. |
| | | | |
| | | | The bill amends provisions regarding the conditions of bail and the factors to be considered in the establishment of bail in the context of certain offenses. For example, the court is to require any person indicted for the crime of aggravated rape to wear an electronic monitoring device. |
| LA | HB 266 | 04/09/2013 HB 266 has been introduced. | HB 266 would authorize the clerk of court to use of e-mail to provide notice of judgment of bond forfeiture. The bill provides that the clerk of court only would be permitted to use e-mail for such notices if the defendant, the personal surety, the agent, or the bondsman have agreed to receive notice by e-mail, and the clerk has a valid email address that these persons have provided. All other requirements for the clerk pertaining to this notice still would apply. |
| LA | HB 367 | 04/01/2013 HB 367 has been introduced. | HB 367 would establish a pretrial release services program, which could be used to assist in determining the amount of bail required. |
| MD | SB 505/ HB 777 | 04/01/2013 SB 505 and HB 777 have been sent to the Governor. | SB 505/HB 777 provides that if an order setting cash bail or a cash bond specifies that the defendant only may post it, the cash bail or cash bond nevertheless can be posted by the defendant or by a private surety that holds a certificate of authority in the State. An exception is bail or cash bond for a failure to pay support under the Family Law section which can only be posted by the defendant, unless the court orders otherwise. |
| MI | HB 4083 | 01/23/2013 HB 4083 has not moved since it was introduced. | HB 4083 would create the Michigan crime stoppers act and provide for the designation of crime stoppers organizations by county. Defendants charged with a felony or a misdemeanor, including an ordinance violation, that is resolved by conviction, assignment of the defendant to youthful trainee status, a delayed sentence, or a deferred entry of judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall charge the defendant an assessment that would be used to fund the designated crime stoppers organization in the county. If the defendant posted a cash bond or bail deposit in connection with the case, the court shall order the assessment to be collected out of that bond or deposit. |

SFAA 000537

| | | | |
|---|---|---|---|
| MN | HB 744 | 02/20/2013 HB 744 has been introduced. | HB 744 would impose a fee for the reinstatement of a bail bond in an amount prescribed by court rule in an amount based on a percentage of the bond fee, but not less than $100. The bill also would direct the court to impose a minimum penalty as provided in Rule 702 of Minnesota General Rules of Practice for reinstating the bond. |
| MO | HB 512 | 02/07/2013 HB 512 has been introduced. | HB 512 would revise the existing law with respect to persons in possession of less than 35 grams of marijuana, any synthetic cannabinoid and persons using or possessing with intent to use any marijuana drug paraphernalia. The bill provides that such persons only would be subject to an appearance order in court and would not be required to post a bond. |
| MO | HB 774 | 03/28/2013 HB 774 is out of committee in the House. | HB 774 repeals certain obsolete laws. The bill would repeal a study provision in the law directing the Missouri Department of Insurance, Financial Institutions and Professional Registration to conduct a study regarding its licensing rules and other policies and procedures governing the bail bond industry within the state of Missouri. The report was due in 2010. |
| MS | HB 714 | 03/21/2013 HB 714 has been enacted. | HB 714 revises the bond forfeiture proceedings under current law. If a felony warrant is issued for nonappearance, it must be put in the NCIC database. If a judgment nisi is set aside, the new law requires the bail agent to be served notice with a copy of the set aside judgment via certified mail. The new law provides for the automatic stay of the execution of a final judgment against a bail bond for a period of 90 days. If the defendant appears in court voluntarily or in custody prior to the execution of the final judgment, the court on its own motion will set aside the forfeiture and exonerate the bond under the new law. The new law becomes effective on July 1, 2013. |
| MS | HB 749 | 03/21/2013 HB 749 has been enacted. | HB 749 revises the existing bail agent licensing law to require applicants for a soliciting bail agent or bail enforcement agent license applying after July 1, 2013, to successfully complete a limited examination for the restricted lines of business. |
| MT | HB 233 | 04/15/2013 HB 233 has been sent to the Governor. | HB 233 would expand an existing program concerning sobriety monitoring for defendants charged with certain second or subsequent offenses by allowing its use as a bail condition for any defendant charged with a crime that involved the abuse of alcohol or dangerous drugs as a contributing factor in the commission of the crime. |

SFAA 000538

| | | | |
|---|---|---|---|
| MT | SB 400 | 04/05/2013 SB 400 passed the Senate. The bill is pending in the House Business and Labor Committee. | SB 400 would establish licensing requirements for bail fugitive recovery agents, including educational requirements. The bill also would establish procedures for such agents in handling the recovery of a fugitive, including notification requirements for agents to send certain notices to law enforcement agencies. |
| NC | SB 574 | 04/02/2013 SB 574 has been introduced. | Under current law, the termination of the obligation under a bail bond occurs upon the earliest of certain events. SB 574 would add an additional event: 36 months have passed from the date of release on a bail bond where the defendant is charged with a misdemeanor, except for impaired driving offenses. For obligations that terminate in this instance, the judicial official shall determine if the defendant is again entitled to release and the conditions for such release. |
| NV | SB 381 | 03/20/2013 SB 381 has been introduced. | SB 381 would prohibit the use of public assistance funds for the purchase of a bail bond. The bill provides that bail agents or their employees shall not knowingly permit a person to use a public assistance electronic benefit transfer card for such purposes. If a person attempts to use their card to purchase a bail bond, the bail agent would be required to report the person to the Division. Bail agents would have to disable any point-of-sale terminal or automated teller located at his or her place of business from accepting such cards. Failure to comply with these requirements would result in the suspension of the agent's license. The license could be reinstated upon demonstration of preventative measures and/or compliance with the requirements of the proposed law. |
| NH | HB 353 | 03/14/2013 HB 353 passed the House. | HB 353 would clarify existing law to provide that the licensing fee requirement extends to bail recovery agencies. The bill also would revise the firearms training requirements to require bail enforcement agents to be familiar with rifles if their agents use such equipment. |
| NJ | AB 3352 | 03/21/2013 AB 3352 has been sent to the Governor. | AB 3352 would add human trafficking to the existing law's list of crimes with bail restrictions. |

SFAA 000539

| NJ | ACR 93 | 01/10/2013<br>ACR 93 has not moved since it was introduced. | ACR 93 would amend the state Constitution to allow the legislature to forbid bail to illegal immigrants charged with certain crimes. |
|---|---|---|---|
| NJ | ACR 107/<br>ACR 153 | 06/07/2012<br>ACR 107 and ACR 153 are pending in the Assembly. | ACR 107 and 153 would amend the state Constitution to allow courts to deny bail if the court finds that no combination of bail and other conditions will assure appearance and protect the public. The Legislature would be authorized to establish terms and conditions for pretrial release and the denial thereof. |
| NJ | AB 474/<br>SB 560 | 01/10/2012<br>AB 474 and SB 560 have not moved since they were introduced. | AB 474/SB 560 would add assault and death by auto or vessel to the list of crimes with bail restrictions. |
| NJ | AB 1713 | 01/10/2012<br>AB 1713 has not moved since it was introduced. | AB 1713 provides that if a released defendant is charged with a second offense involving petty disorderly persons, disorderly persons, a crime of the fourth degree or a crime of the third degree, there would be a presumption of a 50% cash bail option. For a third or subsequent charge for the same categories of offenses, the presumption would be for 100% cash bond. This seems to be intended to substitute the higher percentages for a 10% cash option. |
| NJ | AB 1674/<br>SB 733 | 01/10/2012<br>AB 1674 and SB 733 have not moved since they were introduced. | AB 1674/SB 733 would make 16 additions to the list of crimes with bail restrictions. |
| NJ | AB 1772/<br>SB 678 | 01/10/2012<br>AB 1772 and SB 678 have not moved since they were introduced. | AB 1772 and SB 678 would forbid the release of illegal immigrants charged with crimes of the first or second degree or previously convicted of two or more crimes that occurred on separate occasions. The change would take effect upon amendment to the state Constitution per CR 93. |

SFAA 000540

SFAA 000541

| | | | |
|---|---|---|---|
| NJ | AB 2254 | 02/02/2012 AB 2254 has not moved since it was introduced. | AB 2254 would authorize the establishment of a pretrial release program. Any defendant would be eligible except one charged with a crime with bail restrictions or other first degree offenses. |
| NJ | AB 2536 | 02/21/2012 AB 2536 has not moved since it was introduced. | AB 2536 provides that a bail bond can be forfeited only for failure to appear; establishes a schedule for remission of forfeitures if the defendant is recovered, is dead or is incarcerated within the United States if the surety engaged in monitoring efforts or attempted to contact the defendant at least once every three weeks; requires mailing notice to the surety and agent; if a bench warrant has been issued, authorizes any jail or law enforcement agent to accept surrender of the defendant from the surety or agent or their representatives; establishes a $100 filing fee for bonds or recognizances; and forbids removing the surety or its agents from bail registry if the surety has filed a motion to vacate a forfeiture and the defendant is in custody in New Jersey or has entered an order to vacate the forfeiture that is awaiting court's signature. [This appears to be the same as 2010 AB 1143, and the remission schedule does not make sense.] |
| NJ | AB 3056 | 06/07/2012 AB 3056 has not moved since it was introduced. | AB 3056 provides that a defendant charged with a "Crime with Bail Restrictions" cannot post a secured surety bond but must provide either full cash bail or a lien on real property. |
| NJ | SB 1133 | 01/23/2012 SB 1133 has not moved since it was introduced. | SB 1133 adds certain weapons offenses to the list of crimes with bail restrictions. |
| NJ | SB 2224 | 12/17/2013 SB 2224 is to the second reading in the Senate. | SB 2224 would add human trafficking to the existing law's list of crimes with bail restrictions. |
| NY | SB 506 | 01/09/2013 SB 506 has not moved since it was introduced. | SB 506 would require the Commissioner of Financial Services to conduct a study to identify problems and concerns regarding the bail bond business and to present his or her findings to the legislature. The study would seek to identify "necessary improvements and clarifications to current regulations and statutes related to the rights of defendants who utilize the bail bond business." |

| OK | HB 2167/ SB 849/ HB 1067 | 04/17/2013 HB 2167 has been sent to the Governor.<br><br>04/11/2013 SB 849 has passed the House and has been returned to the Senate for approval of the House amendments.<br><br>04/04/2013 HB 1067 has passed the House Business and Commerce Committee. | HB 2167/SB 849/HB 1067 revises provisions regarding the licensure of bail bondsmen and appointment of agents. The bill amends the conditions under which a bail bondsman's license could be revoked, suspended, denied, refused renewal, or censured to include failing to accept or claim a certified mailing from the Insurance Department. The bill clarifies that bail bondsmen must give receipts to indemnitors at the time of payment. The bill adds that a surety bondsman's license application could be denied for submitting false information on the affidavit of no outstanding forfeitures or fines. The bill would increase the fee required for a bail bondsman to file a power of attorney in each county from $10 to $20, and require the fee to be paid biennially. |
| OK | SB 1013 | 04/03/2013 SB 1013 passed the House Judiciary Committee. The bill passed the Senate on 03/12/2013. | SB 1013 would establish licensing requirements for enforcers and recovery agencies and require them to obtain a $10,000 liability insurance policy or surety bond from an insurance company or surety licensed to do business in the State. The bond or policy would have to allow persons to recover for actionable injuries, loss, or damage as a result of the willful or wrongful acts or omissions of the licensee, and it must protect the State, its agents, officers and employees from judgments against the licensee. Further, the bond or policy would be conditioned upon the faithful and honest conduct of the principal's business. . |
| OK | SB 9 | 02/05/2013 SB 9 is to the second reading in the Senate. | SB 9 would eliminate the ability of a bondsman to register in a county where he or she maintains an office but does not reside, and would allow a bondsman to write surety bonds statewide without the former ten defendants per county limit and without regard to whether there is a registered bondsman resident in the county. |

SFAA 000542

| State | Bill | Status | Description |
|---|---|---|---|
| OK | SB 1037/ SB 329 | 03/18/2013 SB 1037 is to the second reading in the House following passage in the Senate on 03/06/2013. 02/04/2013 SB 329 is to the second reading in the Senate. | Current law establishes a limit of the number of bond written by a bondsman outside his or her county. SB 1037/SB 329 would address how such bonds are counted. |
| OK | HB 1606 | 02/06/2013 HB 1606 is to the second reading in the Senate. | HB 1606 would increase the licensing fee for a bail bondsman from $250 to $350 and add a penalty for failing to provide notice of changes in legal name, address, or e-mail address within five days of the change to the violations for which a license can be suspended or revoked. A late notice of change requires a $25 fee. The bill would add penalties for an untimely submission of the monthly reports bail bondsmen must submit on the bonds they have written and their liabilities in the amount of $50 for each late report. Bondsmen who have submitted untimely reports three times within a twelve-month period would be subject to additional civil penalties in an amount ranging from $250 to $2,500. |
| OK | HB 1941 | 04/15/2013 The Governor has vetoed this bill. | HB 1941 would have eliminated the ability of a bondsman to register in a county where he or she maintains an office and would allow a bondsman to write surety bonds statewide without the ten defendants per county limit and without regard to whether there is a registered bondsman resident in the county. |
| PA | HB 601 | 02/08/2013 HB 601 has been introduced. | HB 601 would add sexual abuse of a child to capital crimes as crimes exempted from the requirement of bail by sufficient sureties. |
| PA | SB 149 | 01/15/2013 SB 149 has not moved since it was introduced. | SB 149 would establish licensing requirements for bail bond recovery agents. |

SFAA 000543

| SC | HB 3135 | 01/08/2013<br>HB 3135 has not moved since it was introduced. | HB 3135 would establish a new licensing law for professional bondsmen. Current law regulates professional bondsmen and surety bondsmen under South Carolina's Insurance Code. The bill would regulate professional bondsmen under the Department of Labor. |
|----|---------|------------------------------------------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| SC | HB 3137 | 01/08/2013<br>HB 3137 has not moved since it was introduced. | HB 3137 would permit a bail bondsman or runner to assist another bail bondsman in the apprehension, arrest, and surrender of the defendant even if the person is not employed or appointed by the bail bondsman who is the defendant's surety. |
| SC | HB 3138 | 01/08/2013<br>HB 3138 has not moved since it was introduced. | HB 3138 would reduce from not less than six hours to not less than three hours the amount of continuing |
| SC | SB 45 | 01/08/2013<br>SB 45 has not moved since it was introduced. | SB 45 provides that a person convicted of committing or attempting to commit a general sessions offense while released on a bail bond or personal recognizance bond would have to be imprisoned for five years in addition to the punishment provided for the principal offense. The five-year sentence would not apply in cases where the death penalty or a life sentence without parole is imposed. |
| SC | SB 463/<br>HB 3619 | 04/13/2013<br>SB 463 passed the Senate Banking and Insurance Committee.<br><br>02/26/2013<br>HB 3619 has been introduced. | SB 463/HB 3619 would require individuals applying to for a professional bondsman, surety bondsman or a runner's license to provide the Department with his or her business, email, mailing, and residential street addresses. The bondsman or runner also would have to notify the Department within 30 days of any change in legal name or in any of these addresses. Failure to provide such notice within the required timeframe would be considered a violation subject to the penalties in existing law. |
| SC | HB 3342 | 03/07/2013<br>HB 3342 passed the House. | HB 3342 would add notice requirements in connection with the issuance of a bench warrant for a defendant that failed to appear in court. |
| SD | HB 1130 | 03/25/2013<br>HB 1130 has been enacted. | HB 1130 establishes a definition for a bail bond, which the new law defines as "cash, property or surety given to obtain a defendant's release." The new law provides a definition for cash. |

SFAA 000544

| TN | HJR 98 | 03/12/2013 HJR 98 is pending in the House Criminal Justice Committee. | HJR 98 is a resolution that would direct the Administrative Office of the Courts to study the issues regarding the use of unsecured bail bonds and the fees charged for them. The report would have to be submitted to the Judiciary Committee of the Senate and the Criminal Justice Committee of the House of Representatives on or before January 15, 2014. The report would have to include information on the problems that the fees for unsecured bonds raise and recommendations for legislative solutions. |
|----|--------|------|------|
| TN | SB 248/ HB 410 | 01/31/2013 SB 248 is to the second reading in the Senate. 03/19/2013 HB 410 is pending in the House Criminal Justice Committee. | SB 248/HB 410 would authorize the court to consider a defendant's unlawful presence in the United States and the likelihood of his or her flight to avoid removal, deportation, exclusion or any other immigration proceeding when determining the amount of bail required. Current law already provides several factors for the basis of determining the bond amount. |
| TN | HB 309/ SB 695 | 03/05/2013 HB 309 is pending in the House Criminal Justice Committee. 02/06/2013 SB 695 is pending in the Senate Judiciary Committee. | HB 309/SB 695 would permit the local legislative body and chief law enforcement officer to mandate additional conditions of release including reporting, drug testing, residence restriction, no contact with persons convicted of firearms offenses, no possession of firearms, and requiring the defendant to appear before a judge or magistrate, with no pre-trial release, and prohibiting a defendant from being released until the firearm, if any, used in the commission of the offense for which the defendant is charged, is found. The magistrate also could require monitoring devices be used to track the defendant while on release. |
| TN | HB 351 | 02/04/2013 HB 351 has been withdrawn. | HB 351 would strike the language of a notice in the existing law pertaining to the amounts a professional bail bondsman or bail agent may charge for bonds. The bill would mandate a 10% premium and forbid a renewal fee in the first year of the bond and eliminate provisions allowing professional bondsmen and agents of insurance |

SFAA 000545

| State | Bill | Status | Description |
|---|---|---|---|
| | | | companies issuing appearance bonds to charge a premium renewal fee after the initial 12-month period provided for the bond. It would eliminate a provision permitting additional premium to be charged if the criminal case is appealed. The bill also would eliminate a provision permitting professional bondsmen and agents to assess a bond initiation fee of not more than $25 in addition to the premium. The bill provides instead that the minimum premium collected before the execution of bail shall not be less than 10% of the face value of the bond. Under the bill's provisions, collecting less than 10% would violate the current law's standards of professional conduct. The bill also would add a provision with respect to the amount of the bonds secure by cash, a certificate of deposit, or equity in real estate that a professional bondsman is permitted to write, prohibiting the bondsman from issuing any single bond in excess of the total amount of collateral deposited or pledged or total bonds in excess of ten times the value of the collateral. |
| TN | SB 736/ HB 1023 | 04/11/2013 SB 736 has been placed on the Senate calendar following passage from committee.<br><br>04/11/2013 HB 1023 has been placed on the House calendar following passage from committee. | SB 736/HB 1023 would add a provision to the existing law's forfeiture proceedings on a bail bond to provide that no execution shall issue upon a final forfeit of the bond, nor shall proceedings be taken for its enforcement until after 30 days following the entry of the forfeiture. The bill would eliminate a provision holding the surety liable under a criminal appearance bond until the court issues the defendant's sentence in cases resulting in a conviction or a guilty plea. The bill also would increase from $5 to $10 the sheriff's fee on each bond.<br><br>SB 736 would have provided that if there has not been a disposition of the case within two years for felonies and one year for misdemeanors following the date the bond was posted and the bond has not been forfeited, then the surety would be relieved of its obligation. The provision was removed from SB 736 in an amendment in committee. HB 1023 still contains this provision. |
| TN | HB 947 | 04/04/2013 HB 947 has been sent to the Governor. | HB 947 provides that persons applying to be a professional bondsman cannot have been convicted in any state of two or more misdemeanors which are equivalent to Tennessee Class A or Class B misdemeanors within five years of the date the application is filed. |

SFAA 000546

| | | | |
|---|---|---|---|
| TX | SB 669 | 04/17/2013 SB 669 has been scheduled for a hearing. | SB 669 would require the court to consider certain factors pertaining to the purpose of a bail bond when determining whether to grant a request for a reformation of the final judgment and a remittance to the surety in a special bill of review for a bail bond.  The bill also would require 72 hours to pass following the calling of the name of the defendant that failed to appear before a judgment for forfeiture may be entered against a bail bond. |
| TX | SB 876 | 04/16/2013 SB 876 has been placed on the Senate Intent Calendar following passage from committee. | SB 876 would require the judge or magistrate presiding over a pending criminal action to discharge a surety's liability on a bond if the surety files an affidavit stating that (1) more than five years have elapsed since the date of the defendant's last court hearing or appearance for the case; (2) the defendant has never been required to appear in court or there has not been any action in the case for a three year period; (3) the bond was not forfeited before of on the date of the motion; (4) the surety no longer wants to be a surety on the bond; (5) the surety has served notice of the motion to the defendant's attorney and (6) the surety has provided a copy of the motion to the prosecuting attorney.  The bill provides that if the judge or magistrate discharges a surety's liability and an indictment or information remains pending against the defendant, the judge or magistrate may be issue a capias for the defendant's arrest or a summons for the defendant to post another bond. |
| TX | SB 975 | 02/28/2013 SB 975 has been introduced. | SB 975 would revise the instances in which the disposition of a case occurs for determining when a person executing a bail bond is relieved of their liability. Under current law, the disposition of a case "occurs on the date the case is dismissed or the principal is acquitted or convicted."  The bill would revise this provision to include when the principal receives an order of deferred adjudication, is placed on community supervision, or is placed in a pretrial diversion program. |
| TX | HB 76 | 02/05/2013 HB 76 has not moved since it was introduced. | HB 76 would outline procedures under which a surety could obtain a discharge of its liability on a bail bond for certain criminal matters pending in a judge or magistrate's court. The surety would have to submit an affidavit in connection with obtaining the discharge. |
| TX | HB 1047/ SB 1397 | 04/15/2013 HB 1047 has been sent to the House Calendars Committee | HB 1047/SB 1397 would exclude premiums or service fees retained by a bail bond surety, or by a property and casualty agent in connection with the execution or delivery of a bail bond from the premium receipts used to determine an insurer's taxable premium receipts.  The bill also would provide that a surety company would not be require to maintain an unearned premium reserve for a bail bond executed or delivered |

SFAA 000547

| | | | |
|---|---|---|---|
| | | following passage from the House Insurance Committee.<br><br>03/07/2013<br>SB 1397 has been introduced. | by the company. Further, the surety's report of its direct written premium in a financial statement filed with the Department of Insurance could be calculated excluding any premiums or service fees retained by a bail bond surety, or by a property and casualty agent in connection with the execution or delivery of a bail bond. The bill provides that surety companies executing or delivering bail bonds in the State would have to disclose in the company's financial statement filed with the Department of Insurance the aggregate amount of its gross premium for bail bond business reported in the company's surety line of business; premium or service fees retained by the bail bond surety or agent; and the premium for bail bond business received by the company, net of amounts retained by the bail bond surety or agent. |
| TX | HB 1530 | 04/08/2013<br>HB 1530 has been reported from the House Judiciary and Civil Jurisprudence Committee. | HB 1530 provides that certain administrative fees collected under the existing law for local governments could be deducted from cash deposits posted as bail. |
| TX | HB 1562 | 04/09/2013<br>HB 1462 is pending in the House Criminal Jurisprudence Committee following a hearing. | HB 1562 would establish notice requirement to a surety in default. The bill provides that if a bail bond is posted for an offense other than a Class C misdemeanor, the clerk of court where the surety is in default must sent notice of the default by certified mail to the last known address of the surety. |
| TX | HB 1631 | 03/04/2013<br>HB 1631 has been introduced. | HB 1631 would require the court to consider certain factors pertaining to the purpose of a bail bond when determining whether to grant a request for a reformation of the final judgment and a remittance to the surety in a special bill of review for a bail bond. This bill is almost identical to SB 669. |

SFAA 000548

| | | | |
|---|---|---|---|
| TX | HB1667 | 04/09/2013 HB 1667 is pending in the House Criminal Jurisprudence Committee. | HB 1667 would provide for the revocation of a defendant's release on a personal bond in a burglary cases if the defendant violates a condition of the bond. The bill provides that the defendant would be prohibited from release on a personal bond pending trial, but the defendant could be released if he or she posts a cash deposit or posts a surety bond in an amount that the court determines. The bill also would establish requirements for electronic monitoring as a condition of the bond for defendants who have previously been convicted of burglary charges two or more times. |
| TX | HB 2021 | 02/28/2013 HB 2021 has been introduced. | HB 2021 would authorize a municipality or county to contract for the collection of certain debts in connection with civil cases. The bill provides that the provision would not apply to commercial bail bonds. |
| TX | HB 2280 | 04/02/2013 HB 2280 passed the House Licensing and Administrative Procedures Committee. | HB 2280 would prohibit a surety from employing a person who has been convicted of a felony or misdemeanor involving moral turpitude. |
| TX | HB 3030 | 03/18/2013 HB 3030 has been introduced. | HB 3030 would permit a sheriff or other peace officer, or a jailer to allow a defendant in a misdemeanor case to seek deferred adjudication if qualified, or if indigent, do community service for payment of the fine, costs and fees, to pay the fine, costs and fees. Current law provides that the defendant may provide a bail bond. |
| UT | HB 386 | 04/01/2013 HB 386 has been enacted. | HB 386 authorizes the Bureau of Criminal Identification to review applications for bail recovery, bail enforcement, and bail apprentice licensure and renewals of licenses, and approve license renewal applications. The new law authorizes the Bail Bond Recovery Licensure Board to permit the Utah Bureau of Criminal Investigation to approve license applications that contain no new or modified information from the prior application. The new law further specifies when and how a licensee may display an authorized badge. |
| VA | SB 847 | 03/20/2013 SB 847 has been enacted. | SB 847 authorizes judicial officers to require a person who has been arrested to accompany the arresting officer to the jurisdiction's facility to be fingerprinted and photographed prior to release on bail. |

SFAA 000549

| VA | SB 870 | 03/20/2013 SB 870 has been enacted. | SB 870 would permit a circuit judge to hear an appeal in a criminal case from a summary contempt judgment of the district court without a jury. Existing law requires a bond for the appeal. |
| VA | SB 1118/ HB 1311 | 03/16/2013 SB 1118 and HB 1311 have been enacted. | SB 1118/HB 1311 revises the law for appeals of a judicial officer's order concerning bail. Upon appeal, the new law authorizes courts granting or denying bail and courts ordering an increased bond, new or additional sureties, or revoking bail to stay the execution of its order for good cause shown for as long as would be reasonably practicable to allow the party to obtain an expedited hearing before the next higher court. A stay of an order granting bail will not be allowed for a person who was granted bail and who has been released on it. |
| VA | HB 2294 | 03/20/2013 HB 2294 has been enacted. | HB 2294 expands the definition of the crime of "carnal knowledge of an inmate" to state that an accused person is guilty of carnal knowledge of an inmate, parolee, probationer, detainee, or pretrial defendant or post-trial offender if he is an employee or contractual employee of, or a volunteer with, a bail bond company and he carnally knows, without the use of force, threat, or intimidation, a probationer, parolee, detainee, or pretrial defendant or post-trial offender for whom the bail bond company is surety. |
| WA | HB 1098 | 02/25/2013 HB 1098 passed the House. | HB 1098 would revise the existing law concerning bail to implement the recommendations of the bail practices work group. The bill would revise the circumstances in which a surety on a bail bond may return a person to custody so that the surety would have to demonstrate "good cause" for returning the defendant. Current law requires the surety to submit a notice of forfeiture or a notarized affidavit specifying the reasons for the surrender. The bill would define "good cause" as a "reasonable belief in a substantial increase in the likelihood of the risk of flight, violation of a court order, failure to appear, or the concealment or intentional misrepresentation of information by the person." Failure to make timely payments of bond premium would not be considered good cause. The bill has been amended to provide that if good cause does not exist for surrender, the sole remedy for the surety is to return the premium charged on the bond and any recovery fees.<br><br>Further, the bill would specify that the existing $10,000 license bond or deposit required for bail agencies only would apply to surety bail bond agencies. The bill |

SFAA 000550

| | | | |
|---|---|---|---|
| | | | would require property bond agencies to post a $100,000 bond or deposit. The bill also would subject bail bond agents to an existing requirement to complete a records check through the Washington state patrol criminal identification system and through the Federal Bureau of Investigation. Currently, only bail recovery agents are subject to this requirement.

The bill provides that the presiding judge of a court would be required to notify the Administrative Office of the Courts (Office) when the court revokes or reinstates the justification or certification of a bail bond agent to post bonds in the court. The Office would have to notify superior courts and courts of limited jurisdiction statewide. With regard to standards of professional conduct for bail agents, the bill would add the following activities as unprofessional conduct: entering into a contract with a person that gives the bail bond agent full authority over a person's finances, assets, real property, or personal property, including a general power of attorney and failing to reasonably disclose information within the bail agent's possession concerning the location of a fugitive criminal defendant.

The bill would add definitions for surety bond, surety bond agency, property bond and property bond agency. The bill would delete the definition of "contract". |
| WA | SB 5176 | 04/05/2013 SB 5176 is to the second reading in the House. The bill passed the Senate on 03/04/2013. | SB 5176 would revise the procedures concerning a 72-hour placement of defendants in an evaluation and treatment facility. The bill would eliminate procedures for referring such persons to a surety hearing when the court will not release the person unconditionally. |
| WA | SB 5376 | 02/21/2013 SB 5376 is pending in the Senate Ways and Means Committee. | SB 5376 provides that a juvenile defendant would be ineligible for a deferred disposition of he or she had been charged with unlawful possession of a firearm in the second degree, theft of a firearm, or possession of a stolen firearm. Current law authorizes the court to require a probation bond in connection with the release of the juvenile defendant in a deferred disposition. |

SFAA 000551

| WV | SB 530/ SB 547/ HB 3070 | 03/14/2013 SB 530, SB 547, and HB 3070 have been introduced. | SB 530/SB 547/HB 3070 would increase the fee the clerk of a circuit court charges per bail bond for processing services from $25 to $75. If a surety company provides the bond, the company must pay the fee under current law. |
| WV | HB 2723 | 02/25/2013 HB 2723 has been introduced. | HB 2723 would establish a 5% surcharge on bail bonds. Municipal and magistrate courts would have to collect the surcharge from cash bail bonds, and bail bondsmen would have to charge the purchasers of a bail bond the surcharge in an amount equal to 5% of the bail bond. The funds collected would have to be deposited into a special fund that would be used to benefit regional jails, State Police, county sheriffs, and municipal police departments. |

SFAA 000552

**CONFIDENTIAL**

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Thursday, June 21, 2012 3:15 PM |
| To: | Committee-BBAC-Open |
| Subject: | Preliminary Statistical Report |
| Attachments: | Bail Bond Report 2011 groups.pdf; Bail Bond Report 2011companies.pdf |

Attached are two Reports based on the bail bond supplements to the 2011 annual statements. In one report each company is shown separately, and in the other the companies in each group are combined. For prior year data we used what was reported in the 2011 bail bond supplement even if it did not agree with the 2010 report. Our assumption was that the later figures would be the most accurate.

As in prior years, there seem to be inconsistencies in how some of the numbers are reported. If your company's information is not correct please review your bail bond supplement and let us know if we need to make any corrections to our report. Obviously, if there is an error in what was reported to the states it would have to be corrected directly with them.

# The Surety and Fidelity Association of America
## 2011 BAIL BOND SUPPLEMENT EXHIBIT #1A: TOP BAIL BOND WRITERS

| Company | 9. Face Amount of Bail Bonds Written | 10. Direct Premiums Written (Gross) | 11. Comm and Broker Expenses | 12. Prem Writ Net of Agent Comm & Broker Expenses (Line 10 - Line 11 = Line 12) | 13. Direct Premium Earned (Gross) | 14. Prem Earned Net of Agent Comm & Broker Expenses | 15. Direct Unearned Premium Reserves | 16. Direct Losses Paid (deducting salvage) | 17. Direct Losses Incurred | 18. Direct Losses Unpaid |
|---|---|---|---|---|---|---|---|---|---|---|
| INTERNATIONAL FIDELITY INS CO | 2,222,985,694 | 46,772,604 | 38,764,053 | 8,008,551 | 46,967,783 | 25,803,632 | 5,556,032 | 0 | 0 | 1,374,155 |
| FINANCIAL CAS & SURETY INC. | 1,562,555,011 | 12,527,649 | 0 | 12,527,649 | 12,527,649 | 12,527,649 | 0 | 1,768,411 | 1,739,864 | 1,374,155 |
| FAIRFAX FIN GRP | 1,510,577,028 | 146,898,843 | 136,875,252 | 10,023,591 | 146,409,109 | 9,994,104 | 983,291 | 200,298 | 0 | 1,000,000 |
| BANKERS INS GRP | 1,380,017,661 | 1,344,893 | 0 | 1,344,893 | 134,224,564 | (17,967) | 8,260,893 | 0 | 0 | 0 |
| ACCREDITED SURETY & CAS CO. | 1,154,812,400 | 112,711,087 | 103,662,017 | 9,049,070 | 112,711,087 | 9,049,070 | 0 | 0 | 0 | 0 |
| DHC GRP | 1,079,426,825 | 99,054,785 | 96,083,141 | 2,971,644 | 99,054,785 | 2,971,644 | 0 | 0 | 0 | 0 |
| LEXINGTON NATIONAL INS CORP. | 1,025,586,076 | 106,664,535 | 96,761,936 | 9,902,599 | 106,757,972 | 10,032,301 | 2,424,395 | 1,306,266 | 1,123,357 | 243,818 |
| HCC INS HOLDINGS GRP | 718,037,196 | 70,637,793 | 64,764,836 | 5,872,957 | 70,516,231 | 5,966,230 | 905,083 | 852,895 | 759,397 | (546,888) |
| AMERICAN SURETY CO. | 631,908,362 | 64,767,717 | 57,266,793 | 7,500,924 | 65,045,994 | 7,533,152 | 961,284 | 326,656 | 233,291 | 1,201,465 |
| DELPHI FIN GRP | 493,223,111 | 49,346,112 | 46,283,455 | 3,062,657 | 49,346,112 | 3,062,657 | 0 | 0 | 1,071,930 | 6,374,637 |
| ROCHE SURETY & CASUALTY CO. | 320,091,276 | 33,628,019 | 31,242,029 | 2,385,990 | 34,505,310 | 2,449,877 | 363,276 | 0 | 0 | 0 |
| UNIV FIRE & CASUALTY INS CO. | 291,686,076 | 27,529,426 | 24,762,431 | 2,766,995 | 27,529,426 | 2,766,995 | 0 | 0 | 0 | 0 |
| PROALLIANCE GROUP | 232,302,220 | 23,230,222 | 21,720,258 | 1,509,964 | 22,919,202 | 1,499,894 | 1,985,424 | 0 | 0 | 0 |
| PALMETTO SURETY CORP. | 191,403,964 | 19,140,396 | 16,908,800 | 2,231,596 | 2,273,970 |  | 0 | 11,106 | 11,106 | 571,348 |
| INDIANA LUMBERMENS GRP | 163,467,677 | 17,590,516 | 17,132,299 | 458,217 | 16,333,433 | (798,866) | 2,708,303 | 0 | 0 | 0 |
| FIRST INDEMNITY OF AM INS CO. | 157,987,814 | 15,798,781 | 14,534,879 | 1,263,902 | 16,676,537 | 965,894 | 168,326 | 922,614 | 1,302,614 | 380,000 |
| SUN SURETY INSURANCE CO. | 147,800,017 | 15,172,303 | 12,918,652 | 2,253,651 | 15,172,303 | 2,252,743 | 0 | 209,056 | 209,056 | 0 |
| PENINSULAR SURETY CO. | 109,473,167 | 1,074,294 | 0 | 1,074,294 | 1,073,634 | 1,073,634 | 89,140 | 3,370 | 3,370 | 100,000 |
| ASSURANT INC GRP | 67,403,069 | 295,772 | 798 | 294,974 | 295,775 | 137,305 | 0 | 0 | (809,949) | 1,083,164 |
| WHITECAP SURETY CO. | 33,761,729 | 3,375,154 | 3,102,645 | 272,509 | 3,375,154 | 272,509 | 0 | 0 | 0 | 0 |
| INTL CRDT OF NORTH AMERICA RE | 27,763,806 | 2,626,657 | 2,387,808 | 238,849 | 2,528,078 | 140,270 | 591,619 | 112,300 | 260,008 | 258,421 |
| INTEGRA INSURANCE INC. | 25,482,133 | 2,271,592 | 1,889,360 | 382,232 | 2,271,592 | 382,232 | 0 | 0 | 0 | 0 |
| EMPIRE BONDING & INSURANCE CO. | 16,709,400 | 167,094 | 0 | 167,094 | 38,923 | 0 | 128,171 | 0 | 4,706 | 4,706 |
| BLACK DIAMOND INSURANCE CO. | 6,333,113 | 1,150,187 | 0 | 1,150,187 | 1,224,211 | 1,224,211 | 0 | 0 | 377,444 | 377,444 |
| SURETY HOLDINGS GRP | 4,965,790 | 666,100 | 641,271 | 24,829 | 27,754 | 1,034 | 638,346 | 0 | 0 | 0 |
| MEADOWBROOK INS GRP | 59,200 | 5,920 | 5,439 | 481 | 1,918 |  | 4,002 | 0 | 0 | 0 |
| LINCOLN GENERAL INSURANCE CO. | (690,000) | (44,500) | (41,830) | (2,670) | (44,500) | (2,670) | 0 | 0 | 0 | 0 |
| Totals | 13,575,129,815 | 874,403,951 | 787,666,322 | 86,737,629 | 989,764,006 | 98,063,323 | 25,767,585 | 5,712,972 | 6,286,194 | 12,422,270 |

CONFIDENTIAL

SFAA 000554    ©The Surety Fidelity Association of America

**CONFIDENTIAL**

# The Surety and Fidelity Association of America
## 2011 BAIL BOND SUPPLEMENT EXHIBIT #1B: TOP BAIL BOND WRITERS

| Company | 19. Direct Defense Cost Containment Expenses Paid | 20. Direct Defense Cost Containment Expenses Incurred | 21. Direct Defense Cost Containment Expenses Unpaid | 22. Taxes, Licenses and Fees | 23. Build-Up Fund Account Balances as of Beginning of Period | 24. Gross deposits to BUF Accounts (including interest earned) | 25. Gross Withdrawals from Build-Up Fund Accounts | 26. Build-Up Fund Account Balances as of End of Period (Line 23 + Line 24 - Line 25) |
|---|---|---|---|---|---|---|---|---|
| INTERNATIONAL FIDELITY INS CO | 0 | 0 | 0 | 3,559,923 | 43,212,753 | 31,289,744 | 33,849,475 | 40,653,022 |
| FINANCIAL CAS & SURETY INC. | 0 | 0 | 0 | 3,300,761 | 11,299,702 | 4,254,789 | 2,746,557 | 12,807,934 |
| FAIRFAX FIN GRP | 0 | 0 | 0 | 1,840,088 | 47,340,011 | 11,057,505 | 7,271,122 | 51,126,394 |
| BANKERS INS GRP | 0 | 0 | 0 | 96,572 | 22,823,277 | 11,952,164 | 8,090,017 | 26,685,424 |
| ACCREDITED SURETY & CAS CO. | 0 | 0 | 0 | 1,722,386 | 21,722,719 | 3,216,256 | 1,966,271 | 22,972,704 |
| DHC GRP | 0 | 0 | 0 | 0 | 7,015,022 | 6,245,075 | 5,275,089 | 7,985,008 |
| LEXINGTON NATIONAL INS CORP. | 0 | 0 | 0 | 2,415,013 | 25,678,556 | 7,051,631 | 7,420,978 | 25,309,209 |
| HCC INS HOLDINGS GRP | 6,150 | 31,967 | 0 | 1,567,560 | 14,305,133 | 5,302,058 | 4,259,269 | 15,347,922 |
| AMERICAN SURETY CO. | 23,757 | 19,007 | 34,890 | 1,664,537 | 21,039,550 | 4,532,992 | 5,489,541 | 20,083,001 |
| DELPHI FIN GRP | 0 | 0 | 0 | 389,924 | 11,401,075 | 2,790,071 | 3,099,545 | 11,091,601 |
| ROCHE SURETY & CASUALTY CO. | 0 | 0 | 0 | 613,344 | 11,124,733 | 3,318,767 | 3,014,142 | 11,429,358 |
| UNIV FIRE & CASUALTY INS CO. | 0 | 0 | 0 | 250,123 | 3,884,312 | 1,677,073 | 1,060,751 | 4,500,634 |
| PROALLIANCE GROUP | 0 | 0 | 0 | 461,384 | 4,906,435 | 1,615,201 | 2,108,004 | 4,413,632 |
| PALMETTO SURETY CORP. | 0 | 0 | 0 | 820,949 | 3,647,644 | 881,185 | 456,680 | 4,072,150 |
| INDIANA LUMBERMENS GRP | 0 | 0 | 0 | 0 | 4,184,929 | 1,143,878 | 1,709,998 | 3,618,810 |
| FIRST INDEMNITY OF AM INS CO. | 272,538 | 272,538 | 0 | 20,284 | 2,166,194 | 1,864,636 | 2,471,073 | 1,559,757 |
| SUN SURETY INSURANCE CO. | 62,471 | 62,471 | 0 | 404,250 | 6,977,450 | 1,111,004 | 817,917 | 7,270,537 |
| PENINSULAR SURETY CO. | 0 | 0 | 0 | 31,574 | 399,310 | 263,697 | 138,777 | 524,230 |
| ASSURANT INC GRP | 0 | (62,137) | 77,021 | 5,258 | 5,570,382 | 921,257 | 1,818,713 | 4,672,926 |
| WHITECAP SURETY CO. | 0 | 0 | 0 | 82,168 | 180,498 | 588 | 0 | 181,086 |
| INTL CRDT OF NORTH AMERICA RE | 9,665 | 157,373 | 258,421 | 87,269 | 425,537 | 318,546 | 32,564 | 711,519 |
| INTEGRA INSURANCE INC. | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 200,000 |
| EMPIRE BONDING & INSURANCE CO. | 0 | 4,706 | 4,706 | 11,741 | 0 | 39,722 | 0 | 39,722 |
| BLACK DIAMOND INSURANCE CO. | 0 | 111,536 | 111,536 | 54,322 | 0 | 0 | 0 | 0 |
| SURETY HOLDINGS GRP | 0 | 0 | 0 | 18,233 | 0 | 12,624 | 0 | 12,624 |
| MEADOWBROOK INS GRP | 0 | 0 | 0 | 2,877 | 0 | 592 | 0 | 592 |
| LINCOLN GENERAL INSURANCE CO. | 0 | 0 | 0 | 0 | 1,482,245 | 0 | 190,684 | 1,291,561 |
| Totals | 374,581 | 597,461 | 486,574 | 19,420,540 | 270,987,467 | 100,861,055 | 93,287,167 | 278,561,357 |

SFAA 000555

©The Surety Fidelity Association of America

# The Surety and Fidelity Association of America
## 2011 BAIL BOND SUPPLEMENT EXHIBIT #2: AGGREGATE REPORT

**CONFIDENTIAL**

| Question | # of Responses | # Responding YES | # Responding NO |
|---|---|---|---|
| 1. Is the bail bond premium reported on a gross basis? | 35 | 9 | 26 |
| 2. If the answer to #1 was no, was a permitted practice granted to the reporting entity? | 26 | 12 | 14 |
| 3. If the answer to #2 was no, please explain: **Various responses** | | | |
| 4. What bond life is used to calculate unearned premium in days? | 15* | n/a | n/a |
|     *Average:* 163, *Median:* 120, *Mode:* 120 | | | |
|     * Of the 15 responses, three ("1 day", "1 day" and "4 days") were not included in the average, median and mode calculations. | | | |
| 5. Are any amounts charged to the consumer excluded from Gross Premiums? | 35 | 14 | 21 |
| 6. If the answer to #5 was Yes, please explain: **Various responses** | | | |
| 7. Do the agents have ongoing performance obligations on the bond after execution? | 35 | 28 | 7 |
| 8. If the answer to #7 is Yes, please describe the nature of the agents' continuing obligations: **Various responses** | | | |

| | Current Year | % of GPW | Prior Year | % of GPW |
|---|---|---|---|---|
| 9. Face amount of bail bonds written | 13,575,129,815 | XXX | 13,429,258,970 | XXX |
| 10. Direct Premiums Written (Gross) | 874,403,951 | XXX | 855,818,385 | XXX |
| 11. Commissions and Brokerage Expenses | 787,666,322 | 90.1% | 681,448,647 | 79.6% |
| 12. Prem Written Net of Agent Comm and Broker Expenses | 86,737,629 | 9.9% | 174,369,738 | 20.4% |

| | Current Year | % of GPE | % of NPE | Prior Year | % of GPE | % of NPE |
|---|---|---|---|---|---|---|
| 13. Direct Premium Earned (Gross) | 989,764,006 | XXX | XXX | 907,557,798 | XXX | XXX |
| 14. Prem Earned Net of Agent Comm and Broker Exp | 98,063,323 | XXX | XXX | 105,051,117 | XXX | XXX |
| 15. Direct Unearned Premium Reserves | 25,767,585 | 2.6% | 26.3% | 17,499,518 | 1.9% | 16.7% |
| 16. Direct Losses Paid (deducting salvage) | 5,712,972 | 0.6% | 5.8% | 11,127,718 | 1.2% | 10.6% |
| 17. Direct Losses Incurred | 6,286,194 | 0.6% | 6.4% | 12,406,857 | 1.4% | 11.8% |
| 18. Direct Losses Unpaid | 12,422,270 | 1.3% | 12.7% | 14,985,573 | 1.7% | 14.3% |
| 19. Direct Defense Cost Containment Expenses Paid | 374,581 | 0.0% | 0.4% | 314,864 | 0.0% | 0.3% |
| 20. Direct Defense Cost Containment Expenses Incurred | 597,461 | 0.1% | 0.6% | 722,545 | 0.1% | 0.7% |
| 21. Direct Defense Cost Containment Expenses Unpaid | 486,574 | 0.0% | 0.5% | 715,919 | 0.1% | 0.7% |
| 22. Taxes, Licenses and Fees | 19,420,540 | 2.0% | 19.8% | 18,560,324 | 2.0% | 17.7% |

| | Current Year | Prior Year |
|---|---|---|
| 23. Build-Up Fund account balances as of beginning of period | 270,987,467 | 277,360,859 |
| 24. Gross deposits to BUF Accounts (including interest earned) | 100,861,055 | 92,949,977 |
| 25. Gross withdrawals from Build-Up Fund accounts | 93,287,167 | 88,198,722 |
| 26. Build-Up Fund account balances as of end of period (Line 23 plus Line 24 minus Line 25) | 278,561,357 | 282,112,113 |

©The Surety Fidelity Association of America

SFAA 000556



## The Surety and Fidelity Association of America
## 2011 BAIL BOND SUPPLEMENT EXHIBIT #1A: TOP BAIL BOND WRITERS

| Company | 9. Face Amount of Bail Bonds Written | 10. Direct Premiums Written (Gross) | 11. Comm and Broker Expenses | 12. Prem Writt Net of Agent Comm & Broker Expenses (Line 10 - Line 11 = Line 12) | 13. Direct Premium Earned (Gross) | 14. Prem Earned Net of Agent Comm & Broker Expenses | 15. Direct Unearned Premium Reserves | 16. Direct Losses Paid (deducting salvage) | 17. Direct Losses Incurred | 18. Direct Losses Unpaid |
|---|---|---|---|---|---|---|---|---|---|---|
| Financial Cas & Surety Inc. | 1,562,555,011 | 12,527,649 | 0 | 12,527,649 | 12,527,649 | 12,527,649 | 0 | 1,768,411 | 1,739,864 | 1,374,155 |
| International Fidelity Ins Co. | 1,407,319,358 | 26,010,039 | 21,124,863 | 4,885,176 | 26,019,445 | 4,855,294 | 2,959,697 | 0 | 0 | 0 |
| Bankers Insurance Co. | 1,347,706,739 | 1,295,875 | 1,295,875 | 1,295,875 | 133,843,142 | 0 | 8,145,582 | 0 | 0 | 0 |
| Accredited Surety & Cas Co. | 1,154,812,400 | 112,711,087 | 103,662,017 | 9,049,070 | 112,711,087 | 9,049,070 | 0 | 0 | 0 | 0 |
| Lexington National Ins Corp. | 1,025,586,076 | 106,664,535 | 96,761,936 | 9,902,599 | 106,757,972 | 10,032,301 | 2,424,395 | 1,306,266 | 1,123,357 | 243,818 |
| Danielson National Ins Co. | 1,023,670,076 | 94,342,097 | 91,511,834 | 2,830,263 | 94,342,097 | 2,830,263 | 0 | 0 | 0 | 0 |
| Seneca Insurance Co. | 837,963,248 | 79,120,539 | 74,356,674 | 4,763,865 | 78,630,805 | 4,734,378 | 983,291 | 0 | 0 | 1,000,000 |
| Allegheny Casualty Co. | 815,666,336 | 20,762,565 | 17,639,190 | 3,123,375 | 20,948,338 | 20,948,338 | 2,596,335 | 0 | 0 | 0 |
| American Surety Co. | 631,908,362 | 64,767,717 | 57,266,793 | 7,500,924 | 65,045,994 | 7,533,152 | 961,284 | 326,656 | 233,291 | 1,201,465 |
| Safety National Casualty Corp. | 493,223,111 | 49,346,112 | 46,283,455 | 3,062,657 | 49,346,112 | 3,062,657 | 0 | 852,895 | 1,071,930 | 6,374,637 |
| American Contractors Indem Co. | 460,413,800 | 44,229,794 | 39,759,796 | 4,469,998 | 45,994,620 | 4,674,154 | 712,406 | 852,895 | 500,982 | (546,888) |
| North River Insurance Co. | 374,818,037 | 37,846,143 | 35,350,616 | 2,495,527 | 37,846,143 | 2,495,527 | 0 | 0 | 0 | 0 |
| Roche Surety & Casualty Co. | 320,091,276 | 33,628,019 | 31,242,029 | 2,385,990 | 34,505,310 | 2,449,877 | 363,276 | 0 | 0 | 0 |
| Univ Fire & Casualty Ins Co. | 29,686,076 | 27,529,426 | 24,762,431 | 2,766,995 | 27,529,426 | 2,766,995 | 0 | 0 | 0 | 0 |
| U.S. Fire Insurance Co. | 270,360,948 | 27,221,024 | 24,612,874 | 2,608,150 | 27,221,024 | 2,608,150 | 0 | 200,298 | 0 | 0 |
| U.S. Specialty Insurance Co. | 257,623,396 | 26,407,999 | 25,005,040 | 1,402,959 | 24,521,611 | 1,292,076 | 192,677 | 0 | 258,415 | 0 |
| Continental Heritage Ins Co. | 232,302,220 | 23,230,222 | 21,720,258 | 1,509,964 | 22,919,202 | 1,499,894 | 1,985,424 | 0 | 0 | 0 |
| Palmetto Surety Corp. | 191,403,964 | 19,140,396 | 16,908,800 | 2,231,596 | 2,273,970 | 0 | 0 | 11,106 | 11,106 | 571,348 |
| Indiana Lumbermens Mutl Ins Co | 163,467,677 | 17,590,516 | 17,132,299 | 458,217 | 16,333,433 | (798,866) | 2,708,303 | 0 | 0 | 0 |
| First Indemnity of Am Ins Co. | 157,987,814 | 15,798,781 | 14,534,879 | 1,263,902 | 16,676,537 | 965,894 | 168,326 | 922,614 | 1,302,614 | 380,000 |
| Sun Surety Insurance Co. | 147,800,017 | 15,172,303 | 12,918,652 | 2,253,651 | 15,172,303 | 2,252,743 | 0 | 209,056 | 209,056 | 0 |
| Peninsular Surety Co. | 109,473,167 | 1,074,294 | 0 | 1,074,294 | 1,073,634 | 1,073,634 | 89,140 | 3,370 | 3,370 | 100,000 |
| National American Ins Co of CA | 55,756,749 | 4,712,688 | 4,571,307 | 141,381 | 4,712,688 | 141,381 | 0 | 0 | 0 | 0 |
| American Reliable Insurance Co | 45,054,031 | 158,467 | 798 | 157,669 | 158,467 | 0 | 0 | 0 | (318,437) | 714,215 |
| Whitecap Surety Co. | 33,761,729 | 3,375,154 | 3,102,645 | 272,509 | 3,375,154 | 272,509 | 0 | 0 | 0 | 0 |
| First Community Insurance Co. | 32,310,922 | 49,018 | 0 | 49,018 | 381,422 | (17,967) | 115,311 | 0 | 0 | 0 |
| Int'l Crdt of North America Re | 27,763,806 | 2,626,657 | 2,387,808 | 238,849 | 2,528,078 | 140,270 | 591,619 | 112,300 | 260,008 | 258,421 |
| Crum & Forster Indemnity Co. | 27,427,895 | 2,711,137 | 2,555,088 | 156,049 | 2,711,137 | 156,049 | 0 | 0 | 0 | 0 |
| Integra Insurance Inc. | 25,482,133 | 2,271,592 | 1,889,360 | 382,232 | 2,271,592 | 382,232 | 0 | 0 | 0 | 0 |
| American Bankers Ins Co. of FL | 22,349,038 | 137,305 | 0 | 137,305 | 137,308 | 137,305 | 0 | 0 | (491,512) | 368,949 |
| Empire Bonding & Insurance Co. | 16,709,400 | 167,094 | 0 | 167,094 | 38,923 | 0 | 128,171 | 0 | 4,706 | 4,706 |
| Black Diamond Insurance Co. | 6,333,113 | 1,150,187 | 0 | 1,150,187 | 1,224,211 | 0 | 0 | 0 | 377,444 | 377,444 |
| Lexon Insurance Co. | 4,965,790 | 666,100 | 641,271 | 24,829 | 27,754 | 1,034 | 638,346 | 0 | 0 | 0 |
| Williamsburg National Ins Co. | 59,200 | 5,920 | 5,439 | 481 | 1,918 | 0 | 4,002 | 0 | 0 | 0 |
| Lincoln General Insurance Co. | (690,000) | (44,500) | (41,830) | (2,670) | (44,500) | (2,670) | 0 | 0 | 0 | 0 |
| Totals | 13,575,129,815 | 874,403,951 | 787,666,322 | 86,737,629 | 989,764,006 | 98,063,323 | 25,767,585 | 5,712,972 | 6,286,194 | 12,422,270 |

SFAA 000557

©The Surety Fidelity Association of America

**CONFIDENTIAL**

**The Surety and Fidelity Association of America**
**2011 BAIL BOND SUPPLEMENT EXHIBIT #1B: TOP BAIL BOND WRITERS**

| Company | 19. Direct Defense Cost Containment Expenses Paid | 20. Direct Defense Cost Containment Expenses Incurred | 21. Direct Defense Cost Containment Expenses Unpaid | 22. Taxes, Licenses and Fees | 23. Build-Up Fund Account Balances as of Beginning of Period | 24. Gross deposits to BUF Accounts (including interest earned) | 25. Gross Withdrawals from Build-Up Fund Accounts | 26. Build-Up Fund Account Balances as of End of Period (Line 23 + Line 24 - Line 25) |
|---|---|---|---|---|---|---|---|---|
| Financial Cas & Surety Inc. | 0 | 0 | 0 | 3,300,761 | 11,299,702 | 4,254,789 | 2,746,557 | 12,807,934 |
| International Fidelity Ins Co. | 0 | 0 | 0 | 2,163,474 | 28,838,465 | 28,667,404 | 30,512,794 | 26,993,075 |
| Bankers Insurance Co. | 0 | 0 | 0 | 0 | 22,766,855 | 11,884,194 | 8,054,017 | 26,597,032 |
| Accredited Surety & Cas Co. | 0 | 0 | 0 | 1,722,386 | 21,722,719 | 3,216,256 | 1,966,271 | 22,972,704 |
| Lexington National Ins Corp. | 0 | 0 | 0 | 2,415,013 | 25,678,556 | 7,051,631 | 7,420,978 | 25,309,209 |
| Danielson National Ins Co. | 0 | 0 | 0 | 0 | 6,879,359 | 5,872,169 | 5,103,262 | 7,648,266 |
| Seneca Insurance Co. | 0 | 0 | 0 | 875,770 | 34,686,343 | 5,501,308 | 4,677,332 | 35,510,319 |
| Allegheny Casualty Co. | 0 | 0 | 0 | 1,396,449 | 14,374,288 | 2,622,340 | 3,336,681 | 13,659,947 |
| American Surety Co. | 23,757 | 19,007 | 34,890 | 1,664,537 | 21,039,550 | 4,532,992 | 5,489,541 | 20,083,001 |
| Safety National Casualty Corp. | 0 | 0 | 0 | 389,924 | 11,401,075 | 2,790,071 | 3,099,545 | 11,091,601 |
| American Contractors Indem Co. | 6,150 | 31,967 | 0 | 1,039,400 | 13,923,170 | 3,986,633 | 4,138,471 | 13,771,332 |
| North River Insurance Co. | 0 | 0 | 0 | 707,144 | 5,352,050 | 4,007,536 | 1,723,037 | 7,636,549 |
| Roche Surety & Casualty Co. | 0 | 0 | 0 | 613,344 | 11,124,733 | 3,318,767 | 3,014,142 | 11,429,358 |
| Univ Fire & Casualty Ins Co. | 0 | 0 | 0 | 250,123 | 3,884,312 | 1,677,073 | 1,060,751 | 4,500,634 |
| U.S. Fire Insurance Co. | 0 | 0 | 0 | 257,088 | 7,182,580 | 1,516,569 | 870,753 | 7,828,396 |
| U.S. Specialty Insurance Co. | 0 | 0 | 0 | 528,160 | 381,963 | 1,315,425 | 120,798 | 1,576,590 |
| Continental Heritage Ins Co. | 0 | 0 | 0 | 461,384 | 4,906,435 | 1,615,201 | 2,108,004 | 4,413,632 |
| Palmetto Surety Corp. | 0 | 0 | 0 | 820,949 | 3,647,644 | 881,185 | 456,680 | 4,072,150 |
| Indiana Lumbermens Mutl Ins Co | 0 | 0 | 0 | 0 | 4,184,929 | 1,143,878 | 1,709,998 | 3,618,810 |
| First Indemnity of Am Ins Co. | 272,538 | 272,538 | 0 | 20,284 | 2,166,194 | 1,864,636 | 2,471,073 | 1,559,757 |
| Sun Surety Insurance Co. | 62,471 | 62,471 | 0 | 404,250 | 6,977,450 | 1,111,004 | 817,917 | 7,270,537 |
| Peninsular Surety Co. | 0 | 0 | 0 | 31,574 | 399,310 | 263,697 | 138,777 | 524,230 |
| National American Ins Co of CA | 0 | 0 | 0 | 0 | 135,663 | 372,906 | 171,827 | 336,742 |
| American Reliable Insurance Co | (20,307) | (20,307) | 45,620 | 5,258 | 0 | 0 | 0 | 0 |
| Whitecap Surety Co. | 0 | 0 | 0 | 82,168 | 180,498 | 588 | 0 | 181,086 |
| First Community Insurance Co. | 0 | 0 | 0 | 96,572 | 56,422 | 67,970 | 36,000 | 88,392 |
| Int'l Crdt of North America Re | 9,665 | 157,373 | 258,421 | 87,269 | 425,537 | 318,546 | 32,564 | 711,519 |
| Crum & Forster Indemnity Co. | 0 | 0 | 0 | 86 | 119,038 | 32,092 | 0 | 151,130 |
| Integra Insurance Inc. | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 200,000 |
| American Bankers Ins Co. of FL | 0 | (41,830) | 31,401 | 11,741 | 5,570,382 | 921,257 | 1,818,713 | 4,672,926 |
| Empire Bonding & Insurance Co. | 0 | 4,706 | 4,706 | 0 | 0 | 39,722 | 0 | 39,722 |
| Black Diamond Insurance Co. | 0 | 111,536 | 111,536 | 54,322 | 0 | 0 | 0 | 0 |
| Lexon Insurance Co. | 0 | 0 | 0 | 18,233 | 0 | 12,624 | 0 | 12,624 |
| Williamsburg National Ins Co. | 0 | 0 | 0 | 2,877 | 0 | 592 | 0 | 592 |
| Lincoln General Insurance Co. | 0 | 0 | 0 | 0 | 1,482,245 | 190,684 | 190,684 | 1,291,561 |
| Totals | 374,581 | 597,461 | 486,574 | 19,420,540 | 270,987,467 | 100,861,055 | 93,287,167 | 278,561,357 |

©The Surety Fidelity Association of America

# The Surety and Fidelity Association of America
## 2011 BAIL BOND SUPPLEMENT EXHIBIT #2: AGGREGATE REPORT

**CONFIDENTIAL**

| | # of Responses | # Responding YES | # Responding NO |
|---|---|---|---|
| 1. Is the bail bond premium reported on a gross basis? | 35 | 9 | 26 |
| 2. If the answer to #1 was no, was a permitted practice granted to the reporting entity? | 26 | 12 | 14 |
| 3. If the answer to #2 was no, please explain: **Various responses** | | | |
| 4. What bond life is used to calculate unearned premium in days? | 15* | n/a | n/a |
| _Average: 163   Median: 120   Mode: 120_ | | | |
| * Of the 15 responses, three ("1 day", "1 day" and "4 days") were not included in the average, median and mode calculations. | | | |
| 5. Are any amounts charged to the consumer excluded from Gross Premiums? | 35 | 14 | 21 |
| 6. If the answer to #5 was Yes, please explain: **Various responses** | | | |
| 7. Do the agents have ongoing performance obligations on the bond after execution? | 35 | 28 | 7 |
| 8. If the answer to #7 is Yes, please describe the nature of the agents' continuing obligations: **Various responses** | | | |

| | Current Year | % of GPW | Prior Year | % of GPW |
|---|---|---|---|---|
| 9. Face amount of bail bonds written | 13,575,129,815 | XXX | 13,429,258,970 | XXX |
| 10. Direct Premiums Written (Gross) | 874,403,951 | XXX | 855,818,385 | XXX |
| 11. Commissions and Brokerage Expenses | 787,666,322 | 90.1% | 681,448,647 | 79.6% |
| 12. Prem Written Net of Agent Comm and Broker Expenses | 86,737,629 | 9.9% | 174,369,738 | 20.4% |

| | Current Year | % of GPE | % of NPE | Prior Year | % of GPE | % of NPE |
|---|---|---|---|---|---|---|
| 13. Direct Premium Earned (Gross) | 989,764,006 | XXX | XXX | 907,557,798 | XXX | XXX |
| 14. Prem Earned Net of Agent Comm and Broker Exp | 98,063,323 | XXX | XXX | 105,051,117 | XXX | XXX |
| 15. Direct Unearned Premium Reserves | 25,767,585 | 2.6% | 26.3% | 17,499,518 | 1.9% | 16.7% |
| 16. Direct Losses Paid (deducting salvage) | 5,712,972 | 0.6% | 5.8% | 11,127,718 | 1.2% | 10.6% |
| 17. Direct Losses Incurred | 6,286,194 | 0.6% | 6.4% | 12,406,857 | 1.4% | 11.8% |
| 18. Direct Losses Unpaid | 12,422,270 | 1.3% | 12.7% | 14,985,573 | 1.7% | 14.3% |
| 19. Direct Defense Cost Containment Expenses Paid | 374,581 | 0.0% | 0.4% | 314,864 | 0.0% | 0.3% |
| 20. Direct Defense Cost Containment Expenses Incurred | 597,461 | 0.1% | 0.6% | 722,545 | 0.1% | 0.7% |
| 21. Direct Defense Cost Containment Expenses Unpaid | 486,574 | 0.0% | 0.5% | 715,919 | 0.1% | 0.7% |
| 22. Taxes, Licenses and Fees | 19,420,540 | 2.0% | 19.8% | 18,560,324 | 2.0% | 17.7% |

| | Current Year | Prior Year |
|---|---|---|
| 23. Build-Up Fund account balances as of beginning of period | 270,987,467 | 277,360,859 |
| 24. Gross deposits to BUF Accounts (including interest earned) | 100,861,055 | 92,949,977 |
| 25. Gross withdrawals from Build-Up Fund accounts | 93,287,167 | 88,198,722 |
| 26. Build-Up Fund account balances as of end of period (Line 23 plus Line 24 minus Line 25) | 278,561,357 | 282,112,113 |

©The Surety Fidelity Association of America

SFAA 000559

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Thursday, June 7, 2012 4:08 PM |
| To: | Committee-BBAC-Open |
| Cc: | DNABIC@aol.com |
| Subject: | Legislation and Regulations |
| Attachments: | 2012 Bail Bond Legislation.doc |

Attached is an updated legislative report. The only new bills are two from Delaware and a Senate Resolution from Louisiana. They are summarized below:

Delaware H. 363 – Tightens regulation of bail agents including requiring that they be Delaware residents (which can be satisfied by having his or her principal place of business in Delaware) submit state and federal criminal background checks, charge a premium of 10-12% for a surety bail bond and collect at least 7% prior to posting the bond, and retain specified records. Any person acquiring an interest of 10% or greater interest in the business or in any bond must be licensed. For cash bail, the property bondsman must charge between 20% and 25% of the bail amount and must collect at least 20% of the bail amount prior to posting the bond. Violation of the statute would be a felony.

Delaware S. 226 – Requires the use of an "objective risk assessment instrument" for various determinations including pretrial release or conditions of release. Unusually, the court's discretion would be limited. The court "shall employ" the mythical objective risk assessment instrument.

Louisiana SR. 194 – Establishes a special committee to study aspects of the bail bond industry relative to surrender of the defendant, the defendant's extradition, bond forfeiture and enforcement of judgments. Members of the committee would include members of the judiciary, district attorneys' association, state bar association and the bail bond industry.

In addition, there are proposed revisions to regulations in North Carolina (11 NCAC 13.0520 et seq.) on the licensing and continuing education of bail bond agents and Florida (Fl. ADC 69B-211.004) on the appointment of agents. See:

https://www.flrules.org/gateway/ruleno.asp?id=69B-211.004

http://www.ncdoi.com/ASD/ASD_Insurance_Co_SB_Legislation.aspx

## 2012 Bail Bond Legislation

(Bills added since the last distribution are marked with an asterisk)

### Alabama

H. 703 [H. 703 was withdrawn and the provisions passed the House as part of H. 688] – Imposes a filing fee of $35 on every bail bond plus an additional fee of 3.5% of the face amount of the bond (or $100, whichever is greater) but not to exceed $450 for misdemeanors and 3.5% (or $150, whichever is greater), but not to exceed $750 for felonies. For judicial public bail, recognizance or signature bonds the additional fee shall be $25. The filing fee shall be paid by the surety or bondsman not later than the day after execution of the bond. The additional fee shall be imposed when the defendant appears for adjudication or sentencing and any cash or property pledged shall guarantee the fee. The fees shall be divided according to percentages set out among the sheriff, court clerk and solicitor with parts of the additional fees also paid to the State and the Forensic Services Trust Fund. If the defendant is acquitted, the additional fee is not paid.

### Arizona

H. 2432 – Provides that the surety shall be relieved of liability upon surrendering the defendant before or within 30 days after the failure to appear except that if the surrender is after the failure to appear the judicial officer may forfeit up to $1,000 of the bond.

H. 2433 – Requires that the list of persons authorized to post bail bonds be updated monthly with the names rotated. Forbids soliciting bail bond business inside of, or within 200 feet of the entrance to, a court building or jail. An employee of a bail agent can submit the bond if he or she has proper identification.

H. 2434 – Makes a person convicted of a felony in the previous seven years not eligible for supervision under pretrial services and provides that a defendant not released on his own recognizance shall be released on either a cash or secured appearance bond unless the defendant previously failed to appear, is in custody for unpaid child support, fines or fees, or is charged with a class 1 or 2 felony. For such defendants the judicial officer could order a cash only bond.

S. 1284 – Amends statutes governing bail bond agents to require a receipt for payment of fees and expenses, require that all collateral be held in a fiduciary capacity and insured (except against weather damage which shall be the risk of the indemnitor), deposit cash collateral in an account separate from the agent's operating accounts, and disclose all premiums and fees. The agent's license may be suspended or revoked for charging more than the maximum fee or violating any provision of law or rule governing the agent's business. Requires having a signed contract and fee agreement before securing release of a person (other than a relative). The premium shall be valid for one year from the date the bond is posted. Any renewal premium shall be pro rated.

S. 1285 – Revises the licensing of bail recovery agents to require a high school diploma or GED, completion of a gun safety course or have an honorable discharge from the military, be at least 21, be a resident of Arizona for at least a year, and submit fingerprints.  The license shall not be issued until after the fingerprint check is completed.  A certified peace officer may not act as a bail recovery agent.

**California**

A. 1529 – Adds a section 1305.5 to the Penal Code to provide that appeals of denial of motions to vacate bail bond forfeitures of $25,000 or less shall be treated as a limited civil case and go to the appellate division of the superior court rather than to the court of appeals.  If the forfeiture is more than $25,000 the appeal is treated as an unlimited civil case and go to the court of appeals.

A. 1824 – As amended, allows a motion for exoneration to be filed for up to 30 days after expiration of the appearance period, applies the extradition rules to transfers from another county, tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extradition process.  Requires remand of the defendant who pleads guilty or nolo contendere, requires warrants be entered in the NCIC system as fully extraditable, authorizes settlement of forfeiture judgments if a motion to vacate is made and the court approves the settlement.

A. 2029 – Regulates the licensure and conduct of Bail Fugitive Recovery Persons including making it a misdemeanor knowingly to hire an unauthorized person to apprehend a bail fugitive.

S. 968 – Expands eligibility for release on electronic monitoring.  Certain defendants eligible for bail may apply for release on electronic monitoring with bail reduced by up to 75%.  Such an application may be made to the court starting from 10 court days following arraignment.

S. 989 – Amends Penal Code §1305 to require exoneration of the bond if the defendant is deported.  If the defendant is located in another jurisdiction and brought before local law enforcement pursuant to §305(g), tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extraction process.  The bond is exonerated if the prosecuting agency does not decide to seek extradition within a reasonable time.  Adds "or the United States Attorney" after prosecuting agency in both provisions.

S. 1265 – Permits a limited liability company (LLC) to be licensed as a bail agency on the same conditions as a corporation and exempts an admitted surety insurer, or a subsidiary of an admitted surety insurer, from the requirement that all officers and stockholders (or LLC members) must be licensed bail agents.

**Colorado**

H. 12-1114 – Treats stalking the same as domestic violence in terms of setting bail, protective orders and punishment for violating conditions of bail or protective orders.

H. 12-1266 – Extends the sunset of the division of insurance regulation of bail, requires that all forms used in connection with bail be filed with and approved by the division, and revises requirements for cash bonding agents and "Professional Cash Bail Agents" who will qualify by posting a bond with the division of insurance instead of by appointment from a bail insurance company.

H. 12-1310 – Adds to the information that each pretrial services program must include in their annual reports including crime classification of failures to appear, information on those remaining at large, information on those returned to custody and how recovered, re-arrests, and revocations. Permits surety to consent in writing to continuance of bond through sentencing either in initial bond documents or at the time of conviction or within a reasonable time thereafter.

H. 12-1316 – Amends provisions on bonds for possible illegal aliens. If the agency holding the defendant determines that there is an ICE detainer lodged against a person arrested or charged with felonies or class 1 or 2 misdemeanors, it shall notify the bail bond agent before the bond is posted. The bond shall be forfeited if the defendant is deported. The agency shall also notify the district attorney and any pretrial services office, and if the defendant posts bond, the agency shall notify the district attorney before notifying ICE that the defendant is eligible for release to ICE.

S. 12-175 – Makes slight changes to numerous statutory time periods, including ones related to bail, to avoid having then end on weekends.

**Connecticut**

H. 5093 – As a condition precedent to exoneration after the defendant is incarcerated or detained in another state, requires the surety or bail bond agent to agree to reimburse the Division of Criminal Justice for extradition costs incurred to secure the defendant's return.

H. 5382 – Requires applicants for licenses as professional bondsmen and bail recovery agents to be 21 years of age and high school graduates (or equivalents) and not subject to a restraining or protective order involving the use or attempted use of force against another person. Regulates badges worn by bail enforcement agent and permits for bail agents, professional bondsmen and bail agents to carry concealed weapons and adds new requirements to qualify as an instructor in courses required for firearms licenses.

S. 446 – Limits a surety bond for a misdemeanor, or a violation punishable by imprisonment for one year or less, to a maximum of $5,000 unless the court, judge or referee makes specific findings why a greater amount is necessary.

### Delaware

*H. 363 – Tightens regulation of bail agents including requiring that they be Delaware residents (which can be satisfied by having his or her principal place of business in Delaware) submit state and federal criminal background checks, charge a premium of 10-12% for a surety bail bond and collect at least 7% prior to posting the bond, and retain specified records. Any person acquiring an interest of 10% or greater interest in the business or in any bond must be licensed. For cash bail, the property bondsman must charge between 20% and 25% of the bail amount and must collect at least 20% of the bail amount prior to posting the bond. Violation of the statute would be a felony.

*S. 226 – Requires the use of an "objective risk assessment instrument" for various determinations including pretrial release or conditions of release. Unusually, the court's discretion would be limited. The court "shall employ" the mythical objective risk assessment instrument.

### Florida

H. 135 and S.210 – Requires that costs of prosecution and costs of representation be withheld from any cash bond posted by any person other than a licensed bail bond agent.

H. 725 and S.938 – Provides for E-mailed notice of time and place of licensure examination for bail bond agents. Strikes the separate standards for continuing education courses for bail bond agents and substitutes a cross reference to the Code section on continuing education courses for insurance agents in general. Amends section on forfeitures to delete the requirement that the clerk send the Department of Financial Services and Office of Insurance Regulation copies of each judgment within 10 days of its entry. Adds that such notice to the surety must be sent to the surety's home office. If the judgment is not paid within 60 days (formerly 35 days), notice must be sent to the Office of Insurance Regulation.

H. 771 and S.1820 – Makes extensive changes to the regulation of bail bond agents including requiring an "agent in charge" for each office, limiting the duration of a temporary bail bond agent license, restricting ownership or management of an agency to bail bond agents licensed and appointed for at least three years, fines insurers up to $1,000 per agent per month for failure to submit a statement of build up trust accounts, establishes a 30 day deadline for agents to pay over premiums, collateral or other funds, authorizes premium payment plans under specified conditions, authorizes persons properly licensed in other states to recover defendants on bonds written in the other state, forbids a licensed agent from directing an unlicensed person to recover a defendant in Florida, requires the monthly report for temporary bail bond agents to be submitted within 15 days of the end of the month and authorizes a fine of up to $500 per month for late submission, requires payment of wages to the temporary bail bond agent and makes them subject to unemployment compensation tax, forbids a temporary bail bond agent from accepting the initial premium for a bond but does allow him or her to accept subsequent payments under a premium payment plan, details circumstances requiring affidavits listing any unpaid judgments, premiums or other contractual obligations, authorizes online continuing education, requires

cancellation of the appointment of any managing general agent if a prior insurer reports unpaid forfeitures, judgments, premiums, losses or other contractual obligations, an insurer appointing a managing general agent is bound by the acts of the managing general agent within the scope of the appointment, allows an agent to provide contact information for multiple attorneys, forbids promising an inmate anything of value in return for referrals, forbids anyone from acting as a professional bail bond agent without a license as such, forbids travel fees for posting a bond if the same agent or agency that posted the bond also wrote the bond, requires immediate return of premium if a bond is not executed, requires all advertising to include the license number of the bail bond agent, requires return of collateral if the bond has expired, increases numerous fines and penalties, and authorizes Regulations to carry out numerous provisions of the bill.

H. 455, H.7047 and S. 1800 – Bars bail for defendants required to register as sexual offenders or sexual predators "until the first appearance in the case in order to ensure full participation of the prosecutor and protection of the public."

### Georgia

H. 1298 – Adds 25% on to all bail bonds in Atlanta to be paid, in the event of forfeiture, to the City of Atlanta jail fund.

### Hawaii

H. 2243 and S. 2158 – Requires that when the court with jurisdiction is closed, a law enforcement agency must release the defendant upon receiving cash, a certified copy of a pre-filed bail bond, or an original bail bond from a licensed agent.

H. 2868 and S. 3068 – Enacts a new Chapter in the Code providing mechanisms to enforce payment of bonds, suspend agents or insurers who do not pay, exonerate bonds upon recovery of the defendant or a showing that the failure to appear was caused by an Act of God or of the State or the law, and allow payment of costs of extradition from the bond.

### Idaho

S. 1325 – Requires full payment of the bail bond premium before the defendant is released. Premium financing would be a permitted method of paying the premium, but no bail agent or surety company may have any financial affiliation with, or indemnify or receive compensation from, the premium financier.

### Illinois

S. 2870 – Adds "a surety bond in an amount equal to 25% of the bail, executed by a surety approved by the court" as an alternative to the current requirement of a 10% cash deposit.  That is, the defendant must execute the bond and deposit either 10% cash or a 25% surety bond.

### Kansas

S. 321 – Restricts persons eligible for release on their own recognizance to residents of Kansas in the U.S. legally who are charged with misdemeanors or certain levels of felonies, have no prior history of failures to appear, no detainers, have not been extradited, are not awaiting extradition, and have not been detained for alleged probation violation.  Also requires an out of state surety or agent who intends to apprehend any person in Kansas to contract with a person authorized to act as a surety or agent in Kansas, and that authorized person must accompany the out of state person during the apprehension.

### Louisiana

H. 190 – Allows the clerk to give notice to the surety of a forfeiture judgment either at the address provided pursuant to present law (Art. 322) or at an address registered with the Department of Insurance.

H. 304 – Shortens the Bail Bond Apprentice Program from six months to three months.

H. 398 – Adds three Parishes (Ascension, Assumption and St. James) that will be authorized to alter the percentage to be deposited as cash bail and to charge a $15 fee for processing the bond.

H. 513 – Adds certain information and record keeping for the Bail Bond Apprentice Program.

H. 581 – If the prosecutor dismisses a case for which the defendant had provided bail and a subsequent indictment or information charges the same or a lesser offense based on the same facts, the court must reinstate the bail if the surety consents.  If the defendant voluntarily appears on the first occasion of which he or she has actual notice, the court must permit the defendant to remain free for five days, excluding weekends, to obtain the surety's consent.

H. 760 – If a defendant is released on bail for a crime of violence and is subsequently arrested for any crime the bail is automatically revoked and bail is barred for the new offense.

S. 242 – Narrows the separate treatment of Orleans Parish for purposes of the premium fee to bonds for charges to be prosecuted in the Criminal District Court.  The $3 fee will apply only to bonds in that court.

S. 173 – Deletes authority for a bail bond of up to $500 during the period is placed on probation by the Traffic Court of New Orleans.

S. 291 – Deletes the provision in current law that the prosecutor may enforce an unpaid forfeiture as a civil judgment leaving filing a rule to show cause with the Insurance Commissioner as the sole enforcement method.

S. 292 – Expands the grounds to exonerate the bond by adding refusal to extradite the defendant and failure to enter the defendant in the NCIC registry.  Also deletes extensions of time or setting aside judgments because of a fortuitous event that makes it impossible to perform and the requirement that a motion for such exoneration be filed within 366 days of the fortuitous event and substitutes extensions of time or setting aside judgments if they are "justified under the facts of the case" without any time limit for the motion.

S. 294 – Requires notice of the signing of the judgment to be mailed within 60 days of the defendant's initial failure to appear instead of within 60 days after the defendant fails to appear.

S. 319 – Amends the provision of the Code of Criminal Procedure that provides if the defendant appears and the proceeding is continued to a specific date the defendant not be given further notice of the new date by requiring that the surety or agent have notice either in the bond or by written notice.  [The Digest with the bill says that is its intent, but the actually language seems to be unclear as to what proceeding the new notice requirement applies.  It could be read to mean notice of the original appearance date not the new one.]

S. 492 – Extends to the 23rd Judicial District the right to alter the percentage of cash bond and the filing fee just as the parishes of St. John the Baptist and St. Charles can now.

S. 621 – Repeals the right of the Municipal and Traffic Courts of New Orleans to impose a bail bond fee for submission of bonds but doubles, to $30, the fee taxed as part of costs to every defendant who is convicted, pleads guilty or forfeits bond in the Municipal Court of New Orleans.

S. 681 – Establishes $100,000 as the minimum bail amount for a defendant charged with a felony offense involving a firearm who has previously been convicted of a crime that made the defendant's possession of a firearm unlawful.

*SR. 194 – Establishes a special committee to study aspects of the bail bond industry relative to surrender of the defendant, the defendant's extradition, bond forfeiture and enforcement of judgments.  Members of the committee would include members of the judiciary, district attorneys' association, state bar association and the bail bond industry.


### Maine

H. 312 – Requires as a condition of bail for persons charged with certain crimes of domestic violence that the defendant turn over all firearms to a law enforcement officer and refrain from possessing firearms or other specified dangerous weapons.

H.1256 – Authorizes electronic monitoring, at the defendant's expense, as a condition of bail for defendants charged with crimes involving domestic violence.

### Maryland

H. 338 and S. 690 – Forbids a district court commissioner from releasing defendants charged with certain enumerated offenses and permits a judge to release such defendants only on full cash or corporate surety bond or on a property bond secured by property located in Maryland with equity equal to the amount of the bond plus $20,000.  Enacts a rebuttable presumption that such defendants will flee and will pose a danger to another person or the community.

H. 492 – Except for failure to pay family support, "cash bail" or "cash bond" may be provided in the form of cash, a surety bond, or a property bond by the defendant, or by a private surety acting for the defendant.  For failure to pay family support, only the defendant may post a "cash bail" or a "cash bond."

H. 517 – Forbids a surety from accepting or providing real property as security for a bond unless the owner of the property certifies that the property has no outstanding citations for building or property code violations.

H. 551 – Provides that if the defendant is taken into custody by Immigration and Customs Enforcement because of his or her immigration status, the bond is void, the bond must be returned to the surety and the surety discharged, and any premium must be refunded.

H. 573 – Forbids courthouse or correctional facility employees from soliciting for or advertising the services of a specific bondsman and increases the penalties for banned solicitation by a bondsman or agent as well as by the added employees.

H. 742 and S. 489 – Requires applicants for a bail bondsman's license to certify one year's regular employment by a licensed bail bondsman and authorizes installment payment of premiums.  If the premium is paid by installments, certain records have to be kept and attempts made to collect any balance owed.  The installment agreement must include certain information about the payments owed.

### Michigan

H. 5533 – Allows a Charitable Bail Organization (CBO) to post bail.  The CBO cannot be compensated for the bail, and it must qualify as a 501(c)(3) organization and be registered under the charitable organizations act and must be "organized for the purpose of posting cash bail on behalf of poor individuals."

### Mississippi

H. 173 and S. 2838 – Automatically stays execution on a bond forfeiture for 90 days from the entry of final judgment and requires the court to exonerate the bond if the defendant appears or is surrendered before execution of final judgment.  Grants a bail agent immunity from civil damages for actions taken within the scope of his authority and in good faith to enforce a court order, scire facias and final judgment.  Bail agents shall not be liable in civil damages resulting from a court's failure to properly issue or serve the surety with a set aside order for scire facias or final judgment or with the writs or judgment themselves.

H. 174, H. 631 and S. 2805 – Revises prelicensing educational requirements for  professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.

H. 175 and S. 2837 – Deletes requirement that the sheriff approve a bond from a properly licensed bail agent.

H. 631 and S. 2805 – Revises prelicensing educational requirements for  professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.  Makes it unlawful to refuse to return collateral or other indemnity when the premium has been paid or the obligation on the bond terminated.

H. 880 and S. 2847 – Designates certain charges as crimes with bail restrictions, for defendants charged with such designated crimes requires full cash, corporate surety or bond secured by real property and, if real property, requires an affidavit from the owner with information as to equity in the property.  Creates a presumption for full cash bail if a defendant charged with such crimes also has two prior felony convictions or two other indictable offenses pending or was on parole or has a prior conviction for certain enumerated crimes including bail jumping.

H. 1439 – for persons charged with domestic violence offenses, the court must check the Mississippi Protective Order Registry and consider any protective order before granting bail. [Enacted as a part of H.780].

H. 1471 – Permits release on own recognizance or appearance bond unless the court determines this will not reasonably assure appearance or protect others or the public; in which case the court may impose the least onerous conditions to assure appearance and protect others and the public taking into account a list of factors related to the defendant and the offense.  Also establishes a bail schedule but permits deviation in the court's discretion.  Forbids post conviction bail if the sentence is 20 years or more or if conditions of release will not reasonably assure the defendant's surrender or protection for others or the public.

S. 2254 – If a defendant is charged with a crime involving a domestic victim, the court must check the Mississippi Protective Order Registry and if there is a domestic abuse protective order against the defendant, take that into account when determining bail.  [Enacted as part of H.780.]

S 2620 – Would permit renewal of a professional bail agent's license held on the effective date of the act even though the licensee was convicted of a felony not involving moral turpitude.

**Missouri**

H. 1867 and Substitute H. 1323 – Requires the court to accept "a guarantee from any surety who is in compliance with general laws regulating such profession" in lieu of a cash only bond.

**New Jersey**

CR 93 – Amends the state Constitution to allow the legislature to forbid bail to illegal immigrants charged with certain crimes.

CR 107 – Amends the state Constitution to allow courts to deny bail if the court finds that no combination of bail and other conditions will assure appearance and protect the public. The Legislature would be authorized to establish terms and conditions for pretrial release and the denial thereof.

A. 474 and S. 560 – Adds assault and death by auto or vessel to the list of crimes with bail restrictions.

A. 1674 and S. 733 – Makes 16 additions to the list of crimes with bail restrictions.

A.1713 – If a released defendant is charged with a second offense involving petty disorderly persons, disorderly persons, a crime of the fourth degree or a crime of the third degree, there would be a presumption of a 50% cash bail option. For a third or subsequent charge for the same categories of offenses, the presumption would be for 100% cash bond. This seems to be intended to substitute the higher percentages for a 10% cash option.

A.1772 and S. 678 – Forbids release of illegal immigrants charged with crimes of the first or second degree or previously convicted of two or more crimes that occurred on separate occasions. The change would take effect upon amendment to the state Constitution per CR 93.

A.2254 – Authorizes establishment of a pretrial release program. Any defendant would be eligible except one charged with a crime with bail restrictions or other first degree offenses.

A. 2536 -- A bail bond can be forfeited only for failure to appear; establishes a schedule for remission of forfeitures if the defendant is recovered, is dead or is incarcerated within the United States if the surety engaged in monitoring efforts or attempted to contact the defendant at least once every three weeks; requires mailing notice to the surety and agent; if a bench warrant has been issued, authorizes any jail or law enforcement agent to accept surrender of the defendant from the surety or agent or their representatives; establishes a $100 filing fee for bonds or recognizances; and forbids removing the surety or its agents from bail registry if the surety has filed a motion to vacate a forfeiture and the defendant is in custody in New Jersey or has entered an order to vacate the forfeiture that is awaiting court's signature. [This appears to be the same as 2010 A.1143, and the remission schedule does not make sense.]

S. 1133 – Adds certain weapons offenses to the list of crimes with bail restrictions.

### New Mexico

HJR. 3 – Deletes the sufficient sureties clause of the New Mexico Constitution and substitutes a provision that bail be granted or denied based on flight risk, seriousness of the offense charged, danger to the community, and other factors provided by law.  States that "The least onerous condition of release needed to comply with these factors shall be imposed."  Forbids excessive bail, cruel and unusual punishment and excessive fines and grants precedence to appeals of orders denying bail.

### Oklahoma

HJR 1088 – Would amend the state Constitution to permit denial of bail to illegal aliens charged with serious felony offenses as designated by the Legislature.

H. 2190 – Forbids bail for a person held in a secure facility against whom a petition has been filed alleging that the person is a sexually violent predator.

H. 2206 – Strikes the exception allowing a professional bondsman to write bonds on up to ten defendants per year in counties in which the bondsman cannot register his license (i.e. counties in which the bondsman does not reside or have his office) or an unlimited number of bonds in counties where there is no registered bondsman.

H. 2278 – For a defendant charged with one of the 40 offenses that render the defendant ineligible for a pretrial services program, the court can order urinalysis testing as well as use of a GPS monitoring device.  The court can also order the defendant to pay for supervision and testing as well as the GPS device and monitoring.

H. 2981 – Requires a $300,000 minimum deposit from all insurers with the surety, including bail, line of authority.  Adds changes in legal name and E-mail address to the information that must be reported to the Commissioner within 5 business days, increases the application fee for bail bondsman from $250 to $350, and increases various late filing fees.

S. 1107 – Changes the due date of financial statements required from professional bondsmen and property bondsmen from the last day of the licensee's birth month to September 15

S. 1115 – Gives the court discretion to stay the due date for payment of forfeiture.  Current law authorizes the court, in its discretion, to vacate forfeiture and exonerate the bond if good cause is shown for the defendant's failure to appear or the bondsman's failure to return the defendant within 90 days.  This bill adds the lesser remedy of staying the due date of payment.

S. 1127 – Changes the filing date for bail bondsman license applications to September 30 instead of the last day of the applicant's birth month and authorizes the Commissioner to require any documents reasonably necessary to verify information on the application.  Also amends the standard from "of good character and reputation" to "competent, trustworthy, financially responsible, and of good personal and business reputation and character."

S. 1673 – Allows a bondsman to be appointed by a professional bondsman as well as by an insurer and strikes the restrictions on writing bonds in counties where the bondsman does not reside.  To write bonds in such counties the bondsman would only have to file a copy of his or her license with the county district court clerk.

S. 1872 – Enacts a Professional Bounty Hunter Licensing Act.

S. 1202 – Strikes the ten defendants per year restriction on writing bonds in counties where the bondsman does not reside or have an office.  Provides that a professional bondsman shall not be limited in writing bonds in Oklahoma as long as the total amount of bonds written per year does not exceed 20 times the dollar amount placed on deposit.


### South Carolina

B.4572 – Deletes the provision of existing law granting the surety automatic relief from all liability if the defendant is incarcerated as a result of a bench warrant and the surety files an affidavit stating that fact and the specific terms of the bond that were violated as stated in the bench warrant.  The surety apparently could still file a motion seeking relief from liability.

B. 4916 – Adds a section to provide: (1) that the circuit court shall hear motions to modify bail; (2) after the circuit court has ruled on a motion to modify bail, any further motion for modification must make a prima facie showing of a material change in circumstance related to statutory factors, but evidence on the defendant's guilt or innocence is not a changed circumstance unless the solicitor consents; and (3) if the state seeks to revoke or modify bail it must make a written motion but if such a motion includes a prima facie showing of imminent danger to the community or to the defendant or of flight by the defendant, an accelerated procedure for an emergency hearing is provided, and such an emergency hearing is grounds for the surety to surrender the defendant.

B.4917 – Adds a mandatory, consecutive, no parole five year sentence enhancement for any general sessions court offense committed while released on a bail bond or on a personal recognizance bond.

B.5053 – Requires the court to enter information about a defendant who fails to appear in the NCIC, to send the surety and bail bondsman copies of the bench warrant within 7 days of its issuance, and requires exoneration of the surety if the state refuses to request extradition.

B. 5054 – Prohibits a bondsman or runner from making any advertisement or other statement with respect to "any premiums, percentages, or fee offerings" or any statement that is untrue, deceptive or misleading.

### Tennessee

H. 2441 and S. 2619 – Amends the statute on surrender of defendants by excepting from review, and possible refund of premium and re-release, a surrender based on a judgment of forfeiture.

H. 2442 and S. 2720 – For an applicant for approval to own a professional bonding company, changes the experience requirement from two years "with" such a company to two years "as a full-time qualified agent for" such a company.

H. 2654 and S. 2688 – Adds to the list of factors that may disqualify a bondsman a conviction in another state of a felony or misdemeanor equivalent to a Tennessee Class A misdemeanor.

H. 2678 and S. 2604 – Requires that an illegal immigrant be deemed a risk of flight for bail purposes if he or she is arrested for certain serious traffic offenses and authorizes increased bail amounts for such defendants.

S. 2510 and S. 2812 – If a defendant fails to appear, any new bail must be a 100% cash or fully secured bond.

S. 3214 – Requires the Department of Revenue to provide reports to the administrative office of the courts on collection of the bail bond tax.

### United States

S. 2183 – Creates a Fugitive Extradition and Apprehension Trust Fund into which any bail forfeitures will be deposited and used to fund the U.S. Marshal's Service to apprehend fugitives, the U.S. Attorneys to investigate and prosecute fugitives, and the Justice Department to extradite international fugitives.

### Utah

H. 29 – Forbids a bail bond producer from operating in Utah unless he or she is appointed by an authorized insurer and, if he or she submits business through an agency, designated by a licensed bail bond agency or, for property bonds, is designated by a licensed agency. An enforcement agent may operate only through a licensed bail bond agency.

### Virginia

H. 174 – Requires that a property bail bondsman, or a business or company that he uses to carry out his bail bond business, own any real property that he pledges to meet the statutory $200,000 collateral provision.  Also requires suspension of the license of any property bail bondsman who fails to pay a forfeiture within 60 days after notice and a final court order.

H. 807 – Requires the Criminal Justice Services Board to adopt regulations governing the use of electronic tracking devices by bail bondsmen and excepts use of such devices by licensed bail bondsmen in accordance with such regulations from the criminal statute barring the placing or use of an electronic tracking device through intentionally deceptive means and without consent.

S. 158 – Existing law establishes a rebuttable presumption that certain defendants should not be admitted to bail.  This bill would prevent a magistrate, clerk or deputy clerk from admitting such a defendant to bail and require a hearing with written notice to the Commonwealth's attorney before any other judicial officer does so.  Also provides that if the Commonwealth appeals a bail decision, the decision is stayed until the appeal is decided.

### Washington

H. 2423 and H. 2668 – Reduces the period in which the court must notify the surety of a defendant's failure to appear from 30 to 14 days.  Requires good cause to surrender a defendant, and if the court finds good cause was lacking requires return of the bond premium and any recovery fee.  Good cause includes, but is not limited to, a substantial increase in the risk of flight, violation of a court order, failure to appear, and concealment or intentional misrepresentation of information, but does not include failure to pay the premium.  Surrender of the defendant without good cause, gaining full authority over a person's property or finances, and failing to disclose a defendant's location upon request from law enforcement are added to the list of acts that constitute "unprofessional conduct."  If a court revokes or reinstates a bail bond agent it must notify the administrative office of the courts which will notify all other courts of the action.  Defines property bond and surety bond.  Increases the surety bond to be posted by a property bond agency from $10,000 to $100,000 (the bond for a surety bond agency remains at $10,000).  Authorizes audits of licensee trust accounts unless the licensee submits an annual CPA audited statement.

S. 5056 (Substitute Bill) – Subject to appropriations, requires development of a "risk assessment tool" by the Washington state institute for public policy, authorizes its use, and authorizes the center for court research to evaluate the "risk assessment tool" and submit a report every two years on its use.  Exonerates a bond if the court fails to notify the surety of a default within 14 calendar days (instead of 30 days in current law), requires good cause to surrender the defendant and, if the court determines good cause did not exist, the surety must return the premium and any recovery fee.  Surrender without good cause is "unprofessional conduct." If a court revokes or reinstates a bail bond agent's certification to post bonds in the court, it shall notify the administrative office of the courts which shall notify other state courts.  Adds to the list of unprofessional conduct "Entering into a contract, including a general power of attorney, with a person that gives the bail bond agent full authority over the person's finances, assets, real property, or personal property" and failing to disclose to law enforcement upon request

information on the location of a fugitive defendant.  Defines bail bond insurance as surety insurance and makes surety insurance subject to the rate standards set forth in RCW 48.19.020.

**Wisconsin**

A. 567 – Permits and regulates commercial bail.  Current law forbids compensation for acting as surety on a bail bond.  Would make an exception for a licensed bail bond agent or bail bond agency and require a premium equal to 10% of the amount of the bond.  Establishes licensing framework for bail bond agents, bail bond agencies, and bail recovery agents, and authorizes the Department of Safety and Professional Services to promulgate detailed Rules.

## Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Friday, April 20, 2012 9:35 AM |
| To: | Committee-BBAC-Open |
| Cc: | DNABIC@aol.com |
| Subject: | Corrected Legislative Report |
| Attachments: | 2012 Bail Bond Legislation.doc |

Sorry, I put the Michigan "Charitable Bail Organization" bill under Pennsylvania. A corrected Report is attached.

## 2012 Bail Bond Legislation

(Bills added since the last distribution are marked with an asterisk)

### Alabama

*H. 703 – Imposes a filing fee of $35 on every bail bond plus an additional fee of 3.5% of the face amount of the bond (or $100, whichever is greater) but not to exceed $450 for misdemeanors and 3.5% (or $150, whichever is greater, but not to exceed $750 for felonies. For judicial public bail, recognizance or signature bonds the additional fee shall be $25. The filing fee shall be paid by the surety or bondsman not later than the day after execution of the bond. The additional fee shall be imposed when the defendant appears for adjudication or sentencing and any cash or property pledged shall guarantee the fee. The fees shall be divided according to percentages set out among the sheriff, court clerk and solicitor with parts of the additional fees also paid to the State and the Forensic Services Trust Fund. If the defendant is acquitted, the additional fee is not paid.

### Arizona

H. 2432 – Provides that the surety shall be relieved of liability upon surrendering the defendant before or within 30 days after the failure to appear except that if the surrender is after the failure to appear the judicial officer may forfeit up to $1,000 of the bond.

H. 2433 – Requires that the list of persons authorized to post bail bonds be updated monthly with the names rotated. Forbids soliciting bail bond business inside of, or within 200 feet of the entrance to, a court building or jail. An employee of a bail agent can submit the bond if he or she has proper identification.

H. 2434 – Makes a person convicted of a felony in the previous seven years not eligible for supervision under pretrial services and provides that a defendant not released on his own recognizance shall be released on either a cash or secured appearance bond unless the defendant previously failed to appear, is in custody for unpaid child support, fines or fees, or is charged with a class 1 or 2 felony. For such defendants the judicial officer could order a cash only bond.

S. 1284 – Amends statutes governing bail bond agents to require a receipt for payment of fees and expenses, require that all collateral be held in a fiduciary capacity and insured (except against weather damage which shall be the risk of the indemnitor), deposit cash collateral in an account separate from the agent's operating accounts, and disclose all premiums and fees. The agent's license may be suspended or revoked for charging more than the maximum fee or violating any provision of law or rule governing the agent's business. Requires having a signed contract and fee agreement before securing release of a person (other than a relative). The premium shall be valid for one year from the date the bond is posted. Any renewal premium shall be pro rated.

S. 1285 – Revises the licensing of bail recovery agents to require a high school diploma or GED, completion of a gun safety course or have an honorable discharge from the military, be at least 21, be a resident of Arizona for at least a year, and submit fingerprints. The license shall not be issued until after the fingerprint check is completed. A certified peace officer may not act as a bail recovery agent.

### California

A. 1529 – Adds a section 1305.5 to the Penal Code to provide that appeals of denial of motions to vacate bail bond forfeitures of $25,000 or less shall be treated as a limited civil case and go to the appellate division of the superior court rather than to the court of appeals. If the forfeiture is more than $25,000 the appeal is treated as an unlimited civil case and go to the court of appeals.

*A. 1824 – As amended, allows a motion for exoneration to be filed for up to 30 days after expiration of the appearance period, applies the extradition rules to transfers from another county, tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extradition process. Requires remand of the defendant who pleads guilty or nolo contendere, requires warrants be entered in the NCIC system as fully extraditable, authorizes settlement of forfeiture judgments if a motion to vacate is made and the court approves the settlement.

A. 2029 – Regulates the licensure and conduct of Bail Fugitive Recovery Persons including making it a misdemeanor knowingly to hire an unauthorized person to apprehend a bail fugitive.

S. 968 – Expands eligibility for release on electronic monitoring. Certain defendants eligible for bail may apply for release on electronic monitoring with bail reduced by up to 75%. Such an application may be made to the court starting from 10 court days following arraignment.

S. 989 – Amends Penal Code §1305 to require exoneration of the bond if the defendant is deported. If the defendant is located in another jurisdiction and brought before local law enforcement pursuant to §305(g), tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extraction process. The bond is exonerated if the prosecuting agency does not decide to seek extradition within a reasonable time. Adds "or the United States Attorney" after prosecuting agency in both provisions.

S. 1265 – Permits a limited liability company (LLC) to be licensed as a bail agency on the same conditions as a corporation and exempts an admitted surety insurer, or a subsidiary of an admitted surety insurer, from the requirement that all officers and stockholders (or LLC members) must be licensed bail agents.

### Colorado

H. 12-1114 – Treats stalking the same as domestic violence in terms of setting bail, protective orders and punishment for violating conditions of bail or protective orders.

H. 12-1266 – Extends the sunset of the division of insurance regulation of bail, requires that all forms used in connection with bail be filed with and approved by the division, and revises requirements for cash bonding agents and "Professional Cash Bail Agents" who will qualify by posting a bond with the division of insurance instead of by appointment from a bail insurance company.

H. 12-1310 – Adds to the information that each pretrial services program must include in their annual reports including crime classification of failures to appear, information on those remaining at large, information on those returned to custody and how recovered, re-arrests, and revocations. Permits surety to consent in writing to continuance of bond through sentencing either in initial bond documents or at the time of conviction or within a reasonable time thereafter.

H. 12-1316 – Amends provisions on bonds for possible illegal aliens. If the agency holding the defendant determines that there is an ICE detainer lodged against a person arrested or charged with felonies or class 1 or 2 misdemeanors, it shall notify the bail bond agent before the bond is posted. The bond shall be forfeited if the defendant is deported. The agency shall also notify the district attorney and any pretrial services office, and if the defendant posts bond, the agency shall notify the district attorney before notifying ICE that the defendant is eligible for release to ICE.

### Connecticut

H. 5093 – As a condition precedent to exoneration after the defendant is incarcerated or detained in another state, requires the surety or bail bond agent to agree to reimburse the Division of Criminal Justice for extradition costs incurred to secure the defendant's return.

H. 5382 – Requires applicants for licenses as professional bondsmen and bail recovery agents to be 21 years of age and high school graduates (or equivalents) and not subject to a restraining or protective order involving the use or attempted use of force against another person. Regulates badges worn by bail enforcement agent and permits for bail agents, professional bondsmen and bail agents to carry concealed weapons and adds new requirements to qualify as an instructor in courses required for firearms licenses.

S. 446 – Limits a surety bond for a misdemeanor, or a violation punishable by imprisonment for one year or less, to a maximum of $5,000 unless the court, judge or referee makes specific findings why a greater amount is necessary.

### Florida

H. 135 and S.210 – Requires that costs of prosecution and costs of representation be withheld from any cash bond posted by any person other than a licensed bail bond agent.

H. 725 and S.938 – Provides for E-mailed notice of time and place of licensure examination for bail bond agents.  Strikes the separate standards for continuing education courses for bail bond agents and substitutes a cross reference to the Code section on continuing education courses for insurance agents in general.  Amends section on forfeitures to delete the requirement that the clerk send the Department of Financial Services and Office of Insurance Regulation copies of each judgment within 10 days of its entry.  Adds that such notice to the surety must be sent to the surety's home office.  If the judgment is not paid within 60 days (formerly 35 days), notice must be sent to the Office of Insurance Regulation.

H. 771 and S.1820 – Makes extensive changes to the regulation of bail bond agents including requiring an "agent in charge" for each office, limiting the duration of a temporary bail bond agent license, restricting ownership or management of an agency to bail bond agents licensed and appointed for at least three years, fines insurers up to $1,000 per agent per month for failure to submit a statement of build up trust accounts, establishes a 30 day deadline for agents to pay over premiums, collateral or other funds, authorizes premium payment plans under specified conditions, authorizes persons properly licensed in other states to recover defendants on bonds written in the other state, forbids a licensed agent from directing an unlicensed person to recover a defendant in Florida, requires the monthly report for temporary bail bond agents to be submitted within 15 days of the end of the month and authorizes a fine of up to $500 per month for late submission, requires payment of wages to the temporary bail bond agent and makes them subject to unemployment compensation tax, forbids a temporary bail bond agent from accepting the initial premium for a bond but does allow him or her to accept subsequent payments under a premium payment plan, details circumstances requiring affidavits listing any unpaid judgments, premiums or other contractual obligations, authorizes online continuing education, requires cancellation of the appointment of any managing general agent if a prior insurer reports unpaid forfeitures, judgments, premiums, losses or other contractual obligations, an insurer appointing a managing general agent is bound by the acts of the managing general agent within the scope of the appointment, allows an agent to provide contact information for multiple attorneys, forbids promising an inmate anything of value in return for referrals, forbids anyone from acting as a professional bail bond agent without a license as such, forbids travel fees for posting a bond if the same agent or agency that posted the bond also wrote the bond, requires immediate return of premium if a bond is not executed, requires all advertising to include the license number of the bail bond agent, requires return of collateral if the bond has expired, increases numerous fines and penalties, and authorizes Regulations to carry out numerous provisions of the bill.

H. 455,  H.7047 and S. 1800 – Bars bail for defendants required to register as sexual offenders or sexual predators "until the first appearance in the case in order to ensure full participation of the prosecutor and protection of the public."


**Georgia**

H. 1298 – Adds 25% on to all bail bonds in Atlanta to be paid, in the event of forfeiture, to the City of Atlanta jail fund.

**Hawaii**

H. 2243 and S. 2158 – Requires that when the court with jurisdiction is closed, a law enforcement agency must release the defendant upon receiving cash, a certified copy of a pre-filed bail bond, or an original bail bond from a licensed agent.

H. 2868 and S. 3068 – Enacts a new Chapter in the Code providing mechanisms to enforce payment of bonds, suspend agents or insurers who do not pay, exonerate bonds upon recovery of the defendant or a showing that the failure to appear was caused by an Act of God or of the State or the law, and allow payment of costs of extradition from the bond.

**Idaho**

S. 1325 – Requires full payment of the bail bond premium before the defendant is released. Premium financing would be a permitted method of paying the premium, but no bail agent or surety company may have any financial affiliation with, or indemnify or receive compensation from, the premium financier.

**Illinois**

S. 2870 – Adds "a surety bond in an amount equal to 25% of the bail, executed by a surety approved by the court" as an alternative to the current requirement of a 10% cash deposit. That is, the defendant must execute the bond and deposit either 10% cash or a 25% surety bond.

**Kansas**

S. 321 – Restricts persons eligible for release on their own recognizance to residents of Kansas in the U.S. legally who are charged with misdemeanors or certain levels of felonies, have no prior history of failures to appear, no detainers, have not been extradited, are not awaiting extradition, and have not been detained for alleged probation violation. Also requires an out of state surety or agent who intends to apprehend any person in Kansas to contract with a person authorized to act as a surety or agent in Kansas, and that authorized person must accompany the out of state person during the apprehension.

**Louisiana**

H. 190 – Allows the clerk to give notice to the surety of a forfeiture judgment either at the address provided pursuant to present law (Art. 322) or at an address registered with the Department of Insurance.

H. 304 – Shortens the Bail Bond Apprentice Program from six months to three months.

H. 398 – Adds three Parishes (Ascension, Assumption and St. James) that will be authorized to alter the percentage to be deposited as cash bail and to charge a $15 fee for processing the bond.

H. 513 – Adds certain information and record keeping for the Bail Bond Apprentice Program.

H. 581 – If the prosecutor dismisses a case for which the defendant had provided bail and a subsequent indictment or information charges the same or a lesser offense based on the same facts, the court must reinstate the bail if the surety consents.  If the defendant voluntarily appears on the first occasion of which he or she has actual notice, the court must permit the defendant to remain free for five days, excluding weekends, to obtain the surety's consent.

H. 760 – If a defendant is released on bail for a crime of violence and is subsequently arrested for any crime the bail is automatically revoked and bail is barred for the new offense.

S. 242 – Narrows the separate treatment of Orleans Parish for purposes of the premium fee to bonds for charges to be prosecuted in the Criminal District Court.  The $3 fee will apply only to bonds in that court.

S. 173 – Deletes authority for a bail bond of up to $500 during the period is placed on probation by the Traffic Court of New Orleans.

S. 291 – Deletes the provision in current law that the prosecutor may enforce an unpaid forfeiture as a civil judgment leaving filing a rule to show cause with the Insurance Commissioner as the sole enforcement method.

S. 292 – Expands the grounds to exonerate the bond by adding refusal to extradite the defendant and failure to enter the defendant in the NCIC registry.  Also deletes extensions of time or setting aside judgments because of a fortuitous event that makes it impossible to perform and the requirement that a motion for such exoneration be filed within 366 days of the fortuitous event and substitutes extensions of time or setting aside judgments if they are "justified under the facts of the case" without any time limit for the motion.

S. 294 – Requires notice of the signing of the judgment to be mailed within 60 days of the defendant's initial failure to appear instead of within 60 days after the defendant fails to appear.

S. 319 – Amends the provision of the Code of Criminal Procedure that provides if the defendant appears and the proceeding is continued to a specific date the defendant not be given further notice of the new date by requiring that the surety or agent have notice either in the bond or by written notice.  [The Digest with the bill says that is its intent, but the actually language seems to be unclear as to what proceeding the new notice requirement applies.  It could be read to mean notice of the original appearance date not the new one.]

S. 492 – Extends to the 23rd Judicial District the right to alter the percentage of cash bond and the filing fee just as the parishes of St. John the Baptist and St. Charles can now.

S. 621 – Repeals the right of the Municipal and Traffic Courts of New Orleans to impose a bail bond fee for submission of bonds but doubles, to $30, the fee taxed as part of costs to every defendant who is convicted, pleads guilty or forfeits bond in the Municipal Court of New Orleans.

*S. 681 – Establishes $100,000 as the minimum bail amount for a defendant charged with a felony offense involving a firearm who has previously been convicted of a crime that made the defendant's possession of a firearm unlawful.

### Maine

H. 312 – Requires as a condition of bail for persons charged with certain crimes of domestic violence that the defendant turn over all firearms to a law enforcement officer and refrain from possessing firearms or other specified dangerous weapons.

H.1256 – Authorizes electronic monitoring, at the defendant's expense, as a condition of bail for defendants charged with crimes involving domestic violence.

### Maryland

H. 338 and S. 690 – Forbids a district court commissioner from releasing defendants charged with certain enumerated offenses and permits a judge to release such defendants only on full cash or corporate surety bond or on a property bond secured by property located in Maryland with equity equal to the amount of the bond plus $20,000.  Enacts a rebuttable presumption that such defendants will flee and will pose a danger to another person or the community.

H. 492 – Except for failure to pay family support, "cash bail" or "cash bond" may be provided in the form of cash, a surety bond, or a property bond by the defendant, or by a private surety acting for the defendant.  For failure to pay family support, only the defendant may post a "cash bail" or a "cash bond."

H. 517 – Forbids a surety from accepting or providing real property as security for a bond unless the owner of the property certifies that the property has no outstanding citations for building or property code violations.

H. 551 – Provides that if the defendant is taken into custody by Immigration and Customs Enforcement because of his or her immigration status, the bond is void, the bond must be returned to the surety and the surety discharged, and any premium must be refunded.

H. 573 – Forbids courthouse or correctional facility employees from soliciting for or advertising the services of a specific bondsman and increases the penalties for banned solicitation by a bondsman or agent as well as by the added employees.

H. 742 and S. 489 – Requires applicants for a bail bondsman's license to certify one year's regular employment by a licensed bail bondsman and authorizes installment payment of premiums. If the premium is paid by installments, certain records have to be kept and attempts made to collect any balance owed. The installment agreement must include certain information about the payments owed.

### Michigan

*H. 5533 – Allows a Charitable Bail Organization (CBO) to post bail. The CBO cannot be compensated for the bail, and it must qualify as a 501(c)(3) organization and be registered under the charitable organizations act and must be "organized for the purpose of posting cash bail on behalf of poor individuals."

### Mississippi

H. 173 and S. 2838 – Automatically stays execution on a bond forfeiture for 90 days from the entry of final judgment and requires the court to exonerate the bond if the defendant appears or is surrendered before execution of final judgment. Grants a bail agent immunity from civil damages for actions taken within the scope of his authority and in good faith to enforce a court order, scire facias and final judgment. Bail agents shall not be liable in civil damages resulting from a court's failure to properly issue or serve the surety with a set aside order for scire facias or final judgment or with the writs or judgment themselves.

H. 174, H. 631 and S. 2805 – Revises prelicensing educational requirements for professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.

H. 175 and S. 2837 – Deletes requirement that the sheriff approve a bond from a properly licensed bail agent.

H. 631 and S. 2805 – Revises prelicensing educational requirements for professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent. Makes it unlawful to refuse to return collateral or other indemnity when the premium has been paid or the obligation on the bond terminated.

H. 880 and S. 2847 – Designates certain charges as crimes with bail restrictions, for defendants charged with such designated crimes requires full cash, corporate surety or bond secured by real property and, if real property, requires an affidavit from the owner with information as to equity in the property. Creates a presumption for full cash bail if a defendant charged with such crimes also has two prior felony convictions or two other indictable offenses pending or was on parole or has a prior conviction for certain enumerated crimes including bail jumping.

H. 1439 – for persons charged with domestic violence offenses, the court must check the Mississippi Protective Order Registry and consider any protective order before granting bail.

H. 1471 – Permits release on own recognizance or appearance bond unless the court determines this will not reasonably assure appearance or protect others or the public; in which case the court may impose the least onerous conditions to assure appearance and protect others and the public taking into account a list of factors related to the defendant and the offense. Also establishes a bail schedule but permits deviation in the court's discretion. Forbids post conviction bail if the sentence is 20 years or more or if conditions of release will not reasonably assure the defendant's surrender or protection for others or the public.

S. 2254 – If a defendant is charged with a crime involving a domestic victim, the court must check the Mississippi Protective Order Registry and if there is a domestic abuse protective order against the defendant, take that into account when determining bail.

S 2620 – Would permit renewal of a professional bail agent's license held on the effective date of the act even though the licensee was convicted of a felony not involving moral turpitude.

### Missouri

H. 1867 – Requires the court to accept "a guarantee from any surety who is in compliance with general laws regulating such profession" in lieu of a cash only bond.

### New Jersey

CR 93 – Amends the state Constitution to allow the legislature to forbid bail to illegal immigrants charged with certain crimes.

A. 474 and S. 560 – Adds assault and death by auto or vessel to the list of crimes with bail restrictions.

A. 1674 and S. 733 – Makes 16 additions to the list of crimes with bail restrictions.

A.1713 – If a released defendant is charged with a second offense involving petty disorderly persons, disorderly persons, a crime of the fourth degree or a crime of the third degree, there would be a presumption of a 50% cash bail option. For a third or subsequent charge for the same categories of offenses, the presumption would be for 100% cash bond. This seems to be intended to substitute the higher percentages for a 10% cash option.

A.1772 and S. 678 – Forbids release of illegal immigrants charged with crimes of the first or second degree or previously convicted of two or more crimes that occurred on separate occasions. The change would take effect upon amendment to the state Constitution per CR 93.

A.2254 – Authorizes establishment of a pretrial release program. Any defendant would be eligible except one charged with a crime with bail restrictions or other first degree offenses.

A. 2536 -- A bail bond can be forfeited only for failure to appear; establishes a schedule for remission of forfeitures if the defendant is recovered, is dead or is incarcerated within the United States if the surety engaged in monitoring efforts or attempted to contact the defendant at least once every three weeks; requires mailing notice to the surety and agent; if a bench warrant has been issued, authorizes any jail or law enforcement agent to accept surrender of the defendant from the surety or agent or their representatives; establishes a $100 filing fee for bonds or recognizances; and forbids removing the surety or its agents from bail registry if the surety has filed a motion to vacate a forfeiture and the defendant is in custody in New Jersey or has entered an order to vacate the forfeiture that is awaiting court's signature. [This appears to be the same as 2010 A.1143, and the remission schedule does not make sense.]

S. 1133 – Adds certain weapons offenses to the list of crimes with bail restrictions.

### New Mexico

HJR. 3 – Deletes the sufficient sureties clause of the New Mexico Constitution and substitutes a provision that bail be granted or denied based on flight risk, seriousness of the offense charged, danger to the community, and other factors provided by law. States that "The least onerous condition of release needed to comply with these factors shall be imposed." Forbids excessive bail, cruel and unusual punishment and excessive fines and grants precedence to appeals of orders denying bail.

### Oklahoma

HJR 1088 – Would amend the state Constitution to permit denial of bail to illegal aliens charged with serious felony offenses as designated by the Legislature.

H. 2190 – Forbids bail for a person held in a secure facility against whom a petition has been filed alleging that the person is a sexually violent predator.

H. 2206 – Strikes the exception allowing a professional bondsman to write bonds on up to ten defendants per year in counties in which the bondsman cannot register his license (i.e. counties in which the bondsman does not reside or have his office) or an unlimited number of bonds in counties where there is no registered bondsman.

H. 2278 – For a defendant charged with one of the 40 offenses that render the defendant ineligible for a pretrial services program, the court can order urinalysis testing as well as use of a GPS monitoring device. The court can also order the defendant to pay for supervision and testing as well as the GPS device and monitoring.

H. 2981 – Requires a $300,000 minimum deposit from all insurers with the surety, including bail, line of authority. Adds changes in legal name and E-mail address to the information that

must be reported to the Commissioner within 5 business days, increases the application fee for bail bondsman from $250 to $350, and increases various late filing fees.

S. 1107 – Changes the due date of financial statements required from professional bondsmen and property bondsmen from the last day of the licensee's birth month to September 15

S. 1115 – Gives the court discretion to stay the due date for payment of forfeiture.  Current law authorizes the court, in its discretion, to vacate forfeiture and exonerate the bond if good cause is shown for the defendant's failure to appear or the bondsman's failure to return the defendant within 90 days.  This bill adds the lesser remedy of staying the due date of payment.

S. 1127 – Changes the filing date for bail bondsman license applications to September 30 instead of the last day of the applicant's birth month and authorizes the Commissioner to require any documents reasonably necessary to verify information on the application.  Also amends the standard from "of good character and reputation" to "competent, trustworthy, financially responsible, and of good personal and business reputation and character."

S. 1673 – Allows a bondsman to be appointed by a professional bondsman as well as by an insurer and strikes the restrictions on writing bonds in counties where the bondsman does not reside.  To write bonds in such counties the bondsman would only have to file a copy of his or her license with the county district court clerk.

S. 1872 – Enacts a Professional Bounty Hunter Licensing Act.

S. 1202 – Strikes the ten defendants per year restriction on writing bonds in counties where the bondsman does not reside or have an office.  Provides that a professional bondsman shall not be limited in writing bonds in Oklahoma as long as the total amount of bonds written per year does not exceed 20 times the dollar amount placed on deposit.


### South Carolina

B.4572 – Deletes the provision of existing law granting the surety automatic relief from all liability if the defendant is incarcerated as a result of a bench warrant and the surety files an affidavit stating that fact and the specific terms of the bond that were violated as stated in the bench warrant.  The surety apparently could still file a motion seeking relief from liability.

B. 4916 – Adds a section to provide: (1) that the circuit court shall hear motions to modify bail; (2) after the circuit court has ruled on a motion to modify bail, any further motion for modification must make a prima facie showing of a material change in circumstance related to statutory factors, but evidence on the defendant's guilt or innocence is not a changed circumstance unless the solicitor consents; and (3) if the state seeks to revoke or modify bail it must make a written motion but if such a motion includes a prima facie showing of imminent danger to the community or to the defendant or of flight by the defendant, an accelerated

procedure for an emergency hearing is provided, and such an emergency hearing is grounds for the surety to surrender the defendant.

B.4917 – Adds a mandatory, consecutive, no parole five year sentence enhancement for any general sessions court offense committed while released on a bail bond or on a personal recognizance bond.

B.5053 – Requires the court to enter information about a defendant who fails to appear in the NCIC, to send the surety and bail bondsman copies of the bench warrant within 7 days of its issuance, and requires exoneration of the surety if the state refuses to request extradition.

B. 5054 – Prohibits a bondsman or runner from making any advertisement or other statement with respect to "any premiums, percentages, or fee offerings" or any statement that is untrue, deceptive or misleading.


### Tennessee

H. 2441 and S. 2619 – Amends the statute on surrender of defendants by excepting from review, and possible refund of premium and re-release, a surrender based on a judgment of forfeiture.

H. 2442 and S. 2720 – For an applicant for approval to own a professional bonding company, changes the experience requirement from two years "with" such a company to two years "as a full-time qualified agent for" such a company.

H. 2654 and S. 2688 – Adds to the list of factors that may disqualify a bondsman a conviction in another state of a felony or misdemeanor equivalent to a Tennessee Class A misdemeanor.

H. 2678 and S. 2604 – Requires that an illegal immigrant be deemed a risk of flight for bail purposes if he or she is arrested for certain serious traffic offenses and authorizes increased bail amounts for such defendants.

S. 2510 and S. 2812 – If a defendant fails to appear, any new bail must be a 100% cash or fully secured bond.

S. 3214 – Requires the Department of Revenue to provide reports to the administrative office of the courts on collection of the bail bond tax.


### United States

S. 2183 – Creates a Fugitive Extradition and Apprehension Trust Fund into which any bail forfeitures will be deposited and used to fund the U.S. Marshal's Service to apprehend fugitives, the U.S. Attorneys to investigate and prosecute fugitives, and the Justice Department to extradite international fugitives.

### Utah

H. 29 – Forbids a bail bond producer from operating in Utah unless he or she is appointed by an authorized insurer and, if he or she submits business through an agency, designated by a licensed bail bond agency or, for property bonds, is designated by a licensed agency.  An enforcement agent may operate only through a licensed bail bond agency.

### Virginia

H. 174 – Requires that a property bail bondsman, or a business or company that he uses to carry out his bail bond business, own any real property that he pledges to meet the statutory $200,000 collateral provision.  Also requires suspension of the license of any property bail bondsman who fails to pay a forfeiture within 60 days after notice and a final court order.

H. 807 – Requires the Criminal Justice Services Board to adopt regulations governing the use of electronic tracking devices by bail bondsmen and excepts use of such devices by licensed bail bondsmen in accordance with such regulations from the criminal statute barring the placing or use of an electronic tracking device through intentionally deceptive means and without consent.

S. 158 – Existing law establishes a rebuttable presumption that certain defendants should not be admitted to bail.  This bill would prevent a magistrate, clerk or deputy clerk from admitting such a defendant to bail and require a hearing with written notice to the Commonwealth's attorney before any other judicial officer does so.  Also provides that if the Commonwealth appeals a bail decision, the decision is stayed until the appeal is decided.

### Washington

H. 2423 and H. 2668 – Reduces the period in which the court must notify the surety of a defendant's failure to appear from 30 to 14 days.  Requires good cause to surrender a defendant, and if the court finds good cause was lacking requires return of the bond premium and any recovery fee.  Good cause includes, but is not limited to, a substantial increase in the risk of flight, violation of a court order, failure to appear, and concealment or intentional misrepresentation of information, but does not include failure to pay the premium.  Surrender of the defendant without good cause, gaining full authority over a person's property or finances, and failing to disclose a defendant's location upon request from law enforcement are added to the list of acts that constitute "unprofessional conduct."  If a court revokes or reinstates a bail bond agent it must notify the administrative office of the courts which will notify all other courts of the action.  Defines property bond and surety bond.  Increases the surety bond to be posted by a property bond agency from $10,000 to $100,000 (the bond for a surety bond agency remains at $10,000).  Authorizes audits of licensee trust accounts unless the licensee submits an annual CPA audited statement.

S. 5056 (Substitute Bill) – Subject to appropriations, requires development of a "risk assessment tool" by the Washington state institute for public policy, authorizes its use, and authorizes the center for court research to evaluate the "risk assessment tool" and submit a report every two years on its use. Exonerates a bond if the court fails to notify the surety of a default within 14 calendar days (instead of 30 days in current law), requires good cause to surrender the defendant and, if the court determines good cause did not exist, the surety must return the premium and any recovery fee. Surrender without good cause is "unprofessional conduct." If a court revokes or reinstates a bail bond agent's certification to post bonds in the court, it shall notify the administrative office of the courts which shall notify other state courts. Adds to the list of unprofessional conduct "Entering into a contract, including a general power of attorney, with a person that gives the bail bond agent full authority over the person's finances, assets, real property, or personal property" and failing to disclose to law enforcement upon request information on the location of a fugitive defendant. Defines bail bond insurance as surety insurance and makes surety insurance subject to the rate standards set forth in RCW 48.19.020.

### Wisconsin

A. 567 – Permits and regulates commercial bail. Current law forbids compensation for acting as surety on a bail bond. Would make an exception for a licensed bail bond agent or bail bond agency and require a premium equal to 10% of the amount of the bond. Establishes licensing framework for bail bond agents, bail bond agencies, and bail recovery agents, and authorizes the Department of Safety and Professional Services to promulgate detailed Rules.

Orgovan, Joseph

From:            Gallagher, Edward
Sent:            Thursday, April 19, 2012 4:34 PM
To:              Committee-BBAC-Open
Cc:              DNABIC@aol.com
Subject:         Legislation
Attachments:     2012 Bail Bond Legislation.doc

An updated Report is attached.

# 2012 Bail Bond Legislation

(Bills added since the last distribution are marked with an asterisk)

### Alabama

*H. 703 – Imposes a filing fee of $35 on every bail bond plus an additional fee of 3.5% of the face amount of the bond (or $100, whichever is greater) but not to exceed $450 for misdemeanors and 3.5% (or $150, whichever is greater, but not to exceed $750 for felonies.  For judicial public bail, recognizance or signature bonds the additional fee shall be $25.  The filing fee shall be paid by the surety or bondsman not later than the day after execution of the bond. The additional fee shall be imposed when the defendant appears for adjudication or sentencing and any cash or property pledged shall guarantee the fee.  The fees shall be divided according to percentages set out among the sheriff, court clerk and solicitor with parts of the additional fees also paid to the State and the Forensic Services Trust Fund.  If the defendant is acquitted, the additional fee is not paid.

### Arizona

H. 2432 – Provides that the surety shall be relieved of liability upon surrendering the defendant before or within 30 days after the failure to appear except that if the surrender is after the failure to appear the judicial officer may forfeit up to $1,000 of the bond.

H. 2433 – Requires that the list of persons authorized to post bail bonds be updated monthly with the names rotated.  Forbids soliciting bail bond business inside of, or within 200 feet of the entrance to, a court building or jail.  An employee of a bail agent can submit the bond if he or she has proper identification.

H. 2434 – Makes a person convicted of a felony in the previous seven years not eligible for supervision under pretrial services and provides that a defendant not released on his own recognizance shall be released on either a cash or secured appearance bond unless the defendant previously failed to appear, is in custody for unpaid child support, fines or fees, or is charged with a class 1 or 2 felony.  For such defendants the judicial officer could order a cash only bond.

S. 1284 – Amends statutes governing bail bond agents to require a receipt for payment of fees and expenses, require that all collateral be held in a fiduciary capacity and insured (except against weather damage which shall be the risk of the indemnitor), deposit cash collateral in an account separate from the agent's operating accounts, and disclose all premiums and fees.  The agent's license may be suspended or revoked for charging more than the maximum fee or violating any provision of law or rule governing the agent's business.  Requires having a signed contract and fee agreement before securing release of a person (other than a relative).  The premium shall be valid for one year from the date the bond is posted.  Any renewal premium shall be pro rated.

S. 1285 – Revises the licensing of bail recovery agents to require a high school diploma or GED, completion of a gun safety course or have an honorable discharge from the military, be at least 21, be a resident of Arizona for at least a year, and submit fingerprints.  The license shall not be issued until after the fingerprint check is completed.  A certified peace officer may not act as a bail recovery agent.

### California

A. 1529 – Adds a section 1305.5 to the Penal Code to provide that appeals of denial of motions to vacate bail bond forfeitures of $25,000 or less shall be treated as a limited civil case and go to the appellate division of the superior court rather than to the court of appeals.  If the forfeiture is more than $25,000 the appeal is treated as an unlimited civil case and go to the court of appeals.

*A. 1824 – As amended, allows a motion for exoneration to be filed for up to 30 days after expiration of the appearance period, applies the extradition rules to transfers from another county, tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extradition process.  Requires remand of the defendant who pleads guilty or nolo contendere, requires warrants be entered in the NCIC system as fully extraditable, authorizes settlement of forfeiture judgments if a motion to vacate is made and the court approves the settlement.

A. 2029 – Regulates the licensure and conduct of Bail Fugitive Recovery Persons including making it a misdemeanor knowingly to hire an unauthorized person to apprehend a bail fugitive.

S. 968 – Expands eligibility for release on electronic monitoring.  Certain defendants eligible for bail may apply for release on electronic monitoring with bail reduced by up to 75%.  Such an application may be made to the court starting from 10 court days following arraignment.

S. 989 – Amends Penal Code §1305 to require exoneration of the bond if the defendant is deported.  If the defendant is located in another jurisdiction and brought before local law enforcement pursuant to §305(g), tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extraction process.  The bond is exonerated if the prosecuting agency does not decide to seek extradition within a reasonable time.  Adds "or the United States Attorney" after prosecuting agency in both provisions.

S. 1265 – Permits a limited liability company (LLC) to be licensed as a bail agency on the same conditions as a corporation and exempts an admitted surety insurer, or a subsidiary of an admitted surety insurer, from the requirement that all officers and stockholders (or LLC members) must be licensed bail agents.

### Colorado

H. 12-1114 – Treats stalking the same as domestic violence in terms of setting bail, protective orders and punishment for violating conditions of bail or protective orders.

H. 12-1266 – Extends the sunset of the division of insurance regulation of bail, requires that all forms used in connection with bail be filed with and approved by the division, and revises requirements for cash bonding agents and "Professional Cash Bail Agents" who will qualify by posting a bond with the division of insurance instead of by appointment from a bail insurance company.

H. 12-1310 – Adds to the information that each pretrial services program must include in their annual reports including crime classification of failures to appear, information on those remaining at large, information on those returned to custody and how recovered, re-arrests, and revocations. Permits surety to consent in writing to continuance of bond through sentencing either in initial bond documents or at the time of conviction or within a reasonable time thereafter.

H. 12-1316 – Amends provisions on bonds for possible illegal aliens. If the agency holding the defendant determines that there is an ICE detainer lodged against a person arrested or charged with felonies or class 1 or 2 misdemeanors, it shall notify the bail bond agent before the bond is posted. The bond shall be forfeited if the defendant is deported. The agency shall also notify the district attorney and any pretrial services office, and if the defendant posts bond, the agency shall notify the district attorney before notifying ICE that the defendant is eligible for release to ICE.

### Connecticut

H. 5093 – As a condition precedent to exoneration after the defendant is incarcerated or detained in another state, requires the surety or bail bond agent to agree to reimburse the Division of Criminal Justice for extradition costs incurred to secure the defendant's return.

H. 5382 – Requires applicants for licenses as professional bondsmen and bail recovery agents to be 21 years of age and high school graduates (or equivalents) and not subject to a restraining or protective order involving the use or attempted use of force against another person. Regulates badges worn by bail enforcement agent and permits for bail agents, professional bondsmen and bail agents to carry concealed weapons and adds new requirements to qualify as an instructor in courses required for firearms licenses.

S. 446 – Limits a surety bond for a misdemeanor, or a violation punishable by imprisonment for one year or less, to a maximum of $5,000 unless the court, judge or referee makes specific findings why a greater amount is necessary.

### Florida

H. 135 and S.210 – Requires that costs of prosecution and costs of representation be withheld from any cash bond posted by any person other than a licensed bail bond agent.

H. 725 and S.938 – Provides for E-mailed notice of time and place of licensure examination for bail bond agents.  Strikes the separate standards for continuing education courses for bail bond agents and substitutes a cross reference to the Code section on continuing education courses for insurance agents in general.  Amends section on forfeitures to delete the requirement that the clerk send the Department of Financial Services and Office of Insurance Regulation copies of each judgment within 10 days of its entry.  Adds that such notice to the surety must be sent to the surety's home office.  If the judgment is not paid within 60 days (formerly 35 days), notice must be sent to the Office of Insurance Regulation.

H. 771 and S.1820 – Makes extensive changes to the regulation of bail bond agents including requiring an "agent in charge" for each office, limiting the duration of a temporary bail bond agent license, restricting ownership or management of an agency to bail bond agents licensed and appointed for at least three years, fines insurers up to $1,000 per agent per month for failure to submit a statement of build up trust accounts, establishes a 30 day deadline for agents to pay over premiums, collateral or other funds, authorizes premium payment plans under specified conditions, authorizes persons properly licensed in other states to recover defendants on bonds written in the other state, forbids a licensed agent from directing an unlicensed person to recover a defendant in Florida, requires the monthly report for temporary bail bond agents to be submitted within 15 days of the end of the month and authorizes a fine of up to $500 per month for late submission, requires payment of wages to the temporary bail bond agent and makes them subject to unemployment compensation tax, forbids a temporary bail bond agent from accepting the initial premium for a bond but does allow him or her to accept subsequent payments under a premium payment plan, details circumstances requiring affidavits listing any unpaid judgments, premiums or other contractual obligations, authorizes online continuing education, requires cancellation of the appointment of any managing general agent if a prior insurer reports unpaid forfeitures, judgments, premiums, losses or other contractual obligations, an insurer appointing a managing general agent is bound by the acts of the managing general agent within the scope of the appointment, allows an agent to provide contact information for multiple attorneys, forbids promising an inmate anything of value in return for referrals, forbids anyone from acting as a professional bail bond agent without a license as such, forbids travel fees for posting a bond if the same agent or agency that posted the bond also wrote the bond, requires immediate return of premium if a bond is not executed, requires all advertising to include the license number of the bail bond agent, requires return of collateral if the bond has expired, increases numerous fines and penalties, and authorizes Regulations to carry out numerous provisions of the bill.

H. 455,  H.7047 and S. 1800 – Bars bail for defendants required to register as sexual offenders or sexual predators "until the first appearance in the case in order to ensure full participation of the prosecutor and protection of the public."


   **Georgia**

H. 1298 – Adds 25% on to all bail bonds in Atlanta to be paid, in the event of forfeiture, to the City of Atlanta jail fund.

**Hawaii**

H. 2243 and S. 2158 – Requires that when the court with jurisdiction is closed, a law enforcement agency must release the defendant upon receiving cash, a certified copy of a pre-filed bail bond, or an original bail bond from a licensed agent.

H. 2868 and S. 3068 – Enacts a new Chapter in the Code providing mechanisms to enforce payment of bonds, suspend agents or insurers who do not pay, exonerate bonds upon recovery of the defendant or a showing that the failure to appear was caused by an Act of God or of the State or the law, and allow payment of costs of extradition from the bond.

**Idaho**

S. 1325 – Requires full payment of the bail bond premium before the defendant is released. Premium financing would be a permitted method of paying the premium, but no bail agent or surety company may have any financial affiliation with, or indemnify or receive compensation from, the premium financier.

**Illinois**

S. 2870 – Adds "a surety bond in an amount equal to 25% of the bail, executed by a surety approved by the court" as an alternative to the current requirement of a 10% cash deposit.  That is, the defendant must execute the bond and deposit either 10% cash or a 25% surety bond.

**Kansas**

S. 321 – Restricts persons eligible for release on their own recognizance to residents of Kansas in the U.S. legally who are charged with misdemeanors or certain levels of felonies, have no prior history of failures to appear, no detainers, have not been extradited, are not awaiting extradition, and have not been detained for alleged probation violation.  Also requires an out of state surety or agent who intends to apprehend any person in Kansas to contract with a person authorized to act as a surety or agent in Kansas, and that authorized person must accompany the out of state person during the apprehension.

**Louisiana**

H. 190 – Allows the clerk to give notice to the surety of a forfeiture judgment either at the address provided pursuant to present law (Art. 322) or at an address registered with the Department of Insurance.

H. 304 – Shortens the Bail Bond Apprentice Program from six months to three months.

H. 398 – Adds three Parishes (Ascension, Assumption and St. James) that will be authorized to alter the percentage to be deposited as cash bail and to charge a $15 fee for processing the bond.

H. 513 – Adds certain information and record keeping for the Bail Bond Apprentice Program.

H. 581 – If the prosecutor dismisses a case for which the defendant had provided bail and a subsequent indictment or information charges the same or a lesser offense based on the same facts, the court must reinstate the bail if the surety consents.  If the defendant voluntarily appears on the first occasion of which he or she has actual notice, the court must permit the defendant to remain free for five days, excluding weekends, to obtain the surety's consent.

H. 760 – If a defendant is released on bail for a crime of violence and is subsequently arrested for any crime the bail is automatically revoked and bail is barred for the new offense.

S. 242 – Narrows the separate treatment of Orleans Parish for purposes of the premium fee to bonds for charges to be prosecuted in the Criminal District Court.  The $3 fee will apply only to bonds in that court.

S. 173 – Deletes authority for a bail bond of up to $500 during the period is placed on probation by the Traffic Court of New Orleans.

S. 291 – Deletes the provision in current law that the prosecutor may enforce an unpaid forfeiture as a civil judgment leaving filing a rule to show cause with the Insurance Commissioner as the sole enforcement method.

S. 292 – Expands the grounds to exonerate the bond by adding refusal to extradite the defendant and failure to enter the defendant in the NCIC registry.  Also deletes extensions of time or setting aside judgments because of a fortuitous event that makes it impossible to perform and the requirement that a motion for such exoneration be filed within 366 days of the fortuitous event and substitutes extensions of time or setting aside judgments if they are "justified under the facts of the case" without any time limit for the motion.

S. 294 – Requires notice of the signing of the judgment to be mailed within 60 days of the defendant's initial failure to appear instead of within 60 days after the defendant fails to appear.

S. 319 – Amends the provision of the Code of Criminal Procedure that provides if the defendant appears and the proceeding is continued to a specific date the defendant not be given further notice of the new date by requiring that the surety or agent have notice either in the bond or by written notice.  [The Digest with the bill says that is its intent, but the actually language seems to be unclear as to what proceeding the new notice requirement applies.  It could be read to mean notice of the original appearance date not the new one.]

S. 492 – Extends to the 23rd Judicial District the right to alter the percentage of cash bond and the filing fee just as the parishes of St. John the Baptist and St. Charles can now.

S. 621 – Repeals the right of the Municipal and Traffic Courts of New Orleans to impose a bail bond fee for submission of bonds but doubles, to $30, the fee taxed as part of costs to every defendant who is convicted, pleads guilty or forfeits bond in the Municipal Court of New Orleans.

*S. 681 – Establishes $100,000 as the minimum bail amount for a defendant charged with a felony offense involving a firearm who has previously been convicted of a crime that made the defendant's possession of a firearm unlawful.

### Maine

H. 312 – Requires as a condition of bail for persons charged with certain crimes of domestic violence that the defendant turn over all firearms to a law enforcement officer and refrain from possessing firearms or other specified dangerous weapons.

H.1256 – Authorizes electronic monitoring, at the defendant's expense, as a condition of bail for defendants charged with crimes involving domestic violence.

### Maryland

H. 338 and S. 690 – Forbids a district court commissioner from releasing defendants charged with certain enumerated offenses and permits a judge to release such defendants only on full cash or corporate surety bond or on a property bond secured by property located in Maryland with equity equal to the amount of the bond plus $20,000.  Enacts a rebuttable presumption that such defendants will flee and will pose a danger to another person or the community.

H. 492 – Except for failure to pay family support, "cash bail" or "cash bond" may be provided in the form of cash, a surety bond, or a property bond by the defendant, or by a private surety acting for the defendant.  For failure to pay family support, only the defendant may post a "cash bail" or a "cash bond."

H. 517 – Forbids a surety from accepting or providing real property as security for a bond unless the owner of the property certifies that the property has no outstanding citations for building or property code violations.

H. 551 – Provides that if the defendant is taken into custody by Immigration and Customs Enforcement because of his or her immigration status, the bond is void, the bond must be returned to the surety and the surety discharged, and any premium must be refunded.

H. 573 – Forbids courthouse or correctional facility employees from soliciting for or advertising the services of a specific bondsman and increases the penalties for banned solicitation by a bondsman or agent as well as by the added employees.

H. 742 and S. 489 – Requires applicants for a bail bondsman's license to certify one year's regular employment by a licensed bail bondsman and authorizes installment payment of premiums.  If the premium is paid by installments, certain records have to be kept and attempts made to collect any balance owed.  The installment agreement must include certain information about the payments owed.


**Mississippi**

H. 173 and S. 2838 – Automatically stays execution on a bond forfeiture for 90 days from the entry of final judgment and requires the court to exonerate the bond if the defendant appears or is surrendered before execution of final judgment.  Grants a bail agent immunity from civil damages for actions taken within the scope of his authority and in good faith to enforce a court order, scire facias and final judgment.  Bail agents shall not be liable in civil damages resulting from a court's failure to properly issue or serve the surety with a set aside order for scire facias or final judgment or with the writs or judgment themselves.

H. 174, H. 631 and S. 2805 – Revises prelicensing educational requirements for  professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.

H. 175 and S. 2837 – Deletes requirement that the sheriff approve a bond from a properly licensed bail  agent.

H. 631 and S. 2805 – Revises prelicensing educational requirements for  professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.  Makes it unlawful to refuse to return collateral or other indemnity when the premium has been paid or the obligation on the bond terminated.

H. 880 and S. 2847 – Designates certain charges as crimes with bail restrictions, for defendants charged with such designated crimes requires full cash, corporate surety or bond secured by real property and, if real property, requires an affidavit from the owner with information as to equity in the property.  Creates a presumption for full cash bail if a defendant charged with such crimes also has two prior felony convictions or two other indictable offenses pending or was on parole or has a prior conviction for certain enumerated crimes including bail jumping.

H. 1439 – for persons charged with domestic violence offenses, the court must check the Mississippi Protective Order Registry and consider any protective order before granting bail.

H. 1471 – Permits release on own recognizance or appearance bond unless the court determines this will not reasonably assure appearance or protect others or the public; in which case the court may impose the least onerous conditions to assure appearance and protect others and the public taking into account a list of factors related to the defendant and the offense.  Also establishes a bail schedule but permits deviation in the court's discretion.  Forbids post conviction bail if the sentence is 20 years or more or if conditions of release will not reasonably assure the defendant's surrender or protection for others or the public.

S. 2254 – If a defendant is charged with a crime involving a domestic victim, the court must check the Mississippi Protective Order Registry and if there is a domestic abuse protective order against the defendant, take that into account when determining bail.

S 2620 – Would permit renewal of a professional bail agent's license held on the effective date of the act even though the licensee was convicted of a felony not involving moral turpitude.

### Missouri

H. 1867 – Requires the court to accept "a guarantee from any surety who is in compliance with general laws regulating such profession" in lieu of a cash only bond.

### New Jersey

CR 93 – Amends the state Constitution to allow the legislature to forbid bail to illegal immigrants charged with certain crimes.

A. 474 and S. 560 – Adds assault and death by auto or vessel to the list of crimes with bail restrictions.

A. 1674 and S. 733 – Makes 16 additions to the list of crimes with bail restrictions.

A.1713 – If a released defendant is charged with a second offense involving petty disorderly persons, disorderly persons, a crime of the fourth degree or a crime of the third degree, there would be a presumption of a 50% cash bail option. For a third or subsequent charge for the same categories of offenses, the presumption would be for 100% cash bond. This seems to be intended to substitute the higher percentages for a 10% cash option.

A.1772 and S. 678 – Forbids release of illegal immigrants charged with crimes of the first or second degree or previously convicted of two or more crimes that occurred on separate occasions. The change would take effect upon amendment to the state Constitution per CR 93.

A.2254 – Authorizes establishment of a pretrial release program. Any defendant would be eligible except one charged with a crime with bail restrictions or other first degree offenses.

A. 2536 -- A bail bond can be forfeited only for failure to appear; establishes a schedule for remission of forfeitures if the defendant is recovered, is dead or is incarcerated within the United States if the surety engaged in monitoring efforts or attempted to contact the defendant at least once every three weeks; requires mailing notice to the surety and agent; if a bench warrant has been issued, authorizes any jail or law enforcement agent to accept surrender of the defendant from the surety or agent or their representatives; establishes a $100 filing fee for bonds or recognizances; and forbids removing the surety or its agents from bail registry if the surety has

filed a motion to vacate a forfeiture and the defendant is in custody in New Jersey or has entered an order to vacate the forfeiture that is awaiting court's signature. [This appears to be the same as 2010 A.1143, and the remission schedule does not make sense.]

S. 1133 – Adds certain weapons offenses to the list of crimes with bail restrictions.

### New Mexico

HJR. 3 – Deletes the sufficient sureties clause of the New Mexico Constitution and substitutes a provision that bail be granted or denied based on flight risk, seriousness of the offense charged, danger to the community, and other factors provided by law. States that "The least onerous condition of release needed to comply with these factors shall be imposed." Forbids excessive bail, cruel and unusual punishment and excessive fines and grants precedence to appeals of orders denying bail.

### Oklahoma

HJR 1088 – Would amend the state Constitution to permit denial of bail to illegal aliens charged with serious felony offenses as designated by the Legislature.

H. 2190 – Forbids bail for a person held in a secure facility against whom a petition has been filed alleging that the person is a sexually violent predator.

H. 2206 – Strikes the exception allowing a professional bondsman to write bonds on up to ten defendants per year in counties in which the bondsman cannot register his license (i.e. counties in which the bondsman does not reside or have his office) or an unlimited number of bonds in counties where there is no registered bondsman.

H. 2278 – For a defendant charged with one of the 40 offenses that render the defendant ineligible for a pretrial services program, the court can order urinalysis testing as well as use of a GPS monitoring device. The court can also order the defendant to pay for supervision and testing as well as the GPS device and monitoring.

H. 2981 – Requires a $300,000 minimum deposit from all insurers with the surety, including bail, line of authority. Adds changes in legal name and E-mail address to the information that must be reported to the Commissioner within 5 business days, increases the application fee for bail bondsman from $250 to $350, and increases various late filing fees.

S. 1107 – Changes the due date of financial statements required from professional bondsmen and property bondsmen from the last day of the licensee's birth month to September 15

S. 1115 – Gives the court discretion to stay the due date for payment of forfeiture. Current law authorizes the court, in its discretion, to vacate forfeiture and exonerate the bond if good cause is

shown for the defendant's failure to appear or the bondsman's failure to return the defendant within 90 days.  This bill adds the lesser remedy of staying the due date of payment.

S. 1127 – Changes the filing date for bail bondsman license applications to September 30 instead of the last day of the applicant's birth month and authorizes the Commissioner to require any documents reasonably necessary to verify information on the application.  Also amends the standard from "of good character and reputation" to "competent, trustworthy, financially responsible, and of good personal and business reputation and character."

S. 1673 – Allows a bondsman to be appointed by a professional bondsman as well as by an insurer and strikes the restrictions on writing bonds in counties where the bondsman does not reside.  To write bonds in such counties the bondsman would only have to file a copy of his or her license with the county district court clerk.

S. 1872 – Enacts a Professional Bounty Hunter Licensing Act.

S. 1202 – Strikes the ten defendants per year restriction on writing bonds in counties where the bondsman does not reside or have an office.  Provides that a professional bondsman shall not be limited in writing bonds in Oklahoma as long as the total amount of bonds written per year does not exceed 20 times the dollar amount placed on deposit.

### Pennsylvania

*H. 5533 – Allows a Charitable Bail Organization (CBO) to post bail.  The CBO cannot be compensated for the bail, and it must qualify as a 501(c)(3) organization and be registered under the Pa. charitable organizations act and must be "organized for the purpose of posting cash bail on behalf of poor individuals."

### South Carolina

B.4572 – Deletes the provision of existing law granting the surety automatic relief from all liability if the defendant is incarcerated as a result of a bench warrant and the surety files an affidavit stating that fact and the specific terms of the bond that were violated as stated in the bench warrant.  The surety apparently could still file a motion seeking relief from liability.

B. 4916 – Adds a section to provide: (1) that the circuit court shall hear motions to modify bail; (2) after the circuit court has ruled on a motion to modify bail, any further motion for modification must make a prima facie showing of a material change in circumstance related to statutory factors, but evidence on the defendant's guilt or innocence is not a changed circumstance unless the solicitor consents; and (3) if the state seeks to revoke or modify bail it must make a written motion but if such a motion includes a prima facie showing of imminent danger to the community or to the defendant or of flight by the defendant, an accelerated procedure for an emergency hearing is provided, and such an emergency hearing is grounds for the surety to surrender the defendant.

B.4917 – Adds a mandatory, consecutive, no parole five year sentence enhancement for any general sessions court offense committed while released on a bail bond or on a personal recognizance bond.

B.5053 – Requires the court to enter information about a defendant who fails to appear in the NCIC, to send the surety and bail bondsman copies of the bench warrant within 7 days of its issuance, and requires exoneration of the surety if the state refuses to request extradition.

B. 5054 – Prohibits a bondsman or runner from making any advertisement or other statement with respect to "any premiums, percentages, or fee offerings" or any statement that is untrue, deceptive or misleading.

### Tennessee

H. 2441 and S. 2619 – Amends the statute on surrender of defendants by excepting from review, and possible refund of premium and re-release, a surrender based on a judgment of forfeiture.

H. 2442 and S. 2720 – For an applicant for approval to own a professional bonding company, changes the experience requirement from two years "with" such a company to two years "as a full-time qualified agent for" such a company.

H. 2654 and S. 2688 – Adds to the list of factors that may disqualify a bondsman a conviction in another state of a felony or misdemeanor equivalent to a Tennessee Class A misdemeanor.

H. 2678 and S. 2604 – Requires that an illegal immigrant be deemed a risk of flight for bail purposes if he or she is arrested for certain serious traffic offenses and authorizes increased bail amounts for such defendants.

S. 2510 and S. 2812 – If a defendant fails to appear, any new bail must be a 100% cash or fully secured bond.

S. 3214 – Requires the Department of Revenue to provide reports to the administrative office of the courts on collection of the bail bond tax.

### United States

S. 2183 – Creates a Fugitive Extradition and Apprehension Trust Fund into which any bail forfeitures will be deposited and used to fund the U.S. Marshal's Service to apprehend fugitives, the U.S. Attorneys to investigate and prosecute fugitives, and the Justice Department to extradite international fugitives.

### Utah

H. 29 – Forbids a bail bond producer from operating in Utah unless he or she is appointed by an authorized insurer and, if he or she submits business through an agency, designated by a licensed bail bond agency or, for property bonds, is designated by a licensed agency. An enforcement agent may operate only through a licensed bail bond agency.

### Virginia

H. 174 – Requires that a property bail bondsman, or a business or company that he uses to carry out his bail bond business, own any real property that he pledges to meet the statutory $200,000 collateral provision. Also requires suspension of the license of any property bail bondsman who fails to pay a forfeiture within 60 days after notice and a final court order.

H. 807 – Requires the Criminal Justice Services Board to adopt regulations governing the use of electronic tracking devices by bail bondsmen and excepts use of such devices by licensed bail bondsmen in accordance with such regulations from the criminal statute barring the placing or use of an electronic tracking device through intentionally deceptive means and without consent.

S. 158 – Existing law establishes a rebuttable presumption that certain defendants should not be admitted to bail. This bill would prevent a magistrate, clerk or deputy clerk from admitting such a defendant to bail and require a hearing with written notice to the Commonwealth's attorney before any other judicial officer does so. Also provides that if the Commonwealth appeals a bail decision, the decision is stayed until the appeal is decided.

### Washington

H. 2423 and H. 2668 – Reduces the period in which the court must notify the surety of a defendant's failure to appear from 30 to 14 days. Requires good cause to surrender a defendant, and if the court finds good cause was lacking requires return of the bond premium and any recovery fee. Good cause includes, but is not limited to, a substantial increase in the risk of flight, violation of a court order, failure to appear, and concealment or intentional misrepresentation of information, but does not include failure to pay the premium. Surrender of the defendant without good cause, gaining full authority over a person's property or finances, and failing to disclose a defendant's location upon request from law enforcement are added to the list of acts that constitute "unprofessional conduct." If a court revokes or reinstates a bail bond agent it must notify the administrative office of the courts which will notify all other courts of the action. Defines property bond and surety bond. Increases the surety bond to be posted by a property bond agency from $10,000 to $100,000 (the bond for a surety bond agency remains at $10,000). Authorizes audits of licensee trust accounts unless the licensee submits an annual CPA audited statement.

S. 5056 (Substitute Bill) – Subject to appropriations, requires development of a "risk assessment tool" by the Washington state institute for public policy, authorizes its use, and authorizes the center for court research to evaluate the "risk assessment tool" and submit a report every two

years on its use.  Exonerates a bond if the court fails to notify the surety of a default within 14 calendar days (instead of 30 days in current law), requires good cause to surrender the defendant and, if the court determines good cause did not exist, the surety must return the premium and any recovery fee.  Surrender without good cause is "unprofessional conduct." If a court revokes or reinstates a bail bond agent's certification to post bonds in the court, it shall notify the administrative office of the courts which shall notify other state courts.  Adds to the list of unprofessional conduct "Entering into a contract, including a general power of attorney, with a person that gives the bail bond agent full authority over the person's finances, assets, real property, or personal property" and failing to disclose to law enforcement upon request information on the location of a fugitive defendant.  Defines bail bond insurance as surety insurance and makes surety insurance subject to the rate standards set forth in RCW 48.19.020.


**Wisconsin**

A. 567 – Permits and regulates commercial bail.  Current law forbids compensation for acting as surety on a bail bond.  Would make an exception for a licensed bail bond agent or bail bond agency and require a premium equal to 10% of the amount of the bond.  Establishes licensing framework for bail bond agents, bail bond agencies, and bail recovery agents, and authorizes the Department of Safety and Professional Services to promulgate detailed Rules.

CONFIDENTIAL

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Tuesday, April 3, 2012 11:01 AM |
| To: | Committee-BBAC-Open |
| Cc: | Holtschneider, Mark; Lanak, Frank; Mike Whitlock; Dee Hale; karen.ridener@accredited-inc.com; DNABIC@aol.com |
| Subject: | Cal. Case and AB 1824 |
| Attachments: | bail.CA AB 1824.pdf |

In *People v. Western Insurance Co.*, 2012 WL 1071482 (Cal.App. April 2, 2012) the defendant failed to appear, and the surety located him in India. The prosecutor indicated that he would seek extradition, but the extradition process went on past the end of the extended appearance period. The trial court entered summary judgment on the bond, and the surety appealed. The surety argued that the running of the appearance period should be tolled while the prosecutor pursued extradition. The Court noted that Penal Code §1305 provides for tolling if the defendant is temporarily disabled, for an extension of the appearance period not to exceed 180 days, and for exoneration if the prosecutor refuses to seek extradition. The Court thought that in light of this detailed statutory scheme, "a further extension of the appearance period under the guise of equitable tolling is inappropriate." The Court suggested that the surety's arguments would be better addressed to the Legislature. [Published].

Ironically, California AB 1824, a copy of which is attached, would among other things, amend section 1305(f) by adding:

*If the prosecuting agency elects to extradite the defendant, the court shall toll the 180-day time period for the time required by the prosecuting agency to obtain an extradition warrant for the defendant plus a reasonable time for the service of the warrant.*

BILL NUMBER: AB 1824    AMENDED
        BILL TEXT

        AMENDED IN ASSEMBLY  MARCH 29, 2012

INTRODUCED BY   Assembly Member Hagman

              FEBRUARY 21, 2012

    An act to amend ~~Section 3455 of~~  *Sections
1166, 1196, 1305,   and 1306 of*  the Penal Code,
relating to  ~~postrelease community supervision~~
*bail*  .


        LEGISLATIVE COUNSEL'S DIGEST


    AB 1824, as amended, Hagman. ~~Postrelease community
supervision.~~  *Bail.*
    *Existing law specifies the procedures for the forfeiture and
exoneration of a bail bond, including requiring a court to direct the
order of forfeiture to be vacated and the bond exonerated if the
defendant appears in court within 180 days of the date of forfeiture
or within 180 days of the date of mailing of a specified notice, if
required.*
    *This bill would require the bond to be exonerated if the defendant
appears in court, is surrendered to custody by the bail, or is
arrested in the underlying case within 180 days after forfeiture and
would allow 30 days from the mailing of the notice of entry of
judgment to file a motion for exoneration if the defendant is
surrendered by the bail outside the county where the court is
located.*
    *Under existing law, where a defendant is detained beyond the
jurisdiction of the court and the prosecuting agency elects not to
seek extradition, the court is required to vacate the forfeiture and
exonerate the bond.*
    *This bill would require exoneration of the bond if the prosecution
elects not to seek extradition or transfer from a jurisdiction
outside the county. The bill would also require the court, if the
prosecuting agency elects to extradite the defendant, to toll the
180-day period for the time required by the prosecuting agency to
obtain an extradition warrant for the defendant plus a reasonable
time for the service of the warrant.*
    *Under existing law, if a general verdict is rendered against the
defendant or a special verdict is given, the defendant is required to
be remanded or, if on bail, committed to the county to await
judgment.*
    *The bill would require remand or commitment to the county after a
defendant enters a plea of guilty or is found guilty after entering a
plea of nolo contendere.*
    *Existing law requires county agencies to enter each bench warrant
issued on a private surety-bonded felony case into the national
warrant system. If the county agency fails to do this and that
failure prevents the surety or bond agent from surrendering the
fugitive into custody, prevents the fugitive from being arrested or
taken into custody, or results in the fugitive's subsequent release
from custody, then the bail is exonerated.*
    *This bill would require the warrants in the national warrant
system to be entered as fully extraditable warrants. By increasing
the duties of county agencies, this bill would impose a
state-mandated local program.*
    *Existing law requires the district attorney or county counsel,
when a bond is forfeited after the 180-day period, to take specified
actions, including demanding immediate payment of the judgment within
30 days after summary judgment becomes final.*
    *This bill would also make these requirements applicable to other
applicable prosecuting agencies and would authorize the named
agencies to enter into a court-approved resolution of the judgment of*

SFAA 000607

*forfeiture if the motion to vacate for forfeiture or judgment is made.*

*The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.*

*This bill would provide that, if the Commission on State Mandates determines that the bill contains costs mandated by the state, reimbursement for those costs shall be made pursuant to these statutory provisions.*

~~Existing law, the Postrelease Community Supervision Act of 2011, requires certain inmates released from state prison to be subject to 3 years supervision by a county agency. The act provides that if the supervising county agency has determined, following application of its assessment processes, that authorized intermediate sanctions are not appropriate, the supervising county agency is required to petition the revocation hearing officer to revoke and terminate postrelease supervision of the inmate.~~

~~This bill would make technical, nonsubstantive changes to those provisions.~~

Vote: majority. Appropriation: no. Fiscal committee: ~~no~~ *yes* . State-mandated local program: ~~no~~ *yes* .


THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

*SECTION 1.   Section 1166 of the   Penal Code   is amended to read:*

1166.  If a general verdict is rendered against the defendant, ~~or~~ a special verdict is given, *the defendant enters a plea of guilty, or the defendant is found guilty after entering a plea of nolo contendre*  he or she  ~~must~~ *shall*  be remanded, if in custody, or  , *if on bail*  , he or she shall be committed to the proper officer of the county to await the judgment of the court upon the verdict, unless, upon considering the protection of the public, the seriousness of the offense charged and proven, the previous criminal record of the defendant, the probability of the defendant failing to appear for the judgment of the court upon the verdict, and public safety, the court concludes the evidence supports its decision to allow the defendant to remain out on bail. When committed, his or her bail ~~is~~ *shall be* exonerated ~~,~~ or  , *if money is deposited instead of bail*  , it ~~must~~ *shall*  be refunded to the defendant or to the person or persons found by the court to have deposited ~~said~~ *the* money on behalf of ~~said~~ *the* defendant.

*SEC. 2.   Section 1196 of the   Penal Code   is amended to read:*

1196.  (a) The clerk ~~must~~ *shall*  , at any time after the order, issue a bench warrant into one or more counties.

(b) The clerk shall require the appropriate agency to enter each bench warrant issued on a private surety-bonded felony case into the national warrant system (National Crime Information Center (NCIC)). If the appropriate agency fails to enter the bench warrant into the national warrant system (NCIC)  *as a fully extraditable warrant* , and the court finds that this failure prevented the surety or bond agent from surrendering the fugitive into custody, prevented the fugitive from being arrested or taken into custody, or resulted in the fugitive's subsequent release from custody, the court having jurisdiction over the bail shall, upon petition, set aside the forfeiture of the bond and declare all liability on the bail bond to be exonerated.

*SEC. 3.   Section 1305 of the   Penal Code   is amended to read:*

1305.  (a) A court shall in open court declare forfeited the

undertaking of bail or the money or property deposited as bail if,
without sufficient excuse, a defendant fails to appear for any of the
following:

(1) Arraignment.

(2) Trial.

(3) Judgment.

(4) Any other occasion prior to the pronouncement of judgment if
the defendant's presence in court is lawfully required.

(5) To surrender himself or herself in execution of the judgment
after appeal.

However, the court shall not have jurisdiction to declare a
forfeiture and the bail shall be released of all obligations under
the bond if the case is dismissed or if no complaint is filed within
15 days from the date of arraignment.

(b)   *(1)*    If the amount of the bond or money
or property deposited exceeds four hundred dollars ($400), the clerk
of the court shall, within 30 days of the forfeiture, mail notice of
the forfeiture to the surety or the depositor of money posted instead
of bail. At the same time, the court shall mail a copy of the
forfeiture notice to the bail agent whose name appears on the bond.
The clerk shall also execute a certificate of mailing of the
forfeiture notice and shall place the certificate in the court's
file. If the notice of forfeiture is required to be mailed pursuant
to this section, the 180-day period provided for in this section
shall be extended by a period of five days to allow for the mailing.

~~If~~

*(2)*    *If*  the surety is an
authorized corporate surety, and if the bond plainly displays the
mailing address of the corporate surety and the bail agent, then
notice of the forfeiture shall be mailed to the surety at that
address and to the bail agent, and mailing alone to the surety or the
bail agent shall not constitute compliance with this section.

~~The~~

*(3)*    *The*  surety or depositor shall
be released of all obligations under the bond if any of the
following conditions apply:

~~(1)~~

*(A)*  The clerk fails to mail the notice of forfeiture in
accordance with this section within 30 days after the entry of the
forfeiture.

~~(2)~~

*(B)*  The clerk fails to mail the notice of forfeiture to
the surety at the address printed on the bond.

~~(3)~~

*(C)*  The clerk fails to mail a copy of the notice of
forfeiture to the bail agent at the address shown on the bond.

(c) (1)  ~~If the defendant appears either voluntarily or in
custody after surrender or arrest in court within 180 days of the
date of forfeiture or within 180 days of the date of mailing of the
notice if the notice is required under subdivision (b),~~

 *If, within the county where the case is located, the defendant
appears in court, is surrendered to custody by the bail, or is
arrested in the underlying case within 180 days of the date of
forfeiture,*  the court shall, on its own motion at the time the
defendant first appears in court on the case in which the forfeiture
was entered, direct the order of forfeiture to be vacated and the
bond exonerated. If the court fails to so act on its own motion, then
the surety's or depositor's obligations under the bond shall be
immediately vacated and the bond exonerated. An order vacating the
forfeiture and exonerating the bond may be made on terms that are
just and do not exceed the terms imposed in similar situations with
respect to other forms of pretrial release.

(2) If, within the county where the case is located, the defendant
is surrendered to custody by the bail or is arrested in the
underlying case within the 180-day period, and is subsequently
released from custody prior to an appearance in court, the court
shall, on its own motion, direct the order of forfeiture to be

SFAA 000609

vacated and the bond exonerated. If the court fails to so act on its
own motion, then the surety's or depositor's obligations under the
bond shall be immediately vacated and the bond exonerated. An order
vacating the forfeiture and exonerating the bond may be made on terms
that are just and do not exceed the terms imposed in similar
situations with respect to other forms of pretrial release.

(3) If, outside the county where the case is located,  *either
foreign or domestic,*  the defendant is surrendered to custody by
the bail or is arrested in the underlying case within the 180-day
period, the court shall vacate the forfeiture and exonerate the bail.
*Notwithstanding subdivision (i), a motion for exoneration
brought under this paragraph may be filed within 30 days of the
mailing of the notice of entry of judgment pursuant to Section 1306.*

(4) In lieu of exonerating the bond, the court may order the bail
reinstated and the defendant released on the same bond if both of the
following conditions are met:
(A) The bail is given prior notice of the reinstatement.
(B) The bail has not surrendered the defendant.
(d) In the case of a permanent disability, the court shall direct
the order of forfeiture to be vacated and the bail or money or
property deposited as bail exonerated if, within 180 days of the date
of forfeiture or within 180 days of the date of mailing of the
notice if notice is required under subdivision (b), it is made
apparent to the satisfaction of the court that both of the following
conditions are met:
(1) The defendant is deceased or otherwise permanently unable to
appear in the court due to illness, insanity, or detention by
military or civil authorities.
(2) The absence of the defendant is without the connivance of the
bail.
(e) In the case of a temporary disability, the court shall order
the tolling of the 180-day period provided in this section during the
period of temporary disability, provided that it appears to the
satisfaction of the court that the following conditions are met:
(1) The defendant is temporarily disabled by reason of illness,
insanity, or detention by military or civil authorities.
(2) Based upon the temporary disability, the defendant is unable
to appear in court during the remainder of the 180-day period.
(3) The absence of the defendant is without the connivance of the
bail.
The period of the tolling shall be extended for a reasonable
period of time, at the discretion of the court, after the cessation
of the disability to allow for the return of the defendant to the
jurisdiction of the court.
(f) In all cases where a defendant is in custody  ~~beyond
the jurisdiction of the court that ordered the bail forfeited~~
 *outside the county where the case is located*  ,
and the prosecuting agency elects not to seek extradition  *or
transfer*  after being informed of the location of the defendant,
the court shall vacate the forfeiture and exonerate the bond on
terms that are just and do not exceed the terms imposed in similar
situations with respect to other forms of pretrial release.  *If
the prosecuting agency elects to extradite the defendant, the court
shall toll the 180-day time period for the time required by the
prosecuting agency to obtain an extradition warrant for the defendant
plus a reasonable time for the service of t  he warrant.*

(g) In all cases of forfeiture where a defendant is not in custody
and is beyond the jurisdiction of the state, is temporarily
detained, by the bail agent, in the presence of a local law
enforcement officer of the jurisdiction in which the defendant is
located, and is positively identified by that law enforcement officer
as the wanted defendant in an affidavit signed under penalty of
perjury, and the prosecuting agency elects not to seek extradition
after being informed of the location of the defendant, the court
shall vacate the forfeiture and exonerate the bond on terms that are
just and do not exceed the terms imposed in similar situations with
respect to other forms of pretrial release. *If the prosecuting*

SFAA 000610

*agency elects to extradite the defendant, the court shall toll the 180-day time period for the time required by the prosecuting agency to obtain an extradition warrant for the defendant plus a reasonable time for the service of the warrant.*

(h) As used in this section, "arrest" includes a hold placed on the defendant in the underlying case while he or she is in custody on other charges.

(i) A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause. The motion may be made by the surety insurer, the bail agent, the surety, or the depositor of money or property, any of whom may appear in person or through an attorney. The court, in its discretion, may require that the moving party provide 10 days prior notice to the applicable prosecuting agency, as a condition precedent to granting the motion.

*SEC. 4.    Section 1306 of the    Penal Code is amended to read:*

1306. (a) When ~~any~~ *a* bond is forfeited and the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court ~~which~~ *that* has declared the forfeiture, regardless of the amount of the bail, shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound. The judgment shall be the amount of the bond plus costs, and notwithstanding any other law, no penalty assessments shall be levied or added to the judgment.

(b) If a court grants relief from bail forfeiture, it shall impose a monetary payment as a condition of relief to compensate the people for the costs of returning a defendant to custody pursuant to Section 1305, except for cases where the court determines that in the best interest of justice no costs should be imposed. The amount imposed shall reflect the actual costs of returning the defendant to custody. Failure to act within the required time to make the payment imposed pursuant to this subdivision shall not be the basis for a summary judgment against any or all of the underlying amount of the bail. A summary judgment entered for failure to make the payment imposed under this subdivision is subject to the provisions of Section 1308, and shall apply only to the amount of the costs owing at the time the summary judgment is entered, plus administrative costs and interests.

(c) If, because of the failure of ~~any~~ *a* court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated.

(d) A dismissal of the complaint, indictment, or information after the default of the defendant shall not release or affect the obligation of the bail bond or undertaking.

(e) The district attorney ~~or~~ *,* county counsel *, or applicable prosecuting agency* shall:

(1) Demand immediate payment of the judgment within 30 days after the summary judgment becomes final.

(2) If the judgment remains unpaid for a period of 20 days after demand has been made, shall forthwith enforce the judgment in the manner provided for enforcement of money judgments generally. If the judgment is appealed by the surety or bondsman, the undertaking required to be given in these cases shall be provided by a surety other than the one filing the appeal. The undertaking shall comply with the enforcement requirements of Section 917.1 of the Code of Civil Procedure.

*(3) If a motion to vacate forfeiture or judgment is made, be authorized to enter into a court-approved resolution of the judgment or forfeiture.*

(f) The right to enforce a summary judgment entered against a bondsman pursuant to this section shall expire two years after the entry of the judgment.

*SEC. 5.    If the Commission on State Mandates determines that this act contains costs mandated by the state,*

SFAA 000611

*reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.*

SECTION 1.    Section 3455 of the Penal Code is amended to read:

3455.   (a) If the supervising county agency has determined, following application of its assessment processes, that intermediate sanctions as authorized in subdivision (b) of Section 3454 are not appropriate, the supervising county agency shall petition the revocation hearing officer appointed pursuant to Section 71622.5 of the Government Code to revoke and terminate postrelease supervision. At any point during the process initiated pursuant to this section, a person may waive, in writing, his or her right to counsel, admit the violation of his or her postrelease supervision, waive a court hearing, and accept the proposed modification of his or her postrelease supervision. The petition shall include a written report that contains additional information regarding the petition, including the relevant terms and conditions of postrelease supervision, the circumstances of the alleged underlying violation, the history and background of the violator, and any recommendations. The Judicial Council shall adopt forms and rules of court to establish uniform statewide procedures to implement this subdivision, including the minimum contents of supervision agency reports. Upon a finding that the person has violated the conditions of postrelease supervision, the revocation hearing officer shall have authority to do all of the following:

(1) Return the person to postrelease supervision with modifications of conditions, if appropriate, including a period of incarceration in county jail.

(2) Revoke postrelease supervision and order the person to confinement in the county jail.

(3) Refer the person to a reentry court pursuant to Section 3015 or other evidence-based program in the court's discretion.

(4) At any time during the period of postrelease supervision, if a peace officer has probable cause to believe a person subject to postrelease community supervision is violating any term or condition of his or her release, the officer may, without a warrant or other process, arrest the person and bring him or her before the supervising county agency established by the county board of supervisors pursuant to subdivision (a) of Section 3451. Additionally, an officer employed by the supervising county agency may seek a warrant and a court or its designated hearing officer appointed pursuant to Section 71622.5 of the Government Code shall have the authority to issue a warrant for that person's arrest.

(5) The court or its designated hearing officer shall have the authority to issue a warrant for a person who is the subject of a petition filed under this section who has failed to appear for a hearing on the petition or for any reason in the interests of justice, or to remand to custody a person who does appear at a hearing on the petition for any reason in the interests of justice.

(b) The revocation hearing shall be held within a reasonable time after the filing of the revocation petition. Based upon a showing of a preponderance of the evidence that a person under supervision poses an unreasonable risk to public safety, or that the person may not appear if released from custody, or for any reason in the interests of justice, the supervising county agency shall have the authority to make a determination whether the person should remain in custody pending a revocation hearing, and upon that determination, may order the person confined pending a revocation hearing.

(c) Confinement pursuant to paragraphs (1) and (2) of subdivision (a) shall not exceed a period of 180 days in a county jail.

(d) A person shall not remain under supervision or in custody pursuant to this title on or after three years from the date of the person's initial entry onto postrelease supervision, except when a bench or arrest warrant has been issued by a court or its designated hearing officer and the person has not appeared. During the time the warrant is outstanding the supervision period shall be tolled and when the person appears before the court or its designated hearing officer the supervision period may be extended for a period

equivalent to the time tolled.

SFAA 000613

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Friday, March 30, 2012 5:10 PM |
| To: | Committee-BBAC-Open |
| Cc: | DNABIC@aol.com |
| Subject: | Legislation |
| Attachments: | 2012 Bail Bond Legislation.doc |

An updated Report is attached.

## 2012 Bail Bond Legislation

(Bills added since the last distribution are marked with an asterisk)

### Arizona

H. 2432 – Provides that the surety shall be relieved of liability upon surrendering the defendant before or within 30 days after the failure to appear except that if the surrender is after the failure to appear the judicial officer may forfeit up to $1,000 of the bond.

H. 2433 – Requires that the list of persons authorized to post bail bonds be updated monthly with the names rotated.  Forbids soliciting bail bond business inside of, or within 200 feet of the entrance to, a court building or jail.  An employee of a bail agent can submit the bond if he or she has proper identification.

H. 2434 – Makes a person convicted of a felony in the previous seven years not eligible for supervision under pretrial services and provides that a defendant not released on his own recognizance shall be released on either a cash or secured appearance bond unless the defendant previously failed to appear, is in custody for unpaid child support, fines or fees, or is charged with a class 1 or 2 felony.  For such defendants the judicial officer could order a cash only bond.

S. 1284 – Amends statutes governing bail bond agents to require a receipt for payment of fees and expenses, require that all collateral be held in a fiduciary capacity and insured (except against weather damage which shall be the risk of the indemnitor), deposit cash collateral in an account separate from the agent's operating accounts, and disclose all premiums and fees.  The agent's license may be suspended or revoked for charging more than the maximum fee or violating any provision of law or rule governing the agent's business.  Requires having a signed contract and fee agreement before securing release of a person (other than a relative).  The premium shall be valid for one year from the date the bond is posted.  Any renewal premium shall be pro rated.

S. 1285 – Revises the licensing of bail recovery agents to require a high school diploma or GED, completion of a gun safety course or have an honorable discharge from the military, be at least 21, be a resident of Arizona for at least a year, and submit fingerprints.  The license shall not be issued until after the fingerprint check is completed.  A certified peace officer may not act as a bail recovery agent.

### California

A. 1529 – Adds a section 1305.5 to the Penal Code to provide that appeals of denial of motions to vacate bail bond forfeitures of $25,000 or less shall be treated as a limited civil case and go to the appellate division of the superior court rather than to the court of appeals.  If the forfeiture is more than $25,000 the appeal is treated as an unlimited civil case and go to the court of appeals.

A. 2029 – Regulates the licensure and conduct of Bail Fugitive Recovery Persons including making it a misdemeanor knowingly to hire an unauthorized person to apprehend a bail fugitive.

S. 968 – Expands eligibility for release on electronic monitoring. Certain defendants eligible for bail may apply for release on electronic monitoring with bail reduced by up to 75%. Such an application may be made to the court starting from 10 court days following arraignment.

S. 989 – Amends Penal Code §1305 to require exoneration of the bond if the defendant is deported. If the defendant is located in another jurisdiction and brought before local law enforcement pursuant to §305(g), tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extraction process. The bond is exonerated if the prosecuting agency does not decide to seek extradition within a reasonable time. Adds "or the United States Attorney" after prosecuting agency in both provisions.

S. 1265 – Permits a limited liability company (LLC) to be licensed as a bail agency on the same conditions as a corporation and exempts an admitted surety insurer, or a subsidiary of an admitted surety insurer, from the requirement that all officers and stockholders (or LLC members) must be licensed bail agents.

### Colorado

H. 12-1114 – Treats stalking the same as domestic violence in terms of setting bail, protective orders and punishment for violating conditions of bail or protective orders.

H. 12-1266 – Extends the sunset of the division of insurance regulation of bail, requires that all forms used in connection with bail be filed with and approved by the division, and revises requirements for cash bonding agents and "Professional Cash Bail Agents" who will qualify by posting a bond with the division of insurance instead of by appointment from a bail insurance company.

H. 12-1310 – Adds to the information that each pretrial services program must include in their annual reports including crime classification of failures to appear, information on those remaining at large, information on those returned to custody and how recovered, re-arrests, and revocations. Permits surety to consent in writing to continuance of bond through sentencing either in initial bond documents or at the time of conviction or within a reasonable time thereafter.

H. 12-1316 – Amends provisions on bonds for possible illegal aliens. If the agency holding the defendant determines that there is an ICE detainer lodged against a person arrested or charged with felonies or class 1 or 2 misdemeanors, it shall notify the bail bond agent before the bond is posted. The bond shall be forfeited if the defendant is deported. The agency shall also notify the district attorney and any pretrial services office, and if the defendant posts bond, the agency shall notify the district attorney before notifying ICE that the defendant is eligible for release to ICE.

### Connecticut

H. 5093 – As a condition precedent to exoneration after the defendant is incarcerated or detained in another state, requires the surety or bail bond agent to agree to reimburse the Division of Criminal Justice for extradition costs incurred to secure the defendant's return.

H. 5382 – Requires applicants for licenses as professional bondsmen and bail recovery agents to be 21 years of age and high school graduates (or equivalents) and not subject to a restraining or protective order involving the use or attempted use of force against another person. Regulates badges worn by bail enforcement agent and permits for bail agents, professional bondsmen and bail agents to carry concealed weapons and adds new requirements to qualify as an instructor in courses required for firearms licenses.

S. 446 – Limits a surety bond for a misdemeanor, or a violation punishable by imprisonment for one year or less, to a maximum of $5,000 unless the court, judge or referee makes specific findings why a greater amount is necessary.

### Florida

H. 135 and S.210 – Requires that costs of prosecution and costs of representation be withheld from any cash bond posted by any person other than a licensed bail bond agent.

H. 725 and S.938 – Provides for E-mailed notice of time and place of licensure examination for bail bond agents. Strikes the separate standards for continuing education courses for bail bond agents and substitutes a cross reference to the Code section on continuing education courses for insurance agents in general. Amends section on forfeitures to delete the requirement that the clerk send the Department of Financial Services and Office of Insurance Regulation copies of each judgment within 10 days of its entry. Adds that such notice to the surety must be sent to the surety's home office. If the judgment is not paid within 60 days (formerly 35 days), notice must be sent to the Office of Insurance Regulation.

H. 771 and S.1820 – Makes extensive changes to the regulation of bail bond agents including requiring an "agent in charge" for each office, limiting the duration of a temporary bail bond agent license, restricting ownership or management of an agency to bail bond agents licensed and appointed for at least three years, fines insurers up to $1,000 per agent per month for failure to submit a statement of build up trust accounts, establishes a 30 day deadline for agents to pay over premiums, collateral or other funds, authorizes premium payment plans under specified conditions, authorizes persons properly licensed in other states to recover defendants on bonds written in the other state, forbids a licensed agent from directing an unlicensed person to recover a defendant in Florida, requires the monthly report for temporary bail bond agents to be submitted within 15 days of the end of the month and authorizes a fine of up to $500 per month for late submission, requires payment of wages to the temporary bail bond agent and makes them subject to unemployment compensation tax, forbids a temporary bail bond agent from accepting the initial premium for a bond but does allow him or her to accept subsequent payments under a

premium payment plan, details circumstances requiring affidavits listing any unpaid judgments, premiums or other contractual obligations, authorizes online continuing education, requires cancellation of the appointment of any managing general agent if a prior insurer reports unpaid forfeitures, judgments, premiums, losses or other contractual obligations, an insurer appointing a managing general agent is bound by the acts of the managing general agent within the scope of the appointment, allows an agent to provide contact information for multiple attorneys, forbids promising an inmate anything of value in return for referrals, forbids anyone from acting as a professional bail bond agent without a license as such, forbids travel fees for posting a bond if the same agent or agency that posted the bond also wrote the bond, requires immediate return of premium if a bond is not executed, requires all advertising to include the license number of the bail bond agent, requires return of collateral if the bond has expired, increases numerous fines and penalties, and authorizes Regulations to carry out numerous provisions of the bill.

H. 455, H.7047 and S. 1800 – Bars bail for defendants required to register as sexual offenders or sexual predators "until the first appearance in the case in order to ensure full participation of the prosecutor and protection of the public."

### Georgia

*H. 1298 – Adds 25% on to all bail bonds in Atlanta to be paid, in the event of forfeiture, to the City of Atlanta jail fund.

### Hawaii

H. 2243 and S. 2158 – Requires that when the court with jurisdiction is closed, a law enforcement agency must release the defendant upon receiving cash, a certified copy of a pre-filed bail bond, or an original bail bond from a licensed agent.

H. 2868 and S. 3068 – Enacts a new Chapter in the Code providing mechanisms to enforce payment of bonds, suspend agents or insurers who do not pay, exonerate bonds upon recovery of the defendant or a showing that the failure to appear was caused by an Act of God or of the State or the law, and allow payment of costs of extradition from the bond.

### Idaho

S. 1325 – Requires full payment of the bail bond premium before the defendant is released. Premium financing would be a permitted method of paying the premium, but no bail agent or surety company may have any financial affiliation with, or indemnify or receive compensation from, the premium financier.

### Illinois

S. 2870 – Adds "a surety bond in an amount equal to 25% of the bail, executed by a surety approved by the court" as an alternative to the current requirement of a 10% cash deposit. That is, the defendant must execute the bond and deposit either 10% cash or a 25% surety bond.

### Kansas

S. 321 – Restricts persons eligible for release on their own recognizance to residents of Kansas in the U.S. legally who are charged with misdemeanors or certain levels of felonies, have no prior history of failures to appear, no detainers, have not been extradited, are not awaiting extradition, and have not been detained for alleged probation violation. Also requires an out of state surety or agent who intends to apprehend any person in Kansas to contract with a person authorized to act as a surety or agent in Kansas, and that authorized person must accompany the out of state person during the apprehension.

### Louisiana

H. 190 – Allows the clerk to give notice to the surety of a forfeiture judgment either at the address provided pursuant to present law (Art. 322) or at an address registered with the Department of Insurance.

H. 304 – Shortens the Bail Bond Apprentice Program from six months to three months.

H. 398 – Adds three Parishes (Ascension, Assumption and St. James) that will be authorized to alter the percentage to be deposited as cash bail and to charge a $15 fee for processing the bond.

H. 513 – Adds certain information and record keeping for the Bail Bond Apprentice Program.

H. 581 – If the prosecutor dismisses a case for which the defendant had provided bail and a subsequent indictment or information charges the same or a lesser offense based on the same facts, the court must reinstate the bail if the surety consents. If the defendant voluntarily appears on the first occasion of which he or she has actual notice, the court must permit the defendant to remain free for five days, excluding weekends, to obtain the surety's consent.

H. 760 – If a defendant is released on bail for a crime of violence and is subsequently arrested for any crime the bail is automatically revoked and bail is barred for the new offense.

S. 242 – Narrows the separate treatment of Orleans Parish for purposes of the premium fee to bonds for charges to be prosecuted in the Criminal District Court. The $3 fee will apply only to bonds in that court.

S. 173 – Deletes authority for a bail bond of up to $500 during the period is placed on probation by the Traffic Court of New Orleans.

S. 291 – Deletes the provision in current law that the prosecutor may enforce an unpaid forfeiture as a civil judgment leaving filing a rule to show cause with the Insurance Commissioner as the sole enforcement method.

S. 292 – Expands the grounds to exonerate the bond by adding refusal to extradite the defendant and failure to enter the defendant in the NCIC registry.  Also deletes extensions of time or setting aside judgments because of a fortuitous event that makes it impossible to perform and the requirement that a motion for such exoneration be filed within 366 days of the fortuitous event and substitutes extensions of time or setting aside judgments if they are "justified under the facts of the case" without any time limit for the motion.

S. 294 – Requires notice of the signing of the judgment to be mailed within 60 days of the defendant's initial failure to appear instead of within 60 days after the defendant fails to appear.

S. 319 – Amends the provision of the Code of Criminal Procedure that provides if the defendant appears and the proceeding is continued to a specific date the defendant not be given further notice of the new date by requiring that the surety or agent have notice either in the bond or by written notice.  [The Digest with the bill says that is its intent, but the actually language seems to be unclear as to what proceeding the new notice requirement applies.  It could be read to mean notice of the original appearance date not the new one.]

S. 492 – Extends to the 23rd Judicial District the right to alter the percentage of cash bond and the filing fee just as the parishes of St. John the Baptist and St. Charles can now.

*S. 621 – Repeals the right of the Municipal and Traffic Courts of New Orleans to impose a bail bond fee for submission of bonds but doubles, to $30, the fee taxed as part of costs to every defendant who is convicted, pleads guilty or forfeits bond in the Municipal Court of New Orleans.

### Maine

H. 312 – Requires as a condition of bail for persons charged with certain crimes of domestic violence that the defendant turn over all firearms to a law enforcement officer and refrain from possessing firearms or other specified dangerous weapons.

H.1256 – Authorizes electronic monitoring, at the defendant's expense, as a condition of bail for defendants charged with crimes involving domestic violence.

### Maryland

H. 338 and S. 690 – Forbids a district court commissioner from releasing defendants charged with certain enumerated offenses and permits a judge to release such defendants only on full cash or corporate surety bond or on a property bond secured by property located in Maryland

with equity equal to the amount of the bond plus $20,000. Enacts a rebuttable presumption that such defendants will flee and will pose a danger to another person or the community.

H. 492 – Except for failure to pay family support, "cash bail" or "cash bond" may be provided in the form of cash, a surety bond, or a property bond by the defendant, or by a private surety acting for the defendant. For failure to pay family support, only the defendant may post a "cash bail" or a "cash bond."

H. 517 – Forbids a surety from accepting or providing real property as security for a bond unless the owner of the property certifies that the property has no outstanding citations for building or property code violations.

H. 551 – Provides that if the defendant is taken into custody by Immigration and Customs Enforcement because of his or her immigration status, the bond is void, the bond must be returned to the surety and the surety discharged, and any premium must be refunded.

H. 573 – Forbids courthouse or correctional facility employees from soliciting for or advertising the services of a specific bondsman and increases the penalties for banned solicitation by a bondsman or agent as well as by the added employees.

H. 742 and S. 489 – Requires applicants for a bail bondsman's license to certify one year's regular employment by a licensed bail bondsman and authorizes installment payment of premiums. If the premium is paid by installments, certain records have to be kept and attempts made to collect any balance owed. The installment agreement must include certain information about the payments owed.

### Mississippi

H. 173 and S. 2838 – Automatically stays execution on a bond forfeiture for 90 days from the entry of final judgment and requires the court to exonerate the bond if the defendant appears or is surrendered before execution of final judgment. Grants a bail agent immunity from civil damages for actions taken within the scope of his authority and in good faith to enforce a court order, scire facias and final judgment. Bail agents shall not be liable in civil damages resulting from a court's failure to properly issue or serve the surety with a set aside order for scire facias or final judgment or with the writs or judgment themselves.

H. 174, H. 631 and S. 2805 – Revises prelicensing educational requirements for professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.

H. 175 and S. 2837 – Deletes requirement that the sheriff approve a bond from a properly licensed bail agent.

H. 631 and S. 2805 – Revises prelicensing educational requirements for professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or

professional personal surety agent.  Makes it unlawful to refuse to return collateral or other indemnity when the premium has been paid or the obligation on the bond terminated.

H. 880 and S. 2847 – Designates certain charges as crimes with bail restrictions, for defendants charged with such designated crimes requires full cash, corporate surety or bond secured by real property and, if real property, requires an affidavit from the owner with information as to equity in the property.  Creates a presumption for full cash bail if a defendant charged with such crimes also has two prior felony convictions or two other indictable offenses pending or was on parole or has a prior conviction for certain enumerated crimes including bail jumping.

H. 1439 – for persons charged with domestic violence offenses, the court must check the Mississippi Protective Order Registry and consider any protective order before granting bail.

H. 1471 – Permits release on own recognizance or appearance bond unless the court determines this will not reasonably assure appearance or protect others or the public; in which case the court may impose the least onerous conditions to assure appearance and protect others and the public taking into account a list of factors related to the defendant and the offense.  Also establishes a bail schedule but permits deviation in the court's discretion.  Forbids post conviction bail if the sentence is 20 years or more or if conditions of release will not reasonably assure the defendant's surrender or protection for others or the public.

S. 2254 – If a defendant is charged with a crime involving a domestic victim, the court must check the Mississippi Protective Order Registry and if there is a domestic abuse protective order against the defendant, take that into account when determining bail.

S 2620 – Would permit renewal of a professional bail agent's license held on the effective date of the act even though the licensee was convicted of a felony not involving moral turpitude.

### Missouri

H. 1867 – Requires the court to accept "a guarantee from any surety who is in compliance with general laws regulating such profession" in lieu of a cash only bond.

### New Jersey

CR 93 – Amends the state Constitution to allow the legislature to forbid bail to illegal immigrants charged with certain crimes.

A. 474 and S. 560 – Adds assault and death by auto or vessel to the list of crimes with bail restrictions.

A. 1674 and S. 733 – Makes 16 additions  to the list of crimes with bail restrictions.

A.1713 – If a released defendant is charged with a second offense involving petty disorderly persons, disorderly persons, a crime of the fourth degree or a crime of the third degree, there would be a presumption of a 50% cash bail option. For a third or subsequent charge for the same categories of offenses, the presumption would be for 100% cash bond. This seems to be intended to substitute the higher percentages for a 10% cash option.

A.1772 and S. 678 – Forbids release of illegal immigrants charged with crimes of the first or second degree or previously convicted of two or more crimes that occurred on separate occasions. The change would take effect upon amendment to the state Constitution per CR 93.

A.2254 – Authorizes establishment of a pretrial release program. Any defendant would be eligible except one charged with a crime with bail restrictions or other first degree offenses.

A. 2536 -- A bail bond can be forfeited only for failure to appear; establishes a schedule for remission of forfeitures if the defendant is recovered, is dead or is incarcerated within the United States if the surety engaged in monitoring efforts or attempted to contact the defendant at least once every three weeks; requires mailing notice to the surety and agent; if a bench warrant has been issued, authorizes any jail or law enforcement agent to accept surrender of the defendant from the surety or agent or their representatives; establishes a $100 filing fee for bonds and recognizances; and forbids removing the surety or its agents from bail registry if the surety has filed a motion to vacate a forfeiture and the defendant is in custody in New Jersey or has entered an order to vacate the forfeiture that is awaiting court's signature. [This appears to be the same as 2010 A.1143, and the remission schedule does not make sense.]

S. 1133 – Adds certain weapons offenses to the list of crimes with bail restrictions.

### New Mexico

HJR. 3 – Deletes the sufficient sureties clause of the New Mexico Constitution and substitutes a provision that bail be granted or denied based on flight risk, seriousness of the offense charged, danger to the community, and other factors provided by law. States that "The least onerous condition of release needed to comply with these factors shall be imposed." Forbids excessive bail, cruel and unusual punishment and excessive fines and grants precedence to appeals of orders denying bail.

### Oklahoma

HJR 1088 – Would amend the state Constitution to permit denial of bail to illegal aliens charged with serious felony offenses as designated by the Legislature.

H. 2190 – Forbids bail for a person held in a secure facility against whom a petition has been filed alleging that the person is a sexually violent predator.

H. 2206 – Strikes the exception allowing a professional bondsman to write bonds on up to ten defendants per year in counties in which the bondsman cannot register his license (i.e. counties in which the bondsman does not reside or have his office) or an unlimited number of bonds in counties where there is no registered bondsman.

H. 2278 – For a defendant charged with one of the 40 offenses that render the defendant ineligible for a pretrial services program, the court can order urinalysis testing as well as use of a GPS monitoring device. The court can also order the defendant to pay for supervision and testing as well as the GPS device and monitoring.

H. 2981 – Requires a $300,000 minimum deposit from all insurers with the surety, including bail, line of authority. Adds changes in legal name and E-mail address to the information that must be reported to the Commissioner within 5 business days, increases the application fee for bail bondsman from $250 to $350, and increases various late filing fees.

S. 1107 – Changes the due date of financial statements required from professional bondsmen and property bondsmen from the last day of the licensee's birth month to September 15

S. 1115 – Gives the court discretion to stay the due date for payment of forfeiture. Current law authorizes the court, in its discretion, to vacate forfeiture and exonerate the bond if good cause is shown for the defendant's failure to appear or the bondsman's failure to return the defendant within 90 days. This bill adds the lesser remedy of staying the due date of payment.

S. 1127 – Changes the filing date for bail bondsman license applications to September 30 instead of the last day of the applicant's birth month and authorizes the Commissioner to require any documents reasonably necessary to verify information on the application. Also amends the standard from "of good character and reputation" to "competent, trustworthy, financially responsible, and of good personal and business reputation and character."

S. 1673 – Allows a bondsman to be appointed by a professional bondsman as well as by an insurer and strikes the restrictions on writing bonds in counties where the bondsman does not reside. To write bonds in such counties the bondsman would only have to file a copy of his or her license with the county district court clerk.

S. 1872 – Enacts a Professional Bounty Hunter Licensing Act.

S. 1202 – Strikes the ten defendants per year restriction on writing bonds in counties where the bondsman does not reside or have an office. Provides that a professional bondsman shall not be limited in writing bonds in Oklahoma as long as the total amount of bonds written per year does not exceed 20 times the dollar amount placed on deposit.

### South Carolina

B.4572 – Deletes the provision of existing law granting the surety automatic relief from all liability if the defendant is incarcerated as a result of a bench warrant and the surety files an

affidavit stating that fact and the specific terms of the bond that were violated as stated in the bench warrant.  The surety apparently could still file a motion seeking relief from liability.

B. 4916 – Adds a section to provide: (1) that the circuit court shall hear motions to modify bail; (2) after the circuit court has ruled on a motion to modify bail, any further motion for modification must make a prima facie showing of a material change in circumstance related to statutory factors, but evidence on the defendant's guilt or innocence is not a changed circumstance unless the solicitor consents; and (3) if the state seeks to revoke or modify bail it must make a written motion but if such a motion includes a prima facie showing of imminent danger to the community or to the defendant or of flight by the defendant, an accelerated procedure for an emergency hearing is provided, and such an emergency hearing is grounds for the surety to surrender the defendant.

B.4917 – Adds a mandatory, consecutive, no parole five year sentence enhancement for any general sessions court offense committed while released on a bail bond or on a personal recognizance bond.

*B.5053 – Requires the court to enter information about a defendant who fails to appear in the NCIC, to send the surety and bail bondsman copies of the bench warrant within 7 days of its issuance, and requires exoneration of the surety if the state refuses to request extradition.

*B. 5054 – Prohibits a bondsman or runner from making any advertisement or other statement with respect to "any premiums, percentages, or fee offerings" or any statement that is untrue, deceptive or misleading.

### Tennessee

H. 2441 and S. 2619 – Amends the statute on surrender of defendants by excepting from review, and possible refund of premium and re-release, a surrender based on a judgment of forfeiture.

H. 2442 and S. 2720 – For an applicant for approval to own a professional bonding company, changes the experience requirement from two years "with" such a company to two years "as a full-time qualified agent for" such a company.

H. 2654 and S. 2688 – Adds to the list of factors that may disqualify a bondsman a conviction in another state of a felony or misdemeanor equivalent to a Tennessee Class A misdemeanor.

H. 2678 and S. 2604 – Requires that an illegal immigrant be deemed a risk of flight for bail purposes if he or she is arrested for certain serious traffic offenses and authorizes increased bail amounts for such defendants.

S. 2510 and S. 2812 – If a defendant fails to appear, any new bail must be a 100% cash or fully secured bond.

S. 3214 – Requires the Department of Revenue to provide reports to the administrative office of the courts on collection of the bail bond tax.

### United States

S. 2183 – Creates a Fugitive Extradition and Apprehension Trust Fund into which any bail forfeitures will be deposited and used to fund the U.S. Marshal's Service to apprehend fugitives, the U.S. Attorneys to investigate and prosecute fugitives, and the Justice Department to extradite international fugitives.

### Utah

H. 29 – Forbids a bail bond producer from operating in Utah unless he or she is appointed by an authorized insurer and, if he or she submits business through an agency, designated by a licensed bail bond agency or, for property bonds, is designated by a licensed agency.  An enforcement agent may operate only through a licensed bail bond agency.

### Virginia

H. 174 – Requires that a property bail bondsman, or a business or company that he uses to carry out his bail bond business, own any real property that he pledges to meet the statutory $200,000 collateral provision.  Also requires suspension of the license of any property bail bondsman who fails to pay a forfeiture within 60 days after notice and a final court order.

H. 807 – Requires the Criminal Justice Services Board to adopt regulations governing the use of electronic tracking devices by bail bondsmen and excepts use of such devices by licensed bail bondsmen in accordance with such regulations from the criminal statute barring the placing or use of an electronic tracking device through intentionally deceptive means and without consent.

S. 158 – Existing law establishes a rebuttable presumption that certain defendants should not be admitted to bail.  This bill would prevent a magistrate, clerk or deputy clerk from admitting such a defendant to bail and require a hearing with written notice to the Commonwealth's attorney before any other judicial officer does so.  Also provides that if the Commonwealth appeals a bail decision, the decision is stayed until the appeal is decided.

### Washington

H. 2423 and H. 2668 – Reduces the period in which the court must notify the surety of a defendant's failure to appear from 30 to 14 days.  Requires good cause to surrender a defendant, and if the court finds good cause was lacking requires return of the bond premium and any recovery fee.  Good cause includes, but is not limited to, a substantial increase in the risk of flight, violation of a court order, failure to appear, and concealment or intentional

SFAA 000626

misrepresentation of information, but does not include failure to pay the premium. Surrender of the defendant without good cause, gaining full authority over a person's property or finances, and failing to disclose a defendant's location upon request from law enforcement are added to the list of acts that constitute "unprofessional conduct." If a court revokes or reinstates a bail bond agent it must notify the administrative office of the courts which will notify all other courts of the action. Defines property bond and surety bond. Increases the surety bond to be posted by a property bond agency from $10,000 to $100,000 (the bond for a surety bond agency remains at $10,000). Authorizes audits of licensee trust accounts unless the licensee submits an annual CPA audited statement.

S. 5056 (Substitute Bill) – Subject to appropriations, requires development of a "risk assessment tool" by the Washington state institute for public policy, authorizes its use, and authorizes the center for court research to evaluate the "risk assessment tool" and submit a report every two years on its use. Exonerates a bond if the court fails to notify the surety of a default within 14 calendar days (instead of 30 days in current law), requires good cause to surrender the defendant and, if the court determines good cause did not exist, the surety must return the premium and any recovery fee. Surrender without good cause is "unprofessional conduct." If a court revokes or reinstates a bail bond agent's certification to post bonds in the court, it shall notify the administrative office of the courts which shall notify other state courts. Adds to the list of unprofessional conduct "Entering into a contract, including a general power of attorney, with a person that gives the bail bond agent full authority over the person's finances, assets, real property, or personal property" and failing to disclose to law enforcement upon request information on the location of a fugitive defendant. Defines bail bond insurance as surety insurance and makes surety insurance subject to the rate standards set forth in RCW 48.19.020.

**Wisconsin**

A. 567 – Permits and regulates commercial bail. Current law forbids compensation for acting as surety on a bail bond. Would make an exception for a licensed bail bond agent or bail bond agency and require a premium equal to 10% of the amount of the bond. Establishes licensing framework for bail bond agents, bail bond agencies, and bail recovery agents, and authorizes the Department of Safety and Professional Services to promulgate detailed Rules.

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Friday, March 16, 2012 2:22 PM |
| To: | Committee-BBAC-Open |
| Cc: | DNABIC@aol.com |
| Subject: | Legislation |
| Attachments: | 2012 Bail Bond Legislation.doc |

An updated Report is attached. The only additions are Connecticut S. 446 and a federal bill, S.2183.

## 2012 Bail Bond Legislation

(Bills added since the last distribution are marked with an asterisk)

### Arizona

H. 2432 – Provides that the surety shall be relieved of liability upon surrendering the defendant before or within 30 days after the failure to appear except that if the surrender is after the failure to appear the judicial officer may forfeit up to $1,000 of the bond.

H. 2433 – Requires that the list of persons authorized to post bail bonds be updated monthly with the names rotated.  Forbids soliciting bail bond business inside of, or within 200 feet of the entrance to, a court building or jail.  An employee of a bail agent can submit the bond if he or she has proper identification.

H. 2434 – Makes a person convicted of a felony in the previous seven years not eligible for supervision under pretrial services and provides that a defendant not released on his own recognizance shall be released on either a cash or secured appearance bond unless the defendant previously failed to appear, is in custody for unpaid child support, fines or fees, or is charged with a class 1 or 2 felony.  For such defendants the judicial officer could order a cash only bond.

S. 1284 – Amends statutes governing bail bond agents to require a receipt for payment of fees and expenses, require that all collateral be held in a fiduciary capacity and insured (except against weather damage which shall be the risk of the indemnitor), deposit cash collateral in an account separate from the agent's operating accounts, and disclose all premiums and fees.  The agent's license may be suspended or revoked for charging more than the maximum fee or violating any provision of law or rule governing the agent's business.  Requires having a signed contract and fee agreement before securing release of a person (other than a relative).  The premium shall be valid for one year from the date the bond is posted.  Any renewal premium shall be pro rated.

S. 1285 – Revises the licensing of bail recovery agents to require a high school diploma or GED, completion of a gun safety course or have an honorable discharge from the military, be at least 21, be a resident of Arizona for at least a year, and submit fingerprints.  The license shall not be issued until after the fingerprint check is completed.  A certified peace officer may not act as a bail recovery agent.

### California

A. 1529 – Adds a section 1305.5 to the Penal Code to provide that appeals of denial of motions to vacate bail bond forfeitures of $25,000 or less shall be treated as a limited civil case and go to the appellate division of the superior court rather than to the court of appeals.  If the forfeiture is more than $25,000 the appeal is treated as an unlimited civil case and go to the court of appeals.

A. 2029 – Regulates the licensure and conduct of Bail Fugitive Recovery Persons including making it a misdemeanor knowingly to hire an unauthorized person to apprehend a bail fugitive.

S. 968 – Expands eligibility for release on electronic monitoring. Certain defendants eligible for bail may apply for release on electronic monitoring with bail reduced by up to 75%. Such an application may be made to the court starting from 10 court days following arraignment.

S. 989 – Amends Penal Code §1305 to require exoneration of the bond if the defendant is deported. If the defendant is located in another jurisdiction and brought before local law enforcement pursuant to §305(g), tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extraction process. The bond is exonerated if the prosecuting agency does not decide to seek extradition within a reasonable time. Adds "or the United States Attorney" after prosecuting agency in both provisions.

S. 1265 – Permits a limited liability company (LLC) to be licensed as a bail agency on the same conditions as a corporation and exempts an admitted surety insurer, or a subsidiary of an admitted surety insurer, from the requirement that all officers and stockholders (or LLC members) must be licensed bail agents.

### Colorado

H. 12-1114 – Treats stalking the same as domestic violence in terms of setting bail, protective orders and punishment for violating conditions of bail or protective orders.

H. 12-1266 – Extends the sunset of the division of insurance regulation of bail, requires that all forms used in connection with bail be filed with and approved by the division, and revises requirements for cash bonding agents and "Professional Cash Bail Agents" who will qualify by posting a bond with the division of insurance instead of by appointment from a bail insurance company.

H. 12-1310 – Adds to the information that each pretrial services program must include in their annual reports including crime classification of failures to appear, information on those remaining at large, information on those returned to custody and how recovered, re-arrests, and revocations. Permits surety to consent in writing to continuance of bond through sentencing either in initial bond documents or at the time of conviction or within a reasonable time thereafter.

H. 12-1316 – Amends provisions on bonds for possible illegal aliens. If the agency holding the defendant determines that there is an ICE detainer lodged against a person arrested or charged with felonies or class 1 or 2 misdemeanors, it shall notify the bail bond agent before the bond is posted. The bond shall be forfeited if the defendant is deported. The agency shall also notify the district attorney and any pretrial services office, and if the defendant posts bond, the agency shall notify the district attorney before notifying ICE that the defendant is eligible for release to ICE.

### Connecticut

H. 5093 – As a condition precedent to exoneration after the defendant is incarcerated or detained in another state, requires the surety or bail bond agent to agree to reimburse the Division of Criminal Justice for extradition costs incurred to secure the defendant's return.

H. 5382 – Requires applicants for licenses as professional bondsmen and bail recovery agents to be 21 years of age and high school graduates (or equivalents) and not subject to a restraining or protective order involving the use or attempted use of force against another person. Regulates badges worn by bail enforcement agent and permits for bail agents, professional bondsmen and bail agents to carry concealed weapons and adds new requirements to qualify as an instructor in courses required for firearms licenses.

*S. 446 – Limits a surety bond for a misdemeanor, or a violation punishable by imprisonment for one year or less, to a maximum of $5,000 unless the court, judge or referee makes specific findings why a greater amount is necessary.

### Florida

H. 135 and S.210 – Requires that costs of prosecution and costs of representation be withheld from any cash bond posted by any person other than a licensed bail bond agent.

H. 725 and S.938 – Provides for E-mailed notice of time and place of licensure examination for bail bond agents. Strikes the separate standards for continuing education courses for bail bond agents and substitutes a cross reference to the Code section on continuing education courses for insurance agents in general. Amends section on forfeitures to delete the requirement that the clerk send the Department of Financial Services and Office of Insurance Regulation copies of each judgment within 10 days of its entry. Adds that such notice to the surety must be sent to the surety's home office. If the judgment is not paid within 60 days (formerly 35 days), notice must be sent to the Office of Insurance Regulation.

H. 771 and S.1820 – Makes extensive changes to the regulation of bail bond agents including requiring an "agent in charge" for each office, limiting the duration of a temporary bail bond agent license, restricting ownership or management of an agency to bail bond agents licensed and appointed for at least three years, fines insurers up to $1,000 per agent per month for failure to submit a statement of build up trust accounts, establishes a 30 day deadline for agents to pay over premiums, collateral or other funds, authorizes premium payment plans under specified conditions, authorizes persons properly licensed in other states to recover defendants on bonds written in the other state, forbids a licensed agent from directing an unlicensed person to recover a defendant in Florida, requires the monthly report for temporary bail bond agents to be submitted within 15 days of the end of the month and authorizes a fine of up to $500 per month for late submission, requires payment of wages to the temporary bail bond agent and makes them subject to unemployment compensation tax, forbids a temporary bail bond agent from accepting the initial premium for a bond but does allow him or her to accept subsequent payments under a

premium payment plan, details circumstances requiring affidavits listing any unpaid judgments, premiums or other contractual obligations, authorizes online continuing education, requires cancellation of the appointment of any managing general agent if a prior insurer reports unpaid forfeitures, judgments, premiums, losses or other contractual obligations, an insurer appointing a managing general agent is bound by the acts of the managing general agent within the scope of the appointment, allows an agent to provide contact information for multiple attorneys, forbids promising an inmate anything of value in return for referrals, forbids anyone from acting as a professional bail bond agent without a license as such, forbids travel fees for posting a bond if the same agent or agency that posted the bond also wrote the bond, requires immediate return of premium if a bond is not executed, requires all advertising to include the license number of the bail bond agent, requires return of collateral if the bond has expired, increases numerous fines and penalties, and authorizes Regulations to carry out numerous provisions of the bill.

H. 455, H.7047 and S. 1800 – Bars bail for defendants required to register as sexual offenders or sexual predators "until the first appearance in the case in order to ensure full participation of the prosecutor and protection of the public."

### Hawaii

H. 2243 and S. 2158 – Requires that when the court with jurisdiction is closed, a law enforcement agency must release the defendant upon receiving cash, a certified copy of a pre-filed bail bond, or an original bail bond from a licensed agent.

H. 2868 and S. 3068 – Enacts a new Chapter in the Code providing mechanisms to enforce payment of bonds, suspend agents or insurers who do not pay, exonerate bonds upon recovery of the defendant or a showing that the failure to appear was caused by an Act of God or of the State or the law, and allow payment of costs of extradition from the bond.

### Idaho

S. 1325 – Requires full payment of the bail bond premium before the defendant is released. Premium financing would be a permitted method of paying the premium, but no bail agent or surety company may have any financial affiliation with, or indemnify or receive compensation from, the premium financier.

### Illinois

S. 2870 – Adds "a surety bond in an amount equal to 25% of the bail, executed by a surety approved by the court" as an alternative to the current requirement of a 10% cash deposit. That is, the defendant must execute the bond and deposit either 10% cash or a 25% surety bond.

### Kansas

S. 321 – Restricts persons eligible for release on their own recognizance to residents of Kansas in the U.S. legally who are charged with misdemeanors or certain levels of felonies, have no prior history of failures to appear, no detainers, have not been extradited, are not awaiting extradition, and have not been detained for alleged probation violation.  Also requires an out of state surety or agent who intends to apprehend any person in Kansas to contract with a person authorized to act as a surety or agent in Kansas, and that authorized person must accompany the out of state person during the apprehension.

### Louisiana

H. 190 – Allows the clerk to give notice to the surety of a forfeiture judgment either at the address provided pursuant to present law (Art. 322) or at an address registered with the Department of Insurance.

H. 304 – Shortens the Bail Bond Apprentice Program from six months to three months.

H. 398 – Adds three Parishes (Ascension, Assumption and St. James) that will be authorized to alter the percentage to be deposited as cash bail and to charge a $15 fee for processing the bond.

H. 513 – Adds certain information and record keeping for the Bail Bond Apprentice Program.

H. 581 – If the prosecutor dismisses a case for which the defendant had provided bail and a subsequent indictment or information charges the same or a lesser offense based on the same facts, the court must reinstate the bail if the surety consents.  If the defendant voluntarily appears on the first occasion of which he or she has actual notice, the court must permit the defendant to remain free for five days, excluding weekends, to obtain the surety's consent.

H. 760 – If a defendant is released on bail for a crime of violence and is subsequently arrested for any crime the bail is automatically revoked and bail is barred for the new offense.

S. 242 – Narrows the separate treatment of Orleans Parish for purposes of the premium fee to bonds for charges to be prosecuted in the Criminal District Court.  The $3 fee will apply only to bonds in that court.

S. 173 – Deletes authority for a bail bond of up to $500 during the period is placed on probation by the Traffic Court of New Orleans.

S. 291 – Deletes the provision in current law that the prosecutor may enforce an unpaid forfeiture as a civil judgment leaving filing a rule to show cause with the Insurance Commissioner as the sole enforcement method.

S. 292 – Expands the grounds to exonerate the bond by adding refusal to extradite the defendant and failure to enter the defendant in the NCIC registry.  Also deletes extensions of time or setting aside judgments because of a fortuitous event that makes it impossible to perform and the

requirement that a motion for such exoneration be filed within 366 days of the fortuitous event and substitutes extensions of time or setting aside judgments if they are "justified under the facts of the case" without any time limit for the motion.

S. 294 – Requires notice of the signing of the judgment to be mailed within 60 days of the defendant's initial failure to appear instead of within 60 days after the defendant fails to appear.

S. 319 – Amends the provision of the Code of Criminal Procedure that provides if the defendant appears and the proceeding is continued to a specific date the defendant not be given further notice of the new date by requiring that the surety or agent have notice either in the bond or by written notice. [The Digest with the bill says that is its intent, but the actually language seems to be unclear as to what proceeding the new notice requirement applies. It could be read to mean notice of the original appearance date not the new one.]

S. 492 – Extends to the 23rd Judicial District the right to alter the percentage of cash bond and the filing fee just as the parishes of St. John the Baptist and St. Charles can now.

### Maine

H. 312 – Requires as a condition of bail for persons charged with certain crimes of domestic violence that the defendant turn over all firearms to a law enforcement officer and refrain from possessing firearms or other specified dangerous weapons.

H.1256 – Authorizes electronic monitoring, at the defendant's expense, as a condition of bail for defendants charged with crimes involving domestic violence.

### Maryland

H. 338 and S. 690 – Forbids a district court commissioner from releasing defendants charged with certain enumerated offenses and permits a judge to release such defendants only on full cash or corporate surety bond or on a property bond secured by property located in Maryland with equity equal to the amount of the bond plus $20,000. Enacts a rebuttable presumption that such defendants will flee and will pose a danger to another person or the community.

H. 492 – Except for failure to pay family support, "cash bail" or "cash bond" may be provided in the form of cash, a surety bond, or a property bond by the defendant, or by a private surety acting for the defendant. For failure to pay family support, only the defendant may post a "cash bail" or a "cash bond."

H. 517 – Forbids a surety from accepting or providing real property as security for a bond unless the owner of the property certifies that the property has no outstanding citations for building or property code violations.

H. 551 – Provides that if the defendant is taken into custody by Immigration and Customs Enforcement because of his or her immigration status, the bond is void, the bond must be returned to the surety and the surety discharged, and any premium must be refunded.

H. 573 – Forbids courthouse or correctional facility employees from soliciting for or advertising the services of a specific bondsman and increases the penalties for banned solicitation by a bondsman or agent as well as by the added employees.

H. 742 and S. 489 – Requires applicants for a bail bondsman's license to certify one year's regular employment by a licensed bail bondsman and authorizes installment payment of premiums.  If the premium is paid by installments, certain records have to be kept and attempts made to collect any balance owed.  The installment agreement must include certain information about the payments owed.

### Mississippi

H. 173 and S. 2838 – Automatically stays execution on a bond forfeiture for 90 days from the entry of final judgment and requires the court to exonerate the bond if the defendant appears or is surrendered before execution of final judgment.  Grants a bail agent immunity from civil damages for actions taken within the scope of his authority and in good faith to enforce a court order, scire facias and final judgment.  Bail agents shall not be liable in civil damages resulting from a court's failure to properly issue or serve the surety with a set aside order for scire facias or final judgment or with the writs or judgment themselves.

H. 174, H. 631 and S. 2805 – Revises prelicensing educational requirements for  professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.

H. 175 and S. 2837 – Deletes requirement that the sheriff approve a bond from a properly licensed bail  agent.

H. 631 and S. 2805 – Revises prelicensing educational requirements for  professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.  Makes it unlawful to refuse to return collateral or other indemnity when the premium has been paid or the obligation on the bond terminated.

H. 880 and S. 2847 – Designates certain charges as crimes with bail restrictions, for defendants charged with such designated crimes requires full cash, corporate surety or bond secured by real property and, if real property, requires an affidavit from the owner with information as to equity in the property.  Creates a presumption for full cash bail if a defendant charged with such crimes also has two prior felony convictions or two other indictable offenses pending or was on parole or has a prior conviction for certain enumerated crimes including bail jumping.

H. 1439 – for persons charged with domestic violence offenses, the court must check the Mississippi Protective Order Registry and consider any protective order before granting bail.

H. 1471 – Permits release on own recognizance or appearance bond unless the court determines this will not reasonably assure appearance or protect others or the public; in which case the court may impose the least onerous conditions to assure appearance and protect others and the public taking into account a list of factors related to the defendant and the offense.  Also establishes a bail schedule but permits deviation in the court's discretion.  Forbids post conviction bail if the sentence is 20 years or more or if conditions of release will not reasonably assure the defendant's surrender or protection for others or the public.

S. 2254 – If a defendant is charged with a crime involving a domestic victim, the court must check the Mississippi Protective Order Registry and if there is a domestic abuse protective order against the defendant, take that into account when determining bail.

S 2620 – Would permit renewal of a professional bail agent's license held on the effective date of the act even though the licensee was convicted of a felony not involving moral turpitude.

### Missouri

H. 1867 – Requires the court to accept "a guarantee from any surety who is in compliance with general laws regulating such profession" in lieu of a cash only bond.

### New Jersey

CR 93 – Amends the state Constitution to allow the legislature to forbid bail to illegal immigrants charged with certain crimes.

A. 474 and S. 560 – Adds assault and death by auto or vessel to the list of crimes with bail restrictions.

A. 1674 and S. 733 – Makes 16 additions  to the list of crimes with bail restrictions.

A.1713 – If a released defendant is charged with a second offense involving petty disorderly persons, disorderly persons, a crime of the fourth degree or a crime of the third degree, there would be a presumption of a 50% cash bail option.  For a third or subsequent charge for the same categories of offenses, the presumption would be for 100% cash bond.  This seems to be intended to substitute the higher percentages for a 10% cash option.

A.1772 and S. 678 – Forbids release of illegal immigrants charged with crimes of the first or second degree or previously convicted of two or more crimes that occurred on separate occasions.  The change would take effect upon amendment to the state Constitution per CR 93.

A.2254 – Authorizes establishment of a pretrial release program.  Any defendant would be eligible except one charged with a crime with bail restrictions or other first degree offenses.

A. 2536 -- A bail bond can be forfeited only for failure to appear; establishes a schedule for remission of forfeitures if the defendant is recovered, is dead or is incarcerated within the United States if the surety engaged in monitoring efforts or attempted to contact the defendant at least once every three weeks; requires mailing notice to the surety and agent; if a bench warrant has been issued, authorizes any jail or law enforcement agent to accept surrender of the defendant from the surety or agent or their representatives; establishes a $100 filing fee for bonds or recognizances; and forbids removing the surety or its agents from bail registry if the surety has filed a motion to vacate a forfeiture and the defendant is in custody in New Jersey or has entered an order to vacate the forfeiture that is awaiting court's signature.  [This appears to be the same as 2010 A.1143, and the remission schedule does not make sense.]

S. 1133 – Adds certain weapons offenses to the list of crimes with bail restrictions.


### New Mexico

HJR. 3 – Deletes the sufficient sureties clause of the New Mexico Constitution and substitutes a provision that bail be granted or denied based on flight risk, seriousness of the offense charged, danger to the community, and other factors provided by law.  States that "The least onerous condition of release needed to comply with these factors shall be imposed."  Forbids excessive bail, cruel and unusual punishment and excessive fines and grants precedence to appeals of orders denying bail.


### Oklahoma

HJR 1088 – Would amend the state Constitution to permit denial of bail to illegal aliens charged with serious felony offenses as designated by the Legislature.

H. 2190 – Forbids bail for a person held in a secure facility against whom a petition has been filed alleging that the person is a sexually violent predator.

H. 2206 – Strikes the exception allowing a professional bondsman to write bonds on up to ten defendants per year in counties in which the bondsman cannot register his license (i.e. counties in which the bondsman does not reside or have his office) or an unlimited number of bonds in counties where there is no registered bondsman.

H. 2278 – For a defendant charged with one of the 40 offenses that render the defendant ineligible for a pretrial services program, the court can order urinalysis testing as well as use of a GPS monitoring device.  The court can also order the defendant to pay for supervision and testing as well as the GPS device and monitoring.

H. 2981 – Requires a $300,000 minimum deposit from all insurers with the surety, including bail, line of authority.  Adds changes in legal name and E-mail address to the information that

must be reported to the Commissioner within 5 business days, increases the application fee for bail bondsman from $250 to $350, and increases various late filing fees.

S. 1107 – Changes the due date of financial statements required from professional bondsmen and property bondsmen from the last day of the licensee's birth month to September 15

S. 1115 – Gives the court discretion to stay the due date for payment of forfeiture.  Current law authorizes the court, in its discretion, to vacate forfeiture and exonerate the bond if good cause is shown for the defendant's failure to appear or the bondsman's failure to return the defendant within 90 days.  This bill adds the lesser remedy of staying the due date of payment.

S. 1127 – Changes the filing date for bail bondsman license applications to September 30 instead of the last day of the applicant's birth month and authorizes the Commissioner to require any documents reasonably necessary to verify information on the application.  Also amends the standard from "of good character and reputation" to "competent, trustworthy, financially responsible, and of good personal and business reputation and character."

S. 1673 – Allows a bondsman to be appointed by a professional bondsman as well as by an insurer and strikes the restrictions on writing bonds in counties where the bondsman does not reside.  To write bonds in such counties the bondsman would only have to file a copy of his or her license with the county district court clerk.

S. 1872 – Enacts a Professional Bounty Hunter Licensing Act.

S. 1202 – Strikes the ten defendants per year restriction on writing bonds in counties where the bondsman does not reside or have an office.  Provides that a professional bondsman shall not be limited in writing bonds in Oklahoma as long as the total amount of bonds written per year does not exceed 20 times the dollar amount placed on deposit.


### South Carolina

B.4572 – Deletes the provision of existing law granting the surety automatic relief from all liability if the defendant is incarcerated as a result of a bench warrant and the surety files an affidavit stating that fact and the specific terms of the bond that were violated as stated in the bench warrant.  The surety apparently could still file a motion seeking relief from liability.

B. 4916 – Adds a section to provide: (1) that the circuit court shall hear motions to modify bail; (2) after the circuit court has ruled on a motion to modify bail, any further motion for modification must make a prima facie showing of a material change in circumstance related to statutory factors, but evidence on the defendant's guilt or innocence is not a changed circumstance unless the solicitor consents; and (3) if the state seeks to revoke or modify bail it must make a written motion but if such a motion includes a prima facie showing of imminent danger to the community or to the defendant or of flight by the defendant, an accelerated procedure for an emergency hearing is provided, and such an emergency hearing is grounds for the surety to surrender the defendant.

B.4917 – Adds a mandatory, consecutive, no parole five year sentence enhancement for any general sessions court offense committed while released on a bail bond or on a personal recognizance bond.

### Tennessee

H. 2441 and S. 2619 – Amends the statute on surrender of defendants by excepting from review, and possible refund of premium and re-release, a surrender based on a judgment of forfeiture.

H. 2442 and S. 2720 – For an applicant for approval to own a professional bonding company, changes the experience requirement from two years "with" such a company to two years "as a full-time qualified agent for" such a company.

H. 2654 and S. 2688 – Adds to the list of factors that may disqualify a bondsman a conviction in another state of a felony or misdemeanor equivalent to a Tennessee Class A misdemeanor.

H. 2678 and S. 2604 – Requires that an illegal immigrant be deemed a risk of flight for bail purposes if he or she is arrested for certain serious traffic offenses and authorizes increased bail amounts for such defendants.

S. 2510 and S. 2812 – If a defendant fails to appear, any new bail must be a 100% cash or fully secured bond.

S. 3214 – Requires the Department of Revenue to provide reports to the administrative office of the courts on collection of the bail bond tax.

### United States

*S. 2183 – Creates a Fugitive Extradition and Apprehension Trust Fund into which any bail forfeitures will be deposited and used to fund the U.S. Marshal's Service to apprehend fugitives, the U.S. Attorneys to investigate and prosecute fugitives, and the Justice Department to extradite international fugitives.

### Utah

H. 29 – Forbids a bail bond producer from operating in Utah unless he or she is appointed by an authorized insurer and, if he or she submits business through an agency, designated by a licensed bail bond agency or, for property bonds, is designated by a licensed agency. An enforcement agent may operate only through a licensed bail bond agency.

### Virginia

H. 174 – Requires that a property bail bondsman, or a business or company that he uses to carry out his bail bond business, own any real property that he pledges to meet the statutory $200,000 collateral provision.  Also requires suspension of the license of any property bail bondsman who fails to pay a forfeiture within 60 days after notice and a final court order.

H. 807 – Requires the Criminal Justice Services Board to adopt regulations governing the use of electronic tracking devices by bail bondsmen and excepts use of such devices by licensed bail bondsmen in accordance with such regulations from the criminal statute barring the placing or use of an electronic tracking device through intentionally deceptive means and without consent.

S. 158 – Existing law establishes a rebuttable presumption that certain defendants should not be admitted to bail.  This bill would prevent a magistrate, clerk or deputy clerk from admitting such a defendant to bail and require a hearing with written notice to the Commonwealth's attorney before any other judicial officer does so.  Also provides that if the Commonwealth appeals a bail decision, the decision is stayed until the appeal is decided.

### Washington

H. 2423 and H. 2668 – Reduces the period in which the court must notify the surety of a defendant's failure to appear from 30 to 14 days.  Requires good cause to surrender a defendant, and if the court finds good cause was lacking requires return of the bond premium and any recovery fee.  Good cause includes, but is not limited to, a substantial increase in the risk of flight, violation of a court order, failure to appear, and concealment or intentional misrepresentation of information, but does not include failure to pay the premium.  Surrender of the defendant without good cause, gaining full authority over a person's property or finances, and failing to disclose a defendant's location upon request from law enforcement are added to the list of acts that constitute "unprofessional conduct."  If a court revokes or reinstates a bail bond agent it must notify the administrative office of the courts which will notify all other courts of the action.  Defines property bond and surety bond.  Increases the surety bond to be posted by a property bond agency from $10,000 to $100,000 (the bond for a surety bond agency remains at $10,000).  Authorizes audits of licensee trust accounts unless the licensee submits an annual CPA audited statement.

S. 5056 (Substitute Bill) – Subject to appropriations, requires development of a "risk assessment tool" by the Washington state institute for public policy, authorizes its use, and authorizes the center for court research to evaluate the "risk assessment tool" and submit a report every two years on its use.  Exonerates a bond if the court fails to notify the surety of a default within 14 calendar days (instead of 30 days in current law), requires good cause to surrender the defendant and, if the court determines good cause did not exist, the surety must return the premium and any recovery fee.  Surrender without good cause is "unprofessional conduct." If a court revokes or reinstates a bail bond agent's certification to post bonds in the court, it shall notify the administrative office of the courts which shall notify other state courts.  Adds to the list of unprofessional conduct "Entering into a contract, including a general power of attorney, with a person that gives the bail bond agent full authority over the person's finances, assets, real

property, or personal property" and failing to disclose to law enforcement upon request information on the location of a fugitive defendant. Defines bail bond insurance as surety insurance and makes surety insurance subject to the rate standards set forth in RCW 48.19.020.

### Wisconsin

A. 567 – Permits and regulates commercial bail. Current law forbids compensation for acting as surety on a bail bond. Would make an exception for a licensed bail bond agent or bail bond agency and require a premium equal to 10% of the amount of the bond. Establishes licensing framework for bail bond agents, bail bond agencies, and bail recovery agents, and authorizes the Department of Safety and Professional Services to promulgate detailed Rules.

**CONFIDENTIAL**

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Friday, March 9, 2012 4:07 PM |
| To: | Committee-BBAC-Open |
| Cc: | DNABIC@aol.com |
| Subject: | Legislation |
| Attachments: | 2012 Bail Bond Legislation.doc |

An update Report is attached.

Gene Newman provided a Mississippi Attorney General's Opinion, available on Westlaw at 2012 WL 679140 (January 18, 2012), on the licensing of surety agents and soliciting bail agents if their appointment by the surety company or professional bondsman is terminated.

The testimony at the March 7 hearing on Wisconsin AB 567 is available at:

http://wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=5879

## 2012 Bail Bond Legislation

(Bills added since the last distribution are marked with an asterisk)

### Arizona

H. 2432 – Provides that the surety shall be relieved of liability upon surrendering the defendant before or within 30 days after the failure to appear except that if the surrender is after the failure to appear the judicial officer may forfeit up to $1,000 of the bond.

H. 2433 – Requires that the list of persons authorized to post bail bonds be updated monthly with the names rotated.  Forbids soliciting bail bond business inside of, or within 200 feet of the entrance to, a court building or jail.  An employee of a bail agent can submit the bond if he or she has proper identification.

H. 2434 – Makes a person convicted of a felony in the previous seven years not eligible for supervision under pretrial services and provides that a defendant not released on his own recognizance shall be released on either a cash or secured appearance bond unless the defendant previously failed to appear, is in custody for unpaid child support, fines or fees, or is charged with a class 1 or 2 felony.  For such defendants the judicial officer could order a cash only bond.

S. 1284 – Amends statutes governing bail bond agents to require a receipt for payment of fees and expenses, require that all collateral be held in a fiduciary capacity and insured (except against weather damage which shall be the risk of the indemnitor), deposit cash collateral in an account separate from the agent's operating accounts, and disclose all premiums and fees.  The agent's license may be suspended or revoked for charging more than the maximum fee or violating any provision of law or rule governing the agent's business.  Requires having a signed contract and fee agreement before securing release of a person (other than a relative).  The premium shall be valid for one year from the date the bond is posted.  Any renewal premium shall be pro rated.

S. 1285 – Revises the licensing of bail recovery agents to require a high school diploma or GED, completion of a gun safety course or have an honorable discharge from the military, be at least 21, be a resident of Arizona for at least a year, and submit fingerprints.  The license shall not be issued until after the fingerprint check is completed.  A certified peace officer may not act as a bail recovery agent.

### California

A. 1529 – Adds a section 1305.5 to the Penal Code to provide that appeals of denial of motions to vacate bail bond forfeitures of $25,000 or less shall be treated as a limited civil case and go to the appellate division of the superior court rather than to the court of appeals.  If the forfeiture is more than $25,000 the appeal is treated as an unlimited civil case and go to the court of appeals.

A. 2029 – Regulates the licensure and conduct of Bail Fugitive Recovery Persons including making it a misdemeanor knowingly to hire an unauthorized person to apprehend a bail fugitive.

S. 968 – Expands eligibility for release on electronic monitoring.  Certain defendants eligible for bail may apply for release on electronic monitoring with bail reduced by up to 75%.  Such an application may be made to the court starting from 10 court days following arraignment.

S. 989 – Amends Penal Code §1305 to require exoneration of the bond if the defendant is deported.  If the defendant is located in another jurisdiction and brought before local law enforcement pursuant to §305(g), tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extraction process.  The bond is exonerated if the prosecuting agency does not decide to seek extradition within a reasonable time.  Adds "or the United States Attorney" after prosecuting agency in both provisions.

S. 1265 – Permits a limited liability company (LLC) to be licensed as a bail agency on the same conditions as a corporation and exempts an admitted surety insurer, or a subsidiary of an admitted surety insurer, from the requirement that all officers and stockholders (or LLC members) must be licensed bail agents.


### Colorado

H. 12-1114 – Treats stalking the same as domestic violence in terms of setting bail, protective orders and punishment for violating conditions of bail or protective orders.

H. 12-1266 – Extends the sunset of the division of insurance regulation of bail, requires that all forms used in connection with bail be filed with and approved by the division, and revises requirements for cash bonding agents and "Professional Cash Bail Agents" who will qualify by posting a bond with the division of insurance instead of by appointment from a bail insurance company.

H. 12-1310 – Adds to the information that each pretrial services program must include in their annual reports including crime classification of failures to appear, information on those remaining at large, information on those returned to custody and how recovered, re-arrests, and revocations.  Permits surety to consent in writing to continuance of bond through sentencing either in initial bond documents or at the time of conviction or within a reasonable time thereafter.

H. 12-1316 – Amends provisions on bonds for possible illegal aliens.  If the agency holding the defendant determines that there is an ICE detainer lodged against a person arrested or charged with felonies or class 1 or 2 misdemeanors, it shall notify the bail bond agent before the bond is posted.  The bond shall be forfeited if the defendant is deported.  The agency shall also notify the district attorney and any pretrial services office, and if the defendant posts bond, the agency shall notify the district attorney before notifying ICE that the defendant is eligible for release to ICE.

**Connecticut**

H. 5093 – As a condition precedent to exoneration after the defendant is incarcerated or detained in another state, requires the surety or bail bond agent to agree to reimburse the Division of Criminal Justice for extradition costs incurred to secure the defendant's return.

H. 5382 – Requires applicants for licenses as professional bondsmen and bail recovery agents to be 21 years of age and high school graduates (or equivalents) and not subject to a restraining or protective order involving the use or attempted use of force against another person. Regulates badges worn by bail enforcement agent and permits for bail agents, professional bondsmen and bail agents to carry concealed weapons and adds new requirements to qualify as an instructor in courses required for firearms licenses.

**Florida**

H. 135 and S.210 – Requires that costs of prosecution and costs of representation be withheld from any cash bond posted by any person other than a licensed bail bond agent.

H. 725 and S.938 – Provides for E-mailed notice of time and place of licensure examination for bail bond agents. Strikes the separate standards for continuing education courses for bail bond agents and substitutes a cross reference to the Code section on continuing education courses for insurance agents in general. Amends section on forfeitures to delete the requirement that the clerk send the Department of Financial Services and Office of Insurance Regulation copies of each judgment within 10 days of its entry. Adds that such notice to the surety must be sent to the surety's home office. If the judgment is not paid within 60 days (formerly 35 days), notice must be sent to the Office of Insurance Regulation.

H. 771 and S.1820 – Makes extensive changes to the regulation of bail bond agents including requiring an "agent in charge" for each office, limiting the duration of a temporary bail bond agent license, restricting ownership or management of an agency to bail bond agents licensed and appointed for at least three years, fines insurers up to $1,000 per agent per month for failure to submit a statement of build up trust accounts, establishes a 30 day deadline for agents to pay over premiums, collateral or other funds, authorizes premium payment plans under specified conditions, authorizes persons properly licensed in other states to recover defendants on bonds written in the other state, forbids a licensed agent from directing an unlicensed person to recover a defendant in Florida, requires the monthly report for temporary bail bond agents to be submitted within 15 days of the end of the month and authorizes a fine of up to $500 per month for late submission, requires payment of wages to the temporary bail bond agent and makes them subject to unemployment compensation tax, forbids a temporary bail bond agent from accepting the initial premium for a bond but does allow him or her to accept subsequent payments under a premium payment plan, details circumstances requiring affidavits listing any unpaid judgments, premiums or other contractual obligations, authorizes online continuing education, requires cancellation of the appointment of any managing general agent if a prior insurer reports unpaid forfeitures, judgments, premiums, losses or other contractual obligations, an insurer appointing a

managing general agent is bound by the acts of the managing general agent within the scope of the appointment, allows an agent to provide contact information for multiple attorneys, forbids promising an inmate anything of value in return for referrals, forbids anyone from acting as a professional bail bond agent without a license as such, forbids travel fees for posting a bond if the same agent or agency that posted the bond also wrote the bond, requires immediate return of premium if a bond is not executed, requires all advertising to include the license number of the bail bond agent, requires return of collateral if the bond has expired, increases numerous fines and penalties, and authorizes Regulations to carry out numerous provisions of the bill.

H. 455, H.7047 and S. 1800 – Bars bail for defendants required to register as sexual offenders or sexual predators "until the first appearance in the case in order to ensure full participation of the prosecutor and protection of the public."

### Hawaii

H. 2243 and S. 2158 – Requires that when the court with jurisdiction is closed, a law enforcement agency must release the defendant upon receiving cash, a certified copy of a pre-filed bail bond, or an original bail bond from a licensed agent.

H. 2868 and S. 3068 – Enacts a new Chapter in the Code providing mechanisms to enforce payment of bonds, suspend agents or insurers who do not pay, exonerate bonds upon recovery of the defendant or a showing that the failure to appear was caused by an Act of God or of the State or the law, and allow payment of costs of extradition from the bond.

### Idaho

S. 1325 – Requires full payment of the bail bond premium before the defendant is released. Premium financing would be a permitted method of paying the premium, but no bail agent or surety company may have any financial affiliation with, or indemnify or receive compensation from, the premium financier.

### Illinois

S. 2870 – Adds "a surety bond in an amount equal to 25% of the bail, executed by a surety approved by the court" as an alternative to the current requirement of a 10% cash deposit. That is, the defendant must execute the bond and deposit either 10% cash or a 25% surety bond.

### Kansas

S. 321 – Restricts persons eligible for release on their own recognizance to residents of Kansas in the U.S. legally who are charged with misdemeanors or certain levels of felonies, have no prior history of failures to appear, no detainers, have not been extradited, are not awaiting extradition,

and have not been detained for alleged probation violation.  Also requires an out of state surety or agent who intends to apprehend any person in Kansas to contract with a person authorized to act as a surety or agent in Kansas, and that authorized person must accompany the out of state person during the apprehension.

### Louisiana

H. 190 – Allows the clerk to give notice to the surety of a forfeiture judgment either at the address provided pursuant to present law (Art. 322) or at an address registered with the Department of Insurance.

H. 304 – Shortens the Bail Bond Apprentice Program from six months to three months.

H. 398 – Adds three Parishes (Ascension, Assumption and St. James) that will be authorized to alter the percentage to be deposited as cash bail and to charge a $15 fee for processing the bond.

H. 513 – Adds certain information and record keeping for the Bail Bond Apprentice Program.

H. 581 – If the prosecutor dismisses a case for which the defendant had provided bail and a subsequent indictment or information charges the same or a lesser offense based on the same facts, the court must reinstate the bail if the surety consents.  If the defendant voluntarily appears on the first occasion of which he or she has actual notice, the court must permit the defendant to remain free for five days, excluding weekends, to obtain the surety's consent.

*H. 760 – If a defendant is released on bail for a crime of violence and is subsequently arrested for any crime the bail is automatically revoked and bail is barred for the new offense.

S. 242 – Narrows the separate treatment of Orleans Parish for purposes of the premium fee to bonds for charges to be prosecuted in the Criminal District Court.  The $3 fee will apply only to bonds in that court.

S. 173 – Deletes authority for a bail bond of up to $500 during the period is placed on probation by the Traffic Court of New Orleans.

S. 291 – Deletes the provision in current law that the prosecutor may enforce an unpaid forfeiture as a civil judgment leaving filing a rule to show cause with the Insurance Commissioner as the sole enforcement method.

*S. 292 – Expands the grounds to exonerate the bond by adding refusal to extradite the defendant and failure to enter the defendant in the NCIC registry.  Also deletes extensions of time or setting aside judgments because of a fortuitous event that makes it impossible to perform and the requirement that a motion for such exoneration be filed within 366 days of the fortuitous event and substitutes extensions of time or setting aside judgments if they are "justified under the facts of the case" without any time limit for the motion.

*S. 294 – Requires notice of the signing of the judgment to be mailed within 60 days of the defendant's initial failure to appear instead of within 60 days after the defendant fails to appear.

*S. 319 – Amends the provision of the Code of Criminal Procedure that provides if the defendant appears and the proceeding is continued to a specific date the defendant not be given further notice of the new date by requiring that the surety or agent have notice either in the bond or by written notice.  [The Digest with the bill says that is its intent, but the actually language seems to be unclear as to what proceeding the new notice requirement applies.  It could be read to mean notice of the original appearance date not the new one.]

*S. 492 – Extends to the 23rd Judicial District the right to alter the percentage of cash bond and the filing fee just as the parishes of St. John the Baptist and St. Charles can now.

### Maine

H. 312 – Requires as a condition of bail for persons charged with certain crimes of domestic violence that the defendant turn over all firearms to a law enforcement officer and refrain from possessing firearms or other specified dangerous weapons.

H.1256 – Authorizes electronic monitoring, at the defendant's expense, as a condition of bail for defendants charged with crimes involving domestic violence.

### Maryland

H. 338 and S. 690 – Forbids a district court commissioner from releasing defendants charged with certain enumerated offenses and permits a judge to release such defendants only on full cash or corporate surety bond or on a property bond secured by property located in Maryland with equity equal to the amount of the bond plus $20,000.  Enacts a rebuttable presumption that such defendants will flee and will pose a danger to another person or the community.

H. 492 – Except for failure to pay family support, "cash bail" or "cash bond" may be provided in the form of cash, a surety bond, or a property bond by the defendant, or by a private surety acting for the defendant.  For failure to pay family support, only the defendant may post a "cash bail" or a "cash bond."

H. 517 – Forbids a surety from accepting or providing real property as security for a bond unless the owner of the property certifies that the property has no outstanding citations for building or property code violations.

H. 551 – Provides that if the defendant is taken into custody by Immigration and Customs Enforcement because of his or her immigration status, the bond is void, the bond must be returned to the surety and the surety discharged, and any premium must be refunded.

H. 573 – Forbids courthouse or correctional facility employees from soliciting for or advertising the services of a specific bondsman and increases the penalties for banned solicitation by a bondsman or agent as well as by the added employees.

H. 742 and S. 489 – Requires applicants for a bail bondsman's license to certify one year's regular employment by a licensed bail bondsman and authorizes installment payment of premiums. If the premium is paid by installments, certain records have to be kept and attempts made to collect any balance owed. The installment agreement must include certain information about the payments owed.

### Mississippi

H. 173 and S. 2838 – Automatically stays execution on a bond forfeiture for 90 days from the entry of final judgment and requires the court to exonerate the bond if the defendant appears or is surrendered before execution of final judgment. Grants a bail agent immunity from civil damages for actions taken within the scope of his authority and in good faith to enforce a court order, scire facias and final judgment. Bail agents shall not be liable in civil damages resulting from a court's failure to properly issue or serve the surety with a set aside order for scire facias or final judgment or with the writs or judgment themselves.

H. 174, H. 631 and S. 2805 – Revises prelicensing educational requirements for professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.

H. 175 and S. 2837 – Deletes requirement that the sheriff approve a bond from a properly licensed bail agent.

H. 631 and S. 2805 – Revises prelicensing educational requirements for professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent. Makes it unlawful to refuse to return collateral or other indemnity when the premium has been paid or the obligation on the bond terminated.

H. 880 and S. 2847 – Designates certain charges as crimes with bail restrictions, for defendants charged with such designated crimes requires full cash, corporate surety or bond secured by real property and, if real property, requires an affidavit from the owner with information as to equity in the property. Creates a presumption for full cash bail if a defendant charged with such crimes also has two prior felony convictions or two other indictable offenses pending or was on parole or has a prior conviction for certain enumerated crimes including bail jumping.

H. 1439 – for persons charged with domestic violence offenses, the court must check the Mississippi Protective Order Registry and consider any protective order before granting bail.

H. 1471 – Permits release on own recognizance or appearance bond unless the court determines this will not reasonably assure appearance or protect others or the public; in which case the court may impose the least onerous conditions to assure appearance and protect others and the public

taking into account a list of factors related to the defendant and the offense. Also establishes a bail schedule but permits deviation in the court's discretion. Forbids post conviction bail if the sentence is 20 years or more or if conditions of release will not reasonably assure the defendant's surrender or protection for others or the public.

S. 2254 – If a defendant is charged with a crime involving a domestic victim, the court must check the Mississippi Protective Order Registry and if there is a domestic abuse protective order against the defendant, take that into account when determining bail.

S 2620 – Would permit renewal of a professional bail agent's license held on the effective date of the act even though the licensee was convicted of a felony not involving moral turpitude.

### Missouri

H. 1867 – Requires the court to accept "a guarantee from any surety who is in compliance with general laws regulating such profession" in lieu of a cash only bond.

### New Jersey

CR 93 – Amends the state Constitution to allow the legislature to forbid bail to illegal immigrants charged with certain crimes.

A. 474 and S. 560 – Adds assault and death by auto or vessel to the list of crimes with bail restrictions.

A. 1674 and S. 733 – Makes 16 additions  to the list of crimes with bail restrictions.

A.1713 – If a released defendant is charged with a second offense involving petty disorderly persons, disorderly persons, a crime of the fourth degree or a crime of the third degree, there would be a presumption of a 50% cash bail option.  For a third or subsequent charge for the same categories of offenses, the presumption would be for 100% cash bond.  This seems to be intended to substitute the higher percentages for a 10% cash option.

A.1772 and S. 678 – Forbids release of illegal immigrants charged with crimes of the first or second degree or previously convicted of two or more crimes that occurred on separate occasions.  The change would take effect upon amendment to the state Constitution per CR 93.

A.2254 – Authorizes establishment of a pretrial release program.  Any defendant would be eligible except one charged with a crime with bail restrictions or other first degree offenses.

A. 2536 -- A bail bond can be forfeited only for failure to appear; establishes a schedule for remission of forfeitures if the defendant is recovered, is dead or is incarcerated within the United States if the surety engaged in monitoring efforts or attempted to contact the defendant at least

once every three weeks; requires mailing notice to the surety and agent; if a bench warrant has been issued, authorizes any jail or law enforcement agent to accept surrender of the defendant from the surety or agent or their representatives; establishes a $100 filing fee for bonds or recognizances; and forbids removing the surety or its agents from bail registry if the surety has filed a motion to vacate a forfeiture and the defendant is in custody in New Jersey or has entered an order to vacate the forfeiture that is awaiting court's signature. [This appears to be the same as 2010 A.1143, and the remission schedule does not make sense.]

S. 1133 – Adds certain weapons offenses to the list of crimes with bail restrictions.

### New Mexico

HJR. 3 – Deletes the sufficient sureties clause of the New Mexico Constitution and substitutes a provision that bail be granted or denied based on flight risk, seriousness of the offense charged, danger to the community, and other factors provided by law. States that "The least onerous condition of release needed to comply with these factors shall be imposed." Forbids excessive bail, cruel and unusual punishment and excessive fines and grants precedence to appeals of orders denying bail.

### Oklahoma

HJR 1088 – Would amend the state Constitution to permit denial of bail to illegal aliens charged with serious felony offenses as designated by the Legislature.

H. 2190 – Forbids bail for a person held in a secure facility against whom a petition has been filed alleging that the person is a sexually violent predator.

H. 2206 – Strikes the exception allowing a professional bondsman to write bonds on up to ten defendants per year in counties in which the bondsman cannot register his license (i.e. counties in which the bondsman does not reside or have his office) or an unlimited number of bonds in counties where there is no registered bondsman.

H. 2278 – For a defendant charged with one of the 40 offenses that render the defendant ineligible for a pretrial services program, the court can order urinalysis testing as well as use of a GPS monitoring device. The court can also order the defendant to pay for supervision and testing as well as the GPS device and monitoring.

H. 2981 – Requires a $300,000 minimum deposit from all insurers with the surety, including bail, line of authority. Adds changes in legal name and E-mail address to the information that must be reported to the Commissioner within 5 business days, increases the application fee for bail bondsman from $250 to $350, and increases various late filing fees.

S. 1107 – Changes the due date of financial statements required from professional bondsmen and property bondsmen from the last day of the licensee's birth month to September 15

S. 1115 – Gives the court discretion to stay the due date for payment of forfeiture. Current law authorizes the court, in its discretion, to vacate forfeiture and exonerate the bond if good cause is shown for the defendant's failure to appear or the bondsman's failure to return the defendant within 90 days. This bill adds the lesser remedy of staying the due date of payment.

S. 1127 – Changes the filing date for bail bondsman license applications to September 30 instead of the last day of the applicant's birth month and authorizes the Commissioner to require any documents reasonably necessary to verify information on the application. Also amends the standard from "of good character and reputation" to "competent, trustworthy, financially responsible, and of good personal and business reputation and character."

S. 1673 – Allows a bondsman to be appointed by a professional bondsman as well as by an insurer and strikes the restrictions on writing bonds in counties where the bondsman does not reside. To write bonds in such counties the bondsman would only have to file a copy of his or her license with the county district court clerk.

S. 1872 – Enacts a Professional Bounty Hunter Licensing Act.

S. 1202 – Strikes the ten defendants per year restriction on writing bonds in counties where the bondsman does not reside or have an office. Provides that a professional bondsman shall not be limited in writing bonds in Oklahoma as long as the total amount of bonds written per year does not exceed 20 times the dollar amount placed on deposit.


### South Carolina

B.4572 – Deletes the provision of existing law granting the surety automatic relief from all liability if the defendant is incarcerated as a result of a bench warrant and the surety files an affidavit stating that fact and the specific terms of the bond that were violated as stated in the bench warrant. The surety apparently could still file a motion seeking relief from liability.

*B. 4916 – Adds a section to provide: (1) that the circuit court shall hear motions to modify bail; (2) after the circuit court has ruled on a motion to modify bail, any further motion for modification must make a prima facie showing of a material change in circumstance related to statutory factors, but evidence on the defendant's guilt or innocence is not a changed circumstance unless the solicitor consents; and (3) if the state seeks to revoke or modify bail it must make a written motion but if such a motion includes a prima facie showing of imminent danger to the community or to the defendant or of flight by the defendant, an accelerated procedure for an emergency hearing is provided, and such an emergency hearing is grounds for the surety to surrender the defendant.

B.4917 – Adds a mandatory, consecutive, no parole five year sentence enhancement for any general sessions court offense committed while released on a bail bond or on a personal recognizance bond.

**Tennessee**

H. 2441 and S. 2619 – Amends the statute on surrender of defendants by excepting from review, and possible refund of premium and re-release, a surrender based on a judgment of forfeiture.

H. 2442 and S. 2720 – For an applicant for approval to own a professional bonding company, changes the experience requirement from two years "with" such a company to two years "as a full-time qualified agent for" such a company.

H. 2654 and S. 2688 – Adds to the list of factors that may disqualify a bondsman a conviction in another state of a felony or misdemeanor equivalent to a Tennessee Class A misdemeanor.

H. 2678 and S. 2604 – Requires that an illegal immigrant be deemed a risk of flight for bail purposes if he or she is arrested for certain serious traffic offenses and authorizes increased bail amounts for such defendants.

S. 2510 and S. 2812 – If a defendant fails to appear, any new bail must be a 100% cash or fully secured bond.

S. 3214 – Requires the Department of Revenue to provide reports to the administrative office of the courts on collection of the bail bond tax.

**Utah**

H. 29 – Forbids a bail bond producer from operating in Utah unless he or she is appointed by an authorized insurer and, if he or she submits business through an agency, designated by a licensed bail bond agency or, for property bonds, is designated by a licensed agency. An enforcement agent may operate only through a licensed bail bond agency.

**Virginia**

H. 174 – Requires that a property bail bondsman, or a business or company that he uses to carry out his bail bond business, own any real property that he pledges to meet the statutory $200,000 collateral provision. Also requires suspension of the license of any property bail bondsman who fails to pay a forfeiture within 60 days after notice and a final court order.

H. 807 – Requires the Criminal Justice Services Board to adopt regulations governing the use of electronic tracking devices by bail bondsmen and excepts use of such devices by licensed bail bondsmen in accordance with such regulations from the criminal statute barring the placing or use of an electronic tracking device through intentionally deceptive means and without consent.

S. 158 – Existing law establishes a rebuttable presumption that certain defendants should not be admitted to bail. This bill would prevent a magistrate, clerk or deputy clerk from admitting such

a defendant to bail and require a hearing with written notice to the Commonwealth's attorney before any other judicial officer does so.  Also provides that if the Commonwealth appeals a bail decision, the decision is stayed until the appeal is decided.


### Washington

H. 2423 and H. 2668 – Reduces the period in which the court must notify the surety of a defendant's failure to appear from 30 to 14 days.  Requires good cause to surrender a defendant, and if the court finds good cause was lacking requires return of the bond premium and any recovery fee.  Good cause includes, but is not limited to, a substantial increase in the risk of flight, violation of a court order, failure to appear, and concealment or intentional misrepresentation of information, but does not include failure to pay the premium.  Surrender of the defendant without good cause, gaining full authority over a person's property or finances, and failing to disclose a defendant's location upon request from law enforcement are added to the list of acts that constitute "unprofessional conduct."  If a court revokes or reinstates a bail bond agent it must notify the administrative office of the courts which will notify all other courts of the action.  Defines property bond and surety bond.  Increases the surety bond to be posted by a property bond agency from $10,000 to $100,000 (the bond for a surety bond agency remains at $10,000).  Authorizes audits of licensee trust accounts unless the licensee submits an annual CPA audited statement.

S. 5056 (Substitute Bill) – Subject to appropriations, requires development of a "risk assessment tool" by the Washington state institute for public policy, authorizes its use, and authorizes the center for court research to evaluate the "risk assessment tool" and submit a report every two years on its use.  Exonerates a bond if the court fails to notify the surety of a default within 14 calendar days (instead of 30 days in current law), requires good cause to surrender the defendant and, if the court determines good cause did not exist, the surety must return the premium and any recovery fee.  Surrender without good cause is "unprofessional conduct." If a court revokes or reinstates a bail bond agent's certification to post bonds in the court, it shall notify the administrative office of the courts which shall notify other state courts.  Adds to the list of unprofessional conduct "Entering into a contract, including a general power of attorney, with a person that gives the bail bond agent full authority over the person's finances, assets, real property, or personal property" and failing to disclose to law enforcement upon request information on the location of a fugitive defendant.  Defines bail bond insurance as surety insurance and makes surety insurance subject to the rate standards set forth in RCW 48.19.020.


### Wisconsin

A. 567 – Permits and regulates commercial bail.  Current law forbids compensation for acting as surety on a bail bond.  Would make an exception for a licensed bail bond agent or bail bond agency and require a premium equal to 10% of the amount of the bond.  Establishes licensing framework for bail bond agents, bail bond agencies, and bail recovery agents, and authorizes the Department of Safety and Professional Services to promulgate detailed Rules.

**CONFIDENTIAL**

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Friday, March 2, 2012 4:36 PM |
| To: | Committee-BBAC-Open |
| Cc: | DNABIC@aol.com |
| Subject: | Legislation |
| Attachments: | 2012 Bail Bond Legislation.doc; WI2012AB567.doc |

An updated Report is attached.

It appears that California S.1265 would permit an admitted insurer, or its subsidiary, to own a California bail bond agency even though the officers and stockholders of the insurer are not licensed California bail bond agents.

Also attached is a letter that the American Insurance Association will submit to the sponsor of Wisconsin AB 567 supporting the bill. ███████████████████████████.

## 2012 Bail Bond Legislation

(Bills added since the last distribution are marked with an asterisk)

### Arizona

H. 2432 – Provides that the surety shall be relieved of liability upon surrendering the defendant before or within 30 days after the failure to appear except that if the surrender is after the failure to appear the judicial officer may forfeit up to $1,000 of the bond.

H. 2433 – Requires that the list of persons authorized to post bail bonds be updated monthly with the names rotated.  Forbids soliciting bail bond business inside of, or within 200 feet of the entrance to, a court building or jail.  An employee of a bail agent can submit the bond if he or she has proper identification.

H. 2434 – Makes a person convicted of a felony in the previous seven years not eligible for supervision under pretrial services and provides that a defendant not released on his own recognizance shall be released on either a cash or secured appearance bond unless the defendant previously failed to appear, is in custody for unpaid child support, fines or fees, or is charged with a class 1 or 2 felony.  For such defendants the judicial officer could order a cash only bond.

S. 1284 – Amends statutes governing bail bond agents to require a receipt for payment of fees and expenses, require that all collateral be held in a fiduciary capacity and insured (except against weather damage which shall be the risk of the indemnitor), deposit cash collateral in an account separate from the agent's operating accounts, and disclose all premiums and fees.  The agent's license may be suspended or revoked for charging more than the maximum fee or violating any provision of law or rule governing the agent's business.  Requires having a signed contract and fee agreement before securing release of a person (other than a relative).  The premium shall be valid for one year from the date the bond is posted.  Any renewal premium shall be pro rated.

S. 1285 – Revises the licensing of bail recovery agents to require a high school diploma or GED, completion of a gun safety course or have an honorable discharge from the military, be at least 21, be a resident of Arizona for at least a year, and submit fingerprints.  The license shall not be issued until after the fingerprint check is completed.  A certified peace officer may not act as a bail recovery agent.

### California

A. 1529 – Adds a section 1305.5 to the Penal Code to provide that appeals of denial of motions to vacate bail bond forfeitures of $25,000 or less shall be treated as a limited civil case and go to the appellate division of the superior court rather than to the court of appeals.  If the forfeiture is more than $25,000 the appeal is treated as an unlimited civil case and go to the court of appeals.

SFAA 000656

*A. 2029 – Regulates the licensure and conduct of Bail Fugitive Recovery Persons including making it a misdemeanor knowingly to hire an unauthorized person to apprehend a bail fugitive.

S. 968 – Expands eligibility for release on electronic monitoring. Certain defendants eligible for bail may apply for release on electronic monitoring with bail reduced by up to 75%. Such an application may be made to the court starting from 10 court days following arraignment.

S. 989 – Amends Penal Code §1305 to require exoneration of the bond if the defendant is deported. If the defendant is located in another jurisdiction and brought before local law enforcement pursuant to §305(g), tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extraction process. The bond is exonerated if the prosecuting agency does not decide to seek extradition within a reasonable time. Adds "or the United States Attorney" after prosecuting agency in both provisions.

*S. 1265 – Permits a limited liability company (LLC) to be licensed as a bail agency on the same conditions as a corporation and exempts an admitted surety insurer, or a subsidiary of an admitted surety insurer, from the requirement that all officers and stockholders (or LLC members) must be licensed bail agents.


### Colorado

H. 12-1114 – Treats stalking the same as domestic violence in terms of setting bail, protective orders and punishment for violating conditions of bail or protective orders.

H. 12-1266 – Extends the sunset of the division of insurance regulation of bail, requires that all forms used in connection with bail be filed with and approved by the division, and revises requirements for cash bonding agents and "Professional Cash Bail Agents" who will qualify by posting a bond with the division of insurance instead of by appointment from a bail insurance company.

H. 12-1310 – Adds to the information that each pretrial services program must include in their annual reports including crime classification of failures to appear, information on those remaining at large, information on those returned to custody and how recovered, re-arrests, and revocations. Permits surety to consent in writing to continuance of bond through sentencing either in initial bond documents or at the time of conviction or within a reasonable time thereafter.

H. 12-1316 – Amends provisions on bonds for possible illegal aliens. If the agency holding the defendant determines that there is an ICE detainer lodged against a person arrested or charged with felonies or class 1 or 2 misdemeanors, it shall notify the bail bond agent before the bond is posted. The bond shall be forfeited if the defendant is deported. The agency shall also notify the district attorney and any pretrial services office, and if the defendant posts bond, the agency shall notify the district attorney before notifying ICE that the defendant is eligible for release to ICE.

**Connecticut**

H. 5093 – As a condition precedent to exoneration after the defendant is incarcerated or detained in another state, requires the surety or bail bond agent to agree to reimburse the Division of Criminal Justice for extradition costs incurred to secure the defendant's return.

*H. 5382 – Requires applicants for licenses as professional bondsmen and bail recovery agents to be 21 years of age and high school graduates (or equivalents) and not subject to a restraining or protective order involving the use or attempted use of force against another person. Regulates badges worn by bail enforcement agent and permits for bail agents, professional bondsmen and bail agents to carry concealed weapons and adds new requirements to qualify as an instructor in courses required for firearms licenses.

**Florida**

H. 135 and S.210 – Requires that costs of prosecution and costs of representation be withheld from any cash bond posted by any person other than a licensed bail bond agent.

H. 725 and S.938 – Provides for E-mailed notice of time and place of licensure examination for bail bond agents. Strikes the separate standards for continuing education courses for bail bond agents and substitutes a cross reference to the Code section on continuing education courses for insurance agents in general. Amends section on forfeitures to delete the requirement that the clerk send the Department of Financial Services and Office of Insurance Regulation copies of each judgment within 10 days of its entry. Adds that such notice to the surety must be sent to the surety's home office. If the judgment is not paid within 60 days (formerly 35 days), notice must be sent to the Office of Insurance Regulation.

H. 771 and S.1820 – Makes extensive changes to the regulation of bail bond agents including requiring an "agent in charge" for each office, limiting the duration of a temporary bail bond agent license, restricting ownership or management of an agency to bail bond agents licensed and appointed for at least three years, fines insurers up to $1,000 per agent per month for failure to submit a statement of build up trust accounts, establishes a 30 day deadline for agents to pay over premiums, collateral or other funds, authorizes premium payment plans under specified conditions, authorizes persons properly licensed in other states to recover defendants on bonds written in the other state, forbids a licensed agent from directing an unlicensed person to recover a defendant in Florida, requires the monthly report for temporary bail bond agents to be submitted within 15 days of the end of the month and authorizes a fine of up to $500 per month for late submission, requires payment of wages to the temporary bail bond agent and makes them subject to unemployment compensation tax, forbids a temporary bail bond agent from accepting the initial premium for a bond but does allow him or her to accept subsequent payments under a premium payment plan, details circumstances requiring affidavits listing any unpaid judgments, premiums or other contractual obligations, authorizes online continuing education, requires cancellation of the appointment of any managing general agent if a prior insurer reports unpaid forfeitures, judgments, premiums, losses or other contractual obligations, an insurer appointing a

managing general agent is bound by the acts of the managing general agent within the scope of the appointment, allows an agent to provide contact information for multiple attorneys, forbids promising an inmate anything of value in return for referrals, forbids anyone from acting as a professional bail bond agent without a license as such, forbids travel fees for posting a bond if the same agent or agency that posted the bond also wrote the bond, requires immediate return of premium if a bond is not executed, requires all advertising to include the license number of the bail bond agent, requires return of collateral if the bond has expired, increases numerous fines and penalties, and authorizes Regulations to carry out numerous provisions of the bill.

H. 455, H.7047 and S. 1800 – Bars bail for defendants required to register as sexual offenders or sexual predators "until the first appearance in the case in order to ensure full participation of the prosecutor and protection of the public."

### Hawaii

H. 2243 and S. 2158 – Requires that when the court with jurisdiction is closed, a law enforcement agency must release the defendant upon receiving cash, a certified copy of a pre-filed bail bond, or an original bail bond from a licensed agent.

H. 2868 and S. 3068 – Enacts a new Chapter in the Code providing mechanisms to enforce payment of bonds, suspend agents or insurers who do not pay, exonerate bonds upon recovery of the defendant or a showing that the failure to appear was caused by an Act of God or of the State or the law, and allow payment of costs of extradition from the bond.

### Idaho

S. 1325 – Requires full payment of the bail bond premium before the defendant is released. Premium financing would be a permitted method of paying the premium, but no bail agent or surety company may have any financial affiliation with, or indemnify or receive compensation from, the premium financier.

### Illinois

S. 2870 – Adds "a surety bond in an amount equal to 25% of the bail, executed by a surety approved by the court" as an alternative to the current requirement of a 10% cash deposit. That is, the defendant must execute the bond and deposit either 10% cash or a 25% surety bond.

### Kansas

S. 321 – Restricts persons eligible for release on their own recognizance to residents of Kansas in the U.S. legally who are charged with misdemeanors or certain levels of felonies, have no prior history of failures to appear, no detainers, have not been extradited, are not awaiting extradition,

and have not been detained for alleged probation violation. Also requires an out of state surety or agent who intends to apprehend any person in Kansas to contract with a person authorized to act as a surety or agent in Kansas, and that authorized person must accompany the out of state person during the apprehension.

**Louisiana**

*H. 190 – Allows the clerk to give notice to the surety of a forfeiture judgment either at the address provided pursuant to present law (Art. 322) or at an address registered with the Department of Insurance.

*H. 304 – Shortens the Bail Bond Apprentice Program from six months to three months.

*H. 398 – Adds three Parishes (Ascension, Assumption and St. James) that will be authorized to alter the percentage to be deposited as cash bail and to charge a $15 fee for processing the bond.

*H. 513 – Adds certain information and record keeping for the Bail Bond Apprentice Program.

*H. 581 – If the prosecutor dismisses a case for which the defendant had provided bail and a subsequent indictment or information charges the same or a lesser offense based on the same facts, the court must reinstate the bail if the surety consents. If the defendant voluntarily appears on the first occasion of which he or she has actual notice, the court must permit the defendant to remain free for five days, excluding weekends, to obtain the surety's consent.

*S. 242 – Narrows the separate treatment of Orleans Parish for purposes of the premium fee to bonds for charges to be prosecuted in the Criminal District Court. The $3 fee will apply only to bonds in that court.

*S. 173 – Deletes authority for a bail bond of up to $500 during the period is placed on probation by the Traffic Court of New Orleans.

*S. 291 – Deletes the provision in current law that the prosecutor may enforce an unpaid forfeiture as a civil judgment leaving filing a rule to show cause with the Insurance Commissioner as the sole enforcement method.

**Maine**

H. 312 – Requires as a condition of bail for persons charged with certain crimes of domestic violence that the defendant turn over all firearms to a law enforcement officer and refrain from possessing firearms or other specified dangerous weapons.

H.1256 – Authorizes electronic monitoring, at the defendant's expense, as a condition of bail for defendants charged with crimes involving domestic violence.

**Maryland**

H. 338 and S. 690 – Forbids a district court commissioner from releasing defendants charged with certain enumerated offenses and permits a judge to release such defendants only on full cash or corporate surety bond or on a property bond secured by property located in Maryland with equity equal to the amount of the bond plus $20,000.  Enacts a rebuttable presumption that such defendants will flee and will pose a danger to another person or the community.

H. 492 – Except for failure to pay family support, "cash bail" or "cash bond" may be provided in the form of cash, a surety bond, or a property bond by the defendant, or by a private surety acting for the defendant.  For failure to pay family support, only the defendant may post a "cash bail" or a "cash bond."

H. 517 – Forbids a surety from accepting or providing real property as security for a bond unless the owner of the property certifies that the property has no outstanding citations for building or property code violations.

H. 551 – Provides that if the defendant is taken into custody by Immigration and Customs Enforcement because of his or her immigration status, the bond is void, the bond must be returned to the surety and the surety discharged, and any premium must be refunded.

H. 573 – Forbids courthouse or correctional facility employees from soliciting for or advertising the services of a specific bondsman and increases the penalties for banned solicitation by a bondsman or agent as well as by the added employees.

H. 742 and S. 489 – Requires applicants for a bail bondsman's license to certify one year's regular employment by a licensed bail bondsman and authorizes installment payment of premiums.  If the premium is paid by installments, certain records have to be kept and attempts made to collect any balance owed.  The installment agreement must include certain information about the payments owed.

**Mississippi**

H. 173 and S. 2838 – Automatically stays execution on a bond forfeiture for 90 days from the entry of final judgment and requires the court to exonerate the bond if the defendant appears or is surrendered before execution of final judgment.  Grants a bail agent immunity from civil damages for actions taken within the scope of his authority and in good faith to enforce a court order, scire facias and final judgment.  Bail agents shall not be liable in civil damages resulting from a court's failure to properly issue or serve the surety with a set aside order for scire facias or final judgment or with the writs or judgment themselves.

H. 174, H. 631 and S. 2805 – Revises prelicensing educational requirements for  professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.

H. 175 and S. 2837 – Deletes requirement that the sheriff approve a bond from a properly licensed bail agent.

H. 631 and S. 2805 – Revises prelicensing educational requirements for professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent. Makes it unlawful to refuse to return collateral or other indemnity when the premium has been paid or the obligation on the bond terminated.

H. 880 and S. 2847 – Designates certain charges as crimes with bail restrictions, for defendants charged with such designated crimes requires full cash, corporate surety or bond secured by real property and, if real property, requires an affidavit from the owner with information as to equity in the property. Creates a presumption for full cash bail if a defendant charged with such crimes also has two prior felony convictions or two other indictable offenses pending or was on parole or has a prior conviction for certain enumerated crimes including bail jumping.

H. 1439 – for persons charged with domestic violence offenses, the court must check the Mississippi Protective Order Registry and consider any protective order before granting bail.

H. 1471 – Permits release on own recognizance or appearance bond unless the court determines this will not reasonably assure appearance or protect others or the public; in which case the court may impose the least onerous conditions to assure appearance and protect others and the public taking into account a list of factors related to the defendant and the offense. Also establishes a bail schedule but permits deviation in the court's discretion. Forbids post conviction bail if the sentence is 20 years or more or if conditions of release will not reasonably assure the defendant's surrender or protection for others or the public.

S. 2254 – If a defendant is charged with a crime involving a domestic victim, the court must check the Mississippi Protective Order Registry and if there is a domestic abuse protective order against the defendant, take that into account when determining bail.

S 2620 – Would permit renewal of a professional bail agent's license held on the effective date of the act even though the licensee was convicted of a felony not involving moral turpitude.

### Missouri

*H. 1867 – Requires the court to accept "a guarantee from any surety who is in compliance with general laws regulating such profession" in lieu of a cash only bond.

### New Jersey

CR 93 – Amends the state Constitution to allow the legislature to forbid bail to illegal immigrants charged with certain crimes.

A. 474 and S. 560 – Adds assault and death by auto or vessel to the list of crimes with bail restrictions.

A. 1674 and S. 733 – Makes 16 additions  to the list of crimes with bail restrictions.

A.1713 – If a released defendant is charged with a second offense involving petty disorderly persons, disorderly persons, a crime of the fourth degree or a crime of the third degree, there would be a presumption of a 50% cash bail option.  For a third or subsequent charge for the same categories of offenses, the presumption would be for 100% cash bond.  This seems to be intended to substitute the higher percentages for a 10% cash option.

A.1772 and S. 678 – Forbids release of illegal immigrants charged with crimes of the first or second degree or previously convicted of two or more crimes that occurred on separate occasions.  The change would take effect upon amendment to the state Constitution per CR 93.

A.    2254 – Authorizes establishment of a pretrial release program.  Any defendant would be eligible except one charged with a crime with bail restrictions or other first degree offenses.

A. 2536 -- A bail bond can be forfeited only for failure to appear; establishes a schedule for remission of forfeitures if the defendant is recovered, is dead or is incarcerated within the United States if the surety engaged in monitoring efforts or attempted to contact the defendant at least once every three weeks; requires mailing notice to the surety and agent; if a bench warrant has been issued, authorizes any jail or law enforcement agent to accept surrender of the defendant from the surety or agent or their representatives; establishes a $100 filing fee for bonds or recognizances; and forbids removing the surety or its agents from bail registry if the surety has filed a motion to vacate a forfeiture and the defendant is in custody in New Jersey or has entered an order to vacate the forfeiture that is awaiting court's signature.  [This appears to be the same as 2010 A.1143, and the remission schedule does not make sense.]

S. 1133 – Adds certain weapons offenses to the list of crimes with bail restrictions.

**New Mexico**

HJR. 3 – Deletes the sufficient sureties clause of the New Mexico Constitution and substitutes a provision that bail be granted or denied based on flight risk, seriousness of the offense charged, danger to the community, and other factors provided by law.  States that "The least onerous condition of release needed to comply with these factors shall be imposed."  Forbids excessive bail, cruel and unusual punishment and excessive fines and grants precedence to appeals of orders denying bail.

**Oklahoma**

HJR 1088 – Would amend the state Constitution to permit denial of bail to illegal aliens charged with serious felony offenses as designated by the Legislature.

H. 2190 – Forbids bail for a person held in a secure facility against whom a petition has been filed alleging that the person is a sexually violent predator.

H. 2206 – Strikes the exception allowing a professional bondsman to write bonds on up to ten defendants per year in counties in which the bondsman cannot register his license (i.e. counties in which the bondsman does not reside or have his office) or an unlimited number of bonds in counties where there is no registered bondsman.

H. 2278 – For a defendant charged with one of the 40 offenses that render the defendant ineligible for a pretrial services program, the court can order urinalysis testing as well as use of a GPS monitoring device.  The court can also order the defendant to pay for supervision and testing as well as the GPS device and monitoring.

H. 2981 – Requires a $300,000 minimum deposit from all insurers with the surety, including bail, line of authority.  Adds changes in legal name and E-mail address to the information that must be reported to the Commissioner within 5 business days, increases the application fee for bail bondsman from $250 to $350, and increases various late filing fees.

S. 1107 – Changes the due date of financial statements required from professional bondsmen and property bondsmen from the last day of the licensee's birth month to September 15

S. 1115 – Gives the court discretion to stay the due date for payment of forfeiture.  Current law authorizes the court, in its discretion, to vacate forfeiture and exonerate the bond if good cause is shown for the defendant's failure to appear or the bondsman's failure to return the defendant within 90 days.  This bill adds the lesser remedy of staying the due date of payment.

S. 1127 – Changes the filing date for bail bondsman license applications to September 30 instead of the last day of the applicant's birth month and authorizes the Commissioner to require any documents reasonably necessary to verify information on the application.  Also amends the standard from "of good character and reputation" to "competent, trustworthy, financially responsible, and of good personal and business reputation and character."

S. 1673 – Allows a bondsman to be appointed by a professional bondsman as well as by an insurer and strikes the restrictions on writing bonds in counties where the bondsman does not reside.  To write bonds in such counties the bondsman would only have to file a copy of his or her license with the county district court clerk.

S. 1872 – Enacts a Professional Bounty Hunter Licensing Act.

S. 1202 – Strikes the ten defendants per year restriction on writing bonds in counties where the bondsman does not reside or have an office.  Provides that a professional bondsman shall not be limited in writing bonds in Oklahoma as long as the total amount of bonds written per year does not exceed 20 times the dollar amount placed on deposit.

**South Carolina**

B.4572 – Deletes the provision of existing law granting the surety automatic relief from all liability if the defendant is incarcerated as a result of a bench warrant and the surety files an affidavit stating that fact and the specific terms of the bond that were violated as stated in the bench warrant.  The surety apparently could still file a motion seeking relief from liability.

*B.4917 – Adds a mandatory, consecutive, no parole five year sentence enhancement for any general sessions court offense committed while released on a bail bond or on a personal recognizance bond.

**Tennessee**

H. 2441 and S. 2619 – Amends the statute on surrender of defendants by excepting from review, and possible refund of premium and re-release, a surrender based on a judgment of forfeiture.

H. 2442 and S. 2720 – For an applicant for approval to own a professional bonding company, changes the experience requirement from two years "with" such a company to two years "as a full-time qualified agent for" such a company.

H. 2654 and S. 2688 – Adds to the list of factors that may disqualify a bondsman a conviction in another state of a felony or misdemeanor equivalent to a Tennessee Class A misdemeanor.

H. 2678 and S. 2604 – Requires that an illegal immigrant be deemed a risk of flight for bail purposes if he or she is arrested for certain serious traffic offenses and authorizes increased bail amounts for such defendants.

S. 2510 and S. 2812 – If a defendant fails to appear, any new bail must be a 100% cash or fully secured bond.

S. 3214 – Requires the Department of Revenue to provide reports to the administrative office of the courts on collection of the bail bond tax.

**Utah**

H. 29 – Forbids a bail bond producer from operating in Utah unless he or she is appointed by an authorized insurer and, if he or she submits business through an agency, designated by a licensed bail bond agency or, for property bonds, is designated by a licensed agency.  An enforcement agent may operate only through a licensed bail bond agency.

**Virginia**

H. 174 – Requires that a property bail bondsman, or a business or company that he uses to carry out his bail bond business, own any real property that he pledges to meet the statutory $200,000 collateral provision.  Also requires suspension of the license of any property bail bondsman who fails to pay a forfeiture within 60 days after notice and a final court order.

H. 807 – Requires the Criminal Justice Services Board to adopt regulations governing the use of electronic tracking devices by bail bondsmen and excepts use of such devices by licensed bail bondsmen in accordance with such regulations from the criminal statute barring the placing or use of an electronic tracking device through intentionally deceptive means and without consent.

S. 158 – Existing law establishes a rebuttable presumption that certain defendants should not be admitted to bail.  This bill would prevent a magistrate, clerk or deputy clerk from admitting such a defendant to bail and require a hearing with written notice to the Commonwealth's attorney before any other judicial officer does so.  Also provides that if the Commonwealth appeals a bail decision, the decision is stayed until the appeal is decided.

### Washington

H. 2423 and H. 2668 – Reduces the period in which the court must notify the surety of a defendant's failure to appear from 30 to 14 days.  Requires good cause to surrender a defendant, and if the court finds good cause was lacking requires return of the bond premium and any recovery fee.  Good cause includes, but is not limited to, a substantial increase in the risk of flight, violation of a court order, failure to appear, and concealment or intentional misrepresentation of information, but does not include failure to pay the premium.  Surrender of the defendant without good cause, gaining full authority over a person's property or finances, and failing to disclose a defendant's location upon request from law enforcement are added to the list of acts that constitute "unprofessional conduct."  If a court revokes or reinstates a bail bond agent it must notify the administrative office of the courts which will notify all other courts of the action.  Defines property bond and surety bond.  Increases the surety bond to be posted by a property bond agency from $10,000 to $100,000 (the bond for a surety bond agency remains at $10,000).  Authorizes audits of licensee trust accounts unless the licensee submits an annual CPA audited statement.

S. 5056 (Substitute Bill) – Subject to appropriations, requires development of a "risk assessment tool" by the Washington state institute for public policy, authorizes its use, and authorizes the center for court research to evaluate the "risk assessment tool" and submit a report every two years on its use.  Exonerates a bond if the court fails to notify the surety of a default within 14 calendar days (instead of 30 days in current law), requires good cause to surrender the defendant and, if the court determines good cause did not exist, the surety must return the premium and any recovery fee.  Surrender without good cause is "unprofessional conduct." If a court revokes or reinstates a bail bond agent's certification to post bonds in the court, it shall notify the administrative office of the courts which shall notify other state courts.  Adds to the list of unprofessional conduct "Entering into a contract, including a general power of attorney, with a person that gives the bail bond agent full authority over the person's finances, assets, real

property, or personal property" and failing to disclose to law enforcement upon request information on the location of a fugitive defendant. Defines bail bond insurance as surety insurance and makes surety insurance subject to the rate standards set forth in RCW 48.19.020.

### Wisconsin

A. 567 – Permits and regulates commercial bail. Current law forbids compensation for acting as surety on a bail bond. Would make an exception for a licensed bail bond agent or bail bond agency and require a premium equal to 10% of the amount of the bond. Establishes licensing framework for bail bond agents, bail bond agencies, and bail recovery agents, and authorizes the Department of Safety and Professional Services to promulgate detailed Rules.

**CONFIDENTIAL**

**American Insurance Association**

2101 L Street NW

Suite 400

Washington, DC 20037

202-828-7100

Fax 202-293-1219

www.aiadc.org

March 1, 2012

The Honorable Paul Krug

State Representative

Room 316 North

State Capitol

Madison, WI 53708

RE: AB 567

Dear Representative Krug,

The American Insurance Association (AIA) is the leading national property-casualty insurance trade organization, representing approximately 300 insurers which write more than $117 billion in premiums each year, a substantial portion of which are for surety related products.

The purpose of this letter is to communicate our support of AB 567, legislation that would permit private bail bonding in Wisconsin. Currently, Wisconsin is one of only four states that excludes insurers from providing bail bonds which assure the appearance of criminal defendants for hearings and trials.

AB 567 would benefit the citizens of Wisconsin in several key ways, if it is enacted into law:

First, it would reduce costs to Wisconsin taxpayers because trial courts would be able to release defendants awaiting trial who do not qualify for release under current law.
If a trial court did not believe the defendant could safely be released on his or her own recognizance or an unsecured bond or a bond secured by an uncompensated individual acting as surety, it would have another, more secure alternative.

Experience from other jurisdictions shows that defendants released on commercial bail bonds are more likely to appear as required, and much more likely to be recovered if they do fail to appear initially, than defendants released on other conditions.

Any bail forfeitures, of course, would go to the State, and the bail bond agents and surety companies would pay taxes. The cost of the bonds will be paid by the defendants and their friends or families, not by the taxpayers.

Second, the law would benefit the Wisconsin criminal justice system by increasing the percentage of defendants who appear as required and increasing the

**CONFIDENTIAL**

recovery percentage of those who failed to appear. Defendants who don't appear or who are missing for extended periods present a significant cost to the courts, prosecutors and witnesses who set aside time and prepare for hearings and trials that do not take place.

Issuing a bench warrant to be filed in a database is no substitute for a professional bail agent and recovery agent with a substantial financial stake in seeing that the defendant appears as required and is recovered if he or she does not. In addition, bail bonds are usually written based on indemnity from family and friends of the defendant. Those indemnitors are in the best position to see that the defendant appears in court and to help the bail bond agent recover anyone who fails to appear. The combination of information from indemnitors and action by bail professionals results in appearance and recover rates far superior to those experienced by other forms of pretrial release even though the defendants released on secured bail bonds are typically perceived as greater risks.

Third, all Wisconsin citizens will benefit from faster adjudication of those charged with serious crimes. The deterrent effect of quicker punishment and more onerous conditions of release will benefit everyone except criminals. The community as a whole is better protected when those on pretrial release are more closely supervised and know that if they fail to appear in court as ordered there will be a professional with a substantial financial incentive actively seeking to recover them.

The key component of a successful bail bond system is the prompt, sure payment of the bond amount if the defendant fails to appear and is not recovered within a definite time. That is why the bond must be guaranteed by a regulated insurer that is obligated to pay. The insurance company can select the bail bond agents and agencies for whom it will provide bonds and can hold security for the performance of their obligations, but if there is a default the court can look to the regulated insurance company for prompt payment. If payment is not swift and certain, the advantages of commercial bail over other forms of release are undermined. Why underwrite the bond, obtain indemnity, supervise the defendant, and recover any failures to appear if the amount of the bond will not have to be paid in the event of a default?

As with other types of surety bonds, the insurer provides a deep pocket that is obligated to pay and this leads to prequalification of the risk, indemnity, supervision and prompt action to cure any default.

For many years surety bonds from admitted insurers have protected Wisconsin taxpayers and businesses, especially on public construction projects. Bail bonds can provide similar protection if their use is correctly regulated and implemented.

The AIA urges the Committee to approve AB 567.

We sincerely appreciate your sponsorship of this legislation and would be glad to answer any further questions you or others may have on the subject.

Sincerely,

*Stephen C. Schneider*

Steve Schneider
Vice President, Midwest Region
The American Insurance Association
#329
655 Deerfield Road
Suite 100
Deerfield, IL 60015-3241          sschneider@aiadc.org

**CONFIDENTIAL**

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Friday, February 24, 2012 2:07 PM |
| To: | Committee-BBAC-Open |
| Cc: | DNABIC@aol.com |
| Subject: | Legislation and Allegheny County Pa. Court Rules |
| Attachments: | 2012_PA_REG_TEXT_284844_(NS)_2-24-12_1224[1].rtf; 2012 Bail Bond Legislation.doc |

Attached is an updated Report. Also attached is a copy of revised Criminal Rules for the Allegheny County, Pennsylvania Court of Common Pleas. The revised Rules would make what appear to be very substantial changes in the current Rules including requiring any corporate surety providing bail in Allegheny County to have an office in Allegheny County and to post a $250,000 deposit with the Clerk of Court for every $1 million of bonds written.

2012 PA REG TEXT 284844 (NS)

Pennsylvania Regulation Text - Netscan
Uncodified
The Courts - Notices
February 18, 2012
Allegheny County Rules; Allegheny County

Criminal Rules of the Court of Common Pleas

And Now, to-wit, this 3rd day of February, 2012, It Is Hereby Ordered, Adjudged and Decreed that the following Amended Rule of the Court of Common Pleas of Allegheny County, Pennsylvania, Criminal Division, adopted by the unanimous proxy vote of the Board of Judges on February 3, 2012, shall be effective thirty (30) days after publication in the Pennsylvania Bulletin.

*Title 252--ALLEGHENY COUNTY RULES*

*ALLEGHENY COUNTY*

*Criminal Rules of the Court of Common Pleas; No. 1 of 2012 Rules Doc.*

*Order of Court*

_And Now_, to-wit, this 3rd day of February, 2012, _It Is Hereby Ordered, Adjudged_ and _Decreed_ that the following Amended Rule of the Court of Common Pleas of Allegheny County, Pennsylvania, Criminal Division, adopted by the unanimous proxy vote of the Board of Judges on February 3, 2012, shall be effective thirty (30) days after publication in the _Pennsylvania Bulletin_:

Rule 101.1 Construction of Rules; Consistency with Statewide Rules

Rule 103.1 Definitions

Rule 531.2 Regulations of Surety Business

Rule 536.1 Forfeitures and Bail Pieces

_By the Court_

DONNA JO McDANIEL,

_President Judge_

Rule 101.1. Construction of Rules*; Consistency with Statewide Rules*.

*(a)* All rules of construction adopted by the Supreme Court of Pennsylvania shall apply to local rules adopted by the Court of Common Pleas of Allegheny County that govern the practice and procedure in criminal matters.

*(b) Any requirement imposed by these rules is in addition to, and not in lieu of, the requirements under the Penn-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

sylvania Rules of Criminal Procedure.*

*(c) No pleading or other legal paper shall be refused for filing by the clerk of courts based upon a failure to comply with a requirement imposed by these rules. No case shall be dismissed nor request for relief granted or denied because of a failure to comply with such a requirement. If a party fails to comply with such a requirement, the court shall notify the party of the failure and provide a reasonable time for the party to comply with the requirement.*

*Rule 103.1. Definitions.*

*(a)* Definitions contained in Pa.R.Crim.P. 103 shall apply to all local rules heretofore and hereafter adopted which govern practice and procedure in criminal matters.

*(b) The following words and phrases, when used in any Allegheny County Rule of Criminal Procedure, shall have the following meanings:*

*_Bail Enforcement Agent_ is an individual who performs services or takes action for the purpose of enforcing the terms and conditions of a defendant's release from custody on bail, including locating, apprehending and surrendering a defendant released from custody on bail who has failed to appear at a specified time and place pursuant to Order of Court. The term does not include police officers, sheriffs, court officers or law enforcement personnel who execute warrants of arrest for bail forfeitures pursuant to their official duties.*

*_Clerk of Courts_ is the Director of the Allegheny County Department of Court Records, Criminal Division.*

*_Corporate Surety_ is any corporation, limited liability corporation or partnership which engages in the business of providing bail, providing or soliciting bail undertakings, or providing or soliciting indemnity or counter-indemnity to others on bail undertakings. The term applies to any and all surety bail bond businesses and their agents and fidelity companies and their agents in addition to surety businesses authorized by Order of Court.*

*_Professional Bail Bondsman_ is any person other than a fidelity or surety company or any of its officers, agents, attorneys, or employees authorized to execute bail bonds or to solicit business on its behalf who: (1) engages in the business of giving bail, giving or soliciting undertakings, or giving or soliciting indemnity or counter-indemnity to securities on undertakings; or (2) within a period of thirty (30) days has become a surety or has indemnified a surety, for the release on bail of a person, with or without a fee or compensation, or promise thereof; in three or more matters not arising out of the same transaction (see 42 Pa.C.S.A. § 5741 et seq.).*

*_Surety Business_ is any corporate surety, fidelity company, surety company authorized by Order of Court, professional bail bondsman licensed by the Pennsylvania Department of Insurance to do business in the Commonwealth of Pennsylvania, or agents and employees thereof.*

*Rule 531.2. Regulation of Surety Businesses.*

*(a) _Requirements to Become Qualified_. To become qualified to post bond, the surety business must:*

*(1) Fully comply with all laws, statutes, local rules and rules of court as may be established from time to time.*

*(2) Deliver to the Clerk of Courts and the District Attorney satisfactory proof, on the approved form, that the surety business, is licensed by the Pennsylvania Department of Insurance to do business in the Commonwealth of Pennsylvania;*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*(3) Deliver satisfactory proof of the agency relationship between the surety business and its agents to the District Attorney and Clerk of Courts. The execution of any bail bond by such agents shall be a valid and binding obligation of the surety business;*

*(4) Deliver satisfactory proof to the Clerk of Courts and the District Attorney that any agent designated to act on behalf of the surety business, is duly licensed by the Pennsylvania Department of Insurance;*

*(5) Deliver satisfactory proof to the Clerk of Courts and the District Attorney that the surety business maintains an office in Allegheny County from which its business is conducted and where service of notices may be made. Every surety business, shall keep at its office in Allegheny County the usual and customary records pertaining to transactions authorized by its license and/or the license of any of its agents, including, but not limited to, such records of bail bonds executed or countersigned by the surety business, to enable the court to obtain all necessary information concerning such bail bonds for at least three (3) years after the liability of the surety has been terminated. Such records shall be open at all times to examination, inspection or copying by the Court or its representative. Any and all information shall be furnished in such manner or form as the Court requires;*

*(6) Certify to the Clerk of Courts and the District Attorney that no agent or employee of the surety business has been convicted of any criminal offense. The certification must be based on a criminal history records check conducted by the Pennsylvania State Police for each employee and agent, and a copy of the search results must be attached to a list of employees and agents and certification submitted with the petition required by subsection (c) of this rule. Conviction of an agent or employee of a surety business will render the surety business ineligible to conduct business in the Fifth Judicial District;*

*(7) Post with the Clerk of Courts as security the minimum sum of $250,000 in United States currency or unencumbered securities of the United States Government, which will entitle the surety business, to post bond in the aggregate sum of $1,000,000, and by further posting the sum required for each individual bond or undertaking with the bail authority. Provided, however, that the surety business must post additional security with the Clerk of Courts in the event the surety business intends to post bond in excess of $1,000,000. The additional security to be posted with the Clerk of Courts must be in units of $250,000 which will entitle the surety business to post bond in the additional sum of $1,000,000 per $250,000 unit;*

*(8) Provide to the Clerk of Courts and the District Attorney a financial statement certified by a Certified Public Accountant which verifies that the surety business has sufficient assets to satisfy all bail obligations undertaken by or on behalf of the surety business in the Fifth Judicial District and in other jurisdictions in which the surety business conducts business. A current certified statement must be filed with the petition required in subsection (c) of this rule;*

*(9) Certify to the Clerk of Courts and the District Attorney that only the surety business which is approved by the President Judge upon petition as provided in this rule, may post bail for defendants, in the name exactly as it appears on the surety's license, and not in the name of any agent or other business entity;*

*(10) Certify to the Clerk of Courts and the District Attorney a schedule of the fees to be charged Criminal Division defendants for issuing the bail bond. Such fees may not change unless notice is given to the President Judge and Administrative Judge at least thirty (30) days prior to the effective date of the proposed revised fees (see 42 Pa.C.S.A. § 5748);*

*(11) Upon approval of the petition required in subsection (c) of this rule, register with the Clerk of Courts and the District Attorney and pay to the Clerk of Courts an initial registration fee of $1,000.00, or such amount as may be established from time to time by the Clerk of Courts with the approval of the President Judge;*

*(12) Certify that the surety business will not represent itself, directly or indirectly, as an employee or agent of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.
SFAA 000673

Commonwealth of Pennsylvania or Fifth Judicial District or the County of Allegheny. Agents and employees of a surety business must not wear clothing or present badges or any other form of law enforcement credentials that create the impression of employment of the Commonwealth of Pennsylvania, the Fifth Judicial District or any of its units, including the Pretrial Services Unit or the Warrant Unit of the Fifth Judicial District or the County of Allegheny;*

*(b) _Requirements to Remain Qualified_. To remain qualified to post bond, the surety business must:*

*(1) Maintain compliance with the requirements specified in subsection (a) of this rule;*

*(2) Provide quarterly statements certified by the surety business that it is in compliance with the security posting requirements specified in subsection (a)(7) of this rule to the Clerk of Courts and the District Attorney as required by 42 Pa.C.S.A. § 5747;*

*(3) Provide to the Clerk of Courts and the District Attorney, on a quarterly basis, or as often as requested by the President Judge or the Administrative Judge, a financial statement certified by a Certified Public Accountant which verifies that the surety business has sufficient assets to satisfy all bail obligations undertaken by the surety business in the Fifth Judicial District and in other jurisdictions in which the surety business conducts business;*

*(4) Satisfy in full any forfeiture order entered against a defendant or the surety business for a defendant's violation of a bail bond within ninety (90) days of the issuance of the order. In the event the surety business fails to satisfy such forfeiture order, the order will be satisfied from the funds posted with the Clerk of Courts pursuant to subsection (a)(7) of this rule. In that event, the surety business will be prohibited from posting additional bail until such time as all forfeiture orders entered against the surety business are satisfied in full;*

*(5) Immediately notify, in writing, the President Judge, the Administrative Judge and the District Attorney if an agent or employee of a surety business has been charged with any criminal offense, or if the license of an agent or employee has been revoked, suspended or not renewed in the Commonwealth of Pennsylvania or any other jurisdiction;*

*(6) Cease posting bonds if the aggregate maximum amount of unsettled and outstanding bail forfeitures, as determined by the Clerk of Courts and the District Attorney, equals or exceeds $250,000. The Clerk of Courts, or a designee, shall promptly notify the Common Pleas Court President Judge, and Administrative Judge, Pretrial Services, Pittsburgh Municipal Court, the District Attorney, and the applicable surety business of the occurrence of having reached this maximum limit. Immediately upon notification, no further bonds by the surety business are authorized or acceptable for posting. When full financial settlement has been made of the outstanding bail forfeitures, the Clerk of Courts, or a designee, shall promptly notify the Common Pleas Court President Judge and the Administrative Judge, Pretrial Services, Pittsburgh Municipal Court and the District Attorney, and the applicable surety business that the posting of bonds may resume;*

*(7) Not represent or identify itself, directly or indirectly, as employees or agents of the Commonwealth of Pennsylvania or Fifth Judicial District or the County of Allegheny. The agents and employees of a surety business must not wear clothing or present badges or any other form of law enforcement credentials that create the impression of employment by the Commonwealth of Pennsylvania, the Fifth Judicial District or any of its units, including the Pretrial Services Unit or the Warrant Unit of the Fifth Judicial District or the County of Allegheny;*

*(8) Annually renew their registration with the Fifth Judicial District, provide all certifications required by this rule and pay to the Clerk of Courts an annual renewal registration fee of $250.00, or such amount as may be established from time to time by the Clerk of Courts with the approval of the President Judge;*

*(9) Fully comply with all laws, statutes, local rules, rules of court and procedures as may be established from time to time.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*(c) _Seeking Approval as a Corporate Surety_. Any surety business which is licensed by the Pennsylvania Department of Insurance may seek approval to post bail in the Fifth Judicial District by filing a petition with the Clerk of Courts and the District Attorney. The petition must provide the information, documents and certifications set forth in subsection (a) of this rule. Upon filing, the petition will be assigned to the Administrative Judge for determination.*

*(d) _Opportunity to be Heard_. A surety business whose petition seeking approval to post bail in the Fifth Judicial District is denied will be provided an opportunity to be heard and to contest the denial. Any surety business seeking to contest the denial of its petition for approval to post bail in the Fifth Judicial District must file a petition with the Clerk of Courts and serve District Attorney within thirty (30) days of the date of denial of its initial petition, and set forth the relief requested and the factual basis therefor. Similarly, a surety business, which has received approval to post bail in the Fifth Judicial District as provided in this rule, but which has been prohibited from posting additional bail, or is otherwise ineligible to post bail in the Fifth Judicial District, will be provided an opportunity to be heard. Any surety business, seeking to contest its prohibition from posting additional bail in the Fifth Judicial District, or any other ineligibility subsequent to its initial approval hereunder, must file a petition with the Clerk of Courts and District Attorney within thirty (30) days of the date of the prohibition or determination of ineligibility, and set forth the relief requested and the factual basis therefor.*

*(e) _Prohibited Conduct_. A surety business and agents and employees thereof may not engage in prohibited conduct, which includes the violation of any applicable laws, statutes, local rules, rules of court, or the commission of any of the following acts:*

*(1) having a license as a surety business revoked in this or any other state;*

*(2) being involved in any transaction which shows unfitness to act in a fiduciary capacity or a failure to maintain the standards of fairness and honesty required of a fiduciary;*

*(3) having any judgment entered which would reduce the surety business' net worth below the minimum required for licensure;*

*(4) being convicted of any criminal offense;*

*(5) failing to promptly advise the Administrative Judge, the District Court Administrator and the District Attorney of any change in circumstances which would materially affect any of the statements, information or certifications required by this rule;*

*(6) using an unregistered agent to post bail or provide any bail undertaking on behalf of the surety business;*

*(7) using an individual or entity not contracted and appointed by the surety business to post bail or provide bail undertaking on behalf of the surety business;*

*(8) signing, executing or issuing bonds by a person or entity which is not registered as an agent of the surety business and/or for which there is no satisfactory proof of an agency relationship with the surety business;*

*(9) executing a bond without the appropriate counter signature by a licensed and/or authorized agent at time of issue;*

*(10) failing to account for or pay any premiums held in a fiduciary capacity;*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

SFAA 000675

*(11) misstating or misrepresenting any material fact in the initial petition or any subsequent petitioners, required by this rule, or in any of the statements, information or certifications required by this rule;*

*(12) failing to preserve, and to retain separately, any collateral obtained as security on any bond;*

*(13) failing to return collateral taken as security on any bond to the depositor of such collateral, or the depositor's designee, within ten (10) business days of having been notified of the exoneration of the bond and upon payment of all fees owed to the surety business, whichever is later;*

*(14) offering or providing any consideration or gratuity to any person employed by, or incarcerated in, a jail facility, any person who has the power to arrest or to hold any person in custody, or to any court officers and attorneys to obtain or secure business;*

*(15) failing to deliver to the defendant, and any person providing collateral on the defendant's behalf, prior to the time the defendant is released from jail, a one-page disclosure form which, at a minimum, must include:*

*(A) the amount of the bail;*

*(B) the amount of the surety's fee, including bail bond premium, preparation fees, and credit transaction fees;*

*(C) the collateral that will be held by the surety;*

*(D) the defendant's obligations to the surety and the court;*

*(E) the conditions upon which the bond may be revoked;*

*(F) any additional charges or interest that may accrue;*

*(G) any co-signors or indemnitors that will be required; and*

*(H) the conditions under which the bond may be exonerated and the collateral returned;*

*(16) failing to provide the Pretrial Services Unit of the Fifth Judicial District the fully executed one-page disclosure form required by subsection (e)(15) of this rule at the time bond is posted;*

*(17) charging excessive fees or other unauthorized charges;*

*(18) requiring unreasonable collateral as security;*

*(19) failing to provide an itemized statement of any and all expenses deducted from collateral, if any;*

*(20) advising, requiring or suggesting that, as a condition of posting a bail bond by a surety business, a defendant engage the services of a particular law firm or attorney;*

*(21) preparing or issuing a fraudulent or forged bail bond, power of attorney or other document;*

*(22) signing, executing, issuing or posting bail bonds by an unlicensed person;*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.
SFAA 000676

*(23) knowingly violating, advising, encouraging, aiding, abetting or assisting the violation of any applicable law, statute, local rule or rule of court;*

*(24) soliciting or procuring sexual favors as a condition of obtaining, maintaining or exonerating a bail bond, regardless of the identity of the person who performs such favors;*

*(25) providing legal advice or a legal opinion in any form; and*

*(26) holding themselves out by their manner of dress as being a public official.*

*Rule 536.1. Forfeitures and Bail Pieces.*

*(a) _Forfeitures_.*

*(1) If a bail bond is ordered to be forfeited pursuant to Pa.R.Crim.P. 536, execution of the order shall be delayed until ninety (90) days from the date of the filing of the forfeiture order.*

*(2) If a defendant whose bail has been ordered forfeited surrenders within ninety (90) days of the date of the entry of the order, the Administrative Judge or a designee may set aside the forfeiture order and either reinstate bail or set a new bail without the necessity of the filing of a petition as hereinafter provided.*

*(3) Unless the forfeiture order has been set aside as provided for in subsection (2), in order for a surety to have the forfeiture order set aside or remitted in whole or in part, the party seeking remission, set aside or exoneration shall present a petition to the Administrative Judge or a designee, file the petition with the Clerk of Courts, and serve a copy thereof upon the District Attorney. The petition shall set forth in detail the reasons for seeking the set aside, remission or exoneration. In order to facilitate the assessment and investigation of petitions requesting remittance, the surety is required to delineate within the petition the following:*

*(A) A recitation of the history of the case including the charges, the date the bond was set, the amount of the bond, and the name and district of the issuing authority;*

*(B) The date of forfeiture and nature of the proceeding at which forfeiture occurred;*

*(C) A statement establishing the fact that the defendant was apprehended including the date of apprehension and the agency responsible for the apprehension;*

*(D) A detailed summary of all efforts by the petitioner to apprehend the defendant including the name, phone number and address of all agents hired or assigned to effectuate the apprehension, and all times, dates, and locations searched;*

*(E) A declaration that the apprehension or return of the defendant was effected by the efforts of the surety or that those efforts at least had a substantial impact on the defendant's apprehension; and*

*(F) A clear and specific factual recitation in support of the above declaration.*

*(b) _Bail Pieces_. After a bail piece is issued pursuant to Pa.R.Crim.P. 536 and the defendant is apprehended by or on behalf of the surety, the defendant must be brought before the Administrative Judge or a designee in accordance with Pa.R.Crim.P. 150. Bail pieces shall not be utilized to exonerate the surety.*

*_Comment_: Regarding forfeiture and remissions, see Commonwealth v. Hernandez, 886 A.2d 231 (Pa. Super.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

2005), Commonwealth v. Mrozek, 703 A.2d 1052 (Pa. Super. 1997) and Commonwealth v. Fleming, 485 A.2d 1130 (Pa. Super. 1984).*

[Pa.B. Doc. No. 12-282. Filed for public inspection February 17, 2012, 9:00 a.m.]

 END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.
SFAA 000678

## 2012 Bail Bond Legislation

(Bills added since the last distribution are marked with an asterisk)

### Arizona

H. 2432 – Provides that the surety shall be relieved of liability upon surrendering the defendant before or within 30 days after the failure to appear except that if the surrender is after the failure to appear the judicial officer may forfeit up to $1,000 of the bond.

H. 2433 – Requires that the list of persons authorized to post bail bonds be updated monthly with the names rotated.  Forbids soliciting bail bond business inside of, or within 200 feet of the entrance to, a court building or jail.  An employee of a bail agent can submit the bond if he or she has proper identification.

H. 2434 – Makes a person convicted of a felony in the previous seven years not eligible for supervision under pretrial services and provides that a defendant not released on his own recognizance shall be released on either a cash or secured appearance bond unless the defendant previously failed to appear, is in custody for unpaid child support, fines or fees, or is charged with a class 1 or 2 felony.  For such defendants the judicial officer could order a cash only bond.

S. 1284 – Amends statutes governing bail bond agents to require a receipt for payment of fees and expenses, require that all collateral be held in a fiduciary capacity and insured (except against weather damage which shall be the risk of the indemnitor), deposit cash collateral in an account separate from the agent's operating accounts, and disclose all premiums and fees.  The agent's license may be suspended or revoked for charging more than the maximum fee or violating any provision of law or rule governing the agent's business.  Requires having a signed contract and fee agreement before securing release of a person (other than a relative).  The premium shall be valid for one year from the date the bond is posted.  Any renewal premium shall be pro rated.

S. 1285 – Revises the licensing of bail recovery agents to require a high school diploma or GED, completion of a gun safety course or have an honorable discharge from the military, be at least 21, be a resident of Arizona for at least a year, and submit fingerprints.  The license shall not be issued until after the fingerprint check is completed.  A certified peace officer may not act as a bail recovery agent.

### California

A. 1529 – Adds a section 1305.5 to the Penal Code to provide that appeals of denial of motions to vacate bail bond forfeitures of $25,000 or less shall be treated as a limited civil case and go to the appellate division of the superior court rather than to the court of appeals.  If the forfeiture is more than $25,000 the appeal is treated as an unlimited civil case and go to the court of appeals.

S. 968 – Expands eligibility for release on electronic monitoring. Certain defendants eligible for bail may apply for release on electronic monitoring with bail reduced by up to 75%. Such an application may be made to the court starting from 10 court days following arraignment.

S. 989 – Amends Penal Code §1305 to require exoneration of the bond if the defendant is deported. If the defendant is located in another jurisdiction and brought before local law enforcement pursuant to §305(g), tolls the running of the appearance period while the prosecuting agency decides whether to seek extradition and during the extraction process. The bond is exonerated if the prosecuting agency does not decide to seek extradition within a reasonable time. Adds "or the United States Attorney" after prosecuting agency in both provisions.

### Colorado

H. 12-1114 – Treats stalking the same as domestic violence in terms of setting bail, protective orders and punishment for violating conditions of bail or protective orders.

H. 12-1266 – Extends the sunset of the division of insurance regulation of bail, requires that all forms used in connection with bail be filed with and approved by the division, and revises requirements for cash bonding agents and "Professional Cash Bail Agents" who will qualify by posting a bond with the division of insurance instead of by appointment from a bail insurance company.

*H. 12-1310 – Adds to the information that each pretrial services program must include in their annual reports including crime classification of failures to appear, information on those remaining at large, information on those returned to custody and how recovered, re-arrests, and revocations. Permits surety to consent in writing to continuance of bond through sentencing either in initial bond documents or at the time of conviction or within a reasonable time thereafter.

*H. 12-1316 – Amends provisions on bonds for possible illegal aliens. If the agency holding the defendant determines that there is an ICE detainer lodged against a person arrested or charged with felonies or class 1 or 2 misdemeanors, it shall notify the bail bond agent before the bond is posted. The bond shall be forfeited if the defendant is deported. The agency shall also notify the district attorney and any pretrial services office, and if the defendant posts bond, the agency shall notify the district attorney before notifying ICE that the defendant is eligible for release to ICE.

### Connecticut

H. 5093 – As a condition precedent to exoneration after the defendant is incarcerated or detained in another state, requires the surety or bail bond agent to agree to reimburse the Division of Criminal Justice for extradition costs incurred to secure the defendant's return.

**Florida**

H. 135 and S.210 – Requires that costs of prosecution and costs of representation be withheld from any cash bond posted by any person other than a licensed bail bond agent.

H. 725 and S.938 – Provides for E-mailed notice of time and place of licensure examination for bail bond agents. Strikes the separate standards for continuing education courses for bail bond agents and substitutes a cross reference to the Code section on continuing education courses for insurance agents in general. Amends section on forfeitures to delete the requirement that the clerk send the Department of Financial Services and Office of Insurance Regulation copies of each judgment within 10 days of its entry. Adds that such notice to the surety must be sent to the surety's home office. If the judgment is not paid within 60 days (formerly 35 days), notice must be sent to the Office of Insurance Regulation.

H. 771 and S.1820 – Makes extensive changes to the regulation of bail bond agents including requiring an "agent in charge" for each office, limiting the duration of a temporary bail bond agent license, restricting ownership or management of an agency to bail bond agents licensed and appointed for at least three years, fines insurers up to $1,000 per agent per month for failure to submit a statement of build up trust accounts, establishes a 30 day deadline for agents to pay over premiums, collateral or other funds, authorizes premium payment plans under specified conditions, authorizes persons properly licensed in other states to recover defendants on bonds written in the other state, forbids a licensed agent from directing an unlicensed person to recover a defendant in Florida, requires the monthly report for temporary bail bond agents to be submitted within 15 days of the end of the month and authorizes a fine of up to $500 per month for late submission, requires payment of wages to the temporary bail bond agent and makes them subject to unemployment compensation tax, forbids a temporary bail bond agent from accepting the initial premium for a bond but does allow him or her to accept subsequent payments under a premium payment plan, details circumstances requiring affidavits listing any unpaid judgments, premiums or other contractual obligations, authorizes online continuing education, requires cancellation of the appointment of any managing general agent if a prior insurer reports unpaid forfeitures, judgments, premiums, losses or other contractual obligations, an insurer appointing a managing general agent is bound by the acts of the managing general agent within the scope of the appointment, allows an agent to provide contact information for multiple attorneys, forbids promising an inmate anything of value in return for referrals, forbids anyone from acting as a professional bail bond agent without a license as such, forbids travel fees for posting a bond if the same agent or agency that posted the bond also wrote the bond, requires immediate return of premium if a bond is not executed, requires all advertising to include the license number of the bail bond agent, requires return of collateral if the bond has expired, increases numerous fines and penalties, and authorizes Regulations to carry out numerous provisions of the bill.

H. 455, H.7047 and S. 1800 – Bars bail for defendants required to register as sexual offenders or sexual predators "until the first appearance in the case in order to ensure full participation of the prosecutor and protection of the public."

**Hawaii**

H. 2243 and S. 2158 – Requires that when the court with jurisdiction is closed, a law enforcement agency must release the defendant upon receiving cash, a certified copy of a pre-filed bail bond, or an original bail bond from a licensed agent.

H. 2868 and S. 3068 – Enacts a new Chapter in the Code providing mechanisms to enforce payment of bonds, suspend agents or insurers who do not pay, exonerate bonds upon recovery of the defendant or a showing that the failure to appear was caused by an Act of God or of the State or the law, and allow payment of costs of extradition from the bond.

### Idaho

S. 1325 – Requires full payment of the bail bond premium before the defendant is released. Premium financing would be a permitted method of paying the premium, but no bail agent or surety company may have any financial affiliation with, or indemnify or receive compensation from, the premium financier.

### Illinois

S. 2870 – Adds "a surety bond in an amount equal to 25% of the bail, executed by a surety approved by the court" as an alternative to the current requirement of a 10% cash deposit. That is, the defendant must execute the bond and deposit either 10% cash or a 25% surety bond.

### Kansas

S. 321 – Restricts persons eligible for release on their own recognizance to residents of Kansas in the U.S. legally who are charged with misdemeanors or certain levels of felonies, have no prior history of failures to appear, no detainers, have not been extradited, are not awaiting extradition, and have not been detained for alleged probation violation.  Also requires an out of state surety or agent who intends to apprehend any person in Kansas to contract with a person authorized to act as a surety or agent in Kansas, and that authorized person must accompany the out of state person during the apprehension.

### Maine

H. 312 – Requires as a condition of bail for persons charged with certain crimes of domestic violence that the defendant turn over all firearms to a law enforcement officer and refrain from possessing firearms or other specified dangerous weapons.

H.1256 – Authorizes electronic monitoring, at the defendant's expense, as a condition of bail for defendants charged with crimes involving domestic violence.

**Maryland**

H. 338 and S. 690 – Forbids a district court commissioner from releasing defendants charged with certain enumerated offenses and permits a judge to release such defendants only on full cash or corporate surety bond or on a property bond secured by property located in Maryland with equity equal to the amount of the bond plus $20,000.  Enacts a rebuttable presumption that such defendants will flee and will pose a danger to another person or the community.

H. 492 – Except for failure to pay family support, "cash bail" or "cash bond" may be provided in the form of cash, a surety bond, or a property bond by the defendant, or by a private surety acting for the defendant.  For failure to pay family support, only the defendant may post a "cash bail" or a "cash bond."

H. 517 – Forbids a surety from accepting or providing real property as security for a bond unless the owner of the property certifies that the property has no outstanding citations for building or property code violations.

H. 551 – Provides that if the defendant is taken into custody by Immigration and Customs Enforcement because of his or her immigration status, the bond is void, the bond must be returned to the surety and the surety discharged, and any premium must be refunded.

H. 573 – Forbids courthouse or correctional facility employees from soliciting for or advertising the services of a specific bondsman and increases the penalties for banned solicitation by a bondsman or agent as well as by the added employees.

H. 742 and S. 489 – Requires applicants for a bail bondsman's license to certify one year's regular employment by a licensed bail bondsman and authorizes installment payment of premiums.  If the premium is paid by installments, certain records have to be kept and attempts made to collect any balance owed.  The installment agreement must include certain information about the payments owed.

**Mississippi**

H. 173 and *S. 2838 – Automatically stays execution on a bond forfeiture for 90 days from the entry of final judgment and requires the court to exonerate the bond if the defendant appears or is surrendered before execution of final judgment.  Grants a bail agent immunity from civil damages for actions taken within the scope of his authority and in good faith to enforce a court order, scire facias and final judgment.  Bail agents shall not be liable in civil damages resulting from a court's failure to properly issue or serve the surety with a set aside order for scire facias or final judgment or with the writs or judgment themselves.

H. 174, *H. 631 and *S. 2805 – Revises prelicensing educational requirements for  professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent.

H. 175 and *S. 2837 – Deletes requirement that the sheriff approve a bond from a properly licensed bail agent.

*H. 631 and *S. 2805 – Revises prelicensing educational requirements for professional bail agents and makes it easier to transfer the qualification bond of a licensed personal surety agent or professional personal surety agent. Makes it unlawful to refuse to return collateral or other indemnity when the premium has been paid or the obligation on the bond terminated.

*H. 880 and *S. 2847 – Designates certain charges as crimes with bail restrictions, for defendants charged with such designated crimes requires full cash, corporate surety or bond secured by real property and, if real property, requires an affidavit from the owner with information as to equity in the property. Creates a presumption for full cash bail if a defendant charged with such crimes also has two prior felony convictions or two other indictable offenses pending or was on parole or has a prior conviction for certain enumerated crimes including bail jumping.

*H. 1439 – for persons charged with domestic violence offenses, the court must check the Mississippi Protective Order Registry and consider any protective order before granting bail.

*H. 1471 – Permits release on own recognizance or appearance bond unless the court determines this will not reasonably assure appearance or protect others or the public; in which case the court may impose the least onerous conditions to assure appearance and protect others and the public taking into account a list of factors related to the defendant and the offense. Also establishes a bail schedule but permits deviation in the court's discretion. Forbids post conviction bail if the sentence is 20 years or more or if conditions of release will not reasonably assure the defendant's surrender or protection for others or the public.

S. 2254 – If a defendant is charged with a crime involving a domestic victim, the court must check the Mississippi Protective Order Registry and if there is a domestic abuse protective order against the defendant, take that into account when determining bail.

*S 2620 – Would permit renewal of a professional bail agent's license held on the effective date of the act even though the licensee was convicted of a felony not involving moral turpitude.

### New Jersey

CR 93 – Amends the state Constitution to allow the legislature to forbid bail to illegal immigrants charged with certain crimes.

A. 474 and S. 560 – Adds assault and death by auto or vessel to the list of crimes with bail restrictions.

A. 1674 and S. 733 – Makes 16 additions to the list of crimes with bail restrictions.

A.1713 – If a released defendant is charged with a second offense involving petty disorderly persons, disorderly persons, a crime of the fourth degree or a crime of the third degree, there would be a presumption of a 50% cash bail option.  For a third or subsequent charge for the same categories of offenses, the presumption would be for 100% cash bond.  This seems to be intended to substitute the higher percentages for a 10% cash option.

A.1772 and S. 678 – Forbids release of illegal immigrants charged with crimes of the first or second degree or previously convicted of two or more crimes that occurred on separate occasions.  The change would take effect upon amendment to the state Constitution per CR 93.

A.     2254 – Authorizes establishment of a pretrial release program.  Any defendant would be eligible except one charged with a crime with bail restrictions or other first degree offenses.

*A. 2536 -- A bail bond can be forfeited only for failure to appear; establishes a schedule for remission of forfeitures if the defendant is recovered, is dead or is incarcerated within the United States if the surety engaged in monitoring efforts or attempted to contact the defendant at least once every three weeks; requires mailing notice to the surety and agent; if a bench warrant has been issued, authorizes any jail or law enforcement agent to accept surrender of the defendant from the surety or agent or their representatives; establishes a $100 filing fee for bonds or recognizances; and forbids removing the surety or its agents from bail registry if the surety has filed a motion to vacate a forfeiture and the defendant is in custody in New Jersey or has entered an order to vacate the forfeiture that is awaiting court's signature.  [This appears to be the same as 2010 A.1143, and the remission schedule does not make sense.]

S. 1133 – Adds certain weapons offenses to the list of crimes with bail restrictions.

### New Mexico

HJR. 3 – Deletes the sufficient sureties clause of the New Mexico Constitution and substitutes a provision that bail be granted or denied based on flight risk, seriousness of the offense charged, danger to the community, and other factors provided by law.  States that "The least onerous condition of release needed to comply with these factors shall be imposed."  Forbids excessive bail, cruel and unusual punishment and excessive fines and grants precedence to appeals of orders denying bail.

### Oklahoma

HJR 1088 – Would amend the state Constitution to permit denial of bail to illegal aliens charged with serious felony offenses as designated by the Legislature.

H. 2190 – Forbids bail for a person held in a secure facility against whom a petition has been filed alleging that the person is a sexually violent predator.

H. 2206 – Strikes the exception allowing a professional bondsman to write bonds on up to ten defendants per year in counties in which the bondsman cannot register his license (i.e. counties in which the bondsman does not reside or have his office) or an unlimited number of bonds in counties where there is no registered bondsman.

H. 2278 – For a defendant charged with one of the 40 offenses that render the defendant ineligible for a pretrial services program, the court can order urinalysis testing as well as use of a GPS monitoring device. The court can also order the defendant to pay for supervision and testing as well as the GPS device and monitoring.

H. 2981 – Requires a $300,000 minimum deposit from all insurers with the surety, including bail, line of authority. Adds changes in legal name and E-mail address to the information that must be reported to the Commissioner within 5 business days, increases the application fee for bail bondsman from $250 to $350, and increases various late filing fees.

S. 1107 – Changes the due date of financial statements required from professional bondsmen and property bondsmen from the last day of the licensee's birth month to September 15

S. 1115 – Gives the court discretion to stay the due date for payment of forfeiture. Current law authorizes the court, in its discretion, to vacate forfeiture and exonerate the bond if good cause is shown for the defendant's failure to appear or the bondsman's failure to return the defendant within 90 days. This bill adds the lesser remedy of staying the due date of payment.

S. 1127 – Changes the filing date for bail bondsman license applications to September 30 instead of the last day of the applicant's birth month and authorizes the Commissioner to require any documents reasonably necessary to verify information on the application. Also amends the standard from "of good character and reputation" to "competent, trustworthy, financially responsible, and of good personal and business reputation and character."

S. 1673 – Allows a bondsman to be appointed by a professional bondsman as well as by an insurer and strikes the restrictions on writing bonds in counties where the bondsman does not reside. To write bonds in such counties the bondsman would only have to file a copy of his or her license with the county district court clerk.

S. 1872 – Enacts a Professional Bounty Hunter Licensing Act.

S. 1202 – Strikes the ten defendants per year restriction on writing bonds in counties where the bondsman does not reside or have an office. Provides that a professional bondsman shall not be limited in writing bonds in Oklahoma as long as the total amount of bonds written per year does not exceed 20 times the dollar amount placed on deposit.

### South Carolina

B. 4572 – Deletes the provision of existing law granting the surety automatic relief from all liability if the defendant is incarcerated as a result of a bench warrant and the surety files an

affidavit stating that fact and the specific terms of the bond that were violated as stated in the bench warrant. The surety apparently could still file a motion seeking relief from liability.

### Tennessee

H. 2441 and S. 2619 – Amends the statute on surrender of defendants by excepting from review, and possible refund of premium and re-release, a surrender based on a judgment of forfeiture.

H. 2442 and S. 2720 – For an applicant for approval to own a professional bonding company, changes the experience requirement from two years "with" such a company to two years "as a full-time qualified agent for" such a company.

H. 2654 and S. 2688 – Adds to the list of factors that may disqualify a bondsman a conviction in another state of a felony or misdemeanor equivalent to a Tennessee Class A misdemeanor.

H. 2678 and S. 2604 – Requires that an illegal immigrant be deemed a risk of flight for bail purposes if he or she is arrested for certain serious traffic offenses and authorizes increased bail amounts for such defendants.

S. 2510 and S. 2812 – If a defendant fails to appear, any new bail must be a 100% cash or fully secured bond.

S. 3214 – Requires the Department of Revenue to provide reports to the administrative office of the courts on collection of the bail bond tax.

### Utah

H. 29 – Forbids a bail bond producer from operating in Utah unless he or she is appointed by an authorized insurer and, if he or she submits business through an agency, designated by a licensed bail bond agency or, for property bonds, is designated by a licensed agency. An enforcement agent may operate only through a licensed bail bond agency.

### Virginia

H. 174 – Requires that a property bail bondsman, or a business or company that he uses to carry out his bail bond business, own any real property that he pledges to meet the statutory $200,000 collateral provision. Also requires suspension of the license of any property bail bondsman who fails to pay a forfeiture within 60 days after notice and a final court order.

H. 807 – Requires the Criminal Justice Services Board to adopt regulations governing the use of electronic tracking devices by bail bondsmen and excepts use of such devices by licensed bail bondsmen in accordance with such regulations from the criminal statute barring the placing or use of an electronic tracking device through intentionally deceptive means and without consent.

S. 158 – Existing law establishes a rebuttable presumption that certain defendants should not be admitted to bail.  This bill would prevent a magistrate, clerk or deputy clerk from admitting such a defendant to bail and require a hearing with written notice to the Commonwealth's attorney before any other judicial officer does so.  Also provides that if the Commonwealth appeals a bail decision, the decision is stayed until the appeal is decided.


**Washington**

H. 2423 and H. 2668 – Reduces the period in which the court must notify the surety of a defendant's failure to appear from 30 to 14 days.  Requires good cause to surrender a defendant, and if the court finds good cause was lacking requires return of the bond premium and any recovery fee.  Good cause includes, but is not limited to, a substantial increase in the risk of flight, violation of a court order, failure to appear, and concealment or intentional misrepresentation of information, but does not include failure to pay the premium.  Surrender of the defendant without good cause, gaining full authority over a person's property or finances, and failing to disclose a defendant's location upon request from law enforcement are added to the list of acts that constitute "unprofessional conduct."  If a court revokes or reinstates a bail bond agent it must notify the administrative office of the courts which will notify all other courts of the action.  Defines property bond and surety bond.  Increases the surety bond to be posted by a property bond agency from $10,000 to $100,000 (the bond for a surety bond agency remains at $10,000).  Authorizes audits of licensee trust accounts unless the licensee submits an annual CPA audited statement.

S. 5056 (Substitute Bill) – Subject to appropriations, requires development of a "risk assessment tool" by the Washington state institute for public policy, authorizes its use, and authorizes the center for court research to evaluate the "risk assessment tool" and submit a report every two years on its use.  Exonerates a bond if the court fails to notify the surety of a default within 14 calendar days (instead of 30 days in current law), requires good cause to surrender the defendant and, if the court determines good cause did not exist, the surety must return the premium and any recovery fee.  Surrender without good cause is "unprofessional conduct." If a court revokes or reinstates a bail bond agent's certification to post bonds in the court, it shall notify the administrative office of the courts which shall notify other state courts.  Adds to the list of unprofessional conduct "Entering into a contract, including a general power of attorney, with a person that gives the bail bond agent full authority over the person's finances, assets, real property, or personal property" and failing to disclose to law enforcement upon request information on the location of a fugitive defendant.  Defines bail bond insurance as surety insurance and makes surety insurance subject to the rate standards set forth in RCW 48.19.020.


**Wisconsin**

A. 567 – Permits and regulates commercial bail.  Current law forbids compensation for acting as surety on a bail bond.  Would make an exception for a licensed bail bond agent or bail bond agency and require a premium equal to 10% of the amount of the bond.  Establishes licensing

framework for bail bond agents, bail bond agencies, and bail recovery agents, and authorizes the Department of Safety and Professional Services to promulgate detailed Rules.

Orgovan, Joseph

| | |
|---|---|
| From: | Gallagher, Edward |
| Sent: | Friday, February 17, 2012 4:55 PM |
| To: | Committee-BBAC-Open |
| Cc: | Holtschneider, Mark; Lanak, Frank; Mike Whitlock; Dee Hale; karen.ridener@accredited-inc.com |
| Subject: | Legislation |
| Attachments: | 2012 Bail Bond Legislation.doc |

An updated Report is attached.