# EXHIBIT 2

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION | Case No. 4:19-CV-00717-JST |
| | **SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DANIELSON NATIONAL INSURANCE COMPANY** |
| This Document Relates To: | |
| ALL ACTIONS | |

## I.   INTRODUCTION

This Settlement Agreement is entered into by and between Shonetta Crain and Kira Monterrey (the "Settlement Class Representatives" or "Plaintiffs"), on behalf of themselves and the purported Settlement Class Members, and Defendant Danielson National Insurance Company ("DNIC") (collectively, the "Parties"). This Settlement Agreement is submitted for approval by this Court pursuant to Federal Rule of Civil Procedure 23(e) and is intended by the Parties to fully resolve and release the Released Claims subject to the terms and conditions of this Settlement Agreement.

## II.   PROCEDURAL HISTORY

On January 29, 2019, the Settlement Class Representatives filed a complaint in Alameda County Superior Court, entitled *Crain et al. v. Accredited Casualty and Surety Company, Inc., et al.* (the "Crain Action"). On February 8, 2019, Steven Breaux filed a complaint in the Northern District of California, entitled *Breaux v. Accredited Casualty and Surety Company, Inc., et al.* (the "Breaux Action"). ECF No. 1. On March 19, 2019, the Court related the Crain Action and the Breaux Action (collectively, the "Related Actions"). ECF No. 14. On May 1, 2019, the Court consolidated the Related Actions. ECF No. 29. On June 3, 2019, the Court appointed Lieff,

1   Cabraser, Heimann & Bernstein LLP ("Lieff Cabraser") as Interim Class Counsel under Federal

2   Rule of Civil Procedure 23(g).  ECF No. 44.

3          On June 13, 2019, the Settlement Class Representatives filed the Consolidated Amended

4   Class Action Complaint ("CAC").  ECF No. 46.  On July 15, 2019, certain Defendants filed a

5   motion to dismiss the CAC.  ECF No. 58.  On April 13, 2020, the Court granted in part that

6   motion to dismiss, dismissing the Sherman Act claim regarding the filing of uniform premium

7   rates, and denying the motion to dismiss the Sherman and Cartwright Act claims regarding

8   rebating, the Cartwright Act claim regarding uniform rate filing, and the California Unfair

9   Competition Law claim.  ECF No. 91.

10         On May 13, 2020, the Settlement Class Representatives filed the Second Consolidated

11  Amended Class Action Complaint ("SCAC").  ECF No. 94.  On June 12, 2020, certain

12  Defendants filed a motion to dismiss the SCAC.  ECF No. 112.  On January 5, 2021, the Court

13  granted in part the motion to dismiss, holding that with respect to certain surety Defendants, the

14  SCAC did not describe their role and participation in the conspiracy "in terms of communications

15  and/or meetings with other defendants[.]"  ECF No. 159 at 20.  The Court also permitted targeted

16  discovery to proceed, "tailored to allow Plaintiffs to gather the facts necessary to correct any

17  perceived deficiencies in the pleading of their complaint."  ECF No. 151.

18         Following that targeted discovery, on April 11, 2022, the Settlement Class

19  Representatives filed the Third Consolidated Amended Class Action Complaint ("TCAC").  ECF

20  No. 269.  On May 26, 2022, certain Defendants filed a motion to dismiss the TCAC.  ECF No.

21  284.  On November 7, 2022, the Court denied the motion to dismiss the TCAC.  ECF No. 330.

22         Since the pleadings were settled, the Parties have engaged in vigorous settlement

23  negotiations that ultimately resulted in the Parties executing a term sheet on February 29, 2024

24  memorializing their agreement-in-principle to settle the Action as between Plaintiffs and National

25  American Insurance Company of California on behalf of Defendant DNIC.  The term sheet set

26  forth, among other things, the Parties' agreement to settle and release all claims against DNIC in

27  return for a cash payment of Two Million U.S. Dollars ($2,000,000.00) for the benefit of

28  Participating Settlement Class Members and for DNIC's agreements that: (1) it will not

coordinate with competitors regarding any aspect of bail bond prices in California, including premium rates to be submitted to the California Department of Insurance, premium rates to be charged to customers, or rebating practices by bail bond agents; (2) it will require its agents in California to communicate the following to potential customers: "A bail agent may choose to negotiate a lower fee by rebating, as allowed by Proposition 103."; and (3) the communication in (2) shall be included along with any representation by DNIC's bail bond agents that they must charge filed rates, and will be provided to potential customers with equal prominence and visibility.

## III.    DEFINITIONS

In addition to terms defined elsewhere in this Settlement Agreement, the terms below shall have the following meanings wherever used in this Settlement Agreement:

1.     "Action" means *In re California Bail Bond Antitrust Litigation,* No. 19-cv-00717-JST (N.D. Cal.) and all cases consolidated and/or related thereto.

2.     "Cy Pres Recipient" means an organization selected by Settlement Class Counsel and approved by the Court to receive cy pres funds from non-distributable residual funds in the Escrow Account, as defined herein.

3.     "Distribution Plan" means any plan of allocation of the Net Settlement Fund, to be approved by the Court, whereby the Net Settlement Fund shall in the future be distributed to Participating Settlement Class Members.

4.     "Effective Date" with respect to the Settlement Agreement means the first date after which the following events and conditions have been met or have occurred or have been waived (as applicable): (a) the Court has entered the Preliminary Approval Order; (b) the Court has entered the Final Approval Order; and (c) the time for appeal from the Court's approval of this Settlement Agreement has expired; or, if an appeal has been filed, either all such appeals shall have been dismissed prior to resolution by the appellate court, or approval of this Settlement Agreement has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.

5.      "Escrow Account" means the separate, interest-bearing escrow account to be established by the Settlement Administrator at Citibank, N.A. under terms agreed upon with Settlement Class Counsel, wherein DNIC shall deposit the Settlement Amount.

6.      "Escrow Agent" means Citibank, N.A.

7.      "Execution Date" means the date all Parties execute this Settlement Agreement.

8.      "Final Approval Hearing" means the hearing before the Court to address final approval of, or any other rulings contemplated by, this Settlement Agreement.

9.      "Final Approval Order" means an order of this Court granting final approval of the Settlement Agreement on the terms substantially set forth in this Settlement Agreement.

10.     "DNIC" means Danielson National Insurance Company, including all current and former parents, affiliates, and subsidiaries; the predecessors, successors, and assigns of each (including without limitation Incline National Insurance Company and Incline Insurance Group, LLC); and each and all of the current and former principals, officers, directors, trustees, partners, employees, representatives, agents, attorneys, and insurers of each of the foregoing.

11.     "Net Settlement Fund" means the Settlement Fund less:  (i) court-awarded Service Awards; (ii) court-awarded Settlement Class Counsel Attorneys' Fees and Litigation Expenses; and (iii) the Settlement Administrator's court-awarded reasonable fees and expenses.

12.     "Non-Settling Defendants" shall refer to Defendants other than DNIC and Lexon Insurance Company.

13.     "Notice" means the Notice of Settlement of Class Action to be sent to Settlement Class Members in a form attached hereto as Exhibit 1, subject to Court approval.

14.     "Participating Settlement Class Member" means a Settlement Class Member who has not submitted a timely and valid Opt-Out Statement that is accepted by the Court.

15.     "Preliminary Approval Order" means an order of the Court preliminarily approving the terms and conditions of this Settlement Agreement, providing for the form, manner, and timing of the Notice, and providing for deadlines and the manner of, requests for exclusion or opt-out from the Settlement and objections to the Settlement.

16.     "Release" or "Released Claims" means that each Releasor shall release with prejudice, acquit, forever discharge, and covenant not to sue DNIC from all claims, demands, judgments, actions, suits, and/or causes of action, whether federal or state, known or unknown, asserted or unasserted, regardless of the legal theory, arising in any way from or in any way related to the facts, activities, or circumstances alleged in the complaints in the Action, up to the Effective Date.

17.     "Releasor" means the Settlement Class Representatives and each Participating Settlement Class Member; each of their respective current and former heirs, executors, administrators, and assigns; and anyone claiming by or through any of the foregoing.

18.     "Service Award" means an additional amount, subject to Court approval, to be paid to each Settlement Class Representative for their service to the Settlement Class.

19.     "Settlement Administrator" means the administrator(s) selected by Settlement Class Counsel, subject to Court approval, to administer the Settlement and distribute the Settlement Fund pursuant to the terms of this Agreement and orders of the Court.

20.     "Settlement Amount" means Two Million U.S. Dollars ($2,000,000.00) to be paid into the Escrow Account.

21.     "Settlement Class" means all persons who, between February 24, 2004 and the Execution Date of this Settlement Agreement (the "Settlement Class Period"), paid for part or all of a commercial bail bond premium in connection with a California state court criminal proceeding.  Specifically excluded from this Settlement Class are Defendants in the Action; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant and any person acting on their behalf; any person who acted as a bail agent during the Settlement Class Period; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action.

22.     "Settlement Class Counsel" means Interim Class Counsel, as previously designated by the Court under Federal Rule of Civil Procedure 23(g).  ECF No. 44.

23.     "Settlement Class Counsel Attorneys' Fees and Litigation Expenses" mean the amounts approved by the Court for payment to Settlement Class Counsel to compensate them for, respectively, attorneys' fees and litigation expenses incurred in connection with the Action, including their pre-filing investigation, their filing and prosecution of the Action, and the negotiation, execution, and administration of this Settlement Agreement.

24.     "Settlement Class Representatives" means Shonetta Crain and Kira Monterrey.

25.     "Settlement Fund" means the Settlement Amount plus any interest or income that may accrue on deposit in the Escrow Account.

26.     "Total Settlement Amount" means the Settlement Amount plus any additional funds recovered by Plaintiffs in this Action, through further settlements with or judgments against the Non-Settling Defendants.

## IV.     CONSIDERATION

27.     In consideration for the Release, DNIC shall provide the following benefits to Settlement Class Members.

28.     <u>Monetary Relief</u>.  DNIC agrees to pay and shall deposit in the Escrow Account, the total amount of Two Million U.S. Dollars ($2,000,000.00) as a non-reversionary cash Settlement Amount.  Within 10 business days of the Preliminary Approval Order, DNIC shall remit to the Settlement Administrator an amount sufficient to cover the anticipated cost of notice, as set forth in the Settlement Administrator declaration.  This amount shall be an offset against the total Settlement Payment.

29.     <u>Tax Treatment</u>.  The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and shall be administered by the Settlement Administrator under the Court's supervision.  DNIC shall timely furnish statements to the Settlement Administrator that comply with Treasury Regulation § 1.468B-3(e) and shall attach a copy of the statements to their federal income tax return that are filed for the taxable year in which DNIC makes the required payments to the Settlement Fund.  The Parties shall cooperate to

1   ensure such treatment and shall not take a position in any filing or before any tax authority

2   inconsistent with such treatment.

3        30.    <u>Injunctive Relief</u>.  To the extent DNIC engages in the business of bail bonds after

4   the Effective Date of this settlement, DNIC agrees to the following injunctive relief:

5           a.   DNIC will not coordinate with competitors regarding any aspect of bail bond

6               prices in California, including premium rates to be submitted to the California

7               Department of Insurance, premium rates to be charged by customers, or rebating

8               practices by bail bond agents;

9           b.   DNIC will require its bail agents in California to communicate the following to

10              potential customers: "A bail agent may choose to negotiate a lower fee by

11              rebating, as allowed by Proposition 103."

12          c.   DNIC will require that the communication in (b) herein shall be included along

13              with any representation by DNIC's bail bond agents that they must charge filed

14              rates, and will be provided to potential customers with equal prominence and

15              visibility.

16       31.    <u>Declaration Regarding DNIC Ability to Pay</u>:  As an additional term of the

17  Settlement, DNIC agreed to and did provide a declaration from a knowledgeable and qualified

18  individual who explained that the Monetary Relief of $2,000,000.00 is the maximum that DNIC

19  is able to pay given its financial circumstances, including: unencumbered cash and investments;

20  its status of being in run-off and no longer generating revenue; and other relevant facts and

21  background.  DNIC agreed and did work cooperatively with Settlement Class Representatives on

22  this declaration, including by considering and responding to comments and feedback, to generate

23  an adequate declaration that will be provided with the Motion for Preliminary Approval.

24  **V.    RELEASE**

25       32.    Upon the Effective Date, each Releasor shall be deemed to have fully, finally, and

26  forever released, acquitted, forever discharged and covenanted not to sue DNIC from all claims,

27  demands, judgments, actions, suits, and/or causes of action, whether federal or state, known or

28  unknown, asserted or unasserted, regardless of legal theory, arising in any way from or in any

1  way related to the facts, activities, or circumstances alleged in the complaints in the Litigation, up

2  to the Effective Date of this Settlement Agreement (the Release"). This Settlement Agreement

3  shall be the sole and exclusive remedy for any and all Released Claims against DNIC.

4        33.     Nothing herein shall be a bar to a claim, complaint, action, or proceeding for

5  breach of this Settlement Agreement.

6        34.     The Releasors acknowledge that they have consulted with legal counsel and are

7  familiar with the provisions of California Civil Code Section 1542, which states:

8             A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

           THAT THE CREDITOR OR RELEASING PARTY DOES NOT

9             KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT

           THE TIME OF EXECUTING THE RELEASE AND THAT, IF

10             KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

           AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

11             OR RELEASED PARTY.

12        35.     The Releasors, being aware of California Civil Code Section 1542, expressly

13  waive any rights they may have under that statute as well as under any other statute or common

14  law principles of similar effect with respect to the Released Claims. The Releasors acknowledge

15  that they may discover facts in addition to or different from those that they now know or believe

16  to be true with respect to the subject matter of the Released Claims, but that it is their legally

17  binding intention to finally and forever settle and release the Released Claims.

18  **VI.    APPROVAL, NOTICE, AND DISTRIBUTION PROCEDURES**

19        36.     <u>Jurisdiction and Venue</u>. The Parties agree that the Court has jurisdiction over the

20  Parties and the subject matter of this Action and that venue is proper. The administration and

21  consummation of the Settlement Agreement shall be under the authority of the Court, and the

22  Court shall retain exclusive jurisdiction for the purpose of entering orders relating to the

23  Settlement Agreement and enforcing the terms of the Settlement Agreement.

24        37.     <u>Motion for Preliminary Approval.</u> The Settlement Class Representatives shall

25  submit to the Court a motion seeking preliminary approval of the Settlement that will include this

26  Agreement and the Exhibit hereto (the "Preliminary Approval Motion"). The Settlement Class

27  Representatives shall request, among other things, that the Court: (1) find the proposed form of

28  and method for dissemination of the Notice valid, due, and sufficient notice that constitutes the

best notice practicable under the circumstances, and fully compliant with the requirements of Federal Rule of Civil Procedure 23; (2) approve distribution of the Notice according to the Notice Plan; (3) set a Final Approval Hearing for a date that is at least 96 days after the date that the Preliminary Approval Order is entered (if no opposition to the Motion for Preliminary Approval is submitted), or 124 days after the date that the Preliminary Approval Order is entered (if an opposition to the Motion for Preliminary Approval is submitted); and (4) set deadlines for Settlement Class Members to submit Opt-Out Statements or Notices of Objection, as provided in the Notice.

38.     Settlement Funding.  Within 10 business days after the Preliminary Approval Order, DNIC shall remit to the Settlement Administrator an amount sufficient to cover the anticipated cost of Notice, as set forth in the Settlement Administrator declaration.  This amount shall be an offset against the total Settlement Payment.  No later than 30 calendar days after entry of the Court's order granting final approval, DNIC shall pay (or shall cause to be paid) the remainder of the Settlement Payment into the Settlement Fund.

39.     Settlement Administrator.  The Settlement Administrator shall be responsible for the claims administration process including distribution of Notice, receipt of Opt-Out Statements or Notices of Objection, and eventual distribution of the Net Settlement Fund to Settlement Class Members pursuant to a Court-approved Distribution Plan.  Any fees and expenses of the Settlement Administrator shall be paid exclusively from the Settlement Fund.  In no event shall DNIC be separately responsible for any fees or expenses of the Settlement Administrator.

40.     Notice and Notice Plan.  The Parties agree to provide Notice of this Settlement to Settlement Class Members through the Notice attached as Exhibit 1.  The Settlement Administrator shall be responsible for disseminating the Notice to Settlement Class Members in two Phases (the "Notice Plan").

41.     Within 30 days after the Settlement is preliminarily approved (the "Notice Date"), the Settlement Administrator will commence Phase 1 of the Notice Plan.  Notice for Phase 1 will include publication of the Notice via online platforms (e.g., Google and YouTube), social media (e.g., Facebook and Instagram), and a press release distributed via *PR Newswire*'s US1 newswire

in California (collectively, the "Media Notice").  As part of Phase 1, the Settlement Administrator will also design, build, and maintain a case-specific website through which prospective Settlement Class Members and others can obtain information about the Action, view relevant Court documents, and register their contact information to receive future updates and notifications.  The Settlement Administrator will also host an automated telephone and email contact center to address questions from prospective Settlement Class Members and others.  Finally, as set forth below, the Settlement Administrator will receive and process any Opt-Out Statements or Notices of Objection, and will promptly inform the Parties of all that are received.

42.      After either additional settlements are reached, or the case is otherwise resolved, the Settlement Administrator will commence Phase 2 of the Notice Plan, as described below in connection with the Distribution Plan.

43.      Any material deviation from the Notice Plan must be approved by the Parties and the Court.  All costs associated with the Notice and Notice Plan, including the fees and costs of the Settlement Administrator, shall be paid from the Settlement Fund.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.

44.      Notices of Objection.  Any Settlement Class Member who wishes to object to the Settlement at the Final Approval Hearing must submit to the Settlement Administrator a written statement setting out the basis for the objection, with any supporting facts or law ("Notice of Objection").  To be valid, the Notice of Objection must contain the full name, address, and telephone number of the Settlement Class Member.  To be timely, the Notice of Objection must be received by the Settlement Administrator no later than 45 days after the Notice Date (the "Objection and Opt-Out Deadline").  Any Settlement Class Member who fails to submit a timely and valid Notice of Objection in the manner specified herein shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement (whether by appeal or otherwise).  Any objecting Settlement Class Member may withdraw her/their Notice of Objection at any time.

45.     The Settlement Administrator shall stamp any Notice of Objection with the date it was received, and shall send copies of each Notice of Objection to Settlement Class Counsel and DNIC's Counsel by email not later than 2 business days after receipt thereof.  The Settlement Administrator shall retain the stamped originals of all Notices of Objection until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

46.     Requests for Exclusion (Opt-Outs).  A Settlement Class Member may request exclusion from the Settlement by submitting to the Settlement Administrator a written statement to that effect ("Opt-Out Statement").  To be valid, the Opt-Out Statement must contain the full name, address, and telephone number of the Settlement Class Member who seeks to opt out.  To be timely, the Opt-Out Statement must be received by the Objection and Opt-Out Deadline.  No request for exclusion may be made on behalf of a group of Settlement Class Members.

47.     The Settlement Administrator shall stamp on any original Opt-Out Statement that it receives the date it was received, and shall serve copies of each Opt-Out Statement on Settlement Class Counsel and DNIC's Counsel by email no later than 2 business days after receipt thereof.  The Settlement Administrator shall retain the stamped originals of all Opt-Out Statements until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

48.     Within 5 days after the Objection and Opt-Out Deadline, the Settlement Administrator shall send to Settlement Class Counsel and DNIC's Counsel a final list of all Notices of Objection and Opt-Out Statements received by the Settlement Administrator.  The Settlement Administrator shall promptly advise Settlement Class Counsel and DNIC's Counsel of any Notices of Objection or Opt-Out Statements that are not timely received.

49.     At least 10 business days prior to the Final Approval Hearing, the Settlement Administrator will provide to Settlement Class Counsel and DNIC's Counsel a signed and notarized declaration: (i) describing the Settlement Administrator's diligent efforts to provide the Notice to Settlement Class Members; (ii) identifying the number of Notices of Objection and of Opt-Out Statements received by the Settlement Administrator; and (iii) attaching true and correct

copies of all such Notices of Objection and Opt-Out Statements.  Class Counsel will file the declaration with the Court at least 7 days prior to the Final Approval Hearing.

50.    <u>Motion for Final Approval and Entry of Final Judgment.</u>  If the Preliminary Approval Motion is granted, the Settlement Class Representatives shall file a motion seeking final approval of the Settlement 21 days before the date set for the Final Approval Hearing (the "Final Approval Motion").  The Final Approval Motion shall seek entry of a Final Approval Order:

    a.   certifying the Settlement Class, as defined in this Settlement Agreement, pursuant to Federal Rule of Civil Procedure 23, solely for the purposes of this Settlement;

    b.   fully and finally approving the Settlement Agreement and its terms as being fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation pursuant to its terms and conditions;

    c.   finding that the Notice given to the Class Members constituted the best notice practicable under the circumstances and complied in all respects with the requirements of Federal Rule of Civil Procedure 23 and due process;

    d.   directing that the Action be dismissed with prejudice as to DNIC (including Settlement Class Representatives' agreement not to challenge that dismissal with prejudice on appeal or in a collateral action) and, except as provided for herein, without costs;

    e.   discharging and releasing the Released Parties pursuant to the Release;

    f.   reserving continuing and exclusive jurisdiction and exclusive jurisdiction over the Settlement Agreement, including all future proceedings concerning the administration, consummation, and enforcement of the Settlement Agreement;

    g.   determining pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of a final judgment as to DNIC; and

    h.   containing such other and further provisions consistent with the terms of this Settlement Agreement to which the parties expressly consent in writing.

51.     The Settlement Class Representatives may file a reply brief 7 days prior to the date set for the Final Approval Hearing in further support of Final Approval of the Settlement and in response to any Notices of Objection submitted by Settlement Class Members.

52.     <u>Distribution of Settlement Fund.</u>  Allocation of the Net Settlement Fund to Participating Class Members will be made according to a Distribution Plan to be proposed by Settlement Class Counsel and approved by the Court.  This allocation shall be deferred until after either: (i) the entire case has been resolved through litigation; or (ii) sufficient additional funds have been added to the Settlement Fund, through future settlements with Non-Settling Defendants, to warrant a distribution.

53.     In advance of any distribution from the Net Settlement Fund, the Settlement Administrator will commence Phase 2 of the Notice Plan.  Phase 2 will be effectuated with another round of Media Notice, as well as direct mailing of 4.25" x 6" postcards to be approved by the Court (the "Notice Postcards").  Notice Postcards will be mailed to all Participating Settlement Class Members for whom the Parties possess valid mailing addresses through the transactional data produced in the Action.  Before the initial mailing of the Notice Postcards, the Settlement Administrator will run the addresses of all known intended recipients through the United States Postal Service ("USPS") National Change of Address ("NCOA") database.  Notice Postcards that are returned Undeliverable as Addressed ("UAA") with forwarding addresses provided by USPS will be processed, updated in a case-specific database, and re-mailed.  For Notice Postcards returned UAA by USPS without any forwarding addresses, the Settlement Administrator will attempt to obtain updated addresses using proprietary database resources to which it subscribes and, in instances where updated addresses are found, re-mail the Notice Postcards.  As part of Phase 2, the Settlement Administrator will continue to provide the above-noted case-specific website through which prospective Settlement Class Members and others can obtain information about the Action and view relevant Court documents.  At Phase 2, the website will be upgraded to allow submission of claims online.  The Settlement Administrator will also continue to provide the above-noted contact center, and to process all correspondence from prospective Settlement Class Members.

54.     In connection with Phase 2, Participating Settlement Class Members will receive a new settlement notice, to be approved by the Court, that will include:

    a.   All information in the Notice attached as Exhibit 1;

    b.   The current size of the Net Settlement Fund, including any interest accrued;

    c.   An estimate of individual Settlement Class Member payments;

    d.   Information about any request for (i) Settlement Class Counsel Attorneys' Fees and Litigation Expenses, or (ii) Service Awards;

    e.   Details regarding a renewed opportunity to submit Opt-Out Statements or Notices of Objection, including the deadlines for each; and

    f.   Instructions for submitting a claim on the Net Settlement Fund, including the deadline for same.

55.     The claims submission process shall be proposed by Settlement Class Counsel, approved by the Court, and overseen by the Settlement Administrator, as follows:  individuals will self-identify as Participating Settlement Class Members; be verified by the Settlement Administrator as Participating Settlement Class Members using transactional data already provided by DNIC and (as relevant) Lexon or Non-Settling Defendants; and after all timely claims have been processed, be awarded a share of the Net Settlement Fund in proportion to their share of the overall premiums charged to Participating Settlement Class Members who submitted valid claims.

56.     After all claims are received, and subject to Court approval, the Settlement Fund shall be applied as follows:

    a.   To pay all costs and expenses reasonably and actually incurred in providing Notice to the Settlement Class, or in soliciting claims and assisting with the filing and processing of claims, in connection with administering and distributing the Settlement Fund;

    a.   To pay any Settlement Class Counsel Attorneys' Fees and Litigation Expenses, subject to Court approval and in accordance with this Settlement Agreement;

b.   To pay any Service Award, subject to Court approval and in accordance with this Settlement Agreement; and

c.   To distribute the balance of the Settlement Fund to Participating Class Members, as per the Distribution Plan or other order of the Court.

57.   <u>No Liability for Distribution of Settlement Fund.</u>  Neither the Parties nor their counsel shall have any responsibility for, interest in or liability whatsoever with respect to distribution of the Settlement Fund; the Distribution Plan; the determination, administration, or calculation of claims; the Settlement Fund's qualification as a "Qualified Settlement Fund"; the payment or withholding of Taxes or Tax Expenses; or any losses incurred in connection with any such matters.  No Person shall have any claim against Settlement Class Counsel, DNIC's counsel, DNIC, or the Settlement Administrator based on the distributions made substantially in accordance with the Settlement contained herein, the Distribution Plan, or further orders of the Court.

58.   <u>Balance Remaining in Settlement Fund.</u>  If there is any balance remaining in the Settlement Fund (whether by reason of uncashed checks or otherwise), Settlement Class Counsel may reallocate such balance among Participating Class Members in an equitable and economic fashion or distribute the remaining funds to a Cy Pres Recipient, subject to Court approval.

59.   <u>Continued Litigation.</u>  Upon the Effective Date, should the Action be tried against any Defendant other than DNIC, the Parties agree that any findings therein shall not be binding on or admissible in evidence against DNIC or prejudice DNIC in any way in any future proceeding involving DNIC.

**VII.   ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

60.   Settlement Class Counsel may, at a time approved by the Court, petition the Court for an award of Settlement Class Counsel Attorneys' Fees in a total amount not to exceed one-third of the Total Settlement Amount, and for an award of Settlement Class Counsel Litigation Expenses reflecting their unreimbursed litigation costs to date.  The Settlement Administrator shall distribute the Class Counsel Attorneys' Fees and Litigation Expenses upon entry of an order by the Court awarding such amounts (the "Fee and Expense Award").  Settlement Class Counsel

1  will be issued an IRS Form 1099 for the Settlement Class Counsel Attorneys' Fees and Litigation

2  Expenses, and shall be solely and legally responsible for paying all applicable taxes on those

3  amounts.

4         61.    Settlement Class Counsel may, at a time approved by the Court, petition the Court

5  for approval of Service Awards up to $10,000 in connection with the DNIC Settlement to each of

6  the Settlement Class Representatives to be paid from the Total Settlement Amount for their

7  participation in the prosecution and settlement of this case.

8         62.    DNIC agrees not to oppose any application by Settlement Class Counsel for

9  Settlement Class Counsel Attorneys' Fees and Litigation Expenses, or for Service Awards for the

10  Settlement Class Representatives.  DNIC will not take a position on any application by Settlement

11  Class Counsel for Settlement Class Counsel Attorneys' Fees and Litigation Expenses, or for

12  Service Awards for the Settlement Class Representatives, or participate in the fee application and

13  review process unless so directed by the Court.

14         63.    Any amounts that are awarded by the Court for Settlement Class Counsel

15  Attorneys' Fees and Litigation Expenses or for Services Awards shall be paid from the Total

16  Settlement Amount consistent with the provisions of this Settlement Agreement.

17  **VIII.**    **TERMINATION**

18         64.    <u>Termination Events</u>.  Each of the Parties shall have the right to terminate this

19  Settlement Agreement if any of the following events occurs:

20          a.   The Court requires material alteration of any material provision of the Settlement

21              Agreement for the Settlement to be approved; or

22          b.   All conditions for the Effective Date do not occur.

23         If either of the foregoing enumerated events occurs, the Parties reserve the right to

24  mutually agree in writing to proceed with this Settlement Agreement.

25         65.    <u>Notice of Termination.</u>  A party shall provide written notice of an intent to

26  terminate this Agreement to counsel for the other party within thirty (30) calendar days after

27  receiving notice that any of the foregoing events of termination has occurred.

28

66.    <u>Effect of Termination.</u>  In the event that this Settlement Agreement is terminated, or fails to become effective for any reason whatsoever:

a.    the Parties shall be deemed to have reverted to their respective statuses as of the date and time immediately prior to the Execution Date, and they shall proceed in all respects as if this Settlement Agreement had never been executed or entered; and

b.    Settlement Class Counsel shall not in any way be responsible or liable for any administration expenses, taxes with respect to the Settlement Fund, or any expenses, including costs of Notice and administration associated with this Settlement Agreement.

c.    DNIC and DNIC's Counsel also shall not in any way be responsible or liable for any administration expenses, taxes with respect to the Settlement Fund, or any expenses, including costs of Notice and administration associated with this Settlement Agreement, beyond the costs of Notice as set forth above in paragraphs 28 and 38.

## IX.    OTHER PROVISIONS

67.    <u>Reasonable Best Efforts to Effectuate Settlement.</u>  The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Settlement Agreement.

68.    <u>Settlement Negotiations.</u>  The Parties agree that the Settlement Amount and other terms of this Settlement Agreement were negotiated at arm's length and in good faith, and reflect that the Settlement was voluntarily reached after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strength and weaknesses of their respective clients' claims or defenses. The Parties have participated jointly in the negotiation and drafting of this Settlement Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Settlement Agreement shall be construed as jointly drafted by the Parties

hereto and no presumption or burden of proof shall arise favoring or disfavoring any Party hereto by virtue of the authorship of any provision of this Settlement Agreement.

69.     No Admission of Liability.  This Settlement Agreement is not intended to and does not constitute an admission by any Party as to the merits, validity, or accuracy of any of the allegations, claims, defenses, or affirmative defenses of any Party in this Action or in any action or proceeding of any kind.  The Settlement Class Representatives, on behalf of themselves and the Settlement Class Members they represent, continue to assert the merits and validity of their claims.  DNIC continues to deny the allegations made in this Action, that it engaged in any wrongdoing or breached any law, regulation, or duty, or that it is liable to anyone with respect to the alleged facts and claims asserted in this Action.  By entering into this Settlement Agreement, DNIC does not admit or concede, expressly or impliedly, any claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief, and any other forms of relief, as well as the class or other allegations asserted in the Action.

70.     Notices to Counsel.  All notices to counsel required or desired to be given under this Settlement Agreement shall be in writing and sent via email to counsel for the respective Parties.  Specifically, such notices shall be emailed to Dean Harvey, Michelle Lamy, Miriam Marks, and Devin Williams of Lieff Cabraser Heimann & Bernstein, LLP for the Settlement Class and Settlement Class Representatives, and to Michael Murphy, John Hamill, Michael Pullos, and Julie Cooker of DLA Piper LLP (US) for DNIC, at their respective email addresses set forth below.

71.     Materiality.  Except as otherwise stated herein, each substantive term of this Agreement is material and has been relied upon by the Parties in entering into this Agreement.

72.     Interpretation.  Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

73.     Integration.  This Settlement Agreement and the Exhibit attached hereto contain the entire agreement between the Parties relating to any and all matters addressed in the Settlement Agreement, and all prior or contemporaneous agreements, understandings,

representations, and statements, whether oral or written and whether by a Party or a Party's legal counsel, with respect to such matters are of no force or effect.

**Approved as to Form and Content by Counsel**:

Dated: April 25, 2024                    By: _____
                                              Dean M. Harvey

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Dean M. Harvey (dharvey@lchb.com)
Michelle A. Lamy (mlamy@lchb.com)
Miriam E. Marks (mmarks@lchb.com)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Counsel for Settlement Class Representatives and the Proposed Settlement Class*

Dated:   4/25/2024          By: _____
                                National American Insurance Company of
                                California on behalf of Danielson National Insurance
                                Company


                            By: _____
                                Michael Murphy

                            **DLA Piper LLP (US)**
                            MICHAEL P. MURPHY (*pro hac vice*)
                            *michael.murphy@us.dlapiper.com*
                            1251 Avenue of the Americas
                            New York, New York 10020-1104
                            Tel:    212.335.4500
                            Fax:    212.335.4501

                            JOHN J. HAMILL (*pro hac vice*)
                            *john.hamill@us.dlapiper.com*
                            MICHAEL S. PULLOS (*pro hac vice*)
                            *michael.pullos@us.dlapiper.com*
                            444 West Lake Street, Suite 900
                            Chicago, Illinois 60606-0089
                            Tel:    312.368.7036
                            Fax:    312.251.5809

                            JULIE GRYCE COOKER (SBN 319530)
                            *julie.cooker@us.dlapiper.com*
                            4365 Executive Drive, Suite 1100
                            San Diego, California 92121-2133
                            Tel:    619.699.2700
                            Fax:    619.699.2701

                            *Counsel for Danielson National Insurance Company*

Dated: April 25, 2024

By: _____
National American Insurance Company of
California on behalf of Danielson National Insurance
Company

By: _____
Michael Murphy

**DLA Piper LLP (US)**
MICHAEL P. MURPHY (*pro hac vice*)
*michael.murphy@us.dlapiper.com*
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:    212.335.4500
Fax:    212.335.4501

JOHN J. HAMILL (*pro hac vice*)
*john.hamill@us.dlapiper.com*
MICHAEL S. PULLOS (*pro hac vice*)
*michael.pullos@us.dlapiper.com*
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Tel:    312.368.7036
Fax:    312.251.5809

JULIE GRYCE COOKER (SBN 319530)
*julie.cooker@us.dlapiper.com*
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Tel:    619.699.2700
Fax:    619.699.2701

*Counsel for Danielson National Insurance Company*

# EXHIBIT 1



United States District Court

*In re California Bail Bond Antitrust Litigation*

Case No. 4:19-CV-00717-JST

# Class Action Notice

## *Authorized by the U.S. District Court*

| | | |
|---|---|---|
| **Did you pay some or all of a premium (or fee) on a bail bond in a California court case?** | **There are Settlements of a lawsuit totaling $3 million.**<br><br>**You may be entitled to money.** | **To be part of the Settlements, you should:**<br><br>**Read this Notice.**<br><br>**Respond by [DATE].** |

Important things to know:

- If you take no action, you will still be bound by the Settlements, and your rights will be affected.

- You can learn more at: [WEBSITE].

| WHAT THIS NOTICE CONTAINS |
|---|

**WHAT DO I DO NEXT?** ..................................................................................................... 3

    **1. What are the most important dates?** .......................................................... 3

    **2. What are my options?** ................................................................................... 3

**WHAT IS THIS CASE ABOUT?** ................................................................................... 4

    **3. Why did I get this Notice?** ............................................................................ 4

    **4. What is this lawsuit about?** .......................................................................... 4

    **5. Who are the Defendants?** ............................................................................ 4

    **6. What is a class action?** ................................................................................ 5

    **7. Why are there Settlements but the lawsuit is continuing?** ..................... 5

**WHO IS IN THE SETTLEMENTS?** .............................................................................. 5

    **8. How do I know if I am part of the Settlements?** ........................................ 5

    **9. Who is not included in the Settlement Class?** .......................................... 6

**WHAT DO THE SETTLEMENTS PROVIDE?** .............................................................. 6

    **10. What do the Settlements provide?** ............................................................ 6

    **11. Can I receive any money from the Settlements?** ..................................... 7

    **12. What are the Released Claims?** ................................................................. 7

**DO THE LAWYERS REPRESENT ME?** ...................................................................... 7

    **13. Do I have a lawyer in the case?** ................................................................ 7

    **14. Should I get my own lawyer?** .................................................................... 8

    **15. How will the lawyers be paid?** .................................................................. 8

**DO I NEED TO ACT?** ................................................................................................... 8

    **16. What happens if I do nothing at all?** ........................................................ 8

    **17. How do I weigh my options?** ..................................................................... 8

**WHAT DOES IT MEAN TO EXCLUDE MYSELF FROM THE SETTLEMENTS?** ................... 9

    **18. How do I exclude myself from the Settlements?** ..................................... 9

    **19. If I do not exclude myself, can I sue Lexon or DNIC for the same thing later?** ... 10

    **20. If I exclude myself, can I still get a payment?** ...................................... 10

**WHAT DOES IT MEAN TO OBJECT TO THE SETTLEMENTS?** ......................................... 11

    **21. How do I tell the Court if I do not like the Settlements?** ....................... 11

    **22. What is the difference between objecting and asking to be excluded?** ............. 12

**WHAT IS THE FINAL APPROVAL HEARING?**.....................................................................12

    **23. When is the Court's Final Approval Hearing?**.........................................12

    **24. Do I have to attend the Final Approval Hearing?**.....................................13

    **25. May I speak at the hearing?**.....................................................................13

**HOW DO I GET MORE INFORMATION?**.............................................................................13

## WHAT DO I DO NEXT?

### 1. What are the most important dates?

Your deadline to object or opt out: **[DATE]**

Settlement approval hearing: **[DATE]**

### 2. What are my options?

| | |
|---|---|
| **DO NOTHING** | Unless you exclude yourself, you automatically stay part of the Settlements.[1] If you do nothing, you will give up the right to sue, continue to sue, or be part of another lawsuit against Lexon or DNIC related to the legal claims resolved by the Settlements. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | You can choose to ask to be excluded from the Settlements by **[DATE]**. This option allows you to sue, continue to sue, or be part of another lawsuit against Lexon or Danielson National Insurance Company ("DNIC") related to the legal claims resolved by this Settlements. You will not get a payment from the Settlements. |
| **OBJECT TO THE SETTLEMENTS AND/OR GO TO A HEARING** | If you do not exclude yourself from the Settlements, you may object to it in writing and explain why you do not like the Settlements by **[DATE]**. If you object to the Settlements, you may also ask the Court for permission to speak at the Final Approval Hearing about your objection. |
| **REGISTER ON THE WEBSITE** | The best way to receive updates about the lawsuit and notice about how to file a claim in the future. |

---

[1] All terms capitalized in this Notice, including the names of the Parties, have the same meaning as in the Settlement Agreements, which can be viewed at **[WEBSITE]**.

3

## WHAT IS THIS CASE ABOUT?

### 3. Why did I get this Notice?

A federal court authorized this Notice because you have a right to know about proposed Settlements in this class action lawsuit and about all your options before the Court decides whether to approve the Settlements. This Notice explains the lawsuit, your legal rights, and the proposed Settlements. Your legal rights are affected whether you act or not.

Judge Jon S. Tigar of the United States District Court for the Northern District of California is overseeing this case. This lawsuit is called *In re: California Bail Bonds Antitrust Litigation*, No. 4:19-CV-00717-JST. The people who sued are called the "Plaintiffs."  The companies they sued are called the "Defendants." Lexon and DNIC are two of the Defendants.

### 4. What is this lawsuit about?

This lawsuit says there was a price-fixing conspiracy that made bail bonds prices higher in California. It claims that "sureties" (or the companies that back the bonds sold by retail bond agents) decided to charge a standard price of 10% of the bond amount and worked together to prevent agents from charging less than that amount. It says that customers paid more for their bail bonds than they should have, and customers were misled to believe they could not negotiate or ask for lower bail bond prices. However, in California, the law says bail bond agents can offer their customers a lower price.  Defendants have denied the claims in this lawsuit.  The Court has not yet decided who is right.

### 5. Who are the Defendants?

There are 20 surety-Defendants in this lawsuit, and 1 individual who worked as a senior executive at a surety Defendant. The Settlements would resolve class claims against only Settling Defendants Lexon and DNIC. Lexon exited the California bail bond business in 2014 and denies the claims in this lawsuit and that it did anything wrong.  DNIC exited the bail bond business in 2012 and denies the claims in this lawsuit and that it did anything wrong.

The lawsuit will continue against the remaining Defendants who have not settled ("Non-Settling Defendants"). A full list of Non-Settling Defendants is available at the website [WEBSITE].

4

## 6. What is a class action?

In a class action, one or more people called "class representatives" sue on behalf of themselves and other people with similar legal claims. Together, the people included in the class action are called a "class" or "class members." One court resolves the lawsuit for all class members, except for those who exclude themselves from the class. In these Settlements, the Settlement Class Representatives are Shonetta Crain and Kira Monterrey.

## 7. Why are there Settlements but the lawsuit is continuing?

Settlements have been reached with only Settling Defendants Lexon and DNIC. The Court did not decide in favor of Plaintiffs or the Settling Defendants. Lexon and DNIC deny all claims that they broke any law or did anything wrong. Settlements avoid the costs and uncertainty of a trial, and Settlement Class Members receive the benefits described in this Notice. The Settlement Class Representatives and their attorneys think the Settlements are best for all Settlement Class Members.

The lawsuit will continue against the remaining Non-Settling Defendants. Additional money may become available in the future as a result of a trial or future settlements. Alternatively, this case may be decided in favor of the Non-Settling Defendants and no additional money may become available. There is no guarantee as to what will happen.

## WHO IS IN THE SETTLEMENTS?

## 8. How do I know if I am part of the Settlements?

You are part of the Settlements if you are in the Settlement Class. The Court decided that the Settlement Class includes:

All persons who, between February 24, 2004 and April 25, 2024 paid for part or all of a commercial bail bond premium in connection with a California state court criminal proceeding.

**9. Who is not included in the Settlement Class?**

The Settlement Class does not include:
- Any of the Defendants in this case;
- Officers, directors, or employees of any Defendant;
- Any entity in which any Defendant has a controlling interest;
- Any affiliate, legal representative, heir, or assign of any Defendant and any person acting on their behalf;
- Any person who acted as a bail agent between February 24, 2004 and April 25, 2024;
- Any judge or judicial officer presiding over this case and the members of his/her immediate family and judicial staff; and
- Any juror assigned to this case.

If you are not sure whether you are included in the Settlement Class, or have any other questions about the Settlements, visit [WEBSITE], write with questions to [EMAIL], or call the Settlement Administrator at [NUMBER].

## WHAT DO THE SETTLEMENTS PROVIDE?

**10. What do the Settlements provide?**

If the Settlements are approved, a $3 million Settlement Fund will be created, consisting of $1 million from the Lexon Settlement and $2 million from the DNIC Settlement. The Settlement Fund will be used in the future to pay Settlement Class Members, an award of reasonable attorneys' fees and litigation costs, and service awards for the Settlement Class Representatives. The Settlement Fund will also pay notice and administration costs for the Settlements.

Under this Settlements, Lexon and DNIC (to the extent that it engages in the bail bond business) will also agree, moving forward: (1) not to coordinate with competitors about bail bond prices in California, including premium rates; (2) to require its bail agents in California to tell potential customers that by law they are allowed to negotiate bail bond prices, and specifically: "A bail agent may choose to negotiate a lower fee by rebating, as allowed by Proposition 103."; and (3) to require this information be included in a way that is prominent and visible wherever Lexon's or DNIC's bail bond agents represent or say that they must charge filed rates.

More details are available in the Settlement Agreements, available at [WEBSITE].

## 11. Can I receive any money from the Settlements?

Not at this time. No money is being distributed at this time. It is currently unknown how much each Settlement Class Member may receive. A distribution plan will be prepared later if there are additional settlements or judgments or when the lawsuit is resolved. The Plaintiffs and Settling Defendants have agreed to wait to make any payments from the Settlement Fund until after either: (1) the entire lawsuit has been resolved through litigation, or (2) enough additional funds are added to the Settlement Fund from future settlements with Non-Settling Defendants that the Settlement Funds should be distributed. In the meantime, the Settlement Fund will remain in an interest-bearing escrow account.

A second notice about the claims process, including any deadlines, will happen at a later date.  To get updates about this lawsuit and any future settlements or claims process, you should register at [WEBSITE].

## 12. What are the Released Claims?

If you do not exclude yourself from the Settlement Class, you will give up your right to sue Lexon or DNIC for the legal claims in this lawsuit. The entire Complaint is available at [WEBSITE].The legal claims you are giving up are called "Released Claims," and they are defined in the Settlement Agreements. If the Settlements become final, the "Released Claims" means that you can never sue or be part of any other lawsuit against the Settling Defendants or try to get additional money from the Settling Defendants about the issues in this case, even if you are not aware of those claims now. That means you will be bound to the terms of the Settlements and any related Court orders or decisions.

The Settlement Agreements describe the Released Claims in detail, so read them carefully.  If you have any questions, you can talk to the lawyers listed in Question 11 for free, or you can talk to your own lawyer if you have questions about what this means.

## DO THE LAWYERS REPRESENT ME?

## 13. Do I have a lawyer in the case?

Yes. The Court has appointed Dean M. Harvey of Lieff Cabraser Heimann & Bernstein, LLP to represent the Settlement Class as Settlement Class Counsel. You will not be charged for his services or for contacting him. If you have any questions about the case, you may call [NUMBER] or email [EMAIL].

## 14. Should I get my own lawyer?

You do not need to hire your own lawyer because Settlement Class Counsel works for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 15. How will the lawyers be paid?

At a later date, Settlement Class Counsel will ask the Court for attorneys' fees of up to one-third of the Settlement Fund and litigation costs. They will also ask the Court for a service award for each of the Settlement Class Representatives for up to $10,000 each in connection with the Settlements. If approved, these fees, costs, and awards will be paid from the Settlement Fund.

Settlement Class Counsel is not asking the Court for these fees, costs, and awards at this time and will wait until after either: (1) the entire lawsuit has been resolved through litigation, or (2) enough additional funds are added to the Settlement Fund from future settlements with Non-Settling Defendants that the Settlement Funds should be distributed.

## Do I Need to Act?

## 16. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will give up the right to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against the Settling Defendants about the legal issues resolved by the Settlements.

## 17. How do I weigh my options?

You have four options. You can stay in the Settlements and eventually submit a claim, you can opt out of the Settlements, you can object to the Settlements, or you can do nothing. This chart shows the effects of each option:

|  | Submit a Claim | Opt out | Object | Do Nothing |
|---|---|---|---|---|
| **Can I receive settlement money if I . . .** | YES | NO | YES | NO |
| **Am I bound by the terms of this lawsuit if I . . .** | YES | NO | YES | YES |

|  | Submit a Claim | Opt out | Object | Do Nothing |
|---|---|---|---|---|
| **Can I pursue my own case if I . . .** | NO | YES | NO | NO |
| **Will the class lawyers represent me if I . . .** | YES | NO | NO | YES |

Choose the best path for you:



---

**WHAT DOES IT MEAN TO EXCLUDE MYSELF FROM THE SETTLEMENTS?**

---

**18. How do I exclude myself from the Settlements?**

If you want to keep your right to separately sue Lexon or DNIC about the legal issues in this case, you must take steps to get out of the Settlements. This is called excluding yourself, or sometimes it is referred to as "opting out" of the Settlement Class. The deadline to exclude yourself from the Settlements is [DATE].

To exclude yourself from the Settlements, you must send a complete and signed letter or written document called an "Opt-Out Statement" to the

Settlement Administrator.  If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement Class or the Settlements.

Your Opt-Out Statement must include:

> 1) The case name and number—*In re: California Bail Bonds Antitrust Litigation*, No. 4:19-CV-00717;
>
> 2) Your name, mailing address, email address, and telephone number;
>
> 3) Your physical signature (you must personally sign the statement);
>
> 4) A statement that clearly says you want to be excluded from the Lexon Settlement, the DNIC Settlement, or both Settlements; and
>
> 5) A statement that you, between February 24, 2004 and April 25, 2024, paid for part or all of a commercial bail bond premium for a California state court criminal proceeding.

Your Opt-Out Statement must be sent (in writing) by email or mail to the Settlement Administrator.

If you email your Opt-Out Statement, you must attach your Opt-Out Statement as an attachment to the email, as it must contain your physical signature. If you send your Opt-Out Statement in the body of the email, it will not be considered valid because it does not have your physical signature. If you send your Opt-Out Statement by email, it must be submitted, no later than 11:59 p.m. PST on or before [DATE], to the following email address: [EMAIL].

If you mail your Opt-Out Statement, it must be postmarked no later than [DATE] and sent to the following mailing address: [ADDRESS]

### 19. If I do not exclude myself, can I sue Lexon or DNIC for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Lexon or DNIC for the claims the Settlements resolve.

### 20. If I exclude myself, can I still get a payment?

No. If you exclude yourself from this Settlement Class, you cannot make a claim for any money from the Settlements.

If there are future settlements in this lawsuit, you may be able to exclude yourself from some settlements but remain in others. If money is distributed to

Class Members, you will not be able to get money from any settlement or settlement(s) from which you excluded yourself. However, you may be able to get money from any settlements in which you remain. There is no guarantee that there will be other settlements in this case.

| WHAT DOES IT MEAN TO OBJECT TO THE SETTLEMENTS? |
|---|

| **21. How do I tell the Court if I do not like the Settlements?** |
|---|

If you are a Settlement Class Member, you can object to approval of the Settlements or any part of them. You can give reasons why you think the Court should not approve the Settlements. The Court will consider your views.

You cannot ask the Court to order different settlements; the Court can only approve or deny the Settlements. If the Court does not approve the Settlements, no Settlement payments will be made, now or in the future, and the Settling Defendants will not be required to make any changes to their practices.

To object to the Settlements, you must submit a complete and signed letter or written document called a "Notice of Objection" to the Settlement Administrator. Your Notice of Objection must include:

1) The case name and number—*In re: California Bail Bonds Antitrust Litigation*, No. 4:19-CV-00717;

2) Your name, mailing address, email address, and telephone number;

3) Your physical signature (you must personally sign the letter);

4) A statement that you, between February 24, 2004 and April 25, 2024, paid for part or all of a commercial bail bond premium for a California state court criminal proceeding;

5) A statement that says whether your objection applies only to you (the objector), part of the Settlement Class, or the entire Settlement Class;

6) A statement that says whether your objection applies only to the Lexon Settlement, the DNIC Settlement, or both;

7) A statement with the reasons for your objection, including any documents, legal and factual support, and/or any supporting evidence; and

8) A statement of whether you (or your lawyer) intend to appear at the Final Approval Hearing.

Your Notice of Objection must be sent (in writing) by email or mail to the Settlement Administrator.

If you email your Notice of Objection, you must attach your Notice of Objection as an attachment to the email and it must contain your physical signature. If you send your objection in the body of the email, it will not be considered valid because it does not have your physical signature. If you send your Notice of Objection by email, it must be submitted no later than 11:59 p.m. PST on or before [DATE], and to the following email address: [EMAIL]

If you mail your Notice of Objection, it must be postmarked no later than [DATE], and sent to the following mailing address: [ADDRESS]

You or your lawyer may be permitted to speak at the Final Approval Hearing about your objection. To do so, you must include a statement in your Notice of Objection stating that you or your lawyer intend to appear at the Final Approval Hearing, and provide a detailed description of any evidence you may offer at the Final Approval Hearing and copies of any exhibits you may introduce at the Final Approval Hearing.

| **22. What is the difference between objecting and asking to be excluded?** |
| --- |

Objecting is telling the Court that you do not like something about the Settlements. You can object to the Settlements only if you do not exclude yourself from the Settlements. Excluding yourself from the Settlements is stating to the Court that you do not want to be part of the Settlement Class or the Settlements. If you exclude yourself from the Settlements, you cannot object to them because they no longer affect you.

| **WHAT IS THE FINAL APPROVAL HEARING?** |
| --- |

| **23. When is the Court's Final Approval Hearing?** |
| --- |

The Court has scheduled a Final Approval Hearing at [TIME] PST on [DATE]. If the hearing is in person, it will be held at the Oakland Courthouse, Courtroom 6 – 2nd Floor, 1301 Clay Street, Oakland, CA 94612.

The date or time of the Final Approval Hearing may change. Please check the Settlement Website, [WEBSITE], to confirm the date has not changed. You may also visit this website for any updates and to find out whether the Final Approval Hearing will be held in person or by video conference.

At the Final Approval Hearing, the Court will consider whether the Settlements are fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Tigar will listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlements.

## 24. Do I have to attend the Final Approval Hearing?

No. Settlement Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you submit a Notice of Objection, you do not have to attend the Final Approval Hearing to talk about it. If you submit your Notice of Objection on time, then the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

## 25. May I speak at the hearing?

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include this request with your objection as described in Question 18.

## HOW DO I GET MORE INFORMATION?

This Notice is only a summary of the proposed Settlements. Complete details are in the Settlement Agreements. The Settlement Agreements and other case documents are available at the Settlement Website, [WEBSITE].  The Website also contains instructions on how to access the case docket via PACER or in person at any of the court's locations.

**You may also contact the Settlement Administrator by email, phone, or mail:**

Email: [EMAIL]
Toll-Free: [NUMBER]
Mail: [ADDRESS]

You should also register at the website to be directly notified of any future settlements and other updates about this case.

**PLEASE DO NOT TELEPHONE OR DIRECTLY CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT PROCESS.**