# EXHIBIT A

# LIEFF CABRASER FIRM RESUME

## Lieff Cabraser Heimann & Bernstein, LLP

Lieff Cabraser Heimann & Bernstein, LLP is a 125+ attorney AV-rated law firm founded in 1972 with offices in San Francisco, New York, Nashville, and Munich. We have a diversified practice successfully representing plaintiffs throughout the U.S. and Europe in the fields of antitrust, civil rights and social justice, consumer protection, cybersecurity and data privacy, economic injury product defects, employment discrimination and unfair employment practices, environmental and toxic exposures, False Claims Act, personal injury and products liability, securities and financial fraud, and survivor rights and advocacy. Our clients include individuals, classes, groups of people, businesses, and public and private entities.

Lieff Cabraser has served as Court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States. The Firm has, often with co-counsel, represented clients from across the globe in cases filed in American courts and in foreign jurisdictions.

This Firm Resume summarizes Lieff Cabraser's extensive and varied cases, including past successes and active matters; identifies the Firm's lawyers with links to their full biographies; and describes the Firm's community and legal organization engagement.

SAN FRANCISCO
NEW YORK
NASHVILLE
MUNICH
**lieffcabraser.com**

**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

# LIEFF CABRASER FIRM RESUME

## Table of Contents

**CASE PROFILES**

I.     Antitrust

II.    Civil Rights and Social Justice

III.   Consumer Protection

IV.   Cybersecurity and Data Privacy

V.    Economic Injury Product Defect

VI.   Employment Discrimination and
       Unfair Employment Practices

VII.  Environmental and Toxic Exposures

VIII. False Claims Act

IX.   Personal Injury and Products Liability

X.    Securities Fraud and Financial Fraud

XI.   Survivor Rights and Advocacy

**LAWYER PROFILES**

**LIEFF CABRASER IN THE COMMUNITY**

# ANTITRUST

At the forefront of innovative and landmark cases promoting fair competition in the marketplace, Lieff Cabraser assists companies, governments, and consumers affected by anticompetitive conduct by assessing market circumstances and advising whether and how to pursue legal action. When we do advise litigation, our track record reflects remarkable successes for our clients.

## Representative Current Cases



### ELECTRICAL MEDICAL TRUST ET AL. V. U.S. ANESTHESIA PARTNERS ET AL.

Lieff Cabraser represents self-funded insurers who allege a multi-year scheme by private equity groups U.S. Anesthesia Partners, Inc. and Welsh, Carson, Anderson & Stowe to monopolize hospital anesthesia services in Texas, drive up prices, and increase profits. Filed in November 2023, the class action complaint alleges that defendants pursued an "aggressive 'buy and build' consolidation strategy" to increase negotiating leverage with commercial payors and increase prices for anesthesia services without improving the efficiency or quality of healthcare. Plaintiffs seek to vindicate their rights under the federal antitrust laws and restore competition for anesthesiology services.

### DALE, ET AL. V. DEUTSCHE TELEKOM AG, T-MOBILE US, INC., AND SOFTBANK GROUP CORP., NO. 1:22-CV-03189 (N.D. ILL.)

In June 2022, Lieff Cabraser and co-counsel filed a federal class action complaint against Deutsche Telekom, T-Mobile, and Softbank Group challenging the merger of T-Mobile and Sprint, a merger that reduced the overall number of mobile carriers in the U.S. from four to three and thereby removed all meaningful incentives for competition between the three remaining behemoths: the new T-Mobile, AT&T, and Verizon. As a result, small businesses and consumers in the United States who subscribe to national retail mobile wireless carriers, including AT&T and Verizon customers, have paid and continue to pay billions more for wireless service than they would have.

The lawsuit seeks the restoration of competition in one of the world's largest and most concentrated markets. Every consumer and small business in the U.S. market is paying the price of this monstrously anticompetitive merger,

including AT&T and Verizon customers who no longer face any pricing challenges from the former mavericks of the telecom space.

The case follows two prior pre-merger attempts to stop the deal by the United States Department of Justice and a lawsuit by ten states. In both instances, T-Mobile made commitments to government regulators and a federal district court to continue to fiercely compete and at the same time help DISH emerge as a strong fourth competitor to replace Sprint. Neither promise was fulfilled.

In bringing this action, AT&T and Verizon subscribers seek to vindicate their rights under the antitrust laws for all nationwide wireless plan subscribers on AT&T or Verizon's network; they seek to undo the merger, create the viable fourth competitor that was promised, and recover damages for the overcharges sustained in the interim.

### REALPAGE RESIDENTIAL LEASE PRICE-FIXING

Lieff Cabraser represents lessees nationwide who allege they have overpaid for rent as a result of a cartel among the largest owners of multifamily residential real estate. The class action suit, filed in October 2022, alleges that these lessors used a common third party (RealPage) to collect and fix rent amounts, increasing rents above competitive levels. RealPage touts that it sets pricing for Lessors' properties "as though we own them ourselves" — in other words, as plaintiffs detail in their complaint, the participating Lessors' cartel replicates the market outcomes one would observe if they were a monopolist of residential leases (which is the goal of any cartel).



### IN RE LITHIUM-ION BATTERIES ANTITRUST LITIGATION, MDL NO. 2420 (N.D. CAL.)

Lieff Cabraser serves as Co-Lead Counsel representing indirect purchasers in a class

action filed against LG, GS Yuasa, NEC, Sony, Sanyo, Panasonic, Hitachi, LG Chem, Samsung, Toshiba, and Sanyo for allegedly conspiring to fix and raise the prices of lithium-ion rechargeable batteries from 2002 to 2011. The defendants are the world's leading manufacturers of lithium-ion rechargeable batteries, which provide power for a wide variety of consumer electronic products.

As a result of the defendants' alleged anticompetitive and unlawful conduct, consumers across the U.S. paid artificially inflated prices for lithium-ion rechargeable batteries. Lieff Cabraser and co-counsel have reached settlements totaling $113.45 million with all defendants.



### IN RE TELESCOPES ANTITRUST LITIGATION, NO. 5:20-CV-03639-EJD (N.D. CAL.)

We serve as Interim Lead Counsel for indirect purchasers of amateur telescopes who allege an illegal price-fixing and market allocation scheme intended to monopolize the consumer telescope manufacture and distribution markets. As a result of this conduct, purchasers of consumer telescopes have been illegally overcharged hundreds of millions of dollars for telescopes since at least 2005. As the class action complaint alleges, manufacturers Synta and Ningbo Sunny leveraged their 80% share of the U.S. telescope market to improperly set prices and monopolize the consumer telescope market in violation of antitrust law.



### IN RE MISSION HEALTH ANTITRUST LITIGATION, NO. 1:22-CV-00114-MR-WCM (W.D. N.C.)

Lieff Cabraser and co-counsel represent consumer plaintiffs in litigation against HCA Healthcare/Mission Health alleging the hospital giant is abusing its market power to prevent insurers from offering patients financial incentives to use lower cost or higher quality services offered by competitors. As described in detail in the class action complaint, HCA Healthcare and Mission Health have restricted competition in their respective health care markets, substantially and artificially inflating health care prices paid by plaintiffs and the proposed class member health plans. The lawsuit alleges that Mission Health's illegal practices have allowed it to reduce competition and keep its reimbursement rates to insurers higher than they otherwise would be, causing patients to pay significantly more for insurance as a result. The case against Mission Health is proceeding.

### IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION, MDL NO. 2724 (E.D. PA.)

Beginning in February 2015, Lieff Cabraser conducted an extensive investigation into dramatic price increases of certain generic prescription drugs. Lieff Cabraser worked alongside economists and industry experts and interviewed industry participants to evaluate possible misconduct. In December of 2016, Lieff Cabraser, with co-counsel, filed the first case alleging price-fixing of Levothyroxine, the primary treatment for hypothyroidism, among the most widely prescribed drugs in the world. Lieff Cabraser also played a significant role in similar litigation over the drugs Propranolol and Clomipramine. These, and other similar cases, were consolidated and transferred to the Eastern District of Pennsylvania as *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724. Lieff Cabraser is a member of the End-Payer Plaintiffs' Steering Committee.



### IN RE CALIFORNIA BAIL BOND ANTITRUST LITIG., 3:19-CV-00717-JST (N.D. CAL.)

Lieff Cabraser serves as Interim Lead Class Counsel for a proposed class of purchasers of bail bonds in California. This first-of-its-kind class action antitrust case brought by Lieff Cabraser and leading non-profit worker rights organizations alleges that California insurance companies, sureties and bail agents have conspired to unlawfully inflate California bail bond premiums since 2004. We represent the California plaintiffs alleging illegal price-fixing and collusion agreements to eliminate competitive pricing to consumers. Plaintiffs have successfully overcome the preponderance of defendants' claims of immunity, and have shown sufficient facts of a plausible antitrust conspiracy, reinforcing the principle that antitrust laws can significantly impact intentional inequities and advance the cause of economic justice. In November 2022, the Court denied defendants' motion to dismiss claims from the suit. The litigation is ongoing.

***IN RE CAPACITORS ANTITRUST LITIGATION,*** NO. 3:14-CV-03264 (N.D. CAL.)

Lieff Cabraser is a member of the Plaintiffs' Steering Committee representing indirect purchasers in an electrolytic and film price-fixing class action lawsuit filed against the world's largest manufacturers of capacitors, used to store and regulate current in electronic circuits and computers, phones, appliances, and cameras worldwide. Lieff Cabraser has played a central role in discovery efforts, and assisted in opposing defendants' motions to dismiss and in opposing defendants' motions for summary judgment. Settlements with defendants NEC Tokin Corp., Nitsuko Electronics Corp., and Okaya Electric Industries Co., Ltd. have received final approval, and a settlement with Hitachi Chemical and Soshin Electric Co., Ltd. has received preliminary approval. Discovery continues with respect to the remaining defendants.



***IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION,*** 1:15-MC-01404 (DISTRICT OF COLUMBIA)

Lieff Cabraser represents consumers in a class action lawsuit against the four largest U.S. airline carriers: American Airlines, Delta Air, Southwest, and United. These airlines collectively account for over 80 percent of all domestic airline travel. The complaint alleges that for years the airlines colluded to restrain capacity, eliminate competition in the market, and increase the price of domestic airline airfares in violation of U.S. antitrust law. The proposed class consists of all persons and entities who purchased domestic airline tickets directly from one or more defendants from July 2, 2011 to the present. In February 2016, Judge Kollar-Kotelly appointed Lieff Cabraser to the three-member Plaintiffs' Executive Committee overseeing this multidistrict airline price-fixing litigation. Defendants filed a motion to dismiss, which was denied in October 2016. Subsequently, a settlement with Southwest Airlines was granted preliminary approval. Litigation continues as to the remaining defendants.

***INTERNATIONAL ANTITRUST CASES***

Lieff Cabraser has significant experience and expertise in antitrust litigation in Europe. Lieff Cabraser partner Dr. Katharina Kolb, head of the firm's Munich office, has experience in all aspects of German and European competition law, particularly antitrust litigation matters following anti-competitive behavior established by European competition authorities including German Federal Cartel Office and the European Commission.

Currently, one of the firm's major international antitrust cases involves the European truck cartel, which the European Commission fined more than €3.8 billion for colluding on prices and emissions technologies for more than 14 years. Lieff Cabraser is working with a range of funders to prosecute the claims of persons damaged by the European truck cartel, including many municipalities in Europe which purchased trucks for street cleaning, fire brigades, waste disposal, and other purposes.

Lieff Cabraser is also prosecuting other cartel damages cases in the EU, including the German quarto steel cartel, the German plant pesticides cartel, and the French meal voucher cartel, each of which have likely caused significant damages to customers.



***SCHWAB SHORT-TERM BOND MARKET FUND, ET AL. V. BANK OF AMERICA CORP., ET AL.,*** NO. 11 CV 6409 (S.D.N.Y.); ***CHARLES SCHWAB BANK, N.A., ET AL. V. BANK OF AMERICA CORP., ET AL.,*** NO. 11 CV 6411 (S.D.N.Y.); ***SCHWAB MONEY MARKET FUND, ET AL. V. BANK OF AMERICA CORP., ET AL.,*** NO. 11 CV 6412 (S.D.N.Y.); ***THE CHARLES SCHWAB CORP., ET AL. V. BANK OF AMERICA CORP., ET AL.,*** NO. 13 CV 7005 (S.D.N.Y.); ***AND BAY AREA TOLL AUTHORITY V. BANK OF AMERICA CORP., ET AL.,*** NO. 14 CV 3094 (S.D.N.Y.) (COLLECTIVELY, "LIBOR")

Lieff Cabraser serves as counsel for The Bay Area Toll Authority ("BATA"), as well as The Charles Schwab Corporation and certain Schwab Funds, in individual lawsuits against Bank of America Corporation, Credit Suisse Group AG, JPMorgan Chase & Co., Citibank, Inc., and additional banks for allegedly manipulating the London Interbank Offered Rate ("LIBOR").

The complaints allege that beginning in 2007, the defendants conspired to understate their true costs of borrowing, causing the calculation of LIBOR to be set artificially low. As a result, Schwab, the Schwab Funds, and BATA received less than their rightful rates of return on their LIBOR-based investments. The complaints assert claims under federal antitrust laws, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the statutory and common law of California. The actions were transferred to the Southern District of New York for consolidated or coordinated proceedings with the LIBOR multidistrict litigation pending there.

# ANTITRUST

## Representative Achievements & Successes



**IN RE: RESTASIS ANTITRUST LITIGATION, MDL NO. 2819 (E.D.N.Y.)**

Lieff Cabraser served as Co-Lead Counsel for indirect purchasers (third-party payors and consumers) of Restasis, a blockbuster drug used to treat dry-eye disease. With co-counsel, we filed the first two class actions on behalf of indirect purchasers of Restasis, alleging a broad-based and ongoing anticompetitive scheme by pharmaceutical giant Allergan to maintain a market monopoly. The complaints detail a complex scheme by Allergan to list invalid patents with the FDA, accompanied by sham transfers of the invalid patents to secure immunity from challenge. This alleged scheme of government petitioning delayed competition from generic equivalents to Restasis that would have been just as safe and cheaper for consumers.

After several other lawsuits were filed, the Judicial Panel on Multidistrict Litigation granted Lieff Cabraser's motion to centralize all cases for pretrial proceedings. In late 2018, plaintiffs successfully defeated defendant's motion to dismiss the case. In May of 2020, the Court granted plaintiffs' class certification motion and plaintiffs' motion to exclude two of the defendant's experts, and the Second Circuit Court of Appeals denied defendant's appeal. In October 2021, the parties announced a settlement that would provide $30 million to indirect Restasis purchasers. In August 2022, the Court approved the settlement.



**SEAMAN V. DUKE UNIVERSITY, NO. 1:15-CV-00462 (M.D.N.C.)**

Lieff Cabraser represented Dr. Danielle M. Seaman and a certified class of over 5,000 academic doctors at Duke and UNC in a class action lawsuit against Duke University and Duke University Health System. The complaint charged that Duke and UNC entered into an express, secret agreement not to compete for each other's faculty. The lawsuit sought to recover damages and obtain injunctive relief, including treble damages, for defendants' alleged violations of federal and North Carolina antitrust law.

On February 1, 2018, U.S. District Court Judge Catherine C. Eagles issued an order certifying a faculty class.

On September 24, 2019, Judge Eagles granted final approval to the proposed settlement of the case, valued at $54.5 million. The settlement includes an unprecedented role for the United States Department of Justice to monitor and enforce extensive injunctive relief, which will ensure that neither Duke nor UNC will enter into or enforce any unlawful no-hire agreements or similar restraints on competition. Assistant Attorney General Delrahim remarked: "Permitting the United States to become part of this settlement agreement in this private antitrust case, and thereby to obtain all of the relief and protections it likely would have sought after a lengthy investigation, demonstrates the benefits that can be obtained efficiently for the American worker when public and private enforcement work in tandem."



**NASHVILLE GENERAL V. MOMENTA PHARMACEUTICALS, ET AL., NO. 3:15-CV-01100 (M.D. TENN.)**

Lieff Cabraser represented AFCSME DC 37 and the Nashville General Hospital (the Hospital Authority of the Metropolitan Government of Nashville) in a class-action antitrust case against defendants Momenta Pharmaceuticals and Sandoz, Inc., for their alleged monopolization of enoxaparin, the generic version of the anti-coagulant blood clotting drug Lovenox, a highly profitable drug with annual sales of more than $1 billion. The drug entered the market in 1995 and its patent was invalidated by the federal government in 2008, making generic production possible. The complaint alleged that defendants colluded to secretly bring the official batch-release testing standard for generics within the ambit of their patent, delaying the entry of the second generic competitor—a never-before-tried theory of liability. In 2019, the court certified a class of hospitals, third-party payors, and uninsured persons

in 29 states and DC, appointing Lieff Cabraser sole lead counsel. In 2019, the parties agreed to a proposed settlement totaling $120 million, the second largest indirect-purchaser antitrust pharmaceutical settlement fund in history after Cipro. On May 29, 2020, the Court granted final approval to the settlement.

### IN RE DISPOSABLE CONTACT LENS ANTITRUST LITIGATION, MDL NO. 2626 (M.D. FLA.)

Lieff Cabraser represented consumers who purchased disposable contact lenses manufactured by Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch + Lomb, and Cooper Vision, Inc. The complaint challenged the use by contact lens manufacturers of minimum resale price maintenance agreements with independent eye care professionals (including optometrists and ophthalmologists) and wholesalers. These agreements, the complaint alleged, operate to raise retail prices and eliminate price competition and discounts on contact lenses, including from "big box" retail stores, discount buying clubs, and online retailers. As a result, consumers across the United States paid artificially inflated prices. The case settled on terms favorable to plaintiffs.



### HALEY PAINT CO. V. E.I. DUPONT DE NEMOURS AND CO. ET AL., NO. 10-CV-00318-RDB (D. MD.)

Lieff Cabraser served as Co-Lead Counsel for direct purchasers of titanium dioxide in a nationwide class action lawsuit against E.I. Dupont De Nemours and Co., Huntsman International LLC, Kronos Worldwide Inc., and Cristal Global (fka Millennium Inorganic Chemicals, Inc.), alleging a global cartel to fix the price of titanium dioxide, the world's most widely used pigment for providing whiteness and brightness in paints, paper, plastics, and other products.

Plaintiffs charged that defendants coordinated increases in the prices for titanium dioxide despite declining demand, decreasing raw material costs, and industry overcapacity. Unlike some antitrust class actions, Plaintiffs proceeded without the benefit of any government investigation or proceeding. Plaintiffs overcame attacks on the pleadings, discovery obstacles, a rigorous class certification process that required two full rounds of briefing and expert analysis, and multiple summary judgment motions. In August 2012, the Court certified the class. Plaintiffs prepared fully for trial and achieved

a settlement with the final defendant on the last business day before trial. In December 2013, the Court approved a series of settlements with defendants totaling $163 million.



### CIPRO CASES I AND II, JCCP NOS. 4154 AND 4220 (CAL. SUPR. CT.)

Lieff Cabraser represented California consumers and third party payors in a class action lawsuit filed in California state court charging that Bayer Corporation, Barr Laboratories, and other generic prescription drug manufacturers conspired to restrain competition in the sale of Bayer's blockbuster antibiotic drug Ciprofloxacin, sold as Cipro. Between 1997 and 2003, Bayer paid its would-be generic drug competitors nearly $400 million to refrain from selling more affordable versions of Cipro.

The trial court granted defendants' motion for summary judgment, and the California Court of Appeal affirmed in October 2011. Plaintiffs sought California Supreme Court review. The case was stayed after briefing pending the U.S. Supreme Court's decision in *FTC v. Actavis*. Once the Supreme Court overturned lower federal court precedent from *Actavis* that pay-for-delay deals in the pharmaceutical industry were generally legal, plaintiffs and Bayer entered into settlement negotiations. In November 2013, the Trial Court approved a $74 million settlement with Bayer.

On May 7, 2015, the California Supreme Court reversed the grant of summary judgment to defendants and resoundingly endorsed the rights of consumers to challenge pharmaceutical pay-for-delay settlements under California competition law. Working to the brink of trial, the plaintiffs reached additional settlements with the remaining defendants that brought the total recovery to $399 million (exceeding plaintiffs' damages estimate by approximately $68 million), a result the trial court found "extraordinary." The trial court granted final approval on April 21, 2017, adding that it was "not aware of any case" that "has taken roughly 17 years," where, net of fees, end-payor "claimants will get basically 100 cents on the dollar[.]"

Lieff Cabraser's Cipro team received the 2017 American Antitrust Institute award for Outstanding Private Practice Antitrust Achievement for their

extraordinary work on the Cipro case. In addition, Lieff Cabraser partners Eric B. Fastiff, Brendan P. Glackin, and Dean M. Harvey shared *The California Lawyer* and *The Daily Journal* 2016 "California Lawyers of the Year" Award for their work on the case.



### IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION, MDL NO. 1827 (N.D. CAL.)

Lieff Cabraser served as Co-Lead Counsel for direct purchasers in litigation against the world's leading manufacturers of Thin Film Transistor Liquid Crystal Displays. TFT-LCDs are used in flat-panel televisions as well as computer monitors, laptop computers, mobile phones, personal digital assistants, and other devices. Plaintiffs charged that defendants conspired to raise and fix the prices of TFT-LCD panels and certain products containing those panels for over a decade, resulting in overcharges to purchasers of those panels and products.

In March 2010, the Court certified two nationwide classes of persons and entities that directly purchased TFT-LCDs from January 1, 1999 through December 31, 2006, one class of panel purchasers, and one class of buyers of laptop computers, computer monitors, and televisions that contained TFT-LCDs.

Over the course of the litigation, the classes reached settlements with all defendants except Toshiba. The case against Toshiba proceeded to trial. In July 2012, the jury found that Toshiba participated in the price-fixing conspiracy. The case was subsequently settled, bringing the total settlements in the litigation to over $470 million. For his outstanding work in the precedent-setting litigation, *California Lawyer* recognized Richard Heimann with a 2013 California Lawyer of the Year award.



### IN RE MUNICIPAL DERIVATIVES LITIGATION, MDL, NO. 1950 (S.D.N.Y.)

Lieff Cabraser represented the City of Oakland, the County of Alameda, City of Fresno, and the Fresno County Financing Authority, along with East Bay Delta Housing and Finance Agency, in a class action lawsuit brought on behalf of themselves and other California entities that purchased guaranteed investment contracts, swaps, and other municipal derivatives products from Bank of America, N.A., JP Morgan Chase & Co., Piper Jaffray & Co., Societe Generale SA, UBS AG, and other banks, brokers and financial institutions. The complaint charged that defendants conspired to give cities, counties, school districts, and other governmental agencies artificially low bids for guaranteed investment contracts, swaps, and other municipal derivatives products, which are used by public entities to earn interest on bond proceeds.

The complaint further charged that defendants met secretly to discuss prices, customers, and markets for municipal derivatives sold in the U.S. and elsewhere; intentionally created the false appearance of competition by engaging in sham auctions in which the results were pre-determined or agreed not to bid on contracts; and covertly shared their unjust profits with losing bidders to maintain the conspiracy.



### CALIFORNIA VITAMINS CASES, JCCP NO. 4076 (CAL. SUPR. CT.)

Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution alleging that certain vitamin manufacturers engaged in price fixing of particular vitamins. In January 2002, the Court granted final approval to a $96 million settlement. In December 2006, the Court granted final approval to over $8.8 million in additional settlements.

### SULLIVAN V. DB INVESTMENTS, NO. 04-02819 (D. N.J.)

Lieff Cabraser served as Class Counsel for consumers who purchased diamonds from 1994 through March 31, 2006, in a class action lawsuit against the De Beers group of companies. Plaintiffs charged that De Beers conspired to monopolize the sale of rough diamonds in the U.S. In May 2008, the District Court approved a $295 million settlement for purchasers of diamonds and diamond jewelry, including $130 million to consumers.

The settlement also barred De Beers from continuing its illegal business practices and required De Beers to submit to the jurisdiction of the Court to enforce the settlement. In December 2011, the Third Circuit Court of Appeals affirmed the District Court's order approving the settlement. 667 F.3d 273 (3rd Cir. 2011).

The hard-fought litigation spanned several years and countries. Despite the tremendous resources available to the U.S. Department of Justice and state attorney generals, it was only through the determination of private plaintiffs' counsel that De Beers was finally brought to justice and the rights of consumers were vindicated. Lieff Cabraser attorneys played key roles in negotiating the settlement and defending it on appeal. Discussing the DeBeers case, *The National Law Journal* noted that Lieff Cabraser was "among the plaintiffs' firms that weren't afraid to take on one of the business world's great white whales."



### NATURAL GAS ANTITRUST CASES, JCCP NOS. 4221, 4224, 4226 & 4228 (CAL. SUPR. CT.)

In 2003, the Court approved a landmark of $1.1 billion settlement in class action litigation against El Paso Natural Gas Co. for manipulating the market for natural gas pipeline transmission capacity into California. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel and Co-Liaison Counsel in the Natural Gas Antitrust Cases I-IV. In June 2007, the Court granted final approval to a $67.39 million settlement against a group of natural gas suppliers. Plaintiffs charged defendants with manipulating the price of natural gas in California during the California energy crisis of 2000-2001 by a variety of means, including falsely reporting the prices and quantities of natural gas transactions to trade publications, which compiled daily and monthly natural gas price indices; prearranged wash trading; and, in the case of Reliant, "churning" on the Enron Online electronic trading platform, which was facilitated by a secret netting agreement between Reliant and Enron. The 2007 settlement followed a settlement reached in 2006 for $92 million with other energy suppliers.

### METHIONINE CASES I AND II, JCCP NOS. 4090 & 4096 (CAL. SUPR. CT.)

Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production. Plaintiffs alleged that the companies illegally conspired to raise methionine prices to super-competitive levels. The case settled on terms favorable to plaintiffs.



### MARCHBANKS TRUCK SERVICE V. COMDATA NETWORK, NO. 07-CV-01078 (E.D. PA.)

In July 2014, the Court approved a $130 million settlement of a class action brought by truck stops and other retail fueling facilities that paid percentage-based transaction fees to Comdata on proprietary card transactions using Comdata's over-the-road fleet card. The complaint challenged arrangements among Comdata, its parent company Ceridian LLC, and three national truck stop chains: defendants TravelCenters of America LLC and its wholly owned subsidiaries, Pilot Travel Centers LLC and its predecessor Pilot Travel Corporation, and Love's Travel Stops & Country Stores, Inc. The alleged anticompetitive conduct insulated Comdata from competition, enhanced its market power, and led to independent truck stops' paying artificially inflated transaction fees.

In addition to the $130 million payment, the settlement required Comdata to change certain business practices to promote competition among payment cards used by over-the-road fleets and truckers and lead to lower merchant fees for the independent truck stops. Lieff Cabraser served as Co-Lead Class Counsel in the litigation.



### MEIJER V. ABBOTT LABORATORIES, NO. C 07-5985 CW (N.D. CAL.)

Lieff Cabraser served as co-counsel for the group of retailers charging that Abbott Laboratories monopolized the market for AIDS medicines used in conjunction with Abbott's prescription

drug Norvir. These drugs, known as Protease Inhibitors, have enabled patients with HIV to fight off the disease and live longer. In January 2011, the Court denied Abbott's motion for summary judgment on plaintiffs' monopolization claim. Trial commenced in February 2011. After opening statements and the presentation of four witnesses and evidence to the jury, plaintiffs and Abbott Laboratories entered into a $52 million settlement. The Court granted final approval to the settlement in August 2011.



**WHOLESALE ELECTRICITY ANTITRUST CASES I & II,** JCCP NOS. 4204 & 4205 (CAL. SUPR. CT.)

Lieff Cabraser served as Co-Lead Counsel in the private class action litigation against Duke Energy Trading & Marketing, Reliant Energy, and The Williams Companies for claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-2001. Extending the landmark victories for California residential and business consumers of electricity, in September 2004 plaintiffs reached a $206 million settlement with Duke Energy Trading & Marketing, and in August 2005 plaintiffs reached a $460 million settlement with Reliant Energy, settling claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-01. Lieff Cabraser earlier entered into a settlement for over $400 million with The Williams Companies.

### IN RE BUSPIRONE ANTITRUST LITIGATION,



MDL NO. 1413 (S.D.N.Y.)

In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payers that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety. Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its

challenge to BMS' patent and refrain from entering the market. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

### IN RE ELECTRICAL CARBON PRODUCTS ANTITRUST LITIGATION, MDL NO. 1514 (D.N.J.)

Lieff Cabraser represented the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act. The case settled on terms favorable to plaintiffs.



**IN RE CARPET ANTITRUST LITIGATION,** MDL NO. 1075 (N.D. GA.)

Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet. Plaintiffs, distributors of polypropylene carpet, alleged that defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet. In 2001, the Court approved a $50 million settlement of the case.

### IN RE LASIK/PRK ANTITRUST LITIGATION, NO. CV 772894 (CAL. SUPR. CT.)

Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of individuals who underwent Lasik/PRK eye surgery. Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction surgery, manipulated fees charged to ophthalmologists and others who performed the surgeries, and that the overcharges were passed onto the patients. In December 2001, the Court approved a $12.5 million settlement of the litigation.

### IN RE LUPRON MARKETING AND SALES PRACTICES LITIGATION, MDL NO. 1430 (D. MASS.)

In May 2005, the Court granted final approval to a settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty. The settlement requires the defendants, Abbott

Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005. Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid. Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.



### *IN THE MATTER OF THE ARBITRATION BETWEEN COPYTELE AND AU OPTRONICS, CASE NO. 50 117 T 009883 13 (INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION)*

Lieff Cabraser successfully represented CopyTele, Inc. in a commercial dispute involving intellectual property. In 2011, CopyTele entered into an agreement with AU Optronics ("AUO") under which both companies would jointly develop two groups of products incorporating CopyTele's patented display technologies. CopyTele charged that AUO never had any intention of jointly developing the CopyTele technologies, and instead used the agreements to fraudulently obtain and transfer licenses of CopyTele's patented technologies. The case required the review of thousands of pages of documents in Chinese and in English, culminating in a two week arbitration hearing. The parties resolved the matter in December 2014 with CopyTele receiving $9 million.

# LABOR-ANTITRUST

Workers whose pay and mobility have been suppressed because of "no-poach" agreements have the right to seek lost income and to put an end to the unlawful restrictions. Lieff Cabraser's Labor Antitrust practice group leads the nation in representing workers asserting antitrust and competition claims against employers. It is the first practice group of its kind, bringing together the expertise of both antitrust and employment lawyers to ensure that workers receive the benefit of free competition for their labor.

## Representative Current Cases



### *ROE V. SURGICAL CARE AFFILIATES, LLC., ET AL., CASE NO. 1:21-CV-00305-ARW-SRH (N.D. ILL.)*

We have been appointed Co-Lead Counsel for plaintiffs in a consolidated federal class action lawsuit against medical care center giant Surgical Care Affiliates for violations of U.S. antitrust laws. The civil case comes in the wake of a federal indictment regarding SCA's alleged antitrust violations, and alleges that employee compensation and mobility were criminally suppressed at Surgical Care Affiliates via illegal agreements between SCA and its competitors not to compete for each other's senior employees.

# LABOR-ANTITRUST

## Achievements & Successes



**IN RE: RAILWAY INDUSTRY EMPLOYEE NO-POACH ANTITRUST LITIGATION, MDL NO. 2850 (W.D. PA.)**

In late 2018, Lieff Cabraser was selected as interim Co-Lead Counsel for plaintiffs in the consolidated "no-poach" employee antitrust litigation against rail equipment companies Knorr-Bremse and Wabtec, the world's dominant rail equipment suppliers. The complaint charged that the companies entered into unlawful agreements with one another not to compete for each other's employees. Plaintiffs alleged that these agreements spanned several years, were monitored and enforced by defendants' senior executives, and achieved their desired goal of suppressing employee compensation and mobility below competitive levels. Plaintiffs' vigorous prosecution of the case led to settlements with both defendants of $48.95 million, which were approved on August 26, 2020.



**SEAMAN V. DUKE UNIVERSITY AND DUKE UNIVERSITY HEALTH SYSTEM, CASE NO. 1:15-CV-00462-CCE-JLW (M.D. N.C.)**

We won a $54.5 million settlement and the American Antitrust Institute's 2019 award for "Outstanding Antitrust Litigation Achievement in Private Law Practice" representing a class of over 5,000 academic doctors in a federal class action against Duke University and the UNC Health Care System alleging that their agreement not to compete for certain of each other's employees (a "No-Hire" pact) illegally suppressed employee compensation. The settlement included an unprecedented role for the U.S. Department of Justice to monitor and enforce extensive injunctive relief.

**BINOTTI V. DUKE UNIVERSITY, CASE NO. 1:20-CV-00470 (M.D. N.C.)**

We won a $19 million settlement representing a class of thousands of faculty members in a federal class action against Duke University and UNC alleging that their illegal agreement not to compete for certain of each other's employees (a "No-Hire" pact) suppressed employee compensation and mobility. The litigation followed a prior case Lieff Cabraser successfully resolved with respect to Duke and UNC medical faculty, which led to a certified class of all doctors of the two schools with academic appointments, and a class settlement of $54.5 million.



**IN RE HIGH-TECH EMPLOYEE ANTITRUST LITIGATION, NO. 11 CV 2509 (N.D. CAL.)**

Lieff Cabraser served as Co-Lead Class Counsel in a consolidated class action charging that Adobe Systems Inc., Apple Inc., Google Inc., Intel Corporation, Intuit Inc., Lucasfilm Ltd., and Pixar violated antitrust laws by conspiring to suppress the pay of technical, creative, and other salaried employees. The complaint alleged that the conspiracy among defendants restricted recruiting of each other's employees. On October 24, 2013, U.S. District Court Judge Lucy H. Koh certified a class of approximately 64,000 persons who worked in defendants' technical, creative, and/or research and development jobs from 2005-2009. On September 2, 2015, the Court approved a $415 million settlement with Apple, Google, Intel, and Adobe. Earlier, on May 15, 2014, the Court approved partial settlements totaling $20 million resolving claims against Intuit, Lucasfilm, and Pixar. *The Daily Journal* described the case as the "most significant antitrust employment case in recent history," adding that it "has been widely recognized as a legal and public policy breakthrough."

# CIVIL RIGHTS & SOCIAL JUSTICE

Lieff Cabraser has an entire practice group dedicated to its clients' civil rights in the workplace. In addition, Lieff Cabraser has a long and deep commitment to pro bono and other case work in support of diversity, equity, and social justice.

## Representative Current Cases

On an on-going basis, Lieff Cabraser participates in pro bono representation through the Justice & Diversity Center (JDC) of the Bar Association of San Francisco, including in its Eviction Defense Project helping to prevent displacement and homelessness in San Francisco. Every summer, Lieff Cabraser also participates in JDC's Homeless Advocacy Project as part of the firm's summer associate program client work. Lieff Cabraser also takes on numerous special pro bono projects.

## Representative Achievements & Successes



### *SCHOLL V. MNUCHIN, ET AL.,* NO. 4:20-CV-05309-PJH (N.D. CAL.)

In March 2020, in response to Covid-19 financial distress, Congress passed the CARES Act to provide economic stimulus payments to most Americans. Trump government agencies thereafter arbitrarily denied relief to America's incarcerated. Lieff Cabraser and co-counsel Equal Justice Society filed suit against the government in an extraordinary and resoundingly successful effort to win back CARES Act benefits for 2 million incarcerated Americans. A veritable army of paralegals fielded thousands upon thousands of inquiries, including via a new website receiving 725,000+ visits in mere months. By 2021, these efforts won $1.465 billion in economic assistance for vulnerable people in American prisons, and contributed powerfully to the body of law permitting IRS policies to be challenged under the APA in federal court. This is the largest financial settlement by far in U.S. history for a purposefully disenfranchised group.

### *"HOW TO BE A GOOD ALLY"* CONFERENCE, 2017

In late 2016, Kelly M. Dermody, then-Chair of the firm's Labor & Employment practice group and San Francisco office Managing Partner, conceived and coordinated the enormously successful SF Bay Area "How to be a Good Ally" project and symposium, attended by 1,300 legal professionals. The symposium, held in San Francisco in January 2017, united scores of California and national non-profit organizations with the legal community in an effort to assist communities in need, including in the areas of hate crimes and Anti-Semitism, government targeting of Muslims, attacks on immigrants and the undocumented, domestic violence and sexual assault, healthcare for people with disabilities and medical vulnerabilities, backlash against the LGBT community, criminalization of communities of color, reproductive rights, worker justice, and saving the environment.



### *MONK V. SHULKIN (FED. CIRCUIT COURT OF APPEAL)*

In the summer of 2016, Lieff Cabraser filed an amicus brief on behalf of Administrative Law Professors and Complex Litigation Law Professors in *Monk v. Shulkin* in the United States Court of Appeals for the Federal Circuit in support of Conley F. Monk, Jr.'s petition to certify a class action over the claims of thousands of veterans whose benefits claims had been delayed or denied. Citing in part that amicus brief, on April 26, 2017, the Court issued a precedential opinion holding, for the first time, that the Veterans Courts have authority to certify classes in the absence of an express Rule 23 or similar device to promote efficiency and fairness.

### HOGUE V. HOGUE, NO. C083285 (3D CIRCUIT CALIFORNIA COURT OF APPEAL)

On September 29, 2017, Lieff Cabraser secured a unanimous victory in the California Court of Appeal for a pro bono client who sought a restraining order against her ex-husband. The case, *Hogue v. Hogue*, resolved an issue of first impression in the California courts as to whether California may assert jurisdiction over an out-of-state defendant who makes cyber threats against a California resident. Lieff Cabraser worked on the case with the non-profit organization, Family Violence Appellate Project.



### HOLOCAUST CASES

Lieff Cabraser was one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era. The firm served as Settlement Class Counsel in the case against the Swiss banks for which the Court approved a U.S. $1.25 billion settlement in July 2000. Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School. The firm was also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks. In connection therewith, Lieff Cabraser participated in multinational negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled *In re Holocaust Era German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

"Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears. You can say what you want to say about class actions and about attorneys, but the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . . What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . . I want to thank counsel for the assistance in bringing us to where we are today. Cases don't get settled just by litigants. It can only be settled by competent, patient attorneys."



### MARRIAGE EQUALITY

Lieff Cabraser took an active role in support of marriage equality in California and nationwide. On March 5, 2015, Lieff Cabraser joined 378 businesses to ask the United States Supreme Court to strike down state law bans on same-sex marriage in connection with the pending case, *Obergefell v. Hodges*. On Friday, June 26, 2015, the U.S. Supreme Court made history in *Obergefell* by ruling that the U.S. Constitution protects the rights of same-sex couples to become legally married everywhere in the country.

Lieff Cabraser previously participated as an amicus party in the similar employer brief filed in the 2013 landmark United States Supreme Court case, *United States v. Windsor* (the challenge to the federal Defense of Marriage Act), and served as amici counsel in connection with the 2013 United States Supreme Court case challenging California's Proposition 8, *Perry v. Hollingsworth*.

Earlier, before the California Supreme Court in *Strauss v. Horton*, 46 Cal. 4th 364 (2008), Lieff Cabraser served as Amici Curiae counsel for forty bar and legal advocacy non-profit organizations throughout California and nationwide. Amici Curiae argued that Proposition 8's denial of equal protection to a class of individuals with respect to a fundamental right violated the California Constitution.



### "TIME'S UP" PROJECT

On January 2, 2018, a group of five Lieff Cabraser attorneys joined 300 prominent actresses, female agents, writers, directors, producers, and entertainment executives, as well as many other lawyers nationwide in the new "Time's Up" initiative

in a concerted effort to combat sexual harassment, discrimination, and abuse in the workplace. The initiative began with a new legal defense fund, intended to aid less-privileged women in protecting themselves from sexual misconduct; proposals of legislation to penalize companies that allow persistent harassment and discourage the use of nondisclosure agreements for silencing victims; and an ongoing drive to reach gender parity at studios and talent agencies.



### SANCTUARY JURISDICTIONS CASES

On June 28, 2017, Lieff Cabraser and a coalition of 48 cities and counties across the U.S. filed an amicus brief in San Francisco federal court to support the cases filed by the County of Santa Clara and the City and County of San Francisco asking the federal courts to reject the Trump Administration's efforts to dismiss cases seeking to halt the Executive Order threatening the withdrawal of federal funds from so-called "sanctuary jurisdictions," explaining that the Executive Order was unconstitutional and that the public would suffer irreparable harm unless the court left its preliminary injunction in place. The brief followed earlier, similar amicus briefs in the cases from our firm in March of 2017. The cases, *County of Santa Clara v. Trump*, Case No. 5:17-cv-00574, and *City and County of San Francisco v. Trump*, Case No. 3:17-cv-00485, were pending before the United States Judge William H. Orrick. On November 20, 2017, Judge Orrick permanently blocked the Order attempting to cut federal funding from cities that restrict cooperation with U.S. immigration authorities. "President Trump might be able to tweet whatever comes to mind, but he can't grant himself new authority because he feels like it," the judge said in a statement.

### LUSARDI V. MCHUGH, MDL NO. 1827 (N.D. CAL.)

On April 1, 2015, Lieff Cabraser secured a precedent-setting victory before the Equal Employment Opportunity Commission in which the Commission held that denial of access to the bathroom of one's gender identity is unlawful sex discrimination in violation of federal Title VII of the Civil Rights Act of 1964. Lieff Cabraser, along with

Transgender Law Center, represented Tamara Lusardi, a transgender woman who transitioned while working for a military defense contractor in Alabama, and was thereafter harassed and denied access to the women's bathroom. Since this case, Lieff Cabraser has been an ongoing and frequent collaborator with Transgender Law Center on research and litigation strategy work.

### CRUZ V. U.S., ESTADOS UNIDOS MEXICANOS, WELLS FARGO BANK, ET AL., NO. 01-0892-CRB (N.D. CAL.)

Working with co-counsel, Lieff Cabraser succeeded in correcting an injustice that dated back 60 years. The case was brought on behalf of Mexican workers and laborers, known as Braceros ("strong arms"), who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1946 to aid American farms and industries hurt by employee shortages during World War II in the agricultural, railroad, and other industries. As part of the Braceros program, employers held back 10% of the workers' wages, which were to be transferred via United States and Mexican banks to savings accounts for each Bracero. The Braceros were never reimbursed for the portion of their wages placed in the forced savings accounts.

Despite significant obstacles including the aging and passing away of many Braceros, statutes of limitation hurdles, and strong defenses to claims under contract and international law, plaintiffs prevailed in a settlement in February 2009. Under the settlement, the Mexican government provided payments to Braceros, or their surviving spouses or children, in the amount of approximately USD$3,500.



### CITY OF PHILADELPHIA V. WELLS FARGO

Lieff Cabraser secured a $10 million settlement in 2019 of the city's housing discrimination claims that involved the bank funding city programs for communities affected by lending discrimination and agreeing to other relief as well.

# CONSUMER PROTECTION

Lieff Cabraser has been fighting to uphold the rights of consumers for over 50 years. Deceptive and fraudulent practices including false advertising, bait and switch marketing, phony bookkeeping disclosures, unconscionable pricing, and charging for services never provided are just a few of the many unfair and deceptive practices rogue players use to defraud and steal from consumers. These deceptive business practices also distort the marketplace by allowing dishonest businesses to gain unfair advantage over ethical competitors. We are proud of our ongoing successes in prosecuting scores of consumer class action lawsuits against many of the largest U.S. banks, financial service companies, telecommunications companies, and other corporations. Working with co-counsel, we have achieved judgments and settlements in excess of $20 billion for consumers in these cases.

## Representative Current Cases



### BIEDERMAN, ET AL. V. FCA US LLC, ET AL., CASE NO. 1:23-CV-06640 (N.D. CAL.)

In December 2023, the United States Department of Justice and California Attorney General announced a record-breaking $1.675 billion fine and consent decree with engine-maker Cummins, Inc. for installing illegal defeat devices in engines equipped in Ram 2500 and 3500 diesel trucks. Historic in many ways, it is just the latest in a long line of diesel-emissions cheating cases, starting with Volkswagen "Clean Diesel," which Lieff Cabraser steered to a series of successful resolutions providing close to $15 billion in consumer compensation.

After the announcement, Lieff Cabraser and co-counsel filed a federal class action complaint against both Cummins and the vehicle maker (FCA) to ensure that the owners and lessees of the affected vehicles—the true victims of the fraud—are also compensated for their economic losses, including for any performance-related degradation stemming from the emissions-related recalls. The litigation is ongoing.

### LEMMO'S PIZZERIA, LLC V. DISCOVER FINANCIAL SERVICES ET. AL., CASE NO. 1:23-CV-14250 (N.D. ILL.)

In 2023, Lieff Cabraser and co-counsel filed a class action lawsuit alleging that Discover engaged in a years-long practice of misclassifying credit card transactions. Plaintiffs in the case allege that for millions of transactions, Discover misclassified the cards used as being Commercial cards when they were really Consumer cards (which are generally subject to lower per-transaction fees than Commercial cards), resulting in merchants throughout the United States paying hundreds of millions

of dollars in excessive per transaction charges. The litigation is ongoing.



### RABIN ET AL. V. GOOGLE LLC, CASE NO. 5:22-CV-04547-PCP (N.D. CAL.)

Lieff Cabraser, along with co-counsel, represents a proposed nationwide class of early adopters of the Google Workspace service. Plaintiffs in the case allege that Google promised these customers continuing free access to the service, to entice them to sign up so that Google could then benefit from these customers' experiences and use of the service to develop and fine-tune the service, thus putting Google in a position to market the service to other customers for a fee. Plaintiffs allege that Google breached its promise of continuing free service to these customers in 2022, forcing them to either give up or pay for the service. In 2024, the District Court denied Google's motion to dismiss plaintiffs' claims for breach of contract and under California's Unfair Competition Law.

### CAPPS ET AL. V. UNITED SERVICES AUTOMOBILE ASSOCIATION ET AL., CASE 5:24-CV-00455-OLG (W.D. TEX.)

Lieff Cabraser, along with co-counsel, represents a proposed nationwide class of USAA insurance customers. Plaintiffs allege that USAA deliberately created the false impression that these customers were USAA "members" while concealing and obfuscating that they were, in essence "fake members," and did not receive benefits provided only to "real" members (limited to officer class customers), including an annual distribution of company

surplus. Plaintiffs allege claims for deceptive trade practices and for breach of contract.

### NICHOLS V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, CASE NO. 2:22-CV-16 (S.D. OHIO)

This class action lawsuit alleges that State Farm systematically underpaid Ohio automobile insurance customers that had "totaled" vehicles. Plaintiffs allege that, in valuing the customers' total loss vehicles, State Farm applied an improper "typical negotiation adjustment" that was not permitted by law or the insurance contract, one that unjustifiably lowered the amounts that State Farm paid to the customers. The litigation is ongoing.

### AUTHORS COPYRIGHT CASE AGAINST OPENAI & MICROSOFT

Lieff Cabraser, with co-counsel, has been appointed Interim Co-Lead Counsel in copyright class action litigation on behalf of authors against OpenAI and Microsoft. The case is pending in the Southern District of New York. Plaintiffs allege that the defendants' wholesale reproduction of copyright-registered work ran afoul of the Copyright Act, constituted direct and contributory infringement, and was willful. Discovery is ongoing.

# CONSUMER PROTECTION

## Representative Achievements & Successes



### EXPRESS FREIGHT INTERNATIONAL, ET AL. V. HINO MOTORS, LTD., ET AL., CASE NO. 1-22-CV-22483-DPG (S.D. FLA.)

In August of 2022, Lieff Cabraser and co-counsel filed a federal class action complaint against Hino Motors and related entities alleging another instance in the now-pervasive problem across the automotive industry: automaker schemes about vehicle emissions and related performance. As with other well-known instances of emissions fraud—the Volkswagen "Clean Diesel" case; the Fiat Chrysler "EcoDiesel" case; the "Audi CO2" gasoline case; the Mercedes-Benz BlueTEC case; and the data manipulation scandals by Japanese automakers Mitsubishi Motors, Suzuki, Mazda, and Yamaha are just a few examples—the Plaintiffs in *Express Freight v. Hino* allege that the Defendants in the case illegally manipulated emissions and fuel economy test results for Hino-branded trucks in the United States. In 2023, the parties reached a class settlement that provides $237.5 million in cash compensation as well as a robust extended warranty valued at an additional $208 million. The Court granted final approval to the settlement in April 2024.



### KONA COFFEE ADVERTISING FRAUD CLASS ACTION CORKER, ET AL. V. COSTCO WHOLESALE CORP., ET AL., NO. 1:19-CV-290 (W.D. WASH.)

In October 2023, U.S. District Judge Robert S. Lasnik granted final approval to the latest settlement in a lawsuit brought by Hawaiian farmers accusing retailers and suppliers of selling regular coffee under the name "Kona." Defendants have agreed to provide Kona farmers more than $122 million in economic relief, including $41 million in cash payments to the Kona growers and a host of labeling and business practice changes to ensure accurate and reliable labeling of Kona coffee products. In approving the latest settlement, Judge Lasnik described this litigation as one "of the most impressive class action cases I have dealt with in my time on the federal bench, and the results as "great for justice … a real result that makes people whole again."

Lieff Cabraser brought suit on behalf of the farmers in 2019, claiming that only coffee harvested from Hawaii's Big Island is actually Kona coffee, and that those companies—almost two dozen named in the original suit — were selling beans and ground coffee under the name without buying from them, in violation of the Lanham Act. The David vs. Goliath style case pitted three small, longtime Kona coffee farms against 22 major coffee suppliers and retailers, selling a variety of mislabeled coffee products across the country in multiple channels of commerce.



### VOLKSWAGEN/PORSCHE EMISSION & FUEL ECONOMY LITIGATION

Lieff Cabraser represented consumers nationwide in a class action against Porsche relating to vehicles that can experience worse fuel economy than promised and advertised. The complaint alleged that Porsche manipulated certain gas-powered vehicles to overstate their advertised fuel economy, and make them seem more ecofriendly than they actually were by securing fraudulent emissions certifications. In June of 2022, Porsche agreed to settle the case for $80 million, paying class members nearly 100% of their damages. In October 2022, the Court granted final approval to the settlement.



### GRIGSON V. FARMERS GROUP, INC., CASE NO. 1:1 7-CV-00088-LY (W.D. TEX.)

Lieff Cabraser, along with co-counsel, represented a state-wide class of Farmers Texas automobile insurance customers. Plaintiffs alleged that Farmers unfairly discriminated against them and other existing customers by walling them off in a "closed" insurance book and precluding them from accessing Farmers' "open" insurance book that had lower rates for materially the same coverages, was supposed to be available to existing customers, but that Farmers only made available to new customers. In 2020, the Court approved a $52 million class settlement that provided direct monetary payments to the class members.

### CYMBALISTA ET AL. V. JPMORGAN CHASE BANK, N.A., CASE 2:20-CV-00456-RPK-LB (E.D.N.Y.)

Lieff Cabraser, along with co-counsel, represented a class of Chase mortgage customers. Plaintiffs alleged that Chase failed to pay interest on the funds held in the customers' mortgage escrow accounts, in violation of certain state laws. In 2022, the Court approved a an $11.5 million class settlement, which provided direct monetary relief to class members.

### LUSNAK V. BANK OF AMERICA, N.A., CASE NO. CV 14-1855-GW-GJSX (N.D. CAL.)

Lieff Cabraser, along with co-counsel, represented a state-wide class of Bank of America mortgage customers. Plaintiffs alleged that Bank of America failed to pay interest on the funds held in the customers' mortgage escrow accounts, as required by California law. After overcoming on appeal Bank of America's argument that the claims were preempted by the National Bank Act, the parties reached a $35 million class settlement (approximately 80% of the alleged damages). The settlement was approved in 2020. In addition, following Plaintiff's successful appeal in this case on the preemption issue, Bank of America changed its policies and practices—beginning in 2019, Bank of America began paying escrow interest for all residential mortgage escrow accounts in California.

### PATTI'S PITAS LLC ET AL. V. WELLS FARGO MERCHANT SERVICES, LLC, CASE NO. 1:17-CV-04583 (AKT) (E.D.N.Y.)

Lieff Cabraser, along with co-counsel, represented a nationwide class of merchants in a class action alleging that WFMS induced the merchants to enter into contracts by failing to properly disclose the true payment processing rates and charges that would apply, and then breached their contracts by increasing rates and fees and by imposing certain fees and charges that were improper and/or not adequately disclosed. In 2021, the Court approved a class settlement that provided monetary payments to class members and included important practice changes.

***VIANU ET. AL. V. AT&T MOBILITY LLC,*** **CASE NO. 3:19-CV-03602-LB (N.D. CAL.)**

Lieff Cabraser, along with co-counsel, represented a class of California AT&T wireless customers, challenging AT&T's charging of monthly Administrative Fees. Plaintiffs alleged that AT&T's representations and advertisements regarding the monthly price of its wireless service plans were misleading because the prices did not include the Administrative Fee, and that AT&T implemented and charged the fee in a deceptive and unfair manner. In 2022, the Court approved a $14 million settlement that provided monetary payments to the class.





**ZF-TRW AIRBAG SAFETY DEFECT LAWSUITS**

In 2019, Lieff Cabraser and co-counsel filed a federal class action lawsuit in California on behalf of consumers across the U.S. against Hyundai Motor America, Kia Motor America, and ZF-TRW Automotive Holding Corp. over defective vehicle airbags that fail to operate during crashes due to electrical overstress. As detailed in the Complaint, a defect in the application specific integrated circuit built into the airbags causes a failure in the Airbag Control Unit that prevents the airbags and the seat belt pre-tensioners, both vital to maximizing safety in a vehicle crash, from deploying. As the Complaint further alleges, ZF-TRW, Hyundai, and Kia became aware of the ACU defect as early as 2011, but did nothing to protect consumers or warn of the product dangers until 2018. Further, reports indicate there are no warning signs of the problem, so owners and lessees have no way of knowing the airbag and belt failures will happen.

***CLEARY ET AL. V. AMERICAN AIRLINES, INC.,*** **CASE NO. 4:21-CV-00184-O (N.D. TEX.)**

Lieff Cabraser and co-counsel represented American Airlines customers that plaintiffs alleged were improperly charged checked bag fees contrary to email confirmations they received from American and contrary to the terms in American partner credit card agreements. In 2023, the Court approved a class settlement valued at over $7.5 million.

***MARCUS A. ROBERTS ET AL. V. AT&T MOBILITY LLC.,*** **NO. 3:15-CV-3418 (N.D. CAL.)**

Lieff Cabraser represented California consumers in a class action lawsuit against AT&T claiming that AT&T falsely advertised that its "unlimited" mobile phone plans provide "unlimited" data, while purposefully failing to disclose that it regularly "throttles" (i.e., intentionally slows) customers' data speed once they reach certain data usage thresholds. After overcoming AT&T's attempts to force the consumers into non-class arbitration, Plaintiffs achieved a $12 million class settlement, approved in 2021, which provided direct monetary relief to class members.

***TELEPHONE CONSUMER PROTECTION ACT LITIGATION***

Lieff Cabraser serves as a leader in nationwide Telephone Consumer Protection Act ("TCPA") class actions challenging abusive and harassing automated calls. Based on Lieff Cabraser's experience and expertise in these cases, courts have appointed Lieff Cabraser as co-lead counsel in certified TCPA class actions against DIRECTV. *Brown v. DirecTV, LLC*, No. CV 13-1170 DMG (EX), 2019 WL 1434669 (C.D. Cal. Mar. 29, 2019); *Cordoba v. DirecTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017). Lieff Cabraser also maintains leadership roles in ongoing nationwide class actions against several other companies that make automated debt-collection or telemarketing calls, including National Grid (*Jenkins v. National Grid USA, et al.*, Case No. 2:15-cv-01219-JS-GRB (E.D.N.Y.).

***JAMES V. UMG RECORDINGS, INC.,*** **NO. CV-11-1613 (N.D. CAL);** ***ZOMBIE V. UMG RECORDINGS, INC.,*** **NO. CV-11-2431 (N.D. CAL)**

Lieff Cabraser and its co-counsel represented music recording artists in a class action against Universal Music Group. Plaintiffs alleged that Universal failed to pay the recording artists full royalty income earned from customers' purchases of digitally downloaded music from vendors such as Apple iTunes. Plaintiffs alleged that Universal licensed plaintiffs' music to digital download providers, but in its accounting of the royalties plaintiffs earned, treated such licenses as "records sold" because royalty rates for "records sold" were lower than the royalty

rates for licenses. In 2015, the Court approved a $11.5 million class settlement.

### WHITE V. EXPERIAN INFORMATION SOLUTIONS, NO. 05-CV-1070 DOC (C.D. CAL.)

In 2005, plaintiffs filed nationwide class action lawsuits against the nation's three largest repositories of consumer credit information, Experian Information Solutions, Inc., Trans Union, LLC, and Equifax Information Services, LLC. The complaints charged that defendants violated the Fair Credit Reporting Act ("FCRA") by recklessly failing to follow reasonable procedures to ensure the accurate reporting of debts discharged in bankruptcy and by refusing to adequately investigate consumer disputes regarding the status of discharged accounts.

In 2008, the District Court approved a partial settlement of the action that established an historic injunction. The injunctive relief settlement required defendants to comply



with detailed procedures for the retroactive correction and updating of consumers' credit file information concerning discharged debt (affecting one million consumers who had filed for bankruptcy dating back to 2003), as well as new procedures to ensure that debts subject to future discharge orders will be similarly treated. As noted by the District Court, "Prior to the injunctive relief order entered in the instant case, however, no verdict or reported decision had ever required Defendants to implement procedures to cross-check data between their furnishers and their public record providers."

In 2018, the District Court approved a further class settlement that provided $38.7 million in non-reversionary cash benefits plus additional important benefits for class members.

### IN RE ARIZONA THERANOS, INC. LITIGATION, NO. 2:16-CV-2138-HRH (D. ARIZ.)

This class action lawsuit alleged that Walgreens and startup company Theranos Inc. (along with its two top executives) committed fraud and battery by prematurely marketing to consumers blood testing services that were still in-development, not ready-for-market, and dangerously unreliable. Hundreds of thousands of consumers in Arizona and California submitted to these "testing" services and blood draws under false pretenses.

Consumers also made major health decisions (including taking actions and medication, and refraining from taking actions and medications) in reliance on these unreliable tests. In 2024, the Court approved class settlements totaling $45.33 million that will provide direct monetary relief to the class members.



### MOORE V. VERIZON COMMUNICATIONS, NO. 09-CV-01823-SBA (N.D. CAL.); NWABUEZE V. AT&T, NO. 09-CV-1529 SI (N.D. CAL.); TERRY V. PACIFIC BELL TELEPHONE CO., NO. RG 09 488326 (ALAMEDA COUNTY SUP. CT.)

Lieff Cabraser, with co-counsel, represented nationwide classes of landline telephone customers subjected to the deceptive business practice known as "cramming." In this practice, a telephone company bills customers for unauthorized third-party charges assessed by billing aggregators on behalf of third-party providers. Settlements in the cases were approved in 2013 and 2014, which allowed customers to receive 100% refunds for all unauthorized charges from 2005 to the present, and provided important injunctive relief to prevent cramming in the future.



### THE PEOPLE OF THE STATE OF CALIFORNIA V. J.C. PENNEY CORPORATION, INC., CASE NO. BC643036 (LOS ANGELES COUNTY SUP. CT); THE PEOPLE OF THE STATE OF CALIFORNIA V. KOHL'S DEPARTMENT STORES, INC., CASE NO. BC643037 (LOS ANGELES COUNTY SUP. CT); THE PEOPLE OF THE STATE OF CALIFORNIA V. MACY'S, INC., CASE NO. BC643040 (LOS ANGELES COUNTY SUP. CT); THE PEOPLE OF THE STATE OF CALIFORNIA V. SEARS, ROEBUCK AND CO., ET AL., CASE NO. BC643039 (LOS ANGELES COUNTY SUP. CT)

Working with the office of the Los Angeles City Attorney, Lieff Cabraser and co-counsel represented the People

of California in consumer fraud and false advertising civil enforcement actions against national retailers J.C. Penney, Kohl's, Macy's, and Sears alleging that each of these companies used "false reference pricing" schemes —whereby the companies were alleged to advertise products at a purported "discount" from false "original" or "regular" prices—to mislead customers into believing they were receiving bargains. The cases are now fully resolved.

### FIAT CHRYSLER DODGE JEEP ECODIESEL LITIGATION, 17-MD-02777-EMC

Lieff Cabraser represented owners and lessors of affected Fiat Chrysler vehicles in litigation accusing Fiat Chrysler of using secret software to allow excess emissions in violation of the law for at least 104,000 2014-2016 model year diesel vehicles, including Jeep Grand Cherokees and Dodge Ram 1500 trucks with 3-liter diesel engines sold in the United States from late 2013 through 2016 (model years 2014, 2015, and 2016). In June 2017, Judge Edward M. Chen of the Northern District of California named Elizabeth Cabraser sole Lead Counsel for Plaintiffs and Chair of the Plaintiffs' Steering Committee for consolidated litigation of the case.

In May 2019, Judge Chen granted final approval to a $307.5 million settlement of the case, which provided eligible owners and lessees with substantial cash payments and an extended warranty following the completion of a government-mandated emissions modification to affected vehicles.



### CODY V. SOULCYCLE, INC., CASE NO. 2:15-CV-06457 (C.D. CAL.)

Lieff Cabraser represented consumers in a class action lawsuit alleging that indoor cycling fitness company SoulCycle sold illegally expiring gift certificates. The suit alleged that SoulCycle defrauded customers by forcing them to buy gift certificates with short enrollment windows and keeping the expired certificates' unused balances, in violation of the U.S. Electronic Funds Transfer Act and California's Unfair Competition Law, and sought reinstatement of expired classes or customer

reimbursements as well as policy changes. In October of 2017, U.S. District Judge Michael W. Fitzgerald granted final approval to a settlement of the litigation valued between $6.9 million and $9.2 million that provided significant economic consideration to settlement class members as well as meaningful changes to SoulCycle's business practices.



### AMIN, ET AL. V. MERCEDES-BENZ USA, LLC, NO. 1:17-CV-01701-AT (N.D. GA.)

Lieff Cabraser successfully represented a class of Mercedes-Benz vehicle owners and lessees whose defective HVAC systems developed moldy odors. In 2020, Judge Amy Totenberg granted final approval to a settlement offering financial compensation and extended warranties. Judge Totenberg estimated the financial benefits of the settlement for the class at between $35.93 and $103.66 million.

### HALE, ET AL. V. STATE FARM MUT. AUTO. INS. CO., ET AL., CASE NO. 3:12-CV-00660-DRH-SCW

In 1997, Lieff Cabraser and co-counsel filed a class action in Illinois state court, accusing State Farm of approving the use of lower-quality non-original equipment manufacturer (non-OEM) automotive parts for repairs to the vehicles of more than 4 million State Farm policyholders, contrary to the company's policy language. Plaintiffs won a verdict of more than nearly $1.2 billion that included $600 million in punitive damages. The state appeals court affirmed the judgment, but reduced it slightly to $1.05 billion. State Farm appealed to the Illinois Supreme Court in May 2013.

A two-plus-year delay in that Court's decision led to a vacancy in the Illinois Supreme Court. Plaintiffs alleged that State Farm recruited a little-known trial judge, Judge Lloyd A. Karmeier, to run for the vacant Supreme Court seat, and then managed his campaign behind the scenes, and secretly funded it to the tune of almost $4 million. Then, after Justice Karmeier was elected, State Farm hid its involvement in his campaign to ensure that Justice Karmeier could participate in the pending

appeal of the $1.05 billion judgment. State Farm's scheme was successful: Justice Karmeier joined the otherwise "deadlocked" deliberations and voted to decertify the class and overturn the judgment.

In a 2012 lawsuit filed in federal court, Plaintiffs alleged that this secretive scheme to seat a sympathetic justice—and then to lie about it, so as secure that justice's participation in the pending appeal—violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), and deprived Plaintiffs of their interest in the billion-dollar judgment. Judge David R. Herndon certified the class in October 2016, and the Seventh Circuit denied State Farm's petition to appeal the ruling in December 2016 and again in May 2017. On August 21, 2018, Judge David R. Herndon issued two new Orders favorable to plaintiffs relating to evidence and testimony to be included in the trial. On September 4, 2018, the day the trial was to begin, Judge Herndon gave preliminary approval to a $250 million settlement of the case, and on December 13, 2018, Judge Herndon gave the settlement final approval.



***WILLIAMSON V. MCAFEE, INC.,* NO. 14-CV-00158-EJD (N.D. CAL.)**

This nationwide class action alleged that McAfee falsely represented the prices of its computer anti-virus software to customers enrolled in its "autorenewal" program. Plaintiffs alleged that McAfee: (a) offered non-auto-renewal subscriptions at stated "discounts" from a "regular" sales price; however, the stated discounts were false because McAfee never sold subscriptions at the stated "regular" price to non-auto-renewal customers; and (b) charged the auto-renewal customers the amount of the false "regular" sales price, claiming it to be the "current" regular price even though it did not sell subscriptions at that price to any other customer. Plaintiffs alleged that McAfee's false reference price scheme violated California's and New York's unfair competition and false advertising laws. In 2017, a class settlement was approved that included monetary payments to claimants and practice changes.



***DOVER V. BRITISH AIRWAYS,* CASE NO. 1:12-CV-05567 (E.D.N.Y.)**

Lieff Cabraser represented participants in British Airways' ("BA") frequent flyer program, known as the Executive Club, in a breach of contract class action lawsuit. BA imposes a very high "fuel surcharge," often in excess of $500, on Executive Club reward tickets. Plaintiffs alleged that the "fuel surcharge" was not based upon the price of fuel, and that it therefore violated the terms of the contract. The case was heavily litigated for five years, and settled on the verge of trial for a $42.5 million common fund. Class members had the choice of a cash refund or additional flyer miles based on the number of tickets redeemed during the class period, with a total settlement value of up to $63 million.

U.S. Magistrate Judge Cheryl Pollak signed off on the settlement on May 30, 2018: "In light of the court's experience throughout the course of this litigation — and particularly in light of the contentiousness of earlier proceedings, the inability of the parties to settle during previous mediation attempts and the parties' initial positions when they appeared for the settlement conferences with the court — the significant benefit that the settlement will provide to class members is remarkable."

***HANSELL V. TRACFONE WIRELESS,* NO. 13-CV-3440-EMC (N.D. CAL.); *BLAQMOOR V. TRACFONE WIRELESS,* NO. 13-CV-05295-EMC (N.D. CAL.); *GANDHI V. TRACFONE WIRELESS,* NO. 13-CV-05296-EMC (N.D. CAL.)**

At the time one of the nation's largest wireless carriers, TracFone used the brands Straight Talk, Net10, Telcel America, and Simple Mobile to sell mobile phones with prepaid wireless plans at Walmart and other retail stores nationwide. This class action lawsuit alleged that TracFone falsely advertised its wireless mobile phone plans as providing "unlimited data," while actually maintaining monthly data usage limits that were not disclosed to customers. It further alleged that TracFone regularly throttled (i.e., significantly reduced the speed of) or

terminated customers' data plans pursuant to the secret limits.

Further, TracFone and its brands could no longer state in their advertisements and marketing materials that any plan provided "unlimited data" unless there was also a clear, prominent, and adjoining disclosure of any applicable throttling caps or limits. Notably, following two years of litigation by class counsel, the Federal Trade Commission joined the cased and filed a Consent Order with TracFone in the same federal court where the class action litigation was pending. All compensation to consumers was provided through the class action settlement.



### *GUTIERREZ V. WELLS FARGO BANK,* NO. C 07-05923 WHA (N.D. CAL.)

Following a two week bench class action trial, U.S. District Court Judge William Alsup in August 2010 issued a 90-page opinion holding that Wells Fargo violated California law by improperly and illegally assessing overdraft fees on its California customers and ordered $203 million in restitution to the certified class. Instead of posting each transaction chronologically, the evidence presented at trial showed that Wells Fargo deducted the largest charges first, drawing down available balances more rapidly and triggering a higher volume of overdraft fees.

Wells Fargo appealed. In December 2012, the Appellate Court issued an opinion upholding and reversing portions of Judge Alsup's order, and remanded the case to the District Court for further proceedings. In May 2013, Judge Alsup reinstated the $203 million judgment against Wells Fargo and imposed post-judgment interest bringing the total award to nearly $250 million. On October 29, 2014, the Appellate Court affirmed the Judge Alsup's order reinstating the judgment.

For his outstanding work as Lead Trial Counsel and the significance of the case, California Lawyer magazine recognized Richard M. Heimann with a California Lawyer Attorney of the Year (CLAY) Award. In addition, the Consumer Attorneys of California selected Mr. Heimann and Michael W. Sobol as Finalists for the Consumer Attorney of the Year Award for their success in the case.

In reviewing counsel's request for attorneys' fees, Judge Alsup stated on May 21, 2015:

"Lieff Cabraser, on the other hand, entered as class counsel and pulled victory from the jaws of defeat. They bravely confronted several obstacles including the possibility of claim preclusion based on a class release entered in state court (by other counsel), federal preemption, hard-fought dispositive motions, and voluminous discovery. They rescued the case [counsel that originally filed] had botched and secured a full recovery of $203 million in restitution plus injunctive relief. Notably, Attorney Richard Heimann's trial performance ranks as one of the best this judge has seen in sixteen years on the bench. Lieff Cabraser then twice defended the class on appeal. At oral argument on the present motion, in addition to the cash restitution, Wells Fargo acknowledged that since 2010, its posting practices changed nationwide, in part, because of the injunction. Accordingly, this order allows a multiplier of 5.5 mainly on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment."



### *IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION,* MDL NO. 1629 (D. MASS.)

Lieff Cabraser served on the Plaintiffs' Steering Committee in multidistrict litigation arising out of the sale and marketing of the prescription drug Neurontin, manufactured by Parke-Davis, a division of Warner-Lambert Company, which was later acquired by Pfizer, Inc. Lieff Cabraser served as co-counsel to Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser") in Kaiser's trial against Pfizer in the litigation.

On March 25, 2010, a federal court jury determined that Pfizer violated a federal antiracketeering law by promoting its drug Neurontin for unapproved uses and found Pfizer must pay Kaiser damages of up to $142 million. At trial, Kaiser presented evidence that Pfizer knowingly marketed Neurontin for unapproved uses without proof that it was effective. Kaiser said it was misled into believing

neuropathic pain, migraines, and bipolar disorder were among the conditions that could be treated effectively with Neurontin, which was approved by the FDA as an adjunctive therapy to treat epilepsy and later for post-herpetic neuralgia, a specific type of neuropathic pain.

In November 2010, the Court issued Findings of Fact and Conclusions of Law on Kaiser's claims arising under the California Unfair Competition Law, finding Pfizer liable and ordering that it pay restitution to Kaiser of approximately $95 million. In April 2013, the First Circuit Court of Appeals affirmed both the jury's and the District Court's verdicts. In November 2014, the Court approved a $325 million settlement on behalf of a nationwide class of third party payors.



### IN RE CHECKING ACCOUNT OVERDRAFT LITIGATION, MDL NO. 2036 (S.D. FL.)

Lieff Cabraser served on the Plaintiffs' Executive Committee ("PEC") in Multi-District Litigation against 35 banks, including Bank of America, Chase, Citizens, PNC, Union Bank, and U.S. Bank. The complaints alleged that the banks entered debit card transactions from the "largest to the smallest" to draw down available balances more rapidly and maximize overdraft fees. In March 2010, the Court denied defendants' motions to dismiss the complaints. The Court has approved nearly $1 billion in settlements with the banks.

In November 2011, the Court granted final approval to a $410 million settlement of the case against Bank of America. Lieff Cabraser was the lead plaintiffs' law firm on the PEC that prosecuted the case against Bank of America. In approving the settlement with Bank of America, U.S. District Court Judge James Lawrence King stated, "This is a marvelous result for the members of the class." Judge King added, "[B]ut for the high level of dedication, ability and massive and incredible hard work by the Class attorneys . . . I do not believe the Class would have ever seen . . . a penny."

In September 2012, the Court granted final approval to a $35 million settlement of the case against Union Bank. In approving the settlement, Judge King again complimented plaintiffs' counsel for their outstanding work and effort in resolving the case: "The description of plaintiffs' counsel, which is a necessary part of the settlement, is, if anything,

understated. In my observation of the diligence and professional activity, it's superb. I know of no other class action case anywhere in the country in the last couple of decades that's been handled as efficiently as this one has, which is a tribute to the lawyers."



### IN RE APPLE AND AT&T IPAD UNLIMITED DATA PLAN LITIGATION, NO. 5:10-CV-02553 RMW (N.D. CAL.)

Lieff Cabraser served as class counsel in an action against Apple and AT&T charging that Apple and AT&T misrepresented that consumers purchasing an iPad with 3G capability could choose an unlimited data plan for a fixed monthly rate and switch in and out of the unlimited plan on a monthly basis as they wished. Less than six weeks after its introduction to the U.S. market, AT&T and Apple discontinued their unlimited data plan for any iPad 3G customers not currently enrolled and prohibited current unlimited data plan customers from switching back and forth from a less expensive, limited data plan. In March 2014, Apple agreed to compensate all class members $40 and approximately 60,000 claims were paid. In addition, sub-class members who had not yet entered into an agreement with AT&T were offered a data plan.

### TELEPHONE CONSUMER PROTECTION ACT LITIGATION

Lieff Cabraser serves as a leader in nationwide Telephone Consumer Protection Act ("TCPA") class actions challenging unwanted telephone calls. Based on Lieff Cabraser's experience and expertise in these cases, courts have appointed Lieff Cabraser as co-lead counsel in certified TCPA class actions that have recovered over $440 million. Lieff Cabraser also currently maintains leadership roles in ongoing nationwide class actions against several other companies that make telemarketing calls without consent, including Campbell v. Sirius XM Radio, Inc., Case No. 2:22-cv-02261 (C.D. Ill.) and Newman v. Direct Energy, LP, Case No. 4:23-cv-01388 (S.D. Tex.).



***HEALY V. CHESAPEAKE APPALACHIA, NO. 1:10CV00023 (W.D. VA.); HALE V. CNX GAS, NO. 1:10CV00059 (W.D. VA.); ESTATE OF HOLMAN V. NOBLE ENERGY, NO. 03 CV 9 (DIST. CT., CO.); DROEGEMUELLER V. PETROLEUM DEVELOPMENT CORPORATION, NO. 07 CV 2508 JLK (D. CO.); ANDERSON V. MERIT ENERGY CO., NO. 07 CV 00916 LTB (D. CO.); HOLMAN V. PETRO-CANADA RESOURCES, (USA), NO. 07 CV 416 (DIST. CT., CO.)***

Lieff Cabraser served as Co-Lead Counsel in multiple cases in federal court in Virginia, in which plaintiffs alleged that certain natural gas companies improperly underpaid gas royalties to the owners of the gas. In one of the settled cases, plaintiffs recovered approximately 95% of the damages they suffered. Lieff Cabraser also achieved settlements on behalf of natural gas royalty owners in five other class actions outside Virginia. Those settlements—in which class members recovered between 70% and 100% of their damages, excluding interest—were valued at more than $160 million.



***WALSH V. KINDRED HEALTHCARE INC., NO. 3:11-CV-00050 (N.D. CAL.)***

Lieff Cabraser and co-counsel represented a class of 54,000 current and former residents, and families of residents, of skilled nursing care facilities in a class action against Kindred Healthcare for failing to adequately staff its nursing facilities in California. Since January 1, 2000, skilled nursing facilities in California have been required to provide at least 3.2 hours of direct nursing hours per patient day (NHPPD), which represented the minimum staffing required for patients at skilled nursing facilities.

The complaint alleged a pervasive and intentional failure by Kindred Healthcare to comply with California's required minimum standard for qualified nurse staffing at its facilities. Understaffing is uniformly viewed as one of the primary causes of the inadequate care and often unsafe conditions in skilled nursing facilities. Studies have repeatedly shown a direct correlation between inadequate skilled nursing care and serious health problems, including a greater likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death. The complaint further charged that Kindred Healthcare collected millions of dollars in payments from residents and their family members, under the false pretense that it was in compliance with California staffing laws and would continue to do so.

In December 2013, the Court approved a $8.25 million settlement which included cash payments to class members and an injunction requiring Kindred Healthcare to consistently utilize staffing practices which would ensure they complied with applicable California law. The injunction, subject to a third party monitor, was valued at between $6 million and $20 million.



***ING BANK RATE RENEW CASES, CASE NO. 11-154-LPS (D. DEL.)***

Lieff Cabraser represented borrowers in class action lawsuits charging that ING Direct breached its promise to allow them to refinance their mortgages for a flat fee. From October 2005 through April 2009, ING promoted a $500 or $750 flat-rate refinancing fee called "Rate Renew" as a benefit of choosing ING for mortgages over competitors. Beginning in May 2009, however, ING began charging a higher fee of a full monthly mortgage payment for refinancing using "Rate Renew," despite ING's earlier and lower advertised price. As a result, the complaint alleged that many borrowers paid more to refinance their loans using "Rate Renew" than they should have, or were denied the opportunity to refinance their loan even though the borrowers met the terms and conditions of ING's original "Rate Renew" offer.

In August 2012, the Court certified a class of consumers in ten states who purchased or retained an ING mortgage from October 2005 through April 2009. A second case on behalf of California consumers was filed in December 2012. In October 2014, the Court approved a $20.35 million nationwide settlement of the litigation. The settlement provided an average payment of $175 to the nearly 100,000 class members, transmitted to their accounts automatically and without any need to file a claim form.



***IN RE CHASE BANK USA, N.A. "CHECK LOAN" CONTRACT LITIGATION, MDL NO. 2032 (N.D. CAL.)***

Lieff Cabraser served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in Multi-District Litigation ("MDL") charging that Chase Bank violated the implied covenant of good faith and fair dealing by unilaterally modifying the terms of fixed rate loans. The MDL was established in 2009 to coordinate more than two dozen cases that were filed in the wake of the conduct at issue. The nationwide, certified class consisted of more than 1 million Chase cardholders who, in 2008 and 2009, had their monthly minimum payment requirements unilaterally increased by Chase by more than 150%. Plaintiffs alleged that Chase made this change, in part, to induce cardholders to give up their promised fixed APRs in order to avoid the unprecedented minimum payment hike. In November 2012, the Court approved a $100 million settlement of the case.



***IN RE LAWN MOWER ENGINE HORSEPOWER MARKETING AND SALES PRACTICES LITIGATION, MDL NO. 1999 (E.D. WIS.)***

Lieff Cabraser served as co-counsel for consumers who alleged manufacturers of certain gasoline-powered lawn mowers misrepresented, and significantly overstated, the horsepower of the product. As the price for lawn mowers is linked to the horsepower of the engine -- the higher the horsepower, the more expensive the lawn mower — defendants' alleged misconduct caused consumers to purchase expensive lawn mowers that provided lower horsepower than advertised. In August 2010, the Court approved a $65 million settlement of the action.

***VYTORIN/ZETIA MARKETING, SALES PRACTICES & PRODUCTS LIABILITY LITIGATION, MDL NO. 1938 (D. N.J.)***

Lieff Cabraser served on the Executive Committee of the Plaintiffs' Steering Committee representing plaintiffs alleging that Merck/Schering-Plough Pharmaceuticals falsely marketed anti-cholesterol drugs Vytorin and Zetia as being more effective than other anti-cholesterol drugs. Plaintiffs further alleged that Merck/Schering-Plough Pharmaceuticals sold Vytorin and Zetia at higher prices than other anti-cholesterol medication when they were no more effective than other drugs. In 2010, the Court approved a $41.5 million settlement for consumers who bought Vytorin or Zetia between November 2002 and February 2010.

***BRAZIL V. DELL,*** NO. C-07-01700 RMW (N.D. CAL.)

Lieff Cabraser served as Class Counsel representing a certified class of online consumers in California who purchased certain Dell computers based on the advertisement of an instant-off (or "slash-through") discount. The complaint challenged Dell's pervasive use of "slash-through" reference prices in its online marketing. Plaintiffs alleged that these "slash-through" reference prices were interpreted by consumers as representing Dell's former or regular sales prices, and that such reference prices (and corresponding representations of "savings") were false because Dell rarely, if ever, sold its products at such prices. In October 2011, the Court approved a settlement that provided a $50 payment to each class member who submitted a timely and valid claim. In addition, in response to the lawsuit, Dell changed its methodology for consumer online advertising, eliminating the use of "slash-through" references prices.



***PAYMENT PROTECTION CREDIT CARD LITIGATION***

Lieff Cabraser represented consumers in litigation in federal court against some of the nation's largest credit card issuers, challenging the imposition of charges for so-called "payment protection" or "credit protection" programs. The complaints charged that the credit card companies imposed payment protection without the consent of the consumer and/or deceptively marketed the service, and further that the credit card companies unfairly administered their payment protection programs to the detriment of consumers. In 2012 and 2013, the Courts approved monetary settlements with HSBC ($23.5 million), Bank of America ($20 million), and Discover ($10 million) that also required changes in the marketing and sale of payment protection to consumers.



### YARRINGTON V. SOLVAY PHARMACEUTICALS, NO. 09-CV-2261 (D. MINN.)

In March 2010, the Court granted final approval to a $16.5 million settlement with Solvay Pharmaceuticals, one of the country's leading pharmaceutical companies. Lieff Cabraser served as Co-Lead Counsel, representing a class of persons who purchased Estratest—a hormone replacement drug. The class action lawsuit alleged that Solvay deceptively marketed and advertised Estratest as an FDA-approved drug when in fact Estratest was not FDA-approved for any use. Under the settlement, consumers obtained partial refunds for up to 30% of the purchase price paid of Estratest. In addition, $8.9 million of the settlement was allocated to fund programs and activities devoted to promoting women's health and well-being at health organizations, medical schools, and charities throughout the nation.



### IN RE JOHN MUIR UNINSURED HEALTHCARE CASES, JCCP NO. 4494 (CAL. SUPR. CT.)

Lieff Cabraser represented nearly 53,000 uninsured patients who received care at John Muir hospitals and outpatient centers and were charged inflated prices and then subject to overly aggressive collection practices when they failed to pay.

In November 2008, the Court approved a final settlement of the John Muir litigation. John Muir agreed to provide refunds or bill adjustments of 40-50% to uninsured patients who received medical care at John Muir over a six year period, bringing their charges to the level of patients with private insurance, at a value of $115 million. No claims were required. Every class member received a refund or bill adjustment. Furthermore, John Muir was required to (1) maintain charity care policies to give substantial discounts—up to 100%—to low income, uninsured patients who meet certain income requirements;

(2) maintain an Uninsured Patient Discount Policy to give discounts to all uninsured patients, regardless of income, so that they pay rates no greater than those paid by patients with private insurance; (3) enhance communications to uninsured patients so they are better advised about John Muir's pricing discounts, financial assistance, and financial counseling services; and (4) limit the practices for collecting payments from uninsured patients.



### IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION, MDL NO. 1715

Lieff Cabraser served as Co-Lead Counsel for borrowers who alleged that Ameriquest engaged in a predatory lending scheme based on the sale of loans with illegal and undisclosed fees and terms. In August 2010, the Court approved a $22 million settlement.

### CATHOLIC HEALTHCARE WEST CASES, JCCP NO. 4453 (CAL. SUPR. CT.)

Plaintiff alleged that Catholic Healthcare West ("CHW") charged uninsured patients excessive fees for treatment and services, at rates far higher than the rates charged to patients with private insurance or on Medicare. In January 2007, the Court approved a settlement that provides discounts, refunds and other benefits for CHW patients valued at $423 million. The settlement requires that CHW lower its charges and end price discrimination against all uninsured patients, maintain generous charity case policies allowing low-income and uninsured patients to receive free or heavily discounted care, and protect uninsured patients from unfair collections practices. Lieff Cabraser served as Lead Counsel in the coordinated action.

### BERGER V. PROPERTY I.D. CORPORATION, NO. CV 05-5373-GHK (C.D. CAL.)

In January 2009, the Court granted final approval to a $39.4 million settlement with several of the nation's largest real estate brokerages, including companies doing business as Coldwell Banker, Century 21, and ERA Real Estate, and California franchisors for RE/MAX and Prudential California Realty, in an action under the Real

Estate Settlement Procedures Act on behalf of California home sellers. Plaintiffs charged that the brokers and Property I.D. Corporation set up straw companies as a way to disguise kickbacks for referring their California clients' natural hazard disclosure report business to Property I.D. (the report is required to sell a home in California). Under the settlement, hundreds of thousands of California home sellers were eligible to receive a full refund of the cost of their report, typically about $100.



### HEPTING V. AT&T CORP., CASE NO. C-06-0672-VRW (N.D. CAL.)

Plaintiffs alleged that AT&T collaborated with the National Security Agency in a massive warrantless surveillance program that illegally tracked the domestic and foreign communications and communications records of millions of Americans in violation of the U.S. Constitution, Electronic Communications Privacy Act, and other statutes. The case was filed on January 2006. The U.S. government quickly intervened and sought dismissal of the case. By the Spring of 2006, over 50 other lawsuits were filed against various telecommunications companies, in response to a USA Today article confirming the surveillance of communications and communications records. The cases were combined into a multi-district litigation proceeding entitled In re National Security Agency Telecommunications Record Litigation, MDL No. 06-1791.

In June of 2006, the District Court rejected both the government's attempt to dismiss the case on the grounds of the state secret privilege and AT&T's arguments in favor of dismissal. The government and AT&T appealed the decision and the U.S. Court of Appeals for the Ninth Circuit heard argument one year later. No decision was issued. In July 2008, Congress granted the government and AT&T "retroactive immunity" for liability for their wiretapping program under amendments to the Foreign Intelligence Surveillance Act that were drafted in response to this litigation. Signed into law by President Bush in 2008, the amendments effectively terminated the litigation. Lieff Cabraser played a leading role in the litigation working closely with co-counsel from the Electronic Frontier Foundation.

### CINCOTTA V. CALIFORNIA EMERGENCY PHYSICIANS MEDICAL GROUP, NO. 07359096 (CAL. SUPR. CT.)

Lieff Cabraser served as class counsel for nearly 100,000 uninsured patients that alleged they were charged excessive and unfair rates for emergency room service across 55 hospitals throughout California. The settlement, approved on October 31, 2008, provided complete debt elimination, 100% cancellation of the bill, to uninsured patients treated by California Emergency Physicians Medical Group during the 4-year class period. These benefits were valued at $27 million. No claims were required, so all of these bills were canceled. In addition, the settlement required California Emergency Physicians Medical Group prospectively to (1) maintain certain discount policies for all charity care patients; (2) inform patients of the available discounts by enhanced communications; and (3) limit significantly the type of collections practices available for collecting from charity care patients.



### R.M. GALICIA V. FRANKLIN; FRANKLIN V. SCRIPPS HEALTH, NO. IC 859468 (SAN DIEGO SUPR. CT.)

Lieff Cabraser served as Lead Class Counsel in a certified class action lawsuit on behalf of 60,750 uninsured patients who alleged that the Scripps Health hospital system imposed excessive fees and charges for medical treatment. The class action originated in July 2006, when uninsured patient Phillip Franklin filed a class action cross-complaint against Scripps Health after Scripps sued Mr. Franklin through a collection agency. Mr. Franklin alleged that he, like all other uninsured patients of Scripps Health, was charged unreasonable and unconscionable rates for his medical treatment.

In June 2008, the Court granted final approval to a settlement of the action which includes refunds or discounts of 35% off of medical bills, collectively worth $73 million. The settlement also required Scripps Health to modify its pricing and collections practices by (1) following an Uninsured Patient Discount Policy, which includes automatic discounts from billed charges for Hospital Services; (2) following a Charity Care Policy, which provides uninsured patients who meet certain income tests with discounts on Health Services up to 100% free care, and provides for charity discounts under other special circumstances; (3) informing uninsured patients about the availability and terms of the above financial

assistance policies; and (4) restricting certain collections practices and actively monitoring outside collection agents.

### *SUTTER HEALTH UNINSURED PRICING CASES,* JCCP NO. 4388 (CAL. SUPR. CT.)

Plaintiffs alleged that they and a Class of uninsured patients treated at Sutter hospitals were charged substantially more than patients with private or public insurance, and many times above the cost of providing their treatment. In December 2006, the Court granted final approval to a comprehensive and groundbreaking settlement of the action. As part of the settlement, Class members were entitled to make a claim for refunds or deductions of between 25% to 45% from their prior hospital bills, at an estimated total value of $276 million. For a three year period, Sutter agreed to provide discounted pricing policies for uninsureds. In addition, Sutter agreed to maintain more compassionate collections policies that will protect uninsureds who fall behind in their payments. Lieff Cabraser served as Lead Counsel in the coordinated action.



### *STRUGANO V. NEXTEL COMMUNICATIONS,* NO. BC 288359 (LOS ANGELES SUPR. CT.)

In May 2006, the Los Angeles Superior Court granted final approval to a class action settlement on behalf of all California customers of Nextel from January 1, 1999 through December 31, 2002, for compensation for the harm caused by Nextel's alleged unilateral (1) addition of a $1.15 monthly service fee and/ or (2) change from second-by-second billing to minute-by-minute billing, which caused "overage" charges (i.e., for exceeding their allotted cellular plan minutes). The total benefit conferred by the Settlement directly to Class Members was between approximately $13.5 million and $55.5 million, depending on which benefit Class Members selected.

### *THOMPSON V. WFS FINANCIAL,* NO. 3-02-0570 (M.D. TENN.); *PAKEMAN V. AMERICAN HONDA FINANCE CORPORATION,* NO. 3-02-0490 (M.D. TENN.); *HERRA V. TOYOTA MOTOR CREDIT CORPORATION,* NO. CGC 03-419 230 (SAN FRANCISCO SUPR. CT.)

Lieff Cabraser with co-counsel litigated against several of the largest automobile finance companies in the country to compensate victims of—and stop future instances of—racial discrimination in the setting of interest rates

in automobile finance contracts. The litigation led to substantial changes in the way Toyota Motor Credit Corporation ("TMCC"), American Honda Finance Corporation ("American Honda") and WFS Financial, Inc. sell automobile finance contracts, limiting the discrimination that can occur.

In approving the settlement in *Thompson v. WFS Financial*, the Court recognized the "innovative" and "remarkable settlement" achieved on behalf of the nationwide class. In 2006 in Herra v. Toyota Motor Credit Corporation, the Court granted final approval to a nationwide class action settlement on behalf of all African-American and Hispanic customers of TMCC who entered into retail installment contracts that were assigned to TMCC from 1999 to 2006. The monetary benefit to the class was estimated to be between $159 and $174 million.



### *MORRIS V. AT&T WIRELESS SERVICES,* NO. C-04-1997-MJP (W.D. WASH.)

Lieff Cabraser served as class counsel for a nationwide settlement class of cell phone customers subjected to an end-of-billing cycle cancellation policy implemented by AT&T Wireless in 2003 and alleged to have breached customers' service agreements. In May 2006, the New Jersey Superior Court granted final approval to a class settlement that guarantees delivery to the class of $40 million in benefits. Class members received cash-equivalent calling cards automatically, and had the option of redeeming them for cash. Lieff Cabraser had been prosecuting the class claims in the Western District of Washington when a settlement in New Jersey state court was announced. Lieff Cabraser objected to that settlement as inadequate because it would have only provided $1.5 million in benefits without a cash option, and the Court agreed, declining to approve it. Thereafter, Lieff Cabraser negotiated the new settlement providing $40 million to the class, and the settlement was approved.

### *CURRY V. FAIRBANKS CAPITAL CORPORATION,* NO. 03-10895-DPW (D. MASS.)

In 2004, the Court approved a $55 million settlement of a

class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans. The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers. Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners

### PROVIDIAN CREDIT CARD CASES, JCCP NO. 4085 (SAN FRANCISCO SUPR. CT.)

Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services. In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices. The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.



### IN RE TRI-STATE CREMATORY LITIGATION, MDL NO. 1467 (N.D. GA.)

In March 2004, Lieff Cabraser delivered opening statements and began testimony in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia. The families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by human decency. One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million. Trial on the class members' claims against the operators of crematory began in August 2004.

Soon thereafter, these defendants entered into a $80 million settlement with plaintiffs. As part of the settlement, all buildings on the Tri-State property were razed. The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory

operations or other inappropriate activities from ever taking place there. Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order. 215 F.R.D. 660 (2003).

### KLINE V. THE PROGRESSIVE CORPORATION, CIRCUIT NO. 02-L-6 (CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT, JOHNSON COUNTY, ILLINOIS)

Lieff Cabraser served as Settlement Class Counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices. Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified. In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief. The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

### CITIGROUP LOAN CASES, JCCP NO. 4197 (SAN FRANCISCO SUPR. CT.)

In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America. Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders. Lieff Cabraser represented former customers of The Associates charging that the company added unwanted and unnecessary insurance products onto mortgage loans and engaged in improper loan refinancing practices. Lieff Cabraser served as nationwide Plaintiffs' Co-Liaison Counsel.



### REVERSE MORTGAGE CASES, JCCP NO. 4061 (SAN MATEO COUNTY SUPR. CT., CAL.)

Transamerica Corporation, through its subsidiary Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime." The Lifetime reverse mortgages were sold exclusively to seniors, i.e., persons 65 years or older. Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees. In 2003, the Court granted final approval to an $8 million settlement of the action.

***IN RE SYNTHROID MARKETING LITIGATION,*** **MDL NO. 1182 (N.D. ILL.)**

Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid. The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available. In 2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings. 264 F.3d 712 (7th Cir. 2001). The settlement proceeds were distributed in 2003.



***IN RE AMERICAN FAMILY ENTERPRISES,*** **MDL NO. 1235 (D. N.J.)**

Lieff Cabraser served as Co-Lead Counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers." The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize. In September 2000, the Court granted final approval of a $33 million settlement of the class action. In April 2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases. In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

### CALIFORNIA TITLE INSURANCE INDUSTRY LITIGATION

Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings. The settlements brought a total of $50 million in restitution to California consumers, including cash payments. In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers. The defendant companies include

Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.



***VW PORSCHE AUDI BENTLEY REDUCED FUEL ECONOMY MPG LAWSUIT***

In 2015, the U.S. Environmental Protection Agency issued a Notice of Violation to Volkswagen relating to 475,000 diesel-powered cars in the United States sold since 2008 under the VW and Audi brands on which VW installed "cheat device" software that intentionally changed the vehicles' emissions production during official testing. The emissions controls were turned off during actual road use, producing up to 40x more pollutants than the testing amounts in an extraordinary violation of U.S. clean air laws.

Private vehicle owners, government agencies, and attorneys general all sought relief from VW through litigation in U.S. courts. Civil cases and government claims were consolidated in federal court in Northern California, and U.S. District Judge Charles Breyer named Elizabeth Cabraser as Lead Counsel and Chair of the 22-member Plaintiffs Steering Committee in February of 2016. After nine months of intensive negotiation and extraordinary coordination led on the class plaintiffs' side by Lieff Cabraser founding partner Elizabeth Cabraser, a set of interrelated settlements totaling $14.7 billion were given final approval in 2016.

On May 11, 2017, a further settlement with a value of $1.2-$4.04 billion relating to VW's 3.0- liter engine vehicles received final approval. The Volkswagen emissions settlement was one of the largest payments in American history and the largest known consumer class settlement. The settlements were also unprecedented for their scope and complexity, involving the Department of Justice, Environmental Protection Agency (EPA), California Air Resources Board (CARB) and California Attorney General, the Federal Trade Commission (FTC), and private plaintiffs. The VW settlements were also wildly successful: Volkswagen removed from commerce or performed complete emissions modification on over 93% of all 2.0-liter vehicles, with over $8.4 billion in buyback offers, and buyback offers are past the $1 billion mark for 3.0-liter cars with over 90% of the those vehicles removed from commerce or modified.

# CYBERSECURITY & DATA PRIVACY

Lieff Cabraser's Privacy & Cybersecurity practice group is a nationally-recognized leader in the pursuit of preserving individual privacy against the pervasive intrusions of digital technology into all aspects of our daily lives. Our firm has a proven track record of successfully taking-on the powerhouses of "big data" and social media. The Privacy & Cybersecurity practice group's honors include the National Law Journal's 2019 Elite Trial Lawyers award for privacy and data breach litigation and recognition as Law360's 2017 Data Privacy Practice Group of the Year.

## Representative Current Cases



### FACEBOOK PIXEL VIDEO PRIVACY PROTECTION ACT CASES

Lieff Cabraser, with co-counsel, has filed a series of privacy class action lawsuits alleging that defendants (video streaming services, media companies, etc.) disclose private customer information to Meta Platforms, Inc., f/k/a Facebook, in violation of the Video Privacy Protection Act. Plaintiffs allege that defendants have secretly, and without users' consent, embedded tracking software known as the Meta "Pixel" on their websites, so that an ordinary person could identify a specific individual's video watching-behavior using that individual's Facebook ID.

These cases are in different procedural stages. On March 5, 2024, a the court granted final approval of a $2.625 million class action settlement in *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502-AK (D. Mass.). Plaintiff survived a motion to dismiss and obtained a favorable ruling in *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *1 (S.D.N.Y. Nov. 17, 2022), motion to certify appeal denied, No. 22 CIV.6348 (AKH), 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) (The Facebook ID disclosed by defendant "is sufficient for an ordinary person to identify Plaintiff and similarly situated individuals" and comprises PII under the VPPA). On January 22, 2023, the court granted preliminary approval of a class settlement. In *Vela, et al v. AMC Networks, Inc. d/b/a AMC+*, No. 1:23-cv-02524-ALC (S.D.N.Y.), the Court granted preliminary approval of a proposed settlement on January 10, 2024.  And

in *Collins, et al. v. Pearson Education, Inc.*, on March 1, 2024, the Court denied Defendant's motion to strike and motion to dismiss. See *Collins v. Pearson Educ., Inc.*, No. 23 CIV. 2219 (PAE), 2024 WL 895316, at *1 (S.D.N.Y. Mar. 1, 2024).

Other cases are in litigation and/or disclosed mediation postures.



### ORACLE/DATA BROKER CONSUMER PRIVACY VIOLATIONS

Lieff Cabraser represents consumers in a class action lawsuit in federal court in California against tech giant Oracle, one of the world's largest data brokers. The lawsuit alleges Oracle improperly collects and sells the personal information of consumers to third parties without their consent, including detailed data on their behaviors, movements, social relationships, and interests. The complaint describes Oracle as key player in the "adtech" space, where massive volumes of personal information on the world's population is aggregated and used to identify and profile individuals for "targeted advertising" and/or other commercial and political purposes. As alleged in the complaint, this exploitation of personal information is based on invading consumers' privacy. Oracle's surreptitious data collection practices are not dependent upon any relationship that an Internet user has with Oracle, in fact, Oracle primarily collects data from persons with no privity whatsoever to Oracle. The Oracle case is currently in discovery.



**DELAPAZ, ET AL. V. HCA HEALTHCARE, INC.,** CASE NO. 3:23-CV-00718 (D. TENN.)

In July 2023, Lieff Cabraser and co-counsel filed a class action lawsuit in federal district court in the Middle District of Tennessee against HCA Healthcare Inc. for negligence, breach of confidence, deceptive trade practices, and unjust enrichment, among other charges, relating to a massive data breach that exposed private personal data relating to approximately 11 million patients. HCA Healthcare Inc. is a Nashville, Tennessee-based company which describes itself as "one of the nation's largest healthcare providers, with hundreds of hospitals and clinics across the country." On July 10, 2023, HCA announced that a list with names, email addresses, phone numbers, birth dates, and appointment information had been fully exposed online. HCA indicated it was still investigating the exposure and would not confirm how many patients were affected, but noted that the list contained 27 million rows of data on about 11 million patients. The data privacy lawsuit seeks declaratory and injunctive relief as well as compensatory and general damages.

### HOWARD, ET AL. V. LABORATORY CORPORATION OF AMERICA, ET AL., 23-CV-00758-UA-JEP (M.D.N.C.)

Lieff Cabraser and co-counsel have filed a class action lawsuit in the Middle District of North Carolina against Laboratory Corporation of America and Laboratory Corporation of America Holdings for collecting and facilitating the collection of identifiable and sensitive health information from users of Labcorp's website using invisible tracking technology, including the Meta Pixel. The case is currently in the midst of motion to dismiss briefing.



**IN RE GOOGLE LLC LOCATION HISTORY LITIGATION**, NO. 5:18-CV-05062-EJD (N.D. CAL.)

Lieff Cabraser serves as Co-Lead Interim Class Counsel representing individuals whose locations were tracked, and whose location information was stored and used by Google for its own purposes after the consumers disabled a feature that was supposed to prevent Google from storing a record of their locations. Plaintiffs allege that, for years, Google deliberately misled its users that their "Location History" settings would prevent Google from tracking and storing a permanent record of their movements, when in fact despite users' privacy settings, Google did so anyway. Plaintiffs allege that Google's conduct violates its users' reasonable expectations of privacy and is unlawful under the California Constitutional Right to Privacy and the common law of intrusion upon seclusion, as well as giving rise to claims for unjust enrichment and disgorgement. In November 2023, the Court granted preliminary approval of a settlement with Google, which provides for a $62 million payment and valuable injunctive relief. A final approval hearing is scheduled for April 18, 2024.



### KARLING, ET AL. V. SAMSARA INC., 22-CV-295 (N.D. ILL.)

Lieff Cabraser and co-counsel represent a proposed class of individuals who had their biometric information collected by Samsara Inc. in violation of Illinois' Biometric Information Privacy Act. In July 2022, Judge Sara Ellis denied Samsara's motion to dismiss in full, sustaining four claims under BIPA. The case is presently in discovery.

### CHABAK V. SOMNIA, NO. 22-CV-9341 (S.D.N.Y.).

Lieff Cabraser serves as Co-Lead Counsel in class action litigation against Somnia, Inc., an anesthesiology services provider and practice management company that manages numerous anesthesiology providers and individual anesthesiology providers over a 2022 data breach that impacted the personally identifiable information and private health information of almost half a million patients. Plaintiffs allege that Somnia and the anesthesiology providers Somnia manages failed to fulfill their legal duty to protect customers' sensitive personal, financial, and health information by implementing insufficient data security practices and providing insufficient notice after the breach. The complaint asserts claims for negligence, negligence per se, breach of confidence, unjust enrichment, and violations of numerous California consumer protection statutes. Parties are currently briefing defendants' motion to dismiss.



***CAVANAUGH V. LYTX, INC.***, 21-CV-5427 (N.D. ILL.)

Lieff Cabraser was appointed interim co-lead counsel in a proposed class action on behalf of individuals who had their biometric information collected by Lytx Inc. in violation of Illinois' Biometric Information Privacy Act. Plaintiffs filed their amended complaint in November 2022, and are awaiting its resolution.

***IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC., CUSTOMER DATA SEC. BREACH LITIG.***, NO. 19-MD-2904 (D. N.J.)

Lieff Cabraser serves as Co-Lead Counsel on the Quest track in class action litigation against Quest Diagnostics Inc., Laboratory Corporation of America, and other blood testing and diagnostic companies that shared, or facilitated the sharing of, customers' personal identifying financial and health information with a third-party debt collector American Medical Collection Agency that was breached. Plaintiffs allege that Quest (and other blood-testing labs) failed to fulfill its legal duty to protect customers' sensitive personal, financial, and health information by sharing it with a third-party that lacked adequate data security. The complaints against each lab company allege that they were negligent, unjustly enriched, and violated numerous state consumer protection statutes. In December 2021, the Court denied defendants' motions to dismiss in part and in September 2023, the Court denied defendants' second round of motions to dismiss in part. The case is nearing the close of discovery.



***META DMV DATA PRIVACY CLASS ACTION***

Lieff Cabraser represents the proposed plaintiff class in a action lawsuit alleging that Meta Platforms, formerly known as Facebook, violated privacy laws by obtaining users' protected personal information from the California Department of Motor Vehicles, including names, disability information, and e-mail addresses, as well as confidential communications.

The complaint alleges that Meta did this through the implementation of a ubiquitous but hidden tracking code known as the Meta "Pixel," which sends Meta time-stamped, personally-identifiable records of users' personal information, activities and communications on the California DMV website. Through the Pixel's surveillance, the complaint alleges that Meta is able to obtain vast quantities of private data on a daily basis from the DMV, including the first names of users who click into their "MyDMV" portal page; the identities of persons with disabilities who start disabled parking placard applications on the DMV website; e-mail addresses belonging to users who check the status of pending applications; and the personally identifying contents of communications between users and the DMV. The suit alleges that this widespread collection of personal information violates DMV website users' privacy rights under the Federal Driver's Privacy Protection Act and the California Invasion of Privacy Act.



***IN RE: MARRIOTT INT'L CUSTOMER DATA SEC. BREACH LITIG.***, NO. 19-MD-2879 (D. MD.)

Lieff Cabraser serves as a member of the Steering Committee in class action litigation against Marriott International Inc. and Accenture PLC for a 2018 data breach of Starwood Hotels affecting more than 100 million U.S. citizens. Plaintiffs allege that Marriott and Accenture failed to fulfill their legal duties to protect Marriott's customers' sensitive personal and financial information, causing class members' personal information, including credit card and passport numbers, to be exfiltrated by cybercriminals. In May 2022, then-U.S. District Court Judge Paul Grimm granted in part Plaintiffs' class certification motion, certifying three damages classes and four issues classes. In November 2023, after the Fourth Circuit remanded the action for the District Court to consider the import of Marriott's purported class action waiver, Judge John Preston Bailey reinstated the May 2022 classes certified by Judge Grimm.

# CYBERSECURITY & DATA PRIVACY

## Representative Achievements & Successes



***IN RE GOOGLE LLC STREET VIEW ELECTRONIC COMMUNICATIONS LITIGATION*, NO. 3:10-MD-021784-CRB (N.D. CAL.)**

Lieff Cabraser represents individuals whose right to privacy was violated when Google intentionally equipped its Google Maps "Street View" vehicles with Wi-Fi antennas and software that collected data transmitted by those persons' Wi-Fi networks located in their nearby homes. Google collected not only basic identifying information about individuals' Wi-Fi networks, but also personal, private data being transmitted over their Wi-Fi networks such as emails, usernames, passwords, videos, and documents. Plaintiffs allege that Google's actions violated the federal Wiretap Act, as amended by the Electronic Communications Privacy Act. On September 10, 2013, the Ninth Circuit Court of Appeals held that Google's actions were not exempt from the Act.

On March 20, 2020, U.S. District Judge Charles R. Breyer granted final approval to a $13 million settlement over Google's illegal gathering of network data via its Street View vehicle fleet. Given the difficulties of assessing precise individual harms, the innovative settlement, which is intended in part to disincentivize companies like Google from future privacy violations, will distribute its monies to eight nonprofit organizations with a history of addressing online consumer privacy issues. Judge Breyer's order to distribute the settlement funds to nonprofit organizations is currently on appeal.

***IN RE ANTHEM, INC. DATA BREACH LITIG.*, NO. 5:15-MD-02617 (N.D. CAL.)**

Lieff Cabraser served on the Plaintiffs' Steering Committee representing individuals in a class action lawsuit against Anthem for its alleged failure to safeguard and secure the medical records and other personally identifiable information of its members. The second largest health insurer in the U.S., Anthem provides coverage for 37.5 million Americans. Anthem's customer database was allegedly attacked by international hackers on December 10, 2014. Anthem says it discovered the breach on January 27, 2015, and reported it about a week later on February 4, 2015. California customers were informed around March 18, 2015. The theft included names, birth dates, social security numbers, billing information, and highly confidential health information. The complaint charged that Anthem violated its duty to safeguard and protect consumers' personal information, and violated its duty to disclose the breach to consumers in a timely manner. In addition, the complaint charged that Anthem was on notice about the weaknesses in its computer security defenses for at least a year before the breach occurred.

In August 2018, Judge Lucy H. Koh of the U. S. District Court for the Northern District of California granted final approval to a class action settlement which required Anthem to undertake significant additional cybersecurity measures to better safeguard information going forward, and to pay $115 million into a settlement fund from which benefits to settlement class members would be paid.



***IN RE PLAID INC. PRIVACY LITIG.*, NO. 4:20-CV-03056 (N.D. CAL.)**

Lieff Cabraser served as Co-Lead Interim Class Counsel in a class action lawsuit alleging that financial tech company Plaid Inc. invaded consumers' privacy in their financial affairs. Plaid provides third-party bank account authentication services for several well-known payment apps, such as Venmo, Coinbase, Square's Cash App, and Stripe. Plaintiffs alleged that Plaid used login screens that misleadingly looked like those of real banks to obtain consumers' banking account credentials, and subsequently used consumers' credentials to access their bank accounts and improperly take their banking data. Plaintiffs argued that Plaid's intrusions violated established social norms, and exposed consumers to

additional privacy risks. The lawsuit asserted claims under state and federal consumer protection and privacy laws. In July 2022, the court granted final approval to a $58 million settlement that included injunctive relief to stop the conduct and purge all improperly obtained data.



### BALDERAS V. TINY LAB PRODUCTIONS, ET AL., CASE 6:18-CV-00854 (D. NEW MEXICO)

Lieff Cabraser, with co-counsel, is working with the Attorney General of the State of New Mexico to represent parents, on behalf of their children, in a federal lawsuit seeking to protect children in the state from a foreign developer of child-directed apps and its marketing partners, including Google's ad network, Google AdMob. The lawsuit alleges that Google, child-app developer Tiny Lab Productions, and their co-defendants surreptitiously harvested children's personal information for profiling and targeting children for commercial gain, without adequate disclosures and verified parental consent. When children played Tiny Lab's gaming apps on their mobile devices, defendants collected and used their personal data, including geolocation, persistent identifiers, demographic characteristics, and other personal data in order to serve children with targeted advertisements or otherwise commercially exploit them.

The apps at issue, clearly and indisputably designed for children, include Fun Kid Racing, Candy Land Racing, and GummyBear and Friends Speed Racing. The action largely survived a motion to dismiss in 2020 and a motion for reconsideration of the same in 2021, and seeks redress under the federal Children's Online Privacy Protection Act and the common law. The State settled with Google in December 2021.



### CAMPBELL V. FACEBOOK, NO. 4:13-CV-05996 (N.D. CAL.)

Lieff Cabraser served as Co-Lead Class Counsel in a nationwide class action lawsuit alleging that Facebook intercepted certain private data in users' personal and private messages on the social network and profited by sharing that information with third parties.

In December 2014, the Court in large part denied Facebook's motion to dismiss. In rejecting one of Facebook's core arguments, U.S. District Court Judge Phyllis Hamilton stated: "An electronic communications service provider cannot simply adopt any revenue-generating practice and deem it 'ordinary' by its own subjective standard." In August of 2017, Judge Hamilton granted final approval to an injunctive relief settlement of the action. As part of the settlement, Facebook has ceased the offending practices and has made changes to its operative relevant user disclosures.



### GOOGLE VIRUS-TRACING APP DATA EXPOSURE

Lieff Cabraser served as Lead Counsel in a privacy class action on behalf of Android users concerning Google's unlawful exposure of confidential medical information and personally identifying information through its digital contract tracing system designed by Google to slow or stop the spread of COVID-19 on Android mobile devices. Plaintiffs resolved the suit via a novel early resolution process with plaintiffs' consulting expert's review of highly confidential information from Google, which generated significant injunctive relief to fix the fundamental error, followed by legally-binding representations and warranties from Google. On October 31, 2022, Judge Nathanael M. Cousins granted final approval to the settlement.

### IN RE INTUIT DATA LITIG., NO. 5:15-CV-01778-EJD (N.D. CAL.)

Lieff Cabraser represented identity theft victims in a nationwide class action lawsuit against Intuit for allegedly failing to protect consumers' data from foreseeable and preventable breaches, and by facilitating the filing of fraudulent tax returns through its TurboTax software program. The complaint alleged that Intuit failed to protect data provided by consumers who purchased TurboTax, used to file an estimated 30 million tax returns for American taxpayers every year, from easy access by hackers and other cybercriminals. The complaint further alleged that Intuit was aware of the widespread use of TurboTax exclusively for the filing of fraudulent tax returns. Yet, Intuit failed to adopt basic cyber security policies to

prevent this misuse of TurboTax. As a result, fraudulent tax returns were filed in the names of the plaintiffs and thousands of other individuals across America, including persons who never purchased TurboTax. In May 2019, Judge Edward J. Davila of the U. S. District Court for the Northern District of California granted final approval to a settlement that provided all class members who filed a valid claim with free credit monitoring and identity restoration services, and required Intuit to commit to security changes for preventing future misuse of the TurboTax platform.



**_MCDONALD, ET AL. V. KILOO A/S, ET AL._, NO. 3:17-CV-04344-JD; _RUSHING, ET AL. V. THE WALT DISNEY CO., ET AL._, NO. 3:17-CV-04419-JD; _RUSHING V. VIACOMCBS, ET AL._, NO. 3:17-CV-04492-JD (N.D. CAL.)**

Lieff Cabraser represented parents, on behalf of their children, in federal class action litigation against numerous online game and app producers including Disney, Viacom, and the makers of the vastly popular Subway Surfers game (Kiloo and Sybo), over allegations the companies unlawfully collected, used, and disseminated the personal information of children who played the gaming apps on smart phones, tablets, and other mobile devices. The actions proceeded under time-honored laws protecting privacy: a California common law invasion of privacy claim, a California Constitution right of privacy claim, a California unfair competition claim, a New York General Business Law claim, a Massachusetts Unfair and Deceptive Trade Practices claim, and a Massachusetts statutory right to privacy claim.

In April 2021, U.S. District Judge James Donato granted final approval to settlements in the three related child privacy class action lawsuits addressing the illegal collection and monetization of personal data from children in mobile apps. The 16 settlements provide stringent and wide-ranging privacy protections and meaningful changes to defendants' business practices, ensuring participants in the largely unpoliced mobile advertising industry proactively protect children's privacy in thousands of apps popular with children. Under the settlements, which _The New York Times_ stated "could reshape the entire children's app market," Disney, Viacom, and others as

well as their advertising technology partners had to stop tracking children across apps and the internet for advertising purposes.



**_MATERA V. GOOGLE INC._, NO. 5:15-CV-04062 (N.D. CAL.)**

Lieff Cabraser served as Co-Lead Class Counsel representing consumers in a digital privacy class action against Google Inc. over claims the popular Gmail service conducted unauthorized scanning of email messages to build marketing profiles and serve targeted ads. The complaint alleged that Google routinely scanned email messages that were sent by non-Gmail users to Gmail subscribers, analyzed the content of those messages, and then shared that data with third parties in order to target ads to Gmail users, an invasion of privacy that violated the California Invasion of Privacy Act and the federal Electronic Communications Privacy Act.

In February 2018, Judge Lucy H. Koh of the U. S. District Court for the Northern District of California granted final approval to a class action settlement. Under the settlement, Google made business-related changes to its Gmail service, as part of which, Google will no longer scan the contents of emails sent to Gmail accounts for advertising purposes, whether during the transmission process or after the emails have been delivered to the Gmail user's inbox.

**_EBARLE ET AL. V. LIFELOCK INC._, NO. 3:15-CV-00258 (N.D. CAL.)**

Lieff Cabraser represented consumers who subscribed to LifeLock's identity theft protection services in a nationwide class action fraud lawsuit alleging that LifeLock did not protect the personal information of its subscribers from hackers and criminals, and specifically that, contrary to its advertisements and statements, LifeLock lacked a comprehensive monitoring network, failed to provide "up-to-the-minute" alerts of suspicious activity, and did an inferior job of providing the same theft protection services that banks and credit card companies provide, often for free. On September 21, 2016, U.S. District Judge Haywood Gilliam, Jr. granted final approval to a $68 million settlement of the case.

***IN RE CARRIER IQ PRIVACY LITIGATION,*** **MDL NO. 2330 (N.D. CAL.)**

Lieff Cabraser represented a plaintiff in multi-district litigation against Samsung, LG, Motorola, HTC, and Carrier IQ alleging that smartphone manufacturers violated privacy laws by installing tracking software, called IQ Agent, on millions of cell phones and other mobile devices that use the Android operating system. Without notifying users or obtaining consent, IQ Agent tracked users' keystrokes, passwords, apps, text messages, photos, videos, and other personal information and transmitted this data to cellular carriers. In a 96-page order issued in January 2015, U.S. District Court Judge Edward Chen granted in part, and denied in part, defendants' motion to dismiss. Importantly, the Court permitted the core Wiretap Act claim to proceed, as well as the claims for violations of the Magnuson-Moss Warranty Act, the California Unfair Competition Law, and breach of the common law duty of implied warranty. In 2016, the Court granted final approval to a $9 million settlement plus injunctive relief provisions.



***PERKINS V. LINKEDIN CORP.,*** **NO. 13-CV-04303-LHK (N.D. CAL.)**

Lieff Cabraser represented individuals who joined LinkedIn's network and, without their consent or authorization, had their names and likenesses used by LinkedIn to endorse LinkedIn's services and send repeated emails to their contacts asking that they join LinkedIn. On February 16, 2016, the Court granted final approval to a $13 million settlement, one of the largest per-class member settlements ever in a digital privacy class action. In addition to the monetary relief,



LinkedIn agreed to make significant changes to Add Connections disclosures and functionality. Specifically, LinkedIn revised disclosures to real-time permission screens presented to members using Add Connections, agreed to implement new functionality allowing LinkedIn members to manage their contacts, including viewing and deleting contacts and sending invitations, and to stop reminder emails from being sent if users had sent connection invitations inadvertently.



***CORONA V. SONY PICTURES ENTERTAINMENT,*** **NO. 2:14-CV-09660-RGK (C.D. CAL.)**

Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in class action litigation against Sony for failing to take reasonable measures to secure the data of its employees from hacking and other attacks. As a result, personally identifiable information of thousands of current and former Sony employees and their families was obtained and published on websites across the Internet. Among the staggering array of personally identifiable information compromised were medical records, Social Security Numbers, birth dates, personal emails, home addresses, salaries, tax information, employee evaluations, disciplinary actions, criminal background checks, severance packages, and family medical histories. The complaint charged that Sony owed a duty to take reasonable steps to secure the data of its employees from hacking. Sony allegedly breached this duty by failing to properly invest in adequate IT security, despite having already succumbed to one of the largest data breaches in history only three years earlier. In October 2015, an $8 million settlement was reached under which Sony agreed to reimburse employees for losses and harm.

# ECONOMIC INJURY PRODUCT DEFECT

Lieff Cabraser has successfully litigated and settled hundreds of economic injury defective products class action lawsuits in federal and state courts, including multiple dozens of cases requiring manufacturers to remedy a defect, extend warranties, and refund to consumers the cost of repairing defective products. Working with co-counsel, we have achieved judgments and settlements that have recovered more than $4.7 billion in these cases, as well as other valuable relief such as product fixes and extended warranties. The economic injury product defects cases handled by Lieff Cabraser span an extraordinary range of industries and goods, from faulty pipes, furnaces, shingles, decks, railings and other home construction products to computers, computer components, appliances and other electronic devices, on to tires, vehicles, and other vehicle components of all kinds.

# Representative Current Cases



### HAWKINS V. SHIMANO NORTH AMERICA BICYCLE INC., 8:23-CV-02038 (C.D. CAL.)

Lieff Cabraser has been appointed Interim Co-Lead Counsel in this consolidated litigation involving allegedly defective bicycle cranksets, the part of the bicycle that the pedals and chain attach to for pedaling. Shimano has recalled hundreds of thousands of these cranksets, which can separate and break while a bicyclist is riding, posing serious safety hazards. Plaintiffs recently filed an amended complaint, and discovery is underway.



### IN RE ARC AIRBAG INFLATORS PRODUCTS LIABILITY LITIGATION, NO. 1:22-MD-3051 (N.D. GA.)

Lieff Cabraser represents consumers from every state who own or lease vehicles containing airbag inflators manufactured by ARC Automotive, Inc. This lawsuit alleges that these inflators, as revealed by an ongoing federal recall investigation and press reports, contain a defect that makes them subject to rupture, putting occupants of the vehicle at risk of harm and impairing the value of the cars. In March 2023, Judge Eleanor L. Ross of the Northern District of Georgia appointed Lieff Cabraser partner David Stellings to the Plaintiffs' Leadership Committee in this case. The defendants—who include many major automakers, parts suppliers, and ARC—moved to dismiss the complaint. That motion is pending before the court.



### MERCEDES-BENZ SUBFRAME RUST & CORROSION LITIGATION

### SOWA, ET AL. V. MERCEDES-BENZ USA AND MERCEDES-BENZ GROUP AG, NO. 1:23-CV-00636-SEG (N.D. GEORGIA).

In February 2023, Lieff Cabraser and co-counsel filed an automotive defect class action lawsuit in federal district court in Georgia against Mercedes-Benz USA LLC and Mercedes-Benz Group AG alleging breach of warranty and violation of state consumer fraud laws, relating to rust or corrosion of the subframe in 2010-2022 models across the Mercedes-Benz vehicle line, including Classes C, E, GLK/GLC, CLS, SLK/SLC, and SL. Plaintiffs brought this lawsuit to force Mercedes to warn consumers about a dangerous defect in the rear subframes and adjacent parts of their vehicles and compensate them for their damages arising from the defect. Plaintiffs allege that the vehicle subframes and adjacent parts prematurely rust and corrode, costing consumers thousands of dollars in repairs that Mercedes has refused to cover. The rust and corrosion can adversely affect driveability and braking, and cause the rear subframes to fail while the vehicles are in motion. As a result, thousands of owners have paid out of pocket for repairs and related costs, while many more are still unknowingly driving unsafe vehicles.

The complaint further alleges that Mercedes has known of the defect for many years, including through consumer complaints made directly to Mercedes, complaints made to the National Highway Transportation Safety Administration's Office of Defect Investigation, and complaints posted on public online vehicle owner forums, as well as other internal sources unavailable to Plaintiffs and their counsel without discovery. In addition, the complaint details that, despite Mercedes' refusal to acknowledge the defect or pay in full for the repairs it requires, Mercedes' authorized dealers have told owners who complain that premature subframe corrosion is a common problem with Mercedes vehicles.

The complaint explains that, because subframe corrosion occurs "from the inside out," the defect is not apparent even to a trained mechanic until the rear subframe is dangerously corroded, near total failure, and has rendered the vehicle unsafe to operate. Replacing the rear subframe and other impacted parts typically costs from $3,500 to more than $7,000.

In April of 2023, Lieff Cabraser was named interim Co-Lead Class Counsel for the plaintiff consumers in the Mercedes-Benz subframe rust and corrosion product



defect litigation.

### IN RE: GENERAL MOTORS CORP. AIR CONDITIONING MARKETING AND SALES PRACTICES LITIGATION., MDL NO. 2818 (E.D. MICH.)

Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a consumer fraud class action against General Motors Company consolidated in Michigan federal court on behalf of all persons who purchased or leased certain GM vehicles equipped with an allegedly defective air conditioning system. The lawsuit claims the vehicles have a serious defect that causes the air conditioning systems to crack and leak refrigerant, lose pressure, and fail to function properly to provide cooled air into the vehicles. These failures lead owners and lessees to incur significant costs for repair, often successive repairs as the repaired parts prove defective as well. The complaint lists causes of action for violations of various states' Consumer Protection Acts, fraudulent

concealment, breach of warranty, and unjust enrichment, and seeks declaratory and injunctive relief, including an order requiring GM to permanently repair the affected vehicles within a reasonable time period, as well as compensatory, exemplary, and statutory damages.



### JORDAN V. SAMSUNG ELECTRONICS AMERICA, NO. 2:22-CV-02828 (D.N.J.)

Lieff Cabraser and co-counsel represent consumers in a federal product defect lawsuit against Samsung alleging that certain of the company's refrigerators do not keep food cold enough to prevent illness. The suit accuses Samsung of unjust enrichment, false advertising, and consumer fraud relating to the sale of a line of refrigerators with double French doors and a bottom freezer that fail to properly keep foods cool.

### FORD F-150 BRAKES (E.D MICH)

Lieff Cabraser has been appointed Co-Lead Counsel in this multidistrict litigation where millions of Ford trucks are alleged to have defective brakes that unexpectedly malfunction, increasing stopping distances and putting the motoring public at risk. The court has certified liability classes in five states. The litigation is ongoing.

### FORD ECOBOOST ENGINE FAILURES (E.D. CAL)

Lieff Cabraser has been appointed Co-Lead Counsel in this litigation alleging that defectively designed engines in millions of Ford vehicles with EcoBoost engines can experience coolant leaks, overheat, and, in some case, catch fire.



### FIAT CHRYSLER EXPLODING HEAD RESTS (E.D. CAL)

Lieff Cabraser has been appointed Co-Lead Class Counsel for a certified class of California purchasers of hundreds of thousands of vehicles, including Jeeps and Dodges, that have "active head rests" that can explode unexpectedly, causing driver distraction and head and neck injuries.



***IN RE: EVENFLO COMPANY, INC., MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION**, NO. 1:20-MD-02938 (D. MASS.)*

We serve as Co-Lead Counsel for plaintiffs in multidistrict litigation accusing Evenflo of improper, fraudulent, and dangerous marketing of child car booster seats. As alleged in the complaint, Evenflo knew, even while it was making representations to consumers about the professed safety of its Big Kid Booster, that the seats were not safe, should not be used by children under forty pounds, and provided little to no side-impact protection. In November 2022, the First Circuit Court of Appeal revived the litigation, ruling that the lower court erred in concluding in January 2022 that consumers in the litigation lacked standing to sue for damages.



***CARDER V. GRACO CHILDREN'S PRODUCTS, INC.**, NO. 2:20-CV-00137 (N.D. GA.)*

Lieff Cabraser serves on the Plaintiff Steering Committee in federal litigation in Georgia over claims that Graco misrepresented the safety features of certain of its booster seats, causing consumers to pay inflated prices for the products.

# ECONOMIC INJURY PRODUCT DEFECT

## Representative Achievements & Successes



***IN RE NAVISTAR MAXXFORCE ENGINES MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION**, CASE NO. 1:14-CV-10318 (N.D. ILL.)*

In January 2020, Judge Joan B. Gottschall of the U.S. District Court for the Northern District of Illinois issued an Order granting final approval to a $135 million settlement of multidistrict litigation brought by Lieff Cabraser and co-counsel on behalf of plaintiff truck owners and lessees alleging that Navistar, Inc. and Navistar International, Inc. sold or leased 2011-2014 model year vehicles equipped with certain MaxxForce 11- or 13-liter diesel engines equipped with a defective EGR emissions system.

Judge Gottschall ruled that the proposed class action settlement which had been submitted to the Court in May 2019, was fair, reasonable, and adequate in addressing plaintiffs' claims. Owners and lessees of the affected trucks had until May 11, 2020 to file their settlement claims at an official case website. The $135 million settlement provided class members with up to $2,500 per truck or up to $10,000 rebate off a new truck, depending on months of ownership or lease, or with the option to seek up to $15,000 per truck in out-of-pocket damages caused by the alleged defect.



***IN RE VOLKSWAGEN 'CLEAN DIESEL' MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**, MDL NO. 2672 (N.D. CAL.)*

In 2015, the U.S. Environmental Protection Agency issued a Notice of Violation to Volkswagen relating to 475,000 diesel-powered cars in

the United States sold since 2008 under the VW and Audi brands on which VW installed "cheat device" software that intentionally changed the vehicles' emissions production during official testing. The controls were turned off during actual road use, producing up to 40x more pollutants than the testing amounts in an extraordinary violation of U.S. clean air laws.

Private vehicle owners, government agencies, and attorneys general all sought relief from VW through litigation in U.S. courts. Civil cases and government claims were consolidated in federal court in Northern California, and U.S. District Judge Charles Breyer named Elizabeth Cabraser as Lead Counsel and Chair of the 22-member Plaintiffs Steering Committee in February of 2016.

After nine months of intensive negotiation and extraordinary coordination led on the class plaintiffs' side by Ms. Cabraser,, a set of interrelated settlements totaling $14.7 billion were given final approval in 2016. On May 11, 2017, a further settlement with a value of $1.2-$4.04 billion relating to VW's 3.0- liter engine vehicles received final approval. The Volkswagen emissions settlement is one of the largest payments in American history and the largest known consumer class settlement. The settlements are unprecedented also for their scope and complexity, involving the Department of Justice, Environmental Protection Agency (EPA), California Air Resources Board (CARB) and California Attorney General, the Federal Trade Commission (FTC), and private plaintiffs.

The VW settlements were wildly successful: Volkswagen removed from commerce or performed complete emissions modification on over 93% of all 2.0-liter vehicles, with over $8.4 billion in buyback offers, and buyback offers are past the $1 billion mark for 3.0-liter cars with over 90% of the those vehicles removed from commerce or modified.



### IN RE GENERAL MOTORS LLC IGNITION SWITCH LITIGATION, MDL NO. 2543 (S.D.N.Y.)

Lieff Cabraser represented proposed nationwide classes of GM vehicle owners and lessees whose cars included defective ignition switches in litigation focusing on economic loss claims. On August 15, 2014, U.S. District Court Judge Jesse M. Furman appointed Elizabeth J. Cabraser as Co-Lead Plaintiffs' Counsel in the litigation, which sought compensation

on behalf of consumers who purchased or leased GM vehicles containing a defective ignition switch, over 500,000 of which have been recalled. The consumer complaints alleged that the ignition switches in these vehicles shared a common, uniform, and defective design. As a result, these cars were of a lesser quality than GM represented, and class members overpaid for the cars. Further, GM's public disclosure of the ignition switch defect caused the value of these cars to materially diminish. The complaints sought monetary relief for the diminished value of the class members' cars.



### ALLAGAS V. BP SOLAR, NO. 3:14-CV-00560-SI (N.D. CAL.)

Lieff Cabraser and co-counsel represented California consumers in a class action lawsuit against BP Solar and Home Depot charging the companies sold solar panels with defective junction boxes that caused premature failures and fire risks. In January 2017, Judge Susan Illston granted final approval to a consumer settlement valued at more than $67 million that extended relief to a nationwide class as well as eliminating the serious fire risks.



### FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION

Lieff Cabraser represented consumers in multiple states who filed separate class action lawsuits against Whirlpool, Sears and LG Corporations charging that certain front-loading automatic washers manufactured by these companies were defectively designed and that the design defects created foul odors from mold and mildew that permeated washing machines and customers' homes. Many class members spent money for repairs and on other purported remedies, none of which eliminated the problem. These cases were all settled favorably on behalf of our clients and the classes.

In the Whirlpool and Sears cases, we obtained significant court of appeals rulings; see *Butler I and II v. Sears*, 702 F.3d 359 (7th Cir. 2012), reh'g en banc denied, (7th Cir. Dec. 19, 2012), vacated, 569 U.S. 1015 (2013), reinstated, 727 F.3d 796 (7th Cir. 2013) (reversing lower court denial

of class certification in moldy washer consumer case) (no oral argument) and *In re: Whirlpool Corporation Front-Loading Washer Products Liability Litigation*, 678 F.3d 409 (6th Cir. 2012), reh'g en banc denied, (6th Cir. June 18, 2012), vacated, 569 U.S. 901 (2013), reinstated, 722 F.3d 838 (6th Cir. 2013) (affirming lower court grant of class certification in moldy washer consumer case) (briefing and oral argument).



### TAKATA AIRBAG DEFECT CASES/IN RE TAKATA AIRBAG LITIGATION, MDL NO. 2599 (S.D. FL.)

Lieff Cabraser served on the Plaintiffs Steering Committee in national litigation related to Takata Corporation's defective and dangerous airbags. Nearly 42 million vehicles were recalled worldwide, the largest automotive recall in U.S. history. An unstable propellant caused some airbags to explode upon impact in accidents, shooting metal debris at drivers and passengers. Close to 300 injuries, including 23 deaths, were linked to the defect. The complaints included charges the company knew of the defects but concealed them from safety regulators for over ten years. Lieff Cabraser and co-counsel secured over $1.5 billion in settlements from Honda, Toyota, Ford, Nissan, BMW, Subaru, and Mazda. Litigation continues against Volkswagen, Mercedes, Fiat Chrysler, and General Motors.



### MOORE, ET AL. V. SAMSUNG ELECTRONICS AMERICA AND SAMSUNG ELECTRONICS CO., LTD., NO. 2:16-CV-4966 (D.N.J.)

Lieff Cabraser represented consumers in federal court in New Jersey in cases focusing on complaints about Samsung top-loading washing machines that exploded in the home, causing damage to walls, doors, and other equipment, and presenting significant injury risks. Owners reported Samsung top-load washers exploding as early as the day of installation, while others saw their machines explode months or even more than a year after purchase. The lawsuit successfully obtained injunctive relief as well as remediation, restitution, and damages.

### MCLENNAN V. LG ELECTRONICS USA, NO. 2:10-CV-03604 (D. N.J.)

Lieff Cabraser represented consumers who alleged several LG refrigerator models had a faulty design that caused the interior lights to remain on even when the refrigerator doors were closed (identified as the "light issue"), resulting in overheating and food spoilage. In March 2012, the Court granted final approval to a settlement of the nationwide class action lawsuit. The settlement provided that LG reimburse class members for all out-of-pocket costs (parts and labor) to repair the light issue prior to the mailing of the class notice and extended the warranty with respect to the light issue for ten years from the date of the original retail purchase of the refrigerator. The extended warranty covered in-home refrigerator repair performed by LG and, in some cases, the cost of a replacement refrigerator. In approving the settlement, U.S. District Court Judge William J. Martini stated, "The Settlement in this case provides for both the complete reimbursement of out-of-pocket expenses for repairs fixing the Light Issue, as well as a warranty for ten years from the date of refrigerator purchase. It would be hard to imagine a better recovery for the Class had the litigation gone to trial. Because Class members will essentially receive all of the relief to which they would have been entitled after a successful trial, this factor weighs heavily in favor of settlement."



### IN RE MERCEDES-BENZ TELE-AID CONTRACT LITIGATION, MDL NO. 1914 (D. N.J.)

Lieff Cabraser represented owners and lessees of Mercedes-Benz cars and SUVs equipped with the Tele-Aid system, an emergency response system which linked subscribers to road-side assistance operators by using a combination of global positioning and cellular technology. In 2002, the Federal Communications Commission issued a rule, effective 2008, eliminating the requirement that wireless phone carriers provide analog-based networks. The Tele-Aid system offered by Mercedes-Benz relied on analog signals. Plaintiffs charged that Mercedes-Benz committed fraud in promoting and selling the Tele-Aid system without disclosing to buyers of certain model years that the Tele-Aid system as installed would become obsolete in 2008.

In an April 2009 published order, the Court certified a nationwide class of all persons or entities in the U.S. who purchased or leased a Mercedes-Benz vehicle equipped

with an analog-only Tele Aid system after August 8, 2002, and (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or (2) purchased an upgrade to digital equipment.

In September 2011, the Court approved a settlement that provided class members a $650 check or a $750 to $1,300 certificate toward the purchase or lease of new Mercedes-Benz vehicle, depending upon whether or not they paid for an upgrade of the analog Tele Aid system and whether they still owned their vehicle. In approving the settlement, U.S. District Court Judge Dickinson R. Debevoise stated, "I want to thank counsel for the . . . very effective and good work . . . . It was carried out with vigor, integrity and aggressiveness with never going beyond the maxims of the Court."



### *CARIDEO V. DELL*, NO. C06-1772 JLR (W.D. WASH.)

Lieff Cabraser represented consumers who owned Dell Inspiron notebook computer model numbers 1150, 5100, or 5160. The class action lawsuit complaint charged that the notebooks suffered premature failure of their cooling system, power supply system, and/or motherboards. In December 2010, the Court approved a settlement which provided class members that paid Dell for certain repairs to their Inspiron notebook computer a reimbursement of all or a portion of the cost of the repairs.

### *GRAYS HARBOR ADVENTIST CHRISTIAN SCHOOL V. CARRIER CORPORATION*, NO. 05-05437 (W.D. WASH.)

In April 2008, the Court approved a nationwide settlement for current and past owners of high-efficiency furnaces manufactured and sold by Carrier Corporation and equipped with polypropylene-laminated condensing heat exchangers ("CHXs"). Carrier sold the furnaces under the Carrier, Bryant, Day & Night and Payne brand-names. Plaintiffs alleged that starting in 1989, Carrier began manufacturing and selling high efficiency condensing furnaces manufactured with a secondary CHX made of inferior materials. Plaintiffs alleged that as a result, the CHXs, which Carrier warranted and consumers expected to last for 20 years, failed prematurely. The settlement provided an enhanced 20-year warranty of free service and free parts for consumers whose furnaces had not yet failed. The settlement also offered a cash reimbursement for consumers who already paid to repair or replace the CHX in their high-efficiency Carrier furnaces.

An estimated three million or more consumers in the U.S. and Canada purchased the furnaces covered under the settlement. Plaintiffs valued the settlement to consumers at over $300 million based upon the combined value of the cash reimbursement and the estimated cost of an enhanced warranty of this nature.



### *GROSS V. MOBIL*, NO. C 95-1237-SI (N.D. CAL.)

Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated 2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an allegedly defective aircraft engine oil. Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief. Plaintiffs obtained a preliminary injunction requiring Mobil Corporation to provide notice to all potential class members of the risks associated with past use of aircraft engine oil. In addition, Plaintiffs negotiated a proposed settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

### *CARTWRIGHT V. VIKING INDUSTRIES*, NO. 2:07-CV-2159 FCD (E.D. CAL.)

Lieff Cabraser represented California homeowners in a class action lawsuit alleging that over one million Series 3000 windows produced and distributed by Viking between 1989 and 1999 were defective. The plaintiffs charged that the windows were not watertight and allowed for water to penetrate the surrounding sheetrock, drywall, paint or wallpaper. Under the terms of a settlement approved by the Court in August 2010, all class members who submitted valid claims were entitled to receive as much as $500 per affected property.

### *PELLETZ V. ADVANCED ENVIRONMENTAL RECYCLING TECHNOLOGIES* (W.D. WASH.)

Lieff Cabraser served as Co-Lead Counsel in a case alleging that ChoiceDek decking materials, manufactured by AERT, developed persistent and untreatable mold spotting throughout their surface. In a published opinion in January 2009, the Court approved a settlement that provided affected consumers with free and discounted

deck treatments, mold inhibitor applications, and product replacement and reimbursement.



### CREATE-A-CARD V. INTUIT, NO. C07-6452 WHA (N.D. CAL.)

Lieff Cabraser, with co-counsel, represented business users of QuickBooks Pro for accounting that lost their QuickBooks data and other files due to faulty software code sent by Intuit, the producer of QuickBooks. In September 2009, the Court granted final approval to a settlement that provided all class members who filed a valid claim with a free software upgrade and compensation for certain data-recovery costs. Commenting on the settlement and the work of Lieff Cabraser on September 17, 2009, U.S. District Court Judge William H. Alsup stated, "I want to come back to something that I observed in this case firsthand for a long time now. I think you've done an excellent job in the case as class counsel and the class has been well represented having you and your firm in the case."



### LUNDELL V. DELL, NO. C05-03970 (N.D. CAL.)

Lieff Cabraser served as Lead Class Counsel for consumers who experienced power problems with the Dell Inspiron 5150 notebook. In December 2006, the Court granted final approval to a settlement of the class action which extended the one-year limited warranty on the notebook for a set of repairs related to the power system. In addition, class members that paid Dell or a third party for repair of the power system of their notebook were entitled to a 100% cash refund from Dell.

### WEEKEND WARRIOR TRAILER CASES, JCCP NO. 4455 (CAL. SUPR. CT.)

Lieff Cabraser, with co-counsel, represented owners of Weekend Warrior trailers manufactured between 1998 and 2006 that were equipped with frames manufactured, assembled, or supplied by Zieman Manufacturing Company. The trailers, commonly referred to as "toy haulers," were used to transport outdoor recreational equipment such as motorcycles and all-terrain vehicles.

Plaintiffs charged that Weekend Warrior and Zieman knew of design and performance problems with the trailers, including bent frames, detached siding, and warped forward cargo areas, and concealed the defects from consumers. In February 2008, the Court approved a $5.5 million settlement of the action that provided for the repair and/or reimbursement of the trailers. In approving the settlement, California Superior Court Judge Thierry P. Colaw stated that class counsel were "some of the best," and "there was an overwhelming positive reaction to the settlement" among class members.



### MCMANUS V. FLEETWOOD ENTERPRISES, INC., NO. SA-99-CA-464-FB (W.D. TEX.)

Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes. The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system was needed to stop safely while towing heavy items, such as a vehicle or trailer. In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes. The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new. Earlier, the appellate court found that common questions predominated under purchasers' breach of implied warranty of merchantability claim. 320 F.3d 545 (5th Cir. 2003).

### FOOTHILL/DEANZA COMMUNITY COLLEGE DISTRICT V. NORTHWEST PIPE COMPANY, NO. C-00-20749 (N.D. CAL.)

Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S. as part of fire suppression systems for use in residential and commercial buildings. After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok. The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product. In June 2004, the Court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that failed. Under the settlement, owners

whose Poz-Lok pipes were leaking, or leaked over the next 15 years, could file a claim for compensation.



### KAN V. TOSHIBA AMERICAN INFORMATION SYSTEMS, NO. BC327273 (LOS ANGELES SUPER. CT.)

Lieff Cabraser served as Co-Lead Counsel for a class of all end-user persons or entities who purchased or otherwise acquired in the United States, for their own use and not for resale, a new Toshiba Satellite Pro 6100 Series notebook. Consumers alleged a series of defects were present in the notebook. In 2006, the Court approved a settlement that extended the warranty for all Satellite Pro 6100 notebooks, provided cash compensation for certain repairs, and reimbursed class members for certain out-of-warranty repair expenses.



### TOSHIBA LAPTOP SCREEN FLICKER SETTLEMENT

Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component. In 2004 under the terms of the settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, and $400 for the Tecra 8100 personal computers. TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by eighteen months.

### RICHISON V. AMERICAN CEMWOOD CORP., NO. 005532 (SAN JOAQUIN SUPR. CT., CAL.)

Lieff Cabraser served as Co-Lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed. In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation. This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.

### ABS PIPE LITIGATION, JCCP NO. 3126 (CONTRA COSTA COUNTY SUPR. CT., CAL.)

Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking. Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product. Between 1998 and 2001, Lieff Cabraser achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now Appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."



### HANLON V. CHRYSLER CORP., NO. C-95-2010-CAL (N.D. CAL.)

In 1995, the District Court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs. As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches. The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

### IN RE GENERAL MOTORS CORP. PICK-UP FUEL TANK PRODUCTS LIABILITY LITIGATION, MDL NO. 961 (E.D. PA.)

Lieff Cabraser served as Court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks. The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss

Act, state consumer protection statutes, and common law. In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings. In July 1996, a new nationwide class action was certified for purposes of an enhanced settlement program valued at a minimum of $600 million, plus funding for independent fuel system safety research projects. The Court granted final approval to the settlement in November 1996.



### IN RE LOUISIANA-PACIFIC INNER-SEAL SIDING LITIGATION, NO. C-95-879-JO (D. OR.)

Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide class of homeowners with defective exterior siding on their homes. Plaintiffs asserted claims for breach of warranty, fraud, negligence, and violation of consumer protection statutes. In 1996, U.S. District Judge Robert E. Jones entered an Order, Final Judgment and Decree granting final approval to a nationwide settlement requiring Louisiana-Pacific to provide funding up to $475 million to pay for inspection of homes and repair and replacement of failing siding over the next seven years.



### COX V. SHELL, NO. 18,844 (OBION COUNTY CHANCERY CT., TENN.

Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines. In November 1995, the Court approved a settlement involving an initial commitment by defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants. The deadline for filing claims expired in 2009.

### WILLIAMS V. WEYERHAEUSER, NO. 995787 (SAN FRANCISCO SUPR. CT.)

Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands of owners of homes and other structures with defective Weyerhaeuser hardboard siding. A California-wide class was certified for all purposes in February 1999, and withstood writ review by both the California Court of Appeals and Supreme Court of California. In 2000, the Court granted final approval to a nationwide settlement of the case which provided class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing damaged siding. The settlement had no cap, and required Weyerhaeuser to pay all timely, qualified claims over a nine year period.



### NAEF V. MASONITE, NO. CV-94-4033 (MOBILE COUNTY CIRCUIT CT., ALA.)

Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide Class of an estimated 4 million homeowners with allegedly defective hardboard siding manufactured and sold by Masonite Corporation, a subsidiary of International Paper, installed on their homes. The Court certified the class in November 1995, and the Alabama Supreme Court twice denied extraordinary writs seeking to decertify the Class, including in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996). A month-long jury trial in 1996 established the factual predicate that Masonite hardboard siding was defective under the laws of most states. The case settled on the eve of a second class-wide trial, and in 1998, the Court approved a settlement.

Under a claims program established by the settlement that ran through 2008, class members with failing Masonite hardboard siding installed and incorporated in their property between January 1, 1980 and January 15, 1998 were entitled to make claims, have their homes evaluated by independent inspectors, and receive cash payments for damaged siding. Combined with settlements involving other alleged defective home building products sold by Masonite, the total cash paid to homeowners exceeded $1 billion.

### IN RE INTEL PENTIUM PROCESSOR LITIGATION, NO. CV 745729 (SANTA CLARA SUPR. CT., CAL.)

Lieff Cabraser served as one of two Court-appointed Co-Lead Class Counsel in this action alleging defects in certain Intel Pentium CPUs, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion.

# EMPLOYMENT DISCRIMINATION & UNFAIR EMPLOYMENT PRACTICES

Lieff Cabraser's nationally-recognized employment lawyers litigate many of the most significant employment class action lawsuits in the U.S. today, cases challenging companies paying women less for the same work as men; gender and race discrimination and retaliation; policies that deprive employees and "independent contractors" of theirs wages, overtime payments, meal and rest breaks, or reimbursement for business expenses; and pension plan abuse claims on behalf of employees and retirees.

We have repeatedly prevailed in and obtained record-setting recoveries for our clients in precedent-setting cases against the largest corporations in the U.S. and throughout the world, including Goldman Sachs, Walmart, Google, IBM, Apple, Federal Express, Smith Barney, and Home Depot.

## Representative Current Cases



### *LABOR TRAFFICKING WAGE THEFT CASE FOR COLOMBIAN HOUSEKEEPERS*

Lieff Cabraser, with co-counsel, brought an action in federal court in the Eastern District of Virginia involving the transportation of over 200 Colombian nationals or people of Colombian origin to work as housekeepers at MasterCorp-serviced hotel and resort properties across the country. The housekeepers (who were nominally employed by Perennial Pete General Services LLC and related entities) worked up to 12–15 hours per day for four-month periods without overtime wages; had unlawful deductions taken from their wages; were housed in crowded motel rooms; and were threatened with immigration-related harm if they complained or quit. The Court is considering a proposed settlement.

### *VASSAR COLLEGE GENDER DISCRIMINATION*

Along with co-counsel Equal Rights Advocates, Lieff Cabraser filed a class action lawsuit in August 2023 on behalf of female full professors of Vassar College alleging gender discrimination and equal pay violations. The case is pending in the U.S. District Court for the Southern District of New York, and alleges pervasive and long-standing gender-based pay disparities between Vassar's male and female full professors, and has garnered substantial support within the Vassar community. Since it was filed in August 2023, 36 additional female full professors at Vassar have written jointly and publicly to say they share the class representatives' grievances about Vassar's pattern of pay discrimination, and another group of 29 male full professors at Vassar have written publicly to "voice strong support" for the class representatives and the lawsuit. Students have also protested. Discovery has now begun, as Vassar raises modest procedural challenges to various pieces of the complaint.



### *BROWN V. DOORDASH, INC.,* NO. 21-1828 (CAL. SUPR. CT.)

Lieff Cabraser represents gig economy workers in a series of lawsuits alleging that the companies' practice of classifying them as independent contractors rather than employees violates California's Private Attorneys General Act (PAGA).

In October 2021, Lieff Cabraser filed a case against DoorDash, Inc. under PAGA. The case alleges that DoorDash has violated multiple provisions of the California Labor Code by classifying its "dashers" as independent contractors and denying them wages, overtime pay, sick leave, off-duty meal and rest breaks, and compensation for their required business expenses.



### SPACEX RETALIATORY FIRINGS

On November 16, 2022, Lieff Cabraser and co-counsel filed unfair labor practice charges on behalf of eight former SpaceX employees against the company. The charges allege that SpaceX violated the National Labor Relations Act by terminating the employees for engaging in protected concerted activity.

The employees were allegedly fired for being part of a larger group that drafted a letter to SpaceX's executive team expressing concern about recent allegations of sexual harassment by SpaceX's CEO, and his harmful behavior on Twitter that hurt the company's reputation and also the company culture. The letter called on SpaceX to take appropriate remedial action including condemning the CEO's harmful Twitter behavior, holding leadership accountable, and seeking uniform definition and enforcement of SpaceX's policies.

Approximately one year after Lieff Cabraser filed, the National Labor Relations Board ("NLRB") concluded its investigation and issued a complaint against the company alleging 37 separate violations of Section 8(a)(1) of the National Labor Relations Act: 11 for coercive statements, 2 for coercive statements/implied threats, 7 for interrogation, 4 for unlawful instructions, 3 for impression of surveillance, and 10 for retaliation for involvement in protected concerted activity. Trial is set to for 2024.

### IN RE: AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATION, MDL 3035 (W.D.TENN.)

Lieff Cabraser has been appointed to the Plaintiffs Steering Committee in a multidistrict litigation on behalf of clergy and other employees of the African Methodist Episcopal Church who had almost $90 million of their retirement funds misappropriated.

The litigation has been centralized in the Western District of Tennessee and it includes as defendants church officials, the church's investment advisors, and others. In March 2023, the case was consolidated into multidistrict litigation before Judge S. Thomas Anderson of the U.S. District Court for the Western District of Tennessee, who largely denied motions to dismiss from the church's investment advisors. The case is presently in discovery and a consolidated complaint was filed in late August 2022.

# EMPLOYMENT DISCRIMINATION & UNFAIR EMPLOYMENT PRACTICES

## Representative Achievements & Successes



### CHEN-OSTER V. GOLDMAN SACHS, NO. 10-6950 (S.D.N.Y.)

Lieff Cabraser served as Co-Lead Counsel for plaintiffs in a gender discrimination class action lawsuit against Goldman Sachs alleging Goldman Sachs engaged in systemic and pervasive discrimination against its female professional employees in violation of Title VII of the Civil Rights Act of 1964 and New York City Human Rights Law. The complaint charged that, among other things, Goldman Sachs paid its female professionals less than similarly situated males, disproportionately promoted men over equally or more qualified women, and offered better business opportunities and professional support to its male professionals. In 2012, the Court denied defendant's motion to strike class allegations.

On March 10, 2015, Magistrate Judge James C. Francis IV issued a recommendation against certifying the class. In April of 2017, District Court Judge Analisa Torres granted plaintiffs' motion to amend their complaint and add new representative plaintiffs, denied Goldman Sachs' motions to

dismiss the new plaintiffs' claims, and ordered the parties to submit proposals by April 26, 2017, on a process for addressing Magistrate Judge Francis' March 2015 Report and Recommendation on class certification.

On March 30, 2018, Judge Torres issued an order certifying the plaintiffs' damages class under Federal Rule of Civil Procedure Rule 23(b)(3). Judge Torres certified plaintiffs' claims for both disparate impact and disparate treatment discrimination, relying on statistical evidence of discrimination in pay, promotions, and performance evaluations, as well as anecdotal evidence of Goldman's hostile work environment. In so ruling, the court also granted plaintiffs' motion to exclude portions of Goldman's expert evidence as unreliable, and denied all of Goldman's motions to exclude plaintiffs' expert evidence.

After certification and completion of notice, Goldman attempted to remove over half of the 3,220+ class members to arbitration. Plaintiffs objected, filing for sanctions against Goldman for violations of FRCP 23(d). In 2020, the Magistrate Judge assigned to the case issued a recommendation agreeing with plaintiffs that Goldman Sachs disseminated misleading communications leading to some class members opting out of arbitration. The case proceeded toward trial on whether Goldman violated federal and NY law by engaging in gender discrimination against the Class.

On May 15, 2023, on the eve of trial, the court granted preliminary approval to a $215 million class settlement. This is an historic settlement for many reasons: It is one of the largest discrimination settlements in U.S. history; it is also the single largest gender bias settlement that has occurred in advance of employees winning their case at trial, and the third-largest gender bias settlement of any kind on record (the larger ones coming years after the employees won at trial). It is nearly five times larger than the next-largest gender bias class action settlement involving a Wall Street firm. In addition, the settlement represents approximately 78% of potential damages in the case, and 50% of all potential class damages. We are unaware of another gender class settlement before trial that had a higher recovery of potential exposure.



**STRAUCH V. COMPUTER SCIENCES CORPORATION, NO. 2:14-CV-00956 (D. CONN.)**

In 2005, Computer Sciences Corporation ("CSC") settled for $24 million a nationwide class and collective action lawsuit alleging that CSC misclassified thousands of its information technology support workers as exempt from overtime pay in violation of in violation of the federal Fair Labor Standards Act ("FLSA") and state law.

Notwithstanding that settlement, a complaint filed on behalf of current and former CSC IT workers in 2014 by Lieff Cabraser and co-counsel alleged that CSC misclassified CSC System Administrators as exempt even though they performed primarily nonexempt work.

On June 9, 2015, the Court granted plaintiffs' motion for conditional certification of a FLSA collective action. Thereafter, more than 1,000 System Administrators opted into the case. On June 30, 2017, the Court granted plaintiffs' motion for certification of Rule 23 classes for System Administrators in California and Connecticut.

On December 20, 2017, a federal court jury in Connecticut ruled that CSC wrongly and willfully denied overtime pay to approximately 1,000 current and former technology support workers around the country. After deliberating over two days, the Connecticut jury unanimously rejected CSC's claim that its System Administrators in the "Associate Professional" and "Professional" job titles were exempt under federal, Connecticut and California law, ruling instead that the workers should have been classified as nonexempt and paid overtime. The jury found CSC's violations to be willful, triggering additional damages. The misclassifications were made despite the fact that, in 2005, CSC paid $24 million to settle similar claims from a previous group of technical support workers. Following judgment and an appeal to the Second Circuit Court of Appeals, the parties reached a settlement for a total payment of $17,600,000.



**SENNE V. MAJOR LEAGUE BASEBALL**, NO. 14-CV-00608 (N.D. CAL.)

Lieff Cabraser represented current and former Minor League Baseball players employed under uniform player contracts in a class and collective action seeking unpaid overtime and minimum wages under the Fair Labor Standards Act and state laws. The complaint alleged that Major League Baseball ("MLB"), the MLB franchises, and other defendants

paid minor league players a uniform monthly fixed salary that, in light of the hours worked, amounted to less than the minimum wage and an unlawful denial of overtime pay. In August 2019, the Ninth Circuit Court of Appeals upheld certification of a California Class, overturned the denial of certification of the Arizona and Florida Classes, and affirmed the certification of an FLSA collective action. In July 2022, the defendants agreed to pay a total of $185 million to settle the case.



### SHELBY STEWART ET AL., VS KAISER FOUNDATION HEALTH PLAN INC. ET AL., NO. 21-590966 (SAN FRANCISCO SUP. CT.)

Lieff Cabraser and co-counsel filed a race discrimination class action against Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, The Permanente Medical Group, and the SoCal Permanente Medical Group on behalf of more than 2,200 African American employees at each of the Kaiser Permanente entities. After two years of negotiation, the parties settled in April 2021 for $11.5 million; Kaiser also agreed to institute comprehensive workplace programs to ensure that African-American employees' compensation and opportunities for advancement are fair and equitable. The settlement received final approval in March 2022.

### NYONG'O V. SUTTER HEALTH, ET AL., 3:21-CV-06238 (SF SUP. CT.)

Lieff Cabraser represented Dr. Omondi Nyong'o in a race discrimination lawsuit against Sutter Health for multiple violations of California law arising from a racially toxic workplace. The complaint alleged that nationally-recognized Dr. Nyong'o was subject to a pattern of racial discrimination, including pay and promotion discrimination, down-leveling, and biased reviews. In 2023, the parties reached a private settlement.

### KALODIMOS V. MEREDITH CORPORATION D/B/A WSMV CHANNEL 4, NO. 3:18-CV-01321 (M.D. TENN.)

Lieff Cabraser represented Demetria Kalodimos, the longest running anchor in the history of Middle Tennessee's Channel 4 news network, in sex and age discrimination claims against the network. Ms. Kalodimos was known within the community as the "face of Channel 4," and had received both local and national accolades for journalistic excellence when she was terminated in 2017. On behalf of Ms. Kalodimos, Lieff Cabraser litigated claims for violation

of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Tennessee Human Rights Act, and the common law. The parties resolved these disputes in 2019 following a private mediation.



### BUTLER V. HOME DEPOT, NO. C94- 4335 SI (N.D. CAL.)

Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment. The class was certified in January 1995. In January 1998, the Court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree. Under the terms of the settlement, Home Depot modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provided "a very significant monetary payment to the class members for which I think they should be grateful to their counsel. Even more significant is the injunctive relief that's provided for…" By 2003, the injunctive relief had created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of more than $100 million per year in wages for female employees.

### GILES V. ALLSTATE, JCCP NOS. 2984 AND 2985

Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of wrongly denied out-of-pocket costs. The action settled for approximately $40 million.

### GOOGLE GENDER PAY BIAS LAWSUIT

In October 2022, a California Superior Court judge granted final approval to a $118 million settlement of litigation brought on behalf of over 15,000 female Google workers



who alleged the tech giant engaged in systemic and pervasive pay and promotion discrimination since 2013 against its female software engineers. Filed by Lieff Cabraser and co-counsel in 2017 under California's then-newly-amended Equal Pay law, the Google Gender Discrimination class action broke new ground in tech employment law as it addressed two pernicious and long-standing practices, the under-leveling of women relative to comparable men at hire, and using candidates' past salary information to determine their pay rate, the latter a process that perpetuated inequity as women on average have historically been paid significantly less than men.

### ROSENBURG V. IBM, NO. C 06-0430 PJH (N.D. CAL.)

Plaintiffs alleged that IBM illegally misclassified its employees who install or maintain computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws. In July 2007, the Court granted final approval to a $65 million settlement of a class action suit by current and former technical support workers for IBM seeking unpaid overtime. The settlement constituted a record amount in litigation seeking overtime compensation for employees in the computer industry.



### SATCHELL V. FEDEX EXPRESS, NO. C 03-2659 SI, C 03-2878 SI (N.D. CAL.)

In 2007, the Court granted final approval to a $54.9 million settlement of race discrimination class action lawsuit by African American and Latino employees of FedEx Express. The settlement required FedEx to reform its promotion, discipline, and pay practices. Under the settlement, FedEx implemented multiple steps to promote equal employment opportunities, including making its performance evaluation process less discretionary, discarding use of the "Basic Skills Test" as a prerequisite to promotion into certain desirable positions, and changing employment policies to demonstrate that its revised practices do not continue to foster racial discrimination. The settlement, covering 20,000 hourly employees and operations managers who worked in the western region of

FedEx Express since October 1999, was approved by the Court in August 2007.



### GONZALEZ V. ABERCROMBIE & FITCH STORES, NO. C03-2817 SI (N.D. CAL.)

In April 2005, the Court approved a settlement, valued at approximately $50 million, which required retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination. The settlement included a six-year period of injunctive relief requiring the company to institute a wide range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender. Lieff Cabraser served as Lead Class Counsel and prosecuted the case with a number of co-counsel firms, including the Mexican American Legal Defense and Education Fund, the Asian Pacific American Legal Center, and the NAACP Legal Defense and Educational Fund, Inc.

### CALIBUSO V. BANK OF AMERICA CORPORATION, MERRILL LYNCH & CO., NO. CV10-1413 (E.D. N.Y.)

Lieff Cabraser served as Co-Lead Counsel for female Financial Advisors who alleged that Bank of America and Merrill Lynch engaged in a pattern and practice of gender discrimination with respect to business opportunities and compensation. The complaint charged that these violations were systemic, based upon company-wide policies and practices.

In December 2013, the Court approved a $39 million settlement. The settlement included three years of programmatic relief, overseen by an independent monitor, regarding teaming and partnership agreements, business generation, account distributions, manager evaluations, promotions, training, and complaint processing and procedures. An independent consultant also conducted an internal study of the bank's Financial Advisors' teaming practices.



### FRANK V. UNITED AIRLINES, NO. C-92-0692 MJJ (N.D. CAL.)

Lieff Cabraser and co-counsel obtained a $36.5 million settlement in February 2004 for a class of female flight attendants who were required to weigh less than comparable male flight attendants. Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as a mediator in the case, stated, "As a participant in the settlement negotiations, I am familiar with and know the reputation, experience and skills of lawyers involved. They are dedicated, hardworking and able counsel who have represented their clients very effectively." U.S. District Judge Martin J. Jenkins, in granting final approval to the settlement, found "that the results achieved here could be nothing less than described as exceptional," and that the settlement "was obtained through the efforts of outstanding counsel."



### BARNETT V. WAL-MART, NO. 01-2- 24553-SNKT (WASH.)

The Court approved in July 2009 a settlement valued at up to $35 million on behalf of workers in Washington State who alleged they were deprived of meal and rest breaks and forced to work off-the-clock at Wal-Mart stores and Sam's Clubs. In addition to monetary relief, the settlement provided injunctive relief benefiting all employees.

Wal-Mart was required to undertake measures to prevent wage and hour violations at its 50 stores and clubs in Washington, measures that included the use of new technologies and compliance tools.

Plaintiffs filed their complaint in 2001. Three years later, the Court certified a class of approximately 40,000 current and former Wal-Mart employees. The eight years of litigation were intense and adversarial. Wal-Mart, then the world's third largest corporation, vigorously denied liability and spared no expense in defending itself. This lawsuit and similar actions filed against Wal-Mart across America served to reform the pay procedures and employment practices for Wal-Mart's 1.4 million employees nationwide. In a press release announcing the Court's approval of the settlement, Wal-Mart spokesperson Daphne Moore stated, "This lawsuit was filed years ago and the allegations are not representative of the company we are today." Lieff Cabraser served as Court-appointed Co-Lead Class Counsel.



### VEDACHALAM V. TATA CONSULTANCY SERVICES, C 06-0963 CW (N.D. CAL.)

Lieff Cabraser served as Co-Lead Counsel for 12,700 foreign nationals sent by the Indian conglomerate Tata to work in the U.S. The complaint charged that Tata breached the contracts of its non-U.S.-citizen employees by requiring them to sign over their federal and state tax refund checks to Tata, and by failing to pay its non- U.S.-citizen employees the monies promised to those employees before they came to the United States.

In 2007 and again in 2008, the District Court denied Tata's motions to compel arbitration of Plaintiffs' claims in India. The Court held that no arbitration agreement existed because the documents purportedly requiring arbitration in India applied one set of rules to the Plaintiffs and another set to Tata. In 2009, the Ninth Circuit Court of Appeals affirmed this decision. In July 2011, the District Court denied in part Tata's motion for summary judgment, allowing Plaintiffs' legal claims for breach of contract and certain violations of California wage laws to go forward.

In 2012, the District Court found that the plaintiffs satisfied the legal requirements for a class action and certified two classes.

After 7 years of hard-fought litigation, the District Court in July 2013 granted final approval to a $29.75 million settlement.

### AMOCHAEV. V. CITIGROUP GLOBAL MARKETS, D/B/A SMITH BARNEY, NO. C 05-1298 PJH (N.D. CAL.)

In August 2008, the Court approved a $33 million settlement for the 2,411 members of the Settlement Class in a gender discrimination case against Smith Barney. Lieff Cabraser represented Female Financial Advisors who charged that Smith Barney, the retail brokerage unit of Citigroup, discriminated against them in account distributions, business leads, referral business, partnership opportunities, and other terms of employment. In addition to the monetary

compensation, the settlement included comprehensive injunctive relief for four years designed to increase business opportunities and promote equality in compensation for female brokers.



### GIANNETTO V. COMPUTER SCIENCES CORPORATION, NO. 03-CV-8201 (C.D. CAL.)

Plaintiffs charged that the global conglomerate had a common practice of refusing to pay overtime compensation to its technical support workers involved in the installation and maintenance of computer hardware and software in violation of the Fair Labor Standards Act, California's Unfair Competition Law, and the wage and hour laws of 13 states. In one of the largest overtime pay dispute settlements ever in the information technology industry, the Court approved a $24 million settlement with Computer Sciences Corporation in 2005.

### BUTTRAM V. UPS, NO. C-97-01590 MJJ (N.D. CAL.)

Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African- American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement. In 1999, the Court approved a $12.14 million settlement of the action. Under the injunctive relief portion of the settlement, Class Counsel monitored the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car drivers.



### CURTIS-BAUER V. MORGAN STANLEY & CO., NO. C-06- 3903 (TEH)

In October 2008, the Court approved a $16 million settlement in the class action against Morgan Stanley. The complaint charged that Morgan Stanley discriminated against African-American and Latino Financial Advisors and Registered Financial Advisor Trainees in the Global Wealth Management Group of Morgan Stanley in compensation and business opportunities. The settlement included comprehensive injunctive relief regarding account distributions, partnership arrangements, branch manager promotions, hiring, retention, diversity training, and complaint processing. The settlement also provided for the appointment of an independent Diversity Monitor and an independent Industrial Psychologist to effectuate the terms of the agreement.



### CHURCH V. CONSOLIDATED FREIGHTWAYS, NO. C90-2290 DLJ (N.D. CAL.)

Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight forwarding company acquired by Consolidated Freightways in 1989. On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act, the securities laws, and the Age Discrimination in Employment Act. The case settled in 1993 for $13.5 million.

### GODDARD, ET AL. V. LONGS DRUG STORES CORPORATION, ET AL., NO. RG04141291 (CAL. SUPR. CT.)

Store managers and assistant store managers of Longs Drugs charged that the company misclassified them as exempt from overtime wages. Managers regularly worked in excess of 8 hours per day and 40 hours per week without compensation for their overtime hours. Following mediation, in 2005, Longs agreed to settle the claims for a total of $11 million. Over 1,000 current and former Longs Drugs managers and assistant managers were eligible for compensation under the settlement, and over 98% of the class submitted claims.

### GERLACH V. WELLS FARGO & CO., NO. C 05-0585 CW (N.D. CAL.)

In January 2007, the Court granted final approval to a $12.8 million settlement of a class action suit by current and former business systems employees of Wells Fargo seeking unpaid overtime. Plaintiffs alleged that Wells Fargo illegally misclassified those employees, who maintained and updated Wells Fargo's business tools according to others' instructions, as "exempt" from the overtime pay requirements of federal and state labor laws.

**BUCCELLATO V. AT&T OPERATIONS**, NO. C10-00463-LHK (N.D. CAL.)

Lieff Cabraser represented a group of current and former AT&T technical support workers who alleged that AT&T misclassified them as exempt and failed to pay them for all overtime hours worked, in violation of federal and state overtime pay laws. In June 2011, the Court approved a $12.5 million collective and class action settlement.



**GOTTLIEB V. SBC COMMUNICATIONS**, NO. CV-00- 04139 AHM (MANX) (C.D. CAL.)

With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans. After acquiring PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock Funds that were included in the PTG employees' savings plans to be liquidated. Plaintiffs alleged that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan participants under the Employee Retirement Income Security Act. In 2002, the Court granted final approval to a $10 million settlement.



**ELLIS V. COSTCO WHOLESALE CORP.**, NO. 04-03341-EMC (N.D. CAL.)

Lieff Cabraser served as Co-Lead Counsel for current and former female employees who charged that Costco discriminated against women in promotion to management positions. In January 2007, the Court certified a class consisting of over 750 current and former female Costco employees nationwide who were denied promotion to General Manager or Assistant Manager since January 3, 2002. Costco appealed.

In September 2011, the U.S. Court of Appeals for the Ninth Circuit remanded the case to the District Court to make class certification findings consistent with the U.S. Supreme Court's ruling in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011). In September 2012, U.S. District Court Judge Edward M. Chen granted plaintiffs' motion for class certification and certified two classes of over 1,250 current and former female Costco employees, one for injunctive relief and the other for monetary relief. On May 27, 2014, the Court approved an $8 million settlement.



**TROTTER V. PERDUE FARMS**, NO. C 99-893-RRM (JJF) (MPT) (D. DEL.)

Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations. The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act. Under a settlement approved by the Court in 2002, Perdue paid $10 million for wages lost by its chicken processing employees as well as attorneys' fees and costs. The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

**ZUCKMAN V. ALLIED GROUP**, NO. 02-5800 SI (N.D. CAL.)

Plaintiffs, claims representatives of Allied / Nationwide, alleged that the company misclassified them as exempt employees and failed to pay them and other claims representatives in California overtime wages for hours they worked in excess of eight hours or forty hours per week. In September 2004, the Court approved a settlement with Allied Group and Nationwide Mutual Insurance Company of $8 million plus Allied/Nationwide's share of payroll taxes on amounts treated as wages, providing plaintiffs a 100% recovery on their claims.

In approving the settlement, U.S. District Court Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

**THOMAS V. CALIFORNIA STATE AUTOMOBILE ASSOCIATION**, NO. CH217752 (CAL. SUPR. CT.)

With co-counsel, Lieff Cabraser represented 1,200 current

and former field claims adjusters who worked for the California State Automobile Association ("CSAA"). Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked. In May 2002, the Court approved an $8 million settlement of the case.



### IN RE FARMERS INSURANCE EXCHANGE CLAIMS REPRESENTATIVES' OVERTIME PAY LITIGATION, MDL NO. 1439 (D. OR.)

Lieff Cabraser and co-counsel represented claims representatives of Farmers' Insurance Exchange seeking unpaid overtime. Lieff Cabraser won a liability phase trial on a classwide basis, and then litigated damages on an individual basis before a Special Master. The judgment was partially upheld on appeal. In August 2010, the Court approved an $8 million settlement.



### ZABOROWSKI V. MHN GOVERNMENT SERVICES, NO. 12-CV-05109-SI (N.D. CAL.)

Lieff Cabraser represented current and former Military and Family Life Consultants ("MFLCs") in a class action lawsuit against MHN Government Services, Inc. ("MHN") and Managed Health Network, Inc., seeking overtime pay under the federal Fair Labor Standards Act and state laws. The complaint charged that MHN misclassified the MFLCs as independent contractors and as "exempt" from overtime and failed to pay them overtime pay for hours worked over 40 per week. In April 2013, the Court denied MHN's motion to compel arbitration and granted plaintiff's motion for conditional certification of a FLSA collective action. In December 2014, the U.S. Court of Appeals for the Ninth Circuit upheld the district court's determination that the arbitration clause in MHN's employee contract was procedurally and substantively unconscionable. MHN appealed to the United States Supreme Court. MHN did not contest that its agreement had several unconscionable components; instead, it asked the Supreme Court to sever the unconscionable terms of its arbitration agreement and nonetheless send the MFLCs' claims to arbitration. The Supreme Court granted MHN's petition for certiorari on October 1, 2015, and was

scheduled to hear the case in the 2016 spring term in *MHN Gov't Servs., Inc. v. Zaborowski*, No. 14-1458. While the matter was pending before the Supreme Court, an arbitrator approved a class settlement in the matter, which resulted in payment of $7,433,109.19 to class members.

### HIGAZI V. CADENCE DESIGN SYSTEMS, NO. C 07-2813 JW (N.D. CAL.)

Plaintiffs alleged that Cadence illegally misclassified its employees who install, maintain, or support computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws. In July 2008, the Court granted final approval to a $7.664 million settlement of a class action suit by current and former technical support workers for Cadence seeking unpaid overtime.

### KAHN V. DENNY'S, NO. BC177254 (CAL. SUPR. CT.)

Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California. The Court approved a $4 million settlement of the case in 2000.

### SANDOVAL V. MOUNTAIN CENTER, INC., ET AL., NO. 03CC00280 (CAL. SUPR. CT.)

Cable installers in California charged that defendants owed them overtime wages, as well as damages for missed meal and rest breaks and reimbursement for expenses incurred on the job. In 2005, the Court approved a $7.2 million settlement of the litigation, which was distributed to the cable installers who submitted claims.



### LEWIS V. WELLS FARGO, NO. 08-CV- 2670 CW (N.D. CAL.)

Lieff Cabraser served as Lead Counsel on behalf of approximately 330 I/T workers who alleged that Wells Fargo had a common practice of misclassifying them as exempt and failing to pay them for all overtime hours worked, in violation of federal and state overtime pay laws. In April 2011, the Court granted collective action certification of the FLSA claims and approved a $6.72 million settlement of the action.



***WYNNE V. MCCORMICK & SCHMICK'S SEAFOOD RESTAURANTS,* NO. C 06-3153 CW (N.D. CAL.)**

In August 2008, the Court granted final approval to a settlement valued at $2.1 million, including substantial injunctive relief, for a class of African-American restaurant-level hourly employees. The consent decree created hiring benchmarks to increase the number of African Americans employed in front of the house jobs (e.g., server, bartender, host/hostess, waiter/waitress, and cocktail server), a registration of interest program to minimize discrimination in promotions, improved complaint procedures, and monitoring and enforcement mechanisms.

***MARTIN V. BOHEMIAN CLUB,* NO. SCV-258731 (CAL. SUPR. CT.)**

Lieff Cabraser and co-counsel represented a class of approximately 659 individuals who worked seasonally as camp valets for the Bohemian Club. Plaintiffs alleged that they had been misclassified as independent contractors, and thus were not paid for overtime or meal-and-rest breaks as required under California law. The Court granted final approval of a $7 million settlement resolving all claims in September 2016.



***HOLLOWAY V. BEST BUY,* NO. C05- 5056 PJH (N.D. CAL.)**

Lieff Cabraser, with co-counsel, represented a class of current employees of Best Buy that alleged Best Buy stores nationwide discriminated against women, African Americans, and Latinos. The complaint charged that these employees were assigned to less desirable positions and denied promotions, and that class members who attained managerial positions were paid less than white males. In November 2011, the Court approved a settlement of the class action in which Best Buy agreed to changes to its personnel policies and procedures to enhance the equal employment opportunities of the tens of thousands of women, African Americans, and Latinos employed by Best Buy nationwide.

***SHERRILL V. PREMERA BLUE CROSS,* NO. 2:10-CV-00590-TSZ (W.D. WASH.)**

In April 2010, a technical worker at Premera Blue Cross filed a lawsuit against Premera seeking overtime pay from its misclassification of technical support workers as exempt. In June 2011, the Court approved a collective and class action settlement of $1.45 million.

***LYON V. TMP WORLDWIDE,* NO. 993096 (CAL. SUPR. CT.)**

Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm. The suit alleged that TMP failed to pay overtime wages to these employees. The settlement, approved in 2000, provided almost a 100% recovery to class members.



***LUSARDI V. MCHUGH, SECRETARY OF THE ARMY,* NO. 0120133395 (U.S. EEOC)**

Lieff Cabraser and the Transgender Law Center represented Tamara Lusardi, a transgender civilian software specialist employed by the U.S. Army. In a groundbreaking decision in April 2015, the Equal Employment Opportunity Commission reversed a lower agency decision and held that the employer subjected Lusardi to disparate treatment and harassment based on sex in violation of Title VII of the Civil Rights Act of 1964 when (1) the employer restricted her from using the common female restroom (consistent with her gender identity) and (2) a team leader intentionally and repeatedly referred to her by male pronouns and made hostile remarks about her transition and gender.

# ENVIRONMENTAL & TOXIC EXPOSURES

Environmental spills and other industry-created disasters wreak havoc on the living world around us with alarming regularity. These avoidable disasters include wildfires caused by negligently located, maintained, or designed utility equipment, oil spills, coal ash and other industrial spills, refinery and rig explosions, and long-term leakage of industrial pollutants and toxic and mutagenic chemicals into precious groundwater supplies and lifeblood rivers used by wildlife and communities for drinking water.

Lieff Cabraser possesses the expertise and financial resources to thoroughly investigate fires and environmental exposure cases and hold those responsible accountable. We have successfully prosecuted cases against many of the world's most powerful corporations, obtaining multiple billions of dollars in recoveries, including for families, businesses, and property owners throughout the U.S.

## Representative Current Cases



***FUEL INDUSTRY CLIMATE CASES*, J.C.C.P. NO. 5310**

Lieff Cabraser has been retained by the California Attorney General's office to support its litigation against five of the largest oil and gas companies in the world over allegations the companies misled the public about climate change. The lawsuit alleges that Exxon Mobil, Shell, Chevron, ConocoPhillips, BP, and the American Petroleum Institute (API) have known for decades that reliance on fossil fuels would cause catastrophic harm to the country, including California, but suppressed that information while also actively pushing disinformation that caused a delayed societal response to global warming. The State is suffering terrible climate harms as a result. The lawsuit, filed on behalf of the People of the State of California, seeks to hold the companies accountable for the lies they have told and the damage they have caused.

***BRAZIEL V. WHITMER, ET AL.*, CASE 1:21-CV-00960-JTN-PJG (W.D. MICHIGAN, SOUTHERN DIVISION)**

In late May 2022, Lieff Cabraser and civil rights legends Edwards & Jennings, P.C. filed a proposed Second Amended Class Action Complaint on behalf of the residents of Benton Harbor, Michigan, in the federal public health emergency litigation arising from the poisoning of the Benton Harbor, Michigan, water supply caused by lead, bacteria, and other contaminants. As described in the Complaint, since at least 2018, Benton Harbor residents, including children and infants, have been exposed, through ingestion and other uses of water, to dangerously high levels of lead and other contaminants

that exceed those permissible under the state and national Safe Drinking Water Acts.

An environmental justice community maximally impacted by environmental harms and risks, with a population composed of 85% African-American residents, 27% of Benton Harbor's population are children. The plaintiffs, many of whom are children and infants, have been and continue to be exposed to extreme toxicity from lead and other hazardous contaminants, causing an "imminent and substantial endangerment to their health."

***STERLING, ET AL. V. THE CITY OF JACKSON, MISSISSIPPI, ET AL.*, CASE NO. 3:22-CV-00531-KHJ-MTP (S.D. MISS., NORTHERN DIVISION)**

On September 16, 2022, Lieff Cabraser and co-counsel filed the first federal class action lawsuit on behalf of the residents of Jackson, Mississippi over the extreme water crisis in and around Jackson that left residents without running water for weeks and which arose out of decades of alleged neglect and administrative and political failure. The lawsuit seeks injunctive relief and monetary damages against various government and private engineering defendants over the neglect, mismanagement, and maintenance failures that led to an environmental catastrophe leaving over 153,000 Jackson-area residents without access to safe running water.

As described in the Complaint, the City of Jackson's water supply has been neglected for decades, culminating in a complete shutdown in August 2022 that left over 153,000 residents, 82% of whom are Black, without access to running water. These residents lacked safe drinking water, or water for making powdered baby formula, cooking, showering, or laundry. During the long period where the city had no water pressure—and was unable to facilitate the flow of water—residents of Jackson could not flush their toilets for days at a time. The litigation is ongoing.

# ENVIRONMENTAL & TOXIC EXPOSURES

## Representative Achievements & Successes



### *GUTIERREZ V. AMPLIFY,* NO. 8:21-CV-01628 (C.D. CAL.)

On Saturday October 2nd, 2021, a failure occurred in a pipeline running from the Port of Long Beach to an offshore oil platform known as Elly, owned by Amplify Energy and operated by Beta Operating Company. The failure caused what is now estimated to be tens of thousands of gallons of oil to gush into the Catalina Channel, creating a slick that spanned over 8,000 acres. The spill left oil along long stretches of beach in Newport Beach, Laguna Beach and Huntington Beach, killing fish and birds and threatening ecologically sensitive wetlands in what officials called an environmental disaster. Commercial fishing off this part of the coast was closed, severely affecting fishers and fish processors throughout the region. Homeowners with beachfront properties or easements were also impacted, as were city beaches.

On December 20, 2021, U.S. District Judge David O. Carter of the Central District of California appointed Lieff Cabraser partner Lexi J. Hazam as Interim Co-Lead Counsel in the Orange County Oil Spill Litigation. Judge Carter also appointed three Special Masters to assist the Court in the litigation.

On January 28, 2022, Interim Co-Lead Counsel filed a Consolidated Class Action Complaint on behalf of commercial fishers, local property owners, and waterfront tourism businesses against Amplify Energy Corporation and related co-defendants, as well as shipping companies and their related codefendants and ships. That Complaint was amended on March 21, 2022 and stated numerous liability claims, and sought all recoverable compensatory, statutory, and other damages, including remediation costs, as well as injunctive relief.

On April 24, 2023, Hon. David O. Carter of the Central District of California approved the Class Plaintiffs' $50 million settlement with Amplify Energy Corporation, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company. Under the Settlement, Amplify will pay $34 million to the Fisher Class, $9 million to the Property Class, and $7 million to the Waterfront Tourism Class. In addition, Amplify has agreed to injunctive relief to help prevent future spills, including installation of a new leak detection system, use of remotely-operated vehicles to detect pipeline movement and allow rapid reporting to federal and state authorities, increased staffing on the off-shore platform and control room, and the establishment of a one-call alert system to report any threatened release of hazardous substances.



### *ANDREWS, ET AL. V. PLAINS ALL AMERICAN PIPELINE, ET AL.,* NO. 2:15-CV-04113-PSG-JEM (C.D. CAL.)

Lieff Cabraser served as Court-appointed Class Counsel in this action arising from an oil spill in Santa Barbara County in May 2015. A pipeline owned by Plains ruptured, and oil from the pipeline flowed into the Pacific Ocean, soiling beaches and impacting local fisheries. Lieff Cabraser represented homeowners who lost the use of the beachfront amenity for which they pay a premium, local oil platform workers who were laid off as a result of the spill and subsequent closure of the pipeline, as well as fishers whose catch was impacted by the oil spill. Plaintiffs alleged that defendants did not follow basic safety protocols when they installed the pipeline, failed to properly monitor and maintain the pipeline, ignored clear signs that the pipeline was corroded and in danger of bursting, and failed to promptly respond to the oil spill when the inevitable rupture occurred.

A settlement was reached in 2022 to provide $184 million to a class of Fishers and Fish Processors injured as a result of the spill, and $46 million to beachfront property owners and lessees whose properties were impacted by the spill.

On September 16, 2022, the Court granted final approval to the $230 million settlement.



***IN RE OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, MDL NO. 2179 (E.D. LA.)***

Lieff Cabraser served on the Plaintiffs' Steering Committee ("PSC") and, with co-counsel, represented fishermen, property owners, business owners, wage earners, and other harmed parties in class action litigation against BP, Transocean, Halliburton, and other defendants involved in the Deepwater Horizon oil rig blowout and resulting oil spill in the Gulf of Mexico on April 20, 2010. The Master Complaints alleged that the defendants were careless in addressing the operations of the well and the oil rig, ignored warning signs of the impending disaster, and failed to employ and/or follow proper safety measures, worker safety laws, and environmental protection laws in favor of cost-cutting measures. In 2012, the Court approved two class action settlements to fully compensate hundreds of thousands of victims of the tragedy. The settlements resolved the majority of private economic loss, property damage, and medical injury claims stemming from the Deepwater Horizon Oil Spill, and held BP fully accountable to individuals and businesses harmed by the spill.

Under the settlements, there was no dollar limit on the amount BP would have to pay. In 2014, the U.S. Supreme Court denied review of BP's challenge to its own class action settlement. The settlement received final approval, and has so far delivered $11.2 billion to compensate claimants' losses. The medical settlement also received final approval, and an additional $1 billion settlement was reached with defendant Halliburton.



***2014 KINGSTON, TENNESSEE TVA COAL ASH SPILL LITIGATION, NO. 3:09-CV-09 (E.D. TENN.)***

Lieff Cabraser represented hundreds of property owners and businesses harmed by the largest coal ash spill in U.S. history. On December 22, 2008, more than a billion gallons of coal ash slurry spilled when a dike burst on a retention pond at the Kingston Fossil Plant operated by the Tennessee Valley Authority (TVA) in Roane County, Tennessee. A wall of coal ash slurry traveled across the Emory River, polluting the river and nearby waterways, and covering nearly 300 acres with toxic sludge, including 12 homes, and damaging hundreds of properties. In March 2010, the Court denied in large part TVA's motion to dismiss the litigation. In the Fall of 2011, the Court conducted a four week bench trial on the question of whether TVA was liable for releasing the coal ash into the river system.

The issue of damages was reserved for later proceedings. In August 2012, the Court found in favor of plaintiffs on their claims of negligence, trespass, and private nuisance. In August 2014, the case came to a conclusion with TVA's payment of $27.8 million to settle the litigation.



***SOUTHERN CALIFORNIA GAS LEAK CASES, JCCP NO. 4861***

Lieff Cabraser was selected by the Los Angeles County Superior Court to help lead two important class action cases on behalf of homeowners and businesses that suffered economic injuries in the wake of the massive Porter Ranch gas leak, which began in October of 2015 and lasted into February of 2016. During this time, huge quantities of natural gas spewed out of an old well at Southern California Gas's Aliso Canyon Facility and into the air of Porter Ranch, a neighborhood located adjacent to the Facility and 25 miles northwest of Los Angeles.

This large-scale environmental disaster forced thousands of residents to leave their homes for months on end while the leak continued, and for several months thereafter. It also caused local business to dry up during the busy holiday season, as many residents had evacuated the neighborhood and visitors avoided the area. Evidence suggests the leak was caused by at least one old and malfunctioning well used to inject and retrieve gas. Southern California Gas Company allegedly removed the safety valve on the well that could have prevented the leak. As a result, the gas leak left a carbon footprint larger than that of the Deepwater Horizon oil spill.

Together with other firms chosen to pursue class relief for these victims, Lieff Cabraser filed two class action complaints – one on behalf of Porter Ranch homeowners, and another on behalf of Porter Ranch businesses.

Southern California Gas argued in response that the injuries suffered by homeowners and businesses could not proceed as class actions. In May 2017, the Superior Court rejected these arguments. In 2022, the class of property owners and lessees reached a settlement of $40 million.The claims of the class of business owners were ultimately denied by the California Supreme Court.



### IN RE IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION, MDL NO. 2284 (E.D. PA.)

Lieff Cabraser served as Co-Lead Counsel for homeowners, golf course companies, and other property owners in a nationwide class action lawsuit against E.I. du Pont de Nemours & Company ("DuPont"), charging that its herbicide Imprelis caused widespread death among trees and other non-targeted vegetation across the country.

DuPont marketed Imprelis as an environmentally friendly alternative to the commonly used 2,4-D herbicide. Just weeks after Imprelis' introduction to the market in late 2010, however, complaints of tree damage began to surface. Property owners reported curling needles, severe browning, and dieback in trees near turf that had been treated with Imprelis. In August 2011, the U.S. Environmental Protection Agency banned the sale of Imprelis.

The complaint charged that DuPont failed to disclose the risks Imprelis posed to trees, even when applied as directed, and failed to provide instructions for the safe application of Imprelis. In response to the litigation, DuPont created a process for property owners to submit claims for damages. Approximately $600 million was paid to approximately 25,000 claimants. In October 2013, the Court approved a settlement of the class action that substantially enhanced the DuPont claims process, including by adding an extended warranty, a more limited release of claims, the right to appeal the denial of claim by DuPont to an independent arborist, and publication of DuPont's tree payment schedule.

### IN RE EXXON VALDEZ OIL SPILL LITIGATION, NO. 3:89-CV-0095 HRH (D. AL.)

The Exxon Valdez ran aground on March 24, 1989, spilling 11 million gallons of oil into Prince William Sound. Lieff Cabraser served as one of the Court-appointed Plaintiffs' Class Counsel. The class consisted of fisherman and



others whose livelihoods were gravely affected by the disaster. In addition, Lieff Cabraser served on the Class Trial Team that tried the case before a jury in federal court in 1994. The jury returned an award of $5 billion in punitive damages.

In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive. In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion. Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William Sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the Exxon Valdez through Prince William Sound." In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines. In January 2004, Judge Holland issued his order finding that Supreme Court authority did not change the Court's earlier analysis.

In December 2006, the Ninth Circuit Court of Appeals issued its ruling, setting the punitive damages award at $2.5 billion. Subsequently, the U.S. Supreme Court further reduced the punitive damages award to $507.5 million, an amount equal to the compensatory damages. With interest, the total award to the plaintiff class was $977 million.



### WEST V. G&H SEED CO., ET AL., NO. 99-C-4984-A (LA. STATE CT.)

With co-counsel, Lieff Cabraser represented a certified class of 1,500 Louisiana crawfish farmers who alleged that Fipronil, an insecticide sold under the trade name ICON, damaged their pond-grown crawfish crops. In Louisiana, rice and crawfish are often farmed together, either in the same pond or in close proximity to one another. After its introduction to the market in 1999, ICON was used extensively in Louisiana to kill water weevils that attacked rice plants. The lawsuit alleged that ICON also had a devastating effect on crawfish harvests with some farmers losing their entire crawfish crop.

In 2004, the Court approved a $45 million settlement with Bayer CropScience, which during the litigation purchased

Aventis CropScience, the original manufacturer of ICON. The settlement was reached after the parties had presented nearly a month's worth of evidence at trial and were on the verge of making closing arguments to the jury.



### KENTUCKY COAL SLUDGE LITIGATION, NO. 00-CI-00245 (CMMW. KY.)

On October 11, 2000, near Inez, Kentucky, a coal waste storage facility ruptured, spilling 1.25 million tons of coal sludge (a wet mixture produced by the treatment and cleaning of coal) into waterways in the region and contaminating hundreds of properties. This was one of the worst environmental disasters ever in the Southeastern United States. With co-counsel, Lieff Cabraser represented over 400 clients in property damage claims, including claims for diminution in the value of their homes and properties. In April 2003, the parties reached a confidential settlement agreement on terms favorable to the plaintiffs.

### IN RE GCC RICHMOND WORKS CASES, JCCP, NO. 2906 (CAL. SUPR. CT.)

Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the July 26, 1993, release of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California. In 1995, the Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.



### IN RE UNOCAL REFINERY LITIGATION, NO. C 94-04141 (CAL. SUPR. CT.)

Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California. The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

### TOMS RIVER CHILDHOOD CANCER INCIDENTS, NO. L-10445-01 MT (SUP. CT. NJ)

With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each who had a child with cancer, that claimed the cancers were caused by environmental contamination in the Toms River area. Commencing in 1998, the parties—the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area—participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the factual and scientific issues in the matter. In December 2001, under the supervision of a mediator, a confidential settlement favorable to the families was reached.



### IN RE SACRAMENTO RIVER SPILL CASES I AND II, JCCP NOS. 2617 & 2620 (CAL. SUPR. CT.)

On July 14, 1991, a Southern Pacific train tanker car derailed in northern California, spilling 19,000 gallons of a toxic pesticide, metam sodium, into the Sacramento River near the town of Dunsmuir at a site along the rail lines known as the Cantara Loop. The metam sodium mixed thoroughly with the river water and had a devastating effect on the river and surrounding ecosystem. Within a week, every fish, 1.1 million in total, and all other aquatic life in a 45-mile stretch of the Sacramento River was killed. In addition, many residents living along the river became ill with symptoms that included headaches, shortness of breath, and vomiting. The spill is considered the worst inland ecological disaster in California history.

Lieff Cabraser served as Court appointed Plaintiffs' Liaison Counsel and Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in coordinated proceedings that included all of the lawsuits arising out of this toxic spill. Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

# FALSE CLAIMS ACT

Lieff Cabraser represents whistleblowers in a wide range of False Claims Act cases, including Medicare kickback and healthcare fraud, defense contractor fraud, and securities and financial fraud. We have more than a dozen whistleblower cases currently under seal and investigation in federal and state jurisdictions across the U.S. For that reason, we do not list all of our current False Claims Act and qui tam cases in our firm resume.

## Representative Current Cases



**STATE OF CALIFORNIA V. ABBVIE, INC., NO. RG18893169 (CAL. SUP. CT.)**

On September 18, 2018, Lieff Cabraser and California Insurance Commissioner Dave Jones sued AbbVie, Inc. for violations of the Insurance Frauds Prevention Act ("IFPA") by providing kickbacks to healthcare providers throughout California relating to sale of the immunosuppressive drug Humira. The lawsuit, filed in California Superior Court in Alameda, California, alleged that AbbVie engaged in a far-reaching scheme to maximize profits and the number of prescriptions of Humira via "classic" kickbacks—including cash, meals, drinks, gifts, trips, and patient referrals—as well as more sophisticated kickbacks, including professional services to physicians, to induce and reward Humira prescriptions. The Complaint further alleged that AbbVie deployed so-called "Ambassadors" directly into patients' homes, ostensibly to provide a helping hand, but in fact to provide valuable services to benefit health care providers, ensure prescriptions were filled, and deflect patient concerns. In addition, AbbVie directed its Ambassadors to avoid patient questions about risks for the dangerous drug. These kickbacks saved time and money for doctors and their staff.

Defendants sought removal to federal court, but in July 2019 Northern District Judge James Donato issued an order remanding the case back to California Superior Court, noting that plaintiffs brought suit against AbbVie only for its conduct in California, that of pursuing its two illicit schemes to "pump up" the sales of Humira with the state. In August 2020, the California Department of Insurance Fraud announced a $24 million settlement of the case that included meaningful Humira marketing reforms. "AbbVie's prior practices in marketing HUMIRA egregiously put profits ahead of transparency in patient care and violated California law," noted California Insurance Commissioner Ricardo Lara. "This settlement delivers important reforms to AbbVie's business practices and a substantial monetary recovery that will be used to continue to combat insurance fraud."

**UNITED STATES EX REL. MATTHEW CESTRA V. CEPHALON, NO. 14-01842 (E.D. PA.); UNITED STATES EX REL. BRUCE BOISE ET AL. V. CEPHALON, NO. 08-287 (E.D. PA.)**

Lieff Cabraser, with co-counsel, represented four whistleblowers bringing claims on behalf of the U.S. Government and various states against Cephalon, Inc., a pharmaceutical company. Relators alleged that Cephalon engaged in improper or off-label marketing of a cancer drug and two wakefulness drugs. Motions to dismiss were denied in large part and the cases proceeded to discovery before resolving via settlement in 2017.



**UNITED STATES EX REL. MARY HENDOW AND JULIE ALBERTSON V. UNIVERSITY OF PHOENIX, NO. 2:03-CV-00457-GEB-DAD (E.D. CAL.)**

Lieff Cabraser obtained a record whistleblower settlement against the University of Phoenix in a case that charged the university had violated the incentive in a case that compensation ban of the Higher Education Act (HEA) by providing improper incentive pay to its recruiters. The HEA prohibits colleges and universities whose students receive

federal financial aid from paying their recruiters based on the number of students enrolled, which creates a risk of encouraging recruitment of unqualified students who, Congress has determined, are more likely to default on their loans. High student loan default rates not only result in wasted federal funds, but the students who receive these loans and default are burdened for years with tremendous debt without the benefit of a college degree.

The complaint alleged that the University of Phoenix defrauded the U.S. Department of Education by obtaining federal student loan and Pell Grant monies from the federal government based on false statements of compliance with HEA. In December 2009, the parties announced a $78.5 million settlement. The settlement constitutes the second-largest settlement ever in a False Claims Act case in which the federal government declined to intervene in the action and largest settlement ever involving the Department of Education. The University of Phoenix case led to the Obama Administration passing new regulations that took away the so-called "safe harbor" provisions that for-profit universities relied on to justify their alleged recruitment misconduct. For his outstanding work as Lead Counsel and the significance of the case, California Lawyer magazine recognized Lieff Cabraser attorney Robert J. Nelson with a California Lawyer of the Year (CLAY) Award.



### STATE OF CALIFORNIA EX REL. SHERWIN V. OFFICE DEPOT, NO. BC410135 (CAL. SUPR. CT.)

In February 2015, the Court approved a $77.5 million settlement with Office Depot to settle a whistleblower lawsuit brought under the California False Claims Act. The whistleblower was a former Office Depot account manager. The City of Los Angeles, County of Santa Clara, Stockton Unified School District, and 16 additional California cities, counties, and school districts intervened in the action to assert their claims (including common-law fraud and breach of contract) against Office Depot directly. The governmental entities purchased office supplies from Office Depot under a nationwide supply contract known as the U.S. Communities contract. Office Depot promised in the U.S. Communities

contract to sell office supplies at its best governmental pricing nationwide. The complaint alleged that Office Depot repeatedly failed to give most of its California governmental customers the lowest price it was offering other governmental customers. Other pricing misconduct was also alleged.



### STATE OF CALIFORNIA EX REL. ROCKVILLE RECOVERY ASSOCIATES V. MULTIPLAN, NO. 34-2010-00079432 (SACRAMENTO SUPR. CT., CAL.)

Lieff Cabraser represented whistleblower Rockville Recovery Associates in a qui tam suit for civil penalties under the California Insurance Frauds Prevention Act ("IFPA"), Cal. Insurance Code § 1871.7, against Sutter Health, one of California's largest healthcare providers, and obtained the largest penalty ever imposed under the statute. The parties reached a $46 million settlement that was announced in November 2013, shortly before trial was scheduled to commence.

The complaint alleged that the 26 Sutter hospitals throughout California submitted false, fraudulent, or misleading charges for anesthesia services (separate from the anesthesiologist's fees) during operating room procedures that were already covered in the operating room bill.

After Lieff Cabraser defeated Sutter Health's demurrer and motion to compel arbitration, California Insurance Commissioner Dave Jones intervened in the litigation in May 2011. Lieff Cabraser attorneys continued to serve as lead counsel, and litigated the case for over two more years. In all, plaintiffs defeated no less than 10 dispositive motions, as well as three writ petitions to the Court of Appeals.

In addition to the monetary recovery, Sutter Health agreed to a comprehensive series of billing and transparency reforms, which California Insurance Commissioner Dave Jones called "a groundbreaking step in opening up hospital billing to public scrutiny." On the date the settlement was announced, the California Hospital Association recognized its significance by issuing a press release stating that the settlement "compels industry-wide review of anesthesia billing." Defendant Multiplan, Inc., a large leased network Preferred Provider Organization, separately paid a $925,000 civil penalty for its role in enabling Sutter's alleged false billing scheme.

***UNITED STATES EX REL. DYE V. ATK LAUNCH SYSTEMS, NO. 1:06-CV-39-TS (D. UTAH)***

Lieff Cabraser served as co-counsel for a whistleblower who alleged that ATK Launch Systems knowingly sold defective and potentially dangerous illumination flares to the United States military in violation of the federal False Claims Act. The specialized flares were used in nighttime combat, covert missions, and search and rescue operations. A key design specification set by the Defense Department was that these highly flammable and dangerous items ignite only under certain conditions. The complaint alleged that the ATK flares at issue could ignite when dropped from a height of less than 10 feet —and, according to ATK's own analysis, from as little as 11.6 inches—notwithstanding contractual specifications that they be capable of withstanding such a drop. In April 2012, the parties reached a settlement valued at $37 million.



***UNITED STATES EX REL. MAURO VOSILLA AND STEVEN ROSSOW V. AVAYA, INC., NO. CV04-8763 PA JTLX (C.D. CAL.)***

Lieff Cabraser represented a whistleblower in litigation alleging that



defendants Avaya, Lucent Technologies, and AT&T violated the Federal False Claims Act and state false claims statutes. The complaint alleged that defendants charged governmental agencies for the lease, rental, and post-warranty maintenance of telephone communications systems and services that the governmental agencies no longer possessed and/or were no longer maintained by defendants. In November 2010, the parties entered into a $21.75 million settlement of the litigation.

***STATE OF CALIFORNIA EX REL. ASSOCIATES AGAINST FX INSIDER STATE STREET CORP., NO. 34-2008-00008457 (SACRAMENTO SUPR. CT., CAL.) ("STATE STREET I")***

Lieff Cabraser served as co-counsel for the whistleblowers in this action against State Street Corporation. The Complaint alleged that State Street violated the California False Claims Act with respect to certain foreign exchange transactions it executed with two California public pension fund custodial clients. The California Attorney General intervened in the case in October 2009.

# FALSE CLAIMS ACT

## Representative Achievements & Successes

***GOLD COAST HEALTH PLAN QUI TAM MISUSE OF GOVERNEMNT FUNDS LITIGATION***

Lieff Cabraser represented Relators in a False Claims Act whistleblower lawsuit against Gold Coast Health Plan and certain California medical providers over allegations that the defendants knowingly misused Medi-Cal funds they received from the federal government and California State Government in 2014 and 2015 for newly-enrolled adult Medi-Cal patients under the Affordable Care Act. In August 2022, the defendants' agreed to a $70.7 million settlement, in which Gold Coast will pay $17.2 million to state and federal governments, and providers that received allegedly illegal payments—Ventura County Medical Center, Dignity Health, and Clinicas del Camino Real Inc.—were to pay an additional $53.5 million.

# PERSONAL INJURY

Over the last 50 years, Lieff Cabraser has played a leading role in many of the largest, most important mass tort, personal injury law, and wrongful death lawsuits in the U.S. These cases have involved negligent conduct as well as injuries from a vast range of dangerous defective products—from prescription drugs, products like talcum powder linked to ovarian cancer, and faulty medical devices, to unsafe vehicles and consumer products. In many cases, we also compelled corporate defendants to improve their safety procedures and/or issue nationwide recalls for the protection of all consumers and patients.

## Representative Current Cases



***SOCIAL MEDIA LITIGATION: WESTWOOD V. META PLATFORMS INC. AND INSTAGRAM LLC, 2:22-CV-00556-JCB (D. UTAH)***

In September 2022, Lieff Cabraser and co-counsel filed a federal injury lawsuit in Utah on behalf of Mandy and Douglas Westwood and their minor daughter, B.W., a teen Instagram user, alleging that Meta/Facebook's Instagram platform is designed to hook young users like B.W in a manner that endangers their health and welfare, leading B.W. and many others to suffer from severe eating disorders such as anorexia.

As detailed in the complaint, studies and internal documents from Instagram "confirmed what social scientists have long suspected: social media products like Instagram—and Instagram in particular—can cause serious harm to the mental and physical health of young users, especially to teenage girls like B.W. Worse, this capacity for harm is not accidental but by design: what makes Instagram a profitable enterprise for Meta is precisely what harms its young users."

In November 2022, Lieff Cabraser partner Lexi Hazam was named Co-Lead Counsel for plaintiffs in the nationwide multidistrict teen/youth social media addiction litigation. The MDL alleges that social media apps such as Facebook and TikTok cause addiction and mental health problems in young users, including suicidal thoughts, body image issues, anxiety, and depression.

***STIIIZY IP, LLC TEEN CANNABIS PSYCHOSIS LITIGATION (DOE V. STIIIZY, INC., CASE NO. CV0002999 (CAL. SUPR. CT))***

In May 2024, Lieff Cabraser and co-counsel filed an injury lawsuit in California Superior Court against STIIIZY IP, LLC over allegations that teen use of the company's cannabis products, promoted by STIIIZY to teenagers without sufficient warnings, are causing teen cannabis-induced psychosis cases to skyrocket across the U.S. The use of these cannabis products is especially dangerous for teenagers and young adults as their developing minds are more susceptible to serious mental health outcomes. Using deceptive marketing tactics, STIIIZY IP LLC and similar cannabis manufacturers have promoted high-potency THC vape pens and cartridges to teenagers without sufficient warning of the possibility of severe cannabis-induced psychosis.



***UBER SEX ASSAULT***

Lieff Cabraser and cocounsel have filed lawsuits alleging that Uber misled plaintiff and the public into believing it provided safe rides and that it was addressing safety issues, including sexual assault. In December 2023, Lieff Cabraser partner Sarah London was appointed Plaintiffs' Co-Lead and Liaison Counsel in the aggregate litigation against Uber in federal court in San Francisco arising from sexual harassment, physical attack, sexual assault, and battery committed by Uber drivers. The complaint alleges Uber hires drivers without interviewing them, fingerprinting them, or running them through the FBI databases, and that it knew or should have known it was highly probable that harm would result.

***GLOVER, ET AL., V. BAUSCH & LOMB INC., ET AL., NO. 3:18-CV-00352 (D. CONN.)***

Lieff Cabraser represents an injured patient who suffered severe complications after receiving eye lens implants from Bausch & Lomb Inc. In July of 2023, court found that the plaintiffs' third amended complaint sufficiently alleged a failure-to-warn claim. The plaintiff had Bausch Trulign

lenses implanted in each eye during cataract procedures in 2014.

After her second surgery, the plaintiff began to experience severe complications, including significant vision loss and eye pain, undergoing ultimately unsuccessful surgeries to bring back her vision and being diagnosed with Z syndrome, which causes a lens to twist or tilt. Her suit further alleges defendants failed to file adverse event reports with the Food and Drug Administration, including for "known incidents of Z Syndrome," quickly enough. "The [third amended complaint] alleges relevant date ranges in which adverse events occurred but were not reported to the FDA and identifies at least four instances of Z syndrome occurring, but only one adverse event report filed by defendants to the FDA," the Court's order said.

In 2021, the Second Circuit Court of Appeals certified to the Connecticut Supreme Court the question of whether the plaintiffs' allegations that a medical device manufacturer failed to timely report adverse events to the FDA stated a claim under Connecticut law. In 2022, the Connecticut Supreme Court held for the first time that such allegations do state a claim under the Connecticut Products Liability Act.

### NATIONAL PRESCRIPTION OPIATE LITIGATION, MDL NO. 2804



We represent cities, counties, Native American tribes, and tribal health organizations across the U.S. seeking justice and restitution from opioid makers and distributors for their role in the devastating opioid addiction and overdose crisis that has ravaged the nation for nearly two decades. We were also instrumental as part of the plaintiff team that won a $26 billion national settlement with opioid distributors and manufacturers that will provide thousands of U.S. communities with opioid recovery and remediation funds. In 2022, we also served on the negotiating committee responsible for additional national settlements with Teva/Allergan and the three major chain pharmacies, bringing the total of opioids litigation settlements to date to nearly $50 billion.

### IN RE MCKINSEY & CO., INC., NAT'L PRESCRIPTION OPIATE CONSULTANT LITIGATION, (MDL NO. 2996)

In August 2021, Elizabeth Cabraser was appointed Plaintiffs' Lead Counsel and Chair of the Plaintiffs'

Steering Committee in *In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litigation* (MDL No. 2996), multidistrict litigation pending in the Northern District of California. The transferred actions allege that McKinsey & Company, a management consulting firm, played an integral role in creating and deepening the opioid crisis, including working closely with the major opioid manufacturers, such as Purdue Pharmaceutical, to promote, market, and sell opioids, despite knowing the risks associated with over-prescribing these controlled substances. The plaintiff subgroups include Political Subdivisions, School Districts, Tribes, Third Party Payors, and Native American Services-administered Children. These cases have been assigned to Judge Charles R. Breyer for coordinated discovery and pretrial matters. A settlement of $78 million was announced in August 2024.



### MEDLEY V. ABBOTT LABORATORIES, INC., NO. 2:22-CV-00273 (D. NV.)

In February 2022, Lieff Cabraser and co-counsel filed a personal injury lawsuit against Abbott Laboratories relating to the manufacture, marketing, and sale of Similac Neosure Formula for infants alleging infant KM's horrific necrotizing enterocolitis ("NEC") was caused by his consumption of the cow-based infant formula. NEC is a potentially fatal disease that largely affects low birth weight babies who are fed cow-based formula or products. KM, a premature-born, low birth weight baby, was fed Similac Neosure and developed NEC shortly thereafter. The complaint alleges Abbott's negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling, and/or sale of the product known as Similac Neosure.

The complaint further alleges that Abbott specifically marketed its formula and fortifier as necessary to the growth and development of premature infants when in fact its products pose a known and substantial risk to these babies, conduct which led to life-threatening ongoing injuries suffered by the plaintiffs' son KM. The complaint also details Abbott's practice of trying to get parents to choose formula over breast milk goes back decades, during which time the company has promoted its formula as healthier, necessary for adequate nutrition, and the choice for the modern, sophisticated mother. Abbott's advertising has even at times attempted to portray breastfeeding as an inferior and "less

sophisticated" choice, against substantial medical evidence.



***IN RE JUUL LABS INC. MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION, NO. 19-MD-02913-WHO (N.D. CAL.)***

Lieff Cabraser represents multiple plaintiffs who suffered devastating lung, stroke, and other cardiovascular injuries from their use of Juul e-cigarettes. The lawsuits allege Juul Labs, Inc. manufactures and markets unsafe and inherently defective products in marked contrast to Juul's vast, pervasive, and deceptive marketing as well as failure to warn users about Juul dangers, negligence in the manufacture, labeling, and promotion of its highly addictive products, and improperly enticing youths to consume e-cigarettes so as to build a new market of nicotine-addicted consumers. In December 2019, Lieff Cabraser partner Sarah R. London was named Co-Lead Counsel for Plaintiffs in the nationwide multidistrict Juul e-cigarette fraud and injury litigation.

In September 2020, Lieff Cabraser filed a subsequent federal lawsuit in U.S. District Court in Colorado against JLI, Altria, and culpable managing and director defendants on behalf of the Boulder Valley School District for violations of Colorado law and of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as negligence and nuisance laws relating to the companies' creation and youth-targeted marketing of a new nicotine delivery product to maximize profits through addiction. Lieff Cabraser also represents the State of Hawaii and the Yurok Tribe in their related actions regarding Juul e-cigarettes. In June of 2022, District Court Judge William H. Orrick issued an order formally certifying four classes of plaintiffs in the sprawling national Juul case.

In early December 2022, four major settlements with Juul labs were announced to benefit the injured, consumers, government entities, and native tribes in the MDL and California JCCP matters.

On March 14, 2024, U.S. District Judge William Orrick of the Northern District of California issued an order granting final approval to a comprehensive $235 million settlement with Altria in the nationwide JUUL e-cigarette youth vaping predatory advertising, fraud, addiction and injury litigation. Unprecedented in scope, speed,

and significance, the global settlement, reached just after plaintiffs concluded their case in the bellwether trial in San Francisco, was the culmination of four years of a vast, unrelenting effort by plaintiffs and their counsel to hold Altria accountable for the 21st century's 'cigarettes redux' youth nicotine plague.

The settlement will resolve all remaining personal injury, consumer class action, and government entity cases brought in the national MDL and the JCCP in California against Altria. The settlement includes over 8,500 personal injury cases, and over 1,400 government entity cases, and a massive class of consumers. "The scope of these suits is beyond vast," noted Co-Lead Counsel and Lieff Cabraser partner Sarah R. London: "This settlement, in combination with the earlier JUUL settlements, marks a stunning and complete resolution of the JUUL/Altria litigation, and adds substantial additional compensation for victims and their families, get real funds to schools for abatement programs, and help local governments further prevent youth use of e-cigarettes across America."



***IN RE PACIFIC FERTILITY CENTER LITIGATION, NO. 3:18-CV-01586-JSC (N.D. CAL.)***

In April 2018, Lieff Cabraser and co-counsel filed a federal class action lawsuit against Pacific Fertility Center on behalf of eight individual plaintiffs over the Center's March 2018 destruction of or serious threat to hundreds of cryogenically preserved eggs and embryos stored at its facility in San Francisco that occurred as a result of liquid nitrogen depletion in one of its storage tanks. Pacific Fertility Center has admitted that embryos and eggs may have been destroyed when Tank 4 failed. As noted in the amended complaint filed in May 2018, one month after the tank failure incident, in April 2018, Chart Industries, the manufacturer of the tank, issued a recall of several cryopreservation tanks citing reports of issues with "vacuum leak."

On May 1st, 2018, Judge Jacqueline Scott Corley of the U.S. District Court for the Ninth Circuit consolidated three separately filed class action cases including the cases filed by Lieff Cabraser on behalf of women and families who stored their frozen eggs and embryos in the malfunctioning equipment at Pacific Fertility Center in San Francisco. On May 15, 2018, Judge Corley named Lieff Cabraser partner Sarah R. London as Interim Co-Lead Class Counsel in the consolidated proposed class action lawsuits charging Pacific Fertility Clinic with breach

of contract and negligence relating to the destruction of stored eggs and embryos in the wake of cryogenic storage tank failures in early March 2018.

Individual cases related to the Tank 4 failure are also pending in JCCP 5021, *Pacific Fertility Cases*, in San Francisco Superior Court. Lieff Cabraser partner Sarah R. London serves in a leadership role in JCCP 5021, where she was appointed Co-Liaison Counsel. In August 2021, Plaintiffs reached a historic, confidential settlement with Pacific Fertility Center and related defendants.



### 3M DEFECTIVE MILITARY EAR PLUGS INJURY LITIGATION

After 3M revealed it would pay $9.1 million to resolve allegations it knowingly sold defective military-grade ear plugs to the U.S. military, tens of thousands of veterans and servicemembers brought claims against the company for hearing losses caused by use of the Combat Arms Earplugs, which were standard-issue from 2003 to 2015 and were used by troops around the world, including in Afghanistan and Iraq. These lawsuits were consolidated before a single federal judge set to oversee over 200,000 claims, making this the largest MDL in history. The judge appointed a team of attorneys to coordinate the lawsuits against 3M. Lieff Cabraser partner Kenny Byrd serves on the Plaintiffs' Early Vetting Subcommittee in the aggregated litigation, which is ongoing.

### WOOLSEY FIRE CASES, JCCP NO. 5000 (CAL. SUPR. CT.)

Judge William F. Highberger named Lexi J. Hazam as Co-Lead Counsel for Individual Plaintiffs in the coordinated Woolsey Fire Cases against Southern California Edison relating to the devastating 2018 fire that burned more than 1000 homes and 96,000 acres in Los Angeles and Ventura Counties. The action includes claims for negligence, trespass, inverse condemnation, and violation of the California Public Utilities and Health and Safety codes, and seeks damages for the fires victims' losses.

### GILEAD TENOFOVIR CASES, JCCP NO. 5043 (CAL. SUPERIOR COURT)

In these first-in-the-nation lawsuits, patients claim certain Gilead drugs were more harmful than newer drugs the company had created, but would not sell until its stock

of the more harmful older drugs was exhausted. Plaintiffs allege that Gilead knew or should have known of a safer alternative design for its TDF-containing drugs, and that Gilead failed to adequately warn of the known and knowable risks associated with its medications. The lawsuit alleges causes of action for strict products liability, negligent products liability, breach of implied warranty, and breach of express warranty.

In February 2020, the court in the Gilead HIV Drug Kidney & Bone Injuries litigation named Lieff Cabraser partner Sarah R. London to the Plaintiffs' Executive Committee in the case filed on behalf of patients across California alleging kidney and bone injuries from outdated HIV drugs (Truvada and Atripla) made and distributed by pharmaceutical giant Gilead Sciences. Fourteen individual test cases are being scheduled for what are known as "bellwether" trials, with the goal of moving the overall litigation towards resolution.

The first bellwether trial was scheduled for October 2022, and the parties are still working to identify the additional cases that will serve as bellwethers. During a July 9, 2021 case management conference held to address various pending issues, the Judge issued several favorable orders for plaintiffs in the litigation, and denied Gilead's request for a burdensome set of requirements for obtaining the testimony of plaintiffs facing extreme and urgent health problems who face the risk of not surviving to see their case go to trial, ruling that these special circumstances will be determined on a case-by-case basis.



### RETRIEVABLE INFERIOR VENA CAVA BLOOD FILTER INJURIES, IN RE BARD IVC FILTERS PRODS. LIAB. LITIG., MDL NO. 2641 (D. ARIZ.)

Inferior Vena Cava ("IVC") blood filters are small, basket-like medical devices that are inserted into the inferior vena cava, the main blood vessel that returns blood from the lower half of the body to the heart. Tens of thousands of patients in the U.S. have been implanted with IVC filters in order to provide temporary protection from pulmonary embolisms. However, these devices have resulted in multiple complications including device fracture, device migration, perforation of various organs, and an increased risk for venous thrombosis. Due to these complications, patients may have to undergo invasive device removal surgery or suffer heart attacks, hemorrhages, or other major injuries. We represent injured patients and their families in individual personal injury and

wrongful death lawsuits against IVC filter manufacturers, and Lieff Cabraser attorney Wendy R. Fleishman serves on the Plaintiffs Executive Committee in the IVC Filter cases in the federal multidistrict litigation.

### POWER MORCELLATORS LITIGATION, MDL NO. 2652 (D. KAN.)

Lieff Cabraser represents women who underwent a hysterectomy (the removal of the uterus) or myomectomy (the removal of uterine fibroids) in which a laparoscopic power morcellator was used. In November 2014, the FDA warned surgeons that they should avoid the use of laparoscopic power morcellators for removing uterine



tissue in the vast majority of cases due to the risk of the devices spreading unsuspected cancer. Based on current data, the FDA estimates that 1 in 350 women undergoing hysterectomy or myomectomy for the treatment of fibroids have an unsuspected uterine sarcoma, a type of uterine cancer that includes leiomyosarcoma.

# PERSONAL INJURY

## Representative Achievements & Successes



### CITY AND COUNTY OF SAN FRANCISCO ET AL. V. PURDUE PHARMA L.P. ET AL., NO. 3:18-CV-07591-CRB (N.D. CAL.)

Lieff Cabraser served as co-lead counsel representing San Francisco in the City/ County's litigation against opioid manufacturers, distributors, and dispensers for creating the Bay Area's devastating opioid epidemic. One of a select few cases remanded from the Opioids MDL, it served a critical function in advancing the most complex civil litigation in U.S. history. The lawsuit alleged the defendant pharmaceutical manufacturers and national drug distributors orchestrated a vast and ongoing lethal fraud in which they made billions by deceptively marketing these fundamentally unsafe drugs to the people of San Francisco while representing the drugs as safe and effective, creating thousands upon thousands of addicts and leading to horrific deaths as well as unprecedented strains on the city/county's public services. The Lieff Cabraser team played an instrumental role leading the City's many briefing efforts, arguing pretrial motions in court on a monthly basis, and orchestrating complex,

multi-party discovery. San Francisco thereby survived the defendants' myriad motion to dismiss, and the case began trial in in federal court in April 2022. Most of the defendants chose to settle their cases during the trial. In August 2022, the Court found Walgreens liable for substantially contributing to the opioid epidemic in San Francisco, making this the second such trial to decide in a plaintiff's favor in the national opioid litigation, and the first bench trial to find Walgreens liable. Subsequently, Walgreens and the two other major chain pharmacies agreed to settle the national opioids litigation for a combined total of nearly $14 billion.



### NORTHERN AND SOUTHERN CALIFORNIA WILDFIRE CASES

Horrific unprecedented wildfires have blazed devastation through California over the last several years. Lieff Cabraser has been successful in representing wildfire victims throughout the state, including serving as Co-Lead Counsel in the coordinated Woolsey and Thomas Fire

cases in Southern California against SoCal Edison, and as Class Action Committee Chair and on the Individual Plaintiffs' Executive Committee in lawsuits against PG&E over Northern California wildfires. In 2019, we helped guide negotiations with PG&E that culminated in an historic $13.5 billion trust settlement on behalf of wildfire victims.



**SOUTHERN CALIFORNIA FIRE CASES (CALIFORNIA THOMAS WILDFIRE & MUDSLIDE LITIGATION), JCCP NO. 4965 (CAL. SUPR. CT.)**

Lieff Cabraser serves as Co-Lead Counsel for Individual Plaintiffs in litigation involving thousands of Plaintiffs against Southern California Edison over the role of the utility's equipment in starting the devastating Thomas Fire that destroyed over a thousand homes in Southern California in December 2017, and the resulting mudslides in Montecito that destroyed additional homes and killed 23 people. Plaintiffs surmounted a demurrer to their inverse condemnation claim. After extensive discovery, including relating to the official investigation, and shortly before multiplaintiff bellwether trials were to occur, the litigation entered into a settlement protocol, which has resolved over 1,600 cases to date. Together with the individual plaintiffs in the Woolsey Fire, these plaintiffs have recovered well over $1 billion to date.



**2017 CALIFORNIA NORTH BAY FIRE CASES, JCCP NO. 4955 (CAL. SUPR. CT.)**

Lieff Cabraser attorneys served as Chairs of the Class Action Committee in the consolidated lawsuits against Pacific Gas & Electric relating to losses from the 2017 North Bay Fires, and also served on the Individual Plaintiffs' Executive Committee.

In January of 2019, in the face of overwhelming liability from pending wildfire litigation, PG&E and its parent filed for bankruptcy. *In re PG&E Corporation*, Case No. 19-30088 and *In re Pacific Gas and Electric Company*, Case No. 19-30089 (N.D. Cal. Bankr. 2019). The bankruptcy trustee appointed a Torts Claimants' Committee to represent persons with tort claims, largely wildfire victims, in the bankruptcy.

Lieff Cabraser represented a member of the Committee who lost her father in the Camp Fire, advocating for fire victims to be treated fairly and equitably in the bankruptcy. We helped negotiate a settlement with PG&E of $13.5 billion to compensate fire victims for their losses. Our firm also served on the Trust Oversight Committee that has monitored and assisted the Trustee in administering the gargantuan and complex claims process.

**CAMP FIRE CASES, JCCP NO. 4995 (CAL. SUPR. COURT)**

Lieff Cabraser represented the family of Ernest Francis "Ernie" Foss, beloved father and musician, who was killed in the November 2018 Camp Fire, the deadliest and most destructive wildfire in modern California history. The fire broke out in Northern California near Chico in early November 2018 and quickly grew to massive size, affecting over 140,000 acres and killing at least 80 people, destroying nearly 14,000 homes and nearly obliterating the town of Paradise, and causing the evacuation of over 50,000 area residents.

In addition, Lieff Cabraser represented plaintiffs in a class action lawsuit as well as hundreds of individual suits filed against PG&E for the devastating property damage, economic losses, and disruption to homes, businesses, and livelihoods caused by the Camp wildfire. The lawsuits alleged the Camp Fire was started by unsafe electrical infrastructure owned, operated, and improperly maintained by PG&E. The plaintiffs further claimed that despite PG&E's knowledge that electrical infrastructure was aging, unsafe, and vulnerable to environmental conditions, PG&E failed to take action that could have prevented the deadliest and most destructive wildfire in California's history.

**IN RE PG&E CORPORATION, CASE NO. 19-30088, AND IN RE PACIFIC GAS AND ELECTRIC COMPANY, CASE NO. 19-30089 (U.S. BANKRUPTCY COURT, N.D. CAL. – SAN FRANCISCO DIVISION)**

In January of 2019, in the face of overwhelming liability from pending wildfire litigation, including the North Bay and Camp Fire JCCPs, PG&E Corporation and Pacific Gas and Electric Company filed voluntary petitions for relief under Chapter 11 of the federal Bankruptcy Code. As a result of the bankruptcy filing, the Camp Fire and

North Bay Fires proceedings in state court were stayed. In February 2019, Andrew R. Vara, the Acting United States Trustee for Region 3, appointed an official committee of tort claimants to represent the interests and act on behalf of all persons with tort claims against PG&E, including wildfire victims in the bankruptcy proceedings. Lieff Cabraser represented Angela Foss Loo as a member of the Official Committee of Tort Claimants.



### FLORIDA TOBACCO CASES/IN RE ENGLE CASES, NO. 3:09-CV-10000-J-32 JBT (M.D. FL.)

Lieff Cabraser represented Florida smokers, and the spouses and families of loved ones who died, in litigation against the tobacco companies for their 50-year conspiracy to conceal the hazards of smoking and the addictive nature of cigarettes. On February 25th, 2015, a settlement was announced of more than 400 Florida smoker lawsuits against the major cigarette companies Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Lorillard Tobacco Company. As a part of the settlement, the companies had to pay $100 million to injured smokers or their families. This was the first settlement ever by the cigarette companies of smoker cases on a group basis.

Lieff Cabraser attorneys tried over 20 cases in Florida federal court against the tobacco industry on behalf of individual smokers or their estates, and with co-counsel obtained over $105 million in judgments for our clients. Two of the jury verdicts Lieff Cabraser attorneys obtained in the litigation were ranked by The National Law Journal as among the Top 100 Verdicts of 2014.

In 2020, the Eleventh Circuit found in favor of the plaintiff in one of our Engle progeny tobacco injury lawsuits against cigarette manufacturer Philip Morris, holding that a punitive damages award of over $20 million was constitutionally appropriate and not unconstitutionally excessive as Philip Morris had repeatedly argued after losing the original injury trial in 2013. In addition to defeating Philip Morris' challenges in that case, we briefed, argued, and secured other trial verdicts against the tobacco industry in the 11th Circuit, including a $41 million verdict against R.J. Reynolds that was the largest

ever rendered against a tobacco company in federal court.



### GENERAL MOTORS IGNITION SWITCH DEFECT INJURY LAWSUITS, MDL NO. 2543 (S.D.N.Y.)

Lieff Cabraser served as Co-Lead Counsel for plaintiffs in multidistrict litigation involving economic loss and personal injury/wrongful death (PI/WD) cases arising out of GM's manufacture and sale of vehicles with defective ignition switches and other defects. Our firm had primary co-responsibility for consumer claims, representing five nationwide classes of GM vehicle owners and lessees whose claims resolved for $121 million, plus fees, in a settlement granted final approval by Judge Jesse M. Furman, S.D.N.Y., on December 18, 2020. Judge Furman also oversaw a series of bellwether PI/WD trials, as well as litigation resulting in multiple individual and group PI/WD settlements.



### IN RE: ABILIFY (ARIPIPRAZOLE) PRODUCTS LIABILITY LITIGATION, MDL NO. 2734 (N.D. FLA.)

We represented clients who incurred crippling financial losses and pain and suffering from compulsive gambling caused by the drug Abilify. In May 2016 the FDA warned that Abilify can lead to damaging compulsive behaviors, including uncontrollable gambling. The gambling addictions could be so severe that patients lost their homes, livelihoods, and marriages. The $6+ billion a year-earning drug was prescribed for nearly 9 million patients in 2014 alone. In December 2016, Lieff Cabraser partner Lexi Hazam was appointed by the court overseeing the nationwide Abilify gambling injuries MDL litigation to the Plaintiffs Executive Committee and as Co-Chair of the Science and Expert Sub-Committee for the nationwide Abilify MDL litigation. The Court issued a Daubert decision admitting almost all of Plaintiffs' experts in 2018, and on the eve of bellwether trials, the parties entered settlement negotiations. Almost all of the Abilify cases have been resolved through settlement.



### RISPERDAL LITIGATION

In 2013, Johnson & Johnson and its subsidiary Janssen Pharmaceuticals, the manufacture of the antipsychotic prescription drugs Risperdal and Invega, entered into a $2.2 billion settlement with the U.S. Department of Justice for improperly promoting the drugs. The government alleged that J&J and Janssen knew Risperdal triggered the production of prolactin, a hormone that stimulates breast development (gynecomastia) and milk production. Lieff Cabraser represented parents whose sons developed abnormally large breasts while prescribed Risperdal and Invega in lawsuits charging that Risperdal was a defective and dangerous prescription drug and seeking monetary damages for the mental anguish and physical injuries the young men suffered. The cases were settled favorably in 2018.



### BENICAR LITIGATION, MDL NO. 2606 (D. N.J.)

Lieff Cabraser represented patients who experienced substantial side-effects from the blood pressure medication Benicar, including substantial weight loss, severe gastrointestinal problems, and life-threatening conditions, in litigation against Japan-based Daiichi Sankyo, Benicar's manufacturer, and Forest Laboratories, which marketed Benicar in the U.S. The complaints alleged that Benicar was insufficiently tested and not accompanied by adequate instructions and warnings to apprise consumers of the full risks and side effects associated with its use. Lieff Cabraser served on the Plaintiffs' Steering Committee for the nationwide Benicar MDL litigation and Lieff Cabraser partner Lexi J. Hazam served as Co-Chair of the Benicar MDL Plaintiffs' Science and Experts Committee. In August 2017, the parties reached a settlement valued at $300 million covering approximately 2,300 Benicar injury cases in both state and federal U.S. courts.

### DEFECTIVE HIP IMPLANT CASES/STRYKER METAL HIP IMPLANT LITIGATION, MDL NO. 2441 (D. MINN.)

Lieff Cabraser represented 60+ hip replacement patients nationwide who received the recalled Stryker Rejuvenate and ABG II modular hip implant systems, served on the Plaintiffs' Lead Counsel Committee in the multidistrict litigation, and successfully secured settlements that included a base payment of $300,000 to patients that received the defective hip systems. Stryker's liability under the settlement was not capped; the total amount of payments under the settlement far exceeded $1 billion dollars.



### DEFECTIVE HIP IMPLANT CASES/DEPUY METAL HIP IMPLANTS LITIGATION, MDL NO. 2244 (N.D. TEX.)

Lieff Cabraser represented approximately 200 patients nationwide who received defective ASR XL Acetabular and ASR Hip Resurfacing systems manufactured by DePuy Orthopedics, a unit of Johnson & Johnson which were implanted in approximately 40,000 U.S. patients. The complaints alleged that DePuy was aware its implants were failing at a notably high rate, yet continued to manufacture and sell the devices. Serving on the litigation's Plaintiffs' Steering Committee, our firm helped secure over $2.5 billion in settlement payments to individual implant recipients, including base awards to each of $250,000.

### YAZ AND YASMIN LITIGATION

Lieff Cabraser represented women prescribed Yasmin and Yaz oral contraceptives who suffered blood clots, deep vein thrombosis, strokes, and heart attacks, as well as the families of loved ones who died suddenly while taking these medications. The complaints alleged that Yaz and Yasmin manufacturer Bayer failed to adequately warn patients and physicians of the increased risk of serious adverse effects from Yasmin and Yaz. The complaints also charged that these oral contraceptives posed a greater risk of serious side effects than other widely available birth control drugs. The litigation led to settlements of 7,660 claims with a total value of $1.6 billion.



***IN RE NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY LITIGATION**, MDL NO. 2419 (D. MASS.)*

Lieff Cabraser represented patients injured or killed by a nationwide 2012 fungal meningitis outbreak after more than 14,000 patients across the U.S. were injected with a contaminated epidural steroid back pain medication manufactured and sold by The New England Compounding Center in Framingham, Massachusetts. Nearly 800 patients across multiple clinics developed fungal meningitis, and more than 70 of those patients died. Lieff Cabraser served on the Plaintiffs' Steering Committee in the multi-district litigation, and our attorneys acted as federal-state liaison counsel. In May 2015, the U.S. Bankruptcy Court approved a $200 million partial settlement for victims of the outbreak.



***IN RE TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**, MDL NO. 2151 (C.D. CAL.)*

Lieff Cabraser serves as Co-Lead Counsel for the plaintiffs in the Toyota injury cases in federal court representing individuals injured, and families of loved ones who died, in Toyota unintended acceleration accidents. The complaints charge that Toyota took no action despite years of complaints that its vehicles accelerated suddenly and could not be stopped by proper application of the brake pedal. The complaints further allege that Toyota breached its duty to manufacture and sell safe automobiles by failing to incorporate a brake override system and other readily available safeguards that could have prevented unintended acceleration.

In December 2013, Toyota announced its intention to begin to settle the cases. In 2014, Lieff Cabraser played a key role in turning Toyota's intention into a reality through assisting in the creation of an innovative resolution process that has settled scores of cases in streamlined, individual conferences. The settlements are confidential. Before Toyota agreed to settle the litigation, plaintiffs' counsel overcame significant hurdles in the challenging litigation. In addition to defeating Toyota's motion to dismiss the litigation, Lieff Cabraser and co-counsel demonstrated that the highly-publicized government studies that denied unintended acceleration, or attributed it to mechanical flaws and driver error, were flawed and erroneous.



***IN RE ACTOS (PIOGLITAZONE) PRODUCTS LIABILITY LITIGATION**, MDL NO. 2299 (W.D. LA.)*

Lieff Cabraser represented 90 diabetes patients who developed bladder cancer after exposure to the prescription drug pioglitazone, sold as Actos by Japan-based Takeda Pharmaceutical Company and its American marketing partner, Eli Lilly. We served on the Plaintiffs' Steering Committee in the Actos MDL. In 2014, Lieff Cabraser served on the trial team in the case of *Allen v. Takeda*, working closely with lead trial counsel in federal court in Louisiana. The jury awarded $9 billion in punitive damages, finding that Takeda and Lilly failed to adequately warn about the bladder cancer risks of Actos and had acted with wanton and reckless disregard for patient safety. The trial judge reduced the punitive damage award but upheld the jury's findings of misconduct, and ruled that a multiplier of 25 to 1 for punitive damages was justified.

In April 2015, Takeda agreed to resolve all timely bladder cancer claims via a settlement valued at $2.4 billion. Average payments of about $250,000 per person were increased for those with more severe injuries.

### SIMPLY THICK LITIGATION

Lieff Cabraser represented parents whose infants died or suffered injuries linked to Simply Thick, a thickening agent for adults that was promoted to parents, caregivers, and health professional for use by infants to assist with swallowing. The individual lawsuits alleged that Simply Thick when fed to infants caused necrotizing enterocolitis (NEC), a life-threatening condition characterized by the inflammation and death of intestinal tissue. In 2014, the litigation was resolved on confidential terms.

### MEDTRONIC INFUSE LITIGATION

Lieff Cabraser represented patients who suffered serious injuries from the off-label use of the Infuse bone graft, manufactured by Medtronic Inc. The FDA approved Infuse for only one type of spine surgery, the anterior lumbar fusion. Many patients, however, received an off-label use of Infuse and were never informed of the off-label nature of the surgery. Serious complications associated with Infuse included uncontrolled bone growth and chronic pain from nerve injuries. In 2014, the litigation was settled on confidential terms.



### WRIGHT MEDICAL HIP LITIGATION

The Profemur-Z system manufactured by Wright Medical Technology consisted of three separate components: a femoral head, a modular neck, and a femoral stem. Prior to 2009, Profemur-Z hip system included a titanium modular neck adapter and stem which was implanted in 10,000 patients. Lieff Cabraser represented patients whose Profemur-Z hip implant fractured, requiring a revision surgery. In 2013 and 2014, the litigation was resolved on confidential terms.



### ADVANCED MEDICAL OPTICS COMPLETE MOISTUREPLUS LITIGATION

Lieff Cabraser represented consumers nationwide in personal injury lawsuits filed against Advanced Medical Optics arising out of the May 2007 recall of AMO's Complete MoisturePlus Multi-Purpose Contact Lens Solution. The product was recalled due to reports of a link between a rare but serious eye infection, Acanthamoeba keratitis, caused by a parasite and use of AMO's contact lens solution. Though AMO promoted Complete MoisturePlus Multi-Purpose as "effective against the introduction of common ocular microorganisms," the complaints charged that AMO's lens solution was ineffective and vastly inferior to other multipurpose solutions on the market. In many cases, patients were forced to undergo painful corneal transplant surgery to save their vision and some lost all or part of their vision permanently. The patients represented by Lieff Cabraser

resolved their cases with AMO on favorable, confidential terms.

### IN RE ZIMMER DUROM CUP PRODUCT LIABILITY LITIGATION, MDL NO. 2158 (D. N.J.)

Lieff Cabraser served as Co-Liaison Counsel for patients nationwide injured by the defective Durom Cup manufactured by Zimmer Holdings. First sold in the U.S. in 2006, Zimmer marketed its 'metal-on-metal' Durom Cup implant as providing a greater range of motion and less wear than traditional hip replacement components. In July 2008, Zimmer announced the suspension of Durom sales. The complaints charged that the Durom cup was defective and led to the premature failure of the implant. In 2011 and 2012, the patients represented by Lieff Cabraser settled their cases with Zimmer on favorable, confidential terms.



### GOL AIRLINES FLIGHT 1907 AMAZON CRASH

Lieff Cabraser served as Plaintiffs' Liaison Counsel and represented over twenty families whose loved ones died in the Gol Airlines Flight 1907 crash. On September 29, 2006, a brand-new Boeing 737-800 operated by Brazilian air carrier Gol plunged into the Amazon jungle after colliding with a smaller plane owned by the American company ExcelAire Service, Inc. None of the 149 passengers and six crew members on board the Gol flight survived the accident.

The complaint charged that the pilots of the ExcelAire jet were flying at an incorrect altitude at the time of the collision, failed to operate the jet's transponder and radio equipment properly, and failed to maintain communication with Brazilian air traffic control in violation of international civil aviation standards. If the pilots of the ExcelAire aircraft had followed these standards, the complaint charged that the collision would not have occurred.

At the time of the collision, the ExcelAire aircraft's transponder, manufactured by Honeywell, was not functioning. A transponder transmits a plane's altitude and operates its automatic anti-collision system. The complaint charged that Honeywell shared responsibility for the

tragedy because it defectively designed the transponder on the ExcelAire jet, and failed to warn of dangers resulting from foreseeable uses of the transponder. The cases settled after they were sent to Brazil for prosecution.



### BLOOD FACTOR VIII AND FACTOR IX LITIGATION, MDL NO. 986 (N.D. IL.)

Working with counsel in Asia, Europe, Central and South America and the Middle East, Lieff Cabraser represented over 1,500 hemophiliacs worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies. In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern District of Illinois. The case was resolved through a global settlement signed in 2009.

### LUISI V. MEDTRONIC, NO. 07 CV 4250 (D. MINN.)

Lieff Cabraser represented over seven hundred heart patients nationwide who were implanted with recalled Sprint Fidelis defibrillator leads manufactured by Medtronic Inc. Plaintiffs charged that Medtronic had misrepresented the safety of the Sprint Fidelis leads and a defect in the device triggered their receiving massive, unnecessary electrical shocks. A settlement of the litigation was announced in October 2010.



### IN RE YAMAHA MOTOR CORP. RHINO ATV PRODUCTS LIABILITY LITIGATION, MDL NO. 2016 (W.D. KY.)

Lieff Cabraser served as Plaintiffs' Lead Counsel in the litigation in federal court and Co-Lead Counsel in coordinated California state court litigation arising out of serious injuries and deaths in rollover accidents involving the Yamaha Rhino. The complaints charged that the Yamaha Rhino contained numerous design flaws, including the failure to equip the vehicles with side doors, which resulted in repeated broken or crushed legs, ankles, or feet for riders. Plaintiffs alleged also that the Yamaha Rhino was unstable due to a narrow track width and high center of gravity leading to rollover accidents that killed and/or injured scores of persons across the nation.

On behalf of victims and families of victims and along with the Center for Auto Safety, and the San Francisco Trauma Foundation, Lieff Cabraser advocated for numerous safety changes to the Rhino in reports submitted to the U.S. Consumer Product Safety Commission (CPSC). On March 31, 2009, the CPSC, in cooperation with Yamaha Motor Corp. U.S.A., announced a free repair program for all Rhino 450, 660, and 700 models to improve safety, including the addition of spacers and removal of a rear-only anti-sway bar.



### IN RE RENU WITH MOISTURELOC CONTACT LENS SOLUTION PRODUCTS LIABILITY LITIGATION, MDL NO. 1785 (D. S.C.)

Lieff Cabraser served on the Plaintiffs' Executive Committee in federal litigation arising out of Bausch & Lomb's 2006 recall of its ReNu With MoistureLoc contact lens solution. Consumers who developed Fusarium keratitis, a rare and dangerous fungal eye infection, as well as other serious eye infections, alleged the lens solution was defective. Some consumers were forced to undergo painful corneal transplant surgery to save their vision; others lost all or part of their vision permanently. The litigation was resolved under favorable, confidential settlements with Bausch & Lomb.

### IN RE VIOXX PRODUCTS LIABILITY LITIGATION, MDL NO. 1657 (E.D. LA.)

Lieff Cabraser represented patients injured or killed after using the arthritis and pain medication Vioxx manufactured by Merck. Our clients alleged Merck falsely promoted the safety of Vioxx, and failed to disclose the full range of the drug's dangerous side effects. Lieff Cabraser partner Elizabeth J. Cabraser served on the Plaintiffs' Steering Committee in the federal multidistrict litigation, sharing responsibility for all pretrial discovery of Vioxx

cases in federal court and pursuing all settlement options with Merck. In August 2006, Lieff Cabraser served as Co-Counsel in *Barnett v. Merck*, tried in federal court in New Orleans; the jury in the case found that Vioxx caused the plaintiff's heart attack, and that Merck's conduct justified an award of punitive damages. In November 2007, Merck announced it had entered into an agreement with the Executive Committee of the Plaintiffs' Steering Committee as well as representatives of plaintiffs' counsel in state coordinated proceedings that led to a settlement fund of $4.85 billion for qualifying claims.



### IN RE BAYCOL PRODUCTS LITIGATION, MDL NO. 1431 (D. MINN.)

Baycol was one of a group of drugs called statins, intended to reduce cholesterol. In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the deaths of over 100 patients worldwide. In the federal multidistrict litigation, Lieff Cabraser served as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC. In addition, Lieff Cabraser represented approximately 200 Baycol patients who suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol. In these cases, our clients reached confidential favorable settlements with Bayer.



### IN RE BEXTRA/ CELEBREX MARKETING SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION, MDL NO. 1699 (N.D. CAL.)

Lieff Cabraser served as Plaintiffs' Liaison Counsel and Elizabeth J. Cabraser chaired the Plaintiffs' Steering Committee (PSC) charged with overseeing all personal injury and consumer litigation in federal courts nationwide arising out of the sale and marketing of the COX-2 inhibitors Bextra and Celebrex, manufactured by Pfizer, Inc. and its predecessor companies Pharmacia Corporation and G.D. Searle, Inc.

Under the global resolution of the multidistrict tort and consumer litigation announced in October 2008, Pfizer paid over $800 million to claimants, including over $750 million to resolve death and injury claims.

In a report adopted by the Court on common benefit work performed by the PSC, the Special Master stated:

"[L]eading counsel from both sides, and the attorneys from the PSC who actively participated in this litigation, demonstrated the utmost skill and professionalism in dealing with numerous complex legal and factual issues. The briefing presented to the Special Master, and also to the Court, and the development of evidence by both sides was exemplary. The Special Master particularly wishes to recognize that leading counsel for both sides worked extremely hard to minimize disputes, and when they arose, to make sure that they were raised with a minimum of rancor and a maximum of candor before the Special Master and Court."



### MRAZ V. DAIMLERCHRYSLER, NO. BC 332487 (CAL. SUPR. CT.)

In March 2007, the jury returned a $54.4 million verdict, including $50 million in punitive damages, against DaimlerChrysler for intentionally failing to cure a known defect in millions of its vehicles that led to the death of Richard Mraz, a young father. Mr. Mraz suffered fatal head injuries when the 1992 Dodge Dakota pickup truck he had been driving at his work site ran him over after he exited the vehicle believing it was in park. The jury found that a defect in the Dodge Dakota's automatic transmission, called a park-to-reverse defect, played a substantial factor in Mr. Mraz's death and that DaimlerChrysler was negligent in the design of the vehicle for failing to warn of the defect and then for failing to adequately recall or retrofit the vehicle.

In March 2008, a Louisiana-state jury found DaimlerChrysler liable for the death of infant Collin Guillot and injuries to his parents Juli and August Guillot and their then 3-year-old daughter, Madison. The jury returned a unanimous verdict of $5,080,000 in compensatory damages. The jury found that a defect in the Jeep Grand Cherokee's transmission, called a park-to-reverse defect, played a substantial factor in Collin Guillot's death and the severe injuries suffered by Mr. and Mrs. Guillot and their daughter. Lieff Cabraser served as plaintiffs' co-counsel in the trial.

### IN RE GUIDANT IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION, MDL NO. 1708 (D. MINN.)

Lieff Cabraser served as Plaintiffs' Co-Lead Counsel in litigation in federal court arising out of the recall of Guidant cardiac defibrillators implanted in patients because of potential malfunctions in the devices. At the time of the recall, Guidant admitted it was aware of 43 reports of device failures, and two patient deaths. Guidant subsequently acknowledged that the actual rate of failure might have been higher than the reported rate and that the number of associated deaths might have been underreported since implantable cardio-defibrillators are not routinely evaluated after death. In January 2008, the parties reached a global settlement of the action. Guidant's settlements of defibrillator-related claims totalled $240 million.



### FEN-PHEN ("DIET DRUGS") LITIGATION

Lieff Cabraser represented individuals who suffered injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux), and served as counsel for the plaintiff who filed the first nationwide class action lawsuit against the diet drug manufacturers alleging a widespread failure to adequately warn physicians and consumers of the risks associated with the drugs. In *In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation in federal court.

In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage. Lieff Cabraser represented over 2,000 persons that suffered valvular heart disease, pulmonary hypertension or other problems (such as needing echocardiogram screening for damage) due to and/or following exposure to Fen-Phen, and obtained more than $350 million in total for our individual clients.

### COMAIR CRJ-100 COMMUTER FLIGHT CRASH IN LEXINGTON, KENTUCKY

A Bombardier CRJ-100 commuter plane operated by Comair, Inc., a subsidiary of Delta Air Lines, crashed on August 27, 2006 shortly after takeoff at Blue Grass Airport in Lexington, Kentucky, killing 47 passengers and two crew members. The aircraft attempted to take off from the wrong runway. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.



### HELIOS AIRWAYS FLIGHT 522 ATHENS, GREECE CRASH

On August 14, 2005, a Boeing 737 operating as Helios Airways flight 522 crashed north of Athens, Greece, resulting in the deaths of all passengers and crew. The aircraft was heading from Larnaca, Cyprus to Athens International Airport when ground controllers lost contact with the pilots, who had radioed in to report problems with the air conditioning system. Press reports about the official investigation indicate that a single switch for the pressurization system on the plane was not properly set by the pilots, and eventually both were rendered unconscious, along with most of the passengers and cabin crew.

Lieff Cabraser represented the families of several victims, and filed complaints alleging that a series of design defects in the Boeing 737-300 contributed to the pilots' failure to understand the nature of the problems they were facing. Foremost among those defects was a confusing pressurization warning "horn" which uses the same sound that alerts pilots to improper takeoff and landing configurations. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

### SULZER HIP AND KNEE PROSTHESIS LIABILITY LITIGATION

In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant. Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel in coordinated litigation in California state court over defective hip and knee implants, *In re Hip Replacement Cases*, JCCP 4165. In the federal litigation, *In re 2002 Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL No. 1410, after objecting to the initial settlement on behalf of our clients, Lieff Cabraser played a significant role in negotiating a revised global settlement of the litigation valued at more than $1 billion.

The revised settlement, approved by the Court in May 2002, provided patients with defective implants almost twice the cash payment as under the initial settlement.

### IN RE TELECTRONICS PACING SYSTEMS INC., ACCUFIX ATRIAL "J" LEADS PRODUCTS LIABILITY LITIGATION, MDL NO. 1057 (S.D. OHIO)

Lieff Cabraser served on the Plaintiffs' Steering Committee in a nationwide products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads. In April 1997, the District Court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability. A summary jury trial, utilizing jury instructions and interrogatories designed by Lieff Cabraser, occurred in February 1998. A partial settlement was approved thereafter by the District Court but reversed by the Court of Appeals. In March 2001, the District Court approved a renewed settlement that included a $58 million fund to satisfy all past, present and future claims by patients for their medical care, injuries, or damages arising from the leads.



### CRAFT V. VANDERBILT UNIVERSITY, CIV., NO. 3-94-0090 (M.D. TENN.)

Lieff Cabraser served as Lead Counsel for a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron isotopes without consent while receiving prenatal care at the Vanderbilt University hospital as part of a study on iron absorption during pregnancy. The women were not informed of the nature and risks of the study. Instead, they were told that the solution they were fed was a "vitamin cocktail." In the 1960's, Vanderbilt conducted a follow-up study to determine the health effects of the plaintiffs' prior radiation exposure. Throughout the follow-up study, Vanderbilt concealed from plaintiffs the fact that they had been involuntarily exposed to radiation, and that the purpose of the follow-up study was to determine whether there had been an increased rate of childhood cancers among those exposed in utero. Vanderbilt also did not inform plaintiffs of the results of the follow-up study, which revealed a disproportionately high incidence of cancers among the children born to the women fed the radioactive iron.

The facts surrounding the administration of radioactive iron to the pregnant women and their children in utero only came to light as a result of U.S. Energy Secretary Hazel O'Leary's 1993 disclosures of government-sponsored human radiation experimentation during the Cold War. Defendants' attempts to dismiss the claims and decertify the class were unsuccessful. 18 F. Supp.2d 786 (M.D. Tenn. 1998). The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.



### MULTI-STATE TOBACCO LITIGATION

Lieff Cabraser represented the Attorneys General of Massachusetts, Louisiana and Illinois, several additional states, and 21 cities and counties across California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers. The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general. The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking. In California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid through 2025.

### IN RE COPLEY PHARMACEUTICAL, INC., "ALBUTEROL" PRODUCTS LIABILITY LITIGATION, MDL NO. 1013 (D. WYO.)

Lieff Cabraser served on the Plaintiffs' Steering Committee in a class action lawsuit against Copley Pharmaceutical, which manufactured Albuterol, a bronchodilator prescription pharmaceutical. Albuterol was the subject of a nationwide recall in January 1994 after a microorganism was found to have contaminated the solution, allegedly causing numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death. In October 1994, the District Court certified a nationwide class on liability issues. *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo. 1995). In November 1995, the District Court approved a $150 million settlement of the litigation.

**Additional Personal Injury Case Information is available on our website at [lieffcabraser.com](http://lieffcabraser.com)**

# SECURITIES AND FINANCIAL FRAUD

Corporate misconduct, securities fraud, and other related financial fraud cause investors to lose billions every year. Lieff Cabraser's Securities and Financial Fraud team is committed to holding the parties responsible for financial fraud accountable. Over the last 50 years, we have developed unparalleled experience, expertise, and the resources necessary for achieving successes in meaningful and effective complex litigation against the world's largest corporations.

We have successfully represented the nation's largest public pension funds, Taft-Hartley funds, private institutional investors, and high net worth individual investors in securities and financial fraud cases. We work to obtain meaningful recoveries for our clients and to secure meaningful governance reforms at the companies in which they invest.

We take a highly-tailored approach to investigating and prosecuting financial fraud. After thorough research and a deep analysis of the facts, we determine feasible litigation options, conduct loss and damage calculations, and develop litigation strategies that respond to the unique circumstances of each client and case. Our track record of successfully litigating financial fraud cases spans five decades, including trying securities fraud class actions through to verdict. We are one of few plaintiffs' law firms anywhere that possess this experience.

## Representative Current Cases



### EMPLOYEES' RETIREMENT SYSTEM OF RHODE ISLAND V. ELON MUSK, ET AL., 2024-0631 (DEL CH.)

Lieff Cabraser represents Plaintiff the Employees' Retirement System of Rhode Island in this recently-filed stockholder derivative action against Elon Musk and certain current and former members of the Board of Directors of Tesla, Inc. ("Tesla"). The action alleges breaches of fiduciary duties including: (a.) unlawful stock sales in connection with Elon Musk's purchase of Twitter, Inc. ("Twitter," rebranded as "X"); (b.) usurpation of corporate opportunity properly belonging to Tesla by investment in X.AI, an artificial intelligence company; (c.) diversion of Tesla's employees to work for Twitter and X.AI; (d.) breaches of contractual obligations established by Tesla's Code of Business Ethics ("Code"); (e.) bad faith implementation and oversight regarding Tesla's Code; and (f.) bad faith implementation and oversight regarding the 2018 Consent Decree with the Securities Exchange Commission that required Musk to obtain Tesla's preapproval on tweets relating to his disposition of Tesla stock.

### CITY OF HOLLYWOOD FIREFIGHTERS' PENSION SYSTEM V. WELLS FARGO & COMPANY ET AL., 4:23-CV-02445-JST (N.D. CAL.)

Lieff Cabraser serves as Additional Counsel for Plaintiff the City of Hollywood Firefighters' Pension System in this recent shareholder derivative action alleging that certain directors of Wells Fargo breached their fiduciary duty by failing to comply with explicit regulatory requirements established by federal regulators in multiple consent orders since 2018, resulting in further consent orders from the Consumer Financial Protection Bureau and the Office of the Comptroller of Currency in September 2021 and December 2022.

### DISCOVER FINANCIAL SERVICES SECURITIES CLASS ACTION LITIGATION, NO. 1:23-CV-06788 (N.D. ILL.)

Lieff Cabraser is Co-Lead Counsel for a proposed class of injured investors in securities class litigation against Discover Financial Services ("DFS"), the financial services company that owns and operates Discover Bank. The action, co-led by five New York City pension funds, alleges that DFS made false or misleading statements concealing that the Company's risk management and compliance protocols were inadequate, and that DFS did not meet industry standards for servicing student loans, did not categorize credit card accounts correctly, and failed to curb its surging credit card delinquency rate. When these issues were revealed to the marketplace, the company's total market capitalization sank by more than $1 billion, harming investors. The court will consider arguments on the sufficiency of plaintiffs' claims in 2024.

### MFS SERIES TRUST I, OBO MFS VALUE FUND, ET AL. V. FIRSTENERGY CORP., ET AL., NO. 2:21-CV-05839-ALM-KAJ (S.D.N.Y.)

Lieff Cabraser represents certain MFS funds and trusts in this individual action against FirstEnergy Corp.

("FirstEnergy") and certain of its senior executives for violations of the Securities Exchange Act of 1934 (the "Exchange Act"). The action arises from defendants' misstatements and omissions that concealed their participation in a massive bribery and money laundering scheme to pay tens of millions of dollars to Ohio public officials in exchange for legislative and regulatory favors, including a billion-dollar relief package called House Bill 6 ("HB 6"), that benefited the Company. As the truth about defendants' fraud was revealed, FirstEnergy lost approximately $10 billion in market capitalization. The parties are currently engaged in discovery.



### DANSKE BANK A/S SECURITIES LITIGATION

Lieff Cabraser, together with co-counsel, represents a large coalition of institutional investors, including state and government pension and treasury systems, in litigation pending in Denmark against Danske Bank A/S ("Danske"). The litigation arises from Danske's failure to disclose that its reported financial performance was inflated by illegal sources of income and that it was subject to significant risks as a result of such business activities. In late 2022, Danske pleaded guilty to defrauding American banks and was fined $2 billion by the U.S. Justice Department. Danske also agreed to pay the U.S. Securities and Exchange Commission $413 million to settle charges that it misled investors about its compliance with anti-money laundering requirements. The litigation is ongoing.



### IN RE FOX CORPORATION DERIVATIVE LITIGATION, C.A. NO. 2023-0418-JTL (DEL. CH.)

Lieff Cabraser serves as Co-Lead Counsel on behalf of Co-Lead Plaintiffs the New York City Funds and the State of Oregon in this shareholder derivative action against certain directors and officers of Fox Corporation. In connection with Fox News' propagation of unfounded, defamatory conspiracy theories concerning the U.S. presidential election of 2020, the action alleges breach of fiduciary duties for: (1) the adoption of an illegal business model by which Fox News pursues profits by committing actionable defamation; (2) the lack of good faith efforts to establish systems or practices for minimizing, mitigating, or monitoring defamation risk; and (3) inaction in the face of red flags of defamation risk.

### BLACKROCK GLOBAL ALLOCATION FUND, INC., ET AL. V. PERRIGO COMPANY PLC, ET AL., NO. 2:20-CV-4748 (D.N.J.)

Lieff Cabraser represents certain funds and accounts of BlackRock in a direct (non-class) action against Perrigo Company plc and former senior executives for violations of the Securities Exchange Act of 1934. Plaintiffs allege defendants concealed from investors that (contrary to their public statements) Perrigo was engaged in a price-fixing scheme with respect to generic drugs, was impacted by pricing pressures in the generic pharmaceuticals industry, and had failed to successfully integrate Omega Pharma NV, Perrigo's largest acquisition. The parties have completed fact and expert discovery. In August 2023, the court granted in part and denied in part defendants' motions for summary judgment in the related securities class case. Class plaintiffs recently obtained preliminary approval of a settlement of that case.

### BLACKROCK GLOBAL ALLOCATION FUND, INC., ET AL. V. VALEANT PHARMACEUTICALS INTERNATIONAL, INC., ET AL., NO. 3:18-CV-00343 (D.N.J.)

Lieff Cabraser represents certain funds and accounts of institutional investor BlackRock in a direct (non-class) action against Valeant Pharmaceuticals International, Inc. (n/k/a Bausch Health Companies Inc.) and former senior executives for violations of the Securities Exchange Act of 1934 arising from a scheme to generate revenues through massive price increases for Valeant-branded drugs while concealing the truth of the company's business operations, financial results, and other material facts. The court denied defendants' partial motions to dismiss and the parties have completed discovery.

In May 2023 the court-appointed special master issued reports and recommendations largely denying the parties' respective motions for summary judgment and denying in full defendants' motions to exclude the testimony of certain of plaintiffs' experts. Earlier this year, the court largely adopted the special master's rulings. Lieff Cabraser also represents a number of BlackRock entities in substantively similar litigation in Canada against Valeant and several individual defendants. Fact and expert discovery in those proceedings have concluded, and the parties are preparing for trial (no trial date has yet been set).

# SECURITIES AND FINANCIAL FRAUD

## Representative Achievements & Successes



### STEINHOFF INTERNATIONAL HOLDINGS N.V. SECURITIES LITIGATION

Lieff Cabraser, together with co-counsel, underwrote a vehicle for investor recovery against Steinhoff International Holdings N.V. ("Steinhoff"), a Dutch corporation based in South Africa that sells retail brands of furniture and household goods throughout the world. The vehicle, called the Stichting Steinhoff Investors Losses Foundation, is a Dutch legal entity governed by an independent board of directors. The proceedings sought recovery of investor losses caused by the massive, multi-year accounting fraud at Steinhoff that has wiped out billions of dollars in shareholder value. The litigation resolved via settlement in 2022.



### HOUSTON MUNICIPAL EMPLOYEES PENSION SYSTEM V. BOFI HOLDING, INC., ET AL., NO. 3:15-CV-02324-GPC-KSC (S.D. CAL.)

Lieff Cabraser served as Class Counsel for court-appointed lead plaintiff and Class Representative Houston Municipal Employees Pension System ("HMEPS"), in this securities fraud class action against BofI Holding, Inc. and certain of its senior officers and directors. The action charged defendants with issuing materially false or misleading statements about the Company's loan underwriting standards, system of internal controls, and compliance infrastructure.

On August 24, 2021, Judge Gonzalo P. Curiel certified a class of investors that purchased or otherwise acquired shares of the publicly traded common stock of BofI, as well as purchasers of BofI call options and sellers of BofI put options, between September 4, 2013 and October 13, 2015. In the same order, Judge Curiel appointed HMEPS as Class Representative and Lieff Cabraser as Class

Counsel. On October 14, 2022, Judge Curiel granted final approval to a $14.1 million settlement of the litigation. The settlement compares several times more favorably, on a percentage of-loss basis, to the typical securities class settlement for a case of its size.



### IN RE THE BOEING COMPANY DERIVATIVE LITIGATION, CONSOL. C.A., NO. 2019-0907-MTZ (DELAWARE CHANCERY COURT)

Lieff Cabraser served as Court-appointed Co-Lead Counsel representing Co-Lead Plaintiffs the New York State Comptroller Thomas P. DiNapoli, as trustee of the New York State Common Retirement, and the Fire and Police Pension Association of Colorado, in shareholder derivative litigation against current and former officers and directors of The Boeing Company ("Boeing"). Co-Lead Plaintiffs' amended complaint, filed January 2021, alleged that Boeing's officers and directors breached their fiduciary duties to the company by dismantling Boeing's lauded safety-engineering corporate culture in favor of what became a financial-engineering corporate culture. Despite numerous safety-related red flags, the Board and officers failed to monitor the safety of Boeing's aircraft. Ultimately, the Board and officers' consistent disregard for safety resulted in the flawed design of Boeing's 737 MAX, leading to the tragic deaths of 346 passengers and the grounding of all 737 Max aircraft.

On September 8, 2021, Vice Chancellor Morgan T. Zurn upheld Co-Lead Plaintiffs' claim for breach of fiduciary duty against the Company's directors. In February 2022, the court approved a settlement comprised of a $237.5 million monetary payment and extensive corporate governance reforms including a new board director and an ombudsperson program.



### IN RE WELLS FARGO & COMPANY SHAREHOLDER DERIVATIVE LITIGATION, NO. 3:16-CV-05541 (N.D. CAL.)

Lieff Cabraser was appointed as Co-Lead Counsel for Lead Plaintiffs FPPACO and The City of Birmingham Retirement and Relief System in this consolidated shareholder derivative action alleging that, since at least 2011, the Board and executive management of Wells Fargo knew or consciously disregarded that Wells Fargo employees were illicitly creating millions of deposit and credit card accounts for their customers, without those customers' consent, as part of Wells Fargo's intense effort to drive up its "cross-selling" statistics. Revelations regarding the scheme, and the defendants' knowledge or blatant disregard of it, deeply damaged Wells Fargo's reputation and cost it millions of dollars in regulatory fines and lost business.

In May and October 2017, the court largely denied Wells Fargo's and the Director and Officer Defendants' motions to dismiss Lead Plaintiffs' amended complaint. In April 2020, U.S. District Judge Jon S. Tigar granted final approval to a settlement of $240 million cash payment, the largest insurer-funded cash settlement of a shareholder derivative action, and corporate governance reforms.



### ARKANSAS TEACHER RETIREMENT SYSTEM V. STATE STREET CORP., CASE NO. 11CV10230 (MLW) (D. MASS.)

Lieff Cabraser served as co-counsel for a nationwide class of institutional custodial clients of State Street, including public pension funds and ERISA plans, who alleged that defendants deceptively charged class members on FX trades done in connection with the purchase and sale of foreign securities. The complaint charged that between 1999 and 2009, State Street consistently incorporated hidden and excessive mark-ups or mark-downs relative to the actual FX rates applicable at the times of the trades conducted for State Street's custodial FX clients.

State Street allegedly kept for itself, as an unlawful profit, the "spread" between the prices for foreign currency available to it in the FX marketplace and the rates it charged to its customers. Plaintiffs sought recovery under Massachusetts' Consumer Protection Law and common law tort and contract theories. On November 2, 2016, U.S. District Senior Judge Mark L. Wolf granted final approval to a $300 million settlement of the litigation.



### IN RE FACEBOOK, INC. IPO SECURITIES AND DERIVATIVE LITIGATION, MDL NO. 12-2389 (RWS) (S.D.N.Y.)

Lieff Cabraser was counsel for two individual investor class representatives in the securities class litigation arising under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") concerning Facebook's initial public offering in May 2012. In 2018, the court final approval to a settlement of the litigation.

### HONEYWELL INTERNATIONAL INC. DEFINED CONTRIBUTION PLANS MASTER SAVINGS TRUST. V. MERCK & CO., NO. 14-CV 2523-SRC-CLW (S.D.N.Y.); JANUS BALANCED FUND V. MERCK & CO., NO. 14-CV-3019-SRC-CLW (S.D.N.Y.); LORD ABBETT AFFILIATED FUND V. MERCK & CO., NO. 14-CV-2027-SRC-CLW (S.D.N.Y.); NUVEEN DIVIDEND VALUE FUND (F/K/A NUVEEN EQUITY INCOME FUND), ON ITS OWN BEHALF AND AS SUCCESSOR IN INTEREST TO NUVEEN LARGE CAP VALUE FUND (F/K/A FIRST AMERICAN LARGE CAP VALUE FUND) V. MERCK & CO., NO. 14-CV-1709-SRC-CLW (S.D.N.Y.)

Lieff Cabraser represented certain Nuveen, Lord Abbett, and Janus funds, and two Honeywell International trusts in these individual actions against Merck & Co., Inc. ("Merck") and certain of its senior officers and directors for misrepresenting the cardiovascular safety profile and commercial viability of Merck's purported "blockbuster" drug, Vioxx. The actions charged defendants with violations of the Exchange Act. The action settled on confidential terms.



### NORMAND, ET AL. V. BANK OF NEW YORK MELLON CORP., NO. 1:16-CV-00212-LAK-JLC (S.D.N.Y.)

Lieff Cabraser, together with co-counsel, represented a proposed class of holders of American Depositary Receipts ("ADRs") (negotiable U.S. securities representing ownership of publicly traded shares in a non-U.S. corporation), for which BNY Mellon served as the depositary bank. Plaintiffs alleged that under the contractual agreements underlying the ADRs, BNY Mellon was responsible for "promptly" converting cash distributions (such as dividends) received for ADRs into U.S. dollars for the benefit of ADR holders, and was required to act without bad faith. Plaintiffs alleged that, instead, when doing the ADR cash conversions, BNY Mellon used the range of exchange rates available during the trading session in a manner that was unfavorable for ADR holders, and in doing so, improperly skimmed profits from distributions owed and payable to the class. In 2019, the court granted final approval to a $72.5 million settlement of the action.



### IN RE BANK OF NEW YORK MELLON CORP. FOREIGN EXCHANGE TRANSACTIONS LITIGATION, MDL 2335 (S.D.N.Y.)

Lieff Cabraser served as Co-Lead Class Counsel for a proposed nationwide class of institutional custodial customers of The Bank of New York Mellon Corporation ("BNY Mellon"). The litigation stemmed from alleged deceptive overcharges imposed by BNY Mellon on foreign currency exchanges (FX) that were done in connection with custodial customers' purchases or sales of foreign securities. Plaintiffs alleged that for more than a decade, BNY Mellon consistently charged its custodial customers hidden and excessive mark-ups on exchange rates for FX trades done pursuant to "standing instructions," using "range of the day" pricing, rather than the rates readily available when the trades were actually executed.

In addition to serving as Co-Lead Counsel for a nationwide class of affected custodial customers, which included public pension funds, ERISA funds, and other public and private institutions, Lieff Cabraser was one of three firms on Plaintiffs' Executive Committee, tasked with managing all activities on the plaintiffs' side in the multidistrict consolidated litigation. Prior to the cases being transferred and consolidated in the Southern District of New York, Lieff Cabraser defeated, in its entirety, BNY Mellon's motion to dismiss claims brought on behalf of ERISA and other funds under California's and New York's consumer protection laws.

The firm's clients and class representatives in the consolidated litigation included the Ohio Police & Fire Pension Fund, the School Employees Retirement System of Ohio, and the International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund.

In March 2015, a global resolution of the private and governmental enforcement actions against BNY Mellon was announced, in which $504 million would be paid back to BNY Mellon customers ($335 million of which was directly attributable to the class litigation).

On September 24, 2015, U.S. District Court Judge Lewis A. Kaplan granted final approval to the settlement. **Commenting on the work of plaintiffs' counsel, Judge Kaplan stated,**

> *"This really was an extraordinary case in which plaintiff's counsel performed, at no small risk, an extraordinary service. They did a wonderful job in this case, and I've seen a lot of wonderful lawyers over the years. This was a great performance. They were fought tooth and nail at every step of the road. It undoubtedly vastly expanded the costs of the case, but it's an adversary system, and sometimes you meet adversaries who are heavily armed and well financed, and if you're going to win, you have to fight them and it costs money. This was an outrageous wrong committed by the Bank of New York Mellon, and plaintiffs' counsel deserve a world of credit for taking it on, for running the risk, for financing it and doing a great job."*



***THE REGENTS OF THE UNIVERSITY OF CALIFORNIA V. AMERICAN INTERNATIONAL GROUP,*** NO. 1:14-CV-01270-LTS-DCF (S.D.N.Y.)

Lieff Cabraser represented The Regents of the University of California in this individual action against American International Group, Inc. ("AIG") and certain of its officers and directors for misrepresenting and omitting material information about AIG's financial condition and the extent of its exposure to the subprime mortgage market. The complaint charged defendants with violations of the Exchange Act, as well as common law fraud and unjust enrichment. The litigation settled in 2015.

***JANUS OVERSEAS FUND, ET AL. V. PETRÓLEO BRASILEIRO S.A. - PETRBRAS, ET AL.,*** NO. 1:15-CV-10086-JSR (S.D.N.Y.); ***DODGE & COX GLOBAL STOCK FUND, ET AL. V. PETRÓLEO BRASILEIRO S.A. - PETRBRAS, ET AL.,*** NO. 1:15-CV-10111-JSR (S.D.N.Y.)

Lieff Cabraser represented certain Janus and Dodge & Cox funds and investment managers in individual actions against Petróleo Brasileiro S.A. – Petrobras, related Petrobras entities, and certain of Petrobras's senior officers and directors, for misrepresenting and failing to disclose a pervasive and long-running scheme of bribery and corruption at Petrobras. As a result of the misconduct, Petrobras overstated the value of its assets by billions of dollars and materially misstated its financial results during the relevant period. The actions charged defendants with violations of the Securities Act of 1933 (the "Securities Act") and/or the Securities Exchange Act of 1934 ("Exchange Act"). The action settled on confidential terms favorable to plaintiffs.



***IN RE DIAMOND FOODS, INC., SECURITIES LITIGATION,*** NO. 11-CV-05386-WHA (N.D. CAL.)

Lieff Cabraser served as local counsel for Lead Plaintiff Public Employees'

Retirement System of Mississippi ("MissPERS") and the class of investors it represented in this securities class action lawsuit arising under the PSLRA. The complaint charged Diamond Foods and certain senior executives of the company with violations of the Exchange Act for knowingly understating the cost of walnuts Diamond Foods purchased in order to inflate the price of Diamond Foods' common stock. In January 2014, the Court granted final approval of a settlement of the action requiring Diamond Foods to pay $11 million in cash and issue 4.45 million common shares worth $116.3 million on the date of final approval based on the stock's closing price on that date.



***IN RE A-POWER ENERGY GENERATION SYSTEMS, LTD. SECURITIES LITIGATION,*** NO. 2:11-ML-2302-GW- (CWX) (C.D. CAL.)

Lieff Cabraser served as Lead Counsel for Lead Plaintiff in this securities class action that charged defendants with materially misrepresenting A-Power Energy Generation Systems, Ltd.'s financial results and business prospects in violation of the antifraud provisions of the Securities Exchange Act of 1934. The Court approved a $3.675 million settlement in August 2013.

***BIOTECHNOLOGY VALUE FUND, L.P. V. CELERA CORP.,*** 3:13-CV-03248-WHA (N.D. CAL.)

Lieff Cabraser represented a group of affiliated funds investing in biotechnology companies in this individual action arising from misconduct in connection with Quest Diagnostics Inc.'s 2011 acquisition of Celera Corporation. Celera, Celera's individual directors, and Credit Suisse were charged with violations of Sections 14(e) and 20(a) of the Exchange Act and breach of fiduciary duty. In February 2014, the Court denied in large part defendants' motion to dismiss the second amended complaint. In September 2014, the plaintiffs settled with Credit Suisse for a confidential amount. After the completion of fact and expert discovery, and prior to a ruling on defendants' motion for summary judgment, the plaintiffs settled with the Celera defendants in January 2015 for a confidential amount.

**BLACKROCK GLOBAL ALLOCATION FUND V. TYCO INTERNATIONAL LTD., ET AL.,** NO. 2:08-CV-519 (D. N.J.); *NUVEEN BALANCED MUNICIPAL AND STOCK FUND V. TYCO INTERNATIONAL LTD., ET AL.,* NO. 2:08-CV-518 (D. N.J.)

Lieff Cabraser represented multiple funds of the investment firms BlackRock Inc. and Nuveen Asset Management in separate, direct securities fraud actions against Tyco International Ltd., Tyco Electronics Ltd., Covidien Ltd, Covidien (U.S.), L. Dennis Kozlowski, Mark H. Swartz, and Frank E. Walsh, Jr. Plaintiffs alleged that defendants engaged in a massive criminal enterprise that combined the theft of corporate assets with fraudulent accounting entries that concealed Tyco's financial condition from investors. As a result, plaintiffs purchased Tyco common stock and other Tyco securities at artificially inflated prices and suffered losses upon disclosures revealing Tyco's true financial condition and defendants' misconduct. In 2009, the parties settled the claims against the corporate defendants (Tyco International Ltd., Tyco Electronics Ltd., Covidien Ltd., and Covidien (U.S.). The litigation concluded in 2010. The total settlement proceeds paid by all defendants were in excess of $57 million.



**BANK OF AMERICA-MERRILL LYNCH MERGER SECURITIES CASES**

In two cases–*DiNapoli, et al. v. Bank of America Corp.*, No. 10 CV 5563 (S.D.N.Y.) and *Schwab S&P 500 Index Fund, et al. v. Bank of America Corp.*, et al., No. 11-cv-07779 PKC (S.D.N.Y.), Lieff Cabraser sought recovery on a direct, non-class basis for losses that a number of public pension funds and mutual funds incurred as a result of Bank of America's alleged misrepresentations and concealment of material facts in connection with its acquisition of Merrill Lynch & Co., Inc. Lieff Cabraser represented the New York State Common Retirement Fund, the New York State Teachers' Retirement System, the Public Employees' Retirement Association of Colorado, and fourteen mutual funds managed by Charles Schwab Investment Management. Both cases settled in 2013 on confidential terms favorable for our clients.



**THE CHARLES SCHWAB CORP. V. BNP PARIBAS SEC. CORP.,** NO. CGC-10-501610 (CAL. SUPER. CT.); *THE CHARLES SCHWAB CORP. V. J.P. MORGAN SEC., INC.,* NO. CGC-10-503206 (CAL. SUPER. CT.); *THE CHARLES SCHWAB CORP. V. J.P. MORGAN SEC., INC.,* NO. CGC-10-503207 (CAL. SUPER. CT.); *AND THE CHARLES SCHWAB CORP. V. BANC OF AMERICA SEC. LLC,* NO. CGC-10-501151 (CAL. SUPER. CT.)

Lieff Cabraser, along with co-counsel, represented Charles Schwab in four separate individual securities actions against certain issuers and sellers of mortgage-backed securities ("MBS") for materially misrepresenting the quality of the loans underlying the securities in violation of California state law. Charles Schwab Bank, N.A., a subsidiary of Charles Schwab, suffered significant damages by purchasing the securities in reliance on defendants' misstatements. The court largely overruled defendants' demurrers in January 2012. Settlements were reached with dozens of defendants for confidential amounts.

**IN RE AXA ROSENBERG INVESTOR LITIGATION,** NO. CV 11-00536 JSW (N.D. CAL)

Lieff Cabraser served as Co-Lead Counsel for a class of institutional investors, ERISA-covered plans, and other investors in quantitative funds managed by AXA Rosenberg Group, LLC and its affiliates ("AXA"). Plaintiffs alleged that AXA breached its fiduciary duties and violated ERISA by failing to discover a material computer error that existed in its system for years, and then failing to remedy it for months after its eventual discovery in 2009. By the time AXA disclosed the error in 2010, investors had suffered losses and paid substantial investment management fees to AXA. After briefing motions to dismiss and working with experts to analyze data obtained from AXA relating to the impact of the error, Lieff Cabraser reached a $65 million settlement with AXA that the Court approved in April 2012.

**IN RE CABLEVISION SYSTEMS CORP. SHAREHOLDER DERIVATIVE LITIGATION,** NO. 06-CV-4130-DGT-AKT (E.D.N.Y.)

Lieff Cabraser served as Co-Lead Counsel in a shareholders' derivative action against the board of directors and numerous officers of Cablevision. The suit alleged that defendants intentionally manipulated stock option grant dates to Cablevision employees between 1997

and 2002 in order to enrich certain officer and director defendants at the expense of Cablevision and Cablevision shareholders. According to the complaint, Defendants made it appear as if stock options were granted earlier than they actually were in order to maximize the value of the grants. In September 2008, the Court granted final approval to a $34.4 million settlement of the action. Over $24 million of the settlement was contributed directly by individual defendants who either received backdated options or participated in the backdating activity.



### IN RE BROADCOM CORPORATION DERIVATIVE LITIGATION, NO. CV 06-3252-R (C.D. CAL.)

Lieff Cabraser served as Lead Counsel in a shareholders derivative action arising out of stock options backdating in Broadcom securities. The complaint alleged that defendants intentionally manipulated their stock option grant dates between 1998 and 2003 at the expense of Broadcom and Broadcom shareholders. By making it seem as if stock option grants occurred on dates when Broadcom stock was trading at a comparatively low per share price, stock option grant recipients were able to exercise their stock option grants at exercise prices that were lower than the fair market value of Broadcom stock on the day the options were actually granted. In December 2009, U.S. District Judge Manuel L. Real granted final approval to a partial settlement in which Broadcom Corporation's insurance carriers paid $118 million to Broadcom. The settlement released certain individual director and officer defendants covered by Broadcom's directors' and officers' policy.

Plaintiffs' counsel continued to pursue claims against William J. Ruehle, Broadcom's former Chief Financial Officer, Henry T. Nicholas, III, Broadcom's co-founder and former Chief Executive Officer, and Henry Samueli, Broadcom's co-founder and former Chief Technology Officer. In May 2011, the Court approved a settlement with these defendants. The settlement provided substantial consideration to Broadcom, consisting of the receipt of cash and cancelled options from Dr. Nicholas and Dr. Samueli totaling $53 million in value, plus the release of a claim by Mr. Ruehle, which sought damages in excess of $26 million.

Coupled with the earlier $118 million partial settlement, the total recovery in the derivative action was $197 million, which at the time constituted the third-largest settlement ever in a derivative action involving stock options backdating.

### IN RE NATIONAL CENTURY FINANCIAL ENTERPRISES, INC. INVESTMENT LITIGATION, MDL NO. 1565 (S.D. OHIO)

Lieff Cabraser served as outside counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in this multidistrict litigation arising from fraud in connection with NCFE's issuance of notes backed by healthcare receivables. The New York City Pension Funds recovered more than 70% of their $89 million in losses, primarily through settlements achieved in the federal litigation and another NCFE-matter brought on their behalf by Lieff Cabraser.



### IN RE QWEST COMMUNICATIONS INTERNATIONAL SECURITIES AND "ERISA" LITIGATION (NO. II), NO. 06-CV-17880-REB-PAC (MDL NO. 1788) (D. COLO.)

Lieff Cabraser represented the New York State Common Retirement Fund, Fire and Police Pension Association of Colorado, Denver Employees' Retirement Plan, San Francisco Employees' Retirement System, and over thirty BlackRock managed mutual funds in individual securities fraud actions ("opt out" cases) against Qwest Communications International, Inc., Philip F. Anschutz, former co-chairman of the Qwest board of directors, and other senior executives at Qwest. In each action, the plaintiffs charged defendants with massively overstating Qwest's publicly-reported growth, revenues, earnings, and earnings per share from 1999 through 2002. The cases were filed in the wake of a $400 million settlement of a securities fraud class action against Qwest that was announced in early 2006. The cases brought by Lieff Cabraser's clients settled in October 2007 for recoveries totaling more than $85 million, or more than 13 times what the clients would have received had they remained in the class.



### *MERRILL LYNCH FUNDAMENTAL GROWTH FUND AND MERRILL LYNCH GLOBAL VALUE FUND V. MCKESSON HBOC*, NO. 02-405792 (CAL. SUPR. CT.)

Lieff Cabraser served as counsel for two Merrill Lynch sponsored mutual funds in a private lawsuit alleging that a massive accounting fraud occurred at HBOC & Company before and following its 1999 acquisition by McKesson Corporation. The funds charged that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $135 million in losses for plaintiffs.

In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S. Attorney and *SEC. McKesson HBOC, Inc. v. Supr. Court*, 115 Cal. App. 4th 1229 (2004). Lieff Cabraser's clients recovered approximately $145 million, representing nearly 104% of damages suffered by the funds. This amount was approximately $115-120 million more than the Merrill Lynch funds would have recovered had they participated in the federal class action settlement.

### *IN RE NETWORK ASSOCIATES, INC. SECURITIES LITIGATION*, NO. C-99-1729-WHA (N.D. CAL.)

Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors. The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price. In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the Network Associates settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . . We have class counsel who's one of the foremost law firms in the country in both securities law and class

actions. And they have a very excellent reputation for the conduct of these kinds of cases . . ."

### *IN RE MEDIA VISION TECHNOLOGY SECURITIES LITIGATION*, NO. CV-94-1015 (N.D. CAL.)

Lieff Cabraser served as Co-Lead Counsel in a class action lawsuit which alleged that certain Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings and issued false and misleading public statements about the company's finances, earnings and profits. By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totaled $31 million and which were distributed to eligible class members. The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer.

The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings against them. In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial. In October 2003, the Court granted Plaintiffs' motions for summary judgment and entered a judgment in favor of the class against the two defendants in the amount of $188 million.



### *IN RE FPI/AGRETECH SECURITIES LITIGATION*, MDL NO. 763 (D. HAW., REAL, J.)

Lieff Cabraser served as Lead Class Counsel for investors defrauded in a "Ponzi-like" limited partnership investment scheme. The Court approved $15 million in partial, pretrial settlements. At trial, the jury returned a $24 million verdict, which included $10 million in punitive damages, against non-settling defendant Arthur Young & Co. for its knowing complicity and active and substantial assistance in the marketing and sale of the worthless limited partnership offerings. The Appellate Court affirmed the compensatory damages award and remanded the case for a retrial on punitive damages. In 1994, the Court approved a $17 million settlement with Ernst & Young, the successor to Arthur Young & Co.



### IN RE CALIFORNIA MICRO DEVICES SECURITIES LITIGATION, NO. C-94-2817-VRW (N.D. CAL.)

Lieff Cabraser served as Liaison Counsel for the Colorado Public Employees' Retirement Association and the California State Teachers' Retirement System, and the class they represented. Prior to 2001, the Court approved $19 million in settlements. In May 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses. The settlement with the company included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in Cal Micro Devices, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation." One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable. In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

### ALBERT V. ALEX. BROWN MANAGEMENT SERVICES; BAKER V. ALEX. BROWN MANAGEMENT SERVICES (DEL. CH. CT.)

In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate loss of hundreds of millions of dollars. The suits named as defendants Deutsche Bank and its subsidiaries Alex. Brown Management Services and Deutsche Bank Securities, members of the funds' management committee, as well as DC Investments Partners and two of its principals. Among the plaintiff-investors were 70 high net worth individuals. In the fall of 2006, the cases settled by confidential agreement.

### ALASKA STATE DEPARTMENT OF REVENUE V. AMERICA ONLINE, NO. 1JU-04-503 (ALASKA SUPR. CT.)

In December 2006, a $50 million settlement was reached in a securities fraud action brought by the Alaska State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation against defendants America Online, Inc., Time Warner Inc., Historic TW Inc. When the action was filed, the Alaska Attorney General estimated total losses at $70 million. The recovery on behalf of Alaska was approximately 50 times what the state would have received as a member of the class in the federal securities class action settlement. The lawsuit, filed in 2004 in Alaska State Court, alleged that defendants misrepresented advertising revenues and growth of AOL and AOLTW along with the number of AOL subscribers, which artificially inflated the stock price of AOL and AOLTW to the detriment of Alaska State funds.

The Alaska Department of Law retained Lieff Cabraser to lead the litigation efforts under its direction. "We appreciate the diligence and expertise of our counsel in achieving an outstanding resolution of the case," said Mark Morones, spokesperson for the Department of Law, following announcement of the settlement.



### INFORMIX/ILLUSTRA SECURITIES LITIGATION, NO. C-97-1289-CRB (N.D. CAL.)

Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc., and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation in connection with Informix's 1996 purchase of Illustra. Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company. The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition. In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of

the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud. Our clients, the Illustra shareholders, received approximately 30% of the net settlement fund.



### NGUYEN V. FUNDAMERICA, NO. C-90-2090 MHP (N.D. CAL., PATEL, J.), 1990 FED. SEC. L. REP. (CCH) ¶ 95,497, 95,498 (N.D. CAL. 1990)

Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants. The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets. The Bankruptcy Court permitted class proof of claims. Lieff Cabraser obtained dual District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

### KOFUKU BANK AND NAMIHAYA BANK V. REPUBLIC NEW YORK SECURITIES CORP., NO. 00 CIV 3298 (S.D.N.Y.); AND KITA HYOGO SHINYO-KUMIAI V. REPUBLIC NEW YORK SECURITIES CORP., NO. 00 CIV 4114 (S.D.N.Y.)

Lieff Cabraser represented Kofuku Bank, Namihaya Bank and Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against, among others, Martin A. Armstrong and HSBC, Inc., the successor-in-interest to Republic New York Corporation, Republic New York Bank and Republic New York Securities Corporation, for alleged violations of federal securities and racketeering laws.

Through a group of interconnected companies owned and controlled by Armstrong—the Princeton Companies— Armstrong and the Republic Companies promoted and sold promissory notes, known as the "Princeton Notes," to more than eighty of the largest companies and financial institutions in Japan. Lieff Cabraser's lawsuits, as well as the lawsuits of dozens of other Princeton Note investors, alleged that the Princeton and Republic Companies made fraudulent misrepresentations and non-disclosures in connection with the promotion and sale of Princeton Notes, and that investors' monies were commingled and misused to the benefit of Armstrong, the Princeton Companies and the Republic Companies.

In December 2001, the claims of our clients and those of the other Princeton Note investors were settled. As part of the settlement, our clients recovered more than $50 million, which represented 100% of the value of their principal investments, less money they received in interest or other payments.

### IN RE FIRST CAPITAL HOLDINGS CORP. FINANCIAL PRODUCTS SECURITIES LITIGATION, MDL NO. 901 (C.D. CAL.)

Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements. This policyholder settlement generated over $1 billion in restored life insurance policies. The settlement was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

### IN RE SCORPION TECHNOLOGIES SECURITIES LITIGATION I, NO. C-93-20333-EAI (N.D. CAL.); DIETRICH V. BAUER, NO. C-95-7051-RWS (S.D.N.Y.); CLAGHORN V. EDSACO, NO. 98-3039-SI (N.D. CAL.)

Lieff Cabraser served as Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the company's earnings through reporting fictitious sales.

In *Scorpion I*, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial. *In re Scorpion Techs.*, 1996 U.S. Dist.

LEXIS 22294 (N.D. Cal. Mar. 27, 1996). In 1988, the Court approved a $5.5 million settlement with Grant Thornton. In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation.

In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd. The jury found that Edsaco aided Scorpion in setting up phony European companies as part of a scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings. Included in the jury verdict, one of the largest verdicts in the U.S. in 2002, was $165 million in punitive damages. Richard M. Heimann conducted the trial for plaintiffs.

On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation: "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here. You were opposed by extremely capable lawyers. It was an uphill battle. There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end. I think based on the efforts that were made here that it was an excellent result for the class. . . [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."



### *ALLOCCO V. GARDNER, NO. GIC 806450* (CAL. SUPR. CT.)

Lieff Cabraser represented Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation, and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen, and certain entities that entered into fraudulent transactions with Peregrine.

The lawsuit, filed in California state court, arose out of Peregrine's August 2001 acquisition of Remedy. Plaintiffs

charged that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and misleading representations made by defendants. Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

After successfully defeating demurrers brought by defendants, including third parties who were customers of Peregrine who aided and abetted Peregrine's accounting fraud under California common law, plaintiffs reached a series of settlements. The settling defendants included Arthur Andersen, all of the director defendants, three officer defendants and the third party customer defendants KPMG, British Telecom, Fujitsu, Software Spectrum and Bindview. The total amount received in settlements was approximately $45 million.

# SURVIVOR RIGHTS & ADVOCACY

Lieff Cabraser has brought successful lawsuits on behalf of minor victims of sexual abuse, including against schools, hospitals/doctors and behavioral health facilities. Lieff Cabraser was one of the principal architects of the historic $215 million settlement reached in 2020 on behalf of a class of approximately 18,000 female students who were sexually assaulted at the University of Southern California by Dr. George Tyndall, and continues to advance litigation across the U.S. on behalf of victims of sexual assault and predatory conduct, including in Michigan against the University of Michigan and its Regents for allowing and enabling a University physician, Dr. Robert E. Anderson, to sexually abuse students while employed by the University for more than 30 years (1968-2003); against Devereux behavioral health facilities; against the Branson private school in Marin County; and against airlines including Frontier for sexual assaults against passengers occurring on commercial flights across the U.S.

# Representative Current Cases



### HILLSDALE CAMPUS SEXUAL ASSAULT LITIGATION

Lieff Cabraser represents two individuals and a putative class of current and former female students of Hillsdale College, a private university in Western Michigan that prides itself on its conservative Christian values. The complaint alleges that female students at Hillsdale face a heightened risk of sexual assault, and that when students come forward to report such incidents—as the named plaintiffs did—Hillsdale fails to properly respond. Plaintiffs' claims include traditional torts, violations of state civil rights and consumer protection laws, and violations of Title IX. For the Title IX claim, Plaintiffs argue that Hillsdale's tax-exempt status as 501(c)(3) operates as a subsidy, subjecting it to the statute's obligations regarding sex discrimination and sexual assault in schools.

### DEVEREUX ADVANCED BEHAVIORAL HEALTH STAFF SEXUAL ABUSES

Lieff Cabraser represents six individuals and a putative class of thousands of other children across the U.S. in a federal class action sexual abuse lawsuit in Pennsylvania against Devereux Foundation (a/k/a Devereux Advanced Behavioral Health) and QualityHealth Staffing, LLC. The complaint details multiple alleged violations of state and federal law, including assault; battery; failure to report child abuse; creation of a sexually hostile culture/heightened risk of sexual harassment; deliberate indifference to prior sexual harassment; negligence and failure to provide safe environment with adequate protection,

supervision, and care; negligent hiring of unsuitable personnel; negligent retention of unsuitable personnel; negligent supervision; gross negligence; and negligent misrepresentation. One of the largest behavioral health organizations in the country, Devereux has more than 7,500 staff members across 13 states.

The complaint includes allegations of the rape and sexual abuse of inpatient clients as well as abuses committed by fellow inpatients that were ignored and/or suppressed by Devereux staff and management. Some patients who raised such allegations claim they were not only disregarded but punished for initiating complaints, including the withholding of food, physical restraint, isolation, and even physical abuse.



### SEX TRAFFICKING OF MINORS VIA SOCIAL MEDIA

Lieff Cabraser is investigating reports of sex trafficking and sexual exploitation occurring on social media platforms across the country, including on Twitter, TikTok, Instagram, Snapchat, WhatsApp, OnlyFans, Facebook, Backpage, and Craigslist. The firm represents a client who was trafficked through advertisements on Craigslist as a minor teenager. The case, *J.B. v. craigslist, Inc.*, 4:19-cv-07848-HSG, is now pending in the Ninth Circuit on the issue of whether an internet company can be held responsible for benefitting from sex trafficking it knew or should have known was ongoing on its platform.

### HOTCHKISS SCHOOL SEXUAL ABUSE LAWSUITS

We represent former students in a sexual abuse class action lawsuit against The Hotchkiss School, a college

preparatory school in Lakeville, Connecticut. The suit alleges that, during their time Hotchkiss, the former students were subjected to grooming, inappropriate touching, assault, and rape by English teacher and athletic trainer Roy Smith, who was known to the School as a pedophile who had abused numerous other male students at the School.

The suit seeks to certify the issues of Hotchkiss's duty to its students, and its breach of that duty, on a classwide basis, so others coming forward will not have to prove those elements again from scratch each time. This will make it easier for other Smith victims to hold Hotchkiss accountable for what it allowed to happen to them at Smith's hands.

Lieff Cabraser has been successful in prior litigation against Hotchkiss concerning Roy Smith. On March 8, 2019, U.S. District Judge Victor Bolden (D. Conn.) ruled that a former student's sexual abuse lawsuit against Hotchkiss could move forward to trial on counts of breach of fiduciary duty, recklessness, negligence, and negligent infliction of emotional distress. That case subsequently resolved. And on July 8, 2019, the same Court ruled that another former student's sexual abuse lawsuit against Hotchkiss concerning Smith could proceed past the pleading stage; that case also subsequently resolved. A third case resolved pre-litigation.



### SACRED HEART SCHOOLS SEXUAL ABUSE CLAIMS

Lieff Cabraser represents survivors of alleged sexual abuse at the elite Sacred Heart schools in Atherton and San Francisco, California, involving sexual abuse of children and teens by teachers and volunteers. Sacred Heart Atherton is now the subject of an independent investigation by a third-party firm that is investigating alleged sexual misconduct going back to at least the 1990s against students. Lieff Cabraser is working with students and their families to bring accountability and change to this important institution.

### THACHER SCHOOL OJAI CALIFORNIA STUDENT SEXUAL ABUSE

Lieff Cabraser represents two victims of sexual abuse at Ojai's elite Thacher School after shocking revelations of a 91-page report compiled by an outside firm following a months-long investigation into allegations of sexual abuse, molestation, harassment, groping, and rape of teenage students at the Thacher School over the last forty years. The report includes details about a 16-year-old student who was repeatedly raped by her English teacher at Thacher, and further notes that the former head of the school, who died in 2014, faced accusations of inappropriate touching and making improper comments.



### UNIVERSITY OF SAN FRANCISCO AND NCAA STUDENT-ATHLETE ABUSE

In June of 2022, nine former USF baseball players joined the class action lawsuit filed in March 2022 against their two (now former) baseball coaches, USF, and the NCAA. Lieff Cabraser and co-counsel represent the plaintiff players who allege that USF coaches Anthony Giarratano and Troy Nakamura created an intolerable sexualized environment on the team over the course of 22 years, that USF knew about their misconduct and did nothing to stop it, and that the NCAA has inadequate policies in place to protect student-athletes from such abuse or prevent coaches from moving on to another member institution with impunity. The amended complaint includes the claims brought by the original three plaintiffs, and provides vivid and disturbing details of an environment rife with emotional abuse and highly sexualized behavior, with the earliest allegations dating back to 1999—Giarratano's first year as coach. The original complaint was filed on March 11, 2022, in the U.S. District Court for the Northern District of California, San Francisco Division. Since the filing, Giarratano and Nakamura have been fired, and USF athletic director, Joan McDermott, has left her position.

The lawsuit seeks to address the systemic institutional failures at USF that allowed such abuse to continue unabated despite complaints up to and including those made to the Athletic Director and Title IX office, and includes allegations that the NCAA failed to protect the student-athletes from abuse and harassment, and also failed to create and enforce prohibitions of sexual contact between coaches and student-athletes. The complaint also details multiple attempts made by parents and others to demand the Jesuit university step in to protect the student-athletes from ongoing abuse, only to have the school administration repeatedly ignore calls for assistance. In January of 2023, the Court determined that Indiana-based NCAA's ties to California were too threadbare to keep it as a defendant, but held that the case should continue against the University of San Francisco.

# SURVIVOR RIGHTS & ADVOCACY

## Representative Achievements & Successes

### BRANSON SCHOOL STUDENT SEXUAL ABUSE LAWSUIT

Lieff Cabraser represented an alumna in her lawsuit against the elite Branson School in Marin County.  The case followed an independent investigation into Branson that revealed decades of sexual abuse by teachers, administrators, and coaches against female students from the 1970s to 2010s. The report named four men whom investigators concluded had engaged in sexual misconduct with at least 10 girls. The firm's client alleged that in the late 1980s she was subject to sexual abuse by one of the men named in the report, assistant basketball coach Richard Manoogian, and that Branson failed to protect her from this abuse. The case also alleged that the abuse was known to head basketball coach Jonas Honick, a "local legend" who remained in his coaching role until recently.  The case resolved in 2022.



### JOHN DOE V. UNIVERSITY OF MICHIGAN AND THE REGENTS OF THE UNIVERSITY OF MICHIGAN, CASE NO. 2:20-CV-10629 (E.D. MICH.)

Lieff Cabraser serveed as Plaintiffs' Interim Co-Class Counsel in the sexual abuse litigation against the University of Michigan and Dr. Robert E. Anderson in the U.S. District Court for the Eastern District of Michigan. The lawsuit, brought on behalf of former student-patients, alleged that Anderson abused his position to repeatedly and regularly sexually assault University students in the guise of providing medical care, and that the University of Michigan and its Regents allowed and enabled that abuse during his employment at the University from 1968 through 2003. A University of Michigan press release noted that the sexual abuse allegations against Anderson were said to be "disturbing and very serious," and include claims of unnecessary and intimate exams by a doctor with unrestricted access to male college athletes over a period extending over three decades.

On August 3, 2022, U.S. District Judge Victoria A. Roberts issued an Order granting final approval to a settlement of the University of Michigan campus sexual misconduct class action that in cluded the establishment and implementation of landmark policy and procedural reforms at the University.



### JANE DOE ET AL. V. GEORGE TYNDALL AND THE UNIVERSITY OF SOUTHERN CALIFORNIA, NO. 2:18-CV-05010 (C.D. CAL.)

Lieff Cabraser and co-counsel represented a class of women sexually abused, harassed, and molested by gynecologist George Tyndall, M.D. while they were students at University of Southern California ("USC"). The complaint alleged USC actively and deliberately concealed Tyndall's sexual abuse for years, continuing to grant Tyndall unrestricted sexual access to the female USC students in his care, despite publicly admitting that it had received numerous complaints of Tyndall's sexually abusive behavior dating back to at least the year 2000. In February 2020, plaintiffs secured final approval of a settlement on behalf of nearly 18,000 women requiring USC to adopt and implement significant and permanent procedures for identification, prevention, and reporting of sexual and racial misconduct, as well as recognize all of Tyndall's patients through a $215 million fund that gives every survivor a choice in how to participate via a tiered claim structure that allows victims to choose the level of engagement they wish to have with the claims process and how they wish to communicate their stories. The settlement was designed to provide victims with a safe process within which to come forward, where they would have complete control over how much they wanted to engage at their chosen level of comfort.

# FIRM ATTORNEYS

**NABILA ABDALLAH**, Associate. *Office*: San Francisco. *Education*: University of California, Berkeley School of Law (J.D., 2022); Stanford University (B.A., 2014).
Full online bio: https://www.lieffcabraser.com/attorneys/nabila-abdallah/

**PATRICK I. ANDREWS**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, Environmental and Toxic Exposures, False Claims Act, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: University of California, Hastings College of the Law (J.D., *magna cum laude*, 2016); University of California, Berkeley (B.A. 2011).
Full online bio: https://lieffcabraser.com/attorneys/patrick-i-andrews/

**DONALD C. ARBITBLIT**, Partner. *Office*: San Francisco. *Practice Areas*: Environmental and Toxic Exposures, Personal Injury and Products Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 1979); Tufts University (B.S., *magna cum laude*, 1974).
Full online bio: https://lieffcabraser.com/attorneys/donald-c-arbitblit/

**TANYA ASHUR**, Staff Attorney. *Office*: San Francisco. *Education*: Chicago-Kent College of Law (J.D., 2000); University of Illinois (B.A., 1997).
Full online bio: https://lieffcabraser.com/attorneys/tanya-ashur/

**EDWARD A. BAKER**, Of Counsel. *Office*: New York. *Education*: University of Wisconsin-Madison Law School (J.D, cum laude, 2001); Yale University (M.A.); Tufts University (M.A.); Dartmouth College (B.A.).
Full online bio: https://www.lieffcabraser.com/attorneys/edward-baker/

**MICHELLE BAKER**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2003); University of California, San Diego (B.A., 1998).
Full online bio: https://lieffcabraser.com/attorneys/michelle-baker/

**MARGARET BECKO**, Associate. *Office*: New York. Education: Harvard Law School (J.D., 2020); Columbia University (B.A., magna cum laude, 2015).
Full online bio: https://www.lieffcabraser.com/attorneys/margaret-becko/

**PHILIPPE BENOIT**, Staff Attorney. *Office*: San Francisco. *Education*: Boston College Law School (J.D., 2007); University of California, Los Angeles (B.A., 2001).
Full online bio: https://lieffcabraser.com/attorneys/philippe-benoit/

**KATHERINE LUBIN BENSON**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Securities Fraud and Financial Fraud. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2008); University of California Los Angeles (B.A., *cum laude*,2005); Universidad de Sevilla (2003).
Full online bio: https://lieffcabraser.com/attorneys/katherine-l-benson/

**WILLIAM BERNSTEIN**, Of Counsel. *Office*: San Francisco. *Practice Areas*: Antitrust, Consumer Protection, False Claims Act, Securities Fraud and Financial Fraud. *Education*:  University of San Francisco (J.D., 1975); University of Pennsylvania (B.A., general honors, 1972).
Full online bio: https://lieffcabraser.com/attorneys/william-bernstein/

**ABBY BILKISS**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2003); University of California, Berkeley (M.A., 2007); Willamette University (B.S., *cum laude*, 2000).
Full online bio: https://lieffcabraser.com/attorneys/abby-bilkiss/

**KEVIN R. BUDNER**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Defective Products, False Claims Act, Personal Injury and Products Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2012); University of California Hastings College of the Law (2009-2010); Wesleyan University (B.A., 2005).
Full online bio: https://lieffcabraser.com/attorneys/kevin-r-budner/

**MATIAS BUSTAMANTE**, Staff Attorney. *Office*: San Francisco. *Education*: University of Southern California Gould School of Law (J.D., 2011), California State University, Fresno (B.A., *summa cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/matias-bustamante/

**KENNETH S. BYRD**, Partner. *Office*: Nashville. *Practice Areas*: Consumer Protection, Defective Products. *Education*: Boston College Law School (J.D., *cum laude*, 2004), Samford University (B.S., *cum laude*, 1995).
Full online bio: https://lieffcabraser.com/attorneys/kenneth-s-byrd/

**ELIZABETH J. CABRASER**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Defective Products, Native American Rights, Personal Injury and Products Liability, Securities Fraud and Financial Fraud, Survivor Rights and Advocacy. *Education*: University of California, Berkeley, School of Law (Berkeley Law), Berkeley, California (J.D., 1978); University of California at Berkeley (A.B., 1975).
Full online bio: https://lieffcabraser.com/attorneys/elizabeth-j-cabraser/

**LINDSAY CARR**, Staff Attorney. *Office*: San Francisco. *Education*: Tulane Law School (J.D., 2008), California State University at Monterey Bay (B.S., 2005).
Full online bio: https://lieffcabraser.com/attorneys/lindsay-carr/

**MARK P. CHALOS**, Managing Partner, Nashville Office. *Practice Areas*: Consumer Protection, Defective Products, Employment Discrimination and Unfair Employment Practices, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*:  Emory University School of Law (J.D., 1998); Vanderbilt University (B.A., 1995).
Full online bio: https://lieffcabraser.com/attorneys/mark-p-chalos/

**LIN Y. CHAN**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Employment Discrimination and Unfair Employment Practices, False Claims Act. *Education*: Stanford Law School (J.D. 2007); Wellesley College (B.A., *summa cum laude*, 2001).
Full online bio: https://lieffcabraser.com/attorneys/lin-y-chan/

**VICTORIA A. CHINN**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Francisco School of Law (J.D., 1999), University of California, Davis (B.A., 1991).
Full online bio: https://lieffcabraser.com/attorneys/victoria-a-chinn/

**DANIEL P. CHIPLOCK**, Partner. *Practice Areas*: Consumer Protection, Securities Fraud and Financial Fraud. *Education*: Stanford Law School (J.D., 2000); Columbia University (B.A., *summa cum laude*, 1994).
Full online bio: https://lieffcabraser.com/attorneys/daniel-p-chiplock/

**BRITT CIBULKA**, Staff Attorney. *Office*: San Francisco. *Education*: Northwestern University School of Law (J.D., 1999); Kalamazoo College (B.A., 1991).
Full online bio: https://lieffcabraser.com/attorneys/britt-cibulka/

**CHRISTOPHER COLEMAN**, Associate. *Office*: Nashville. *Practice Areas*: Consumer Protection, Civil/Human Rights and Social Justice, Defective Products, False Claims Act, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: Northwestern University School of Law (J.D., *cum laude*, 2003); Tilburg University, Tilburg, The Netherlands; Catholic University of Leuven, Leuven, Belgium, 2002; Northwestern University Graduate School (M.A., 2000); University of Virginia (M.A., English, 1995); Vanderbilt University (B.A., *magna cum laude*, 1993).
Full online bio: https://lieffcabraser.com/attorneys/christopher-e-coleman/

**DOUGLAS CUTHBERTSON**, Partner. *Practice Areas*: Consumer Fraud, Cybersecurity and Data Privacy, Securities Fraud and Financial Fraud. *Education*: Fordham University School of Law (J.D., *cum laude*, 2007); Bowdoin College (B.A., *summa cum laude*, 1999).
Full online bio: https://lieffcabraser.com/attorneys/douglas-cuthbertson/

**JALLÉ DAFA**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Survivor Rights and Advocacy. *Education*: University of California, Berkeley School of Law (J.D., 2011); Brown University (B.A., 2007).
Full online bio: https://lieffcabraser.com/attorneys/jalle-dafa/

**VERA DE FREITAS**, Associate. *Office*: Munich. *Practice Area*: Antitrust. *Education*: Second German State Exam, Berlin, Germany (2019); First German State Exam, University of Berlin, Germany (2015); Novosibirsk State Teacher Training University, Novosibirsk, Russia (M.A., French & English Teacher, 2008).
Full online bio: https://lieffcabraser.com/attorneys/vera-de-freitas/

**KELLY M. DERMODY**, Managing Partner, San Francisco Office. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Employment Discrimination and Unfair Employment Practices, Survivor Rights and Advocacy. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 1993); Harvard University (A.B., *magna cum laude*, 1990).
Full online bio: https://lieffcabraser.com/attorneys/kelly-m-dermody/

**NIMISH R. DESAI**, Partner. *Office*: San Francisco. *Practice Areas*: Cybersecurity and Data Privacy, Defective Products, False Claims Act, Personal Injury and Product Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2006) University of Texas, Austin, (B.S. & B.A., High Honors, 2002).
Full online bio: https://lieffcabraser.com/attorneys/nimish-r-desai/

**NICHOLAS DIAMAND**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Securities Fraud and Financial Fraud. *Education*: Columbia University School of Law (LL.M., 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude*, 1992).
Full online bio: https://lieffcabraser.com/attorneys/nicholas-diamand/

**PAULINA DO AMARAL**, Partner. *Office*: New York. *Practice Areas*: Defective Products, Environmental and Toxic Exposures, Personal Injury and Products Liability. *Education*:  University of California Hastings College of Law (J.D., 1996); University of Rochester (B.A., 1988).
Full online bio: https://lieffcabraser.com/attorneys/paulina-do-amaral/

**WESLEY DOZIER,** Associate. *Office*: Nashville. *Education*: Vanderbilt Law School (J.D., cum laude, May 2019); Vanderbilt University (B.A., 2016).
Full online bio: https://www.lieffcabraser.com/attorneys/wesley-dozier/

**DAN DRACHLER**, Of Counsel. *Office*: Seattle. *Practice Areas*: Antitrust, Consumer Protection, Native American Rights, Securities Fraud and Financial Fraud. *Education*: New York Law School (J.D., *cum laude*); Law Review; John Ben Snow Merit Scholar; University of South Carolina (B.A., *cum laude*).
Full online bio: https://lieffcabraser.com/attorneys/dan-drachler/

**WILSON M. DUNLAVEY**, Partner. *Office*: New York. *Practice Areas*: Environmental and Toxic Exposures, Personal Injury and Products Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2015); Humboldt University in Berlin (Ph.D., *cum laude*, 2015; Dual M.A., Magister Artium, History and Philosophy, 2015); St. John's College (B.A., 2003).
Full online bio: https://lieffcabraser.com/attorneys/wilson-dunlavey/

**ERIC B. FASTIFF**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Native American Rights. *Education*: Cornell Law School (J.D., 1995); London School of Economics and Political Science (M. Sc. Econ. 1991); Tufts University (B.A., *cum laude*, *magno cum honore in thesi*, 1990).
Full online bio: https://lieffcabraser.com/attorneys/eric-b-fastiff/

**STEVEN E. FINEMAN**, Firm-Wide Managing Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Personal Injury and Products Liability, Securities Fraud and Financial Fraud. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (1983-84).
Full online bio: https://lieffcabraser.com/attorneys/steven-e-fineman/

**WENDY R. FLEISHMAN**, Partner. *Office*: New York. *Practice Areas*: Defective Products, False Claims Act, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: University of Pennsylvania (Post-Baccalaureate, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974).
Full online bio: https://lieffcabraser.com/attorneys/wendy-r-fleishman/

**ANNA J. FREYMANN**, Associate. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, Personal Injury and Products Liability. *Education*: New York University Law School, New York, NY (Master of Laws (LL.M.), May 2020); Court of Appeals Berlin (Kammergericht), Berlin, Germany, Second State Examination in Law (Zweites juristisches Staatsexamen), Distinction, February 2018; University of Potsdam, Potsdam, Germany, First State Examination in Law (Erste juristische Prüfung), Distinction, March 2015 – JD Equivalent.
Full online bio: https://www.lieffcabraser.com/attorneys/anna-j-freymann/

**JOSE GARCIA**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Los Angeles School of Law (J.D., 1985); Loyola University of Los Angeles (B.A.).
Full online bio: https://lieffcabraser.com/attorneys/jose-garcia/

**MELISSA GARDNER**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Personal Injury and Products Liability. *Education*: Harvard Law School (J.D. 2011); Western Washington University (B.A., *magna cum laude*, 2005).
Full online bio: https://lieffcabraser.com/attorneys/melissa-gardner/

**ROGER GEISSLER**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2012); University of Pennsylvania (B.A., *summa cum laude*, 1998).
Full online bio: https://lieffcabraser.com/attorneys/roger-geissler/

**RACHEL GEMAN**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Employment Discrimination and Unfair Employment Practices, False Claims Act. *Education*:  Columbia University School of Law (J.D. 1997); Harvard University (A.B., *cum laude*, 1993).
Full online bio: https://lieffcabraser.com/attorneys/rachel-geman/

**BRENDAN P. GLACKIN**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Securities Fraud and Financial Fraud. *Education*: Harvard Law School (J.D., *cum laude*, 1998); University of Chicago (A.B., 1995).
Full online bio: https://lieffcabraser.com/attorneys/brendan-p-glackin/

**KELLY GRALEWSKI**, Staff Attorney. *Office*: San Francisco. *Education*: California Western School of Law (J.D., 1997); California State University at Chico (B.S. & B.A., 1992).
Full online bio: https://lieffcabraser.com/attorneys/kelly-gralewski/

**CHRISTINA GRANDEL**, Associate. *Office*: Munich. *Practice Areas*: Antitrust, Consumer Protection, Defective Products, Personal Injury/Mass Tort. *Education*: Second German State Exam, Munich, Germany, 2018; First German State Exam, Augsburg, Germany, 2016.
Full online bio: https://www.lieffcabraser.com/attorneys/christina-grandel/

**LAURA M. HALEY**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Francisco School of Law (J.D., 2013); University of California, Berkeley (B.A., 2009).
Full online bio: https://lieffcabraser.com/attorneys/laura-m-haley/

**AVERY S. HALFON**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: Harvard Law School (J.D., *cum laude*, 2015); Stanford University (B.A., 2010).
Full online bio: https://lieffcabraser.com/attorneys/avery-halfon/

**DEAN M. HARVEY**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Consumer Protection, Employment Discrimination and Unfair Employment Practices. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2006); University of Minnesota, Twin Cities (B.A., *summa cum laude*, 2002).
Full online bio: https://lieffcabraser.com/attorneys/dean-m-harvey/

**EMILY N. HARWELL**, Associate. *Office*: New York. *Practice Areas*: Environmental Law, Native American Rights. *Education*: Cornell Law School (J.D. 2022); Dartmouth College (B.A., 2016).
Full online bio: https://lieffcabraser.com/attorneys/emily-harwell/

**AMELIA HASELKORN**, Associate. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Civil/Human Rights and Social Justice, Cybersecurity and Data Privacy, Defective Products, Environmental and Toxic Exposures. *Education*: University of California, Irvine School of Law (J.D., *magna cum laude*, 2021); Pitzer College, Claremont (B.A., with honors, 2016).
Full online bio: https://lieffcabraser.com/attorneys/amelia-haselkorn/

**LEXI J. HAZAM**, Partner. *Office*: San Francisco. *Practice Areas*: False Claims Act, Personal Injury and Product Liability. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2001); Stanford University (B.A., 1995, M.A., 1996).
Full online bio: https://lieffcabraser.com/attorneys/lexi-j-hazam/

**RICHARD M. HEIMANN**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Consumer Protection, Personal Injury and Products Liability, Securities Fraud and Financial Fraud. *Education*: Georgetown University (J.D., 1972); University of Florida (B.S.B.A., with honors, 1969).
Full online bio: https://lieffcabraser.com/attorneys/richard-m-heimann/

**ROGER N. HELLER**, Partner. *Office*: San Francisco. *Practice Area*: Consumer Protection. *Education*: Columbia University School of Law (J.D., 2001); Emory University (B.A., 1997).
Full online bio: https://lieffcabraser.com/attorneys/roger-n-heller/

**JAMES HERD**, Staff Attorney. *Office*: San Francisco. *Education*: Hastings College of the Law (J.D., 1992); California State University (B.A., 1989).
Full online bio: https://lieffcabraser.com/attorneys/james-herd/

**NEEL HEROLD**, Associate. **Office**: Munich. **Education**: Second German State Exam, Kassel, Germany (2022); First German State Exam, Jena, Germany (2020).
Full online bio: https://www.lieffcabraser.com/attorneys/neel-herold/

**DANIEL M. HUTCHINSON**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Employment Discrimination and Unfair Employment Practices, Survivor Rights and Advocacy. *Education*:  University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2005) University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999).
Full online bio: https://lieffcabraser.com/attorneys/daniel-m-hutchinson/

**KAREN L. JONES**, Staff Attorney. *Office*: San Francisco. *Education*: University of California at Davis School of Law (J.D., 1989); University of California, Santa Cruz (B.A., 1985).
Full online bio: https://lieffcabraser.com/attorneys/karen-l-jones/

**CHRISTOPHER JORDAN**, Staff Attorney. *Office*: San Francisco. *Education*: Stanford Law School (J.D., 2004); University of North Carolina (B.A., 2000).
Full online bio: https://lieffcabraser.com/attorneys/christopher-jordan/

**ANDREW KAUFMAN**, Partner. *Office*: Nashville. *Practice Areas*: Consumer Protection, Personal Injury and Products Liability. *Education*: Harvard Law School (J.D., *cum laude*, 2012); Carleton College (B.A., *magna cum laude*, 2007).
Full online bio: https://lieffcabraser.com/attorneys/andrew-kaufman/

**MURIEL KENFIELD-KELLEHER**, Associate. **Office**: New York. **Education**: Harvard Law School (J.D., 2021); The University of Illinois at Urbana-Champaign (B.A., 2015).
Full online bio: https://www.lieffcabraser.com/attorneys/muriel-kenfield-kelleher/

**DENNY KIM**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Diego School of Law (J.D., 2005); University of California, Berkeley (B.A., 1996).
Full online bio: https://lieffcabraser.com/attorneys/denny-kim/

**JASON KIM**, Staff Attorney. *Office*: San Francisco. *Education*: Thomas Jefferson School of Law (J.D., 2009); Fordham University Law School, Fordham-SKKU Summer Institute of International Law (2008); University of California, Davis (B.A., 2002).
Full online bio: https://lieffcabraser.com/attorneys/jason-kim/

**DR. KATHARINA KOLB**, Managing Partner, Munich Office. *Practice Area*: Antitrust. *Education*: Second German State Exam, Munich, Germany, 2010; Ludwig-Maximilians-University, Munich, Germany, Dissertation, 2008; First German State Exam, Munich, Germany, 2007.
Full online bio: https://lieffcabraser.com/attorneys/katharina-kolb/

**MICHELLE LAMY**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Civil/Human Rights and Social Justice, Employment Discrimination and Unfair Employment Practices, Survivor Rights and Advocacy. *Education*: Stanford Law School (J.D., 2015); College of Arts & Sciences, Boston College (B.A., *summa cum laude*, 2009).
Full online bio: https://lieffcabraser.com/attorneys/michelle-lamy/

**ALEX LARRABEE**, Staff Attorney. *Office*: San Francisco. *Education*: University of California College of the Law, San Francisco (J.D. cum laude, 2012); Harvard University (B.A., 2008).
Full online bio: https://www.lieffcabraser.com/attorneys/alex-larrabee/

**HANNAH LAZARZ**, Associate. *Office*: Nashville. *Practice Area:* Personal Injury and Products Liability. *Education*: UCLA School of Law (J.D., 2020); Vanderbilt University (B.A., 2017).
Full online bio: https://www.lieffcabraser.com/attorneys/hannah-lazarz/

**LYDIA LEE**, Of Counsel. *Office*: San Francisco. *Practice Areas*: Securities Fraud and Financial Fraud. *Education*: Oklahoma City University, School of Law (J.D., 1983); University of Central Oklahoma (B.A., 1980).
Full online bio: https://lieffcabraser.com/attorneys/lydia-lee/

**NICK W. LEE**, Associate. *Office*: San Francisco. *Practice Areas*: Antitrust, Consumer Protection, Environmental and Toxic Exposures, Personal Injury and Products Liability. *Education*: University of California, Davis School of Law (J.D. 2020); University of California, San Diego (B.A. 2014).
Full online bio: https://lieffcabraser.com/attorneys/nick-w-lee/

**SHARON M. LEE**, Partner. *Office*: New York. *Practice Area*: Securities Fraud and Financial Fraud. *Education*: St. John's University School of Law (J.D., 2001); St. John's University (M.A. 1998); St. John's University (B.A. 1997).
Full online bio: https://lieffcabraser.com/attorneys/sharon-lee/

**JAMES LEGGETT**, Staff Attorney. *Office*: San Francisco. *Education*: Santa Clara University School of Law (J.D., *cum laude*, 2012) Thomas Jefferson School of Law (2009-2010); University of California, Davis (B.A., 2004).
Full online bio: https://lieffcabraser.com/attorneys/james-leggett/

**BRUCE W. LEPPLA**, Partner. *Practice Areas*: Antitrust, Securities Fraud and Financial Fraud. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D.); University of California at Berkeley (M.S.); Yale University (B.A., *magna cum laude*).
Full online bio: https://lieffcabraser.com/attorneys/bruce-w-leppla/

**MICHAEL LEVIN-GESUNDHEIT**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Employment Discrimination and Unfair Employment Practices, Personal Injury and Products Liability. *Education*: Stanford Law School (J.D., 2013); Harvard University (A.B., *magna cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/michael-levin-gesundheit/

**FAITH E.A. LEWIS,** Associate. *Office*: San Francisco. *Practice Areas*: Defective Products, Employment Discrimination and Unfair Employment Practices. *Education*: Yale Law School (J.D., 2023); American University (B.A., 2020); London School of Economics and Political Science (2019).
Full online bio: https://www.lieffcabraser.com/attorneys/faith-e-a-lewis/

**JAHI LIBURD**, Associate. *Office*: New York. *Practice Areas*: Employment Discrimination and Unfair Employment Practices; Securities and Financial Fraud. *Education*: Brooklyn Law School (J.D., 2022); City University of New York (Baruch College) (B.A., 2013).
Full online bio: https://lieffcabraser.com/attorneys/jahi-liburd/

**JASON L. LICHTMAN**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, False Claims Act. *Education*: University of Michigan Law School (J.D., *cum laude*, 2006); Northwestern University (B.A., 2000).
Full online bio: https://lieffcabraser.com/attorneys/jason-l-lichtman/

**COLEEN LIEBMANN**, Staff Attorney. *Office*: San Francisco. *Education*: American University, Washington College of Law (LL.M., 2004); University of San Francisco School of Law (J.D., 2003); University of the Pacific (B.A., 1992).
Full online bio: https://lieffcabraser.com/attorneys/coleen-liebman/

**SARAH R. LONDON**, Partner. *Office*: San Francisco. *Practice Areas*: Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: National Institute for Trial Advocacy, Building Trial Skills: Boston (Winter 2013); University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2009); Northwestern University (B.A., *cum laude*, 2002).
Full online bio: https://lieffcabraser.com/attorneys/sarah-r-london/

**JOHN MAHER**, Associate. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy. *Education*: University of California, Berkeley School of Law – Berkeley, CA (J.D., 2016); Yale University – New Haven, CT (M.A., 2013); Oxford University (B.A., 2009, First Class Honors *summa cum laude*).
Full online bio: https://lieffcabraser.com/attorneys/john-maher/

**JACOB S. MILLER**, Associate. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy. *Education*: Harvard Law School (J.D., 2020); Harvard College (A.B., 2015).
Full online bio: https://www.lieffcabraser.com/attorneys/jacob-s-miller/

**MIRIAM E. MARKS**, Associate. *Office*: San Francisco. *Practice Areas*: Personal Injury and Products Liability. *Education*: New York University School of Law (J.D., 2019); Stanford University (M.A. and B.A. with Departmental Honors, 2012).
Full online bio: https://lieffcabraser.com/attorneys/miriam-e-marks/

**ANNIKA K. MARTIN**, Partner. *Office*: New York. *Practice Areas*: Antitrust, Consumer Protection, Defective Products, Environmental and Toxic Exposures, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: Law Center, University of Southern California (J.D., 2004); Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999).
Full online bio: https://lieffcabraser.com/attorneys/annika-k-martin/

**KATHERINE MCBRIDE**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, False Claims Act, Personal Injury and Products Liability. *Education*: Stanford Law School (J.D., pro bono distinction, 2015) Boston College (B.A., *summa cum laude*, 2011).
Full online bio: https://lieffcabraser.com/attorneys/katherine-mcbride/

**JAY MCKIBBEN**, Staff Attorney. *Office*: San Francisco. *Education*: Empire College School of Law (J.D., 1991); UCLA School of Law; Stanford University (B.A., 1984).
Full online bio: https://lieffcabraser.com/attorneys/jay-mckibben/

**KELLY MCNABB**, Partner. *Office*: New York. *Practice Areas*: Personal Injury and Products Liability. *Education*: University of Minnesota Law School (J.D., *cum laude*, 2012); University of Minnesota Twin Cities College of Liberal Arts (B.A. 2008).
Full online bio: https://lieffcabraser.com/attorneys/kelly-mcnabb/

**MICHAEL J. MIARMI**, Partner. *Office*: New York. *Practice Areas*: Securities Fraud and Financial Fraud. *Education*: Fordham Law School (J.D., 2005); Yale University (B.A., *cum laude*, 2000).
Full online bio: https://lieffcabraser.com/attorneys/michael-miarmi/

**ANDREEA MICLUT**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University School of Law (J.D., 2007); University of California, Berkeley (B.A., 2004).
Full online bio: https://lieffcabraser.com/attorneys/andreea-miclut/

**SCOTT MILORO**, Staff Attorney. *Office*: New York. *Education*: Benjamin N. Cardozo School of Law (J.D., 2006); State University of New York at Buffalo (M.S., 1996); Cornell University (B.S., 1994).
Full online bio: https://lieffcabraser.com/attorneys/scott-miloro/

**JESSICA MOLDOVAN**, Associate. *Office*: New York. *Practice Areas*: Antitrust, Employment Discrimination and Unfair Employment Practices, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: New York University School of Law, New York, NY (J.D., *cum laude*, 2017); Trinity College Dublin, Dublin, Ireland (M. Phil., 2014); Yale University, New Haven, CT (B.A. *magna cum laude*, 2011).
Full online bio: https://lieffcabraser.com/attorneys/jessica-moldovan/

**ROBERT J. NELSON**, Partner. *Office*: San Francisco. *Practice Areas*: Defective Products, Environmental and Toxic Exposures, False Claims Act, Personal Injury and Products Liability. *Education*:  New York University School of Law (J.D., 1987): Cornell University (A.B., *cum laude*, 1982) London School of Economics (General Course, 1980-81).
Full online bio: https://lieffcabraser.com/attorneys/robert-j-nelson/

**PHIANH NGUYEN**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University School of Law (J.D., 2008); University of Florida, Gainesville (B.S., 2003).
Full online bio: https://lieffcabraser.com/attorneys/phianh-nguyen/

**PHONG-CHAU G. NGUYEN**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Defective Products, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: University of San Francisco School of Law (J.D. 2012); University of California, Berkeley (B.A., Highest Honors; Distinction in General Scholarship, 2008).
Full online bio: https://lieffcabraser.com/attorneys/phong-chau-g-nguyen/

**JOHN T. NICOLAOU**, Partner. *Office*: New York. *Practice Areas*: Securities Fraud and Financial Fraud. *Education*: Columbia Law School (J.D., 2012); Northwestern University (M.A., 2009); Vanderbilt University (B.A., *summa cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/john-t-nicolaou/

**LEAH NUTTING**, Staff Attorney. *Office*: San Francisco. *Education*: Harvard Law School (J.D., 2002); University of California, Berkeley (B.A., Highest Distinction in General Scholarship, Highest Honors in Anthropology, Regents Scholar, 1999).
Full online bio: https://lieffcabraser.com/attorneys/leah-nutting/

**MARISSA OH**, Staff Attorney. *Office*: San Francisco. *Education*: Stanford Law School (J.D., 2004); Rice University (B.A., 1999).
Full online bio: https://lieffcabraser.com/attorneys/marissa-oh/

**GABRIEL PANEK**, Associate. *Office*: New York. *Practice Areas*: Consumer Protection, Civil/Human Rights and Social Justice, Defective Products, Securities Fraud and Financial Fraud, Survivor Rights and Advocacy. *Education*: New York University School of Law (J.D., *cum laude*, 2017); University of Chicago (A.B., with honors, 2013).
Full online bio: https://lieffcabraser.com/attorneys/gabriel-panek/

**JAE PARK**, Staff Attorney. *Office*: San Francisco. *Education*: University of Pennsylvania Law School (J.D., 2005); University of Texas at Austin (B.S., 1999).
Full online bio: https://lieffcabraser.com/attorneys/jae-park/

**SEAN A. PETTERSON**, Partner. *Office*: New York. *Education*: New York University School of Law (J.D., 2015); Brandeis University (B.A., *summa cum laude*, 2011).
Full online bio: https://lieffcabraser.com/attorneys/sean-a-petterson/

**LINNEA PITTMAN**, Associate, *Office:* New York. *Education:* New York University School of Law (J.D., 2020); Georgetown University (B.A, 2014).
Full online bio: https://lieffcabraser.com/attorneys/linnea-pittman/

**KATHERINE VON KASESBERG POST**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Francisco School of Law (J.D., 1983), LLM in Taxation (2017); Mills College (B.A., 1980).
Full online bio: https://lieffcabraser.com/attorneys/katherine-post/

**CHRISTINA QUEISSER**, Associate. *Office*: Munich. *Practice Areas*: Antitrust, Consumer Protection, Defective Products, Mass Tort/Personal Injury. *Education*: Second German State Exam, Stuttgart, Germany (2016); First German State Exam, Heidelberg (2008).
Full online bio: https://www.lieffcabraser.com/attorneys/christina-queisser/

**PETER ROOS**, Staff Attorney. *Office*: San Francisco. *Education*: Rijksuniversiteit Limburg Faculteit der Rechtsgeleerdheid (J.D., 1989); Maastricht Conservatory of Music (B.A., 1988); University of San Francisco (LL.M., 2001).
Full online bio: https://lieffcabraser.com/attorneys/peter-roos/

**JULES ROSS**, Associate. *Office:* San Francisco. *Education*: Stanford Law School (J.D., 2022); Carnegie Mellon University (B.S., 2019).
Full online bio: https://www.lieffcabraser.com/attorneys/jules-ross/

**DAVID RUDOLPH**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Cybersecurity and Data Privacy. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D. 2004); Rutgers University (Ph.D. Program, 1999-2001); University of California, Berkeley (B.A. 1998).
Full online bio: https://lieffcabraser.com/attorneys/david-rudolph/

**PATRICK RYAN**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University School of Law (J.D., 2010); Bard College (B.A.).
Full online bio: https://lieffcabraser.com/attorneys/patrick-ryan/

**CAMERON SAUNDERS**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University, School of Law (J.D.); California Polytechnic State University – San Luis Obispo (B.A.).
Full online bio: https://lieffcabraser.com/attorneys/cameron-saunders/

**JONATHAN D. SELBIN**, Partner. *Office*: New York. *Practice Areas*: Consumer Protection, Defective Products, Survivor Rights and Advocacy. *Education*:  Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989).
Full online bio: https://lieffcabraser.com/attorneys/jonathan-d-selbin/

**DANIEL E. SELTZ**, Partner. *Office*: New York. *Practice Areas*: Antitrust, Consumer Protection, Survivor Rights and Advocacy. *Education*: New York University School of Law (J.D., 2003); Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, 1997).
Full online bio: https://lieffcabraser.com/attorneys/daniel-e-seltz/

**ANNE B. SHAVER**, Partner. *Office*: San Francisco. *Practice Areas*: Antitrust, Employment Discrimination and Unfair Employment Practices. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2007); University of California, Santa Cruz (B.A., *cum laude*, 2003).
Full online bio: https://lieffcabraser.com/attorneys/anne-b-shaver/

**MIKE SHEEN**, Partner. *Office*: San Francisco. *Practice Areas*: Cybersecurity and Data Privacy, Securities Fraud and Financial Fraud. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2012); University of California, Berkeley (B.A., 2004).
Full online bio: https://lieffcabraser.com/attorneys/mike-sheen/

**JERRY SHINDELBOWER**, Staff Attorney. *Office*: San Francisco. *Education*: Golden Gate University School of Law (J.D., 2011); University of California, Davis (B.A., 2006).
Full online bio: https://lieffcabraser.com/attorneys/jerry-shindelbower/

**MICHAEL W. SOBOL**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Cybersecurity and Data Privacy, Defective Products. *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983).
Full online bio: https://lieffcabraser.com/attorneys/michael-w-sobol/

**DAVID S. STELLINGS**, Partner. *Practice Areas*: Consumer Protection, Securities Fraud and Financial Fraud. *Education*: New York University School of Law (J.D., 1993); Cornell University (B.A., *cum laude*, 1990).
Full online bio: https://lieffcabraser.com/attorneys/david-s-stellings/

**REILLY STOLER**, Partner. *Office*: San Francisco. *Practice Areas*: Personal Injury and Products Liability. *Education*: University of California, Hastings College of the Law (J.D., *cum laude*, 2014); Brandeis University (B.A., *cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/reilly-stoler/

**RYAN STURTEVANT**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2005); University of California at Santa Barbara (M.A., 2003); University of California at Santa Barbara (B.A., 2001).
Full online bio: https://lieffcabraser.com/attorneys/ryan-sturtevant/

**YUN SWENSON**, Staff Attorney. *Office*: San Francisco. *Education*: Cornell Law School (J.D., 2003); University of California, Berkeley (B.A., 1998).
Full online bio: https://lieffcabraser.com/attorneys/yun-swenson/

**DR. MARTHA SZABÓ-ANNIGHÖFER**, Associate. *Office*: Munich. *Practice Area*: Antitrust. *Education*: Second German State Exam, Göttingen, Germany (2020); Georg-August-University, Göttingen, Germany, Dissertation (2019); First German State Exam, Göttingen, Germany (2014).
Full online bio: https://lieffcabraser.com/attorneys/martha-szabo-annighofer/

**BENJAMIN A. TROUVAIS**, Associate. *Office*: San Francisco. *Education*: University of California, Berkeley School of Law (J.D., 2023); University of Illinois at Urbana-Champaign, College of Liberal Arts and Sciences (B.A., magna cum laude, 2020).
Full online bio: https://www.lieffcabraser.com/attorneys/benjamin-a-trouvais/

**OLIVIA VETESI**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2010); University of California, Berkeley (B.A., 2003).
Full online bio: https://lieffcabraser.com/attorneys/olivia-vetesi/

**FABRICE N. VINCENT**, Partner. *Office*: San Francisco. *Practice Areas* : Defective Products, Environmental and Toxic Exposures, False Claims Act, Personal Injury and Products Liability, Survivor Rights and Advocacy. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989).
Full online bio: https://lieffcabraser.com/attorneys/fabrice-n-vincent/

**ROSE WALLER**, Staff Attorney. *Office*: San Francisco. *Education*: University of California, Hastings College of the Law (J.D., 2001); University of California, Berkeley (B.A., 1996).
Full online bio: https://lieffcabraser.com/attorneys/rose-waller/

**ANNIE M. WANLESS**, Associate. *Office*: San Francisco. *Education*: Stanford Law School (J.D., 2021); University of Southern California (B.A., 2014).
Full online bio: https://www.lieffcabraser.com/attorneys/annie-m-wanless/

**DANIEL WASSON**, Associate. *Office*: San Francisco. *Education*: University of California, Berkeley, School of Law (Berkeley Law) (J.D., 2002); University of California, Los Angeles (B.A., 1998).
Full online bio: https://lieffcabraser.com/attorneys/daniel-wasson/

**GAIL WILLIAMS**, Staff Attorney. *Office*: San Francisco. *Education*: Boston College Law School (J.D., 2010); Yale University (B.A., 2007).
Full online bio: https://lieffcabraser.com/attorneys/gail-williams/

**AYA MACHIDA WINSTON**, Staff Attorney. *Office*: San Francisco. *Education*: University of California at Los Angeles School of Law (J.D., 2010); University of California at Los Angeles (B.A., 2006).
Full online bio: https://lieffcabraser.com/attorneys/aya-machida-winston/

**CAITLIN WOODS**, Associate. *Office*: San Francisco. *Practice Areas*: Antitrust, Civil/Human Rights and Social Justice, Employment Discrimination and Unfair Employment Practices, Personal Injury and Products Liability. *Education*: University of California, Berkeley School of Law (J.D., High Distinction in General Scholarship, 2020); University of California, Berkeley (B.A., High Honors in General Distinction, 2015); University of California, Santa Barbara (2013).
Full online bio: https://lieffcabraser.com/attorneys/caitlin-woods/

**SARAH D. ZANDI**, Associate. *Office*: San Francisco. *Practice Areas*: Antitrust, False Claims Act, Personal Injury and Products Liability. *Education*: Stanford Law School (J.D., June 2021); University of Pennsylvania (B.A., *summa cum laude*, 2017).
Full online bio: https://lieffcabraser.com/attorneys/sarah-d-zandi/

**JONATHAN ZAUL**, Staff Attorney. *Office*: San Francisco. *Education*: University of San Francisco School of Law (J.D., 2009); University of Hong Kong, Faculty of Law – Santa Clara University International Law Program, Hong Kong; University of California, Berkeley (B.A., 2004).
Full online bio: https://lieffcabraser.com/attorneys/jonathan-zaul/

**TISEME ZEGEYE**, Partner. *Office*: San Francisco. *Practice Areas*: Consumer Protection, Employment Discrimination and Unfair Employment Practices. *Education*: New York University School of Law (J.D. 2011); The College of William and Mary (B.A., *cum laude*, 2008).
Full online bio: https://lieffcabraser.com/attorneys/tiseme-zegeye/

# LIEFF CABRASER IN THE COMMUNITY

Lieff Cabraser proudly supports the goals of civil rights, human rights, increased access to legal services, and initiatives by the legal community to improve civil justice.

Lieff Cabraser has sponsored the Bay Area Minority Law Student Scholarship Program conducted by the Bar Association of San Francisco (BASF). We also support the National Association for Public Interest Law fellowship program. Fellowships made possible by Lieff Cabraser's sponsorship have included work at the East Bay Community Law Center in Oakland, California, the Employment Law Center in San Francisco, California, and the NOW Legal Defense in New York, New York.

**HOW TO BE A GOOD ALLY: A STRATEGIC ENGAGEMENT CONFERENCE**

In late 2016 San Francisco office managing partner Kelly Dermody conceived and coordinated the enormously successful SF Bay Area "How to be a Good Ally" Strategic Engagement Conference, attended by 1,200 lawyers. Held at the Bill Graham Civic Auditorium in January 2017, the symposium united scores of California and national non-profit organizations with the legal community in an effort to assist communities in need, including in the areas of hate crimes and Anti-Semitism, government targeting of Muslims, attacks on immigrants and the undocumented, domestic violence and sexual assault, healthcare for people with disabilities and medical vulnerabilities, backlash against the LGBT community, criminalization of communities of color, reproductive rights, worker justice, and saving the environment.

## Lieff Cabraser's Additional Community Sponsorships

For over 20 years, Lieff Cabraser has sponsored the radio series "Perspectives," airing on the public broadcasting station KQED-FM in the San Francisco Bay Area. The series offers listeners social and political opinion on a broad spectrum of contemporary issues. We remain committed to sponsoring public radio.

In 2007, Lieff Cabraser attorneys assisted in the launching of the Carver HEARTS Project. The project is a partnership among interested community members, George Washington Carver Elementary School in San Francisco, and UCSF's Department of Infant, Child and Adolescent Psychiatry. The project provides a therapist skilled in treating trauma and post-traumatic stress disorder (PTSD) on-site at Carver Elementary School.

In addition to the above-listed organizations, Lieff Cabraser supports the following:

AIDS Legal Referral Panel
American Constitution Society
American Association for Justice
Anti-Defamation Leage
Asian Law Caucus
Bay Area Lawyers for Individual Freedom
Consumer Attorneys of California

East Bay Community Law Center
Equal Rights Advocates
Family Violence Appellate Project
Health Law Advocates
The Impact Fund
Lawyers' Committee for Civil Rights of the San Francisco Bay Area
La Raza Centro Legal
Law Center to Prevent Gun Violence
Legal Aid Society of San Francisco – Employment Law Center
National Center for Lesbian Rights
National Employment Lawyers Association
New York State Trial Lawyers Association
Pride Law Fund
Public Justice
SeniorLiving.org – Preventing Elder Abuse
United Policyholders
Volunteer Legal Services Program
Workplace Fairness

We have been honored to receive the 2005 AIDS Legal Referral Panel "Firm of the Year" award and the 1998 Navigator of Civil Rights Award presented by the NAACP Legal Defense and Educational Fund.

# Firm Acknowledgments

## Lawdragon

Lawdragon 500 Leading Litigators: 22
Lawdragon Leading Plaintiff Financial Lawyers: 24
Lawdragon Leading Plaintiff Consumer Lawyers: 28
Global Plaintiff Lawyers: 14
Leading Plaintiff Employment & Civil Rights Lawyers: 10
Lawdragon 500X, The Next Generation: 13
Lawdragon 500 Leading Lawyers: 9 (7+2)

## National Law Journal

Elite Trial Lawyers 2024: Employee Rights and Anti-Discrimination
50 Leading Plaintiffs Firms in America
Plaintiffs' Hot List Hall of Fame

## New York Law Journal

Class Action Litigation Department of the Year

## The Daily Journal

California Lawyers of the Year: Juul Team (2023, 2024)
Leading Commercial Litigators (2)
Top Women Lawyers in California
Top Plaintiffs Lawyers in California
Top 40 Under 40 in California
Top 100 Lawyers in California
Top Labor & Employment Lawyers
Law360 Product Liability Practice Group of the Year
Product Liability Rising Stars
Titans of the Plaintiffs Bar

## Nashville Post

In Charge Legal

## Juve

20 Leading Lawyers in Cartel Damages Litigation in Germany

## Chambers

Tier 1 for Plaintiffs' Litigation
Tier 1 for Products Liability
Tier 1 for General Litigation
Tier 1 for Labor & Employment / Plaintiffs

## Benchmark

Labor & Employment Litigator of the Year
Tier 1 for Labor & Employment Litigation
Top 20 Firms for Litigation
Top Plaintiffs Firms

## Best Lawyers

38 Outstanding Attorney Leaders
Top Tier Listing for Product Liability Law
Ones to Watch (9 lawyers)