# EXHIBIT 13

EXHIBIT
PLTF EX 64
Lauricella
06.05.2024

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
*Edition Date:*    *4/4/2011*

Company Name    Ulico Standard of America
Line of Insurance    SURETY

# PRIOR APPROVAL RATE APPLICATION

**Completed by:** Francis E. Lauricella    **Date:**  7/18/2011

Your File #: _____
( 15 Characters Maximum )

☐ SERFF   ☐ CD (plus 1 paper copy)   ☑ Paper (1 original plus 1 copy)

Does this filing include a variance request?    No ▼

Is this a variance request submitted after the prior approval application to
which it applies?    No ▼

If yes, provide the applicable CDI File Number: _____

Does this file contain group data?    No ▼

Note: Complete page 2 if this is a group filing

Is this a specialty filing?    No ▼

Latest applicable CDI file number in this line, subline and/or program:
_____

Company Name    Ulico Standard of America Casualty Company

NAIC Company Code    10004

Group Name    Pending

NAIC Group Code    Pending

Organized under the Laws of the State of    California

| DEPARTMENT USE ONLY |
| --- |
| Filing No.:   11-6920 |
| SERFF No.:   N/A |
| Date Filed:   7/29/11 |
| Compliance Date:   8/11/11 |
| Date Public Notified:   AUG 1 9 2011 |
| Deemer Date:   OCT 1 8 2011 |
| Intake Analyst:   ZAMUDIOM |
| Bureau & Senior:   LA3-TU-J. |
| Group Filing:   Yes ☐   No ☑ |
| X-Reference No.: _____ |
| ☐ Rate   ☑ New Program   ☐ Rule |
| ☐ Form   ☐ Variance   ☐ % Change |

Line Type   COMMERCIA ▼                Line of Insurance:   SURETY   ▼ _____

Subline  None                          Program   not

Home Office   1959 Palomar Oaks Way, Suite 200, Carlsbad, CA  92011

Name and Title of Contact Person        Francis E. Lauricella, Jr.

Toll Free Phone No.: 415 931-9447              Fax No.: 415 358-5874

Email Address    hlauricella@fl-advisors.com

Mailing Address   475 Gate 5 Road, Suite 320, Sausalito, CA  94965

*RATE FILING BUREAU—SF
JUL 29 2011
STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE*

I declare under penalty of perjury under the laws of the State of California, that the information filed is true, complete, and correct

| Authorized Signature | Date of Filing | Telephone Number |
| --- | --- | --- |
| *Francis E Lauricella* | July 18, 2011 | 415 931-9447 |

**Important note:** Refer to CDI website at http://www.insurance.ca.gov/0250-insurers/0800-rate-filings/for the most current
rate template and prior approval factors.

Prior Approval Rate Application
(General Information)                                                              Page 1

STATE OF CALIFORNIA                                                    DAVE JONES, *Insurance Commissioner*

## DEPARTMENT OF INSURANCE
**Legal Division, Corporate Affairs Bureau**
45 Fremont Street, 24th Floor
San Francisco, CA 94105

Rafael H Gutierrez
Senior Staff Counsel
TEL 415-538-4402
E-Mail Rafael.Gutierrez@insurance.ca.gov
www.insurance.ca.gov

May 17, 2011

Robert J. Cerny, Esq.
BARGER & WOLEN LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071

SUBJECT:    Ulico Standard of America Casualty Company (a California Corporation)
- Form A Filing Pursuant to California Insurance Code Section 1215.2,
Regarding the Acquisition of Control of Ulico Standard of America
Casualty Company, by Seaview Surety Holding, LLC (a California LLC)
- IDB # 11-2649; File #APP-2011-00470

Dear Mr. Cerny:

By letter dated March 14, 2011, Seaview Surety Holding, Inc. (hereinafter "Seaview"), filed the
above subject application, accepted for filing on March 16, 2011, by the California Department
of Insurance. Seaview is asking for consent, pursuant to California Insurance Code Section
1215.2, to acquire the issued and outstanding shares of Ulico Standard of America Casualty
Company (hereinafter "Ulico"), from Ullico Inc. (hereinafter "Seller"). Seaview will acquire all
of the 1,000 issued and outstanding shares of common stock, of Ulico, with a par value of
$3,000.00 per share, for approximately $5,800,000.00, in cash (US Currency). The effective
date of the acquisition will be prior to June 30, 2011.

Based upon the information provided in support of this application, the acquisition of control of
Ulico, by Seaview, as described in this application, is hereby approved. This approval is hereby
granted pursuant to the authority of California Insurance Code Section 1215.2 only, and does not
constitute, signify or imply review or approval under any other California Insurance Code section
or any other California Law. Please provide the Department of Insurance, a letter confirming the
sale and transfer of Ulico shares from Seller to Seaview, within 30 days of the completion of the
transaction.

Very truly yours,

Rafael H. Gutierrez
Senior Staff Counsel

#685287v1          Consumer Hotline (800) 927-HELP • Producer Licensing (800) 967-9331

Robert J. Cerny, Esq.
May 17, 2011
Page 2


cc:     Louis Quan, FAD-LA
        Ann Tang, FAD-LA
        Himelda Briones, FAD-LA
        Lucia Feng, FAD-LA

                    Protecting California Consumers

## *Ulico Standard of America Casualty Company*

July 18, 2011

The Honorable Dave Jones
Commissioner of Insurance
California State Department of Insurance
45 Fremont Street
San Francisco, CA  94105

Attn:    Filings Intake

Re:    Ulico Standard of America Casualty Company NAIC: 10004
         Surety – Bail Bond Rate & Rule
         Prior Approval Submission
         Company Filing Number:

Ulico Standard of America Casualty Company herein submits for review and approval bail bond rates for inclusion with our currently approved surety underwriting plan.

These rates are an adoption of current bail bond rates approved for use by Danielson National Insurance Company, filing CDI 08-1743.

Bail bond rates are submitted for your review as a manual exception page.  The manual page, an explanatory memorandum, and verification of the previously approved filing are included for your review.

Enclosed are two copies of this submission and an acknowledgement copy cover.  Please contact me directly by phone or email if you require further information or if you have any questions. Your assistance with this submission is greatly appreciated

Sincerely,

Francis E. Lauricella, Jr.
Chief Financial Officer and Secretary
Ulico Standard of America Casualty Company
415 332-4700 Office
415 358-5874 Fax
415 730-8945 Cell

RATE FILING BUREAU—SF

JUL 2 0 2011

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE

# *Ulico Standard of America Casualty Company*

Explanatory Memorandum

We are submitting as an adoption bail bond rates identical to those approved for use by Danielson National Insurance Company. Two classes of rates are proposed a standard rate for all bail bonds, except those classed as qualified, and a rate for bail bonds classed as qualified.

Standard rate is 10% of the bond amount. Qualified rate is 8% of the bond amount. All bail bonds are subject to a minimum premium.

Qualified classification applies to principals with a decreased risk of flight. These principals, as defined in the applicable rule are: individuals who have retained counsel, individuals who are members of a labor union, and individuals who are active duty members or veterans of the U.S. Armed Services and their immediate family.

The standard rate is based on Surety Association of America (SAA) pricing. SAA pricing up to the time they ceased promulgating rates was based on 2% of liability plus 8% service fee. Upon change by insurance departments to an expanded definition of premium for premium tax purposes to include any and all fees, the pricing was simplified to 10% of liability as preferred by insurance departments. The Danielson National Insurance Company rate adopts the standard 10% of liability rate. We adopt the Danielson National Insurance Company standard rate. The qualified rate of 8% approved for Danielson National Insurance Company was based on 2004 accident year experience indicating a lower flight risk for those individuals represented by counsel, having union membership and/or having armed forces association. We adopt the approved qualified rate with the same assumptions.

Our proposed minimum premium is also an adoption of the minimum approved for Danielson National Insurance Company. The minimum is based upon expense experience as garnered by AM Best Aggregates and Averages and managing general agency fixed expenses as used by Danielson National Insurance Company in their approved filing.

Approval for use of these bail bond rates for Ulico Standard of America Casualty Company will provide increased capacity and alternative service to agents and brokers for this necessary service.

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
**Edition Date:        4/4/2011**

Company Name: Jlico Standard of America Casualty Company
Line of Insurance:           SURETY

## PROPERTY AND LIABILITY FILING SUBMISSION DATA SHEET

The purpose of this filing is as follows   (More than one may be marked )

TYPE OF FILING

PRIOR APPROVAL RATE APPLICATION
PAGES and EXHIBITS REQUIRED

| | |
|---|---|
| ☑ New Program ( Including adoption of advisory organization loss costs, forms and rules.) | Pages 1 through 7, 10, 12, 13 & 14, plus exhibit 17 |
| ☐ Rates ( Including adoption of advisory organization loss costs. ) | |
| ☐ Increase rates | Pages 1 through 10, 13 & 14, plus exhibits |
| ☐ Decrease rate | Pages 1 through 10, 13 & 14, plus exhibits |
| ☐ Zero Overall rate impact | Pages 1 through 10, 13 & 14, plus exhibits |
| ☐ Variance | |
| ☐ Filed together with the prior approval application to which it applies | Page 11 and exhibit 13 |
| ☐ Filed after the prior approval application to which it applies. | Pages 1 through 6, 11, plus exhibit 13 |
| ☐ Coverage Forms ( Including adoption of advisory organization forms. ) | |
| ☐ With rate impact | Pages 1 through 10, 12a, 13 & 14 plus exhibits |
| ☐ Without rate impact | Pages 1 through 5, 12a |
| ☐ Rules ( Including adoption of advisory organization rules ) | |
| ☐ With rate impact | Pages 1 through 10, 12b, 13 & 14 plus exhibits |
| ☐ Without rate impact | Pages 1 through 5, 12b, Exhibit 20 |

*All Private Passenger Automobile class plans must be filed separately from the Prior Approval Rate Applications.*

**STATE OF CALIFORNIA**                          **Company Name: Ulico Standard of America Casualty Co**
**DEPARTMENT OF INSURANCE (CDI)**                **Line of Insurance: SURETY**
*Edition Date:*                *4/4/2011*

## PROPERTY AND LIABILITY FILING SUBMISSION DATA SHEET (Continued)

Proposed Earned Premium Per Exposure        8-10% of bond

Proposed Overall Rate Change                na

| | COVERAGE* | INDICATED CHANGE (%) | PROPOSED CHANGE (%) | ADJUSTED EARNED PREMIUM* | PROJECTED EARNED PREMIUM |
|---|---|---|---|---|---|
| 1 | | | | | 2,867,000 |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| | **TOTAL:** | | | | |

Total earned premium must include all income derived from miscellaneous fees and other charges

* Commercial Auto Liability and Physical damage must be combined in one application, with separate rate templates for liability and physical damage
* Adjusted earned premium is the historical earned premium for the most recent year adjusted to the current rate level and trended to the average date of loss of the proposed rating period

Prior Approval Rate Application                          Page 4
(Filing Data Continued)

**STATE OF CALIFORNIA**
**DEPARTMENT OF INSURANCE (CDI)**
*Edition Date:        4/4/2011*

**Company Name: Ulico Standard of America Casualty Company**
**Line of Insurance: SURETY**

## FILING CHECKLIST
### Use this checklist to assemble a complete application

- ☑ Prior Approval Rate Application, Page 1

- ☑ Group Filing, Page 2

- ☑ Property and Liability Filing Submission
  Data Sheet, Page 3

- ☑ Property and Liability Filing Submission
  Data Sheet, Page 4

- ☑ Filing Checklist, Page 5

- ☑ Supporting Data Exhibits, Page 6

- ☑ Ratemaking Data and Template (s), Page 7

- ☐ Reconciliation of Direct Earned Premium, Page 8

- ☐ Additional Data Required by Statute, Page 9

- ☑ Miscellaneous Fees and Other Charges, Page 10

- ☐ Variance Request, Page 11

- ☑ Forms and Rules, Page 12

- ☑ Excluded Expenses, Page 13

- ☑ Projected Yield and Federal Income Tax Rate on Investment Income, Page 14

- ☑ Filing Memorandum

### See the prior approval rate filing instructions regarding the following attachments.

- ☑ Printed Rate and Rule Manual Pages

- ☑ Underwriting Rules

- ☐ Forms (Attach all independent forms and list all advisory organization forms )

- ☐ Copies of Reinsurance Agreements
  ( Applies only to Medical Malpractice with facultative reinsurance attachment points above one million dollars and
  Earthquake, where the cost of reinsurance is included in the rate development )

**STATE OF CALIFORNIA**                                    **Company Name:**                        **0**
**DEPARTMENT OF INSURANCE (CDI)**                **Line of Insurance: AIRCRAFT**
*Edition Date:*                        *4/4/2011*

### SUPPORTING DATA EXHIBITS
#### Use this document to assemble a complete application

☐    Exhibit  1:            Filing History

☐    Exhibit  2:            Rate Level History

☐    Exhibit  3:            Policy Term Distribution

☐    Exhibit  4:            Premium Adjustment Factor

☐    Exhibit  5:            Premium Trend Factor

☐    Exhibit  6:            Miscellaneous Fees and
                            Other Charges

☐    Exhibit  7:            Loss and Defense & Cost Containment Expense
                            ( DCCE ) Development Factors

☐    Exhibit  8:            Loss and DCCE Trend

☐    Exhibit  9:            Catastrophe Adjustment

☐    Exhibit  10:           Credibility Adjustment

☐    Exhibit  11:           Ancillary Income

☐    Exhibit  12:           Reinsurance Premium and Recoverables

☐    Exhibit  13:           Variance

☐    Exhibit  14:           Insurer's Ratemaking Calculations

☐    Exhibit  15:           Rate Distribution

☐    Exhibit  16:           Rate Classification Relativities

☑    Exhibit  17:           New Program

☐    Exhibit  18:           Group Filing

☐    Exhibit  19:           Super Group Corporate Structure Verification (PPA only)

☐    Exhibit 20:            Rules

☑    Exhibit 21:

Prior Approval Rate Application
(Supporting Data Exhibits)                                            Page 6

## RATEMAKING DATA

(Click + to expand for more than 3 years; - to contract)

| | | | | |
|---|---|---|---|---|
| **Completed by** | Francis E. Lauricella, Jr. | | | |
| **Date Completed** | 7/18/2011 | | | |
| **Company/Group** | Ulico Standard of America Casualty Co | | | |
| **Line Description** | SURETY | | ▼ | |
| *Coverage* | | Bail Bonds | | |
| | %Captive | %Direct | %Independent | (Must add up to 100%) |
| **Marketing System:** | | | 100.00% | |
| **Prior Effective Date (current rates)** | | | | |
| **Proposed Effective Date (new rates)** | | | | |
| **CDI File Number** (Department use only) | 0 | | | |

Does the data provided below reflect a Request for Variance?  No ▼     Variance #:

**Data below is:** Accident Year Data     ▼

| | 2nd Prior Year | 1st Prior Year | Most Recent Year | Projected*/ New Program** |
|---|---|---|---|---|
| 1 California Direct Written Premium | | | | 3,826,000 |
| 2 California Direct Earned Premium | | | | 2,867,000 |
| 3 Premium Adjustment Factor (Developed in Exhibit 4) | | | | |
| 4 Premium Trend Factor * (Developed in Exhibit 5) | | | | |
| 5 Miscellaneous Fees and Flat Charges (Not included in Line 2; Developed in Exhibit 6) | | | | - |
| 6 Earned Exposure Units | | | | 42,111 |
| 7 Historic Losses (Projected for New Programs) | | | | 115,641 |
| 8 Historic Defense and Cost Containment Expense (DCCE) | | | | 42,059 |
| 9 Loss Development Factor (Developed in Exhibit 7) | | | | |
| 10 DCCE Development Factor (Developed in Exhibit 7) | | | | |
| 11 Loss Trend Factor* (Developed in Exhibit 8) | | | | |
| 12 DCCE Trend Factor* (Developed in Exhibit 8) | | | | |
| 13 Catastrophe Adjustment Factor (Developed in Exh 9) | | | | |
| 14 Credibility Factor for Losses & DCCE (Developed in Exhibit 10) | | | | |
| 15 Excluded Expense Factor (From Page 13) | | | | 0.00% |
| 16 Ancillary Income (Developed in Exhibit 11) | | | | - |
| 17 Projected Federal Income Tax Rate on Investment Income (From Page 14) | | | | 35.00% |
| 18 Projected Yield (From Page 14) | | | | 0.11% |
| *Complete 19, 20 & 21 For Earthquake and certain Medical Malpractice with Reinsurance Only (see instructions)* | | | | |
| 19 Direct Commissions | | | | |
| 20 Reinsurance Premium (Developed in Exhibit 12) | | | | |
| 21 Reinsurance Recoverables (Developed in Exhibit 12) | | | | |
| | | | | |
| Variance Change to Leverage on the basis that the insurer either writes at least 90% of its direct earned premium in one line or writes at least 90% of its direct earned premium in California. (Must be accompanied by Variance Request, subject to CDI approval) | | | | No ▼ |
| Variance Change to Efficiency Standard (Must be accompanied by Variance Request, subject to CDI approval) | | | | |
| | | | | |
| * For all trend factors, the Projected Column should reflect the annual trend expressed as a percentage. | | | | |
| ** For New Programs, please see Rate Filing Instructions, Page 4. | | | | |

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE (CDI)
**Edition Date:**          *4/4/2011*

**Company Name: Ulico Standard of America Casualty**
**Line of Insurance: SURETY**

## MISCELLANEOUS FEES AND OTHER CHARGES

Do any fees or installment finance charges apply to this program?     **No**  ▼
If yes, identify the fee and the amount charged for each type of fee and for each transaction

|  | INDIVIDUAL POLICY CHARGES | |
|---|---|---|
|  | New Business | Renewals |
| ☐ Policy fee | _____ | _____ |
| ☐ Installment fee | _____ | _____ |
| ☐ Installment finance charges ( ancillary income ) | _____ APR | _____ |
| ☐ Endorsement fee | _____ | _____ |
| ☐ Inspection fee | _____ | _____ |
| ☐ Cancellation fee | _____ | _____ |
| ☐ Reinstatement fee | _____ | _____ |
| ☐ Late fee | _____ | _____ |
| ☐ SR 22 | _____ | _____ |
| ☐ Non-sufficient funds ( NSF ) fee ( ancillary income ) | _____ | _____ |
| ☐ Membership dues ( ancillary income ) | _____ | _____ |
| ☐ Other, specify: | _____ | _____ |

Except for installment finance charges, NSF fees, and membership dues, data relating to fees must be included in the ratemaking data, Page 7, Line 2 ( direct earned premium) or Line 5 ( miscellaneous fees ) and Exhibit 6, miscellaneous fees, must be completed  Refer to the instructions for additional information.

Prior Approval Rate Application
(Miscellaneous Fees)

Page 10

| STATE OF CALIFORNIA | | | | | | | | Company Name: | Ulico Standard of America | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DEPARTMENT OF INSURANCE (CDI) | | | | | | | | Line of Insurance: | SURETY | | |
| **Edition Date:** | | | | **4/4/2011** | | | | | | | |

# FORMS

*Insurers who wish to use a new or replacement form in connection with a new or existing program <u>must</u> furnish the following information and documentation for our review. Revisions <u>must be highlighted</u> and the corresponding manual pages must be provided.*

| | FORM NO. | TITLE | TYPE | SOURCE | SOURCE FORM NO * | CATEGORY | Restricts Coverage [ Yes/ No ] | Broadens Coverage [ Yes/ No ] | Rate Impact [ Yes / No ] | % Change | Flat Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1] New: | BB AP | Application | 1 | 4 | LIN 10 | 1 | n | n | n | na | n |
| Old: | | | | | | | | | | | |
| 2] New: | BB 01 | Bail Bond | 3 | 4 | na | 1 | y | y | y | na | n |
| Old: | | | | | | | | | | | |
| 3] New: | BB A 01 | Appeal Bond | 3 | 4 | LIN 53 | 1 | y | y | y | na | n |
| Old: | | | | | | | | | | | |
| 4] New: | BB LD | Disclosure | 2 | 4 | LIN DS 4 | 1 | n | n | n | na | n |
| Old: | | | | | | | | | | | |
| 5] New: | | | | | | | | | | | |
| Old: | | | | | | | | | | | |

## REQUIRED RESPONSES FOR THE ITEMS ABOVE

TYPE:

1) Application
2) Endorsement
3) Policy
4) Other ( Please define )

SOURCE

1) ISO*
2) Other Advisory Organization*
3) Company
4) Other (describe)

CATEGORY

1) New, mandatory
2) New, optional
3) Replacement, mandatory
4) Replacement, optional
5) Withdrawn, mandatory
6) Withdrawn, optional

*\* Provide California Dept. of Insurance number ( CDI# ) under the column identified as Source Form No.*

<u>Additional Information and Documents Required</u>

Describe the purpose of the form or form change

For **NEW FORMS**, furnish a copy of the form to be filed, <u>unless</u> identical to an advisory organization form. If the form is a new endorsement to the policy, describe any changes in coverage under the policy. Describe what adjustments, if any, will be made to the premium due to the introduction of the forms.

For **REVISED FORMS**, describe any changes in coverages between the proposed form and the current form. Reference pertinent sections of each form affected. Brackets [ ] should be used to identify any deletions on the current form and underline all changes in the revised form. Describe what adjustments, if any, will be made to the premium due to the revisions.

Francis E. Lauricella, Jr.
Chief Financial Officer
Ulico Standard of America Casualty Company
1959 Palomar Oaks Way, Suite 200
Carlsbad, CA  92011

August 9, 2011

RATE FILING BUREAU—SF

AUG 1 0 2011

STATE OF CALIFORNIA
DEPARTMENT OF INSURANCE

Martha Zamudio
Insurance Rate Analyst - Intake
California Department of Insurance
Rate Filing Bureau
45 Fremont Street, 23rd Floor
San Francisco, CA  94105

Dear Ms. Zamudio:

I am writing to respond to your email of August 1 regarding the prior approval rate application
that I submitted on July 16 on behalf of Ulico Standard of America Casualty Company ("Ulico
Standard"). First, as I explained in our recent phone conversation, I did not indicate executive
compensation for Ulico Standard for 2008, 2009, and 2010 because Seaview Surety Holding,
LLC, only acquired Ulico Standard on June 30, 2011, following Form A approval by the
California Department of Insurance on May 17, 2011 (File # App-2001-00470). (A copy of the
Form A approval letter is attached.) Pro forma annual salaries for Ulico Standard's three highest
paid executives going forward are as follows:

| Executive | Cash & Salary | Bonus |
|---|---|---|
| Francis E. Lauricella, Jr. | $150,000 | $0.0 |
| Patrick J. Kilkenny | $120,000 | $0.0 |
| Allison M. Sterett | $90,000 | $0.0 |

Second, Exhibit 17 is attached.

Finally, Ulico Standard will adopt the forms approved for use by Danielson National Insurance
Company, filing CDI 08-1743. As per your request, I have had the Danielson National forms
reprinted under the name of Ulico Standard of America Casualty Company. I have attached these
forms, along with an index of the forms, for your review.

Please contact me if you have any questions or require any additional information for this filing.
Thank you.

Sincerely,

Francis E. Lauricella, Jr.
(415) 730-8945
hlauricella@fl-advisors.com

**STATE OF CALIFORNIA**
**DEPARTMENT OF INSURANCE (CDI)**
*Edition Date:        4/4/2011*

**Company Name:**
**Line of Insurance:**

Ulico Standard of America Ca:
SURETY

# EXCLUDED EXPENSE FACTOR

### *(Insurer Group Data)*

**Company Organization:**    Stock    ▼

| | (Enter Year) | 2nd Prior Year 2008 | 1st Prior Year 2009 | Most Recent Year 2010 |
|---|---|---|---|---|
| Countrywide direct earned premium: | | na | na | na |
| Countrywide direct earned premium for lines of business subject to Proposition 103 | | | | |

**2644.10 (b): Executive Compensation**

| | 2nd Prior Year 2008 | | 1st Prior Year 2009 | | Most Recent Year 2010 | |
|---|---|---|---|---|---|---|
| | Cash & Salary | Bonus | Cash & Salary | Bonus | Cash & Salary | Bonus |
| 1st Highest Paid | 0 | 0 | 0 | 0 | 0 | 0 |
| 2nd Highest Paid | 0 | 0 | 0 | 0 | 0 | 0 |
| 3rd Highest Paid | 0 | 0 | 0 | 0 | 0 | 0 |
| 4th Highest Paid | 0 | 0 | 0 | 0 | 0 | 0 |
| 5th Highest Paid | 0 | 0 | 0 | 0 | 0 | 0 |

| | 2nd Prior Year 2008 | | 1st Prior Year 2009 | | Most Recent Year 2010 | |
|---|---|---|---|---|---|---|
| | Max Permissible Exc Comp | Excessive Compensation | Max Permissible Exc Comp | Excessive Compensation | Max Permissible Exc Comp | Excessive Compensation |
| 1st Highest Paid | 174,311 | 0 | 174,311 | 0 | 174,311 | 0 |
| 2nd Highest Paid | 123,071 | 0 | 123,071 | 0 | 123,071 | 0 |
| 3rd Highest Paid | 92,906 | 0 | 92,906 | 0 | 92,906 | 0 |
| 4th Highest Paid | 87,048 | 0 | 87,048 | 0 | 87,048 | 0 |
| 5th Highest Paid | 81,141 | 0 | 81,141 | 0 | 81,141 | 0 |
| **Total Excessive Executive Comp:** | 0 | | 0 | | 0 | |

Prior Approval Rate Application
(Excluded Expense Factor)

P13a

**STATE OF CALIFORNIA**
**DEPARTMENT OF INSURANCE (CDI)**

**Company Name:**     Ulico Standard of America Cas
**Line of Insurance:**    SURETY

# Excluded Expense Factor

| Countrywide Data | 2nd Prior Year 2008 | 1st Prior Year 2009 | Most Recent Year 2010 |
|---|---|---|---|
| 2644 10 (a)  Political contribution and lobbying | 0 | 0 | 0 |
| 2644 10 (b)  Excessive Executive Compensation | 0 | 0 | 0 |
| 2644 10 (c)  Bad faith judgments and associated DCCE | | | |
| 2644 10 (d)  All costs for unsuccessful defense of discrimination claims | | | |
| 2644 10 (e)  Fines and penalties | | | |
| 2644 10 (f)  Institution advertising expenses | | | |
| 2644 10 (g)  Excessive payments to affiliates | | | |
| **Total excluded expenses** | 0 | 0 | 0 |
| **Excluded expense factor** | 0.00% | 0.00% | 0.00% |

**3-year average excluded expense factor**          0 00%

Prior Approval Rate Application
(Excluded Expense Factor)                                    P13b

**STATE OF CALIFORNIA**
**DEPARTMENT OF INSURANCE (CDI)**
*Edition Date:*                    *4/4/2011*

**Company Name:**  **Ulico Standard of America Casualty Company**
**Line of Insurance:**  **SURETY**

### PROJECTED YIELD AND FEDERAL INCOME TAX RATE ON INVESTMENT INCOME

| Line number | Short Term Assets One year or less | Intermediate Term Assets Over 1 yr through 5 yrs | Over 5 yrs through 10 yrs | Long Term Assets Over 10 yrs through 20 yrs | Over 20 yrs |
|---|---|---|---|---|---|
| 1.7 US governments | 6,267,064 | | 111,966 | | |
| 2.7 All other governments | | | | | |
| 3.7 States, territories and possessions | | | | | |
| 4.7 Political subdivisions | | | | | |
| 5.7 Special revenue and assessment obligations | | | | | |
| 6.7 Public utilities unaffiliated | | | | | |
| 7.7 Industrial and miscellaneous | | | | | |
| 8.7 Credit tenant loans | | | | | |
| 9.7 Parent, subsidiaries and affiliates | | | | | |

| | One year or less | Over 1 year through 10 years | Over 10 years |
|---|---|---|---|
| (1) US government bonds Sum of line 1.7 and 2.7 | 6,267,064 | 111,966 | 0 |
| (2) Other taxable bonds Sum of line 6.7, 7.7, 8.7, 9.7 and half of 5.7 | 0 | 0 | 0 |
| (3) Tax exempt bonds Sum of line 3.7, 4.7, and half of 5.7 | 0 | 0 | 0 |

Data on line 1.7 through 9.7 are from the insurer group's most recent consolidated statutory annual statement, schedule D, part 1A, section 1.

Page 14a

Prior Approval Rate Application
(Yield Tax Worksheet)

**PROJECTED YIELD AND FEDERAL INCOME TAX RATE ON INVESTMENT INCOME**

| | | Invested Assets [1] | Currently Available Yield * [2] | Return On Invested Assets [3]=[1]*[2] | Federal Income Tax Rate [4] | Federal Income Taxes [5]=[3]*[4] |
|---|---|---|---|---|---|---|
| (1) | US government bonds | | | | | |
| | (A) Short | 6,267,064 | 0.05% | 3,134 | 35.00% | 1,097 |
| | (B) Intermediate | 111,966 | 3.21% | 3,594 | 35.00% | 1,258 |
| | (C) Long | 0 | | 0 | 35.00% | 0 |
| (2) | Other taxable bonds | | | | | |
| | (A) Short | 0 | | 0 | 35.00% | 0 |
| | (B) Intermediate | 0 | | 0 | 35.00% | 0 |
| | (C) Long | 0 | | 0 | 35.00% | 0 |
| (3) | Tax exempt bonds | | | | | |
| | (A) Short | 0 | | 0 | 5.25% | 0 |
| | (B) Intermediate | 0 | | 0 | 5.25% | 0 |
| | (C) Long | 0 | | 0 | 5.25% | 0 |
| (4) | Common Stock | | | | | |
| | (A) Dividends | | | 0 | 14.18% | 0 |
| | (B) Capital gains | | | 0 | 34.10% | 0 |
| (5) | Preferred stock dividends | | | 0 | 14.18% | 0 |
| (6) | Mortgage loans | | | 0 | 35.00% | 0 |
| (7) | Real estate | | | 0 | 35.00% | 0 |
| (8) | Cash** | -2,605 | 0.05% | -1 | 35.00% | 0 |
| (9) | Other*** | | | | | |
| | (A) Dividends | | | 0 | 14.18% | 0 |
| | (B) Capital gains | | | 0 | 34.10% | 0 |
| (10) | Total Sum of line (1) thru (9) | 6,376,425 | | 6,726 | | 2,354 |

Data in column [1], line 4 through (9), are from the insurer group's most recent consolidated statutory annual statement page 2 - Assets.

* Currently available yields are defined in CCR §2644.20.  Latest values are posted at
http://www.insurance.ca.gov/0250-insurers/0800-rate-filings/0200-prior-approval-factors/

** Annual statement page 2, line 5, cash only.  Cash equivalents and short-term investments are included in Schedule D.

*** Annual statement page 2, line 6 through 9.

Page 14b

Prior Approval Rate Application
(Yield Tax Worksheet)

## PROJECTED YIELD AND FEDERAL INCOME TAX RATE ON INVESTMENT INCOME

| | | Invested Assets [1] | Currently Available Yield [2] | Return On Invested Assets [3]=[1]*[2] | Federal Income Tax Rate [4] | Federal Income Taxes [5]=[3]*[4] |
|---|---|---|---|---|---|---|
| (10) | Total line (10) exhibit 13, page 2 | 6,376,425 | | 6,726 | | 2,354 |
| (11) | Investment expense Annual Statement (AS) page 11, line 25 | | | | 35.00% | 0 |
| (12) | Total after investment expense line (10) - line (11) | 6,376,425 | | 6,726 | | 2,354 |
| (13) | Federal income tax rate line (12) column [5] / column [3] | | | | 35.00% | |
| (14) | Projected yield on invested assets line (12) column [3] / column [1] | | 0.11% | | | |

| | | Most Recent Year |
|---|---|---|
| (15) | Loss reserves AS page 3, line 1 | 0 |
| (16) | Loss adjustment expense reserves AS page 3, line 3 | 0 |
| (17) | Unearned premium reserves AS page 3, line 9 | 0 |
| (18) | Surplus as regards to policyholders AS page 3, line 35 | 6,273,990 |
| (19) | Total reserves and surplus Sum of line (15) to (18) | 6,273,990 |
| (20) | Projected yield adjusted to reserve and surplus base line (14) * line (12) / line (19) | 0.11% |

Page 14c

Prior Approval Rate Application
(Yield Tax Worksheet)

| RATE TEMPLATE | | Edition Date: | *4/4/2011* | |
|---|---|---|---|---|
| **(No input by filer)** | | | | |
| CDI FILE NUMBER: | 0 | | | |
| COMPANY/GROUP: | Ulico Standard of America Casualty Company | | | |
| LINE OF INSURANCE: | SURETY | | | |
| COVERAGE: | Bail Bonds | | | |
| PRIOR_EFF_DATE: | 7/18/2011 | | *Completed by:* | *Francis E. Lauricella, Jr.* |
| PROPOSED_EFF_DATE: | 7/18/2011 | | *Date:* | *7/18/2011* |

| *DATA PROVIDED BY FILER* | | | | | |
|---|---|---|---|---|---|
| Year: | 0 | 0 | 0 | | |
| | PRIOR2 | PRIOR1 | RECENT | PROJECTED/ SUMMARY | |
| WRT_PREM | 0 | 0 | 0 | 3,826,000 | |
| ERN_PREM | 0 | 0 | 0 | 2,867,000 | |
| PREM_ADJ | 1.000 | 1.000 | 1.000 | | |
| PREM_TREND | 1.000 | 1.000 | 1.000 | 0.000 | |
| MISCELLANEOUS_FEES   (& other flat charges) | 0 | 0 | 0 | 0 | |
| EARNED_EXP | 0 | 0 | 0 | 42,111 | |
| LOSSES | 0 | 0 | 0 | 115,641 | |
| DCCE | 0 | 0 | 0 | 42,059 | |
| LOSS_DEV | 1.000 | 1.000 | 1.000 | | |
| DCCE_DEV | 1.000 | 1.000 | 1.000 | | |
| LOSS_TREND | 1.000 | 1.000 | 1.000 | 0.000 | |
| DCCE_TREND | 1.000 | 1.000 | 1.000 | 0.000 | |
| CAT_ADJ | 1.000 | 1.000 | 1.000 | | |
| CREDIBILITY | | | | 100.00% | |
| EXPENSE EXCLUSION FACTOR | | | | 0.00% | |
| ANC_INC | 0 | 0 | 0 | 0 | |
| FIT_INV | | | | 35.00% | |
| YIELD | | | | 0.11% | |

| *CDI PARAMETERS:* | | |
|---|---|---|
| FIT_UW | 35.00% | |
| EFF_STANDARD | 43.84% | |
| LEVERAGE | 0.99 | |
| PREMIUM_TAX_RATE | 2.35% | |
| SURPLUS_RATIO | 1.01 | |
| UEP_RES_RATIO | 0.56 | |
| LOSS_RES_RATIO | 2.52 | |
| RISK FREE RATE OF RETURN | 1.98% | *June 2011* |
| MAXIMUM RATE OF RETURN | 7.98% | |
| MINIMUM RATE OF RETURN | -6.00% | |

| *CDI CALCULATIONS:* | | | | | |
|---|---|---|---|---|---|
| ADJ_PREM | 0 | 0 | 0 | 2,867,000 | |
| ADJUSTED_LOSSES | 0 | 0 | 0 | 115,641 | |
| ADJUSTED_DCCE | 0 | 0 | 0 | 42,059 | |
| *ADJUSTED_LOSS+DCCE_RATIO* | *0.00%* | *0.00%* | *0.00%* | 5.50% | |
| TRENDED_CURRENT_RATE_LEVEL_PREMIUM | #DIV/0! | #DIV/0! | #DIV/0! | 68.08 | |
| LOSS+DCCE_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 3.74 | |
| COMP_LOSS+DCCE_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 29.97 | |
| CRED_LOSS_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 3.74 | |
| ANC_INC_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 0.00 | |
| FIXED_INV_INC_FACTOR | | | | 0.27% | |
| VAR_INV_INC_FACTOR | | | | 0.17% | |
| ANNUAL_NET_TREND | | | | 0.00% | |
| COMP_TREND | | | | 0.00% | |
| MAX_PROFIT | | | | 12.42% | |
| MIN_PROFIT | | | | -9.34% | |
| UW_PROFIT | | | | 12.14% | |
| MAX_DENOM | | | | 0.439 | |
| MIN_DENOM | | | | 0.657 | |
| MAX_PREMIUM | | | | $8.51 | |
| MIN_PREMIUM | | | | $5.69 | |
| CHANGE_AT_MIN | | | | -91.65% | |
| **CHANGE AT MAX** | | | | **-87.51%** | |

| *Alternate Calculation with Reinsurance* | | | | | |
|---|---|---|---|---|---|
| COMMISSION_RATE | | | | 0.00% | |
| RE_PREM | | | | 0 | |
| RE_RECOV | | | | 0 | |
| RE_PREM_PER_EXP | - | - | - | 0.00 | |
| RE_RECOV_PER_EXP | #DIV/0! | #DIV/0! | #DIV/0! | 0.00 | |
| COMP_LOSS_RE | #DIV/0! | #DIV/0! | #DIV/0! | 29.97 | |
| RMAX_PREMIUM | | | | NA | |
| RCHANGE_AT_MAX | | | | NA | |

Exhibit 17 – New Program

Ulico Standard of America Casualty Company is submitting as an adoption bail bond rates identical to those approved for use by Danielson National Insurance Company, filing CDI 08-1743. Two classes of rates are proposed: a standard rate for all bail bonds, except those classed as qualified, and a rate for bail bonds classed as qualified.

Standard rate is 10% of the bond amount. Qualified rate is 8% of the bond amount. All bail bonds are subject to a minimum premium.

Qualified classification applies to principals with a decreased risk of flight. These principals, as defined in the applicable rule are: individuals who have retained counsel, individuals who are members of a labor union, and individuals who are active duty members or veterans of the U.S. Armed Services and their immediate family.

The standard rate is based on Surety Association of America (SAA) pricing. SAA pricing up to the time they ceased promulgating rates was based on 2% of liability plus 8% service fee. Upon change by insurance departments to an expanded definition of premium for premium tax purposes to include any and all fees, the pricing was simplified to 10% of liability as preferred by insurance departments. The Danielson National Insurance Company rate adopts the standard 10% of liability rate. We adopt the Danielson National Insurance Company standard rate. The qualified rate of 8% approved for Danielson National Insurance Company was based on 2004 accident year experience indicating a lower flight risk for those individuals represented by counsel, having union membership and/or having armed forces association. We adopt the approved qualified rate with the same assumptions.

Our proposed minimum premium is also an adoption of the minimum approved for Danielson National Insurance Company. The minimum is based upon expense experience as garnered by AM Best Aggregates and Averages and managing general agency fixed expenses as used by Danielson National Insurance Company in their approved filing.

Approval for use of these bail bond rates for Ulico Standard of America Casualty Company will provide increased capacity and alternative service to agents and brokers for this necessary service.

| **FORM NUMBER** | **FORM TITLE** |
|---|---|
| AL-10 | Application for Surety Bail Bond |
| UL-0100 | Indemnity Agreement for Surety Bail Bond |
| AL-0101 | Amendment to Indemnity Agreement |
| ALGC | General Conditions of Bail |
| UL-0202 | Disclosure Statement |
| UL-0200 | Deed of Trust |
| UL-0201 | Authorization Re Deed of Trust |
| UL-0001 | Bail Bond Face Sheet |
| UL-0600 | Indemnitor Order of Surrender |
| UL-0700 | Bail Bond Rates |
| UL-0601 | Authorization to Arrest |
| UL-0002 | Appeal Bail Bond |
| UL-0003 | Indictment Bail Bond |
| AL-PN | Promissory Note |
| UL-0401-01 | Bail Bond Power of Attorney |
| UL-0401-02 | Statement of Charges |
| UL-0401-03 | Receipt for Collateral Deposited |
| AL-SBP1 | Supervised Bail Program |
| AL-SBP2 | Supervised Bail Program |
| ALSC-60 | Statement of Charges (BMA) |
| ALPR-61 | Payment Receipt (BMA) |

# APPLICATION FOR SURETY BAIL BOND

## Defendant Information  Check-In Completed By _____

ALL INFORMATION LISTED IS MANDATORY AND MUST BE COMPLETED EACH TIME A DEFENDANT IS RELEASED ON BAIL WITH ALADDIN BAIL BONDS.

Name _____  A.K.A _____

Home Phone (____) _____  Call/Pager (____) _____  Work (____) _____

D.O.B. _____  S.S.# _____  Driver License or I.D.# _____  State Issued _____

Sex _____  Race _____  Height _____  Weight _____  Hair _____  Eyes _____  Glasses _____  Facial Hair _____

I.D.Marks _____  E-Mail _____

Place of Birth: City _____  State _____  US Citizen / Resident Alien / None  ▲ Addresses to cover the last 5 years

Current Address _____  City _____  Zip _____  How Long _____

Previous Address _____  City _____  ST _____  How Long _____

Previous Address _____  City _____  ST _____  How Long _____

# of Yrs. in: City _____  Cnty _____  ST _____  U.S. _____  Name of Last: City _____  State _____

Employer _____  Address _____  $/Month _____

Occupation _____  Dept. _____  Superior _____  How Long _____

Previous Employer _____  City _____  When _____

Significant Other's Name _____  Maiden _____  Legally Married  Yes / No

Sig. Other's Employer _____  Address _____

Phone (____) _____  Occupation _____  How Long _____  $/Month _____

▲ Minor Kids Names & Ages _____  Live With ▲ Yes / No

Kids live With (____) _____  Address _____  Phone (____) _____

▲ Mother _____  Address _____  City _____  Phone (____) _____

▲ Father _____  Address _____  City _____  Phone (____) _____

Sig. Other's Mother _____  Address _____  City _____  Phone (____) _____

Sig. Other's Father _____  Address _____  City _____  Phone (____) _____

Ref.(____) _____  Address _____  City _____  Phone (____) _____

Ref (____) _____  Address _____  City _____  Phone (____) _____

Ref.(____) _____  Address _____  City _____  Phone (____) _____

(Auto) Year _____  Make _____  Model _____  License# _____  Color _____

Bank Name _____  Branch Location _____  Account # _____

Real Property: Address _____  Value _____  Loan Balance _____  Year Purchased _____

Previous Arrest:  Charge _____  Date ___/___/___  Outcome _____

Charge _____  Date ___/___/___  Outcome _____

Currently On ☐ Probation ☐ Parole ☐ None,  Probation or Parole Officer _____  Phone (____) _____

Attorney Name _____  City _____  Phone (____) _____

Date Arrested _____  Co Defendants _____

Where Arrested _____  Arresting Agency _____

Other Information: _____

I certify that the above information is true and correct. I also authorize Aladdin Bail Bonds to run credit reports and verification of employment

Signature _____  Date _____

## Co-Signor Information  Negotiating Agent _____

ALL INFORMATION LISTED IS MANDATORY AND MUST BE COMPLETED EACH TIME A DEFENDANT IS RELEASED ON BAIL WITH ALADDIN BAIL BONDS.

Name _____  Relation to Def. _____  Yrs. _____

Home Phone (____) _____  Call/Pager (____) _____  Work (____) _____

D.O.B. _____  S.S.# _____  Driver License or I.D.# _____  State Issued _____

Place of Birth: City _____  State _____  US Citizen / Resident Alien / None

# of Yrs. In: City _____  Cnty _____  ST _____  U.S. _____  E-Mail _____

Address _____  City _____  Zip _____  How Long _____

Employer _____  Address _____

Occupation _____  Superior _____  How Long _____  Monthly Income $_____

Significant Other's Name _____  Legally Married  Yes / No

Sig. Other's Employer _____  Address _____

Phone (____) _____  Occupation _____  How Long _____  Monthly Income $_____

(Auto) Year _____  Make _____  Model _____  License# _____  Color _____

Bank Name _____  Branch Location _____  Account # _____

Real Property: Address _____  Value _____  Loan Balance _____  Year Purchased _____

Other Information: _____

I certify that the above information is true and correct. I also authorize Aladdin Bail Bonds to run credit reports and verification of employment.

Signature _____  Date _____

AL-10 (Rev. 6/05) 0



**Defendant's Name:** _____

## Co-Signor Information Negotiating Agent

**ALL INFORMATION LISTED IS MANDATORY AND MUST BE COMPLETED EACH TIME A DEFENDANT IS RELEASED ON BAIL WITH ALADDIN BAIL BONDS.**

Name _____ Relation to Def. _____ Yrs. _____

Home Phone (____) _____ Cell/Pager (____) _____ Work (____) _____

D.O.B. _____ S.S.# _____ Driver License or /I.D# _____ State Issued _____

Place of Birth: City _____ State _____ US Citizen / Resident Alien / None

# of Yrs. In: City _____ Cnty _____ ST _____ U.S. _____ E-Mail _____

Address _____ City _____ Zip _____ How Long _____

Employer _____ Address _____

Occupation _____ Superior _____ How Long _____ Monthly Income $_____

Significant Other's Name _____ Legally Married  Yes / No

Sig. Other's Employer _____ Address _____

Phone (____) _____ Occupation _____ How Long _____ Monthly Income $_____

(Auto) Year _____ Make _____ Model _____ License# _____ Color _____

Bank Name _____ Branch Location _____ Account # _____

Real Property: Address _____ Value _____ Loan Balance _____ Year Purchased _____

Other Information: _____

I certify that the above information is true and correct. I also authorize Aladdin Bail Bonds to run credit reports and verification of employment.

Signature _____ Date _____

## Co-Signor Information Negotiating Agent

**ALL INFORMATION LISTED IS MANDATORY AND MUST BE COMPLETED EACH TIME A DEFENDANT IS RELEASED ON BAIL WITH ALADDIN BAIL BONDS.**

Name _____ Relation to Def. _____ Yrs. _____

Home Phone (____) _____ Cell/Pager (____) _____ Work (____) _____

D.O.B. _____ S.S.# _____ Driver License or /I.D# _____ State Issued _____

Place of Birth: City _____ State _____ US Citizen / Resident Alien / None

# of Yrs. In: City _____ Cnty _____ ST _____ U.S. _____ E-Mail _____

Address _____ City _____ Zip _____ How Long _____

Employer _____ Address _____

Occupation _____ Superior _____ How Long _____ Monthly Income $_____

Significant Other's Name _____ Legally Married  Yes / No

Sig. Other's Employer _____ Address _____

Phone (____) _____ Occupation _____ How Long _____ Monthly Income $_____

(Auto) Year _____ Make _____ Model _____ License# _____ Color _____

Bank Name _____ Branch Location _____ Account # _____

Real Property: Address _____ Value _____ Loan Balance _____ Year Purchased _____

Other Information: _____

I certify that the above information is true and correct. I also authorize Aladdin Bail Bonds to run credit reports and verification of employment.

Signature _____ Date _____

## Co-Signor Information Negotiating Agent

**ALL INFORMATION LISTED IS MANDATORY AND MUST BE COMPLETED EACH TIME A DEFENDANT IS RELEASED ON BAIL WITH ALADDIN BAIL BONDS.**

Name _____ Relation to Def. _____ Yrs. _____

Home Phone (____) _____ Cell/Pager (____) _____ Work (____) _____

D.O.B. _____ S.S.# _____ Driver License or /I.D# _____ State Issued _____

Place of Birth: City _____ State _____ US Citizen / Resident Alien / None

# of Yrs. In: City _____ Cnty _____ ST _____ U.S. _____ E-Mail _____

Address _____ City _____ Zip _____ How Long _____

Employer _____ Address _____

Occupation _____ Superior _____ How Long _____ Monthly Income $_____

Significant Other's Name _____ Legally Married  Yes / No

Sig. Other's Employer _____ Address _____

Phone (____) _____ Occupation _____ How Long _____ Monthly Income $_____

(Auto) Year _____ Make _____ Model _____ License# _____ Color _____

Bank Name _____ Branch Location _____ Account # _____

Real Property: Address _____ Value _____ Loan Balance _____ Year Purchased _____

Other Information: _____

I certify that the above information is true and correct. I also authorize Aladdin Bail Bonds to run credit reports and verification of employment.

Signature _____ Date _____

# INDEMNITY AGREEMENT
# FOR
# SURETY BAIL BOND

## RECITAL

The following is a bail bond contract/indemnity agreement between you (as the defendant or indemnitor(s)), Two Jinn, Inc. dba Aladdin Bail Bonds ("Aladdin"), and ULICO Standard of America Casualty Company ("ULICO") (collectively "we" and/or "us"). It provides for, among other things, the consequences to you as a result of failing to pay the bail bond premium and/or the defendant's failure to appear in court as ordered.

In order to keep the bail bond in force and the defendant out of jail, you must (1) pay the bail bond premium, and (2) ensure that the defendant appears in court on the required dates. If a bail bond premium is not fully paid and/or the defendant does not appear in court as ordered, we may surrender the defendant back to the custody of the court and charge you for all expenses incurred in locating, capturing, and returning the defendant to court. Additionally, **IN THE EVENT WE ARE UNABLE TO RETURN THE DEFENDANT TO COURT WITHIN THE TIME PRESCRIBED BY LAW AND MUST PAY THE FULL PENAL AMOUNT OF THE BAIL BOND, YOU ARE RESPONSIBLE TO REIMBURSE US FOR ALL AMOUNTS WE MUST PAY, INCLUDING THE PENAL SUM OF THE BOND, INVESTIGATION COSTS, COURT COSTS, AND ATTORNEYS' FEES (INCLUDING ATTORNEYS' FEES INCURRED RECOVERING THESE AMOUNTS FROM YOU).** In such an event, any premium amounts paid by you will not offset your obligation for the full penal amount of the bond.

Please carefully review each of the terms and conditions of the following bail bond contract/indemnity agreement.

UL-0100 (08-11)

1

# INDEMNITY AGREEMENT FOR SURETY BAIL BOND

This Indemnity Agreement ("Agreement") is effective as of _____, 20____. In consideration for the executing, arranging, and continuance of the undertaking of bail for _____ (the "Principal" or "Defendant") in the penal amount of $_____("Bail Bond"), the undersigned Indemnitor(s) agrees to pay the Bail Bond premium(s) and to indemnify Aladdin Bail Bonds ("Aladdin") and ULICO Standard of America Casualty Company ("ULICO") as follows:

**1. General Conditions of Bail.** As a further condition to Aladdin and/or Surety maintaining the Bail Bond, Indemnitor(s) and Principal/Defendant agree that their failure to satisfy any of the following conditions constitutes a breach of this Agreement and may result in Defendant's surrender to custody without return of premium:

(a) **THE DEFENDANT MUST RETURN TO ALADDIN'S OFFICE IMMEDIATELY UPON RELEASE FROM JAIL.** Failure to do so may result in the Defendant being surrendered back to custody in accordance with paragraph 5 below ("Surrender"), and additional fees may be owed pursuant to paragraph 4 below ("Indemnification").

(b) The Defendant must **APPEAR AT ALL COURT DATES** in person as ordered by the court.

(c) If the defendant fails to appear in court, he/she must contact Aladdin immediately for possible bail bond reinstatement. If reinstatement is approved by Aladdin, the Defendant must submit the reinstatement document provided by Aladdin to the clerk of the court immediately or it will otherwise be void. Please be advised that under these circumstances the Defendant's warrant is still active until he/she has appeared in court and the judge has recalled the warrant

(d) As more fully set forth in paragraph 4 below, the **Defendant and Indemnitor(s) are responsible for any and all expenses incurred by Aladdin or its Surety as a result of the Defendant's failure to appear for scheduled court dates.**

(e) The Defendant and Indemnitor(s) must notify Aladdin if they (or any of them) change their residence address, business address, telephone numbers, or employment.

(f) The Defendant and Indemnitor(s) shall remain liable hereunder until such time as the Bail Bond is exonerated and Aladdin and/or Surety are fully indemnified for any losses pursuant to paragraph 4 below ("Indemnification").

(g) Supervised Bail. The Defendant may be placed on supervised bail at any time in Aladdin's sole discretion. If placed on supervised bail, Defendant must check in with Aladdin or its designee as requested by Aladdin.

**2. Premium.** Indemnitor(s) shall pay Aladdin $_____ for continuance of the Bail Bond (the "Premium"). The Premium is fully earned upon the release of the Principal. The fact that the Principal may have been improperly arrested, or his bail reduced or his case dismissed, shall not obligate the return of any portion of said Premium. In the event any Premium due is not paid upon demand, Aladdin and/or Surety maintain the right to surrender the Principal as provided by law, in addition to exercising any other available legal remedies arising from this Agreement. Any amounts due hereunder shall bear interest at the maximum rate allowed by law. Time is of the essence as to all payments.

**3. Collateral.** Aladdin and/or Surety may require Indemnitor(s) to deposit money or other property as collateral in an amount or value which Aladdin and/or Surety determines, in their sole and absolute discretion, sufficient to protect against the risk of Bail Bond forfeiture and/or summary judgment ("Collateral"). If as a result of judicial action bail is increased, Aladdin and/or Surety may demand such additional Collateral as they determine necessary to protect against the increased risk. In the event Indemnitor(s) or Principal misrepresents or conceals

2

information which would have been material to Aladdin and/or Surety's decision to execute the Bail Bond, or otherwise takes any action which creates an increase in the risk of Bail Bond forfeiture, Indemnitor(s) shall, upon demand, deposit Collateral in an amount or value equivalent to the full penal amount of the Bail Bond. Indemnitor(s) authorizes Aladdin and/or Surety to levy upon Collateral in any lawful manner to recover sums due under this Agreement for unpaid Premium, indemnity obligations, fees, costs, expenses, and/or other liabilities for which Indemnitor(s) has agreed to indemnify Aladdin and/or Surety hereunder. Following exoneration or other final disposition of the Bail Bond and following the application of Collateral to satisfy Indemnitor(s)'s obligations, any excess Collateral shall be immediately returned to the depositor.

**4.   Indemnification.**   To the fullest extent permitted by law, Indemnitor(s) agrees to indemnify and reimburse Aladdin and/or Surety for any and all losses, damages, judgments, attorneys' fees (including the reasonable value of services performed by Aladdin and/or Surety's in-house legal staff, claims staff, and/or investigative staff), costs, expenses, or liability of any kind whatsoever arising out of or relating to the following:

(1) the Principal and/or Indemnitor(s)'s breach of any of the terms and conditions of this Agreement;

(2) false or misleading information provided by Principal/Indemnitor(s) in the Bail Bond Application (the contents of which are incorporated herein by reference);

(3) searching for, recapturing, and/or returning the Principal to custody prior to the entry of summary judgment on the Bail Bond;

(4) making application to a court for an order to vacate or to set aside the order of Bail Bond forfeiture or summary judgment entered thereon;

(5) payment of a judgment on the forfeiture of the Bail Bond;

(6) any action or proceeding commenced by Aladdin and/or Surety to enforce this Agreement; and

(7) any expenses incurred by Aladdin and/or Surety as a result of the Principal's refusal to cooperate with the arrangement and/or execution of the Bail Bond (or any renewal or substitution thereof) once Aladdin and/or Surety have initiated arrangements with the court and/or detention facility.

Principal and Indemnitor(s) understand and agree that Aladdin or Surety's own active or passive negligence in connection with investigation and handling of claims forfeitures shall not in any way cancel or limit Principal and Indemnitor(s)'s indemnity obligations. Defendant and Indemnitor(s) fully assume the risk of the Defendant's non-appearance. Indemnitor(s) further agrees to fully cooperate and assist Aladdin and/or Surety in securing the release and exoneration of the Bail Bond, including the surrender of the Principal to court should Aladdin and/or Surety deem such action advisable.

**5.   Surrender.**   In the event of Bail Bond forfeiture, or the Principal and/or Indemnitor(s)'s failure to abide by the terms of this Agreement, Aladdin and/or Surety maintain the right to surrender the Principal as provided by law. Aladdin and/or Surety shall not surrender the Principal to custody prior to the time specified in the Bail Bond for the appearance of the Principal, or prior to any occasion when the presence of the Principal in court is lawfully required, without first returning all Premium paid, unless as a result of judicial action, information concealed or misrepresented by the Principal and/or Indemnitor(s), or other reasonable cause, any one of which was material to the risk to be assumed by Aladdin and/or Surety, the risk was substantially increased.

**6.   Indemnitor Representations & Warranties.**   Indemnitor(s) represents and warrants that (1) all statements and/ or information provided on or in connection with the Bail Bond Application are true and accurate; (2) Indemnitor(s) will advise Aladdin and/or Surety of any change in such information within 48 hours of learning of the change (including but not limited to (i) changes of address or employment of either the Principal or Indemnitor(s), or (ii) any other material change in circumstances), and that Indemnitor's failure to so advise shall be reasonable cause for the immediate surrender of the Principal; (3) Indemnitor(s) has read and knows the contents of the Bail Bond Agreement and this Agreement, and has received copies of each document included therein; (4) Indemnitor(s) is the true and lawful owner of all Collateral or other property set forth in the Bail Bond Application, and Indemnitor(s) shall not transfer or otherwise encumber said property without first satisfying all outstanding liability for the Bail Bond.

3

**7.  Additional Bail Bonds.** In the event additional Aladdin bail bonds are executed for the same charge for which the above mentioned Bail Bond was executed, or any other charge arising out of the same criminal matter, this Agreement shall apply equally to those bonds.

**8.  Joint & Several Obligations.** The obligations hereunder are joint and several.  Indemnitor(s) expressly waives the benefits of any law requiring Aladdin and/or Surety to seek available remedies from the Principal prior to proceeding against Indemnitor(s) hereunder.

**9.  Governing Law.** This Agreement shall be governed, construed, and interpreted in accordance with the laws of the State of California.

**10.  Integrated  Agreement.** Indemnitor(s) acknowledges and agrees that no promises or representations were made to Indemnitor(s) which do not appear written herein and that this Agreement contains the entire agreement between Indemnitor(s), Aladdin and Surety on the subject matter hereof.  Indemnitor(s) further acknowledges and agrees that all prior statements, agreements, understandings or promises, written or oral, are superseded by this Agreement.  This Agreement may only be modified by a writing signed by authorized representatives of the parties.

**IN WITNESS WHEREOF,** Indemnitor(s) acknowledges that in executing and continuing the Bail Bond, Aladdin and/or Surety is relying on this Agreement and the statements made by Indemnitor(s) in connection herewith, and as such, the undersigned Indemnitor(s) enters into this Agreement by signing below.

**Indemnitor**

SIGNATURE _____    NAME _____

ADDRESS _____

**Indemnitor**

SIGNATURE _____    NAME _____

ADDRESS _____

**Indemnitor**

SIGNATURE _____    NAME _____

ADDRESS _____

**Indemnitor**

SIGNATURE _____    NAME _____

ADDRESS _____

**Principal/Defendant**

SIGNATURE _____    NAME _____

ADDRESS _____

4

# INDEMNITY AGREEMENT FOR SURETY BAIL BOND
## ULICO STANDARD OF AMERICA CASUALTY COMPANY

Defendant Name _____ Date of Bonds _____

**Bond 1**
Amount $ _____ Number _____ Case # _____

Charges _____

**Bond 2**
Amount $ _____ Number _____ Case # _____

Charges _____

**Bond 3**
Amount $ _____ Number _____ Case # _____

Charges _____

**Bond 4**
Amount $ _____ Number _____ Case # _____

Charges _____

**Bond 5**
Amount $ _____ Number _____ Case # _____

Charges _____

**Bond 6**
Amount $ _____ Number _____ Case # _____

Charges _____

**Bond 7**
Amount $ _____ Number _____ Case # _____

Charges _____

**Bond 8**
Amount $ _____ Number _____ Case # _____

Charges _____

**Total Amount of Bail $** _____

---

**STATEMENT OF INFORMATION REQUIRED BY SECTION 2100, CALIFORNIA REGULATORY CODE, AND WHICH MAY BE REQUIRED IN OTHER STATES**

| | | |
|---|---|---|
| Full Name of person supplying information | Name of person negotiating bail | Name of person receiving information |
| Address | Address | Date and time information received |
| Connection or relationship to defendant | Connection or relationship to defendant | Manner in which information received |
| If same was defendant, how did he communicate? | Name of licensee who negotiated transaction | Name of other agent involved and commission paid |

If writ _____
  Name of Attorney

_____
Name and sum paid unlicensed persons and service performed

Was consideration other than money received? YES ☐ NO ☐ If yes, explain in detail and attach statement.

UL-0100 (08-11)

# AMENDMENT TO INDEMNITY AGREEMENT FOR SURETY BAIL BOND

This Amendment to Indemnity Agreement for Surety Bail Bond ("Amendment") is effective as of _____, 20____ ("Effective Date"), by and between Aladdin Bail Bonds ("Aladdin") and _____ ("Indemnitor") (each a "Party" and collectively the "Parties").

## RECITAL

Aladdin is in the business of providing surety bail bonds for criminal defendants.  In connection with _____ County Superior Court Case No. _____, the court has set bail for criminal defendant _____ (the "Defendant") in the total penal amount of $_____. In exchange for providing Bail Bond #_____ (and/or such other bonds in connection with the above case) (the "Bond"), the Defendant and/or other indemnitors have agreed to (1) pay Aladdin a premium in the amount of $_____ (the "Premium"); and (2) indemnify Aladdin for any expenses incurred in the event of the Bond's forfeiture. As inducement for the above named Indemnitor to execute the Indemnity Agreement for Surety Bail Bond (the "Bond Contract"), Aladdin has agreed to limit Indemnitor's obligations thereunder solely with respect to the Premium payment as provided in this Amendment.

## AMENDMENT

**In consideration of the above Recital and for valuable consideration, the Parties agree as follows:**

1.     Limited Liability for Continuing Premium Payments/Void After Forfeiture Expense.  Other than amounts paid as an initial down payment toward Premium, if any, Indemnitor shall not be responsible to pay Aladdin any remaining portion of the Premium due for the Bond, provided however, the Bond does not become forfeited.  In the event Aladdin incurs any expense as a result of Bond forfeiture, Indemnitor shall be liable for all Premium due in addition to any and all expenses incurred as a result of the Bond's forfeiture, including but not limited to the total penal amount of the Bond, all as set forth in the Bond Contract. This Amendment applies solely to the above named Indemnitor and may not be assigned for the benefit of any other party.

2.     Other Portions of Bond Contract Unaffected.  The Parties agree that this Amendment does not in any way affect, limit, or alter Indemnitor's obligations under the Bond Contract with respect to contingent liability for Bond forfeiture. All such obligations, including the terms and conditions of the Bond Contract which are expressly incorporated herein by reference, shall continue in full force and effect.

3.     Integrated Agreement. The Parties acknowledge and agree that no promises or representations were made to them which do not appear written herein and that this Amendment and the Bond Contract contain the entire agreement of the Parties on the subject matter thereof. The Parties further acknowledge and agree that all prior statements, agreements, understandings or promises, written or oral, are superseded by the Bond Contract and this Amendment.

IN WITNESS WHEREOF, the Parties have executed this Amendment, effective_____, 20_____ .

**Aladdin Bail Bonds:**                         **Indemnitor:**

_____        _____
AGENT SIGNATURE                              PRINT INDEMNITOR NAME

_____        _____
PRINT AGENT NAME                             INDEMNITOR SIGNATURE

AL-0101 (03-08) Ω



**BAIL BONDS**

WE GET YOU OUT, WE GET YOU THROUGH IT.®

# GENERAL CONDITIONS OF BAIL

DEF. / IND.
INITIALS

THE DEFENDANT MUST RETURN TO THIS OFFICE IMMEDIATELY
UPON RELEASE FROM JAIL. Failure to do so may result in the defendant
being surrendered back to custody and additional fees may be applied.          ____/____

The Defendant must APPEAR AT ALL COURT DATES in person as ordered by the court.   ____/____

The Defendant shall CONTACT ALADDIN BAIL BONDS AFTER EACH COURT DATE
and report  his/her next court date(s).          ____/____

If the defendant fails to appear in court, he/she must contact our office immediately for
possible bail bond reinstatement. The reinstatement request must be submitted to the
clerk of the court immediately or the letter will be void. Please be advised, the defendant's
warrant is still active until he/she has appeared in court and the judge has recalled the
warrant.          ____/____

The Defendant and Indemnitor(s) are responsible for any and all expenses incurred,
resulting from the Defendant's Failure to Appear for scheduled court dates.          ____/____

The Defendant and/or Indemnitor(s) must notify Aladdin Bail Bonds if any change is made
to his/her residence, phone number or employment.          ____/____

The Defendant and Indemnitor(s) are liable for said Bail Bond(s) until Exonerated by the
court.          ____/____

The premium for said Bail Bond is fully earned upon the Defendant's release from jail.
The fact the Defendant may have been improperly arrested or his/her bail reduced or
his/her case dismissed, shall not obligate the return of any portion of said premium.
NO REFUND UPON RELEASE.          ____/____

I / We have read and understand the above conditions,

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Indemnitor Signature | Print Name | Date |
| _____ | _____ | _____ |
| Indemnitor Signature | Print Name | Date |
| _____ | _____ | _____ |
| Indemnitor Signature | Print Name | Date |
| _____ | _____ | _____ |
| Indemnitor Signature | Print Name | Date |
| _____ | _____ | _____ |
| Defendant Signature | Print Name | Date |

AL-GC (10/05) ₤1

# ULICO STANDARD OF AMERICA CASUALTY COMPANY
## DISCLOSURE STATEMENT

Bail Agency: _____

Bond Number. _____

Bond Amount _____

Defendant:_____

## ATTENTION

## DISCLOSURE OF LIEN AGAINST REAL PROPERTY. DO NOT SIGN THIS DOCUMENT UNTIL YOU READ AND UNDERSTAND IT!

## THIS BAIL BOND WILL BE SECURED BY REAL PROPERTY YOU OWN OR IN WHICH YOU HAVE AN INTEREST. THE FAILURE TO PAY THE BAIL BOND PREMIUMS WHEN DUE OR THE FAILURE OF THE DEFENDANT TO COMPLY WITH THE CONDITIONS OF BAIL COULD RESULT IN THE LOSS OF YOUR PROPERTY!

After you have read the above Disclosure Statement and received a completed copy of the Bail Bond Agreement and the Deed of Trust, please execute this Disclosure Statement in the space provided below, acknowledging that you have read and understood this Disclosure Statement and that you have received a completed copy of the Bail Bond Agreement and the Deed of Trust. You will be asked to execute this document again, in the corresponding space provided below, upon delivery to you of a full Satisfaction of Mortgage, which, upon recordation terminates the lien on your real property created by the Mortgage Deed.

**I HAVE READ AND UNDERSTAND THE ABOVE DISCLOSURE STATEMENT AND HAVE RECEIVED A COMPLETED COPY OF THE BAIL BOND AGREEMENT AND MORTGAGE DEED.**

Print Name: _____     Print Name:_____

Sign Name: _____     Sign Name:_____

Date:_____     Date:_____

**I HAVE RECEIVED A SATISFACTION OF MORTGAGE, A CERTIFICATE OF DISCHARGE, OR A FULL RELEASE OF ANY LIEN AGAINST REAL PROPERTY TO SECURE PERFORMANCE OF THE CONDITIONS OF THE BAIL BOND.**

Print Name: _____     Print Name:_____

Sign Name: _____     Sign Name:_____

Date: _____     Date:_____

UL-0202 (08-11)

RECORDING REQUESTED BY:

**AND WHEN RECORDED MAIL TO**

Two Jinn, Inc., dba Aladdin Bail Bonds
Attn.: Underwriting Department
1959 Palomar Oaks Way, Suite 200
Carlsbad, CA 92011

———— SPACE ABOVE THIS LINE FOR RECORDER'S USE ————

# DEED OF TRUST

This Deed of Trust is made this _____ day of _____, 20____ between _____, herein called Trustor(s), and _____, herein called Trustee, and **ULICO Standard of America Casualty Company** herein called Beneficiary or Surety. Trustor(s) hereby grants to Trustee, in trust, with power of sale, all that property in the County of_____, in the State of _____, described as: Lot _____ Block _____ Tract _____ APN # _____ as per map recorded in Book, _____ Page _____ of Maps, Official records in the office of the County Recorder of_____, and commonly known as _____

This Deed of Trust is for the purpose of securing payment to the Beneficiary and/or Trustee, of the monies due to and all losses, damages, expenses and liability suffered, sustained, made or incurred by or on behalf of the Surety (and as more fully set forth and described in a certain Indemnity Agreement For Surety Bail Bond, which agreement is made a part hereof by reference as though herein fully set forth) on account of, growing out of, or resulting from the execution of a certain bail bond(s) on behalf of _____, in the matter of _____ vs. _____, and for which amounts and the matters set forth in the Indemnity Agreement, the presents are security, (Bond #_____) (Bond #_____) (Bond #_____) (Bond#_____) (and any additional bonds executed in connection with the defendant relating to the above-entitled matter). It is agreed that a certificate signed by the Beneficiary or Beneficiary's agent at any time hereafter setting forth (1) that the bond(s) has been declared forfeited or that a loss, damage, expense or liability has been sustained by the Surety on account of the bond(s); (2) the date(s) and amount(s) of such loss, damages, expenses and/or liability; (3) that payment has been demanded of the party(ies) on whose behalf the bond(s) was or is about to be executed; and (4) that such loss, damages, expenses or determined liability has not been paid to the Beneficiary, shall be conclusive and binding on the Trustor(s), and shall be the warrant of the Trustee to proceed forthwith to foreclose and sell upon the security herein, and from the proceeds of sale (after deducting expenses including cost and search of evidence of title) pay to the Beneficiary or Beneficiary's agent the amount so certified, including interest at ten percent per annum from demand to date of payment and attorney's fees. It is further agreed that Beneficiary may declare all sums or obligations secured hereby due immediately and payable in full upon (1) delivery to Trustee of the above referenced certificate (upon which Beneficiary may also deliver to Trustee written notice of default and demand for sale and its election to cause to be sold said property, which notice Trustee shall cause to be duly filed for record); (2) Trustor(s) failure to pay taxes, assessments and other charges and fines that may be imposed on the property which adversely affect Beneficiary's interest; (3) any sale or transfer of the property, or any portion thereof, to a third party without the Beneficiary's written consent; or (4) the commencement of bankruptcy proceedings by or against Trustor(s). It shall be deemed sufficient if proceedings to foreclose and sell the security herein are executed by the above-named Trustee (or its successors) and it shall be deemed sufficient if a full reconveyance is executed by the above-named Trustee (or its successors). The undersigned Trustor(s) requests that a copy of any notice of default and of any notice of sale hereunder be mailed to him/her at his/her mailing address opposite the signature hereto. Failure to insert such address shall be deemed a waiver of any request hereunder for a copy of such notices.

| SIGNATURE OF TRUSTOR(S) | STREET AND NUMBER | CITY | STATE |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

STATE OF _____ COUNTY OF _____
On _____ before me, _____, NOTARY PUBLIC, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

SIGNATURE: _____ (Seal)

UL-0200 (08/11)

# ULICO STANDARD OF AMERICA CASUALTY COMPANY
**Two Jinn, Inc.**
**General Agent**
1959 Palomar Oaks Way, Suite 200
Carlsbad, CA 92009
Phone: (800) 808-2245  Fax. (760) 431-2698

# AUTHORIZATION RE: DEED OF TRUST

Defendant Name: _____

Bond Number(s): _____

_____

Property Address: _____

_____

_____

The undersigned, being the guarantor on the referenced bail bond(s), hereby authorizes the bail agent or any of his agents, representatives or employees, to fill in the pertinent information on the deed of trust which the undersigned executed in blank in connection with the undertaking of said bail bond(s).

_____    _____
GUARANTOR'S SIGNATURE                 DATE

_____
GUARANTOR'S PRINTED NAME

_____    _____
GUARANTOR'S SIGNATURE                 DATE

_____
GUARANTOR'S PRINTED NAME

UL-0201 (08-11)

**ULICO STANDARD OF AMERICA
CASUALTY COMPANY**
TWO JINN, INC.
GENERAL AGENT
1959 Palomar Oaks Way, Suite 200
Carlsbad, CA 92011
Telephone (800) 808-2245  Fax (760) 431-2698

ALADDIN BAIL BONDS
CLAIMS DIVISION
1762 Technology Drive, Suite 124
San Jose, CA 95110
Telephone (408) 350-9180   Fax (408) 487-8692
License # 1843442

(PLACE BAIL AGENT'S ADDRESS STAMP HERE)

# BAIL BOND

NO._____
(POWER OF ATTORNEY WITH THIS NUMBER MUST BE ATTACHED.)

IN THE_____ COURT OF THE _____ JUDICIAL DISTRICT

COUNTY OF _____ , STATE OF _____

THE PEOPLE OF THE STATE OF _____ ,

Plaintiff,                          CASE NO. _____

vs.                                 DIV. NO._____

_____
Defendant.

Defendant _____
(NAME OF DEFENDANT)            BOOKING NO.

having been admitted to bail in the sum of _____

_____ Dollars ($_____) and ordered to appear in the above-entitled court

on_____ , 20 _____ , on _____ charge/s,
(DATE OF APPEARANCE)            (STATE "MISDEMEANOR" OR "FELONY")

Now, the ULICO STANDARD OF AMERICA CASUALTY COMPANY, a California Corporation hereby undertakes that the above-named defendant will appear in the above-named court on the date above set forth to answer any charges in any accusatory pleading based upon the acts supporting the complaint filed against him/her and as duly authorized amendments thereof, in whatever court it may be filed and prosecuted, and will at all times hold him/herself amenable to the orders and process of the court, and if convicted, will appear for pronouncement of judgment or grant of probation; or if he/she fails to perform either of these conditions, that the ULICO STANDARD OF AMERICA CASUALTY COMPANY, a California Corporation, will pay the people of the said State the sum of_____
dollars ($_____)

If the forfeiture of this bond be ordered by the Court, judgment may be summarily made and entered forthwith against the said ULICO STANDARD OF AMERICA CASUALTY COMPANY a California Corporation, for the amount of its undertaking herein as provided by State Law.

THIS BOND IS VOID IF WRITTEN FOR AN AMOUNT GREATER
THAN THE POWER OF ATTORNEY ATTACHED HERETO, IF
MORE THAN ONE SUCH POWER IS ATTACHED, OR IF
WRITTEN AFTER THE EXPIRATION DATE AS SPECIFIED
ON THE ATTACHED POWER OF ATTORNEY.

ULICO STANDARD OF AMERICA
CASUALTY COMPANY
(A California Corporation)

By_____                          (SEAL)
PETER BOTZ
ATTORNEY-IN-FACT

I certify under penalty of perjury that I am a licensed bail agent of the ULICO STANDARD OF AMERICA CASUALTY COMPANY

and that I am executing this bond on _____
(DATE)

at _____
(LOCATION)

_____
(SIGNATURE OF LICENSED AGENT)

THE PREMIUM CHARGED FOR                 Approved this _____ day of_____ , 20 _____
THIS BOND IS $_____              _____ (TITLE)

**NOTE: This is an Appearance Bond and cannot be construed as a guarantee for failure to provide payments, back alimony
payments, Fines, or Wage Law claims, nor can it be used as a Bond on Appeal.**

UL-0001 (09-11)

---

# CERTIFICATE OF DISCHARGE BOND
## ULICO STANDARD OF AMERICA CASUALTY COMPANY

POWER AMT. $ _____          POWER NO. _____

this is to certify that on or about the _____ day of_____ , 20 _____ the bond with the

corresponding power number has been discharged of record. Date of Discharge _____

TO THE CLERK OF THE COURT
Will you please check your records for the bond listed above. When the bond
has been exonerated, please enter the date of exoneration, sign and return this
form to:

Surety for the Bail Agent:
1959 Palomar Oaks Way, Suite 200
Carlsbad, CA 92011

Title _____

By _____

Bond Amount $ _____

Defendant _____

Court _____

Date Filed _____

# ULICO  STANDARD OF AMERICA
# CASUALTY COMPANY
## TWO JINN, INC.
### GENERAL AGENT

1959 Palomar Oaks Way, Suite 200
Carlsbad, CA 92011
Telephone (800) 808-2245   Fax (760) 431-2698

## INDEMNITOR ORDER OF SURRENDER

**Defendant:** _____

**Indemnitor(s):** _____

**Bond Number(s):** _____


**Date:** _____

**On** the _____ day of _____, 20 _____, the undersigned entered into a Bail Bond

Agreement with _____Bail Bonds for the execution of the above referenced Bail Bond

on behalf of _____in the amount of $ _____who has been

charged with the following violation(s);_____

_____.


**It** appearing to the undersigned Indemnitor(s) on said Bail Bond(s) that the above named Defendant is not now a desirable risk and should be surrendered into custody forthwith.  It is hereby requested that such surrender be effected.  The undersigned agrees that the liability on said Bail Bond(s) shall remain in full force and effect until such time as the court having jurisdiction of the case shall exonerate the Bail Bond(s) and fully release the surety thereon.

**It** is further agreed that any expense incurred, including recovery fees, in the transaction of this surrender, will be reimbursed by the undersigned Indemnitor(s) upon demand.

**It** is further agreed that any premium or fee charged, in this transaction, is fully earned and any amount remaining unpaid thereon, will be paid by the undersigned upon demand.

**In** connection herewith, the undersigned hereby agrees to hold harmless ULICO Standard of America Casualty Company from any and all damages that may occur as a result of this request for surrender of said Defendant.

**Executed** this _____ day of _____, 20_____

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Indemnitor | Relationship | Date |
| _____ | _____ | _____ |
| Indemnitor | Relationship | Date |
| _____ | _____ | _____ |
| Indemnitor | Relationship | Date |
| _____ | _____ | _____ |
| Indemnitor | Relationship | Date |

UL-0600 (08-11)                                                                                                      (D-2)

**ULICO STANDARD OF AMERICA CASUALTY COMPANY**
TWO JINN, INC.
GENERAL AGENT
1959 Palomar Oaks Way, Suite 200
Carlsbad, CA 92009
Telephone (800) 808-2245   Fax (760) 431-2698

(PLACE BAIL AGENT'S ADDRESS STAMP HERE)

# BAIL BOND RATES

THE FOLLOWING RATES WILL BE CHARGED ON ALL BAIL BONDS:

State of California

<u>State Bonds</u>

Bonds up to and including $499.00 in liability will be charged $50.00, **plus $15.00**

Bonds over $499.00 in liability will be charged 10% of the penal amount, **plus $15.00**

<u>Qualified Unions and Private Defense Counsel, Active Duty members of the United States Military Armed Forces, Veterans of the United States Military Armed Forces and Immediate Families of Active Duty and Veteran Members of the Military Armed Forces.</u>

Bonds up to and including $600.00 in liability will be charged $50.00, **plus $15.00**

Bonds over $600.00 in liability will be charged 8% of the penal amount, **plus $15.00**

A MINIMUM PREMIUM CHARGE OF $50.00 APPLIES PER BOND. THE $15.00 SHOULD NOT BE INCLUDED IN THE CALCULATION OF THE MINIMUM PREMIUM

## NOTE

**These rates must be charged by ALL agents of ULICO STANDARD OF AMERICA CASUALTY COMPANY These rates are for premium only, and do not include other expenses incurred, such as telephone, posting fees, appraisals or lot book reports, travel and other miscellaneous expenses.**

**ALL AGENTS:** Please post this rate chart where it can be seen by the public.

UL-0700 (08-11)

# ULICO STANDARD OF AMERICA CASUALTY COMPANY

TWO JINN, INC.
GENERAL AGENT
1959 Palomar Oaks Way, Suite 200, Carlsbad, CA 92011
Telephone (800) 808-2245   Fax (760) 431-2698

## AUTHORIZATION TO ARREST DEFENDANT ON BAIL BOND

KNOW ALL MEN BY THESE PRESENTS:

That we, ULICO STANDARD OF AMERICA CASUALTY COMPANY, a Corporation, do hereby authorize and empower

_____

as its representative and in its stead, to lawfully arrest and detain _____

_____ , the defendant in this company's

Bail Bond No. _____ , wherever he/she may be found in the UNITED STATES OF

AMERICA, pursuant to any applicable laws of any sovereign state, and to hold said defendant in custody and surrender

said defendant to the _____

Court, _____

_____ Judicial District, County of

_____ , State of _____ wherein

proceedings are now pending against said defendant described in said Bail Bond.


Dated this _____ day of _____ , 20 _____ ULICO STANDARD OF AMERICA CASUALTY COMPANY

at _____ , _____
      (city, town)         (state)


By _____
                          Attorney-in-Fact

UL-0601 (08-11)

**ULICO STANDARD OF AMERICA CASUALTY COMPANY**
TWO JINN, INC.
GENERAL AGENT

1959 Palomar Oaks Ways, Suite 200
Carlsbad, CA 92011
Telephone (800) 808-2245  Fax (760) 431-2698

(PLACE BAIL AGENT'S ADDRESS STAMP HERE)

# APPEAL BAIL BOND

NO. _____
(POWER OF ATTORNEY WITH THIS NUMBER MUST BE ATTACHED )
_____ COURT OF THE STATE OF _____

FOR THE COUNTY OF _____
THE PEOPLE OF THE STATE OF _____.

Plaintiff,                          CASE NO. _____

vs.

_____
Defendant,

An order having been made on the _____ day of _____ , 20_____
by the Hon _____ ,
a Judge of the_____ Court of the _____ ,
County of_____ , State of _____ , that said defendant
_____ be admitted to bail
in the sum of_____ Dollars ($_____)
pending the hearing and determination of the appeal of the defendant from judgment and sentence heretofore rendered in the above
entitled cause, in the above entitled court on the _____ day of _____ , 20_____ ,
wherein said defendant was charged with and convicted of the crime of _____

_____
and said defendant having duly appealed from said conviction and judgment herein, and said defendant having been duly admitted
to bail pending the hearing and determination of said appeal in the sum of_____
_____ Dollars ($_____)
NOW, THEREFORE, We the ULICO STANDARD OF AMERICA CASUALTY COMPANY, hereby undertake that the above named defendant

_____
will surrender him/herself in execution of the judgment, upon its being affirmed or modified, or upon the appeal being dismissed, or that,
in case the judgment be reversed and that the cause be remanded for a new trial, that he/she will appear in the court to which said cause
may be remanded, and submit him/herself to the orders and process thereof, and that if he/she fails to perform any of these conditions,
that we will pay the People of the State of _____the sum of_____ Dollars ($_____)
in lawful money of the United States.  If the forfeiture of this bond be ordered by the Court, judgment may be summarily made and
entered forthwith against the said ULICO STANDARD OF AMERICA CASUALTY COMPANY, for the amount of its undertaking
herein as provided by Sections 1305 and 1306 of the Penal Code.

THIS BOND IS VOID IF WRITTEN FOR AN AMOUNT
GREATER THAN THE POWER OF ATTORNEY ATTACHED
HERETO, IF MORE THAN ONE SUCH POWER IS
ATTACHED, OR IF WRITTEN AFTER THE EXPIRATION
DATE AS SPECIFIED ON THE ATTACHED POWER OF
ATTORNEY.

ULICO STANDARD OF AMERICA
CASUALTY COMPANY
(A California Corporation)

By _____
PETER BOTZ
ATTORNEY-IN-FACT

I certify under penalty of perjury that I am a licensed bail agent of ULICO STANDARD OF AMERICA CASUALTY COMPANY
and that I am executing this bond on_____
(DATE)
at_____
(LOCATION)
_____
(SIGNATURE OF LICENSED AGENT)

THE PREMIUM CHARGED FOR
THIS BOND IS: $ _____

Approved this _____ day of _____ , 20_____
_____ Title

UL-0002 (08-11)

**ULICO  STANDARD OF AMERICA
CASUALTY COMPANY**
TWO JINN, INC.
GENERAL AGENT

1959 Palomar Oaks Way, Suite 200
Carlsbad, CA 92011
Telephone (800) 808-2245   Fax (760) 431-2698

ALADDIN BAIL BONDS
CLAIMS DIVISION
1762 Technology Drive, Suite 124
San Jose, CA 95110
Telephone (408) 350-9180   Fax (408) 487-8692
License # 1843442

(PLACE BAIL AGENT'S ADDRESS STAMP HERE)

# INDICTMENT BAIL BOND

NO._____
(POWER OF ATTORNEY WITH THIS NUMBER MUST BE ATTACHED )

IN THE_____ COURT OF THE _____ JUDICIAL DISTRICT

COUNTY OF _____ , STATE OF _____

THE PEOPLE OF THE STATE OF _____ ,

Plaintiff,                    CASE NO. _____

vs.                           DIV. NO._____

_____
Defendant.

An indictment having been found on the _____ day of _____ , 20 _____ in the Superior Court of

the County of _____ , charging Defendant _____
                                                                              (NAME OF DEFENDANT)

with the crime of _____ , a felony, and Defendant _____

having been admitted to bail in the sum of _____ Dollars ($ _____ )

Now, the ULICO STANDARD OF AMERICA CASUALTY COMPANY, a California Corporation hereby undertakes that the above-named defendant will appear in the above-named court on the date above set forth to answer any charges in any accusatory pleading based upon the acts supporting the complaint filed against him/her and as duly authorized amendments thereof, in whatever court it may be filed and prosecuted, and will at all times hold him/herself amenable to the orders and process of the court, and if convicted, will appear for pronouncement of judgment or grant of probation; or if he/she fails to perform either of these conditions, that the ULICO STANDARD OF AMERICA CASUALTY COMPANY, a California Corporation, will pay the people of the said State the sum of_____
dollars ($_____

If the forfeiture of this bond be ordered by the Court, judgment may be summarily made and entered forthwith against the said ULICO STANDARD OF AMERICA CASUALTY COMPANY a California Corporation, for the amount of its undertaking herein as provided by State Law.

THIS BOND IS VOID IF WRITTEN FOR AN AMOUNT GREATER THAN THE POWER OF ATTORNEY ATTACHED HERETO, IF MORE THAN ONE SUCH POWER IS ATTACHED, OR IF WRITTEN AFTER THE EXPIRATION DATE AS SPECIFIED ON THE ATTACHED POWER OF ATTORNEY.

ULICO STANDARD OF AMERICA
CASUALTY COMPANY
(A California Corporation)

By_____
PETER BOTZ
ATTORNEY-IN-FACT

(SEAL)

I certify under penalty of perjury that I am a licensed bail agent of the ULICO STANDARD OF AMERICA CASUALTY COMPANY

and that I am executing this bond on_____
                                              (DATE)

at _____
        (LOCATION)

_____
(SIGNATURE OF LICENSED AGENT)

THE PREMIUM CHARGED FOR
THIS BOND IS $ _____

Approved this _____ day of_____, 20 _____
_____
(TITLE)

**NOTE: This is an Appearance Bond and cannot be construed as a guarantee for failure to provide payments, back alimony payments, Fines, or Wage Law claims, nor can it be used as a Bond on Appeal.**

UL-0003 (08-11)

---

# CERTIFICATE OF DISCHARGE BOND
## ULICO STANDARD OF AMERICA CASUALTY COMPANY

POWER AMT. $ _____

POWER NO. _____ this is to certify that on or about the

day of_____, 20 _____, the bond with the

corresponding power number has been discharged of record. Date of Discharge _____

**TO THE CLERK OF THE COURT**
Will you please check your records for the bond listed above. When the bond has been exonerated, please enter the date of exoneration, sign and return this form to:

Aladdin Bail Bonds
1959 Palomar Oaks Way, Suite 200
Carlsbad, CA 92011

Title_____

By _____

Bond Amount $ _____

Defendant _____

Court _____

Date Filed _____



**WE GET YOU OUT, WE GET YOU THROUGH IT.®**

# PROMISSORY NOTE

On Demand, without grace, I / We, the undersigned, promise to pay to the order of **Aladdin Bail Bonds**, the premium

balance of _____ dollars ($_____);

for Bail Bond #(s) _____

posted on _____, pursuant to obligations set forth in the Indemnity Agreement

guaranteeing the full payment of premiums in consideration for the bail bond posted on behalf of the defendant

_____. Balance payable in lawful money of the

United States of America as outlined in the payment schedule set forth below.

## PAYMENT SCHEDULE

| Date:_____ | Payment Amount: $_____ | Date:_____ | Payment Amount: $_____ |
|---|---|---|---|
| Date:_____ | Payment Amount: $_____ | Date:_____ | Payment Amount: $_____ |
| Date:_____ | Payment Amount: $_____ | Date:_____ | Payment Amount: $_____ |
| Date:_____ | Payment Amount: $_____ | Date:_____ | Payment Amount: $_____ |

Or in the following manner: _____

_____

_____

_____

If a default in payment occurs, the entire balance becomes due and payable immediately. In the event that suit is instituted to collect this note or any portion thereof, the undersigned promises to pay such additional sum(s) as the court may adjudge reasonable as attorney fees and costs of instituting said suit. I understand this is an application for a type of credit and I authorize review of my credit history via credit reporting agency inquiries.

**I have read the indemnity agreement and agree to the terms of this promissory note:**

| | | ( ) | |
|---|---|---|---|
| Indemnitor (Agent Print Name) | Indemnitor Signature | Phone# | Date |

| | | ( ) | |
|---|---|---|---|
| Indemnitor (Agent Print Name) | Indemnitor Signature | Phone# | Date |

| | | ( ) | |
|---|---|---|---|
| Indemnitor (Agent Print Name) | Indemnitor Signature | Phone# | Date |

| | | ( ) | |
|---|---|---|---|
| Indemnitor (Agent Print Name) | Indemnitor Signature | Phone# | Date |

| | | ( ) | |
|---|---|---|---|
| Defendant (Agent Print Name) | Defendant Signature | Phone# | Date |

AL-PN (1-/05) Ω

# RECEIPT FOR COLLATERAL DEPOSITED
## ULICO STANDARD OF AMERICA CASUALTY COMPANY

**DEPOSITOR'S COPY  UL-0401-03**

DATE _____ YEAR _____     POWER NO.

Received of _____
(NAME OF DEPOSITOR)                    (ADDRESS)
as security for the execution of this Bail Bond written in the sum of $_____ on behalf of the defendant _____
the following described collateral _____
_____
_____

AGENCY_____  BY (Print Name) _____
_____  (Signature) _____

Said Collateral is deposited as security for the payment of any sums which may become due to the Agency or the "Surety" by the terms of the Bail Bond Agreement executed by the said Defendant and Indemnitors, all of the terms of which are made a part of this receipt by this reference.

Use of collateral or premium receipt forms other than those authorized by ULICO Standard of America Casualty Company are prohibited. ULICO Standard of America Casualty Company will not be responsible for cash or other valuables in connection with this bond unless listed in the appropriate collateral or premium portions of this form. Collateral will be returned only to depositor. No collateral will be returned until the Court has furnished written evidence the bond has been exonerated and this receipt is returned.

The above conditions are agreed to _____
(DEPOSITOR)                    (ADDRESS)

**RECEIPT FOR RETURN OF COLLATERAL**
(DEPOSITOR)                    (ADDRESS)

DATE _____ , YEAR_____

RETURNED TO:_____

DOCUMENT CONTROL NUMBER

---

# RECEIPT and STATEMENT OF CHARGES
## ULICO STANDARD OF AMERICA CASUALTY COMPANY

**DEFENDANT'S COPY  UL-0401-02**

POWER NUMBER

Received of:

NAME _____
ADDRESS _____

Expenses (Itemized in detail, such as Guard Fees, Recording Fees, Notary Fees, Long Distance Calls, Telegrams, Travel and other actual, unusual expenses.)
_____
_____

Was Collateral taken:  (YES)  (NO)  If Yes, only use collateral receipt furnished above.

Name and Address of Bail Bond Agency
_____
By_____

**MEMORANDUM OF BAIL BOND FURNISHED**
Defendant _____  Amount of Bond $_____  Date Filed _____
Charges _____
Date Released _____  Date to Appear _____  Time _____
Case No. _____  Court _____  City _____
Received Copy of above Receipt and Memo
(Signature of Defendant or Depositor)_____

DATE _____ , YEAR_____

$_____
BAIL BOND PREMIUM

$_____
MISC. CHARGES

$_____
TOTAL CHARGES

$_____
RECEIVED ON ACCOUNT

$_____
BALANCE

DOCUMENT CONTROL NUMBER

---

# POWER OF ATTORNEY
## ULICO STANDARD OF AMERICA CASUALTY COMPANY
### VOID IF NOT ISSUED BY:

**COURT COPY  UL-0401-01**

VERIFY FIRST: 1. THE FACE OF THIS FORM IS PRINTED IN RED, BLUE AND BLACK INK, WITH A MULTI COLORED BACKGROUND. 2. THE PAPER THIS FORM IS PRINTED ON CONTAINS A TRUE WATERMARK, HOLD UP TO A LIGHT SOURCE TO SEE THE WORDS "VERIFY FIRST" AND "SAFE" IN THE PAPER. A LOOK CLOSELY AT THE SIGNATURE BORDER LINE - YOU MAY NOTE MASTERPRINTING IT IS MADE UP OF REPEATING LETTERS THAT READ "DOCUMENT"

POWER AMOUNT $              POWER NO.

KNOW ALL MEN BY THESE PRESENTS that ULICO Standard of America Casualty Company, a corporation duly organized and existing under the laws of the State of Utah and by the authority of the resolution adopted by the Board of Directors at a meeting duly called and held on _____ which said resolution has not been amended or rescinded, does constitute and appoint and by these presents does make, constitute and appoint the named agent its true and lawful Attorney-in-Fact for it and in its name, place and stead, to execute seal and deliver for and on its behalf and as its act and deed, as surety, a bail bond only. Authority of such Attorney-in-Fact is limited to appearance bonds and cannot be construed to guarantee defendant's future lawful conduct, adherence to travel limitations, fines, restitution, payments or penalties, or any other condition imposed by a court not specifically related to court appearance.

This Power of Attorney is for use with Bail Bonds only. Not valid if used in connection with Federal Immigration Bonds. Not valid for Federal Bail Bonds. This power void if altered or erased, void if used with other powers of this company or in combenation with powers from any other surety company, void if used to furnish bail in excess of the stated face amount of this power, and can only be used once.

The obligation of the company shall not exceed the sum of

and provided this Power-of-Attorney is filed with the bond and retained as a part of the court records. The said Attorney-in-Fact is hereby authorized to insert in this Power-of-Attorney the name of the person on whose behalf this bond was given.

IN WITNESS WHEREOF, ULICO STANDARD OF AMERICA CASUALTY COMPANY has caused these presents to be signed by its duly authorized attorney-in-fact, proper for the purpose and its corporate seal to be hereunto affixed this_____ day of _____, year_____,

Bond Amount $ _____
Defendant _____
Court _____
City _____
State _____
If rewrite, original # _____
Executing Agent _____

By _____
Peter Botz
Attorney-in-Fact
**FOR STATE USE ONLY**
NOT VALID IF USED IN FEDERAL COURT

DOCUMENT CONTROL NO.
For Internal Use Only

NOT POWER NUMBER

UL-0401 (08-1)

**DEPOSITOR'S COPY  UL-0401-03**

# RECEIPT FOR COLLATERAL DEPOSITED
## ULICO  STANDARD OF AMERICA CASUALTY COMPANY

DATE _____ YEAR _____                POWER NO. _____

Received of _____
    (NAME OF DEPOSITOR)                    (ADDRESS)

as security for the execution of this Bail Bond written in the sum of $_____ on behalf of the defendant _____
the following described collateral _____
_____

AGENCY_____    BY (Print Name) _____
                                        (Signature) _____

Said Collateral is deposited as security for the payment of any sums which may become due to the Agency or the "Surety" by the terms of the Bail Bond Agreement executed by the said Defendant and Indemnitors, all of the terms of which are made a part of this receipt by this reference.

Use of collateral or premium receipt forms other than those authorized by ULICO Standard of America Casualty Company are prohibited. ULICO Standard of America Casualty Company will not be responsible for cash or other valuables in connection with this bond unless listed in the appropriate collateral or premium portions of this form. Collateral will be returned only to depositor. No collateral will be returned until the Court has furnished written evidence the bond has been exonerated and this receipt is returned.

The above conditions are agreed to _____
                (DEPOSITOR)                         (ADDRESS)

_____
                (DEPOSITOR)                         (ADDRESS)

**RECEIPT FOR RETURN OF COLLATERAL**                    DOCUMENT CONTROL NUMBER

DATE _____, YEAR _____
RETURNED TO:_____

---

**DEFENDANT'S COPY  UL-0401-02**

# RECEIPT and STATEMENT OF CHARGES
## ULICO  STANDARD OF AMERICA CASUALTY COMPANY

POWER NUMBER

Received of:

NAME _____
ADDRESS _____

Expenses (Itemized in detail, such as Guard Fees, Recording Fees, Notary Fees, Long Distance Calls, Telegrams, Travel and other actual, unusual expenses.)
_____
_____

Was Collateral taken:  (YES)  (NO)  If Yes, only use collateral receipt furnished above.

Name and Address of Bail Bond Agency
_____

By _____

**MEMORANDUM OF BAIL BOND FURNISHED**
Defendant_____    Amount of Bond $_____    Date Filed _____
Charges_____
Date Released _____    Date to Appear_____    Time _____
Case No._____    Court _____    City _____
Received Copy of above Receipt and Memo
(Signature of Defendant or Depositor)_____

DATE _____, YEAR_____

$_____
BAIL BOND PREMIUM

$_____
MISC. CHARGES

$_____
TOTAL CHARGES

$_____
RECEIVED ON ACCOUNT

$_____
BALANCE

DOCUMENT CONTROL NUMBER

---

**COURT COPY  UL-0401-01**

VERIFY FIRST   1. THE FACE OF THIS FORM IS PRINTED IN RED, BLUE AND BLACK INKS WITH A PALER COLORED BACKGROUND.  2. THE PAPER THIS FORM IS PRINTED ON CONTAINS A "TRUE" WATERMARK. HOLD UP TO A LIGHT SOURCE TO SEE THE WORDS "VERIFY FIRST" AND "SAIC" IN THE PAPER.  3. [illegible] — YOU MAY NEED MAGNIFICATION. IF IT IS MADE UP OF REPEATING LETTERS THAT READ TWO-WAY(S)(?)

# POWER OF ATTORNEY
## ULICO  STANDARD OF AMERICA CASUALTY COMPANY
**VOID IF NOT ISSUED BY:**

**POWER AMOUNT $**                    **POWER NO.**

KNOW ALL MEN BY THESE PRESENTS that ULICO Standard of America Casualty Company, a corporation duly organized and existing under the laws of the State of Utah and by the authority of the resolution adopted by the Board of Directors at a meeting duly called and held on _____ which said Resolution has not been amended or rescinded, does constitute and appoint and by these presents does make, constitute and appoint the named agent its true and lawful Attorney-in-Fact for it and in its name, place and stead, to execute seal and deliver for and on its behalf and as its act and deed, as surety, a bail bond only.  Authority of such Attorney-in-Fact is limited to appearance bonds and cannot be construed to guarantee defendant's future lawful conduct, adherence to travel limitations, fines, restitution, payments or penalties, or any other condition imposed by a court not specifically related to court appearance.

This Power of Attorney is for use with Bail Bonds only. Not valid if used in connection with Federal Immigration Bonds. Not valid for Federal Bail Bonds. This power void if altered or erased, void if used with other powers of this company or in combination with powers from any other surety company, void if used to furnish bail in excess of the stated face amount of this power, and can only be used once.

The obligation of the company shall not exceed the sum of _____

And provided this Power-of-Attorney is filed with the bond and retained as a part of the court records. The said Attorney-in-Fact is hereby authorized to insert in the Power-of-Attorney the name of the person on whose behalf this bond was given.

IN WITNESS WHEREOF, ULICO STANDARD OF AMERICA CASUALTY COMPANY has caused these presents to be signed by its duly authorized attorney-in-fact, proper for the purpose and its corporate seal to be hereunto affixed this_____ day of _____, year_____.

Bond Amount  $ _____
Defendant _____
Court _____
City _____
State _____
If rewrite, original # _____
Executing Agent _____

By _____
Peter Botz
Attorney-in-Fact
**FOR STATE USE ONLY**
NOT VALID IF USED IN FEDERAL COURT

DOCUMENT CONTROL NO.
For Internal Use Only

NOT POWER NUMBER

(seal: STANDARD OF AMERICA CASUALTY INCORPORATED JUNE 18 1993 CALIFORNIA)

UL-0401 (04-11)



# SUPERVISED
# BAIL PROGRAM

Client Name: _____    Date of Birth: _____

Bond No.: _____    Amount: $ _____

Additional Bonds:

#2 _____    Amount: $ _____

#3 _____    Amount: $ _____

#4 _____    Amount: $ _____

#5 _____    Amount: $ _____

(Additional bonds on reverse side of page)


I, _____, the above-named client, understand and agree that as a condition of my release, in addition to the terms and conditions set forth in the Indemnity Agreement for Surety Bail Bond, the Conditions of Bail, and any other bail transaction documents executed by me, I WILL COMPLY WITH THE TERMS OF THE ALADDIN SUPERVISED BAIL PROGRAM DESCRIBED BELOW.

You, the Client, have been released on a Supervised Bail Bond. As a condition of this bond, you are required to check in with Aladdin's Customer Service Department the next business day following your release.

### The Aladdin Bail Bonds Customer Service Department is open
### Monday through Friday between the hours of 8:00 a.m. and 4:30 p.m. PST.

### The telephone number is: 1-866-388-6888

When you call, please be ready to provide the following information:
- ✓ Your Name
- ✓ Your Bond Number(s)
- ✓ Your Driver's License Number
- ✓ Your Social Security Number
- ✓ A list of 5 references (names and phone numbers).
    - *We will not contact your references unless we are unable to contact you.*
- ✓ Employment information
- ✓ Relative information (this includes addresses and phone numbers)

A processing agent will ask you a series of questions and go over the Supervised Bail procedures with you. You will be given a client code and a weekly check-in phone number. The process will take about 15 minutes. Please have the above information and the attached instruction sheet available when calling.

**FAILURE TO CHECK IN ON THE SCHEDULE DATES AND TIMES MAY RESULT IN THE CANCELLATION OF YOUR BAIL BOND AND YOUR SURRENDER TO CUSTODY.**


Client Signature: _____    Date: _____


Agent Signature: _____    Date: _____

AL-SBP1 (1/08) Ω



# CLIENT'S SUPERVISED BAIL PROGRAM
# COMPLIANCE PROCEDURES

**(Complete this form with your Customer Service Representative when you call)**

1. You are required to check in by calling **888-483-4455** every week on your call-in day and after each court appearance.

**Your call-in day is:** _____

(This day will be provided by the processing agent when you call in.)

2. When calling, enter your client code as prompted followed by the # sign.

**Your client code is:** _____

(This code will be provided by the processing agent when you call in.)

3. The automated system will guide you through a series of prompts. You will be asked to state the following information (Please speak loud and clearly):

   ✓ Your Name

   ✓ Your Client Code

   ✓ The date, time and location for your next court appearance. (If you have multiple bonds and multiple court dates, indicate each appearance date, time and location)

   ✓ The telephone number from which you are calling

   ✓ Update any changes in your residence, employment, or contact telephone numbers

If you have any questions, please direct them to your Aladdin Bail Bonds Customer Service Representative. We want to assist you in every way possible; however, there are certain conditions that must be met. The conditions set forth in the Supervised Bail Program are mandatory.

Please remember that:

**FAILURE TO CHECK IN ON THE SCHEDULED DATES AND TIMES MAY RESULT IN THE CANCELLATION OF THE BAIL BOND AND THE CLIENT'S SURRENDER TO CUSTODY.**

AL-SBP2 (1/08) Ω

# Aladdin®

Bail Bonds

WE GET YOU OUT  WE GET YOU THROUGH IT ®

# STATEMENT of CHARGES

Account Number

**Aladdin Bail Bonds**

| Power Numbers |
|---|
| |

Date:
Total Premium
Total Expenses
Total Charges

Received on Account

Balance:

**Expenses (Itemized)**
Bond Fee

**Was Collateral Taken:**  Yes     No
**Type:**

Agent Name _____

---

## MEMORANDUM OF BAIL BOND FURNISHED

DEFENDANT _____    DATE OF BIRTH _____    DATE FILED _____

JAIL NAME _____    LOCATION _____    BOOKING # _____

---

BOND NO _____    CASE NO _____    BOND AMOUNT $ _____

CHARGES _____    COURT _____

APPEARANCE DATE _____    TIME _____    LOCATION _____

REWRITE BOND NO _____    ORIGINAL AMNT $ _____    PREMIUM $ _____

---

BOND NO _____    CASE NO _____    BOND AMOUNT $ _____

CHARGES _____    COURT _____

APPEARANCE DATE _____    TIME _____    LOCATION _____

REWRITE BOND NO _____    ORIGINAL AMNT $ _____    PREMIUM $ _____

---

**TOTAL BAIL AMOUNT $** _____**TOTAL PREMIUM $** _____

RECEIVED COPY OF ABOVE RECEIPT _____

Page 1 of 1                                                                      ALSC-60

# *Aladdin* ®

**BAIL BONDS**
WE GET YOU OUT, WE GET YOU THROUGH IT. ®

Aladdin Bail Bonds

# PAYMENT RECEIPT

Receipt Number
Account Number

| Power Numbers |
|---|
|  |

Payment Date

Previous Balance

Payment  Amount

New Balance

**Received from:**

| Payment Method |
|---|

## BAIL BOND INFO

DEFENDANT_____ DATE OF BIRTH_____ BOND DATE_____

TOTAL BAIL AMOUNT $ _____ TOTAL PREMIUM $ _____

## COURT DATES

<u>CourtDate</u>

BOND NUMBER _____ Case No _____ Bond Amount $ _____

Court Date _____ Time _____ Court _____

Room/Div_____ Location _____

BOND NUMBER _____ Case No _____ Bond Amount $ _____

Court Date _____ Time _____ Court _____

Room/Div_____ Location _____

**IMPORTANT:  Aladdin Bail Bonds does not guarantee the accuracy of the court date information contained herein.  Please verify the information with the court and let us know of any changes.**                              ALPR-61

*Ulico Standard of America Casualty Company*

## Bail Bond Rate & Risk Classification Criteria

## The Following Rates Will Be Charged On All Bail Bonds

## State of California

**State Bonds**:

All bail bonds, except Qualified Bail Bonds as defined below, are to be rated as follows:

- Bonds up to and including $499.00 in liability will be charged $50.00, plus $15.00
- Bonds over $499.00 in liability will be charged 10% of the penal amount, plus $15.00

**Qualified Bail Bonds**:

Bail bonds may be qualified for preferred rating in the following circumstances:

- Individuals who have retained counsel;
- Individuals who are members of a qualified labor union; and
- Individuals who are active duty members of the U.S. Armed Services, who are veterans of the U.S. Armed Services, and who are immediate families of active duty and veteran members of the U.S. Armed Services. Immediate families are defined as parents, children, and spouses.

Qualified Bail Bonds are to be rated as follows:

- Bonds up to and including $600.00 in liability will be charged $50.00, plus $15.00
- Bonds over $600.00 in liability will be charged 8% of the penal amount, plus $15.00

**Bail Bond Minimum Premium**:

A minimum premium charge of $50.00 applies per bond. The $15.00 is not included in the calculation of the minimum premium.

*Ulico Standard of America Casualty Company*

Exhibit 21

Supplemental Information

Reference Approved Filings:

Danielson National Insurance Company: CDI App. No. 08-1743

STATE OF CALIFORNIA                                    Steve Poizner, *Insurance Commissioner*

**DEPARTMENT OF INSURANCE**
RATE REGULATION BRANCH
300 SOUTH SPRING STREET
LOS ANGELES, CA 90013
www.insurance.ca.gov

April 11, 2008

Danielson National Insurance Company
attn.: Patrick E. Pawlowski, Regulatory/Product Analyst
25 Dogie Court
San Ramon, CA 94583

RE: **APPROVAL OF APPLICATION**

DANIELSON NATIONAL INSURANCE COMPANY has submitted the following application for approval regarding the following line of business or program:

| | |
|---|---|
| **CDI App. No(s).:** | 08-1743 |
| **Insurer File No(s).:** | CA BB 080201 |
| **Line(s) of Insurance:** | Commercial Surety |
| **Program:** | Bail Bonds |

Only the change(s) specifically indicated in the application set forth above, as it may have been amended, is (are) approved. Nothing in this letter shall constitute approval of any other application, whether incorporated by reference, or filed prior or subsequent to the application set forth above DANIELSON NATIONAL INSURANCE COMPANY shall begin issuing policies pursuant to this approval within 90 days of the date of this approval, provided that the insurer is licensed in California to transact the line of insurance for which the approval is given. DANIELSON NATIONAL INSURANCE COMPANY may implement this approval earlier if it is able to do so. Regardless of the implementation date, DANIELSON NATIONAL INSURANCE COMPANY shall implement this approval with the same effective date for both new and renewal business and shall offer this product to all eligible applicants as of the implementation date. This approval shall continue to have full force and effect until such time as a subsequent change for the referenced lines or programs may be approved or ordered by the Insurance Commissioner.

If any portion of the application or related documentation conflicts with California law, that portion is specifically not approved. This approval does not constitute an approval of underwriting guidelines nor the specific language, coverages, terms, covenants and conditions contained in any forms, or of the forms themselves. Policy forms and underwriting guidelines included in this filing were reviewed only insofar as they relate to rates contained in this filing or currently on file with the California Department of Insurance. Any subsequent changes to underwriting guidelines or coverages, terms, covenants and conditions contained in any forms must be submitted with supporting documentation when those changes result in any rating impact. The Commissioner may at any time take any action allowed by law if he determines that any underwriting guidelines, forms or procedures for application of rates, or any other portions of the application conflict with any applicable laws or regulations.

Sincerely,

Kenneth Allen, CPCU
Bureau Chief, LA-3 Rate Filing Bureau
Telephone: (213) 346-6783
Facsimile: (213) 897-6181
E-Mail: *Allenk@insurance.ca.gov*
Website: *www.insurance.ca.gov*

STATE OF CALIFORNIA                                                    Dave Jones, *Insurance Commissioner*

**DEPARTMENT OF INSURANCE**
RATE REGULATION BRANCH
300 SOUTH SPRING STREET
LOS ANGELES, CA 90013
www.insurance.ca.gov



October 27, 2011

Ulico Standard of America Casualty Company
attn.: Francis E. Lauricella, Jr.
Chief Financial Officer and Secretary
475 Gate 5 Road, Suite 320
Sausalito, CA 94965

RE: **APPROVAL OF APPLICATION**

ULICO STANDARD OF AMERICA CASUALTY COMPANY has submitted the following application for approval regarding the following line of business or program:

| | |
|---|---|
| **CDI App. No(s).:** | 11-6920 |
| **Insurer File No(s):** | N/A |
| **Line(s) of Insurance:** | Commercial Surety |
| **Program:** | Bail Bonds |

Only the change(s) specifically indicated in the application set forth above, as it may have been amended, is (are) approved. Nothing in this letter shall constitute approval of any other application, whether incorporated by reference, or filed prior or subsequent to the application set forth above. ULICO STANDARD OF AMERICA CASUALTY COMPANY shall begin issuing policies pursuant to this approval within 90 days of the date of this approval, provided that the insurer is licensed in California to transact the line of insurance for which the approval is given. ULICO STANDARD OF AMERICA CASUALTY COMPANY may implement this approval earlier if it is able to do so. Regardless of the implementation date, ULICO STANDARD OF AMERICA CASUALTY COMPANY shall implement this approval with the same effective date for both new and renewal business and shall offer this product to all eligible applicants as of the implementation date. This approval shall continue to have full force and effect until such time as a subsequent change for the referenced lines or programs may be approved or ordered by the Insurance Commissioner.

If any portion of the application or related documentation conflicts with California law, that portion is specifically not approved. This approval does not constitute an approval of underwriting guidelines nor the specific language, coverages, terms, covenants and conditions contained in any forms, or of the forms themselves. Policy forms and underwriting guidelines included in this filing were reviewed only insofar as they relate to rates contained in this filing or currently on file with the California Department of Insurance. Any subsequent changes to underwriting guidelines or coverages, terms, covenants and conditions contained in any forms must be submitted with supporting documentation when those changes result in any rating impact. The Commissioner may at any time take any action allowed by law if he determines that any underwriting guidelines, forms or procedures for application of rates, or any other portions of the application conflict with any applicable laws or regulations.

Sincerely,

Kenneth Allen, CPCU, AIE
Bureau Chief, LA-3 Rate Filing Bureau
Telephone: (213) 346-6783
Facsimile: (213) 897-6181
E-Mail: *Allenk@insurance.ca.gov*
Website: *www.insurance.ca.gov*

## Hiltgen, Mary

| | |
|---|---|
| **From:** | Hank Lauricella [hlauricella@fl-advisors.com] |
| **Sent:** | Wednesday, October 12, 2011 12:12 PM |
| **To:** | Hiltgen, Mary |
| **Cc:** | 'Cerny, Robert J.'; asterett@svinsco.com |
| **Subject:** | RE: CDI File No. 11-6920, Commercial Surety New Program Filing |

Dear Ms. Hiltgen,

Thank you for your letter dated yesterday October 11. I am writing to respond to the points that you raised.

Regarding the underwriting guidelines, you are certainly correct that the Form A approval does not extend to the Prior Approval Application and that the Rate Regulation Branch must separately review and approve the underwriting guidelines. I included the Form A "Plan of Operation" of Ulico Standard of America Casualty Company ("Ulico Standard") as an attachment to my letter of October 7 because it details our underwriting guidelines. I also attached to my October 7th letter Two Jinn, Inc.'s Underwriting Guidelines, which specify the underwriting procedures to which Ulico Standard has required Two Jinn to adhere as part of the Program Manager agreement referenced in that letter and included in the Form A. I am ready and willing to discuss with you any additional questions regarding Ulico Standard's underwriting guidelines that you might have.

Moreover, I apologize that the issue you raised in your September 29th letter regarding renewal premiums remains unresolved. In my letter of October 7, I edited the attached "Bail Bonds Rate Manual Exceptions Page" to state that no annual renewal premium would be charged. I have attached this document herein. Is there another page where I should make a similar clarification? Please let me know precisely which page is the Rating Plan Page.

Finally, to grant the CDI sufficient time to review Ulico Standard's responses to the questions raised and to process the filing, Ulico Standard respectfully waives the deemer date of October 18, 2011.

Please contact me if you have any questions or require any additional information for this filing. Thank you.

Sincerely,


Francis E. Lauricella
Chief Financial Officer and Secretary
Ulico Standard of America Casualty Company
(415) 730-8945
hlauricella@fl-advisors.com

**From:** Hiltgen, Mary [mailto:Mary.Hiltgen@insurance.ca.gov]
**Sent:** Tuesday, October 11, 2011 11:50 AM
**To:** 'Hank Lauricella'
**Cc:** Tu, Jerome; Allen, Ken
**Subject:** CDI File No. 11-6920, Commercial Surety New Program Filing
**Importance:** High


Dear Mr. Lauricella:

Thank you for your emails and attachments dated October 7, 2011. We are currently reviewing the responses. Please note the following:

1) Form A  Application

You referenced Form A in your responses.  As that review is separate from and not inclusive of the Prior Approval Application, Underwriting
Guidelines or any component of the rating plan is reviewed by the Rate Regulation Branch and subject to approval by RRB.   In other words,
if the Underwriting Guidelines or any other filed materials are objectionable in any part,  RRB has the authority to request revisions.   The May 17, 2011
Approval regarding Form A, etc. does not extend to the Prior Approval Application.

2)   Renewal Premiums
The filed Rating Plan Page does not reference Renewal Premiums.  We request, once again, that the Rating Plan Page be revised pursuant to CIC Sections 1861.01(c), 1861.05(a), CCR Sections 2648.4(a)(b) and 2646.5.  Please provide a revised rate plan page to include a statement that the company will not charge renewal premiums on the bail bonds.

3)   Waiver of the Deemer Provision
A brief summation of the Prior Approval filing process appears appropriate for clarification purposes.

All Prior Approval applications are processed through the CDI Intake Unit in San Francisco.   The application is checked for completeness, that is, for all documents that relate to the type of filing category.   The Intake Unit analyst accepts or rejects the application.  If accepted a CDI file number is assigned and the information is added to our computer database.   Depending on the volume of filings, the processing time in the Intake Unit can vary.   Once a file number is assigned, the filing is then assigned to the appropriate analysts, either in Los Angeles or San Francisco.

Depending on the analyst's workload the processing time varies for reviewing filings and making recommendations.  If additional information is needed, as in the proposed subject filing, then additional time is required.  Once the analyst completes the review and makes a recommendation (approve or disapprove), then the filing is sent to management for their review.   We understand that the process may appear lengthy but considering the number of filings, the CDI does an excellent and expeditious job in the review process.

If a company declines to waive the deemer provisions, as indicated in your correspondence of October 7, 2011, there are two basic options available:
1)    the company may withdraw the entire filing and re-file at a later date or

2)    the CDI RRB will consider a referral to the Legal Division to prepare the filing for a Notice of Hearing pursuant to Article 6, Sections 2646.1(a)(b)(c), 2646.2, 2646.4(a)(b) and 2646.5 of the California Code of Regulations.


We are unable to complete the review of this filing prior to the deemer date of Oct. 18, 2011.  We are unable to recommend approval at this time.  We
respectfully request, once again, that the company submit a request to waive the deemer provision by October 12, 2011.

Thank you for your attention to this matter.

Mary Hiltgen, CPCU, AU
Associate Insurance Rate Analyst
Rate Regulation Branch – Los Angeles

## *Ulico Standard of America Casualty Company*

# Bail Bond Rate & Risk Classification Criteria

# The Following Rates Will Be Charged On All Bail Bonds

# State of California

**State Bonds**:

All bail bonds, except Qualified Bail Bonds as defined below, are to be rated as follows:

- Bonds up to and including $499.00 in liability will be charged $50.00, plus $15.00
- Bonds over $499.00 in liability will be charged 10% of the penal amount, plus $15.00

**Qualified Bail Bonds**:

Bail bonds may be qualified for preferred rating in the following circumstances:

- Individuals who have retained counsel;
- Individuals who are members of a qualified labor union; and
- Individuals who are active duty members of the U.S. Armed Services, who are veterans of the U.S. Armed Services, and who are immediate families of active duty and veteran members of the U.S. Armed Services. Immediate families are defined as parents, children, and spouses.

Qualified Bail Bonds are to be rated as follows:

- Bonds up to and including $600.00 in liability will be charged $50.00, plus $15.00
- Bonds over $600.00 in liability will be charged 8% of the penal amount, plus $15.00

**Bail Bond Minimum Premium**:

A minimum premium charge of $50.00 applies per bond. The $15.00 is not included in the calculation of the minimum premium.

**Renewal Premium**:

No annual renewal premium will be charged.

**Hiltgen, Mary**

| | |
|---|---|
| **From:** | Hiltgen, Mary |
| **Sent:** | Tuesday, October 11, 2011 11:50 AM |
| **To:** | 'Hank Lauricella' |
| **Cc:** | Tu, Jerome; Allen, Ken |
| **Subject:** | CDI File No. 11-6920, Commercial Surety New Program Filing |
| **Importance:** | High |

Dear Mr. Lauricella:

Thank you for your emails and attachments dated October 7, 2011.   We are currently reviewing the responses.  Please note the following:

1) Form A  Application
You referenced Form A in your responses.  As that review is separate from and not inclusive of the Prior Approval Application, Underwriting
Guidelines or any component of the rating plan is reviewed by the Rate Regulation Branch and subject to approval by RRB.   In other words,
if the Underwriting Guidelines or any other filed materials are objectionable in any part,  RRB has the authority to request revisions.  The May 17, 2011
Approval regarding Form A, etc. does not extend to the Prior Approval Application.

2) Renewal Premiums
The filed Rating Plan Page does not reference Renewal Premiums.  We request, once again, that the Rating Plan Page be revised pursuant to CIC Sections 1861.01(c), 1861.05(a), CCR Sections 2648.4(a)(b) and 2646.5.  Please provide a revised rate plan page to include a statement that the company will not charge renewal premiums on the bail bonds.

3) Waiver of the Deemer Provision
A brief summation of the Prior Approval filing process appears appropriate for clarification purposes.

All Prior Approval applications are processed through the CDI Intake Unit in San Francisco.   The application is checked for completeness, that is, for all documents that relate to the type of filing category.  The Intake Unit analyst accepts or rejects the application.  If accepted a CDI file number is assigned and the information is added to our computer database.   Depending on the volume of filings, the processing time in the Intake Unit can vary.   Once a file number is assigned, the filing is then assigned to the appropriate analysts, either in Los Angeles or San Francisco.

Depending on the analyst's workload, the processing time varies for reviewing filings and making recommendations.  If additional information is needed, as in the proposed subject filing, then additional time is required.  Once the analyst completes the review and makes a recommendation (approve or disapprove), then the filing is sent to management for their review.  We understand that the process may appear lengthy but considering the number of filings, the CDI does an excellent and expeditious job in the review process.

If a company declines to waive the deemer provisions, as indicated in your correspondence of October 7, 2011, there are two basic options available:
   1)   the company may withdraw the entire filing and re-file at a later date or

   2)   the CDI RRB will consider a referral to the Legal Division to prepare the filing for a Notice of Hearing pursuant to Article 6, Sections 2646.1(a)(b)(c), 2646.2, 2646.4(a)(b) and 2646.5 of the California Code of Regulations.

We are unable to complete the review of this filing prior to the deemer date of Oct. 18, 2011.  We are

10/11/2011

unable to recommend approval at this time.  We
respectfully request, once again, that the company submit a request to waive the deemer provision by October 12, 2011.

Thank you for your attention to this matter.

Mary Hiltgen, CPCU, AU
Associate Insurance Rate Analyst
Rate Regulation Branch – Los Angeles

10/11/2011

# *Ulico Standard of America Casualty Company*

Francis E. Lauricella, Jr.
Chief Financial Officer
Ulico Standard of America Casualty Company
1959 Palomar Oaks Way, Suite 200
Carlsbad, CA 92011

October 7, 2011

Mary Hiltgen, CPCU, AU
Associate Insurance Rate Analyst
California Dept. of Insurance
Rate Regulation Branch – Los Angeles
300 S Spring Street
Los Angeles, CA 90013-1261

Re:    Ulico Standard of America Casualty Company NAIC: 10004
       Prior Approval Rate Application, CDI File Number 11-6920

Dear Ms. Hiltgen:

I am writing to respond to your email of September 29 regarding the prior approval rate
application that I submitted on July 16 on behalf of Ulico Standard of America Casualty
Company ("Ulico Standard"). I address your points below in the order that you listed them.

1 Prior Approval Rate Application:

Miscellaneous Income:  Due to accounting requirements for insurers writing bail in California,
Ulico Standard of America Casualty Company ("Ulico Standard") will report Miscellaneous
Income that reflects only the portion of the retail bail bond premium retained by the bail bond
agent.  However, none of this Miscellaneous Income will be retained by Ulico Standard.  As such,
I believe that it is inappropriate to include on Page 10 of the rate filing application.  Thus, Page
10 is corrected as originally submitted.

California requires net accounting of bail premiums.  Thus, an insurance company writing bail
only reports as written and earned premiums that portion of the total retail bail premiums that it
retains.  At the same time, California also requires that the amount of the total retail bail
premiums that is retained by the bail agent is reflected on the insurance company's Statement of
Income with an offset in the same amount.   Thus, the full retail bail bond premiums, upon which
state premium taxes are calculated, are disclosed by the insurance company without the portion
retained by the bail bond agent having any impact on the insurance company's net income and
surplus.  In its 2005 Examination Report of American Contractors Indemnity Company, which is
a subsidiary of HCC Insurance Holdings, Inc., and a California-domiciled surety that writes a
significant amount of bail, the California Department of Insurance noted ~~that~~ that American
Contractors followed this convention.  Following this accounting approach, Ulico Standard will
recognize the percentage of retail bail premium retained by Two Jinn, Inc. under "Other Income"
on the Statement of Income as "Finance and service charges not included in premiums", line 13.

charges".  This accounting approach was disclosed to the California Department of Insurance in the "Discussion of the UCAA Pro-Forma Financial Statements" submitted with Seaview Surety Holding, LLC's Form A application in conjunction with its acquisition of Ulico Standard.  The "Discussion of the UCAA Pro-Forma Financial Statements" is attached herein.  The California Department of Insurance approved the Form A application on May 17, 2011, File # APP-2011-00470.

Rate Template and Ratemaking Data (Page 7):  I have made your requested revision.  Earned premium on line 2 is equal to written premium on Line 1.  The revised Page 7 and the revised Rate Template are attached.

2.  <u>Danielson National Insurance Company</u>:  Your comments have been duly noted.

3.  <u>$15.00 Fee</u>:  This fee is charged and retained by the bail bond agent, not by Ulico Standard, to compensate the bail bond agent for administrative expenses incurred by the bail bond agent in connection with bail transactions.  Thus, the $15.00 fee is included in "Finance and service charges not included in premiums" and its offset "Aggregate write-ins for miscellaneous income" referenced above.  (Please refer to #1 Prior Approval Rate Application above.)  The California Department of Insurance has approved these fees in conjunction with bail bonds undertaken by Two Jinn, Inc., on behalf of all of its other insurance companies (Lincoln General Insurance Company, Danielson National Insurance Company, and Western Insurance Company).

4.  <u>Fixed Expenses – Danielson National Insurance Company</u>:  In hindsight, I will admit that paragraph 5 of the Explanatory Memorandum does not clearly convey how Ulico Standard's expenses were estimated.  By contrast, the "Discussion of the UCAA Pro-Forma Financial Statements", submitted with Seaview Surety Holding, LLC's Form A application and attached herein, provides a clear and detailed explanation of Ulico Standard's anticipated expenses.  As you will see, Ulico Standard's expenses are not based on Danielson National's expenses.  Rather Ulico Standard's estimated "Other Underwriting Expenses" were based on detailed analysis of its unique circumstances built from the ground up, including an Administrative Services Agreement, disclosed in the Form A, with its Program Manager Two Jinn, Inc., which will provide Ulico Standard with Information Technology and other management services, including office space.  Ulico Standard will pay to the Program Manager fees that reflect competitive, third party rates for services rendered.  In addition, Ulico Standard's "Other Underwriting Expenses" also include salaries and benefits of Ulico Standard's staff.  In the "Discussion of the UCAA Pro-Forma Financial Statements", Ulico Standard's estimated expenses were then compared to that of a group of comparable bail-only sureties, i.e. effectively a sub-set of Best's property & casualty company data, to make an fair and accurate comparison, given the special operating characteristics of the commercial bail bond business, which includes consistently low ratios and relatively high expense ratios.  Thus, the Rate Template only includes Ulico Standard's expenses and does not include expenses of Danielson National Insurance Company.  As a result, expenses as reflected in the Rate Template do not need to be revised.

Ulico Standard's minimum premium reflects comparable company expense data, including a sub-set of Best's property & casualty company data, as indicated in the paragraph above, and does not reflect the specific expenses of Danielson National.

Hiltgen, Mary
October 7, 2011
Page 3

5. <u>Renewal Premium</u>:  Ulico Standard will not charge renewal premiums.  Therefore, this proposed revision is not applicable.

6. <u>Underwriting Guidelines</u>:  Ulico Standard's underwriting guidelines were discussed in detail in the "Proposed Plan of Operation of Ulico Standard of America Casualty Company" submitted as part of Seaview Surety Holding, LLC's Form A application in conjunction with its acquisition of Ulico Standard.   Please see attached Plan of Operation.   As noted above, the California Department of Insurance approved the Form A application on May 17, 2011, File # APP-2011-00470.  In addition, please see attachment herein of Two Jinn's Underwriting Guidelines that Two Jinn will adhere to while undertaking bail on behalf of Ulico Standard.

7. <u>Bail Bond Forms</u>:  Regarding the four bail bond forms listed on Page 12(a), I simply made a mistake including them.  Please disregard them.  I should have, and subsequently did, submit twenty one forms, included on the Company's Form List, as you noted.  Please find attached herein a revised Page 12(a).  Because there are too many forms to fit on Page 12(a), I make reference on revised Page 12(a) to the attached forms index and forms.

Moreover, per your request, I have attached herein revised Form UL-0100, Form AL-0101, and Form ALSC-60.  These forms now include the name of Ulico Standard of America Casualty Company as and where you indicated.

In addition, per your request, I have submitted page three of Form UL-0100, which was missing in the prior submission.

Furthermore, please note that I withdraw Form UL-0002 (Appeal Bond) and Form UL-0003 (Indictment Bail Bond) for use in California.

Finally, policy forms and endorsements will be issued initially under the name of Ulico Standard of America Casualty Company.  The Company is in the process of having its name changed to Seaview Insurance Company.  As soon as approval of the name change is finalized, including approval by the California Department of Insurance, the Company will notify the Department of its intention to issue the forms under than name of Seaview Insurance Company.

8. <u>Aladdin Bail Bonds</u>:  Ulico Standard will initially appoint Two Jinn, Inc., a California corporation licensed by the California Department of Insurance (the "Program Manager"), as its first licensed bail agent.  The respective rights, duties and obligations of the Ulico Standard and the Program Manager are set forth in the Program Manager Agreement, a draft of which was attached as an exhibit to the Form A Information Statement to which the Plan of Operation related.  As noted herein, the California Department of Insurance approved the <u>Form A</u> application on May 17, 2011, File # APP-2011-00470.  The Program Manager Agreement stipulates underwriting limits up to which Aladdin has authority to transact bail bonds without Ulico Standard's prior approval for each transaction.  The percentages of the total retail bail premiums to be retained by the Program Manager and by Ulico Standard are detailed in "Premium Assumptions and Projections" of the "Discussion of the UCAA Pro-Forma Financial Statements" that was submitted with the Form A and that is attached herein.

9. <u>Waiver of the Deemer Provision</u>:  Given the thoroughness of this response to your letter of September 29th, including detailed relevant information included in the Form A already reviewed and approved by the California Department of Insurance, and given the amount of time that has

Hiltgen, Mary
October 7, 2011
Page 4

already passed since the August 19th public notification date of this prior approval rate application, Ulico Standard respectfully declines the request for a waiver of the October 18, 2011 deemer date.

Please contact me if you have any questions or require any additional information for this filing. Thank you.

Sincerely,

Francis E. Lauricella, Jr.
(415) 730-8945
hlauricella@fl-advisors.com

*Revised*

# RATEMAKING DATA
*(Click + to expand for more than 3 years; - to contract)*

| | |
|---|---|
| **Completed by** | Francis E. Lauricella, Jr. |
| **Date Completed** | 7/18/2011 |
| **Company/Group** | Ulico Standard of America Casualty Co |
| **Line Description** | SURETY |
| **Coverage** | Bail Bonds |

| | %Captive | %Direct | %Independent | (Must add up to 100%) |
|---|---|---|---|---|
| **Marketing System:** | | | 100.00% | |

| | |
|---|---|
| **Prior Effective Date (current rates)** | |
| **Proposed Effective Date (new rates)** | |
| **CDI File Number** *(Department use only)* | 0 |
| **Does the data provided below reflect a Request for Variance?** | No |
| **Variance #** | |
| **Data below is:** | Accident Year Data |

| # | | 2nd Prior Year | 1st Prior Year | Most Recent Year | Projected*/ New Program** |
|---|---|---|---|---|---|
| 1 | California Direct Written Premium | | | | 3,826,000 |
| 2 | California Direct Earned Premium | | | | 3,826,000 |
| 3 | Premium Adjustment Factor (Developed in Exhibit 4) | | | | |
| 4 | Premium Trend Factor * (Developed in Exhibit 5) | | | | |
| 5 | Miscellaneous Fees and Flat Charges (Not included in Line 2; Developed in Exhibit 6) | | | | |
| 6 | Earned Exposure Units | | | | 42,111 |
| 7 | Historic Losses (Projected for New Programs) | | | | 115,641 |
| 8 | Historic Defense and Cost Containment Expense (DCCE) | | | | 42,059 |
| 9 | Loss Development Factor (Developed in Exhibit 7) | | | | |
| 10 | DCCE Development Factor (Developed in Exhibit 7) | | | | |
| 11 | Loss Trend Factor* (Developed in Exhibit 8) | | | | |
| 12 | DCCE Trend Factor* (Developed in Exhibit 8) | | | | |
| 13 | Catastrophe Adjustment Factor (Developed in Exh 9) | | | | |
| 14 | Credibility Factor for Losses & DCCE (Developed in Exhibit 10) | | | | |
| 15 | Excluded Expense Factor (From Page 13) | | | | 0.00% |
| 16 | Ancillary Income   (Developed in Exhibit 11) | | | | - |
| 17 | Projected Federal Income Tax Rate on Investment Income (From Page 14) | | | | 35.00% |
| 18 | Projected Yield (From Page 14) | | | | 0.11% |
| | *Complete 19, 20 & 21 For Earthquake and certain Medical Malpractice with Reinsurance Only (see instructions)* | | | | |
| 19 | Direct Commissions | | | | |
| 20 | Reinsurance Premium    (Developed in Exhibit 12) | | | | |
| 21 | Reinsurance Recoverables (Developed in Exhibit 12) | | | | |
| | Variance Change to Leverage on the basis that the insurer either writes at least 90% of its direct earned premium in one line or writes at least 90% of its direct earned premium in California. (Must be accompanied by Variance Request, subject to CDI approval) | | | | No |
| | Variance Change to Efficiency Standard (Must be accompanied by Variance Request, subject to CDI approval) | | | | |

* For all trend factors, the Projected Column should reflect the annual trend expressed as a percentage.

** For New Programs, please see Rate Filing Instructions, Page 4.

STATE OF CALIFORNIA                                                    Dave Jones, *Insurance Commissi*

## DEPARTMENT OF INSURANCE
300 SOUTH SPRING STREET
LOS ANGELES, CA 90013
(213) 346-6692
(213)346-6824 (FAX)
MHiltgen@insurance.ca.gov          **SENT VIA EMAIL**



September 29, 2011

Mr. Francis E. Lauricella, Jr.
Chief Financial Officer and Secretary
Ulico Standard of America Casualty Company
475 Gate 5 Road, Suite 320
Sausalito, CA. 94965


SUBJECT:     CDI File Number:      11-6920
             Company File Number: N/A
             Line of Insurance:    Commercial Surety
             Deemer Date:          October 18, 2011

Dear Mr. Lauricella:

Thank you for the above referenced application. In order to continue our review, please note the following and our deadline request:

1. **PRIOR APPROVAL RATE APPLICATION**
   Page 10 was not completed; please indicate any fees; note that if the company has Miscellaneous Income, it needs to be reflected in the Rate Template.  (Miscellaneous Income = $0 in the filed template).

   RATE TEMPLATE AND RATEMAKING DATA (PAGE 7)
   Please revise the Rate Template and Page 7 of the application; the earned premium on Line 2 should be equal to the written premium on Line 1, as this is a new program.   The change at Max should be $0, as this is a new program.

   Please submit a revised Rate Template and revised Page 7.

2. **DANIELSON NATIONAL INSURANCE COMPANY**
   Please note that "me too" filings are not acceptable in California.  Each company's filing(s) is reviewed on its own merits for compliance with the California Insurance Code (CIC), the California Code of Regulations, Title 10, Subchapter 4.8 and the CDI's Rate Filing Instructions.


Consumer Hotline (800) 927-HELP • Producer Licensing (800) 967-9331

Page 2

3. **$15.00 FEE**
   Each of the rating tiers includes a $15.00 fee for all bail bonds. Please advise us why the company is charging this fee? Please elaborate and note that this fee should be included in the Rate Template under Misc. Income. Refer to #1 above.

4. **FIXED EXPENSES – DANIELSON NATIONAL INSURANCE COMPANY**
   Please refer to the Explanatory Memorandum, paragraph 5. It is not acceptable in California to adopt the expenses of a competitor company. If the Rate Template includes the expenses of Danielson National Insurance Company, please revise the template to include only Ulico's expenses. Refer to #1. above.

   <u>Minimum Premium</u>
   Minimum Premium may reflect A.M. Best's Aggregates and Averages industry data but not the specific expenses of Danielson's as indicated in the Explanatory Memorandum. Each insurer's expenses differ and it is not acceptable to "me too" another company's expenses in California.

5. **RENEWAL PREMIUM**
   Please revise the Rate Pages to include a Premium Determination Rule for Renewal Premiums. If not applicable, please include the information on the Rate Page.

6. **UNDERWRITING GUIDELINES**
   We noted that no Underwriting Guidelines were included in the filing. Please file a copy of the current Underwriting Guidelines for the filed bonds pursuant to CCR Section 2648.4(a).

7. **BAIL BOND FORMS**
   Please refer to Forms, Page 12(a) of the Prior Approval Application. There are a total of four forms listed. The form numbers differ from those on the Company's Form List which includes twenty one forms. For example, there is no Form BBAP on the Company list of forms or included in the filing. Please revise Forms, Page 12(a) and elaborate why these two lists differ.

   <u>Indemnity Agreement for Surety Bail Bond – UL-0100</u>
   Page 3 of the Indemnity Agreement was not included in the filing. Please submit a copy of Page 3 for our records pursuant to CCR Section 2648.4(a).

   Also, Form UL-0100 does not include the Surety Company's name pursuant to CIC Section 430. Please include the applicable company's name on Page 1 and 2 of UL-0100 and provide a copy of the revised page.

   <u>Company Name</u>
   Please advise if policy forms and endorsements will be issued under the name of Ulico Standard of America Casualty Co. or will they be issued under Seaview Surety due to the recent acquisition of Ulico by Seaview?

Page 3

## 7.  BAIL BOND FORMS (CONTINUED)

Amendment To Indemnity Agreement For Surety Bail Bond – Form AL-0101
Please include the company name on the heading of this form pursuant to CIC
Section 430.

Statement of Charges – Form ALSC-60
Please refer to the Statement of Charges form and include the company name on
the heading of this form pursuant to CIC Section 430 as this is a PREMIUM related
form.

Appeal Bond Bond – UL-0002
Please refer to UL-0002; this is a rate impact form; however, it does not appear
that there are separate rates filed for this form.  Please advise?  The company may
include the rates in the proposed filing or withdraw the form from use in CA.

Indictment Bail Bond – UL-0003
Please refer to UL003; this is a rate impact form and no rates have been filed for
the form.  Please file the rates pursuant to CIC Section 1861.05(a) or withdraw the
form from use in California.

## 8.  ALADDIN BAIL BONDS
Please clarify - is Aladdin Bail Bonds an Agent or MGA for Ulico?  Does Aladdin
have authority to rate all bail bonds and issue the policy (Indemnity Agreement) to
the insured (principal)?   What is the commission percentage paid by ULICO to
Aladdin?

## 9.  WAIVER OF THE DEEMER PROVISION
To allow Ulico sufficient time to respond to our queries and allow the CDI time to
review the company's responses as well as process the filing,  we request that the
company waive the deemer date of October 18, 2011.   Note that the waiver request
should be from October 18, 2011 and forward.


The filing is considered incomplete pursuant to CCR Section 2648.4(a).  Please provide
the requested revisions and additional information referenced above by October 13, 2011.

Sincerely,

*Mary Hiltgen*
Mary Hiltgen, CPCU, AU
Associate Insurance Rate Analyst
Rate Regulation – Los Angeles

**Hiltgen, Mary**

| | |
|---|---|
| **From:** | Hank Lauricella [hlauricella@fl-advisors.com] |
| **Sent:** | Friday, October 07, 2011 5:37 PM |
| **To:** | Hiltgen, Mary |
| **Cc:** | 'Cerny, Robert J.'; asterett@svinsco.com |
| **Subject:** | CDI File 11-6920 Response to Sep 29 Letter Email 1 0f 3 |

Dear Ms. Hiltgen,

In response to your letter of September 29, I am sending you the following documents in 3 emails. The first 4 attachments are included in this email 1 of 3:

1. Letter to Mary Hiltgen, dated October 7, 2011;
2. Retail Underwriting Policy;
3. Plan of Operations Form A CDI File APP-2011-00470 Ulico Standard;
4. UCAA Pro-Forma Financial Statements with Discussion Form A CDI File APP-2011-00470 Ulico Standard;
5. Rate Template Prior Approval Rate App CDI File 11-6920 Revised 111007 Ulico Standard;
6. Page 7 Ratemaking Data Prior Approval Rate App CDI File 11-6920 Revised 111007 Ulico Standard;
7. Page 12(a) Forms Prior Approval Rate App CDI File 11-6920 Revised 111007 Ulico Standard;
8. Page 12(a) Forms Index CDI File 11-6920 Revised 111005;
9. Bail Bonds Rate Manual Exceptions Page Revised 111005;
10. Form AL-0101 Revised 111005;
11. Form UL-0100 Revised 111005; and
12. Form ALSC-60 Revised 111005.

Please contact me if you have any questions. Thank you.

Sincerely,


Francis E. Lauricella, Jr.
Chief Financial Officer and Secretary
Seaview Insurance Company
(415) 931-9447  Office
(415) 730-8945  Cell
hlauricella@fl-advisors.com

10/11/2011

# I. OVERVIEW

This Plan of Operation relates to the proposed acquisition of control and subsequent operation of Ulico Standard of America Casualty Company, a multi-line property and casualty insurer domiciled in California (the "Company"). Capitalized terms not specifically defined in this Plan of Operation shall have the meanings assigned to them in the Form A Information Statement to which this document is an exhibit. In sum, following its acquisition by the Offeror, the Company will issue bail bonds in California under the Company's existing surety authority.

## A.  The California Market Needs Another Competitor

There is ample room for another player in the bail bonds market in California. In 2005, the top three bail sureties accounted for over 60% of bail premiums written, while the top five sureties wrote over 80% of total premium, as indicated in Table 1 below.  Furthermore, only 10 insurance groups were active in the California market in 2005, as Fairfax Financial and AIA (a joint venture consisting of International Fidelity; Associated Bond, a California agency; and the management of Alleghany Casualty) each had two sureties writing business.

2

| Table1 | **2005 California Taxable Bail Premiums** | | | |
|---|---|---|---|---|
| **Rank** | **Company** | **Parent** | **CA Bail Premiums** ($ 000's) | **Market Share** |
| 1 | Lincoln General Ins Co | Kingsway (NYSE:KFS) | 94,800 | 26.6% |
| 2 | Fairmont Specialty Ins Co (a.) | Fairfax Fin (Toronto:FFH) | 52,341 | 14.7% |
| 3 | International Fidelity Ins Co | Private/AIA Hld/Nairin Family | 49,253 | 13.8% |
| 4 | American Contractors Indemn Co | HCC (NYSE:HCC) | 41,312 | 11.6% |
| 5 | Bankers Ins Co | Private | 26,844 | 7.5% |
| 6 | Accredited Surety and Casualty | Private/Jallad Family | 23,373 | 6.5% |
| 7 | Lexington National Ins Co | Private/Frank Family | 22,997 | 6.4% |
| 8 | American Surety Co | Private/Whitlock, Carmichael | 21,659 | 6.1% |
| 9 | Seneca Ins Co | Fairfax Fin (Toronto:FFH) | 11,116 | 3.1% |
| 10 | Allegheny Casualty Co | Private/AIA Hld/Nairin Family | 9,960 | 2.8% |
| 11 | Continental Heritage Ins Co | Private/ProAlliance | 3,110 | 0.9% |
| 12 | Aegis Security Ins Co | Private | 103 | 0.0% |
| | Total | | 356,868 | 100.0% |

Notes:
(a.) Formerly Ranger Ins Co

Source: CDI, AM Best

In 2009, the California market was similarly concentrated, although market share data comparable to that included in Table 1 above is not available. Four companies (Fairfax Financial, AIA, Bankers Insurance, and Financial Casualty & Surety) issued bail bonds written by six of the seven leading California bail bond agencies, as illustrated in Table 2 below. (The number of bail bond offices was used as an indicator of scale of operations to identify the leading California bail bond agencies below because data on California bail bond premiums by surety or agency was not available.)

3

| Table 2 | | **Bail Bond Surety Appointments** | |
|---|---|---|---|
| **Agent** | **Bail License #** | **Appointments** | **Since** |
| Aladdin/Two Jinn | 1843442 | Lincoln General Insurance Co. | 2004 |
| | | Danielson National Insurance Co. | 2008 |
| | | Western Insurance Co. | 2009 |
| Absolute Bonding Corp. | 1841120 | The North River Ins. Co./Fairfax | 2007 |
| | | Bankers Insurance Co. | 2005 |
| | | Financial Casualty & Surety/Steves | 2007 |
| | | Continental Heritage Insurance Co. | 2000 |
| All-Pro Bail Bonds | 1843885 | Bankers Insurance Co. | 2006 |
| Associated Bond | | Alleghany Casualty Co./AIA Hld. | 1999 |
| | | International Fidelity Ins. Co./AIA Hld. | 1999 |
| | | Sterling Casualty Insurance Co. | 1999 |
| Bad Boys | 1841399 | The North River Ins. Co./Fairfax | 2007 |
| Liberty Bail Bonds | 1398114 | Financial Casualty & Surety/Steves | 2008 |
| | | Lexington National Ins. Co. | 2007 |
| King Stahlman Bail Bonds | 1215709 | Seneca Insurance Co. /Fairfax | 1998 |
| | | International Fidelity Ins. Co./AIA Hld. | 1996 |
| | | Accredited Surety and Casualty Co. | 2004 |
| | | Sterling Casualty Insurance Co. | 1981 |

Source: CDI "Agents & Brokers: License Status Inquiry"

In 2009, Lincoln General, the bail surety market share leader in California since at least 2003, went into run-off under the supervision of the Pennsylvania Department of Insurance. While Lincoln General's bail bond program in California remained highly successful, the company experienced large losses in certain lines of property and casualty insurance, primarily commercial auto. Lincoln General accounted

4

for approximately 20%-to-25% of bail bonds written in California during the year prior to its being placed under supervision. During the last ten years, two other leading California bail bond sureties (Frontier Insurance Company and Amwest Surety Insurance Company) ceased issuing bonds when they were placed under regulatory supervision. As in the case of Lincoln General, non-surety lines of property and casualty insurance were responsible for the financial problems of Frontier and Amwest, whose bail bond programs remained profitable.

The majority of leading bail sureties operating in the United States are already present in California. Currently absent from the California market are American Reliable, which is a subsidiary of Assurant (NYSE:AIZ); Safety National, which is a subsidiary of Delphi Financial (NYSE:DFG); American Safety Casualty, which is a subsidiary of American Safety Insurance Holdings (NYSE:ASI); Roche Surety and Casualty Company, which is privately owned by the Roche Family; Universal Fire & Casualty Insurance Company, which is privately owned by Tom Parker, and Sun Surety Insurance Company, which is privately owned by the Wood Family. Of these companies, Assurant writes a significant book of bail bonds. The three privately owned companies are bail specialists but remain relatively small, regional companies. Delphi Financial and American Safety are not major bail bond issuers.

The Company's operation as a bail bonds surety would bring new capacity and competition to the California bail bond market at an optimal time, particularly in view of Lincoln General's severe financial difficulties.

5

**B.  Limited Financial Risk to Company**

The contractual relationship between a bail bond agent and its surety produces a risk mitigation system in the bail bond business that is unique in the insurance industry. The surety is insulated in a variety of ways from bail bond losses that result when a defendant fails to make a scheduled court appearance.  First, the licensed bail agent has the opportunity to cure the forfeiture through various means (including voluntary reinstatement and apprehension) thereby avoiding losses altogether.  The licensed bail agent takes responsibility for, and incurs the related expense of, curing the forfeiture by locating and tracking defendants that have failed to appear, using call centers, investigators and recovery personnel while coordinating with law enforcement.

Second, through a bail bond indemnity agreement, the licensed bail agent requires the defendant and any co-signors to indemnify both the licensed bail agent and the surety from any bail bond losses and related expenses, particularly the penal sum of the bail bond, if the defendant fails to appear in court and the resulting forfeiture is not cured.

Third, the licensed bail agent frequently requires collateral, typically in the form of cash deposits or deeds of trust on real property, from the defendant and/or other co-signors as another financial resource to pay for potential bail bond losses and related expenses.

Fourth, the contract between the licensed bail agent and the surety also requires the agent to deposit a fixed percentage of the gross bail premium received into an escrow account, known as a build-up fund or "BUF" or a contingent reserve account "CRA", which amounts are held in trust as collateral by the surety. Up to 10% of gross bail premium collected by the licensed bail agent is deposited into the BUF account from which bail bond losses and related expenses are paid when incurred.

Finally, if the BUF is exhausted, the licensed bail agent typically is obligated to pay for any bail bond losses directly and indemnifies the surety from any bail bond losses.

Meanwhile, the surety focuses on agent selection and monitoring, bond issuance and tracking and management of BUF accounts and loss reimbursement. The surety incurs and pays losses on summary judgments only after the indemnifications, collateral, and BUF prove to be insufficient. In consideration for bearing most of the expense associated with this risk mitigation system, the licensed bail agent contractually keeps, according to the revenue sharing arrangement specified in its agency agreement with the surety, the vast majority of the bail premium collected. When this risk mitigation system is rigorously deployed, the result is that sureties consistently incur extremely low losses.

7

## II. SPECIFICS OF OPERATION

### A. Use of Licensed Agents

**1. Appointment of Agents.** As a surety licensed in California, the Company cannot undertake bail contracts directly. Accordingly, the Company will conduct its business through one or more licensed bail agents in California.

The Company will initially appoint Two Jinn, Inc., a California corporation licensed by the California Department of Insurance (the "Program Manager"), as its first licensed bail agent. The respective rights, duties and obligations of the Company and the Program Manager are set forth in the Program Manager Agreement, a draft of which is attached as an exhibit to the Form A Information Statement to which this Plan of Operation relates. The Program Manager is one of the largest bail services companies in the United States and has been consistently profitable and very well managed by a highly skilled team of seasoned executives who have developed and implemented a world class information technology platform that provides it with unprecedented real time bail management tools and a clear competitive advantage in the industry.

**2. Agent's Duties and Responsibilities.** As set forth in the Program Manager's Agreement, the Program Manager and its licensed employees will perform the following duties, subject at all times to the oversight and control of the Company: (a) advertise and solicit applications for bail bonds; (b) receive, evaluate, reject, and

8

accept requests for bail services; (c) calculate and collect premiums for bail bonds in accordance with the Company's underwriting policies.  The Program Manager will be authorized to accept and receive collateral from its clients, families and friends in the name of the Company, subject to the underwriting and claims procedures established by the Company.  Bonds will be posted only on forms approved and provided by the Company.  The Program Manager shall also be responsible for locating and, if possible, obtaining reinstatement of released defendants who fail to make a scheduled court appearance.  The Program Manager will pursue, apprehend and return to the court any fugitive defendants.  Finally, the Program Manager will take the steps necessary to have bail bonds exonerated once released defendants make their required court appearance(s) and will pay the penal sum of the bond upon summary judgment in the small percentage of cases in which fugitive defendants cannot be found and returned to the criminal justice system.

3.  **The Company's Supervision of Its Agents**.  California state law requires that the vast majority of the actions required and of the risks and responsibilities involved in the undertaking of bail reside with the licensed bail agent.  Given the critical importance of the licensed bail agent in commercial bail services, the Company views the screening, selection and appointment of licensed bail agents to be one of its most important tasks.  The extensive and successful business experience of the Company's post-acquisition proposed senior executives has prepared them extremely well for this responsibility.  Mr. Patrick Kilkenny built Arrowhead General Insurance Agency, of which he was majority owner and chairman, from a small insurance agency into the

9

largest privately owned general agency in the United States. Mr. Francis E. Lauricella,

Jr., has worked extensively as a financial consultant to insurance agencies and financial

services technology companies and most recently as an advisor to one of the largest retail

bail services companies in California. During part of his 14-year employment with JP

Morgan, Mr. Lauricella served as a senior insurance industry analyst, with responsibility

for assessing the credit worthiness of U.S. insurance companies.

The Company's proposed senior executives believe that critical success

factors for licensed bail agents include scale, financial stability and highly disciplined

management procedures. As a result, the Company will seek to identify and contract

with large, well financed, and professionally managed licensed bail agents. The

Company will evaluate potential agent appointees pursuant to the following criteria:

(i)   Industry experience and reputation

(ii)  Compliance with California Penal Code, California Insurance Code and the

California Code of Regulations, Title 10

(iii) Compliance with all aspects of contracts with current sureties

(iv)  Information and management decision making systems currently in place

(v)   Number of offices, sub-agents and employees

(vi)  Procedures, particularly regarding underwriting, followed by a licensed bail

agent and his or her licensed employees to provide pre-trial release services to the

general public

10

(vii)    Procedures followed to monitor released defendants, to analyze business

performance, and to manage claims: tracking released defendants, court appearance

schedules, filing for exonerations, locating and apprehending fugitive defendants, and

paying summary judgments

(viii)    Procedures followed to manage premiums and collateral received and

bond inventory

(ix) Operating performance

(x)  Financial performance and viability

(xi) Litigation: past and outstanding

(xii)    Complaints

In conformity with the foregoing criteria, the Company will assess whether

the licensed bail agent has the ability to satisfy the Company's performance standards.

The Company will thereafter monitor and audit each appointed agent's operations to

ensure compliance with the Company's performance and underwriting standards.   The

Company will provide each licensed bail agent with an inventory of bonds to post when

undertaking bail.

4. **Agent Compensation**.  Unlike property and casualty insurance agents

who are paid commissions of 10%-to-15% of premiums written, licensed bail agents

retained in 2009 on average 89.5% (89.4% median) of the gross bail premiums that they

produced, as indicated below in Table 3, Premium Split between Bail Agents and Surety.

On average, sureties that specialize in bail bonds kept the remaining 10.5% of gross bail

11

premiums, i.e. the net bail premiums, to cover potential losses and other operating expenses, including paying premium taxes on gross bail premiums, and to make a profit. (Net bail premiums account for over 80% of total net premiums written by Lexington National and Accredited Surety and for 100% of total net premiums written by the four other sureties in the peer group.) This significant distinction in compensation between property and casualty insurance agents and licensed bail agents reflects fundamental differences between property and casualty insurance and the bail bonds business. First, while property and casualty insurance is a mechanism to spread the financial risk of statistically inevitable individual losses over a larger group of policy holders, commercial bail is a mechanism to assure that defendants released appear at court when scheduled. Although a prudent, meticulous licensed bail agent might not be able to eliminate summary judgments on forfeited bonds, losses incurred by the bail surety that back stops bonds written by the licensed bail agent, can be kept extremely low by the risk mitigation procedures that the industry practices. These risk mitigation procedures include sound underwriting practices, efficient and effective tracking systems deployed by the bondsmen, build up fund and collateral accounts that are in a first loss position, and the personal indemnification provided by the bondsmen and managing general agents. Because the cost of these risk mitigation procedures is largely born by the licensed bail agent, the agent keeps the majority of the gross bail premiums produced. By contrast, the property and casualty agent simply focuses on selling policies, providing varying degrees of policy administration and underwriting support to the property and casualty insurance company.

12

| Table 3 | **Premium Split between Bail Agents and Surety** | | | | |
|---|---|---|---|---|---|
| | 2009 Gross Bail Prems* | Withheld by Agents* | Agents' Comm % Gr Prem | Net Bail Premiums* | Net % Gross Premiums |
| Surety | | | | | |
| Lexington National | 113,114.1 | 102,157.4 | 90.3% | 10,956.7 | 9.7% |
| Accredited Surety | 77,261.3 | 70,905.6 | 91.8% | 6,355.7 | 8.2% |
| American Surety | 69,322.6 | 61,109.6 | 88.2% | 8,213.0 | 11.8% |
| Roche Surety | 32,801.0 | 30,503.2 | 93.0% | 2,297.8 | 7.0% |
| Universal Fire | 20,008.5 | 17,715.3 | 88.5% | 2,293.2 | 11.5% |
| Sun Surety | 15,821.6 | 13,519.6 | 85.5% | 2,302.0 | 14.5% |
| Average | | | 89.5% | | 10.5% |
| Median | | | 89.4% | | 10.6% |

\* Amounts in $ 000s
Source: Company Statutory Annual Statements

The states of Florida, Indiana, Maryland and South Dakota, where the six sureties that specialize in bail bonds identified above are domiciled, require bail sureties to report bail premiums net of retentions by licensed bail agents. Moreover, the Notes to Financial Statements of the Annual Statement of five of these bail sureties provide detail on the gross bail premiums, the percentage of gross bail premiums withheld by licensed bail agents, and the sureties' net bail premiums. (In South Dakota, this breakdown is provided in a Supplemental Schedule T of the Annual Statement.) The Premium Tax is estimated as the amount that appears in the Underwriting and Investment Exhibit, Part 3 – Expenses, Line 20.1, State and local insurance taxes deducting guaranty association credits of each surety's Annual Statement.

Once premium taxes are paid, a surety insurer typically has roughly 8.0% of gross bail premiums left to cover its operating expenses, including loss payments, if any, and a profit margin. As indicated below in Table 4, Breakdown of Premiums Net to Surety, of the 10.5% of gross bail premiums retained on average by the sureties in 2009,

13



2.0% on average was paid as premium taxes while the remaining 8.5% covered any losses incurred, other underwriting expenses, and profit. The median value of the sureties' net bail premiums (less premium taxes) as a percent of gross premiums was also 8.5%, with a range from 5.3% to 12.1% and a standard deviation of 2.39%.

| Table 4 | **Breakdown of Premiums Net to Surety** | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | **(2009 Gross Bail Premiums)** | | | | |
| | Gross Bail | Net Bail | Net % Gr | Net Bail Prem | Net Ex Tax | Premium | Prem Tax |
| Surety | Premiums* | Premiums* | Premiums | Less Prem Tax* | % Gr Prem | Tax* | % Gr Prem |
| Lexington National | 113,114.1 | 10,956.7 | 9.7% | 8,697.3 | 7.7% | 2,259.4 | 2.0% |
| Accredited Surety | 77,261.3 | 6,355.7 | 8.2% | 5,396.1 | 7.0% | 959.6 | 1.2% |
| American Surety | 69,322.6 | 8,213.0 | 11.8% | 6,734.3 | 9.7% | 1,478.7 | 2.1% |
| Roche Surety | 32,801.0 | 2,297.8 | 7.0% | 1,729.9 | 5.3% | 567.9 | 1.7% |
| Universal Fire** | 20,008.5 | 2,293.2 | 11.5% | 1,873.0 | 9.4% | 420.2 | 2.1% |
| Sun Surety | 15,821.6 | 2,302.0 | 14.5% | 1,917.5 | 12.1% | 384.5 | 2.4% |
| | | | | | | | |
| Average | | | 10.5% | | 8.5% | | 1.9% |
| Median | | | 10.6% | | 8.5% | | 2.0% |

\* Amounts in $ 000s
\*\* Premium tax based on comp average
Source: Company Statutory Annual Statements

## B. Underwriting Policy

**1. Overview.** The Company and the licensed bail agent whose licensed employees will undertake bail on the Company's behalf will agree on a written underwriting policy. The written underwriting policy will establish the underwriting limits and authorization required for the licensed bail agent and his or her licensed employees, including retail bail agents, branch managers, regional managers and senior executives. Subsequent changes to certain provisions of the written underwriting policy,

14

particularly regarding collateral and issue or authority limits, will require the Company's prior written approval in each instance. The licensed employees of the licensed bail agent will be required to understand and adhere to the underwriting policies and to sign an acknowledgement that any failure to comply may result in disciplinary action by the licensed bail agent, including immediate suspension and possible termination.

**2. Underwriting Authority and Limits.** Once appointed by the Company, a licensed bail agent shall be authorized to post bail bonds on the Company's paper in an amount up to $250,000 in penal sum per transaction, subject to the following restrictions. First, bonds in excess of the above maximum limit per transaction will require the Company's prior written consent. Second, bonds in excess of $100,000 in penal sum per transaction will require the prior authorization a senior executive officer of the licensed bail agency. Third, bonds up to a penal sum of $100,000 per transaction shall be subject to the written underwriting policy established under the agent agreement. Fourth, bail bonds greater than $150,000 in penal sum shall be secured by collateral of at least 75% of the penal sum of the bail bond. Fifth, the binding authority of any licensed bail agent, branch manager, regional manager or executive of the licensed bail agent will be immediately suspended if his or her employment with the licensed bail agent is terminated or his or her agent license is revoked. Sixth, the licensed bail agent shall not write annual gross bail premiums in excess of a limit of $5,000,000. Finally, the licensed bail agent shall submit to the Company the following documents and information related to bail bond transactions exceeding $150,000: (a) a completed and signed application; (b) duly signed indemnity agreement; (c) a properly executed deed

15

of trust and disclosure statement as specified by law for real property taken as collateral; (d) a copy of a credit report for bond indemnitors; and (e) copies of statements of cash, assignments of brokerage accounts, and/or irrevocable letters of credit taken as collateral.

### 3. **Mitigation of Underwriting Risk**. As part of the underwriting policy,

the Company and each licensed bail agent will agree that certain types of arrestees present high flight risk and thus that bail transactions for such arrestees should be evaluated with extreme caution. In particular, the Company believes that arrestees who are transient or who otherwise lack strong ties to the community (e.g. family, work, etc.), present significantly higher flight risk than arrestees with strong community relationships. The underwriting approval of a regional manager or an executive officer of the licensed bail agent will therefore be required before a licensed employee may complete such a transaction.

The bail bond application gathers detailed defendant and co-signor information that allows the licensed bail agent to identify such risks and, if necessary, to pursue and apprehend any arrestee who fails to make a scheduled court appearance. The Program Manager has automated bail bond application ability through a computer-based system that collects and analyzes the relevant arrestee and co-signor information and prevents the undertaking of bail transactions that represent unacceptable flight risk or for which insufficient information has been collected to make such a determination. The computer-based system requires the Program Manager's licensed employees in certain cases to gather credit reports and credit scores to help determine whether the defendant

16

and co-signors are financially able to make good on the indemnification that they provide to the Program Manager.

**4. Collateral**. The Company will authorize each licensed bail agent to take delivery of collateral to secure bail bonds, including collateral in the form of deeds of trust, cash deposits, assignments of brokerage accounts, irrevocable letters of credit and the like, and to return such collateral as appropriate. The licensed bail agent will take no personal property (cars, boats, jewelry, etc.) as collateral.

Collateral for bail bonds, in whatever form, shall be (a) taken in the Company's name, (b) held by the licensed bail agent as trustee, (c) reported in accordance with the Company's instructions and (d) maintained by the licensed bail agent in accordance with the statutes, rules and regulations of any governmental agency having jurisdiction over the licensed bail agent's business operations concerning the maintenance, accounting, segregation, reconveyance and return of any and all such collateral. Any cash deposits shall be held in a joint trust account established in advance in the name of the Company and the licensed bail agent.

The Company's underwriting policies established with each licensed bail agent will specify the procedures for securing a lien against property, including the deed of trust form to be used and the required signatures of both spouses to execute a deed of trust encumbering marital property. The underwriting policies also will stipulate procedures for filing the deed of trust with the county recorder where the property is located and for releasing a lien and issuing a full re-conveyance.

17

5. **Accounting.**  With respect to accounting, the Company will deposit

contingent reserve account funds (known in the industry as build-up funds or "BUF")

into an account owned by the licensed bail agent and held in trust by the Company as

security for the agent's obligations to the Company.  The Company will reimburse the

licensed bail agent from this escrow account for all claims payments made by the agent.

From the net bail premiums written by the Company,  i.e. net of the portion of the gross

bail premiums written retained by the licensed bail agent, the Company will pay state

premium taxes owed based on the gross bail premiums written.  Finally, the Company

will prepare and submit to the California Department of Insurance all financial statements

and all other regulatory filings and will fulfill other requirements and requests to remain

in good standing with the California Department of Insurance.

## C. **Information Systems**

The Company will obtain information technology systems and certain

administrative services from the Program Manager pursuant to the Program Manager

Agreement and the Administrative Services Agreement in the forms attached to the

Form A Information Statement to which this Plan of Operation is an exhibit.  Through its

relationship with the Program Manager, the Company will have access to a proprietary

bail technology platform that is the finest available in the United States.  Not only will

this system provide the Company with real time access to critical bail management

information, but it will also provide the Company with additional analytic tools.

18

**D. Advertising**

Because of the unique nature of bail bonds, the Company does not plan to advertise extensively on its own. Rather, the Company's licensed bail agents do their own advertising, which generally consists of advertisements placed in the yellow pages of their respective local telephone companies, postings displayed within jails and detention facilities and by other means which are acceptable under local court rules and regulations.

**E. Investments**

The Company's investments will be managed and overseen by the Company's president and chief financial officer in accordance with the requirements of California law and with the assistance of third party financial professionals as needed. The Company's investment strategies are simple: approximately 100% will be invested in cash and government bonds with any balance being distributed among common stocks and other assets authorized for investment under California law.

**F. Special Investigation Unit ("SIU")**

Insurers authorized to transact insurance in California are required to establish a Special Investigations Unit to identify, investigate and report potential instances of insurance fraud. Because of the unique nature of the bail bonds business, fraud in relation to underwriting or "claims" involving the Company would be extremely rare. Notwithstanding the foregoing, the Company will implement an appropriate anti-fraud program in conformity with California law.

19

### G.  Office Space

The Company will sub-lease approximately _____square feet of office space from its affiliate, Two Jinn, Inc. (i.e. the Program Manager).  The terms of the sub-lease are set forth in the Administrative Services Agreement attached to the Form A.

### H.  Compensation of Officers/Directors

As noted in the Form A to which this Plan of Operation is attached, Patrick J. Kilkenny, Francis E. Lauricella, Jr. and William R. de Jonge will serve as the members of the Company's Board of Directors.  Members of the Company's Board will not receive additional compensation for performing the functions of a director; however, such individuals will be reimbursed for their reasonable travel, lodging and other expenses, if any, incurred in connection with attendance at Board meetings.

Patrick J. Kilkenny shall serve as the Company's President and Chief Executive Officer.  Francis E. Lauricella, Jr. shall serve as the Company's Secretary and Chief Financial Officer.  Each of such individuals shall be paid an annual salary of $150,000, payable in 24 equal installments.  It is not anticipated at this time that either Mr. Kilkenny or Mr. Lauricella will enter into a written employment agreement with the Company. And neither of such individuals has entered into a written employment agreement with Seaview Surety Holding, LLC, the proposed immediate parent of Company.

20

No officer, director, trustee, investment committee member or actuary of the Company will received, directly or indirectly, a commission from any licensed bail agent on any business written by such agent.

## I. Conflict of Interest

The Company has a procedure for ascertaining whether there will be any conflict of interest between its business and the private interests of its officers and directors. This procedure consists of a written confidential questionnaire, answered under oath, by each officer and director. A copy of such questionnaire is attached to Form A and incorporated herein by this reference. Such questionnaire fully inquires into the areas specified in California Insurance Code Section 1101.

## J. Reinsurance

The Company will not obtain reinsurance as such is unnecessary in light of the Company's initial plan to issue only bail bonds under the Company's existing surety authority.

21

**SEAVIEW SURETY HOLDINGS, LLC**
**PLAN OF OPERATION**

## VERIFICATION

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I am authorized to execute the same.

_____3/11/11_____          _____
Date                                            Signature

## ULICO STANDARD OF AMERICA CASUALTY COMPANY

# AMENDMENT TO INDEMNITY AGREEMENT FOR SURETY BAIL BOND

This Amendment to Indemnity Agreement for Surety Bail Bond ("Amendment") is effective as of
_____, 20_____ ("Effective Date"), by and between Aladdin Bail Bonds ("Aladdin") and
_____ ("Indemnitor") (each a "Party" and collectively the "Parties").

### RECITAL

Aladdin is in the business of providing surety bail bonds for criminal defendants.  In connection with
_____ County Superior Court Case No. _____, the court
has set bail for criminal defendant _____ (the "Defendant")
in the total penal amount of $_____. In exchange for providing Bail Bond #_____
(and/or such other bonds in connection with the above case) (the "Bond"), the Defendant and/or other

indemnitors have agreed to (1) pay Aladdin a premium in the amount of $_____ (the "Premium"); and

(2) indemnify Aladdin for any expenses incurred in the event of the Bond's forfeiture. As inducement for the above
named Indemnitor to execute the Indemnity Agreement for Surety Bail Bond (the "Bond Contract"), Aladdin has
agreed to limit Indemnitor's obligations thereunder solely with respect to the Premium payment as provided in this
Amendment.

### AMENDMENT

**In consideration of the above Recital and for valuable consideration, the Parties agree as follows:**

1.    Limited Liability for Continuing Premium Payments/Void After Forfeiture Expense.  Other than amounts
paid as an initial down payment toward Premium, if any, Indemnitor shall not be responsible to pay Aladdin any
remaining portion of the Premium due for the Bond, provided however, the Bond does not become forfeited.  In
the event Aladdin incurs any expense as a result of Bond forfeiture, Indemnitor shall be liable for all Premium due
in addition to any and all expenses incurred as a result of the Bond's forfeiture, including but not limited to the
total penal amount of the Bond, all as set forth in the Bond Contract.  This Amendment applies solely to the above
named Indemnitor and may not be assigned for the benefit of any other party.

2.    Other Portions of Bond Contract Unaffected.  The Parties agree that this Amendment does not in any
way affect, limit, or alter Indemnitor's obligations under the Bond Contract with respect to contingent liability for
Bond forfeiture.  All such obligations, including the terms and conditions of the Bond Contract which are expressly
incorporated herein by reference, shall continue in full force and effect.

3.    Integrated Agreement. The Parties acknowledge and agree that no promises or representations were
made to them which do not appear written herein and that this Amendment and the Bond Contract contain the
entire agreement of the Parties on the subject matter thereof. The Parties further acknowledge and agree that all
prior statements, agreements, understandings or promises, written or oral, are superseded by the Bond Contract
and this Amendment.

IN WITNESS WHEREOF, the Parties have executed this Amendment, effective_____, 20_____ .

**Aladdin Bail Bonds:**                                        **Indemnitor:**

_____          _____
AGENT SIGNATURE                                        PRINT INDEMNITOR NAME

_____          _____
PRINT AGENT NAME                                        INDEMNITOR SIGNATURE

AL-0101 (03-06) Ω

## ULICO STANDARD OF AMERICA CASUALTY COMPANY

# INDEMNITY AGREEMENT
# FOR
# SURETY BAIL BOND

## RECITAL

The following is a bail bond contract/indemnity agreement between you (as the defendant or indemnitor(s)), Two Jinn, Inc. dba Aladdin Bail Bonds ("Aladdin"), and ULICO Standard of America Casualty Company ("ULICO") (collectively "we" and/or "us"). It provides for, among other things, the consequences to you as a result of failing to pay the bail bond premium and/or the defendant's failure to appear in court as ordered.

In order to keep the bail bond in force and the defendant out of jail, you must (1) pay the bail bond premium, and (2) ensure that the defendant appears in court on the required dates. If a bail bond premium is not fully paid and/or the defendant does not appear in court as ordered, we may surrender the defendant back to the custody of the court and charge you for all expenses incurred in locating, capturing, and returning the defendant to court. Additionally, **IN THE EVENT WE ARE UNABLE TO RETURN THE DEFENDANT TO COURT WITHIN THE TIME PRESCRIBED BY LAW AND MUST PAY THE FULL PENAL AMOUNT OF THE BAIL BOND, YOU ARE RESPONSIBLE TO REIMBURSE US FOR ALL AMOUNTS WE MUST PAY, INCLUDING THE PENAL SUM OF THE BOND, INVESTIGATION COSTS, COURT COSTS, AND ATTORNEYS' FEES (INCLUDING ATTORNEYS' FEES INCURRED RECOVERING THESE AMOUNTS FROM YOU).** In such an event, any premium amounts paid by you will not offset your obligation for the full penal amount of the bond.

Please carefully review each of the terms and conditions of the following bail bond contract/indemnity agreement.

UL-0100 (08-11)

1

# ULICO STANDARD OF AMERICA CASUALTY COMPANY
# INDEMNITY AGREEMENT FOR SURETY BAIL BOND

This Indemnity Agreement ("Agreement") is effective as of _____, 20___.  In consideration for the executing, arranging, and continuance of the undertaking of bail for _____ (the "Principal" or "Defendant") in the penal amount of $_____("Bail Bond"), the undersigned Indemnitor(s) agrees to pay the Bail Bond premium(s) and to indemnify Aladdin Bail Bonds ("Aladdin") and ULICO Standard of America Casualty Company ("ULICO") as follows:

**1. General Conditions of Bail.**  As a further condition to Aladdin and/or Surety maintaining the Bail Bond, Indemnitor(s) and Principal/Defendant agree that their failure to satisfy any of the following conditions constitutes a breach of this Agreement and may result in Defendant's surrender to custody without return of premium:

(a)  **THE DEFENDANT MUST RETURN TO ALADDIN'S OFFICE IMMEDIATELY UPON RELEASE FROM JAIL.**  Failure to do so may result in the Defendant being surrendered back to custody in accordance with paragraph 5 below ("Surrender"), and additional fees may be owed pursuant to paragraph 4 below ("Indemnification").

(b)  The Defendant must **APPEAR AT ALL COURT DATES** in person as ordered by the court.

(c)  If the defendant fails to appear in court, he/she must contact Aladdin immediately for possible bail bond reinstatement.  If reinstatement is approved by Aladdin, the Defendant must submit the reinstatement document provided by Aladdin to the clerk of the court immediately or it will otherwise be void.  Please be advised that under these circumstances the Defendant's warrant is still active until he/she has appeared in court and the judge has recalled the warrant

(d)  As more fully set forth in paragraph 4 below, the **Defendant and Indemnitor(s) are responsible for any and all expenses incurred by Aladdin or its Surety as a result of the Defendant's failure to appear for scheduled court dates.**

(e)  The Defendant and Indemnitor(s) must notify Aladdin if they (or any of them) change their residence address, business address, telephone numbers, or employment.

(f)  The Defendant and Indemnitor(s) shall remain liable hereunder until such time as the Bail Bond is exonerated and Aladdin and/or Surety are fully indemnified for any losses pursuant to paragraph 4 below ("Indemnification").

(g)  Supervised Bail. The Defendant may be placed on supervised bail at any time in Aladdin's sole discretion. If placed on supervised bail, Defendant must check in with Aladdin or its designee as requested by Aladdin.

**2. Premium.**  Indemnitor(s) shall pay Aladdin $_____ for continuance of the Bail Bond (the "Premium").  The Premium is fully earned upon the release of the Principal.  The fact that the Principal may have been improperly arrested, or his bail reduced, or his case dismissed, shall not obligate the return of any portion of said Premium.  In the event any Premium due is not paid upon demand, Aladdin and/or Surety maintain the right to surrender the Principal as provided by law, in addition to exercising any other available legal remedies arising from this Agreement. Any amounts due hereunder shall bear interest at the maximum rate allowed by law. Time is of the essence as to all payments.

**3. Collateral.**  Aladdin and/or Surety may require Indemnitor(s) to deposit money or other property as collateral in an amount or value which Aladdin and/or Surety determines, in their sole and absolute discretion, sufficient to protect against the risk of Bail Bond forfeiture and/or summary judgment ("Collateral").  If as a result of judicial action bail is increased, Aladdin and/or Surety may demand such additional Collateral as they determine necessary to protect against the increased risk.  In the event Indemnitor(s) or Principal misrepresents or conceals

2

information which would have been material to Aladdin and/or Surety's decision to execute the Bail Bond, or otherwise takes any action which creates an increase in the risk of Bail Bond forfeiture, Indemnitor(s) shall, upon demand, deposit Collateral in an amount or value equivalent to the full penal amount of the Bail Bond. Indemnitor(s) authorizes Aladdin and/or Surety to levy upon Collateral in any lawful manner to recover sums due under this Agreement for unpaid Premium, indemnity obligations, fees, costs, expenses, and/or other liabilities for which Indemnitor(s) has agreed to indemnify Aladdin and/or Surety hereunder. Following exoneration or other final disposition of the Bail Bond and following the application of Collateral to satisfy Indemnitor(s)'s obligations, any excess Collateral shall be immediately returned to the depositor.

**4.  Indemnification.**  To the fullest extent permitted by law, Indemnitor(s) agrees to indemnify and reimburse Aladdin and/or Surety for any and all losses, damages, judgments, attorneys' fees (including the reasonable value of services performed by Aladdin and/or Surety's in-house legal staff, claims staff, and/or investigative staff), costs, expenses, or liability of any kind whatsoever arising out of or relating to the following:

(1) the Principal and/or Indemnitor(s)'s breach of any of the terms and conditions of this Agreement;

(2) false or misleading information provided by Principal/Indemnitor(s) in the Bail Bond Application (the contents of which are incorporated herein by reference);

(3) searching for, recapturing, and/or returning the Principal to custody prior to the entry of summary judgment on the Bail Bond;

(4) making application to a court for an order to vacate or to set aside the order of Bail Bond forfeiture or summary judgment entered thereon;

(5) payment of a judgment on the forfeiture of the Bail Bond;

(6) any action or proceeding commenced by Aladdin and/or Surety to enforce this Agreement; and

(7) any expenses incurred by Aladdin and/or Surety as a result of the Principal's refusal to cooperate with the arrangement and/or execution of the Bail Bond (or any renewal or substitution thereof) once Aladdin and/or Surety have initiated arrangements with the court and/or detention facility.

Principal and Indemnitor(s) understand and agree that Aladdin or Surety's own active or passive negligence in connection with investigation and handling of claims forfeitures shall not in any way cancel or limit Principal and Indemnitor(s)'s indemnity obligations.  Defendant and Indemnitor(s) fully assume the risk of the Defendant's non-appearance.  Indemnitor(s) further agrees to fully cooperate and assist Aladdin and/or Surety in securing the release and exoneration of the Bail Bond, including the surrender of the Principal to court should Aladdin and/or Surety deem such action advisable.

**5.  Surrender.**  In the event of Bail Bond forfeiture, or the Principal and/or Indemnitor(s)'s failure to abide by the terms of this Agreement, Aladdin and/or Surety maintain the right to surrender the Principal as provided by law. Aladdin and/or Surety shall not surrender the Principal to custody prior to the time specified in the Bail Bond for the appearance of the Principal, or prior to any occasion when the presence of the Principal in court is lawfully required, without first returning all Premium paid, unless as a result of judicial action, information concealed or misrepresented by the Principal and/or Indemnitor(s), or other reasonable cause, any one of which was material to the risk to be assumed by Aladdin and/or Surety, the risk was substantially increased.

**6.  Indemnitor Representations & Warranties.**  Indemnitor(s) represents and warrants that (1) all statements and/ or information provided on or in connection with the Bail Bond Application are true and accurate; (2) Indemnitor(s) will advise Aladdin and/or Surety of any change in such information within 48 hours of learning of the change (including but not limited to (i) changes of address or employment of either the Principal or Indemnitor(s), or (ii) any other material change in circumstances) and that Indemnitor's failure to so advise shall be reasonable cause for the immediate surrender of the Principal; (3) Indemnitor(s) has read and knows the contents of the Bail Bond Agreement and this Agreement, and has received copies of each document included therein; (4) Indemnitor(s) is the true and lawful owner of all Collateral or other property set forth in the Bail Bond Application, and Indemnitor(s) shall not transfer or otherwise encumber said property without first satisfying all outstanding liability for the Bail Bond.

3

**7.  Additional Bail Bonds.**  In the event additional Aladdin bail bonds are executed for the same charge for which the above mentioned Bail Bond was executed, or any other charge arising out of the same criminal matter, this Agreement shall apply equally to those bonds.

**8.  Joint & Several Obligations.**  The obligations hereunder are joint and several.  Indemnitor(s) expressly waives the benefits of any law requiring Aladdin and/or Surety to seek available remedies from the Principal prior to proceeding against Indemnitor(s) hereunder.

**9.  Governing Law.**  This Agreement shall be governed, construed, and interpreted in accordance with the laws of the State of California.

**10.  Integrated Agreement.**  Indemnitor(s) acknowledges and agrees that no promises or representations were made to Indemnitor(s) which do not appear written herein and that this Agreement contains the entire agreement between Indemnitor(s), Aladdin and Surety on the subject matter hereof.  Indemnitor(s) further acknowledges and agrees that all prior statements, agreements, understandings or promises, written or oral, are superseded by this Agreement.  This Agreement may only be modified by a writing signed by authorized representatives of the parties.

**IN WITNESS WHEREOF,** Indemnitor(s) acknowledges that in executing and continuing the Bail Bond, Aladdin and/or Surety is relying on this Agreement and the statements made by Indemnitor(s) in connection herewith, and as such, the undersigned Indemnitor(s) enters into this Agreement by signing below.

Indemnitor

SIGNATURE _____   NAME _____

ADDRESS _____

Indemnitor

SIGNATURE _____   NAME _____

ADDRESS _____

Indemnitor

SIGNATURE _____   NAME _____

ADDRESS _____

Indemnitor

SIGNATURE _____   NAME _____

ADDRESS _____

Principal/Defendant

SIGNATURE _____   NAME _____

ADDRESS _____

# INDEMNITY AGREEMENT FOR SURETY BAIL BOND
## ULICO STANDARD OF AMERICA CASUALTY COMPANY

Defendant Name _____    Date of Bonds _____

**Bond 1**
    Amount $ _____    Number _____    Case # _____

    Charges _____

**Bond 2**
    Amount $ _____    Number _____    Case # _____

    Charges _____

**Bond 3**
    Amount $ _____    Number _____    Case # _____

    Charges _____

**Bond 4**
    Amount $ _____    Number _____    Case # _____

    Charges _____

**Bond 5**
    Amount $ _____    Number _____    Case # _____

    Charges _____

**Bond 6**
    Amount $ _____    Number _____    Case # _____

    Charges _____

**Bond 7**
    Amount $ _____    Number _____    Case # _____

    Charges _____

**Bond 8**
    Amount $ _____    Number _____    Case # _____

    Charges _____

**Total Amount of Bail** $ _____

**STATEMENT OF INFORMATION REQUIRED BY SECTION 2100, CALIFORNIA REGULATORY CODE, AND WHICH MAY BE REQUIRED IN OTHER STATES**

_____    _____    _____
Full Name of person supplying information    Name of person negotiating bail    Name of person receiving information

_____    _____    _____
Address    Address    Date and time information received

_____    _____    _____
Connection or relationship to defendant    Connection or relationship to defendant    Manner in which information received

_____    _____    _____
If same was defendant, how did he communicate?    Name of licensee who negotiated transaction    Name of other agent involved and commission paid

f writ _____    _____
    Name of Attorney    Name and sum paid unlicensed persons and service performed

Was consideration other than money received?   YES ☐   NO ☐   If yes, explain in detail and attach statement

## ULICO STANDARD OF AMERICA CASUALTY COMPANY

*Aladdin*®
Bail Bonds
WE GET YOU OUT. WE GET YOU THROUGH IT. ®

# STATEMENT of CHARGES

Account Number:

**Aladdin Bail Bonds**

| Power Numbers |
|---|
| |

**Expenses (Itemized)**

Date:
Total Premium:
Total Expenses:
Total Charges:

Received on Account:

Balance:

**Was Collateral Taken:** Yes    No
**Type:**

Agent Name: _____

## MEMORANDUM OF BAIL BOND FURNISHED

DEFENDANT _____  DATE OF BIRTH _____  DATE FILED _____

JAIL NAME _____  LOCATION _____  BOOKING # _____

BOND NO. _____  CASE NO. _____  BOND AMOUNT $ _____

CHARGES _____  COURT _____

APPEARANCE DATE _____  TIME _____  LOCATION _____

REWRITE BOND NO. _____  ORIGINAL AMNT $ _____  PREMIUM $ _____

**TOTAL BAIL AMOUNT $** _____  **TOTAL PREMIUM $** _____

RECEIVED COPY OF ABOVE RECEIPT _____

## Hiltgen, Mary

| | |
|---|---|
| **From:** | Hank Lauricella [hlauricella@fl-advisors.com] |
| **Sent:** | Friday, October 07, 2011 5:39 PM |
| **To:** | Hiltgen, Mary |
| **Cc:** | 'Cerny, Robert J.'; asterett@svinsco.com |
| **Subject:** | CDI File 11-6920 Response to Sep 29 Letter Email 3 Of 3 |

Dear Ms. Hiltgen,

Please find attached the final 4 attachments:

- Bail Bonds Rate Manual Exceptions Page Revised 111005;
- Form AL-0101 Revised 111005;
- Form UL-0100 Revised 111005; and
- Form ALSC-60 Revised 111005.

Please contact me if you have any questions. Thank you.

Sincerely,

Francis E. Lauricella, Jr.
Chief Financial Officer and Secretary
Seaview Insurance Company
(415) 931-9447  Office
(415) 730-8945  Cell
hlauricella@fl-advisors.com

## Hiltgen, Mary

| | |
|---|---|
| **From:** | Hank Lauricella [hlauricella@fl-advisors.com] |
| **Sent:** | Friday, October 07, 2011 5:39 PM |
| **To:** | Hiltgen, Mary |
| **Cc:** | 'Cerny, Robert J.'; asterett@svinsco.com |
| **Subject:** | CDI File 11-6920 Response to Sep 29 Letter Email 2 0f 3 |

Dear Ms. Hiltgen,

Please find attached the 4 additional attachments:

- Rate Template Prior Approval Rate App CDI File 11-6920 Revised 111007 Ulico Standard;
- Page 7 Ratemaking Data Prior Approval Rate App CDI File 11-6920 Revised 111007 Ulico Standard;
- Page 12(a) Forms Prior Approval Rate App CDI File 11-6920 Revised 111007 Ulico Standard; and
- Page 12(a) Forms Index CDI File 11-6920 Revised 111005.

Please contact me if you have any questions.  Thank you.

Sincerely,

Francis E. Lauricella, Jr.
Chief Financial Officer and Secretary
Seaview Insurance Company
(415) 931-9447  Office
(415) 730-8945  Cell
hlauricella@fl-advisors.com

10/11/2011

STATE OF CALIFORNIA　　　　　　　　　　　　　　　　　　　　　　　　　　　Company Name:　　Ulico Standard of America
DEPARTMENT OF INSURANCE (CDI)　　　　　　　　　　　　　　　　　　　Line of Insurance:　SURETY
Edition Date:　　　　　　　　　　　　　　　　　4/4/2011

# FORMS

Insurers who wish to use a new or replacement form in connection with a new or existing program <u>must</u> furnish the following information and documentation for our review. Revisions <u>must be highlighted</u> and the corresponding manual pages must be provided.

| FORM NO. | TITLE | TYPE | SOURCE | SOURCE FORM NO * | CATEGORY | Restricts Coverage [ Yes/ No ] | Broadens Coverage [ Yes/ No ] | Rate Impact [ Yes / No ] | % Change | Flat Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| 1] New: Please see attached. | | | | | | | | | | |
| Old: | | | | | | | | | | |
| 2] New: | | | | | | | | | | |
| Old: | | | | | | | | | | |
| 3] New: | | | | | | | | | | |
| Old: | | | | | | | | | | |
| 4] New: | | | | | | | | | | |
| Old: | | | | | | | | | | |
| 5] New: | | | | | | | | | | |
| Old: | | | | | | | | | | |

### REQUIRED RESPONSES FOR THE ITEMS ABOVE

TYPE:

1) Application
2) Endorsement
3) Policy
4) Other ( Please define )

SOURCE

1) ISO*
2) Other Advisory Organization*
3) Company
4) Other (describe)

CATEGORY

1) New, mandatory
2) New, optional
3) Replacement, mandatory
4) Replacement, optional
5) Withdrawn, mandatory
6) Withdrawn, optional

* Provide California Dept. of Insurance number ( CDI# ) under the column identified as Source Form No.

<u>Additional Information and Documents Required</u>

Describe the purpose of the form or form change

For **NEW FORMS**, furnish a copy of the form to be filed, <u>unless</u> identical to an advisory organization form.  If the form is a new endorsement to the policy, describe any changes in coverage under the policy.  Describe what adjustments, if any, will be made to the premium due to the introduction of the forms.

For **REVISED FORMS**, describe any changes in coverages between the proposed form and the current form.  Reference pertinent sections of each form affected. Brackets [ ] should be used to identify any deletions on the current form and underline all changes in the revised form. Describe what adjustments, if any, will be made to the premium due to the revisions.

Prior Approval Rate Application
(Forms)

Page 12(a)

DEPARTMENT OF INSURANCE (CDI)
Edition Date:    4/4/2011

Line of Insurance.    Surety

FORMS

Insurers who wish to use a new or replacement form in connection with a new or existing program must furnish the following information and documentation for our review.
Revisions must be highlighted and the corresponding manual pages must be provided.

| | FORM NO. | TITLE | TYPE | SOURCE | SOURCE FORM NO * | CATEGORY | Restricts Coverage [ Yes/ No ] | Broadens Coverage [ Yes/ No ] | Rate Impact [ Yes / No ] | % Change | Flat Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1] New: | AL-10 | Application for Surety Bail Bond | 1 | 4 | n/a | 1 | n/a | n/a | n | n/a | n |
| 2] New: | UL-0100 | Indemnity Agreement for Surety Bail Bond | 4 | 4 | n/a | 1 | n/a | n/a | n | n/a | n |
| 3] New: | AL-0101 | Amendment to Indemnity Agreement | 4 | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 4] New: | ALGC | General Conditions of Bail | 4 | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 5] New: | UL-0202 | Disclosure Statement | 4 | 4 | n/a | 1 | n/a | n/a | n | n/a | n |
| 6] New: | UL-0200 | Deed of Trust | 4 | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 7] New: | UL-0201 | Authorization Re Deed of Trust | 4 | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 8] New: | UL-0001 | Bail Bond Face Sheet | 4 - Bond | 4 | n/a | 1 | n/a | n/a | n | n/a | n |
| 9] New: | UL-0600 | Indemnitor Order of Surrender | 4 | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 10] New: | UL-0700 | Bail Bond Rates | 4 - Notice | 4 | n/a | 1 | n/a | n/a | n | n/a | n |
| 11] New: | UL-0601 | Authorization to Arrest | 4 | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 12] New: | UL-0002 | Appeal Bond Face Sheet | 4 - Bond | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 13] New: | UL-0003 | Indictment Bail Bond Face Sheet | 4 - Bond | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 14] New: | AL-PN | Promissory Note | 4 | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 15] New: | UL-0401-0: | Bail Bond Power of Attorney | 4- Bond | 4 | n/a | 1 | n/a | n/a | n | n/a | n |
| 16] New: | UL-0401-0; | Statement of Charges | 4 | 4 | n/a | 1 | n/a | n/a | n | n/a | n |
| 17] New: | UL-0401-0: | Receipt for Collateral Deposited | 4 | 4 | n/a | 1 | n/a | n/a | n | n/a | n |
| 18] New: | AL-SBP1 | Supervised Bail Program | 4 | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 19] New: | AL-SBP2 | Supervised Bail Program | 4 | 4 | n/a | 2 | n/a | n/a | n | n/a | n |
| 20] New: | ALSC-60 | Statement of Charges (BMA) | 4 | 4 | n/a | 1 | n/a | n/a | n | n/a | n |
| 21] New: | ALPR-61 | Payment Receipt (BMA) | 4 | 4 | n/a | 1 | n/a | n/a | n | n/a | n |

# UNIFORM CERTIFICATE OF AUTHORITY APPLICATION

**UCAA Proforma Financial Statements**
Property and Casualty Insurance Company

## Instructions

1. Enter the Company Name below
2. Enter the first year of the proformas (ie. 2009).
3. Select the states to be completed for proformas by clicking the check boxes on the right and then click on the "Create Selected State Worksheets" button below.
4. Complete all sections of the proforma statements contained on each tab below.
5. Note that several tabs contain worksheets for 3 years of data. Be sure to complete all years of data.
6. Do not "Cut" and "Paste" cells in the worksheets. Use "Copy" and "Paste" instead.

Enter the Company Name:

**Ulico Standard of America Casualty Company**

| | |
|---|---|
| Year 1: | 2011 |
| Year 2: | 2012 |
| Year 3: | 2013 |

| | | | | | |
|---|---|---|---|---|---|
| ☐ | AK | Alaska | ☐ | MT | Montana |
| ☐ | AL | Alabama | ☐ | NC | North Carolina |
| ☐ | AR | Arkansas | ☐ | ND | North Dakota |
| ☐ | AS | American Samoa | ☐ | NE | Nebraska |
| ☐ | AZ | Arizona | ☐ | NH | New Hampshire |
| ☐ | CA | California     Go to CA | ☐ | NJ | New Jersey |
| ☐ | CO | Colorado | ☐ | NM | New Mexico |
| ☐ | CT | Connecticut | ☐ | NV | Nevada |
| ☐ | DC | District Of Columbia | ☐ | NY | New York |
| ☐ | DE | Delaware | ☐ | OH | Ohio |
| ☐ | FL | Florida | ☐ | OK | Oklahoma |
| ☐ | GA | Georgia | ☐ | OR | Oregon |
| ☐ | GU | Guam | ☐ | PA | Pennsylvania |
| ☐ | HI | Hawaii | ☐ | PR | Puerto Rico |
| ☐ | IA | Iowa | ☐ | RI | Rhode Island |
| ☐ | ID | Idaho | ☐ | SC | South Carolina |
| ☐ | IL | Illinois | ☐ | SD | South Dakota |
| ☐ | IN | Indiana | ☐ | TN | Tennessee |
| ☐ | KS | Kansas | ☐ | TX | Texas |
| ☐ | KY | Kentucky | ☐ | UT | Utah |
| ☐ | LA | Louisiana | ☐ | VA | Virginia |
| ☐ | MA | Massachusetts | ☐ | VI | U.S. Virgin Islands |
| ☐ | MD | Maryland | ☐ | VT | Vermont |
| ☐ | ME | Maine | ☐ | WA | Washington |
| ☐ | MI | Michigan | ☐ | WI | Wisconsin |
| ☐ | MN | Minnesota | ☐ | WV | West Virginia |
| ☐ | MO | Missouri | ☐ | WY | Wyoming |
| ☐ | MS | Mississippi | | | |

If states were added to this spreadsheet in error:
1. Select the states to be deleted by clicking the check boxes on the right.
2. Click on the "Delete Selected State Worksheets" button above.

Company Name:    Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Pro Forma Statutory Balance Sheet
(In Thousands)

| | 2011 | 2012 | 2013 |
|---|---|---|---|
| **Admitted Assets** | | | |
| 1.  Invested Assets(non-affiliated) | 6,576 | 8,518 | 11,174 |
| 2.  Investments in Subs and Affiliates | - | - | - |
| 3.  All assets other than investments | 4,451 | 8,484 | 12,249 |
| 4.  Total Admitted Assets(1+2+3) | 11,027 | 17,002 | 23,422 |
| | | | |
| **Liabilities** | | | |
| 5.  Losses (Case & IBNR) | 142 | 309 | 463 |
| 6.  Loss Adjustment Expenses | - | - | - |
| 7.  Unearned Premiums | 956 | 1,521 | 2,151 |
| 8.  Ceded Reinsurance Payable | - | - | - |
| 9.  Payable to Parents, Subsidiaries & Affiliates | - | - | - |
| 10. All Other Liabilities | 4,451 | 8,484 | 12,249 |
| 11.  Total Liabilities(5+6+7+8+9+10) | 5,549 | 10,314 | 14,863 |
| **Capital and Surplus** | | | |
| 12. Common Stock | 5,000 | 5,000 | 5,000 |
| 13. Preferred Stock | - | - | - |
| 14. Gross Paid In and Contributed Surplus | - | - | - |
| 15. Surplus Notes | - | - | - |
| 16. Unassigned Surplus | 478 | 1,689 | 3,559 |
| 17. Other Items(elaborate) | | | |
| 18. Total Capital and Surplus(12+13+14+15+16+17) | 5,478 | 6,689 | 8,559 |
| | | | |
| 19. Total Liabilities, Capital and Surplus(11+18) | 11,027 | 17,002 | 23,422 |

### Risk-Based Capital Analysis

| | 2011 | 2012 | 2013 |
|---|---|---|---|
| 20. Total Adjusted Capital | 5,478 | 6,689 | 8,559 |
| 21. Authorized Control Level Risk-Based Capital | 776 | 1,301 | 1,788 |
| 22. Calculated Risk-Based Capital (20/21) | 706% | 514% | 479% |

**Company Name:    Ulico Standard of America Casualty Company**
**(Property & Casualty Insurance Company)**
**Pro Forma Statutory Profit & Loss Statement**
**(In Thousands)**

|  | 2011 | 2012 | 2013 |
|---|---|---|---|
| 1. Net Premiums Earned | 2,867 | 5,518 | 7,974 |
| 2. Net Losses Incurred (Case & IBNR) | 158 | 304 | 439 |
| 3. Net Loss Adjustment Expenses Incurred | - | - | - |
| 4. Direct Commissions & Brokerage | - | - | - |
| 5. Reinsurance Ceding Commissions | - | - | - |
| 6. Net Commissions Incurred (4-5) | - | - | - |
| 7. Other Contractual Agreements* | 150 | 150 | 150 |
| 8. Other Underwriting Expenses Incurred | 1,859 | 3,174 | 4,433 |
| 9. Underwriting Gain (Loss) (1-(2+3+6+7+8)) | 700 | 1,891 | 2,953 |
| 10. Net Investment Income | 97 | 127 | 165 |
| 11. Other Income | - | - | - |
| 12. Net Operating Income (Loss) Before Taxes (9+10+11) | 797 | 2,017 | 3,118 |
| 13. Income Taxes Incurred | 319 | 807 | 1,247 |
| 14. Net Operating Income (Loss) After Taxes (12-13) | 478 | 1,210 | 1,871 |
| 15. Stockholder Dividends | - | - | - |
| **Operating Percentages:** |  |  |  |
| Net Premiums Earned | 100.00% | 100.00% | 100.00% |
| 16. Net Losses Incurred to Net Premiums Earned(2/1) | 5.50% | 5.50% | 5.50% |
| 17. Net Loss Adjustment Expenses Incurred to Net Premiums Earned(3/1) | 0.00% | 0.00% | 0.00% |
| 18. Other Underwriting Expenses to Net Premiums Earned ((6+7+8)/1) | 70.08% | 60.24% | 57.47% |
| 19. Net Underwriting Gain Or (Loss) (9/1) | 24.42% | 34.26% | 37.03% |
| **Other Percentages:** |  |  |  |
| 20. Other Underwriting Expenses to Net Premiums Written ((6+7+8)/Total Net Premiums Written)) | 52.56% | 54.64% | 0.00% |
| 21. Net Loss and Loss Adjustment Expenses Incurred to Net Premiums Earned ((2+3)/1) | 5.50% | 5.50% | 5.50% |

*ie... MGA(excluding amounts included above as agents commissions), service contracts, claims payment contracts

**Company Name:    Ulico Standard of America Casualty Company**
**(Property & Casualty Insurance Company)**
**Pro Forma Statutory Cash Flow Statement**
**(In Thousands)**

|  | 2011 | 2012 | 2013 |
|---|---|---|---|
| **Cash From Operations** | | | |
| 1. Premiums Collected Net of Reinsurance | 3,823 | 6,083 | 8,605 |
| 2. Loss and Loss Adjustments Expenses Paid (Net of S&S) | 16 | 137 | 284 |
| 3. Underwriting Expenses Paid | 2,009 | 3,324 | 4,583 |
| 4. Other Underwriting Income(expenses) | - | - | - |
| 5. Total Cash From Underwriting(1-2-3+4) | 1,798 | 2,623 | 3,738 |
| | | | |
| 6. Net Investment Income | 97 | 127 | 165 |
| 7. Other Income | - | - | - |
| 8. Dividends to Policyholders | - | - | - |
| 9. Federal and Foreign Income Taxes (Paid) Recovered | (319) | (807) | (1,247) |
| 10. Net Cash From Operations(5+6+7-8+9) | 1,576 | 1,942 | 2,656 |
| | | | |
| **Cash From Investments** | | | |
| 11. Net Cash from Investments | (4,932) | (1,457) | (1,992) |
| | | | |
| **Cash From Financing and Misc Sources** | | | |
| 12. Total Other Cash Provided | 5,000 | | - |
| 13. Total Other Cash applied | - | - | - |
| 14. Net Cash from Financing and Misc Sources(12-13) | 5,000 | - | - |
| | | | |
| 15. Net Change In Cash, Cash Equivalents and Short-Term Investments(10+11+14) | 1,644 | 486 | 664 |

**Nationwide**

**Company Name:** Ulico Standard of America Casualty Comp
**(Property & Casualty Insurance Company)**
**Premiums Written to Surplus Ratios**
**Amounts in Whole Dollars**

| Year | Direct Premiums Written | Assumed Premiums Written | Gross Premiums Written | Ceded Premiums Written | Net Premiums Written | Gross Written Premiums to Surplus | Net Written Premiums to Surplus |
|------|------|------|------|------|------|------|------|
| 2011 | 3,822,600 | - | 3,822,600 | - | 3,822,600 | 69.8% | 69.8% |
| 2012 | 6,083,100 | - | 6,083,100 | - | 6,083,100 | 90.9% | 90.9% |
| 2013 | 8,604,800 | - | 8,604,800 | - | 8,604,800 | 100.5% | 100.5% |

# No data entry is required on this page.

**Nationwide**

**Year 1**    **2011**

Company Name:    **Ulico Standard of America Casualty Company**

**(Property & Casualty Insurance Company)**
**Planned Premium Volume By Line of Business**
**Amounts in Whole Dollars**

| Annual Statement Line | Description | Direct Premiums Written | Assumed Premiums Written | Ceded Premiums Written | Net Premiums Written | Direct Premiums Earned | Assumed Premiums Earned | Ceded Premiums Earned | Net Premiums Earned |
|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | | | | - | | | | - |
| 2.1 | Allied Lines | | | | - | | | | - |
| 2.2 | Multiple Peril Crop | | | | - | | | | - |
| 2.3 | Federal Flood | | | | - | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - | | | | - |
| 6.0 | Mortgage Guaranty | | | | - | | | | - |
| 8.0 | Ocean Marine | | | | - | | | | - |
| 9.0 | Inland Marine | | | | - | | | | - |
| 10.0 | Financial Guaranty | | | | - | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - | | | | - |
| 12.0 | Earthquake | | | | - | | | | - |
| 13.0 | Group A&H | | | | - | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - | | | | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | | | | - | | | | - |
| 15.5 | Other Accident Only | | | | - | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - | | | | - |
| 15.7 | All Other A&H | | | | - | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - | | | | - |
| 16.0 | Workers' Compensation | | | | - | | | | - |
| 17.1 | Other Liability | | | | - | | | | - |
| 17.3 | Excess Workers Compensation | | | | - | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - | | | | - |
| 23.0 | Fidelity | | | | - | | | | - |
| 24.0 | Surety | | | | - | | | | - |
| 26.0 | Burglary and Theft | | | | - | | | | - |
| 27.0 | Boiler and Machinery | | | | - | | | | - |
| 28.0 | Credit | | | | - | | | | - |
| 28.0 | Credit Disability | | | | - | | | | - |
| 30.0 | Warranty | | | | - | | | | - |
| 34.0 | Prepaid Legal | | | | - | | | | - |
| 34.0 | Bail Bonds | 3,822,600 | - | - | 3,822,600 | 2,867,000 | - | - | 2,867,000 |
| 34.0 | Glass | | | | - | | | | - |
| 34.0 | Title | | | | - | | | | - |
| 34.0 | Livestock | | | | - | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - | | | | - |
| 34.0 | Reinsurance | | | | - | | | | - |
| 34.0 | Other - Property | | | | - | | | | - |
| 34.0 | Other - Casualty | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| | Total | 3,822,600 | - | - | 3,822,600 | 2,867,000 | - | - | 2,867,000 |

Nationwide

Year 2    2012

Company Name:    **Ulico Standard of America Casualty Company**

(Property & Casualty Insurance Company)
Planned Premium Volume By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Premiums Written | Assumed Premiums Written | Ceded Premiums Written | Net Premiums Written | Direct Premiums Earned | Assumed Premiums Earned | Ceded Premiums Earned | Net Premiums Earned |
|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | | | | - | | | | - |
| 2.1 | Allied Lines | | | | - | | | | - |
| 2.2 | Multiple Peril Crop | | | | - | | | | - |
| 2.3 | Federal Flood | | | | - | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - | | | | - |
| 6.0 | Mortgage Guaranty | | | | - | | | | - |
| 8.0 | Ocean Marine | | | | - | | | | - |
| 9.0 | Inland Marine | | | | - | | | | - |
| 10.0 | Financial Guaranty | | | | - | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - | | | | - |
| 12.0 | Earthquake | | | | - | | | | - |
| 13.0 | Group A&H | | | | - | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - | | | | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | | | | - | | | | - |
| 15.5 | Other Accident Only | | | | - | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - | | | | - |
| 15.7 | All Other A&H | | | | - | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - | | | | - |
| 16.0 | Workers' Compensation | | | | - | | | | - |
| 17.1 | Other Liability | | | | - | | | | - |
| 17.3 | Excess Workers Compensation | | | | - | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - | | | | - |
| 23.0 | Fidelity | | | | - | | | | - |
| 24.0 | Surety | | | | - | | | | - |
| 26.0 | Burglary and Theft | | | | - | | | | - |
| 27.0 | Boiler and Machinery | | | | - | | | | - |
| 28.0 | Credit | | | | - | | | | - |
| 28.0 | Credit Disability | | | | - | | | | - |
| 30.0 | Warranty | | | | - | | | | - |
| 34.0 | Prepaid Legal | | | | - | | | | - |
| 34.0 | Bail Bonds | 6,083,100 | - | - | 6,083,100 | 5,518,000 | | - | 5,518,000 |
| 34.0 | Glass | | | | - | | | | - |
| 34.0 | Title | | | | - | | | | - |
| 34.0 | Livestock | | | | - | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - | | | | - |
| 34.0 | Reinsurance | | | | - | | | | - |
| 34.0 | Other - Property | | | | - | | | | - |
| 34.0 | Other - Casualty | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| | Total | 6,083,100 | - | - | 6,083,100 | 5,518,000 | - | - | 5,518,000 |

Nationwide

Year 3    2013

Company Name:    Ulico Standard of America Casualty Company

(Property & Casualty Insurance Company)
Planned Premium Volume By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Premiums Written | Assumed Premiums Written | Ceded Premiums Written | Net Premiums Written | Direct Premiums Earned | Assumed Premiums Earned | Ceded Premiums Earned | Net Premiums Earned |
|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | | | | - | | | | - |
| 2.1 | Allied Lines | | | | - | | | | - |
| 2.2 | Multiple Peril Crop | | | | - | | | | - |
| 2.3 | Federal Flood | | | | - | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - | | | | - |
| 6.0 | Mortgage Guaranty | | | | - | | | | - |
| 8.0 | Ocean Marine | | | | - | | | | - |
| 9.0 | Inland Marine | | | | - | | | | - |
| 10.0 | Financial Guaranty | | | | - | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - | | | | - |
| 12.0 | Earthquake | | | | - | | | | - |
| 13.0 | Group A&H | | | | - | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - | | | | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | | | | - | | | | - |
| 15.5 | Other Accident Only | | | | - | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - | | | | - |
| 15.7 | All Other A&H | | | | - | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - | | | | - |
| 16.0 | Workers' Compensation | | | | - | | | | - |
| 17.1 | Other Liability | | | | - | | | | - |
| 17.3 | Excess Workers Compensation | | | | - | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - | | | | - |
| 23.0 | Fidelity | | | | - | | | | - |
| 24.0 | Surety | | | | - | | | | - |
| 26.0 | Burglary and Theft | | | | - | | | | - |
| 27.0 | Boiler and Machinery | | | | - | | | | - |
| 28.0 | Credit | | | | - | | | | - |
| 28.0 | Credit Disability | | | | - | | | | - |
| 30.0 | Warranty | | | | - | | | | - |
| 34.0 | Prepaid Legal | | | | - | | | | - |
| 34.0 | Bail Bonds | 8,604,800 | - | - | 8,604,800 | 7,974,300 | - | - | 7,974,300 |
| 34.0 | Glass | | | | - | | | | - |
| 34.0 | Title | | | | - | | | | - |
| 34.0 | Livestock | | | | - | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - | | | | - |
| 34.0 | Reinsurance | | | | - | | | | - |
| 34.0 | Other - Property | | | | - | | | | - |
| 34.0 | Other - Casualty | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| | Total | 8,604,800 | - | - | 8,604,800 | 7,974,300 | - | - | 7,974,300 |

Nationwide
Year 1    2011

Company Name:  Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Incurred Loss Summary By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Losses Incurred* | Assumed Losses Incurred* | Ceded Losses Incurred* | Net Losses Incurred* |
|---|---|---|---|---|---|
| 1.0 | Fire | | | | - |
| 2.0 | Allied Lines | | | | - |
| 2.2 | Multiple Peril Crop | | | | - |
| 2.3 | Federal Flood | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - |
| 6.0 | Mortgage Guaranty | | | | - |
| 8.0 | Ocean Marine | | | | - |
| 9.0 | Inland Marine | | | | - |
| 10.0 | Financial Guaranty | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - |
| 12.0 | Earthquake | | | | - |
| 13.0 | Group A&H | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - |
| 15.4 | Non-Renew - Stated Reasons Only A&H | | | | - |
| 15.5 | Other Accident Only | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - |
| 15.7 | All Other A&H | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - |
| 16.0 | Workers' Compensation | | | | - |
| 17.1 | Other Liability | | | | - |
| 17.3 | Excess Workers Compensation | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - |
| 23.0 | Fidelity | | | | - |
| 24.0 | Surety | | | | - |
| 26.0 | Burglary and Theft | | | | - |
| 27.0 | Boiler and Machinery | | | | - |
| 28.0 | Credit | | | | - |
| 28.0 | Credit Disability | | | | - |
| 30.0 | Warranty | | | | - |
| 34.0 | Prepaid Legal | | | | - |
| 34.0 | Bail Bonds | 157,700 | - | - | 157,700 |
| 34.0 | Glass | | | | - |
| 34.0 | Title | | | | - |
| 34.0 | Livestock | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - |
| 34.0 | Reinsurance | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| | Total | 157,700 | - | - | 157,700 |
| | Verification from P & L | | | | 157,700 |

* Include loss adjustment expenses.

**Nationwide**
Year 2    2012

Company Name:  Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Incurred Loss Summary By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Losses Incurred* | Assumed Losses Incurred* | Ceded Losses Incurred* | Net Losses Incurred* |
|---|---|---|---|---|---|
| 1.0 | Fire | | | | - |
| 2.0 | Allied Lines | | | | - |
| 2.2 | Multiple Peril Crop | | | | - |
| 2.3 | Federal Flood | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - |
| 6.0 | Mortgage Guaranty | | | | - |
| 8.0 | Ocean Marine | | | | - |
| 9.0 | Inland Marine | | | | - |
| 10.0 | Financial Guaranty | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - |
| 12.0 | Earthquake | | | | - |
| 13.0 | Group A&H | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - |
| 15.4 | Non-Renew - Stated Reasons Only A&H | | | | - |
| 15.5 | Other Accident Only | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - |
| 15.7 | All Other A&H | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - |
| 16.0 | Workers' Compensation | | | | - |
| 17.1 | Other Liability | | | | - |
| 17.3 | Excess Workers Compensation | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - |
| 23.0 | Fidelity | | | | - |
| 24.0 | Surety | | | | - |
| 26.0 | Burglary and Theft | | | | - |
| 27.0 | Boiler and Machinery | | | | - |
| 28.0 | Credit | | | | - |
| 28.0 | Credit Disability | | | | - |
| 30.0 | Warranty | | | | - |
| 34.0 | Prepaid Legal | | | | - |
| 34.0 | Bail Bonds | | | | - |
| 34.0 | Glass | 303,500 | - | - | 303,500 |
| 34.0 | Title | | | | - |
| 34.0 | Livestock | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - |
| 34.0 | Reinsurance | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| | Total | 303,500 | - | - | 303,500 |
| | Verification from P & L | 303,500 | | | 303,500 |

* Include loss adjustment expenses.

**Nationwide**
**Year 3    2013**

Company Name:  Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Incurred Loss Summary By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Losses Incurred* | Assumed Losses Incurred* | Ceded Losses Incurred* | Net Losses Incurred* |
|---|---|---|---|---|---|
| 1.0 | Fire | | | | - |
| 2.0 | Allied Lines | | | | - |
| 2.2 | Multiple Peril Crop | | | | - |
| 2.3 | Federal Flood | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - |
| 6.0 | Mortgage Guaranty | | | | - |
| 8.0 | Ocean Marine | | | | - |
| 9.0 | Inland Marine | | | | - |
| 10.0 | Financial Guaranty | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - |
| 12.0 | Earthquake | | | | - |
| 13.0 | Group A&H | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - |
| 15.4 | Non-Renew - Stated Reasons Only A&H | | | | - |
| 15.5 | Other Accident Only | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - |
| 15.7 | All Other A&H | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - |
| 16.0 | Workers' Compensation | | | | - |
| 17.1 | Other Liability | | | | - |
| 17.3 | Excess Workers Compensation | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - |
| 23.0 | Fidelity | | | | - |
| 24.0 | Surety | | | | - |
| 26.0 | Burglary and Theft | | | | - |
| 27.0 | Boiler and Machinery | | | | - |
| 28.0 | Credit | | | | - |
| 28.0 | Credit Disability | | | | - |
| 30.0 | Warranty | | | | - |
| 34.0 | Prepaid Legal | | | | - |
| 34.0 | Bail Bonds | 438,600 | - | - | 438,600 |
| 34.0 | Glass | | | | - |
| 34.0 | Title | | | | - |
| 34.0 | Livestock | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - |
| 34.0 | Reinsurance | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| | Total | 438,600 | - | - | 438,600 |
| | Verification from P & L | 438,600 | | | 438,600 |

* Include loss adjustment expenses.

**Nationwide**
**Year 1**    **2011**

Company Name:   Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Incurred Loss Summary By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Losses Incurred* | Assumed Losses Incurred* | Ceded Losses Incurred* | Net Losses Incurred* |
|---|---|---|---|---|---|
| 1.0 | Fire | | | | - |
| 2.0 | Allied Lines | | | | - |
| 2.2 | Multiple Peril Crop | | | | |
| 2.3 | Federal Flood | | | | |
| 3.0 | Farmowners Multiple Peril | | | | |
| 4.0 | Homeowners Multiple Peril | | | | |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | |
| 6.0 | Mortgage Guaranty | | | | |
| 8.0 | Ocean Marine | | | | - |
| 9.0 | Inland Marine | | | | - |
| 10.0 | Financial Guaranty | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - |
| 12.0 | Earthquake | | | | - |
| 13.0 | Group A&H | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - |
| 15.4 | Non-Renew - Stated Reasons Only A&H | | | | - |
| 15.5 | Other Accident Only | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - |
| 15.7 | All Other A&H | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - |
| 16.0 | Workers' Compensation | | | | - |
| 17.1 | Other Liability | | | | - |
| 17.3 | Excess Workers Compensation | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - |
| 23.0 | Fidelity | | | | - |
| 24.0 | Surety | | | | - |
| 26.0 | Burglary and Theft | | | | - |
| 27.0 | Boiler and Machinery | | | | - |
| 28.0 | Credit | | | | - |
| 28.0 | Credit Disability | | | | - |
| 30.0 | Warranty | | | | - |
| 34.0 | Prepaid Legal | | | | - |
| 34.0 | Bail Bonds | 157,700 | - | - | 157,700 |
| 34.0 | Glass | | | | - |
| 34.0 | Title | | | | - |
| 34.0 | Livestock | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - |
| 34.0 | Reinsurance | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| | Total | 157,700 | - | - | 157,700 |
| | Verification from P & L | | | | 157,700 |

* Include loss adjustment expenses.

Nationwide
Year 2    2012

Company Name:  Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Incurred Loss Summary By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Losses Incurred* | Assumed Losses Incurred* | Ceded Losses Incurred* | Net Losses Incurred* |
|---|---|---|---|---|---|
| 1.0 | Fire | | | | - |
| 2.0 | Allied Lines | | | | - |
| 2.2 | Multiple Peril Crop | | | | - |
| 2.3 | Federal Flood | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - |
| 6.0 | Mortgage Guaranty | | | | - |
| 8.0 | Ocean Marine | | | | - |
| 9.0 | Inland Marine | | | | - |
| 10.0 | Financial Guaranty | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - |
| 12.0 | Earthquake | | | | - |
| 13.0 | Group A&H | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - |
| 15.4 | Non-Renew - Stated Reasons Only A&H | | | | - |
| 15.5 | Other Accident Only | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - |
| 15.7 | All Other A&H | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - |
| 16.0 | Workers' Compensation | | | | - |
| 17.1 | Other Liability | | | | - |
| 17.3 | Excess Workers Compensation | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - |
| 23.0 | Fidelity | | | | - |
| 24.0 | Surety | | | | - |
| 26.0 | Burglary and Theft | | | | - |
| 27.0 | Boiler and Machinery | | | | - |
| 28.0 | Credit | | | | - |
| 28.0 | Credit Disability | | | | - |
| 30.0 | Warranty | | | | - |
| 34.0 | Prepaid Legal | | | | - |
| 34.0 | Bail Bonds | 303,500 | - | - | 303,500 |
| 34.0 | Glass | | | | - |
| 34.0 | Title | | | | - |
| 34.0 | Livestock | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - |
| 34.0 | Reinsurance | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| | Total | 303,500 | - | - | 303,500 |
| | Verification from P & L | | | | 303,500 |

* Include loss adjustment expenses.

Nationwide
Year 3      2013

Company Name:  Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Incurred Loss Summary By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Losses Incurred* | Assumed Losses Incurred* | Ceded Losses Incurred* | Net Losses Incurred* |
|---|---|---|---|---|---|
| 1.0 | Fire | | | | - |
| 2.0 | Allied Lines | | | | - |
| 2.2 | Multiple Peril Crop | | | | - |
| 2.3 | Federal Flood | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - |
| 6.0 | Mortgage Guaranty | | | | - |
| 8.0 | Ocean Marine | | | | - |
| 9.0 | Inland Marine | | | | - |
| 10.0 | Financial Guaranty | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - |
| 12.0 | Earthquake | | | | - |
| 13.0 | Group A&H | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - |
| 15.4 | Non-Renew - Stated Reasons Only A&H | | | | - |
| 15.5 | Other Accident Only | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - |
| 15.7 | All Other A&H | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - |
| 16.0 | Workers' Compensation | | | | - |
| 17.1 | Other Liability | | | | - |
| 17.3 | Excess Workers Compensation | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - |
| 23.0 | Fidelity | | | | - |
| 24.0 | Surety | | | | - |
| 26.0 | Burglary and Theft | | | | - |
| 27.0 | Boiler and Machinery | | | | - |
| 28.0 | Credit | | | | - |
| 28.0 | Credit Disability | | | | - |
| 30.0 | Warranty | | | | - |
| 34.0 | Prepaid Legal | | | | - |
| 34.0 | Bail Bonds | 438,600 | - | - | 438,600 |
| 34.0 | Glass | | | | - |
| 34.0 | Title | | | | - |
| 34.0 | Livestock | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - |
| 34.0 | Reinsurance | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| | Total | 438,600 | - | - | 438,600 |
| | Verification from P & L | 438,600 | | | 438,600 |

* Include loss adjustment expenses.

Nationwide

**Company Name:** Ulico Standard of America Casualty Company
**(Property & Casualty Insurance Company)**
**Net Premium and Loss Developments By Line of Business**
**Amounts in Whole Dollars**

| Annual Statement Line | Description | | Premiums Earned | 2011 Losses Incurred* | Loss Ratio | | Premiums Earned | 2012 Losses Incurred* | Loss Ratio | | Premiums Earned | 2013 Losses Incurred* | Loss Ratio | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | | - | - | - | | - | - | - | | - | - | - | |
| 2.1 | Allied Lines | | - | - | - | | - | - | - | | - | - | - | |
| 2.2 | Multiple Peril Crop | | - | - | - | | - | - | - | | - | - | - | |
| 2.3 | Federal Flood | | - | - | - | | - | - | - | | - | - | - | |
| 3.0 | Farmowners Multiple Peril | | - | - | - | | - | - | - | | - | - | - | |
| 4.0 | Homeowners Multiple Peril | | - | - | - | | - | - | - | | - | - | - | |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | - | - | - | | - | - | - | | - | - | - | |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | - | - | - | | - | - | - | | - | - | - | |
| 6.0 | Mortgage Guaranty | | - | - | - | | - | - | - | | - | - | - | |
| 8.0 | Ocean Marine | | - | - | - | | - | - | - | | - | - | - | |
| 9.0 | Inland Marine | | - | - | - | | - | - | - | | - | - | - | |
| 10.0 | Financial Guaranty | | - | - | - | | - | - | - | | - | - | - | |
| 11.1 | Medical Professional Liability - Occurrence | | - | - | - | | - | - | - | | - | - | - | |
| 11.2 | Medical Professional Liability - Claims Made | | - | - | - | | - | - | - | | - | - | - | |
| 12.0 | Earthquake | | - | - | - | | - | - | - | | - | - | - | |
| 13.0 | Group A&H | | - | - | - | | - | - | - | | - | - | - | |
| 14.0 | Credit A&H (Group & Individual) | | - | - | - | | - | - | - | | - | - | - | |
| 15.1 | Collectively Renewable A&H | | - | - | - | | - | - | - | | - | - | - | |
| 15.2 | Non-Cancellable A&H | | - | - | - | | - | - | - | | - | - | - | |
| 15.3 | Guaranteed Renewable A&H | | - | - | - | | - | - | - | | - | - | - | |
| 15.4 | Non-Renew-Stated Reasons Only A&H | | - | - | - | | - | - | - | | - | - | - | |
| 15.5 | Other Accident Only | | - | - | - | | - | - | - | | - | - | - | |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | - | - | - | | - | - | - | | - | - | - | |
| 15.7 | All Other A&H | | - | - | - | | - | - | - | | - | - | - | |
| 15.8 | Federal Employees Health Benefits Program | | - | - | - | | - | - | - | | - | - | - | |
| 16.0 | Workers' Compensation | | - | - | - | | - | - | - | | - | - | - | |
| 17.1 | Other Liability | | - | - | - | | - | - | - | | - | - | - | |
| 17.3 | Excess Workers Compensation | | - | - | - | | - | - | - | | - | - | - | |
| 18.1 | Products Liability - Occurrence | | - | - | - | | - | - | - | | - | - | - | |
| 18.2 | Products Liability - Claims Made | | - | - | - | | - | - | - | | - | - | - | |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | - | - | - | | - | - | - | | - | - | - | |
| 19.2 | Other Private Passenger Auto Liability | | - | - | - | | - | - | - | | - | - | - | |
| 19.3 | Commercial Auto No-Fault (PIP) | | - | - | - | | - | - | - | | - | - | - | |
| 19.4 | Other Commercial Auto Liability | | - | - | - | | - | - | - | | - | - | - | |
| 21.1 | Private Passenger Auto Phys Damage | | - | - | - | | - | - | - | | - | - | - | |
| 21.2 | Commercial Auto Physical Damage | | - | - | - | | - | - | - | | - | - | - | |
| 22.0 | Aircraft (All Perils) | | - | - | - | | - | - | - | | - | - | - | |
| 23.0 | Fidelity | | - | - | - | | - | - | - | | - | - | - | |
| 24.0 | Surety | | - | - | - | | - | - | - | | - | - | - | |
| 26.0 | Burglary and Theft | | - | - | - | | - | - | - | | - | - | - | |
| 27.0 | Boiler and Machinery | | - | - | - | | - | - | - | | - | - | - | |
| 28.0 | Credit | | - | - | - | | - | - | - | | - | - | - | |
| 28.0 | Credit Disability | | - | - | - | | - | - | - | | - | - | - | |
| 30.0 | Warranty | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Prepaid Legal | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Bail Bonds | | 2,867,000 | 157,700 | 6% | | 5,518,000 | 303,500 | 6% | | 7,974,300 | 438,600 | 6% | |
| 34.0 | Glass | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Title | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Livestock | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Industrial Extended Coverage | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Mobile Home Multiple Peril | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Mobile Home Physical Damage | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Reinsurance | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Other | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Other | | - | - | - | | - | - | - | | - | - | - | |
| 34.0 | Other | | - | - | - | | - | - | - | | - | - | - | |
| | Total | | 2,867,000 | 157,700 | 6% | | 5,518,000 | 303,500 | 6% | | 7,974,300 | 438,600 | 6% | |
| | Verification from P & L - should equal line above. | | 2,867,000 | 157,700 | 6% | | 5,518,000 | 303,500 | 6% | | 7,974,300 | 438,600 | 6% | |

* Includes loss adjustment expenses.

# UCAA Proforma Financial Statements Assumptions

**List all of the relevant assumptions used to create the proformas.**
**Note, assumptions enclosed within the Plan of Operation need not be disclosed again here.**

California
Year 1     2011

Company Name:   Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Planned Premium Volume By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Premiums Written | Assumed Premiums Written | Ceded Premiums Written | Net Premiums Written | Direct Premiums Earned | Assumed Premiums Earned | Ceded Premiums Earned | Net Premiums Earned |
|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | | | | - | | | | - |
| 2.1 | Allied Lines | | | | - | | | | - |
| 2.2 | Multiple Peril Crop | | | | - | | | | - |
| 2.3 | Federal Flood | | | | - | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - | | | | - |
| 6.0 | Mortgage Guaranty | | | | - | | | | - |
| 8.0 | Ocean Marine | | | | - | | | | - |
| 9.0 | Inland Marine | | | | - | | | | - |
| 10.0 | Financial Guaranty | | | | - | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - | | | | - |
| 12.0 | Earthquake | | | | - | | | | - |
| 13.0 | Group A&H | | | | - | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - | | | | - |
| 15.2 | Non-Cancelable A&H | | | | - | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - | | | | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | | | | - | | | | - |
| 15.5 | Other Accident Only | | | | - | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - | | | | - |
| 15.7 | All Other A&H | | | | - | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - | | | | - |
| 16.0 | Workers' Compensation | | | | - | | | | - |
| 17.1 | Other Liability | | | | - | | | | - |
| 17.3 | Excess Workers Compensation | | | | - | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - | | | | - |
| 23.0 | Fidelity | | | | - | | | | - |
| 24.0 | Surety | | | | - | | | | - |
| 26.0 | Burglary and Theft | | | | - | | | | - |
| 27.0 | Boiler and Machinery | | | | - | | | | - |
| 28.0 | Credit | | | | - | | | | - |
| 28.0 | Credit Disability | | | | - | | | | - |
| 30.0 | Warranty | | | | - | | | | - |
| 34.0 | Prepaid Legal | | | | - | | | | - |
| 34.0 | Bail Bonds | 3,822,600 | - | - | 3,822,600 | 2,867,000 | - | - | 2,867,000 |
| 34.0 | Glass | | | | - | | | | - |
| 34.0 | Title | | | | - | | | | - |
| 34.0 | Livestock | | | | - | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - | | | | - |
| 34.0 | Reinsurance | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| | Total | 3,822,600 | - | - | 3,822,600 | 2,867,000 | - | - | 2,867,000 |
| Verification from Net Premiums and Loss Development by LOB | | | | | | | | | 2,867,000 |

116 of 145

California
Year 2    2012

Company Name:   Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Planned Premium Volume By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Premiums Written | Assumed Premiums Written | Ceded Premiums Written | Net Premiums Written | Direct Premiums Earned | Assumed Premiums Earned | Ceded Premiums Earned | Net Premiums Earned |
|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | | | | - | | | | - |
| 2.1 | Allied Lines | | | | - | | | | - |
| 2.2 | Multiple Peril Crop | | | | - | | | | - |
| 2.3 | Federal Flood | | | | - | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - | | | | - |
| 6.0 | Mortgage Guaranty | | | | - | | | | - |
| 8.0 | Ocean Marine | | | | - | | | | - |
| 9.0 | Inland Marine | | | | - | | | | - |
| 10.0 | Financial Guaranty | | | | - | | | | - |
| 11.1 | Medical Professional Liability – Occurrence | | | | - | | | | - |
| 11.2 | Medical Professional Liability – Claims Made | | | | - | | | | - |
| 12.0 | Earthquake | | | | - | | | | - |
| 13.0 | Group A&H | | | | - | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - | | | | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | | | | - | | | | - |
| 15.5 | Other Accident Only | | | | - | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - | | | | - |
| 15.7 | All Other A&H | | | | - | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - | | | | - |
| 16.0 | Workers' Compensation | | | | - | | | | - |
| 17.1 | Other Liability | | | | - | | | | - |
| 17.3 | Excess Workers Compensation | | | | - | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - | | | | - |
| 23.0 | Fidelity | | | | - | | | | - |
| 24.0 | Surety | | | | - | | | | - |
| 26.0 | Burglary and Theft | | | | - | | | | - |
| 27.0 | Boiler and Machinery | | | | - | | | | - |
| 28.0 | Credit | | | | - | | | | - |
| 28.0 | Credit Disability | | | | - | | | | - |
| 30.0 | Warranty | | | | - | | | | - |
| 34.0 | Prepaid Legal | | | | - | | | | - |
| 34.0 | Bail Bonds | 6,083,100 | - | - | 6,083,100 | 5,518,000 | - | - | 5,518,000 |
| 34.0 | Glass | | | | - | | | | - |
| 34.0 | Title | | | | - | | | | - |
| 34.0 | Livestock | | | | - | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - | | | | - |
| 34.0 | Reinsurance | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| | Total | 6,083,100 | - | - | 6,083,100 | 5,518,000 | - | - | 5,518,000 |
| | Verification from Net Premiums and Loss Development by LOB | | | | | | | | 5,518,000 |

**California**
Year 3        2013

Company Name:   Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Planned Premium Volume By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Premiums Written | Assumed Premiums Written | Ceded Premiums Written | Net Premiums Written | Direct Premiums Earned | Assumed Premiums Earned | Ceded Premiums Earned | Net Premiums Earned |
|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | | | | - | | | | - |
| 2.1 | Allied Lines | | | | - | | | | - |
| 2.2 | Multiple Peril Crop | | | | - | | | | - |
| 2.3 | Federal Flood | | | | - | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - | | | | - |
| 6.0 | Mortgage Guaranty | | | | - | | | | - |
| 8.0 | Ocean Marine | | | | - | | | | - |
| 9.0 | Inland Marine | | | | - | | | | - |
| 10.0 | Financial Guaranty | | | | - | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - | | | | - |
| 12.0 | Earthquake | | | | - | | | | - |
| 13.0 | Group A&H | | | | - | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - | | | | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | | | | - | | | | - |
| 15.5 | Other Accident Only | | | | - | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - | | | | - |
| 15.7 | All Other A&H | | | | - | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - | | | | - |
| 16.0 | Workers' Compensation | | | | - | | | | - |
| 17.1 | Other Liability | | | | - | | | | - |
| 17.3 | Excess Workers Compensation | | | | - | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - | | | | - |
| 23.0 | Fidelity | | | | - | | | | - |
| 24.0 | Surety | | | | - | | | | - |
| 26.0 | Burglary and Theft | | | | - | | | | - |
| 27.0 | Boiler and Machinery | | | | - | | | | - |
| 28.0 | Credit | | | | - | | | | - |
| 28.0 | Credit Disability | | | | - | | | | - |
| 30.0 | Warranty | | | | - | | | | - |
| 34.0 | Prepaid Legal | | | | - | | | | - |
| 34.0 | Bail Bonds | 8,604,800 | - | - | 8,604,800 | 7,974,300 | | - | 7,974,300 |
| 34.0 | Glass | | | | - | | | | - |
| 34.0 | Title | | | | - | | | | - |
| 34.0 | Livestock | | | | - | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - | | | | - |
| 34.0 | Reinsurance | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| 34.0 | Other | | | | - | | | | - |
| | Total | 8,604,800 | - | - | 8,604,800 | 7,974,300 | - | - | 7,974,300 |
| | Verification from Net Premiums and Loss Development by LOB | | | | | | | | 7,974,300 |

**California**
**Year 1    2011**

**Company Name:    Ulico Standard of America Casualty Company**
**(Property & Casualty Insurance Company)**
**Incurred Loss Summary By Line of Business**
**Amounts in Whole Dollars**

| Annual Statement Line | Description | Direct Losses Incurred* | Assumed Losses Incurred* | Ceded Losses Incurred* | Net Losses Incurred* |
|---|---|---|---|---|---|
| 1.0 | Fire | | | | - |
| 2.0 | Allied Lines | | | | - |
| 2.2 | Multiple Peril Crop | | | | - |
| 2.3 | Federal Flood | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - |
| 6.0 | Mortgage Guaranty | | | | - |
| 8.0 | Ocean Marine | | | | - |
| 9.0 | Inland Marine | | | | - |
| 10.0 | Financial Guaranty | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - |
| 12.0 | Earthquake | | | | - |
| 13.0 | Group A&H | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - |
| 15.2 | Non-Cancelable A&H | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - |
| 15.4 | Non-Renew - Stated Reasons Only A&H | | | | - |
| 15.5 | Other Accident Only | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - |
| 15.7 | All Other A&H | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - |
| 16.0 | Workers' Compensation | | | | - |
| 17.1 | Other Liability | | | | - |
| 17.3 | Excess Workers Compensation | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - |
| 23.0 | Fidelity | | | | - |
| 24.0 | Surety | | | | - |
| 26.0 | Burglary and Theft | | | | - |
| 27.0 | Boiler and Machinery | | | | - |
| 28.0 | Credit | | | | - |
| 28.0 | Credit Disability | | | | - |
| 30.0 | Warranty | | | | - |
| 34.0 | Prepaid Legal | | - | | - |
| 34.0 | Bail Bonds | 157,700 | - | - | 157,700 |
| 34.0 | Glass | | | | - |
| 34.0 | Title | | | | - |
| 34.0 | Livestock | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - |
| 34.0 | Reinsurance | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| | **Total** | 157,700 | - | - | 157,700 |
| | Verification from Net Premiums and Loss Development by LOB | | | | 157,700 |

* Include loss adjustment expenses.

California
Year 2    2012

Company Name:    Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Incurred Loss Summary By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Direct Losses Incurred* | Assumed Losses Incurred* | Ceded Losses Incurred* | Net Losses Incurred* |
|---|---|---|---|---|---|
| 1.0 | Fire | | | | - |
| 2.0 | Allied Lines | | | | - |
| 2.2 | Multiple Peril Crop | | | | - |
| 2.3 | Federal Flood | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - |
| 6.0 | Mortgage Guaranty | | | | - |
| 8.0 | Ocean Marine | | | | - |
| 9.0 | Inland Marine | | | | - |
| 10.0 | Financial Guaranty | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - |
| 12.0 | Earthquake | | | | - |
| 13.0 | Group A&H | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - |
| 15.4 | Non-Renew - Stated Reasons Only A&H | | | | - |
| 15.5 | Other Accident Only | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - |
| 15.7 | All Other A&H | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - |
| 16.0 | Workers' Compensation | | | | - |
| 17.1 | Other Liability | | | | - |
| 17.3 | Excess Workers Compensation | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - |
| 23.0 | Fidelity | | | | - |
| 24.0 | Surety | | | | - |
| 26.0 | Burglary and Theft | | | | - |
| 27.0 | Boiler and Machinery | | | | - |
| 28.0 | Credit | | | | - |
| 28.0 | Credit Disability | | | | - |
| 30.0 | Warranty | | | | - |
| 34.0 | Prepaid Legal | | | | - |
| 34.0 | Bail Bonds | 303,500 | - | - | 303,500 |
| 34.0 | Glass | | | | - |
| 34.0 | Title | | | | - |
| 34.0 | Livestock | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - |
| 34.0 | Reinsurance | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| | Total | 303,500 | - | - | 303,500 |
| | Verification from Net Premiums and Loss Development by LOB | | | | 303,500 |

* Include loss adjustment expenses.

**California**
**Year 3**    **2013**

**Company Name:**    **Ulico Standard of America Casualty Company**
**(Property & Casualty Insurance Company)**
**Incurred Loss Summary By Line of Business**
**Amounts in Whole Dollars**

| Annual Statement Line | Description | Direct Losses Incurred* | Assumed Losses Incurred* | Ceded Losses Incurred* | Net Losses Incurred* |
|---|---|---|---|---|---|
| 1.0 | Fire | | | | - |
| 2.0 | Allied Lines | | | | - |
| 2.2 | Multiple Peril Crop | | | | - |
| 2.3 | Federal Flood | | | | - |
| 3.0 | Farmowners Multiple Peril | | | | - |
| 4.0 | Homeowners Multiple Peril | | | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | | | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | | | | - |
| 6.0 | Mortgage Guaranty | | | | - |
| 8.0 | Ocean Marine | | | | - |
| 9.0 | Inland Marine | | | | - |
| 10.0 | Financial Guaranty | | | | - |
| 11.1 | Medical Professional Liability - Occurrence | | | | - |
| 11.2 | Medical Professional Liability - Claims Made | | | | - |
| 12.0 | Earthquake | | | | - |
| 13.0 | Group A&H | | | | - |
| 14.0 | Credit A&H (Group & Individual) | | | | - |
| 15.1 | Collectively Renewable A&H | | | | - |
| 15.2 | Non-Cancellable A&H | | | | - |
| 15.3 | Guaranteed Renewable A&H | | | | - |
| 15.4 | Non-Renew - Stated Reasons Only A&H | | | | - |
| 15.5 | Other Accident Only | | | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | | | | - |
| 15.7 | All Other A&H | | | | - |
| 15.8 | Federal Employees Health Benefits Program | | | | - |
| 16.0 | Workers' Compensation | | | | - |
| 17.1 | Other Liability | | | | - |
| 17.3 | Excess Workers Compensation | | | | - |
| 18.1 | Products Liability - Occurrence | | | | - |
| 18.2 | Products Liability - Claims Made | | | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | | | | - |
| 19.2 | Other Private Passenger Auto Liability | | | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | | | | - |
| 19.4 | Other Commercial Auto Liability | | | | - |
| 21.1 | Private Passenger Auto Phys Damage | | | | - |
| 21.2 | Commercial Auto Physical Damage | | | | - |
| 22.0 | Aircraft (All Perils) | | | | - |
| 23.0 | Fidelity | | | | - |
| 24.0 | Surety | | | | - |
| 26.0 | Burglary and Theft | | | | - |
| 27.0 | Boiler and Machinery | | | | - |
| 28.0 | Credit | | | | - |
| 28.0 | Credit Disability | | | | - |
| 30.0 | Warranty | | | | - |
| 34.0 | Prepaid Legal | | | | - |
| 34.0 | Bail Bonds | 438,600 | - | - | 438,600 |
| 34.0 | Glass | | | | - |
| 34.0 | Title | | | | - |
| 34.0 | Livestock | | | | - |
| 34.0 | Industrial Extended Coverage | | | | - |
| 34.0 | Mobile Home Multiple Peril | | | | - |
| 34.0 | Mobile Home Physical Damage | | | | - |
| 34.0 | Reinsurance | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| 34.0 | Other | | | | - |
| | **Total** | 438,600 | - | - | 438,600 |
| | Verification from Net Premiums and Loss Development by LOB | 438,600 | - | - | 438,600 |

\* Include loss adjustment expenses.

California

Company Name: **Ulico Standard of America Casualty Company**
(Property & Casualty Insurance Company)
Net Premium and Loss Developments By Line of Business
Amounts in Whole Dollars

| Annual Statement Line | Description | Premiums Earned | 2011 Losses Incurred* | Loss Ratio | Premiums Earned | 2012 Losses Incurred* | Loss Ratio | Premiums Earned | 2013 Losses Incurred* | Loss Ratio |
|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | - | - | | - | - | - | - | - | - |
| 2.1 | Allied Lines | - | - | | - | - | - | - | - | - |
| 2.2 | Multiple Peril Crop | - | - | | - | - | - | - | - | - |
| 2.3 | Federal Flood | - | - | | - | - | - | - | - | - |
| 3.0 | Farmowners Multiple Peril | - | - | | - | - | - | - | - | - |
| 4.0 | Homeowners Multiple Peril | - | - | | - | - | - | - | - | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | - | - | | - | - | - | - | - | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | - | - | | - | - | - | - | - | - |
| 6.0 | Mortgage Guaranty | - | - | | - | - | - | - | - | - |
| 8.0 | Ocean Marine | - | - | | - | - | - | - | - | - |
| 9.0 | Inland Marine | - | - | | - | - | - | - | - | - |
| 10.0 | Financial Guaranty | - | - | | - | - | - | - | - | - |
| 11.1 | Medical Professional Liability - Occurrence | - | - | | - | - | - | - | - | - |
| 11.2 | Medical Professional Liability - Claims Made | - | - | | - | - | - | - | - | - |
| 12.0 | Earthquake | - | - | | - | - | - | - | - | - |
| 13.0 | Group A&H | - | - | | - | - | - | - | - | - |
| 14.0 | Credit A&H (Group & Individual) | - | - | | - | - | - | - | - | - |
| 15.1 | Collectively Renewable A&H | - | - | | - | - | - | - | - | - |
| 15.2 | Non-Cancellable A&H | - | - | | - | - | - | - | - | - |
| 15.3 | Guaranteed Renewable A&H | - | - | | - | - | - | - | - | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | - | - | | - | - | - | - | - | - |
| 15.5 | Other Accident Only | - | - | | - | - | - | - | - | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | - | - | | - | - | - | - | - | - |
| 15.7 | All Other A&H | - | - | | - | - | - | - | - | - |
| 15.8 | Federal Employees Health Benefits Program | - | - | | - | - | - | - | - | - |
| 16.0 | Workers' Compensation | - | - | | - | - | - | - | - | - |
| 17.1 | Other Liability | - | - | | - | - | - | - | - | - |
| 17.3 | Excess Workers Compensation | - | - | | - | - | - | - | - | - |
| 18.1 | Products Liability - Occurrence | - | - | | - | - | - | - | - | - |
| 18.2 | Products Liability - Claims Made | - | - | | - | - | - | - | - | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | - | - | | - | - | - | - | - | - |
| 19.2 | Other Private Passenger Auto Liability | - | - | | - | - | - | - | - | - |
| 19.3 | Commercial Auto No-Fault (PIP) | - | - | | - | - | - | - | - | - |
| 19.4 | Other Commercial Auto Liability | - | - | | - | - | - | - | - | - |
| 21.1 | Private Passenger Auto Phys Damage | - | - | | - | - | - | - | - | - |
| 21.2 | Commercial Auto Physical Damage | - | - | | - | - | - | - | - | - |
| 22.0 | Aircraft (All Perils) | - | - | | - | - | - | - | - | - |
| 23.0 | Fidelity | - | - | | - | - | - | - | - | - |
| 24.0 | Surety | - | - | | - | - | - | - | - | - |
| 26.0 | Burglary and Theft | - | - | | - | - | - | - | - | - |
| 27.0 | Boiler and Machinery | - | - | | - | - | - | - | - | - |
| 28.0 | Credit | - | - | | - | - | - | - | - | - |
| 28.0 | Credit Disability | - | - | | - | - | - | - | - | - |
| 30.0 | Warranty | - | - | | - | - | - | - | - | - |
| 34.0 | Prepaid Legal | - | - | | - | - | - | - | - | - |
| 34.0 | Ball Bonds | 2,867,000 | 157,700 | 6% | 5,518,000 | 303,500 | 6% | 7,974,300 | 438,600 | 6% |
| 34.0 | Glass | - | - | | - | - | - | - | - | - |
| 34.0 | Title | - | - | | - | - | - | - | - | - |
| 34.0 | Livestock | - | - | | - | - | - | - | - | - |
| 34.0 | Industrial Extended Coverage | - | - | | - | - | - | - | - | - |
| 34.0 | Mobile Home Multiple Peril | - | - | | - | - | - | - | - | - |
| 34.0 | Mobile Home Physical Damage | - | - | | - | - | - | - | - | - |
| 34.0 | Reinsurance | - | - | | - | - | - | - | - | - |
| 34.0 | Other | - | - | | - | - | - | - | - | - |
| 34.0 | Other | - | - | | - | - | - | - | - | - |
| 34.0 | Other | - | - | | - | - | - | - | - | - |
| | **Total** | **2,867,000** | **157,700** | **6%** | **5,518,000** | **303,500** | **6%** | **7,974,300** | **438,600** | **6%** |

* Include loss adjustment expenses.

**California**
**Year 1** 2011

**Company Name:** Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Expense Allocation to Lines of Business Net of Reinsurance
Amounts in Whole Dollars

| Annual Statement Line | Premiums, Losses, Expenses and Percentages To Premiums Earned for Business Net of Reinsurance | Net Premiums Written Amount | Net Premiums Earned Amount | % | Net Losses Incurred Amount | % | Loss Adjustment Expenses Incurred Amount | % | Commission & Brokerage Expenses Incurred Amount | % | Taxes, Licenses, & Fees Incurred Amount | % | Other Acquisition Expenses Incurred Amount | % | All Other Expenses Incurred Amount | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2.1 | Allied Lines | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2.2 | Multiple Peril Crop | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2.3 | Federal Flood | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 3.0 | Farmowners Multiple Peril | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 4.0 | Homeowners Multiple Peril | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 6.0 | Mortgage Guaranty | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 8.0 | Ocean Marine | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 9.0 | Inland Marine | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 10.0 | Financial Guaranty | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 11.1 | Medical Professional Liability - Occurrence | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 11.2 | Medical Professional Liability - Claims Made | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 12.0 | Earthquake | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 13.0 | Group A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 14.0 | Credit A&H (Group & Individual) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.1 | Collectively Renewable A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.2 | Non-Cancellable A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.3 | Guaranteed Renewable A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.5 | Other Accident Only | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.7 | All Other A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.8 | Federal Employees Health Benefits Program | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 16.0 | Workers' Compensation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 17.1 | Other Liability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 17.3 | Excess Workers Compensation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 18.1 | Products Liability - Occurrence | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 18.2 | Products Liability - Claims Made | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.2 | Other Private Passenger Auto Liability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.3 | Commercial Auto No-Fault (PIP) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.4 | Other Commercial Auto Liability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21.1 | Private Passenger Auto Phys Damage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21.2 | Commercial Auto Physical Damage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 22.0 | Aircraft (All Perils) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 23.0 | Fidelity | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 24.0 | Surety | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 26.0 | Burglary and Theft | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 27.0 | Boiler and Machinery | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 28.0 | Credit | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 28.0 | Credit Disability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 30.0 | Warranty | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Prepaid Legal | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Bail Bonds | 3,822,600 | 2,867,000 | 100% | 157,700 | 6% | - | - | - | - | 1,259,300 | 44% | 750,000 | 26% | - | - |
| 34.0 | Glass | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Title | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Livestock | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Industrial Extended Coverage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Mobile Home Multiple Peril | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Mobile Home Physical Damage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Reinsurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Total | 3,822,600 | 2,867,000 | 100% | 157,700 | 6% | 0 | 0% | 0 | 0% | 1,259,300 | 44% | 750,000 | 26% | 0 | 0% |

California
Year 2    2012

Company Name:   Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Expense Allocation to Lines of Business Net of Reinsurance
Amounts in Whole Dollars

| Annual Statement Line | Premiums, Losses, Expenses and Percentages To Premiums Earned for Business Net of Reinsurance | Net Premiums Written Amount | Net Premiums Earned Amount | % | Net Losses Incurred Amount | % | Loss Adjustment Expenses Incurred Amount | % | Commission & Brokerage Expenses Incurred Amount | % | Taxes, Licenses, & Fees Incurred Amount | % | Other Acquisition Expenses Incurred Amount | % | All Other Expenses Incurred Amount | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | - | - | - | - | | - | | - | | - | | - | | - | |
| 2.1 | Allied Lines | - | - | - | - | | - | | - | | - | | - | | - | |
| 2.2 | Multiple Peril Crop | - | - | - | - | | - | | - | | - | | - | | - | |
| 2.3 | Federal Flood | - | - | - | - | | - | | - | | - | | - | | - | |
| 3.0 | Farmowners Multiple Peril | - | - | - | - | | - | | - | | - | | - | | - | |
| 4.0 | Homeowners Multiple Peril | - | - | - | - | | - | | - | | - | | - | | - | |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | - | - | - | - | | - | | - | | - | | - | | - | |
| 5.2 | Commercial Multiple Peril (Liability Portion) | - | - | - | - | | - | | - | | - | | - | | - | |
| 6.0 | Mortgage Guaranty | - | - | - | - | | - | | - | | - | | - | | - | |
| 8.0 | Ocean Marine | - | - | - | - | | - | | - | | - | | - | | - | |
| 9.0 | Inland Marine | - | - | - | - | | - | | - | | - | | - | | - | |
| 10.0 | Financial Guaranty | - | - | - | - | | - | | - | | - | | - | | - | |
| 11.1 | Medical Professional Liability - Occurrence | - | - | - | - | | - | | - | | - | | - | | - | |
| 11.2 | Medical Professional Liability - Claims Made | - | - | - | - | | - | | - | | - | | - | | - | |
| 12.0 | Earthquake | - | - | - | - | | - | | - | | - | | - | | - | |
| 13.0 | Group A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 14.0 | Credit A&H (Group & Individual) | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.1 | Collectively Renewable A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.2 | Non-Cancellable A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.3 | Guaranteed Renewable A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.4 | Non-Renew-Stated Reasons Only A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.5 | Other Accident Only | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.7 | All Other A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.8 | Federal Employees Health Benefits Program | - | - | - | - | | - | | - | | - | | - | | - | |
| 16.0 | Workers' Compensation | - | - | - | - | | - | | - | | - | | - | | - | |
| 17.1 | Other Liability | - | - | - | - | | - | | - | | - | | - | | - | |
| 17.3 | Excess Workers Compensation | - | - | - | - | | - | | - | | - | | - | | - | |
| 18.1 | Products Liability - Occurrence | - | - | - | - | | - | | - | | - | | - | | - | |
| 18.2 | Products Liability - Claims Made | - | - | - | - | | - | | - | | - | | - | | - | |
| 19.1 | Private Passenger Auto No-Fault (PIP) | - | - | - | - | | - | | - | | - | | - | | - | |
| 19.2 | Other Private Passenger Auto Liability | - | - | - | - | | - | | - | | - | | - | | - | |
| 19.3 | Commercial Auto No-Fault (PIP) | - | - | - | - | | - | | - | | - | | - | | - | |
| 19.4 | Other Commercial Auto Liability | - | - | - | - | | - | | - | | - | | - | | - | |
| 21.1 | Private Passenger Auto Phys Damage | - | - | - | - | | - | | - | | - | | - | | - | |
| 21.2 | Commercial Auto Physical Damage | - | - | - | - | | - | | - | | - | | - | | - | |
| 22.0 | Aircraft (All Perils) | - | - | - | - | | - | | - | | - | | - | | - | |
| 23.0 | Fidelity | - | - | - | - | | - | | - | | - | | - | | - | |
| 24.0 | Surety | - | - | - | - | | - | | - | | - | | - | | - | |
| 26.0 | Burglary and Theft | - | - | - | - | | - | | - | | - | | - | | - | |
| 27.0 | Boiler and Machinery | - | - | - | - | | - | | - | | - | | - | | - | |
| 28.0 | Credit | - | - | - | - | | - | | - | | - | | - | | - | |
| 28.0 | Credit Disability | - | - | - | - | | - | | - | | - | | - | | - | |
| 30.1 | Warranty | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Prepaid Legal | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Bail Bonds | 6,083,100 | 5,518,000 | 100% | 303,500 | 6% | - | | - | | 2,423,800 | 44% | 900,000 | 16% | - | |
| 34.0 | Glass | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Title | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Livestock | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Industrial Extended Coverage | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Mobile Home Multiple Peril | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Mobile Home Physical Damage | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Reinsurance | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Other | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Other | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Other | - | - | - | - | | - | | - | | - | | - | | - | |
| | Total | 6,083,100 | 5,518,000 | 100% | 303,500 | 6% | 0 | 0% | 0 | 0% | 2,423,800 | 44% | 900,000 | 16% | 0 | 0% |

California
Year 3    2013

Company Name:   Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Expense Allocation to Lines of Business Net of Reinsurance
Amounts in Whole Dollars

| Annual Statement Line | Premiums, Losses, Expenses and Percentages To Premiums Earned for Business Net of Reinsurance | Net Premiums Written Amount | Net Premiums Earned Amount | % | Net Losses Incurred Amount | % | Loss Adjustment Expenses Incurred Amount | % | Commission & Brokerage Expenses Incurred Amount | % | Taxes, Licenses, & Fees Incurred Amount | % | Other Acquisition Expenses Incurred Amount | % | All Other Expenses Incurred Amount | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | - | - | - | - | | - | | - | | - | | - | | - | |
| 2.1 | Allied Lines | - | - | - | - | | - | | - | | - | | - | | - | |
| 2.2 | Multiple Peril Crop | - | - | - | - | | - | | - | | - | | - | | - | |
| 2.3 | Federal Flood | - | - | - | - | | - | | - | | - | | - | | - | |
| 3.0 | Farmowners Multiple Peril | - | - | - | - | | - | | - | | - | | - | | - | |
| 4.0 | Homeowners Multiple Peril | - | - | - | - | | - | | - | | - | | - | | - | |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | - | - | - | - | | - | | - | | - | | - | | - | |
| 5.2 | Commercial Multiple Peril (Liability Portion) | - | - | - | - | | - | | - | | - | | - | | - | |
| 6.0 | Mortgage Guaranty | - | - | - | - | | - | | - | | - | | - | | - | |
| 8.0 | Ocean Marine | - | - | - | - | | - | | - | | - | | - | | - | |
| 9.0 | Inland Marine | - | - | - | - | | - | | - | | - | | - | | - | |
| 10.0 | Financial Guaranty | - | - | - | - | | - | | - | | - | | - | | - | |
| 11.1 | Medical Professional Liability - Occurrence | - | - | - | - | | - | | - | | - | | - | | - | |
| 11.2 | Medical Professional Liability - Claims Made | - | - | - | - | | - | | - | | - | | - | | - | |
| 12.0 | Earthquake | - | - | - | - | | - | | - | | - | | - | | - | |
| 13.0 | Group A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 14.0 | Credit A&H (Group & Individual) | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.1 | Collectively Renewable A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.2 | Non-Cancellable A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.3 | Guaranteed Renewable A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.4 | Non-Renew-Stated Reasons Only A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.5 | Other Accident Only | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.7 | All Other A&H | - | - | - | - | | - | | - | | - | | - | | - | |
| 15.8 | Federal Employees Health Benefits Program | - | - | - | - | | - | | - | | - | | - | | - | |
| 16.0 | Workers' Compensation | - | - | - | - | | - | | - | | - | | - | | - | |
| 17.1 | Other Liability | - | - | - | - | | - | | - | | - | | - | | - | |
| 17.3 | Excess Workers Compensation | - | - | - | - | | - | | - | | - | | - | | - | |
| 18.1 | Products Liability - Occurrence | - | - | - | - | | - | | - | | - | | - | | - | |
| 18.2 | Products Liability - Claims Made | - | - | - | - | | - | | - | | - | | - | | - | |
| 19.1 | Private Passenger Auto No-Fault (PIP) | - | - | - | - | | - | | - | | - | | - | | - | |
| 19.2 | Other Private Passenger Auto Liability | - | - | - | - | | - | | - | | - | | - | | - | |
| 19.3 | Commercial Auto No-Fault (PIP) | - | - | - | - | | - | | - | | - | | - | | - | |
| 19.4 | Other Commercial Auto Liability | - | - | - | - | | - | | - | | - | | - | | - | |
| 21.1 | Private Passenger Auto Phys Damage | - | - | - | - | | - | | - | | - | | - | | - | |
| 21.2 | Commercial Auto Physical Damage | - | - | - | - | | - | | - | | - | | - | | - | |
| 22.0 | Aircraft (All Perils) | - | - | - | - | | - | | - | | - | | - | | - | |
| 23.0 | Fidelity | - | - | - | - | | - | | - | | - | | - | | - | |
| 24.0 | Surety | - | - | - | - | | - | | - | | - | | - | | - | |
| 26.0 | Burglary and Theft | - | - | - | - | | - | | - | | - | | - | | - | |
| 27.0 | Boiler and Machinery | - | - | - | - | | - | | - | | - | | - | | - | |
| 28.0 | Credit | - | - | - | - | | - | | - | | - | | - | | - | |
| 28.0 | Credit Disability | - | - | - | - | | - | | - | | - | | - | | - | |
| 30.0 | Warranty | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Prepaid Legal | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Bail Bonds | 8,604,800 | 7,974,300 | 100% | 438,600 | 6% | - | | - | | 3,502,700 | 44% | 1,080,000 | 14% | - | |
| 34.0 | Glass | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Title | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Livestock | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Industrial Extended Coverage | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Mobile Home Multiple Peril | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Mobile Home Physical Damage | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Reinsurance | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Other | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Other | - | - | - | - | | - | | - | | - | | - | | - | |
| 34.0 | Other | - | - | - | - | | - | | - | | - | | - | | - | |
| | Total | 8,604,800 | 7,974,300 | 100% | 438,600 | 6% | 0 | 0% | 0 | 0% | 3,502,700 | 44% | 1,080,000 | 14% | 0 | 0% |

**California**
Year 1    2011

Company Name:    Ulico Standard of America Casualty Company
(Property & Casualty Insurance Company)
Expense Allocation to Lines of Direct Business Written
Amounts in Whole Dollars

| Annual Statement Line | Premiums, Losses, Expenses and Percentages To Premiums Earned for Direct Business Written | Direct Premiums Written Amount | Direct Premiums Earned Amount | % | Direct Losses Incurred Amount | % | Loss Adjustment Expenses Incurred Amount | % | Commission & Brokerage Expenses Incurred Amount | % | Taxes, Licenses, & Fees Incurred Amount | % | Other Acquisition Expenses Incurred Amount | % | All Other Expenses Incurred Amount | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | - | - | - | | - | | - | | - | - | | - | - | | - |
| 2.1 | Allied Lines | - | - | - | | - | | - | | - | - | | - | - | | - |
| 2.2 | Multiple Peril Crop | - | - | - | | - | | - | | - | - | | - | - | | - |
| 2.3 | Federal Flood | - | - | - | | - | | - | | - | - | | - | - | | - |
| 3.0 | Farmowners Multiple Peril | - | - | - | | - | | - | | - | - | | - | - | | - |
| 4.0 | Homeowners Multiple Peril | - | - | - | | - | | - | | - | - | | - | - | | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | - | - | - | | - | | - | | - | - | | - | - | | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | - | - | - | | - | | - | | - | - | | - | - | | - |
| 6.0 | Mortgage Guaranty | - | - | - | | - | | - | | - | - | | - | - | | - |
| 8.0 | Ocean Marine | - | - | - | | - | | - | | - | - | | - | - | | - |
| 9.0 | Inland Marine | - | - | - | | - | | - | | - | - | | - | - | | - |
| 10.0 | Financial Guaranty | - | - | - | | - | | - | | - | - | | - | - | | - |
| 11.1 | Medical Professional Liability - Occurrence | - | - | - | | - | | - | | - | - | | - | - | | - |
| 11.2 | Medical Professional Liability - Claims Made | - | - | - | | - | | - | | - | - | | - | - | | - |
| 12.0 | Earthquake | - | - | - | | - | | - | | - | - | | - | - | | - |
| 13.0 | Group A&H | - | - | - | | - | | - | | - | - | | - | - | | - |
| 14.0 | Credit A&H (Group & Individual) | - | - | - | | - | | - | | - | - | | - | - | | - |
| 15.1 | Collectively Renewable A&H | - | - | - | | - | | - | | - | - | | - | - | | - |
| 15.2 | Non-Cancellable A&H | - | - | - | | - | | - | | - | - | | - | - | | - |
| 15.3 | Guaranteed Renewable A&H | - | - | - | | - | | - | | - | - | | - | - | | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | - | - | - | | - | | - | | - | - | | - | - | | - |
| 15.5 | Other Accident Only | - | - | - | | - | | - | | - | - | | - | - | | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | - | - | - | | - | | - | | - | - | | - | - | | - |
| 15.7 | All Other A&H | - | - | - | | - | | - | | - | - | | - | - | | - |
| 15.8 | Federal Employees Health Benefits Program | - | - | - | | - | | - | | - | - | | - | - | | - |
| 16.0 | Workers' Compensation | - | - | - | | - | | - | | - | - | | - | - | | - |
| 17.1 | Other Liability | - | - | - | | - | | - | | - | - | | - | - | | - |
| 17.3 | Excess Workers Compensation | - | - | - | | - | | - | | - | - | | - | - | | - |
| 18.1 | Products Liability - Occurrence | - | - | - | | - | | - | | - | - | | - | - | | - |
| 18.2 | Products Liability - Claims Made | - | - | - | | - | | - | | - | - | | - | - | | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | - | - | - | | - | | - | | - | - | | - | - | | - |
| 19.2 | Other Private Passenger Auto Liability | - | - | - | | - | | - | | - | - | | - | - | | - |
| 19.3 | Commercial Auto No-Fault (PIP) | - | - | - | | - | | - | | - | - | | - | - | | - |
| 19.4 | Other Commercial Auto Liability | - | - | - | | - | | - | | - | - | | - | - | | - |
| 21.1 | Private Passenger Auto Phys Damage | - | - | - | | - | | - | | - | - | | - | - | | - |
| 21.2 | Commercial Auto Physical Damage | - | - | - | | - | | - | | - | - | | - | - | | - |
| 22.0 | Aircraft (All Perils) | - | - | - | | - | | - | | - | - | | - | - | | - |
| 23.0 | Fidelity | - | - | - | | - | | - | | - | - | | - | - | | - |
| 24.0 | Surety | - | - | - | | - | | - | | - | - | | - | - | | - |
| 26.0 | Burglary and Theft | - | - | - | | - | | - | | - | - | | - | - | | - |
| 27.0 | Boiler and Machinery | - | - | - | | - | | - | | - | - | | - | - | | - |
| 28.0 | Credit | - | - | - | | - | | - | | - | - | | - | - | | - |
| 28.0 | Credit Disability | - | - | - | | - | | - | | - | - | | - | - | | - |
| 30.0 | Warranty | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Prepaid Legal | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Bail Bonds | 3,822,600 | 2,867,000 | 100% | 157,700 | 6% | 0 | | 0 | | 1,259,300 | 44% | 750,000 | 26% | 0 | |
| 34.0 | Glass | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Title | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Livestock | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Industrial Extended Coverage | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Mobile Home Multiple Peril | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Mobile Home Physical Damage | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Reinsurance | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Other | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Other | - | - | - | | - | | - | | - | - | | - | - | | - |
| 34.0 | Other | - | - | - | | - | | - | | - | - | | - | - | | - |
| | Total | 3,822,600 | 2,867,000 | 100% | 157,700 | 6% | 0 | 0% | 0 | | 1,259,300 | 44% | 750,000 | 26% | 0 | 0% |

Verification from Planned Premium Volume by LOB Year 1.    3,822,600    2,867,000

**California**
Year 2    2012

Company Name:    **Ulico Standard of America Casualty Company**
(Property & Casualty Insurance Company)
Expense Allocation to Lines of Direct Business Written
Amounts in Whole Dollars

| Annual Statement Line | Premiums, Losses, Expenses and Percentages To Premiums Earned for Direct Business Written | Direct Premiums Written Amount | Direct Premiums Earned Amount | % | Direct Losses Incurred Amount | % | Loss Adjustment Expenses Incurred Amount | % | Commission & Brokerage Expenses Incurred Amount | % | Taxes, Licenses, & Fees Incurred Amount | % | Other Acquisition Expenses Incurred Amount | % | All Other Expenses Incurred Amount | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2.1 | Allied Lines | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2.2 | Multiple Peril Crop | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2.3 | Federal Flood | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 3.0 | Farmowners Multiple Peril | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 4.0 | Homeowners Multiple Peril | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 6.0 | Mortgage Guaranty | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 8.0 | Ocean Marine | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 9.0 | Inland Marine | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 10.0 | Financial Guaranty | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 11.1 | Medical Professional Liability - Occurrence | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 11.2 | Medical Professional Liability - Claims Made | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 12.0 | Earthquake | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 13.0 | Group A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 14.0 | Credit A&H (Group & Individual) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.1 | Collectively Renewable A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.2 | Non-Cancellable A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.3 | Guaranteed Renewable A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.5 | Other Accident Only | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.7 | All Other A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.8 | Federal Employees Health Benefits Program | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 16.0 | Workers' Compensation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 17.1 | Other Liability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 17.3 | Excess Workers Compensation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 18.1 | Products Liability - Occurrence | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 18.2 | Products Liability - Claims Made | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.2 | Other Private Passenger Auto Liability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.3 | Commercial Auto No-Fault (PIP) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.4 | Other Commercial Auto Liability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21.1 | Private Passenger Auto Phys Damage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21.2 | Commercial Auto Physical Damage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 22.0 | Aircraft (All Perils) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 23.0 | Fidelity | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 24.0 | Surety | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 26.0 | Burglary and Theft | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 27.0 | Boiler and Machinery | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 28.0 | Credit | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 28.0 | Credit Disability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 30.0 | Warranty | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Prepaid Legal | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Bail Bonds | 6,083,100 | 5,518,000 | 100% | 303,500 | 6% | 0 | - | 0 | - | 2,423,800 | 44% | 900,000 | 16% | 0 | - |
| 34.0 | Glass | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Title | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Livestock | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Industrial Extended Coverage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Mobile Home Multiple Peril | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Mobile Home Physical Damage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Reinsurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Total | 6,083,100 | 5,518,000 | 100% | 303,500 | 6% | 0 | 0% | 0 | 0% | 2,423,800 | 44% | 900,000 | 16% | 0 | 0% |
| | Verification from Planned Premium Volume by LOB Year 1. | 6,083,100 | 5,518,000 | | | | | | | | | | | | | |

California
Year 3    2013

Company Name:  Ullco Standard of America Casualty Company
(Property & Casualty Insurance Company)
Expense Allocation to Lines of Direct Business Written
Amounts in Whole Dollars

| Annual Statement Line | Premiums, Losses, Expenses and Percentages To Premiums Earned for Direct Business Written | Direct Premiums Written Amount | Direct Premiums Earned Amount | % | Direct Losses Incurred Amount | % | Loss Adjustment Expenses Incurred Amount | % | Commission & Brokerage Expenses Incurred Amount | % | Taxes, Licenses, & Fees Incurred Amount | % | Other Acquisition Expenses Incurred Amount | % | All Other Expenses Incurred Amount | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.0 | Fire | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2.1 | Allied Lines | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2.2 | Multiple Peril Crop | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 2.3 | Federal Flood | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 3.0 | Farmowners Multiple Peril | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 4.0 | Homeowners Multiple Peril | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 5.1 | Commercial Multiple Peril (Non-Liability Portion) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 5.2 | Commercial Multiple Peril (Liability Portion) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 6.0 | Mortgage Guaranty | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 8.0 | Ocean Marine | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 9.0 | Inland Marine | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 10.0 | Financial Guaranty | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 11.1 | Medical Professional Liability - Occurrence | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 11.2 | Medical Professional Liability - Claims Made | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 12.0 | Earthquake | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 13.0 | Group A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 14.0 | Credit A&H (Group & Individual) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.1 | Collectively Renewable A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.2 | Non-Cancellable A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.3 | Guaranteed Renewable A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.4 | Non-Renew-Stated Reasons Only A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.5 | Other Accident Only | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.6 | Medicare Title XVII exempt from state taxes or fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.7 | All Other A&H | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15.8 | Federal Employees Health Benefits Program | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 16.0 | Workers' Compensation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 17.1 | Other Liability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 17.3 | Excess Workers Compensation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 18.1 | Products Liability - Occurrence | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 18.2 | Products Liability - Claims Made | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.1 | Private Passenger Auto No-Fault (PIP) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.2 | Other Private Passenger Auto Liability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.3 | Commercial Auto No-Fault (PIP) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19.4 | Other Commercial Auto Liability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21.1 | Private Passenger Auto Phys Damage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21.2 | Commercial Auto Physical Damage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 22.0 | Aircraft (All Perils) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 23.0 | Fidelity | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 24.0 | Surety | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 26.0 | Burglary and Theft | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 27.0 | Boiler and Machinery | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 28.0 | Credit | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 28.0 | Credit Disability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 30.0 | Warranty | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Prepaid Legal | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Bail Bonds | 8,604,800 | 7,974,300 | 100% | 438,600 | 6% | 0 | - | 0 | - | 3,502,700 | 44% | 1,080,000 | 14% | 0 | - |
| 34.0 | Glass | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Title | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Livestock | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Industrial Extended Coverage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Mobile Home Multiple Peril | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Mobile Home Physical Damage | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Reinsurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34.0 | Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | Total | 8,604,800 | 7,974,300 | 100% | 438,600 | 6% | 0 | 0% | 0 | 0% | 3,502,700 | 44% | 1,080,000 | 14% | 0 | 0% |
| | Verification from Planned Premium Volume by LOB Year 1. | 8,604,800 | 7,974,300 | | | | | | | | | | | | | |

**Discussion of the UCAA Pro Forma Financial Statements**

This section provides a detailed discussion of the assumptions and results of the UCAA Pro Forma Financial Statements. For the purposes of discussion, it is assumed that the Company will commence operations at the beginning of 2011 and will generate all of its premiums through the Program Manager. Moreover, the projections assume that the Company's premiums are generated from bail bonds and that all premiums are written in California.

The Company will be a well capitalized surety that experiences from inception profitable growth, which reflects the consistently low loss ratios characteristic of well managed bail bond sureties. The low loss ratio assumptions and the favorable projected underwriting performance reflect the Program Manager's historic low losses, the indemnification that the Program Manager provides to the Company for any losses beyond the Contingent Reserve Account ("CRA"), which is also know in the industry as the Build-Up Fund, and the Program Manager's consistently excellent operational performance and financial condition since its inception in 2004.

A.    Pro Forma Statutory Profit & Loss Statement

1.    Premium Assumptions and Projections

Total bail bond premiums are calculated as the product of the number of bail bonds posted annually by the Program Manager, times the percentage of the Program

Manager's bail bonds attributable to Company, times the average bail bond liability, times the average bail bond premium rate. The Company is projected to write 42,111 bonds in 2011; 65,062 bonds in 2012; and 89,351 bonds in 2013. These amounts represent 50%, 75%, and 100% of the total number of bail bonds that the Program Manager expects to post in California, respectively, in 2011, 2012, and 2013. The total number of bail bonds posted annually by the Program Manager is projected to grow at 3.0% per annum during the projection period, essentially unchanged from the 3.1% per annum growth experienced from 2006 through 2010. Average bail bond liability is projected to increase 3.0% per annum, rising from $18,050 per bail bond in 2011 to $19,149 in 2013. During the five year period ended December 31, 2009, the Program Manager's average bail bond liability grew at 4.0% per annum. Thus, the Company's aggregate bail bond liability is projected to be $760.1 million in 2011; $1,209.6 million in 2012; and is $1,711.0 million in 2013.

Total bail bond premiums are calculated as the aggregate bail bond liability per annum times the Program Manager's average premium rate of 9.4%. While the Program Manager charges the 10% standard rate on most bail transactions, it charges a California Department of Insurance authorized 8% rate on qualifying bail transactions (i.e. those transactions that qualify for the lower rate based on (i.) retention of private counsel within thirty days; (ii) union membership; and (iii.) active duty in or veteran of the armed services). Total bail premiums are projected at $71.5 million in 2011; $113.7 million in 2012; and $160.8 million in 2013.

As is typically the case in the commercial bail bond business, the Program Manager that will undertake bail by posting bail bonds issued by the Company will retain the vast majority of total bail premiums to conduct its operations, which include monitoring failures to appear in court, tracking and apprehending fugitives, paying any summary judgments, and, indemnifying the Company for all losses in the event that funds in the Contingent Reserve Account are exhausted. Under the terms of the Program Manager Agreement, the Program Manager will keep 94.65% of the total bail bond premiums. This percentage level of total bail bond premiums retained is slightly higher than that of comparable bail-only sureties, which averaged 89.5% in 2009, with a range of 85.5% to 93.0%. (See Table 3 above.) The higher percentage of total bail bond premiums retained by the Program Manager implicitly reflects the price it charges to indemnify the Company for any losses beyond the Contingent Reserve Account. As a result, although the Company receives a smaller percentage of the total bail premiums, its exposure to potential loss has been significantly reduced. Following the example of American Contractors Indemnity Company, a California-domiciled insurer, which writes multiple lines of surety, including bail, the portion of the total bail bond premiums retained by the Program Manager is treated as a revenue item (i.e. an "Aggregate write-in for miscellaneous income") offset by an expense (i.e. a "Finance and service charge") in an equal amount, resulting in no impact to the surety's profitability. In the UCAA Pro Forma Financial Statements, this revenue and expense offset occurs in a single line ("Other Income") of the Pro Forma Statutory Profit & Loss Statement.

The remaining 5.35% of total bail bond premiums will be recognized as Direct Premiums Written by the Company. The 5.35% consists of 2.35% that is earmarked to pay California state premium taxes and 3.00% that represents a risk premium paid to the Company from which it will fund its bail surety operations. In 2011, Direct Premiums Written are projected to total $3,822,600, growing to $8,604,800 by 2013. The Company does not plan to assume or cede premiums. Thus, its Direct Premiums Written will equal its Gross Premiums Written and its Net Premiums Written.

The Company will account for premiums as earned three months after bail bonds are written. This accounting treatment is consistent with that of Lexington National Insurance, a prominent bail bond-only surety that is licensed in California. Thus, the Company will earn 75% of premiums written in any given accident year, while the remaining 25% of premiums written will be earned in the first quarter of the subsequent year. The Company will recognize Net Premiums Earned of $2,867,000 in 2011, $5,518,000 in 2012, and $7,974,300 in 2013. The Company has projected a reserve of Unearned Premiums on its Pro Forma Statutory Balance Sheet at year end to reflect the 25% of premiums written but not earned. Unearned Premiums are estimated to total $955,700 in 2011; $1,520,800 in 2012; and $2,151,200 in 2013.

2. Incurred Losses

During the three year projection period, the Company estimates a 5.5% per annum ratio of Net Loss and Loss Adjustment Expenses Incurred to New Premiums Earned ("Loss Ratio"). Net Losses Incurred of $157,700 are projected in 2011, rising to

$438,600 in 2013. This estimated Loss Ratio is slightly higher than the 3.0% average

Loss Ratio experienced in 2009 by comparable sureties that specialize in bail bonds but is

near the middle of the range of Loss Ratios, which ran from a low of 0.0% to a high of

10.5%, incurred by these sureties, as illustrated in Table 5 below.

| Table 5 | | |
|---|---|---|
| **2009 Bail Surety Loss Ratio** | | |
| Surety | Net Prems Earned* | Loss Ratio |
| Lexington National | 12,787.8 | 3.8 |
| American Surety | 8,196.9 | 10.5 |
| Accredited Surety | 8,098.6 | 3.4 |
| Sun Surety | 2,302.0 | 0.0 |
| Universal Fire | 2,293.2 | 0.0 |
| Roche Surety | 2,259.7 | 0.0 |
| Average | | 3.0 |
| Median | | 1.7 |
| High | | 10.5 |
| Low | | 0.0 |

\* Amounts in $ 000s

Source: Company Annual Statements and AM Best

The Company believes that its Loss Ratio assumptions are cautious and that its

actual Net Losses Incurred during the forecast period might be lower than the projected

Net Incurred Losses for several reasons. First, it is not at all uncommon in the

commercial bail industry for bail sureties consistently to experience loss ratios at or just

slightly above 0.0%. As Chart 1 below indicates, the mean of the average annual Loss

Ratios of bail bond-only sureties from 2004 to 2009 was 1.9%, while the median of the

average loss ratios was 0.4% during the period. (Note that Accredited was dropped from

this chart. While AM Best has indicated that Accredited has never incurred a loss related

to a bail bond, this company's annual Loss Ratio averaged 14.2% during the six year

period ending 2009 due to losses incurred in its other non-contract commercial surety

business, primarily notary and other miscellaneous commercial bonds.)

Chart 1



Second, well run retail bail companies that specialize in bail generate consistently

low losses.  The Program Manager with which Company will contract is the largest and

certainly among the best managed in the United States, and thus the Company believes

that its loss experience might be better than these industry averages.  The Program

Manager's proprietary information technology systems that manage its underwriting and

claims not only give it a clear advantage over its competitors but also have allowed

management to generate low loss ratios that fall consistently within the Contingent

Reserve Account contribution rate.   Loss payments up to the level of the Contingent

Reserve Account contribution rate are thus pre-funded.  Moreover, the Program Manager

Agreement specifies that the Contingent Reserve Account contribution rate can be

adjusted up or down to cover anticipated losses based on actuarial experience.  The

Company will license this management information system to monitor the Program Manager's performance and to help manage its growth. By contrast, despite their excellent average loss experience, other sureties that specialize in bail bonds aggregate the loss exposure of many small, relatively inefficient retail bail companies, which do not have the financial and managerial wherewithal to put sophisticated real-time underwriting and claims systems in place.

### 3. Other Underwriting Expenses

Like other comparable bail bond sureties, the Company will incur a high ratio of Other Underwriting Expenses as a percent of Net Premiums Written ("Expense Ratio") compared to to that of property and casualty insurance companies. The Company projects Other Underwriting Expenses Incurred, including Other Contractual Agreements, to be $2,009,300 in 2011, increasing to $4,582,700 in 2013. Its expense ratio is estimated to be 52.56% in 2011, increasing slightly to 53.26% in 2013. (Please note that the 2013 ratio of Other Underwriting Expenses to Net Premiums Written is 0.00% in the UCAA Pro Forma Statutory Profit & Loss Statement due to an incorrect formula saved in a protected cell.) In 2009, the six bail bond surety peers reported Expense Ratios that ranged from 58.1% to 104.9% and averaged 80.2%, as indicated in Table 6 below. It is important to note that included in the expense ratios reported by several of these sureties that specialize in bail bonds were fees and commissions paid to affiliates for services rendered that exceeded 50.0% of net premiums written. Like the majority of the bail bond surety peers, the Company expects to pay fees to the Program Manager for various management services provided. However, under the contemplated

Administrative Services Agreement with the Program Manager, which is reflected in the line Other Contractual Agreement in the UCAA Pro Forma Statutory Profit & Loss Statement, the Company is projected to pay IT and other management services, including office space, totaling an estimated $150,000 in 2011, which equals 3.9% of net premiums written. Premium taxes represent a significant part of the Company's estimated Other Underwriting Expenses Incurred. In 2011, the Company's projected state premium taxes will total $1,259,300, increasing to $3,502,700 in 2013.

| Table 6 | | |
|---|---|---|
| **2009 Bail Surety Expense Ratio** | | |
| Surety | Net Prems Written* | Exp Ratio |
| Lexington National | 13,484.6 | 58.1 |
| American Surety | 8,213.0 | 86.6 |
| Accredited Surety | 7,681.3 | 89.5 |
| Sun Surety | 2,302.0 | 64.6 |
| Roche Surety | 2,297.8 | 77.6 |
| Universal Fire | 2,293.2 | 104.8 |
| Average | | 80.2 |
| Median | | 82.1 |
| High | | 104.8 |
| Low | | 58.1 |

\* Amounts In $ 000s

Source: Company Annual Statements and AM Best

4.    Net Investment Income

The Company projects Net Investment Income of $97,000 in 2011, increasing to $165,000 in 2013. Net Investment Income for any given projection year is the product of

the assumed net investment yield and average invested assets during that year. Seventy five percent of the investment portfolio is assumed to be invested in five year US Treasury Notes yielding 2.19% as of February 25, 2011, while the remaining twenty-five percent of the portfolio is assumed to be invested in cash and cash equivalents yielding 12 basis points. No realized gains are assumed. The calculation of invested assets is discussed below in the section on the Pro Forma Statutory Balance Sheet. The Company is in the process of engaging an investment advisor to assist in management of the bond portfolio.

     5.   <u>Net Operating Income Before and After Taxes</u>

The Company is projected to generate Net Operating Income Before Taxes of $796,900 in 2011, $2,017,200 in 2012, and $3,118,000 in 2013. A 40% tax rate is assumed throughout the projection period. Thus, the Company estimates Net Operating Income After Taxes of $478,200 in 2011; $1,210,300 in 2012; and $1,870,800 in 2013.

B.    <u>Pro Forma Statutory Balance Sheet</u>

     1.   <u>Admitted Assets</u>

       (a)    <u>Invested Assets</u>

The Company projects Non-affiliated Invested Assets of $6,575,700 in 2011, rising to $11,173,500 in 2013. Non-affiliated Invested Assets are estimated as follows.

Seventy five percent of the initial $5,000,000 investment, i.e. $3,750,000, will be invested in a portfolio of medium term US Treasury Notes, and the twenty five percent, will be held in cash and cash equivalents. The projections assume that each year going forward seventy five percent of Net Cash from Operations will added to the prior year end balance of the bond portfolio. The remaining twenty five percent of Net Cash from Operations will be added to the prior year end balance of cash and cash equivalents. During the three year projection period, no Cash from Financing and Miscellaneous Sources is contemplated, and no dividends will be paid. Please see Pro Forma Statutory Cash Flow Statement below for an explanation of Cash from Operations, Cash from Investments, and Cash from Financing and Miscellaneous Sources.

(b)   <u>All Assets Other than Investments</u>

All Assets Other than Investments comprise the Annual Statement asset entitled "Aggregate write-ins for other than invested assets" (Page 2, Line 23, Column 3), which are short term liquid invested assets held in trust by the Company for the benefit of the Program Manager to support the Annual Statement liability identified as "Amounts withheld or retained by company for account of others" (Page 3, Line 14, Column 1), which is the Contingent Reserve Account, also known as the Build-up Fund. Please see below the discussion of All Other Liabilities.

2.   <u>Liabilities</u>

(a)   <u>Losses</u>

Losses of $141,900 are projected for 2011, rising to $463,000 by 2013. For any given year, Losses are estimated as the sum of the prior years' Losses plus Net Losses Incurred (Pro Forma Statutory Profit & Loss Statement, Line 2) and less Loss and Loss Adjustment Expenses Paid (Pro Forma Statutory Cash Flow Statement). As explained above, Net Losses Incurred are calculated as Net Premiums Earned times the estimated Loss Ratio of 5.5%. The payout pattern of Net Losses Incurred in any given accident year is estimated as follows: 10% in the first year, 67.5% in the second year, and 22.5% in the third year. This estimated payout pattern is based upon the prior six year operating experience of the Program Manager. It is assumed that Loss Adjustment Expenses will be incurred and paid by the Program Manager rather than the Company.

(b)    Unearned Premiums

Unearned Premiums are estimated in any given year as the sum of the prior year end balance plus the difference between Net Premiums Written and Net Premiums Earned during the current year. It is assumed that seventy five percent of Net Premiums Written in any given year are earned during the year written, and the remaining twenty five percent are earned in the second year. Thus, in any given year, this reserve increases by the 25% of net premiums that are written but not earned that year and decreases by the 25% of the prior year net premiums that were written but not earned the preceding year. Unearned Premiums total $955,700 in 2011; $1,520,800 in 2012; and $2,151,200 in 2013.

(c)    All Other Liabilities

All Other Liabilities consist of the Annual Statement liability identified as "Amounts withheld or retained by company for account of others" (Page 3, Line 14, Column 1) ("Amounts Withheld"). Amounts Withheld indicate the funds contributed, as well as any interest earned, by the Program Manager to the Contingent Reserve Account, which is held in trust by the Company for the benefit of the Program Manager. According to the Program Manager Agreement, the Program Manager will contribute 7.0% of total bail premiums to the Contingent Reserve Account to prefund expected losses on summary judgments and related expenses. The Company will reimburse the Program Manager for incurred losses out of the Contingent Reserve Account up to the 7% threshold. Depending upon the Program Manager's actual loss experience, the 7.0% contribution rate to the Contingent Reserve Account can be increased or decreased to cover future anticipated losses. Amounts Withheld is offset on the Pro Forma Statutory Balance Sheet by All Assets Other than Investments which comprise the Annual Statement asset entitled "Aggregate write-ins for other than invested assets" (Page 2, Line 23, Column 3).

In the Pro Forma Statutory Balance Sheet, Amounts Withheld are calculated as the prior year's ending balance plus 7.0% of the current year's total bail bond premiums less funds released during the current year to pay for summary judgments and related expenses. The release pattern for Amounts Withheld in any given year is estimated as 11% in the first year, 61% in the second year, and 28% in the third year. This release pattern is based upon the experience of the Program Manager during the past 6 years.

Amounts Withheld, as well as the assets held in trust backing this item, are estimated to total $4,451,400 in 2011; $8,484,100 in 2012; and $12,248,700 in 2013.

(d)    Total Liabilities

Total Liabilities are projected to be $5,548,900 in 2011, increasing to an estimated $14,862,900 by 2013.

3.    Capital and Surplus

The Company's projected Capital and Surplus consists of Common Stock, Gross Paid In and Contributed Surplus, and Unassigned Surplus. Common Stock increases by the initial $5.0 million investment. Gross Paid In and Contributed Surplus remains unchanged at $0.0 during the project period. No additional capital contributions are anticipated as Capital and Surplus is projected to grow sufficiently to support the increase in Net Premiums Written. Unassigned Surplus increases each year by Net Operating Income After Taxes. No Stockholder Dividends will be paid out of Unassigned Surplus during the three year projection period. Unassigned Surplus is $478,200 in 2011; $1,688,500 in 2012; and $3,559,300 in 2013. Thus, Capital and Surplus totals $5,478,200 in 2011; 6,688,500 in 2012; and $8,559,300 in 2013. Calculated Risk-Based Capital, which is defined as Total Adjusted Capital divided by Authorized Control Level Risk-Based Capital is 706% in 2011; 514% in 2012; and 479% in 2013. The level of

Calculated Risk-Based Capital declines during the projection period as the Company increases the percentage of the Program Manager's premiums that it writes but is projected to stabilize near 500% in subsequent years. (The Company's Calculated Risk-Based Capital conforms to the "2009 NAIC RBC Property and Casualty Forecasting & Instructions" manual.) The ratios of Gross and Net Written Premiums to Surplus are 69.8% in 2011, 90.9% in 2012, and 100.5% in 2013. These leverage ratios rise during the projection period as the Company increases the percentage of the Program Manager's premiums that it writes but are also expected to stabilize near the 2013 level in subsequent years.

C.    Pro Forma Statutory Cash Flow Statement

The Company projects Cash from Operations of $1,575,700 in 2011; $1,942,100 in 2012; and $2,655,600 in 2013. The Company intends to invest seventy five percent of the initial $5,000,000 investment and seventy five percent of Cash from Operations in medium term US Treasury Notes. Thus, Cash from Investments will total ($4,931,800) in 2011, $(1,456,600) in 2012, and $(1,991,700) in 2013, representing a use of cash. Cash from Financing and Miscellaneous Sources will be limited to the initial investment of $5,000,000 in 2011. The Company anticipates no additional capital investments to support the growth of the business, which will be self financing after the initial $5,000,000 investment. Thus, the Net Change in Cash, Cash Investments and Short-

Term Investments total $1,644,000 in 2011; $485,500 in 2012; and $663,900 in 2013,

resulting in Balance Sheet cash balances of $1,644,000 in 2011; $2,129,500 in 2012; and

$2,793,400 in 2013.

*Ulico Standard of America Casualty Company*

# Bail Bond Rate & Risk Classification Criteria

# The Following Rates Will Be Charged On All Bail Bonds

# State of California

**State Bonds:**

All bail bonds, except Qualified Bail Bonds as defined below, are to be rated as follows:

- Bonds up to and including $499.00 in liability will be charged $50.00, plus $15.00
- Bonds over $499.00 in liability will be charged 10% of the penal amount, plus $15.00

**Qualified Bail Bonds:**

Bail bonds may be qualified for preferred rating in the following circumstances:

- Individuals who have retained counsel;
- Individuals who are members of a qualified labor union; and
- Individuals who are active duty members of the U.S. Armed Services, who are veterans of the U.S. Armed Services, and who are immediate families of active duty and veteran members of the U.S. Armed Services. Immediate families are defined as parents, children, and spouses.

Qualified Bail Bonds are to be rated as follows:

- Bonds up to and including $600.00 in liability will be charged $50.00, plus $15.00
- Bonds over $600.00 in liability will be charged 8% of the penal amount, plus $15.00

**Bail Bond Minimum Premium:**

A minimum premium charge of $50.00 applies per bond. The $15.00 is not included in the calculation of the minimum premium.

**Renewal Premium:**

No annual renewal premium will be charged.

| **FORM NUMBER** | **FORM TITLE** |
|---|---|
| ✓AL-10 | Application for Surety Bail Bond |
| ✓UL-0100 | Indemnity Agreement for Surety Bail Bond  4 pgs. |
| ✓AL-0101 | Amendment to Indemnity Agreement |
| ✓ALGC | General Conditions of Bail |
| ✓UL-0202 | Disclosure Statement |
| ✓UL-0200 | Deed of Trust |
| ✓UL-0201 | Authorization Re Deed of Trust |
| UL-0001 | Bail Bond Face Sheet |
| ✓UL-0600 | Indemnitor Order of Surrender |
| ✓UL-0700 | Bail Bond Rates |
| ✓UL-0601 | Authorization to Arrest |
| ✓UL-0002 | Appeal Bail Bond    WithdRAWN |
| UL-0003 | Indictment Bail Bond    WithdRAWN |
| ✓AL-PN | Promissory Note |
| ✓UL-0401-01 | Bail Bond Power of Attorney |
| ✓UL-0401-02 | Statement of Charges |
| ✓UL-0401-03 | Receipt for Collateral Deposited |
| ✓AL-SBP1 | Supervised Bail Program |
| ✓AL-SBP2 | Supervised Bail Program |
| ✓ALSC-60 | Statement of Charges (BMA) |
| ✓ALPR-61 | Payment Receipt (BMA) |

21