# EXHIBIT 24

FEE PAID

Robert W. Hicks (#168049)
John T. McGlothlin (#205844)
HAYES SIMPSON GREENE LLP
600 West Broadway, Suite 400
San Diego, California 92101
Telephone: (619) 515-1194
Facsimile: (619) 515-1197

Attorneys for Plaintiff
PACIFIC BONDING CORPORATION, INC.
dba ALADDIN BAIL BONDS

FILED
SAN MATEO COUNTY
JUN 01 2004
Clerk of the Superior Court
By [signature] DEPUTY CLERK

'04 MAR 26 P4:19
(29)
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION

PACIFIC BONDING CORPORATION, INC., dba ALADDIN BAIL BONDS, a California corporation,

Plaintiff,

v.

CALIFORNIA BAIL AGENTS ASSOCIATION, a California corporation; PENNY HARDING, an individual; BARRY PEARLSTEIN, an individual; GLEN HUBBARD, an individual; LYNN SIMON, an individual; ZIG ZAG BAIL BONDS, a business entity form unknown; GERRI CAMPANA, individually and doing business as AL GRAF BAIL BONDS; ROBERT NAIRIN, an individual; and DOES 1 through 100, inclusive,

Defendants.

Case No. ~~GIN 033663~~ CIV4 39663

FIRST AMENDED COMPLAINT FOR:

(1) DEFAMATION (FIRST INSTANCE);
(2) DEFAMATION (SECOND INSTANCE);
(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;
(4) UNFAIR BUSINESS PRACTICES

Plaintiff Pacific Bonding Corporation, Inc., doing business as Aladdin Bail Bonds, alleges as follows:

## GENERAL ALLEGATIONS

1. Plaintiff Pacific Bonding Corporation, Inc. ("Plaintiff") is a California corporation with its principal place of business located in Carlsbad, California. Plaintiff is engaged in the bail bond business throughout the State of California,

ORIGINAL

including San Francisco, San Mateo, Santa Clara, Marin, Alameda and San Diego Counties. Plaintiff is licensed as a bail agent by the Department of Insurance for the State of California. Plaintiff conducts business under the name Aladdin Bail Bonds. Plaintiff has also conducted business in Riverside County under the name Ray's Bail Bonds.

2. Defendant California Bail Agents Association ("CBAA") is a California corporation which conducts business throughout the State of California.

3. Defendant Penny Harding ("Harding") is an individual who at all relevant times was the executive director of the CBAA, and who is believed to be a resident of Sacramento County, California.

4. Defendant Barry ~~Pearlsetin~~ Pearlstein ("Pearlstein") is an individual, is a licensed bail agent, and is believed to be a resident of Fresno County, California. Plaintiff is informed and believes that Pearlstein is a member of the CBAA, and at all relevant times was the president of the CBAA.

5. Defendant Glen Hubbard ("Hubbard") is an individual, is a licensed bail agent, and is believed to be a resident of Marin County, California. Plaintiff is informed and believes that Hubbard is a member of the CBAA.

6. Defendant Lynn Simon ("Simon") is an individual, is a licensed bail agent, and is believed to be a resident of Santa Clara County, California. Plaintiff is informed and believes that Simon is a member of the CBAA.

7. Defendant Zig Zag Bail Bonds ("Zig Zag") is a business entity, form unknown, and is believed to do business in Santa Clara County and San Mateo County, California. Plaintiff is informed and believes that defendants Hubbard and Simon are both owners, agents and/or employees of Zig Zag.

8. Defendant Gerri Campana ("Campana") is an individual, is a licensed bail agent who conducts business under the fictitious business name Al Graf Bail Bonds, and is believed to be a resident of San Francisco County, California. Plaintiff is informed and believes that Campana is a member of the CBAA.

9. Defendant Robert Nairin ("Nairin") is an individual, is believed to be a licensed bail agent, and is believed to be a resident of Los Angeles County, California. Plaintiff is informed and believes that Nairin is a member of the CBAA.

10. Plaintiff is presently unaware of the true names or capacities of the defendants named herein as Does 1 through 100, inclusive, and Plaintiff will seek leave of court to allege their true names and capacities after same has been ascertained.

11. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants are responsible for or has contributed to the matters herein related giving rise to the relief being sought by Plaintiff, and Plaintiff therefore asserts and alleges each and every cause of action against each such fictitiously named defendant. When the identities and capacities and activities of said defendants are ascertained, Plaintiff will amend the Complaint to so allege.

12. Plaintiff is informed and believes and thereon alleges that at all relevant times each of the defendants, including the Doe defendants, were the agent or employee of each of the other defendants and at all times were acting within the scope and authority of said agency and/or employment.

13. Plaintiff is informed and believes and thereon alleges that all defendants are either direct competitors, representatives, employees or agents of competitors, owners or principals of corporate competitors, or trade organizations whose members are direct competitors of Plaintiff in the California bail industry. As to those defendants who are employees or agents of Plaintiff's competitors, Plaintiff is informed and believes, and based thereon alleges that said defendants all times alleged herein acted within the course and scope of their employment and/or agency.

14. Plaintiff is informed and believes and based thereon alleges that defendants harbor animosity against Plaintiff and Plaintiff's owners, principals, and employees as a result of defendants' inability to successfully compete with Plaintiff in the retail bail industry. In particular, Plaintiff is informed and believes that defendants harbor animosity against Plaintiff's majority shareholder, Robert Spencer Douglass, III

("Douglass"). Within the bail industry, Douglass is commonly associated with Plaintiff. Plaintiff is informed and believes, and based thereon alleges that Plaintiff's superior marketing, foresight, efficiency, planning and execution of its business plan in the bail industry, combined with defendants' inferior marketing, lack of foresight, inefficiency, and inferior planning and execution of their business plans and operations, has led to the loss of business and market share by defendants in the bail industry.

## FACTUAL BACKGROUND

### The Scheme

15. Plaintiff is informed and believes and based thereon alleges that defendants and each of them conceived of a scheme and agreed to implement the scheme, through which defendants would injure Plaintiff's business reputation, interfere with Plaintiff's prospective economic advantage, divert bail business which would otherwise go to Plaintiff to defendants or some of them, and to generally impede Plaintiff's ability to compete for business in the bail industry.

16. Plaintiff is informed and believes and based thereon alleges that defendants' scheme was to hire third-persons to prepare a written report which would purport to be an independent examination of the bail industry and make recommendations for change to the industry. In reality, however, the report would not be independent and it would focus primarily on false and misleading rumors and innuendo concerning the business activities of Plaintiff and Douglass, so as to cast Plaintiff in a false light, to create the impression that Plaintiff is dishonest in its business dealings and to cause the reader to believe, falsely, that Plaintiff has committed crimes.

17. Plaintiff is informed and believes and based thereon alleges that defendants intended to conceal their role in the preparation of the report in order to create the appearance that the report was independent and impartial. In reality, however, defendants would directly control the preparation, provide the "authors" of the report with all of the information and assumptions upon which the report would be

based, limit the "authors" independent investigation of facts and allegations asserted in the report, and finally dictate the conclusions reached in the report. In so doing, defendants would ensure that the report was a false, misleading and negative attack on Plaintiff's business.

18. Under the scheme, once the report was completed, defendants would distribute the report to various persons involved in and associated with the bail industry, as if the report was in fact an "independent" examination of the bail bond industry, and use the report to support defendants' claims that Plaintiff was engaged in illegal activities. Defendants believed that they could then repeat the false claims of illegal conduct by Plaintiff with impunity simply by claiming that they were merely repeating accurately the contents of the "independent" report.

19. In particular, defendants intended to distribute the report, anonymously and/or through the CBAA, to the Department of Insurance for the State of California. Defendants knew that, as part of its regular governmental functions, the Department of Insurance monitors and oversees Plaintiff's business activities on a day-to-day basis, and possesses significant regulatory control over Plaintiff. Defendants intended to distribute their "independent" report to the Department of Insurance to create the false appearance of credibility to similar claims that defendants had previously made to the Department of Insurance, and to reiterate similar false allegations defendants had made to the Department of Insurance regarding Plaintiff's business practices and those of Plaintiff's owners, employees and agents. By thus casting Plaintiff in a false, negative, and misleading light, defendants intended to harm, and did harm, Plaintiff's relationship with the Department of Insurance, which had the natural and intended effect of injuring Plaintiff's business.

20. Plaintiff is informed and believes and based thereon alleges that each defendant agreed to actively participate in the enactment of this scheme by paying for the preparation of the report, providing information for use in the report, participating in the writing and editing of the report, and participating in the dissemination of the

report.

Enactment of the Scheme

21. On or around March 2003, defendant Nairin contacted Linda Marsa ("Marsa"). Marsa is a free-lance "investigative reporter" who writes on health and science topics. Nairin told Marsa that he was interested in hiring someone to prepare a report on the bail bond industry. Marsa informed Nairin that, although she did not have any prior experience working in, or reporting on, the bail industry, she would consider drafting such a report.

22. Shortly thereafter, defendants participated in a telephone conference with Marsa and her husband, William Roberts ("Roberts"). Roberts is a licensed private investigator, and the sole proprietor of William Roberts & Associates. During this conversation Roberts informed defendants that he did not have any prior experience working within the bail bond industry.

23. During this telephone conference, defendants told Roberts and Marsa that they were angry and frustrated with Plaintiff because Plaintiff and its owners, employees and agents had engaged in numerous improper and illegal business activities, and that these activities were causing other bail agencies and surety companies to go out of business. Defendants told Roberts and Marsa that Plaintiff used "tank rep's" to solicit business, gave illegal gifts to law enforcement, and embezzled money from several sureties. Defendants also told Roberts and Marsa that they wanted the report to be a "hit-piece" on Plaintiff's business activities.

24. In the course of this conversation, defendants told Roberts and Marsa that they had already reported these incidents of illegal business practices to the Department of Insurance, but the Department of Insurance would not investigate these complaints to defendants' satisfaction. According to defendants, the Department of Insurance told them that it did not have adequate resources to properly investigate their claims. Defendants told Roberts and Marsa that they wanted the report to be the investigation that the Department of Insurance could not afford, and that they

intended to give the report to the Insurance Commissioner. Plaintiff is informed and believes, and thereon alleges, defendants made these statements to induce Roberts and Marsa to agree to undertake the preparation of the report. Defendants knew at this time that their allegations were false and that a truly "independent" report would not support their claims. They therefore intended to restrict the information given to Roberts and Marsa and limit their investigation to create a false report that merely appeared "independent." Defendants then intended to deliver (anonymously or through the CBAA and its members) the report to the Department of Insurance. Defendants intended the report to give a false appearance of credibility to their earlier claims, and to reiterate these false allegations in order to interfere with the relations of Plaintiff and Plaintiff's owners, employees and agents with the Department of Insurance and in the hope that the Department of Insurance would take action to investigate or prosecute Plaintiff or Plaintiff's owners, employees and agents for these false allegations.

25. During the conversation, defendants told Roberts and Marsa that they had agreed among themselves that Hubbard would act on behalf of all defendants in directing the investigation and preparation of the report by Roberts and Marsa.

<u>Preparation of the Report</u>

26. Plaintiff is informed and believes and based thereon alleges that the report was prepared by Roberts and Marsa, under the direction and control of defendants, over the course of March 2003 through July 18, 2003. Defendants provided Roberts and Marsa with an outline defining the scope of work on the report. Defendants provided all of the information to be included in the report with the sole exception of the amounts of forfeited but unpaid bail bonds. With respect to this issue, defendants directed Roberts and Marsa to conduct an investigation of court records in a limited number of California counties.

27. Defendants directed Roberts and Marsa to draw a connection between allegations made in a civil action between Ranger Insurance Company and Plaintiff's

owner, and the subsequent failure of certain sureties, including Frontier Pacific Insurance Company and Alistar Insurance Company. Defendants specifically directed Roberts and Marsa to draft the report in a manner which concluded that the allegations in the Ranger lawsuit were true, that Plaintiff was engaged in the same type of conduct with the failed sureties, that the conduct constituted criminal activity, and that Plaintiff's conduct caused the sureties to go into liquidation by the Department of Insurance.

28. Plaintiff is informed and believes and based thereon alleges that defendants knew that the allegations made in the Ranger lawsuit were civil, not criminal, that the matter involved a dispute over contractual distribution of premiums, that the matter was settled, and that no criminal allegations had ever been made in connection with that action. Moreover, defendants knew that the failure of the other sureties, including Frontier and Alistar, was the direct result of problems with the non-bail aspects of their business, that the actual cause of their liquidation was a matter of public record in the liquidation proceedings, and that the failure of the sureties had absolutely nothing to do with Plaintiff or Plaintiff's business activities.

29. Plaintiff is informed and believes and based thereon alleges that defendants provided Roberts and Marsa with extensive documentation relating to Plaintiff and Douglass. However, defendants only provided Roberts and Marsa selected documents that tended to support their false allegations against Plaintiff and Douglass. Defendants provided limited documents and restricted the investigation because defendants wanted to create a false, negative and misleading report.

30. Plaintiff is informed and believes and based thereon alleges that defendants provided Roberts and Marsa with the names and telephone numbers of persons to contact in the course of their investigation. However, defendants only provided Roberts and Marsa the names and telephone numbers of people who shared defendants hostility to Plaintiff and Douglass. Defendants restricted the investigation to the names and telephone numbers they provided because defendants wanted to

create a false, negative and misleading report.

31. Plaintiff is informed and believes and based thereon alleges that defendant Pearlstein, then-president of the CBAA, directly provided information to Marsa in the course of the investigation and preparation of the report. Plaintiff is further informed and believes that Pearlstein provided Marsa some of the documents described above to be included in the report.

32. Once a rough draft of the report was completed, defendants directed Roberts and Marsa to provide copies of the draft to defendants Hubbard, Nairin, Gerri Campana and Harding for review and revision. Thereafter, defendants directed Roberts and Marsa to make numerous revisions to the draft report, including both grammatical and substantive changes. These changes included listing Marsa and Roberts as the authors of the report, instead of it being a CBAA report, and altering the recommendations and conclusions in order to ensure that the reader of the report would understand that Plaintiff and its owners, employees and agents had committed crimes and caused several sureties to fail at a significant cost to taxpayers and counties.

33. Defendants directed Marsa and Roberts to prepare three original copies of the report, which were bound with exhibit tabs and blue cover-pages. The report contains false statements concerning Plaintiff and Douglass which would certainly harm Plaintiff in is business and reputation. On or about July 18, 2003, the three original copies were sent by Roberts to defendants Hubbard, Nairin, and Harding at the CBAA. A copy of the report (the "Report") is attached as Exhibit "A" and incorporated herein by reference.

**The Letter**

34. As step two of their scheme to defame Plaintiff, defendants prepared and printed an unsigned letter (the "Letter"), which they then published and circulated to every attorney in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County, along with the Report described above. A copy of the Letter is attached hereto as Exhibit "B" and

incorporated herein by reference.

35. The following statements from the Letter are false and defame Plaintiff:

> PLEASE SEE THE FOLLOWING INFORMATION ON THE ILLEGAL ACTIVITY REGARDING ROBERT SPENCER DOUGLAS A.K.A. ALADDIN BAIL BONDS.
>
> AS A STATE WIDE ASSOCIATION WE ARE SICK OF CUSTOMERS BEING LIED TO AND QUOTED ILLEGAL RATES. HOW CAN YOU SEND YOUR CLIENTS TO SUCH A PLACE.

36. Defendants' written communications to every attorney in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County were in fact false. Plaintiff has never been convicted of illegal criminal activity, nor has Plaintiff lied and quoted illegal rates to its customers.

37. In addition, the Letter included an unveiled threat to Blacklist anyone who continued to do business with Plaintiff. The Letter states:

> OUR ASSOCIATION IS PUTTING ALL ATTORNEYS ON NOTICE, WE ARE MAKING A LIST AND CHECKING IT TWICE. IF WE HEAR OF ANY ATTORNEYS REFERRING ALADDIN BAIL BONDS, YOU WILL BE LISTED ON OUR BLACK LIST AND NEVER REFER ANOTHER CLIENT FROM ANY OTHER BAIL BONDS OFFICE.

## FIRST CAUSE OF ACTION
**Defamation (First Instance)**
**(Against All Defendants)**

38. Plaintiff hereby refers to and incorporates by reference all previous paragraphs, as though fully set forth herein.

39. Defendants conceived of a scheme and agreed to implement this scheme, to prepare and disseminate a report containing defamatory statements and tending directly to injure Plaintiff's business reputation. In furtherance of this scheme, defendants jointly paid for the preparation of the Report, provided (and limited) the information for inclusion in the Report, participated in the drafting and editing of the Report, and participated in the distribution of Report to persons it would tend to influence. The intended effect of this scheme was to interfere with Plaintiff's business to divert new bail business from Plaintiff to defendants, and to generally impede

Plaintiff's ability to compete in the bail industry.

40. As part of this conspiracy, defendants agreed to hire, and did hire, Roberts and Marsa to prepare the Report. At all times stated herein, Roberts and Marsa acted as the agents of defendants, and under their specific direction and control and within the scope of their agency. Defendants directed and orchestrated the preparation of the Report.

41. The Report is defamatory, in both individual statements contained therein, and when taken as a whole. The Report is intended to and has caused readers to believe that an "independent" investigation was conducted, that the investigation concluded that Plaintiff, and its principals, officers, employees and agents have engaged in unfair and illegal business practices, including bribery and embezzlement, and were the direct cause of the failure of several surety companies which directly cost the counties and tax payers millions of dollars. These statements and conclusions are false.

42. The Report clearly exposes Plaintiff to hatred, contempt, ridicule, disparagement, and obloquy because it states that Plaintiff is guilty of illegal business practices with regard to its bail bond customers, and discourages third parties from conducting business with Plaintiff.

43. The Report was potentially seen and read by every attorney in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County when it was distributed along with and/or without the Letter. At that time, and on that occasion, in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County and throughout the state of California, defendants were negligent in publishing this Report. With ordinary and reasonable care, defendants would have realized or could have discovered that the Report was obviously false and grossly libelous as it applied to this Plaintiff.

44. The natural and probable effect of the statements published by defendants was to defame Plaintiff without the necessity of considering the

surrounding circumstances. Therefore, the statements constitute libel per se.

45. As a proximate result of the above-described publication by defendants, Plaintiff has suffered loss of business and its reputation has been damaged, and continues to be damaged, in an amount which will be proven at trial. The actions of defendants have also caused Plaintiff to be boycotted and disparaged, and to lose its customers and profits, all to Plaintiff's general damage in an amount in excess of the jurisdiction of the court. The full extent of Plaintiff's damages are not known at this time, and Plaintiff will request leave to amend this Complaint after its damages have been fully ascertained.

46. Defendants acted with malice, oppression and fraud, in publishing the false and misleading statements about Plaintiff with knowledge of its falsity or in reckless disregard for whether it was true. Defendants acted with despicable conduct which subjected Plaintiff to cruel and unjust hardship in conscious disregard of its rights, and tending directly to injure Plaintiff. The conduct of defendants was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish defendants and to deter others from engaging in similar conduct.

**SECOND CAUSE OF ACTION**
**Defamation (Second Instance)**
**(Against All Defendants)**

47. Plaintiff hereby refers to and incorporates by reference all previous paragraphs, as though fully set forth herein.

48. Defendants, including DOES 1-100, and each of them, conceived of a scheme and agreed to implement the scheme, to prepare and disseminate the Letter to every attorney in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County. In furtherance of this scheme, defendants undertook to pay for the preparation of the Report, to provide and limit the information for inclusion in the Report, to participate in the drafting and

editing of the Report, to participate in the drafting of the letter, and to participate in the distribution of the Letter and Report.

49. Plaintiff is informed and believes, and thereon alleges, that on or about September 2003, defendants intentionally printed, published and circulated the Letter, or caused to be printed, published and circulated the Letter, to every attorney in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County.

50. The Letter is libelous on its face. It clearly exposes Plaintiff to hatred, contempt, ridicule, disparagement, and obloquy because it states that Plaintiff is guilty of illegal business practices with regard to its bail bond customers, and discourages third parties from conducting business with Plaintiff.

51. The Letter was potentially seen and read by every attorney in San Francisco County, San Mateo County, Santa Clara County, Marin County, and Alameda County, and San Diego County.

52. Defendants published the Letter, knowing that it was false and with reckless disregard for whether it was true because they knew that Plaintiff was not charged with, nor had Plaintiff been convicted of, any illegal conduct.

53. The natural and probable effect of the statements published by defendants was to defame Plaintiff without the necessity of considering the surrounding circumstances. Therefore, the statements constitute libel per se.

54. As a proximate result of the above-described publication by defendants, Plaintiff has suffered loss of business and its reputation has been damaged, and continues to be damaged, in an amount which will be proven at trial. The actions of defendants have also caused Plaintiff to be boycotted and disparaged, and to lose its customers and profits, all to Plaintiff's general damage in an amount in excess of the jurisdiction of the court. The full extent of Plaintiff's damages are not known at this time, and Plaintiff will request leave to amend this Complaint after its damages have been fully ascertained.

55. Defendants acted with malice, oppression and fraud, in publishing the false and misleading statements about Plaintiff with knowledge of its falsity or in reckless disregard for whether it was true. Defendants acted with despicable conduct which subjected Plaintiff to cruel and unjust hardship in conscious disregard of its rights, and tending directly to injure Plaintiff. The conduct of defendants was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish defendants and to deter others from engaging in similar conduct.

**THIRD CAUSE OF ACTION**
**Intentional Interference with Prospective Economic Advantage**
**(Against All Defendants)**

56. Plaintiff hereby refers to and incorporates by reference all previous paragraphs, as though fully set forth herein.

57. Defendants conceived of a scheme and agreed to implement the scheme to prepare and disseminate a report containing defamatory statements and tending directly to injure Plaintiff's business reputation. Defendants concocted this scheme as an attempt to cloak their defamatory remarks about Plaintiff with an air of credibility through an "independent" report and as a means to shield later oral and/or written defamatory remarks by couching the statements as a more accurate representation of assertions and conclusions of the Report. In furtherance of this scheme, defendants undertook to pay for the preparation of Report, to provide and limit the information for inclusion in the Report, to participate in the drafting and editing of Report, and to participate in the distribution of said Report among persons it would tend to influence, along with the Letter described above. The intended effect of this scheme was to interfere with Plaintiff's prospective economic advantage, divert bail business which would otherwise go to Plaintiff to defendants or some of them, and to generally impede Plaintiff's ability to compete for business in the bail industry.

58. Plaintiff is in the business of issuing bail bonds. On an on-going basis,

Plaintiff issues new and renewal bail bonds to customers throughout the State, including in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County.

59. As a result of Plaintiff's good reputation in the bail bond business community, Plaintiff maintained a non-contractual relationship with its bail bond customers, referral sources, the defense bar, and the community in general in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County. Such relationships contained probable future economic benefits to Plaintiff, as former bail bond customers and their attorneys often referred business to Plaintiff or engaged in repeat business with Plaintiff.

60. Defendants had full knowledge of these existing business and economic relationships which existed between Plaintiff and its bail bond customers and attorneys, as well as the probable future economic benefits to Plaintiff, as Plaintiff is a well-known bail bond business.

61. Defendants engaged in intentionally wrongful acts designed to disrupt Plaintiff's business and economic relationships with its existing and former bail bond customers and attorneys, as well as the probable future economic benefit to Plaintiff. Wrongful and illegal conduct engaged in by defendants includes libel, libel per se, and unfair business practices. Specifically, defendants conspired to, and did carry out the preparation and publication of a purportedly "independent" Report, which Report contains individual false statements of fact, and in its totality, is clearly intended to cause persons to believe that Plaintiff, including its principals, officers, employees, and agencies, are engaged in unfair and illegal business practices, including bribery and embezzlement and caused the failure of several sureties of great cost to counties and tax payers.

62. In addition, defendants stated in the Letter to every attorney in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County which contains false and defamatory statements about

Plaintiff, included a copy of the defamatory report and included an unveiled threat to Blacklist anyone who continued to do business with Plaintiff. The Letter states:

> OUR ASSOCIATION IS PUTTING ALL ATTORNEYS ON NOTICE, WE ARE MAKING A LIST AND CHECKING IT TWICE. IF WE HEAR OF ANY ATTORNEYS REFERRING ALADDIN BAIL BONDS, YOU WILL BE LISTED ON OUR BLACK LIST AND NEVER REFER ANOTHER CLIENT FROM ANY OTHER BAIL BONDS OFFICE.
>
> AS A STATE WIDE ASSOCIATION WE ARE SICK OF CUSTOMERS BEING LIED TO AND QUOTED ILLEGAL RATES. HOW CAN YOU SEND YOUR CLIENTS TO SUCH A PLACE.

63. Defendants at all times acted with the desire to interfere with Plaintiff's business and economic relationship with its bail bond customers, and to harm Plaintiff financially. Defendants acted with the knowledge that such interference was substantially certain to occur as a result of its action in publishing the Letter and the Report.

64. As a proximate result of the actions of defendants, Plaintiff's business and reputation have been damaged, and continue to be damaged, in an amount to be proven at trial, but which exceeds the minimum jurisdiction of this Court. The actions of defendants have also caused Plaintiff to be boycotted and disparaged, and to lose its customers and profits. The full nature and extent of Plaintiff's damages are not known at this time, and Plaintiff will request leave to amend this Complaint after its damages have been fully ascertained.

65. Defendants acted with malice, oppression and fraud, in intentionally making the false and misleading statements about Plaintiff. Defendants acted with despicable conduct which subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights, and tending to injure Plaintiff. The conduct of defendants was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish defendants and to deter others from engaging in similar conduct.

66. Defendants threaten to, and unless restrained will, continue to disrupt

the business and economic relationships between Plaintiff and its bail bond customers and their attorneys to Plaintiff's great and irreparable injury, for which damages would not afford adequate relief, in that they would not completely compensate for the injury to Plaintiff's business reputation and good will.

## FOURTH CAUSE OF ACTION
## Unfair Business Practice (Business & Professions Code section 17200, et seq.) (Against All Defendants)

67. Plaintiff hereby refers to and incorporates by reference all previous paragraphs, as though fully set forth herein.

68. Defendants conceived of a scheme and agreed to implement the scheme, to prepare and disseminate a report containing defamatory statements tending directly to injure Plaintiff's business reputation. In furtherance of this scheme, defendants undertook to pay for the preparation of Report, to provide and limit the information for inclusion in the Report, to participate in the drafting and editing of said Report, and to participate in the distribution of Report among persons it would tend to influence, along with the Letter described above. The intended effect of this scheme was to interfere with Plaintiff's prospective economic advantage, divert bail business which would otherwise go to Plaintiff to defendants or some of them, and to generally impede Plaintiff's ability to compete for business in the bail industry.

69. Defendants conduct constitutes in unlawful, fraudulent, and unfair business practices within the meaning of Business and Professions Code sections 17200, et seq.

70. The conduct described above is in violation of California and/or federal statute, regulation, or common law including, but not limited to, Civil Code sections 45, et seq. Such legal violations include but are not limited to the formation and execution of a conspiracy to defame Plaintiff, and to interfere with Plaintiff's prospective economic advantage. In addition, defendants are engaging in an unlawful business practice by referring bail clients to attorneys, in violation of Article 10 of the California Code of Regulations, section 2071. Consequently, defendants have engaged

in unlawful conduct in violation of the unfair competition laws.

71. The conduct described above is reasonably calculated to deceive and mislead the recipients of the Letter and Report. Consequently, defendants have engaged in fraudulent conduct in violation of the Unfair Competition laws.

72. The conduct described above offends established public policy and is immoral and/or unethical. Consequently, and for the reasons stated above, defendants have engaged in unfair business practices in violation of the unfair competition laws.

73. Plaintiff is informed and believes and thereon alleges that defendants performed the above-mentioned acts for the purpose of injuring Plaintiff's business reputation and good will, deceiving the public, and unfairly manipulating the retail bail bond market.

74. Defendants threaten to, and unless restrained will, continue to publish false and libelous statements about Plaintiff, as well as threaten every attorney in San Francisco County, San Mateo County, Santa Clara County, Marin County, Alameda County, and San Diego County that they will be listed on the black list and never be referred another client from any other bail bonds office if defendants hears of any attorneys referring Plaintiff.

75. As a proximate result of the above-mentioned acts of defendants, Plaintiff has been deprived, and continues to be deprived, of a large number of its actual and potential customers, its reputations has been irreparably harmed to the public, has been and continues to be misled, and the defense bar continues to operate under the threat of unlawful retaliation by the bail industry if it engages in business with Plaintiff.

76. As a direct and proximate result of defendants unfair, unlawful and fraudulent business practices, defendants have diverted, and continue to divert, bail bond business (and the resulting revenue and profits thereon) from Plaintiff to defendants in an amount to be proven at trial. Such diversion will continue unabated to the detriment of Plaintiff and the general public even if defendants' conduct ceases

unless and until defendants are publically enjoined from engaging in these unfair, illegal and fraudulent business practices and the ill-gotten profits from defendants' conduct is disregarded because defendants will have unfettered use of the ill-gotten profits to secure additional advantage through advertising etc. to the detriment of the industry and the public, and because the recipients of defendants' defamatory materials will continue to fear retaliation from defendants and/or believe defendants' false statements about Plaintiff until Plaintiff is publically vindicated and defendant is publically reproached.

WHEREFORE, Plaintiff prays for judgment against defendants, including Does 1 through 100, and each of them, as follows:

1. <u>On the First Cause of Action</u>:

a. For compensatory, general and special damages, together with interest thereon, at a legal maximum rate, in an amount in an amount exceeding the minimum jurisdictional amount of this Court according to proof at trial;

b. For punitive damages in an amount appropriate to punish defendants, including Does 1 through 100, and each of them, and to deter others from engaging in similar conduct;

c. For statutorily-authorized attorneys fees and costs incurred in investigating and prosecuting this action;

d. For any other and further relief as the court may deem proper.

2. <u>On the Second Cause of Action</u>:

a. For compensatory, general and special damages, together with interest thereon, at a legal maximum rate, in an amount in an amount exceeding the minimum jurisdictional amount of this Court according to proof at trial;

b. For punitive damages in an amount appropriate to punish defendants, including Does 1 through 100, and each of them, and to deter others from engaging in similar conduct;

c. For statutorily-authorized attorneys fees and costs incurred in

investigating and prosecuting this action;

d. For any other and further relief as the court may deem proper.

3. <u>On the Third Cause of Action</u>:

a. For compensatory, general and special damages, together with interest thereon, at a legal maximum rate, in an amount in an amount exceeding the minimum jurisdictional amount of this Court according to proof at trial;

b. For punitive damages in an amount appropriate to punish defendants, including Does 1 through 100, and each of them, and to deter others from engaging in similar conduct;

c. For an order requiring defendants, including Does 1 through 100, and each of them, to show cause, if any they have, why they should not be enjoined as set forth below, during the pendency of this action;

d. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining defendants, including Does 1 through 100, and each of them, from making any false misrepresentations to or otherwise harassing Plaintiff's bail bond customers and every attorney in San Francisco, San Mateo, Santa Clara, Marin, Alameda and San Diego Counties concerning their business and economic relationships with Plaintiff;

e. For reasonable attorneys fees and costs incurred in investigating and prosecuting this action;

f. For any other and further relief as the court may deem proper.

4. <u>On the Fourth Cause of Action</u>:

a. For a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining defendants, including Does 1 through 100, and each of them, from making any false misrepresentations to or otherwise harassing Plaintiff's bail bond customers and every attorney in San Francisco, San Mateo, Santa Clara, Marin, Alameda and San Diego Counties concerning their business and economic relationships with Plaintiff and from engaging in unfair, unlawful and fraudulent

business practices relating thereto;

b. For private attorney general fees pursuant to section 1021.5 of the Code of Civil Procedure, and for costs incurred in investigating and prosecuting this action;

c. For any other and further relief as the court may deem proper.

d. For disgorgement and restitution of all ill-gotten profits received by defendants and diverted from Plaintiffs as a result of defendants' unfair, illegal and fraudulent business practices

Respectfully submitted,

Dated: March 26, 2004

HAYES SIMPSON GREENE LLP

By: ______________________

Robert W. Hicks
John T. McGlothlin
Attorneys for Plaintiff
PACIFIC BONDING CORPORATION dba
ALADDIN BAIL BONDS