1   Dean M. Harvey (SBN 250298)
    Katherine Lubin Benson (SBN 259826)
2   Michelle A. Lamy (SBN 308174)
    Emily N. Harwell (*pro hac vice*)
3   Nicole M. Rubin (*pro hac vice*)
    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
4   275 Battery Street, 29th Floor
    San Francisco, CA 94111
5   Telephone:  (415) 956-1000
    dharvey@lchb.com
6   kbenson@lchb.com
    mlamy@lchb.com
7   eharwell@lchb.com
    nrubin@lchb.com
8
    *Interim Lead Counsel*
9

10

11                   UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                        OAKLAND DIVISION

14

15
    IN RE CALIFORNIA BAIL BOND          Lead Case No. 4:19-CV-00717-JST
16  ANTITRUST LITIGATION
                                        **NOTICE OF MOTION AND**
17  This Document Relates To:           **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES ISO PLAINTIFFS'**
18  ALL ACTIONS                         **MOTION FOR FINAL APPROVAL OF**
                                        **CLASS ACTION SETTLEMENTS WITH**
19                                       **DEFENDANTS LEXON INSURANCE**
                                        **COMPANY AND DANIELSON**
20                                       **NATIONAL INSURANCE COMPANY**

21                                       Date: May 22, 2025
                                        Time: 2:00 pm
22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

                                                                                                              **Page**

3

NOTICE OF MOTION ............................................................................................................... 1

4

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 2

I.      INTRODUCTION ......................................................................................................... 2

5

II.     NOTICE AND ADMINISTRATION TO DATE ........................................................ 2

6

III.    LEGAL STANDARDS ................................................................................................. 3

7

IV.     ARGUMENT ................................................................................................................. 4

8

        A.      The Settlement Class Meets the Criteria for Certification ................................. 4

                1.      The Requirements of Rule 23(a) Are Satisfied .......................................... 4

9

                2.      Class Certification Is Appropriate Under Rule 23(b)(3) ............................ 7

10

        B.      The Settlements Are Fundamentally Fair, Reasonable, and Adequate ................ 9

                1.      The Rule 23(e)(2) Requirements Are Met ............................................... 10

11

                2.      The Northern District Guidance Supports Approval ............................... 14

12

        C.      Notice Was Reasonable and Adequate ............................................................. 15

V.      CONCLUSION ........................................................................................................... 17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................... 7

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) .............................................................................. 17

*Briseno v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) .............................................................................. 10

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ........................................................................ 2, 14

*Celano v. Marriott Int'l, Inc.*,
  242 F.R.D. 544 (N.D. Cal. 2007) ........................................................................... 5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................ 15

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................ 3

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) ................................................................... *passim*

*Delagarza v. Tesoro Refin. & Mktg. Co.*,
  No. C-09-5803 EMC, 2011 WL 4017967 (N.D. Cal. Sept. 8, 2011) ...................... 7

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)........................ 14

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................ 5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................................. 12

*Harbour v. Cal. Health & Wellness Plan*,
  No. 21-cv-03322, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ............................... 3

*Hernandez v. Dutton Ranch Corp.*,
  No. 19-cv-00817-EMC, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ............... 13

*In re Apple Inc. Device Performance Litig.*,
  50 F.4th 769 (9th Cir. 2022) .......................................................................... 15, 17

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Bluetooth Headset Prods. Liab. Litig.,*

4
    654 F.3d 935 (9th Cir. 2011)...................................................................................... 10

5

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    No. 07-cv-05944-JST, 2020 WL 1873554 (N.D. Cal. Mar. 11, 2020) (Tigar, J.) ........... 5, 6, 7

6

7

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    No. 07-cv-05944-JST, 2022 WL 4596621 (N.D. Cal. Aug. 1, 2022) (Tigar, J.)................. 8, 9

8

*In re Citric Acid Antitrust Litig.,*
    Nos. 95-1092, C-95-2963, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996)................................... 8

9

10

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.,*
    270 F.R.D. 521 (N.D. Cal. 2010) .......................................................................................... 6

11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006)......................................... 8

12

13

*In re High-Tech Emp. Antitrust Litig.,*
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) .......................................................................... 6, 7, 8, 9

14

*In re High-Tech Emp. Antitrust Litig.,*
    No. 11-CV-02509-LHK, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014)................................. 11

15

16

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015)............................................................................................... 2, 7

17

18

*In re Oracle Sec. Litig.,*
    No. 90-cv-00931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ................................. 14

19

*In re Packaged Seafood,*
    2022 WL 4283551 ............................................................................................................... 6, 7

20

21

*In re Rubber Chems. Antitrust Litig.,*
    232 F.R.D. 346 (N.D. Cal. 2005).......................................................................................... 8

22

23

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
    264 F.R.D 603 (N.D. Cal. 2009)........................................................................................... 8

24

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    267 F.R.D. 583 (N.D. Cal. 2010).......................................................................................... 5

25

26

*In re Volkswagen "Clean Diesel" Litig.,*
    229 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................................... 12

27

28

*In re Volkswagen "Clean Diesel" Litig.,*
    MDL No. 2672 CRB, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017)................................... 9, 15

3202117.2

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
 527 F. Supp. 2d 1053 (N.D. Cal. 2007) ............................................................... 5

4

5

*Lane v. Facebook, Inc.*,
 696 F.3d 811 (9th Cir. 2012) ............................................................................... 11

6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 11

7

8

*Nitsch v. Dreamworks Animation SKG Inc.*,
 315 F.R.D 270 (N.D. Cal. 2016) ........................................................................... 9

9

10

*Officers for Just. v. Civ. Serv. Comm'n*,
 688 F.2d 615 (9th Cir. 1982) ............................................................................... 11

11

*Rabin v. PricewaterhouseCoopers LLP*,
 No. 16-cv-02276-JST, 2021 WL 837626 (N.D. Cal. Feb. 4, 2021) (Tigar, J.) ...... 15

12

13

*Rannis v. Recchia*,
 380 F. App'x 646 (9th Cir. 2010) .......................................................................... 5

14

15

*Rodriguez Perez v. First Tech Fed. Credit Union*,
 No. 23-CV-06704-TSH, 2025 WL 277403 (N.D. Cal. Jan. 23, 2025) .................. 14

16

*Rodriguez v. Danell Custom Harvesting, LLC*,
 293 F. Supp. 3d 1117 (E.D. Cal. 2018) .................................................................. 4

17

18

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) ............................................................................... 15

19

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ................................................................................. 3

20

21

*Valentino v. Carter-Wallace, Inc.*,
 97 F. 3d 1227 (9th Cir. 1996) ................................................................................ 9

22

23

*Vinole v. Countrywide Home Loans, Inc.*,
 571 F.3d 935 (9th Cir. 2009) ................................................................................. 7

24

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ............................................................................. 13

25

26

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .............................................................................................. 5

27

28

3202117.2

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Federal Rules**

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 4, 5

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 4, 5

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 4, 5, 6

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 4, 6, 7

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 4, 7

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 9, 10, 14

Fed. R. Civ. P. 23(g) ...................................................................................................... 4

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on May 22, 2025, in the United States District Court for the Northern District of California, before the Honorable Jon S. Tigar presiding, Plaintiffs Shonetta Crain and Kira Monterrey will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure:

    a.  Granting final approval of the Class Action Settlement Agreements and Releases dated April 25, 2024 between Plaintiffs and Defendant Lexon Insurance Company ("Lexon") and between Plaintiffs and Defendant Danielson National Insurance Company ("DNIC") (collectively, the "Settlements") as fair, reasonable, and adequate;

    b.  Confirming certification of the Settlement Class as defined as all persons who, between February 20, 2004 and April 25, 2024 (the "Settlement Class Period"), paid for part or all of a commercial bail bond premium in connection with a California state court criminal proceeding;

    c.  Appointing Shonetta Crain and Kira Monterrey as Settlement Class Representatives;

    d.  Confirming appointment of Lieff, Cabraser, Heimann & Bernstein LLP ("Lieff Cabraser") as Settlement Class Counsel;

    e.  Finding Notice to the Class was directed and completed in a reasonable manner; and

    f.  Entering final judgment as to Lexon and DNIC in this action.

Plaintiffs' motion is based upon this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Declarations of Dean M. Harvey and Eric Schachter, and all exhibits thereto, the Settlement Agreements and all exhibits thereto, the pleadings and records on file in this Action, and other such matters and argument the Court may consider at the hearing of this Motion.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        The proposed Settlements include two components, which taken together represent a fair,

4   reasonable, and adequate settlement that warrants final approval.  First, the Settlements create a

5   non-reversionary Settlement Fund of $1 million (Lexon) and $2 million (DNIC), for a total of $3

6   million.[1]  Second, Lexon and DNIC both agreed to injunctive relief designed to remedy the alleged

7   antitrust violations.  Plaintiffs respectfully submit that because these components provide

8   meaningful relief for the Settlement Class, and because the Settlements continue to satisfy all

9   standards for certification under Rule 23, the Court should affirm its Order preliminarily approving

10  the Settlements and find again that the settlements are "fair, reasonable, and adequate." *In re Online*

11  *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).  Settlement Class Members'

12  positive response to the Notice Plan—with zero opt-outs and zero objections—further supports

13  final approval of the Settlements.  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020).

14       Plaintiffs therefore request that the Court: (1) grant final approval of the Settlements; (2)

15  confirm certification of the Settlement Class; (3) confirm Class Representatives as representatives

16  for the certified Settlement Class and confirm Settlement Class Counsel as counsel for the certified

17  Settlement Class; and (4) dismiss with prejudice all claims against Lexon and DNIC.

18

## II.   NOTICE AND ADMINISTRATION TO DATE

19       Since the Court granted preliminary approval, the Settlement Administrator implemented

20  Phase 1 of the Court-ordered Notice Plan.  This included publication of the Court-ordered Notice

21  via online platforms (Google and YouTube), social media (Facebook and Instagram), and a press

22  release distributed via *PR Newswire* in California (collectively, the "Media Notice").  Schachter

23  Decl. ¶¶ 3(a), 3(d).  This Media Notice created more than 52.8 million impressions and reached

24  70.6% of prospective Settlement Class Members.  Schachter Decl. ¶¶ 3(d), 6.

25       As part of Phase 1, the Settlement Administrator also designed, built, and continues to

26  maintain a case-specific website through which prospective Settlement Class Members and others

27  can obtain information about the Action, view relevant Court documents, and register their contact

28

---

[1] Unless otherwise indicated, capitalized terms have the same definition as in the Settlements.

1   information to receive future updates and notifications.  Schachter Decl. ¶ 3(c).  That website was

2   live throughout the entire Notice period and is still live at: https://cabailbondantitrust.com. *Id.*  The

3   Settlement Administrator also created and continues to host a telephone and email contact center

4   to address questions from prospective Settlement Class Members and others.  *Id.* ¶ 3(b).  Those

5   contacts were live throughout the entire Notice period and are still live at 1-877-388-1756 and

6   Info@CABailBondAntitrust.com. *Id.*  To date, the website has received 17,232 unique user visits.

7   *Id.* ¶ 3(c).

8       Finally, as part of Phase 1, the Settlement Administrator was tasked with receiving and

9   processing any Opt-Out Statements or Notices of Objection.  The Court-ordered deadline to opt-

10   out or object passed on February 25, 2025.  ECF No. 512 ("Order") at 21.  The Settlement

11   Administrator received zero requests to opt-out and zero objections.  Schachter Decl. ¶¶ 4-5.

12       Consistent with the Settlement Agreements and the Court's Preliminary Approval Order,

13   Settlement Class Members will be provided a second round of notice ("Phase 2") after either

14   sufficient additional settlements are reached or the case is otherwise resolved.  Harvey Decl. ¶¶ 25-

15   26.  Phase 2 will provide Settlement Class Members with a second opportunity to opt-out or object

16   to the Plan of Distribution and (as applicable) respond to any request for attorneys' fees or Class

17   Representative service awards.  *Id.*

18   **III.   LEGAL STANDARDS**

19       The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

20   action lawsuits.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  When

21   parties settle a class action prior to class certification, courts must "ratify both the propriety of the

22   certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.

23   2003).  This requires courts to "assess whether a class exists," and if so, to assess "whether the

24   proposed settlement is fundamentally fair, adequate, and reasonable."  *Cottle v. Plaid Inc.*, 340

25   F.R.D. 356, 370 (N.D. Cal. 2021) (citations omitted).

26       Courts assess three issues on a motion for final approval:  whether the settlement class

27   merits certification under Rule 23; whether the settlement is fair, reasonable, and adequate; and

28   whether the notice provided was adequate.  *See Harbour v. Cal. Health & Wellness Plan*, No. 21-

1   cv-03322, 2024 WL 171192, at *3 (N.D. Cal. Jan. 16, 2024) ("A court may approve a proposed

2   class action settlement of a certified class only 'after a hearing and on finding that it is fair,

3   reasonable, and adequate,' and that it meets the requirements for class certification."); *Rodriguez*

4   *v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1135 (E.D. Cal. 2018) ("Adequate notice

5   is critical to court approval of a class settlement under Rule 23(e).").

6   **IV.    ARGUMENT**

7        All of the relevant factors strongly support certification of the Settlement Class,

8   confirmation of the Settlements as fair, reasonable, and adequate, and approval of the Phase 1

9   Notice Plan as reasonable and adequate.

10       **A.    The Settlement Class Meets the Criteria for Certification**

11       In the Preliminary Approval Order, the Court found "that provisional certification of the

12  proposed class is appropriate for the purposes of settlement."  Order at 12.  Specifically, the Court

13  concluded that:  the proposed Settlement Class was sufficiently numerous to satisfy Rule 23(a)(1);

14  there are common questions of law and fact sufficient to satisfy Rule 23(a)(2); the claims of the

15  proposed Settlement Class Representatives are typical of the claims of the Settlement Class and

16  therefore satisfy Rule 23(a)(3); Settlement Class Counsel and the Settlement Class Representatives

17  would fairly and adequately represent the interests of the Class and satisfy Rule 23(a)(4); common

18  questions predominate over individual questions, and a class action is superior to other methods for

19  adjudicating the case, and therefore that the case satisfies Rule 23(b)(3).  *Id*. at 6-12.  The Court

20  also preliminarily appointed Lieff Cabraser as Settlement Class Counsel, based on its evaluation

21  under Rule 23(g).  *Id*. at 12-13.

22       Nothing has occurred since the Preliminary Approval that would affect the Court's analysis

23  of Rules 23(a), 23(b)(3), or 23(g).

24       **1.    The Requirements of Rule 23(a) Are Satisfied**

25       **Numerosity**.  Under Rule 23(a)(1), the numerosity requirement is satisfied if "the class is

26  so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While

27  numerosity does not depend on a specific number of proposed class members, it is generally

28  presumed that the requirement is satisfied when the potential class contains at least forty members.

1  *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007); *Rannis v. Recchia*, 380 F.

2  App'x 646, 651 (9th Cir. 2010). Here, the Settlements concern alleged misconduct over a period

3  of more than two decades, affecting approximately 1.2 million unique Settlement Class Members.

4  *See* ECF No. 513-18 ("Singer Rep.") ¶ 2. Numerosity is therefore satisfied. *See* Order at 6 (finding

5  Rule 23(a)(1) satisfied here).

6      **Commonality**. Rule 23(a)(2) requires that "there are questions of law or fact common to

7  the class. Fed. R. Civ. P. 23(a)(2). The common question "must be of such a nature that it is

8  capable of class wide resolution – which means that determination of its truth or falsity will resolve

9  an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores,*

10  *Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

11      Here, many significant common questions of law and fact exist, including whether

12  Defendants entered into the alleged conspiracy to inflate the prices of bail bonds in California;

13  whether that alleged conspiracy violated the Sherman Act and California law; whether that alleged

14  conspiracy succeeded in inflating bail bond prices; and what those prices would have been in the

15  absence of the alleged conspiracy. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-

16  05944-JST, 2020 WL 1873554, at *5 (N.D. Cal. Mar. 11, 2020) (Tigar, J.) ("*CRT II*") (finding that

17  commonality was satisfied where there were "questions of law and fact common to the Class,

18  including whether the Defendants engaged in a price-fixing conspiracy that injured Plaintiffs"); *In*

19  *re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) ("Where an

20  antitrust conspiracy has been alleged, courts have consistently held that 'the very nature of a

21  conspiracy antitrust action compels a finding that common questions of law and fact exists.'"

22  (citations omitted)). Commonality is therefore satisfied. *See* Order at 6-7 (finding Rule 23(a)(2)

23  satisfied here).

24      **Typicality**. The typicality requirement is met when the claims of the representative parties

25  are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The named plaintiffs

26  need not have suffered an identical wrong; rather, the claims of the proposed settlement class must

27  be "fairly encompassed by the named plaintiff's claims." *In re Wells Fargo Home Mortg. Overtime*

28  *Pay Litig.*, 527 F. Supp. 2d 1053, 1063 (N.D. Cal. 2007) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*,

457 U.S. 147, 156 (1982)).  "In antitrust cases, typicality usually will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013).

Here, Plaintiffs' claims and alleged injuries all stem from the same challenged conspiracy as other members of the Settlement Class.  Both Plaintiffs assert that they paid more for their bail bonds than they would have in the absence of the alleged conspiracy—allegations identical to (and therefore typical of) the Settlement Class they seek to represent.  *See CRT II*, 2020 WL 1873554, at *6 (finding typicality satisfied because both class representatives and class members purchased the product at supra-competitive levels due to a conspiracy); *In re Packaged Seafood*, 2022 WL 4283551, at *4 (finding typicality satisfied because the claims of the proposed settlement class and of plaintiffs were based on the same conspiracy and antitrust injuries).  Typicality is therefore satisfied.  *See* Order at 7 (finding Rule 23(a)(3) satisfied here).

**Adequacy**.  Under Rule 23(a)(4), the adequacy of a representative is satisfied if "the representative parties . . . fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This factor is a dual inquiry that examines (1) whether the proposed representative plaintiffs have any conflicts of interests with the proposed class, and (2) whether the plaintiffs were represented by qualified and competent counsel.  *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010).  Both requirements are satisfied here.

First, Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of other Settlement Class Members.  Plaintiffs and the Settlement Class share a common interest in maximizing the total monetary recovery and implementing meaningful injunctive relief that will prevent the alleged misconduct from continuing or reoccurring.  Harvey Decl. ¶ 11.

Second, Settlement Class Counsel have extensive experience litigating, trying, and settling class actions, including antitrust cases, around the country.  Harvey Decl. ¶¶ 10-11; Ex. 3 (Lieff Cabraser Firm Resume).  Settlement Class Counsel have vigorously pursued this litigation on behalf of Plaintiffs and the Settlement Class over the prior six years, and will continue to do so against the remaining Non-Settling Defendants.  *Id*. ¶ 11.  Settlement Class Counsel have fairly and adequately protected the interests of the Settlement Class.

1   The Court should therefore appoint the named Plaintiffs as Settlement Class

2   Representatives because they have no conflicts with the Settlement Class and are represented by

3   qualified counsel who will vigorously prosecute the interests of the Settlement Class, and appoint

4   Lieff Cabraser as Settlement Class Counsel. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

5   934, 943 (9th Cir. 2015). *See also* Order at 8-11 (finding Rule 23(a)(4) satisfied here); *id.* at 13

6   ("The Court therefore appoints Lieff Cabraser as Settlement Class Counsel.").

7   ## 2.    Class Certification Is Appropriate Under Rule 23(b)(3)

8   Rule 23(b)(3) requires the Court to find that (1) "questions of law or fact common to class

9   members predominate over any questions affecting only individual members," and (2) "that a class

10  action is superior to other available methods for fairly and efficiently adjudicating the controversy."

11  Fed. R. Civ. P. 23(b)(3).   The manageability requirement in Rule 23(b)(3) does not apply to

12  settlement classes.   *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670-DMS-

13  MDD, 2022 WL 4283551, at *4 (S.D. Cal. Jan. 26, 2022); *see also CRT II*, 2020 WL 1873554, at

14  *5  (adopting the special master's previous finding that class certification in the settlement context

15  does not include difficulties found in the litigation context).

16  **Predominance.**  The predominance inquiry focuses on the relationship between the

17  common and individual issues.  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th

18  Cir. 2009).  Specifically, the requirement "tests whether proposed classes are sufficiently cohesive

19  to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594

20  (1997).  When common questions "present a significant aspect of the case [that] can be resolved

21  for all members of the class in a single adjudication," there is justification for "handling the dispute

22  on representative rather than on an individual basis."  *Delagarza v. Tesoro Refin. & Mktg. Co.*, No.

23  C-09-5803 EMC, 2011 WL 4017967, at *10 (N.D. Cal. Sept. 8, 2011) (citations omitted).

24  Predominance is established for an antitrust claim when plaintiffs are able to prove (1) violation of

25  antitrust laws, (2) an injury suffered as result of that violation, and (3) an estimated measure of

26  damages.  *In re High-Tech*, 985 F. Supp. 2d at 1183.  Here, common questions of both law and fact

27  predominate over individual issues as to all three elements for purposes of the Settlement Class.

28  First, Plaintiffs allege a price-fixing conspiracy in violation of the Sherman Act and the

PLTFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENTS
LEAD CASE NO. 4:19-CV-00717-JST

Cartwright Act. The predominant issue is the existence of the Surety Defendants' alleged conspiracy to fix bail bond premiums. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2022 WL 4596621, at *4 (N.D. Cal. Aug. 1, 2022) (Tigar, J.) ("*CRT III*") (finding "that the existence of the conspiracy and [defendant's] role in it, if any, are subject to common proof," and noting that "[i]n price-fixing cases, like this one, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present" (citations omitted)); *In re High-Tech*, 985 F. Supp. 2d at 1187 ("Accordingly, Plaintiffs contend that, at trial, proving Defendants' conspiracy will be the overriding common issue for every Class Member."); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D 603, 611 (N.D. Cal. 2009) (finding that if the Court finds common proof of defendants' antitrust conspiracy, class certification is warranted on that basis alone). Here, too, the alleged conspiracy either happened or it did not, and this question will be answered with the same common evidence for all.

Second, Plaintiffs will use common evidence to show antitrust impact. "Antitrust 'impact'—also referred to as antitrust injury—is the 'fact of damage' that results from a violation of the antitrust laws." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *7 (N.D. Cal. June 5, 2006); *see also In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 352 (N.D. Cal. 2005) ("[T]he great weight of authority suggests that the dominant issues in [price fixing] cases . . . are whether the charged conspiracy existed and whether price-fixing occurred." (citation omitted)). Here, the alleged conspiracy inflated the price of bail bonds for all Settlement Class Members in the same way: Plaintiffs allege Defendants "collusively-set" the "prices for the product at issue." *Id*. This represents common, classwide impact because the alleged conspiracy is the overriding issue that impacts the entire Settlement Class. *In re Citric Acid Antitrust Litig.*, Nos. 95-1092, C-95-2963, 1996 WL 655791, at *7-8 (N.D. Cal. Oct. 2, 1996).[2] A detailed description of Plaintiffs' methodology for measuring classwide impact is included in the expert report of Hal J. Singer, Ph.D. *See* Singer Rep. § V.

---

[2] As the court in *Citric Acid* explained, "[e]ven if common impact cannot be proven, the Court may certify the class" where "even without proof of class-wide impact, common issues predominate." 1996 WL 655791, at *8.

- 8 -

Third, Plaintiffs' estimate of potential damages and the methodology used in calculating damages will be common to the Settlement Class.  A detailed description of Plaintiffs' methodology for classwide damages is included in the expert report of Hal J. Singer.  *See* Singer Rep. § VI.  In brief:  the Class will provide the jury with a reasonable estimate of the difference between what the Class in fact paid for bail bonds, and what the Class would have paid in a competitive market free of the collusion Plaintiffs challenge (the "but for" prices).  Any damages award—for all Class Members—will be subject to mandatory trebling. 15 U.S.C. § 15(a).

Because Lexon's and DNIC's alleged conduct applies to all Settlement Class Members' claims and Plaintiffs allege "a common and unifying injury" as a result of Lexon's and DNIC's alleged illegal conduct, the predominance requirement is met.  *In re Volkswagen "Clean Diesel" Litig.*, MDL No. 2672 CRB, 2017 WL 672727, at *14 (N.D. Cal. Feb. 16, 2017); *CRT III*, 2022 WL 4596621, at *4.  *See also* Order at 11-12 (finding predominance satisfied).

**Superiority.**  A class action is a superior means of adjudicating a dispute if no realistic alternative exists, and class litigation of common issues "reduce[s] litigation costs and promote[s] greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F. 3d 1227, 1234-35 (9th Cir. 1996).  Here, there is no realistic alternative to a class action due to the size of the Settlement Class and the prohibitive cost of litigating an individual case.  Individual lawsuits could also result in inconsistent rulings and results for the same misconduct.  *Volkswagen*, 2017 WL 672727, at *14.  Furthermore, each Settlement Class Member would be required to prove the same misconduct and would offer the same evidence.  As such, class treatment is the superior method of adjudication.  *See, e.g.*, *In re High-Tech*, 985 F. Supp. 2d at 1228 (finding that a class action was the superior form of adjudication because of the nature of the defendants' conspiracy and the desirability of concentrating litigation in one proceeding); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D 270, 316 (N.D. Cal. 2016) (same).  *See also* Order at 12 (finding a class action superior).

**B.      The Settlements Are Fundamentally Fair, Reasonable, and Adequate**

To assess the fairness of a settlement, Rule 23(e)(2) directs courts to evaluate whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

1

        (C) the relief provided for the class is adequate, taking into account:

2

            (i) the costs, risks, and delay of trial and appeal;

3

            (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

4

5

            (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

6

            (iv) any agreement required to be identified under Rule 23(e)(3); and

7

        (D) the proposal treats class members equitably relative to each other.

8

Fed. R. Civ. P. 23(e)(2); *see also Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021)

9

(holding that the Ninth Circuit's eight-factors "fall within the ambit of the revised Rule 23(e)").

10

      In the Preliminary Approval Order, the Court preliminarily approved the fairness of the

11

Settlements.  Order at 15-19.  Specifically, the Court concluded that:  the settlement process was

12

arm's length and Plaintiffs had a "solid foundation on which to base their evaluation of their case's

13

strengths and weaknesses," *id*. at 15; the Settlements did not grant preferential treatment to any

14

Settlement Class Member, *id*. at 16; the Settlements were within the range of possible approval,

15

because "the amount offered by Lexon and DNIC supports settlement," *id*. at 17; there were no

16

obvious deficiencies with the Settlements, *id*. at 17; and there was "no indicia of collusion" in the

17

Settlements, *id*. at 17-18.

18

      Nothing has occurred since that would affect the Court's fairness analysis.

19

      **1.**     **The Rule 23(e)(2) Requirements Are Met**

20

     **Requirement (e)(2)(A)**, regarding adequacy of representation, is satisfied for the same

21

reasons that the adequacy prong of Rule 23(a) is satisfied.  *See supra* Section IV.A.1.

22

     **Requirement (e)(2)(B),** regarding negotiations, remains satisfied.  On this factor, courts

23

"scrutinize agreements for 'subtle signs that class counsel have allowed pursuit of their own self-

24

interests . . . to infect negotiations.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)

25

(quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

26

Specifically, courts consider: "(1) when counsel receive a disproportionate distribution of the

27

settlement or when the class receives no monetary distribution but class counsel are amply

28

rewarded; (2) when the payment of attorneys' fees is separate and apart from class funds; and (3)

1   when the parties arrange for benefits that are not awarded to revert to the defendants rather than

2   being added to the class fund." *Cottle*, 340 F.R.D. at 376 (citation omitted).

3          Here, none of those "subtle signs" is present.  The Settlements were the result of arm's-

4   length negotiations between experienced counsel that extended over many months.  Harvey Decl.

5   ¶ 2.  There will be no reversion to Lexon or DNIC, and Settlement Class Counsel do not seek a

6   distribution of the Settlement at this time (and in no event will they seek any more than one-third

7   of the final Total Settlement Fund).  *Id.*, Ex. 1 ("Lexon SA") ¶ 58; Ex. 2 ("DNIC SA") ¶ 60.  *See*

8   *also* Order at 17-18 (finding there was "no indicia of collusion" in the Settlements).

9          **Requirement (e)(2)(C)** examines the adequacy of relief.  In determining whether a

10  settlement is fair and adequate, "the complete package [is] taken as a whole, rather than the

11  individual component parts."  *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.

12  1982).  Furthermore, "it is well-settled law that a proposed settlement may be acceptable even

13  though it amounts to only a fraction of the potential recovery that might be available to the class

14  members at trial."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D.

15  Cal. 2004).  A court is not required "to find a specific monetary value corresponding to each of the

16  plaintiff class's statutory claims and compare the value of those claims to the proffered settlement

17  award."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012).  Finally, courts have approved

18  settlements as to one defendant while litigation (and discovery) proceeds against non-settling

19  defendants.  *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 3917126, at

20  *6 (N.D. Cal. Aug. 8, 2014).  As such, it is not unusual for courts to approve a settlement despite

21  other defendants remaining in the case, with the possibility of additional settlements to follow.

22         The Court has already concluded, and should conclude again, that the $3 million in

23  monetary relief represents an excellent resolution.  As to Lexon, the Court held:

24         'Lexon is one of the smallest surety Defendants by share of relevant bail bonds
           transactions, underwriting 0.1% of the over three million bail bond transactions subject
25         to Plaintiffs' antitrust claims.'  ECF No. 465-1 ¶ 20.  Lexon's $1 million settlement 'is
           nearly equal to [its] total gross revenue of $1,083,893 regarding all of its Class sales.'
26         *Id.*  That is, 'the monetary component of this settlement represents 92% of Lexon's
           gross revenue from the challenged transactions.'  ECF No. 465 at 22–23.  Given
27         Plaintiffs' current rough estimate that overcharges in the bail bond industry increased

28

prices by approximately 33%,  ECF No. 465-1 ¶ 24,  Lexon's settlement payment represents almost 100% of its treble damage liability. ***That is inarguably a good result.***

Order at 17 (emphasis supplied).  As to DNIC, the Court noted "'$2 million is the maximum DNIC is able to pay given its former parent's current financial state, as any settlement beyond $2 million would result in that company being non-compliant with minimum statutory requirements applicable to insurance companies.'" *Id*. (quoting ECF No. 465 at 23).

It remains true that the Settlements provide a successful first step in resolving this Action. The monetary component reflects the realities of Lexon's small share of Class transactions and DNIC's ability to pay, without prejudicing the Class's ability to pursue their full damages from the Non-Settling Defendants. *See also* Order at 17 (noting same and finding "the amount offered by Lexon and DNIC supports settlement").  The injunctive relief is also the same as what Plaintiffs would have pursued from Lexon and DNIC at trial.  *See id.* at 18 (crediting the injunctive components of the Settlements).

**Requirement (e)(2)(C)(i)** examines the costs, risks, and delay of trial and appeal.  Plaintiffs are confident in the strength of their claims and their ability to prevail at trial, but also recognize the inherent risks of any trial.  Due to the large number of Defendants and the issues Plaintiffs have faced in the litigation to this point, settlement with Lexon and DNIC is an important step in moving the case forward and beginning to guarantee relief to the Settlement Class.  *Cf. In re Volkswagen "Clean Diesel" Litig.*, 229 F. Supp. 3d 1052, 1065 (N.D. Cal. 2017) ("Settlement is favored in cases that are complex, expensive, and lengthy to try.").

**Requirement (e)(2)(C)(ii)** requires the court to consider the effectiveness of distribution, which concerns both the notice and distribution plan. *Cottle*, 340 F.R.D. at 377.  *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) ("Adequate notice is critical to court approval of a class settlement under Rule 23(e).").  Here, the proposed two-phased program is the best available method of providing notice and relief to the Settlement Class.  *See* Order at 19 (preliminarily approving the two-phased Notice Plan).

Beginning with the Phase 1 Media Notice, while deferring direct mailed Notice to Phase 2, is the best practicable notice under the circumstances.  In light of the size of the class, the cost of

1   mailed notice at this Phase would have been prohibitive.  Harvey Decl. ¶ 22.  Deferring mailed

2   notice to Phase 2—when there may be more funds to cover these expenses—is reasonable and

3   appropriate.  Indeed, as this Court noted in preliminarily approving the two-phased approach, other

4   courts have endorsed a two-phased notice in cases (like this one) where an early settlement is not

5   sufficiently large to justify an immediate distribution.  *See* Order at 20 (citing *In re Domestic Airline

6   Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 22 (D.D.C. 2019)).

7         **Requirement (e)(2)(C)(iii)** concerns attorneys' fees, and specifically requires courts to

8   determine whether "the record suggests that settlement is driven by fees; that is, when counsel

9   receive a disproportionate distribution of the settlement, or when the class receives no monetary

10  distribution but class counsel are amply rewarded."  *Cottle*, 340 F.R.D. at 378 (citation omitted).

11        Here, there is no indication that the Settlements were driven by fees.  In fact, Settlement

12  Class Counsel do not seek any fees at this time, but instead propose that any application for fees

13  and costs come later—once the Total Settlement Fund is large enough to warrant a distribution to

14  the Settlement Class, or the case is otherwise resolved.  Lexon SA ¶ 50; DNIC SA ¶ 52.  Plaintiffs

15  respectfully submit that deferring consideration of fees, costs, and service awards is warranted in

16  light of the current size of the Settlement Fund.  Harvey Decl. ¶ 22.  Other courts have therefore

17  endorsed deferral of a motion for fees, costs, and service awards in cases (like this one) where an

18  early settlement is not sufficiently large to justify an immediate award.  *See* ECF No. 465-5

19  ("*Airlines* Final Approval Order") at 20.

20        When a motion for fees is held in abeyance pending future settlements "the issue of

21  attorneys' fees is not under consideration in connection with approval" of the class action

22  settlement, and "[a]ccordingly, this factor of attorneys' fees does not weigh into any adequacy

23  determination by the Court."  *Id.* at 20-21.  In any event, an eventual award of up to one-third of

24  the Total Settlement Amount—which is the maximum Settlement Class Counsel would seek here—

25  is within the range regularly approved in common fund settlements in this Circuit.  *See, e.g.*,

26  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (observing Ninth Circuit case

27  law that between 20 and 30 percent of the settlement common fund in attorneys' fees is within the

28  "usual range"); *Hernandez v. Dutton Ranch Corp.*, No. 19-cv-00817-EMC, 2021 WL 5053476, at

3202117.2

*6 (N.D. Cal. Sept. 10, 2021) (collecting cases and finding that "[d]istrict courts within this circuit, including this Court, routinely award attorneys' fees that are one-third of the total settlement fund . . . [s]uch awards are routinely upheld by the Ninth Circuit").

**Requirement (e)(2)(C)(iv)** is satisfied, as there is no agreement between Plaintiffs and Lexon or DNIC other than the Agreements described herein.  Harvey Decl. ¶ 7.

**Requirement (e)(2)(D)** is satisfied because the Agreements treat all Settlement Class Members equitably.  Specifically, distributions form the Total Settlement Amount will be made to Participating Settlement Class Members according to their share of the Net Settlement Fund in proportion to their share of the overall premiums charged to Participating Settlement Class Members who submit valid claims.  Lexon SA ¶ 53; DNIC SA ¶ 55; *see also, e.g.*, *Cottle*, 340 F.R.D. at 378 (approving settlement where distribution plan provided "equal access to the Settlement Fund for all Class Members who submit Approved Claims").  *See also* Order at 16 (finding this factor satisfied and because "reimburs[ing] class members based on the extent of their injuries is generally reasonable") (quoting *In re Oracle Sec. Litig.*, No. 90-cv-00931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994)).

### 2.    The Northern District Guidance Supports Approval

**Guidance 1—Class Members' Response.**[3]  Phase 1 of the Notice Plan was effectuated by the Settlement Administrator, and resulted in zero opt-outs and zero objections.  Schachter Decl. ¶¶ 4-5.  This unanimously positive response to the Settlements supports granting final approval.  *See Campbell*, 951 F.3d at 1121 (a positive "reaction of the class members to the proposed settlement" indicates its fairness); *Rodriguez Perez v. First Tech Fed. Credit Union*, No. 23-CV-06704-TSH, 2025 WL 277403, at *7 (N.D. Cal. Jan. 23, 2025) (finding, where no objections were received, that "the Court 'may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it'") (quoting *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010)).

---

[3] Plaintiffs addressed the Northern District's guidance regarding preliminary approval in their motion for preliminary approval.  *See* ECF No. 465 at 22-25.

3202117.2

PLTFS' MOTION FOR FINAL
APPROVAL OF SETTLEMENTS
LEAD CASE NO. 4:19-CV-00717-JST

1  **Guidance 2—Attorneys' Fees.** This Guidance is addressed above, under Rule

2  (e)(2)(C)(iii).  Further, the Court already held that analysis of a fee application, including analysis

3  of lodestar, is premature "[i]n light of the limited nature of the current settlements, the number of

4  Defendants still litigating, the early posture of the case, and the fact that Class Counsel will not be

5  making a fee request until a later time."  Order at 18, n.5.

6  **Guidance 3—Service Awards.**  The Ninth Circuit has "repeatedly held that reasonable

7  incentive awards to class representatives are permitted."  *In re Apple Inc. Device Performance*

8  *Litig.*, 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks omitted).  Service awards are

9  "fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir.

10  2009).  Plaintiffs do not seek service awards at this time, but will do so if there are sufficient

11  additional settlements to merit a distribution and award, or when this case is otherwise resolved.

12  Lexon SA ¶ 59; DNIC SA ¶ 61.  In the event there are no additional funds available through

13  settlement or judgment, Plaintiffs anticipate seeking service awards of up to $10,000 in connection

14  with the Lexon and DNIC Settlements for each Settlement Class Representative.  *Id*.  This possible

15  future request is disclosed in the Notice, Notice ¶ 15, and would be in-line with or less than awards

16  granted in this District.  *See, e.g.*, *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST,

17  2021 WL 837626, at *10 (N.D. Cal. Feb. 4, 2021) (Tigar, J.) (granting a $20,000 service award to

18  each named plaintiff).

19  **C.    Notice Was Reasonable and Adequate**

20  In the Preliminary Approval Order, the Court analyzed the then-proposed Notice and held

21  that it "contains each of the required elements listed above under Rule 23(c)(2)(B) and 'clearly and

22  concisely state[s] in plain, easily understood language' the key elements of the Settlement and the

23  class members' rights under it."  Order at 19.  A copy of the Notice, as issued in exactly the form

24  ordered by the Court, is attached as Exhibit A to the Schachter Declaration.  Plaintiffs respectfully

25  submit that the Court should affirm its determination that this Notice is adequate because, as issued,

26  the Notice "provide[d] a summary of the Settlement and clearly explain[ed] how Class Members

27  may object to or opt out of the Settlement, as well as how Class Members may address the Court

28  at the final approval hearing."  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods.*

*Liab. Litig.*, No. 2672, 2017 WL 672727, at \*20 (N.D. Cal. Feb. 16, 2017); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.").

Pursuant to the Preliminary Approval Order, the Settlement Administrator issued the Notice according to Phase 1 of the Court-approved Notice Plan. Schachter Decl. ¶ 3. Specifically:

- On January 10, 2025, the Settlement Administrator launched the Media Notice, an extensive and effective publication notice program. This included publication of the Court-ordered Notice via online platforms (Google and YouTube), social media (Facebook and Instagram), and a press release distributed via *PR Newswire*'s in California. Schachter Decl. ¶¶ 3(a), 3(d). The Media Notice created more than 52.8 million impressions and reached approximately 70.6% of prospective Settlement Class Members. *Id.* ¶¶ 3(d), 6.

- On January 10, 2025, the Settlement Administrator launched a case-specific settlement website. Schachter Decl. ¶ 3(c). This website (https://cabailbondantitrust.com) is dedicated to the Settlements, and continues to provide information to Settlement Class Members and to answer frequently asked questions. *Id.* Visitors can download copies of the Complaint, Preliminary Approval Order, Lexon Settlement, DNIC Settlement, and Long-Form Notice. *Id.* Visitors can also register to receive case updates and/or provide updated contact information. *Id.* To date, the website has received 17,232 unique user visits. *Id.*

- On January 10, 2025, the Settlement Administrator established and will continue to maintain a toll-free telephone number (1-877-388-1756) as well as an email address (Info@CABailBondAntitrust.com) for potential Settlement Class Members to contact the Settlement Administrator to obtain information about the Settlement. Schachter Decl. ¶ 3(b). The number and email are accessible 24 hours a day, 7 days a week. *Id.* The number provides an interactive voice response system that presents callers with a series of choices to hear pre-recorded information about the

1    Settlements. *Id.* If callers need further help, they can speak with a live operator

2    during business hours. *Id.*

3    The Court should affirm its prior order "that the two-phase structure of the Notice Plan is

4    appropriate here." Order at 20. In light of the success of Phase 1, Plaintiffs respectfully submit

5    that the Court should also find that the Notice was distributed in the manner "reasonably calculated,

6    under all the circumstances, to apprise interested parties of the pendency of the action and afford

7    them an opportunity to present their objections." *In re Apple Inc. Device Performance Litig.*, 50

8    F.4th 769, 779 (9th Cir. 2022); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th

9    Cir. 2017) ("[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual

10   class member."). *See also supra* § IV.B.1 (further discussing adequacy of this notice program

11   pursuant to Rule 23(e)(2)(C)(ii)).

12   **V.    CONCLUSION**

13   For the reasons set forth above and in Plaintiffs' motion for preliminary approval, Plaintiffs

14   respectfully request that the Court (1) certify the Settlement Class, and confirm appointment of

15   Settlement Class Representatives, Settlement Administrator, and Settlement Class Counsel; (2)

16   grant final approval of the Settlement as fair, reasonable, and adequate; and (3) dismiss with

17   prejudice all claims against and enter final judgment as to Lexon and DNIC in this Action.

18
19   Dated:        March 20, 2025          Respectfully submitted,

20                                         /s/ *Dean M. Harvey*

21                                         Dean M. Harvey (SBN 250298)
                                           Katherine Lubin Benson (SBN 259826)
22                                         Michelle A. Lamy (SBN 308174)
                                           Emily N. Harwell (*pro hac vice*)
23                                         Nicole M. Rubin (*pro hac vice*)
                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
24                                         275 Battery Street, 29th Floor
                                           San Francisco, CA 94111
25                                         Telephone: (415) 956-1000

26                                         *Interim Lead Class Counsel and Proposed Settlement*
                                           *Class Counsel*
27

28