UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION<br><br>This order relates to:<br><br>ALL ACTIONS | Case No. 19-cv-00717-JST<br><br>**ORDER DENYING DEFENDANT LEXINGTON NATIONAL INSURANCE CORPORATION AND AMERICAN SURETY COMPANY'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Re: ECF No. 536 |

Before the Court is Defendants Lexington National Insurance Corporation ("Lexington") and American Surety Company's ("ASC") (together, "Moving Defendants") motion for relief from a non-dispositive pretrial order of a magistrate judge. ECF No. 536. Moving Defendants ask the Court to reverse Judge Ryu's order denying Moving Defendants' clawback motion. ECF No. 533. The Court will deny the motion.

"A non-dispositive order entered by a magistrate must be deferred to unless it is 'clearly erroneous or contrary to law.'" *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (quoting Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A)). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Ingram v. Pac. Gas & Elec. Co.*, No. 12-cv-02777-JST, 2013 WL 6174487, at *2 (N.D. Cal. Nov. 25, 2013) (citation omitted). While the "'clearly erroneous' standard applies to the magistrate judge's findings of fact," the magistrate's "legal conclusions are [reviewed] de novo." *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999).

Moving Defendants moved to establish that 29 documents they inadvertently produced in

discovery and later clawed back were protected by the attorney-client privilege. ECF No. 520. The communications primarily involved a series of emails relating to the 2016 California Department of Insurance ("CDI") excessive rate inquiry and involving the advice given by Robert W. Hogeboom, a regulatory lawyer jointly retained by Lexington as outside counsel to Mark Holtschneider, who at the time of the communications was Executive Vice President and General Counsel of Lexington. *See* ECF No. 533 at 6–7. Plaintiffs Shonetta Crain and Kira Monterrey challenged the assertion of privilege. ECF No. 521. On December 13, 2024, Judge Ryu ordered Moving Defendants to lodge the clawed back documents for in camera review. ECF No. 517. After holding a hearing and reviewing the documents in camera, Judge Ryu denied Moving Defendants' clawback motion. ECF No. 533.

Judge Ryu found that, with the possible exception of a few documents, almost all of the communications at issue were "not privileged because their primary purpose was to convey lobbying advice rather than legal advice." *Id.* at 12. And with respect to the few potentially privileged communications, Judge Ryu found that the privilege was waived because those communications were shared with third parties—other sureties—and there was no common *legal* interest between the sureties for the common interest doctrine to apply. *See id.* at 12–16.

In their motion for relief, Moving Defendants argue that the attorney-client privilege covers the communications at issue because they involved counsel "furnish[ing] legal advice to sureties regarding an extraordinary date-specific production of information imposed by the CDI." ECF No. 536 at 9–10. They further argue that the common interest doctrine applies because the sureties with which the communications were shared all "agreed to be legally represented by attorney Hogeboom for a common purpose: to assess the legal consequences of the same inquiry by the CDI; the potential legal responses to CDI; to communicate with the CDI; and assess the prospect of resolution." *See id.* at 11.

After reviewing the issue de novo, the Court finds that Plaintiffs have not demonstrated that Judge Ryu's order is clearly erroneous or contrary to law. As Judge Ryu found, "Hogeboom's advice was primarily and explicitly to 'rally the industry' and coordinate an industry-wide response to the CDI excessive rate inquiry." ECF No. 533 at 8 (quoting Lexington Ex. 3). And while *the context* of the communications may have involved the threat of regulatory

2

action, the lawyer's actual advice was for "the bail bond industry coordinate to exert pressure on CDI to change its approach, using non-legal channels such as informational letters and personal meetings with CDI department heads"—"not to help Moving Defendants meet the legal requirements set out by statute or regulations, or to challenge CDI in a regulatory proceeding." *Id.* at 10–11. Hogeboom's recommendations to use non-legal channels to influence CDI was thus lobbying advice and not legal advice entitled to attorney-client privilege. *See In re Grand Jury Subpoenas dated Mar. 9, 2001*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001) ("[I]f a lawyer happens to act as a lobbyist, matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client, including advice on matters that may also be the subject of the lobbying efforts."); *see also United States v. Duke Energy Corp.*, 214 F.R.D. 383, 390 (M.D.N.C. 2003), *aff'd*, No. 1:00CV1262, 2012 WL 1565228 (M.D.N.C. Apr. 30, 2012) ("In effect, Duke Energy argues that whenever a business group bands together for a common purpose of making their will known to government regulators, all attorney communication to the group is privileged and/or work product. This appears to be a drastic expansion of the law of privilege and work product protection.").

Regarding the common interest doctrine, Judge Ryu correctly found that "the primary purpose of the three sureties' retention of Hogeboom was to coordinate an industry advocacy campaign to persuade CDI to change its approach . . . [which] more closely resembles a commercial lobbying effort than a legal defense strategy." ECF No. 533 at 14. And Moving Defendants did not demonstrate that "the three sureties would have a common interest in any legal proceeding brought by CDI related to the rate inquiry." *Id.* at 15. Indeed, "CDI sent the rate inquiry letter to each surety separately" and there was "no indication that CDI could bring legal proceedings against the sureties as co-defendants, or that any one surety would have a legal interest in the outcome of a rate inquiry involving another surety." *Id.*; *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1248 (D. Or. 2017) (finding that the common interest doctrine did not apply where communications were shared with third parties facing similar lawsuits, because although such lawsuits "may involve similar legal theories, claims, and defenses," they would "arise from different facts").

3

Accordingly, the motion is denied.

**IT IS SO ORDERED.**

Dated: April 11, 2025

JON S. TIGAR
United States District Judge