Dean M. Harvey (SBN 250298)
Katherine Lubin Benson (SBN 259826)
Michelle A. Lamy (SBN 308174)
Nicole M. Rubin (SBN 361232)
Emily N. Harwell (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
dharvey@lchb.com
kbenson@lchb.com
mlamy@lchb.com
nrubin@lchb.com
eharwell@lchb.com

*Interim Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 4:19-CV-00717-JST<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS ACCREDITED SURETY AND CASUALTY COMPANY, INC.; AMERICAN CONTRACTORS INDEMNITY COMPANY; AMERICAN SURETY COMPANY; BANKERS INSURANCE COMPANY; INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY; THE NORTH RIVER INSURANCE COMPANY; SEAVIEW INSURANCE COMPANY; SENECA INSURANCE COMPANY; SUN SURETY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; UNIVERSAL FIRE & CASUALTY COMPANY; WILLIAMSBURG NATIONAL INSURANCE COMPANY; AND WILLIAM B. CARMICHAEL**<br><br>Date: September 3, 2026<br>Time: 2:00 pm |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION .................................................................................................................viii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.     INTRODUCTION ...............................................................................................................1

II.    LITIGATION HISTORY ....................................................................................................2

       A.      Pleadings ..................................................................................................................2

       B.      Discovery .................................................................................................................3

       C.      Class Certification....................................................................................................3

       D.      Settlements ...............................................................................................................4

III.   PROPOSED SETTLEMENT TERMS .................................................................................5

       A.      Class Definition .......................................................................................................5

       B.      Consideration ...........................................................................................................5

       C.      Settlement Administrator .........................................................................................6

       D.      Notice and Administration .......................................................................................6

       E.      Distribution of Settlement Fund...............................................................................8

       F.      Attorneys' Fees, Expenses, and Service Awards....................................................10

IV.    LEGAL STANDARD ........................................................................................................12

V.     ARGUMENT .....................................................................................................................13

       A.      The Settlement Class Meets the Criteria for Certification......................................13

               1.       The Requirements of Rule 23(a) Are Satisfied...........................................14

               2.       Class Certification Is Appropriate Under Rule 23(b)(3)..............................15

               3.       The Court Should Appoint Settlement Counsel Under Rule 23(g)(1)........19

       B.      The Settlements Are Fundamentally Fair, Reasonable, and Adequate....................20

               1.       The *Churchill* Factors Are Satisfied ...........................................................20

               2.       The Rule 23(e)(2) Requirements Are Met...................................................27

               3.       The Northern District Guidance Supports Approval ...................................31

VI.    CONCLUSION..................................................................................................................35

NOTICE OF MOTION & MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
No. 3:16-cv-05486-JCS, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) .................................................. 24

*Aguilar Auto Repair, Inc. v. Wells Fargo Bank, N.A.*,
No. 23-cv-06265-LJC, 2025 WL 1753509 (N.D. Cal. May 23, 2025)........................................... 11, 29

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-md-1775 JGV VP, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ........................................... 22

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................................... 16

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)................................................................................ 26, 31

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) .......................................................................................... 33

*In re Auto. Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 (E.D. Pa. 2007) .............................................................................. 22

*Bartz et al v. Anthropic PBC*,
No. 4:24-cv-05417-AMO (N.D. Cal. 2025) ...................................................................... 34

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ......................................................................................... 26

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ....................................................................................... 26

*In re Broiler Chicken Antitrust Litig.*,
80 F.4th 797 (7th Cir. 2023) .......................................................................................... 29

*Carlotti v. ASUS Comput. Int'l*,
No. 18-cv-3369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019)......................................... 27

*In re Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT II*"),
No. 07-cv-05944-JST, 2020 WL 1873554 (N.D. Cal. Mar. 11, 2020)...................................... 13, 14, 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT III*"),
No. 07-cv-05944-JST, 2022 WL 4596621 (N.D. Cal. Aug. 1, 2022)............................................ 16, 19

*Churchill Village, L.L.C. v. General Electric*,
361 F.3d 566 (9th Cir. 2004) ....................................................................................... *passim*

*In re Citric Acid Antitrust Litig.*,
145 F. Supp. 2d 1152 (N.D. Cal. 2001) ........................................................................... 22

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................................... 12, 23

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
270 F.R.D. 521 (N.D. Cal. 2010)................................................................................... 15

NOTICE OF MOTION & MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
  109 F.3d 602 (9th Cir. 1997) ..................................................................................... 11

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) ..................................................................................*passim*

*Delagarza v. Tesoro Refin. & Mktg. Co.*,
  No. C-09-5803 EMC, 2011 WL 4017967 (N.D. Cal. Sept. 8, 2011) ...................................... 16

*Dennis v. Kellogg Co.*,
  No. 09-cv-1786-L WMC, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ........................................ 32, 33

*In re Diamond Foods, Inc., Sec. Litig.*,
  No. C 11-05386 WHA, 2014 WL 106826 (N.D. Cal. Jan. 10, 2014)....................................... 25

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006)....................................... 16

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982).......................................................................................................... 14

*In re Google Referrer Header Priv. Litig.*,
  No. 5:10-cv-04809-EJD, 2023 WL 6812545 (N.D. Cal. Oct. 16, 2023)................................. 28

*Gutierrez v. New Hope Harvesting, LLC*,
  No. 2:19-cv-07077-FWS-AJR, 2024 WL 1834362 (C.D. Cal. Apr. 26, 2024)....................................... 25

*Hernandez v. Dutton Ranch Corp.*,
  No. 19-cv-00817-EMC, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021)........................................ 11, 29

*In re High-Tech Emp. Antitrust Litig.*,
  985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................................................ 14, 16, 18, 19

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ......................................................................................... 13, 29

*Karri v. Oclaro, Inc.*,
  No. 3:18-cv-03435-JD, 2024 WL 5374889 (N.D. Cal. July 26, 2024) ................................................. 29

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .......................................................................................... 10, 21

*In re Lidoderm Antitrust Litig.*,
  No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)............................................. 29

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.*,
  No. 3:21-md-02996-CRB (N.D. Cal.) ................................................................................... 32

*McKnight v. Uber Techs., Inc.*,
  No. 14-cv-05615-JST, 2021 WL 4205055 (N.D. Cal. Sept. 2, 2021), *aff'd sub nom.*,
  *McKnight v. Hinojosa*, 54 F.4th 1069 (9th Cir. 2022)......................................................... 12

*Medeiros v. HSBC Card Servs., Inc.*,
  No. CV 15-09093 JVS, 2017 WL 11632870 (C.D. Cal. Oct. 23, 2017) ................................................. 30

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................ 26

*Mendoza v. United States*,
623 F.2d 1338 (9th Cir. 1980) ...................................................... 29

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
No. 19-cv-07087-DMR, 2021 WL 4133860 (N.D. Cal. Sept. 10, 2021) .......................................... 11, 30

*Naro v. Walgreen Co.*,
No. 22-cv-03170-JST, 2025 WL 1883825 (N.D. Cal. July 8, 2025) ....................................................... 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ............................................. 21, 25, 26

*In re National Prescription Opiate Litigation*,
No. CIV-18-994-G (W.D. Okla.) ................................................... 32

*Nitsch v. Dreamworks Animation SKG Inc.*,
315 F.R.D. 270 (N.D. Cal. 2016) ................................................... 19

*Nitsch v. DreamWorks Animation SKG Inc.*,
No. 14-CV-04062-LHK, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ................................................... 34

*Nw. Fruit Co. v. A. Levy & J. Zentner Co.*,
117 F.R.D. 670 (E.D. Cal. 1987) ................................................... 22

*Officers for Just. v. Civ. Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........................................................ 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ........................................................ 18

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ........................................................ 15

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ................................................... 22

*In re Packaged Seafood Prods. Antitrust Litig.*,
No. 3:15-md-02670 (S.D. Cal. Oct. 5, 2018) ................................................... 18

*In re Packaged Seafood Prods. Antitrust Litig.*,
No. 3:15-md-02670-DMS-MDD, 2022 WL 4283551 (S.D. Cal. Jan. 26, 2022) ............................ 13, 15

*In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*,
No. 3:18-cv-00825-BJB-RSE (W.D. Ky.) ................................................... 32

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
No. 08-cv-42 JG VVP, 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ................................................... 22

*Rabin v. PricewaterhouseCoopers LLP*,
No. 16-cv-02276-JST, 2021 WL 837626, at *10 (N.D. Cal. Feb. 4, 2021) .......................................... 34

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Restasis Antitrust Litig.*,
No. 1:18-md-02819-NG-LB ................................................................................................. 32

*Rieckborn v. Velti PLC*,
No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................................... 24

*In re Rubber Chems. Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) ................................................................................... 16, 17

*Senne v. Kansas City Royals Baseball Corp.*,
No. 14-cv-00608 JCS, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023) ............................ 29, 30

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D 603 (N.D. Cal. 2009) ........................................................................................ 16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ............................................................................................. 12

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................. 13

*Taylor v. Shutterfly, Inc.*,
No. 5:18-cv-00266-BLF, 2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) ............................... 30

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 583 (N.D. Cal. 2010) ...................................................................................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-md-01827-SI (N.D. Cal. Feb. 18, 2011) ................................................................. 22

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ............................................................................... 21

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
No. C 07-05634 CRB, 2015 WL 3396829 (N.D. Cal. May 26, 2015), *aff'd*, 701 F. App'x
554 (9th Cir. 2017) ............................................................................................................ 32

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ............................................................................................. 19

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .................................................................................... 34

*Vianu v. AT&T Mobility LLC*,
No. 19-cv-03602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022) .................................. 32

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) ............................................................................................. 16

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................................................................... 29

*In re Volkswagen "Clean Diesel" Litig.*,
229 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................................. 21

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Volkswagen "Clean Diesel" Litig.*,
    MDL No. 2672 CRB, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017)......................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................................................ 14

*Ward v. United Airlines, Inc.*,
    No. C 15-02309 WHA, 2024 WL 269149 (N.D. Cal. Jan. 24, 2024)....................................................... 20

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................................................................... 11

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) ..................................................................................................... 12

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    527 F. Supp. 2d 1053 (N.D. Cal. 2007) ................................................................................................... 14

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    No. 20-md-02966-RS, 2025 WL 3006647 (N.D. Cal. Oct. 27, 2025)....................................................... 29

*Young v. Polo Retail, LLC*,
    No. C 02 4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007)......................................................... 30

**Statutes**

28 U.S.C. § 1715 ............................................................................................................................................ 35

Cal. Code Regs. Title 10, § 2081(a)............................................................................................................... 17

Cal. Ins. Code § 739(i).................................................................................................................................... 23

Cal. Ins. Code § 739.2(a) ............................................................................................................................... 23

Cal. Ins. Code § 739.2(c) ............................................................................................................................... 23

Cal. Ins. Code § 739.2(d) ............................................................................................................................... 23

**Court Rules**

Fed. R. Civ. P. 23 ........................................................................................................................................... 28

Fed. R. Civ. P. 23(a) ................................................................................................................................ 13, 14, 27

Fed. R. Civ. P. 23(a)(1)................................................................................................................................... 14

Fed. R. Civ. P. 23(a)(2)................................................................................................................................... 14

Fed. R. Civ. P. 23(a)(3)................................................................................................................................... 14

Fed. R. Civ. P. 23(a)(4)................................................................................................................................... 15

Fed. R. Civ. P. 23(a)-(b) ................................................................................................................................ 27

Fed. R. Civ. P. 23(b)(3).......................................................................................................................... 13, 14, 15

Fed. R. Civ. P. 23(e)(2)................................................................................................................... *passim*

Fed. R. Civ. P. 23(e)(3)................................................................................................................................... 27

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Fed. R. Civ. P. 23(g) ............................................................................................................... 2

Fed. R. Civ. P. 23(g)(1)...................................................................................................... 19, 20

**Other Authorities**

U.S. Dist. Ct. for N. Dist. of  Cal., *Procedural Guidance for Class Action Settlements*
    (updated Sept. 5, 2024), https://cand.uscourts.gov/rules-forms-fees/northern-district-
    guidelines/procedural-guidance-class-action-settlements................................................................. 7

4 William B. Rubenstein et al., *Newberg on Class Actions* § 13:49 (5th ed. 2012) ...................................... 26

NOTICE OF MOTION & MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENT
LEAD CASE NO. 4:19-CV-00717-JST

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on June 25, 2026, in the United States District Court for the Northern District of California, before the Honorable Jon S. Tigar presiding, Plaintiffs Shonetta Crain and Kira Monterrey will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure:

First, preliminarily approving the proposed Class Action Settlements: between Plaintiffs and Defendant Accredited Surety and Casualty Company, Inc. ("Accredited") (attached as Exhibit 1 to the concurrently filed Declaration of Dean M. Harvey, the "Accredited SA"); between Plaintiffs and Defendant American Contractors Indemnity Company ("ACIC") (attached as Exhibit 2 to the Harvey Declaration, the "ACIC SA"); between Plaintiffs and Defendants American Surety Company, Indiana Lumbermens Mutual Insurance Company, and William B. Carmichael (collectively "ASC") (attached as Exhibit 3 to the Harvey Declaration, the "ASC SA"); between Plaintiffs and Defendant Bankers Insurance Company ("Bankers") (attached as Exhibit 4 to the Harvey Declaration, the "Bankers SA"); between Plaintiffs and Defendants United States Fire Insurance Company, The North River Insurance Company, and Seneca Insurance Company, Inc. (collectively "C&F") (attached as Exhibit 5 to the Harvey Declaration, the "C&F SA"); between Plaintiffs and Defendant Seaview Insurance Company ("Seaview") (attached as Exhibit 6 to the Harvey Declaration, the "Seaview SA"); between Plaintiffs and Defendant Sun Surety Insurance Company ("Sun Surety") (attached as Exhibit 7 to the Harvey Declaration, the "Sun Surety SA"); between Plaintiffs and Defendant Universal Fire & Casualty Insurance Company ("Universal") (attached as Exhibit 8 to the Harvey Declaration, the "Universal SA"); and between Plaintiffs and Defendant Williamsburg National Insurance Company ("Williamsburg") (attached as Exhibit 9 to the Harvey Declaration, the "Williamsburg SA"); second, finding that, for purposes of effectuating the proposed Settlements, the prerequisites for class certification under Rule 23 are likely to be satisfied; third, approving the form and manner of Notice to the Settlement Class; fourth, approving the selection of the Settlement Administrator; and fifth, scheduling a Final Approval Hearing. Plaintiffs' motion is based upon this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Declarations of Dean M. Harvey, John Ferrara, Joshua Magden, Scott Charbonneau, and Elaine Pang, and all exhibits thereto, the Settlement Agreements, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this Motion.

NOTICE OF MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

After over seven years of hard-fought litigation and years of settlement negotiations, Plaintiffs, on behalf of themselves and the proposed Settlement Class[1], reached separate settlement agreements with the following Defendants in this matter: Accredited, ACIC, ASC, Bankers, C&F, Seaview, Sun Surety, Universal, and Williamsburg (collectively, the "Settling Defendants").[2] The Settlements are similar to the settlements reached previously with Lexon Insurance Company ("Lexon") and Danielson National Insurance Company ("DNIC"), which received final approval from the Court on June 6, 2025. ECF No. 568. The substantive differences between the Settlements that are the subject of this Motion and the prior Lexon and DNIC settlements are the monetary consideration and the distribution plan.

The Settlements are an excellent result for the proposed Settlement Class. The Settlements create a non-reversionary common fund totaling $66,292,574, which would be added to the existing non-reversionary common fund from the Lexon and DNIC settlements of $3,095,303.49,[3] for a total gross settlement fund of $69,387,877. This is a strong monetary recovery in light of the Settling Defendants' market shares, their revenues from Class transactions, and their respective abilities to pay. All Settling Defendants are private companies that face substantial regulatory capital requirements. Before agreeing to an ability-to-pay discount with any Settling Defendant, Plaintiffs engaged in substantial due diligence and extensive information exchanges with those Settling Defendants. As a result of these efforts, Plaintiffs agreed to ability-to-pay discounts with two Settling Defendants: Seaview and Bankers. In addition to providing relevant financial information to Plaintiffs during the negotiation process, both Seaview and Bankers provided sworn declarations filed herewith confirming that the monetary consideration to which each agreed is the maximum

---

[1] The Settlement Class includes all persons who, between February 24, 2004 and March 18, 2026 (the "Settlement Class Period"), paid for part or all of a commercial bail bond premium in connection with a California state court criminal proceeding. Accredited SA ¶ 28; ACIC SA ¶ 28; ASC SA ¶ 29; Bankers SA ¶ 29; C&F SA ¶ 29; Seaview SA ¶ 29; Sun Surety SA ¶ 28; Universal SA ¶ 28; Williamsburg SA ¶ 28. *See infra* Section III.A.

[2] Unless otherwise indicated, capitalized terms have the same definition as in the Settlements. The term "Settling Defendants" as used herein differs from the Settlements in that the term does not include Lexon Insurance Company ("Lexon") or Danielson National Insurance Company ("DNIC"). Lexon and DNIC settled previously, and the Court granted final approval to those settlements on June 6, 2025. ECF. No. 568.

[3] Since Lexon and DNIC funded the settlements, the initial balance of $3 million has earned interest of $95,303.49, Declaration of Dean M. Harvey ("Harvey Decl.") ¶ 29.

3509228.12

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

amount each can pay without risking the viability of their respective businesses. *See generally* Declaration of John Ferrara ("Ferrara Decl."); Declaration of Joshua Magden ("Magden Decl."); Declaration of Scott Charbonneau ("Charbonneau Decl.").

The Settlements also all contain meaningful injunctive relief that will mitigate harm from the alleged misconduct going forward. Settling Defendants all agree: (i) not to coordinate with their competitors regarding any aspect of bail bond pricing in California; (ii) to send written guidance to their bail agents advising them that bail bond prices are negotiable; and (iii) to advise their agents to disclose to their customers and potential customers that "A bail agent may choose to negotiate a lower fee by rebating, as allowed by Proposition 103," with equal prominence and visibility as any representation that the agent must charge filed rates. Plaintiffs file herewith a declaration from their expert, Dr. Hal Singer, estimating that this injunctive relief will likely save California consumers between $26 million and $118 million per year going forward. *See infra* Section III.F.

Plaintiffs respectfully request that the Court grant the Motion, direct notice to the Settlement Class, and schedule a Final Approval Hearing.

## II.   LITIGATION HISTORY

### A.   Pleadings

On January 29, 2019, Plaintiffs commenced the action *Crain et al. v. Accredited Surety and Casualty Co. et al.* (the "Crain Action"). On May 1, 2019, the Court consolidated the Crain Action with a subsequently-filed action (ECF No. 29), and appointed the undersigned Interim Class Counsel under Rule 23(g) (ECF No. 44). Plaintiffs filed the Consolidated Class Action Complaint ("CAC") on June 13, 2019. ECF No. 46.

On July 15, 2019, Defendants filed motions to dismiss the CAC. ECF Nos. 56, 58. The Court granted in part and denied in part those motions. ECF No. 91. Plaintiffs filed the Second Consolidated Amended Class Action Complaint ("SCAC") on May 13, 2020. ECF No. 94. Again, Defendants filed a motion to dismiss the SCAC. ECF No. 112. On January 5, 2021, the Court denied in part and granted in part the motion to dismiss (ECF No. 159), and also permitted targeted discovery to proceed, "to allow Plaintiffs to gather the facts necessary to correct any perceived deficiencies in the pleading of their complaint" (ECF No. 151 at 2). Following that discovery, on April 11, 2022, Plaintiffs filed the Third Consolidated Amended Class Action

Complaint ("TCAC").  ECF No. 269.  On May 26, 2022, certain Defendants filed a motion to dismiss the TCAC.  ECF No. 284.  On November 7, 2022, the Court denied the motion in its entirety.  ECF No. 330.

### B.    Discovery

Plaintiffs completed extensive fact and expert discovery.  This included six sets of requests for production of documents, six sets of interrogatories, subpoenas to 99 third parties, and countless meet and confer meetings and confirmatory letters.  The Parties litigated many discovery disputes, beginning with Defendants' requests for a stay on discovery pending resolution of their motions to dismiss (ECF Nos. 59, 61) and Plaintiffs' subsequent motion to lift the stay of discovery (ECF Nos. 95, 106).  Discovery disputes required Plaintiffs to file seven motions to compel (ECF Nos. 179, 204, 208, 382, 393, 411, 510), all of which Plaintiffs won in whole or in part (ECF Nos. 191, 206, 230, 372, 394, 414, 480, 533, 558).  Defendants ASC, Bankers, and Lexington National Insurance Corporation objected to one of those discovery orders that rejected their attempt to claw back certain communications based upon claims of privilege (ECF No. 536), and the Court overruled the objection (ECF No. 555).  Third-party bail agents and agencies resisted discovery, requiring three motions to compel (ECF Nos. 478, 482, 492), and months of negotiations regarding document productions.  Harvey Decl. ¶ 11.

In response to Plaintiffs' discovery requests, Defendants produced 970,152 documents (3,946,312 pages) and each Defendant produced data regarding bail bond transactions subject to Plaintiffs' claims.  *Id.* ¶ 12.  Plaintiffs took twenty-eight depositions of Defendants and third-party bail agents, defended depositions of the two Named Plaintiffs, defended two depositions of Plaintiffs' expert witness, Dr. Hal J. Singer, and took the deposition of Defendants' expert witness, Dr. Bruce Strombom.  *Id.* ¶ 13.  Additionally, Plaintiffs spent eight months locating, subpoenaing, contacting, and conferring with 43 third-party bail agents.  *Id.* ¶ 14.

Settlement Class Counsel reviewed this discovery and used it as the basis for the settlement discussions.  *Id.* ¶ 15.

### C.    Class Certification

On December 11, 2024, Plaintiffs moved to certify a Class of "persons who between February 24, 2004, and August 14, 2023 (the 'Class Period'), paid for part or all of a commercial bail bond premium in connection with a California state court criminal proceeding," with certain exceptions.  ECF No. 513 at 1. Defendants opposed the motion on March 26, 2025 (ECF No. 551), and Plaintiffs replied on May 21, 2025

- 3 -

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

(ECF No. 563).  The Parties briefed motions to exclude the opinions of Dr. Singer and Dr. Strombom, respectively.  ECF Nos. 538, 559.  The Court held a hearing on Plaintiffs' motion for class certification and the Parties' respective motions to exclude on December 17, 2025.  ECF No. 644.  The motions are under submission.  On March 26, 2026, Defendants AIA Holdings, Inc., Allegheny Casualty Company, International Fidelity Insurance Company, and Lexington filed a motion seeking to supplement the briefing.  ECF No. 664. Plaintiffs opposed (ECF No. 665), and the Court denied the motion (ECF No. 666).

### D.    Settlements

On April 25, 2024, Plaintiffs moved for preliminary approval of class action settlements with Defendants Lexon and DNIC, which provided for a $3 million non-reversionary settlement fund and injunctive relief.  ECF No. 465.  On December 11, 2024, the Court granted preliminary approval of the Lexon and DNIC settlements, provisionally certified the Settlement Class, appointed Lieff Cabraser as Settlement Class Counsel, and approved the proposed Notice procedure.  ECF No. 512.  Plaintiffs moved for final approval of the Lexon and DNIC settlements on March 20, 2025.  ECF No. 535.  The Court held a Final Approval Hearing on May 22, 2025 (ECF No. 564), and granted final approval of the Lexon and DNIC settlements on June 6, 2025 (ECF No. 568).

In the Spring of 2025, the Parties engaged mediator Michelle Yoshida of Phillips ADR, and exchanged mediation statements.  Harvey Decl. ¶ 17.  The Parties held an in-person mediation session with Ms. Yoshida on June 4, 2025 in San Francisco, attended by counsel for all Parties as well as senior executives from many of the Settling Defendants.  *Id.*  Following that session, between June 2025 and March 2026, Plaintiffs and each of the Settling Defendants engaged in numerous settlement discussions, both separately and collectively, both with the assistance of Ms. Yoshida and through direct negotiations.  *Id.* ¶ 18.  Those extensive discussions and negotiations resulted in agreements in principle with each of the Settling Defendants: Sun Surety on September 30, 2025; Universal on September 30, 2025; Williamsburg on October 23, 2025; C&F on November 11, 2025; Accredited on November 12, 2025; ACIC on November 12, 2025; Seaview on November 12, 2025; ASC on February 27, 2026; and Bankers on March 18, 2026.  *Id.* ¶ 19.  Thereafter, Plaintiffs and each of the Settling Defendants also negotiated and signed the long-form Settlement Agreements, filed herewith.  *See* Harvey Decl. Exs. 1-9.

### III.    PROPOSED SETTLEMENT TERMS

#### A.    Class Definition

The Settlement Class includes all persons who, between February 24, 2004 and March 18, 2026 (the "Settlement Class Period"), paid for part or all of a commercial bail bond premium in connection with a California state court criminal proceeding. Accredited SA ¶ 28; ACIC SA ¶ 28; ASC SA ¶ 29; Bankers SA ¶ 29; C&F SA ¶ 29; Seaview SA ¶ 29; Sun Surety SA ¶ 28; Universal SA ¶ 28; Williamsburg SA ¶ 28. Specifically excluded from this Settlement Class are: Defendants in the Action; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant and any person acting on their behalf; any person who acted as a bail agent during the Settlement Class Period; any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff; and any juror assigned to this Action. *Id.*

#### B.    Consideration

**Monetary Relief.** Accredited agreed to pay $9,437,500; ACIC agreed to pay $9,437,500; ASC agreed to pay $15,200,000; Bankers agreed to pay $4,817,916; C&F agreed to pay $18,875,000; Seaview agreed to pay $5,600,000; Sun Surety agreed to pay $1,000,000; Universal agreed to pay $835,000; and Williamsburg agreed to pay $1,089,658, for a total of $66,292,574. All of these amounts will be placed into a non-reversionary Settlement Fund, and Settlement Class Members will be eligible to receive a claims-made pro rata payment after the deduction of expenses for the Settlement Administrator, Service Awards for the Settlement Class Representatives, and Settlement Class Counsel Attorneys' Fees and Litigation Expenses. Accredited SA ¶ 37; ACIC SA ¶ 37; ASC SA ¶ 38; Bankers SA ¶ 39; C&F SA ¶ 38; Seaview SA ¶ 38; Sun Surety SA ¶ 38; Universal SA ¶ 38; Williamsburg SA ¶ 38. With the settlement funds from Lexon and DNIC, and the interest accrued by each, the Total Settlement Fund will be $69,387,877.

**Injunctive Relief.** The Settling Defendants all agree to substantially the same injunctive relief approved by the Court for the Lexon and DNIC settlements. *See* ECF Nos. 512, 568. They all agree that— to the extent that they participate in the California bail bond market or choose to re-enter the market within five years of executing the Settlement—they will not coordinate with competitors regarding any aspect of bail bond prices in California, including premium rates submitted to the California Department of Insurance, premium rates charged to customers, or rebating practices by bail bond agents. Accredited SA ¶ 39; ACIC

SA ¶ 39; ASC SA ¶ 41; Bankers SA ¶ 41; C&F SA ¶ 40; Seaview SA ¶ 40; Sun Surety SA ¶ 40; Universal SA ¶ 40; Williamsburg SA ¶ 40.  ASC, Bankers, C&F, Seaview, Sun Surety, and Universal—which currently participate in the California bail bond market—agreed that for a period of two years, they will issue written guidance to their active California bail agency owners advising them that rebating is legal under California law, and will do so every four months.  ASC SA ¶ 41(b); Bankers SA ¶ 41(b); C&F SA ¶ 40(b); Seaview SA ¶ 40(b); Sun Surety SA ¶ 40(b); Universal SA ¶ 40(b).  They will direct that the aforementioned guidance be communicated to customers and potential customers with equal prominence and visibility as any representation by their bail agents that they must charge filed rates.  ASC SA ¶ 41(b); Bankers SA ¶ 41(b); C&F SA ¶ 40(b); Seaview SA ¶ 40(b); Sun Surety SA ¶ 40(b); Universal SA ¶ 40(b).  Accredited, ACIC, and Williamsburg—which do not currently participate in the California bail bond market—agreed that should they choose to re-enter the California bail bond market within five years of executing the Settlements, they will include a provision in their contracts with California bail agents directing them to communicate to customers that rebating is legal under California law and that the communication be given equal prominence and visibility as any representation by their bail agents that they must charge filed rates.  Accredited SA ¶ 39; ACIC SA ¶ 39; Williamsburg SA ¶ 40.

### C.    Settlement Administrator

The Parties propose that A.B. Data, an experienced and reputable national class action administrator, serve as Settlement Administrator to provide Notice to the Class and all other services necessary to implement the Settlements.  Harvey Decl. ¶ 37.  After a competitive bidding process, Plaintiffs selected, and the Court approved, A.B. Data to administer the Lexon and DNIC settlements.  *Id*. ¶ 38; ECF Nos. 512, 568; *see* ECF No. 465 at 23-24 (detailing the bidding process).  A.B. Data successfully administered the Lexon and DNIC notice process, including by collecting contact information from Settlement Class Members that A.B. Data will use in the proposed notice and distribution process for the remaining Settlements.  Harvey Decl. ¶ 38; Declaration of Elaine Pang ("Pang Decl.") ¶¶ 3, 50.

### D.    Notice and Administration

The proposed Notice is attached as Exhibit C to the Pang Declaration.  Within fourteen days after the Preliminary Approval Order (the "Notice Date"), the Settlement Administrator will commence the Notice Plan, which will include direct Notice by email for all Participating Settlement Class Members for whom the

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

Settlement Administrator has valid email addresses. Accredited SA ¶ 49; ACIC SA ¶ 49; ASC SA ¶ 54; Bankers SA ¶ 54; C&F SA ¶ 49; Seaview SA ¶ 53; Sun Surety SA ¶ 52; Universal SA ¶ 52; Williamsburg SA ¶ 50. The Settlement Administrator will also update the existing case-specific website through which prospective Settlement Class Members and others can obtain information about the Action, view relevant Court documents, register their contact information to receive future updates and notifications, and submit their claims. Pang Decl. ¶¶ 50-51. A mockup of that website is attached as Exhibit F to the Pang Declaration. The Settlement Administrator will also host an automated telephone and email contact center to address questions from prospective Settlement Class Members and others. *Id*. ¶¶ 53-54. In addition, the Settlement Administrator will do a direct mailing of 4.25" x 6" postcards (the "Notice Postcards"), a mockup of which is attached as Exhibit E to the Pang Declaration. *Id*. ¶¶ 30-31. Notice Postcards will be mailed to all Participating Settlement Class Members for whom the Settlement Administrator possesses valid mailing addresses. *Id*. ¶ 30. Before the initial mailing of the Notice Postcards, the Settlement Administrator will run the addresses of all known intended recipients through the United States Postal Service ("USPS") National Change of Address ("NCOA") database. *Id*. Notice Postcards that are returned Undeliverable as Addressed ("UAA") with forwarding addresses provided by USPS will be processed, updated in a case-specific database, and re-mailed. *Id*. For Notice Postcards returned UAA by USPS without any forwarding addresses, the Settlement Administrator will attempt to obtain updated addresses using proprietary database resources to which it subscribes and, in instances where updated addresses are found, re-mail the Notice Postcards. *Id*. All of these communications are designed to be accessible, clear, and understandable to the Settlement Class, consistent with current best practices. *See* U.S. Dist. Ct. for N. Dist. of Cal., *Procedural Guidance for Class Action Settlements* 3 (updated Sept. 5, 2024), https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements; Impact Fund, *Best Practices for Class Notices*, Notice Project, *available at* https://noticeproject.org/resources.

The Parties do not have contact information for the substantial majority of Settlement Class Members, so A.B. Data will implement a robust media program ("Media Notice"). To achieve the best notice practicable, Media Notice will include publication via online platforms (e.g., Google and YouTube), social media (e.g., Facebook and Instagram), and a press release distributed via PR Newswire's US1 newswire in California and throughout the United States (collectively, the "Media Notice"). Pang Decl. ¶¶ 32-36, 45. Media selection

includes targeting populations who are disproportionately likely to have purchased a bail bond, in particular lower-income populations. *Id.* ¶¶ 11-14. To target this audience, Media Notice includes: advertisements running on streaming platforms such as iHeartRadio, Spotify, Pandora, and Hulu, focusing on programming appealing to relevant demographics; advertisements on TikTok; advertisements on bus shelters; a press release distributed through PR Newswire's Multicultural Newswires; and email outreach to criminal defense attorney associations and Prison Legal News. *Id.* ¶¶ 42, 45-46. The Settlement Administrator will also use data-driven digital tools to reach Settlement Class Members, including list-matching against key email databases and social media profiles; geo-fencing; and predictive modeling. *Id.* The advertisements will be posted in both English and Spanish. *Id.* A mockup of the advertisement publication is attached as Exhibit G to the Pang Declaration. The Settlement Administrator estimates that this Media Notice will create approximately 70.6 million impressions and reach 80% of prospective Settlement Class Members. *Id.* ¶¶ 36, 42, 48. This is a conservative estimate, as standard industry tools do not measure the reach of many components of the Media Notice plan. Thus, the Settlement Administrator anticipates that the actual plan reach will be greater than estimated. *Id.* ¶ 49.

Finally, the Settlement Administrator will receive and process any Opt-Out Statements or Notices of Objection, and will promptly inform the Parties of all that are received. *Id.* ¶¶ 58-60.

### E.   **Distribution of Settlement Fund**

After all claims are received and upon further orders of the Court, the Settlement Administrator shall administer the claims submitted by members of the Settlement Class and shall oversee distribution of the Settlement Fund, including distribution of the Net Settlement Fund to Participating Settlement Class Members pursuant to the Distribution Plan. Pang Decl. ¶¶ 62, 68-71. The Gross Settlement Fund shall be applied as follows: (1) to pay Notice and Distribution Costs; (2) to pay Settlement Class Counsel attorneys' fees and litigation expenses, subject to Court approval; (3) to pay the two Named Plaintiffs service awards, subject to Court approval; and (4) to distribute the balance of the Settlement Fund to verified Participating Settlement Class Members, as per the Distribution Plan, described below. Accredited SA ¶ 60; ACIC SA ¶ 60; ASC SA ¶ 65; Bankers SA ¶ 66; C&F SA ¶ 63; Seaview SA ¶ 64; Sun Surety SA ¶ 63; Universal SA ¶ 63; Williamsburg SA ¶ 61.

Individuals submitting claims will self-identify as Participating Settlement Class Members and will be given the opportunity to provide documentary evidence of the price they were charged for their bail bonds at the point of sale. The Settlement Administrator shall then take steps to verify such evidence by comparing it with the transactional data provided by Defendants in this Action. Accredited SA ¶ 61(a)-(b); ACIC SA ¶ 61(a)-(b); ASC SA ¶ 66(a)-(b); Bankers SA ¶ 67(a)-(b); C&F SA ¶ 64(a)-(b); Seaview SA ¶ 65(a)-(b); Sun Surety SA ¶ 64(a)-(b); Universal SA ¶ 64(a)-(b); Williamsburg SA ¶ 62(a)-(b). For Participating Settlement Class Members who do not provide verified documentary evidence regarding the price charged at the point of sale, the Settlement Administrator will estimate the price charged by reducing the applied premium rate from Defendants' transaction data by an estimated rebate of 1.5% (as estimated by Dr. Singer in Exhibit 23 of his Reply Report, ECF No. 563-3). The Settlement Administrator will then multiply the estimated premium percentage charged by the bail amount recorded in Defendants' transaction data. Accredited SA ¶ 61(c); ACIC SA ¶ 61(c); ASC SA ¶ 66(c); Bankers SA ¶ 67(c); C&F SA ¶ 64(c); Seaview SA ¶ 65(c); Sun Surety SA ¶ 64(c); Universal SA ¶ 64(c); Williamsburg SA ¶ 62(c). The Settlement Administrator shall calculate each verified Participating Settlement Class Member's but-for price by multiplying the bail amount recorded in Defendants' transaction data by the but-for effective rate of 6.05% (as estimated by Dr. Singer in Exhibit 26 of his Reply Report). The Settlement Administrator shall then calculate estimated damages for each and every verified Participating Settlement Class Member by subtracting the estimated but-for price from the estimated price that was charged. Accredited SA ¶ 61(c); ACIC SA ¶ 61(c); ASC SA ¶ 66(c); Bankers SA ¶ 67(c); C&F SA ¶ 64(c); Seaview SA ¶ 65(c); Sun Surety SA ¶ 64(c); Universal SA ¶ 64(c); Williamsburg SA ¶ 62(c).

Upon the Effective Date of the Agreements, and after all timely claims have been processed, the Settlement Administrator will distribute checks to verified Participating Settlement Class Members in proportion to their share of verified Participating Settlement Class Member alleged damages, to a cap of three times the amount of estimated damages, consistent with automatic treble damages under the Sherman Act and Cartwright Act. Accredited SA ¶ 61(c); ACIC SA ¶ 61(c); ASC SA ¶ 66(c); Bankers SA ¶ 67(c); C&F SA ¶ 64(c); Seaview SA ¶ 65(c); Sun Surety SA ¶ 64(c); Universal SA ¶ 64(c); Williamsburg SA ¶ 62(c). The Settlement Administrator will provide verified Participating Settlement Class Members with the option of a

mailed check, direct deposit, or a digital distribution payment utilizing 2-3 options, such as a virtual debit card and/or popular retail gift cards such as Target or Amazon. Pang Decl. ¶ 72.

If verified Participating Settlement Class Members do not cash checks sent to them or otherwise receive their payment, the Settlement Administrator will provide repeated reminders to those verified Participating Settlement Class Members and make other reasonable efforts to ensure distributed checks are cashed. If, following those efforts, there remain uncashed checks, the Settlement Administrator shall redistribute the unclaimed funds among verified Participating Settlement Class Members in proportion to their share of the alleged damages, up to the cap of three times the amount of estimated damages, until the costs of redistribution exceed the remaining funds. The excess amount shall be provided to *Cy Pres* Recipients, subject to Court approval. Harvey Decl. ¶ 36; Accredited SA ¶ 61(d); ACIC SA ¶ 61(d); ASC SA ¶ 66(d); Bankers SA ¶ 67(d); C&F SA ¶ 64(d); Seaview SA ¶ 65(d); Sun Surety SA ¶ 64(d); Universal SA ¶ 64(d); Williamsburg SA ¶ 62(d).

Plaintiffs respectfully propose that the *Cy Pres* Recipients include Project Avary, which provides mentorship, leadership development, and community for children of incarcerated parents; Healing Urban Barrios, which offers services to help re-integrate formerly incarcerated people into society; and Defy Ventures (NorCal and SoCal), which promotes entrepreneurialism for formerly incarcerated people and teaches them valuable skills, including starting and growing a business. Harvey Decl. ¶ 36. Each of these organizations serves the interests of the Settlement Class by providing meaningful support to individuals who have experienced incarceration and their family members—the same population that purchased bail bonds during the Settlement Class Period. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (stating that a *cy pres* distribution must "bear[ ] a substantial nexus to the interests of the class members"). Settling Defendants do not object to the *Cy Pres* Recipients.

### F. Attorneys' Fees, Expenses, and Service Awards

Approved service awards, attorneys' fees, and expenses will be paid out of the Gross Settlement Fund. Accredited SA ¶ 66; ACIC SA ¶ 66; ASC SA ¶ 71; Bankers SA ¶ 72; C&F SA ¶ 69; Seaview SA ¶ 71; Sun Surety SA ¶ 70; Universal SA ¶ 70; Williamsburg SA ¶ 68. Settlement Class Counsel anticipate petitioning the Court for (1) an award of Settlement Class Counsel attorneys' fees in a total amount not to exceed one-third of the monetary consideration of the Total Settlement Amount (approximately $23.1 million), which

does not include the estimated future benefits of the injunctive relief (Declaration of Hal J. Singer ("Singer Decl.") ¶¶ 14-21); (2) an award of Settlement Class Counsel Litigation Expenses reflecting their unreimbursed litigation costs to date (no more than $2 million); and (3) approval of service awards to each of the Settlement Class Representatives.  Accredited SA ¶¶ 65, 69; ACIC SA ¶¶ 65, 70; ASC SA ¶¶ 70, 75; Bankers SA ¶¶ 71, 76; C&F SA ¶¶ 68, 73; Seaview SA ¶¶ 69, 74; Sun Surety SA ¶¶ 68, 73; Universal SA ¶¶ 68, 73; Williamsburg SA ¶¶ 66, 71.

As noted, Settlement Class Counsel anticipate requesting an attorneys' fee award of no more than one-third of the monetary component of the Settlements.  This amount is reasonable here for several reasons.

First, attorneys' fees of up to one-third (approximately $23.1 million) is justified pursuant to a lodestar crosscheck.  Over more than seven years of litigation, Settlement Class Counsel have devoted over 48,400 hours and $27.4 million in attorney and staff time using historical billing rates, and over $32.6 million in attorney and staff time when applying the most recent billing rate for each time keeper.[4]  Harvey Decl. ¶ 42.  This is in addition to the attorney and staff time provided by co-counsel.  *Id.*  This results in a *negative* multiplier, in a case in which Settlement Class Counsel have invested substantial time and out-of-pocket costs, and without any payment or reimbursement to date.  *See Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) (finding a negative lodestar multiplier "strongly suggests the reasonableness" of a requested fee (citation omitted)).  Further, Settlement Class Counsel did not seek any payment or reimbursement from the earlier approved settlements with DNIC and Lexon to avoid the Settlement Class paying for an additional distribution, and so that the Settlement Class would benefit from earned interest in the meantime.  Harvey Decl. ¶ 29.  Settlement Class Counsel will provide additional information regarding their lodestar and costs with their forthcoming fee and cost application.

Second, this is within the range regularly approved in complex, lengthy cases like this one.  *See, e.g.*, *Aguilar Auto Repair, Inc. v. Wells Fargo Bank, N.A.*, No. 23-cv-06265-LJC, 2025 WL 1753509, at *9-10 (N.D. Cal. May 23, 2025); *Hernandez v. Dutton Ranch Corp.*, No. 19-cv-00817-EMC, 2021 WL 5053476, at

---

[4] As explained in the Court's April 15, 2020 Amended Protocol for Common Benefit Work and Expenses: "counsel may seek an award of fees based on their hourly rate at the time a settlement or judgment is reached to account for the delay in payment."  ECF No. 93 at 9 (citing *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 209 (9th Cir. 1997) and *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)).

MPA ISO PLTFS' MOTION FOR PRELIM. APPROVAL OF SETTLEMENTS 4:19-CV-00717-JST

*6 (N.D. Cal. Sept. 10, 2021) ("District courts within this circuit, including this Court, routinely award attorneys' fees that are one-third of the total settlement fund . . . [s]uch awards are routinely upheld by the Ninth Circuit.").

Third, the estimated value of the injunctive relief further supports an attorneys' fee award of up to one-third of the non-reversionary common fund. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 520 (N.D. Cal. 2020) (Tigar, J.) (noting the court "takes into account 'the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees'" (citation modified) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003))), *aff'd*, 845 F. App'x 563 (9th Cir. 2021); *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2021 WL 4205055, at *6 (N.D. Cal. Sept. 2, 2021) (Tigar, J.) (same), *aff'd sub nom.*, *McKnight v. Hinojosa*, 54 F.4th 1069 (9th Cir. 2022). Dr. Singer estimates that the injunctive relief will save future California bail bond consumers between $26 million and $118 million per year. Singer Decl. ¶¶ 14-21. Nonetheless, Settlement Class Counsel do not include the value of this injunctive relief for purposes of applying the percentage method for determining fees, further underscoring the reasonableness of the requested fee award. Settlement Class Counsel's request for no more than one-third of the Total Settlement Amount is limited to the monetary relief provided by the Settlements.

Settlement Class Counsel also anticipate seeking service awards of up to $50,000 each in connection with the Settlements for each Settlement Class Representative. Harvey Decl. ¶ 41. Here, both Settlement Class Representatives have provided substantial time and effort into this litigation, produced discovery, and were deposed. Without their work and willingness to pursue claims on behalf of absent class members, no recovery would have been possible. Service awards of up to $50,000 each is consistent with awards in other similar cases. *See infra* Section V.B.3.

## IV. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class action lawsuits. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). When parties settle a class action prior to class certification, courts must "ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d at 952. This requires courts to "assess whether a class exists," and if so, to

assess "whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 370 (N.D. Cal. 2021) (citations omitted).

For the latter inquiry—into the settlement's fairness—courts generally employ a two-step process. First, courts "make a preliminary determination that the settlement 'is fair, reasonable, and adequate'" under Federal Rule of Civil Procedure 23(e)(2). *Naro v. Walgreen Co.*, No. 22-cv-03170-JST, 2025 WL 1883825, at *1 (N.D. Cal. July 8, 2025) (quoting Fed. R. Civ. P. 23(e)(2)). At this phase, also known as the preliminary approval stage, the Court is tasked with determining whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted). Courts in the Ninth Circuit examine two authorities in deciding whether to grant preliminary approval: "(1) the fairness factors set forth in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); and (2) the factors in Rule 23(e)(2)." *Cottle*, 340 F.R.D. at 372. Courts in the Northern District of California also consider the District's Procedural Guidance for Class Action Settlements. The second step in the fairness determination is for courts to "hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is 'fair, reasonable, and adequate.'" *Naro*, 2025 WL 1883825, at *1 (quoting Fed. R. Civ. P. 23(e)(2)).

## V.   **ARGUMENT**

Just as with the prior approved settlements with Lexon and DNIC, all of the relevant factors strongly support both certification of the Settlement Class, and preliminary approval of the Settlement Agreements.

### A.   **The Settlement Class Meets the Criteria for Certification**

First, a plaintiff must establish numerosity, commonality, typicality, and adequacy under Rule 23(a); and second, a plaintiff must establish that the action meets one of the bases for certification under Rule 23(b). "The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). Specifically, the manageability requirement inherent in Rule 23(b)(3) does not apply to settlement classes. *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670-DMS-MDD, 2022 WL 4283551, at *4 (S.D. Cal. Jan. 26, 2022); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2020 WL 1873554, at *5 (N.D. Cal. Mar. 11, 2020) (Tigar, J.) ("*CRT II*") (adopting the special master's finding that class certification in the settlement context does not include difficulties found in the litigation context).

Settling Defendants do not dispute that, for settlement purposes, the Settlement Class meets the requirements for class certification under Rules 23(a) and 23(b)(3).

### 1. The Requirements of Rule 23(a) Are Satisfied

**Numerosity**. Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, there are millions of Class transactions. Harvey Decl. ¶ 28; Singer Rep. ¶ 95, ECF No. 513-18. As the Court previously held, numerosity is readily satisfied. ECF No. 512 at 6.

**Commonality**. Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The common question "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, many common questions exist, including whether Defendants entered into the alleged conspiracy to inflate the prices of bail bonds in California; whether that conspiracy violated the Sherman Act and California law; whether that conspiracy succeeded in inflating prices; and what those prices would have been in the absence of the conspiracy. As this Court previously held, "[t]hese common questions satisfy the commonality requirement." ECF No. 512 at 7; *see also CRT II*, 2020 WL 1873554, at *5 (commonality satisfied where questions included "whether the Defendants engaged in a price-fixing conspiracy that injured Plaintiffs"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) ("Where an antitrust conspiracy has been alleged, courts have consistently held that 'the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exists.'" (citations omitted)).

**Typicality**. The typicality requirement is met when the claims of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The named plaintiffs need not have suffered an identical wrong; rather, the claims of the proposed settlement class must be "fairly encompassed by the named plaintiff's claims." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1063 (N.D. Cal. 2007) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). "In antitrust cases, typicality usually will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013) (citations omitted).

Here, Plaintiffs' claims stem from the same conspiracy as other Settlement Class Members. Both Plaintiffs assert that they paid more for their bail bonds than they would have in the absence of the alleged conspiracy—allegations identical to (and typical of) the Settlement Class they seek to represent. As this Court previously held, "the claims of the representative parties are typical of the claims of the class." ECF No. 512 at 7; *see also CRT II*, 2020 WL 1873554, at \*6; *In re Packaged Seafood*, 2022 WL 4283551, at \*4.

**Adequacy**. The adequacy element is satisfied if "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This is a dual inquiry that examines (1) whether the proposed representative plaintiffs have any conflicts of interests with the proposed class, and (2) whether the plaintiffs were represented by qualified and competent counsel. *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010). Both requirements are satisfied here.

First, Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of other Settlement Class Members. Plaintiffs and the Settlement Class share a common interest in maximizing the total monetary recovery and implementing meaningful injunctive relief that will prevent the alleged misconduct from continuing or reoccurring. As the Court previously held, Plaintiffs are adequate because they "will fairly and adequately protect the interests of the class." ECF No. 512 at 10; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

Second, Settlement Class Counsel have extensive experience litigating, trying, and settling class actions, including antitrust cases, across the country. Harvey Decl. ¶ 25 & Ex. 10 (Lieff, Cabraser, Heimann & Bernstein LLP Firm Resume). Settlement Class Counsel have vigorously pursued this litigation on behalf of Plaintiffs and the Settlement Class for over seven years, and will continue to do so against the remaining Non-Settling Defendants. *Id*. ¶¶ 16, 26. Settlement Class Counsel have fairly and adequately protected the interests of the Settlement Class. As the Court previously held, Plaintiffs' counsel are adequate because they "have vigorously prosecuted this action." ECF No. 512 at 11.

### 2. Class Certification Is Appropriate Under Rule 23(b)(3)

Rule 23(b)(3) requires the Court to find that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**Predominance.** The predominance inquiry focuses on the relationship between the common and individual issues. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Specifically, the requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). When common questions "present a significant aspect of the case that can be resolved for all members of the class in a single adjudication," there is justification for "handling the dispute on a representative rather than an individual basis." *Delagarza v. Tesoro Refin. & Mktg. Co.*, No. C-09-5803 EMC, 2011 WL 4017967, at *10 (N.D. Cal. Sept. 8, 2011) (citation omitted). Predominance is established for an antitrust claim when plaintiffs are able to prove with common evidence: (1) violation of antitrust laws, (2) injury suffered as result, and (3) estimated damages. *In re High-Tech*, 985 F. Supp. 2d at 1183. Here, as the Court previously found, common questions of both law and fact predominate over individual issues as to all three elements. ECF No. 512 at 12.

First, Plaintiffs allege a price-fixing conspiracy in violation of the Sherman Act and the Cartwright Act. The predominant issue is the existence of the Defendants' alleged conspiracy to fix bail bond prices. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2022 WL 4596621, at *4 (N.D. Cal. Aug. 1, 2022) (Tigar, J.) ("*CRT III*") (finding "that the existence of the conspiracy and [defendant's] role in it, if any, are subject to common proof," and noting that "[i]n price-fixing cases, like this one, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present" (citations omitted)); *In re High-Tech*, 985 F. Supp. 2d at 1187 ("Accordingly, Plaintiffs contend that, at trial, proving Defendants' conspiracy will be the overriding common issue for every Class Member." (citation omitted)); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D 603, 611 (N.D. Cal. 2009) (finding that if the Court finds common proof of defendants' antitrust conspiracy, class certification is warranted on that basis alone). Here, too, the alleged conspiracy either happened or it did not, and this question is answered with common evidence for all.

Second, Plaintiffs use common evidence to show antitrust impact and damages. "Antitrust 'impact'—also referred to as antitrust injury—is the 'fact of damage' that results from a violation of the antitrust laws." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *7 (N.D. Cal. June 5, 2006); *see also In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 352 (N.D. Cal. 2005) ("[T]he great weight of authority suggests that the dominant issues in [price fixing] cases . . . are whether

- 16 -

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

the charged conspiracy existed and whether price-fixing occurred." (citation omitted)).  Here, prices charged to Settlement Class Members were calculated in the same way: (filed rate percentage – rebate) x (court-determined bail).  By law, all Settlement Class transactions began with the bail agent applying the applicable filed rate, based upon common criteria in Defendants' rate filings.  Cal. Code Regs. Tit. 10, § 2081(a).

Plaintiffs allege that Defendants conspired to set an artificially inflated "standard" filed rate of 10%.  Defendants' transaction data confirms that the allegedly fixed "standard" 10% rate was applied directly to 83.4% of all Class Transactions.  Singer Reply Rep., Ex. 27.  In another 12.6% of transactions, the 8% discounted rate was applied, which Plaintiffs allege was also inflated artificially because it was calculated based upon an arbitrary 20% reduction off of the allegedly fixed 10% "standard" rate.  *Id*.  Thus, in 96% of Class transactions, the allegedly fixed 10% rate was applied directly, or the artificially-inflated 8% rate was applied.  Class Members were either charged these alleged fixed rates directly with no rebate, or negotiated a rebate with the fixed rate as the starting benchmark price, akin to a list price.  *See* ECF No. 512 at 12 (finding predominance satisfied here); *see also, e.g.*, *In re Rubber Chems.*, 232 F.R.D. at 352 ("[C]lass-wide impact is usually found to exist where the defendants are shown to have used collusively-set list prices for the product at issue.").

The Settlement Distribution plan allocates the Settlements to Settlement Class Members by applying Dr. Singer's common methods for determining impact and damages to each and every verified Participating Class Member.  Where verified Participating Settlement Class Members do not have documentary evidence showing the actual premium charged at the point of sale, the Settlement Administrator will estimate the actual premium charged by reducing the premium rate recorded in Defendants' transaction data by an estimated rebate of 1.5%, as calculated by Dr. Singer.  Singer Reply Rep., Ex. 23.  The Settlement Administrator will then calculate the but-for premium charged by multiplying the bail amount recorded in the transaction data by the but-for effective rate of 6.05%, as calculated by Dr. Singer, and subtract the but-for premium from the actual premium charged.  Singer Reply Rep., Ex. 26.  For example, if Defendants' transaction data shows a penal bail amount of $10,000 and a premium rate of 10% ($1,000), the Settlement Administrator will apply an estimated rebate of 1.5% off of the premium rate of 10% and estimate the actual premium charged to be $850; apply the but-for effective rate of 6.05% to estimate the but-for premium charged to be $605; and thereby estimating damages as: $850 - $605 = $245.  Accredited SA ¶ 61(c); ACIC SA ¶ 61(c); ASC SA

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

¶ 66(c); Bankers SA ¶ 67(c); C&F SA ¶ 64(c); Seaview SA ¶ 65(c); Sun Surety SA ¶ 64(c); Universal SA ¶ 64(c); Williamsburg SA ¶ 62(c).

This mechanism of common impact does not assume, or depend in any way, upon bail agents' participation in, or awareness of, the allegedly unlawful conspiracy among the Defendants. Similarly, Plaintiffs in *Olean* did not need to show that every retail seller of canned tuna participated in the alleged price-fixing conspiracy to show that prices to consumers were commonly inflated. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 674-75, 681 n.29 (9th Cir. 2022). In fact, the End Payer Plaintiffs in *Olean* acknowledged that the "resellers from whom Plaintiffs and Class Members purchased" the product "were not involved in the conspiracy." Sixth Am. Compl. at 218, *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670 (S.D. Cal. Oct. 5, 2018), ECF No. 1461. Rather, the alleged conspiracy in *Olean* exclusively charged the manufacturer/supplier level with antitrust violations and asserted that the harm to consumers resulted from passing on the artificially inflated wholesale prices from the conspirator-suppliers. The claims here provide for a much more direct relationship between the alleged conspiracy and the prices charged to Settlement Class Members, because—unlike in indirect purchaser cases like *Olean*—the retail sellers here were literally agents of the Defendants, and were required by law to either charge the allegedly price-fixed rates directly, or to negotiate off of those price-fixed rates. The alleged conspiracy thus inflated bail bond prices without regard to whether bail agents were aware of the alleged conspiracy.

Plaintiffs' allegations regarding Defendants' fixing of the default reference price for all Class transactions (the 10% "standard" price) would alone be sufficient to establish common impact. However, here, Plaintiffs also alleged that Defendants colluded to interfere with the price negotiation process itself, to suppress rebating below their fixed filed rates. Plaintiffs contended that Defendants did this by attempting to convince bail agents and bail bond customers that rebating was unlawful or somehow improper, and by taking other steps designed to sniff out and discourage rebating. ECF No. 514-2 at 9-19; ECF No. 562-2 at 7-9. Bail agents and bail bond purchasers may or may not have understood the illicit purpose behind these alleged efforts by Defendants, but either way, the effect was the same: to deprive the market of important pricing information, frustrate the price discovery process, and inflate prices across the Settlement Class. *See*, *e.g.*, *In re High-Tech*, 985 F. Supp. 2d at 1206-1207, 1214 (finding common impact where, among other things, defendants' alleged conspiracy interfered with the price discovery process).

The Settlement Administrator will rely upon Dr. Singer's common evidence and methods to estimate both the actual prices charged to Settlement Class Members, and the but-for prices that would have been charged without the challenged misconduct. These common methods result in a specific damages calculation for each and every verified Participating Settlement Class Member. Each verified Participating Settlement Class Member will receive their pro-rata share of estimated damages of all verified Participating Settlement Class Members, up to three times their estimated damages. These are the same common and reliable evidence and methods Plaintiffs used to calculate aggregate class-wide damages. *See* ECF No. 514-2 at 30-31; Singer Reply Rep. ¶¶ 119-24. A more detailed description of class-wide damages is included below in Section V.B (*Churchill* Factor 4).

Because the Settling Defendants' alleged conduct applies to all Settlement Class Members' claims, and Plaintiffs allege "a common and unifying injury" as a result of the Settling Defendants' alleged illegal conduct, the predominance requirement is met. *In re Volkswagen "Clean Diesel" Litig.*, MDL No. 2672 CRB, 2017 WL 672727, at \*14 (N.D. Cal. Feb. 16, 2017); *CRT III*, 2022 WL 4596621, at \*4.

**Superiority.** A class action is a superior means of adjudicating a dispute if no realistic alternative exists, and class litigation of common issues "reduce[s] litigation costs and promote[s] greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Here, there is no realistic alternative to a class action due to the size of the Settlement Class and the prohibitive cost of litigating an individual case. As the Court previously explained, "the judicial economy achieved through common adjudication undoubtedly makes a class action superior to any alternative procedures for resolving the claims of approximately two million class members." ECF No. 512 at 12. Individual lawsuits could also result in inconsistent rulings for the same misconduct. *Volkswagen*, 2017 WL 672727, at \*14. Furthermore, each Settlement Class Member would be required to prove the same misconduct and would offer the same evidence. As such, class treatment is the superior method of adjudication. *See, e.g.*, *In re High-Tech*, 985 F. Supp. 2d at 1228; *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 316 (N.D. Cal. 2016) (same).

### 3. The Court Should Appoint Settlement Counsel Under Rule 23(g)(1)

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). The court must assess: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.*

At the outset of the Action, the Court appointed Lieff Cabraser as Interim Class Counsel. ECF No. 44. In so doing, the Court explicitly considered the Rule 23(g)(1) criteria. *Id.* at 2-3. Since then, Settlement Class Counsel have zealously litigated this action on behalf of the Settlement Class. Harvey Decl. ¶ 26. Settlement Class Counsel have undertaken a substantial amount of work, effort, and expense in litigating Plaintiffs' claims over many years, and ultimately achieved an excellent result for the Settlement Class. *Id.* Plaintiffs respectfully request that the Court appoint Lieff Cabraser as Settlement Class Counsel, as it did for the Lexon and DNIC settlements. ECF Nos. 512, 568.

### B.     The Settlements Are Fundamentally Fair, Reasonable, and Adequate

Because Plaintiffs established the propriety of certifying the Settlement Class, the Court should next assess whether preliminary approval of the Settlements is warranted in light of (1) the *Churchill* factors, (2) the Rule 23(e)(2) requirements, and (3) the District's Procedural Guidance.[5] As set forth below, all relevant factors support preliminary approval.

### 1.     The *Churchill* Factors Are Satisfied

Courts balance the following factors in deciding whether to grant preliminary approval: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Cottle*, 340 F.R.D. at 373 (quoting *Churchill*, 361 F.3d at 575). For the same reasons as the Lexon and DNIC settlements approved by the Court (ECF No. 512), the *Churchill* factors are satisfied here.

*Churchill* **Factors 1-3.**  "The first three factors are addressed together and require the court to assess the plaintiff's 'likelihood of success on the merits and the range of possible recovery' versus the risks of continued litigation and maintaining class action status through the duration of trial." *Cottle*, 340 F.R.D. at 373 (citation omitted).  These factors weigh in favor of approving settlement when the defendant has

---

[5] Because the "Rule 23(e)(2) analysis is guided by the eight *Churchill* factors," but "requires the district court to go beyond the *Churchill* factors," Courts in this District often address *Churchill* before Rule 23(e)(2). *Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2024 WL 269149, at *2-4 (N.D. Cal. Jan. 24, 2024).

- 20 -

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

"plausible defenses that could have ultimately left class members with a reduced or non-existent recovery." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015).

Plaintiffs are confident in the strength of their claims and their ability to prevail at trial, but also recognize the inherent risks of any trial, as well as at class certification, which, as of this writing, is under submission. Settlement with the Settling Defendants is an important step in guaranteeing relief to the Settlement Class. *Cf. In re Volkswagen "Clean Diesel" Litig.*, 229 F. Supp. 3d 1052, 1065 (N.D. Cal. 2017) ("Settlement is favored in cases that are complex, expensive, and lengthy to try.").

***Churchill* Factor 4.** The fourth *Churchill* factor, concerning the amount offered in the settlement, further supports approval. For the same reasons, Rule 23(e)(2)(C)(i) also supports approval.

In determining whether a settlement is fair and adequate, "the complete package [is] taken as a whole, rather than the individual component parts." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). A court is not required "to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award." *Lane*, 696 F.3d at 823.

The approximately $66.3 million in monetary relief represents an excellent resolution of the Settlement Class's claims against the Settling Defendants. An important fact in evaluating this monetary consideration is that the Settling Defendants did not receive the entire transaction price as revenue because the large majority of each sale went to the bail agents who directly interacted with Settlement Class Members. This creates a large asymmetry between the Settling Defendants' potential liability for all Settlement Class damages, on the one hand, and the alleged benefit Settling Defendants received as revenue after bail agents retained their share, on the other. Thus, while Plaintiffs estimate total damages to the Settlement Class of between approximately $1.6 billion and $2.3 billion (when using the same methods used to allocate the Settlements), Singer Decl. ¶ 20, these amounts are vastly larger than Settling Defendants' total revenue from those same transactions, which was less than $350 million. Harvey Decl. ¶ 29. Further, the Settling Defendants are all private companies with limited available capital, and would not be capable of satisfying a judgment in full if Plaintiffs prevailed at trial. *Id.*

- 21 -

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

To square this circle, Plaintiffs instead judged potential settlement against each Settling Defendant's revenue from Settlement Class transactions.  This is consistent with how Courts have evaluated the reasonableness of settlements in other antitrust cases.  *See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007) (approving settlement of 1.5% of sales for a four-year period); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *11 (E.D. Mich. Dec. 13, 2011) (approving settlement of 2.2% of sales during settlement class period); *Nw. Fruit Co. v. A. Levy & J. Zentner Co.*, 117 F.R.D. 670, 671 (E.D. Cal. 1987) (approvingly noting the settlements "equal almost 15% of the settling defendants' total revenue from cooling and palletizing cantaloupes over the four-year statute of limitations period"); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1155 (N.D. Cal. 2001) (discussing previously approved settlement of "approximately 10 percent of each of the settling defendants' citric acid sales" such that "each settling defendant contributed money to the settlement fund based on its own market share of the sales"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal. Feb. 18, 2011), ECF No. 2476 (approving settlement of 23% of sales); *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 JG VVP, 2013 WL 4525323, at *9 (E.D.N.Y. Aug. 27, 2013) (approving settlements representing 31.2% of settling defendants' affected revenues, and noting that is "a percentage that compares favorably with settlements reached in other price-fixing antitrust class actions"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 JGV VP, 2009 WL 3077396, at *9 (E.D.N.Y. Sept. 25, 2009) (approving settlement of 10.5% of surcharges, "a result that . . . compares favorably to settlements reached in other price-fixing antitrust class actions").

Judged against these appropriate reference points, the Settlements represent an extraordinary recovery for the Settlement Class.  The Settlements fall into three buckets: (1) Settlements with Defendants who had very small market shares and very small revenue; (2) Settlements with Defendants who had meaningful market shares and meaningful revenue; and (3) Settlements with Defendants with significant ability-to-pay issues.

In the first bucket, three Settling Defendants had very small market shares: Williamsburg, Sun Surety, and Universal.  Each had an approximately 0.2% share of Settlement Class Transactions, and each agreed to pay settlements that are nearly equal to their total gross revenue.  Harvey Decl. ¶ 32.  Williamsburg will pay $1,089,658, which is approximately 92% of its gross revenue from Class transactions; Sun Surety will pay

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

$1,000,000, which is approximately 91% of its gross revenue from Class transactions; and Universal will pay $835,000, which is approximately 92% of its gross revenue from Class transactions. *Id.* These amounts vastly exceed the percentage of revenue recovery in other antitrust cases.

In the second bucket: the C&F Defendants had approximately 9.8% of Class transactions and agreed to pay $18,875,000, which is approximately 31% of their gross revenue from Class transactions; Accredited had an approximate market share of 4.7% and agreed to pay $9,437,500, which is approximately 30% of its gross revenue; ACIC had an approximate market share of 5.2%, and agreed to pay $9,437,500, which is approximately 22% of its gross revenue; and ASC had an approximate market share of 7.9% and agreed to pay $15,200,000, which is approximately 27% of its gross revenue. Harvey Decl. ¶ 33. Again, these amounts vastly exceed many other antitrust cases when viewed in relation to the gross revenue received.

In the third bucket are Seaview, with an approximate market share of 18.2%, and Bankers, with an approximate market share of 14.4%. Harvey Decl. ¶ 34. Plaintiffs negotiated these Settlements based on a detailed analysis of how much each could pay without a substantial impact on their ability to remain in business and comply with statutory and regulatory capital reserve requirements. *Id.* "[A] settling defendant's ability to pay may be a proper factor to consider in evaluating a proposed class action settlement." *Class Plaintiffs*, 955 F.2d at 1295. The DNIC settlement approved by the Court was derived from a similar ability-to-pay analysis. ECF No. 512 at 17.

Seaview's settlement amount of $5,600,000 represents the maximum Seaview is able to pay given the California Department of Insurance's regulations regarding Risk Based Capital ("RBC"). Magden Decl. ¶¶ 6, 11-12, 15; Ferrara Decl. ¶¶ 5-6; *see also* Cal. Ins. Code § 739.2(d) ("[I]nsurers shall seek to maintain capital above the RBC Levels required by this article."). RBC requirements exist to ensure that a company has sufficient capital based on the company's size and risk profile. Magden Decl. ¶ 6. California requires that "[e]very domestic insurer . . . prepare and submit to the commissioner a report of its RBC levels as of the end of the calendar year just ended, in a form and containing such information as required by the RBC Instructions" provided by the National Association of Insurance Commissioners ("NAIC"). Cal. Ins. Code §§ 739(i), 739.2(a). The formula to calculate RBC is dictated by NAIC's RBC Instructions. Cal. Ins. Code § 739.2(c). For a property and casualty insurer like Seaview, the RBC calculation must take into account asset risk, credit risk, underwriting risk, and "[a]ll other business risks and any other relevant risks as are set forth in the RBC

Instructions." *Id.* Seaview provided declarations from its Chief Executive Officer (Magden Decl.) and its appointed actuary—the Managing Director of the Actuarial Practice at the accounting firm Crowe LLP (Ferrara Decl.)—substantiating these figures and analysis. These Seaview witnesses attest that any settlement beyond the agreed-upon $5,600,000 would have caused Seaview to fall below its Company Action Level RBC and threaten its ability to insure its policyholders. Magden Decl. ¶ 15; Ferrara Decl. ¶¶ 6-7. Plaintiffs' counsel reviewed confidential records and financial information to independently verify Seaview's representations as to its financial condition and ability to pay. Harvey Decl. ¶ 34.

Bankers's settlement amount of $4,817,916 represents the maximum amount Bankers is able to pay. Charbonneau Decl. ¶ 8. Like Seaview, Bankers is required to maintain sufficient capital to meet California's statutory and regulatory requirements. *Id.* ¶¶ 4-5. However, unlike Seaview, Bankers must also manage its risk exposure and capital requirements by A.M. Best's Capital Adequacy Ratio ("BCAR"). *See id.* ¶ 5. This is because Bankers's business consists largely of commercial multi-peril lines of business, the substantial portion of which are sold in Florida and Louisiana—two of the states with the most exposure to catastrophic events every year. *Id.* ¶ 3. Thus, Bankers's financial health is volatile from year to year depending on the number and severity of those catastrophes. *Id.* RBC is insufficient to capture this risk because it includes only one catastrophic event per year, and Bankers experienced multiple catastrophic events in a single year on several occasions. *Id.* at ¶ 4. Additionally, the RBC risk calculation includes only hurricanes and storms, and does not capture other catastrophic risks to which Bankers is exposed, such as tornados, hail, and wildfire. *Id.* In contrast, BCAR captures more categories of catastrophic risk to insurers and includes two hurricanes per year (as opposed to one in RBC), and therefore better reflects Bankers's risk profile. *Id.* ¶ 5. Bankers believes the settlement amount of $4,817,916 is the maximum amount Bankers can pay without jeopardizing an A.M. Best ratings downgrade from its current B++ rating, which would substantially harm Bankers's business and threaten its ability to continue insuring its policyholders. *Id.* ¶ 8.

Seaview's and Bankers's abilities to pay weigh in favor of approving the Settlements. *See Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-cv-05486-JCS, 2018 WL 8949777, at *3 (N.D. Cal. Oct. 15, 2018) (finding the defendant's "financial condition demonstrates that the amount of the settlement fund is adequate and represents a reasonable settlement"); *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding the defendant's financial condition

- 24 -

"highlights the reasonableness of the settlement amount"); *In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2014 WL 106826, at *2 (N.D. Cal. Jan. 10, 2014) ("It is not unreasonable for counsel and the class representative to prefer the bird in hand, given concerns about [defendant's] strained financial state and its ability to pay a judgment following further litigation." (citation omitted)); *Gutierrez v. New Hope Harvesting, LLC.*, No. 2:19-cv-07077-FWS-AJR, 2024 WL 1834362, at *8 (C.D. Cal. Apr. 26, 2024) (contemplating "Defendants' ability to pay" and preliminarily approving settlement).

Finally, the injunctive relief further supports approval under *Churchill* factor 4, as it provides value in addition to the monetary amounts provided by the Settlements. Each of the Settling Defendants agrees to implement the same or substantially similar injunctive relief that Plaintiffs anticipate seeking at trial and that the Court approved as to the Lexon and DNIC settlements, *see* ECF Nos. 512, 568; *see supra* Section III.A (detailing injunctive relief). Dr. Singer reviewed the Settlements and opines that "the injunctive relief contained therein would substantially mitigate going-forward harm from the Challenged Conduct," and estimates "that the avoided harms from the injunctive relief are likely worth between $26.1 to $118.5 million annually." Singer Decl. ¶ 1. Dr. Singer's basic approach is to determine how the average rebate rate observed at the end of the time period for which he has available data would change following implementation of the injunctive relief. He investigates three potential scenarios. First, if agents that had previously offered no rebates simply match the average rebate rates of agents who did offer rebates, the benefit to California bail bond consumers would be approximately $26.1 million per year, or approximately $198.70 per transaction. *Id.* ¶¶ 14-15. Second, if agents match the rebate rates offered by the most competitive bail agency, the savings would be approximately $92.5 million per year, or approximately $703.33 per transaction. *Id.* Third, if increased competition drives prices down to Dr. Singer's theoretical competitive level, the savings would be approximately $118.5 million per year, or approximately $901.30 per transaction. *Id.*

***Churchill* Factor 5.** Under the fifth *Churchill* factor, courts examine the extent of discovery completed and the stage of the proceedings. "Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'" *Cottle*, 340 F.R.D. at 375 (quoting *DIRECTV*, 221 F.R.D. at 528). This factor is co-extensive with Rule 23(e)(2)(B).

First, with respect to the extent of discovery, courts credit both efforts that are "relevant in determining the adequacy of the parties' knowledge of the case" and any "substantial investigation prior to the filing."

*Cottle*, 340 F.R.D. at 375 (quoting *DIRECTV*, 221 F.R.D. at 527).  Where extensive information has been exchanged, "[a] court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information."  4 William B. Rubenstein et al., *Newberg on Class Actions* § 13:49 (5th ed. 2012); *cf. In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) (concluding that the "extent of discovery" and investigation undertaken by the parties gave "a good sense of the strength and weaknesses of their respective cases in order to 'make an informed decision about settlement'" (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000))).

Here, the Parties litigated for over seven years prior to reaching the Settlements, and Defendants (including the Settling Defendants) produced significant discovery, including approximately 970,152 documents (3,946,312 pages), and transactional data.  Harvey Decl. ¶ 12.  Plaintiffs also took twenty-eight fact witness depositions, including Defendants' key executives and third-party bail agents, defended the depositions of both Named Plaintiffs, and the Parties deposed both expert witnesses in this case.  *Id*. ¶ 13. This discovery and transactional data was critical to reaching agreement regarding the monetary components of the Settlements.  *Id*. ¶ 23.  Furthermore, a substantial portion of the investigation pertinent to the Action took place before the initial complaint was filed: Settlement Class Counsel spent months investigating the alleged misconduct before filing the original complaint, and continued to do so as they filed two amended complaints.  *Id*.  Plaintiffs therefore had the necessary information to properly assess the value of the Settlements, enabling Settlement Class Counsel to reasonably conclude that the Settlements are in the best interest of the Settlement Class.

Second, with respect to arm's-length negotiation, courts "scrutinize agreements for 'subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect negotiations.'"  *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).  Specifically, courts consider: "(1) when counsel receive a disproportionate distribution of the settlement or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the payment of attorneys' fees is separate and apart from class funds; and (3) when the parties arrange for benefits that are not awarded to revert to the defendants rather than being added to the class fund."  *Cottle*, 340 F.R.D. at 376 (citation omitted).

Here, none of those "subtle signs" is present.  The Settlements were the result of arm's-length negotiations between experienced counsel that extended over many years, with the substantial assistance of a neutral mediator.  Harvey Decl. ¶¶ 16-17.  There will be no reversion to any of the Settling Defendants and Settlement Class Counsel will not seek anything in excess of one-third of the final Total Settlement Fund.  Accredited SA ¶¶ 37, 65; ACIC SA ¶¶ 37, 65; ASC SA ¶¶ 38, 70; Bankers SA ¶¶ 39, 71; C&F SA ¶¶ 38, 68; Seaview SA ¶¶ 38, 69; Sun Surety SA ¶¶ 38, 68; Universal SA ¶¶ 38, 68; Williamsburg SA ¶¶ 38, 66.

*Churchill* **Factor 6.**  The sixth *Churchill* factor (experience and views of counsel) supports preliminary approval of the Settlements.  As discussed in Section V.A.1, Settlement Class Counsel have extensive experience litigating and settling antitrust class actions throughout the country, and have committed significant time, expense, and resources to vigorously litigating this action.  Based on their collective experience, Settlement Class Counsel believe the Settlements provide an excellent resolution of the Class's claims against the Settling Defendants.

*Churchill* **Factors 7-8.**  *Churchill* factor seven (presence of government) is irrelevant to this action, and eight (reaction of class members) should be left to final approval, in light of responses to the Notice plan.  *Carlotti v. ASUS Comput. Int'l*, No. 18-cv-3369-DMR, 2019 WL 6134910, at *7 (N.D. Cal. Nov. 19, 2019).

### 2.    The Rule 23(e)(2) Requirements Are Met

Rule 23(e)(2) requires courts to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  All requirements are met here.

Several of the Rule 23(e)(2) requirements are addressed—and satisfied—through the Rule 23(a)-(b) and *Churchill* analyses above.  *See supra* Section V.A.1 (addressing (e)(2)(A), regarding adequacy of representation, under Rule 23(a)); Section V.B.1 (addressing (e)(2)(B), regarding negotiations, under *Churchill* factor 5); *id.* (addressing (e)(2)(C)(i), regarding adequacy of relief, under *Churchill* factor 4); *see also Cottle*, 340 F.R.D. at 376 (noting the overlap in these analyses).  The remaining are addressed below.

**Requirement (e)(2)(C)(ii)** requires the Court to consider the effectiveness of distribution, which concerns both the notice and distribution plan. *Cottle*, 340 F.R.D. at 377. Here, the proposed Notice program is the best available method of providing notice and relief to the Settlement Class.

Plaintiffs propose that the Notice plan adopted and approved by the Court include: (1) direct notice by email or direct mailing for each Settlement Class Member for whom the Parties possess valid email addresses or valid mailing address; (2) Media Notice via online platforms, social media, bus shelters, press releases, outreach to relevant associations, and targeted, data-driven digital tactics (described in detail in Section III.D); and (3) maintaining the public, case-specific website with the same information. Pang Decl. ¶¶ 27, 32-46. This Notice plan is significantly expanded from that approved by the Court for the Lexon and DNIC settlements. The Notice plan includes extensive Media Notice to address the reality that the Parties lack current contact information for the substantial majority of Settlement Class Members and is anticipated to reach approximately 80% of prospective Settlement Class Members. Pang Decl. ¶ 48. *See, e.g.*, *In re Google Referrer Header Priv. Litig.*, No. 5:10-cv-04809-EJD, 2023 WL 6812545, at \*3 (N.D. Cal. Oct. 16, 2023) (approving a media-based publication notice plan). Through the Settlement website maintained by the Settlement Administrator, Settlement Class Members will also have an opportunity to provide their contact information. Pang Decl. ¶¶ 50-51.

The content of the proposed Notice fully complies with due process and Rule 23. *See* Notice. It provides the definition of the Settlement Class, describes the nature of the action including the class claims, describes the terms of the Settlements, explains the procedure for objecting or opting out, describes the proposed plan for distribution, provides contact information for Settlement Class Counsel, provides the address for the Settlement website containing key deadlines and case documents, and instructions for how to access the case docket. Notice ¶¶ 8-10, 12-15, 17, 19. The proposed Notice informs Settlement Class Members how to exercise their rights and make informed decisions regarding the Settlements, including that if they do not opt-out, the judgment will be binding upon them. *Id.* ¶¶ 22, 27. It also informs Settlement Class Members about the payment of attorneys' fees and costs to Settlement Class Counsel. And it provides details regarding the final approval hearing[6] and advises Settlement Class Members to check the Settlement website

---

[6] The proposed Notice includes information regarding the final approval hearing, but it does not provide the date and time of the final approval hearing because the hearing has not been scheduled. The settlement website will be updated to reflect the hearing date when scheduled.

- 28 -
MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

or case docket to confirm the date of the final approval hearing. *Id.* at ¶¶ 31-33. This meets the standards for class notice. *See*, *e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) (stating that a "very general description of the proposed settlement" satisfies standards).

**Requirement (e)(2)(C)(iii)** concerns attorneys' fees, and specifically requires courts to determine whether "the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Cottle*, 340 F.R.D. at 378 (citation omitted).

Here, there is no indication that the Settlements were driven by fees. Settlement Class Counsel will seek an award of no more than one-third of the Total Settlement Amount, which is within the range regularly approved in common fund settlements in this Circuit. *See In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-md-02966-RS, 2025 WL 3006647, at \*3 (N.D. Cal. Oct. 27, 2025) (acknowledging that "other circuits have found that 'fee awards in antitrust cases . . . are almost always one-third' which 'is a strong indication that [one-third] should be considered the 'market rate'" (quoting *In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797, 801 (7th Cir. 2023))); *Karri v. Oclaro, Inc.*, No. 3:18-cv-03435-JD, 2024 WL 5374889, at \*1 (N.D. Cal. July 26, 2024) (approving fee award of one-third); *Aguilar Auto Repair*, 2025 WL 1753509, at \*9-10 (same); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at \*4 (N.D. Cal. Sept. 20, 2018) (same); *Hernandez*, 2021 WL 5053476, at \*6 (same).

Although the Ninth Circuit uses a "25 percent benchmark for fee awards," this is "merely a 'starting point for analysis.'" *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608 JCS, 2023 WL 2699972, at \*14 (N.D. Cal. Mar. 29, 2023) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)), *aff'd sub nom.*, *Senne v. Concepcion*, No. 23-15632, 2023 WL 4824938 (9th Cir. June 28, 2023); *accord In re Hyundai*, 926 F.3d at 570 (explaining that the 25 percent benchmark can be adjusted upward "depending on the circumstances"). The rate selection must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. In determining whether an upward adjustment is warranted, courts consider "the results obtained for the class, including non-monetary benefits of the settlement, and the degree of risk counsel took on in taking on the case." *Senne*, 2023 WL 2699972, at \*14. Here, Settlement Class Counsel achieved excellent results, which include both a Total Settlement Fund of $69,387,877 and meaningful injunctive relief to prevent the alleged antitrust violations going forward. Settlement Class

Counsel also took on a great deal of risk in litigating this action on a contingency basis. *See Medeiros v. HSBC Card Servs., Inc.*, No. CV 15-09093 JVS (AFMx), 2017 WL 11632870, at *11 (C.D. Cal. Oct. 23, 2017) ("Attorneys are entitled to a larger fee award when their compensation is contingent in nature."). An adjustment upward is particularly justified "[i]n complex or lengthy cases," like this one, for which "courts have frequently awarded more than the benchmark of 25 percent and awards of 30 to 33 percent are common in such cases." *Senne*, 2023 WL 2699972, at *14 (compiling cases).

Moreover, Settlement Class Counsel's lodestar exceeds one-third of the Total Settlement Amount, which "strongly suggests the reasonableness of a negotiated fee." *Moreno*, 2021 WL 4133860, at *6 (citation omitted); *see also Taylor v. Shutterfly, Inc.*, No. 5:18-cv-00266-BLF, 2021 WL 5810294, at *9 (N.D. Cal. Dec. 7, 2021) ("The fact that Plaintiff's counsel are seeking substantially less in fees than they reasonably incurred further demonstrates the reasonableness of the fee award."); *Young v. Polo Retail, LLC*, No. C 02 4546 VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("This so-called negative multiplier suggests that, despite exceeding the 25% benchmark used by some courts, the fees sought here are reasonable based on the time and effort expended by plaintiff's counsel." (compiling cases)). Thus, the circumstances of this litigation support a fee award of up to one-third the Total Settlement Fund.

**Requirement (e)(2)(C)(iv)** is satisfied, there is no agreement between Plaintiffs and the Settling Defendants other than the Agreements attached hereto.[7] Harvey Decl. ¶ 22.

**Requirement (e)(2)(D)** is satisfied because the Agreements treat all Settlement Class Members equitably. Specifically, distributions form the Total Settlement Amount will be made to Participating Settlement Class Members according to their share of estimated damages, to a cap of three times their estimated damages. Accredited SA ¶ 61(c); ACIC SA ¶ 61(c); ASC SA ¶ 66(c); Bankers SA ¶ 67(c); C&F SA ¶ 64(c); Seaview SA ¶ 65(c); Sun Surety SA ¶ 64(c); Universal SA ¶ 64(c); Williamsburg SA ¶ 62(c); *see,*

---

[7] The ASC Settlement Agreement and C&F Settlement Agreement each incorporate a Supplemental Agreement that provides termination rights if the portion of Settlement Class Members who submit timely and valid requests for exclusion exceeds a particular threshold of the Settlement Class, as calculated by the Settlement Administrator. At the time of execution, Plaintiffs and each of ASC and C&F agreed to keep those Supplemental Agreements confidential and file them under seal. *See* Harvey Decl. Ex. 3 at 36 (ASC Supplemental Agreement); Ex. 5 at 31 (C&F Supplemental Agreement). However, since that time, ASC and C&F have each consented to Plaintiffs filing the respective agreements on the public docket. Harvey Decl. ¶ 22.

MPA ISO PLTFS' MOTION FOR PRELIM. APPROVAL OF SETTLEMENTS 4:19-CV-00717-JST

*e.g.*, *Cottle*, 340 F.R.D. at 378 (approving settlement where distribution plan provided "equal access to the Settlement Fund for all Class Members who submit Approved Claims").

### 3.   The Northern District Guidance Supports Approval

**Guidance 1.1—Class Definition.**  The Settlement Class definition is substantially the same as that proposed in the TCAC (ECF No. 269), motion for class certification (ECF No. 513), and the Lexon and DNIC settlements previously approved by the Court (ECF Nos. 512, 568).  The only difference concerns the end date of the Class Period.  All start the Class Period on February 24, 2004, and the respective end dates are as follows: "the present" in the TCAC (¶ 38); August 14, 2023 in the motion for class certification (ECF No. 514-2 at 1); April 25, 2024 in the Lexon and DNIC settlements (ECF No. 465-1 ¶ 21; ECF No. 465-2 ¶ 21); and March 18, 2026 for the Settlement Class that is the subject of this motion (Accredited SA ¶ 28; ACIC SA ¶ 28; ASC SA ¶ 29; Bankers SA ¶ 29; C&F SA ¶ 29; Seaview SA ¶ 29; Sun Surety SA ¶ 28; Universal SA ¶ 28; Williamsburg SA ¶ 28).  Harvey Decl. ¶ 27.

**Guidance 1.2—Released Claims.**  The Settlement Agreements define the "Released Claims" to include all claims, demands, judgments, actions, suits, causes of action, or other obligations, known or unknown, asserted or unasserted, regardless of legal theory, arising in any way from or in any way related to the facts, activities, or circumstances alleged in the complaints in the Action, up to the Effective Date. Accredited SA ¶ 40; ACIC SA ¶ 40; ASC SA ¶ 42; Bankers SA ¶ 43; C&F SA ¶ 41; Seaview SA ¶ 42; Sun Surety SA ¶ 41; Universal SA ¶ 41; Williamsburg SA ¶ 41.  This is consistent with the scope of releases permitted in the Ninth Circuit. *In re Anthem*, 327 F.R.D. at 327.  Courts in this District regularly approve releases similar to the ones here, *see id.* (collecting cases), and is consistent with the releases this Court previously approved in connection with the Lexon and DNIC settlements, *see* ECF No. 465-2 ¶¶ 31-34; ECF No. 465-3 ¶¶ 32-35.

**Guidance 1.3—Value.**  This Guidance is addressed in connection with *Churchill* Factor 4.

**Guidance 1.4—Other Cases.**  No other cases will be affected by the Settlements.  Harvey Decl. ¶ 22.

**Guidance 1.5—Allocation.**  This Guidance is addressed in connection with Rule 23(e)(2)(C)(ii).

**Guidance 1.6—Claims Rate.**  The Settlement Administrator estimates that the claims rate will exceed 5% of the proposed Settlement Class.  Pang Decl. ¶ 73.  This estimate is rooted in the Settlement Administrator's experience with similar matters, and takes into account the fact that the Parties do not have

contact information for the vast majority of Settlement Class Members. Settlement Class Counsel and the Settlement Administrator will work to maximize claims. *Id*. ¶ 76.

**Guidance 1.7—Reversion.** No portion of Settlement Fund will revert to Settling Defendants unless the Court denies the Settlements or any Settlement is terminated. Accredited SA ¶ 37; ACIC SA ¶ 37; ASC SA ¶ 38; Bankers SA ¶ 39; C&F SA ¶ 38; Seaview SA ¶ 38; Sun Surety SA ¶ 38; Universal SA ¶ 38; Williamsburg SA ¶ 38.

**Guidance 2—Administrator.** After a competitive bidding process, Plaintiffs selected, and the Court approved, A.B. Data to administer the Lexon and DNIC settlements. Harvey Decl. ¶ 38; ECF Nos. 512, 568; *see* ECF No. 465 at 23-24 (detailing the bidding process). The Parties request that the Court again appoint A.B. Data as Settlement Administrator. A.B. Data is an experienced and reputable class action administrator. Harvey Decl. ¶ 37. The accompanying Pang Declaration sets forth A.B. Data's procedures for securely handling Settlement Class Member data (including technical, administrative, and physical controls; retention; destruction; audits; and crisis response), as well as confirmation of A.B. Data's acceptance of responsibility for and maintenance of insurance in case of errors. Pang Decl. ¶¶ 5-8 & Ex. B.

In the past two years, Settlement Class Counsel has worked with A.B. Data in the following four cases: *In re Papa John's Employee and Franchisee Employee Antitrust Litigation*, No. 3:18-cv-00825-BJB-RSE (W.D. Ky.); *In re Restasis Antitrust Litigation*, No. 1:18-md-02819-NG-LB (E.D.N.Y.); *In re National Prescription Opiate Litigation*, No. CIV-18-994-G (W.D. Okla.); and *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, No. 3:21-md-02996-CRB (N.D. Cal.). Harvey Decl. ¶ 39.

The administrative costs for A.B. Data's services, aside from the CAFA Notice, as explained below, will be paid out of the Settlement Fund. Accredited SA ¶ 18; ACIC SA ¶ 18; ASC SA ¶ 18; Bankers SA ¶ 18; C&F SA ¶ 18; Seaview SA ¶ 17; Sun Surety SA ¶ 17; Universal SA ¶ 17; Williamsburg SA ¶ 17. These costs are anticipated to be approximately $730,000, Pang Decl. ¶ 77, comprising approximately 1% of the Settlement Fund, which is far less than commonly accepted in this District. *See*, *e.g.*, *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 3396829, at *1-2 (N.D. Cal. May 26, 2015) (approving $2,400,000 in notice costs from $39,502,000 settlement fund), *aff'd*, 701 F. App'x 554 (9th Cir. 2017); *Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 WL 16823044, at *11 (N.D. Cal. Nov. 8, 2022) (approving $1,211,791.26 in notice costs from $14,000,000 fund); *Dennis v. Kellogg Co.*, No. 09-

3509228.12

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST

cv-1786-L WMC, 2013 WL 6055326, at *8 (S.D. Cal. Nov. 14, 2013) (approving $908,665 in notice costs from $4,000,000 fund). The costs will be split among all Settling Defendants that are the subject of this motion and the obligation for each Settling Defendant's costs will be pro-rated based on the proportion of their contribution to the Total Settlement Fund. Accredited SA ¶ 46; ACIC SA ¶ 46; ASC SA ¶ 49; Bankers SA ¶ 49; C&F SA ¶ 47; Seaview SA ¶ 48; Sun Surety SA ¶ 47; Universal SA ¶ 47; Williamsburg SA ¶ 47.

**Guidance 3—Notice.** This Guidance is addressed in connection with Rule 23(e)(2)(C)(ii).

**Guidance 4 & 5—Opt-Out & Objection.** The proposed Notice includes the following information regarding Settlement Class Members' rights to opt-out and/or object, satisfying Guidance 4 (Opt-Outs) and 5 (Objections): (1) instructions as to how to request exclusion, including the manner for submitting such a request (requiring no extraneous information or hurdles), deadline to do so, and the consequences of doing so; (2) instructions as to how to object to the Settlement, or any aspect thereof, including the deadline for submission; and (3) that the Court can only approve or deny the Settlement and cannot change the terms. Notice at ¶¶ 22, 27, 30.

**Guidance 6—Fees.** This Guidance is addressed in connection with Rule 23 (e)(2)(C)(iii).

**Guidance 7—Service Awards.** The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022) (citation omitted). Plaintiffs anticipate seeking service awards of up to $50,000 each in connection with the Settlements for each Settlement Class Representative. The Court previously approved notice that informed Settlement Class Members that Settlement Class Counsel would ask the Court "for a service award for each of the Settlement Class Representatives for up to $10,000 each in connection with the Settlements" with Lexon and DNIC. ECF No. 465-2 at 27; ECF No. 465-3 at 31. The Settlements that are the subject of this motion provide monetary relief that is approximately 22 times that in the Lexon and DNIC settlements, and Settlement Class Counsel therefore proposes an additional $40,000 Service Award, for a total of $50,000 each.

A service award of $50,000 for each Named Plaintiff is appropriate because of their significant contributions over seven years of litigation. Each searched for and produced documents in response to discovery requests, sat for depositions about traumatic events in their lives, and faithfully followed the many developments in this litigation. Moreover, this case would not exist without the dedication of the two Named

3509228.12

Plaintiffs, who pursued relief on behalf of a Class of millions despite the risks commonly associated with serving as a named representative, like raising concerns of future employers, and, specific to this case, public disclosure about traumatic and stigmatized events. These awards together would account for approximately 0.14% of the Total Settlement Fund ($100,000 of $69,387,877). This request is disclosed in the Notice, Notice ¶ 19, and would be in-line with or less than other awards granted in this District. *See*, *e.g.*, *Bartz et al v. Anthropic PBC*, No. 4:24-cv-05417-AMO (N.D. Cal. 2025), ECF Nos. 427, 437 (granting preliminary approval of settlement) and ECF No. 363-3 ¶ 8.3 ($50,000 service award); *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2021 WL 837626, at *10 (N.D. Cal. Feb. 4, 2021) (Tigar, J.) (noting that the "aggregate proposed incentive award . . . is 0.34% of the Gross Fund"); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *14 (N.D. Cal. June 5, 2017) (granting a $100,000 service award to each of three named plaintiffs from $150 million settlement); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 to named plaintiff).

**Guidance 8—Cy Pres.** As detailed above, after all timely and valid claims are paid, the Settlements provide for redistribution of any funds remaining to Settlement Class Members, up to a cap of three times their damages, until it is economically infeasible to do so. In the event that there remain undistributed funds thereafter, Settlement Class Counsel propose Project Avary, Healing Urban Barrios, and Defy Ventures (NorCal and SoCal) as *cy pres* recipients. *See supra* Section III.E. The proposed *cy pres* recipients serve the interests of the Settlement Class by addressing the needs of Settlement Class Members and their families by supporting children of incarcerated parents, assisting formerly incarcerated individuals with re-entry services, and promoting economic empowerment for those who have experienced incarceration. Settlement Class Counsel is aware of no relationships between these proposed *cy pres* recipients and Plaintiffs, Settling Defendants, or Settlement Class Counsel. Harvey Decl. ¶ 36.

**Guidance 9—Schedule.** The Parties propose the following schedule:

| Event/Deadline | Proposed Time for Compliance |
|---|---|
| Notice Date | 14 days after the Court's entry of the Preliminary Approval Order |
| Motion For Attorneys' Fees, Costs, and Plaintiff Service Awards | 21 days after the Court's entry of the Preliminary Approval Order |
| Objection Deadline | 35 days after the Notice Date |
| Opt-Out Deadline | 35 days after the Notice Date |

| Event/Deadline | Proposed Time for Compliance |
|---|---|
| Motion for Final Approval | 14 days after the Objection and Opt-Out Deadlines |
| Oppositions to Motion for Final Approval | 14 days after Motion for Final Approval |
| Reply in Support of Motion for Final Approval | 7 days after any Opposition to Motion for Final Approval |
| Final Approval Hearing | 28 days after Plaintiffs file Motion for Final Approval (91 days after the Court's entry of the Preliminary Approval Order) |
| Distribution of Net Settlement Fund to Verified Participating Settlement Class Members | 30 days after Effective Date of the Settlements. |
| Post-Distribution Accounting | 21 days after Distribution of Net Settlement Fund. |

**Guidance 10—CAFA Notice.**  Defendant Seaview will serve the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, no later than 10 days after this filing.  Seaview SA ¶ 50(c).  The Settlement Administrator will serve the CAFA notice on behalf of Defendants Accredited, ACIC, ASC, Bankers, C&F, Sun Surety, Universal, and Williamsburg, no later than 10 days after this filing.  Pang Decl. ¶ 9; Accredited SA ¶ 48(c); ACIC SA ¶ 48(c); ASC SA ¶ 51(c); Bankers SA ¶ 51(c); C&F SA ¶ 49(c); Sun Surety SA ¶ 49(c); Universal SA ¶ 49(c); Williamsburg SA ¶ 49(c).

**Guidance 11—Comparable Outcomes.**  Settlement Class Counsel have summarized comparable settlements in a separate chart.  *See* Harvey Decl. Appendix A.

**Guidance 12—Electronic Versions.**  Settlement Class Counsel will e-mail the Microsoft Word version of the proposed order submitted herewith to the Court's proposed order email address, jstpo@cand.uscourts.gov.

**Guidance 13—Overlapping Cases.**  This item is irrelevant as no other cases will be affected by the Settlements.  Harvey Decl. ¶ 22.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court grant this motion, direct notice to the Settlement Class, and schedule the Final Approval Hearing.

3509228.12

Dated:        June 25, 2026                    Respectfully submitted,

*/s/ Dean M. Harvey*

Dean M. Harvey (SBN 250298)
Katherine Lubin Benson (SBN 259826)
Michelle A. Lamy (SBN 308174)
Nicole M. Rubin (SBN 361232)
Emily N. Harwell (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
dharvey@lchb.com
kbenson@lchb.com
mlamy@lchb.com
nrubin@lchb.com
eharwell@lchb.com

*Interim Lead Class Counsel and Proposed Settlement Class Counsel*

3509228.12

MPA ISO PLTFS' MOTION FOR
PRELIM. APPROVAL OF SETTLEMENTS
4:19-CV-00717-JST