# EXHIBIT 1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE CALIFORNIA BAIL BONDS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No.  4:19-CV-00717-JST<br><br>**SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANT ACCREDITED SURETY AND CASUALTY COMPANY, INC.** |

**I.    INTRODUCTION**

This Settlement Agreement is entered into by and between Shonetta Crain and Kira Monterrey (the "Settlement Class Representatives" or "Plaintiffs"), on behalf of themselves and the proposed Settlement Class Members, and Defendant Accredited Surety and Casualty Company, Inc. ("Accredited") (together with Plaintiffs, the "Parties").  This Settlement Agreement is submitted for approval by this Court pursuant to Federal Rule of Civil Procedure 23(e) and is intended by the Parties to fully resolve and release the Released Claims subject to the terms and conditions of this Settlement Agreement.

**II.    PROCEDURAL HISTORY**

On January 29, 2019, the Settlement Class Representatives filed a complaint in Alameda County Superior Court, entitled *Crain et al. v. Accredited Casualty and Surety Company, Inc., et al.* (the "Crain Action").  On February 8, 2019, Steven Breaux filed a complaint in the Northern District of California, entitled *Breaux v. Accredited Casualty and Surety Company, Inc., et al.* (the "Breaux Action").  ECF No. 1. On March 19, 2019, the Court related the Crain Action and the Breaux Action (collectively, the "Related Actions").  ECF No. 14.  On May 1, 2019, the Court consolidated the Related Actions.  ECF No. 29.  On June 3, 2019, the Court appointed Lieff, Cabraser, Heimann & Bernstein LLP ("Lieff Cabraser") as Interim Class Counsel under Federal Rule of Civil Procedure 23(g).  ECF No. 44.

On June 13, 2019, the Settlement Class Representatives filed the Consolidated Amended Class

Action Complaint ("CAC").  ECF No. 46.  On July 15, 2019, certain Defendants filed a motion to dismiss the CAC.  ECF No. 58.  On April 13, 2020, the Court granted in part that motion to dismiss, dismissing the Sherman Act claim regarding the filing of uniform premium rates, and denying the motion to dismiss the Sherman and Cartwright Act claims regarding rebating, the Cartwright Act claim regarding uniform rate filing, and the California Unfair Competition Law claim.  ECF No. 91.

On May 13, 2020, the Settlement Class Representatives filed the Second Consolidated Amended Class Action Complaint ("SCAC").  ECF No. 94.  On June 12, 2020, certain Defendants filed a motion to dismiss the SCAC.  ECF No. 112.  On January 5, 2021, the Court granted in part the motion to dismiss, holding that with respect to certain surety Defendants, the SCAC did not describe their role and participation in the conspiracy "in terms of communications and/or meetings with other defendants[.]"  ECF No. 159 at 20.  The Court also permitted targeted discovery to proceed, "tailored to allow Plaintiffs to gather the facts necessary to correct any perceived deficiencies in the pleading of their complaint."  ECF No. 151.

Following that targeted discovery, on April 11, 2022, the Settlement Class Representatives filed the Third Consolidated Amended Class Action Complaint ("TCAC").  ECF No. 269.  On May 26, 2022, certain Defendants filed a motion to dismiss the TCAC.  ECF No. 284.  On November 7, 2022, the Court denied the motion to dismiss the TCAC.  ECF No. 330.

On April 25, 2024, Plaintiffs moved for preliminary approval of class action settlements with Defendants Lexon Insurance Company ("Lexon") and Danielson National Insurance Company ("DNIC"), which provided for a $3 million non-reversionary Settlement Fund and injunctive relief.  ECF No. 465.  On December 11, 2024, the Court granted preliminary approval of the Lexon and DNIC settlements, provisionally certified the Settlement Class, appointed Lieff Cabraser as Settlement Class Counsel, and approved the proposed Notice procedure. ECF No. 512.  Plaintiffs moved for final approval of the Lexon and DNIC settlements on March 20, 2025.  ECF No. 535.  The Court held a Final Approval Hearing on May 22, 2025, ECF No. 564, and granted final approval of the Lexon and DNIC settlements on June 6, 2025, ECF No. 568.

On December 11, 2024, Plaintiffs moved to certify a Class of "persons who between February 24, 2004, and August 14, 2023 (the 'Class Period'), paid for part or all of a commercial bail bond premium in connection with a California state court criminal proceeding," with certain exceptions.  ECF No. 513.

Defendants opposed the motion on March 26, 2025, and Plaintiffs replied on May 21, 2025.  ECF Nos. 551, 563.  The Parties briefed motions to exclude the opinions of Dr. Hal Singer and Dr. Bruce Strombom, respectively.  ECF Nos. 538, 559.  The Court held a hearing on Plaintiffs' Motion for Class Certification and the Parties' respective Motions to Exclude on December 17, 2025.  ECF No. 644.

On June 4, 2025, the Parties engaged in a mediation session with mediator Michelle Yoshida of Phillips ADR.  Following that mediation, with the assistance of Ms. Yoshida, the Parties have engaged in vigorous settlement negotiations that ultimately resulted in the Parties executing a term sheet on November 12, 2025, memorializing their agreement-in-principle to settle the Action as between Plaintiffs and Accredited.

The term sheet set forth, among other things, the Parties' agreement to settle and release all claims against Accredited in return for a cash payment of Nine Million Four Hundred Thirty-Seven Thousand and Five Hundred U.S. Dollars ($9,437,500.00) for the benefit of Participating Settlement Class Members and for certain Injunctive Relief defined below (¶ 39 (Injunctive Relief)).  On November 12, 2025, the Parties informed the Court that they had reached agreement on settlement terms and requested that all litigation proceedings and deadlines with respect to Accredited be stayed, pending the drafting and execution of a full settlement agreement and a motion for preliminary approval. ECF No. 616.

## III.   DEFINITIONS

In addition to terms defined elsewhere in this Settlement Agreement, the terms below shall have the following meanings wherever used in this Settlement Agreement:

1.      "Action" or "Litigation" means *In re California Bail Bond Antitrust Litigation,* No. 19-cv-00717-JST (N.D. Cal.) and all cases consolidated and/or related thereto.

2.      "Affiliates" means entities controlling, controlled by, or under common control with a Releasee or Releasor.

3.      "Accredited" means Accredited Surety and Casualty Company, Inc. and its former, present, and future parents, affiliates, and subsidiaries; the predecessors, successors, and assigns of each; and each and all of the current and former principals, officers, directors, trustees, partners, employees, representatives, agents, attorneys, all Persons who have or have had an ownership interest in, and insurers of

- 3 -

each of the foregoing.  For avoidance of doubt, "Accredited" includes Deborah Snow, Sharon Jallad, and Maggie Kreins.

4.       "*Cy Pres* Recipient" means an organization selected by Settlement Class Counsel, with approval from Accredited, and approved by the Court to receive *cy pres* funds from non-distributable residual funds in the Escrow Account, as defined herein.

5.       "Distribution Plan" means the plan of allocation of the Net Settlement Fund, to be approved by the Court, whereby the Net Settlement Fund shall be distributed to Participating Settlement Class Members and any *Cy Pres* Recipient.

6.       "Effective Date" with respect to the Settlement Agreement means the first date after which each of the following events and conditions have been met or have occurred or have been waived (as applicable): (a) the Court has entered the Preliminary Approval Order; (b) the Court has entered the Final Approval Order; and (c) the time for appeal from the Court's approval of this Settlement Agreement has expired; or, if an appeal has been filed, either all such appeals shall have been dismissed prior to resolution by the appellate court, or approval of this Settlement Agreement has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.

7.       "Escrow Account" means the separate, interest-bearing escrow account to be established by the Settlement Administrator at Citibank, N.A. under terms agreed upon with Settlement Class Counsel, wherein Accredited shall deposit the Settlement Amount.

8.       "Escrow Agent" means Citibank, N.A.

9.       "Execution Date" means the date all Parties execute this Settlement Agreement.

10.      "Final" means, when used to describe the status of any order of a court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this Agreement, an

- 4 -

"appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.

11.    "Final Approval Hearing" means the hearing before the Court to address final approval of, or any other rulings contemplated by, this Settlement Agreement.

12.    "Final Approval Order" means an order of the Court granting final approval of the Settlement Agreement on the terms substantially set forth in this Settlement Agreement.

13.    "Gross Settlement Fund" means the Settlement Amount plus any interest that may accrue.

14.    "Judgment" means the order of judgment and dismissal of the Action against Accredited with prejudice.

15.    "Net Settlement Fund" means the Settlement Fund less:  (i) court-awarded Service Awards; (ii) court-awarded Settlement Class Counsel Attorneys' Fees and Litigation Expenses; and (iii) the Settlement Administrator's court-awarded reasonable fees and expenses.

16.    "Non-Settling Defendants" shall refer to Defendants in the Action other than Accredited Surety and Casualty Company, Inc.; American Contractors Indemnity Company; American Surety Company; Indiana Lumbermens Mutual Insurance Company; William B. Carmichael; Bankers Insurance Company; United States Fire Insurance Company; The North River Insurance Company; Seneca Insurance Company, Inc.; Danielson National Insurance Company; Lexon Insurance Company; Seaview Insurance Company; Sun Surety Insurance Company; Universal Fire & Casualty Insurance Company; and Williamsburg National Insurance Company.

17.    "Notice" means the Notice of Settlement of Class Action to be sent to Settlement Class Members in a form subject to the Court's approval.

18.    "Notice and Administrative Costs" means approximately Seven Hundred Thirty Thousand U.S. Dollars ($730,000.00) to be paid out of the Gross Settlement Fund to pay for notice to the Settlement Class and related administrative costs.

19.    "Participating Settlement Class Member" means a Settlement Class Member who has not submitted a timely and valid Opt-Out Statement that is accepted by the Court.

20.    "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company,

estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, and any business or legal entity, and any spouses, heirs, predecessors, successors, representatives, or assignees of any of the foregoing.

21.    "Preliminary Approval Order" means an order of the Court preliminarily approving the terms and conditions of this Settlement Agreement, providing for the form, manner, and timing of the Notice, and providing for deadlines and the manner of, requests for exclusion or opt-out from the Settlement and objections to the Settlement.

22.    "Proof of Claim and Release" means the form to be provided to the Settlement Class, upon further order(s) of the Court, by which Participating Settlement Class Members may make claims against the Gross Settlement Fund.

23.    "Releasees" means Accredited and its former, present, and future direct and indirect parents, subsidiaries, and affiliates, and their former, present, and future officers, directors, employees, managers, members, partners, agents, shareholders (in their capacity as shareholders), attorneys, and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

24.    "Releasor" means the Settlement Class Representatives and each Participating Settlement Class Member; each of their respective former, present, and future heirs, executors, administrators, and assigns; and anyone claiming by or through any of the foregoing.

25.    "Service Award" means an additional amount, subject to Court approval, to be paid to each Settlement Class Representative for their service to the Settlement Class.

26.    "Settlement Administrator" means the administrator(s) selected by Settlement Class Counsel, in their sole discretion, subject to Court approval, to administer the Settlement and distribute the Net Settlement Fund pursuant to the terms of this Agreement and orders of the Court.

27.    "Settlement Amount" means Nine Million Four Hundred Thirty-Seven Thousand and Five Hundred U.S. Dollars ($9,437,500.00) to be paid into the Escrow Account.

28.    "Settlement Class" means all Persons who, between February 24, 2004 and March 18, 2026 (the "Settlement Class Period"), paid for part or all of a commercial bail bond premium in connection with a California state court criminal proceeding (each a "Settlement Class Member").  Specifically excluded from

this Settlement Class are Defendants in the Action; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir or assign of any Defendant and any Person acting on their behalf; any Person who acted as a bail agent during the Settlement Class Period; any judicial officer presiding over this Action and the members of their immediate family and judicial staff; and any juror assigned to this Action.

29.     "Settlement Class Counsel" means Interim Class Counsel, as previously designated by the Court under Federal Rule of Civil Procedure 23(g).  ECF No. 44.

30.     "Settlement Class Counsel Attorneys' Fees and Litigation Expenses" means the amounts approved by the Court for payment to Settlement Class Counsel to compensate them for, respectively, attorneys' fees and litigation expenses incurred in connection with the Action, including their pre-filing investigation, their filing and prosecution of the Action, and the negotiation, execution, and administration of this Settlement Agreement.

31.     "Settlement Class Representatives" or "Plaintiffs" means Shonetta Crain and Kira Monterrey.

32.     "Settling Defendants" shall refer to Accredited Surety and Casualty Company, Inc.; American Contractors Indemnity Company; American Surety Company; Indiana Lumbermens Mutual Insurance Company; William B. Carmichael; Bankers Insurance Company; United States Fire Insurance Company; The North River Insurance Company; Seneca Insurance Company, Inc.; Danielson National Insurance Company; Lexon Insurance Company; Seaview Insurance Company; Sun Surety Insurance Company; Universal Fire & Casualty Insurance Company; and Williamsburg National Insurance Company.

33.     "Settling Parties" means, collectively, Accredited and the Plaintiffs (on behalf of themselves and the Settlement Class).

34.     "Total Settlement Amount" or "Total Settlement Fund" means the Settlement Amount plus additional settlements with other Defendants that have been approved and/or will be part of the same approval process.

35.     "Unknown Claims" means any Released Claim that a Plaintiff and/or Participating Settlement Class Member and/or Releasee does not know or suspect to exist in their favor at the time of the release and of the Releasees that if known by them might have affected their settlement with and release of

- 7 -

the Releasees, or might have affected their decision not to object to this Settlement.  Such Unknown Claims include claims that are the subject of California Civil Code § 1542 and equivalent, similar, or comparable laws or principles of law.  California Civil Code § 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**IV.    CONSIDERATION**

36.    In consideration for the Release, Accredited shall provide the following benefits to Settlement Class Members.

37.    <u>Monetary Relief.</u>  Accredited agrees to pay and shall deposit in the Escrow Account the total amount of Nine Million Four Hundred Thirty-Seven Thousand Five Hundred U.S. Dollars ($9,437,500.00) as a non-reversionary cash Settlement Amount.  The Settlement Amount reflects Accredited's total obligation to the Settlement Class in connection with the Litigation under this Settlement Agreement.  For the avoidance of doubt, the Settlement Amount is in full and complete satisfaction of any and all obligations under this Settlement Agreement, including but not limited to Accredited's obligation for: (i) all claims by Settlement Class Members; (ii) all fees and costs of Settlement Class Counsel; (iii) any Service Award to the named Plaintiffs; and (iv) all costs of Notice and Administration and Taxes.  Under no circumstances shall Accredited be required to pay more than the Settlement Amount with respect to any liability arising out of the Litigation and/or Settlement.  The Settlement Payment is non-reversionary to Accredited except in the event that the Settlement is not approved by the Court or on appeal pursuant to ¶¶ 72 (Failure of Effective Date to Occur) and 73 (Failure to Order Notice).

38.    <u>Tax Treatment.</u>  The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and shall be administered by the Settlement Administrator under the Court's supervision.  Accredited shall timely furnish statements to the Settlement Administrator that comply with Treasury Regulation § 1.468B-3(e) and shall attach a copy of the statements to their federal income tax return that are filed for the taxable year in which Accredited makes the required payments to the Gross

Settlement Fund.  The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

39.    Injunctive Relief.  Accredited does not presently operate as a bail bond surety in California and has not engaged in the bail business in California since 2019.  If Accredited operates as a bail surety in California in the five (5) years following the Execution Date, within that five (5) year period Accredited agrees to the following injunctive relief:

a.    Except for legislative advocacy, Accredited will not coordinate with competitors regarding any aspect of bail bond prices in California, including premium rates to be submitted to the California Department of Insurance, premium rates to be charged to customers, or rebating practices by bail bond agents; and

b.    Absent a change in the law regarding the legality of discounting or rebating, Accredited will include a provision in its contracts with its agents in California to state the following to potential customers:  "A bail agent may choose to negotiate a lower fee by rebating, as allowed by Proposition 103."  Accredited will also include a provision in its contracts with its agents in California that, if the agent communicates to potential customers that the agent must charge filed rates, then that agent must communicate the same statement ("A bail agent may choose to negotiate a lower fee by rebating, as allowed by Proposition 103") with equal prominence and visibility.

**V.    RELEASE**

40.    Upon the Effective Date, each Releasor shall be deemed to have fully, finally, and forever released with prejudice, acquitted, forever discharged and covenanted not to sue Accredited from all claims, demands, judgments, actions, suits, and/or causes of action, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, arising in any way from or in any way related to the facts, activities, or circumstances alleged in the complaints in the Litigation and/or in arguments, filings or submissions made in the Litigation, up to the Effective Date of this Settlement Agreement (the "Release" or "Released Claims").  This Settlement Agreement shall be the sole and exclusive remedy for any and all Released Claims against Accredited.

41.     Nothing herein shall be a bar to a claim, complaint, action, or proceeding for breach of this Settlement Agreement.

42.     The Releasors acknowledge that they have consulted with legal counsel and are familiar with the provisions of California Civil Code Section 1542, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

43.     The Releasors, being aware of California Civil Code Section 1542, expressly waive any rights they may have under that statute as well as under any other statute or common law principles of similar effect with respect to the Released Claims.  The Releasors acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but that it is their legally binding intention to finally and forever settle and release the Released Claims, including Unknown Claims arising in any way from or in any way related to the facts, activities, or circumstances alleged in the complaints in the Litigation, up to the Effective Date.

## VI.     APPROVAL, NOTICE, AND DISTRIBUTION PROCEDURES

44.     <u>Jurisdiction and Venue.</u>  The Parties agree that the Court has jurisdiction over the Parties and the subject matter of this Action and that venue is proper.  The administration and consummation of the Settlement Agreement shall be under the authority of the Court, and the Court shall retain exclusive jurisdiction for the purpose of entering orders relating to the Settlement Agreement and enforcing the terms of the Settlement Agreement.

45.     <u>Motion for Preliminary Approval.</u>  The Settlement Class Representatives shall submit to the Court a motion seeking preliminary approval of the Settlement that will include this Agreement (the "Preliminary Approval Motion").  The Settlement Class Representatives shall request, among other things, that the Court: (1) find the proposed form of and method for dissemination of the Notice valid, due, and sufficient notice that constitutes the best notice practicable under the circumstances, and fully compliant with the requirements of Federal Rule of Civil Procedure 23; (2) approve distribution of the Notice

according to the Notice Plan; (3) set a Final Approval Hearing; and (4) set deadlines for Settlement Class Members to submit Opt-Out Statements or Notices of Objection, as provided in the Notice.

46.   Settlement Funding.  Within ten (10) business days after the Preliminary Approval Order, Accredited shall remit or cause to be remitted to the Settlement Administrator an amount sufficient to cover the anticipated cost of Notice, as set forth in the Settlement Administrator declaration.  To the extent that the Preliminary Approval Order also pertains to settlements with additional Defendants, Accredited's obligation to provide funds to cover the cost of Notice shall be pro-rated based upon each such Defendant's proportion of the Total Settlement Fund as of the date of the Preliminary Approval Order.  Based on the Settlements that have been reached in the Litigation as of the Execution Date, Accredited's estimated share is calculated to be approximately Ninety-Nine Thousand Four Hundred Twenty-Four U.S. Dollars and Forty-Three Cents ($99,424.43), based on the Total Settlement Fund of Sixty Nine Million Two Hundred Ninety-Two Thousand Five Hundred Seventy Four U.S. Dollars ($69,292,574.00).  This estimated cost of Notice is subject to decreasing if additional Settlements are reached in the Litigation.  Accredited's contribution shall be an offset against the Settlement Amount.  No later than thirty (30) calendar days after entry of the Court's Final Approval Order, Accredited shall pay (or shall cause to be paid) the remainder of the Settlement Amount, presently calculated to be approximately Nine Million Three Hundred Thirty-Eight Thousand Seventy-Five U.S. Dollars and Fifty-Seven Cents ($9,338,075.57) as of the Execution Date, into the Gross Settlement Fund.

47.   Settlement Administrator.  The Settlement Administrator shall be responsible for the claims administration process including distribution of Notice, receipt of Opt-Out Statements or Notices of Objection, and eventual distribution of the Net Settlement Fund to Settlement Class Members pursuant to a Court-approved Distribution Plan.  Any fees and expenses of the Settlement Administrator shall be paid exclusively from the Gross Settlement Fund.  In no event shall Accredited be separately responsible for any fees or expenses of the Settlement Administrator.  For the avoidance of doubt, the Settlement Administrator, and not Accredited, shall be responsible to handle all regulatory obligations associated with the payments to Participating Settlement Class Members.

48.   Notice and Notice Plan.  The Parties agree to provide Notice of this Settlement to Settlement Class Members.

a.  Settlement Class Counsel shall move for entry of an order directing notice to the Class ("Notice Order").  Settlement Class Counsel shall also submit to the Court for approval a proposed form of, method for, and schedule for dissemination of notice to the Settlement Class.  The Preliminary Approval Motion shall recite and ask the Court to find that the proposed form of and method for dissemination of Notice to the Settlement Class constitutes valid, due and sufficient Notice to the Settlement Class, constitutes the best Notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

b.  Settlement Class Counsel shall provide Accredited with a draft proposed Notice Order (including the proposed form of Notice, the proposed Proof of Claim, and proposed Release) at least three (3) court days in advance of filing and shall consider in good faith any concerns or suggestions expressed by Accredited.  Settlement Class Counsel shall provide Accredited with a draft of the Preliminary Approval Motion, together with any accompanying memorandum, three (3) court days in advance of filing and shall consider in good faith any concerns or suggestions expressed by Accredited.

c.  The Settlement Administrator will provide all notices required by the Class Action Fairness Act of 2005 ("CAFA Notices") to state attorneys general or to the United States of America.  Settlement Class Counsel shall provide Accredited with a draft proposed CAFA Notice at least three (3) business days in advance of sending and shall obtain prior consent from Accredited regarding the content of the notice.  The Settlement Administrator shall serve CAFA Notices within ten (10) calendar days after the Preliminary Approval Motion is filed.  Settling Defendants who opt-in to the Settlement Administrator providing CAFA Notice shall split the overall cost ($2,750) equally among them.

49.  The Settlement Administrator shall be responsible for disseminating the Notice to Settlement Class Members (the "Notice Plan").  Within thirty (30) days after the Settlement is preliminarily approved (the "Notice Date"), the Settlement Administrator will commence the Notice Plan.  Notice will include

- 12 -

direct Notice by email for all Participating Settlement Class Members for whom the Settlement Administrator possesses valid email addresses.  The Settlement Administrator will also host an automated telephone and email contact center to address questions from prospective Settlement Class Members and others.  The Settlement Administrator will also do a direct mailing of 4.25" x 6" postcards to be approved by the Court (the "Notice Postcards").  Notice Postcards will be mailed to all Settlement Class Members for whom the Settlement Administrator possessed valid mailing addresses.  Before the initial mailing of the Notice Postcards, the Settlement Administrator will run the addresses of all known intended recipients through the United States Postal Service ("USPS") National Change of Address ("NCOA") database.  Notice Postcards that are returned Undeliverable as Addressed ("UAA") with forwarding addresses provided by USPS will be processed, updated in a case-specific database, and re-mailed.  For Notice Postcards returned UAA by USPS without any forwarding addresses, the Settlement Administrator will attempt to obtain updated addresses using proprietary database resources to which it subscribes and, in instances where updated addresses are found, re-mail the Notice Postcards.  The Settlement Administrator will also update the existing case-specific website through which prospective Settlement Class Members and others can obtain information about the Action, view relevant Court documents, register their contact information to receive future updates and notifications, and submit claims online.  Accredited shall have the right to review the content of the website at least three (3) court days before the Motion for Preliminary Approval is filed. The website will be similar in nature and content as currently exists.  Because the Parties do not have contact information for the substantial majority of the Settlement Class Members, a robust media program will be implemented ("Media Notice").  Finally, as set forth below, the Settlement Administrator will receive and process any Opt-Out Statements or Notices of Objection, and will promptly inform the Parties of all that are received.

50.    Any material deviation from the Notice Plan must be approved by the Parties and the Court. All costs associated with the Notice and Notice Plan, including the fees and costs of the Settlement Administrator, shall be paid from the Gross Settlement Fund.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.

51. Notices of Objection. Any Settlement Class Member who wishes to object to the Settlement at the Final Approval Hearing must submit to the Settlement Administrator a written statement setting out the basis for the objection, with any supporting facts or law ("Notice of Objection"). To be valid, the Notice of Objection must contain the full name, address, and telephone number of the Settlement Class Member. To be timely, the Notice of Objection must be received by the Settlement Administrator no later than forty-five (45) calendar days after the Notice Date (the "Objection and Opt-Out Deadline"). Any Settlement Class Member who fails to submit a timely and valid Notice of Objection in the manner specified herein shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement (whether by appeal or otherwise). Any objecting Settlement Class Member may withdraw his/her/their Notice of Objection at any time.

52. The Settlement Administrator shall stamp any Notice of Objection with the date it was received, and shall send copies of each Notice of Objection to Settlement Class Counsel and Accredited's Counsel by email not later than two (2) business days after receipt thereof. The Settlement Administrator shall retain the stamped originals of all Notices of Objection until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

53. Requests for Exclusion (Opt-Outs). A Settlement Class Member may request exclusion from the Settlement by submitting to the Settlement Administrator a written statement to that effect ("Opt-Out Statement"). To be valid, the Opt-Out Statement must contain the full name, address, and telephone number of the Settlement Class Member who seeks to opt out. To be timely, the Opt-Out Statement must be received by the Objection and Opt-Out Deadline. No request for exclusion may be made on behalf of a group of Settlement Class Members.

54. The Settlement Administrator shall stamp on any original Opt-Out Statement that it receives the date it was received, and shall serve copies of each Opt-Out Statement on Settlement Class Counsel and Accredited's Counsel by email no later than two (2) business days after receipt thereof. The Settlement Administrator shall retain the stamped originals of all Opt-Out Statements until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

55. Within five (5) calendar days after the Objection and Opt-Out Deadline, the Settlement Administrator shall send to Settlement Class Counsel and Accredited's Counsel a final list of all Notices of

- 14 -

Objection and Opt-Out Statements received by the Settlement Administrator.  The Settlement Administrator shall promptly advise Settlement Class Counsel and Accredited's Counsel of any Notices of Objection or Opt-Out Statements that are not timely received.

56.     At least ten (10) court days prior to the Final Approval Hearing, the Settlement Administrator will provide to Settlement Class Counsel and Accredited's Counsel a signed and notarized declaration: (i) describing the Settlement Administrator's diligent efforts to provide the Notice to Settlement Class Members; (ii) identifying the number of Notices of Objection and of Opt-Out Statements received by the Settlement Administrator; and (iii) attaching true and correct copies of all such Notices of Objection and Opt-Out Statements.  Settlement Class Counsel will file the declaration with the Court at least seven (7) calendar days prior to the Final Approval Hearing.

57.     <u>Motion for Final Approval and Entry of Final Judgment.</u>  If the Preliminary Approval Motion is granted, the Settlement Class Representatives shall file a motion seeking final approval of the Settlement at least twenty-one (21) calendar days before the date set for the Final Approval Hearing (the "Final Approval Motion").  Settlement Class Counsel shall provide Accredited with a draft of the Final Approval Motion, together with any accompanying memorandum, seven (7) court days in advance of filing and shall consider in good faith any concerns or suggestions expressed by Accredited. The Final Approval Motion shall seek entry of a Final Approval Order:

    a.     Certifying the Settlement Class, as defined in this Settlement Agreement, pursuant to Federal Rule of Civil Procedure 23, solely for the purposes of this Settlement and other settlements that are submitted for approval at the same time;

    b.     Fully and finally approving the Settlement Agreement and its terms as being fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation pursuant to its terms and conditions;

    c.     Finding that the Notice given to the Settlement Class Members constituted the best notice practicable under the circumstances and complied in all respects with the requirements of Federal Rule of Civil Procedure 23 and due process;

   d.    Directing that the Action be dismissed with prejudice as to Accredited (including Plaintiffs' agreement not to challenge that dismissal with prejudice on appeal or in a collateral action) and, except as provided for herein, without costs;

   e.    Discharging and releasing the Released Parties pursuant to the Release;

   f.    Reserving continuing and exclusive jurisdiction over the Settlement Agreement, including all future proceedings concerning the administration, consummation, and enforcement of the Settlement Agreement;

   g.    Determining pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of a final Judgment as to Accredited; and

   h.    Containing such other and further provisions consistent with the terms of this Settlement Agreement to which the Parties expressly consent in writing.

58.    The Settlement Class Representatives may file a reply brief at least seven (7) calendar days prior to the date set for the Final Approval Hearing in further support of Final Approval of the Settlement and in response to any Notices of Objection submitted by Settlement Class Members.

59.    For the avoidance of doubt, the limited Settlement Class certification described in ¶ 57(a) (Motion for Final Approval and Entry of Final Judgment) shall be for settlement purposes only.  In the event the Court does not grant Final Approval of this Settlement, neither this Settlement nor anything related to this Settlement shall be used as grounds for establishing that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) have been satisfied.

60.    Distribution of Gross Settlement Fund.  After all claims are received and upon further orders of the Court, the Settlement Administrator, subject to such supervision and direction of the Court and/or Settlement Class Counsel as may be necessary or as circumstances may require, shall administer the claims submitted by members of the Settlement Class and shall oversee distribution of the Gross Settlement Fund, including distribution of the Net Settlement Fund to Participating Settlement Class Members pursuant to the Distribution Plan.  Subject to the terms of this Agreement and any Order(s) of the Court, upon the Effective Date the Gross Settlement Fund shall be applied as follows:

   a.    To pay all costs and expenses reasonably and actually incurred in providing Notice to the Settlement Class, or in soliciting claims and assisting with the filing and

processing of claims, in connection with administering and distributing the Settlement Fund;

b.   To pay any Settlement Class Counsel Attorneys' Fees and Litigation Expenses, subject to Court approval and in accordance with this Settlement Agreement;

c.   To pay any Service Award, subject to Court approval and in accordance with this Settlement Agreement; and

d.   To distribute the balance of the Settlement Fund to Participating Settlement Class Members, as per the Distribution Plan or other order of the Court.

61.   Distribution of Net Settlement Fund.   Upon the Effective Date and thereafter, and in accordance with the terms of this Agreement, the Distribution Plan and such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Participating Settlement Class Members, subject to and in accordance with the following:

a.   Individuals will self-identify as Participating Settlement Class Members;

b.   The Settlement Administrator will verify self-identifying Participating Settlement Class Members, including, when possible, using transactional data already provided by Accredited and (as relevant) other Defendants in this Action; and

c.   After all timely claims have been processed, verified Participating Settlement Class Members will be awarded a share of the Net Settlement Fund in proportion to their share of verified Participating Settlement Class Member alleged damages to a cap of three (3) times the amount of estimated damages, which are calculated as set forth below.   The Settlement Administrator shall calculate the alleged damages for each verified Participating Settlement Class Member by subtracting the estimated but-for premium charged from the estimated actual premium charged, as follows:

i.   The Settlement Administrator shall provide each verified Participating Settlement Class Member an opportunity to provide documentary evidence showing the actual premium charged at the point of sale.   The Settlement Administrator shall take steps to verify such evidence by comparing it with Defendants' transaction data.

- 17 -

ii.    For verified Participating Class Members who do not provide verified documentary evidence regarding the actual premium charged at the point of sale, the Settlement Administrator will estimate the actual premium charged by reducing the premium rate from Defendants' transaction data by an estimated rebate of 1.5% (as calculated by Dr. Singer in Exhibit 23 of his Reply Report).  For example, if a verified Participating Settlement Class Member does not provide verified documentary evidence regarding the actual premium charged at the point of sale, and Defendants' transaction data shows a bail amount of $10,000 and premium rate of 10%, the Settlement Administrator will calculate that verified Participating Settlement Class Members' actual premium charged by subtracting 1.5% from the premium rate, for a total actual premium charged of 8.5%, and apply 8.5% to the bail amount of $10,000 recorded in Defendants' transaction data.  In this example, the Settlement Administrator would estimate the actual premium charged to be $850.

iii.    The Settlement Administrator shall calculate each verified Participating Class Member's but-for premium charged by multiplying the bail amount recorded in Defendants' transaction data by the but-for effective rate of 6.05% (as calculated by Dr. Singer in Exhibit 26 of his Reply Report).  For example, if Defendants' transaction data shows a bail amount of $10,000 for a verified Participating Settlement Class Member, the Settlement Administrator would estimate the but-for premium charged to be $605.

iv.    The Settlement Administrator shall then calculate estimated damages for each verified Participating Settlement Class Member by subtracting the estimated but-for premium charged from the actual premium charged.  In the above example, the estimated damages for the verified Participating Settlement Class Member would be $850 - $605 = $245

- 18 -

d.   If the Net Settlement Fund exceeds three (3) times estimated damages of verified Participating Class Members, the excess amount shall be provided to *Cy Pres* Recipients, subject to Court approval.

e.   All Settlement Class Members shall be subject to and bound by the provisions of this Agreement, the Releases contained herein, and the Judgment with respect to all Released Claims, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Gross Settlement Fund or the Net Settlement Fund.

62.   No Liability for Distribution of Settlement Fund.  Neither the Parties nor their counsel shall have any responsibility for, interest in or liability whatsoever with respect to distribution of the Settlement Fund; the Distribution Plan; the determination, administration, or calculation of claims; the Settlement Fund's qualification as a "Qualified Settlement Fund"; the payment or withholding of Taxes or Tax Expenses; or any losses incurred in connection with any such matters.  Likewise, no Person shall have any claim against Settlement Class Counsel, Accredited's Counsel, Accredited, or the Settlement Administrator based on the distributions made substantially in accordance with the Settlement contained herein, the Distribution Plan, or further orders of the Court.

63.   Balance Remaining in Settlement Fund.  If verified Participating Settlement Class Members do not cash checks sent to them, the Settlement Administrator will provide repeated reminders to those Participating Settlement Class Members and make other reasonable efforts to ensure Participating Settlement Class Members cash checks sent to them.  If, following those efforts, there remain uncashed checks, the Settlement Administrator shall redistribute the unclaimed funds among verified Participating Settlement Class Members in proportion to their share of the alleged damages to a cap of three (3) times the amount of estimated damages, calculated in accordance with ¶ 61 (Distribution of Net Settlement Fund), until the costs of redistribution exceed the remaining funds.  The excess amount shall be provided to the *Cy Pres* Recipients, subject to Court approval.

64.   Distribution Plan Not Part of Settlement.  It is understood and agreed by the Settling Parties that any Distribution Plan, including any adjustments to any Participating Settlement Class Member's claim,

is not a part of this Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Agreement, and any order or proceedings solely relating to the Distribution Plan shall not operate to terminate or cancel this Agreement or affect the finality of the Judgment, the Final Approval Order, or any other orders entered pursuant to this Agreement.

**VII.    ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

65.    Fee and Expense Application.  Settlement Class Counsel shall, at a time approved by the Court, petition the Court for an award of Settlement Class Counsel Attorneys' Fees in a total amount not to exceed one-third of the Total Settlement Amount, and for an award of Settlement Class Counsel Litigation Expenses reflecting their unreimbursed litigation costs to date.  The Settlement Administrator shall distribute the Settlement Class Counsel Attorneys' Fees and Litigation Expenses upon entry of an order by the Court awarding such amounts (the "Fee and Expense Award") and the Effective Date.  Settlement Class Counsel will be issued an IRS Form 1099 for the Settlement Class Counsel Attorneys' Fees and Litigation Expenses, and shall be solely and legally responsible for paying all applicable taxes on those amounts.

66.    Payment of Fee and Expense Award.  Any Fee and Expense Award awarded by the Court shall be payable to Settlement Class Counsel immediately upon award by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof of the Fee and Expense Award, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Gross Settlement Fund, plus accrued interest at the same net rate as is earned by the Gross Settlement Fund, if the Settlement is terminated pursuant to the terms of this Agreement or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed and such order reducing or reversing the award has become Final.  Settlement Class Counsel shall make the appropriate refund or repayment in full no later than thirty (30) calendar days after: (a) termination of the Settlement; or (b) any order reducing or reversing the Fee and Expense Award has become Final.  Any amounts that are awarded by the Court for Settlement Class Counsel Attorneys' Fees and Litigation Expenses or for Service Awards shall be paid exclusively from the Gross Settlement Fund consistent with the provisions of this Settlement Agreement.

67.     Award of Fees and Expenses Not Part of Settlement.  The procedure for, and the allowance or disallowance by the Court of, the Fee and Expense Application are not part of the Settlement set forth in this Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement.  Any order or proceeding solely relating to the Fee and Expense Application, including any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Judgment and the Settlement of the Action set forth herein.  No order of the Court or modification or reversal on appeal of any order of the Court solely concerning any Fee and Expense Award or Distribution Plan shall constitute grounds for cancellation or termination of this Agreement.

68.     No Liability for Fees and Expenses of Settlement Class Counsel.  Neither the Releasees nor their counsel shall have any responsibility for or liability whatsoever with respect to any payment(s) to Settlement Class Counsel pursuant to this Agreement and/or to any other Person who may assert some claim thereto or any Fee and Expense Award that the Court may make in the Action, other than as set forth in this Agreement.

69.     Service Awards.  Settlement Class Counsel shall, at a time approved by the Court, petition the Court for approval of Service Awards in connection with this Settlement to each of the Settlement Class Representatives to be paid from the Total Settlement Amount for their participation in the prosecution and settlement of this case.  The proposed Service Awards shall be in addition to any monetary award to Plaintiffs under the Distribution Plan, and are subject to Court approval.

70.     Agreement Not to Oppose.  Accredited will not take a position on any application by Settlement Class Counsel for Settlement Class Counsel Attorneys' Fees and Litigation Expenses, or for Service Awards for the Settlement Class Representatives, or participate in the fee application and review process unless so directed by the Court.

- 21 -

## VIII.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

71.    Occurrence of Effective Date.  Upon the occurrence of all of the events referenced in ¶ 6 above (the "Effective Date"), any and all remaining interest or right of Accredited in or to the Gross Settlement Fund, if any, shall be absolutely and forever extinguished.

72.    Failure of Effective Date to Occur.  If any of the conditions specified in ¶ 6 (the "Effective Date") are not met, then this Agreement shall be cancelled and terminated, subject to and in accordance with ¶¶ 74–76 (regarding Termination) unless the Settling Parties mutually agree in writing to proceed with this Agreement.

73.    Failure to Order Notice to the Settlement Class, Final Approval, or Judgment.  If the Court does not enter the Notice Order, the Final Approval Order, or the Judgment, or if the Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified, or reversed, then this Agreement and the Settlement incorporated therein shall be cancelled and terminated; provided, however, the Settling Parties agree to act in good faith to secure Final Approval of this Settlement and to attempt to address in good faith concerns regarding the Settlement identified by the Court and any court of appeal.

74.    Termination Events.  Each of the Parties shall have the right to terminate this Settlement Agreement if any of the following events occurs:

a.    The Court requires material alteration of any material provision of the Settlement Agreement for the Settlement to be approved; or

b.    All conditions for the Effective Date do not occur.

If either of the foregoing enumerated events occurs, the Parties reserve the right to mutually agree in writing to proceed with this Settlement Agreement.

75.    Notice of Termination.  A Party shall provide written notice of an intent to terminate this Agreement to counsel for the other party within thirty (30) calendar days after receiving notice that any of the foregoing events of termination has occurred.

76.    Effect of Termination.  In the event that this Settlement Agreement is terminated, or fails to become effective for any reason whatsoever:

a.  The Parties shall be deemed to have reverted to their respective statuses as of the date and time immediately prior to the execution of the term sheet on November 12, 2025, and they shall proceed in all respects as if the term sheet and this Settlement Agreement had never been executed or entered; and

b.  Settlement Class Counsel shall not in any way be responsible or liable for any administration expenses, taxes with respect to the Settlement Fund, or any expenses, including costs of Notice and administration associated with this Settlement Agreement.

c.  Accredited and Accredited's Counsel also shall not in any way be responsible or liable for Notice and Administrative Costs, Taxes, or Tax Expenses, beyond Accredited's (not Accredited's Counsel's) obligation for the costs of Notice as set forth above in ¶¶ 37 (Monetary Relief) and 46 (Settlement Funding).  Any funds deposited by Accredited in the Settlement Fund beyond Accredited's share of the cost of Notice will be returned to Accredited together with Accredited's proportionate share of interest accrued in the Settlement Fund.

d.  The terms and provisions of this Agreement, with the exception of ¶¶ 59, 72 (Failure of Effective Date to Occur), 73 (Failure to Order Notice), 76 (Effect of Termination), 79 (Federal Rule of Evidence 408), 81 (Use of Agreement as Evidence), 82 (No Admission of Liability), 84 (Consent to Jurisdiction), 85 (Resolution of Disputes), and 98 (Confidentiality of Settlement Terms) (which shall continue in full force and effect), shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in the Action or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect).

## IX.    OTHER PROVISIONS

77.    Final and Complete Resolution.  The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Action and Released

Claims and to compromise claims that are contested, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Action.

78.    Reasonable Best Efforts to Effectuate Settlement.  The Parties: (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Settlement Agreement.

79.    Federal Rule of Evidence 408.  The Settling Parties agree that this Agreement, its terms, and the negotiations surrounding this Agreement shall be governed by Federal Rule of Evidence 408 and shall not be admissible or offered or received into evidence against the Settling Defendants in any suit, action, or other proceeding, except as provided in this Agreement, upon the written agreement of the Settling Parties hereto, pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to, or to declare or enforce the rights of the Settling Parties with respect to, any provision of this Agreement.

80.    Settlement Negotiations.  The Parties agree that the Settlement Amount and other terms of this Settlement Agreement were negotiated at arm's length and in good faith, and reflect that the Settlement was voluntarily reached after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strength and weaknesses of their respective clients' claims or defenses. The Parties have participated jointly in the negotiation and drafting of this Settlement Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Settlement Agreement shall be construed as jointly drafted by the Parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any Party hereto by virtue of the authorship of any provision of this Settlement Agreement.

81.    Use of Agreement as Evidence.  Neither this Agreement nor the Settlement, nor any act performed, statement made, or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission of, or evidence of: (a) the validity of any Released Claims, any allegation made in the Action, or any wrongdoing or liability of Accredited; or (b) any liability, fault, or omission of the Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Neither this Agreement nor the Settlement, nor any act performed, statement made, or document executed pursuant to or in furtherance of this Agreement or the Settlement, shall be deemed admissible in any proceeding for any purpose against the Settling Defendants,

except to enforce the terms of the Settlement, and except that the Releasees may file this Agreement and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. The limitations described in this paragraph apply whether or not the Court enters the Notice Order, the Final Approval Order, or the Judgment.

82. No Admission of Liability. This Settlement Agreement is not intended to and does not constitute an admission by any Party as to the merits, validity, or accuracy of any of the allegations, claims, defenses, or affirmative defenses of any Party in this Action or in any action or proceeding of any kind. The Settlement Class Representatives, on behalf of themselves and the Settlement Class Members they represent, continue to assert the merits and validity of their claims. Accredited continues to deny the allegations made in this Action, that Accredited engaged in any wrongdoing or breached any law, regulation, or duty, or that Accredited is liable to anyone with respect to the alleged facts and claims asserted in this Action. By entering into this Settlement Agreement, Accredited does not admit or concede, expressly or impliedly, any claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief, and any other forms of relief, as well as the class or other allegations asserted in the Action.

83. Notices to Counsel. All notices to counsel required or desired to be given under this Settlement Agreement shall be in writing and sent via email to counsel for the respective Parties. Specifically, such notices shall be emailed to Dean M. Harvey and Katherine Lubin Benson of Lieff Cabraser Heimann & Bernstein, LLP for the Settlement Class and Settlement Class Representatives, and to Paul J. Riehle of Faegre Drinker Biddle & Reath LLP for Accredited, at their respective email addresses set forth below.

84. Consent to Jurisdiction. Accredited and each Settlement Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, Accredited and the Settlement Class Members irrevocably waive and agree not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the jurisdiction

of the Court or that the Court is in any way an improper venue or inconvenient forum. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of ¶¶ 40-43 (regarding Release) hereof, including, but not limited to, any suit, action, or proceeding in which the provisions of ¶¶ 40-43 hereof are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of this Agreement. In the event that the provisions of ¶¶ 40-43 hereof are asserted by any Releasee as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, in any suit, action, or proceeding, it is hereby agreed that such Releasee shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on the provisions of ¶¶ 40-43. Nothing herein shall be construed as a submission to jurisdiction for any purpose other than any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement.

85. Resolution of Disputes; Retention of Exclusive Jurisdiction. Any disputes between or among Accredited and any Settlement Class Member concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Agreement.

86. Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement entered into herein by Plaintiffs and Settlement Class Counsel shall be binding upon the Settlement Class and each Settlement Class Member.

87. Authorization to Enter Settlement Agreement. The undersigned representative of Accredited represents that the representative is fully authorized to enter into and execute this Agreement on behalf of Accredited. Settlement Class Counsel, on behalf of Plaintiffs, the Settlement Class, and each Settlement Class Member represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of the Settlement Class pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or amendments to the Agreement on behalf of the Settlement Class that they deem appropriate.

88.   Materiality.  Except as otherwise stated herein, each substantive term of this Agreement is material and has been relied upon by the Parties in entering into this Agreement.

89.   Headings.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

90.   Interpretation.  Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

91.   Integration.  This Settlement Agreement contains the entire agreement between the Parties relating to any and all matters addressed in the Settlement Agreement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or a Party's legal counsel, with respect to such matters are of no force or effect.

92.   No Party Deemed to Be the Drafter.  None of the Parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, rule of interpretation, or construction that would or might cause any provision to be construed against the drafter hereof.

93.   Choice of Law.  This Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California and the rights and obligations of the Parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to the state's choice of law principles.

94.   Amendment; Waiver.  This Agreement shall not be modified in any respect except by a writing executed by Accredited and Settlement Class Counsel, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

95.   Execution in Counterparts.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the Settling Parties to this Agreement shall exchange among themselves original signed or scanned counterparts and a complete set of executed counterparts shall be filed with the Court.

96.   Confidentiality of Non-Public Documents.  All documents and other information produced by the Parties in discovery shall in the future be treated as Confidential or Highly Confidential consistent with the terms of the Protective Order, without regard to any time limitations in the Protective Order.  This Confidential or Highly Confidential treatment does not apply to any documents that are otherwise publicly available.

97.   Destruction of Confidential Discovery Material.  Pursuant to the terms of the Protective Order in the Litigation, within sixty (60) calendar days of the Effective Date, Settlement Class Counsel shall return to Accredited's Counsel, or shall provide to counsel a certification of the destruction of, all matter produced in discovery in the Litigation that was designated as "Confidential" or "Highly Confidential."

98.   Confidentiality of Settlement Terms.  The terms of this Settlement shall remain confidential until Plaintiffs move for preliminary approval, unless Accredited and Settlement Class Counsel agree otherwise, provided that the Settling Parties may disclose the terms of this Settlement to accountants, lenders, auditors, legal counsel, insurers, tax advisors, or consultants; or as part of any security or other disclosure required by law (as determined by a Settling Party and their counsel); or in response to a request by any governmental, judicial, or regulatory authority or otherwise required by applicable law or court order and Plaintiffs may disclose the terms of the Settlement to any entity that has applied to serve as Settlement Administrator or Escrow Agent, who shall abide by the terms of this paragraph.

99.   Authentication.  Accredited shall cooperate in good faith and use reasonable efforts to authenticate, establish as business records, and provide other foundation for documents and/or things it has produced in the Litigation.  Nothing herein shall require Accredited or its employees to provide testimony in the Litigation other than as may be required under the Federal Rules.

100.   Duty Not to Encourage Objection.  Plaintiffs, Settlement Class Counsel, and Accredited agree that they shall not in any way encourage, promote, or solicit any Person within the definition of the Settlement Class, or their counsel, to object to this Settlement or to seek any relief inconsistent with this Settlement.

**Approved as to Form and Content by Counsel.**

Dated:  June 8, 2026

By: 

Dean M. Harvey

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Dean M. Harvey (dharvey@lchb.com)
Katherine Lubin Benson (kbenson@lchb.com)
Michelle A. Lamy (mlamy@lchb.com)
Nicole M. Rubin (nrubin@lchb.com)
Emily N. Harwell (eharwell@lchb.com)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Counsel for Settlement Class Representatives and the Proposed Settlement Class*

Dated: June 9, 2026

By: 

Paul J. Riehle
**FAEGRE DRINKER BIDDLE & REATH LLP**
4 Embarcadero Center, 27th Floor
San Francisco, California 94111
Telephone: (415) 551-7521
paul.riehle@faegredrinker.com

*Attorney for Defendant Accredited Surety and Casualty Company, Inc.*