Dean M. Harvey (SBN 250298)
Katherine Lubin Benson (SBN 259826)
Michelle A. Lamy (SBN 308174)
Nicole M. Rubin (SBN 361232)
Emily N. Harwell (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
dharvey@lchb.com
kbenson@lchb.com
mlamy@lchb.com
nrubin@lchb.com
eharwell@lchb.com

*Interim Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE CALIFORNIA BAIL BOND ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 4:19-CV-00717-JST<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**<br><br>Date: September 3, 2026<br>Time: 2:00 pm |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................................................................... 1

II. ARGUMENT ............................................................................................................ 1

A. The Statement is Improper. ................................................................................. 1

B. Moving Defendants' Criticisms of the Settlements Are Meritless. ......................... 3

1. The Settlement Distribution Plan Filters Out Uninjured Claimants. ................. 3

2. The Claims Administration Procedure Sufficiently Protects Against Fraud. ....... 5

3. The Settlements Do Not Create Intra-Class Conflicts. ...................................... 9

C. Moving Defendants' Improper Sur-Sur-Reply Arguments Regarding Litigation Class Certification Are Meritless. ...................................................................... 12

III. CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ..... 11

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 (1946) ..... 5

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ..... 8

*In re Carrier IQ, Inc., Consumer Priv. Litig.*,
No. 12-md-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016), *amended in part*, No. 12-md-02330-EMC, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016) ..... 5

*Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*,
No. 2:11-CV-8557-CAS, 2014 WL 688178 (C.D. Cal. Feb. 21, 2014) ..... 2

*In re Cathode Ray Tube Antitrust Litig.*,
No. 20-15697, 2021 WL 4306895 (9th Cir. Sept. 22, 2021) ..... 1

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 07-5944 SC, 2010 WL 9543295 (N.D. Cal. Feb. 5, 2010) ..... 9, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 07-CV-05944-JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ..... 11

*Chen v. Allstate Ins. Co.*,
819 F.3d 1136 (9th Cir. 2016) ..... 12, 13

*In re Citric Acid Antitrust Litig.*,
145 F. Supp. 2d 1152 (N.D. Cal. 2001) ..... 11

*In re Coll. Athlete NIL Litig.*,
803 F. Supp. 3d 959 (N.D. Cal. 2025), *appeal dismissed*, No. 25-4185, 2025 WL 2831020 (9th Cir. July 29, 2025), *and objections overruled*, No. 20-CV-03919 CW, 2025 WL 3501920 (N.D. Cal. Nov. 13, 2025) ..... 4, 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..... 12

*Fitzhenry-Russell v. Coca-Cola Co.*,
No. 5:17-CV-00603-EJD, 2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) ..... 8, 9

*In re Graphics Processing Units Antitrust Litigation*,
253 F.R.D. 478 (N.D. Cal. 2008) ..... 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Hale v. Manna Pro Prods., LLC*,
No. 2:18-CV-00209-KJM-DB, 2021 WL 4993036 (E.D. Cal. Oct. 27, 2021)........................................ 5

*Hayes v. MagnaChip Semiconductor Corp.*,
No. 14-CV-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016)................................................ 11

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) ................................................................................................................ 8

*In re High-Tech Emp. Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................................................................................ 14

*Hunichen v. Atonomi LLC*,
No. C19-0615-RAJ-SKV, 2021 WL 5854964 (W.D. Wash. Nov. 12, 2021) ........................................ 2

*In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
No. 19-MD-02913-WHO, 2024 WL 1122420 (N.D. Cal. Mar. 14, 2024)............................................... 5

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
567 U.S. 298 (2012)............................................................................................................................. 12

*Kumar v. Salov N. Am. Corp.*,
No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016).................................................... 7

*La Mar v. H & B Novelty & Loan Co.*,
489 F.2d 461 (9th Cir. 1973) ................................................................................................................ 14

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024) ............................................................................................................. 15

*Microsoft Corp. v. Baker*,
582 U.S. 23 (2017)................................................................................................................................. 2

*Moore v. PetSmart, Inc.*,
728 F. App'x 671 (9th Cir. 2018) .......................................................................................................... 10

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .................................................................................................................. 8

*Nolen v. PeopleConnect, Inc.*,
No. 20-CV-09203-EMC, 2023 WL 9423286 (N.D. Cal. Dec. 14, 2023)................................................. 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) .................................................................................................. 15

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................................................ 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re Optical Disk Drive Antitrust Litig.*,
303 F.R.D. 311 (N.D. Cal. 2014) ..... 14

*In re Optical Disk Drive Antitrust Litig.*,
No. 10-MD-02143-RS, 2017 WL 6503743 (N.D. Cal. Dec. 18, 2017), *aff'd*, 785 F. App'x 406 (9th Cir. 2019) ..... 10

*In re Oracle Sec. Litig.*,
No. C–90–0931–VRW, 1994 WL 502054 (N.D. Cal. June 16, 1994) ..... 11

*In re Outlaw Lab'y, LP Litig.*,
No. 18-CV-840-GPC-BGS, 2020 WL 5538924 (S.D. Cal. Sept. 15, 2020) ..... 2

*In re Packaged Seafood Prods. Antitrust Litig.*,
No. 15-MD-2670 DMS (MDD), 2022 WL 1044061 (S.D. Cal. Mar. 1, 2022) ..... 10

*In re Packaged Seafood Products Antitrust Litigation*,
3:15-md-02670-DMS (MSB) (S.D. Cal.) ..... 3, 8

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) ..... 12

*Rieckborn v. Velti PLC*,
No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ..... 11

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..... 13

*Sweet v. Cardona*,
121 F.4th 32 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 1658 (2026) ..... 1

*T. K. v. Adobe Sys. Inc.*,
No. 17-CV-04595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ..... 12

*Thompson v. Transamerica Life Ins. Co.*,
No. 2:18-CV-05422-CAS-GJSx, 2020 WL 6145105 (C.D. Cal. Sept. 16, 2020) ..... 11

*Waller v. Fin. Corp. of Am.*,
828 F.2d 579 (9th Cir. 1987) ..... 1

*Ward v. Apple Inc.*,
791 F.3d 1041 (9th Cir. 2015) ..... 2

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
395 U.S. 100 (1969) ..... 14

## I. INTRODUCTION

The "Statement" (ECF No. 672) from Non-Settling Defendants AIA Holdings, Inc., Allegheny Casualty Company, International Fidelity Insurance, and Lexington National Insurance Company (together, "Moving Defendants"[1]) is improper and meritless. The Statement repeats many of the same erroneous arguments Moving Defendants made in their failed motion for leave to file a supplemental brief. ECF No. 664. Moving Defendants provide no legitimate reason to deny Plaintiffs' motion for preliminary approval of class action settlements ("Preliminary Approval Motion," ECF No. 669), nor any reason to deny Plaintiffs' pending motion to certify the litigation class ("Litigation Class Certification Motion," ECF No. 514-2). To the contrary, their arguments only serve to demonstrate why the Court should grant both of these motions.

## II. ARGUMENT

### A. The Statement is Improper.

The Statement begins by forswearing any position on the Preliminary Approval Motion. However, the Statement then proceeds to do just that, insisting without support that a variety of changes should be made to the Settlements before receiving preliminary approval. This is improper because Moving Defendants have no standing to object to the Settlements. *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582-83 (9th Cir. 1987). "This rule advances the policy of encouraging the voluntary settlement of lawsuits" and the interest in encouraging settlements "is particularly strong in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Sweet v. Cardona*, 121 F.4th 32, 44 (9th Cir. 2024) (citation modified), *cert. denied*, 146 S. Ct. 1658 (2026). "There is only one exception to this general rule: A non-settling entity may challenge a settlement when it demonstrate[s] that it will sustain some *formal legal prejudice* as a result of the settlement.'" *Id.* at 41 (emphasis added) (citation omitted). This sort of prejudice may exist where a settlement (1) "purports to strip [a non-settling defendant] of a legal claim or cause of action, an action for indemnity or contribution for example[ ]" or (2) "invalidates the contract rights of one not participating in the settlement." *In re Cathode Ray Tube Antitrust Litig.*, No. 20-15697, 2021 WL 4306895, at *1 (9th Cir. Sept. 22, 2021) (citation omitted).

[1] Moving Defendants' reference to themselves as the "Non-Settling Defendants" is a misnomer. Statement at 1. Non-Settling Defendants represented by different counsel did not join Moving-Defendants' Statement: namely, Defendants Continental Heritage Insurance Company and Financial Casualty & Surety, Inc.

Moving Defendants cannot satisfy that standard and do not try. Instead, they assert that "approval of the settlements" raises "potential due process concerns" because if the Court approves the Settlements, it "would arguably leave [them] . . . to bear alone the burden of contesting a nineteen-surety conspiracy narrative" and they could be held liable "for the entire trebled conspiracy award." Statement at 10 n.5. Moving Defendants provide no support for their promised forthcoming constitutional challenge to the nation's antitrust laws. Joint and several liability for participating in a common conspiracy is a bedrock feature of antitrust law, not a consequence of the Settlements. As the Ninth Circuit explained in *Ward v. Apple Inc.*, it is erroneous to complain about unnamed co-conspirators, because "antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy." 791 F.3d 1041, 1048 (9th Cir. 2015) (reversing dismissal of antitrust conspiracy claims for failure to join coconspirators as defendants) (citation omitted), *abrogated in part on other grounds*, *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017). Further, "arguments that evince a practical disadvantage in the litigation resulting from the settlement" do not establish legal prejudice sufficient to confer standing to object on a non-settling defendant. *In re Outlaw Lab'y, LP Litig.*, No. 18-CV-840-GPC-BGS, 2020 WL 5538924, at *4 (S.D. Cal. Sept. 15, 2020); *accord Hunichen v. Atonomi LLC*, No. C19-0615-RAJ-SKV, 2021 WL 5854964, at *5 (W.D. Wash. Nov. 12, 2021) ("A tactical disadvantage does not constitute plain legal prejudice sufficient to create standing."), *report and recommendation adopted*, No. 19-0615-RAJ-SKV, 2022 WL 4131590 (W.D. Wash. Sept. 12, 2022); *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, No. 2:11-CV-8557-CAS, 2014 WL 688178, at *2 (C.D. Cal. Feb. 21, 2014) (finding no standing where non-settling defendants argued their "efforts to oppose class certification as to plaintiff's claims against [other parties] will be more difficult").

The Statement appears to be a pretext for providing yet another unauthorized supplemental brief in opposition to the Litigation Class Certification Motion. *See* Statement at 6-12. This is the third time Moving Defendants have improperly tried to supplement the record on that submitted motion. The Court rejected their two previous efforts: first, on the record during the March 4, 2026 Case Management Conference (*see* ECF Nos. 657, 665 at 1), and second, when denying their March 26, 2026 motion for leave to file a supplemental brief (ECF Nos. 664 (motion for leave), 666 (denial)). This third attempt repeats many of the same meritless arguments and should be rejected for the same reasons. *See* ECF No. 665.

**B. <u>Moving Defendants' Criticisms of the Settlements Are Meritless.</u>**

Moving Defendants raise a number of hypothetical "concerns" about the Settlements. None undercut the Settlements' fairness, reasonableness, or adequacy.

**1. The Settlement Distribution Plan Filters Out Uninjured Claimants.**

Moving Defendants contend that the Settlement distribution plan does not sufficiently filter out uninjured class members. Statement at 2-3. To the contrary, the Settlement distribution plan goes well beyond what courts have approved in other antitrust cases. For instance, in *In re Packaged Seafood Products Antitrust Litigation*, 3:15-md-02670-DMS (MSB) (S.D. Cal.), the district court approved a claim form to the consumer class that simply asks claimants to state the "total number of cans or pouches of packaged tuna purchased[.]"[2] The district court also approved an allocation plan whereby the net settlement fund is distributed to claimants based upon the number of cans or pouches of tuna each claimant self-reports, without asking what they were charged, without requiring any further documentation, without requiring any of the additional information Moving Defendants insist upon, without "under penalty of perjury" language, and without cross-checking the claim against a database of all consumer transactions (there was none). *Id.*, ECF Nos. 3302 (preliminary approval order), 3286-1 (preliminary approval motion describing distribution plan), and 3286-2 (Long Form Notice) at 7 ("[I]t is estimated that Settlement Class Members will receive approximately $24.50 for every 200 cans purchased[.]").[3] The approved distribution plan in that case gives the same amount of money for each can or pouch of tuna purchased, without any verification of what was actually charged.

The allocation plan here goes well beyond what is required. The claim form does not simply ask how many bail bonds a class member purchased. Instead, for each purchase, the claim form also asks for: (1) the date of the bail bond purchase; (2) name of the bail agency; (3) total bail amount set by the criminal court; (4) total bail premium charged; (5) location of the criminal court; and (6) the name of the criminal defendant. Harvey Supp. Decl., Ex. B.[4] The Settlement Administrator will then cross-check this information against the

---

[2] Ex. H (Claim Form), ECF No. 3286-3 at 2.

[3] Ex. G (Long Form Notice), ECF No. 3286-3.

[4] Moving Defendants note that the long form notice (ECF No. 669-15) and claim form (ECF No. 669-21) incorporate the "premiums (or fees)" language Plaintiffs agreed to amend for the Lexon and DNIC settlements. *See* Statement at 1 n.3. Plaintiffs have amended the long form notice and claim form to remove "(or fee(s))" language in each. The updated long form notice and claim form are attached to the Supplemental Declaration of Dean M. Harvey as Exhibits A and B.

database Plaintiffs assembled of bail bond transactions, to ensure that the claim is legitimate, and to confirm the filed rate charged for each and every transaction. Devery Supp. Decl. ¶¶ 9-12, 23-25. The claim form then asks each claimant to provide "documents or other proof showing the amount you were charged and agreed to pay[.]" Harvey Supp. Decl. Ex. B. Finally, the claim form requires each claimant to sign and "confirm that the information in this Claim Form is true, accurate, and complete to the best of my knowledge." *Id.* The Settlement Administrator will take a variety of additional steps to weed out any fraudulent or duplicative claims. Pang Decl. ¶¶ 64-67, ECF No. 669-12; Devery Supp. Decl. ¶¶ 2, 7-21. The verification process does not stop there. Instead of awarding each verified bail bond purchase the same recovery, the Settlement Administrator will use Dr. Singer's most conservative common methods to estimate each and every verified Participating Settlement Class Member's individual damages, and allocate the Net Settlement Fund in proportion to those damages. If that process results in no estimated damages (for instance, if the claimant's documentation shows that the effective price charged was below the but-for price of 6.05%), then those claimants will not receive a share of the Settlements.

There is nothing "nonsensical" or "inequitable," Statement at 2, about this process. Moving Defendants' argument boils down to a complaint that, even when Dr. Singer's most conservative common methods are used, 96.3% of Class Members suffered injury, and those Class Members will be compensated in proportion to their injuries, if they submit valid claims.[5] This is not a "preordained" result. *Id.* at 2. It is the result of applying Dr. Singer's most conservative common methods, as the Settlements require. This is exactly what a settlement distribution plan ideally achieves. *See, e.g., In re Coll. Athlete NIL Litig.*, 803 F. Supp. 3d 959, 1007 (N.D. Cal. 2025) (approving damages allocation plan derived from expert analysis "based on what class members would have received for their claims in the but-for world"), *appeal dismissed*, No. 25-4185, 2025 WL 2831020 (9th Cir. July 29, 2025), *and objections overruled*, No. 20-CV-03919 CW, 2025 WL 3501920 (N.D. Cal. Nov. 13, 2025).

[5] Moving Defendants also misunderstand how the 96.3% number is derived. This is not the number of Class Members who were charged either the 10% standard fixed rate, or the 8% discounted rate (that was set by taking an arbitrary 20% off of the 10% standard fixed rate). That number is indeed similar, but the common impact number is the result of applying Dr. Singer's most conservative estimate of actual rebates (1.5%) to the surety data, and comparing that result to Dr. Singer's most conservative but-for effective rate of 6.05%. *See*, *e.g.*, Singer Reply Rep. at p.113, ECF No. 563-2.

The remaining "concerns" are nothing more than recycled class certification arguments. *See, e.g.*, Statement at 2 (opposing the use of averages by arguing that "actual rebating practices varied enormously" across bail agents); *id.* at 3 ("the motion's formula does not account for credit bail").[6] Neither is a legitimate critique against class certification (*see* ECF No. 562-2 at 11-15), and, more pertinently, neither is relevant to assessing the fairness of the Settlements. The concerns Moving Defendants express about the second bail bond Plaintiff Monterrey purchased, years after the lawsuit was initiated, which included a rebate and an effective rate of 4.7%, is well-addressed by the Settlement's claims process (*see infra* at 6).

**2. The Claims Administration Procedure Sufficiently Protects Against Fraud.**

Moving Defendants' proposed changes to the claims process meant to "guard against fraudulent claims," Statement at 5, are unnecessary and would do nothing to improve the fairness of the Settlements. They raise two hypothetical situations, neither concerning fraud: a potential "windfall for an uninjured class member," Statement at 2-3, and "the possibility" that multiple claimants seek recovery for the same transaction, *id.* at 4.[7] The arguments fail for three reasons: (1) they ignore the safeguards already employed

---

[6] Moving Defendants accuse Plaintiffs of "fail[ing] to seek" contact information from bail agents, contending that they could have obtained "the amount charged and paid for each bond" from the agents. Statement at 3. However, as Moving Defendants are aware, Plaintiffs undertook exhaustive efforts to obtain such discovery and "spent eight months locating, subpoenaing, contacting, and conferring with" bail agents, who "resisted discovery, requiring three motions to compel, and months of negotiations regarding document productions." ECF No. 669 at 3. For the bail agents from whom Plaintiffs were able to get responses, many did not have transaction data and those who did often lacked contact information for those customers. Harvey Supp. Decl. ¶ 4. The implication that Plaintiffs simply did not put in the effort to obtain transaction records to facilitate notice and distribution is plainly incorrect. There are tens of thousands of bail agents in California. It would have been infeasible to serve and enforce tens of thousands of subpoenas, and Moving Defendants know it. Indeed, Moving Defendants—and all Defendants—could have required that their agents report rebating information and identifying contact information for customers, but did not. The evidence shows that Defendants' collusion included a concerted effort to protect their price-fixing conspiracy by telling the California Department of Insurance that rebate rates were substantially more common than they in fact were, and by protecting that falsehood by "mak[ing] sure" they "also state that they have no ability to provide financial information from agents[.]" *See* ECF 563 at 1. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946).

[7] The possibility that duplicate claims could be made on a single transaction is not unique to this case. Settlement administrators routinely de-duplicate claims. *See, e.g.*, *In re Carrier IQ, Inc., Consumer Priv. Litig.*, No. 12-md-02330-EMC, 2016 WL 4474366, at *3 (N.D. Cal. Aug. 25, 2016) (noting claims removed as duplicates), *amended in part*, No. 12-md-02330-EMC, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016); *Hale v. Manna Pro Prods., LLC*, No. 2:18-CV-00209-KJM-DB, 2021 WL 4993036, at *3 n.1 (E.D. Cal. Oct. 27, 2021) (the settlement administrator "removed all claims . . . that were duplicative"); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 19-MD-02913-WHO, 2024 WL 1122420, at *2 (N.D. Cal. Mar. 14, 2024) ("The Class Settlement Administrator is still in the process of further de-duplicating [claims].").

by the Settlement Administrator; (2) self-identification is commonly approved by courts; and (3) they provide no authority or support for the enhanced requirements for claims submission.

First, Moving Defendants ignore the Settlement Administrator's role in identifying and weeding out duplicative and fraudulent claims. The Settlements already propose a process to handle such claims. As explained in the Pang Declaration, the Settlement Administrator "employs a number of fraud prevention techniques," including "industry standard security measures," "continually monitors and technically enhances the claims submission portal to detect and block fraudulent activity," and "continually review[s]" all claim forms submitted. Pang Decl. ¶ 64. For any suspicious or defective claims, the Settlement Administrator will either reject the claim or "subject [it] to additional scrutiny," such as requesting "additional documentation and other proprietary measures" to allow the claimant to prove its legitimacy. *Id.* ¶¶ 65, 67. If the claimant fails to cure the deficiency, submit documentation, or "fail[s] to otherwise prove their claims' legitimacy," the claim will be rejected and the claimant "will not receive a payment from the Net Settlement Fund." *Id.*; *see also* Devery Supp. Decl. ¶¶ 17-21.

In fact, Moving Defendants' hypothetical "fraud" situations only demonstrate that the claims process will be effective. In the first, Moving Defendants worry that Plaintiff Monterrey submits a claim for a bond with a 4.7% effective rate (negotiated after this lawsuit was filed)[8], and receive damages for that transaction as though she had been charged an 8.5% effective rate. Statement at 2-3. In the second, they conjure a scenario where three siblings share the cost of a bond but submit three separate claims for recovery under the Settlement. Statement at 4.[9]

The Settlement processes are already designed to detect and prevent such issues. Step 2 of the claim form asks the claimant to provide the "Total Bail Bond Premium You Were Charged and Agreed to Pay to Bail Agency to Get the Bail Bond." Harvey Supp. Decl. Ex. B. Ms. Monterrey would correctly and truthfully state how much she was charged (4.7% of the penal sum) and, because that amount is less than Dr. Singer's

---

[8] Moving Defendants repeat the falsehood that Ms. Monterrey did not negotiate this rebate. Statement at 2 ("unsolicited rebates"). In fact, as Plaintiffs explained in their Litigation Class Motion reply, this is a misrepresentation of her testimony. ECF No. 562-2 at 3-4.

[9] Moving Defendants also incorrectly state that the claimant's estimated damages will be "tripled" *before* distribution. *See* Statement at 2. That is not true. As Plaintiffs explain in the motion, "after all timely and valid claims are paid, the Settlements provide for redistribution of any funds remaining to Settlement Class Members, up to a cap of three times their damages, until it is economically infeasible to do so." ECF No. 669 at 34.

6.05% estimated effective rate, the Settlement Administrator would determine that transaction to be uninjured and not entitled to damages. Devery Supp. Decl. ¶¶ 22-24.

The Settlement process has further safeguards in place. Even if Ms. Monterrey were to misstate the amount charged in Step 2 (which of course she would not), Step 3 asks her to attach documentation reflecting the amount charged or agreed to pay. Harvey Supp. Decl. Ex. B. If the documentation shows an amount charged that differs from the amount the claimant wrote on the claim form, the Settlement Administrator will use the documented charged amount to determine whether the claimant is injured and, if so, calculate their estimated damages. Devery Supp. Decl. ¶ 25. The hypothetical sibling fraud scenario would also be addressed, because the Settlement Administrator will check every claim against the transaction database, to ensure—among other things—that the same transaction will not be used more than once. *Id.* ¶ 15.

Moving Defendants' concerns about "undocumented" claimants arises from a fundamental misunderstanding of the claims process. The claim form does not give a claimant the option to submit documentation—it instructs claimants to attach it. Claimants are not advised or encouraged to submit claims without documentation. At most, the Settlements contemplate that some claimants may not have documentation and provides a formula so that it does not act as a bar to recovery for those claimants. *See, e.g.*, *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *7 n.8 (N.D. Cal. July 15, 2016) ("[R]equiring consumer class members to produce receipts to demonstrate their purchases in order to recover would essentially preclude relief for most consumer injuries.").

Additional fraud-prevention mechanisms apply once a claim is submitted. For all claimants, regardless of whether they submit documentation, the Settlement Administrator will then "verify the information provided [on the claim form] using" the corresponding information in the data to confirm that the claimant is seeking recovery on a real transaction. Pang Decl. ¶ 66; Devery Supp. Decl. ¶ 9. Moving Defendants are wrong to claim that the transaction "contains no relevant identifying information," Statement at 3, the data in fact includes (in large part) the name of the individual for whom the bond was obtained, the court that set bond, the penal sum, the name of the agency that sold the bond, the bond execution date, and the filed rate charged—the same information the claimant is asked to provide on the claim form.[10] *See* Harvey

[10] In connection with the Lexon and DNIC settlements, Plaintiffs erroneously stated that the transaction data "includes Class Member contact information for more than 55% of the bail bond transactions in the data." ECF No. 477 at 5. Plaintiffs' statement was based on a preliminary analysis of the data as of June 2024, six

Supp. Decl. Ex. B; *see* Devery Supp. Decl. ¶ 5. Moving Defendants do not explain why these processes are insufficient for verification, nor do they "demonstrate that there is widespread fraud that cannot be simply resolved." *Nolen v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2023 WL 9423286, at *17 (N.D. Cal. Dec. 14, 2023).

The Settlements' administration process was intentionally designed to encourage Class Member participation in the Settlements while establishing protocols to identify and evaluate potential fraud. Indeed, it is well-established that "courts 'can rely, as they have for decades, on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to avoid or minimize fraudulent claims." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1130 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667 (7th Cir. 2015)), *abrogated in part on other grounds, Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026)). "Relying on concerns about what are essentially claim administration issues to deny certification and to prevent any recovery on valid claims upsets the balance a district judge must consider." *Mullins*, 795 F.3d at 667-68. The Settlements distribution plan is fair, reasonable, and adequate.

For these reasons, Moving Defendants' other suggestions for the Settlement claims process must be rejected. They imply that it is improper for "class membership [to] be established solely by self-identification" for those claimants who do not provide documentation of their purchase. Statement at 3. But "[s]elf-identification of eligibility of class members is not uncommon" and "the Ninth Circuit has expressly allowed for the use of self-identification for purposes of class certification." *Nolen*, 2023 WL 9423286, at *16 (citing *Briseno*, 844 F.3d at 1129-30). Further, the multiple checks the Settlement Administrator will conduct here—such as comparing claims against the transaction database—go far beyond mere self-identification of the sort approved in *Packaged Seafood*. And "concerns about fraud . . . are not reasons to reject the use of self-identification." *Nolen*, 2023 WL 9423286, at *16. Courts in this district have approved claims administration requiring the claimant "only submit a relatively simple claim form with basic questions about class membership." *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD, 2019 WL 11557486, at *7

---

months before moving for class certification, which mistook data identifying the criminal defendant for the bond purchaser/customer. Harvey Supp. Decl. ¶ 7.

(N.D. Cal. Oct. 3, 2019). Given that Defendants have "no means of directly identifying" purchasers, "[t]he process would be no different than that required after trial." *Id.*

The additional provisions Moving Defendants suggest would not improve fraud deterrence or detection, and will not make the Settlements more fair, reasonable, or adequate. They insist that the claim form should require a copy of government-issued ID, last four digits of Social Security number, "identify the amount of premium they actually paid and any other indemnitors on that bond," and that it be "sworn to under penalty of perjury." Statement at 5. They do not explain how these additional requirements would improve protection against fraudulent claims on top of the processes already in place and do not provide any case law in support. For example, it is unclear what purpose the last four digits of a claimant's Social Security number will have other than deterring individuals without Social Security numbers from making claims (and the same goes for government-issued IDs). As discussed above, the claim form already asks the claimant to provide the amount they were charged. The suggestion that it instead ask for the amount "actually paid" is just a recycled argument regarding credit bail. And asking to identify "other indemnitors" would inject unnecessary confusion as to what an indemnitor is in this context. It is also another form of self-identification, so it is unclear how it improves upon the self-identification procedure already in place.

Moving Defendants also propose a requirement for the Settlement Administrator "to investigate multiple submissions for the same bond," Statement at 5, but that is a procedure already in place, *see* Devery Supp. Decl. ¶¶ 15-16.

**3. The Settlements Do Not Create Intra-Class Conflicts.**

The Settlement distribution plan does not create intra-class conflict. First, Moving Defendants state that certain Settling Defendants withdrew from the alleged conspiracy without any facts to support that assumption. To the extent they have standing to raise withdrawal, they do not meet their burden to show any withdrawal actually occurred. Second, even if certain Settling Defendants did withdraw from the alleged conspiracy, the Settlement distribution plan is appropriate because it allocates the settlement in proportion to each claimant's estimated damages.

"[W]ithdrawal from a conspiracy is an affirmative defense, with the burden of proof being on the claimed withdrawing party." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC, 2010 WL 9543295, at *12 (N.D. Cal. Feb. 5, 2010). Moving Defendants do not invoke a withdrawal defense on behalf

of themselves (they remain in the market), but rather on behalf of Settling Defendants. "[T]he question of whether there was withdrawal, and if so when and to what extent, is a factual issue which is not readily susceptible to resolution by motion." *Id.*; *see also* ECF No. 512 at 9 ("[T]he question of whether a defendant has withdrawn from a conspiracy is complicated."). This is a fact-based merits question that has not been adjudicated. The mere fact of exiting a market, standing alone, does not constitute withdrawal. Rather, "there is no withdrawal unless the defendant severs *all* ties with the business through which it participated in the conspiracy." *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 DMS (MDD), 2022 WL 1044061, at *4 (S.D. Cal. Mar. 1, 2022) (emphasis added); *accord In re Optical Disk Drive Antitrust Litig.*, No. 10-MD-02143-RS, 2017 WL 6503743, at *7 (N.D. Cal. Dec. 18, 2017) ("[C]ases arising in the antitrust context have held that the full exit from an industry suffices to establish a prima facie case of withdrawal."), *aff'd*, 785 F. App'x 406 (9th Cir. 2019). Indeed, the Settlements themselves make no distinction among Settling Defendants that may or may not be able to satisfy the affirmative defense of withdrawal. All Settlements set forth the same Settlement Class definition, and all extend to the same date: March 18, 2026. *See* Accredited SA ¶ 28, ECF No. 669-2; ACIC SA ¶ 28, ECF No. 669-3; ASC SA ¶ 29, ECF No. 669-4; Bankers SA ¶ 29, ECF No. 669-5; C&F SA ¶ 29, ECF No. 669-6; Seaview SA ¶ 29, ECF No. 669-7; Sun Surety SA ¶ 28, ECF No. 669-8; Universal SA ¶ 28, ECF No. 669-9; Williamsburg SA ¶ 28, ECF No. 669-10. Further, the Settlements contemplate that Settling Defendants who are not currently in the California market may re-enter, and the injunctive relief in those Settlements would then begin upon re-entry. *See* Accredited SA ¶ 39; ACIC SA ¶ 39; Williamsburg SA ¶ 40.

Moving Defendants also misrepresent the Court's analysis on this point when it approved the Lexon and DNIC settlements. The Court did recognize the *possibility* of an intra-class conflict, but ultimately concluded that "the potential conflicts in this case are not likely to render the proposed settlement unfair." ECF No. 512 at 10. Moving Defendants also state that "the Court found the issue tolerable only because" Plaintiffs had not yet set forth a distribution plan. Statement at 6 (citing ECF No. 512 at 9-10). That is not what the Court said. The Court explained that "when class members essentially seek the same thing from the defendant and differ only with respect to the amount or value of their claims, absent vast differences or some other evidence of unfairness, there is no fundamental conflict sufficient to defeat adequacy." ECF No. 512 at 10 (quoting *Moore v. PetSmart, Inc.*, 728 F. App'x 671, 674 (9th Cir. 2018)). The Court noted that Plaintiffs

had not yet put forward a distribution plan and stated that when that plan is developed (as it is now), it could "accommodate differences in class members' harms or rights of recovery[.]" *Id.* (emphasis added).

The affirmative defense of withdrawal may limit the amount of the withdrawing defendant's joint and several liability, but it has no impact whatsoever on the amount of any class member's damages, and accordingly should not alter any Class Member's recovery under the Settlements. All Settlements allocate funds to verified Participating Settlement Class Members in the same way, *in proportion to their estimated damages*. Moving Defendants provide no authority requiring that an allocation plan in an antitrust conspiracy case disregard estimated damages, and instead provide different recoveries based upon when each alleged settling co-conspirator entered or exited the market. Plaintiffs are aware of none.

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (quoting *In re Oracle Sec. Litig.*, No. C–90–0931–VRW, 1994 WL 502054, at *1-2, (N.D. Cal. June 16, 1994)). "For this reason, 'an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'" *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018) (quoting *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015)). "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-05944-JST, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016) (citing *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001)). That is precisely what the Settlement distribution plan does—it calculates distributions based on the estimated injury each claimant suffered. *See* ECF No. 669 at 19, 30. As with other Settlement distributions approved in this district, Plaintiffs' allocation plan has "an adequate basis in the economic analysis of [Dr. Singer], which reflect the extent of class members' injuries . . . based on what class members would have received for their claims in the but-for world." *In re Coll. Athlete NIL Litig.*, 803 F. Supp. 3d at 1007. Thus, the Settlement distribution plan is "fair and reasonable to all [ ] class members[.]" *Id.*; *see also Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 6902856, at *7 (N.D. Cal. Nov. 21, 2016) (approving as "fair and reasonable" a damages allocation plan based on plaintiffs' expert calculations and "which does not discriminate between Class Members") (Tigar, J.); *Thompson v.*

*Transamerica Life Ins. Co.*, No. 2:18-CV-05422-CAS-GJSx, 2020 WL 6145105, at *12 (C.D. Cal. Sept. 16, 2020) ("*Pro rata* settlement allocation, with no class member being favored over others, such as proposed here, has repeatedly been deemed fair, adequate, and reasonable."); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (approving a distribution plan plaintiffs developed with their expert "that reflects in a simple and straightforward manner their damages theory of the case based upon their extensive investigation").

### C. Moving Defendants' Improper Sur-Sur-Reply Arguments Regarding Litigation Class Certification Are Meritless.

Moving Defendants argue that granting preliminary approval and provisionally certifying the Settlement Class should "carry no weight toward" the pending motion to certify the Litigation Class. Statement at 7. Moving Defendants then urge the Court to do exactly that: weigh the Settlements when deciding whether to certify the Litigation Class. *Id.* at 7-12. Apparently, the Settlements are only relevant to certifying the Litigation Class when Moving Defendants say so. Moving Defendants argue that the Settlements "do not create typicality and adequacy problems so much as underscore them." *Id.* at 10. Moving Defendants are mistaken.

First, Moving Defendants claim that the Settlements might moot the Named Plaintiffs' claims and render them inadequate to represent a litigation class, if the Named Plaintiffs' compensation from the distribution plan reaches three times their estimated damages. Statement at 7-9. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (citation modified). Even if the Settlements provided "complete relief" regarding Plaintiffs' individual claims, "fully satisfying those individual claims, [Plaintiffs] still would be entitled to seek certification" of a litigation class. *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1142 (9th Cir. 2016) (citing *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011)); *see also T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *10-12 (N.D. Cal. Apr. 17, 2018) (gathering authority and holding that "even if [Plaintiff's] claim were moot, under *Chen* and *Pitts*, the Court would not dismiss based on mootness before [Plaintiff] has the opportunity to seek class certification").

Here, Plaintiffs' operative complaint seeks class certification, designation as class representatives, declaratory relief, injunctive relief, treble damages, disgorgement and/or a constructive trust upon Defendants'

ill-gotten gains and/or require Defendants to pay restitution, pre and post-judgment interest, and cost of suit including reasonable attorney fees. ECF No. 281-1 at 110. The Settlements cannot fully satisfy Named Plaintiffs' individual or class claims. The Settlements do not provide declaratory relief. The Settlements do not provide injunctive relief regarding the Non-Settling Defendants, most of which—including the Moving Defendants—continue to sell bail bonds in California. Harvey Supp. Decl. ¶ 5. The Settlements do provide monetary relief, but the amount falls short of the potential classwide judgement of approximately $4.8 billion in treble damages if the jury awards compensatory damages consistent with Dr. Singer's most conservative estimate. Singer Decl. ¶ 20 & Ex. 4, ECF No. 669-22 ($1,569,397,659 in single damages). Moving Defendants speculate that the "generous" distribution plan might provide Named Plaintiffs with their full treble damages. Statement at 7. For this to occur, the rate of verified claims would need be less than approximately 1% of eligible Settlement Class Members. Harvey Supp. Decl. ¶ 6. The Settlement Administrator will endeavor to maximize the claims rate while guarding against fraudulent claims, and estimates that the claim rate will exceed 5%. Pang Decl. ¶ 73. In any event, even if the Named Plaintiffs recover their individual treble damages, they would continue to have standing to pursue their remaining individual and class claims. *Chen*, 819 F.3d at 1142.

The Named Plaintiffs have ably performed their duties to the Litigation Class they seek to represent, and will continue to do so. Moving Defendants provide no support for their notion that the Named Plaintiffs have somehow become inadequate because they have succeeded in *partially* satisfying their individual and class claims through the Settlements. Moving Defendants' authorities merely stand for the proposition that if *all* of the Named Plaintiffs' individual *and* class claims are *fully satisfied*, the case would be over. Plaintiffs whole-heartedly agree. In the meantime, however, the Settlements cannot fully address the Named Plaintiffs' individual or class claims.

Second, Moving Defendants suggest that Plaintiffs' forthcoming request for service awards should be offset against their damages claims. Statement at 8-9. Again, Moving Defendants provide no authority. Service awards are not compensation for injuries, but rather "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). That last consideration is particularly relevant here because the

Sherman Act was designed to "allow individuals to serve as private attorneys general." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1179 (N.D. Cal. 2013); *see also Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130-31 (1969) ("[T]he purpose of giving private parties treble-damage and injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws.").

Third, Moving Defendants argue that the Settlements undercut typicality because the Named Plaintiffs did not purchase bail bonds from the Non-Settling Defendants. Statement at 9. As Plaintiffs previously explained, Moving Defendants appear to misunderstand that antitrust co-conspirators are jointly and severally liable for all harm resulting from their conspiracy, and that what matters to typicality is whether the Named Plaintiffs "purchased their bail bonds from any conspirator at prices that were higher than they would have been without the conspiracy, like any other Class Member." ECF No. 665 at 3 (collecting cases); *see also* ECF No. 514-2 at 24-25; ECF. No. 562-2 at 3-4. Moving Defendants ignore the relevant cases Plaintiffs have cited on this issue, and instead rely on *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465 (9th Cir. 1973), a case addressing *non-conspiracy* claims. Statement at 9. As the Ninth Circuit explained (on the very next page): "*Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury*." *La Mar*, 489 F.2d at 466 (emphasis added). Moving Defendants also rely on cases in which, unlike here, members of the proposed class purchased the relevant product at issue through fundamentally different means, at dramatically different volumes, and through completely different distribution channels. In *In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478 (N.D. Cal. 2008), Judge Alsup *certified* a class of consumers (*i.e.*, the category in which all class members in this case belong), but declined to extend the certified class to include massive institutional purchasers, like Walmart, because those entities purchased the products in large volumes and through completely different means. *See also In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 317 (N.D. Cal. 2014) ("The circumstances here are thus remarkably similar to those in [*GPUs*].").

Finally, Moving Defendants contend that Dr. Singer's supplemental declaration estimating the benefits of the Settlements' injunctive relief supports Defendants' pending *Daubert* motion. Statement at 10-11. According to Moving Defendants, Dr. Singer's supplemental declaration contradicts his opinions offered in

support of class certification. It does not. Everything Moving Defendants address was fully set forth in Dr. Singer's reply report in support of class certification, including Dr. Singer's conservative estimate of a 1.5% actual rebate rate. Indeed, the Settlements rely upon and cite to Dr. Singer's reply report to conservatively estimate both what Settlement Class Members were actually charged (including the 1.5% rebate rate), and what they would have been charged absent the challenged conspiracy (effective rate of 6.05%). *See* Accredited SA ¶ 61(c); ACIC SA ¶ 61(c); ASC SA ¶ 66(c); Bankers SA ¶ 67(c); C&F SA ¶ 64(c); Seaview SA ¶ 65(c); Sun Surety SA ¶ 64(c); Universal SA ¶ 64(c); Williamsburg SA ¶ 62(c). Dr. Singer's supplemental declaration simply applies these same methods to estimate the future benefits of the injunctive relief provided by the Settlements, including using all three of Dr. Singer's alternative common methods for estimating what prices would have been absent the conspiracy. Singer Decl. ¶¶ 14-16 & Exs. 1, 2.

Moving Defendants appear to believe that providing more than one executed method for estimating classwide damages with common proof somehow weighs against class certification. "In describing the legal standard, *Olean* made clear that the focus is on 'the method *or methods* by which plaintiffs propose to use the [class-wide] evidence to prove the common question in one stroke,' and 'a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial.'" *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1028 (9th Cir. 2024) (first emphasis added) (affirming class certification) (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc)), *cert. denied*, 145 S. Ct. 1308 (2025). The relevant question is whether Dr. Singer provides *at least one* method for demonstrating that the question of classwide damages is *capable* of resolution on a classwide basis. He does. Dr. Singer's supplemental declaration estimating the future benefits of injunctive relief appropriately uses the same common methods set forth in the Settlements and Dr. Singer's prior reports.

## III. <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court grant the motion and preliminarily approve the Settlements.

Dated: July 16, 2026

Respectfully submitted,

*/s/ Dean M. Harvey*

Dean M. Harvey (SBN 250298)
Katherine Lubin Benson (SBN 259826)
Michelle A. Lamy (SBN 308174)
Nicole M. Rubin (SBN 361232)
Emily N. Harwell (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
dharvey@lchb.com
kbenson@lchb.com
mlamy@lchb.com
nrubin@lchb.com
eharwell@lchb.com

*Interim Lead Class Counsel and Proposed Settlement Class Counsel*